LAW OFFICES OF
# LOUIS E. GITOMER, LLC

LOUIS E. GITOMER
Lou@lgraillaw.com

MELANIE B. YASBIN
Melanie@lgraillaw.com
410-296-2205

600 BALTIMORE AVENUE, SUITE 301
TOWSON, MARYLAND 21204-4022
(410) 296-2250 • (202) 466-6532
FAX (410) 332-0885

October 3, 2018

246453

ENTERED
Office of Proceedings
October 3, 2018
Part of
Public Record

Ms. Cynthia T. Brown
Chief of the Section of Administration, Office of Proceedings
Surface Transportation Board
395 E Street, S.W.
Washington, D.C. 20423-0001

Re: Docket No. FD 36223, *Norfolk Southern Railway Company-Petition to Set Trackage Rights Compensation-Norfolk & Portsmouth Belt Line Railroad Company*

Dear Ms. Brown:

Enclosed for efiling is the Petition for Leave to Intervene of CSX Transportation, Inc..

Thank you for your assistance. If you have any questions, please contact me.

Sincerely yours,

Louis E. Gitomer
Attorney for CSX Transportation, Inc.

Enclosure

EXHIBIT
3

1

BEFORE THE
SURFACE TRANSPORTATION BOARD

---

DOCKET NO. FD 36223

---

NORFOLK SOUTHERN RAILWAY COMPANY-PETITION TO SET TRACKAGE RIGHTS COMPENSATION-NORFOLK & PORTSMOUTH BELT LINE RAILROAD COMPANY

---

PETITION FOR LEAVE TO INTERVENE OF CSX TRANSPORTATION, INC.

---

Peter J. Shudtz, Esq.
John P. Patelli, Esq.
Steven C. Armbrust, Esq.
CSX Transportation, Inc.
500 Water Street J-150
Jacksonville, FL 32202
(904) 359-1229

Louis E. Gitomer, Esq.
Melanie B. Yasbin, Esq.
Law Offices of Louis E. Gitomer, LLC
600 Baltimore Avenue, Suite 301
Towson, MD 21204
Lou@lgraillaw.com
(410) 296-2250

Robert W. McFarland
Benjamin L. Hatch
E. Rebecca Gantt
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Telephone: (757) 640-3700

Attorneys for: CSX Transportation, Inc.

Dated: October 3, 2018

2

BEFORE THE
SURFACE TRANSPORTATION BOARD

---

DOCKET NO. FD 36223

---

NORFOLK SOUTHERN RAILWAY COMPANY-PETITION TO SET TRACKAGE RIGHTS COMPENSATION-NORFOLK & PORTSMOUTH BELT LINE RAILROAD COMPANY

---

PETITION FOR LEAVE TO INTERVENE OF CSX TRANSPORTATION, INC.

---

Pursuant to 49 C.F.R. §1112.4, in the above-entitled proceeding, CSX Transportation, Inc. ("CSXT") petitions the Surface Transportation Board (the "Board") for leave to intervene.

CSXT has a significant interest in the rate that the Norfolk Southern Railway Company ("NSR") will charge the Norfolk & Portsmouth Belt Line Railroad Company ("NBPL") for the trackage rights described in the Petition to Set Trackage Rights Compensation filed on September 13, 2018 (the "Petition") over NSR in Norfolk, VA (the "Line"). CSXT owns 43% of the stock of the NPBL, while NSR is the majority shareholder, owning 57%.[1] CSXT's only means of access to the Norfolk International Terminals ("NIT"), the largest international shipping terminal in Virginia, is via NPBL.[2] NPBL's only means of access to NIT is via the Line. To keep the possibility of competitive dual access to NIT alive, the NPBL must be able to operate over NSR at a reasonable cost.

The NPBL was originally owned by eight railroads in Hampton Roads, VA. For over a century, NPBL has operated over the lines of its member roads, including CSXT and NSR and their predecessors, pursuant to trackage rights granted by its owners. These trackage rights were

---

[1] NPBL has six voting directors. Three are appointed by NSR and two are appointed by CSXT. The directors elect the President who also is a voting director. The current President is a former NSR employee.
[2] NIT serves dozens of Steam Ship lines.

3

intended to allow NPBL to fulfill its stated purpose – to provide connectivity to the waterfront industries in Portsmouth and Norfolk, and between the member railroads, without discrimination and at the lowest economical price. Today, as noted above, NPBL is owned by NSR and CSXT, and the Line is the sole route that provides CSXT access to the NIT.[3] NSR is the only railroad with direct access to NIT. NSR is able to serve NIT by use of its own tracks[4], and is not encumbered by having to cross over any other railroad to reach NIT.

NSR has asked the Board to set the level of NPBL's fees to be paid for operating via the Line over the corresponding NSR-owned lines – generally from NPBL's Berkley Yard through NSR's Portlock Yard[5] and on to NIT (previously defined as the "Line"). This is the only route available to CSXT to serve customers at NIT, including Lehigh Cement Company, a cement shipper with facilities located inside the gate at NIT.[6] The NPBL is already struggling financially, but has stated repeatedly to its shareholders that it wishes to grow its switch business at NIT. NPBL and NSR are well aware of CSXT's desire to provide regular rail intermodal service to customers at NIT via the NPBL, which would help NPBL to grow its business. However, based on CSXT's understanding of NSR and NPBL's respective positions regarding the new trackage rights fees, even NPBL's requested fee would be several orders of magnitude in excess of the rate NPBL pays today.

---

[3] Prior to 2010, NPBL owned a 0.5 mile line that extended from NIT to the Line (and NSR had trackage rights over the NPBL line, giving it two points of access to NIT). In 2010, NPBL sold its line to the VPA, while retaining a permanent freight easement to ensure it would be able to serve customers at NIT in perpetuity. *Virginia Port Authority—Acquisition Exemption—Norfolk And Portsmouth Belt Line Railroad Company*, Docket No. FD 35532 (served August 1, 2011).

[4] NSR accesses NIT via two lines. NBPL jointly uses the northern line with NSR and NSR solely uses the southern line.

[5] Until 2008 NPBL was able to directly reach NIT through the use of a diamond. Trackage rights over the diamond were discontinued in 2008. *Norfolk Southern Railway Company-Discontinuance of Service Exemption-in Chesapeake, VA*, Docket No. AB-290 (Sub-No. 299X), served May 15, 2008. Now, NPBL trains must enter Portlock Yard before proceeding to NIT, a much more circular and less efficient move.

[6] Other than Lehigh Cement Company, virtually all freight movements are intermodal freight moving to/from Steam Ship Lines calling at NIT.

CSXT is also concerned that the Board's normal procedures under 49 C.F.R. §1180.2(d)(7) and even the precedent cited by NSR have not been followed before addressing the failure of the parties to agree to trackage rights compensation.[7] CSXT reserves the right to address all aspects of the notice of exemption and the proposed terms in the new agreement, and seek revocation of the exemption if necessary to protect CSXT's interests.

## INTERVENTION REQUEST

Pursuant to 49 CFR §1112.4(a):

> (a) The Board may grant a petition to intervene in a proceeding set for modified procedure if intervention:
> (1) Will not unduly disrupt the schedule for filing verified statements, except for good cause shown; and
> (2) Would not unduly broaden the issues raised in the proceeding.

The Petition for Leave to Intervene shall set out:

> (1) The petitioner's interest in the proceeding;
> (2) Whether the petitioner supports or opposes the relief sought or the action proposed or is otherwise concerned with the issues presented in the proceeding; and
> (3) The petitioner's request, if any, for relief.

49 CFR §1112.4(b).

---

[7] In the precedent relied upon by NSR in the Petition, compensation was not set until the agency had approved or exempted the proposed transaction. In *New England Central Railroad, Inc.-Trackage Rights Order-Pan Am Southern LLC*, Docket No. FD 35842 (served October 31, 2017), the Board established new terms and conditions under a trackage rights agreement where the Interstate Commerce Commission ordered and approved the trackage rights, imposed the terms and conditions, and "allowed either party to apply to the agency for modifications of the terms and conditions after 20 years from the conveyance date." *Id.* at 2. The lease and operation authorized by exemption from regulation in *Norfolk Southern Railway Company and Atlantic and East Carolina Railway Company--Lease and Operation Exemption--North Carolina Railroad Company*, Finance Docket No. 32820 (ICC served Dec. 22, 1995) occurred nine months before the request to prescribe compensation was filed with the Board. See *North Carolina Railroad Company--Petition To Set Trackage Compensation And Other Terms And Conditions--Norfolk Southern Railway Company, Norfolk & Western Railway Company, And Atlantic And East Carolina Railway Company*, STB Finance Docket No. 33134, slip op. at 2, footnote 5 (served May 29, 1997). In both cases cited by NSR as justification for the Board to impose compensation conditions, the trackage rights had been authorized in advance by the regulatory body. NSR terminated the NPBL trackage rights agreement in 2016. In the Petition, NSR contends that NSR and NPBL have agreed to new trackage rights terms, except for compensation for use of the trackage rights. NBPL has not even asked the Board to authorize the new trackage rights, much less received authorization.

5

CSXT's interest in this proceeding is based on (1) its minority ownership interest in NPBL and (2) its interest in being able to serve customers at or near NIT via the NPBL using the Line. As an owner of NPBL, CSXT seeks to see that NPBL obtains a fair arms length deal, so as not to reduce the value of CSXT's investment in NPBL. As a user of NPBL, CSXT plans to serve customers at or near NIT by handing traffic off to NPBL and receiving traffic from NPBL for movements over the trackage rights. When trackage rights fees are too high, it becomes economically infeasible for CSXT to serve customers at or near NIT via NPBL.[8]

CSXT is concerned that the compensation levels sought in this proceeding will exceed fair trackage rights compensation levels to the detriment of both NPBL and CSXT. This concern is heightened because of NSR's position as the majority shareholder of NPBL

CSXT requests that it be permitted to intervene in this proceeding and to participate as a party.

## MEDIATION REQUEST

CSXT requests that the Board initiate mediation pursuant to 49 C.F.R. Part 1109 and allow CSXT to participate in the mediation as an interested party. CSXT has a significant interest in the trackage rights compensation established for NPBL to pay NSR for the use of the Line. CSXT is a substantial minority owner of NPBL and the only potential competitor to NSR for service to at or near NIT.

---

[8] Indeed, there is no reasoning provided for changing the current compensation level other than the parties failure to agree.

## CONCLUSION

CSXT respectfully requests that the Board grant it leave to intervene in this proceeding in order to participate as a party and protect its interest in NPBL and to promote competition in providing rail service to NIT.

Respectfully submitted,

| | |
|---|---|
| Peter J. Shudtz, Esq. | Louis E. Gitomer, Esq. |
| John P. Patelli, Esq. | Melanie B. Yasbin, Esq. |
| Steven C. Armbrust, Esq. | Law Offices of Louis E. Gitomer, LLC |
| CSX Transportation, Inc. | 600 Baltimore Avenue, Suite 301 |
| 500 Water Street J-150 | Towson, MD 21204 |
| Jacksonville, FL 32202 | Lou@lgraillaw.com |
| (904) 359-1229 | (410) 296-2250 |

Robert W. McFarland
Benjamin L. Hatch
E. Rebecca Gantt
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Telephone: (757) 640-3700

Attorneys for: CSX Transportation, Inc.

Dated: October 3, 2018

## CERTIFICATE OF SERVICE

I hereby certify that I have caused the foregoing document to be served upon counsel for Norfolk Southern Railway Company electronically.

_____
Louis E. Gitomer
October 3, 2018