**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| CSX TRANSPORTATION, INC., et al.,    ) | |
|                            ) | |
|       Plaintiff,            ) | |
|                            ) | |
| v.                          ) |    Civil Action No. 2:18CV530-MSD-LRL |
|                            ) | |
| NORFOLK SOUTHERN RAILWAY    ) | |
| COMPANY, et al.,            ) | |
|                            ) | |
|       Defendants.         ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS INDIVIDUAL DEFENDANTS JERRY HALL, THOMAS HURLBUT, AND PHILIP MERILLI

Defendants Jerry Hall, Thomas Hurlbut, and Philip Merilli (the "Individual Defendants"),[1] by counsel, submit the following as their Memorandum in Support of their Motion to Dismiss the Complaint filed against them by CSX Transportation, Inc. ("CSXT" or "Plaintiff") derivatively on behalf of the Norfolk Portsmouth Beltline Railroad Company ("NPBL") and its shareholders:

### I. SUMMARY OF ARGUMENT

CSXT has improperly sued the Individual Defendants and inserted them into a corporate governance dispute between itself and its fellow shareholder and competitor, Norfolk Southern Railway Company ("Norfolk Southern").  In a case invoking federal subject matter jurisdiction with antitrust claims against Norfolk Southern, CSXT has asserted a state law breach of fiduciary duty claim against the Individual Defendants based on their conduct as directors of NPBL, a

---

[1] The Complaint defines the "Individual Defendants" to include Cannon Moss, NPBL's President, General Manager, and board member.  (Compl. ¶ 31.)  Mr. Moss is represented by separate counsel, so in this Memorandum, "Individual Defendants" refers only to Messrs. Hall, Hurlbut, and Merilli.

1

terminal switching railroad whose shareholders are CSXT and Norfolk Southern. CSXT alleges that the Individual Defendants breached their fiduciary duties by not taking action in their capacities as NPBL board members to approve CSXT's proposal for a new rate for certain limited use of NPBL services, which includes an offer to use CSXT locomotives on NPBL tracks (the "Rate Proposal"). Specifically, CSXT asserts that "the Individual Defendants *and/or their predecessors*" have taken a series of actions over the course of a decade that have "*essentially* blocked" CSXT's Rate Proposal because they "refused to even form an independent committee to evaluate it or allow a formal vote, and thus *effectively* rejected it." (Compl. ¶¶ 20, 34, 40 (emphasis added).)

CSXT's breach of fiduciary duty claim against the Individual Defendants is fatally flawed because the Rate Proposal itself, if accepted, would violate NPBL's original shareholder agreement and subsequent amendments (hereinafter referred to as NPBL's "Operating Agreement"[2]). In the Ninth Article of the NPBL Operating Agreement, the shareholders agreed "[t]hat a *uniform rate* shall be fixed for the movement of freight cars over the said Southeastern and Atlantic Railroad Company's [now named NPBL] railroad, regardless of distance….." (Compl. Ex. A at 4-5 (emphasis added).) The Rate Proposal, if accepted, would violate this provision of the Operating Agreement because it proposes a specific contractual rate only "for long term rail intermodal service to Norfolk International Terminals (NIT)," along with other provisions exclusive to CSXT (Compl. Ex. E at 1). The Rate Proposal also contemplates a special contract for use of CSXT locomotives in NPBL operations that service NIT. That portion

---

[2] In the Complaint, CSXT defined the original shareholder agreement, which is titled "Agreement", and subsequent amendments, as an "Operating Agreement," perhaps to obscure the fact that these corporate documents form a contract among the shareholders. (Compl. ¶ 15). The Agreement, as amended, is more accurately described as a Shareholder Agreement, but for clarity of reference, the term Operating Agreement will be used herein.

of the Rate Proposal would violate the Fifteenth Article of the Operating Agreement, which provides "that the locomotives owned by the parties hereto *are not to enter upon or use [NPBL's] tracks*." (Compl. Ex. A at 7 (emphasis added).) There can be no breach of duty for failing to take action on a proposal that would itself violate NPBL's Operating Agreement.

Moreover, CSXT's vague, conclusory allegations fail to state a claim for breach of fiduciary duty because they do not allege that there was any formal action taken by the Individual Defendants regarding CSXT's Rate Proposal. Indeed, if a motion to approve the Rate Proposal had been made at the April 18, 2018 board meeting, and if the NPBL board members had voted to approve the Rate Proposal, they could have been accused of violating their fiduciary duty to the company for violating the terms of the Operating Agreement. Tellingly, the Complaint does not allege that any of the NPBL board members, even those appointed by CSXT, made a motion and seconded the motion to approve the Rate Proposal, or to form a committee to study the Rate Proposal. Thus, the Complaint fails to state a claim for breach of fiduciary duty by the Individual Defendants for taking action to reject the Rate Proposal.

CSXT also alleges the Individual Defendants breached their fiduciary duties by not taking action as NPBL board members to approve CSXT's proposal to amend NPBL's governing corporate documents to change the make-up of the Board of Directors (the "Governance Proposal"[3]). But there can be no breach of fiduciary duty by the Individual Defendants for failing to act on the Governance Proposal because the NPBL Board of Directors is not authorized by the company's Operating Agreement and By-laws to make the proposed changes. Thus, the Complaint fails to state a claim for breach of fiduciary duty for the Individual Defendants' alleged rejection of the Governance Proposal.

---

[3] The Rate Proposal and the Governance Proposal may be referred to herein as the "CSXT Proposals" or the "Proposals."

Finally, if the Court allows Count VI to proceed, the Individual Defendants urge the Court to decline to exercise supplemental jurisdiction over this state law breach of fiduciary duty claim, which is based purely on Virginia common law. The true gravamen of the Complaint is a corporate governance dispute between two competitor shareholders, with Antitrust claims serving as the only basis for this Court's subject matter jurisdiction. The Court can and should decline to exercise supplemental jurisdiction over the lone claim against the Individual Defendants under these circumstances and dismiss Count VI. Such an exercise of this Court's discretion would appropriately narrow this case to what it truly is—a dispute among shareholders over NPBL's corporate governance.

Accordingly, the Complaint should be dismissed as against the Individual Defendants.

## II. <u>STATEMENT OF FACTS</u>[4]

NPBL is a terminal switching railroad operating in the cities of Norfolk, Portsmouth, and Chesapeake, Virginia. (Compl. ¶ 1.) It was formed in 1896[5] by eight railroads who agreed that it should exist "for the mutual benefit of each in the interchange of business" to build and operate a belt line railway connecting various tracks of the eight railroads in Hampton Roads "that would enable the interchange of cars among the railroads and connection to the port, among other facilities." (Compl. ¶ 1, Ex. A.) In furtherance of this purpose, NPBL's rail service to the Norfolk International Terminals ("NIT") opened in 1917. (Compl. ¶ 1.)

---

[4] When resolving a motion to dismiss made under Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules"), the Court must assume the Plaintiff's allegations are true, viewing all facts in the light most favorable to the Plaintiff. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). Viewed through this lens, the facts alleged in the Complaint are relevant for purposes of the Motion to Dismiss Individual Defendants. The Individual Defendants, however, will dispute many of the facts recited herein should the case against them proceed beyond the pleading stage.

[5] The Complaint alleges that NPBL was formed in 1896, but the original Agreement was dated July 7, 1897.

In an effort to achieve this stated purpose, the original eight shareholder railroad companies formed the NPBL Operating Agreement, which provides in relevant part:

> That the Capital Stock of the said [NPBL] shall be fixed at Fifty Thousand Dollars.
>
> ….
>
> That a ***uniform rate*** shall be fixed for the movement of freight cars over the said [NPBL] railroad, regardless of distance, and that the rate per loaded freight car shall be so adjusted from time to time as to yield a net revenue ***sufficient to pay the interest upon the bonds outstanding and a dividend of six percent on the stock***.  In case arrangement shall hereafter be perfected for the handling of passenger traffic by the Belt Line the net revenues derived therefrom shall be divided equally among the lines, owners of the stock, as an extra dividend…it being understood that if the net revenue from the passenger business shall be sufficient to pay extra annual dividends of more than six per cent, then the Directors may reduce the rate per loaded freight car sufficient to absorb such excess.
>
> ….
>
> That no one of the aforesaid Companies [i.e. shareholders], parties hereto, will sell its stock in the [NPBL] to any other person, persons, corporation or corporations, until it shall first have given to the other owners of the stock in said Company the right to purchase the same in an amount *pro rata* to the amount held by each of them…
>
> ….
>
> It is understood and agreed that the locomotives owned by the parties hereto ***are not to enter upon or use the tracks of the [NPBL]*** for any purpose whatever, excepting under such rules and regulations as may be established by the Board of Directors of the [NPBL] by a vote of a majority of all the members of said Board, the intent being that the [NPBL] shall perform the service for which it was built and said Company be directly responsible for the competent and efficient discharge of its every obligation to the parties hereto.
>
> ….
>
> That each of the Companies parties hereto, agrees that the Director named by each to represent it in the Board of the [NPBL] shall and will vote for such resolutions, by-laws or other proceedings as may be necessary ***to carry into effect the agreements herein made***.

(Compl. Ex. A at 3, 5-8 (emphasis added).)

Based on the Operating Agreement, and as pled in the Complaint, NPBL was not formed to maximize profits, but "to provide an efficient means of interchanging the traffic of its owners between their lines and various marine terminals and industries located along the NPBL's tracks." (Compl. ¶ 15.) Thus, NPBL exists to own and manage certain assets for the joint benefit of its shareholders. And, those shareholders—not the NPBL directors—agreed on how to manage NPBL, because "[t]he NPBL Operating Agreement, as amended, governs the ownership and operation of NPBL, and it creates and establishes various duties and obligations **between and among the shareholders**." (Compl. ¶ 16 (emphasis added).)

As a result of mergers and acquisitions since 1896, the number of shareholders of NPBL has reduced from eight to two, with CSXT and Norfolk Southern now the only remaining shareholders. The Operating Agreement was amended by a Supplemental Agreement dated March 1, 1989 (the "Supplemental Agreement"), in which the NPBL shareholders agreed that CSXT would appoint two directors to NPBL's board and Norfolk Southern, through its two subsidiaries[6], would collectively appoint three directors. (Compl. Ex. C at 3.) Importantly, as stated in the Supplemental Agreement, "NPBL [was] not made a party to this Agreement." (Compl. Ex. C. at 1). Therefore, as alleged, the shareholders (and not the NPBL board of directors or the Individual Defendants) determined the present governing structure of NPBL and its board of directors.

---

[6] Although the Supplemental Agreement amended the original Operating Agreement, this Supplemental Agreement is in keeping with the original shareholders' intent to "have [at least] one representative on the Board" from each shareholding company. (Compl. Ex. A at 4.) As is evidenced from the Complaint and NPBL's governing documents, NPBL shareholders have always determined the structure and process of selecting the Board of Directors.

Norfolk Southern now owns 57% of NPBL's stock and, pursuant to the Operating Agreement, appoints three of its directors, while CSXT owns 43% of its stock and appoints two of its directors.  (Compl. ¶¶ 23, 26-27, Ex. D.)[7]  The Individual Defendants are NPBL board members designated by Norfolk Southern, although the Complaint does not identify when each was designated and elected to the board.  (Compl. ¶¶ 10, 26.)

Pursuant to the Operating Agreement, NPBL's operating revenue is derived principally from switch operations provided to the shareholder companies.  (Compl. ¶ 33.)  According to CSXT, the Individual Defendants have caused NPBL to charge "unreasonably high" rates for these switch operations.  The Complaint, however, does not allege, directly or by inference, exactly which board members adopted the current rate charged to the shareholder companies.  (Compl. ¶ 34, stating the current line haul switch rate was adopted by "the Individual Defendants *and/or their predecessors* in 2009." (emphasis added).)  Although it is unclear which of NPBL's directors acted to set NPBL's current rates, CSXT asserts that these excessive rates have resulted in NPBL's "flat or declining" revenue and that "[n]o excess cash flow is being generated" by NPBL's operations.  (Compl. ¶ 37.)  Furthermore, CSXT alleges that rail car volume on the NPBL has been "flat for years" presumably because it "is heavily dependent on a single customer . . . engaged in a single line of business."  (Compl. ¶ 37.)

---

[7] Although Paragraph 23 of the Complaint states that Norfolk Southern "has appointed four voting members to the NPBL," this allegation must be read in tandem with Paragraphs 26 and 27 of the Complaint.  As made clear in Paragraph 26 of the Complaint, "*[t]hree* of those voting positions are filled with current [Norfolk Southern] employees designated by [Norfolk Southern] to serve as NPBL Directors."  (Compl. ¶ 26 (emphasis added).)  And, "*[a]nother voting position is held* by the NPBL President, Cannon Moss, a former [Norfolk Southern] employee who in 2011 was nominated at [Norfolk Southern's] direction and elected by vote of [Norfolk Southern's] shares."  (Compl. ¶ 27.)  Accordingly, it is not the case that Norfolk Southern directly appoints four board members, but only three.

### 1.  CSXT's "Rate Proposal"

In advance of the April 18, 2018 NPBL board and annual stockholders meetings (the "April 2018 Meetings"), CSXT presented a proposed private contractual arrangement between it and NPBL by letter addressed to Cannon Moss and Donna Coleman (a non-voting director, vice president, comptroller, and corporate secretary of NPBL) that contained, among others, the following proposed terms (the "Rate Proposal"):

- CSXT proposed that NPBL charge a rate of $80 per car for loaded or empty cars moved to or from NIT for the purpose of handling international containers, which is lowered and different from the uniform rate of $210 per car for line haul switching service provided over all NPBL tracks;

- CSXT proposed a certain minimum annual volume guarantee of cars moving to or from NIT, loaded or empty, along with a shortfall fee of $60 per car should the guaranteed volume not be met;

- CSXT  offered to provide its own locomotives for movement of cars to and from NIT on NPBL track;

- The terms of the Rate Proposal would be subject to and become binding only upon memorialization in a mutually agreed written format (rail transportation contract or equivalent) duly signed for both NPBL and CSXT; and,

- The Rate Proposal acknowledged that some NPBL board members previously "argued that an amendment to the NPBL bylaws would be required to permit the NPBL to enter into private freight contracts…and to allow use of non-NPBL owned or leased locomotive for movements over NPBL trackage," while suggesting that the recipients of the letter "take whatever action is necessary to allow NPBL to enter into such a contract."

(Compl. ¶ 38, Ex. E.)

The Individual Defendants "*effectively* rejected" this proposal, allegedly because they "refused to even form an independent committee to evaluate it or *allow* a formal vote." (Compl. ¶ 40 (emphasis added).)  Yet, there is no allegation anywhere in the Complaint that any of the board members, not even the CSXT's designees to the NPBL board, made a motion to call for a vote on the Rate Proposal or to refer the matter to a committee for study.  Referencing unrelated

actions taken in 2008 and 2010, CSXT alleges that "[t]hrough those same acts and practices, **and others**, the Individual Defendants **and/or their predecessors** have violated their fiduciary obligations to act in the best interests of the NPBL."  (Compl. ¶¶ 46-48 (emphasis added).)

### 2. CSXT's "Governance Proposal"

In an effort to remedy these allegedly unfair outcomes, CSXT proposed "several remedial actions to address defects in NPBL's current corporate governance structure," (Compl. ¶ 67), with "CSXT's shareholder representative ask[ing] the NPBL Board to adopt CSXT's proposals, and ma[king] a motion that the shareholders proceed to elect only one director designated by each shareholder and elect four independent directors."  (Compl. ¶ 70.)

According to the third article of the NPBL By-laws, which the shareholders adopted on April 10, 1996, "[t]he Board of Directors shall consist of six voting members and one non-voting member who shall be elected by the Stockholders" at NPBL's annual meeting.  (Compl., Ex. D at 1.)  As stated in NPBL's By-laws, the election process provided therein can only be altered by a vote of the shareholders. (*See Id.* at 4, stating NPBL's By-laws "may be amended at any annual meeting of the Stockholders or at any special meeting of the Stockholders called for the purpose.")

Assuming the Individual Defendants adopted CSXT's Governance Proposal in their capacities as board members, this would have amended both the Supplemental Agreement, to which NPBL was expressly **not a party**, and the By-laws, which the NPBL Board of Directors had no authority to amend.  (Compl. Ex. C.)  Without describing a specific motion, CSXT alleges that "[t]he Individual Defendants rejected CSXT's [G]overnance [P]roposal in its entirety, voted against CSXT's motion [to approve the Governance Proposal], [and] refused to

nominate (much less elect) any independent directors…."[8]  (Compl. ¶ 72.)  According to CSXT, this position "is contrary to the NPBL Operating Agreement and Virginia law barring interested director transactions, Va. Code § 13.1-691."  (Compl. ¶ 73.)[9]

## III. <u>STANDARD OF REVIEW</u>

A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) should be granted unless the complaint "states a plausible claim for relief" under Rule 8(a).  *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  The complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level" and "nudge [the] claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In considering a Rule 12(b)(6) motion, the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor.  *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).  No such assumption of truth is afforded to those "naked assertions" and "unadorned conclusory allegations" devoid of "factual enhancement."  *Vitol*, 708 F.3d at 543 (citations omitted).  Thus, the court's review involves the separation of factual allegations from legal conclusions, the latter of which may be disregarded when resolving the motion.  *Burnette v. Fahey*, 687 F.3d 171, 180 (4th Cir. 2012).

---

[8] Describing the motion as "CSXT's motion" is instructive.  This can only mean that the alleged motion to approve the Governance Proposal was made by CSXT, a shareholder, during the annual stockholders meeting.

[9] The reference in Paragraph 73 of the Compliant to Va. Code § 13.1-691 is irrelevant because CSXT does not allege a conflict of interest transaction.

## IV. ARGUMENT[10]

A.     **The Complaint Fails to State a Claim for Breach of Fiduciary Duty Against the Individual Defendants.**

To state a claim for breach of fiduciary duty under Virginia law,[11] CSXT must sufficiently allege: (1) the existence of a fiduciary duty; (2) action or inaction that constitutes a breach; and (3) damages resulting from the breach. *Cartensen v. Chrisland Corp.*, 247 Va. 433, 444-45 (1994); *Sun Hotel v. Summitbridge Credit Invs. III, LLC*, 86 Va. Cir. 189 (Fairfax Cir. Ct. 2013). In the Complaint, CSXT identifies three bases for the Individual Defendants' alleged breaches of fiduciary: (1) that the Individual Defendants rejected the Rate Proposal asserted by CSXT; (2) that the Individual Defendants rejected the Governance Proposal asserted by CSXT; and (3) that the Individual Defendants "fail[ed] to appropriately manage NPBL, leading to its deteriorating financial condition." (Compl. ¶ 112.)

Under Virginia law, the fiduciary duties owed by corporate directors differ from the duties owed in other states, such as Delaware. In Delaware, directors may owe a special duty to minority shareholders. No such duties exist in Virginia. Rather, as one commentator has explained it:

> [I]n Virginia, the fiduciary duties of directors run to the corporation and the shareholders as a class, with no duties owed by directors or majority shareholders

---

[10] The Individual Defendants incorporate by reference the arguments of any other Defendants in this case to the extent applicable.

[11] "When deciding state law claims under supplemental jurisdiction, federal courts apply the choice-of-law rules of the jurisdiction in which they sit." *McFarland v. Va. Ret. Servs. of Chesterfield, L.L.C.*, 477 F. Supp. 2d 727, 732 (E.D. Va. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)). If liability is a matter of tort, "Virginia applies the doctrine of *lex loci delicti*, meaning the law of the place of the wrong governs all matters related to the basis of the right of action." *Dreher v. Budget Rent-A-Car Sys., Inc.*, 634 S.E.2d 324, 327 (Va. 2006) (citing *Jones v. R.S. Jones & Assocs.*, 431 S.E.2d 33, 34 (Va. 1993)). Although the Complaint does not clearly allege where any duties may have been breached, given the location of the NPBL in Virginia, the Individual Defendants will presume that Virginia law applies unless and until further factual development demonstrates otherwise.

> to minority shareholders.  Because shareholders cannot bring direct claims against an officer or director in Virginia, *a director's duty to the shareholders as a class may not add much to the duty a director owes to the corporation beyond the duty to fully and fairly disclose material information to the shareholders*.  In most instances, if a director discharges his duty to the corporation, he probably has discharged his duties to the shareholders as a class.

Laurence V. Parker, Jr., *Virginia is for Lovers and Directors: Important Differences Between Fiduciary Duties in Virginia and Delaware*, 2 WILLIAM & MARY BUS. L. REV. 51, 58-59 (2011) (emphasis added) (discussing cases of *Willard v. Moneta Bldg. Supply, Inc.*, 515 S.E.2d 277 (Va. 1999) and *Remora Invs., L.L.C. v. Orr*, 673 S.E.2d 845 (Va. 2009)).

Virginia's seminal case on the unique nature of a director's duties under Virginia law, *Willard v. Moneta Building Supply, Inc.*, demonstrates why CSXT's fiduciary duty claim fails. In *Willard*, the board approved a decision to enter into an asset purchase agreement that would effectively sell the business to the relative of the majority shareholders even though the minority shareholder offered $600,000 more for the same asset purchase.  *Willard*, 515 S.E.2d at 282. The minority shareholder brought a derivative suit and the circuit court rejected the derivative claims after a bench trial.  On appeal, the Supreme Court of Virginia affirmed the circuit court, explaining the distinction between a director's duties under Virginia law as opposed to that of other states such as Delaware:

> [I]n Virginia, a director's discharge of duties is not measured by what a reasonable person would do in similar circumstances or by the rationality of the ultimate decision.  Instead, a director must act in accordance with his/her good faith business judgment of what is in the best interests of the corporation…
> ….
> Contrary to [the minority shareholder's] argument, [the directors] were not required to accept an offer merely because it maximized the purchase price.  Such a rule would mean that only one offer, among many, was in the best interests of the corporation.  That result would erode the deference afforded a director's discharge of duties under Code § 13.1-690.

*Willard*, 515 S.E.2d at 284-85.

Applying the directors' duties as articulated in *Willard*, the directors owe no special duty to CSXT, but they owe a duty to NPBL and its shareholders as a class.  In *Willard*, the Supreme Court of Virginia went so far as to recognize that a corporate board does not violate its duties simply because it does not accept the highest price to maximize profits—one of the very allegations that CSXT asserts here.  (*See*, *e.g.*, Compl. ¶ 61.)  Rather, the director must act "in the best interests of the **corporation**," by "engag[ing] in an informed decision making **process** that . . . produce[s] a defensible business decision."  *Willard*, 515 S.E.2d at 284-85.  In other words, directors are judged by the process they follow, not the outcome.  In this case, the allegations against the Individual Defendants, taken as true for purposes of this motion, show that they acted in conformity with NPBL's Operating Agreement and By-laws and thereby followed an informed decision-making process that led to a completely appropriate result.

**1. CSXT's Proposals Violate NPBL's Governing Documents.**

A party can plead itself out of court when the facts in its complaint and exhibits affirmatively disprove its claim.  *Willoughby v. Henrico County*, No. 3:14cv223, 2014 U.S. Dist. LEXIS 87922, at *8 (E.D. Va. June 27, 2014) (quoting *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011)) ("[C]ourts recognize that a plaintiff 'can plead himself out of court by pleading facts that show that he has no legal claim.'").  That is exactly the result here because NPBL's governing documents, attached as exhibits to the Complaint, invalidate CSXT's claim that the Individual Defendants breached their fiduciary duties by allegedly rejecting CSXT's Rate and Governance Proposals.  Indeed, had the Individual Defendants voted for either the Rate Proposal or the Governance Proposal, they would have violated their fiduciary duty to the corporation and to the shareholders as a class.  This is likely the reason that no member of

NPBL's board of directors, not even CSXT's designees, made any motion to accept the Rate Proposal.  CSXT has, in fact, pled itself out of Court as to Count VI.

    *a. CSXT's Rate Proposal Violates NPBL's Operating Agreement.*

The NPBL Operating Agreement, as amended, mandates a "uniform rate" for NPBL services provided to all shareholders.  (Compl. Ex. A at 4-5.)  CSXT's Rate Proposal contains a specific per car rate for the limited purpose of moving cars in and out of NIT, along with multiple provisions unique to CSXT, such as minimum guaranteed annual volume and shortfall per car payments. (Compl. Ex. E).  Rather than a uniform rate to be paid by all shareholders for all NPBL services, CSXT proposes a special lower rate related only to NIT access.  Moreover, the Rate Proposal requires a separate transportation contract between CSXT and NPBL to memorialize this unique, non-uniform rate arrangement for line haul switching services over only a portion of NPBL's operations.

The Operating Agreement also prohibits shareholders' locomotives from "enter[ing] upon or us[ing] the tracks" of NPBL, further stating the shareholders' intent that NPBL "shall perform the service for which it was built and said [NPBL] be directly responsible for the competent and efficient discharge of its every obligation" to the shareholders.  (Compl. Ex. A at 7.)  Contrary to this intent expressed in the Operating Agreement, the Rate Proposal offers use of CSXT locomotives on NPBL tracks for moving traffic in and out of NIT.  Plainly, if accepted, CSXT's Rate Proposal would violate both the uniform rate provision and the prohibition against use of shareholder locomotives on NPBL track as set forth in the Operating Agreement.

No motion was ever made to accept the Rate Proposal, but had the NPBL board voted to reject it, the board would have acted in accordance with the Operating Agreement.  Notably, the Operating Agreement requires that the directors "shall and will vote … to carry into effect the

agreements herein made." (Compl. Ex. A at 8.) Thus, CSXT's Complaint and exhibits thereto demonstrate that by allegedly rejecting the Rate Proposal, the Individual Defendants' did nothing more than **comply with** the terms of the Operating Agreement. To that end, the allegations demonstrate that the Individual Defendants followed an "informed decision making process" and, therefore, these allegations fail to state a claim for breach of fiduciary duty under Virginia law. *Willard*, 515 S.E.2d at 285.

> b. *The Individual Defendants do not have the authority to adopt CSXT's Governance Proposal.*

CSXT also alleges that the Individual Defendants have breached a fiduciary duty as board members by voting against *CSXT's motion* to adopt the Governance Proposal. The Court should reject this claim because the Individual Defendants, as directors, have no authority to alter the makeup of the board. NPBL's corporate governance structure can only be amended by a shareholder vote or agreement, as promulgated by the Operating Agreement and the NPBL By-laws.

More precisely, NPBL is not a party to the Operating Agreement and, therefore, the directors have no power to alter or amend its terms. The terms of the Operating Agreement are agreed upon by the shareholders. Furthermore, NPBL's By-laws provide that the shareholders elect the board and that only the shareholders can amend the By-laws at annual or special stockholder meetings. (Compl., Ex. D. at 1, 4). Simply put, the Individual Defendants had no authority to accept CSXT's Governance Proposal and had they done so, it would have been a nullity. Accordingly, the allegation that the Individual Defendants rejected the Governance Proposal fails to state a claim for breach of fiduciary duty.

Further, by alleging that CSXT itself made the motion to adopt the Governance Proposal (Compl. ¶ 72), CSXT has admitted that the motion was made by a shareholder during the annual

stockholder meeting, not by a board member during the board meeting.  The plain language of the Operating Agreement, as amended, would prohibit a director from making such a motion or voting on it.  For this additional reason, the Complaint fails to state a claim against the Individual Defendants for allegedly voting against CSXT's motion to approve its Governance Proposal.

## 2. CSXT Has Failed to Allege that the Individual Defendants Took Any Specific Improper Action.

Boards of directors of Virginia corporations act through their votes at meetings or through consents to corporate action in lieu of a meeting.  *See* Va. Code §§ 13.1-684, -685, -688 (2018).  The Operating Agreement attached to the Complaint specifically recognizes as much, stating that director action shall be taken by "vote for such resolutions, by-laws[12] or other proceedings."  (Compl. Ex. A at 8.)  Thus, because the NPBL board members followed an "informed decision making process," set forth in the Operating Agreement—and to which CSXT agreed—then under Virginia law, they have fulfilled their fiduciary duty to the corporation, even if CSXT dislikes the result.

Accordingly, to sufficiently plead that the Individual Defendants breached a fiduciary duty, CSXT must allege facts identifying a vote that the Individual Defendants took or failed to take after a proper motion was made in accordance with NPBL's Operating Agreement and By-laws.   No such vote is alleged with respect to the Rate Proposal.  Despite having appointed two of the members of the NPBL board of directors (Compl. ¶ 23), there is no allegation that any member of the board made a motion to approve the Rate Proposal, either at the April board meeting or otherwise.  CSXT's two appointed board members could have made and seconded

---

[12] Although the Operating Agreement calls for the directors to vote on and adopt NPBL's By-laws, Article 13 of NPBL's By-laws explains that only the shareholders are to vote on and amend these by-laws.  Article 13 was adopted on April 8, 1959, subsequent to the July 7, 1897 Operating Agreement.  (Compl., Ex. D at 4.)

such a motion, but there is no allegation that they did so.  CSXT at most alleges that discussions during the April 18, 2018 board meeting did not progress to a motion to approve the CSXT Rate Proposal.  These facts are insufficient to state a claim that the Individual Defendants breached their fiduciary duty to the corporation.

Further, CSXT cannot rely on its allegations that the Individual Defendants refused to permit a "formal vote" unless CSXT alleges that its own appointed directors (or any board member) made a motion to adopt the Rate Proposal, the motion was seconded, and then the Individual Defendants either acted or failed to take action on that motion.  No such allegations appear in the Complaint.  Rather, CSXT attempts to assert an "unwarranted inference" that the Individual Defendants rejected board action on a vote for or against on CSXT's Rate Proposal. The Court cannot accept such unwarranted inferences as true.  *Giarrantano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

Even if CSXT properly alleged that the Individual Defendants rejected a formal vote on CSXT's Rate Proposal, this alleged action ultimately fails to support a breach of fiduciary duty claim against the Individual Defendants because CSXT seeks to hold the Individual Defendants liable for failing to adopt a special Rate Proposal that would allegedly increase NPBL's total revenues, and thus its total net profit.  Assuming as true that the Rate Proposal would increase NPBL's net profit, it is well settled in Virginia that failing to accept a transaction that maximizes a corporation's profit does not amount to a breach of fiduciary duty claim.  *See Willard*, 515 S.E.2d at 285 (holding that rule requiring director to always act in the interest of maximizing corporation's profit would "erode the deference afforded a director's discharge of duties under [Va.] Code § 13.1-690.").  In any event, the Operating Agreement attached to the Complaint

establishes that the primary business purpose of NPBL does not include maximizing NPBL's profits and expanding its business opportunities.[13]

As pled, there is no allegation that the Individual Defendants made a formal vote against CSXT's Rate Proposal, and the allegation of a vote on the Governance Proposal could not have related to board action, only shareholder action.  If the Individual Defendants had voted against a motion to approve the Rate Proposal, that vote would have been in accordance with their fiduciary duties under NPBL's Operating Agreement and By-laws.  Accordingly, any claim that the Individual Defendants breached their fiduciary duty to NPBL by rejecting either proposal fails as a matter of law.

### 3.  CSXT's Vague Allegations Fail to State a Claim for Breach of Fiduciary Duty.

CSXT's Complaint is also fatally flawed because it is peppered with vague, incomplete, and unsubstantiated allegations that fail to assign any particular wrongful action or inaction to any of the Individual Defendants.

First, the Complaint alleges that "[t]he Individual Defendants refused to even form an independent committee to evaluate [CSXT's Rate Proposal] or allow a formal vote, and thus *effectively* rejected it."  (Compl. ¶ 40.)  The use of the word "effectively" denotes a vague, conclusory allegation because it attempts to plead that the Individual Defendants "rejected" the proposal without pleading facts that could lead to such a conclusion.  (Compl. ¶ 40.)  Such conclusory, vague allegations are insufficient to state a claim under Rule 8(a).  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (recognizing that "such unadorned conclusory

---

[13] Specifically, unless passenger rail utilizes NPBL (which is not alleged here), the Operating Agreement limits the dividend to be paid to "six per cent on the stock."  (Compl. Ex. A at 6.)  The Operating Agreement further limits the value of stock to $50,000, thereby capping the total dividend paid to $3,000.  (Compl. Ex. A at 3.)  Thus, the purpose of NPBL is expressly *not* to maximize profits but to maintain an asset, and allegations of a breach based on maximizing profit fail to state a claim for breach of fiduciary duty.  (Compl. ¶ 61.)

allegations" must be "discount[ed]" because "they are no more than conclusions…not entitled to the assumption of truth"). The result of this vague allegation is an implausible claim for relief.

Similarly, with regard to the "excessive rate" charged by NPBL, CSXT does not allege when the Individual Defendants were elected to NPBL's Board of Directors or whether they served on the board that chose this exact rate. In a transparent attempt to place responsibility for over a decade of corporate decisions on these Individual Defendants without articulating any specific action taken by them, the Complaint alleges actions taken by the "Individual Defendants **and/or their predecessors**" in 2008 and 2010. (Compl. ¶¶ 46-48.) Because there is no known legal basis under Virginia law to assert predecessor liability of a corporate director, these allegations fail to support a plausible claim for relief.[14]

Finally, to the extent that CSXT's claim against the Individual Defendants is based upon an alleged "fail[ure] to appropriately manage NPBL, leading to its deteriorating financial condition," such allegations are both conclusory and, at best, based on vague and misleading allegations. (Compl. ¶ 112.) To support this conclusory allegation, CSXT has only alleged in a general, non-specific fashion that the Individual Defendants rejected both of CSXT's Proposals. However, as discussed above, these allegations fail to state a claim for breach of fiduciary duty. Such allegations as described above are so grossly misleading as to fall short of the *Twombly*

---

[14] To the extent that CSXT attempts to assert claims against the Individual Defendants arising from conduct that pre-dates the April 2018 Meetings, any actions or inaction more than two years before CSXT filed its Complaint would be beyond Virginia's statute of limitations for breach of fiduciary duty claims and therefore time barred. Va. Code. § 8.01-248 (2018); *Goldstein v. Malcolm G. Fries & Assocs.*, 72 F. Supp. 2d 620, 625 (E.D. Va. 1999) ("Claims for breach of fiduciary duty are governed by Virginia's catch-all statute of limitations, which was one year at the time of accrual of this cause of action.") (citing Va. Code § 8.01-248); *Sea Bay Hotel, LLC v. Gosnell*, 97 Va. Cir. 250, 261 (Fairfax Cir. 2017) ("Breach of fiduciary duty claims are governed by a two-year statute of limitations.") (citations omitted); *Professionals I, Inc. v. Pathak*, 47 Va. Cir. 476, 480 (Fairfax Cir. 1998) ("The limitations period for breach of fiduciary duty actions is prescribed by Virginia Code § 8.01-248") (citations omitted).

standard when the Court applies its "judicial experience and common sense." *Francis*, 588 F.3d at 193 (quoting *Iqbal*, 556 U.S. at 664). For the foregoing reasons, the Court should reject such allegations and dismiss the breach of fiduciary duty claim asserted against the Individual Defendants.

**B.      The Court Should Decline to Exercise Supplemental Jurisdiction Over the State Law Claim Asserted Against the Individual Defendants.**

Under 28 U.S.C. § 1367(c)(1), the Court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if…the claim raises a novel or complex issue of State law." The Court also has discretion to decline supplemental jurisdiction "in exceptional circumstances, [if] there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4) (2018). "The doctrine of supplemental jurisdiction is one of flexibility," and "district courts enjoy wide latitude when deciding whether to exercise supplemental jurisdiction in an action." *Peter Farrell Supercars, Inc. v. Monsen*, 82 Fed. Appx. 293, 297 (4th Cir. 2003) (citations and internal quotation marks omitted).

As explained above, Virginia law governing the fiduciary duties of corporate directors differs from the law of some states, such as Delaware. Virginia law in this area has developed significantly over the last two decades with key decisions in *Willard* and *Orr*. Here, where complete diversity of citizenship between the Individual Defendants, CSXT, and NPBL does not exist, interests of fairness and comity counsel against adjudicating this case in federal court. Accordingly, should the Court allow Count VI to proceed, the Court can and should exercise its discretion under 28 U.S.C. §§ 1367(c)(1) and 1367(c)(4) to decline to exercise supplemental jurisdiction over the breach of fiduciary duty claim against the Individual Defendants.

NPBL is a corporation chartered directly by Virginia's General Assembly and governed by Virginia's Stock Corporation Act, Va. Code §§ 13.1-601 *et seq*. The board's ability to act (or

to decline to act) on behalf of NPBL is governed by, *inter alia*, Va. Code §§ 13.1-684, -685, -688 (2018).  The Supreme Court of Virginia has explained that Virginia deviates from other states, such as Delaware, regarding the nature of a director's duty to the corporation and to shareholders.  *See generally Orr*, 673 S.E.2d 845; *Willard*, 515 S.E.2d at 284-85.  As explained in greater detail above, to accept CSXT's theory that the Individual Defendants breached their fiduciary duty on the facts alleged in the Complaint would require the Court to accept that a director can breach his duty to a company by acting in conformity with the company's operating agreement.  CSXT is also asking the Court to impose a duty on a corporate director to maximize profits for the company, a duty that has not been recognized under Virginia law.  *See, e.g., Willard*, 515 S.E.2d at 284-85, 288, *supra* at Section IV(A)(2).

Where a federal court is asked to rule on a novel question of state law, the court should decline supplemental jurisdiction and leave such questions to the purview of the state courts. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[N]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."); *Green v. Zendrian*, 916 F. Supp. 493, 498 (D. Md. 1996) (declining to exercise supplemental jurisdiction over claims brought under Maryland's state constitution "[b]ecause a novel issue of state law before this Court was a complex one … principles of comity counselled against the exercise of supplemental jurisdiction."); *Perkins v. City of Philadelphia*, 766 F. Supp. 313, 318 (E.D. Pa. 1991) ("[N]otions of comity restrain us from needlessly deciding issues of state law that are rightfully the province of state courts.").  CSXT asks this Court to accept a novel theory that the Individual Defendants breached their fiduciary duty to NPBL by declining to accept a special proposal from CSXT that would violate the Operating Agreement, without alleging that a motion was made and

a vote was taken on the Rate Proposal, and by declining to amend the Operating Agreement in violation of the shareholders' rights.  To accept these theories of breach of fiduciary duty would require this Court to rewrite the Operating Agreement and Virginia law.  This Court should decline the invitation to do so.

Under the catch-all provision of 28 U.S.C. § 1367(c)(4), the Court can decline to exercise supplemental jurisdiction "in exceptional circumstances" where "there are other compelling reasons for declining jurisdiction."  Here, the breach of fiduciary duty claim is an improper attempt to insert the Individual Defendants into what is at base a corporate governance dispute between NPBL's two shareholders and competitors.  Because there is not complete diversity of citizenship between the Individual Defendants and CSXT, this Court would be adjudicating a state law claim against a separate group of defendants without diversity jurisdiction—a situation appropriately left to Virginia's state courts.

The Court should, in the first instance, dismiss the case against the Individual Defendants for the reasons explained, *supra*, at Section IV(A).  Alternatively, the Court should decline to exercise supplemental jurisdiction over the single state law claim against these nondiverse Individual Defendants.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss Count VI against the Individual Defendants for failure to state a claim.  The Rate Proposal that CSXT complains was "essentially rejected" would have violated the plain terms of the Operating Agreement of NPBL had it been adopted. As for the Governance Proposal, only the shareholders—and not the members of the board—can accept such proposals.  With these facts shown from the pleadings and exhibits thereto, CSXT has pled itself out of court with respect to the Individual Defendants.

Additionally, the Complaint does not allege any formal action taken by the Individual Defendants in violation of their fiduciary duties.  Alternatively, the Court can and should dismiss this case by declining to exercise supplemental jurisdiction over the state law breach of fiduciary duty claim asserted against the Individual Defendants.

Respectfully submitted,

JERRY HALL, THOMAS HURLBUT,
And PHILIP MERRILLI

By:   _/s/ *M. F. Connell Mullins, Jr.*_
Hugh M. Fain, III (VSB #26494)
Email: hfain@spottsfain.com
M. F. Connell Mullins, Jr. (VSB # 47213)
Email: cmullins@spottsfain.com
John M. Erbach (VSB #76695)
Email: jerbach@spottsfain.com
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
(804) 697-2000 (Telephone)
(804) 697-2100 (Facsimile)
*Counsel for Defendants Jerry Hall, Thomas*
*Hurlbut, and Philip Merrilli*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 27th day of November, 2018 I will electronically file the foregoing Memorandum in Support of Motion to Dismiss Individual Defendants with the Clerk of Court using CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

By: _____/s/ *M. F. Connell Mullins, Jr.*_____
M. F. Connell Mullins, Jr. (VSB # 47213)
Email: cmullins@spottsfain.com
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
(804) 697-2000 (Telephone)
(804) 697-2100 (Facsimile)
*Counsel for Defendants Jerry Hall, Thomas*
*Hurlbut, and Philip Merrilli*

24