**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | | |
|---|---|---|
| CSX TRANSPORTATION, INC., et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:18CV530-MSD-LRL |
| | ) | |
| NORFOLK SOUTHERN RAILWAY COMPANY, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS INDIVIDUAL DEFENDANTS JERRY HALL, THOMAS HURLBUT, AND PHILIP MERILLI**

Defendants Jerry Hall, Thomas Hurlbut, and Philip Merilli, by counsel, submit the following as their Reply Memorandum in Support of their Motion to Dismiss (the "Motion to Dismiss"):

**I. INTRODUCTION**

CSXT[1] fails to identify any specific action or board vote taken by the Individual Defendants which could constitute a breach a fiduciary duty. Rather, CSXT continues to rely on vague allegations against the board members as a class, including allegations of conduct "effectively" taken, and conduct in 2008 and 2010—dates well beyond Virginia's two-year limitation period for breaches of fiduciary duty. Tellingly, CSXT cites to a case from the Northern District of Illinois applying Delaware law in an attempt to change the Individual Defendants' duties from those established under Virginia law. In doing so, CSXT has failed to

---

[1] Any capitalized terms not otherwise defined have the meaning given in the Complaint or the Memorandum in Support of Motion to Dismiss Individual Defendants Jerry Hall, Thomas Hurlbut, and Philip Merilli (the "Opening Memorandum").

address the critical distinctions between Virginia and Delaware law that were discussed in the Opening Memorandum.

Regardless of what standard applies, the Individual Defendants could not have accepted the Rate Proposal because it conflicts with the plain terms of the Operating Agreement. And, contrary to CSXT's arguments, the Governance Proposal required a vote of the shareholders because it contained governance changes that can be adopted only by NPBL shareholders. Thus, CSXT has failed to state a claim that the Individual Defendants breached their fiduciary duties, and the claim against them should be dismissed.

In the alternative, CSXT's arguments further demonstrate why this Court should decline to exercise supplemental jurisdiction. CSXT relies on an Illinois case to inject Delaware law into a Virginia dispute—law which Virginia's highest court has rejected multiple times. Given Virginia's distinct law in this area, it is appropriate for this Court to decline to exercise supplemental jurisdiction in this case.

## II. ARGUMENT

**A.    CSXT's arguments fail to address unique aspects of Virginia law concerning board member duties.**

CSXT cites *Montgomery v. Aetna Plywood, Inc.*, 39 F. Supp. 2d 915, 936 (N. D. Ill. 1998), for the proposition that "[d]irectors must represent the interests of all shareholders alike and owe a fiduciary duty not to favor one shareholder over another." CSXT's reliance on this authority is misplaced because the federal court in Illinois was applying Delaware law that is in conflict with Virginia law. *Montgomery* involved the application of Delaware's *Revlon* doctrine, which provides that "once the directors have determined to enter the corporation into a 'change of control' transaction, the directors owe a duty to obtain the maximum possible price for the selling shareholders." *Id.* at 935 (quoting *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*,

506 A.2d 173, 182 (Del. 1985)). Virginia courts have expressly rejected the *Revlon* doctrine, so *Montgomery* is inapposite and provides no support for CSXT. *Willard v. Moneta Bldg. Supply, Inc.*, 515 S.E.2d 277, 286 (Va. 1999) ("[T]he *Revlon* test is not applicable in Virginia.").

As explained in the Individual Defendants' Opening Memorandum, Virginia does not recognize a special duty owed to minority shareholders by the board of directors. Instead, the Supreme Court of Virginia has explained that the conduct of a director of a Virginia corporation is governed by Va. Code § 13.1-690 as follows:

> [I]n Virginia, a director's discharge of duties is not measured by what a reasonable person would do in similar circumstancesHall or by the rationality of the ultimate decision. Instead, a director must act in accordance with his/her good faith business judgment of what is in the best interests of the corporation…

*Willard*, 515 S.E.2d at 284. Thus, "[i]n most instances, if a director discharges his duty to the corporation, he probably has discharged his duties to the shareholders as a class." Laurence V. Parker, Jr., *Virginia is for Lovers and Directors: Important Differences Between Fiduciary Duties in Virginia and Delaware*, 2 William & Mary Bus. L. Rev. 51, 58-59 (2011) (discussing *Willard* and *Remora Invs., L.L.C. v. Orr*, 673 S.E.2d 845 (Va. 2009)). CSXT is attempting to hold the Individual Defendants to a separate standard when dealing with CSXT as a minority shareholder, thus trying to fashion new law that has been expressly rejected in Virginia.

In contrast to CSXT's argument, Virginia recognizes that a majority shareholder, such as Norfolk Southern, has certain rights as a majority shareholder. In *Willard*, the Supreme Court of Virginia explained:

> In *Glass v. Glass*, 228 Va. 39, 53-54, 321 S.E.2d 69, 78 (1984), we recognized that "majority stockholders [have] rights for which they [are] entitled to protection. They [have] the right to retain their stock, to control the management of the corporation, and to act together to accomplish their legitimate aims." Similarly in *Fein v. Lanston Monotype Mach. Co*., 196 Va. 753, 766, 85 S.E.2d 353, 360 (1955), we stated that "the holders of the majority of the shares of a corporation have the right and the power, ***by the election of directors and by the***

3

> *vote of their stock*, to determine the policy of their corporation and to manage and control its action."

*Willard*, 515 S.E.2d at 288 (emphasis added). Based on CSXT's arguments, the Individual Defendants' actions should be held to a different standard simply because they were appointed by the majority shareholder of NPBL. This is simply not the law in Virginia.[2]

**B.  CSXT fails to identify any Board action taken by these Individual Defendants that could breach their fiduciary duties to NPBL.**

No matter which standard applies, CSXT has failed to adequately plead a breach of fiduciary duty by the Individual Defendants. CSXT has made no attempt to explain how the Individual Defendants can be liable for "effectively reject[ing]" the Rate Proposal when no motion was ever made and seconded calling for a vote on the Rate Proposal—despite the fact that CSXT appointed two of the board members who attended the April 2018 board meeting. (Compl. ¶ 40.) Even if a motion had been made and seconded, the Individual Defendants would have been correct to reject the Rate Proposal since it conflicted with the terms of the Operating Agreement. And, key amendments proposed in the Governance Proposal could only be adopted by a vote of NPBL shareholders, not the board. Given the vague and outdated allegations of any other conduct by the NPBL board, CSXT has failed to state a claim against the Individual Defendants and so this Court should dismiss them from this case.

---

[2] CSXT also cites the case of *DCG&T ex. rel. Battaglia/Ira v. Knight*, 68 F. Supp. 3d 587 (E.D. Va. 2014), for the unremarkable propositions that "corporate directors must exercise good faith in their dealings with the corporation itself and shareholders" and that "[d]irectors also owe a duty of loyalty to the corporation, which duty forbids the director from placing himself in a position where his individual interest clashes with his duty to his corporation." (Opp'n Mem. at 8 (citing *DCG&T*, 68 F. Supp. 3d at 587 (internal citations and quotation marks omitted)).) *DCG&T* is factually distinguishable because it involved a conflict of interest transaction. Additionally, the case involved action actually taken by a board—a completed merger—rather than allegations of actions not taken. The facts of *DCG&T* render that case inapposite to the allegations against the Individual Defendants here.

4

> 1. *CSXT has not alleged that any motion was made or seconded to accept the Rate Proposal at a NPBL board meeting.*

In responding to the Motion to Dismiss, CSXT never addresses the fact that board members of Virginia corporations act only through votes at properly called meetings or through consents to corporate action in lieu of a meeting. *See* Va. Code §§ 13.1-684, -685, -688 (2018). Indeed, the Operating Agreement recognizes as much, stating that director action shall be taken by "vote for such resolutions, by-laws or other proceedings." (Compl. Ex. A at 8.) Thus, to plead that the Individual Defendants breached their fiduciary duty with respect to the Rate Proposal, CSXT must allege that a motion was made, seconded, and that the Individual Defendants voted against it. It is not enough for CSXT to vaguely allege that the board "*effectively* rejected it." (Compl. ¶ 40 (emphasis added).) Such vague, conclusory allegations do not meet the plausibility pleading standard. *See Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (rejecting pleading based on "naked assertions" and "unadorned conclusory allegations" devoid of "factual enhancement"). By failing to address this argument, CSXT has admitted this did not occur. *See Feldman v. Law Enforcement Assocs. Corp.*, 955 F. Supp. 2d 528, 536 (E.D.N.C. 2013) (finding that plaintiff conceded summary judgment was appropriate by his failure to respond to movant's arguments); *Klugel v. Small*, 519 F. Supp. 2d 66, 72 (D.D.C. 2007) ("[W]hen a party does not address arguments raised by a movant, the court may treat those arguments as conceded.").

Although not addressed in its Opposition to Motion to Dismiss by Defendants Hall, Hurlbut, & Merilli (the "Opposition Memorandum" or "Opp'n Mem."), in response to the motion to dismiss made by defendant Cannon Moss, CSXT cites the case of *Kennerly v. Columbia Chem. Corp.*, 119 S.E. 265 (Va. 1923), for the proposition that "a vote or other action on the part of the board of directors need not be a formal resolution." (Opp'n Mot. Dismiss

5

Cannon Moss at 16 (quoting *Kennerly*, 119 S.E. at 267 (citation and internal quotation marks omitted)).) Also in response to defendant Moss's motion, CSXT cites Va. Code § 13.1-690(C) as referencing director liability for "failure to take any action." (Opp'n Mot. Dismiss Cannon Moss at 17.) CSXT seems to be arguing that members of a board of directors have the authority to circumvent all appropriate procedures for board action to act on a proposed contract that has not been properly brought before the board for decision. There is no authority to support this argument. CSXT cites no cases that even suggest that board members breach their fiduciary duty by declining to immediately act on a single business proposal, independently and outside of a formal board vote, such as the Rate Proposal sent in a letter to Mr. Moss in March 2018. Such situations do not constitute "inaction" as contemplated in the Virginia Corporate Code. Otherwise, every member of every board of directors in Virginia would be subject to routine second-guessing by disgruntled shareholders who disagree about the merits of a single business opportunity that was not promptly acted on by a board member outside of a board meeting. While it makes no difference whether such action is formal or informal, *see Kennerly,* 119 S.E. at 267, action or inaction within the scope of the board's role is still required. Board members' roles are not the same as those of officers and full-time employees of the corporation they serve. The Complaint does not allege that there was any appropriate opportunity for action by the Individual Defendants.

     Significant here, as CSXT itself alleges it appointed two of the board members—the only board members who attended the April 2018 board meeting not named as defendants in this case. Thus CSXT's appointed members could have made a motion and seconded it, thereby bringing the Rate Proposal forward for a vote. Based on the lack of any motion to approve the Rate

Proposal, CSXT fails to plead a breach of fiduciary duty with respect to it, and the claim against the Individual Defendants should be dismissed on this basis.[3]

> 2. *Contrary to CSXT's arguments, the Individual Defendants have no authority to adopt the Rate Proposal or Governance Proposal.*

The Operating Agreement and NPBL By-laws, as amended, prohibited the Individual Defendants from taking the very action of which CSXT complains. With respect to the Rate Proposal, the Operating Agreement expressly prohibits its key terms. The Governance Proposal requires action by the shareholders that the board members cannot themselves take. Thus, the Individual Defendants could not, as a matter of settled Virginia law, breach their fiduciary duties to NPBL were they to rely on the Operating Agreement and other governing documents to reject either the Rate Proposal or the Governance Proposal.

CSXT characterizes the Motion to Dismiss as based on "merits argument[s], which are not appropriate at the motion to dismiss stage." (CSX Transp. Opp'n Mot. Dismiss ("Opp'n Mem.") at 9.) But CSXT's arguments are based entirely on the Complaint and the documents attached to it, including the Operating Agreement. The plain meaning of the Operating Agreement is a question of law well-suited for a motion made under Rule 12(b)(6). *See PBM Nutritionals, LLC v. Dornoch Ltd.*, 667 F. Supp. 2d 621, 627 (E.D. Va. 2009) ("A court may dismiss a breach of contract claim under Rule 12(b)(6) if, having given due consideration to the plaintiff's factual allegations, the court finds that the contract is unambiguous with respect to all

---

[3] It is curious that CSXT brings its claim against the Individual Defendants and Cannon Moss as a derivative claim, while declining to name as defendants the two board members appointed by CSXT, neither of whom made a motion to approve the Rate Proposal at the April 2018 board meeting. It was in their power to do so, and by CSXT's logic, such failure breached their fiduciary duty. This failure to assert a claim against the CSXT-appointed board members of NPBL suggests that CSXT is not truly pursuing the corporate interests of NPBL but instead attempts to disguise an individual shareholder claim (which Virginia law does not recognize) as a derivative claim. *See DCG&T*, 68 F. Supp. 3d at 585.

7

of the plaintiff's breach of contract allegations.") (citation and internal quotation marks omitted); *see also Devnew v. Brown & Brown, Inc.*, 396 F. Supp. 2d 665, 669 (E.D. Va. 2005) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes…This exception is targeted at cases involving a dispute over the terms of, meaning of, or obligations imposed by a written instrument, such as a contract.") (citations omitted). CSXT's faulty pleading raises legal questions well-suited for disposal on a motion to dismiss. *See Harte-Hanks Direct Marketing/Baltimore, Inc. v. Varilease Tech. Fin. Group, Inc.*, 299 F. Supp. 2d 505, 519 (D. Md. 2004) ("The interpretation and application of unambiguous contractual language is a question of law, which a court may decide on a motion for summary disposition [under Rule 12(b)(6)]."); *see also Cent. Tel. Co. of Va. v. Sprint Communs. Co. of Va., Inc.*, 759 F. Supp. 2d 789, 798 (E.D. Va. 2011) ("Whether a contract is ambiguous is a question of law for the court's determination.").

Attempting to avoid the strictures of the Operating Agreement and other NPBL governing documents, CSXT attempts to manufacture a claim of ambiguity where none exists. To do so, CSXT points to the existence of different switch charges for different commodities to argue that the "uniform rate" requirement of the Operating Agreement is ambiguous. Under Virginia law, a contract is ambiguous only "when it may be understood in more than one way or when it refers to two or more things at the same time." *S.F. v. West Am. Ins. Co.*, 463 S.E.2d 450, 452 (Va. 1995) (citations and internal quotation marks omitted). Here, the plain language of the Operating Agreement cannot plausibly be interpreted to mean that the board may establish different rates for ***different shareholders***, which is precisely what the Rate Proposal requests. And, while CSXT claims that "there is nothing in [the Rate Proposal] that requires only CSXT being granted the benefit of that rate structure," the plain terms of the Rate Proposal demonstrate

8

otherwise. If accepted, the Rate Proposal would result in a private contract between NPBL and CSXT contingent upon a guaranteed minimum volume. (Compl. Ex. E at 6 ("The foregoing terms would be subject to and become binding only upon memorialization in a mutually agreed written format (rail transportation contract or equivalent) duly signed for both NPBL and CSXT.").) The "uniform rate" requirements of the Operating Agreement, by its plain terms, cannot contemplate a separate rate structure for one shareholder.

CSXT also challenges the notion that its proposal violates the Fifteenth Article of the Operating Agreement by offering to use CSXT locomotives instead of NPBL locomotives, arguing that "NPBL has often made substantial exceptions in the past." (Opp'n Mem. at 10.) While the Operating Agreement does permit exceptions, what CSXT proposes—a minimum of 18,000 CSXT cars per year moved by CSXT locomotives—would become the rule, not an exception. (*Compare* Compl. Ex. A at 7 *with* Compl. Ex. E at 5.) Moreover, the Twelfth Article of the NPBL By-laws, adopted by the shareholders (including CSXT) in 1996, has expressly vested the president of NPBL with the authority to make such exceptions (subject to board confirmation after the fact). (Compl. Ex. D at 6.) Even assuming that the refusal to make such an exception for 18,000 cars on an ongoing basis could constitute a breach of fiduciary duty, such a breach could not be asserted against the Individual Defendants as board members when there is no allegation that the requested exception was brought before them by the president of NPBL.

Importantly, the Operating Agreement is a contract among the shareholders of NPBL, not among the members of the board. Thus, CSXT and Norfolk Southern are parties to the Operating Agreement, and the Individual Defendants are not. Nevertheless, the Operating Agreement governs the conduct of the NPBL board members because by its plain, unambiguous

9

terms, "each of the Companies, parties hereto, agree[d] that the Director[s] named by each … shall and will vote for such resolutions, by-laws, and other proceedings as may be necessary to carry into effect the agreements herein made."  In other words, by its plain language, the Operating Agreement recognizes that the shareholders—*i.e.* CSXT and Norfolk Southern—will direct their appointed board members to follow the terms of the Operating Agreement made by those very shareholders.  Thus, any decision-making process that the NPBL board undertakes must adhere to the terms of the Operating Agreement.[4]

It is the process that matters here—not the outcome—where the Individual Defendants are accused of breaching their fiduciary duties under Virginia law.  Because the Rate Proposal is inconsistent with the processes established by the Operating Agreement and the NPBL By-laws, as a matter of law, a member of the NPBL board cannot breach his fiduciary duty if his actions are consistent with those documents.  *See Willard*, 515 S.E.2d at 290 (holding that board members fulfill their fiduciary duty by "engag[ing] in an informed decision making process that … produce[s] a defensible business decision.").  CSXT and Norfolk Southern have agreed that their appointed directors *must* adhere to the Operating Agreement, so it necessarily follows that doing so when evaluating the Rate Proposal would be a "defensible business decision." Accordingly, the breach of fiduciary duty claim against the Individual Defendants must fail with respect to the Rate Proposal as a matter of law.

For similar reasons, allegations that the Individual Defendants should have adopted the Governance Proposal also fail to state a claim for breach of fiduciary duty.  CSXT argues that the Individual Defendants should have considered the Governance Proposal in piecemeal fashion,

---

[4] To the extent that CSXT wishes to litigate the meaning and enforcement of the Operating Agreement, such a claim involves a contract dispute among the shareholders, not a breach of fiduciary duty claim against the board members.  Indeed, CSXT has already brought such a claim against Norfolk Southern in Count V of its Complaint.

adopting those "other measures the proposal asked the Board to take, such as the implementation of a corporate compliance program and robust conflict of interest protocols." (Opp'n Mem. at 10-11.) This argument is simply not supported by the allegations. Nowhere in the Complaint does CSXT allege facts demonstrating that its Governance Proposal was presented in such a manner. The issue remains that the NPBL By-laws prohibit the Individual Defendants from amending the board election process—only the shareholders can do so. (Compl. Ex. D at 4.) Thus, the Individual Defendants could not have adopted the Governance Proposal even if it had been presented for a vote during the April board meeting. CSXT has also failed to address this precise argument raised in the Opening Memorandum and has therefore conceded its veracity. *See Feldman*, 955 F. Supp. at 536; *Klugel*, 519 F. Supp. 2d at 72.

With respect to both the Rate Proposal and the Governance Proposal, it is not enough for CSXT to allege that it disagreed with the NPBL board or Norfolk Southern. Nor is it sufficient that CSXT may have proposed an idea that was rejected. Rather, to plead a breach of fiduciary duty, CSXT must plead facts demonstrating that the Individual Defendants' failed to "engage[ ] in an informed decision making process that … produced a defensible business decision." *Willard*, 515 S.E.2d at 290. Viewing the facts in CSXT's favor, the Court cannot plausibly draw such a conclusion. Accordingly, the Court should dismiss the claim against the Individual Defendants on this basis.

> 3. *Any remaining allegations against the Individual Defendants are impermissibly vague or beyond the applicable limitation period.*

Outside of the Rate Proposal and Governance Proposal allegations, all that remains are vague allegations about the financial performance of NPBL and alleged conduct occurring in 2008 and 2010—well beyond Virginia's two-year limitation period for breach of fiduciary duty claims. In its Opposition Memorandum, CSXT has made no attempt to address the untimeliness

11

of those allegations that involve events taking place in 2008 and 2010 allegedly involving "the Individual Defendants and/or their predecessors." (Compl. ¶ 48.)[5] Accordingly, the Court can and should disregard those allegations for purposes of resolving the Motion to Dismiss.

In an attempt to overcome these pleading shortcomings, CSXT points to the alleged "flat or down" NPBL revenue "over the past several years." (Opp'n Mem. at 13.) Merely demonstrating that a company's revenue is "flat or down" is insufficient to plead breach of fiduciary duty. There must be some specific conduct by the accused board members that led to the purported financial condition, and that conduct must involve a failure to meet the standards set forth in Va. Code § 13.1-690. Otherwise, the board of every corporation that sees its revenue remain flat for a year or two would be subject to such claims. CSXT cites absolutely no legal authority standing for such a proposition, and no such authority exists. It is not enough to second-guess the board, or select members of the board, for NPBL's financial performance over a span of years. Rather, CSXT must allege facts demonstrating that the Individual Defendants failed to "engage in an informed decision making process that…produced a defensible business decision." *Willard*, 515 S.E.2d at 290. Again, no such facts have been alleged, so the breach of fiduciary duty claim fails on this basis.

---

[5] As CSXT is well-aware, one of the Individual Defendants, Jerry Hall, has retired since CSXT filed this case. The entirety of his tenure on the NPBL board lasted from January 2018 through November 2018. It is difficult to conceive any basis on which he could be held personally liable for actions CSXT has pleaded spanning a decade. The same can be said for the other two Individual Defendants, who became NPBL board members in 2013 (Thomas Hurlbut) and 2016 (Philip Merilli). The pleading of decades-old events casts serious doubt on the propriety of including these Individual Defendants in what is, at most, a dispute between CSXT and Norfolk Southern.

## C. CSXT's attempt to rely on out-of-state law further demonstrates why this Court should decline to exercise supplemental jurisdiction.

CSXT argues in favor of this Court's exercise of supplemental jurisdiction based on the premise that its breach of fiduciary duty claim involves "nothing but the application of settled Virginia law to the facts." (Opp'n Mem. at 14.) But in that same brief, CSXT has misstated Virginia law by citing a federal case from the Northern District of Illinois, which in turn cites Delaware law that Virginia has expressly rejected. (Opp'n Mem. at 7 (quoting *Montgomery*, 39 F. Supp. 2d at 936).) If CSXT wishes to argue for Virginia to adopt Delaware's law governing board members' duties of care, then considerations of comity suggest that argument should be made in a Virginia court. CSXT's arguments based on convenience and judicial economy fail to outweigh considerations of federalism and state sovereignty. *See, e.g., Newman v. Cty. of Fresno*, No. 1:16cv1099, 2018 U.S. Dist. LEXIS 121861, at *24-25 (E.D. Cal. July 20, 2018) (declining to exercise supplemental jurisdiction where considerations of dual sovereignty and comity outweighed judicial economy). Thus, as an alternative to dismissing the breach of fiduciary duty claim outright, the Court should decline to exercise supplemental jurisdiction over it.

## III. CONCLUSION

CSXT cannot avoid Virginia law governing board members' fiduciary duties in its effort to involve the Individual Defendants in this lawsuit, which is at most a shareholder dispute. Nor can CSXT plead a breach of fiduciary claim under Virginia's standard based on the facts alleged here, particularly considering the terms of the Operating Agreement and NPBL By-laws. Accordingly, the Court should grant the Individual Defendants' Motion to Dismiss.

Respectfully submitted,

JERRY HALL, THOMAS HURLBUT,
and PHILIP MERILLI

By:    /s/ *John M. Erbach*
Hugh M. Fain, III (VSB #26494)
Email: hfain@spottsfain.com
M. F. Connell Mullins, Jr. (VSB # 47213)
Email: cmullins@spottsfain.com
John M. Erbach (VSB #76695)
Email: jerbach@spottsfain.com
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
(804) 697-2000 (Telephone)
(804) 697-2100 (Facsimile)
*Counsel for Defendants Jerry Hall, Thomas Hurlbut, and Philip Merilli*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of January, 2019, I will electronically file the foregoing Reply Memorandum in Support of Motion to Dismiss Individual Defendants with the Clerk of Court using CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

By: _____/s/_____
John M. Erbach (VSB #76695)
Email: jerbach@spottsfain.com
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
(804) 697-2000 (Telephone)
(804) 697-2100 (Facsimile)
*Counsel for Defendants Jerry Hall, Thomas Hurlbut, and Philip Merilli*