IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**CSX TRANSPORTATION, INC.,**
individually and on behalf of
**NORFOLK & PORTSMOUTH BELT LINE
RAILROAD COMPANY,**

      **Plaintiff,**

v.                                                  Civil Action No. 2:18-cv-530

**NORFOLK SOUTHERN RAILWAY COMPANY,
NORFOLK & PORTSMOUTH BELT LINE
RAILROAD COMPANY, JERRY HALL,
THOMAS HURLBUT, PHILIP MERILLI,**
and **CANNON MOSS,**

      **Defendants.**

### REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant Cannon Moss ("Moss"), by counsel, states as follows in support of his Motion to Dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted (the "Motion to Dismiss") and in reply to the Opposition to the Motion to Dismiss filed by Plaintiff CSX Transportation, Inc. ("CSXT") (ECF No. 40) (the "Opposition").

### I.    Argument

**A.    The Court Lacks Subject Matter Jurisdiction Over Count VI, and Moss Should be Dismissed.**

    1.    <u>Count VI Does Not Arise from the Same Case or Controversy as CSXT's Federal Question Counts.</u>

Count VI's discrete claim against Moss and the broader allegations underlying CSXT's anti-trust claims do not form part of the same case or controversy under Article III of the United States Constitution. <u>See</u> 28 U.S.C. § 1367(a). CSXT fails to adequately establish an actual common nucleus of operative facts. And, because of the disconnect in time and scope between the alleged

facts underlying CSXT's anti-trust claims and the Norfolk & Portsmouth Belt Line Railroad Company (the "NPBL") board meeting of April 2018 at issue in Count VI, a plaintiff would not ordinarily be expected to try the anti-trust claims (against Norfolk Southern Railway Company ("NS") and the NPBL) and Count VI (against Moss and other directors) in one judicial proceeding. As a result, supplemental jurisdiction is lacking.

In the Opposition, CSXT argues that it needs only a "central fact pattern" to establish supplemental jurisdiction. See Opposition at 8 (ECF No. 40, at 8). Although CSXT may attempt to craft such a fact pattern in the Complaint, the *central* facts underlying the anti-trust claims and Count VI are not the same. The anti-trust claims allege action by defendant NS and NS's attempts to monopolize the railroad market. E.g., Compl. ¶ 51-53. The central facts for such claims, which CSXT must prove at a trial, are the scope of the relevant market and NS's anticompetitive conduct causing a restraint on trade. See, e.g., Dickson v. Microsoft Corp., 309 F.3d 193, 205-06 (4th Cir. 2002). While the anti-trust claims' fact pattern focuses on the railroad market and NS's alleged attempts to monopolize it, Count VI focuses on the duties Moss owed to the NPBL and the actions he took as a director of the NPBL. Although related at a high level of extrapolation, the *central* facts for each claim are separate and distinct. CSXT is not maintaining Count VI on its own behalf, but derivatively on behalf of the NPBL. The alleged injury to the NPBL (based on Moss's alleged breach of fiduciary duty owed to the NPBL) is far from coextensive with the alleged anticompetitive injury to competitors of NS (based on NS's alleged efforts to monopolize the railroad market). These distinct claims, therefore, address distinct fact patterns. Accordingly, there is not one central fact pattern to support supplemental jurisdiction over Count VI.

Importantly, CSXT's mere legal conclusions alleged in the Complaint are not taken as true and thus, have no bearing on CSXT's attempt to establish subject matter jurisdiction. "[T]he tenet

that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see Brunelle v. Norfolk S. Ry. Co., No. 2:18-cv-290, 2018 WL 4690904, at *2 (E.D. Va. Sept. 28, 2018) (citing Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009)) ("In a facial challenge, the court evaluates the facts in a complaint using the same standard used for a Rule 12(b)(6) motion to dismiss."). In the Opposition, CSXT argues that Moss's conduct was "part and parcel" of the anti-trust claims, but cites only conclusory allegations. See Opposition at 8 (ECF No. 40, at 8). CSXT's repeated conclusory allegation that Moss and the other directors (and the NPBL) were "in conspiracy" with NS, (e.g., Compl. ¶¶ 32, 54, 56, 57, 58, 79), is not entitled to be taken as true because it is a legal conclusion lacking in supporting, concrete facts. See, e.g., Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007) ("a bare assertion of conspiracy will not suffice"); Beasley v. FV-I, Inc., No. 1:13-cv-116, 2013 WL 1192018, at *5 (E.D. Va. Mar. 21, 2013) ("Conclusory or general allegations of conspiracy are insufficient to withstand a motion to dismiss."). As a result, CSXT fails to carry its burden to allege sufficient facts to establish a connection between the anti-trust claims and Count VI. CSXT, therefore, fails to establish subject matter jurisdiction over Count VI.

Equally critical, CSXT fails to show that these disparate claims would ordinarily be expected to be tried in one judicial proceeding. In the Opposition, CSXT admits that United Mine Workers v. Gibbs, 383 U.S. 715 (1966) and its progeny provide the applicable test for § 1367(a) supplemental jurisdiction, see Opposition at 8 (ECF No. 40, at 8), but CSXT asks the Court to apply only half the applicable test. "[W]hether the federal-law claims and State-law claims are part of the same case is determined by whether they 'derive from a common nucleus of operative fact' ***and*** are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 615 (4th Cir. 2001) (quoting

3

Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349 (1988)) (emphasis added). As Moss set forth in his opening brief, a joint trial of both the anti-trust claims and Count VI would have to cover a wide-range of facts and opinions before a single jury. As CSXT acknowledges in its briefing, "CSXT has alleged 'separate and distinct occurrence[s]' that give rise to separate claims." Opposition to NS Motion to Dismiss, at 8 (ECF No. 42, at 9) (quoting Kancor Americas, Inc. v. ATC Ingredients, Inc., No. 1:15-cv-589, 2016 WL 740061, at *6 (E.D. Va. Feb. 25, 2016)). Engrafting a broadly ranging anti-trust dispute between rival corporations onto a narrow gripe about the specific acts of an individual director of "a distinct corporation . . . independent . . . from its two remaining shareholders," Compl. ¶ 24, is an attempt to exert business leverage, not ordinarily expected trial strategy. As a result of the disparity between CSXT's federal and state law claims, the Court lacks supplemental jurisdiction over Count VI against Moss under § 1367(a). The Court should dismiss the claim accordingly.

Finally, CSXT's citation to Gilder v. PGA Tour, Inc., 936 F.2d 417, 421 (9th Cir. 1991) (addressing subject matter jurisdiction *sua sponte* on appeal of a preliminary injunction) is unavailing. In Gilder, unlike here, there was only one defendant. Accordingly, the alleged acts and omissions of that one defendant, PGA Tour, Inc., were necessarily intertwined and shared a common nucleus – the defendant. Here, there are six defendants accused of differing acts and omissions, and thus, different claims. Rather than a single nucleus of facts, there are six. Supplemental jurisdiction is lacking here.

> 2. Even if the Court has Supplemental Jurisdiction Over Count VI, It Should Decline to Exercise Jurisdiction In Its Discretion.

Alternatively, the Court should exercise its discretion and decline, under § 1367(c), to exercise jurisdiction over Count VI. Section 1367(c)(4) codifies the wide discretion involved in a court's decision to exercise supplemental jurisdiction over state law claims. See, e.g., Gibbs, 383

U.S. at 726 ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right."). Section 1367(c)(4) provides that "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . in exceptional circumstances, there are other compelling reasons for declining jurisdiction." In his opening brief, Moss offered two compelling reasons for declining jurisdiction: the complexity of the case, see Crocker v. Borden, Inc., 852 F. Supp. 1322, 1329-31 (E.D. La. 1994), and the potential for jury confusion, see Lewis v. United States, 812 F. Supp. 620, 624-25 (E.D. Va. 1993). CSXT's arguments in opposition are unavailing.

First, CSXT argues that the complexity of federal law claims cannot serve as a basis to decline jurisdiction under § 1367(c)(4) because complexity of state law claims serves as a basis to decline jurisdiction under § 1367(c)(1). This argument ignores the plain text of § 1367(c)(4). After subsections (c)(1)-(3) list bases on which the Court may decline jurisdiction, subsection (c)(4) provides for the Court to decline jurisdiction for "*other* compelling reasons for declining jurisdiction." § 1367(c)(4) (emphasis added). If subsection (c)(4) was cabined by the express bases listed in subsections (c)(1)-(3), it would be superfluous. And, "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." Corley v. United States, 556 U.S. 303, 314 (2009) (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004)). Accordingly, CSXT's argument is without merit.

Moreover, CSXT incorrectly argues that Moss "points to no authority for this proposition." Opposition at 10 (ECF No. 40, at 10). To the contrary, Moss cited Crocker v. Borden, Inc., 852 F. Supp. 1322, 1330 (E.D. La. 1994) in his opening brief, in which the Court declined to exercise supplemental jurisdiction under § 1367(c)(4) "as a matter of fairness to the litigants" because, based on the complexity of the case and number of litigants, "these cases most assuredly will not

5

be tried for several years," an inefficient judicial result for the litigants. The compelling reason identified both in Crocker and here is the overall logistical complexity of the case. Because a trial of all these claims at once would be unworkable, the complexity of the case warrants declining jurisdiction.

Second, CSXT contends that there is no potential for jury confusion if all the claims are tried together. The liability of NS for monopolization claims has no relevance to Moss's potential individual liability to the NPBL. However, a mixing and meddling of all of the evidence concerning the anti-trust claims, as well as the jury instructions related thereto, would prejudice Moss by allowing the jury to consider testimony concerning alleged injury to competitors of NS, and transposing such allegedly bad acts to its consideration of the duties Moss owed to the NPBL concerning the NPBL's financial well-being.

Finally, the fact that Moss may be a deponent and trial witness in this case does not justify keeping him as a *defendant* in this case. Regardless of how "efficient" it may be for CSXT to sue Moss here, Moss's individual rights regarding a fair jury trial must be preserved. Relevant factors for declining supplemental jurisdiction include "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995) (citing Cohill, 484 U.S. at 350 n.7); Growth Horizons, Inc. v. Delaware County, 983 F.2d 1277, 1284 (3d Cir. 1993)). Nothing bars CSXT from pursuing its claims against Moss in Virginia court, but Moss should not be dragged into CSXT's quarrel with NS in federal court.[1]

---

[1] NS has not moved to dismiss the federal-law claims against it. See (ECF No. 35, at 3). Therefore, this case will proceed, at least as against NS, regardless of Moss's potential dismissal. Learning from the outcome of that case before dragging Moss, individually, into court would certainly be sensible for CSXT, but should CSXT insist on litigating its separate fiduciary duty claims against Moss right away, state court provides the proper forum.

**B.     Count VI Fails to State a Claim Upon Which Relief Can Be Granted.**

Even if the Court declines to dismiss Count VI for lack of subject matter jurisdiction, the Court should dismiss Count VI because it fails to state a claim for relief as a matter of law. CSXT's disagreement with the NPBL's business decisions does not give rise to a cognizable cause of action for multiple reasons.

> 1.     In its Opposition, CSXT Erroneously Discards the Importance of the Governing Corporate Documents as "Merits Arguments," Ignoring the Plausibility Requirement of Rule 8 and *Iqbal/Twombly*.

CSXT asserts that "[t]o the extent Moss argues his alleged actions were required by the Operating Agreement, that is a merits argument that is not appropriate for resolution at the motion to dismiss stage." Opposition at 12 (ECF No. 40, at 12). CSXT cites no authority for this dismissive point. To the contrary, this "merits argument" must be addressed on Moss's motion to dismiss. The *merits* of CSXT's claims as pled in the Complaint are precisely what Rule 8 targets by requiring that claims be pled in federal court with plausibility. "The United States Supreme Court has interpreted the pleading standard set forth in Rule 8(a) as requiring that a complaint include enough facts for the claim to be 'plausible on its face' and thereby 'raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" Moody v. City of Newport News, Va., 93 F. Supp. 3d 516, 525 (E.D. Va. 2015) (quoting Twombly, 550 U.S. at 555). Accordingly, in resolving a Rule 12(b)(6) motion, the Court must conduct a "context-specific analysis" of the well-pled factual allegations, drawing on "judicial experience and common sense" to determine whether such allegations "produce an inference of liability strong enough to nudge the plaintiff's claims across the line from conceivable to plausible." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (internal quotations omitted). If the facts pled do not state a cognizable claim as a matter of law, there is no need to proceed to discovery.

Here, Moss does not attempt to create a factual dispute by arguing that "his alleged actions were required by the Operating Agreement." Opposition at 12 (ECF No. 40, at 12). Rather, Moss argues that his "alleged actions" do not state a claim *as a matter of law* because the shareholder's agreement attached to the Complaint as Exhibit A (ECF No. 1-1, at 3) (the "1897 Agreement") required, and therefore legally exonerated, the conduct that CSXT alleges constituted a breach of Moss's fiduciary duties. Of course, "in considering a typical Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." Moody, 93 F. Supp. 3d at 526 (citations omitted). While resolution of factual questions is inappropriate on a motion to dismiss, CSXT's contention that "merits arguments" are inappropriate on a motion to dismiss is not correct under applicable law. Accordingly, for the reasons set forth below and in Moss's opening brief, the Court should dismiss Count VI because the Complaint simply does not allege unlawful conduct by Moss.

2. The NPBL's Corporate Documents Govern the Directors' Duties Owed to the NPBL, and CSXT Fails to Identify an Actual Breach of Fiduciary Duty as a Result.

The NPBL's corporate governance documents define the scope and nature of the duties owed by the NPBL's directors to the NPBL, as supplemented by Virginia law. They also constrain the acts directors like Moss may take. In addition, the purposes and goals of the corporation, as set forth in its corporate documents, guide the directors and inform their business judgment. CSXT argues that the NPBL's unique structure and purpose – as a cost-of-capital corporation – "does not impact the viability of the breach of fiduciary duty claim." Opposition at 12 (ECF No. 40, at 12). However, Virginia law demonstrates the opposite. The NPBL's unique purpose is critical to CSXT's claim that Moss breached his fiduciary duties. By ignoring the NPBL's unique purpose and governing documents, CSXT fails to adequately allege that Moss actually breached any duty.

Virginia Code § 13.1-673 provides that "[a]ll corporate powers shall be exercised by or under the authority of, and the business and affairs of the corporation managed under the direction of, its board of directors, *subject to any limitation set forth in the articles of incorporation or in an agreement authorized under § 13.1-671.1*." Va. Code Ann. § 13.1-673(B) (emphasis added). Section 13.1-671.1 authorizes shareholder agreements, like the 1897 Agreement and the 1989 Supplemental Agreement attached to the Complaint as Exhibit C. Among the provisions enforceable in shareholders agreements are those that "[o]therwise govern[] . . . the management of the business and affairs of the corporation . . . ." Va. Code Ann. § 13.1-671.1(A)(8). The 1897 Agreement governs the business and affairs of the NPBL by setting forth specific goals, purposes, and plans of the NPBL. See, e.g., 1897 Agreement Arts. 9, 15 (ECF No. 1-1, at 5-6, 7-8).

The goals, purposes, and plans of the NPBL, as well as the limitations on board action, control whether Moss actually breached his fiduciary duties. Moss does not dispute that he "is required to act in 'good faith' and to 'discharge his duties' in accordance with 'the best interests of the corporation.'" Opposition at 11 (ECF No. 40, at 11) (quoting Va. Code Ann. § 13.1-690(A)). However, the Virginia Stock Corporation Act makes clear that the best interests of the corporation are defined and informed by the governing corporate documents like the 1897 Agreement. See Va. Code Ann. § 13.1-673(B).

Here, the best interest of the corporation is not absolute profit maximization. The clear directive from the 1897 Agreement is to earn merely a net revenue sufficient to pay interest on the outstanding capital stock. In its Opposition, CSXT repeatedly recognizes that the NPBL was formed "to provide its members equal and efficient access to the facilities to which it connects." Opposition at 12 (ECF No. 40, at 12). CSXT acknowledges that the NPBL is "inherently a cooperative organization." Id. There is no mention in the 1897 Agreement of revenue goals, profit

9

sharing, etc., other than the directive to "yield a net revenue sufficient to pay the interest upon the bonds outstanding and six per cent on the stock."[2] 1897 Agreement Art. 9, (ECF No. 1-1, at 5-6). Nor is the 1897 Agreement a vanilla charter, founding the NPBL to conduct all lawful business.[3] Critically, the facts alleged in the Complaint demonstrate that the NPBL has provided its shareholders "equal and efficient access to the facilities to which it connects." Opposition at 12 (ECF No. 40, at 12). NS and CSXT have equal access to the NPBL's lines. The fact that NS has its own, separate access to the Norfolk International Terminal ("NIT") is outside the control of the board of the NPBL, see Compl. ¶ 24 ("NPBL, a distinct corporation under Virginia law, remains an independent entity from its two remaining shareholders, NS and CSXT."), and does not alter the otherwise equal access to the NPBL's lines that the NPBL has continually offered, see Compl. ¶ 20. CSXT alleges nothing to the contrary regarding access to the NPBL's lines. CSXT only complains that because NS has other resources available to it, NS does not need to utilize the NPBL to access NIT, and thus does not need to pay the NPBL its rates to access NIT. This reality is not the fault of the NPBL or its directors.

In its Opposition, CSXT relatedly fails to identify how Moss breached his duties, which are owed to the shareholders of the NPBL as a class, not individually. See Opposition at 14 (ECF No. 40, at 14) (citing Remora Investments, L.L.C. v. Orr, 277 Va. 316, 323 (2009)). CSXT resorts to citing an Illinois case, interpreting Delaware law. See id. (citing Montgomery v. Aetna Plywood, Inc., 39 F. Supp. 2d 915, 936 (N.D. Ill. 1998) (addressing ERISA claims concerning an ESOP's sale of stock)). Delaware law does not apply to the NPBL, a Virginia corporation. Indeed,

---

[2] Additionally, as set forth in Moss's opening brief, the 1897 Agreement also does not mention at all the Norfolk International Terminal, contrary CSXT's allegations in paragraph 15 of the Complaint.

[3] Indeed, the articles of incorporation are required to state the NPBL's purposes and business. See Va. Code Ann. § 13.1-620(D) ("If any corporation is to conduct the business of a railroad . . . that shall be stated in the articles of incorporation and a brief description of the business shall be included.").

Delaware corporate law is a distinct body of law, based on both a different statute and long history of separate courts of equity. See, e.g., Williams v. 5300 Columbia Pike Corp., 891 F. Supp. 1169, 1185, n.38 (E.D. Va. 1995) (discussing the "unique" aspects of Delaware corporate law). CSXT cites no case recognizing a duty not to favor one shareholder over another under Virginia law. As a result, CSXT fails to identify a breach of fiduciary duty owed to the shareholders of the NPBL as a whole. Based on these broader defects in CSXT's breach of fiduciary duty claim, the specific instances of alleged breaches fail to provide sufficient facts for CSXT's Complaint to state a claim upon which relief can be granted.

    3.    CSXT Fails to State a Claim for Breach of Fiduciary Duty Against Moss Based on the Rate Proposal.

CSXT's claim based on the letter to Moss and Donna Coleman conveying a business proposal for the NPBL and CSXT for long term rail service to NIT, Compl. Ex. E (ECF No. 1-5) (the "Rate Proposal"), fails to adequately allege a breach of fiduciary duty.

"[I]n Virginia, a director's discharge of duties is not measured by what a reasonable person would do in similar circumstances or by the rationality of the ultimate decision." Willard ex rel. Moneta Bldg. Supply, Inc. v. Moneta Bldg. Supply, Inc., 258 Va. 140, 151 (1999). "Instead, a director must act in accordance with his/her good faith business judgment of what is in the best interests of the corporation." Id. As noted above, the purposes of the corporation and limitations on the board set forth in the governing corporate documents, like the 1897 Agreement, inform, objectively, what is in the best interest of the corporation, and inform, subjectively, the directors' business judgment. In addition to failing to allege any breach of fiduciary duty based on the underlying purposes of the NPBL as a matter of law, CSXT fails to plausibly allege a sufficient quantum of facts to show an actual breach of fiduciary duty based on the Rate Proposal for multiple reasons.

First, CSXT's claim is hyper-focused on the alleged "obvious benefits to NPBL" from CSXT's Rate Proposal. CSXT takes the brash position that its Rate Proposal was so clearly beneficial to the best interest of the NPBL that declining it at all, and keeping in place the same rates that have been in effect since 2009, was a breach of the fundamental duties that Moss owed to the NPBL. However, the estimated economic impact on the NPBL is two short paragraphs based on CSXT's undisclosed, "internal projections." (ECF No. 1-5, at 6).[4] Moreover, the Rate Proposal conspicuously omits any projections or estimates of *profit* for the NPBL. Instead, the Rate Proposal focuses only on the supposed revenue to the NPBL. Revenue estimates, without cost estimates, tell only half the story. Moreover, this omission from the Rate Proposal highlights what the Rate proposal is: a sales offer made by CSXT as a customer of the NPBL, not a business proposal by CSXT as a shareholder of the NPBL.

Second, CSXT argues that the Rate Proposal is not barred by the directive of the 1897 Agreement, while ignoring the reality of the Rate Proposal. Article Nine of the 1897 Agreement requires a uniform rate be offered to users of the NPBL. See (ECF No. 1-1, at 5-6). In contrast, the Rate Proposal clearly conveys CSXT's offer to enter into a "definitive rail transportation agreement" between CSXT and the NPBL, i.e., a unique rate for CSXT. (ECF No. 1-5, at 3-4). Importantly, the Rate Proposal plainly acknowledges that "private contracts" like the Rate Proposal would likely require an amendment to the NPBL's corporate documents. (ECF No. 1-5, at 4) ("[S]ome Board members in the past have argued that an amendment to the NPBL bylaws would be required to permit the NPBL to enter into private freight contracts . . . ."). But, CSXT

---

[4] CSXT's argument that it need not tender an expert report with its Complaint is inapposite. CSXT cites to a medical malpractice case in which the Court rejected the defendant's argument that the plaintiff needed to attached an expert report to its complaint to survive a motion to dismiss, based on the Virginia medical malpractice statutes. Opposition at 16 (ECF No. 40, at 16) (citing Baxter v. United States, No. 1:15-cv-633, 2016 WL 5073725, at *3 (E.D. Va. Sept. 20, 2016)). Here, CSXT need not tender an expert report, but the Rate Proposal itself is lacking in sufficient detail to show an economic impact on the NPBL great enough to give rise to a breach of fiduciary duty.

posits, its offer in the Rate Proposal is "so sufficiently beneficial to NPBL . . . no reasonable person could refuse to take whatever action is necessary to allow NPBL to enter into such a contract . . . ." Id. These are the self-serving statements that allegedly show that Moss breached his fiduciary duties. This offer that the NPBL "can't refuse" cannot serve as the basis for a breach of fiduciary duty claim because adopting it would violate the 1897 Agreement, and because it lacks facts sufficient to show a corporate decision economically inconsistent with the NPBL's purposes. Incredibly, CSXT acknowledges, in the Rate Proposal, that adopting the Rate Proposal may violate the governing corporate documents of the NPBL, but nonetheless argues that the failure to adopt the Rate Proposal was a breach of Moss's duties of care and loyalty.[5] This is not the law.

Similarly, in its Opposition, CSXT relies on "sufficient ambiguity in the language" of the 1897 Agreement for its claim to survive. However, if CSXT has to acknowledge ambiguity in the controlling corporate documents, which calls into question whether adopting the Rate Proposal is even lawful or is *ultra vires*, then declining to adopt the Rate Proposal cannot be a breach of Moss's fiduciary duties. To the extent that CSXT, NS, and the NPBL have a bona fide dispute concerning the meaning of the 1897 Agreement, CSXT can bring a declaratory judgment action to obtain certainty and resolve that ambiguity. See Va. Code Ann. § 8.01-184. CSXT cannot maintain a breach of fiduciary duty claim, however, by claiming that Moss's view of the ambiguous language in the 1897 Agreement is simply incorrect. CSXT must allege a fundamental breach of Moss's obligations as a fiduciary as the NPBL exists, not as CSXT wants it to exist.

---

[5] CSXT also alleges and argues that Moss "leveraged a threat against CSXT in response" to the Rate Proposal "stating that NPBL was considering a revised agreement with NS under which NPBL would pay NS substantially more for the use of its track." Opposition at 14 (ECF No. 40, at 14) (citing Compl. ¶ 41). Despite CSXT's inflammatory language, this is merely a reference to the expiration of the NPBL's trackage rights agreement with NS from 1917, which terminated in 2016 and is now before the United States Surface Transportation Board, as set forth in the NPBL's opening brief. See (ECF No. 28, at 5). Consequently, CSXT's contention that the timing of this new agreement with NS is "highly suspicious and consistent with Defendants' other ploys using the NPBL to keep CSXT from servicing the NIT" is wholly without merit. Once again, CSXT erroneously ascribes unwelcome economic impacts on CSXT to imagined devious schemes by the NPBL.

Finally, CSXT's arguments attempting to overcome its directors' failure to tender the Rate Proposal for a formal vote at the April 2018 board meeting fall short.[6] CSXT cites to Kennerly v. Columbia Chem. Corp., 137 Va. 240 (1923) to argue that directors can take action outside formal votes at board meetings; and Virginia Code § 13.1-690(C) to argue that directors can be liable for inaction. Kennerly addressed a corporation's ratification of a contract, not any fiduciary obligations of directors to act outside of board meetings. To the contrary, directors can act only through meetings and written consents. See Va. Code Ann. § 13.1-685(A) ("Except to the extent that the articles of incorporation or bylaws require that action by the board of directors be taken at a meeting, action required or permitted by this chapter to be taken by the board of directors may be taken without a meeting if each director signs a consent describing the action to be taken and delivers it to the corporation."). Similarly, § 13.1-690(C) simply provides that "[a] director is not liable for any action taken as a director, or any failure to take any action, if he performed the duties of his office in compliance with [§ 13.1-690]" which describes reliance on legal counsel, accountants, and officers. The inaction targeted by § 13.1-690 is not the lack of a board vote like the Rate Proposal alleged here.

In short, the declined Rate Proposal is insufficient to state a claim for breach of fiduciary duty.

    4.    <u>CSXT Fails to State a Claim for Breach of Fiduciary Duty Against Moss Based on the Corporate Governance Restructuring Proposal</u>.

CSXT tacitly concedes in its Opposition that Moss, and the remainder of the board of the NPBL, "did not have the authority to amend the composition of the NPBL Board of Directors," as

---

[6] CSXT effectively concedes no formal vote occurred on the Rate Proposal at the April 2018 board meeting, but accuses Moss of "inaction" that allegedly breached his fiduciary duties by failing to make a motion and approve the Rate Proposal. Opposition at 16-17 (ECF No. 40, at 16-17). Notably, however, CSXT has only sued four of the six directors of the NPBL. See Compl. ¶¶ 22, 23. The two directors appointed by CSXT were equally capable of making a motion for the Rate Proposal, and thus, equally guilty of the "inaction" allegedly committed by Moss and the other Individual Defendants.

suggested in CSXT's April 6, 2018 letter to the NPBL Board and Norfolk Southern.[7] Compl. Ex. F (ECF No. 1-6) (the "Governance Proposal"). Opposition at 17 (ECF No. 40, at 17).

Because the shareholders, not the directors elected by the shareholders, control the corporate governance structure of a corporation, see, e.g., Va. Code Ann. § 13.1-671.1; 5 Fletcher Cyc. Corp. § 2104, CSXT backtracks from its allegations in the Complaint to vaguely argue that Moss breached his fiduciary duties owed to the NPBL by failing "to take steps to implement the other measures the [Governance] [P]roposal suggested." Opposition at 17 (ECF No. 40, at 17). But cf. Compl. ¶ 112 (alleging that Moss breached his duties by "denying CSXT's . . . proposal for reforms of NPBL's corporate governance structure"); Compl. ¶ 67 (alleging that Moss and the other Individual Defendants were bound by a fiduciary obligation to remedy "defects in NPBL's current corporate governance structure."). However, CSXT's allegations, to which it is bound, merely contend that "denying CSXT's . . . proposal for reforms of NPBL's corporate governance structure" was a breach of Moss's fiduciary duties. Compl. ¶ 112. CSXT accuses Moss of malfeasance for failing to make a change he is powerless to make.

Moss and the NPBL board are not empowered to amend the 1897 Agreement or the 1989 Supplemental Agreement. See Va. Code Ann. § 13.1-671.1 CSXT never presented the Corporate Governance Proposal at the April 18, 2018 Board meeting. It was only presented to the shareholders. Moss is not liable for the decisions of the shareholders of the NPBL. This component of count VI therefore fails to state a claim upon which relief can be granted.

---

[7] On page 17 of its Opposition, CSXT points out that Moss is director and officer of the NPBL. Of course, CSXT has asserted a claim for relief against Moss only in his capacity as a director of the NPBL. See Compl. ¶ 31 ("Collectively, Defendant Moss, in his capacity as a Director, along with Defendants Hall, Hurlbut, and Merilli constitute the four 'Individual Defendants.'"); id. ¶ 112 ("The Individual Defendants have breached their fiduciary duties to NPBL, including their duties of good faith and loyalty and to act in an honest, fair and reasonable manner in the best interests of NPBL"). Accordingly, any glancing references to Moss's role as an officer are irrelevant to the sufficiency of CSXT's Count VI, which alleges collective action by the Individual Defendants.

5.  **CSXT Fails to State a Claim for Breach of Fiduciary Duty Against Moss Based on the Alleged Deteriorating Financial Condition of the NPBL.**

CSXT's final vague contention lacks any concrete factual allegations concerning the actual financial condition of the NPBL or acts or omissions of Moss. In its Opposition, CSXT argues that the Complaint "specifically details this condition, noting that NPBL's revenue has been flat or down over the past several years, including in 2017, and that even this revenue has been artificially inflated by NPBL's sales of the limited real estate it owns." Opposition at 18 (ECF No. 40, at 18). This claim is insufficient under Rule 8 for multiple reasons.

First, as Moss argued in his opening brief, the 1897 Agreement defines the unique financial goals of the NPBL, but CSXT's arguments about financial condition ignore this altogether.

Second, neither the Opposition nor the Complaint provide any factual allegations concerning the profits and losses of the NPBL. CSXT repeatedly points to revenue and rail car volume, but provides no facts regarding costs or profits. Without such facts, it is impossible to ascertain the true "financial condition" of the NPBL. Consequently, CSXT fails to allege sufficient facts to show that Moss breached his fiduciary duties due to a deteriorating financial condition of the NPBL.

Third, CSXT fails to allege any actual facts concerning the alleged mismanagement of the NPBL. CSXT offered its Rate Proposal on March 23, 2018, see Compl. Ex. E, but accuses Moss and the board of causing the NPBL's revenue to "essentially be[] flat or down over the past several years, including in 2017, Compl. ¶ 37. CSXT offers only vague conclusions about the financial condition of the NPBL and offers no facts regarding Moss's alleged "fail[ure] to appropriately manage NPBL, leading to its deteriorating financial condition." Compl. ¶ 36.

For these reasons, and the reasons set forth in Moss's opening brief, this component of Count VI fails to state a claim upon which relief can be granted.

## II.     Conclusion

Based on the foregoing, and the reasons set forth in Moss's opening brief, the Court should dismiss Count VI against Moss for lack of subject matter jurisdiction. In the alternative, the Court should decline to exercise supplemental jurisdiction and dismiss Count VI against Moss. In the alternative, the Court should dismiss Count VI against Moss because it fails to state a claim upon which relief can be granted.

                                                 **CANNON MOSS**

                                                 By      /s/ *Clark J. Belote*

                                                               Counsel

W. Edgar Spivey (VSB No. 29125)
Clark J. Belote (VSB No. 87310)
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
(757) 624-3000
(888) 360-9092 Facsimile
Email: wespivey@kaufcan.com
Email: cjbelote@kaufcan.com
*Counsel for Cannon Moss*

**CERTIFICATE OF SERVICE**

      I certify that on this 7th day of January, 2019, a true and correct copy of the foregoing was served on all counsel of record via Notice of Electronic Filing by filing with the Court's CM/ECF System.

                                                      /s/ *Clark J. Belote*