# Exhibit 1

46750
EB
SERVICE DATE – MARCH 29, 2019

SURFACE TRANSPORTATION BOARD

DECISION

Docket No. FD 36223

NORFOLK SOUTHERN RAILWAY COMPANY—PETITION TO SET TRACKAGE RIGHTS COMPENSATION—NORFOLK & PORTSMOUTH BELT LINE RAILROAD COMPANY

Digest:[1]  This decision institutes a proceeding to set compensation for the trackage rights of Norfolk & Portsmouth Belt Line Railroad Company (NPBL) over certain trackage owned by Norfolk Southern Railway Company (NSR) located in Norfolk, Va., and Chesapeake, Va.  The Board orders the parties to submit a procedural schedule within 20 days, grants CSX Transportation, Inc.'s petition to intervene, and denies as moot NPBL's motion to strike an exhibit in NSR's petition.

Decided:  March 28, 2019

On September 13, 2018, Norfolk Southern Railway Company (NSR) filed a petition requesting that the Board institute a proceeding to set compensation for the trackage rights of Norfolk & Portsmouth Belt Line Railroad Company (NPBL) over approximately 11 miles of NSR's rail lines (Lines) located in Norfolk, Va. and Chesapeake, Va.,[2] that the Board adopt NSR's proposed procedural schedule, and that any compensation take effect retroactively to the date the petition was filed.  NPBL supports NSR's request to institute a proceeding but opposes NSR's proposed procedural schedule.  Additionally, NPBL has filed a motion to strike an exhibit to NSR's petition.  CSX Transportation, Inc. (CSXT) has filed a petition for leave to intervene.

The Board will institute a proceeding to set trackage rights compensation, deny as moot NPBL's motion to strike, and grant CSXT's petition to intervene.  The Board will not adopt NSR's proposed procedural schedule but will provide guidance on that issue and direct the parties to confer and propose a procedural schedule, either jointly or separately, by April 18, 2019.

---

[1] The digest constitutes no part of the decision of the Board but has been prepared for the convenience of the reader.  It may not be cited to or relied upon as precedent.  See Policy Statement on Plain Language Digests in Decisions, EP 696 (STB served Sept. 2, 2010).

[2] According to NPBL, its trackage rights extend from NS Junction in Chesapeake through Carolina Junction to West Junction in Norfolk.  (NPBL Reply 2, Oct. 3, 2018.)

BACKGROUND

NSR's petition states that NPBL is owned approximately 57% by NSR and 43% by CSXT.  (NSR Pet. 3.)  NSR explains that NPBL possesses trackage rights over the Lines pursuant to a series of agreements dating back to 1917.  (Id. at 1.)  NSR states that on July 31, 2016, NSR terminated the agreements, consistent with their terms.  (Id.)  According to NSR, although the agreements have been terminated, the parties have agreed to operate under the terms of the terminated agreements on a month-to-month basis as if the agreements remained in effect.  (Id. at 3.)  NSR asserts that after two years of negotiations, it has reached agreement with NPBL on all terms and conditions of a new trackage rights agreement except for the per-car compensation to be paid by NPBL to NSR for NPBL's use of NSR's tracks.  (Id. at 3-4 & Exs. B & C.)  NSR argues that when a trackage rights agreement expires and neither party has sought discontinuance authority or desires the trackage rights to cease, as in the present case, the Board has exclusive jurisdiction to set the terms and conditions under which a tenant railroad may continue to operate over the landlord's line.  (Id. at 4.)

NSR proposes a procedural schedule for the proceeding that would allow for the parties to have 60 days for discovery, followed by the simultaneous filing of opening evidence (45 days after discovery), replies (45 days after opening evidence), and rebuttals (30 days after reply evidence).  (Id. at 5.)  NSR suggests that its proposed schedule would avoid the delay associated with the parties and the Board first addressing the appropriate calculation methodology, and then subsequently and separately addressing the actual calculation of compensation.  (Id.)  NSR asserts that its proposed schedule is consistent with the approach taken in New England Central Railroad—Trackage Rights Order—Pan Am Southern LLC, Docket No. FD 35842.  (NSR Pet. at 5 n.4.)[3]

On October 3, 2018, NPBL filed a reply to NSR's petition.  NPBL states that the trackage rights connect the main body of NPBL's rail system at NS Junction with an otherwise isolated NPBL line that extends from West Junction into the Norfolk Intermodal Terminal (NIT), a rail-marine terminal facility directly served by NSR and to which NPBL provides neutral switching access.  (NPBL Reply 2, Oct. 3, 2018.)  According to NPBL, the trackage rights at issue also allow NPBL to provide local service along the host NSR rail lines.  (Id.)

NPBL agrees that the Board has jurisdiction to determine the compensation for NPBL's future exercise of trackage rights over the Lines.  (Id. at 1)  NPBL states that the parties have reached "substantive resolution on significant issues other than compensation" and agrees that initiating a proceeding to resolve the compensation question is appropriate.  (Id. at 3.)  NPBL states that NSR has failed to indicate whether it believes that the compensation should be

---

[3] As noted above, NSR also requests that the Board's decision on compensation apply retroactively to the date of NSR's petition.  (Id.)  NPBL opposes retroactive application.  (NPBL Reply 6-7, Oct. 3, 2018.)  The Board will not address the issue of retroactivity at this time.  The parties may address the issue further in their pleadings.

established under the framework of "SSW Compensation." (NPBL Reply 4, Oct. 3, 2018.)[4] In contrast to NSR, NPBL requests a "bifurcated" procedural schedule. (Id. at 5-6, 8.) NPBL argues that NSR is in possession of most of the information relevant to a compensation determination and that the schedule proposed by NSR would not provide NPBL with sufficient time to conduct discovery. (Id. at 5.) NPBL further asserts that New England Central Railroad does not support "the abbreviated and one-sided procedural schedule that [NSR] has proposed." (Id. at 6.) In addition, NPBL states that any procedural schedule issued by the Board should factor in a Board-sponsored mediation period, subject to NSR's consent to such mediation. (Id. at 7-8.)

With its October 3, 2018 reply, NPBL filed a motion to strike Exhibit C of NSR's petition, a communication from NPBL's president to NPBL's board of directors and general counsel. NPBL argues that the communication is subject to the directors' fiduciary duty of confidentiality and the attorney-client privilege. (NPBL Mot. to Strike 1.)

Also on October 3, 2018, CSXT filed a petition for leave to intervene. CSXT states that the Lines include the only route available to CSXT to serve customers at or near the NIT, but it plans to do so by interchanging traffic with NPBL for movements over the Lines, whereas NSR can serve the NIT directly via its own tracks. (CSXT Pet. 4, 6.) CSXT argues that it should be permitted to intervene because it has a significant interest in the proceeding due to its 43% ownership interest in NPBL and because CSXT can only serve customers at the NIT via the Lines. (Id. at 6.) CSXT explains that it is concerned that a new trackage rights agreement could set compensation at a level that reduces the value of CSXT's ownership interest in NPBL and makes CSXT service to customers at the NIT economically infeasible. (Id.) According to CSXT, this concern is heightened due to NSR's position as the majority shareholder of NPBL. (Id.) CSXT also suggests that the Board may not have the authority to determine trackage rights compensation until it has approved or exempted a new trackage rights agreement between NSR and NPBL. (Id. at 5.) In addition, CSXT requests that the Board initiate mediation pursuant to 49 C.F.R. part 1109 and allow CSXT to participate in the mediation as an interested party. (Id. at 6.)

On October 5, 2018, CSXT submitted a copy of a complaint it filed in federal district court alleging that NSR and NPBL have taken actions to effectively prevent CSXT from using NPBL to provide service to customers at the NIT and that these actions constitute a violation of federal antitrust laws, a breach of contract, and a violation of state law in several respects, including a violation of NPBL's fiduciary duty to CSXT as a shareholder of NPBL.

---

[4] NPBL cites St. Louis Southwestern Railway—Trackage Rights Over Missouri Pacific Railroad—Kansas City to St. Louis, 1 I.C.C.2d 776 (1984) as the case establishing the SSW Compensation framework. That decision was modified by the subsequent decision, St. Louis Southwestern Railway—Trackage Rights Over Missouri Pacific Railroad—Kansas City to St. Louis, 4 I.C.C.2d 668 (1987). The references to SSW Compensation below refer to these two decisions collectively.

On October 23, 2018, NSR filed a reply opposing CSXT's petition to intervene and a reply opposing NPBL's motion to strike, which also addressed NPBL's arguments with respect to the procedural schedule and NPBL's request for mediation. NSR argues that CSXT's petition to intervene does not meet the standard at 49 C.F.R. § 1112.4(a), which states that the Board may grant intervention if it will not unduly disrupt the schedule for filing verified statements, except for good cause shown, and would not unduly broaden the issues raised in the proceeding. (NSR Reply to CSXT 2-4, Oct. 23, 2018.) NSR claims that allowing CSXT to intervene would unduly disrupt the procedural schedule by introducing a third party into the process for agreeing to a schedule, conducting discovery, and submitting evidence and filings. (Id. at 2.) NSR suggests that this disruption is unwarranted, because CSXT's interests are aligned with NPBL's in that the objective of both parties is for NPBL to operate over the Lines at a reasonable cost. (Id. at 2-3.) NSR also argues that allowing CSXT to intervene would unduly broaden the scope of the proceeding, suggesting that CSXT filed a copy of its federal court complaint with the Board to possibly raise its antitrust and breach of fiduciary concerns before the Board. (Id. at 3-4.) NSR also asserts that allowing CSXT to intervene "would be license for every shipper utilizing a line and every connecting railroad" to intervene in trackage rights disputes. (Id. at 3.)

In its reply in opposition to NPBL's motion to strike, NSR argues that disclosing the email provided at Exhibit C of its petition did not violate the confidentiality requirements of Virginia corporate or common law and that the email is not protected by attorney-client privilege. (NSR Reply to NPBL 2.) Nonetheless, NSR voluntarily withdrew that email and provided a substitute email from the president of NPBL to certain NSR personnel, none of whom, according to NSR, are NPBL board members. (Id.)

With respect to the procedural schedule, NSR asserts that its proposed schedule was not intended to limit NPBL's ability to develop evidence and arguments regarding its preferred methodology but to avoid protracted fights over both the scope of discovery and the proper methodology. (Id. at 3-4.) NSR states that it is open to a procedural schedule that would expand the time for discovery to 90 days or, alternatively, allow more time for discovery or a single, longer period for both discovery and filing of opening evidence. (Id. at 6 & n.6.) NSR also clarifies that it does not propose that the parties be permitted to take discovery or present evidence on any calculation method that was not recognized in SSW Compensation. (Id. at 5 n.4.)

In addressing NPBL's request for Board-sponsored mediation, NSR states that it does not see the need for mediation at this time given that the parties have been unable to reach an agreement on compensation after more than two years of discussion. (Id. at 3.) However, NSR notes that mediation may be appropriate after the record is complete. (Id. at 3 n.2.)

On October 23, 2018, NPBL replied in support of CSXT's intervention in this proceeding. NPBL explains that CSXT has a legitimate interest in the trackage rights fees paid by NPBL and that, as reflected in the allegations made in CSXT's federal court complaint, it is not clear that NPBL can fully represent CSXT's interest to CSXT's satisfaction. (NPBL Reply 1, Oct. 23, 2018.) NPBL also argues that the Board's authority to set compensation arises from its jurisdiction over the existing trackage rights operation and does not, contrary to CSXT's assertion, require approval of a new agreement. (Id. at 1-2.)

On October 26, 2018, CSXT replied to NSR's October 23, 2018 reply to CSXT's petition to intervene.[5]  According to CSXT, the fact that its sole potential rail access to NIT is through the use of the trackage rights via NPBL should alone be sufficient cause for intervention.  (CSXT Reply 1, Oct. 26, 2018.)  CSXT states that NSR's proposed increase in trackage rights fees, and potentially other terms in the draft trackage rights agreement, will make it even less likely that CSXT will be able to access those customers by rail in the future.  (Id.)  CSXT also argues that NPBL cannot be expected to protect CSXT's interests given NSR's majority ownership interest and representation in NPBL's board of directors.  (Id.)

On October 30, 2018, NSR filed a reply to CSXT's October 26, 2018 reply.  NSR argues that CSXT's involvement in the proceeding thus far has already disrupted the efficient administration of the case and that CSXT's stated intent to take discovery, file its own methodology, and participate in any mediation will likely result in additional delays and complications.  (NSR Reply to CSXT 1-2, Oct. 30, 2018.)  NSR also asserts that CSXT's October 26, 2018 reply indicates that it intends to broaden the scope of the proceeding because CSXT refers to unspecified "other terms" in the draft agreement and makes no reference to setting the compensation pursuant to SSW Compensation.  (Id. at 2.)  Finally, NSR claims that CSXT has not shown why NPBL will not participate in the proceeding in a manner that aligns with CSXT's interests.  (Id.)

DISCUSSION AND CONCLUSIONS

Instituting a Proceeding

The Board has the authority to set terms and conditions for transactions that have been authorized under 49 U.S.C. § 11323, which includes setting compensation for trackage rights agreements.  Rail America, Inc., Pet. to Set Subsidy Terms Under 45 U.S.C. 744(c) & 49 CFR Part 1155, FD 33285, slip op. at 5 (STB served June 24, 1998).  Contrary to CSXT's suggestion, it is not necessary for the Board to approve or exempt a new trackage rights agreement to establish its jurisdiction to set trackage rights compensation.  See, e.g., Thompson v. Texas Mexican Ry., 328 U.S. 134, 147-150 (1946); Toledo, Peoria & W. Ry.—Trackage Rights Compensation—Peoria & Pekin Union Ry., FD 26476 (Sub-No. 1), slip op. at 1-2 (ICC served Sept. 20, 1994).  Accordingly, the Board will institute a proceeding to set trackage rights compensation for NPBL's use of the Lines.  Consistent with Board precedent, the Board will establish compensation under the framework set forth in SSW Compensation.[6]  See, e.g., New

---

[5] While the Board's regulations do not generally permit "replies to replies," 49 C.F.R. § 1104.13(c), in the interest of having a more complete record, the Board will accept CSXT's October 26, 2018 reply to NSR's October 23, 2018 reply, as well as NSR's October 30, 2018 reply to CSXT's October 26, 2018 reply, discussed below.

[6] The Board notes that no party indicates that a methodology other than those set forth in SSW Compensation should be used to determine compensation.  NSR explicitly states that compensation should be determined under the SSW Compensation framework.  (NSR Reply to NPBL 5 n. 4.)  NPBL's reply discusses "the familiar framework of [SSW Compensation]" and

(continued . . .)

Eng. Cent. R.R.—Trackage Rights Order—Pan Am S., LLC, FD 35842, slip op. at 2 (STB served Feb. 12, 2016) ("The Board has found. . . that the framework for setting compensation in trackage rights cases was set forth in [SSW Compensation]."). Therefore, the parties should limit discovery to and present evidence on matters related to the calculation methods recognized in SSW Compensation only.

The Board will not set a procedural schedule at this time. Rather, the parties will be directed to confer and submit, either jointly or separately, a non-bifurcated procedural schedule, involving one round of discovery and one round of pleadings that includes opening evidence, replies, and rebuttals. Although a bifurcated approach could result in more focused evidentiary presentations at the merits stage, the Board believes that any such benefit would be outweighed here by the efficiency lost in requiring two rounds of discovery, two rounds of initial and responsive pleadings, and two Board decisions. The Board reached a similar conclusion in New England Central Railroad, in which it denied a request from the petitioner to bifurcate the proceeding. New Eng. Cent. R.R.—Trackage Rights Order—Pan Am S. LLC, FD 35842, slip op. at 5 (STB served Feb. 12, 2016).[7] Moreover, NPBL's opposition to NSR's proposed non-bifurcated schedule appears to stem largely from concerns that the schedule would not provide sufficient time for discovery. (See NPBL Reply 5, Oct. 3, 2018.) These discovery concerns can be addressed by setting, if necessary, a reasonably longer period for discovery than NSR proposes, an approach to which NSR has indicated it is amenable. (NSR Reply to NPBL 6.)

The Board will not order the parties to engage in mediation at this time, and as such the parties' proposed procedural schedule(s) need not include a period for mediation. However, should the parties, at any point in the proceeding, agree that mediation may be useful in resolving the present dispute, they should submit a request for mediation to the Board.

Petition to Intervene

Pursuant to 49 C.F.R. § 1112.4(a), the Board may grant a petition to intervene if intervention "[w]ill not unduly disrupt the schedule for filing verified statements, except for good cause shown" and "[w]ould not unduly broaden the issues raised in the proceeding." The Board

---

( . . . continued)
does not suggest that the Board consider any alternative. (NPBL Reply 4, Oct. 3, 2018.) CSXT does not comment on the issue of calculation methodologies.

[7] NPBL attempts to distinguish New England Central Railroad from the current case by noting that the request for the Board to make a preliminary determination on the compensation methodology came in the middle of that proceeding after the trackage rights landlord had submitted its opening evidence. (NPBL Reply 6, Oct. 3, 2018.) However, the fact that NSR has not yet submitted opening evidence in this case does not, in the Board's view, make bifurcation any more necessary than it was in New England Central Railroad. The Board found in New England Central Railroad that any efficiency gained by bifurcation in terms of more focused pleadings at the merits would be outweighed by the burden of an additional round of opening and reply submissions and an interlocutory Board decision. New Eng. Cent. R.R., FD 35842, slip op. at 5. The same is true in this case.

believes that intervention by CSXT, as limited below, will satisfy this standard, and CSXT's motion therefore will be granted.

Although intervention by an additional party can affect the timeline for filing evidence, the Board concludes that CSXT's participation as a party in this case will not unduly disrupt the schedule. In the unusual circumstances of this case, CSXT has interests that might not be represented in the record absent its participation. In a typical trackage rights compensation dispute, the interests of shippers and connecting railroads would be expected to align with the interests of the trackage rights carrier (i.e., obtaining the lowest trackage rights fees possible). However, there is at least some question as to whether that may be the case here. CSXT has a distinct interest in the outcome of this case because of its substantial ownership stake that, according to both CSXT and NPBL, may not be fully represented unless CSXT is permitted to intervene.[8] The Board is also aware of—but need not and will not address—CSXT's allegations in federal court that NSR is using its majority control of NPBL to, among other things, frustrate CSXT's rights as a minority shareholder. In light of these considerations, and the importance of facilitating a complete record on the compensation issue, the Board concludes that the possible impact of CSXT's participation on the schedule of the case will not amount to an undue disruption.[9] Additionally, a non-bifurcated schedule should help limit any possible disruption or delay that may be caused by CSXT's participation.

The Board also believes that CSXT can be permitted to intervene without unduly broadening the issues in this proceeding. The issue before the Board in this proceeding, while complicated, is narrow: the compensation for trackage rights held by NPBL for use of NSR's Lines. CSXT may put forth evidence and arguments regarding its preferred calculation methodology that is relevant to establishing compensation under one of the SSW Compensation methodologies. While evidence relating solely to the issues in the pending federal court case will not be permitted, nothing in this decision limiting discovery to the framework set forth in SSW Compensation shall be construed to prohibit CSXT from arguing or submitting evidence that a particular SSW Compensation calculation methodology could have an anticompetitive effect. In sum, given the circumstances here, the Board will permit CSXT to intervene as a party, as discussed above, to ensure a complete record.

---

[8] The Board has previously allowed intervention in a trackage rights compensation case to ensure the interests of a significant minority shareholder were represented. See N. Carolina R.R.—Pet. to Set Trackage Comp. & Other Terms & Conditions—Norfolk S. Ry., FD 33134, slip op. at 2-3 (STB served May 29, 1997) (allowing intervention by minority shareholders with significant investment in railroad utilizing trackage rights where majority shareholder's interests did not appear to be aligned).

[9] The Board does not agree with NSR that granting intervention here "would be a license to every shipper utilizing a line and every connecting railroad" to intervene in future trackage rights proceedings. (NSR Reply to CSXT 3, Oct. 23, 2018.)

Docket No. FD 36223

Motion to Strike

NSR's petition includes as Exhibit C, an August 27, 2018 email from NPBL's president to NPBL's board of directors regarding the status of trackage rights negotiations between the companies and the need to refer the matter to the Board. NPBL moved to strike Exhibit C, arguing that the correspondence was subject to attorney-client privilege and the directors' fiduciary duty of confidentiality under Virginia law. (NPBL Mot. to Strike 2.) NSR, while disputing NPBL's contentions, voluntarily withdrew its original Exhibit C and submitted a new Exhibit C consisting of an email from the president of NPBL to NSR personnel. NSR states that none of those NSR personnel are NPBL board members, and that the email was not from legal counsel. (NSR Reply to NPBL 2.) Based on NSR's representations regarding the revised Exhibit C, which are not contested by NPBL, the Board concludes that NPBL's motion to strike is moot and will therefore deny it.

It is ordered:

1. A proceeding to set trackage rights compensation is instituted.

2. NSR, NPBL, and CSXT shall confer and submit to the Board, jointly or separately, a proposed non-bifurcated procedural schedule by April 18, 2019.

3. CSXT's petition to intervene is granted, as discussed above.

4. NPBL's motion to strike is denied as moot.

By the Board, Board Members Begeman, Fuchs, and Oberman.

8