UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| CSX TRANSPORTATION, INC., | ) | |
| individually and on behalf of NORFOLK | ) | |
| & PORTSMOUTH BELT LINE | ) | |
| RAILROAD COMPANY | ) | |
| | ) | Civil Action No.:  2:18cv530 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NORFOLK SOUTHERN RAILWAY | ) | |
| COMPANY, et al. | ) | |
| | ) | |
| Defendants. | | |

## ANSWER TO COMPLAINT

Norfolk Southern Railway Company ("Norfolk Southern"), by counsel, for its answer to

the Complaint of plaintiff CSX Transportation, Inc. ("CSXT") states:

### Nature of the Action

1.      With respect to the first sentence of paragraph 1, admitted.  With respect to the

second sentence of paragraph 1, Norfolk Southern admits that a collection of railroads formed

the Norfolk & Portsmouth Belt Line Railroad Company ("NPBL") as set forth in the Acts of

Assembly dated March 4, 1896 (the "Acts of Assembly") and the Agreement dated July 7, 1897

(the "Operating Agreement"), a copy of which is attached as Exhibit A to the Complaint, and

denies any remaining allegation.  Norfolk Southern denies the third sentence of paragraph 1 to

the extent it is inconsistent with the purposes of NPBL as embodied in the Acts of Assembly; the

Operating Agreement, as amended, including a supplemental agreement dated March 1, 1989, a

copy of which is attached as Exhibit C to the Complaint (the "Supplemental Agreement"); and

other agreements entered between the parties regarding NPBL.  Norfolk Southern denies the

fourth sentence of paragraph 1.  Norfolk Southern denies that rail service to the Norfolk International Terminals ("NIT") opened in 1917, and states that the property now occupied by NIT was an army base in 1917 and NIT did not open until the late 1960s.  Norfolk Southern denies all other allegations in paragraph 1 not expressly admitted.

2.      Norfolk Southern admits the allegations in the first sentence of paragraph 2. With respect to the second, third, and fourth sentences of paragraph 2, Norfolk Southern admits that in 1982 Norfolk Southern Corporation acquired control of Norfolk & Western Railway Company and Southern Railway Company in accordance with an Agreement of Merger and Reorganization dated as of July 31, 1980, and with the approval of the Interstate Commerce Commission (predecessor to the United States Surface Transportation Board ("STB")).  Norfolk Southern further admits that approximately seven (7) years after Norfolk Southern Corporation acquired control of Norfolk & Western Railway Company and Southern Railway Company, the Supplemental Agreement was entered into by CSXT, Norfolk & Western Railway Company, and Southern Railway Company (later renamed Norfolk Southern Railway Company), the latter two of which were wholly-owned subsidiaries of Norfolk Southern Corporation. Norfolk Southern affirmatively states that, pursuant to that Supplemental Agreement, CSXT agreed that it would have the right to appoint two NPBL board representatives, while Norfolk & Western Railway Company and Southern Railway Company would collectively have the right to appoint three NPBL board representatives.   Norfolk Southern denies the remaining allegations in the second, third, fourth, fifth and sixth sentences of paragraph 2.   Norfolk Southern denies all other allegations in paragraph 2 not expressly admitted.

3.      With respect to the first sentence of paragraph 3, the term "largest" is ambiguous, and Norfolk Southern lacks sufficient information to admit or deny whether NIT is the largest

international shipping terminal in Virginia.  With respect to the third sentence of paragraph 3, Norfolk Southern admits that NPBL utilizes trackage rights granted to it by a predecessor of Norfolk Southern in 1917, which track provides access to NIT. Norfolk Southern denies all remaining allegations in the first, second, third, fourth, fifth and sixth sentences of paragraph 3. With respect to the seventh sentence of paragraph 3, Norfolk Southern affirmatively states that the annual reports and financial statements of NPBL speak for themselves, and to the extent the allegations of paragraph 3 are inconsistent with them, the allegations are denied.  Norfolk Southern denies all remaining allegations contained in the seventh sentence of paragraph 3.

4.      With respect to the first and fourth sentences of paragraph 4, Norfolk Southern lacks sufficient information to admit or deny the allegations; therefore, they are denied. With respect to the third sentence of paragraph 4, Norfolk Southern admits that CSXT has utilized NPBL, but lacks sufficient information to admit or deny the remaining allegations; therefore, they are denied.  Norfolk Southern denies the allegations in the second and fifth sentences of paragraph 4, and denies all other allegations in paragraph 4 not expressly admitted.

5.      Norfolk Southern denies the allegations in paragraph 5.

6.      Norfolk Southern denies the allegations in paragraph 6.

## Parties

7.      Norfolk Southern admits the allegations in the first and second sentences of paragraph 7.  The third sentence of paragraph 7 is a characterization of the Complaint, which speaks for itself, that requires no response.

8.      Norfolk Southern admits the allegations in paragraph 8.

9.      Norfolk Southern admits the allegations in the first sentence of paragraph 9. With regard to the second sentence of paragraph 9, Norfolk Southern is without information sufficient

to form as belief as to the allegations, and thus denies said allegations.  Norfolk Southern admits the remaining allegations in paragraph 9.

10.     Norfolk Southern denies the allegations in the first and second sentences of paragraph 10.  Answering further, Norfolk Southern states that none of Hall, Hurlbut or Merilli are current members of the NPBL board of directors, although they were members in April 2018; and Hall and Merilli have retired from Norfolk Southern and therefore are not employees, although they were employees in April 2018.  Norfolk Southern admits the allegations in the third sentence of paragraph 10.  The last sentence of paragraph 10 is a characterization of the Complaint, which speaks for itself, that requires no response.  Norfolk Southern denies all other allegations in paragraph 10 not expressly admitted.

## Jurisdiction and Venue

11.     The allegations stated in paragraph 11 assert a legal conclusion to which no response is required.  To the extent a response is required, Norfolk Southern admits that this Court has subject matter jurisdiction over claims that purport to arise under Sections 1 and 2 of the Sherman Act, Counts I through IV of the Complaint.  Norfolk Southern affirmatively states that the federal question claims purporting to arise under the Sherman Act set forth facts and circumstances, and seek relief for alleged anticompetitive acts, that fall within the primary jurisdiction of the STB, an agency that Congress has charged with regulating rate and access issues involving transportation service performed by railroads.

12.     The allegations stated in paragraph 12 assert a legal conclusion to which no response is required.  To the extent a response is required, Norfolk Southern admits that this Court may exercise supplemental jurisdiction over state law claims when it possesses jurisdiction over the asserted federal question claims.  Norfolk Southern affirmatively avers that the federal

question claims purporting to arise under Sections 1 and 2 of the Sherman Act set forth facts and circumstances, and seek relief for alleged anticompetitive acts, that fall within the primary jurisdiction of the STB. To the extent this Court properly cedes jurisdiction over those federal claims to the STB for adjudication, there is no federal nexus supporting the exercise of supplemental jurisdiction.

13.     The allegations stated in paragraph 13 assert a legal conclusion to which no response is required.  To the extent a response is required, and subject to the responses set forth in paragraphs 11 and 12 above, Norfolk Southern admits that it is subject to the personal jurisdiction of this Court.

14.     The allegations stated in paragraph 14 assert a legal conclusion to which no response is required.  To the extent a response is required, and subject to the responses set forth in paragraphs 11 and 12 above, Norfolk Southern admits that venue for this action is properly laid in this Court.

## Factual Allegations

15.     With respect to the first two sentences of paragraph 15, Norfolk Southern admits that eight railroad companies, including predecessors in interest to Norfolk Southern and CSXT, formed NPBL, and that those parties entered into the Operating Agreement in 1897. Norfolk Southern denies the remaining allegations in the first two sentences of  paragraph 15 to the extent CSXT's characterizations are not consistent with the Operating Agreement and Acts of Assembly with regard to the purposes for which NPBL was formed.  Norfolk Southern denies the last sentence of paragraph 15.

16.     Norfolk Southern admits the allegations of paragraph 16 in part, to the extent that the Operating Agreement, as amended, established certain duties among the signatory parties.

Norfolk Southern denies the allegations to the extent they suggest that the Operating Agreement, as amended, alone forms the basis for all relevant legal duties and obligations among the shareholders.  Norfolk Southern affirmatively states that CSXT's Complaint mischaracterized or inaccurately or incompletely cited the words and phrases of the Operating Agreement, as amended, in an ongoing attempt to escape the binding terms of contracts signed by CSXT or its predecessors.

17.     With regard to paragraph 17 of the Complaint, Norfolk Southern states that the paragraph purports to characterize words and phrases from the Operating Agreement. Norfolk Southern denies such characterization, and denies the remaining allegations in paragraph 17 to the extent they characterize or inaccurately or incompletely cite words and phrases from the Operating Agreement.

18.     With regard to paragraph 18, Norfolk Southern states that the paragraph purports to characterize words and phrases from the Operating Agreement. Norfolk Southern denies the allegations in paragraph 18 to the extent they characterize or inaccurately or incompletely cite words and phrases from the Operating Agreement.

19.     Norfolk Southern admits the allegation in paragraph 19 to the extent it accurately cites a phrase found in the Operating Agreement, and denies any remaining allegations in paragraph 19.

20.     Norfolk Southern admits the allegations in the first sentence of paragraph 20. With respect to the second sentence, Norfolk Southern admits that a map is attached as Exhibit B and speaks for itself.  With respect to the allegations in the third, fourth and fifth sentences, Norfolk Southern admits that NPBL has rail access to NIT via trackage rights granted to NPBL during World War I by a predecessor of Norfolk Southern, which trackage rights cannot be

terminated without approval of the STB and which terms, upon expiration, may be prescribed by the STB if not agreed to by the parties.  Norfolk Southern further admits that it has direct access to NIT by virtue of this Norfolk Southern-owned track.  Norfolk Southern admits that the Port of Virginia includes NIT, Virginia International Gateway ("VIG"), Portsmouth Marine Terminal ("PMT"), which is served by CSXT directly and Norfolk Southern via NPBL, and three other terminals, each of which is currently accessed by deep-draft ships carrying intermodal containers.  Norfolk Southern denies the last sentence of paragraph 20, and denies all other allegations in paragraph 20 not expressly admitted.

21.     Norfolk Southern denies the allegations in paragraph 21.  Norfolk Southern affirmatively states that in 1982 Norfolk Southern Corporation acquired control of Norfolk & Western Railway Company and Southern Railway Company.

22.     Norfolk Southern admits the allegations in the first sentence of paragraph 22, and affirmatively states that, by entering into the Supplemental Agreement at a time when its counter-parties had been under common ownership for approximately seven (7) years, CSXT expressly agreed to amend the Operating Agreement by providing it would have the right to appoint two NPBL board representatives, while Norfolk & Western Railway and Southern Railway (both controlled by Norfolk Southern Corporation at that time) would collectively have the right to appoint three NPBL board representatives.  With regard to the second sentence of paragraph 22, Norfolk Southern states that the sentence characterizes the parties' obligations by extracting a phrase from the Supplemental Agreement. Norfolk Southern admits the allegations in the second sentence of paragraph 22 to the extent it accurately cites a phrase found in the Supplemental Agreement, and denies the remaining allegations in that sentence.

23.     With regard to the allegations in paragraph 23 of the Complaint, Norfolk Southern states that Norfolk Southern Corporation was incorporated on July 23, 1980, the same year newly formed CSX Corporation acquired control of two major operating railroads, the Chessie System and Seaboard Coast Line Industries, which were merged in 1986 to form CSXT. Norfolk Southern further states that on June 1, 1982, Norfolk Southern Corporation acquired control of two major operating railroads, Norfolk and Western Railway Company and Southern Railway Company, Norfolk Southern further states that, approximately seven (7) years after the two operating railroad companies came under the common ownership and control of Norfolk Southern Corporation, the companies entered into the Supplemental Agreement dated March 1, 1989, with CSXT.  Norfolk Southern admits that recitals to the Supplemental Agreement provide that CSXT held 144 shares (approximately 43%) of the common stock of NPBL and that the two Norfolk Southern Corporation subsidiaries owned a total of 288 shares (approximately 57%) of the common stock of NPBL, and that "as of the date of the Supplemental Agreement two of the directors of NPBL are representatives of CSX[T] and three of the directors are representatives of [Norfolk and Western Railway Company/Southern Railway Company], and the parties hereto desire to retain the such representation,"  and that CSXT agreed that it would have the right to appoint two  representatives and the two Norfolk Southern Corporation subsidiaries would together have the right to appoint three representatives to the NPBL board of directors.  Norfolk Southern admits that on December 31, 1990, Southern Railway Company's name was changed to Norfolk Southern Railway Company and Norfolk Southern Corporation contributed all of the common stock of Norfolk and Western Railway Company to Norfolk Southern Railway Company, and that on September 1, 1998, Norfolk and Western Railway Company was formally merged with and into Norfolk Southern Railway Company.  Norfolk Southern denies that the

current allocation of NPBL share ownership and board representation is a consequence of the 1990 acquisition of Norfolk and Western Railway Company common stock by Norfolk Southern Railway Company and affirmatively avers that the current ownership positions of CSXT and of entities wholly owned by Norfolk Southern Corporation have been fixed since at least June 1, 1982.  Norfolk Southern further states that, upon information and belief, with one known exception in 2018, the NPBL board or directors and NPBL shareholders have unanimously elected NPBL board members.  Norfolk Southern denies any remaining allegations in paragraph 23 not expressly admitted.

24.     With respect to the first and second sentences of paragraph 24, Norfolk Southern admits that NPBL is a corporate entity distinct from its two corporate shareholders, with its own Bylaws, Board of Directors, and management.  Norfolk Southern denies the remaining allegations in paragraph 24.

25.     Norfolk Southern denies the allegations in paragraph 25.

26.     Norfolk Southern admits the allegations in the first sentence of paragraph 26. With regard to the allegations in the second sentence of paragraph 26, Norfolk Southern admits that three voting positions on NPBL board are filled with representatives appointed by NS to serve as NPBL directors in accordance with the terms of the Supplemental Agreement, and states affirmatively that as a consequence of Norfolk Southern personnel changes the allegations as to who serve as NPBL directors is not presently correct, and thus denies them. Norfolk Southern denies the remaining allegations in paragraph 26.

27.     With respect to the first sentence of paragraph 27, Norfolk Southern admits that a CSXT-appointed director objected to holding the 2011 annual shareholders meeting without all

directors present but denies that any objection was directed at the nomination and election of Mr. Moss.  Norfolk Southern admits the remaining allegations in paragraph 27.

28.     Norfolk Southern states that the phrase "other connections" is vague and ambiguous and denies the first sentence of paragraph 28.  With respect to the remaining allegations in paragraph 28, Norfolk Southern admits that NPBL employees have Norfolk Southern email addresses in accordance with NPBL's execution of a Services Agreement, dated January 23, 1991, and signed by CSXT, Norfolk Southern Corporation, Norfolk Southern Railway Company and Norfolk and Western Railway Company ("Services Agreement"), and a Data Hosting and Technology Agreement, dated October 1, 2010, that states it was consented to by CSXT.

29.     Norfolk Southern admits the allegations in paragraph 29.

30.     Norfolk Southern denies the allegations in paragraph 30.

31.     The allegations in paragraph 31 are a definition selected by CSXT for purposes of the Complaint, and require no response.  Norfolk Southern denies that the definition has any independent legal significance.

32.     Norfolk Southern denies the allegations in paragraph 32.

33.     Upon information and belief, Norfolk Southern admits that NPBL's revenue is derived from switch operations.  Norfolk Southern denies all remaining allegations in paragraph 33.

34.     Norfolk Southern denies the allegations in the first and second sentences of paragraph 34.  With respect to the last sentence of paragraph 34, Norfolk Southern admits that the NPBL board of directors adopted a uniform switch rate in 2009.  Norfolk Southern denies all other allegations in paragraph 34 not expressly admitted.

35.     With respect to the second sentence of paragraph 35, Norfolk Southern admits that it has direct access to NIT by virtue of Norfolk Southern-owned track.  Norfolk Southern denies all other allegations in paragraph 35 not expressly admitted.

36.     Norfolk Southern denies the allegations in the first and third sentences of paragraph 36.  With respect to the second sentence of paragraph 36, Norfolk Southern lacks sufficient information to admit or deny the allegations; therefore, they are denied.  Norfolk Southern denies all other allegations in paragraph 36 not expressly admitted.

37.     Norfolk Southern denies the first sentence of paragraph 37.  With respect to the remaining allegations in paragraph 37, Norfolk Southern affirmatively states that the annual reports and financial statements of NPBL speak for themselves and denies that CSXT's characterizations of those documents are consistent with them.  Norfolk Southern denies all other allegations in paragraph 37 not expressly admitted.

38.     With regard to paragraph 38, Norfolk Southern admits that CSXT presented a document it terms a Service Proposal, which is attached to the Complaint as Exhibit E, and speaks for itself.  Norfolk Southern denies that the Service Proposal would have benefitted NPBL, and affirmatively states that it was a proposal for a transportation contract between CSXT and NPBL and not a uniform rate proposal.  Norfolk Southern denies all other allegations in paragraph 38 not expressly admitted.

39.     With regard to paragraph 39, Norfolk Southern admits that CSXT presented a Service Proposal, which is attached to the Complaint as Exhibit E, and speaks for itself as a contract proposal between NPBL and CSXT.  Norfolk Southern denies that the Service Proposal would have benefitted NPBL. Norfolk Southern denies all other allegations in paragraph 39 not expressly admitted.

40.     Norfolk Southern denies the allegations in paragraph 40.

41.     With regard to paragraph 41, Norfolk Southern admits that it had been in the process of negotiating the terms of a new trackage rights agreement with NPBL that will replace the expired trackage rights agreement entered into in 1917 by NPBL and a predecessor of Norfolk Southern, which agreement expired in 2016, concerning trackage rights that NPBL has over tracks now owned by Norfolk Southern that allow NPBL to serve its customers on this rail line and to reach NIT.  Negotiations concerning the new trackage rights agreement were at an impasse with respect to compensation, and, as a result, Norfolk Southern initiated a proceeding before the STB on September 13, 2018, invoking the exclusive jurisdiction of the STB to set trackage rights compensation, *Norfolk Southern Railway Company – Petition to Set Trackage Rights Compensation – Norfolk & Portsmouth Belt Line Railroad Company*, STB Docket No. FD 36233.   Norfolk Southern denies the remaining allegations in paragraph 41.

42.     Norfolk Southern denies the allegations in paragraph 42.

43.     Norfolk Southern denies the allegations in paragraph 43.

44.     With respect to the second sentence of paragraph 44, Norfolk Southern admits that it has direct access to NIT by virtue of operating on its own track.  Norfolk Southern denies the remaining allegations in paragraph 44.

45.     Norfolk Southern denies the allegations in paragraph 45.

46.     With respect to the allegations in paragraph 46, Norfolk Southern admits that Norfolk Southern leases locomotives to NPBL in accordance with the Services Agreement signed by CSXT.  Norfolk Southern denies the remaining allegations in paragraph 46.

47.     With regard to the allegations in paragraph 47, Norfolk Southern admits that, without objection by CSXT, it abandoned service and NPBL discontinued trackage rights over

the line of railroad lying between Milepost NS 1.40 and Milepost NS 2.30 in Chesapeake, Virginia, as set forth in the Verified Notice of Exemption filed with the STB on April 25, 2008, made effective by the STB on June 14, 2008 in STB Docket No. AB_290_299_X.  Norfolk Southern affirmatively states that approval of the abandonment and discontinuance by the STB preempts and precludes any action that a court may take with respect to such abandonment and discontinuance.  Norfolk Southern denies all other allegations in paragraph 47 not expressly admitted.

48.     Norfolk Southern denies the allegations in paragraph 48.

49.     With regard to the allegations in paragraph 49, Norfolk Southern admits that the Port of Hampton Roads has terminal facilities through which freight, including intermodal freight, travels, including PMT, VIG, and NIT. Norfolk Southern admits that shippers contract with railroads for transportation service in and out of East Coast ports served by rail, considering geographic location as one factor, among other things, in selecting which ports to use for a particular movement of containers.  Norfolk Southern denies all other allegations in paragraph 49 not expressly admitted.

50.     With regard to the allegations in paragraph 50, Norfolk Southern admits that the development and maintenance by rail carriers of rail connections require capital investment, including investment to enable the rail carrier to acquire property rights, either by contract or by exercising their power of eminent domain, and engineering services.  Norfolk Southern denies the remaining allegations in paragraph 50.

51.     Norfolk Southern denies the allegations in paragraph 51.

52.     With regard to the allegations in paragraph 52, Norfolk Southern admits that it is a Class I rail carrier operating in 22 states and the District of Columbia.  Norfolk Southern denies the remaining allegations in paragraph 52.

53.     Norfolk Southern denies the allegations in paragraph 53.

54.     Norfolk Southern denies the allegations in paragraph 54.

55.     With respect to the first sentence of paragraph 55, Norfolk Southern admits that CSXT utilized NPBL for movement of intermodal traffic to NIT in 2015.  Norfolk Southern denies the remaining allegations in paragraph 55.

56.     Norfolk Southern denies the allegations in paragraph 56.

57.     Norfolk Southern denies the allegations in paragraph 57.

58.     Norfolk Southern denies the allegations in paragraph 58.

59.     Norfolk Southern denies the allegations in paragraph 59.

60.     Norfolk Southern denies the allegations in paragraph 60.

61.     With regard to the allegations in paragraph 61, Norfolk Southern admits that it is the majority owner of NPBL, as reflected in the Supplemental Agreement.  Norfolk Southern denies the remaining allegations in paragraph 61.

62.     Norfolk Southern denies the allegations in paragraph 62.

63.     With regard to the allegations in paragraph 63, Norfolk Southern admits that its intermodal operations take place in interstate and international commerce.  Norfolk Southern denies the remaining allegations in paragraph 63.

64.     The allegations in paragraph 64 concerning loss of prospective business require no response as the Opinion and Order dated September 9, 2019, ECF No. 66 at 45-48, 60, found the pleading inadequate and CSXT has not amended that claim. To the extent that allegation

requires a response, Norfolk Southern denies the allegation and denies all other allegations in paragraph 64.

65.     Norfolk Southern denies the allegations in paragraph 65.

66.     Norfolk Southern denies the allegations in paragraph 66.

67.     With regard to the allegations in paragraph 67, Norfolk Southern admits that a copy of a proposal submitted to NPBL and Norfolk Southern by CSXT, which speaks for itself, is attached to the Complaint as Exhibit F.  Norfolk Southern denies the remaining allegations in paragraph 67.

68.     With regard to the allegations in paragraph 68, Norfolk Southern admits that a copy of a proposal submitted to NPBL and Norfolk Southern by CSXT, which speaks for itself, is attached to the Complaint as Exhibit F.  Norfolk Southern denies the remaining allegations in paragraph 68.

69.     With regard to the allegations in paragraph 69, Norfolk Southern admits that a copy of a proposal submitted to NPBL and Norfolk Southern Railway Company by CSXT, which speaks for itself, is attached to the Complaint as Exhibit F.  Norfolk Southern denies the remaining allegations in paragraph 69.

70.     Norfolk Southern denies the allegations in paragraph 70.

71.     With regard to the allegations in paragraph 71, Norfolk Southern affirmatively states that CSXT sent a letter dated April 16, 2018, which was two days before NPBL annual shareholder meeting and board of directors meeting, indicating that CSXT had identified individuals it believed were well qualified to serve as NPBL directors, notwithstanding no consents to be named were included as required by Section 13.1-855 of the Virginia Stock

Corporation Act and only a brief summary description of each individual's background was included in the letter.  Norfolk Southern denies the remaining allegations in paragraph 71.

72.     With regard to the allegations in paragraph 72, Norfolk Southern admits that two NPBL directors designated by CSXT and three NPBL directors designated by Norfolk Southern were elected to the NPBL board of directors and Moss and Coleman were retained in their respective capacities.  Norfolk Southern denies all remaining allegations in paragraph 72.

73.     Norfolk Southern denies the allegations in paragraph 73.

74.     Norfolk Southern denies the allegations in paragraph 74.

75.     Norfolk Southern denies the allegations in paragraph 75.

76.     Norfolk Southern denies the allegations in paragraph 76.

**COUNT I**
**(Violation of Sherman Act § 1: Conspiracy to Restrain Trade**
**Against Defendants NS and NPBL)**

77.     Norfolk Southern incorporates by reference its responses to paragraphs 1-76, and reasserts each such response as if fully set forth herein.

78.     The allegations stated in paragraph 78 assert a legal conclusion to which no response is required.  To the extent a response is required, the allegations are denied.

79.     Norfolk Southern denies the allegations in paragraph 79.

80.     Norfolk Southern denies the allegations in paragraph 80.

81.     Norfolk Southern denies the allegations in paragraph 81.

82.     Norfolk Southern denies the allegations in paragraph 82.

83.     Norfolk Southern denies the allegations in paragraph 83.

84.     Norfolk Southern denies the allegations in paragraph 84.

**COUNT II**
**(Violation of Sherman Act § 2, 15 U.S.C. §2: Conspiracy to Monopolize**
**Against Defendants NS and NPBL)**

85.     Norfolk Southern incorporates by reference its responses to paragraphs 1-84, and reasserts each such response as if fully set forth herein.

86.     Norfolk Southern denies the allegations in paragraph 86.

87.     Norfolk Southern denies the allegations in paragraph 87.

88.     Norfolk Southern denies the allegations in paragraph 88.

89.     Norfolk Southern denies the allegations in paragraph 89

90.     Norfolk Southern denies the allegations in paragraph 90.

**COUNT III**
**(Violation of Sherman Act § 2, 15 U.S.C. § 2: Monopolization Against Defendant NS)**

91.     Norfolk Southern incorporates by reference its responses to paragraphs 1-90, and reasserts each such response as if fully set forth herein.

92.     Norfolk Southern denies the allegations in paragraph 92.

93.     Norfolk Southern denies the allegations in paragraph 93.

94.     Norfolk Southern denies the allegations in paragraph 94.

95.     Norfolk Southern denies the allegations in paragraph 95.

96.     Norfolk Southern denies the allegations in paragraph 96.

97.     Norfolk Southern denies the allegations in paragraph 97.

**COUNT IV**
**(Violation of Sherman Act § 2, 15 U.S.C. § 2: Attempted Monopolization**
**Against Defendant NS)**

98.     Norfolk Southern incorporates by reference its responses to paragraphs 1-97, and reasserts each such response as if fully set forth herein.

99.     Norfolk Southern denies the allegations in paragraph 99.

100.    Norfolk Southern denies the allegations in paragraph 100

101.    Norfolk Southern denies the allegations in paragraph 101.

102.    Norfolk Southern denies the allegations in paragraph 102.

103.    Norfolk Southern denies the allegations in paragraph 103.

104.    Norfolk Southern denies the allegations in paragraph 104.

## COUNT V
## (Breach of Contract, against Defendant NS)

105.    Norfolk Southern incorporates by reference its responses to paragraphs 1-104, and reasserts each such response as if fully set forth herein.

106.    With regard to the allegations in paragraph 106, Norfolk Southern admits that it is a party to the Operating Agreement, as amended. To the extent that paragraph 106 purports to characterize the duties of NPBL shareholders by extracting words and phrases from the Operating Agreement, Norfolk Southern denies the allegations to the extent they characterize or inaccurately or incompletely cite words and phrases found in the Operating Agreement.  Norfolk Southern further denies that the Operating Agreement alone forms the basis of all relevant legal duties and obligations among the parties to this action.  Norfolk Southern denies all other allegations in paragraph 106 not expressly admitted.

107.    Norfolk Southern denies the allegations in paragraph 107. Norfolk Southern affirmatively states that CSXT's Complaint mischaracterized or inaccurately or incompletely cited the words and phrases of the Operating Agreement, as amended, in an ongoing attempt to escape the binding terms of contracts signed by CSXT or its predecessors.

108.    Norfolk Southern denies the allegations in paragraph 108.

**COUNT VI (Derivative Claim)**
**(Breach of Fiduciary Duties, against Individual Defendants**
**Hall, Hurlbut, Merilli, and Moss)**

109.    Norfolk Southern incorporates by reference its responses to paragraphs 1-108, and reasserts each such response as if fully set forth herein.

110.    The allegations in paragraph 110 require no response as Count VI is not stated against Norfolk Southern.

111.    The allegations in paragraph 111 require no response as Count VI is not stated against Norfolk Southern.

112.    The allegations in paragraph 112 require no response as Count VI is not stated against Norfolk Southern.

113.    The allegations in paragraph 113 require no response as Count VI is not stated against Norfolk Southern.

**COUNT VII**
**(Tortious Interference with Business Expectancy, Against Defendants NS and NPBL)**

114.    Norfolk Southern incorporates by reference its responses to paragraphs 1-113, and reasserts each such response as if fully set forth herein.

115.    The allegations in paragraph 115 require no response as Count VII was dismissed by the Court in the Opinion and Order dated September 9, 2019, ECF No. 66 at 45-48, 60, and CSXT has not amended that claim. To the extent a response is required, Norfolk Southern denies the allegations in paragraph 115.

116.    The allegations in paragraph 116 require no response as Count VII was dismissed by the Court in the Opinion and Order dated September 9, 2019, ECF No. 66 at 45-48, 60, and CSXT has not amended that claim. To the extent a response is required, Norfolk Southern denies the allegations in paragraph 116.

117.    The allegations in paragraph 117 require no response as Count VII was dismissed by the Court in the Opinion and Order dated September 9, 2019, ECF No. 66 at 45-48, 60, and CSXT has not amended that claim. To the extent a response is required, Norfolk Southern denies the allegations in paragraph 117.

## COUNT VIII
**(Statutory Business Conspiracy, Va. Code § 18.2-499, Against Defendants NS and NPBL)**

118.    Norfolk Southern incorporates by reference its responses to paragraphs 1-117, and reasserts each such response as if fully set forth herein.

119.    Norfolk Southern denies the allegations in paragraph 119.

120.    Norfolk Southern denies the allegations in paragraph 120.

121.    Norfolk Southern denies the allegations in paragraph 121.

## COUNT IX
**(Civil Conspiracy, Against Defendants NS and NPBL)**

122.    Norfolk Southern incorporates by reference its responses to paragraphs 1-122, and reasserts each such response as if fully set forth herein.

123.    Norfolk Southern denies the allegations in paragraph 123.

124.    Norfolk Southern denies the allegations in paragraph 124.

125.    Norfolk Southern denies the allegations in paragraph 125.

126.    Norfolk Southern denies all allegations not expressly admitted in this Answer.

127.    Norfolk Southern denies that CSXT is entitled to any of the relief specified in its prayer for relief, as set forth in paragraphs (1) through (7), following paragraph 125 of the Complaint, or any other relief at law or in equity. Further, Norfolk Southern denies that it is liable to CSXT for any sum under any theory of liability whatsoever.

128.     Norfolk Southern acknowledges that CSXT requests trial by jury, but reserves all rights to object to the trial by jury of any issue that may not present matters triable to a jury.

## AFFIRMATIVE AND OTHER DEFENSES

Norfolk Southern states the following affirmative and other defenses without assuming the burden of proof that would otherwise rest with CSXT.

### First Defense

The STB has primary subject matter jurisdiction over the federal claims in this action, Counts I, II, III, and IV, to the extent that such claims arise out of a nexus between the injury alleged by plaintiff and the setting of compensation for trackage rights to be paid by NPBL to Norfolk Southern, as the setting of trackage rights compensation is within the exclusive jurisdiction of the STB.

### Second Defense

The STB has primary subject matter jurisdiction over the federal claims in this action, Counts I, II, III, and IV, to the extent that all such claims concern the effect on competition of access or lack of access to a terminal facility served by rail, a matter to which Congress has assigned exclusive jurisdiction to the STB under the Interstate Commerce Commission Termination Act, 49 U.S.C. § 11102.

### Third Defense

The remaining state law claims (Counts V, VIII, and IX), which derive from the uniform rate structure set by NPBL in 2009, are preempted in whole or in part because Congress has assigned exclusive jurisdiction to the STB to determine matters of competitive rail access to a terminal facility served by rail.

### Fourth Defense

CSXT's Complaint fails to state a plausible claim for which relief can be granted and should be dismissed pursuant to Rules 12(b)(6) and/or 12(c) of the Federal Rules of Civil Procedure. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Specifically, for the reasons stated in support of Norfolk Southern's Motion to Dismiss (Dkt. No. 34, 47) and those that may be developed throughout the investigation of this matter, CSXT's state law claims (Counts V, VIII, and IX) are time-barred and CSXT failed to adequately plead facts to support the elements of its breach of contract and conspiracy claims.

### Fifth Defense

Norfolk Southern has implied immunity from the antitrust claims set forth in Counts I, II, III, and IV, as the alleged anticompetitive conditions complained of by CSXT may be redressed in proceedings before the STB, which has been authorized by Congress to consider the anticompetitive effects of permitting an owner of rail infrastructure to exclude a direct rail competitor from using that infrastructure.

### Sixth Defense

Norfolk Southern has immunity from the antitrust claims set forth in Counts I, II, III, and IV, under the *Noerr-Pennington* doctrine to the extent that each such claim arises out of a nexus between Norfolk Southern's exercise of its First Amendment-protected right to invoke the jurisdiction of the STB for the resolution of a trackage rights compensation dispute.

**Seventh Defense**

The Complaint fails to state a claim with regard to Counts I, II, III and IV, all brought pursuant to the Sherman Act and the Clayton Act, on the ground that CSXT has failed to allege antitrust injury.

**Eighth Defense**

The Complaint fails to state a claim with regard to Counts I and II, brought pursuant to the Sherman Act and the Clayton Act, on the ground that Norfolk Southern and NPBL constitute a single entity for antitrust purposes.

**Ninth Defense**

CSXT's claims under the Sherman Act and the Clayton Act, set forth in Counts I, II, III, and IV are barred in whole or in part by the applicable statute of limitations.

**Tenth Defense**

CSXT's claims under the Sherman Act and the Clayton Act, set forth in Counts I, II, III, and IV are barred in whole or in part by the doctrine of laches.

**Eleventh Defense**

All of CSXT's claims are barred in whole or in part by the doctrine of unclean hands.

**Twelfth Defense**

CSXT's claim for breach of contract, set forth in Count V is barred by the terms of the agreements among the parties.

**Thirteenth Defense**

CSXT's claim for breach of contract, set forth in Count V, is barred in whole or in part by the applicable statute of limitations or the doctrine of laches.

## Fourteenth Defense

As set forth in its Motion to Dismiss (Dkt. Nos. 34, 47), Norfolk Southern denies CSXT's allegation that text in the Operating Agreement that the parties "will co-operate cordially in encouraging the business" of NPBL constitutes an enforceable contractual promise. However, in the alternative to that position, if the Court finds that the "co-operate cordially" language is an enforceable contractual promise, then CSXT's claims in for breach of contract in Count V are barred, in whole or in part, by CSXT's first material breach of that provision.

## Fifteenth Defense

CSXT's claims for conspiracy, as set forth in Counts VIII and IX, are barred, in whole or in part, because Norfolk Southern' s actions are subject to a privilege or justification.

## Sixteenth Defense

CSXT's claims for conspiracy are barred, in whole or in part, because Norfolk Southern acted within its rights to protect its own lawful interests at all times herein.

## Seventeenth Defense

CSXT's claims for common law and statutory conspiracy, set forth in Counts VIII and IX, are barred in whole or in part by the applicable statute of limitations or the doctrine of laches.

## Eighteenth Defense

CSXT's claims for common law and statutory conspiracy, set forth in Counts VIII and IX, are barred by the intra-corporate immunity doctrine.

## Nineteenth Defense

CSXT's claims are barred by the doctrines of waiver and/or estoppel.

**Twentieth Defense**

CSXT's claims are barred, in whole or in part, to the extent that CSXT failed to mitigate its alleged damages.

**Twenty-First Defense**

CSXT's state law claims arising in tort are barred by Virginia's economic loss rule.

**Twenty-Second Defense**

CSXT's claims are barred because CSXT has not suffered any damages or other injury proximately caused by Norfolk Southern's conduct.

**Twenty-Third Defense**

CSXT cannot recover from Norfolk Southern because any damages that CSXT alleges to have suffered, which Norfolk Southern denies, directly and proximately resulted from CSXT's own acts and/or omissions, over which Norfolk Southern had no control.

**Twenty-Fourth Defense**

Norfolk Southern reserves the right to assert additional defenses (affirmative and otherwise) as this action progresses, and reserves the right to rely upon any and all defenses (affirmative and otherwise) as may become known through discovery or at trial.

WHEREFORE, defendant Norfolk Southern Railway Company demands that judgment be entered in its favor as to every Count in the Complaint, that it be awarded its costs as provided by law, and that it be awarded all such other and further relief as the Court may deem proper.

Date:   September 23, 2019

Respectfully submitted,

NORFOLK SOUTHERN
RAILWAY COMPANY

By Counsel

/s/ Belinda D. Jones
Craig T. Merritt (VSB 20281)
R. Braxton Hill IV (VSB 41539)
Belinda D. Jones (VSB 72169)
S. Perry Coburn (VSB 78372)
CHRISTIAN & BARTON, LLP
909 East Main Street, Suite 1200
Richmond, Virginia 23219
Tel.:  (804) 697-4100
Fax:  (804) 697-4112

Alan D. Wingfield (VSB 27489)
Michael E. Lacy (VSB 48477)
TROUTMAN SANDERS, LLP
1001 Haxall Point
15th Floor
Richmond, Virginia 23219

*Attorneys for Defendant Norfolk Southern*
*Railway Company*

26

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of September 2019, I will electronically file a copy of the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the registered participants as identified on the NEF to receive electronic service.

/s/ Belinda D. Jones<br>
Belinda D. Jones

2533155