UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| CSX TRANSPORTATION, INC., )<br>individually and on behalf of NORFOLK & )<br>PORTSMOUTH BELT LINE RAILROAD )<br>COMPANY, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>NORFOLK SOUTHERN RAILWAY )<br>COMPANY, NORFOLK & )<br>PORTSMOUTH BELT LINE RAILROAD )<br>COMPANY, JERRY HALL, THOMAS )<br>HURLBUT, PHILIP MERILLI, and )<br>CANNON MOSS, )<br>)<br>Defendants. )<br>) | Civil Action No. 2:18-cv-00530-MSD |

## STIPULATED ORDER REGARDING DISCOVERY
## OF ELECTRONICALLY STORED INFORMATION

THIS MATTER came before the Court on the Joint Motion for Entry of Order Regarding Discovery of Electronically Stored Information ("Joint Motion") filed by plaintiff CSX Transportation, Inc. ("CSXT"), and defendants Norfolk Southern Railway Company ("NSR"), Norfolk & Portsmouth Belt Line Railroad Company ("NPBL"), Jerry Hall, Thomas Hurlbut, Philip Merilli, and Cannon Moss (collectively, the "Parties"). Pursuant to Federal Rules of Civil Procedure 16 and 26(f), the Parties have conferred regarding matters affecting the discovery of electronically stored information ("ESI") and agreed on the following procedures regarding the production of ESI in this case, which the Court finds appropriate. The Court, having considered the Joint Motion and the agreement of the Parties, hereby enters the following order ("Order").

1. This Order shall govern the discovery of Electronically Stored Information ("ESI") in this litigation. The purpose of this Order is to streamline ESI production to promote a

1

"just, speedy, and inexpensive determination" of this litigation, as required by Federal Rule of Civil Procedure 1. Production of ESI in accordance with this Order shall be considered in accordance with Federal Rule of Civil Procedure 34(b)(2)(E). To the extent this Order imposes limitations on discovery otherwise available under the Federal Rules of Civil Procedure (e.g., limiting email discovery), the Parties have agreed to such limitations. The fact that the Parties have agreed to this Order shall not be deemed an acknowledgement that any information excluded from discovery by this Order would or would not be discoverable in the absence of this Order. Nothing herein shall imply that any documents or ESI collected or produced under the terms of this Order are properly discoverable, relevant, or admissible in this case or in any other litigation. Nothing in this Order shall waive in whole or in part any objection raised by a Party in its written responses to specific discovery requests served in this litigation. This Order may be modified in the Court's discretion for good cause or, with Court approval, by joint stipulation of the Parties.

2. Absent a showing of good cause, for general requests under Federal Rules of Civil Procedure 34, the Parties are only obligated to provide the following metadata with any ESI produced, to the extent such metadata exist and can be reasonably retrieved: Email Subject, From, To, CC, BCC, Date Sent (including time), Date Received (including time), Filename, Author, Date Created (including time), Date Modified (including time), MD5 Hash, and File Extension. For all Parties who store e-mails in a central location, all ESI produced from locations other than that central location will also include the following metadata, to the extent such metadata exist and can be reasonably retrieved: Custodian, Duplicate Custodians, and File Path. Metadata will be provided in a Concordance DAT file format that includes ProdBeg, ProdEnd, Attachment Begin, and Attachment End (or the equivalent thereof), Confidentiality

2

Designation, NativeLink and Text Link. Nothing in this Order requires the Parties to create or supply metadata, which is not maintained in the usual course of business.

3. Absent agreement of the Parties or further order of this Court, the following parameters shall apply to ESI production:

  a. **Date range.** The Parties agree to apply a date range of January 1, 2007 to the present to ESI that is subject to discovery in this matter provided that (i) if any Party determines that one or more custodians identified pursuant to section 3.b. below appears to have little or no ESI dating back to January 1, 2007 when compared with other custodians, then the Party will promptly advise the other Parties and schedule a meet and confer to address a modification of this date range, (ii) this date range shall not restrict a responding party's right to object to the time period of any individual discovery request pursuant to paragraph 6, below, and (iii) to the extent any Party seeks targeted discovery on matters that precede January 1, 2007, this section shall not restrict said discovery.

  b. **Custodians.** At an agreed upon date, following the exchange of discovery, NPBL shall identify the five (5) custodians, and CSXT and NSR each shall identify the twelve (12) custodians for that Party, who are most likely to have discoverable information, i.e., information relevant to the claims and defenses in this action, in their possession, custody, or control, from the most likely to the least likely. The custodians shall be identified by name, title, role in the instant dispute, employment status and the subject matter of the information they are believed to have in their possession, custody, or control. CSXT, NPBL, and NSR agree to disclose their respective lists of custodians in order to provide the other Parties with an opportunity to object and further agree to meet and confer to resolve any such objections. To the extent not otherwise included on NSR's final list of twelve (12) custodians, discovery of ESI

3

associated with the individual named defendants shall be restricted to their role as NPBL Board members, including without limitation the time period served on the NPBL Board. The total number of initial custodians for NPBL shall be limited to no more than five (5) custodians, and the total number of initial custodians for CSXT and NSR shall be limited to no more than twelve (12) custodians respectively; provided that, once discovery is underway, if a Party has good cause to obtain discovery from a custodian not included on another Party's initial list of custodians, the Party will promptly advise and schedule a meet and confer to address any objections, all of which are reserved pursuant to paragraph 6, below.

      c.    **Non-Custodial Data Sources.**[1] At an agreed upon date set promptly following that set forth in paragraph 3(b) above, CSXT, NPBL, and NSR shall identify the non-custodial data sources for that Party that are most likely to contain non-duplicative discoverable information for preservation and production consideration, from the most likely to the least likely. CSXT, NPBL, and NSR agree to disclose their respective lists of non-custodial data sources in order to provide the other Party with an opportunity to object and further agree to meet and confer to resolve any such objections.

      d.    **Phased Discovery.** Upon the commencement of written discovery pursuant to Fed. R. Civ. P. 34, CSXT, NPBL, and NSR agree to phase the production of ESI where practicable. CSXT, NPBL, and NSR will meet and confer regarding the custodians and non-custodial data sources identified in paragraphs 3(b) and 3(c) above that will comprise their initial productions. Following their initial productions, CSXT, NPBL, and NSR will continue to prioritize the order of subsequent productions and to meet and confer about the same as needed.

---

[1] That is, a system or container that stores ESI, but over which an individual custodian does not organize, manage or maintain the ESI in the system or container (e.g., enterprise system or database).

4

e. **Production of ESI.** The producing Party shall conduct a reasonable search for ESI, including electronic mail, for the custodial and non-custodial data sources identified in paragraphs 3(b) and (c) above. The categories of ESI identified in Schedule A attached hereto need not be preserved or produced.

f. **Rolling Productions.** The Parties will produce responsive, not-privileged ESI on a rolling basis. Privilege logs will be produced in no event later than three (3) weeks prior to the discovery cutoff set forth for each party in the Scheduling Order [78], subject to reasonable corrections and supplementation.

g. **Search Methodology.** The Parties agree that producing parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own ESI. If the producing Party elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms to the requesting Party. A requesting Party may request no more than twenty (20) additional terms to be used in connection with the electronic search, but each requesting Party reserves the right to request additional terms if they believe it necessary. If necessary, the Parties agree to meet and confer to revise or expand the search terms in order to avoid an unduly burdensome production or the retrieval of a large amount of non-responsive ESI.

h. **Search Terms.** Focused terms, rather than over-broad terms (e.g., the names of the Parties alone), shall be employed. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as a Party's name or location, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination

of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. The use of narrowing search criteria (e.g., "and," "but not," or "w/x") is encouraged.

      i.    **Technologies.** If a producing Party elects to use Technology Assisted Review ("TAR") to locate or prioritize potentially responsive ESI, the Party agrees to incorporate quality control and quality assurance procedures to ensure a reasonable production of responsive, not-privileged ESI consistent with the requirements of Fed. R. Civ. P. 26(g). The parties will meet and confer as needed to disclose and discuss the use of software or other technologies used to exclude or eliminate sources of potentially responsive ESI, including without limitation keyword or Boolean searching, file type culling, de-duplication, filtering, predictive coding, near de-duplication, email thread suppression, clustering or concept searching. Email thread analysis may be used to reduce the volume of emails reviewed and produced, provided that the Parties disclose such use pursuant to this paragraph. The produced emails must include all of the responsive information from a thread, including attachments.

      j.    **General Document Image Format.** Each electronic document and placeholder image for file types identified in paragraph 3(m) below shall be produced in single-page Tagged Image File Format ("TIFF") format (300 dpi with Group IV compression), or when necessary, in single-page Joint Photographic Experts Group ("JPG" or "JPEG") format (200 dpi or higher and 24-bit color depth). TIFF files (and any JPG or JPEG files) shall be single page and shall be named with a unique production number followed by the appropriate file extension. Load files (in Opticon "OPT" format) shall be provided to indicate the location and unitization of the TIFF files (and any JPG or JPEG files). If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in

the original document. If applicable, TIFF or JPEG images shall retain tracked changes, embedded comments, hidden text, and speaker notes.

      k.    **Text-Searchable Documents.** Each producing Party shall provide searchable text for all produced documents with one text file per document that contains extracted full text for ESI or OCR text for paper documents or redacted ESI. Text files shall be named with the beginning Bates number of the corresponding document and a path to the text file within the production shall be provided in the data load file.

      l.    **Footer.** Each document image shall contain a footer with a sequentially ascending Bates number and confidentiality designation (if any) in a location that does not cover up any of the document's original text or images. Bates and confidentiality stamping shall be consistent in font type and size.

      m.    **Native Files.** Each electronic document that does not lend itself to easily useable images, i.e., Excel spreadsheets, PowerPoint files, audio and video files, shall be produced in native format, and a placeholder image provided in accordance with paragraph 3(j) above, unless said documents are redacted, in which case the producing Party may elect to provide redacted native files in accordance with this section or to provide redacted images in accordance with paragraph 3(j) above. A Party that receives a document produced in the format specified in paragraph 3(j) above may make a reasonable request to receive the document in its native format. Upon receipt of such a reasonable request, the producing Party shall produce the document in its native format. A producing Party may object to producing a native file if, for example, the production of the native file would require the production of information that the Party would otherwise not be required to produce. Any confidentiality or other designations stamped on a placeholder image for a document produced in native format shall apply to the

7

entire native file and its contents.

  n. **Inaccessible or Unduly Burdensome ESI Sources.** Absent a showing of good cause, no Party need restore any form of media upon which backup data is maintained in a Party's normal or allowed processes, including but not limited to backup tapes, disks, storage area networks ("SAN"), disaster recovery materials, or other forms of media, to comply with its discovery obligations in the present case.

  o. **Voicemail and Mobile Devices.** Absent a showing of good cause, voicemails, text messages, iPads, Blackberries, tablets, personal digital assistants, or other similar portable devices, and mobile phones or smartphones are deemed not reasonably accessible and need not be collected and preserved.

  p. **Duplicates.** Where a producing Party has more than one identical copy of an electronic document (as identified using industry standard MD5 or SHA-1 algorithms to create and compare hash values for exact matches only), the producing Party may produce a single copy of that document as long as all family relationships are maintained, i.e., emails shall be treated as duplicates only if they are identical both in the bodies and in all their attachments, and an email attachment shall not be treated as a duplicate merely because an identical copy of the document exists as a separate file.

  q. **Structured Data (e.g., Databases).** The Parties understand and acknowledge that certain categories of ESI are structurally complex and do not lend themselves to production as native format or other traditional formats. To the extent a response to discovery requires production of discoverable electronic information contained in a database, the Parties shall meet and confer to negotiate appropriate parameters for querying the database for discoverable information and generating a report in a reasonably usable electronic file, i.e., Excel

or CSV.

r. **Paper Documents.** The Parties agree to meet and confer to the extent a producing Party identifies a significant volume of paper documents as a source of potentially responsive information.

4. Absent agreement of the Parties or further order of this Court, the following specific exceptions apply to the above parameters:

a. **Redactions.** In situations where redaction of information is required, such redactions must be made in a way that ensures the integrity of the remaining text is preserved for OCR (e.g., redactions must not obscure non-redacted text). Any redactions must be clearly visible on the face of the produced document (e.g., the parties must use black boxes or text, not white, to make redactions on documents with a white background).

b. **Dynamic Files.** When there is a legitimate need to present content of the file that cannot be derived from a static image and/or optional full text, a party may, at its option, produce these types of dynamic files in native form for review in the native application. To the extent that print-outs or images of all or part of documents were also maintained in the ordinary course of business in static form (e.g., as a pdf attachment), those documents will be produced as static images.

c. **Conversion not Applicable or Practicable.** Due to the nature or complexity of storage of some ESI (e.g., ESI in custom or proprietary applications, website content), conversion to static image form may be overly burdensome. The parties reserve the right to provide this ESI in some other reasonably usable format.

d. **Image Not Readable.** Where TIFF images of certain documents are not legible, the parties may request their production in native or other appropriate format.

    e. **Encryption and Password Protection.** With respect to any ESI items that are password-protected or encrypted, the producing Party will take reasonable steps to locate and apply encryption keys so that relevant documents can be reviewed and produced if appropriate. In the event that encrypted or password-protected documents, which are reasonably likely to be responsive to a document request, remain for a particular custodian after such reasonable efforts have been made, the producing Party shall advise the receiving Parties.

  5. The Parties agree that no Party is required to log any privileged documents, including ESI, that are dated following the filing of the complaint on October 4, 2018. For documents and ESI that have been withheld as privileged, the withholding Party shall provide a privilege log of such documents and ESI, providing the following information: date, author(s), custodian(s), recipient(s), file type, and subject (to the extent the subject does not reveal protected content). In addition, the withholding Party shall also provide for each document on their privilege log an identifier for the privilege being asserted (e.g., "ACP" for attorney-client privilege, "WP" for work product, or other descriptions as necessary based on the specific privilege being claimed), a description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity, the Bates range for redacted documents, and a unique document number/identifier that need not be formatted as, or consecutive with, Bates numbers of produced documents (e.g., "Def_Priv_00001"). For an email string or chain (i.e., a series of emails linked together by responses and/or forwarding) that is withheld on the grounds of privilege or other immunity, the producing Party may include only a single privilege log entry for the top-most email in the string or chain if the description of the single entry is sufficient for the receiving Party to evaluate the claim of privilege or immunity for

each withheld email in the email string or chain. For a family of documents that is withheld on the grounds of privilege or other immunity, the producing Party shall identify the items individually (e.g., an email attaching a memorandum), but may log the items together as a single entry if the description of the single entry is sufficient for the receiving Party to evaluate the claim of privilege or immunity for each family member. To the extent only part of a document may be withheld on the grounds of privilege or immunity, the producing Party may redact that information prior to production. The producing Party need not log the redacted information on his or its privilege log called for by paragraph 3(f), above. If the producing Party chooses not to log redacted information, then the producing Party agrees to produce an additional metadata field and corresponding .dat file that identifies each redacted document, which will allow the receiving Party an efficient means for identifying and evaluating said redactions. Upon review of the redacted document, however, to the extent the receiving Party cannot in good faith discern the reasons for any redaction from the face of the remainder of the document, the receiving Party may in writing demand the producing Party, and the producing Party shall within a reasonable time act, to supplement its privilege log to include an entry for the redaction at issue. Nothing set forth in this paragraph shall constitute a waiver of a Party's objections to the production of documents set forth in the Party's responses to document requests.

6. Except as expressly stated, nothing in this Order impairs, waives, limits, or otherwise affects the Parties' discovery obligations, immunities, objections, or other rights or interests under the Federal Rules or Local Rules of this Court.

7. Each Party retains the right to seek modification from the Court of any of the terms of this Order upon a showing of good cause.

Entered: *November 19, 2019*

/s/
Lawrence R. Leonard
United States Magistrate Judge

| CSX TRANSPORTATION, INC. | NORFOLK SOUTHERN RAILWAY COMPANY |
|---|---|
| Date: November 18, 2019 | Date: November 18, 2019 |
| By its attorneys, | By its attorneys, |
| /s/<br>Robert W. McFarland (VSB No. 24021)<br>Benjamin L. Hatch (VSB No. 70116)<br>Jeanne E. Noonan (VSB No. 87863)<br>McGuireWoods LLP<br>World Trade Center<br>101 West Main Street, Suite 9000<br>Norfolk, Virginia 23510-1655<br>Telephone: (757) 640-3716<br>Facsimile: (757) 640-3930<br>rmcfarland@mcguirewoods.com<br>bhatch@mcguirewoods.com<br>jnoonan@mcguirewoods.com<br><br>Attorneys for CSX Transportation, Inc. | /s/<br>Alan D. Wingfield (VSB No. 27489)<br>Michael E. Lacy (VSB No. 48477)<br>TROUTMAN SANDERS, LLP<br>1001 Haxall Point<br>Richmond, Virginia 23219<br>Tel: 804-697-1200<br>Fax: 804-698-6061<br>Alan.wingfield@troutman.com<br>Michael.lacy@troutman.com<br><br>John C. Lynch (VSB No. 39267)<br>Kathleen M. Knudsen (VSB No. 90845)<br>TROUTMAN SANDERS LLP<br>222 Central Park Avenue, Suite 2000<br>Virginia Beach, VA 23462<br>Telephone: (757) 687-7759<br>Facsimile: (757) 687-7510<br>john.lynch@troutman.com<br>liz.flowers@troutman.com<br>kathleen.knudsen@troutman.com<br><br>Monica McCarroll (VSB No. 45622)<br>REDGRAVE LLP<br>14555 Avion Parkway, Suite 275<br>Chantilly, Virginia 20151<br>Telephone: (703) 592-1154<br>Facsimile: (703) 230-9859<br>MMcCarroll@redgravellp.com<br><br>Attorneys for Norfolk Southern Railway Company |

**NORFOLK & PORTSMOUTH
BELT LINE RAILROAD COMPANY**

Date:    November 18, 2019

By its attorneys,

/s/
_____
James L. Chapman, IV (VSB No. 21983)
W. Ryan Snow (VSB No. 47423)
Darius K. Davenport (VSB No. 74064)
David C. Hartnett (VSB No. 80452)
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
ddavenport@cwm-law.com
dhartnett@cwm-law-com

Attorneys for Norfolk and Portsmouth
Belt Line Railroad Company


**CANNON MOSS**

Date:    November 18, 2019

By his attorneys,

/s/
_____
W. Edgar Spivey (VSB No. 29125)
Clark J. Belote (VSB No. 87310)
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3196
Facsimile: (888) 360-9092
wespivey@kaufcan.com
cjbelote@kaufcan.com

Attorney for Cannon Moss

**JERRY HALL, THOMAS HURLBUT,
and PHILIP MERILLI**

Date:    November 18, 2019

By their attorneys,

/s/
_____
Hugh M. Fain, III (VSB No. 26494)
M. F. Connell Mullins, Jr. (VSB No. 47213)
John M. Erbach, Esq. (VSB No. 76695)
SPOTTS FAIN PC
411 E. Franklin St.
Richmond, VA 23219
Telephone: (804) 697-2000
Facsimile: (804) 697-2100
hfain@spottsfain.com
cmullins@spottsfain.com
jerbach@spottsfain.com

Attorneys for Jerry Hall, Thomas Hurlbut, and
Philip Merilli