UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| CSX Transportation, Inc.<br><br>*Plaintiff*<br><br>v.<br><br><br>Norfolk Southern Railway Company, *et al.*<br><br>*Defendants* | C.A. No. 2:18-cv-00530-MSD-LDL |

**VIRGINIA INTERNATIONAL TERMINALS, LLC'S
<u>MEMORANDUM IN SUPPORT OF ITS MOTION TO QUASH</u>**

Pursuant to Federal Rules of Civil Procedure 26 and 45, Virginia International Terminals, LLC ("VIT"), a non-party to the above-captioned litigation, moves to quash or otherwise modify the subpoena *duces tecum* issued to it is in this matter by CSX Transportation, Inc. ("Plaintiff" or "CSX"). Specifically, the subpoena should be quashed for the following reasons: (1) the subpoena did not provide a reasonable time for compliance; (2) compliance with the subpoena would cause an undue burden and expense to VIT based on the overly broad requests for production of documents; and (3) compliance would require the disclosure of privileged, confidential, and proprietary commercial information that belongs to VIT and its customers whose information is subject to certain contractual confidentiality requirements. In support of its Motion, VIT states:

1

**BACKGROUND**

1. On December 9, 2019, CSX served VIT with its subpoena *duces tecum* (the "Subpoena"). **Exhibit A**.

2. As part of the Subpoena, CSX provided VIT with a copy of the protective order in place in this matter. *See* **Exhibit A**.

3. The Subpoena commands VIT to produce a list of documents from 2007 to present. *See* **Exhibit A**.

4. Production under the subpoena is commanded on January 3, 2020, at 10:00 am EST. *See* **Exhibit A**.

5. VIT met and conferred with counsel for CSX on December 18, 2019.

6. VIT issued its objections in this matter on December 23, 2019. **Exhibit B**.

7. VIT remains willing to work with CSX's counsel to resolve this matter without the need for court intervention.

**AUTHORITY**

Federal Rule of Civil Procedure 45 provides that a court must quash a subpoena that subjects a person to undue burden and when the subpoena requires disclosing a trade secret or other confidential research, development, or commercial information. Fed. R. Civ. Proc. 45(d)(3)(A)(iv), 45(d)(3)(B)(i).

In resolving the need to quash a subpoena or provide a protective order for a subpoena, courts must balance the burden imposed on the witness against the need for the discovery. *See* Fed. R. Civ. Proc. 26. The proportionality requirement of Rule 26 "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Va. Dep't of Corr. v. Jordan,* 921 F.3d 180, 189 (4th Cir. 2019). "When discovery is sought from nonparties, however,

its scope must be limited even more" because these are "'strangers' to the litigation." *Id.* Additionally, "[a] more demanding variant of the proportionality analysis . . . applies when determining whether, under Rule 45, a subpoena issued against a nonparty 'subjects a person to undue burden' and must be quashed or modified." *Id.* (citing Fed. R. Civ. P. 45(d)(3)(A)(iv)). The court must ultimately decide "whether the benefits of discovery to the requesting party outweigh the burdens on the recipient." *Id.*

## ARGUMENT

The Subpoena should be quashed or otherwise modified for three reasons. First, given the extensive scope, vague nature of the requests, and timing of the requests over the holidays, VIT was not provided with sufficient time for compliance with the Subpoena. Second, the Subpoena is overly broad and unduly burdensome in its timeframe and requests such that it makes generic, broad requests for over twelve years of documents, including electronically stored information, which places an undue burden and expense on VIT as a non-party to this litigation. Finally, CSX's subpoena seeks documents that include, in part, confidential and proprietary information belonging to VIT and its customers that would not sufficiently be protected by the protective order in this matter.

**I.      The Subpoena did not provide sufficient time for compliance.**

Served on December 9, 2019, and with a production deadline of January 3, 2020, the timing of the Subpoena was during the holiday season when—given staff constraints—it would be difficult to comply with even a more narrowly tailored request. But, given the overly broad scope of the requests, it was impossible for VIT to ascertain the desired scope of CSX's subpoena with enough time to search and produce documents within the allotted deadline. Without waiving its previously served objections and the arguments raised herein, VIT remains

committed to producing documents responsive to the subpoena. VIT is in the process of producing documents that it does not believe are objectionable and will do so as promptly as practicable albeit not by the time provided for in the Subpoena. Because the Subpoena did not provide sufficient time for compliance, VIT asks that this Court deems its subsequent productions of documents timely given the diligence of VIT and its ongoing efforts to resolve this matter with opposing counsel.

**II. The Subpoena subjects VIT to an undue burden by requiring it to conduct generic searches and collect documents for an overly broad period of time at its substantial effort and expense.**

The Subpoena calls for documents and information for over a twelve-year time period with topics and search terms that are broad and generic such that collecting, searching, and reviewing such materials would be a costly and time-consuming task. *See* Ex. B (highlighting, *inter alia*, specific objections to the requests based on their vague nature, overly broad timeframe, and expansive scope). For instance, some requests are so generic as to call for documents "sufficient to show" certain assertions by CSX. *See* Ex. A at Request Nos. 1, 3, and 4. Such terminology is vague and subjective and puts VIT in an improper position of making assumptions regarding relevant materials. VIT's other specific objections to the overly broad and unduly burdensome nature of the requests are included in Exhibit B, which it incorporates herein.

To the extent that the Subpoena calls for electronically stored information and data such as e-mails, VIT also believes that much of the materials captured would be wholly unrelated to the present litigation as the plain terms of the subpoena consist of many generic terms and descriptions of regular activities at the various port facilities. *See* Ex. A. For instance, the seventeen (17) requests call for "[a]ll [d]ocuments showing" or "[d]ocuments sufficient to show" intermodal port and rail infrastructure, capacity, cost and capacity of drayage, travel times, switching rates, volumes of freight, vessel calls, and rates and fees charged by VPA or VIT. *See*

Ex. A at Request Nos. 1-17. As broadly and generically as they are worded, these requests taken together cover virtually every document and correspondence in VIT's possession. Such requests therefore do not appear to be narrowly tailored to lead to evidence relevant to this litigation and the collection and review of such documents would require hiring an outside vendor at substantial cost to VIT. As VIT is not a party to the litigation, it is without further information to limit the scope of such terms to make the searches more narrowly tailored while still seeking to identify evidence relevant to the apparently complex litigation.

VIT has met and conferred with opposing counsel to narrow this request and such discussions are still ongoing. VIT believes that the identification of limited, specific search terms for an identified list of custodians for electronically stored information would substantially limit the time and expense associated with responding to the Subpoena. VIT will continue to work with CSX's counsel to resolve its objections without the need for court intervention. Should discussions fail, VIT respectfully asks that CSX's Request Nos. 1-17 be quashed to the extent they seek electronically stored information covering every VIT custodian for a twelve-year period of time or instead that such Subpoena be modified to provide clarity as to the materials sought such that appropriate custodians, relevant and limited terms, and relevant time periods can be identified.

### III. VIT should not be required to produce confidential and proprietary information that is not sufficiently protected from disclosure to industry insiders and competitors.

Quashing the Subpoena as to Request Nos. 2, 5, 6, 7, 8, 9, and 16 is appropriate as these requests appear to require the disclosure of privileged and confidential information. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii) (directing courts to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no

exception or waiver applies"); Fed. R. Civ. P. 45(d)(3)(B)(i) (permitting courts to quash or modify a subpoena if it requires the disclosure of "trade secret or other confidential research, development, or commercial information"). Plaintiff's sweeping requests would require VIT to disclose, *inter alia*, the rates and terms and conditions of agreements between VIT and its customers as well as customer information that VIT has collected or that was provided to VIT by its customers. *See* Ex. A at Request Nos. 2, 5, 6, 7, 8, 9, and 16. Rates and terms and conditions of its customer contracts are some of VIT's most confidential and proprietary information as they are essential to its competitive advantage in the marketplace. The disclosure of such information would harm VIT's competitive position. Because competitors and third parties would use this information to their business advantage at the detriment of VIT, there is a legitimate interest in keeping this information confidential.

      In addition to desiring to protect its own confidential and proprietary information, VIT is contractually obligated to keep confidential certain information about or regarding its customers. VIT therefore cannot consent to such disclosure and seeks to protect the information in its possession regarding its customers in addition to its own information that is confidential and proprietary. VIT has reached out to its primary customers and notified them of the subpoena that was issued in this matter and multiple customers have stressed the protection of their confidential and proprietary information. At the court's request, VIT is willing to provide those communications with its customers for *in camera* review. Much of this information would be customer-specific information that would be held within VIT's records regarding things such as volumes, rates, wait times, etc. that may be collected by customer.

VIT is aware of the protective order in place in this matter. The protective order does not, however, sufficiently protect VIT's confidential and proprietary information or that of its customers. For example, the protective order would still allow expert witnesses access to any disclosed documents. With a case of this nature, VIT has every reason to believe that the industry experts retained in this matter either work for now or will work for competitors in the future. Even if documents are destroyed at the end of the case, the experts will still have the knowledge of VIT's confidential and proprietary information such as rates as well as the confidential and proprietary information of its customers and will be able to use that knowledge to their advantage when they negotiate contracts with VIT's customers and competitors in the future. Such disclosure therefore would put VIT at a competitive disadvantage in the marketplace. Because of this expert loophole in the protective order, VIT does not believe that any confidential and proprietary information it shares—whether its own or its customers—will be safe from competitors or the marketplace. A non-party should not be put through the risk of such substantial burden and harm simply because it is served with a subpoena.

Because Request Nos. 2, 5, 6, 7, 8, 9, and 16 call for information and documents that are confidential and proprietary, those requests should be quashed or modified to the extent they require confidential information of VIT and its customers.

## CONCLUSION

Accordingly, VIT requests that the Subpoena be quashed or modified as outlined above and for any other relief that the Court deems just and appropriate. Should the Subpoena be modified, VIT also prays for cost-shifting pursuant to Federal Rule of Civil Procedure 45 to the extent that such narrowed requests still impose significant expense upon VIT.

Dated:  January 2, 2020

                VIRGINIA INTERNATIONAL TERMINALS, LLC

                By:  /s/ Edward J. Powers
                      Of Counsel

Edward J. Powers (VSB No. 32146)
Jennifer L. Eaton (VSB No. 87491)
500 World Trade Center
Norfolk, VA 23510
757.446.8600-telephone
757.446.8670-fascimile
EPowers@vanblacklaw.com
JEaton@vanblacklaw.com
*Counsel for Virginia International Terminals, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on Thursday, January 02, 2020, a true and accurate copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

On Friday, January 3, 2020, a true and accurate copy of the foregoing will also be served by hand delivery to:

> Rob McFarland, Esq. (VSB No. 24021)
> Benjamin L. Hatch (VSB No. 70116)
> Jeanne E. Noonan (VSB No. 87863)
> McGuireWoods
> World Trade Center
> 101 W. Main Street, Suite 9000
> Norfolk, VA 23510

          /s/ Edward J. Powers