# Am. Type Culture Collection v. Armanino, LLP

United States District Court for the Eastern District of Virginia, Alexandria Division

May 15, 2018, Decided; May 15, 2018, Filed

Case No. 1:17-cv-1235

**Reporter**
2018 U.S. Dist. LEXIS 135945 *

AMERICAN TYPE CULTURE COLLECTION, Plaintiff, v. ARMANINO, LLP, Defendant.

**Prior History:** Am. Type Culture Collection v. Armanino, LLP, 2018 U.S. Dist. LEXIS 135944 (E.D. Va., May 15, 2018)

**Counsel:** [*1] For American Type Culture Collection, "ATCC", Plaintiff: Brandon Hall Elledge, LEAD ATTORNEY, Holland & Knight LLP (McLean), Tysons Corner, VA USA.

For Armanino, Llp, Defendant: Matthew William Lee, LEAD ATTORNEY, Thomas Leo Appler, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, Mclean, VA USA; Eric Patrick Burns, Wilson Elser Moskowitz Edelman & Dicker LLP (McLean), Mclean, VA USA.

**Judges:** T. S. Ellis, III, United States District Judge.

**Opinion by:** T. S. Ellis, III

## Opinion

**ORDER**

At issue in this commercial dispute is defendant's motion seeking partial summary judgment with respect to a number of plaintiff's damages claims. Specifically, defendant argues:

> (i) that plaintiff is barred from recovering consequential or lost profit damages stemming from its breach of contract claims because those damages are limited by the parties' agreement,
> (ii) that plaintiff cannot recover $20 million in alleged long-term damages for which plaintiff did not provide a computation, and
> (iii) that plaintiff cannot recover punitive or exemplary damages for its breach of contract or negligent misrepresentation claims.

Plaintiff does not contest that summary judgment is appropriate with respect to defendant's second and third arguments ($20 [*2] million in long-term damages and punitive or exemplary damages for breach of contract or negligent misrepresentation), but plaintiff does argue that the so-called consequential or lost profit damages it seeks are recoverable direct damages not excluded by the parties' agreement.

The matter has been fully briefed and argued, and is now ripe for disposition.

**I**.

The entry of summary judgment is appropriate only where there are no genuine disputes of material

fact. *See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. That is the case here. Because the parties do not allege any dispute of material fact, the following statement of undisputed material facts is based on defendant's statement of undisputed material facts.

- Armanino and ATCC signed a Master Service Agreement (MSA) dated May 27, 2015.
- Pursuant to the MSA, Armanino agreed to provide services to ATCC related to the ERP implementation as described in a separate statement of work.
- The MSA states that it shall be governed, construed, and enforced pursuant to California law.
- The MSA provides the following limited warranty: "Armanino warrants that it shall perform the obligations described in our Engagement Letter in a professional and workmanlike manner conforming to generally [*3] accepted industry standards."
- The MSA disclaims all other warranties with respect to the services provided pursuant to the agreement:

    EXCEPT AS EXPRESSLY PROVIDED HEREIN AND TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, ARMANINO MAKES NO WARRANTIES OF ANY KIND, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, AND SPECIFICALLY DISCLAIMS ALL IMPLIED WARRANTIES, INCLUDING ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE WITH RESPECT TO THE SOFTWARE, SERVICE AND/OR RELATED DOCUMENTATION. ARMANINO DOES NOT WARRANT THAT THE SERVICES AND/OR DELIVERABLES WILL BE ERROR FREE OR UNINTERRUPTED. THE WARRANTIES PROVIDED HEREIN ARE THE SOLE AND EXCLUSIVE WARRANTIES PROVIDED TO COMPANY [ATCC] IN CONNECTION WITH THE PROVISION OF THE SERVICE.

- The MSA also contains a "Limitation of Liability" provision which provides that Armanino shall not be liable for consequential, indirect, incidental, punitive or exemplary damages:

    Company [ATCC] agrees that **Armanino and its personnel shall not be liable to you for any claims, liabilities, or expenses related to this engagement for an aggregate amount in excess of the fees paid** by the Company to Armanino pursuant to this engagement, except [*4] to the extent finally judicially determined to have resulted primarily from the bad faith or intentional misconduct of Armanino. **In no event shall Armanino or its personnel be liable for consequential, indirect, incidental, punitive or exemplary loss, damage, or expense relating to this engagement**. Neither party's aggregate liability for any claims, liabilities, or expenses relating to this engagement shall exceed an amount which is proportional to the relative fault that party's conduct bears to all other conduct giving rise to such claims, liabilities, or expenses.

- Dr. James Kramer, ATCC's vice president of operations, reviewed the MSA and its terms before ATCC signed the MSA. Kramer understood that the liability limitation provision in the MSA meant that Armanino "wouldn't be liable for consequential damages" including "lost profits" in the event "the system didn't work, [and ATCC] couldn't do business." Kramer Dep. at 10;10-13, 21:14-22:4, 22:25-27:13. Kramer testified as follows:

    Q. Okay. So your understanding was if this new ERP system didn't work, you're not going to be able to do planning and manufacturing and distribution of the

product? That's your understanding:

A. Correct. [*5]

Q. Okay. And so you recognized that this system could have—if it didn't' work, could have a horrible impact on the company; correct?

A. Absolutely.

Q. And what was your understanding of this clause which you said you understood to mean that Armanino would not be liable for consequential damages?

A. My opinion [is] that they wouldn't be responsible for any consequential damages.

Q. In other words, Armanino wouldn't be responsible for ATCC not being able to do its manufacturing or planning or distribution, correct?

A. Correct.

Q. All right. And so you understood that Armanino wouldn't be liable if its system didn't work for all of the lost profits that ATCC would suffer as a result of not being able to do its manufacturing and distribution and planning and so forth; correct?

A. Yes.

*Id.* at 25:10-27:13 (objections and discussion of counsel omitted).[1]

• Ralph Koch, who signed the MSA on behalf of ATCC, did not recall any negotiation or communications with Armanino regarding the liability limitation provision in the MSA, and did not have a specific understanding of the consequential damages provision beyond his statement that "generally speaking, [it] is trying to limit the extent of a range of damages [*6] in the event of bad behavior, poor performance or misconduct." Koch Dep. at 265:15-178, 275:11-276:4, 278:12-18, 279:4-21, 279:23-281:4.[2]

• Plaintiff's complaint alleges plaintiff incurred "approximately $12.15 Million" in damages consisting of: (i) "at least $6.5 Million of lost gross margin during the calamitous post-September 2016 Go-Live period," (ii) "at least $1.4 Million in wasted payments to Armanino during the period 2016-17," (iii) "at least $1.0 Million in internal ATCC production operation losses," (iv) "at least $1.3 Million in remedial work payments to outside vendors," and (v) "at least another approximately $1.5 Million that will have to be spent to create an entirely new and properly documented hosting environment." Compl. at ¶ 91.

• Plaintiff's complaint goes on to allege "at least another $20 Million in long term damages to ATCC's customer and distributor relationships, and loss of prospective economic advantage in the future." Compl. at ¶¶ 91, 124.

• Plaintiff's Rule 26 disclosures do not include any computation of its alleged $20 Million in long term damages to ATCC's customer and distributor relationships, and loss of prospective economic advantage in the future.

• Plaintiff's [*7] damages expert report do not include a computation of the alleged $20 million in long term damages to ATCC's customer and distributor relationships, and loss of prospective economic advantage in the future.

• The amended report by plaintiff's damages expert itemizes other consequential damages including lost profits, manufacturing loss, excess overtime, and others.

• Plaintiff's complaint and initial disclosures allege ATCC is entitled to punitive or exemplary damages, including its professional negligence claim.

**II**.

---

[1] Plaintiff contests the "characterization" of Kramer's testimony, but the characterization of the testimony is not material to any issue on summary judgment.

[2] Again, plaintiff disputes the characterization of Koch's testimony, but that characterization is not material to any issue on summary judgment.

Case 2:18-cv-00530-MSD-RJK Document 95-2 Filed 01/06/20 Page 4 of 6 PageID# 1246

Page 4 of 6
2018 U.S. Dist. LEXIS 135945, *7

The summary judgment standard, which the parties do not dispute, is too well-settled to merit extended discussion. As Rule 56, Fed. R. Civ. P., makes clear, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." And it is settled that "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. On the other hand, if the record reflects a genuine factual dispute, summary judgment is precluded. A genuine factual dispute exists "if the evidence is such that a reasonable [*8] jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). But importantly, the party opposing summary judgment may not rest upon mere allegations and denials, and must instead "set forth specific facts showing that there is a genuine issue for trial." Id. And further, these specific facts must be shown to exist in the record in legally admissible form. Finally, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Id. at 252.

**III**.

Defendant argues that the MSA[3] limits defendant's liability with respect to ATCC's contract claims. The MSA limits plaintiff's "claims, liabilities, or expenses related to this engagement for an aggregate amount in excess of the fees paid by [ATCC] to Armanino pursuant to this engagement, except to the extent finally judicially determined to have resulted primarily from the bad faith or intentional misconduct of Armanino." MSA at ¶ 9.

The MSA also prohibits recovery of consequential damages and lost profits. Id. Restrictions such as those enumerated in the MSA "have long been recognized as valid in California" and are [*9] enforced by California courts. Markborough California, Inc. v. Sup. Ct., 227 Cal. App. 3d 705, 714, 277 Cal. Rptr. 919 (Cal. Ct. 1991).

According to defendant, the following damages claimed by plaintiff cannot be recovered under the MSA because they are "in excess of" the fees paid on the contract, consequential damages, or lost profits:

> (i) "lost gross margin,"
> (ii) "internal operation losses,"
> (iii) "long term damages to . . . customer and distributor relationships,"
> (iv) "loss of prospective economic advantage,"
> (v) "Lost profits from Sept 2016 — Dec. 2016,"
> (vi) "Manufacturing Loss from Sept 2016 — Dec 2016,"
> (vii) "Excess Overtime paid from Sept 2016 — Feb. 2017," and
> (viii) "Dialog Direct Invoices"

Each of these categories of damages are excluded by the MSA because they are "claims, liabilities, or expenses related to this engagement for an aggregate amount in excess of the fees paid" by ATCC. But, even if these damages were not excluded by the "amount in excess" provision, the lost gross margin damages in category (i), and the "lost profits from Sept 2016 — Dec. 2016 clearly constitute lost profits damages which are excluded by the MSA's lost profits provision.

The remaining damages all seek consequential damages excluded from recovery by the MSA. Damages to customer relationships, or good [*10] will, or manufacturing losses resulting from the failures of the ERP system are not direct damages based on the value of the performance of the contract; instead, these damages represent the value of a harm caused by the failure to perform. Lewis Jorge Construction Mgmt., Inc. v. Pomona Unified

---

[3] Pursuant to the MSA's choice of law provision, the parties agree that the MSA is to be construed and enforced in accordance with California law. MSA at ¶ 8.

*School Dist.*, 34 Cal. 4th 960, 968, 22 Cal. Rptr. 3d 340, 102 P.3d 257 (Cal. 2004) (holding that direct damages are those "that flow directly and necessarily from a breach of contract" and are based on the value of performance of the contract).

Plaintiff argues that it is a jury question whether these damages are general damages or consequential damages,[4] but plaintiff has not cited any record evidence suggesting either that these damages were profits unearned on the contract or that defendant agreed as part of the contract to assume responsibility for harm to customer relations or other consequential damages resulting from the breach of the parties' contract. Both the MSA itself, and the statements by plaintiff's employees responsible for the negotiation and signing of the MSA compel the conclusion that the parties agreed that the kinds of damages plaintiff seeks on its breach of contract claim were excluded by the parties' agreement. *See* MSA at ¶ 11; Kramer Dep. at 10:10-13, 21:14-22:4, 22:25-27:13. Thus, in this case, the categories [*11] of damages plaintiff seeks on the contract amount to either lost profits or consequential damages and are therefore excluded under the MSA. Accordingly, summary judgment must be granted with respect to those damages for the contract claim.[5]

IV.

Plaintiff correctly concedes that it cannot claim (i) $20 million in long-term damages, or (ii) punitive or exemplary damages for its contract or negligent misrepresentation claims. Additionally, plaintiff cannot recover the $20 million in long-term damages because plaintiff did not disclose its computation of damages as required by Rule 26(a)(i)(A)(iii), Fed. R. Civ. P. (requiring "a computation of any category of damages claimed by the disclosing party."). Because Rule 37(c)(1), Fed. R. Civ. P., forbids the use of any information that is not properly disclosed, the $20 million in long-term damages is not recoverable. *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595-96 (4th Cir. 2003). Accordingly, summary judgment must be granted on plaintiff's non-contract claim for $20 million in long-term damages.

With respect to punitive or exemplary damages, plaintiff concedes that it cannot recover those damages on either its contract or negligent misrepresentation claims per a previous Order in this case. *See ATCC v. Armanino, LLP*, No. 1:17-cv-1235 *10-11 (E.D. Va. Apr. 9, 2018). [*12] But plaintiff may be able to recover those damages on the fraud claim. *See Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1241, 44 Cal. Rptr. 2d 352, 900 P.2d 601 (Cal. 1995) ("Punitive damages are recoverable in those fraud actions involving intentional, but not negligent, misrepresentations.") (citing *Wyatt v. Union Mortgage Co.*, 24 Cal. 3d 773, 790, 157 Cal. Rptr. 392, 598 P.2d 45 (Cal. 1979)); *see also Branch v. HomeFed Bank*, 6 Cal. App. 4th 793, 799, 8 Cal. Rptr. 2d 182 (Cal. Ct. App. 1992); Cal. Civ. Code § 3294.[6] Accordingly,

---

[4] Although the question whether damages are direct or consequential may sometimes be an issue for the jury, such as when there is an allegation that one party assumed the risk of harm from the breach of the contract, California courts have generally held that whether a particular set of damages constitute direct or consequential damages is a question of law for the judge. *See Greenwich S.F., LLC v. Wong*, 190 Cal. App. 4th 739, 760, 118 Cal. Rptr. 3d 531 (Cal. Ct. App. 2010) (noting that whether a plaintiff may recover lost profits on a breach of contract claim is "one of law").

[5] Defendant may be correct that the MSA limits contract liability with respect to the categories of damages described *infra*, but as defendant correctly concedes those damages are recoverable if plaintiff prevails on its fraud or negligent misrepresentation claims in counts II and III. *See* Cal. Civ. Code § 1668 ("All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.") (emphasis added); *Continental Airlines, Inc. v. McDonnell Douglas Corp.*, 216 Cal. App. 3d 388,

264 Cal. Rptr. 779 (Cal. App. Ct. 1989) (holding that negligent misrepresentation is included within the meaning of the term fraud in § 1668). Therefore, if the jury finds for plaintiff on either the fraud or negligent misrepresentation claims, then plaintiff may recover similar kinds of damages.

[6] *See Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1239, 1 Cal. Rptr. 2d 301 (Cal. Ct. App. 1991) ("Although

defendant's motion for summary judgment must be granted with respect to plaintiff's claims for punitive or exemplary damages for its contract or negligent misrepresentation claims.

For the reasons stated above, and for good cause shown,

It is hereby **ORDERED** that defendant's motion for partial summary judgment is **GRANTED**.

The Clerk is directed to send a copy of this Order to all counsel of record.

Alexandria, Virginia

May 15, 2018

/s/ T. S. Ellis, III

T. S. Ellis, III

United States District Judge

**End of Document**

---

punitive damages may not ordinarily be given for breach of contract, whether the breach be intentional, willful or in bad faith, such damages may be awarded where a defendant fraudulently induces the plaintiff to enter into a contract."); *see also* Cal. Civ. Code § 3294(a) ("In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.").