IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CSX TRANSPORTATION, INC.,
individually and on behalf of NORFOLK
& PORTSMOUTH BELT LINE
RAILROAD COMPANY,

        Plaintiff,

v.                                        Civil Action No. 2:18-cv-530-MSD-LRL

NORFOLK SOUTHERN RAILWAY
COMPANY, *et al.*,

        Defendants.

_____/

**CSX TRANSPORTATION, INC.'S OPPOSITION TO
MOTION TO QUASH BY VIRGINIA INTERNATIONAL TERMINALS, LLC**

Plaintiff CSXT Transportation, Inc. ("CSXT"), by counsel, states as follows in opposition to non-party Virginia International Terminals, LLC's ("VIT") motion to quash or modify the third-party subpoena *duces tecum* issued to it by CSXT in this case (the "Motion") (ECF No. 92):

**BACKGROUND**

For more than a decade, defendants Norfolk Southern Railway Company ("NS") and the Norfolk & Portsmouth Belt Line Railroad ("NPBL") have worked together to create an anti-competitive shield enabling NS to monopolize Norfolk International Terminal ("NIT"), the largest port in Virginia. Specifically, NS and NPBL have conspired to cause NPBL to charge an anticompetitive switch rate that effectively forecloses CSXT's ability to provide on-dock rail access to intermodal shipping customers at NIT. To redress this unlawful conduct, CSXT sued NS, NPBL, and certain individual defendants, asserting claims under state and federal law.

VIT operates the port and terminal facilities owned by the Virginia Port Authority ("VPA"), including the Virginia International Gateway ("VIG"), Portsmouth Marine Terminal

1

("PMT"), and NIT. As a result, VIT plays a unique and integral role in the intermodal shipping market in the Hampton Roads area. Accordingly, CSXT issued a third-party subpoena *duces tecum* to VIT on December 9, 2019, seeking documents and data directly relevant to CSXT's claims and the defenses asserted by NS and NPBL. *See* ECF No. 92 Ex. A (the "Subpoena"). VIT produced certain limited documents in response to the Subpoena on January 3, 2020 and January 7, 2020.

Counsel for CSXT has conferred with counsel for VIT repeatedly in an effort to narrow the scope of the remaining Subpoena requests, and those discussions are ongoing. Because the documents and data sought by the Subpoena are highly relevant to the issues in this case, and because CSXT continues to work cooperatively to limit any burden imposed on VIT, CSXT respectfully requests that the Court deny VIT's Motion.

## ARGUMENT

**I.     CSXT Seeks to Work Cooperatively with VIT to Appropriately Limit the Scope and Burden of Responding to the Subpoena.**

In the Motion, VIT asks the Court to quash or modify the Subpoena due to the "broad and generic" nature of some of its Requests.[1] *See* ECF No. 92 at 4-5. As counsel for CSXT has made clear during negotiations with counsel for VIT, CSXT seeks to work cooperatively with VIT to identify highly relevant evidence while at the same time limiting the burden on VIT. For that reason, the Motion is premature and should be denied.

The Subpoena seeks documents and communications that are highly relevant to core issues in the case, including, among other requests, (1) the capacity and freight volumes for rail and trucks

---

[1] VIT also asks the Court to deem its production of documents after the January 3, 2020 subpoena return date to be timely. *See* ECF No. 92 at 3-4. CSXT agrees that VIT's rolling productions should be considered timely so long as VIT continues to negotiate in good faith with CSXT regarding the scope of production.

2

for freight shipped through NIT, VIG, and PMT; (2) wait times or other measures of congestions at NIT, VIG, and PMT; and (3) the intermodal container capacity and drayage capacity at NIT, VIG, and PMT. *See, e.g.*, Subpoena Requests Nos. 2-6, 12, 15, 17. VIT has sole possession over much of this critical information. *See, e.g.*, Subpoena Request No. 6 (seeking Documents "concerning the assignment of vessels to NIT, VIG, or PMT, including Documents showing how vessels are assigned to each Port of Virginia terminal"). CSXT intentionally drafted these requests in a manner intended to limit the burden on VIT, including by seeking, where possible, only "documents sufficient to show" necessary information, rather than "all documents" pertaining to relevant topics.[2]

As VIT notes in its Motion, counsel for CSXT and counsel for VIT have conferred repeatedly regarding the scope of the Subpoena and the particular information needed by CSXT. *See* ECF No. 92 at 5. Most recently, at VIT's request, counsel for CSXT provided an initial list of proposed search terms intended to substantially limit the burden associated with responding to the Subpoena. *See* Email from A. Peterson dated December 30, 2019, attached as **Exhibit A**. Counsel have also discussed the possibility of limiting VIT's response by custodian, time period, and additional or different search parameters, depending on the volume of potentially responsive documents and communications at issue. These negotiations are ongoing. CSXT thus respectfully requests that the Court deny VIT's Motion to allow the parties to reach an agreement regarding the scope of documents and data to be produced in response to the Subpoena.

---

[2] As with other aspects of the Subpoena, to the extent VIT has concerns or questions regarding CSXT's requests seeking "documents sufficient to show . . .," CSXT remains willing to continue to meet and confer with VIT regarding the scope of documents sought and the sufficiency of VIT's production. These issues are subject to ongoing discussion, and CSXT is not aware of having reached an impasse as to these requests. VIT's Motion is thus premature and should be denied for this and the other reasons discussed herein.

## II. The Protective Order Will Adequately Protect Any Confidential or Proprietary Information Produced by VIT.

VIT also asks the Court to quash Requests No. 2, 5, 6, 7, 8, 9, and 16, to the extent those Requests seek "confidential information of VIT and its customers." ECF No. 92 at 7. According to VIT, producing this information would cause VIT to violate contractual obligations to its customers or would otherwise "put VIT at a competitive disadvantage in the marketplace." ECF No. 92 at 7.

VIT acknowledges that the Protective Order entered by the Court in this case (ECF No. 79) would allow VIT to designate documents or information as "Confidential—Attorneys' Eyes Only," thereby limiting disclosure to the parties' outside counsel, expert witnesses, and certain court personnel in conjunction with this action only. *See* ECF No. 92 at 7. VIT suggests that this "expert loophole" will nonetheless allow "industry experts" to use confidential information belonging to VIT or its customers "when they negotiate contracts with VIT's customers and competitors in the future." ECF No. 92 at 7. While CSXT has of course retained outside anti-trust experts in this case, none would ever be involved in commercial contract negotiations between CSXT and VIT customers and competitors. CSXT representatives handle such negotiations with customers directly. If VIT is implying that despite the Protective Order that CSXT litigation experts will nonetheless share VIT confidential information with CSXT and that CSXT would then use such information in commercial negotiations, VIT points to no specific facts suggesting that CSXT, its experts or others governed by the Protective Order will not abide by its terms as required by the Court. Moreover, as CSXT's initial expert disclosure makes clear, it has not designated any "industry expert" in this case who would be in a position of negotiating commercial contracts with VIT or its customers in the future. *See* CSXT's Initial Expert Disclosure, attached as **Exhibit B.** And, the fact remains that CSXT's experts must review the information, subject to reasonable

4

protections, in order for CSXT to prosecute its case.

CSXT remains willing to work cooperatively with VIT to reduce any burden imposed by the Subpoena, including by identifying appropriate methods to limit the production and disclosure of customer-specific information that VIT is contractually obligated to keep confidential. *See* ECF No. 92 at 6. That some information requested by the Subpoena may be commercially sensitive, however, is not a valid basis to refuse compliance. *See Williams v. Big Picture Loans, LLC*, No. 3:17-cv-461, 2019 WL 1186856, at *3 (E.D. Va. Mar. 13, 2019) (explaining that, when deciding whether to quash a subpoena under Rule 45, the court must weigh the relevance and need for the information against the confidentiality of the information and the resulting harm, and refusing to quash subpoena where the information sought was "relevant and necessary" to the plaintiffs' claims and would "be kept confidential . . . subject to the Protective Order, and will be limited to use in this action").

## CONCLUSION

For the reasons above, CSXT respectfully requests that this Court deny VIT's Motion.

Dated: January 16, 2020

Respectfully submitted,

**CSX TRANSPORTATION, INC.**

*/s/Robert W. McFarland*
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
Jeanne E. Noonan (VSB No. 87863)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Telephone: (757) 640-3716
Facsimile: (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: jnoonan@mcguirewoods.com

5

        Ashley P. Peterson (VSB No. 87904)
        McGuireWoods LLP
        Gateway Plaza
        800 East Canal Street
        Richmond, Virginia  23219-3916
        Telephone:  (804) 775-1000
        Facsimile:  (804) 775-1061
        E-mail: apeterson@mcguirewoods.com

        *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on this 16th day of January 2020, a true and correct copy of the foregoing was served on all counsel of record via Notice of Electronic Filing by filing with the Court's CM/ECF system.

By: */s/Robert W. McFarland*
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
Jeanne E. Noonan (VSB No. 87863)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Telephone: (757) 640-3716
Facsimile: (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: jnoonan@mcguirewoods.com

Ashley P. Peterson (VSB No. 87904)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219-3916
Telephone: (804) 775-1190
Facsimile: (804) 698-2091
E-mail: apeterson@mcguirewoods.com

*Counsel for Plaintiff*