IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CSX TRANSPORTATION, INC.,
individually and on behalf of NORFOLK
& PORTSMOUTH BELT LINE
RAILROAD COMPANY,

       Plaintiff,

v.                                                                          Civil Action No. 2:18-cv-530-MSD-LRL

NORFOLK SOUTHERN RAILWAY
COMPANY, *et al.*,

       Defendants.

/

**CSX TRANSPORTATION, INC.'S MEMORANDUM IN SUPPORT OF
EMERGENCY MOTION TO AMEND SCHEDULING ORDER AND EXTEND
ITS EXPERT WITNESS AND DISCOVERY DEADLINES**

Plaintiff CSX Transportation, Inc. ("CSXT"), by counsel, pursuant to Federal Rules of Civil Procedure 6(b) and 16(b)(4), Local Rule 37(F), and this Court's Scheduling Order (ECF No. 78), submits its Memorandum in Support of its Emergency Motion to Amend Scheduling Order and Extend Its Expert Witness and Discovery Deadlines.

**I.   INTRODUCTION**

This is a complex case in which CSXT plans to introduce expert testimony in support of various issues.  CSXT timely disclosed its expert to the Defendants.  In the midst of fact discovery, on February 10, 2020, CSXT is required to provide its expert witness report.  CSXT's expert, however, still lacks documents and data that CSXT has requested in discovery, but has yet to receive.

CSXT propounded discovery to Defendants, specifically seeking waybill data; customer

1

contracts and related documentation, including RFPs, term sheets, and price lists; and revenue car data. CSXT's discovery requests also included requests for communications and negotiations with customers, documents related to pricing strategies, and documents related to market studies and comparative analyses.

These key documents at issue are relevant to CSXT's federal antitrust and state law claims, and they are needed immediately by CSXT in this litigation. CSXT's expert needs to review and analyze these documents as part of his expert report. Under this Court's Scheduling Order, that report is due in less than three weeks, on February 10, 2020. *See* ECF No. 78. The documents are also essential for CSXT to take meaningful depositions of fact witnesses, particularly for the 30(b)(6) depositions of Defendants Norfolk Southern Railway Company ("NS") and Norfolk & Portsmouth Beltline Railroad Company ("NPBL").

Accordingly, CSXT is seeking a thirty-day extension of the expert report deadline to March 9, 2020, with a corresponding extension of the other expert report and testimony deadlines, as well as an extension of Plaintiff's discovery deadline, to conclude on the same day as Defendants, March 31, 2020.

Aware of the deadlines in this matter, as agreed upon in the Scheduling Order, CSXT, NS, and NPBL all quickly initiated discovery. Progress was delayed from the get go, however, due to the scope of discovery and the involved negotiations of the ESI Order. *See* ESI Order, ECF No. 82. Indeed, agreements on issues central to the ESI Order, including search terms, have still not been reached. The end result is CSXT has not received the documents and data needed for its expert to prepare his report, despite CSXT's diligent efforts to confer and propose workable solutions.

In an effort to reach an agreed resolution, earlier this month, CSXT asked Defendants to agree to a thirty-day extension of expert deadlines; NS initially offered a 15-day extension. In efforts to resolve the matter without Court intervention, CSXT asked NS to confirm production by January 24, 2020 of the most important data and documents pertaining to customer contracts and rail volume, needed by its experts. NS, however, conditioned its agreement on providing those documents by that date on CSXT providing similar documents within the same timeframe. Attempts to reach consensus were further hamstrung by NS's actions, including producing on January 16, 2020, three pages of additional proposed search terms—outside the scope of any proportionality or relevance—that make a reciprocal production impossible.

CSXT has the burden of proof in this matter, and imminent expert report and discovery deadlines. As CSXT's deadlines come 30 days sooner than Defendants, it cannot condition an agreement on the production of required documents on its production to NS, nor on its agreement to newly propounded search terms that will entail significant additional effort to analyze and possibly run. Nor do the Federal Rules or Local Rules permit conditioned production.

Although meet and confers took place on January 3rd, January 17th, and January 21st, as well as through numerous exchanges of written correspondence, and the parties continue to communicate and confer, a resolution is not forthcoming. And, vitally, there is not a clear path forward for the production of documents needed by CSXT's expert. With the Court's February 10th report deadline looming, it is clear CSXT will suffer severe prejudice unless its expert and discovery deadlines are extended.

## II.  FACTUAL BACKGROUND

On September 9, 2019, the Court issued an Opinion and Order, denying Defendants' Motions to Dismiss, with the exception of CSXT's claim for tortious interference. *See* Op. and

Order, ECF No. 66.  Within a few weeks, Defendants served Answers, and the Court issued a Rule 26(f) Pretrial Order on September 27, 2019.  *See* Rule 26(f) Pretrial Order, ECF No. 72.  The Rule 26(f) Pretrial Order stated, "the parties may initiate any form of discovery at any time subsequent to the date of this order, provided that no party will be required to respond to a deposition notice or other form of discovery sooner than November 19, 2019."  ECF No. 72.  CSXT propounded discovery to both NS and NPBL on October 23, 2019, ensuring the deadline for responses were due within days of the November 19, 2019 commencement date.  Similarly, NS propounded its First Requests for Production of Documents to CSXT, containing 105 requests, on October 21, 2019, and NPBL propounded its First Requests for Production of Documents to CSXT on October 23, 2019.  These initial discovery requests contemplated the production of considerable amounts of information, including highly sensitive commercial information and large quantities of electronically stored information.

Anticipating this issue early on, CSXT circulated draft ESI and Protective Orders to counsel on September 24, 2019.  *See* E-mail from R. McFarland to Counsel, Sept. 24, 2019, attached hereto as **Exhibit 1**.  In fact, the focal point of the ESI Order is to "streamline ESI production to promote a 'just, speedy, and inexpensive determination' of this litigation." ECF No. 83, at 1–2.  However, it took numerous e-mail exchanges and several meet and confers before the parties were able to submit an agreed upon ESI Order to the Court for entry, almost two months later, on November 18, 2019.  *See* ECF Nos. 82, 83.  This process was delayed by counsel for NS, who questioned CSXT's data storage methods, e-mail preservation, and technical capabilities on multiple occasions, all in an apparent effort to address issues *before* the start of discovery.  *See* E-mails between M. McCarroll and CSXT Counsel, Oct. 8, 2019, Oct. 21, 2019, Oct. 24, 2019, attached hereto as **Exhibit 2**.  By late October, though, discovery was already underway.  And, it

4

was not until late November, when discovery responses were due, that the parties reached an agreement on ESI Custodians. *See, e.g.,* E-mail from J. Noonan to Counsel, Nov. 21, 2019, attached hereto as **Exhibit 3**.

Accordingly, the parties were only able to actually get underway with discovery approximately two months before the deadline for CSXT's expert reports. And, the ESI Order contemplates the production of documents on a rolling basis. This process generally expedites the production of documents, but it also means there is no date certain—other than the close of discovery—by when CSXT can expect to receive responsive documents. Moreover, production is further hampered, and delayed, by disputes over search terms.

The issue of search terms was first raised in a meet and confer held November 20, 2019, and CSXT, NSR, and NPBL each exchanged an initial set of search terms the following week. *See* Initial Search Term Lists, attached hereto as **Exhibit 4**. Thereafter, the parties held a meet and confer on December 13, 2019, in which CSXT raised concerns about NS's search terms, including the fact that NS's terms did not appear to target customer communications or commercial information, documents that are highly relevant to the claims in this action. CSXT was also concerned about NS's objections and responses to a number of CSXT's requests for production. *See* Letter from J. Evans to Counsel, Dec. 20, 2019, attached hereto as **Exhibit 5**. As a result, another meet and confer was scheduled for January 3, 2020.

Well aware of the impending deadlines, shortly after the New Year, CSXT asked NS to provide it with a substantial completion date for the production of documents. CSXT also worked to resolve any outstanding issues that would prevent NS from producing documents responsive to certain CSXT requests designed to target commercial information needed for its experts. *See* Letter from B. Hatch to Counsel, Jan. 6, 2020, attached hereto as **Exhibit 6**. Although some

agreements were reached, the production of certain custodial documents depended upon the resolution of certain geographic search terms. *See id.*

Further attempts to resolve the outstanding issues were met with pushback from NS. Not only did NS refuse to provide a substantial completion date, but it ignored the issue of geographical search terms in its response to CSXT's follow up meet and confer correspondence. *See* Letter from M. Lacy to B. Hatch, Jan. 10, 2020, attached hereto as **Exhibit 7**. And, as a pre-requisite for production, NS demanded that CSXT produce documents responsive to its requests for production, even though CSXT's discovery responses indicated it was willing to do so and the issue of search terms was unresolved. *See id.*

CSXT moved quickly to attempt to reach an agreeable solution regarding the expert deadlines between the parties, suggesting a thirty-day extension on the expert deadlines. *See* Letter from R. McFarland to Counsel, Jan. 13, 2020, attached hereto as **Exhibit 8**. Counsel proposed thirty days to provide NS and NPBL sufficient time to produce the documents, and to allow the experts adequate time to review their productions. CSXT also quickly moved to address the issues and confer again with NS. *See* Letter from B. Hatch to M. Lacy, Jan. 15, 2020, attached hereto as **Exhibit 9**.

In response, NS stated it would agree to a fifteen-day extension. *See* E-mail from M. Lacy to R. McFarland, attached hereto as **Exhibit 10**. Counsel for NPBL, Defendant Moss, and Defendants Hall, Hurlbut, and Merilli also indicated they would consent to a fifteen-day extension during a meet and confer with NPBL held on January 16, 2020. However, with a 15 day extension still remaining unknown were whether and when CSXT would receive the documents it requested in discovery from NS and NPBL that it must provide its expert. CSXT therefore requested a commitment from NS and NPBL to provide certain categories of documents by two dates certain.

*See* Letter from R. McFarland to Counsel, Jan. 16, 2020, attached hereto as **Exhibit 11**. Counsel for NPBL quickly agreed that it would be able to provide the documents requested by January 24, 2020. *See* E-mail from R. Snow to R. McFarland, Jan. 16, 2020, attached hereto as **Exhibit 12**.

On the other hand, in yet another pre-requisite for its production, NS responded, on the morning of January 17, that it would only agree to those production dates if CSXT would provide the same documents by the same dates. *See* E-mail from M. Lacy to Counsel, Jan. 17, 2020, attached hereto as **Exhibit 13**. NS so issued that condition, even though it does not bear the burden of proof in this matter, and the deadline for its expert response report is not until March 10, 2020. As NS had scheduled a meet and confer for the afternoon of January 17, 2020, to discuss CSXT's Interrogatory answers, the parties agreed to further discuss other outstanding issues from the prior meet and confers. In NS's e-mail to counsel regarding the reciprocal production, counsel for NS agreed the extension issue could be discussed during the call. *See id.*

Underlying the problem with NS's reciprocal production demand, and an unresolved issue from the prior meet and confers, is the fact that CSXT and NS had issues with each other's search terms. NS had yet to produce search terms indicating it would be able to obtain customer communications and data. And, NS wanted CSXT to agree to apply additional geographic terms, which CSXT had previously objected to and discussed with NS. *See* Ex. 6.

Forty minutes before the meet and confer, counsel for NS sent an email with Updated Search Terms and Proposed Search Terms. *See* E-mail from M. McCarroll to Counsel and attachments, Jan. 17, 2020, attached hereto as **Exhibit 14**. Counsel for CSXT did not have the opportunity to digest this information, or confer with their client, in advance of the meet and confer. There, NS again demanded that CSXT produce the same documents it requested from NS by January 24 and January 31, 2020, presumably with the proposed search terms applied, in order

for NS to agree to the extension. However, a review of the new search terms proposed by NS indicates CSXT's agreement to accept them would expand CSXT's obligations far beyond the realm of proportionality and relevance. Most notably, NS acknowledged during the January 17, 2020 meet and confer that it would be able to produce by January 24, 2020 the most important documents CSXT had requested. CSXT's counsel noted that if that is true, under the Federal Rules, NS did not have the right to condition its production on CSXT's production.

A fourth meet and confer held January 21, 2020 did not produce an agreement on the scope of the search terms. Although the parties continue to negotiate, CSXT has not received the documents and data needed for its expert report. For example, NS provided updated search terms that do not reference a single customer name. *See* Ex. 14. During the January 21 meet and confer, counsel for NS stated that NS believes these terms will capture customer data, but CSXT obviously cannot confirm that until CSXT receives the documents. CSXT's ability to produce an expert report with NS's documents and data should not turn into a waiting game, and one that puts CSXT at risk of severe prejudice because of pending deadlines.

### III. LEGAL STANDARD

CSXT must show that good cause exists for the extension of a discovery deadline. *See* FED. R. CIV. P. 16(b)(4). Rule 6(b) of the Federal Rules of Civil Procedure also provides, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . ." FED. R. CIV. P. 6(b). Pursuant to Local Rule 37(F), "the Court in its discretion may, upon appropriate written motion by a party, allow an extension of time in excess of the time provided by the Federal Rules of Civil Procedure, these Local Rules, or previous Court order, within which to respond to or complete discovery or to reply to discovery motions." E.D. Va. Local Civ. R. 37(F).

"The good cause provision of Rule 16(b)(4) does not focus on the prejudice to the non-movant or bad faith of the moving party, but rather on the moving party's diligence." *Reese v. Va. Int'l Terminals, Inc.*, 286 F.R.D. 282, 285 (E.D. Va. 2012) (quoting *Lineras v. Inspiration Plumbing LLC*, No. 1:10cv324, 2010 U.S. Dist. LEXIS 117586, 2010 WL 4623940, at *2 (E.D. Va. Nov. 3, 2010)).

### IV. ARGUMENT

Good cause exists here to extend the expert and discovery deadlines by thirty days. This Court has previously acknowledged the complexity of both antitrust and shareholder derivative actions. *See* Op. and Order, ECF No. 66, at 59 (citing *In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327, 337 (D.N.J. 2002)). That is especially true here, where the parties include two competing Class I railroads, and the production of tens of thousands of pages of documents, many of which contain highly sensitive commercial information. And, both the Fourth Circuit and this Court have recognized the importance of expert testimony in antitrust cases. *See Wilder Enterprises, Inc. v. Allied Artists Pictures Corp.*, 632 F.2d 1135, 1144 (4th Cir. 1980) ("proof of an exhibitor's damages in an antitrust case is not so simple that a jury should be deprived of expert testimony"); *Belmora, LLC v. Bayer Consumer Care AG*, 338 F. Supp. 3d 477, 487 (E.D. Va. 2018) (explaining, "The Fourth Circuit has recognized that the proponent of an antitrust claim must present expert testimony to establish its proposed market definition").

#### A. **CSXT's Reasonable Extension Request.**

CSXT served discovery on Defendants on October 23, 2019, seeking the documents and data it needed for its expert report. As of November 19, 2019, an agreed ESI Order had been entered. *See* ECF No. 83. And, both NS and NPBL have indicated they have the ability to provide

the requested data by January 24, 2020, and the requested documents by January 31, 2020. *See* Ex. 12, Ex. 13.

CSXT has not received the requested documents and data in time to incorporate it into the expert report. Furthermore, this information bears on CSXT's ability to meaningfully prepare for and take fact witness depositions. Accordingly, CSXT requests relief regarding expert and discovery deadlines, and proposes the following deadlines that will not affect any other deadlines[1] or otherwise delay trial:

- Plaintiff's Expert Report Deadline – March 9, 2020
- Plaintiff's Discovery Deadline (same as Defendants') – March 31, 2020
- Expert Witness Response Deadline – April 8, 2020
- Expert Witness Rebuttal Deadline – April 23, 2020
- Expert & De Bene Esse Deposition Deadline – May 6, 2020

**B. Good Cause Exists for the Court to Grant CSXT's Request.**

Efforts to reach a solution have reached an impasse, despite CSXT's diligence in pursuing the requested information. CSXT seeks a brief extension of time so that its expert may analyze relevant documents and data for inclusion in his expert report, and so CSXT may take meaningful fact witness depositions. The proposed schedule does not prejudice Defendants, and it does not otherwise impact any other dates set in this matter–the dispositive motions deadline and trial date may remain unchanged.

---

[1] CSXT proposed an extension of the dispositive motion deadline to Defendants when it first raised the issue, in an effort to accommodate any concerns Defendants may have had with the expert extension. NS advised it was not amenable to a dispositive motion extension, and CSXT does not seek one here.

CSXT has been diligent on all fronts in seeking to move forward with discovery. Indeed, it moved to commence discovery in April 2019. *See* ECF No. 48. CSXT began to circulate draft ESI and Protective Orders before the Rule 26(f) Pretrial Order issued. CSXT timely served NS and NPBL with document requests and interrogatories. These requests have to date resulted in a limited production of documents–and not the documents needed by CSXT's expert for his report– and countless objections and challenges, most from NS. In turn, NS has served extensive document requests and interrogatories on CSXT.

CSXT bears the burden of proof in this case, and it is subject to imminent expert deadlines. And, CSXT has to respond to not one party's discovery requests, but discovery from four separate Defendants. At every juncture, CSXT has worked to keep discovery proportional, taking into consideration the commercial sensitivities of this matter. To date, CSXT has provided three rolling productions to NS, and, provided the parties reach a resolution on search terms, CSXT anticipates it would be able to substantially complete its document production by the end of February. Conversely, NS has not been able to provide meaningful discovery responses and documents, and has so far refused to provide a substantial completion date, less than three (3) weeks before CSXT's expert report is due. NS's failure to produce critical documents also prevents CSXT from proceeding with its party and fact witness depositions. Indeed, the 30(b)(6) depositions of NPBL and NS, tentatively scheduled for January 27 and 29, 2020, respectively, have been postponed. The above constitutes good cause for CSXT's requested extensions.

Moreover, as discussed above, efforts by CSXT to continually meet and confer on discovery related issues have reached an impasse. A prime example of the prejudice to CSXT is NS's demands for a reciprocal simultaneous production that is not possible under the terms NS seeks to impose. *See, e.g.,* Ex. 13, Ex. 14. Indeed, nothing is more telling than the timing and

submission of NS's proposed search terms. First, NS proposed geographic search terms to CSXT that included the names of ports on the West Coast of the United States and in Canada. *See* E-mail from M. McCarroll to Counsel, Dec. 19, 2019, attached hereto as **Exhibit 15**. Given the issues in this litigation, and the parties' rail lines in North America, CSXT expressed its belief that NS's terms were disproportionately burdensome and overbroad, and proposed a reasonable alternative that could apply to both CSXT and NS's production of ESI that would limit the burdens on both parties. *See* Ex. 6. In correspondence following this proposal, NS ignored any discussion of the geographic terms, even though CSXT noted the importance of resolution of this particular issue. *See id.,* Ex. 7.

Then, CSXT sought an expert extension, and in an effort to resolve the issue and work cooperatively, requested production of documents responsive to the most important requests by a date certain. In response, NS made another demand for reciprocal production, and doubled down on its demands regarding geographic search terms. Forty minutes before a meet and confer, NS issued additional proposed search terms to apply to *all* of CSXT's ESI. These search terms would expand the scope of discovery to a level that is out of proportion with the needs of the case and defeats any prior efforts to streamline the litigation.[2]

At the current stage of litigation, CSXT will suffer undue prejudice if it is required to provide an expert report absent data and documents from Defendants. CSXT has already been prejudiced by NPBL's Motion for Partial Summary Judgment (ECF No. 94), in which NPBL has

---

[2] If CSXT is required to include NS's Proposed Search Terms, CSXT anticipates that would delay its ability to reach a substantial completion date and the production of responsive documents by weeks, if not months. And, simply testing the terms to engage in further conferral with NS requires CSXT to spend several days running searches and analyzing the data, further delaying resolution of discovery issues.

moved to dismiss CSXT's claim for damages on the basis that CSXT has yet to provide a damages calculation. In essence, one Defendant is moving to knock out CSXT's damages claim because another Defendant has not provided the material CSXT needs for a damages calculation. *See, e.g., Wilder*, 632 F.2d at 1144 (discussing expert testimony and proof of damages in an antitrust case). CSXT will continue to suffer prejudice if its expert is required to supplement his report, or respond to Defendants' expert reports that are based on data and documents unavailable to CSXT's expert. Finally, the delay in the production of documents renders it virtually impossible for CSXT to complete its discovery by March 3, 2020. It therefore requests its discovery cutoff be extended to the same date as Defendants', March 31, 2020.

Accordingly, good cause exists for the extension of the discovery deadlines. CSXT has acted with diligence in pursuit of the requested information, and this extension will not prejudice Defendants or the Court's trial schedule.

## V. CERTIFICATION

In accordance with Local Rule 37(E) of the Local Rules for the United States District Court Eastern District of Virginia, CSXT has made a good faith effort to resolve the issues raised in this Motion with counsel for NS.

## VI. CONCLUSION

For the foregoing reasons, CSXT, by counsel, respectfully requests the Court grant its motion and amend the Court's Rule 16(b) Scheduling Order to extend the deadlines for expert reports and testimony, and extend its discovery cutoff.

Dated: January 23, 2020 Respectfully submitted,

**CSX TRANSPORTATION, INC.**

/s/ *Robert W. McFarland*
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
Jeanne E. Noonan (VSB No. 87863)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Telephone: (757) 640-3716
Facsimile: (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: jnoonan@mcguirewoods.com

Ashley P. Peterson (VSB No. 87904)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219-3916
Telephone: (804) 775-1000
Facsimile: (804) 775-1061
E-mail: apeterson@mcguirewoods.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on this 23rd day of January 2020, a true and correct copy of the foregoing was served on all counsel of record via Notice of Electronic Filing by filing with the Court's CM/ECF system.

By:   */s/ Robert W. McFarland*
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
Jeanne E. Noonan (VSB No. 87863)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Telephone: (757) 640-3716
Facsimile: (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: jnoonan@mcguirewoods.com

Ashley P. Peterson (VSB No. 87904)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219-3916
Telephone: (804) 775-1190
Facsimile: (804) 698-2091
E-mail: apeterson@mcguirewoods.com

*Counsel for Plaintiff*