# EXHIBIT 6

McGuireWoods LLP
World Trade Center
101 West Main Street
Suite 9000
Norfolk, VA 23510-1655
Phone: 757.640.3700
Fax: 775.640.3701
www.mcguirewoods.com

Benjamin L. Hatch
Direct: 757.640.3727

**McGUIREWOODS**

bhatch@mcguirewoods.com
Fax: 757.640.3947

January 6, 2020

**VIA ELECTRONIC MAIL**

Monica McCarroll
Redgrave LLP
14555 Avion Parkway, Suite 275
Chantilly, VA 20151

Michael E. Lacy
Troutman Sanders LLP
1001 Haxall Point, 15th Floor
Richmond, VA 23219

Re:   *CSX Transportation, Inc. v. Norfolk Southern Railway Co.*, No. 2:18-cv-530

Dear Monica and Michael:

    I write on behalf of CSX Transportation, Inc. ("CSXT") to follow up on the meet-and-confer call we held on January 3, 2020, during which we discussed the production of documents, Norfolk Southern Railway Company's ("NSR") responses and objections to Requests for Production No. 24, 26, 27, 28, 29, 30, 31, 33, 34, and 37 in CSXT's First Set of Requests for Production of Documents, and the continued discussion of search terms NSR proposed applying to identify potentially relevant electronically stored information, pursuant Paragraphs 3(g) and 3(h) of the Stipulated ESI Order (Dkt. No. 83).

    This letter serves to confirm CSXT's understanding of the meet-and-confer, during which there were several issues to which both sides agreed to discuss with their respective clients and follow up. Due to the short timeframe for discovery set forth in the Scheduling Order (Dkt. No. 78), and as mentioned by both parties during the call, we ask that you please let us know, in writing, (1) if NSR disagrees with any of the following statements summarizing the meet-and-confer, and (2) NSR's decisions regarding the follow-up matters discussed herein by no later than January 13, 2020. If any further questions arise, or additional discussion regarding these issues is necessary, let us plan to discuss them at a mutually agreeable time this week, no later than January 10, 2020.

    During the meet-and-confer, we first discussed whether there were any procedural or other unresolved issues that would delay the production of ESI, which both CSXT and NSR agree will

Atlanta | Austin | Baltimore | Charlotte | Charlottesville | Chicago | Dallas | Houston | Jacksonville | London | Los Angeles - Century City
Los Angeles - Downtown | New York | Norfolk | Pittsburgh | Raleigh | Richmond | San Francisco | Tysons | Washington, D.C.

January 6, 2020
Page 2

be produced to the other on a rolling basis. Both sides agreed that there were no procedural or unresolved matters, and that (1) NSR anticipates issuing a production within the next week or so, and (2) CSXT anticipates issuing another production in a similar timeframe. CSXT also asked that NSR provide an anticipated timeframe within which it anticipates substantially completing its production of responsive documents. Both NSR and CSXT agreed to provide the other with such an estimate, understanding that the inclusion of additional search terms (as discussed in more detail below and later in the meet-and-confer) or other currently unanticipated issues may impact the parties' production timeline. As mentioned above, due to the deadlines set by the Court, CSXT intends to provide this information no later than January 13, 2020, and asks that NSR do the same.

With respect to NSR's responses and objections to Requests for Production No. 24, 26, 27, 28, 29, 30, 31, 33, 34, and 37 in CSXT's First Set of Requests for Production of Documents, CSXT understands and provides additional information as follows:

- RFP No. 24 – Counsel for NSR indicated it is willing to produce final contracts, and indicated suggested search terms might be helpful. Counsel for CSXT responded that this RFP is substantially similar to RFP No. 39 propounded by NSR to CSXT, and presumably NSR would not consider the scope of that request to be objectionable. CSXT's response to RFP No. 39 indicates that, "Subject to the Protective Order and ESI Order, CSXT will collect documents from the agreed-upon custodians and agreed-upon non-custodial data sources, run agreed-upon search terms across its documents if necessary, and produce any responsive, non-privileged documents limited in geographic scope to intermodal freight shipped through East Coast Ports." CSXT asks that NSR do the same in response to its RFP No. 24, with the understanding that the scope of production from both CSXT and NSR will depend on the resolution of the geographic terms and definitions between the parties, discussed in further detail below.

- RFP No. 26 – Counsel for NSR indicated that rather than providing custodial ESI data in response to this RFP, it would be agreeable to providing a data file or reports from non-custodial data sources, to the extent they exist. Counsel for CSXT agreed to this proposal.

- RFP No. 27 – Counsel for NSR indicated that rather than providing custodial ESI data in response to this RFP, it would be agreeable to providing a data file or reports from non-custodial data sources, to the extent they exist. Counsel for CSXT stated that RFP No. 27 was similar to RFPs propounded by NSR to CSXT, and that, where CSXT had agreed to provide custodial data in such instances, NSR should do the same.

    Following the meet-and-confer, CSXT identified NSR's RFPs No. 46 and 64–67, which are related to similar pricing topics. For RFPs No. 64-67, CSXT has agreed that "[s]ubject to the Protective Order and ESI Order, CSXT will collect documents from the agreed-upon custodians and agreed-upon non-custodial data sources, run agreed-upon search terms across its documents if necessary, and produce any

January 6, 2020
Page 3

responsive, non-privileged documents." For RFP No. 46, CSXT has agreed that "[s]ubject to the Protective Order and ESI Order, CSXT will collect documents from the agreed-upon custodians and agreed-upon non-custodial data sources, run agreed-upon search terms across its documents if necessary, and produce any responsive, non-privileged documents limited in geographic scope to intermodal freight shipped through East Coast Ports."

Accordingly, CSXT asks that NSR agree to (1) provide documents from non-custodial data sources (with the understanding that non-custodial data sources are not limited to reports or data files) in response to CSXT's RFP No. 27, and (2) to provide custodial data in response to RFP No. 27, with the understanding that the scope of production from both CSXT and NSR will depend on the resolution of the geographic terms and definitions between the parties, discussed in further detail below.

- RFP No. 28 – As with RFP No. 27, counsel for NSR indicated that rather than providing custodial ESI data, it would be agreeable to providing a data file or reports from non-custodial data sources, to the extent they exist. Counsel for CSXT stated that RFP No. 28 was similar to RFPs propounded by NSR to CSXT, and that, where CSXT had agreed to provide custodial data in such instances, NSR should do the same.

  Following the meet-and-confer, CSXT identified RFP No. 31 propounded by NSR, which asks for significantly more broad market and competitive information than CSXT's RFP No. 28, to which CSXT has agreed, "Subject to the Protective Order and ESI Order, CSXT will collect documents from the agreed-upon custodians and agreed-upon non-custodial data sources, run agreed-upon search terms across its documents if necessary, and produce any responsive, non-privileged documents limited in geographic scope to any intermodal shipping business to or from any East Coast Port." CSXT asks that NSR do the same in response to its RFP No. 28, with the understanding that the scope of production from both CSXT and NSR will depend on the resolution of the geographic terms and definitions between the parties, discussed in further detail below.

- RFP No. 29 – As with RFP No. 27 and 28, counsel for NSR indicated that rather than providing custodial ESI data in response to this RFP, it would be agreeable to providing a data file or reports from non-custodial data sources, to the extent they exist. Counsel for CSXT stated that RFP No. 29 was similar to RFPs propounded by NSR to CSXT, and where CSXT had agreed to provide custodial data in such instances, NSR should do the same.

  Following the meet-and-confer, CSXT identified NSR's RFP No. 64, which is substantially similar to RFP No. 29, to which CSXT has agreed, "Subject to the Protective Order and ESI Order, CSXT will collect documents from the agreed-upon custodians and agreed-upon non-custodial data sources, run agreed-upon

January 6, 2020
Page 4

search terms across its documents if necessary, and produce any responsive, non-privileged documents." CSXT asks that NSR do the same in response to its RFP No. 29.

- RFP No. 30 – Counsel for NSR indicated it would continue to stand on its objections to RFP No. 30.

- RFP No. 31 – Counsel for NSR requested further explanation regarding RFP No. 31. Counsel for CSXT stated that it was seeking analyses or other documents discussing or comparing near-dock rail or drayage with on-dock rail at NIT, VIG, and PMT. Counsel for CSXT further clarified it was not seeking routine communications about the transfer of every container, but documents consisting of, for example, internal discussions at NSR or external discussions with customers about the alternatives of drayage versus on-dock rail services. Counsel for NSR indicated they would discuss this further with its client.

- RFP No. 33 – Counsel for CSXT indicated CSXT would accept, as with the response to RFP No. 26, production of a data file or reports from non-custodial data sources, to the extent they exist. Counsel for NSR questioned the relevance of this information, given that it is not disputed that NSR is more competitive at NIT, given that it does not have to pay NPBL to access NIT. Counsel for CSXT explained that gross margin information is nonetheless relevant to CSXT's antitrust claims. Specifically, gross margin data is relevant here because evaluating NSR's gross margin data may demonstrate NSR's market power and harm to competition in the market, given that NSR's anticompetitive conduct would have led to higher gross margins than would have been possible but for that conduct. Counsel for NSR agreed to discuss this issue further with its client and its experts.

- RFP No. 34 – Counsel for CSXT asked NSR to provide any non-privileged documents that are not publicly available. Counsel for NSR agreed to provide such documents, to the extent they exist.

- RFP No. 37 – As with RFP Nos. 27, 28, and 29, counsel for NSR indicated that rather than providing custodial ESI data in response to this RFP, it would be agreeable to providing a data file or reports from non-custodial data sources, to the extent they exist. Counsel for CSXT stated that RFP No. 37 was similar to RFPs propounded by NSR to CSXT, and where CSXT had agreed to provide custodial data in such instances, NSR should do the same.

Following the meet-and-confer, CSXT identified NSR's RFPs No. 32, 47, 48, 55, related to capacity and freight volumes. In response to RFPs Nos. 47, 48, and 55, CSXT has agreed that, "[s]ubject to the Protective Order and ESI Order, CSXT will collect documents from the agreed-upon custodians and agreed-upon non-custodial

January 6, 2020
Page 5

data sources, run agreed-upon search terms across its documents if necessary, and produce any responsive, non-privileged documents." In response to RFP No. 32, CSXT has agreed that, "[s]ubject to the Protective Order and ESI Order, CSXT will collect documents from the agreed-upon custodians and agreed-upon non-custodial data sources, run agreed-upon search terms across its documents if necessary, and produce any responsive, non-privileged documents limited in geographic scope to intermodal freight shipped through East Coast Ports."

Accordingly, CSXT asks that NSR agree to (1) provide documents from non-custodial data sources (with the understanding that non-custodial data sources are not limited to reports or data files) in response to RFP No. 37, and (2) to provide custodial data in response to RFP No. 37, with the understanding that the scope of production from both CSXT and NSR will depend on the resolution of the geographic terms and definitions between the parties, discussed in further detail below.

Resolution of several of the foregoing RFPs requires NSR and CSXT to reach an agreement regarding the "geographic limitation" terms applied by the parties to both non-custodial and custodial data. On December 19, 2019, counsel for NSR sent counsel for CSXT an email with a proposed string of geographical search terms. Counsel for CSXT observed that these terms appear to be over-inclusive of the parties' discovery requests, which were limited to "East Coast Ports," whereas the proposed terms included locations on the West Coast and outside the United States. Counsel for NSR explained these terms originated from their experts and were designed to target data necessary for market comparisons.

During the meet-and-confer, counsel discussed limiting the geographical scope of the search terms applied to custodial ESI to certain Port of Virginia facilities (specifically NIT, VIG, and PMT), and then producing non-custodial data or reports for an agreed list of additional port and terminal locations in addition to NIT, VIG, and PMT. Both sides agreed to discuss this approach with their clients and follow up. Again, as previously mentioned, due to the deadlines set by the Court and because resolution of this particular issue will impact the resolution of NSR's responses to the foregoing RFPs, CSXT asks that counsel discuss the issue with their client and respond no later than January 13, 2020.

Finally, in addition to the geographic limitation, CSXT addressed the following comments provided by NSR as of December 19, 2019, related to search terms:

- CSXT is generally agreeable to the inclusion of "Norfolk International Terminal," "Virginia International Gateway," and "Portsmouth Marine Terminal" to its search terms. Due to the holidays, CSXT still has to run additional metrics and counsel will follow up with NSR to confirm the inclusion of these terms no later than January 13, 2020.

January 6, 2020
Page 6

- CSXT is still working on testing the expanders and connectors proposed by NSR, and will follow up with NSR on the status of this request no later than January 13, 2020.

- CSXT is generally agreeable to the use of the common misspellings of customer names, provided that NSR will agree to produce custodial data in response to CSXT's RFPs that seek documents and communications with customers, as discussed in detail above, and will apply the same misspellings in its search terms. During the meet-and-confer, counsel for NSR advised that they will discuss this issue further with NSR.

- CSXT is generally agreeable to the inclusion of "Carolina Junction" or "Carolina Junct*" and "NS Junction" or "NS Junct*" in its search terms, and will add these terms into its testing, again provided that NSR agrees to use the same terms, as they are applicable to certain RFPs propounded by CSXT to NSR (*see, e.g.*, RFP Nos. 8, 20).

- With respect to the issues raised by NSR regarding internal references to the "2010 Proposal," "2018 Proposal", and "1897 Operating Agreement," CSXT stated that it has applied the internal terms it uses to refer to those items, and if NSR identifies any others during production, it will be willing to consider running those later-identified terms.

- Last, CSXT briefly reviewed some of the NSR requests for production and applicable search terms, and explained the following:
  - Certain current search terms should be broad enough to target the requests in RFP Nos. 19, 47, 52, 53, 69, and 83, including (Intermodal OR "Inter modal") AND (Virginia or "Hampton Roads" or VA or NIT or VIG or PMT); Terminal* AND (Virginia or "Hampton Roads" or VA or NIT or VIG or PMT); Port* AND (Virginia or "Hampton Roads" or VA or NIT or VIG or PMT); Compet* AND (Virginia or "Hampton Roads" or VA or NIT or VIG or PMT); Market* AND (Virginia or "Hampton Roads" or VA or NIT or VIG or PMT).
  - Certain RFPs, including Nos. 95-97 and 100 which seek expert and trial-related information, and Nos. 101-105, which include documents referenced in interrogatories and documents produced to other parties, are not amenable to search terms.

During the meet-and-confer, counsel for NSR stated that it was continuing to evaluate its use of the limiting phrase "NOT Chicago" in conjunction with its Beltline-related search terms, and indicated that it may remove this limitation and review documents for production without it, in accordance with CSXT's previous request. As mentioned, due to the deadlines set by the Court and because resolution of this particular issue will impact the resolution of NSR's responses to the

January 6, 2020
Page 7

foregoing RFPs, CSXT asks that counsel resolve this point and the other search-term-related issues described above and provide a revised list of search terms to CSXT no later than January 13, 2020.

Please let me know if we should schedule a follow-up phone call this week to discuss any of these issues further. In the meantime, CSXT will work on providing written confirmation to NSR on the issues discussed above, and looks forward to NSR doing the same. With best wishes, I am

Sincerely yours,

Benjamin L. Hatch

BLH/mgm

cc (by email only):  Alan Wingfield, Troutman Sanders
Liz Flowers, Troutman Sanders
John Lynch, Troutman Sanders
Rob McFarland, McGuireWoods
J. Brent Justus, McGuireWoods
Jason Evans, McGuireWoods
Ashley Peterson, McGuireWoods
Jeanne Noonan, McGuireWoods