UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| CSX TRANSPORTATION, INC., ) | |
| individually and on behalf of NORFOLK ) | |
| & PORTSMOUTH BELT LINE ) | |
| RAILROAD COMPANY, ) | |
|  ) | |
| *Plaintiff*, ) | |
|  ) | |
| v. ) | No. 2:18-cv-530 |
|  ) | |
| NORFOLK SOUTHERN RAILWAY ) | |
| COMPANY, NORFOLK & ) | |
| PORTSMOUTH BELT LINE RAILROAD ) | |
| COMPANY, JERRY HALL, THOMAS ) | |
| HURLBUT, PHILIP MERILLI, and ) | |
| CANNON MOSS, ) | |
|  *Defendants*. | |

### DEFENDANT NORFOLK SOUTHERN RAILWAY COMPANY'S BRIEF IN OPPOSITION TO CSX TRANSPORTATION, INC.'S EMERGENCY MOTION TO AMEND SCHEDULING ORDER AND EXTEND ITS EXPERT WITNESS AND DISCOVERY DEADLINES

Defendant Norfolk Southern Railway Company ("NSR"), by counsel, files this Brief in Opposition to CSX Transportation, Inc.'s ("CSXT") Emergency Motion to Amend Scheduling Order and Extend Expert Witness and Discovery Deadlines (ECF No. 106) and Brief in support thereof (ECF No. 107) (collectively, the "Motion").

### INTRODUCTION

CSXT's Motion is propped up by a summary of the parties' discovery process that is misleading in many respects and largely irrelevant to the primary issue: whether CSXT needs a 30-day extension of its deadline to serve its expert report. As to that issue, the facts are simple. The Court entered the Rule 26(f) Pretrial Order (ECF No. 72) in this matter on September 27, 2019, yet CSXT waited until after it identified its expert witness on January 9, 2020 to ask

Defendants for an extension of its expert report deadline. CSXT then agreed that it only needed a 15-day extension of its expert report deadline if NSR and Defendant Norfolk & Portsmouth Beltline Railroad Company ("NPBL") could provide certain documents by January 24, 2020, and another set of documents by January 31, 2020. At the same time, CSXT, which agreed to produce the very same documents in response to NSR's discovery requests, refused to produce its documents by the same deadlines, or even provide a date by which it will produce the documents. While CSXT's game-playing likely (and unfortunately) will require motions practice, NSR produced the documents requested by CSXT on January 24, as it had represented it would, and NSR expects to produce the remaining documents requested by CSXT by January 31. In sum, by CSXT's own admission, it does not need a 30-day extension of its expert report deadline, and thus its Motion should be denied for that reason alone.

What is more, CSXT now wants to extend its discovery cutoff so that it is the same as Defendants' discovery cutoff. CSXT offers no real justification for this extension. Instead, CSXT points to the purported delay in finalizing the ESI Order, when in reality, the ESI Order was not delayed, nor has it delayed NSR's document production. To date, NSR has made two rolling productions of ESI totaling 5,155 documents, compared to CSXT's two rolling productions of ESI, totaling 2,227 documents. NSR expects to substantially complete its production in response to CSXT's First Requests for Production of Documents by February 7. NSR just served its objections to CSXT's Second Request for Production of Documents on January 24, and its responses are not due until February 10. Additionally, NSR met CSXT's arbitrary production demands by producing its highly confidential customer contracts and waybill data on January 24, as it agreed to do before CSXT filed its Motion, while CSXT continues to refuse to even provide a date by which it will produce the same information.

Finally, CSXT's requested extensions are simply incompatible with the dispositive motion deadline of April 16, 2020 set forth in the Rule 26(f) Pretrial Order. Under the schedule proposed by CSXT, its expert witness rebuttal deadline would not be until April 23, 2020, and the deadline for expert depositions would not be until May 6, 2020. In other words, NSR would not have all of the opinions of CSXT's expert, which CSXT claims is critical to its case, until at least a week *after* NSR is required to file its dispositive motion. This would substantially prejudice NSR. Indeed, granting CSXT's Motion likely would negate any meaningful opportunity for NSR (and other Defendants) to have CSXT's claims dismissed or even substantially narrowed prior to trial, unless the Court adjusts the entire pretrial schedule, including the trial date, to allow Defendants the ability to file summary judgment motions after expert discovery is complete and to allow the Court adequate time before trial to rule on the motions. For these reasons, CSXT's Motion should be denied.

## BACKGROUND

CSXT's Motion spends approximately five pages recounting its version of the discovery process in this matter. While NSR disputes much of CSXT's characterization of the process, NSR will focus on addressing and correcting CSXT's main contentions that purportedly justify its requested extension.

**I.     The entry of the ESI Order was not delayed.**

CSXT acknowledges that the parties "quickly initiated discovery", and that the parties' initial discovery to each other "contemplated the production of considerable amounts of information … and large quantities of electronically stored information ("ESI")." Motion at 2, 4. Yet, CSXT suggests that there was a delay in the entry of the ESI Order (ECF No. 83), which meant that "the parties were only able to actually get underway with discovery approximately two

months before the deadline for CSXT's expert reports." Motion at 5. The ESI Order, however, was entered on November 19, 2019, the first day that the parties could be required to respond to discovery under the Rule 26(f) Pretrial Order. CSXT responded to written discovery, and made its first production of documents, on November 20, 2019. Likewise, NSR timely responded to CSXT's first set of discovery, and made its first production, on November 22, 2019. The parties have continued to produce documents on a rolling basis per the terms of the ESI Order.

Nor did the negotiations over the ESI Order delay production, at least as it relates to NSR. NSR and CSXT began negotiating the ESI Order in March 2019. NSR provided substantial edits to CSXT's draft order in May 2019. CSXT did not respond until September 24, 2019, when it circulated a revised draft of an order. CSXT complains that questions raised by NSR regarding ESI-related topics caused some delay. *See* Motion at 4, Ex. 2. But each of those communications occurred before the Rule 16(b) conference on October 25, 2019, and well before the parties could be made to respond to discovery under the Court's Rule 26(f) Pretrial Order. Though a few remaining items of the ESI Order were still being negotiated as of the Rule 16(b) conference, CSXT did not raise any concerns with the Court and by November 1, the parties agreed to comply with those parts of the ESI Order to which they had reached agreement. *See* **Exhibit A**. In accordance with this agreement, NSR provided its proposed list of ESI custodians on November 13, 2019 and provided its proposed search terms on November 26, 2019. *See* **Exhibit B**; Motion, Ex. 4. Shortly thereafter, NSR began reviewing the results of running its proposed search terms against ESI collected from the agreed upon custodians.

NSR made its first production of ESI totaling 2,292 documents on January 10, 2020. *See* **Exhibit C**. NSR expects that it will substantially complete its production of ESI in response to

4

CSXT's First Requests for Production of Documents by February 7, 2020.[1] CSXT has propounded a second set of document requests, but NSR's response is not due until February 10, 2020.

## II.  CSXT's complaints about search terms are without merit.

CSXT's Motion spends significant time arguing that the parties' disputes about search terms necessitate the extensions it seeks. That is simply not true. CSXT cites to two issues relating to search terms: (1) CSXT has questioned whether NSR's search terms, which were proposed on November 26, 2019 and updated on January 17, 2020, will sufficiently capture NSR's relevant communications with its customers; and (2) NSR has proposed that CSXT use geographic search terms proposed by NSR, which are targeted at defining the appropriate market for CSXT's antitrust claims.

As to the first issue, NSR has advised CSXT that NSR's search terms as updated are sufficiently broad to capture relevant communications between NSR and its customers. CSXT has not proposed additional search terms to NSR to address the concern raised in the Motion, nor has CSXT raised any issue with NSR's productions to date. To the contrary, the parties have dealt with concerns about the other's search terms by offering to revisit the issue if the party's production appears lacking, which is exactly what NSR has suggested to CSXT about its concerns regarding NSR's communications with its customers. In short, NSR has produced, and will continue to produce, responsive, not privileged ESI that results from running agreed-upon search terms against ESI collected from agreed-upon custodians, which includes relevant communications with its

---

[1] CSXT claims that "NS refuse[d] to provide a substantial completion date", but it conveniently ignores why. Motion at 6. In its January 6, 2020 letter to counsel, CSXT asked NSR to provide a substantial completion date by Monday, January 13. *See* Motion, Ex. 6 at 2. However, on Thursday, January 9, 2020, CSXT served NSR with a second set for document requests. *See* **Exhibit D**. Having had only a day to review the 39 additional requests, NSR could not provide a substantial completion date by January 13. *See* Motion, Ex. 7 at 1.

customers. Hence, this purported dispute is not a dispute at all, and not a basis to extend CSXT's export report deadline (or any other deadline).

CSXT's focus on the geographic search terms proposed by NSR as a basis for an extension of the deadlines is even more off base. It is undisputed that the definition of the market is a critical element of CSXT's antitrust claims. *See, e.g., Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 280 F. Supp. 3d 691, 701 (D. Md. 2017) ("As IV and Capital One agree, the essential first step in analyzing the antitrust claims in this case is to define the relevant market by product(s) and geography."). For this reason, NSR issued document requests that specifically seek information that is not confined to Virginia ports, including its Request No. 36[2], so as to rebut CSXT's claim that the relevant market is "the intermodal port facilities of Hampton Roads, Virginia." ECF No. 1, at 17. CSXT objected to Request No. 36 and others like it on various grounds, then asserted that its response would be "limited in geographic scope to terminal facilities located at East Coast Ports."[3] Yet, CSXT's search terms are limited to Virginia ports and geographic locations only. *See* Motion, Ex. 4.

On December 19, 2019, NSR provided the list of ports, terminals, and other geographic terms to be included as part of additional searches it planned to propose that CSXT use. *See* **Exhibit E**. CSXT did not propose search terms based on the information NSR provided; rather, NSR had to do it. Therefore, on January 17, 2020, after conducting extensive testing of the

---

[2] Request No. 36 seeks "[a]ll documents relating to communications, evaluations, or analyses of any kind that concern the comparative advantages or disadvantages that CSXT or NSR may possess at any terminal facility handling intermodal freight that originates from or is destined to any location outside the continental United States."

[3] CSXT defined East Coast Port(s) as "all major ocean ports and marine terminal on the Atlantic and Gulf coasts in the United States located each of the Mississippi River, including terminal located in the Port of New Orleans, Port of New York/New Jersey, Port of Baltimore, Port of Charleston, and Port of Savannah." *See* **Exhibit F**.

proposed geographic search terms to ensure they would return results both reasonable and proportional to the needs of the case, NSR circulated the proposed geographic search terms consistent with the information it had provided to CSXT on December 19, 2019. *See* Motion, Ex. 14.

It is obvious that neither CSXT nor its expert thought any documents that would be captured by the geographic search terms were necessary for CSXT's case because CSXT did not propose such terms in the first place. In fact, CSXT objected to these terms. *See* Motion at 7, Ex. 6. NSR proposed these terms per the ESI Order because CSXT was not going to do so, even though the terms seek information that is relevant, if not critical, to NSR's opposition to CSXT's alleged market and, in turn, its defense to CSXT's antitrust claims. If the documents that would be captured by these geographic search terms are necessary for its expert's work, as CSXT now contends, CSXT would have proposed such terms in the first instance or simply would have agreed to run NSR's proposed terms.[4] Instead, CSXT is objecting to these terms, claiming that they are "outside the scope of any proportionality or relevance." Motion at 3. CSXT's reliance on the geographic search terms as justification for its request to extend the deadline for its expert report is without merit.

### III. CSXT needs at most a 15-day extension.

CSXT's Motion seeks a 30-day extension of its expert report deadline (and related deadlines), but it already has agreed that a 15-day extension is sufficient. CSXT's agreement was predicated on NSR and NPBL providing certain documents by January 24 (waybill data and customer contracts) and January 31 (market studies, pricing strategies, communications with

---

[4] It is telling that CSXT agreed to produce responsive information that extended beyond Virginia to at least the East Coast Ports yet has proposed no search terms that would return such information.

7

customers). *See* Motion at 1-2. NSR already has provided the documents requested by January 24, and it expects to provide the other requested documents on or before January 31. In other words, there is in fact "a clear path forward for the production of documents needed by CSXT's expert" – it is the path suggested by CSXT. Motion at 3. Accordingly, at most, CSXT's expert report deadline, and the related expert deadlines, should be extended by only 15 days.

CSXT makes much of the fact that NSR asked CSXT to agree to produce the same documents by the same dates. To be clear, CSXT confirmed in a January 15 letter that it would provide the same documents to NSR.[5] NSR sought this assurance from CSXT because NSR wanted to avoid having to seek an extension of its expert and discovery deadlines if CSXT delayed its production. Having to seek an extension of NSR's expert deadlines later in the case would have the same effect as the 30-day extensions CSXT seeks now: it is incompatible with the April 16, 2020 dispositive motions deadline. Also, based on NSR's understanding that CSXT uses the same system from which much of this data comes, if NSR could comply with the arbitrary deadlines imposed by CSXT, CSXT should be able to as well. Surprisingly, CSXT refused to agree to meet the same deadlines it wanted to impose on NSR. In fact, CSXT would not even agree to tell NSR when it planned on providing the documents. *See* **Exhibit G**.

CSXT claimed that NSR's "quid pro quo" proposal was precluded by the Federal Rules, and CSXT referred to the difference in the parties' discovery deadlines. *See* Motion at 3. Actually, the Federal Rules require CSXT to produce these documents as soon as reasonably possible.

---

[5] CSXT also complains that NSR's request that CSXT produce the same documents by the same dates "presumably" required it to produce documents that would be captured by the updated search terms and the geographic search terms provided by NSR on January 17, 2020. *See* Motion at 7-8 and Ex. 14. But Exhibit 14 to CSXT's Motion makes clear that the updated search terms are terms that NSR—not CSXT—is using. Moreover, as discussed above, the geographic search terms do not relate what CSXT's expert is doing but are targeted to return documents relevant to NSR's defense. Again, CSXT's complaints are off base.

8

Again, if NSR can meet CSXT's deadlines, then CSXT also can meet them. Similarly, neither the Court's Scheduling Order nor the Federal Rules allow CSXT to delay a production of relevant, responsive documents merely because NSR's discovery cutoff is later than CSXT's cutoff. Under the circumstances, it appears that CSXT is either intentionally withholding the production of the documents, or it has decided that it need not search for or produce the documents at this stage. Neither justification is appropriate or consistent with the Federal Rules.

## ARGUMENT

### I. By CSXT's own admission, there is not good cause to extend CSXT's expert and discovery deadlines by 30 days.

CSXT refers to its supposed "diligence in pursuing the requested information" that its expert needs to do his work, yet, CSXT did not raise the concerns that form the basis of its Motion until January 16, less than a month before its expert report is due. CSXT also points generally to the "complexity" of its claims as good cause for the extensions, but as CSXT points out, the Court knew this when it issued its Rule 26(f) Pretrial Order. *See* Motion at 9. This case has not gotten any more complex, so there is no reason to extend the deadlines from that perspective. Similarly, CSXT clearly understands the complexity of its claims, and it knew as of September 27 that it had to identify its expert on January 9 and serve its expert report by February 10. Yet, CSXT did not raise any concerns with meeting these deadlines until January 13, when it asked for a 30-day extension of the deadlines. Even then, however, it did not identify which of the thousands of documents it has requested in discovery it needed for purposes of its expert's work. It was not until CSXT's communication of January 16 that it identified what documents it needed for its expert's work. Notwithstanding CSXT's agreement to provide the same documents to NSR, and CSXT's refusal to provide a date by which it will produce the documents, NSR is producing the requested documents within the timeframe requested by CSXT.

9

CSXT's assertion that NSR "has not been able to provide meaningful discovery responses" is also off base. Motion at 11. As stated, NSR has produced 5,155 documents as part of its rolling ESI productions to date, more than twice compared to CSXT's 2,227 documents produced as part of its rolling ESI productions. NSR responded to CSXT's interrogatories on November 22, and CSXT did not raise any issues with the responses. In contrast, as explained in detail in NPBL's Motion for Partial Summary Judgment on Damages (ECF Nos. 94 and 95), CSXT has refused to provide any meaningful explanation or support for the money damages it is claiming in this case.

Putting aside whether CSXT has, in fact, been diligent, CSXT has agreed that a 15-day extension of its expert deadlines is sufficient per its January 16 communication. NSR produced its highly confidential waybill data and customer contract information on January 24, as requested by CSXT, and it expects to produce the pricing strategies, market studies, and comparative analyses by January 31, as requested by CSXT. Therefore, CSXT's requested 30-day extension is unnecessary, while extending the deadlines by only 15 days would help avoid the significant and serious complications to the other pretrial deadlines associated with the 30-day extensions sought by CSXT.

**II.     A 30-day extension of the deadlines would materially prejudice Defendants' ability to file meaningful dispositive motions by the April 16 deadline.**

Summary judgment will be critical to the adjudication of this case, as CSXT is not entitled to much, if any, of the relief it seeks in this case. Summary judgment also will be critically important to the market definition issue that is fundamental to CSXT's antitrust claims. CSXT's request for a 30-day extension of its expert deadlines practically precludes Defendants' ability to engage in meaningful summary judgment motions practice. As explained above, CSXT's proposed schedule would result in pushing CSXT's expert witness rebuttal deadline to April 23, 2020, and the deadline for expert depositions would not be until May 6, 2020. *See* Motion at 10.

In other words, NSR would have to file its summary judgment motion at least one week before it would have all of the opinions of CSXT's expert, which CSXT claims is critical to its case, and possibly 20 days before NSR could depose CSXT's expert. NSR's purposely proposed only a 15-day extension of the deadlines so as to avoid this prejudice it would suffer under CSXT's proposal.

If the Court is willing to extend the deadlines by 30 days (even though CSXT admits that 15 days is sufficient), then the entire pretrial schedule, including the trial date, should be adjusted to allow Defendants the ability to file summary judgment motions after expert discovery is complete, as contemplated by the Court's Rule 26(f) Pretrial Order, and to allow the Court adequate time before trial to rule on the motions.

## **CONCLUSION**

For these reasons, NSR respectfully requests that the Court deny CSXT's Motion. Alternatively, NSR respectfully requests that the Court amend the Rule 26(f) Pretrial Order as follows, which reduce the prejudice Defendants would suffer as a result of an extension of CSXT's expert deadlines:

- Extend Plaintiff's Export Report Deadline to February 25, 2020;
- Extend Expert Witness Response Deadline to March 25, 2020;
- Extend Expert Witness Rebuttal Deadline to April 9, 2020;
- Extend Deadline for Defendants to conclude discovery: from March 31, 2020 to April 15, 2020; and
- Extend Expert and De Bene Esse Deposition Deadline to April 15, 2020.

Date: January 27, 2020					Respectfully submitted,

							**NORFOLK SOUTHERN RAILWAY COMPANY**


							/s/Michael E. Lacy
							Alan D. Wingfield (VSB No. 27489)
							Michael E. Lacy (VSB No. 48477)
							TROUTMAN SANDERS, LLP
							1001 Haxall Point
							Richmond, Virginia 23219
							Tel. (804) 697-1200
							Fax (804) 698-6061
							alan.wingfield@troutmansanders.com
							michael.lacy@troutmansanders.com

							John C. Lynch (VSB No. 39267)
							Kathleen M. Knudsen (VSB No. 90845)
							TROUTMAN SANDERS LLP
							222 Central Park Avenue, Suite 2000
							Virginia Beach, VA 23462
							Telephone: (757) 687-7759
							Facsimile: (757) 687-7510
							Email: john.lynch@troutman.com
							Email: Kathleen.knudsen@troutman.com

							*Counsel for Defendant Norfolk Southern Railway Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 27, 2020, I electronically filed a copy of the foregoing with the Clerk of Court using the CM/ECF system, which sent a notification of such filing (NEF) to the registered participants as identified on the NEF to receive electronic service, including:

Robert W. McFarland, Esq.
Benjamin L. Hatch, Esq.
E. Rebecca Gantt, Esq.
McGuireWoods LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Telephone: (757) 640-3716
Facsimile: (757) 640-3930
rmcfarland@mcguirewoods.com
bhatch@mcguirewoods.com
rgantt@mcguirewoods.com

*Attorneys for CSX Transportation, Inc.*

James L. Chapman, IV, Esq.
W. Ryan Snow, Esq.
Darius K. Davenport, Esq.
David C. Hartnett, Esq.
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com

*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

Hugh M. Fain, III, Esq.
M. F. Connell Mullins, Jr., Esq.
John M. Erbach, Esq.
SPOTTS FAIN PC
411 E. Franklin St.
Richmond, VA 23219
Telephone: (804) 697-2000
hfain@spottsfain.com
cmullins@spottsfain.com
jerbach@spottsfain.com

*Attorneys for Jerry Hall, Thomas Hurlbut, and Philip Merilli*

W. Edgar Spivey, Esq.
Clark J. Belote, Esq.
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3196
Facsimile: (888) 360-9092
wespivey@kaufcan.com
cjbelote@kaufcan.com

*Attorney for Cannon Moss*

13

/s/Michael E. Lacy
Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
TROUTMAN SANDERS, LLP
1001 Haxall Point
Richmond, Virginia 23219
Tel. (804) 697-1200
Fax (804) 698-6061
alan.wingfield@troutmansanders.com
michael.lacy@troutmansanders.com

41246997v2