IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CSX TRANSPORTATION, INC.,
individually and on behalf of NORFOLK
& PORTSMOUTH BELT LINE
RAILROAD COMPANY,

       Plaintiff,

v.                                           Civil Action No. 2:18-cv-530-MSD-LRL

NORFOLK SOUTHERN RAILWAY
COMPANY, *et al.*,

       Defendants.

**CSX TRANSPORTATION, INC.'S REPLY MEMORANDUM IN SUPPORT OF
EMERGENCY MOTION TO AMEND SCHEDULING ORDER AND EXTEND
ITS EXPERT WITNESS AND DISCOVERY DEADLINES**

Plaintiff CSX Transportation, Inc. ("CSXT"), by counsel, pursuant to Federal Rules of Civil Procedure 6(b) and 16(b)(4), Local Rule 37(F), and this Court's Scheduling Order (ECF No. 78), submits its Reply Memorandum in Support of its Emergency Motion to Amend Scheduling Order and Extend Its Expert Witness and Discovery Deadlines.

**I.    INTRODUCTION**

This dispute, over a request to extend deadlines, should have been resolved without this form of Court intervention. In its Opposition,[1] NS ignores the fact that it was only willing to agree to a fifteen-day extension of CSXT's expert deadlines based on a reciprocal production from

---

[1] NPBL filed its Opposition on the afternoon of January 29, incorporating many of the arguments made by NS in its Opposition. CSXT will not address these issues twice, but, due to the Emergency nature of its Motion, does address the additional points made by NPBL in this Reply Memorandum.

1

CSXT—while at the same time demanding that CSXT incorporate vastly expansive additional search terms that would have made production on this timetable impossible. There is nothing before the Court to indicate that CSXT did not act with diligence and in good faith in seeking an extension of time. CSXT provided the Court with fifteen exhibits to its Memorandum in Support, which speak for themselves and detail the parties' discovery process and the issues giving rise to this Motion.

NS suggests that the Court grant only a fifteen-day extension of CSXT's expert report deadline, which would require CSXT to produce its report on February 25. But, by NS's own admission, CSXT will have to wait until at least February 7—less than three weeks before that date—to determine whether NS has produced all of the documents and data (including customer communications) that its expert needs for his report. Not only that, but CSXT would then have to review thousands of documents and prepare for and take at least six depositions (including two Rule 30(b)(6) depositions), which its expert would need to review and incorporate into his report before the February 25 deadline. Given the complexity of this case, and CSXT's extensive, good-faith negotiations with NS over the scope of discovery, there is good cause to extend the expert and discovery deadlines by a sufficient amount to allow all parties complete and fulsome discovery. CSXT's requested extension is appropriate, and CSXT's Motion should be granted.

## II. ARGUMENT

### A. CSXT filed its Motion after the parties' negotiations failed.

In opposing CSXT's Motion, NS suggests that CSXT was dilatory in seeking discovery from NS and that CSXT failed to engage in a meaningful meet-and-confer with NS. Not so.

NS attempts to transform the parties' unsuccessful conferral and negotiations over search terms and expert deadlines into a completed agreement. But the parties' discussions reached an

impasse when NS tried to leverage CSXT's need for data and documents to force CSXT to agree to expansive search terms without providing CSXT sufficient time to review or test those terms. NS's Proposed Search Terms are excessive and unduly burdensome, and appear designed to complicate and delay CSXT's production. *See* Mem. in Supp., Ex. 14, at 5–7 (ECF No. 107-14).

The timeline of events is especially telling here. CSXT and NS both made a limited, initial production of documents on November 22, 2019—and neither contained custodial ESI or data. Thereafter, CSXT made its second rolling production of ESI on December 13, 2019. CSXT's third production followed on January 17, 2020, and CSXT will make a fourth production this week.

While waiting for NS's first production of ESI, CSXT scheduled a meet-and-confer on January 3, 2020. NS then made its first ESI production on January 10, 2020, less than three weeks ago. When CSXT reviewed those documents and found they did not include the data and documents needed for its expert, additional meet-and-confers were held. CSXT acted quickly and with diligence, mindful of the Court's good faith conferral requirement. That CSXT provided NS with time to respond to its requests for production and engaged in several meet-and-confers as required by the Federal Rules of Civil Procedure and this Court's Local Rules should not prejudice CSXT's ability to seek an extension now.

**B. The ESI Order did not precipitate CSXT's Motion, but NS's Proposed Search Terms did.**

NS's arguments about the ESI Order and its Proposed Search Terms miss the mark. First, by providing details about the ESI Order, CSXT intended only to give the Court a full picture of the complexity of this case and the extensive, good-faith negotiations between the parties. The ESI Order did not necessitate the Emergency Motion, but it does illustrate the challenges CSXT faced when negotiating with NS regarding the production of ESI, and also the efforts CSXT made to resolve these challenges without Court intervention.

Conversely, NS's Proposed Search Terms *did* contribute to CSXT's Motion. To be clear, NS sent its Proposed Search Terms to CSXT by email on January 17, approximately forty minutes before a scheduled meet-and-confer call between the parties. On that call, NS conditioned its agreement to produce by January 31 the documents and data needed for CSXT's expert report (including customer communications) on CSXT's reciprocal production by the same date. Without any opportunity to consider or test NS's Proposed Search Terms, CSXT could not in good faith agree to make a reciprocal production of the documents at issue (including customer communications, which would have been subject to NS's proposed terms) by January 31.[2]

In the ESI Order, the parties agreed that "[a] requesting Party may request no more than twenty (20) additional terms to be used in connection with [the producing party's] electronic search," and also that "[a] disjunctive combination of multiple words or phrases . . . broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word." (ECF No. 83 at 5-6). NS's Proposed Search Terms are disjunctive, equating to *more than five thousand additional terms* when considered separately as the ESI Order requires. *See* **Exhibit A** (table listing each Proposed Search Term separately). Although CSXT continues to test these terms, it anticipates that they will yield a significant volume of documents that would increase the scope of its review and production far beyond what is proportional to the needs of the case. CSXT also anticipates that the terms themselves will result in a number of false hits, encompassing documents unrelated to the subject matter of this litigation. Finally, the terms

---

[2] The ESI Order contemplates the parties conferring in good faith about search terms to "avoid an unduly burdensome production or the retrieval of a large amount of non-responsive ESI." *Id.* And the parties successfully followed this process in December 2019, when CSXT agreed to apply more than twenty additional search terms at NS's request. *See, e.g.,* Mem. in Supp., Ex. 9 (ECF No. 107-9). NS gave CSXT no time to engage in this process with respect to the Proposed Search Terms and its associated demand for reciprocal production.

4

themselves are overbroad on their face. Indeed, according to NS, the parties should search for and review custodial documents with the terms "Los Angeles", "Long Beach," "Seattle", and "Panama", even though neither CSXT nor NS have tracks in those locations.

NS's arguments in favor of its Proposed Search Terms are misguided. CSXT does not contend that geographic terms are wholly unnecessary in this case, but it has drawn a distinction between custodial *documents* (i.e. emails and loose electronic documents) and non-custodial *data*. Mindful of the Court's Scheduling Order and scheduled trial date, CSXT has proposed that the parties search custodial ESI using geographic search terms tailored to a narrower universe of ports, while producing non-custodial data for a wider set of relevant ports. CSXT has sought to negotiate with NS over the appropriate scope of geographic terms to be applied to custodial ESI, but NS stonewalled these attempts.[3]  *See* Mem. in Supp., Ex. 9 (ECF No. 107-9).

### C.  NS's remaining arguments are inaccurate and irrelevant.

NS's remaining arguments have no effect on the Court's analysis; CSXT has acted with diligence and good cause exists to extend the deadlines as CSXT requested. NS attempts to turn this into a numbers game, pointing out how many thousands of pages each side has produced thus far. But NS disregards the timing of the parties' productions and the sequence of events giving rise to CSXT's Motion. For example, although NS has produced 5,365 documents to date, nearly 3,000 of those were produced *after* CSXT's Motion was filed. Moreover, although NS insists that it intends to fully produce the *data* CSXT needs by January 31, it makes no such representation with respect to customer communications. Instead, NS says that it plans to substantially complete

---

[3] CSXT nonetheless remains willing to negotiate with NS over an appropriately limited scope of additional geographic terms to be applied to custodial data, particularly with respect to East Coast Ports.

its rolling productions, including responsive customer communications, by February 7.[4] Even with the fifteen-day extension proposed by NS, that would leave CSXT less than 2.5 weeks to confirm the completeness of NS's production, review thousands of documents, prepare for and take at least six depositions (including two Rule 30(b)(6) depositions), and for CSXT's expert to evaluate all of that and incorporate it into his report. That is plainly unreasonable.[5]

NS's complaint about the dispositive motions deadline is also unfounded. When the parties initially discussed an extension of expert deadlines, CSXT anticipated NS's concern that an extension would interfere with the dispositive motions deadlines and accordingly proposed an extension to that deadline as well. *See* Mem. in Supp., Ex. 8 (ECF No. 107-8). NS flatly refused to consider any such extension. *See* Mem. in Supp., Ex. 10 (ECF No. 107-10). Yet now NS suggests that CSXT should be faulted for failing to propose to the Court the very extension it so adamantly refused. But there is no prejudice here—if the dispositive motion deadline is a concern, this deadline can be extended without interfering with the trial date.

In its Opposition, NS admits that an extension of expert and fact discovery deadlines is warranted. Indeed, NS suggests that the Court should order a fifteen-day extension to the parties' expert deadlines, *as well as an extension to its own discovery deadline*, but insists that CSXT is not entitled to any further extension of any kind. *See* Mem. in Opp. at 11. Given the complexity of this case, the parties' ongoing disputes over the appropriate scope of discovery, and CSXT's

---

[4] NS has represented that the search terms it has applied to custodial ESI will return responsive customer communications, and it refused to incorporate customer names into its search terms as CSXT requested. CSXT is thus left with no choice but to wait until after NS substantially completes its production on February 7 to confirm whether NS has, in fact, produced the critical customer communications necessary for its expert report.

[5] CSXT proposed extending Plaintiff's discovery deadline to meet Defendants' in an effort to avoid additional motions practice related to these issues by allowing sufficient time for the parties to resolve other outstanding discovery issues without Court intervention.

ongoing, good faith efforts to resolve these issues, it would be appropriate and reasonable to allow additional time for both parties to complete expert and fact discovery. The extensions proposed by CSXT are not prejudicial and would give the parties sufficient time to attempt to resolve their ongoing disputes without further Court intervention.

### D.  NPBL's Argument regarding expert calculations misses the mark

In challenging CSXT's Motion, NPBL rehashes arguments from its Motion for Partial Summary Judgment (ECF No. 94), which are premised on the flawed suggestion that CSXT does not require data from the defendants to calculate its damages, including antitrust damages, in this case. Here again is an example of the predicament into which CSXT has been thrust: NPBL on one hand insists it is entitled to partial summary judgment on damages (and CSXT is not entitled to an extension of its deadlines), because CSXT has not yet calculated its damages, while NS holds data and documents that CSXT's expert requires to calculate those damages. *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 746 (1976) (explaining that in antitrust cases, "proof is largely in the hands of the alleged conspirators").

As explained in CSXT's Opposition to NPBL's Motion for Partial Summary Judgment (ECF No. 101), which CSXT incorporates herein, in an antitrust case, relevant and necessary information is in the hands of Defendants. Defendants possess information on topics including, for example, business volume, which is relevant to calculate the amount of business CSXT lost due to Defendants' anticompetitive conduct. And, as CSXT has explained, expert calculations, reports, and testimony are *required* to prove its antitrust injury and damages. *See, e.g., Wilder Enterprises, Inc. v. Allied Artists Pictures Corp.*, 632 F.2d 1135, 1144 (4th Cir. 1980); *Belmora, LLC v. Bayer Consumer Care AG*, 338 F. Supp. 3d 477, 487 (E.D. Va. 2018) (explaining, "The Fourth Circuit has recognized that the proponent of an antitrust claim must present expert

testimony to establish its proposed market definition"). Accordingly, good cause exists to grant the requested extensions.

### III.     CONCLUSION

For the foregoing reasons, and those set forth in CSXT's Memorandum in Support (ECF No. 107), CSXT has shown good cause, and respectfully requests the Court grant its Emergency Motion and amend the Court's Rule 16(b) Scheduling Order to extend the deadlines for expert reports and testimony, and extend CSXT's fact discovery deadline.

Dated:  January 29, 2020

Respectfully submitted,

**CSX TRANSPORTATION, INC.**

/s/ *Robert W. McFarland*
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
Jeanne E. Noonan (VSB No. 87863)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia  23510-1655
Telephone: (757) 640-3716
Facsimile:  (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: jnoonan@mcguirewoods.com

Ashley P. Peterson (VSB No. 87904)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219-3916
Telephone:  (804) 775-1000
Facsimile:  (804) 775-1061
E-mail: apeterson@mcguirewoods.com

*Counsel for Plaintiff*

8

## CERTIFICATE OF SERVICE

I certify that on this 29th day of January 2020, a true and correct copy of the foregoing was served on all counsel of record via Notice of Electronic Filing by filing with the Court's CM/ECF system.

By:   */s/ Robert W. McFarland*
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
Jeanne E. Noonan (VSB No. 87863)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia  23510-1655
Telephone: (757) 640-3716
Facsimile:  (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: jnoonan@mcguirewoods.com

Ashley P. Peterson (VSB No. 87904)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219-3916
Telephone:  (804) 775-1190
Facsimile:  (804) 698-2091
E-mail: apeterson@mcguirewoods.com

*Counsel for Plaintiff*

126408833_6