# Exhibit F

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CSX TRANSPORTATION COMPANY** : | |
| : | **CIVIL ACTION NO: 04-CV-04018** |
| **Plaintiff,** : | |
| : | |
| **vs.** : | |
| : | **Hon. Thomas N. O'Neill, Jr.** |
| **NOVOLOG BUCKS COUNTY** : | |
| : | |
| **Defendant.** : | |
| : | |

## CSX TRANSPORTATION COMPANY'S BRIEF IN OPPOSITION TO NOVOLOG BUCKS COUNTY'S MOTION FOR PARTIAL RECONSIDERATION AND IN SUPPORT OF ITS CROSS MOTION FOR RECONSIDERATION, OR IN THE ALTERNATIVE, ITS MOTION TO REFER THE ISSUES TO THE SURFACE TRANSPORTATION BOARD

# TABLE OF CONTENTS

*Pages*

TABLE OF AUTHORITIES ................................................................................................ iv

I.     INTRODUCTION ................................................................................................ 1

II.    UNDISPUTED MATERIAL FACTS AND FACTS INCORRECTLY SET FORTH IN
THE OPINION ................................................................................................ 2

III.   THE COURT'S OPINION INCLUDES ERRORS OF LAW WHICH WARRANT
RECONSIDERATION DISTINCT FROM THE ERRORS ALLEGED BY NOVOLOG ..... 3

      A.    Standard of Review ................................................................................. 3

      B.    Cases Have Long Held that Consignees are Liable for Demurrage Generally ............ 4

      C.    The Named Consignee on the Bill of Lading that Ultimately Accepts the Rail Car
is a Party to the Transportation Contract ................................................... 6

             1. Is There an Agreement Between the Parties that Governs Liability for
Demurrage? ................................................................................. 8

      D.    The Court has Misinterpreted and Misapplied the Applicable Legal Precedent in
this Matter ................................................................................. 9

             1. Illinois Central Railroad v. South Tec Development Warehouse, Inc.,
337 F. 3d 813 (7th Cir. 2003) ................................................... 10

             2. Union Pacific Railroad Co. v. Ametek, Inc., 104 F. 3d 558 (3d Cir. 1997). ......... 11

             3. Evans Products Co. v. Interstate Commerce Commission,
729 F. 2d 1107 (7th Cir. 1984) ................................................... 12

             4. CSX Transportation, Inc. v. City of Pensacola, 936 F. Supp. 880 (N.D. Fla.) ..... 14

             5. Southern Pacific Transportation Co. v. Matson Navigation Co.,
383 F. Supp. 154 (N.D. Cal. 1974) ................................................... 15

             6. Middle Atlantic Conference v. ICC, 353 F. Supp. 1109 (D.D.C. 1972) .............. 16

      E.    49 U.S.C. § 10743 Directly Governs the Obligations of Consignees and Agents .... 17

      F.    The Court Misunderstands the Railroad Industry Generally ....................................... 20

IV     SHOULD THIS COURT NOT GRANT CSX'S CROSS MOTION FOR
RECONSIDERATION, THIS COURT MUST REFER THE QUESTION OF
WHETHER IT IS REASONABLE FOR CSX'S TARIFF TO IMPOSE DEMURRAGE
LIABILITY ON A CONSIGNEE TO THE U.S. SURFACE TRANSPORTATION
BOARD ...................................................................................................................... 22

CONCLUSION     ...................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

Ametek, Inc. v. Panther Valley RR Corp.,
No. 40663 and 40664, 1993 ICC LEXIS 13 (I.C.C. 1993) ....................................12, 17

City of New Orleans v. Southern Scrap Material Co., Ltd.,
491 F. Supp. 46 (E.D. La. 1980)........................................................................4, 24

CSX Transportation, Inc. v. City of Pensacola, 936 F. Supp. 880 (N.D. Fla.)............14, 16

Davis v. Timmonsville Oil Co., 285 F. 470 (4th Cir. 1922) ......................................5, 8, 19

Evans Products Co. v. Interstate Commerce Commission,
729 F.2d 1107 (7th Cir. 1984) ...........................................................................12

Great N. R. Co. v. Merchants Elevator Co., 259 U.S. 285, 42 S. Ct. 477 (1922) .............23

Illinois Central Railroad v. South Tec Development Warehouse, Inc.,
337 F. 3d 813 (7th Cir. 2003) .........................................................10, 11, 15, 18

In re Penn Central Transportation Co., 477 F.2d 841 (3d Cir. 1973)...........................4, 24

Middle Atlantic Conference et. al. v. United States of America and Interstate
Commerce Commission, 353 F. Supp. 1109 (D.D.C. 1972).............................8, 11, 16, 18

Pennsylvania R.R. Co. v. Titus, 109 N.E. 857, 216 N.Y. 17 (N.Y. App. 1915) .................5

Pennsylvania Railroad Co. v. Moore McCormack Lines, Inc.,
370 F.2d 430 (2d Cir. 1966) ............................................................................26

Southern Pacific Transportation Co. v. Matson Navigation Co.,
383 F. Supp. 154 (N.D. Cal. 1974)...................................................................15

St. Louis, Southwestern Railway Co. v. Mays, 177 F. Supp. 182 (E.D. Ark. 1959) ..........5

Turner Lumber Co. v. Chicago, M & St. P. Ry. Co.,
271 U.S. 259, 46 S. Ct. 530 (1961) ..................................................................24

Union Pacific Railroad Co. v. Ametek, Inc., 104 F. 3d 558 (3d Cir. 1997).....................11

Union Pacific Railroad Company v. United States, 490 F.2d 1385 (Ct. Cl. 1974).............4

United States v. Western Pacific Railroad Co.,
352 U.S. 59, 77 S. Ct. 161 (1965) ....................................................................23

Waltman v. International Paper Company, 875 F.2d 468 (5th Cir. 1989) ........................3

iv

**Statutes**

49 U.S.C. § 10102 ...................................................................................................19

49 U.S.C. § 10704 ...................................................................................................23

49 U.S.C. § 10743(a)(1) ....................................................................................17, 18

49 U.S.C.A. § 10746....................................................................................................4

49 U.S.C.A. § 10761(a) ..............................................................................................4

**Other Authorities**

Illinois Central Gulf R. Co. - Security Deposits - Payment of Demurrage Charges,
      358 I.C.C. 312 (1978).........................................................................................24

R. Franklin Unger, Trustee of the Indiana Hi-Rail Corporation, debtor – Petition for
Declaratory Order - - Assessment and Collection of Demurrage and Switching
Charges, STB Docket No. 42030 (June 14, 2000), available at 2000 STB LEXIS 333 ...23

Restatement (Second) of Agency § 321 (1957)..............................................................13

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CSX TRANSPORTATION COMPANY** : | : **CIVIL ACTION NO: 04-CV-04018** |
| **Plaintiff/Counterclaim Defendant** : | : |
| | : |
| **vs.** : | : |
| | : **Hon. Thomas N. O'Neill, Jr.** |
| **NOVOLOG BUCKS COUNTY** : | : |
| | : |
| **Defendant/Counterclaim Plaintiff.** : | : |

## CSX TRANSPORTATION COMPANY'S BRIEF IN OPPOSITION TO NOVOLOG BUCKS COUNTY'S MOTION FOR PARTIAL RECONSIDERATION AND IN SUPPORT OF ITS CROSS MOTION FOR RECONSIDERATION, OR IN THE ALTERNATIVE, ITS MOTION TO REFER THE ISSUES TO THE SURFACE TRANSPORTATION BOARD

### I.    INTRODUCTION

This matter comes before the Court following the Motion for Reconsideration of the defendant/counterclaim plaintiff Novolog Bucks County ("Novolog") of the Court's Memorandum dated May 24, 2006 (hereinafter referred to as "Opinion") denying both parties' motions for summary judgment. Novolog moves for partial reconsideration of the Court's ruling denying summary judgment for Novolog on the claims in CSX' First Amended Complaint seeking rail car demurrage in the amount of $260,304.00. The plaintiff/counterclaim defendant CSX Transportation Company ("CSX") opposes this motion and sets forth a Cross Motion for Reconsideration, or in the alternative, a Motion to Refer the Issues presented in the Opinion to the Surface Transportation Board ("the STB"). In support thereof, CSX avers the following:

## II. UNDISPUTED MATERIAL FACTS AND FACTS INCORRECTLY SET FORTH IN THE OPINION

- CSX' Amended Complaint seeks to recover payment of inbound and outbound demurrage charges accrued by Novolog and itemized on twelve (12) invoices sent to Novolog from December, 2002 through August, 2003, totaling $260,304.00.

- For each rail car movement consigned to Novolog's facility identified in the demurrage bills, Novolog is named as the *consignee* on the waybill. For each rail car movement that originated at Novolog's facility identified in the demurrage bills, Novolog is named as the *shipper* on the waybill because it ordered the empty rail car for transportation.

- Rail car demurrage was incurred by Novolog as a result of Novolog having received excess volume of rail cars during the first half of 2003.

- Novolog never filed a formal claim with CSX disputing any of the assessed demurrage charges as required by tariff, but still refused to pay the demurrage charges.

- CSX publishes a tariff subject to the jurisdiction of the Surface Transportation Board which governs its rights and obligations to collect demurrage charges. The applicable tariff is CSXT 8100. Novolog received and is aware of this tariff.

- At some point, Novolog signed a document (referred to as "the Refund Contract"). It contains the following provision: "[r]efunds will not be honored unless all line-haul rates and accessorial charges have been paid."

- Novolog produced no evidence as to when the aforementioned document was signed, if CSX ever received the signed version, or whether CSX ever consented to the contract.

- The Court has incorrectly defined the term *open gate* as a facility that "receives and holds rail cars on its tracks at the convenience of railroad carriers". The tariff defines *open gate* as a facility where "all cars can be placed on arrival without regard to car initial and number or other placement instructions." See CSX Demurrage Tariff 8100, at bates-label CSX-0051.[1] A facility that is *open gate* is large and versatile enough to receive rail cars as they are ordered or received there. Notices are not necessary, thus making it more convenient to the facility, with little or no bearing on the convenience of the railroad carrier. See Opinion, p. 2.

---

[1] The entire CSX Demurrage Tariff 8100, and the "quick guide for managing demurrage," is attached hereto for the Court's convenience as Exhibit "A".

III.   **THE COURT'S OPINION INCLUDES ERRORS OF LAW WHICH WARRANT RECONSIDERATION DISTINCT FROM THE ERRORS ALLEGED BY NOVOLOG**

A.   Standard of Review

A Motion for Reconsideration can only be submitted to the court in rare situations where an argument or controlling authority has been overlooked or disregarded in the original ruling.  Courts have recognized that the purpose of such motions is primarily "to correct manifest errors of law or fact or to present newly discovered evidence."  Waltman v. International Paper Company, 875 F. 2d 468, 473 (5th Cir. 1989).  In the instant matter, Novolog seeks reconsideration based on error of law.  Novolog Motion, p. 2.[2] Despite this standard, Novolog fails to specifically identify where the Court has erred in applying the law.  Instead, in the text of its motion, Novolog alleges that the Court has failed to apply the facts of the case, whether the Refund Contract governs demurrage liability.  Id. at 5.  Reconsideration is not warranted based on Novolog's brief presented.

Reconsideration is warranted, however, for the reasons set forth in CSX' Cross Motion for Reconsideration set forth herein.  CSX submits this motion only after a thorough review and analysis of the Court's Opinion, and respectfully recognizes that this Court may have misapplied and misinterpreted the controlling authority with respect to the Court's ruling.  The Court here holds that:

> the unilateral designation of an entity as consignee on bills of lading is not sufficient to make that entity a legal consignee for purposes of imposing demurrage liability; demurrage liability must arise out of a contractual relationship regarding the railcars for which demurrage liability is sought.

---

[2] In the instant matter, CSX agrees with Novolog that the Court has made a manifest error of law.  However, it disagrees with Novolog as to what that error was.  See *supra*.

3

See Opinion, p. 30. This holding reflects a manifest error of law in that the Court has required that all consignees have a contractual relationship with the rail carrier separate and apart from the bill of lading.

Such a holding goes further than any prior precedent, and if not reconsidered – would stand as a major change in national rail transportation policy.

  B.  <u>Cases Have Long Held that Consignees are Liable for Demurrage Generally</u>

The Court has accurately and fully defined the terms *demurrage*, *consignee* and *bill of lading* in the Opinion. <u>See</u> Opinion, FN's 8, 10 and 11. These definitions are consistent with those set forth in the CSX Tariff. Most notably, the tariff defines *consignee* as "[t]he party to whom a shipment is consigned, or the party entitled to receive the shipment." Exhibit "A", CSX-0046 (identifying the named consignee as <u>the only</u> party to whom the rail car can be delivered by the carrier). These definitions are essential because they serve as a common foundation for reviewing the century-old rail transportation law standards. Under well-settled transportation law, all rights and duties are set forth in the carrier's tariff. <u>See</u> <u>In re Penn Central Transportation Co.</u>, 477 F.2d 841844 (3d Cir. 1973) ("Under the Interstate Commerce Act, freight charges incurred pursuant to a filed tariff are accorded a legally superior status: that of a law."); <u>see also</u> 49 U.S.C.A. § 10761(a).

The law is well settled that consignees are liable for demurrage. <u>See</u> 49 U.S.C.A. § 10746; <u>City of New Orleans v. Southern Scrap Material Co., Ltd.</u>, 491 F. Supp. 46 (E.D. La. 1980). No finding of fault is required. <u>Union Pacific Railroad Company v. United States</u>, 490 F. 2d 1385 (Ct. Cl. 1974). Of this, there can be no doubt. In fact, rail carriers are "under a duty to collect these charges and the consignee is under a duty to

pay them." Id. at 48; see also St. Louis, Southwestern Railway Co. v. Mays, 177 F. Supp. 182 (E.D. Ark. 1959). Courts have long imposed liability even when the defendant alleges to be only an agent. See Pennsylvania R.R. Co. v. Titus, 109 N.E. 857, 216 N.Y. 17 (N.Y. App. 1915). The transportation contract is the contract of carriage which is comprised of the bill of lading terms, and the carrier's tariffs. Acceptance of the rail car and its contents binds the consignee to the terms of the bill of lading and liability for demurrage charges. See Davis v. Timmonsville Oil Co., 285 F. 470 (4th Cir. 1922). The Court here recognizes the general rule of law imposing demurrage liability upon consignees in its Opinion (see pp. 10-13), and even recognizes that liability is imposed via tariff (see p. 16), and is not based on contract law. From there, however, the Court incorrectly applies the law in determining who is liable for demurrage and when such liability attaches.

A consignee's responsibility for demurrage can be imposed (1) if it is a party to a transportation contract; or (2) if it enters into an independent contract in which it specifically accepts liability for demurrage. Id. at p. 16; see also Novolog's Motion for Reconsideration Brief, p. 6. CSX' position here has always been that Novolog, the named consignee on the bills of lading, after accepting the delivered rail cars and their contents as named consignee, became a party to the transportation contract. The second basis for imposing liability is moot. The Court summarily dismisses CSX' position regarding the first standard, and confuses the two ways that liability can be imposed from the very beginning, stating:

- "liability for demurrage must arise out of a contractual relationship";

5

- "A contractual relationship is therefore a condition precedent to demurrage liability";

- "in order for a carrier to establish liability for demurrage, it must first establish that it had a contractual relationship regarding the railcars with the entity that detained the railcars";

- "no industry-wide custom permits the imposition of demurrage charges against a nonparty that is unilaterally designated as the consignee."

<u>See</u> Opinion, pp. 15, 16, 16 and 20 respectively. These statements are incorrect as a matter of law. Essentially, the Court rules that the only way one can be "a party to the transportation contract" is to be in contractual privity with the carrier. The Court has incorrectly incorporated the second standard into the first! No Court has ever entered such a ruling, interpreting a line of cases that at one time created a small exception to well-settled law, and expanded it to virtually eliminate the law itself. Previous courts have focused on *who is the consignee*; this Court accepts Novolog as the named consignee, but creates an extra requirement (contractual privity) which is found nowhere in the tariff. <u>See</u> Exhibit "A," CSX-0041 (holding the consignee at destination responsible for the payment of demurrage charges). This decision significantly and fatally limits <u>when</u> demurrage liability can be applied, and <u>upon whom</u> it can be applied.

C.    The Named Consignee on the Bill of Lading that Ultimately Accepts the Rail Car is a Party to the Transportation Contract

The Court and Novolog have misapplied the law in this matter. The Court's error of law was the finding that a contract is required to bind a consignee for demurrage incurred at its facility. <u>See</u> Opinion, p. 17-18. In this section we shall address whether, pursuant to the CSX Tariff, Novolog is a party to the transportation contracts herein, triggering liability for demurrage. This review <u>is not</u> a determination of whether there is

6

a contract between the parties – as this is the second optional means of imposing liability. This review starts with the tariff and involves an evaluation of the roles played by the various parties involved in the transportation to decide who is a party to the bill of lading.

CSX' tariff specifically contemplates the accrual of demurrage when an open gate facility fails to load or unload a rail car within the prescribed free time. See Demurrage Guide attached to Tariff, p. 4, CSX-0051. In such an instance, the demurrage is incurred by the facility itself. The tariff explains that the "consignee at destination will be responsible for the payment of demurrage charges." Exhibit "A", CSX-0041. The *consignee* is "the party entitled to receive the shipment." Id. at CSX-0045. In the instant matter, the bill of lading identifies only one consignee, Novolog, at its Fairless, Pennsylvania facility, as being the only party entitled to receive the shipments. CSX had no choice but to deliver rail cars to Novolog, which it did repeatedly for over a year. Novolog acted as the named consignee and accepted the rail cars which it received from CSX, then unloaded and returned the empty railcars (albeit in an untimely manner) back to the railroad as per the tariff. Novolog played a significant role in the transportation of the rail cars, and never provided CSX with notice that it was not the actual consignee of the freight.[3] For a discussion of the notice requirements, see *supra* Section (E).

Courts have long held that when a named consignee accepts freight that was consigned to it on a bill of lading, it is the consignee and by its actions becomes a party to the transportation contract. "Ordinarily, a consignee, by accepting and converting to its own use a shipment, accepts and becomes responsible for these transportation and

---

[3] The Court uses the term "legal consignee" in its holding, inferring that the consignee on the bill of lading is only liable for demurrage if it is the "legal consignee," which requires a contractual relationship with the carrier. This finding differs from the tariff's terms. See Exhibit "A".

demurrage charges." Davis v. Timmonsville Oil Co., 285 F. 470, 471 (4th Cir. 1922). The court in Middle Atlantic Conference et. al. v. United States, 353 F. Supp. 1109, reviews and discusses the history of imposing demurrage liability on named consignees, and quotes in part from an 1866 Massachusetts court ruling: "If the consignee will take the goods, he adopts the contract …". Id. at 1119. The quotation goes on to explain that the consignee can reject the contract by rejecting the goods.

### 1. Is There an Agreement Between the Parties that Governs Liability for Demurrage?

The second way liability for demurrage can be imposed is via an independent contract in which a party specifically accepts liability for demurrage. See Opinion, p. 16. The Court summarily determines that this is the only way a consignee can become a "legal consignee" responsible for demurrage. Id. at 30. It then concludes that a genuine issue of fact exists as to "whether the parties entered into any agreement under the terms of the Refund Contract." Id. at 17. Novolog has identified the following single issue as warranting reconsideration:

> . . . there remain genuine issues of material fact in this case as to whether the parties had "a contractual relationship from which demurrage liability may arise.' Id. at 30. The Court stated '[s]hould CSX establish such a contractual relationship at trial, it may then proceed to impose demurrage liability against Novolog via its tariff.' Id.

Motion for Reconsideration, p. 5. Novolog alleges that the Refund Contract can not impose liability for demurrage.

A closer examination of the contract is required. It states that "[r]efunds will not be honored unless all line-haul rates and accessorial charges have been paid." See Refund Contract, Exhibit "C" to CSX' Brief, at § 4. If the Court determines that this

document reflects an agreement between the parties, which CSX continues to deny, the issue becomes whether this language serves as an agreement by Novolog to pay accessorial charges should such charges be incurred. Mr. Underwood testified that "[i]n the rail transportation industry, the term "accessorial charges" includes the charge for rail car demurrage." See Underwood's Affidavit, ¶ 11. As previously set forth at length in this matter, Novolog has failed to pay demurrage bills totaling $260,304.00.

CSX' position continues to be that no express, separate written contract is required to obligate a consignee to pay for demurrage that was incurred at its facility. The Refund Contract does reference accessorial charges, and may, as a question of fact, create a separate express obligation for Novolog to pay demurrage charges. Nevertheless, while CSX may prevail on that basis, because of the broad consequences of the Court's ruling, CSX recognizes an urgent need to have the underlying legal issues correctly stated, or in the alternative, addressed by the Surface Transportation Board at this juncture of the litigation. See supra, Section VI.

D.   The Court has Misinterpreted and Misapplied the Applicable Legal Precedent in this Matter

CSX was surprised to read the Court's interpretation and analysis of the previous case law regarding demurrage. See Opinion, pp. 20-30. In particular, CSX is confused and concerned as to how the Court can find cases in which the defendant is not listed on the bills of lading at all, or is identified only as a "care-of" party (an agent for a disclosed principal), as being analogous to the facts presented in this case. Each case is addressed separately herein.

1. **Illinois Central Railroad v. South Tec Development Warehouse, Inc.**, 337 F. 3d 813 (7th Cir. 2003)

This decision addresses the straightforward issue of whether the defendant was a consignee, or whether it was acting as an agent for a disclosed consignee. Id. at 816-17. The facts of South Tec require a careful examination: "ninety percent of the freight moving through South Tec was from the paper supplier Champion, which consistently named Donnelley [the disclosed principal] as the consignee of the paper it shipped." Id. at 821. Inexplicably, the Court here starts its analysis by assuming that South Tec "was not a party to the transportation contract for demurrage charges," which is not part of the South Tec court's analysis at all. See Opinion, p. 21, citing South Tec, 815-16. The Seventh Circuit Court of Appeals in South Tec concluded:

> From the actions of the IC as reported by South Tec, it is apparent that the IC understood South Tec not to be a consignee but an agent for Donnelly. . . . To the extent that some form of notice may play a role in the determination of consignee status, see (citation to Unger, supra), it appears that the IC had ample notice of the relationship between South Tec and Donnelly.

South Tec, at 821-822. The knowledge, apparent or actual, of the rail carrier based upon ninety percent of the freight shipments is what led the Seventh Circuit to remand the case to the District Court to determine the actual consignee. Because most of the shipments identified the same party as the shipper and the consignee, the court held that it was or should have been apparent to the rail carrier that the defendant named as consignee on just a few of the bills of lading was really an agent. Id. (noting that the shipper was also named as the consignee on the "vast majority" of the bills of lading).

Unlike in South Tec, where the agent was identified as a consignee on only a few of many shipments, all of the bills of lading in the instant case named only Novolog as

the consignee.  The distinction is important because it served as the justification for the South Tec decision to remand the question of who is the consignee back to the district court in light of the fact that the railroad had been put on notice that the defendant was named as consignee on only a few bills of lading.  The Court here concludes that naming Novolog as the consignee on all of the bills of lading is not enough to make it "a legal consignee for purposes of imposing demurrage liability."  See Opinion, p. 22.  To the extent that the Court's ruling is based upon South Tec, it is clearly misplaced.  If the Court is holding that a written contract between the consignee and the carrier is always required now, how is that consistent with the Court's definition of a *consignee*?  See Opinion, FN 10.  How is this consistent with the CSX tariff?  The Court has expanded the holding in South Tec so far that all railroads must now enter into tens of thousands of contracts with consignees before releasing rail cars or equipment.  This will obviously impede the flow of interstate commerce, result in greater expense and delays, and could disrupt rail car supply.

2.  **Union Pacific Railroad Co. v. Ametek, Inc., 104 F. 3d 558 (3d Cir. 1997).**

In Ametek, freight had been delivered by rail pursuant to bills of lading which named Ametek as a "care of" party.  104 F. 3d 558 (3d Cir. 1997).  The Ametek court analyzed whether the defendant was liable based on (1) whether it is a party to the transportation contract, or (2) any other contractual basis for imposing liability.  Id. at 562.  Ametek is an evaluation of agency law within the context of the rail transportation industry.  The Court finds that "an agent for a disclosed principal is not liable to a third person for acts within the scope of the agency."  Ametek, at 563, citing Middle Atlantic Conference v. ICC, 353 F. Supp. 1109 (D.D.C. 1972).  This is consistent with the I.C.C.'s

finding that Ametek was not responsible for demurrage charges "because it was an agent rather than a party to the transportation contract." Ametek, Inc. v. Panther Valley RR Corp., No. 40663 and 40664, 1993 ICC LEXIS 13, * 16 (I.C.C. 1993).[4]

The Court in the instant matter holds that the named consignee or "the receiver of freight" is not a party to the transportation contract unless there is an independent contractual relationship which governs demurrage. See Opinion, pp. 23-24. As an interpretation of the Ametek decision, the Opinion goes much further than the Ametek Court was willing to go. This Opinion uses the language "not a party to the transportation contract," without explaining why it is not such a party. In Ametek, the reason the defendant was not a party to the transportation contract is because it was found to be only an agent for a clearly disclosed principal. Novolog was never listed as a "care of" party on any bills of lading in the possession of CSX, and Novolog never took any affirmative steps to disclose any agency relationship. No such agency determination is discussed in this Court's Opinion, as it was in Ametek.

3.  **Evans Products Co. v. Interstate Commerce Commission, 729 F. 2d 1107 (7th Cir. 1984)**

This Court's Opinion also claims that in Evans Products Co. v. Interstate Commerce Commission, 729 F.2d 1107 (7th Cir. 1984), the U.S. Court of Appeals rejected the premise that liability can be imposed upon an agent who fails to disclose its principal. The Court has misunderstood and over-expanded the holding of the Seventh Circuit Court of Appeals in Evans.

---

[4] It is CSX' position that demurrage liability can be imposed upon an agent who fails to disclose its principal, and this position is consistent with the following case. See Opinion, p. 23. In support thereof, see supra Section (D)(3)(discussing Evans).

The Court's Opinion correctly points out that the issue in <u>Evans</u> was whether switching charges could be imposed upon car repair facilities simply because repair facilities were named in a tariff. The court in <u>Evans</u> held that there could be no liability because repair facilities "...are not consignors or consignees of the cars because delivery of the cars as freight is not completed and the carrier's lien is not extinguished when the repair facility receives the car." <u>Id.</u> at 113. The operative facts of <u>Evans</u> are in stark contrast to the instant case, wherein Novolog was the named consignee, the cars were delivered and accepted by Novolog, and CSX's lien was extinguished upon Novolog's receipt of the car.

This Court's Opinion quotes dicta in the <u>Evans</u> opinion, and concludes that the court in <u>Evans</u> rejected the well settled law that an agent of an undisclosed principal may be held liable for charges incurred on behalf of the principal. The quotation is out of context, and the decision itself has never been cited for this position. It is revealing and instructive to review the two sentences in the Court's opinion in <u>Evans</u> which immediately precede the sentence that is quoted in this Court's opinion. These two sentences state:

> The possibility exists, of course, that repair facilities act as agents of the car owners/lessors in ordering the repair switches, with disclosure of the fact of agency, if not the identity of the principal. In the case of a partially disclosed principal, the agent may be held personally liable for the charges incurred on behalf of the principal. <u>Restatement (Second) of Agency § 321</u> (1957). A repair facility thus could be held liable for the switched is orders if it refuses to disclose the identity of its principal.

<u>Id.</u> at 1113. The court in <u>Evans</u> concluded that while an agent for an undisclosed principal can be liable, repair facilities, being neither consignor, consignee, nor owner, may not be liable under a tariff for switching charges. The holding in <u>Evans</u> has no

application to the facts of this instant demurrage case, as Novolog was clearly the named consignee, and acted as consignee in taking title and possession of the goods consigned to it under multiple bills of lading.

### 4. **CSX Transportation, Inc. v. City of Pensacola**, 936 F. Supp. 880 (N.D. Fla.)

CSX is particularly troubled by the Court's finding that the City of Pensacola case is analogous to the facts presented herein. In fact, City of Pensacola has no applicability whatsoever to this case, as the defendant in that case was not identified as a consignee on a single bill of lading. Id. at 883. The facts presented are:

> The Port was not a party to the contract of transportation on any of the shipments which were delayed. CSX also admits that the Port was never listed on the bills of lading as owner, consignor, or consignee of the shipment. In a few cases, the bill of lading indicated the goods where (sic) to be shipped to the legal consignee "in care of" the Port.

Id. It is instructive to review the summary of the City of Pensacola case from the South Tec court, which stated, "[t]he Pensacola Court relied on the fact that none of the bills of lading on shipments to the Port listed the Port as consignee." South Tec, at 821, citing Pensacola, at 884.

The Opinion here is correct in that the issue presented is whether the defendant is a party to the transportation contract such that it is the legal consignee responsible for demurrage. See Opinion, p. 25. However, it is incorrect in applying as a standard for that determination the language prohibiting "the unilateral action of one party in labeling an intermediary as a consignee." City of Pensacola, at 884. That language only applies to a situation consistent with the facts presented in City of Pensacola, where the defendant is a stranger to the bills of lading. The Court finds that even though "Novolog

14

was listed as the consignee on the bills of lading," it still is not liable for the demurrage charges. See Opinion, p. 26. This is a very expansive reading of the City of Pensacola decision. So much so, in fact, that it will be impossible for railroads in the future to ever collect demurrage (as they are required to do under statute) unless there is a separate written contract with every consignee. Such contracts are rare.

> ### 5. Southern Pacific Transportation Co. v. Matson Navigation Co., 383 F. Supp. 154 (N.D. Cal. 1974)

The Matson decision is very similar to the South Tec matter, and is equally distinguishable from the facts presented here. Neither the facts nor the holding are "analogous," as the Court's Opinion suggests. See Opinion, p. 26. Again, the defendant appears "neither as shipper nor consignee in a bill of lading," and the Court bases its ultimate ruling on this fact. Matson, at 157. The court noted:

> In all instances, the inland shipper appeared as consignor on both bills of lading, and in most cases the Hawaii purchaser appeared as consignee. On these bills of lading Matson was named as the "care of" party. However, in a few cases the shipment was consigned to defendant on the railroad bill of lading.

Id. at 155. (Emphasis added). After concluding that Matson had no liability for the vast majority of the movements which named it as a "care of" party only, the court addressed the issue of liability for the "few cases" where Matson was named as the consignee on the bills, which were in all other respects identical to the other movements. The court concluded:

> In fact the sole difference between the two situations was the shipper's unilateral decision whom to name as consignee. The instant case differs in this respect from the others cited by the parties, where the consignee was either the purchaser of the cargo or, at least, the person to whom final delivery was to be made and thus had an interest in and control over the cargo.

<u>Matson</u>, at 157.

The Court here tries to discount the facts presented in this case, and instead focuses on discrete snippets of language from this decision to expand upon the holding in <u>Matson</u>. The facts, though, are important:

- Matson served as only a drop point at the pier; Novolog was a final rail destination;

- Southern Pacific knew Matson was only a drop point for maritime movements to Hawaii, because the consignee named in most shipments was in Hawaii; Novolog was the only final delivery point known to CSX.

- Matson's agency relationship with the disclosed principal was known to Southern Pacific because it was listed as such on most of the bills of lading; Novolog has never argued that it was an agent, admitting it is the one and only consignee on all the bills of lading, but refusing to accept liability for demurrage because it does not have a specific written contract with the carrier.

Again, in discussing <u>Matson</u>, the Court's Opinion ignores its unique facts, and greatly limits <u>who</u> is responsible for demurrage and <u>when</u> such parties are responsible. Such an expansion is a manifest error of law.

### 6. <u>Middle Atlantic Conference v. ICC</u>, 353 F. Supp. 1109 (D.D.C. 1972).

Finally, the Court reviews the <u>Mid-Atlantic</u> case, which present facts similar to those in <u>Ametek</u> (an attempt by the carrier to legislate liability for demurrage upon agents through the tariff), except it involves motor carriers. That court correctly held that tariffs were unlawful which stated that parties "who are neither consignors nor consignees" could be automatically held liable for detention charges. <u>Id.</u> at 1109. The <u>Mid-Atlantic</u> court held that no "specific independent contract to pay demurrage" is required and that demurrage could be assessed against any party to the transportation contract. <u>Id.</u> at

1119.[5]  In Mid-Atlantic, the carriers were trying to impose liability on "persons other than those named in the bills of lading as consignors or consignees of shipments."  Id.  The court held that these parties, not named in the bills of lading, were not parties to the transportation contract sufficiently to impose liability.  Id.  It is important to note that the I.C.C. interprets this case differently than the Court.  It wrote that "the Mid-Atlantic decision . . . focused on an "in care of" arrangement as an example of agency for a disclosed principal."  See Ametek, Inc. v. Panther Valley RR Corp., No. 40663 and 40664, 1993 ICC LEXIS 13, * 9, 16 (I.C.C 1993) ("an 'in care of' designation denotes agency").  The Mid-Atlantic holding sheds little light on the facts presented here, in which Novolog was the sole named consignee or shipper on all bills of lading.

E.  49 U.S.C. § 10743 Directly Governs the Obligations of Consignees and Agents

The Court's ruling makes a brief reference (see Opinion, p. 18) to 49 U.S.C. § 10743 (a)(1), a provision in the Interstate Commerce Act which requires the agent of a consignee to provide a carrier with notice of the agency, and absence of beneficial title in the freight, before the carrier makes delivery.  This statutory provision specifically mandates that any agent who fails to provide such notice will be found liable for additional transportation rates due after delivery.  The Court erroneously concludes that CSX' reliance on this statute is misplaced because the Court regards section 10743 as relating only to rates for carriage of freight.  Perhaps to support this interpretation, the Court emphasized the statutory language which references "rates for transportation".

---

[5]  This distinction between independent contracts for demurrage and parties to transportation contracts is set forth clearly in Mid-Atlantic.  In the instant matter, the court has combined these two ways of imposing liability, such that to be a "party to a transportation contract," and independent contract for demurrage is required.  Clearly, the tariff and case law did not intend to combine these standards into one.

No court has ever narrowly construed the provisions of section 10743 to exclude
demurrage.  To the contrary, the U.S. Court of Appeals for the Seventh Circuit implicitly
acknowledged that this very provision determined consignee liability for demurrage in
Illinois Central Railroad Co. v. South Tec Development Warehouse, Inc., 337 F.3d 813
(7th Cir. 2003).  In remanding the case for factual determination of the consignee, the
Court of Appeals concluded: "To the extent that the agency status of a legal consignee
may be a factor, the notice provisions of 49 U.S.C. § 10743(a)(1) may still be relevant."
Id. at 822.

In another decision heavily relied upon by this Court's Opinion, Middle Atlantic
Conference et. al. v. United States of America and Interstate Commerce Commission,
353 F. Supp. 1109 (D.D.C. 1972), the U.S. District Court discussed, analyzed, and
applied section 223 of the Interstate Commerce Act, which is the statutory predecessor of
49 U.S.C. § 10743(a)(1), within the context of an agent's liability for demurrage.  The
District Court noted that when an entity is acting as an agent for an undisclosed principal,
and the entity appears on the bill of lading as consignee (precisely the claim made by
Novolog), it may become liable on acceptance of the goods for transportation charges to
the extent they are billed to it at the time of delivery.  The court further held that:

> ...with respect to 'transportation charges ... found to be due after
> the property has been delivered to him' (which may include
> detention charges), the statute provides that a consignee might
> escape that obligation if certain conditions of notice are satisfied.
> The fact that the agent for an undisclosed principal appears on the
> bill of lading as consignee may be due either to the drafting of the
> original bill or to the reconsignment or diversion of the shipment to
> a point other than that specified in the original bill of lading.  In the
> former case, he may escape liability and the shipper or consignor
> will become liable (1) if he is in fact an agent; and (2) if 'prior to
> delivery of the property' he has 'notified the delivering carrier in

18

writing of the fact of such agency and the absence of beneficial
title.'

Id. at 1121.

Given that the two decisions which are most heavily relied upon in this Court's
Opinion (South Tec and Middle Atlantic) both applied section 10743 to determine
liability of a consignee for demurrage, it is unclear why the Court rejected the application
of this statute. The Court may have been confused by the provision's use of the term
"rates for transportation", terms which appear italicized in the Opinion.[6] Although not
discussed in the Opinion, the term "transportation" is defined in the rail part of the Act as
meaning a railcar or equipment related to the movement of property 49 U.S.C. § 10102.

Applying the literal statutory definition of transportation to section 10473 makes
it clear that this provision imposes liability for payment of rates for railcars or equipment
related to the movement of property, which is exactly what demurrage is intended to do.
Because it is uncontroverted that Novolog was the sole named consignee on all
applicable bills of lading, and that if Novolog was an agent, Congress imposed a duty
upon Novolog to notify CSX of its agency status; and because it is uncontroverted that
Novolog failed to provide CSX with the required notice of agency until months after the
last of many shipments had been delivered, as a matter of federal statute Novolog is
unequivocally liable for the demurrage at issue.

---

[6] Courts have long regarded demurrage charges as part of the transportation charges. In
Davis v. Timmonsville Oil Co., 285 F.470 (4th Cir. 1922), the U.S. Court of Appeals
stated: "Demurrage charges are part and parcel of the transportation charges, and are
covered by the same rules of law. They are part of the tariff, and must be collected from
the shipper or the consignee of the freight to the same extent as the charge for carriage."
Id. at 472.

F.    The Court Misunderstands the Railroad Industry Generally

The Court's ruling reflects an understandable confusion as to the controlling law and customs in the industry. By way of example, the Court has mischaracterized the term *open gate*. A facility that is *open gate* is large and versatile enough to receive as many rail cars as are ordered or received there. Notices are not necessary, thus making it more convenient to the facility, not to the railroad carrier. See Section II., infra; see also Opinion, p. 2. Further, it is incorrect to state that Novolog had no relationship to the agreement to move the rail cars except that it was engaged to unload and load them. Id. at 3. These roles, of a consignee and/or shipper, are important and necessary functions in the transportation agreement.

The Court incorrectly assumes that Novolog is not a party to the transportation contract, the bill of lading, simply because it did not negotiate the rate or the terms of the document. In the transportation industry, a named consignee on a bill of lading is a party to the bill of lading, and the consignee's acceptance of the rail car confirms this relationship. After this incorrect assumption, the Court surmises that "[a] contractual relationship is therefore a condition precedent to demurrage liability." Opinion, p. 16. With this one sentence, the Court ignores over one hundred years of railroad industry practice and tariff-made law, and forces the industry into a contract-only business.

The industry is streamlined to allow for any party to be a consignee. Generally, a consignee does not have a written agreement with the carrier. Even the Court writes that "[t]ypically, as here, consignees play no role in the negotiation of rates, the payment of freight rates, the routing of freight, or the preparation of the bill of lading." See Opinion, FN 10. Nonetheless, the Court seeks to change the role of consignees. As this decision is

20

written, the only way a consignee can be deemed responsible for demurrage is if it has entered into a written contract specifically accepting liability.   This ruling has severe industry-wide     consequences     rendering     virtually     all     transportation     contracts unenforceable, and crippling the movement of freight via rail nationally.  By requiring a signed agreement from all consignees, bills of lading and tariffs are worthless, and railroads must alter their entire system to obtain written assurances from any potential consignee or shipper for the cost of holding cars at destination or origin.  In so ruling, the Court has forced each and every railroad nationwide to require a written contract with tens of thousands of consignees whose only role in the transportation is to load or unload freight.   Such administration comes with substantial cost.   Given no choice, railroads would have to charge significant fees to consignees and/or shippers who do not own the freight, and were previously just employed by the shipper or beneficial owner of the freight to perform loading or unloading services.  The industry is designed to provide efficient and cost-effective access to the rails, but following this ruling, and the understandable resulting confusion, access will be delayed and costly.

Without such agreements in place, the unprecedented findings of this Court allow consignees unchecked rights to railroad cars and to shipper's freight, and essentially allow a consignee to hold onto such cars and freight indefinitely with absolutely no repercussions. Following the Court's ruling, nothing prevents a consignee from receiving a rail car and using it as warehouse storage for years!  The very purpose of demurrage is frustrated by this ruling.  See Opinion, p. 10-13.

IV.     **SHOULD THIS COURT NOT GRANT CSX'S CROSS MOTION FOR RECONSIDERATION, THIS COURT MUST REFER THE QUESTION OF WHETHER IT IS REASONABLE FOR CSX'S TARIFF TO IMPOSE DEMURRAGE LIABILITY ON A CONSIGNEE TO THE U.S. SURFACE TRANSPORTATION BOARD**

In denying CSX' motion for summary judgment, this Court entered an unprecedented ruling, and in doing so has determined that CSX' Demurrage Tariff is ineffective to establish consignee's liability for demurrage. Instead, the Court's decision suggests that demurrage liability for a consignee named on a bill of lading can only arise out of a direct, independent contractual commitment. Respectfully, the Court's decision goes too far. Such a decision, unless reconsidered, will lead to major controversies among railroads and their consignees. There are literally tens of thousands of freight receiving points on the U.S. interstate railroad network. Very, very few contracts of the nature contemplated by the Court exist. There is no reason why they should exist. Longstanding case law, supporting the custom and practice in the industry have made agreements like that contemplated by the Court unnecessary.

The CSX Demurrage Tariff is written in light of the case law and industry practice. It has worked for years to compensate CSX for delay to freight cars by consignees and to create incentives for those consignees to empty cars and return them to service. That tariff, which is subject to the regulatory jurisdiction of the STB, states:

> Unless otherwise advised, in WRITING, that another party is willing to accept responsibility for demurrage, consignor at origin or consignee at destination will be responsible for the payment of demurrage charges.

CSX Demurrage Tariff 8100, Item 8070(G), on bates labeled p. CSX-0041. The CSX tariff (and every other railroad's demurrage tariff) now defines *consignee* as simply:

> the party to whom a shipment is consigned, or the party entitled to receive the shipment.

Id. at CSX-0045. Accordingly, the tariff imposes demurrage liability upon the consignee at destination without the requirement of a direct contractual relationship. Accordingly, the Opinion is an attack upon the reasonableness of the tariff terms.

A determination of the reasonableness of a tariff's terms falls within the primary jurisdiction of the STB. The Court here has improperly invaded the exclusive province and expertise of the STB. Simply stated, this Court lacks the jurisdiction to unilaterally order such a sweeping change in interstate commerce. Congress has mandated that rail carriers' rates and practices, as well as rail car supply, are subject to the primary jurisdiction of the STB. See 49 U.S.C. § 10704. The U.S. Supreme Court has long and repeatedly held that the STB, and its predecessor the Interstate Commerce Commission ("the ICC") has primary jurisdiction over the reasonableness of carriers' practices and rates. See Great N. R. Co. v. Merchants Elevator Co., 259 U.S. 285, 42 S. Ct. 477 (1922). In the words of the U.S. Supreme Court, "the judicial process is suspended pending referral of such issues to the administrative body for its views." United States v. Western Pacific Railroad Co., 352 U.S. 59, 64, 77 S. Ct. 161, 165 (1965).

The review of an interstate rail carrier's tariff terms must be undertaken only by the STB. This matter is appropriately suited to be determined by the Surface Transportation Board, the agency given the responsibility to oversee the interstate rail transportation industry in the United States. See R. Franklin Unger, Trustee of the Indiana Hi-Rail Corporation, debtor – Petition for Declaratory Order - - Assessment and

Collection of Demurrage and Switching Charges, STB Docket No. 42030 (June 14, 2000), available at 2000 STB LEXIS 333 (holding that a party's obligation to pay demurrage charges does not arise from the bill of lading, but rather through STB-controlled rail carrier tariffs). The U.S. Supreme Court recognized that "[t]he efficient use of freight cars is an essential element of an adequate transportation system. To secure it, broad powers are conferred upon the Commission." Turner Lumber Co. v. Chicago, M & St. P. Ry. Co., 271 U.S. 259, 262, 46 S. Ct. 530, 531 (1961). Pursuant to its statutory authority, the ICC (now the STB) regulates the common pool of freight cars used by carriers throughout the rail system of the United States by means of a variety of devices, including demurrage. See Illinois Central Gulf R. Co., 358 I.C.C. 312, 315 (1978). In a published decision which directly conflicts with the Opinion issued by this Court, the U.S. District Court in City of New Orleans v. Southern Scrap Metal Co., Ltd., 491 F. Supp. 46 (E.D. La. 1980) correctly held:

> Impossibility of performance and other defenses grounded in the law of contract are not available as a defense to liability for demurrage. The tariff and its terms govern the performance of the parties, not normal principles of contract law. See In Re Penn Central Transportation Co., 477 F. 2d at 844; Pennsylvania Railroad Co. v. Moore McCormack Lines, Inc., 370 F. 2d 430, 431-32 (2d Cir. 1966).

> Unreasonableness of the tariff is also not a proper defense to liability for demurrage. A court has no power to alter the terms of a duly published and filed tariff in order to make the terms reasonable; a request for relief of that type must be heard before the Interstate Commerce Commission. (Citations omitted).

Id. at 49.

Unless reconsideration is granted, these issues are ripe for referral to the STB, and the Court is urged to withdraw its Opinion and order the referral of the issues so the STB

can perform its functions as mandated by Congress. CSX' tariff clearly imposes liability for demurrage upon the consignees named in the bills of lading. As such, CSX has engaged in the practice of assessing and invoicing named consignees for accrued demurrage charges. This Court's Opinion is inconsistent with the tariff terms and the industry practice in that CSX can no longer invoice a named consignee without a separate contract imposing demurrage liability. Further, as a practical matter, the Opinion (a) requires a change to the demurrage tariffs of every major railroad in the U.S.; (b) will require railroads to enter into tens of thousands of costly contracts to protect their rights to their rail cars; and (c) completely and improperly bypasses the expertise of the STB. Significant and technical issues of interstate commerce addressing rail car demurrage are at issue here. Even the strictest reading of the Opinion finds that the Court has ruled that CSX' tariff is unreasonable and unenforceable. See Opinion, p. 30 ("demurrage liability must arise out of a contractual relationship regarding the railcars for which demurrage liability is sought"). For these reasons, should the Court not simply grant reconsideration, the Court must withdraw its Opinion and refer the case to the STB.

## V.     CONCLUSION

For the reasons set forth herein, CSX opposes Novolog's Motion for Reconsideration and submits a Cross Motion for Reconsideration based on the Court's manifest errors of law in interpreting the carrier's tariff and governing case law on complex and far reaching issues governing the collection of demurrage upon consignees named on the bills of lading. Accordingly, CSX moves this Court for the entry of summary judgment against Carry Transit for $260,304.00, all of the unpaid demurrage charges due and owing in this matter. In the alternative, CSX seeks a referral of these

complex legal issues to the U.S. Surface Transportation Board, which has primary jurisdiction over issues in the rail transportation generally, including the reasonableness of language in the published CSX Demurrage Tariff attached hereto as Exhibit "A". CSX requests that the remaining issues and the scheduled trial in this matter be stayed pending a determination of the legal issues referred to the STB.

Respectfully submitted,
**KEENAN, COHEN & HOWARD P.C.**

By:     /s/Kenneth J. Grunfeld
Paul D. Keenan
Kenneth J. Grunfeld
One Commerce Square
2005 Market Street, Suite 3520
Philadelphia, PA 19103
(215) 609-1110

Date: June 22, 2006    Attorneys for Plaintiff/Counterclaim Defendant
CSX Transportation Company

## CERTIFICATE OF SERVICE

I, Kenneth J. Grunfeld, hereby certify that a copy of the Plaintiff/Counterclaim

Defendant, CSX Transportation Company's Opposition to Defendant's Motion for Partial

Reconsideration and Cross-Motion for Reconsideration, or in the Alternative, Limited

Referral to the U.S. Surface Transportation Board for Determination of Certain Issues,

along with accompanying Brief and Proposed Orders, was filed electronically. Notice of

this filing will be sent to the following parties by operation of the Court's electronic filing

system. Parties may access this filing through the Court's system:

> Fred Tecce, Esquire
> McShea/Tecce
> Mellon Bank Center
> 1735 Market Street, 16th Floor
> Philadelphia, PA 19103
>
> **Attorney for Defendant**

Date: June 22, 2006          /s/ Kenneth J. Grunfeld
                             Kenneth J. Grunfeld, Esquire