IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CSX TRANSPORTATION, INC.,
individually and on behalf of
NORFOLK AND PORTSMOUTH BELT LINE
RAILROAD COMPANY,

              Plaintiff,

 v.                                                        Civil Action No. 2:18-cv-530-MSD-LRL

NORFOLK SOUTHERN RAILWAY
COMPANY, *et al.*,

              Defendants.

### DEFENDANT NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY'S RESPONSE TO NORFOLK SOUTHERN RAILWAY COMPANY'S MOTION TO DISMISS, FOR JUDGMENT ON THE PLEADINGS, AND FOR <u>REFERRAL OF ISSUES TO THE U.S. SURFACE TRANSPORTATION BOARD</u>

      Norfolk and Portsmouth Belt Line Railroad Company ("NPBL") hereby responds in support of the Motion to Dismiss, for Judgment on the Pleadings, and for Referral of Issues to the U.S. Surface Transportation Board (the "Motion") filed by Norfolk Southern Railway Company ("NSR"). *See* D.E. 115. As discussed below, the various elements of the Complaint – Counts I-IV (antitrust claims), Count VIII (statutory business conspiracy), and Count IX (civil conspiracy) – involve, among other things, events related to NPBL after the Interstate Commerce Commission ("ICC") approved the consolidation of the Norfolk and Western Railway Company ("N&W") and Southern Railway Company ("SRY") systems in 1982, a consequence of which was that the newly-merged railroad system (which became NSR) secured a controlling 57.14% stake in NPBL. Governing federal law provides that ICC approval of NSR's control of NPBL exempts NPBL from the antitrust and related conspiracy claims that CSXT has raised here,

1

warranting dismissal of Counts I, II, III, IV, VIII, and IX. In the event that there is uncertainty whether the ICC authorized NSR's assumption of a controlling interest in NPBL, then NPBL agrees with NSR that this Court must refer that matter to the Surface Transportation Board ("STB") for a formal determination. Finally, should this Court decline to seek a finding from the STB on the issue of NSR's ICC-authorized control of NPBL, then NPBL agrees that federal law reserves to the STB alone the authority to prescribe rates and terms for the rail transportation services that NPBL provides to connecting carriers like CSXT.[1]

NSR possesses a majority (57.14%) stake in the shares of NPBL, the majority of NPBLs' Board of Directors are elected by NSR, and for more than 30 years, NPBL's chief officers have been appointed from the ranks of NSR management, all without CSXT having raised any question or issue of NSR control with the ICC or the STB until very recently. All are factors that the STB would recognize as determinative evidence of NSR's control of, and ability to control, NPBL. *Cf. City of Ottumwa v. Surface Transp. Bd.*, 153 F.3d 879, (8th Cir. 1998) ("The existence of control is an issue of fact to be determined by the circumstances of each case . . . The [STB]'s determinations concerning questions of control are entitled to great deference and will not be overturned unless the decision is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law' 5 U.S.C. § 706(2)(a) . . .") (internal citations omitted);

---

[1] NPBL acknowledges that it raised similar, but distinct, issues of control in its Motion to Dismiss, which this Court denied. *See, e.g.*, D.E. 28, p. 15. NPBL's arguments in its Motion to Dismiss, however, were based on the facts alleged in CSXT's Complaint, which did not include ICC approval of the NSR merger. Likewise, NPBL acknowledges that it raised similar, but distinct, issues of STB jurisdiction in its Motion to Dismiss, which this Court denied. *See, e.g.*, D.E. 28, p. 11. NPBL's argument, however, was that the current trackage rights compensation proceeding at the STB is inextricably intertwined with this case; NPBL did not argue that the STB is the appropriate forum to adjudicate whether NPBL's uniform switching rate is unreasonable – an issue first raised by NSR in the instant Motion.

and *see* 49 U.S.C. § 10102(3). Accordingly, NPBL does not dispute that "NSR[] exercise[s] control over NPBL." NSR Motion at 10.

As NSR has shown, at the time the N&W-SRY consolidation was presented to the ICC for approval in 1980, the merger applicants clearly disclosed that the merged entity would acquire a controlling interest in NPBL. In 1982, the ICC approved the consolidation resulting in the formation of NSR, having been informed of the merged company's accumulation of 57.14% of NPBL's stock. The evidence NSR has provided indicates that NSR's control of NPBL was authorized pursuant to the ICC's exclusive jurisdiction and regulatory authority over railroad mergers as set forth at 49 U.S.C. §§ 11321 and 11323 (as currently codified).[2]

In addition to the evidence submitted by NSR, NPBL's records of corporate governance show that, in the years following the ICC's merger approval in 1982, of the five NPBL Stockholder blocks, three were controlled by Norfolk Southern Corporation (Norfolk and Western Railway Company, Southern Railway Company and Carolina and Northwestern Railway Company,) and two were controlled by CSX Corporation (The Chesapeake and Ohio Railway Company and Seaboard System Railroad, Inc.[3]). *See* Exhibits A-G to Certification under Federal Rule of Evidence 902(11), attached as Exhibit 1 (1983-1989 minutes of annual Stockholder meetings, voting ballots for election of directors, and proxies for each meeting). In the years following the formation of NSR , the NSR-controlled companies consistently appointed three Directors, and the CSX-controlled companies appointed two.[4] This arrangement continued from 1983-1989 as shown by the minutes of the Stockholder meetings, voting ballots, and

---

[2] *See Norfolk S. Corp. – Control – Norfolk & W. Ry. Co. & S. Ry. Co.*, 366 I.C.C. 173, 177-78 (1982).
[3] These two CSX subsidiaries were merged to create CSX Transportation, Inc. by 1987.
[4] The sixth Director was the President of NPBL as required by the company Bylaws, Article Fourth. *See* Complaint, Ex. D (D.E. 1-4).

3

proxies for each of the annual meetings of NPBL – a structure of NPBL Board governance in which CSX affirmatively acquiesced. *See id*. The Stockholders unanimously memorialized this arrangement on March 1, 1989, in a Supplemental Agreement to the July 7, 1897 Operating Agreement. *See* Complaint, Exhibits A and C (D.E. 1-1 and 1-3).

It follows from NSR's ICC-authorized assumption of control of NPBL that the two companies are, for that purpose, "exempt from the antitrust laws and from all other law, including State and municipal law." 49 U.S.C. § 11321(a). Thus, NPBL agrees that the Court must dismiss Counts I-IV and VIII-IX because NSR's exercise of control of NPBL exempts both railroads from liability under state and federal law.

An exemption under section 11321(a) stemming from the ICC's approval of the N&W-SRY consolidation also could extend to Court enforcement actions stemming from CSXT's interpretation of the Operating Agreement, in keeping with the cases that NSR has pointed to, such as *Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117 (1991) and *Norfolk & W. Ry. Co. v. Brotherhood of R. Signalmen*, 164 F.3d 847 (4th Cir. 1998). CSXT would have this Court presume that any of the forms of relief it seeks – for example, restoring CSXT's alleged shareholder rights under the Operating Agreement, directing NPBL to establish an independent board structure, or ordering NPBL to accept CSXT's container traffic service proposal – would not intrude upon the STB's regulatory authority or that of its predecessor. In fact, ICC authorization of NSR's control of NPBL could exempt NSR and NPBL from any and all of these forms of requested relief. Additionally, if this Court seeks clarification on the control issue, then *Ry Labor Execs.'Ass'n v. Southern Pac. Transp. Co.*, 7 F.3d 902 (9th Cir. 1993) establishes that such clarification be directed to the Surface Transportation Board on referral from this Court.

Because a section 11321(a) exemption extending to NSR's control of NPBL would moot CSXT's claims, warranting their dismissal, it would appear to be premature to delve into the issue of whether the Court has, and should exercise, authority to compel terminal access over NSR and/or NPBL facilities, adjudicate CSXT's unreasonable rate claim, or prescribe an NPBL switching rate (or rates), including by way of an order directing NPBL to accept CSXT's container traffic service proposal and corresponding adjustment to NPBL's common carrier switching rates. Nevertheless, NSR has succinctly and effectively conveyed in its Motion that the Court – (a) cannot order NPBL to make its terminal facilities available on terms preferred by CSXT, because such a remedy is exclusively reserved to the STB under 49 U.S.C. § 11102: and (b) lacks jurisdiction to compel NPBL to adopt a specific switching services rate as proposed by CSXT.

NPBL also concurs with NSR (as set forth in NSR's Motion) in that, in the event that NSR's control of NPBL were not subject to the exemption of section 11321(a), the Court must permit the STB to adjudicate whether NPBL's uniform rate is unreasonable (as CSXT has alleged) under guiding principles of primary jurisdiction, and in light of the STB's unique expertise on the matter.[5]

---

[5] Moreover, to the extent that CSXT has called for a Court-prescribed rate for the movement of intermodal (container) traffic under federal common law or state statute, NPBL would caution that such relief constitutes prohibited regulation of de-regulated traffic movements. *See Alliance Shippers, Inc. v. Southern Pac. Transp. Co.*, 858 F.2d 567, 568-569 (9th Cir. 1988) (causes of action under federal common law and state statutory law with respect to exempted TOFC/COFC traffic were preempted under the Interstate Commerce Act, 49 U.S.C. § 10101 *et seq*.).

Date:  February 14, 2020				Respectfully submitted,

**NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY**

/s/  *James L. Chapman, IV*
   James L. Chapman, IV, VSB No. 21983
   W. Ryan Snow, VSB No. 47423
   Darius K. Davenport, VSB No. 74064
   David C. Hartnett, VSB No. 80452
   CRENSHAW, WARE & MARTIN, P.L.C.
   150 W. Main Street, Suite 1500
   Norfolk, Virginia 23510
   Telephone: (757) 623-3000
   Facsimile: (757) 623-5735
   Email: jchapman@cwm-law.com
   Email: wrsnow@cwm-law.com
   Email: ddavenport@cwm-law.com
   Email: dhartnett@cwm-law.com

*Counsel for Defendant Norfolk Portsmouth Belt Line Railroad Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2020, I electronically filed a copy of the foregoing with the Clerk of Court using the CM/ECF system, which sent a notification of such filing (NEF) to the registered participants as identified on the NEF to receive electronic service, including:

Robert W. McFarland, Esq.
Benjamin L. Hatch, Esq.
Jeanne E. Noonan, Esq.
McGuireWoods LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, VA 23510-1655
Telephone: (757) 640-3716
Facsimile: (757) 640-3930
Email: rmcfarland@mcguirewoods.com
Email: bhatch@mcguirewoods.com
Email: rgantt@mcguirewoods.com

*Attorneys for CSX Transportation, Inc.*

Hugh M. Fain, III, Esq.
M. F. Connell Mullins, Jr., Esq.
John M. Erbach, Esq.
SPOTTS FAIN PC
411 E. Franklin St.
Richmond, VA 23219
Telephone: (804) 697-2000
Email: hfain@spottsfain.com
Email: cmullins@spottsfain.com
Email: jerbach@spottsfain.com

*Attorneys for Jerry Hall, Thomas Hurlbut, and Philip Merilli*

Alan D. Wingfield, Esq.
Michael E. Lacy, Esq.
John C. Lynch, Esq.
Kathleen M. Knudsen, Esq.
TROUTMAN SANDERS LLP
Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7759
Facsimile: (757) 687-7510
Email: john.lynch@troutman.com
Email: Kathleen.knudsen@troutman.com

*Attorneys for Defendant Norfolk Southern Railway Company*

W. Edgar Spivey, Esq.
Clark J. Belote, Esq.
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3196
Facsimile: (888) 360-9092
Email: wespivey@kaufcan.com
Email: cjbelote@kaufcan.com

*Attorneys for Cannon Moss*

Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
TROUTMAN SANDERS, LLP
1001 Haxall Point
Richmond, Virginia 23219
Tel. (804) 697-1200
Fax (804) 698-6061
alan.wingfield@troutmansanders.com
michael.lacy@troutmansanders.com
*Counsel for Defendant Norfolk Southern Railway Company*

                                                           /s/ *James L. Chapman, IV*