UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| CSX TRANSPORTATION, INC., individually and on behalf of NORFOLK & PORTSMOUTH BELT LINE RAILROAD COMPANY,<br><br>*Plaintiff*,<br><br>v.<br><br>NORFOLK SOUTHERN RAILWAY COMPANY, NORFOLK & PORTSMOUTH BELT LINE RAILROAD COMPANY, JERRY HALL, THOMAS HURLBUT, PHILIP MERILLI, and CANNON MOSS,<br><br>*Defendants*. | No. 2:18-cv-530 |

### DEFENDANT NORFOLK SOUTHERN RAILWAY COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS, FOR JUDGMENT ON THE PLEADINGS, AND FOR REFERRAL OF <u>ISSUES TO THE U.S. SURFACE TRANSPORTATION BOARD</u>

Defendant Norfolk Southern Railway Company ("NSR"), by counsel, files this Reply in Support of its Motion to Dismiss and for Judgment on the Pleadings and its Motion to refer one or more issues to the U.S. Surface Transportation Board (the "STB") and to stay this case pending the STB's determination of those issues (ECF Nos. 115, 116).

### I.     INTRODUCTION

CSXT responds to NSR's Motion by offering excuses as to why the Court should avoid analyzing its merits. CSXT first cites to the Court's denial of a different argument advanced by NPBL based on the trackage fee proceeding pending before the STB. In contrast, NSR's Motion is based on CSXT's unabashed challenge to the reasonableness of NPBL's Switching Rate, including CSXT's claim that NSR's control of NPBL caused the Switching Rate to be set at an

impermissibly high level and CSXT's improper attempt to obtain relief from the Switching Rate that only the STB can provide. Neither NPBL's earlier argument, nor the Court's ruling on it, nor the pleadings and orders in the trackage fee proceeding before the STB analyze any of NSR's arguments or the federal statutes on which they are based. NSR's Motion raises new arguments that go to whether this Court's limited jurisdiction allows it to address these matters or whether, under federal law and long-standing United States Supreme Court precedent, these matters are within the exclusive purview of the STB.

CSXT further claims that NSR's Motion should be rejected because it is both too late and too early, arguing that the Motion "is in substance a Rule 12(b)(6) Motion." Opp. Br. 10. NSR's Motion, however, is not premised on CSXT's failure to allege a claim, but rather whether this Court has the power to hear those claims or grant the remedies sought. Challenges to this Court's jurisdiction over this case can be raised at any time. *See Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 299 (4th Cir. 2001) ("[O]f course, a challenge to subject matter jurisdiction is appropriately raised at any point in the proceedings."). The Court must address these arguments now and affirmatively decide whether it has jurisdiction over the claims presented. *See Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) ("Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt.").

Once CSXT's excuses are appropriately brushed aside, CSXT's Opposition does not dispute many of NSR's arguments or the clear, binding authority on which they are based. CSXT does not rebut, and thus concedes, that this Court *cannot* order NPBL to accept CSXT's Service Proposal or grant CSXT access to NIT under different terms because federal law renders those remedies within the exclusive jurisdiction of the STB. And CSXT's Opposition effectively admits that this Court must refer CSXT's challenge to the unreasonableness of the Switching Rate to the

STB for determination.  CSXT acknowledges that it "allege[s] that the switching rate is unreasonable," and that "the unreasonableness of [the Switching Rate] is evidence of other wrongdoing," *i.e.*, the alleged anticompetitive, conspiratorial, and tortious conduct of NSR. "Whenever a rate, rule or practice is attacked as unreasonable or as unjustly discriminatory, there ***must*** be a preliminary resort to the [STB]." *Great N. Ry. Co. v. Merchants Elevator Co.*, 259 U.S. 285, 291 (1922) (emphasis added).  Therefore, regardless of the disposition of NSR's other arguments, the Court must refer CSXT's challenge to the reasonableness of the Switching Rate to the STB and stay this matter pending that determination.

## II.     ARGUMENT

### A.    NSR has raised new jurisdictional arguments that must be dealt with now.

CSXT avoids the merits of NSR's Motion by arguing that NSR cannot challenge the Court's jurisdiction because the Court previously denied NPBL's jurisdictional challenge.  As NPBL explained in its response to NSR's Motion, NSR has raised jurisdictional arguments that are wholly different than the one previously raised by NPBL.  *See* NPBL Resp. Br. 2 n.1, ECF No. 132.  NSR and NPBL cited to the statute that creates the STB's jurisdiction generally, 49 U.S.C. § 10501(b), but the parties' arguments depart from there.  NPBL's jurisdictional argument focused on whether the Court's adjudication of this case would conflict with the STB's handling of the pending trackage rights proceeding between NSR and NPBL.  *Id.*; NPBL Mot. Dismiss, ECF No. 27.  NSR's Motion, however, relies on arguments, federal statutes, and well-established case law not found in the discussion of NPBL's jurisdictional argument, including (i) the argument that under 49 U.S.C. 11321(a), NSR is exempt from liability based on the STB's authorization of its control of NPBL, (ii) 49 U.S.C. § 11102(c), which grants the STB the exclusive authority to require parties enter into switching agreements concerning terminal facilities like NIT, (iii) 49 U.S.C. §§ 10704(a)(1) & 10707 and *Burlington N. v. United States*, 459 U.S. 131 (1982), which precludes a

3

federal court from entering an order that sets a rate, and (iv) *Merchants Elevator* and *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1965), which holds that "the reasonableness of the tariff as applied, [is] within the exclusive primary jurisdiction of the [STB]."

The only relevance of the trackage rights proceeding to the instant Motion is that in deciding NPBL's argument, the Court recognized the STB's exclusive jurisdiction to set the trackage fee that NPBL will pay NSR. *See* Mot. Dismiss Op. 24, ECF No. 66 ("[T]he STB may still approve or disapprove the pending rate increase that Norfolk Southern would charge Belt Line in the future."). NSR relies on the STB's exclusive jurisdiction to set rates in arguing that this Court cannot force NPBL to accept CSXT's Service Proposal because it will effectively set the Switching Rate. *See Burlington N*, 459 U.S. at 140 ("[A] federal court has no jurisdiction to enter an order that operates to fix rates.").

NSR's new jurisdictional arguments fairly call into question this Court's jurisdiction and thus must be dealt with now. *Iqbal*, 556 U.S. at 671. This is true regardless of whether NSR joined NPBL's prior motion, whether CSXT sufficiently *alleged* its claims, or whether, as CSXT contends, NSR admitted that this Court has jurisdiction over the matter in its Answer. *See Barber v. Heslep*, Civil Action No. 3:14-27349, 2017 U.S. Dist. LEXIS 123951, *5-6 (Aug. 7, 2017 S.D. W.Va.) ("A party can challenge subject matter jurisdiction at any point during the litigation, regardless of whether that party previously submitted answers or motions to the court under an assumption of proper jurisdiction.").[1] Further, redressability is part of the constitutional

---

[1] CSXT's "law of the case" argument fails for another reason. "[T]he United States Court of Appeals for the Fourth Circuit explains that the law of the case doctrine 'does not and cannot limit the power of a court to reconsider an earlier ruling.'" *Hicks v. Brennan*, No. 2:16CV89, 2017 WL 4476835, at *9 (E.D. Va. Apr. 27, 2017) (Davis, J.), aff'd, 721 F. App'x 288 (4th Cir. 2018) (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003)). This is because "[t]he ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *Id.* (reconsidering denial of a motion to dismiss because "it is now clear"

4

requirement for standing, a requirement for subject matter jurisdiction, *Netro v. Greater Baltimore Med. Ctr., Inc.*, 891 F.3d 522, 525 (4th Cir. 2018), which CSXT must show for *each form of relief sought*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("Laidlaw is right to insist that a plaintiff must demonstrate standing separately for each form of relief sought."); *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (holding that a plaintiff lacked standing for injunctive relief though he could still bring a claim for damages).

B.      **NSR's Motion is neither too late nor too early—it is timely.**

CSXT also avoids the merits of NSR's arguments by asserting that NSR's Motion is both too late and too early. As to the untimeliness, CSXT argues, without any explanation, that the Motion "is in substance a Rule 12(b)(6) Motion." Opp. Br. 10. This is simply incorrect; NSR's arguments directly challenge this Court's jurisdiction. For example, NSR cites to *Kansas City Southern Railway Company v. BNSF Railway Company*, 970 F. Supp. 2d 542 (W.D. La. 2013), in which the district court, citing 49 U.S.C. 11321(a), dismissed the complaint for lack of subject matter jurisdiction because it required the court to determine the scope of the STB's orders approving the related merger of railroads. As discussed below, CSXT's opposition on this point at best creates a dispute as to the scope of the STB's Order approving the Merger, which, under *BNSF*, requires dismissal based on a lack of subject matter jurisdiction.

Similarly, NSR's arguments relating to the Court's inability to grant CSXT access to a terminal like NIT or enter an order that operates to fix a rate directly implicates this Court's jurisdiction over this case. Federal courts have limited jurisdiction. *Kokkonen v. Guardian Life*

---

that plaintiff "cannot state a claim"). The Fourth Circuit has noted that "[t]hough that obligation may be tempered at times by concerns of finality and judicial economy, ***nowhere is it greater and more unflagging than in the context of subject matter jurisdiction issues***, which call into question the very legitimacy of a court's adjudicatory authority." *Am. Canoe Ass'n*, 326 F.3d at 515 (emphasis added).

*Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, . . . which is not to be expanded by judicial decree, . . . It is to be presumed that a cause lies outside this limited jurisdiction, . . . , and the burden of establishing the contrary rests upon the party asserting jurisdiction."). Congress vested exclusive jurisdiction over these issues in the STB. Therefore, this Court lacks jurisdiction to grant these remedies demanded by CSXT.

NSR's jurisdictional issues cannot be waived and are timely presented now. *See Iqbal*, 556 U.S. at 671 ("Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt."). Moreover, even if NSR's arguments are considered under Rule 12(c), they are timely.[2] They are being presented sufficiently in advance of trial so as to not to delay trial in accordance with Rule 12(c). Further, "[a] complaint is always vulnerable to a challenge for legal sufficiency." *Dart Drug Corp. v. Corning Glass Works*, 480 F. Supp. 1091, 1095 (D. Md. 1979). Rule 12(h)(2) expressly preserves during the pleading, motion, discovery, and trial stages of litigation defendant's ability to challenge plaintiff's failure to state a claim. *Wright & Miller*, 5C Fed. Prac. & Proc. Civ. § 1392 (3d ed.). Rule 12(h)(2) explicitly allows this defense to be brought after the responsive pleadings are made by a Rule 12(c) motion. It can even be made *at trial*. *Id.*

---

[2] CSXT claims that NSR's Rule 12(c) motion for failure to state a claim "should be granted only if 'it appears certain that the plaintiff *cannot prove any set of facts* in support of his claim entitling him to relief.'" Opp. Br. 7 (citation omitted) (emphasis added). This pleading standard is derived from Justice Black's opinion in *Conley v. Gibson*, 355 U.S. 41 (1957). In 2007, the Supreme Court of the United States explicitly rejected the *Conley* pleading standard because it was inconsistent with Rule 8's requirement that a plaintiff state the "grounds" for his Complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007); Fed. R. Civ. P. 8. Here, as explained in NSR's Motion, CSXT *cannot* meet the governing plausibility standard.

CSXT's excuse that NSR's arguments are not ripe fairs no better. NSR should not have to wait to advance these arguments on summary judgment, as CSXT implicitly proposes. CSXT does not claim prejudice if these issues are decided now; it merely suggests that the Court wait to decide these threshold issues until there is a "full and appropriate record." Opp. Br. 4. CSXT, however, does not explain how a "full and appropriate record" is necessary to rule on the arguments presented or how it would assist the Court in deciding them. Deciding these issues now will help narrow this case to the benefit of the parties and the Court.

In sum, the timing of NSR's Motion is proper and certainly is not a basis for denying it without addressing the merits of NSR's arguments.

**C.     The Court must dismiss CSXT's claims under Section 11321 or refer the issue to the STB for clarification.**

      **1.** *The ICC Approved NSR's Control of NPBL By Approving the Merger.*

CSXT argues that because NPBL was not included in appendices to the control transaction published by the Interstate Commerce Commission ("ICC", now the STB) listing the subsidiaries and consolidated companies of Southern Railway Company ("SR") and Norfolk & Western Railway Company ("N&W"), the STB did not authorize NSR's control over NPBL as part of the Merger, and thus the antitrust exemption in 49 U.S.C. 11321(a) does not apply. *See* Opp. Br. 15 (noting that NPBL was not listed in Appendix A).

CSXT's narrow reading of the Merger documents ignores the overall effect of the STB's approval of the Merger. The Merger Application explained that "[a]s a result of the proposed transaction, [Norfolk Southern Corporation] will also acquire indirect control through stock ownership of all subsidiaries of NW and Southern." *See* Application Volume 2, at 2, NWS Enters., Inc.-Control-Norfolk & W. Ry. Co. & S. Ry. Co., Finance Docket No. 29430 (Sub-No. 1) (1980), Opening Br., **Ex. E**. The Merger Application further listed the applicants' respective ownership

7

of NPBL and the resulting 57.14% majority ownership that NSR would hold, indicating that control over NPBL was intended during the merger. *Id.* at 83.

Moreover, CSXT overstates the role of the appendices themselves. CSXT cites to appendices to both the Federal Register notice accepting the Merger Application and the final agency decision as evidence that NPBL was not among the "companies that NS Corporation was authorized to control as a result of the merger." Opp. Br. 15. Yet those appendices do not reference authorization of control after the merger. Rather, they disclose the "subsidiaries and consolidated companies" of SR and N&W prior to the merger and note that the respective entities control such companies "100 percent or as indicated." *Norfolk S. Corp.—Control—Norfolk & W. Ry. Co. & S. Ry. Co.*, 366 I.C.C. 173, 256 (1982). NPBL's inclusion in the appendices was not required, and in fact would have been misleading, because neither SR nor N&W controlled NPBL prior to the merger. Indeed, as disclosed in the Merger Application, it was only the combination of their respective minority shares that resulted in a 57.14% majority interest in NPBL.

The ICC explicitly considered the competitive effects of the Merger: "Notwithstanding our consideration of competition in analyzing a proposed consolidation, we do not sit as an antitrust court in determining compliance with the *Clayton*, *Sherman* or related antitrust acts. . . . As the Supreme Court noted in *McLean*, ***our statutory obligation under the public interest standard is broader***." *Norfolk S. Corp.-Control-Norfolk & W. Ry. Co. & S. Ry. Co.*, 366 I.C.C. 173, 191 (I.C.C. 1982). (emphasis added). "***This is because the ICC's "approval of the consolidation carries with it immunity from actions under the antitrust laws arising from the consummation of the proposed transactions***. . . ." *Id.* at 228 (emphasis added). Having fully considered the competitive landscape, the ICC approved the railroad merger that resulted in NSR's majority ownership in the NPBL. *Id.* In fact, the ICC specifically pointed out that the merger would "have

8

a *pro*competitive effect" due to NSR's competition with CSXT, which previously did not have any single-system competitor across the eastern United States. *Id.* at 229 (emphasis added).

Finally, CSXT attempts to argue that even if the ICC authorized NSR's majority ownership of NPBL, it did not equate to authorization of "control." Opp. Br. 15. NSR does not contest CSXT's assertions that "whether a company has 'control' is a fact-based inquiry." *Id.* Tellingly, however, CSXT does not, and cannot, cite to a single case in which the STB has held that a *majority owner* did not have control of a subsidiary company. To state it plainly, NSR is unaware of any instance in which the STB has determined that a majority owner lacks control over a subsidiary despite its majority stock ownership. In fact, the STB has held that a *minority owner* still may exercise control over another company notwithstanding its minority stock ownership. CSXT asks this Court to accept a novel, unsupported theory that is belied by NSR's majority ownership of NPBL.

It is clear that, as part of the Merger, the STB approved NSR acquiring control of NPBL. To the extent that the Court considers the ICC's Merger approval and believes there is any question regarding the ICC's intent to approve NSR's control of the NPBL, the Court should refer consideration of the ICC's intent to the STB in accordance with well-established case law. *See Ry. Labor Execs. Ass'n v. S. Pac. Transp. Co.*, 7 F.3d 902, 906 (9th Cir. 1993) (holding that because STB approved a transaction, it "should have exclusive authority to clarify the scope of its own approval and the corresponding breadth of the section 11341(a) exemption"); *AT&T Communications, Inc. v. Conrail*, 285 F. Supp. 2d 649, 662 (E.D. Pa. 2003) ("[T]he issue of

9

whether the § 11321(a) exemption applies to an STB-authorized transaction is within the agency's jurisdiction.).[3]

### 2. *Because The ICC Approved NSR's Control Over NPBL, NSR Is Exempt From CSXT's Antitrust and Conspiracy Claims.*

Next, CSXT argues that even if the ICC approved the merger, the exemption under 49 U.S.C. 11321(a) does not apply. *See* Opp. Br. 17. CSXT looks to the "necessary" language in the statute to argue that CSXT's claims do not present an impediment to the Merger, and thus the exemption does not apply. *Id.* CSXT ignores the language of the statute and cites to unrelated caselaw in an attempt to find the statute inapplicable.

The statute states that "[a] rail carrier, corporation, or person participating in that approved or exempted transaction is ***exempt from the antitrust laws and from all other law***, including State and municipal law, as necessary to let that rail carrier . . . carry out the transaction, ***hold, maintain, and operate property***, and ***exercise control*** or franchises ***acquired through the transaction***." 49 U.S.C. § 11321(a) (emphasis added). Based on the statutory language, once control is approved, a railroad, like NSR, can exercise that control in the future. The cases CSXT cites address issues separate from the anticompetitive issues arising from exercising control over an entity acquired in a merger.[4] For example, CSXT cites to *Harris v. Union Pacific RR*, 141 F.3d 740 (7th Cir. 1998),

---

[3] CSXT claims that it "is not asking the Court to characterize or rule upon the scope of any STB decisions," and therefore the issue of control should not be referred to the STB. Opp. Br. 21. Yet, CSXT makes exhaustive arguments based on the documents submitted to the ICC and the ICC's *decision* approving the merger without listing NPBL in Appendix A. Clearly, CSXT's own arguments belie its statement.

[4] CSXT's other citations similarly fail. The case of *Philadelphia Nat. Bank*, 374 F.3d at 353-54, does not appear to exist at that citation and, regardless, it deals with a *bank*, not a railroad, merger. Similarly, *Reynolds Metals Co. v. Commonwealth Gas Services, Inc.*, 682 F. Supp. 291, 295 (E.D. Va. 1988), deals with the Federal Energy Regulatory Commission's ability to address antitrust claims, which is irrelevant to the statutory grant of authority that Congress gave to the STB to exempt *railroads* from antitrust laws following approved mergers.

which addressed claims brought under the Pregnancy Discrimination Act. The Seventh Circuit rightly held that complying with civil rights laws would not frustrate the terms of the merger. This is not analogous here. Here, allowing NSR to be held liable for exercising its majority interest to control NPBL would frustrate the STB's approval of the Merger and, in turn, NSR's exercise of control over NPBL. NSR is exempt from liability under Section 11321(a).

### D. CSXT did not oppose, and thus conceded, that this Court cannot grant the relief it seeks.

NSR's Motion argued that the very thing that CSXT hopes to obtain in this litigation—prescription of a switching agreement and rate to access NIT—is something that the STB has the exclusive jurisdiction to provide under 48 U.S.C. § 11102(c). Indeed, the STB will order a carrier to enter into a switching agreement when "switching is necessary to remedy or prevent an act that is either contrary to the competition policies of 49 U.S.C. § 10101(a) or otherwise anticompetitive." *Midtec Paper Corp., et al. v. Chi. & N.W. Transp. Co.*, 3 I.C.C. 2d 171 (I.C.C. 1986), *aff'd Midtec Paper Corp.*, 857 F.2d 1487. The STB also has the exclusive authority to impose trackage rights over the tracks of NPBL and NSR to provide CSXT with the ability to operate its trains directly to/from NIT without using NPBL's switching services if the use is "practicable and in the public interest without substantially impairing the ability of the rail carrier owning the facilities or entitled to use the facilities to handle its own business." *Id.*; 49 U.S.C. § 11102(a). CSXT's Opposition does not address this argument at all. Therefore, this Court should enter an Order dismissing with prejudice Counts I-IV and XIII-IX of the Complaint.

Similarly, CSXT does not contest that its Service Proposal seeks a special, long-term contract with NPBL whereby CSXT would provide certain benefits to NPBL in exchange for NPBL charging CSXT a lower line haul switching fee for access to NIT. Nor does CSXT contest that requiring NPBL to accept its Service Proposal—which CSXT clearly demands in its

11

Complaint—would necessarily set a lower Switching Rate. More importantly, CSXT does not contest that this Court cannot grant this relief because *"a federal court has no jurisdiction to enter an order that operates to fix rates."* Burlington N., 459 U.S. at 140 (emphasis added). Accordingly, CSXT has conceded that its demand that NPBL be required to accept its Service Proposal must be dismissed with prejudice.

### E. The Court must refer CSXT's claim that the Switching Rate is unreasonable to the STB under the doctrine of primary jurisdiction.

CSXT admits that "if the question of reasonableness of a tariff or rate is squarely before the court . . . referral to the STB would be appropriate and helpful to the issues before the court." Opp. Br. 24. It further admits that it is "alleg[ing] that the switching rate is unreasonable," and that "the unreasonableness of [the Switching Rate] is evidence of other wrongdoing," *i.e.*, the alleged anticompetitive, conspiratorial, and tortious conduct of NSR. Based on CSXT's own admissions, the Court should grant NSR's Motion and refer CSXT's challenge to the reasonableness of the Switching Rate to the STB for determination.

Notwithstanding its own admissions, CSXT argues that referral is not appropriate because it "assert[s] a finer point: that the Defendants have caused NPBL to establish and maintain unreasonably high switch rates in order to block competitors' access to the NIT." Opp. Br. 17. But this so-called "finer point" presupposes that the Switching Rate is, in fact, unreasonably high. Said another way, CSXT's claims "begin[] and end[] with the assumption that [the Switching Rate is] unreasonable, which is a determination that belongs exclusively to the [STB] and has not yet been made." *Archer v. Bd. of State Lands & Forestry*, 907 P.2d 1142, 1147 (Utah 1995). If the Switching Rate is not unreasonably high, then it is not "evidence of other wrongdoing" alleged by CSXT. As explained in *Midtec Paper Corporation*, "a rate cannot be considered 'unreasonable'

12

short of market dominance, and rates below the market dominant threshold cannot be regarded as anticompetitive or contrary to the competition policies of the Staggers Act." 857 F.2d at 1508.

At bottom, CSXT's theory of its case and its causes of action are predicated on its claim that the Switching Rate is unreasonable. The reasonableness of the Switching Rate simply could not be more squarely at issue in this case. This threshold issue must be referred to the STB because "primary jurisdiction to determine the reasonableness of rates lies with the [STB]." *Burlington N.*, 459 U.S. at 141; *see also Merchants Elevator*, 259 U.S. at 291 ("Whenever a rate, rule or practice is attacked as unreasonable or as unjustly discriminatory, there must be a preliminary resort to the [STB]."). CSXT does not dispute the fact that the STB, and not this Court, has the technical expertise to determine whether the Switching Rate is unreasonable; that the referral will promote uniformity; or that the referral will materially aid the resolution of this case, in part because in determining whether the Switching Rate is unreasonable, the STB must first determine whether there is market dominance. Therefore, this Court should follow the United States Supreme Court's mandate and refer to the STB the issue of whether the Switching Rate is unreasonable, and stay this matter pending determination by the STB.

### III.     CONCLUSION

For the above reasons, NSR requests that this Court grant this Motion and enter an Order:

1. Dismissing with prejudice Counts I, II, III, IV, VIII, and IX of the Complaint because NSR is exempted from liability under 49 U.S.C. § 11321(a) and because only the STB can grant CSXT access to NIT under 49 U.S.C. § 11102(a); to the extent the Counts are not dismissed, refer to the STB for determination the following dispositive issue: Whether the STB authorized NSR's control of NPBL in conjunction with the STB's approval of the Merger;

2. Dismissing with prejudice CSXT's request for relief under all Counts that the Court enter an order directing NPBL to approve CSXT's Service Proposal;

3. Referring to the STB for determination the following issue, which is essential to all Counts: Whether the $210 line haul switching rate contained in NPBL's Switching Tariff 8100-J is unreasonable; and

4. Staying this case in its entirety pending the STB's determination of the issues referred to it by this Court.

Date: February 20, 2020

Respectfully submitted,

**NORFOLK SOUTHERN RAILWAY COMPANY**

/s/Michael E. Lacy
Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
Massie P. Cooper (VSB No. 82510)
TROUTMAN SANDERS, LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-6061
Email: alan.wingfield@troutman.com
Email: michael.lacy@troutman.com
Email: massie.cooper@troutman.com

John C. Lynch (VSB No. 39267)
Kathleen M. Knudsen (VSB No. 90845)
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7759
Facsimile: (757) 687-7510
Email: john.lynch@troutman.com
Email: kathleen.knudsen@troutman.com

*Counsel for Norfolk Southern Railway Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2020, I electronically filed a copy of the foregoing with the Clerk of Court using the CM/ECF system, which sent a notification of such filing (NEF) to the registered participants as identified on the NEF to receive electronic service, including:

Robert W. McFarland, Esq.
Benjamin L. Hatch, Esq.
E. Rebecca Gantt, Esq.
McGuireWoods LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Telephone: (757) 640-3716
Facsimile: (757) 640-3930
rmcfarland@mcguirewoods.com
bhatch@mcguirewoods.com
rgantt@mcguirewoods.com

*Attorneys for CSX Transportation, Inc.*

James L. Chapman, IV, Esq.
W. Ryan Snow, Esq.
Darius K. Davenport, Esq.
David C. Hartnett, Esq.
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com

*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

Hugh M. Fain, III, Esq.
M. F. Connell Mullins, Jr., Esq.
John M. Erbach, Esq.
SPOTTS FAIN PC
411 E. Franklin St.
Richmond, VA 23219
Telephone: (804) 697-2000
hfain@spottsfain.com
cmullins@spottsfain.com
jerbach@spottsfain.com

*Attorneys for Jerry Hall, Thomas Hurlbut, and Philip Merilli*

W. Edgar Spivey, Esq.
Clark J. Belote, Esq.
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3196
Facsimile: (888) 360-9092
wespivey@kaufcan.com
cjbelote@kaufcan.com

*Attorney for Cannon Moss*

/s/Michael E. Lacy
Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
Massie P. Cooper (VSB No. 82510)
TROUTMAN SANDERS, LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-6061
Email: alan.wingfield@troutman.com
Email: michael.lacy@troutman.com
Email: massie.cooper@troutman.com

41459207

16