UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| CSX Transportation, Inc.<br><br>*Plaintiff*<br><br>v.<br><br><br>Norfolk Southern Railway Company, *et al.*<br><br>*Defendants* | C.A. No. 2:18-cv-00530-MSD-LDL |

**VIRGINIA INTERNATIONAL TERMINALS, LLC'S
<u>MEMORANDUM IN SUPPORT OF ITS MOTION TO QUASH</u>**

Pursuant to Federal Rules of Civil Procedure 26 and 45, Virginia International Terminals, LLC ("VIT"), a non-party to the above-captioned litigation, moves to quash or otherwise modify the subpoena *duces tecum* issued to it is in this matter by Norfolk and Portsmouth Belt Line Railroad Company ("Defendant" or "NPBL"). Specifically, the subpoena should be quashed for the following reasons: (1) the subpoena did not provide a reasonable time for compliance; (2) the subpoena is overly broad and unduly burdensome in its timeframe and requests for electronically stored information from a non-party which could have been obtained from a party; (3) compliance would require the disclosure of privileged, confidential, and proprietary commercial information; and (4) the subpoena calls for documents of a custodian that is not a VIT custodian and/or for VIT to search its records and electronically stored information for reference to correspondences between non-VIT parties. In support of its Motion, VIT states:

1

**BACKGROUND**

1. On March 2, 2020, NPBL served VIT with its subpoena *duces tecum* (the "Subpoena"). **Exhibit A**.

2. The Subpoena commands VIT to produce a documents and electronically stored information from 2010 to present. *See* **Exhibit A**.

3. Production under the subpoena is commanded on March 9, 2020, at 10:00 am EST. *See* **Exhibit A**.

4. VIT issued its objections in this matter on March 9, 2020. **Exhibit B**.

5. VIT met and conferred with counsel for NPBL on March 13, 2020.

**AUTHORITY**

Federal Rule of Civil Procedure 45 provides that a court must quash a subpoena that subjects a person to undue burden and when the subpoena requires disclosing a trade secret or other confidential research, development, or commercial information. Fed. R. Civ. Proc. 45(d)(3)(A)(iv), 45(d)(3)(B)(i).

In resolving the need to quash a subpoena or provide a protective order for a subpoena, courts must balance the burden imposed on the witness against the need for the discovery. *See* Fed. R. Civ. Proc. 26. The proportionality requirement of Rule 26 "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Va. Dep't of Corr. v. Jordan,* 921 F.3d 180, 189 (4th Cir. 2019). "When discovery is sought from nonparties, however, its scope must be limited even more" because these are "'strangers' to the litigation." *Id.* Additionally, "[a] more demanding variant of the proportionality analysis . . . applies when determining whether, under Rule 45, a subpoena issued against a nonparty 'subjects a person to undue burden' and must be quashed or modified." *Id.* (citing Fed. R. Civ. P. 45(d)(3)(A)(iv)).

The court must ultimately decide "whether the benefits of discovery to the requesting party outweigh the burdens on the recipient." *Id.*

## ARGUMENT

The Subpoena should be quashed or otherwise modified for four reasons. First, given the less than fourteen days provided and requests for electronic documents and materials, VIT was not provided with sufficient time for compliance with the Subpoena. Second, the Subpoena is overly broad and unduly burdensome in its timeframe and requests for electronically stored information from a non-party which could have been obtained from a party, which places an undue burden and expense on VIT. Third, NPBL's subpoena seeks documents that include, in part, confidential and proprietary information belonging to VIT and its customers, vendors, and suppliers that would not sufficiently be protected by the protective order in this matter. Finally, the Subpoena calls for documents of a custodian that is not a VIT custodian and/or for VIT to search its records and electronically stored information for reference to correspondences between non-VIT parties.

### I.   The Subpoena did not provide sufficient time for compliance.

Served on March 2, 2020, and with a production deadline of March 9, 2020, the Subpoena did not allow for fourteen days for compliance. Notwithstanding the time to respond, VIT served its objections on the supposed due date for the Subpoena. **Exhibit B**. Within fourteen days of service, VIT also met and conferred with NPBL's counsel in an attempt to narrow the scope of the Subpoena and VIT produced responsive materials within its possession consistent with those conversations with NPBL's counsel. Because the Subpoena did not provide sufficient time for compliance, VIT asks that this Court deem its subsequent production of documents

timely given the diligence of VIT and its ongoing efforts to resolve this matter with opposing counsel.

**II.     The Subpoena subjects VIT, a non-party, to an undue burden by requiring it to search and collect documents that could have been requested from a party for an overly broad period of time at its substantial effort and expense.**

The Subpoena calls for documents and information for over a ten-year time period with topics and search terms that are broad and generic such that collecting, searching, and reviewing such materials would be a costly and time-consuming task. *See* Ex. A. This request is even more burdensome because all the materials sought in the Subpoena appear to be materials that NPBL could have obtained through discovery requests to CSX, an actual party to this litigation. Namely, the requests call for communications and agreements with CSX related to the lift and drayage relationship between CSX and VIT. Instead of seeking this information from a party to the case, NPBL imposes an undue burden on non-party VIT to search its records and electronically stored information for such materials. The collection and review of such documents would require hiring an outside vendor at substantial cost to VIT. These costs to a non-party are particularly unnecessary in light of the fact that NPBL could have obtained these materials from CSX through the course of discovery.

"If documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a nonparty witness." 8A Charles Alan Wright, *et al.*, Federal Practice and Procedure § 2204 at 365 (2nd ed. 1994); *Layman v. Junior Players Golf Acad., Inc.*, 314 F.R.D. 379 (D.S.C. 2016). In *Layman*, the court found that because the plaintiff "could have obtained" the documents from the defendant pursuant to the procedures outlined in Rule 34 that the subpoena of the non-party was an "attempt to circumvent [Rule] 34." *Layman*, 314 F.R.D. at 386. The same principle should apply here. NPBL could have and should have issued the same requests to CSX during the course of

discovery. "The subpoena process cannot be used to circumvent party-discovery restrictions in the discovery rules." *Knott v. Nationstar Mortg., LLC*, 2017 U.S. Dist. LEXIS 73580, at *7 (W.D.N.C. May 15, 2017).

As previously stated, VIT has met and conferred with opposing counsel to narrow NPBL's request. In accordance with these communications with counsel, VIT produced drayage agreements between CSX and VIT that were in its possession during the relevant period under a "Confidential-Attorneys' Eyes Only" designation pursuant to the Protective Order.[1] For the reasons stated in the next section, VIT redacted certain rate information contained in those agreements to protect VIT's confidential and proprietary information.

As VIT has conferred with counsel and produced documents within its possession that were accessible without undue burden, VIT respectfully asks that NPBL's Request Nos. 1-8 be quashed to the extent they seek documents from a non-party that could have been obtained from a party including electronically stored information.

**III. VIT should not be required to produce confidential and proprietary information that is not sufficiently protected from disclosure to industry insiders and competitors.**

Quashing the Subpoena as to Request Nos. 1 through 8 is appropriate to the extent these requests require the disclosure of privileged and confidential information. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii) (directing courts to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies"); Fed. R. Civ. P. 45(d)(3)(B)(i) (permitting courts to quash or modify a

---

[1] Because CSX is a party to this litigation and has agreed—unlike VIT and its other customers/vendors/suppliers—to the underlying Protective Order in place, VIT is producing these limited materials subject to its redactions of confidential and proprietary information. Notwithstanding this limited production, VIT maintains all its objections that have been raised related to this Subpoena and the subpoena served by CSX.

5

subpoena if it requires the disclosure of "trade secret or other confidential research, development, or commercial information").

NPBL's requests would require VIT to disclose, *inter alia*, the rates and terms and conditions of agreements between VIT and CSX whether or not such rates are at issue in this litigation. *See* Ex. A at Request Nos. 1-8. Rates and terms and conditions of its customer contracts are some of VIT's most confidential and proprietary information as they are essential to its competitive advantage in the marketplace. The disclosure of such information would harm VIT's competitive position. Specifically, lift rate information—which was redacted in VIT's production to NPBL—are heavily negotiated and would put VIT at a disadvantage in the competitive marketplace if its lift rates for one customer was disclosed to another customer or otherwise disclosed more broadly. Similarly, drayage rates of VIT's suppliers and vendors are sensitive because the rate VIT pays and charges its customers may be lower than what the supplier and vendor charge another entity. Because competitors and third parties would use this information to their business advantage at the detriment of VIT, there is a legitimate interest in keeping this information confidential.

The protective order does not sufficiently protect VIT's confidential and proprietary information. For example, the protective order would still allow expert witnesses access to any disclosed documents. Expert disclosures are still ongoing and even though CSX has not disclosed an industry expert, VIT cannot be sure that the Defendants will not disclose an industry expert. With a case of this nature, VIT has every reason to believe that any industry experts retained in this matter either work for now or will work for competitors in the future. Even if documents are destroyed at the end of the case, the experts will still have the knowledge of VIT's confidential and

proprietary information such as rates as well as the confidential and proprietary information of its customers and will be able to use that knowledge to their advantage when they negotiate contracts with VIT's customers and competitors in the future. Such disclosure therefore would put VIT at a competitive disadvantage in the marketplace. Because of this expert loophole in the protective order, VIT does not believe that any confidential and proprietary information it shares—whether its own or its customers—will be safe from competitors or the marketplace. A non-party should not be put through the risk of such substantial burden and harm simply because it is served with a subpoena.

Because Request Nos. 1 through 8 call for information and documents that are or may contain confidential and proprietary, those requests should be quashed or modified to the extent they require confidential information of VIT and its customers.

### IV. The Subpoena improperly requests VIT search and produce materials from a non-VIT employee.

Request Nos. 9 through 11 call for documents and materials between CSX and a non-VIT employee, John Reinhart. *See* Exhibit A. VIT is not the appropriate entity for such requests. Further, for all the reasons stated in Section II, this request could be construed as demanding VIT to search its electronically stored information for any reference to the John Reinhart correspondence mentioned in the Subpoena at a substantial cost to it and only on the pure speculation that such communications exist in VIT's possession. For these reasons, Request Nos. 9 through 11 are not appropriate and should be quashed.

### CONCLUSION

Accordingly, VIT requests that the Subpoena be quashed or modified as outlined above and for any other relief that the Court deems just and appropriate. Should the Subpoena be

modified, VIT also prays for cost-shifting pursuant to Federal Rule of Civil Procedure 45 to the extent that such narrowed requests still impose significant expense upon VIT, especially with respect to the collection of electronically stored information.

Dated: March 16, 2020

                                   VIRGINIA INTERNATIONAL TERMINALS, LLC

                                   By:    /s/ Edward J. Powers
                                                          Of Counsel

Edward J. Powers (VSB No. 32146)
500 World Trade Center
Norfolk, VA 23510
757.446.8600-telephone
757.446.8670-fascimile
EPowers@vanblacklaw.com
*Counsel for Virginia International Terminals, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on Monday, March 16, 2020, a true and accurate copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

          /s/ Edward J. Powers