AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

| CSX Transportation, Inc. | ) | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 2:18-cv-00530-MSD-LRL |
| Norfolk Southern Railway Company, et al. | ) | |
| *Defendant* | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Virginia International Terminals, LLC c/o Sarah Jayne McCoy, Registered Agent
600 World Trade Center, Norfolk, VA 23510

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A attached hereto:

| Place: Crenshaw, Ware & Martin, PLC<br>150 West Main Street, Suite 1500<br>Norfolk, VA 23510 | Date and Time:<br>03/09/2020 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 02/26/2020

*CLERK OF COURT*

_____     OR     _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Norfolk & Portsmouth Belt Line Railroad Company, who issues or requests this subpoena, are:

James L. Chapman, IV, Crenshaw, Ware & Martin, PLC, 150 West Main Street, Ste 1500, Norfolk, VA 23510, jchapman@cwm-law.com, 757-623-3000

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

SERVED BY: H.S.I - 757.868.5833
C/O SARAH JAYNE MCCOY, R
VIRGINIA INTERNATIONAL TE
**463789-1**

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 2:18-cv-00530-MSD-LRL

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  (i) disclosing a trade secret or other confidential research, development, or commercial information; or

  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## Exhibit A

## DEFINITIONS AND INSTRUCTIONS

1. All requests below require a response fully coextensive with the broadest scope of discovery permissible under Rules 26, 34 and 45 of the Federal Rules of Civil Procedure.

2. "Document" means, without limitation, any written or graphic record whatsoever, including all drafts and electronic versions.

3. "Communication" means, without limitation, any document evidencing any oral or written exchange, whether in a conversation, meeting, electronic exchange, or otherwise.

4. "NIT" means Norfolk International Terminals.

5. "VIG" means Virginia International Gateway, including its predecessor facility APM Terminals Virginia.

6. "CSXT" means CSX Transportation, Inc. and all its directors, officers, employees, agents, and representatives.

7. "NPBL" means Norfolk and Portsmouth Belt Line Railroad Company and all its directors, officers, employees, agents, and representatives.

## DOCUMENT REQUESTS

1. All documents and communications evidencing or describing any subsidies, discounts, cost sharing arrangements, incentive payments, or other inducements offered or given to CSXT for drayage of containers to or from NIT from January 1, 2010 to present.

2. All documents and communications evidencing or describing any subsidies, discounts, cost sharing arrangements, incentive payments, or other inducements offered or given to CSXT for lifts of containers at NIT from January 1, 2010 to present.

3. All documents and communications evidencing or describing any subsidies, discounts, incentive payments, or other inducements offered or given to CSXT for drayage of containers to or from VIG from January 1, 2010 to present.

4. All documents and communications evidencing or describing any subsidies, discounts, incentive payments, or other inducements offered or given to CSXT for rail transport of containers to or from VIG from January 1, 2010 to present.

5. All documents and communications evidencing or describing any subsidies, discounts, cost sharing arrangements, incentive payments, or other inducements offered or given to CSXT for lifts of containers at VIG from January 1, 2010 to present.

6. All documents and communications evidencing or describing any subsidies, discounts, cost sharing arrangements, incentive payments, or other inducements offered or given to CSXT for lifts of containers at PMT from January 1, 2010 to present.

7. All communications with CSXT regarding rail transport of containers for CSXT to or from NIT by NPBL in 2015, including any subsidies, discounts, incentive payments, cost sharing arrangements or other inducements offered or given to CSXT.

8. All internal documents and communications, including notes, memos or records of meetings, discussing or pertaining to CSXT's access to NIT from January 1, 2010 to present.

9. All communications with CSXT about John Reinhart's April 13, 2018 letter to NPBL (attached hereto).

10. All communications with CSXT about NPBL's April 19, 2018 letter to John Reinhart (attached hereto).

11. All drafts of John Reinhart's April 13, 2018 letter to NPBL, including any comments on such drafts, whether from internal or external sources.



# THE PORT OF VIRGINIA

John F. Reinhart
CEO/Executive Director

Virginia Port Authority
600 World Trade Center
Norfolk, VA 23510

April 13, 2018

Cannon Moss
President & General Manager
Norfolk and Portsmouth Belt Line Railroad
1340 Truxton Street
Chesapeake, VA 23324

Dear Mr. Moss:

    I am writing to request your consideration of efforts to facilitate dual access for handling containers at NIT. As you know, in 2015 the General Assembly requested a rail enhancement study and that study indicated one of the best ways to enhance the Port's competitiveness is to ensure dual access by both Class I railroads that serve the Port of Virginia at all of our terminals. Since that time, the shipping lines have consolidated into 3 major alliances and are rapidly deploying ultra large container vessels (ULCVs) resulting in larger container movements on and off each vessel. During that same time, the Port has also embarked on the largest construction program in its history to more efficiently handle these ultra large container vessels (ULCVs) resulting in the need for more flexibility in shifting services among our terminals.

    The industry's rapid shift to these vessels has challenged the logistics networks nationwide. Virginia is in a strong competitive position due to years of collaboration and building of logistics infrastructure to prepare for the current state of the industry. Our deep water channels, improving marine terminals, and superb rail infrastructure are second to none on the U.S. east coast. However, the lack of proper access to NIT by CSX puts Virginia at a competitive disadvantage.

    Virginia would greatly benefit from improved flexibility to handle Norfolk Southern and CSX rail boxes at both NIT and VIG. Specifically, we are respectfully requesting a competitive reciprocal switching rate for CSX containers arriving and departing NIT to increase the Port's flexibility and efficiency so that we can collectively provide the best service to our customers. We are appealing to NPBL's long standing partnership to help find a mutually satisfactory solution.

    Our mutual success to help address this challenge will help the Region's economy continue to grow by attracting more maritime commerce to Virginia and more efficiently handle growing volumes on the rail network. The alternative may lead to the businesses seeking alternative Ports and states.

    I appreciate your continued support of the Port and look forward to hearing back from you regarding possible solutions to resolve these challenges swiftly.

Warm regards,

John F. Reinhart
CEO & Executive Director

EXHIBIT
NPBL
34
K2 2/19/20

ph (757) 683-8000 | toll-free (800) 446-8098 | portofvirginia.com

Confidential

CSXT0100713

CC: James A. Squires, Chairman, President, & CEO, Norfolk Southern
James M. Foote, President & CEO, CSX
The Honorable Shannon Valentine, Secretary of Transportation, Commonwealth of Virginia

Confidential

CSXT0100714



Cannon Moss
President & GM

**NORFOLK AND PORTSMOUTH
BELT LINE RAILROAD COMPANY**
1340 TRUXTON STREET
CHESAPEAKE, VIRGINIA
(757) 271-1800

April 19, 2018

Sent via electronic mail: jreinhart@portofvirginia.com

John F. Reinhart
CEO & Executive Director
Virginia Port Authority
600 World Trade Center
Norfolk, VA 23510

Dear Mr. Reinhart:

Thank you for your letter on April 13, 2018 regarding rail service at Norfolk International Terminal (NIT). Your letter is quite timely as I met two weeks ago with members of your staff to discuss the logistics of Norfolk and Portsmouth Belt Line Railroad (NPBL) handling container traffic into and out of NIT as proposed by CSX Transportation (CSXT).

Your letter refers to ensuring dual access at NIT. I hope that you know that today NPBL can handle container traffic to NIT in accordance with our tariff (NPBL 8100-J) and is committed to doing so should CSXT deliver the traffic to NPBL for interchange. In fact, NPBL handled several intermodal container trains into and out of NIT for CSXT as recently as 2015 in accordance with our tariff. While there were some scheduling and logistical challenges, NPBL strived to work with all stakeholders to successfully handle that traffic and would do so again if given the traffic by CSXT to handle today.

The NPBL tariff rate is $210 per loaded railcar well, which is applicable to all interchange traffic. We believe our rate is competitive. To put that into perspective, the Commonwealth Railroad, which is the sole rail carrier serving the Virginia International Gateway terminal, has a tariff rate of $190 per railcar well (CWRY 7006-9), whether loaded or empty.

On behalf of NPBL, we would welcome the opportunity to provide the container service into and out of NIT. We look forward to working with your team should CSXT decide to interchange its traffic to NPBL for inbound and outbound handling at NIT.

Sincerely yours,

Cannon Moss

cc: James A. Squires, President and CEO, Norfolk Southern
James M. Foote, President and CEO, CSX
The Honorable Shannon Valentine, Secretary of Transportation

EXHIBIT
NPBL
35

NPBL005878