AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

| | |
|---|---|
| CSX Transportation, Inc. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 2:18-cv-00530 |
| Norfolk Southern Railway Company, et al. | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: Virginia Port Authority c/o Sarah J. McCoy, Registered Agent
600 World Trade Center, Norfolk, VA 23510

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Troutman Sanders LLP<br>222 Central Park Avenue, Suite 2000<br>Virginia Beach, VA 23462 | Date and Time:<br>March 25, 2020, 9:00 AM EST |
|---|---|

The deposition will be recorded by this method: Stenographic and Audio-and-Video

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 3/6/2020

*CLERK OF COURT*              OR    /s/ [signature]

_____        _____
Signature of Clerk or Deputy Clerk        Attorney's signature

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Norfolk Southern Railway Company , who issues or requests this subpoena, are:

Tara L. Reinhart, Skadden, Arps, Slate, Meagher & Flom LLP, 1440 New York Avenue, N.W., Washington, D.C. 2005, tara.reinhart@skadden.com, (202) 371-7630

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 2:18-cv-00530

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| CSX TRANSPORTATION, INC., individually and on behalf of NORFOLK & PORTSMOUTH BELT LINE RAILROAD COMPANY, | ) ) ) ) ) | |
| *Plaintiff*, | ) ) ) | |
| v. | ) ) | Case No. 2:18-cv-00530 |
| NORFOLK SOUTHERN RAILWAY COMPANY, NORFOLK & PORTSMOUTH BELT LINE RAILROAD COMPANY, JERRY HALL, THOMAS HURLBUT, PHILIP MERILLI, and CANNON MOSS, | ) ) ) ) ) ) | |
| *Defendants*. | ) ) | |

## DEFENDANT NORFOLK SOUTHERN RAILWAY COMPANY'S
## NOTICE OF 30(b)(6) DEPOSITION OF THE VIRGINIA PORT AUTHORITY

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendant Norfolk Southern Railway Company ("NSR" or "Defendant") will take the deposition upon oral examination of the Virginia Port Authority ("VPA") regarding the topics set forth in the attached **Exhibit A**. In accordance with Rule 30(b)(6) of the Federal Rules of Civil Procedure, VPA will designate one or more individuals to testify on its behalf as to the topics set forth in the attached Exhibit A. NSR requests that VPA identify the individual or individuals who will testify regarding the topics at least one week in advance of the deposition. NSR reserves the right to amend, revise, or supplement this notice and the topics in the attached Exhibit A.

The deposition will commence at 9:00 am EST on Wednesday, March 25, 2020, at the offices of Troutman Sanders LLP, 222 Central Park Avenue, Suite 2000, Virginia Beach, VA 23462 or at such other time and place as may be agreed upon by the parties or ordered by the

Court. The deposition will take place in accordance with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Eastern District of Virginia, and under oath and before a notary public or other officer authorized to administer oaths under law. The deposition will be recorded by stenographic and/or audio-and-videographic means, and will continue from day to day until completed.

DATED: March 5, 2020                          */s/ Tara L. Reinhart*
                                                             Tara L. Reinhart

                                                             *Attorney for Defendant Norfolk*
                                                             *Southern Railway Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 5, 2020, the foregoing document was sent electronically to:

Robert W. McFarland, Esq.
Benjamin L. Hatch, Esq.
E. Rebecca Gantt, Esq.
McGuireWoods LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Telephone: (757) 640-3716
Facsimile: (757) 640-3930
rmcfarland@mcguirewoods.com
bhatch@mcguirewoods.com
rgantt@mcguirewoods.com

*Attorneys for CSX Transportation, Inc.*

James L. Chapman, IV, Esq.
W. Ryan Snow, Esq.
Darius K. Davenport, Esq.
David C. Hartnett, Esq.
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com

*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

Hugh M. Fain, III, Esq.
M. F. Connell Mullins, Jr., Esq.
John M. Erbach, Esq.
SPOTTS FAIN PC
411 E. Franklin St.
Richmond, VA 23219
Telephone: (804) 697-2000
hfain@spottsfain.com
cmullins@spottsfain.com
jerbach@spottsfain.com

*Attorneys for Jerry Hall, Thomas Hurlbut, and Philip Merilli*

W. Edgar Spivey, Esq.
Clark J. Belote, Esq.
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3196
Facsimile: (888) 360-9092
wespivey@kaufcan.com
cjbelote@kaufcan.com

*Attorney for Cannon Moss*

/s/ Tara L. Reinhart
Tara L. Reinhart

*Attorney for Defendant Norfolk Southern Railway Company*

3

# Exhibit A

## Definitions

1. "Communication" includes every manner of transmitting or receiving facts, information, opinions, or thoughts from one person to another person, whether orally, by documents, writing, email, text message, or copy thereof, and to words transmitted by telephone, radio, or any method of voice recording. The words "documents" and "communications" explicitly include text messages, iMessages, messages through social media, messages through apps, and emails (including personal email accounts), regardless of whether you or your representatives characterize those mediums as personal (*i.e.*, non-business).

2. The words "relate," "relates," and "relating to" shall be interpreted broadly to describe information that discusses, analyzes, evaluates, consists of, or otherwise makes reference to the identified subject matter.

3. The terms "you," "your," and "VPA" mean or refer to the Virginia Port Authority and its directors, officers, employees, agents, representatives, parents, subsidiaries, affiliates, and predecessor(s) in interest.

4. "CSXT" means or refers to the plaintiff in this action, CSX Transportation, Inc., and all persons and entities acting or purporting to act on its behalf.

5. "NSR" means the defendant in this action, Norfolk Southern Railway Company, its predecessor(s) in interest, and all persons and entities acting or purporting to act on its behalf.

6. "NPBL" means the defendant in this action, Norfolk & Portsmouth Belt Line Railroad Company, and all persons and entities acting or purporting to act on its behalf.

7. "Individual Defendants" means Defendants Jerry Hall, Thomas Hurlbut, Philip Merilli, and Cannon Moss.

8. "Complaint" means the Complaint in this matter filed by CSXT.

4

9. "NIT" means Norfolk International Terminals located at 77337 Hampton Blvd, Norfolk, VA 23505, and all persons and entities acting or purporting to act on its behalf.

10. "VIG" means Virginia International Gateway, formerly known as APM Terminals Virginia, located at 1000 Virginia International Gateway Blvd, Portsmouth, VA 23703, and all persons and entities acting or purporting to act on its behalf.

11. "PMT" means Portsmouth Marine Terminal, located at 2000 Seaboard Ave, Portsmouth, VA 23707, and all persons and entities acting or purporting to act on its behalf.

12. "VIT" means Virginia International Terminals, LLC, a Virginia limited liability company owned by the VPA, which operates a group of marine terminal facilities referred to as the "Port of Virginia," all persons and entities acting or purporting to act on its behalf.

13. "East Coast Ports" means all major ocean ports and marine terminals on the Atlantic and Gulf coasts in the United States located east of the Mississippi River, including, without limitations, terminals located at ports in Boston, New York/New Jersey, Philadelphia, Baltimore, Norfolk, Charleston, Savannah, Jacksonville, Miami, and New Orleans.

14. The "Diamond" means the track between NS Juncture and Carolina Juncture, which was discontinued in 2008. *See Norfolk Southern Railway Company-Discontinuance of Service Exemption-in Chesapeake, VA*, Docket No. AB-290 (Sub-No. 299X), filed April 25, 2008.

### Deposition Topics

1. The documents you produced in response to the subpoena *duces tecum* served on you by NSR and NPBL in this matter.

2. Documents and information available on your website, www.portofvirginia.com.

3. Communications to, from, or with you regarding CSXT's access to or use of NIT, VIG, and PMT, including by rail, drayage, and barge from 2007 to present.

4. Communications, analysis, reports, or other documents relating to NPBL's $210 line haul switching tariff (Tariff 8100-J), including the impact, if any, it has on CSXT's ability to access NIT.

5. Communications, analysis, reports, or other documents relating to operational issues, plans, or schedules relating to NPBL's movement of freight to or from NIT, including the May 20, 2010 "CSX Operation Plan" prepared by Virginia International Terminals, Inc. attached as **Exhibit B** [NPBL027608-027612].

6. Any marketing or other materials stating that there is dual rail access to NIT or stating that both NSR and CSXT have rail access to NIT.

### Competition

7. The ports or facilities with which you compete for international intermodal business, including but not limited to, the East Coast Ports you consider to be your top five competitors, the extent to which you have lost or gained international intermodal container volume to these top five competitors over the last five years, and your strategy for competing with other ports for the import and export of intermodal containers.

8. Knowledge regarding transportation of intermodal shipping containers to and from East Coast Ports, including but not limited to, any limitations on type, capacity, or efficiency of transportation services offered from any East Coast Port, improvements undertaken by any East Coast Port in the last five years to expand ocean carrier access, on-dock access, and any other infrastructure enhancements that have resulted in increased international intermodal volumes, and any impact such improvements have had on your international intermodal volumes at NIT, VIG, and PMT.

9. Knowledge regarding the expansion of the Panama Canal, or similar infrastructure enhancements, including the effect of that expansion on competition for intermodal shipping containers between East Coast Ports and between East Coast Ports and West Coast Ports, a shift of international shipping container volume from West Coast Ports to East Coast Ports, and any changes in international intermodal volumes at the Port of Virginia or other East Coast Ports as a result of the infrastructure enhancements.

10. Knowledge regarding the relationship between ocean carriers and specific ports and terminals in the East Coast Ports, including how those relationships affect demand by ocean carriers for service to and from specific ports and terminals among the East Coast Ports.

11. Knowledge regarding VPA's process for managing ocean carrier traffic into and out of NIT, PMT, and VIG for the loading and unloading of intermodal containers, including but not limited to, the factors you consider in directing ocean carriers to a particular terminal, communications with NSR and CSXT regarding the decision to direct an ocean carrier to a particular terminal, and how common it is for ocean carriers to make stops at multiple terminals.

12. Knowledge regarding NSR's and CSXT's competitive positions in the East Coast Ports intermodal shipping market, including but not limited to the role of on-dock rail access at NIT, VIG, and PMT in negotiations with customers and potential customers in the East Coast Intermodal Transportation Market.

13. Knowledge regarding CSXT's rail network out of the Port of Virginia and how it compares to NSR's rail network out of the Port of Virginia, shipper preferences for a particular rail network, and VPA's marketing strategy to shippers with regard to NSR and CSXT's rail networks.

### On-Dock, Drayage, Barges, and Lifts

14. Knowledge regarding VPA's letter to NPBL dated April 13, 2018, attached as **Exhibit C**, regarding on-dock rail access at NIT, including but not limited to, the factors that led to the decision to write the letter, your internal deliberations regarding the letter, and all individuals in your organization that contributed to the letter.

15. Knowledge regarding the movement of intermodal containers in and out of NIT, PMT, and VIG by rail, drayage, and barge, including the inland destinations served by each service, and other East Coast Ports or West Coast Ports that serve those inland destinations.

16. Knowledge regarding the use and number of lifts involved in providing on-dock rail service, drayage, and barge service, including how the number and cost of lifts involved in providing on-dock rail service compares to drayage or barge service, the payor of lift fees, whether a lift fee is subsidized by VPA or another entity, and the effect of lift fees on competition for international intermodal containers.

17. Knowledge regarding the use of drayage at NIT, VIG, and PMT, including how drayage compares to on-dock rail access with respect to cost, capacity, and efficiency; the effect of drayage on competition between NIT, VIG, and PMT and between the Port of Virginia and other East Coast Ports; the number of international containers transported via drayage; the percentage of international containers shipped via drayage; the rail facilities and rail yards served via drayage; and the time it takes to dray an international container from a port facility to a rail facility.

18. Knowledge regarding CSXT's use of on-dock service, barge, and drayage to move international intermodal containers in and out of NIT, VIG, and PMT.

8

19. Communications, analysis, reports, or other documents relating to the VPA's decision to subsidize CSXT's drayage costs associated with the movement of freight to or from NIT.

### VPA Related

20. VPA structure and operations, including relationships with VIT, NSR, CSXT, and NPBL.

21. Master Rail Plan for the Port of Virginia.

22. VPA annual reports and financial statements.