**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | | |
|---|---|---|
| **CSX TRANSPORTATION, INC.,** | ) | |
| **individually and on behalf of NORFOLK** | ) | |
| **& PORTSMOUTH BELT LINE** | ) | |
| **RAILROAD COMPANY,** | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| **v.** | ) | **No. 2:18-cv-530-MSD-LRL** |
| | ) | |
| **NORFOLK SOUTHERN RAILWAY** | ) | |
| **COMPANY,** *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**DEFENDANT NORFOLK SOUTHERN RAILWAY COMPANY'S**
**BRIEF IN SUPPORT OF ITS MOTION TO COMPEL THE PRODUCTION OF**
**DOCUMENTS FROM PLAINTIFF CSX TRANSPORTATION, INC.**

Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure and Rules 37(B) and 7(F) of the Local Rules of the U.S. District Court for the Eastern District of Virginia, Defendant Norfolk Southern Railway Company ("NSR"), by counsel, respectfully submits this brief in support of its Motion to Compel Plaintiff CSX Transportation, Inc. ("CSXT") to produce documents it has improperly redacted or withheld as privileged.

**I.      INTRODUCTION**

A central figure in the events giving rise to this case is Steven Armbrust ("Armbrust"), one of CSXT's in-house counsel.  Since at least 2008, Armbrust supported CSXT's intermodal operations and its joint facilities operations, including CSXT's dealings with co-Defendant Norfolk & Portsmouth Beltline Railway Company ("NPBL").  In addition to his roles as legal and business advisor to these operations, CSXT chose to have Armbrust serve as a director of NPBL from March 2010 to June 2015.  While serving in these roles, Armbrust was involved in, among

other things, NPBL's setting of the $210 switching rate, NPBL's response to CSXT's 2010 service proposal, and NPBL's sale of property, all of which purportedly form the basis of CSXT's claims. *See* Compl., ¶ 87 (discussing NPBL's setting of switching rate and alleged rejection of CSXT proposals); ¶ 47 (discussing NPBL sale of property).

Despite Armbrust's non-legal roles, including as one of CSXT's appointed NPBL directors, CSXT has withheld or redacted thousands of emails involving Armbrust based on the attorney-client privilege. What is more, some of these emails are the most relevant and critical to the claims asserted by CSXT. When NSR first challenged CSXT's overbroad and improper assertion of privilege on a subset of emails involving Armbrust, CSXT withdrew the assertion (or removed redactions) for 99 documents. When NSR pressed the issue again, CSXT withdrew the assertion of privilege for another 35 documents. Yet, CSXT still claims privilege over 194 documents that (1) were created during Armbrust's time on the NPBL Board, (2) relate to NPBL business, and (3) for which Armbrust is only apparent attorney included in the communication. None of the redacted emails are marked "privileged" or "confidential", and in many instances, Armbrust is not the author of the email but rather is one of multiple CSXT employees included in the email chain. The fact that Armbrust was a NPBL board member at the time these emails were sent strongly indicates that they relate to Armbrust acting in his business capacity and, therefore, are not privileged. There is nothing to suggest the same conclusion does not apply to similar emails that CSXT has withheld in their entirety and included on its privilege log.

In addition to these emails, CSXT has improperly redacted emails involving Armbrust that were sent before he became a NPBL board member. As discussed below, there is no discernable reason that Armbrust was included on these emails other than the CSX employees' apparent desire to keep Armbrust apprised of CSXT's business strategies relating to its intermodal business and

NPBL.  And like the emails sent while Armbrust was an NPBL board member, it is apparent that CSXT has claimed privilege over these communications merely because Armbrust is an attorney, not because Armbrust was providing, or being asked to provide, legal advice.  Even if some of these emails indicate the giving or receiving of legal advice, the unredacted portions of them show that the primary purpose of the communications relate to business, not legal, matters, which requires the emails to be produced.

At bottom, "[CSXT's] sweeping reliance on the attorney status of [Armbrust] to shield all communications is obviously out of sync with governing law."  *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 412 (D. Md. 2005).  For these reasons, as set forth in more detail below, CSXT should be compelled to produce the emails at issue in their entirety, or, alternatively, to present them to the Court for *in camera* review.  Additionally, Defendants should be able to depose Armbrust on the emails that the Court orders unredacted or produced.

## II.    BACKGROUND

From 2005 to 2010, Armbrust served as temporary lead counsel for CSX Intermodal ("CSXI"), the CSX subsidiary responsible for its intermodal business.  *See* Deposition Transcript of Steven Armbrust ("Armbrust Depo.") (**Exhibit 1**) at 16:13-20.  From 2010 to the present, he has continued to work on intermodal matters, as well as joint facilities[1] matters, which includes CSXT's dealings with NPBL.  *Id.* at 17:2-12.  Armbrust served as a CSXT-appointed director of NPBL from March 11, 2010 to June 10, 2015.[2]  Given his involvement in intermodal and NPBL-

---

[1] Joint facilities are operations shared by more than one railroad.  NPBL is considered a joint facility because it is owned by CSXT and NSR.

[2] *See* NPBL's First Supplemental Answer to CSXT's First Set of Interrogatories, Interrogatory No. 6, dated February 11, 2020.

related matters, CSXT identified Armbrust as a witness in its Rule 26(a)(1) Initial Disclosures.[3] CSXT also identified Armbrust as one of its 12 custodians per the ESI Order [ECF No. 83].[4]

On February 11, 2020, CSXT produced the first version of its privilege log, which included 2,946 entries, of which 2,453 included Armbrust.[5]  Per the ESI Order, CSXT did not log any of the hundreds of redacted communications it produced, many of which also included Armbrust. Given his extensive involvement in several of the critical issues in this case, including as an NPBL board member, communications involving Armbrust are, unsurprisingly, some of the most relevant documents produced by CSXT in this litigation.

NSR specifically focused on a small subset of these purportedly privileged communications that satisfy the following criteria, which, taken together, strongly suggest that the communications are not privileged:

(i) Armbrust was the only apparent attorney on the email, *i.e.*, the claim of privilege cannot be supported by the role of another attorney in the communication;

(ii) the email was sent or received while Armbrust served as an NPBL Board member, during which time Armbrust admits he was performing business functions regarding NPBL;

(iii) the email subject appeared to relate to NPBL or his role on the NPBL Board, linking the email even more tightly to Armbrust's admitted business role; and

(iv) the email does not include any mark or language showing an intent that the communication be considered privileged, nor does it appear to reflect a request for, or provision of, legal advice by Armbrust.

---

[3] *See* CSXT's Rule 26(a)(1) Initial Disclosures, dated November 8, 2019.
[4] *See* Plaintiff CSX Transportation, Inc.'s Revised ESI Custodian List, dated November 21, 2019.
[5] On March 6, 2020, CSXT produced its Amended Privilege Log adding 1,637 entries, while removing 25.

Together, these four factors are referred to as the "Downgrade Criteria."  NSR identified over 200 redacted emails meeting the Downgrade Criteria.  NSR subsequently identified more than 100 emails meeting the Downgrade Criteria that CSXT has wholly withheld from production on privilege grounds and included on its privilege log.

On March 10, 2020, NSR sent CSXT a letter challenging its privilege claims regarding 221 redacted emails that met the Downgrade Criteria.  *See* **Exhibit 2.**  NSR's letter further identified five exemplar emails from CSXT's privilege log that also appeared to meet the Downgrade Criteria.  *Id*.  NSR requested that CSXT downgrade its privilege claims of both the redacted and the withheld documents and produce them in their entirety at Armbrust's deposition the next day or, in the alternative, agree to leave the deposition open until the matter could be resolved.[6]  *Id.*

At his deposition on March 11, Armbrust confirmed that he played multiple roles in his involvement with NPBL, including as an NPBL board member.  ███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████  These matters directly relate to his non-legal role as business

---

[6] The majority of the redacted items at issue were produced as part of CSXT's seventh production made on February 13, 2020, less than a month prior to Armbrust's deposition.  The remainder were produced as part of CSXT's ninth production made on February 28, 2020, less than two weeks prior.  In addition to preparing for Armbrust's deposition noticed for March 11, 2020, NSR defended or participated in more than a dozen depositions between February 13, 2020 and March 10, 2020.  During this same time period, the parties also engaged in unrelated motions practice that resolved when CSXT withdrew its motion [ECF No. 133].

advisor to CSXT employees on intermodal and NPBL issues, as well as his role as an NPBL board member.

On March 13, 2020, the parties had a brief meet and confer to confirm that CSXT was reviewing NSR's request in its March 10 letter.  By letter dated March 20, 2020, CSXT responded that "most" of the documents at issue had been properly redacted or withheld but agreed to produce certain documents with more limited redactions or no redactions, and to log the remaining redacted documents, per the ESI Order [ECF No. 83].  *See* **Exhibit 3**. On March 23, 2020, CSXT made a supplemental production and produced an updated privilege log, which included redacted documents not previously logged and which CSXT had not produced without redaction in response to NSR's March 10 letter.  *See* **Exhibit 4**.

With its supplemental production, CSXT conceded that 99 of the 221 redacted emails identified by NSR were not privileged and had been erroneously redacted.  CSXT produced 95 documents in full, and produced another four documents with some, but not all, redactions removed[7].  CSXT further conceded that 19 documents it had previously withheld as privileged and logged, including two of the five exemplars in NSR's March 10 letter, also had been withheld in error.  CSXT produced 16 documents in full and produced another three documents with redactions.[8]

Notwithstanding its supplemental productions, CSXT's privilege claims remain overly broad and improper.  On April 29, 2020, NSR sent CSXT an email requesting that it produce the remaining 108 redacted emails identified in NSR's March 10 letter, as well as 121 emails on CSXT's privilege log that meet the Downgrade Criteria.  *See* **Exhibit 5**.  NSR further requested

---

[7] CSXT0084032, CSXT008946, CSXT0087161 and CSXT0090226.
[8] CSXT0125628, CSXT00132668, and CSXT00141478.  CSXT00125628 meets the Downgrade Criteria and should be produced in full.

that CSXT produce an additional seven redacted emails that were sent before Armbrust became an NPBL board member but otherwise meet the Downgrade Criteria.  As discussed below, these emails relate to business strategy, not legal matters, and thus should be produced without redaction. Alternatively, NSR proposed that CSXT agree to submit the emails to the Court for an *in camera* review.  On May 8, 2020, counsel for CSXT acknowledged that some of the documents at issue were improperly redacted or withheld.  *See* **Exhibit 6**.  On May 12, 2020, CSXT made another supplemental production in which it (a) produced 35 documents that had previously been withheld from production, (b) removed the redactions from five of the seven emails sent before Armbrust became an NPBL board member, and (c) produced 11 documents (5 in full, 6 with redactions) that CSXT had not challenged.  CSXT, however, refused to downgrade any of the other challenged emails and acknowledged that the next step would be the filing of this Motion.

### III.    LEGAL STANDARD

#### A.    Privilege is not presumed and is disfavored.

Federal law determines the scope of CSXT's asserted privilege in this case.  *Cappetta v. GC Servs. Ltd. P'ship*, 266 F.R.D. 121, 125 (E.D. Va. 2009) ("In a federal question case, federal common law supplies the applicable law of privilege.").[9]  Because "the privilege impedes [the] full and free discovery of the truth, and is in derogation of the public's right to every man's evidence, it is not favored by federal courts.  Accordingly[,] the privilege is to be strictly confined within the narrowest possible limits consistent with the logic of its principle."  *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984) (internal quotations omitted).  The Fourth Circuit has established that a communication is privileged only if:

---

[9] While Federal Rule of Evidence 501 states, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision," most federal courts assessing federal and state claims apply federal privilege law to all of the claims.  *See Continental Cas. Co. v. Under Armour, Inc.*, 537 F. Supp. 2d 761, 766 n.3 (D. Md. 2008) (collecting cases).

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (quoting *United States v. United Shoe Mach. Corp.*, 89 F. Supp. 357, 358–59 (D. Mass. 1950)).  Confidentiality is "often characterized as the essence of [attorney-client] privilege." *In re Grand Jury Proceedings*, 727 F.2d at 1355. "Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives attorney-client privilege." *Jones*, 696 F.2d at 1072.

The "unquestioned rule that the mere relationship of attorney-client does not warrant a presumption of confidentiality." *United States v. (Under Seal)*, 748 F.2d 871, 875 (1984).  Rather, the privilege attaches to an attorney-client communication only when the attorney, "in connection with *this* communication is *acting as a lawyer*." *Jones*, 696 F.2d at 1072 (emphases added) (internal quotation marks omitted).  Courts in the Fourth Circuit require that documents contain "legal advice, opinions, or oversight," "opinion[s] on law, legal services, or [the provision of] assistance in some legal context," reference to a "particular legal issue," or revelations of "the motive of the client in seeking representation, litigation strategy," for the privilege to apply. *Chaudhry v. Gallerizzo*, 174 F.3d 394, 402-03 (4th Cir. 1999) (internal quotation marks omitted); *Under Seal*, 748 F.2d at 874; *Scott & Stringfellow v. AIG Comm. Equip. Finance, Inc.*, No. 3:10cv825-HEH-DWD, 2011 WL 1827900, at *3–4 (E.D. Va. May 12, 2011) (declining to apply the privilege to an in-house counsel communication because the attorney was "clarifying a business issue and scheduling a meeting," not giving legal advice).

Additionally, in the corporate context, distributing a privileged document to anyone except "those who had a need to know" its contents is a waiver of the privilege. *McAirlaids*, 2014 WL 12782814, at *4; *Digital Vending Servs. Int'l, Inc. v. Univ. of Phoenix, Inc.*, No. 2:09CV555, 2013 WL 1560212, at *8–9 (E.D. Va. Apr. 12, 2013) (applying the "need-to-know" test to attorney communications to board members and copying a non-board member); *ePlus*, 280 F.R.D. at 252– 53 ("Communications within a corporation are only protected if the party claiming privilege can demonstrate that the persons to whom the communications were made had the 'need to know' the information communicated."); *cf. Deel v. Bank of Am., N.A.*, 227 F.R.D. 456, 460 (W.D. Va. 2005) ("A corporation does not waive its privilege when non-lawyer employees send or receive communications because corporate communications which are shared with those having need to know of the communications are confidential for purposes of the attorney-client privilege.").

### B.   Claims of privilege over communications with in-house counsel require closer scrutiny because of their involvement in business matters.

While the attorney-client privilege can apply to communications involving in-house counsel, these communications require closer scrutiny because "attorneys employed by corporations serve in many roles, some of which have little to do with being an attorney." *Adair v. EQT Prod. Co.*, 285 F.R.D. 376, 380-81 (W.D. Va. 2012). Where a communication neither requests nor expresses legal advice, but rather involves the "mere soliciting or giving of business advice," it is not privileged. *Id.* (citing *Fisher v. United States*, 425 U.S. 391, 403 (1976)); *United Shoe Mach. Corp.*, 89 F. Supp. at 359. "Indeed, communications between in-house counsel and corporate representatives, unlike those between a client and outside counsel, are not presumed to be made for the purpose of obtaining legal advice." *Dewitt v. Walgreen Co.*, 2012 U.S. Dist. LEXIS 125493, *6-7 (D. Idaho Sept. 4, 2012); *see also United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002) ("[T]he presumption that attaches to communications

with outside counsel does not extend to communications with in-house counsel . . . [b]ecause in-house counsel may operate in a purely or primarily business capacity in connection with many corporate endeavors.").

Communications containing both legal and business advice "must be primarily or predominately of a legal character" to be privileged. *ABB Kent–Taylor, Inc.*, 172 F.R.D. at 55 (citations omitted); *see also Brainware, Inc. v. Scan-Optics, Ltd.*, No. 3:11CV755, 2012 WL 2872812, at *3 n.3 (E.D. Va. July 12, 2012) (requiring the proponent to demonstrate that in-house counsel's "advice was more likely 'legal' than 'business' in nature"). In other words, "when the legal advice is merely incidental to business advice, the privilege does not apply." *Great Plains Mutual Insurance Co. v. Mutual Reinsurance Bureau*, 150 F.R.D. 193, 197 (D. Kan. 1993). "[T]he communication will not be privileged if the client would not have made the communication but for a business purpose." *Neuberger Berman*, 230 F.R.D. at 411. "In addition, communications prepared in the ordinary course of business cannot be cloaked with the privilege merely by sending copies to in-house counsel." *Westchester Surplus Lines Ins. Co. v. Clancy & Theys Constr. Co.*, 2013 U.S. Dist. LEXIS 162935, *17 (E.D.N.C. Nov. 15, 2013); *Brainware*, 2012 WL 2872812 at *3 ("The fact that an attorney is copied on these emails does not make them about 'legal matters.'"). "Nor is a communication made in the individual's capacity as a lawyer when the communication [] would have been made because of a business purpose even if there had been no perceived additional interest in securing legal advice." *Parts Inc. v. Utica Mut. Ins. Co.*, Civil Action No.: RWT-07-2882, 2008 U.S. Dist. LEXIS 135653, *4 (D. Md. Dec. 15, 2008) (internal quotations omitted).

"In-house counsel often serve their corporate employer in mixed business-legal roles. Indeed, their day-to-day involvement in their employer's affairs may blur the line between legal

and non-legal communications and thus require Judges to cautiously and narrowly apply the privilege in cases involving corporate staff counsel lest the mere participation of an attorney be used to seal off disclosure." *ABB Kent–Taylor*, 172 F.R.D. at 55 (internal quotations omitted); *see also Oracle Am., Inc. v. Google, Inc.,* Civil Action No. C-10-03561-WHA (DMR), 2011 U.S. Dist. LEXIS 96121, *16-18 (N.D. Aug. 26, 2011) (holding that because "[i]n-house counsel may act as integral players in a company's business decisions or activities, as well as its legal matters," communications with in-house counsel "warrants heightened scrutiny"). "When attempting to demonstrate that an internal communication involving in-house counsel deserves privileged status, a party therefore must make a clear showing that the speaker made the communication[] for the purpose of obtaining or providing legal advice." *Oracle*, 2011 U.S. Dist. LEXIS 96121 at *17-18 (internal quotations omitted).

### C.      CSXT has the burden of proving that the communications are privileged.

"The burden to demonstrate the applicability of the privilege rests with its proponent.  In practical terms, this burden requires the proponent to explain, through *ex parte* submissions if necessary to maintain confidentiality, the significance or meaning of an otherwise cryptic document."  *Under Seal*, 748 F.2d at 875 (internal citations omitted).  "It is incumbent upon the proponent to specifically and factually support his claim of privilege, usually by affidavit, to satisfy this burden, and an improperly asserted privilege is the equivalent of no privilege at all."  *Byrnes v. Jetnet Corp.*, 111 F.R.D. 68, 71 (M.D.N.C. 1986).  "The party withholding the document, of course, must provide that context by way of evidence, not just argument."  *Neuberger Berman*, 230 F.R.D. at 410.  This evidence must also include a proper privilege log, as the party challenging a claim of privilege "[has] sparse information at [its] disposal" without "access to the privileged

11

documents" and can only rely on descriptions in the log. *ePlus Inc. v. Lawson Software, Inc.,* 280 F.R.D. 247, 252 (E.D. Va. 2012) (internal quotation marks omitted).

## IV.     ARGUMENT

Based on what can be gleaned from the unredacted portions of the emails at issue, as well as the generic information included in its privilege log, CSXT's privilege "strategy" is essentially the same as that rejected in *Neuberger Berman*, in which the defendant relied merely on the attorney's status as an attorney to claim privilege.   Further, because Armbrust is an in-house attorney and the only attorney involved in the emails, they are not presumed to be privileged, and CSXT's claim of privilege must be closely scrutinized.   Close scrutiny is more necessary here because for all but seven emails discussed below, Armbrust was an NPBL board member at the time of the email and thus was wearing an additional, non-legal hat.   Therefore, he was directly involved in the business affairs of not only CSXT, but also NPBL.   Armbrust admitted wearing multiple hats in his deposition, and Armbrust implicitly admitted that communications involving his roles as NPBL director and CSXT business advisor are not privileged when he answered questions bearing upon those roles without objection.

As shown by the examples below, CSXT has not made a clear showing that these emails include the giving or receiving of confidential legal advice.   In fact, the unredacted portions of the emails strongly indicate that their primary purpose—if not their only purpose—was discussion of business matters relating to CSXT or NPBL.   Additionally, none of the emails at issue are marked "privileged" or "confidential", which is strong evidence that none of the CSXT employees involved on the emails, including Armbrust, thought that legal advice was being asked for or provided by the email. *See Scott & Stringfellow*, 2011 U.S. Dist. LEXIS 51028 at *8 ("The subject of the document, 'ATTORNEY WORK PRODUCT,' supports the legal nature of the

communication between attorney and client, despite the author's signature as both an AIG employee and general counsel.").  The failure to mark the emails at issue is all the more telling given that 420 of the emails that CSXT has withheld from production, and 111 emails that CSXT has redacted, are marked "privileged" or "confidential" in the subject line.[10]  In other words, Armbrust and other CSXT employees intentionally and selectively marked emails that they thought sought or provided legal advice, yet they did not do so with respect to the emails at issue.

A.    **The two emails sent before Armbrust became an NPBL board member, but otherwise satisfying the Downgrade Criteria, should be produced without redaction.**

While the following emails predate Armbrust's time on the NPBL board, they show that Armbrust was frequently included on emails not for the purpose of providing legal advice, but rather in his role as business advisor to CSXT.  Accordingly, CSXT should produce them without redaction.  These emails bear directly on some of the most important factual issues in the case, which makes the need to have them produced without redactions all the more necessary.

1.    Email relating to ███████████████████████████

As set forth in the Complaint, CSXT's claims are predicated in large part on its assertion that NPBL's $210 line-haul switching rate is so unreasonable and excessive that it prevents CSXT from economically accessing NIT.  *See* Compl., ¶ 4.  ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[10] These emails are not limited to just those in which Armbrust is the only attorney.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

        ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████ Even if there is legal advice in the redacted portion of the email exchange, it appears to be "merely incidental to business advice, [and thus] the privilege does not apply." *Great Plains*, 150 F.R.D. at 197.

      2.    <u>Email relating to the 2009 Rate Committee</u>

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████ The redactions should be removed.

**B.      All redacted emails meeting the Downgrade Criteria should be produced without redactions.**

Like those emails that predate Armbrust's time as an NPBL board member, the 108 redacted emails satisfying the Downgrade Criteria should be produced without redaction.  The full list of redacted documents that NSR is challenging are identified in **Exhibit 9**.[11]  This list includes the four documents where CSXT removed some, but not all redactions, in its March 23, 2020 supplemental production discussed above.[12]  *See* p. 6, *supra*.  The redacted emails on Ex. 9 meet the same Downgrade Criteria as the 95 documents that CSXT already conceded were not privileged and had been redacted in error.  CSXT has added these redacted emails to its privilege log, but it used the same general language for the majority of these emails:  "Redacted portion of email string among in-house counsel and employees re: [topic] requests/contains in-house counsel's legal opinion."  Other than this general language, CSXT has not "specifically and factually" supported its claim of privilege, even though NSR has challenged all of these redactions at least once and many of them twice.  *See Byrnes*, 111 F.R.D. at 71 ("It is incumbent upon the proponent to specifically and factually support his claim of privilege, usually by affidavit, to satisfy this burden, and an improperly asserted privilege is the equivalent of no privilege at all.").

While all the documents on Ex. 9 meet the Downgrade Criteria for the reasons stated above, a discussion of some of them show many other reasons why the documents are not privileged and should be produced:

---

[11] Each of these redacted documents is being provided to the Court separately from this Motion.

[12] *See* n.6, *supra*.

1.      Armbrust Not an Author or Recipient

**CSXT0089181** and **CSXT0090280** are separate email chains that relate to NPBL matters, but Armbrust is neither an author nor recipient of any of the emails.  These emails should be produced in full.

2.      Armbrust One of Multiple Email Recipients

**CSXT0082817**, **CSXT0083229**, **CSXT0083730**, and **CSXT0086966** are emails in which Armbrust is just one of at least eight CSXT recipients.  Even if the redacted emails relate to legal issues, which is not suggested by the unredacted portions of the email chain, the sheer number of CSXT employees on the emails strongly indicates that all of the recipients did not "need to know" of the purported legal issues.  *See ePlus, supra*.  These emails should be produced in full.

3.      Armbrust Sends Emails to Multiple Recipients

**CSXT0085717** is an email sent by Armbrust to eight of his colleagues at CSXT.  ██████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████  Armbrust clearly is acting in his business capacity as a member of the NPBL Board and/or as a CSXT business advisor, not in his legal capacity as in-house counsel.  This email should be produced in full.

**CSXT0087330** and **CSXT0087344** are emails in which Armbrust is responding to an email chain that includes at least five of his CSXT colleagues.  ████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████  There is no indication that legal advice is being sought

or provided, and to the extent there is, the predominant purpose of the email is for business, not legal, purposes.

### 4.    Armbrust Sends Email to Himself

**CSXT0084946** and **CSXT0130676** are emails sent by Armbrust to himself.  Both emails squarely relate to Armbrust's role as an NPBL Board member and indicate he is acting in his business capacity, not his legal capacity.  They should be produced in full.

### 5.    Email Subject is NPB or NPBL

Twenty-one redacted emails[13] have a subject line specifically referring to "NPB" or "NPBL". As with other emails that include "NPB" and "NPBL" in the email subject and otherwise meet the Downgrade Criteria, **CSXT0083229** was sent to Armbrust in his role as an NPBL Board member and/or Armbrust is acting in his business capacity, not his legal capacity.  These emails should be produced in full.

### 6.    Communications about NPBL Meetings

These emails squarely relate to Armbrust's role as an NPBL

---

[13] CSXT0083229, CSXT0085572, CSXT0084560, CSXT0084772, CSXT0084775, CSXT0086977, CSXT0087542, CSXT0087573, CSXT0089394, CSXT0087549, CSXT0087566, CSXT0086763, CSXT0087586, CSXT0126222, CSXT0089975, CSXT0090185, CSXT0090472, CSXT0086963, CSXT00086966, CSXT0086971, and CSXT0086993.

Board member and indicate he is acting in his business capacity, not his legal capacity.   They should be produced in full.

### 7.   Emails relating to VIT, NIT or Hampton Roads Ports

Eighteen redacted emails[14] have a subject line relating to VIT, NIT and/or VPA.[15]



As with the other emails with email subjects relating to VIT, NIT and/or VPA, **CSXT0084032** and **CSXT0087161** clearly relate to Armbrust's role as business advisor and/or an NPBL Board member.   These emails should be produced in full.

***

The remaining redacted emails on Ex. 9 not specifically discussed above also meet the Downgrade Criteria in that they (a) were sent when Armbrust was an NPBL board member, (b) Armbrust is the only apparent attorney on the communications, (c) other CSXT members of the NPBL board often appear in the communications, (d) the email subject relates to NPBL issues,

---

[14] CSXT0083399, CSXT0083402, CSXT0083405, CSXT0083408, CSXT0083420, CSXT0083425, CSXT0083430, CSXT0084032, CSXT0084555, CSXT0089983, CSXT0090145, CSXT0083411, CSXT0083730 CSXT0084558, CSXT0087150, CSXT0087161, CSXT0089187 and CSXT0089191.

[15] Email subjects include without limitation:  "APMT/ VIT/ CSX Transition Meeting"; "NIT/APMT Volume and Capital Updates" and "State of Virginia/VPA/CSXT/PAB Meeting Friday June 29, 2012".

and (e) there is no evidence that Armbrust is providing, or being requested to provide, legal advice. For all these reasons, CSXT should be compelled to produce in full the remaining redacted emails set forth in Ex. 9, or alternatively, to produce them to the Court for *in camera* review.

**C.     All documents meeting Downgrade Criteria on the Privilege Log should be produced.**

As noted above, NSR's March 10, 2020 letter challenged not only the redacted documents that met the Downgrade Criteria, but it also identified five exemplars from CSXT's privilege log that appeared to meet the Downgrade Criteria.  CSXT conceded that two of the five exemplars were not privileged and produced them in full.[16]  NSR has identified 86 entries on CSXT's privilege log, including two of the remaining exemplars from its March 10, 2020 letter, that meet the Downgrade Criteria and should be produced in full.  These disputed entries are identified on **Exhibit 10**.   While all of the documents on Ex. 10 meet the Downgrade Criteria, a closer look at individual entries again provides many examples of entries that are self-defeating as to the claim of privilege:

1.     Email Subject is NPBL, NPB, or the name of an NPBL employee

Nearly half of the 86 items that NSR has challenged on CSXT's privilege log are emails that not only meet the Downgrade Criteria, but the email subject includes "NPB" or "NPBL".[17] Given the subject of the emails, and that they meet the Downgrade Criteria, it does not appear that

---

[16] CSXT0082924 (previously CSX_Priv_00619) and CSXT086684 (previously CSX_Priv_01062).

[17] CSX_Priv_00598, CSX_Priv_00609, CSX_Priv_00638,  CSX_Priv_00641, CSX_Priv_00645, CSX_Priv_00646, CSX_Priv_00655, CSX_Priv_00659, CSX_Priv_00687, CSX_Priv_00689, CSX_Priv_00702, CSX_Priv_00703, CSX_Priv_00704, CSX_Priv_00706, CSX_Priv_00707, CSX_Priv_00709, CSX_Priv_00711, CSX_Priv_00712, CSX_Priv_00714, CSX_Priv_00718, CSX_Priv_00744, CSX_Priv_00748, CSX_Priv_00750, CSX_Priv_00752, CSX_Priv_00754, CSX_Priv_00755, CSX_Priv_00756, CSX_Priv_00857, CSX_Priv_001025, CSX_Priv_01039, CSX_Priv_01071, CSX_Priv_01072, CSX_Priv_01082, CSX_Priv_01123,  CSX_Priv_01205, CSX_Priv_01207, CSX_Priv_01438, CSX_Priv_01501, CSX_Priv_01502, CSX_Priv_01507, CSX_Priv_01508, and CSX_Priv_01620.

Armbrust was acting in his legal capacity and providing or being asked to provide legal advice when he sent or received communications.  These emails should be produced in full.

### 2.    Email Subject is VIT, NIT or VPA

Another four items that NSR has challenged on CSXT's privilege log have an email subject of "VIT"[18], "NIT"[19] or "VPA".[20]  Again, the subject of these emails, along with their satisfaction of the Downgrade Criteria, strongly suggests that these emails are not privileged.  These emails should be produced in full.

### 3.    Armbrust Copied on Emails With No Substantive Involvement

Ten privilege log entries[21] not only meet the Downgrade Criteria, but Armbrust is simply *copied* on the communication; he is neither an author nor a recipient, and no other representative from CSXT's law department or outside counsel is included.  When coupled with the timing and subject of the communication, the fact that Armbrust was only copied demonstrates that he was included in the communication for informational business purposes, and not for the provision of or request to provide legal services.  These emails should be produced in full.

*** 

The remaining emails on CSXT's privilege log not specifically categorized above likewise meet the Downgrade Criteria in that they (a) date from the time period when Armbrust was a member of the NPBL Board, (b) Armbrust is the only apparent attorney on the communication, (c) other CSXT members of the NPBL Board often appear in the communications, (d) the email subject relates to NPBL issues, and (e) there is no evidence that Armbrust is providing, or being

---

[18] CSX_Priv_01184.
[19] CSX_Priv_01546, and CSX_Priv_01547.
[20] CSX_Priv_01116.
[21] CSX_Priv_00696, CSX_Priv_00702, CSX_Priv_00703, CSX_Priv_00704, CSX_Priv_00707, CSX_Priv_00709, CSX_Priv_00750, CSX_Priv_01039, CSX_Priv_01082, and CSX_Priv_01438.

requested to provide, legal advice.  For all these reasons, CSXT should be compelled to produce in full all emails associated with privilege log entries that are set forth in Ex. 10, or in the alternative, to produce them to the Court for *in camera* review.

## V.      CERTIFICATION

Pursuant to Local Rule 37(E), undersigned counsel certifies that he conferred with CSXT's counsel and that they were unable to reach a resolution prior to NSR's filing of the Motion to Compel.

## VI.      CONCLUSION

For the foregoing reasons, NSR respectfully requests that:

1.      the Court grant its Motion and order CSXT to produce the emails at issue without redaction;

2.      allow Defendants to depose Armbrust on all emails that have been produced and/or unredacted since Armbrust's deposition on March 11, 2020, and emails that are produced and/or unredacted pursuant to this Motion;[22] and

3.      award such further relief that the Court deems necessary and proper.

---

[22] Counsel for CSXT abruptly ended Armbrust deposition in the middle of an examination by counsel for Cannon Moss, who CSXT subsequently agreed to dismiss as a party.  *See* Armbrust Depo. at 312:15-313:5.  Counsel for NSR and NPBL reserved the right to reopen the deposition of Armbrust if CSXT subsequently produced and/or unredacted emails involving Armbrust.  *Id.* at 274:11-18; 300:9-12.

Date:  May 13, 2020                          Respectfully submitted,

                                                              **NORFOLK SOUTHERN RAILWAY COMPANY**

                                                              /s/Michael E. Lacy
Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
Massie P. Cooper (VSB No. 82510)
TROUTMAN SANDERS, LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-6061
Email: alan.wingfield@troutman.com
Email: michael.lacy@troutman.com
Email: massie.cooper@troutman.com

John C. Lynch (VSB No. 39267)
Kathleen M. Knudsen (VSB No. 90845)
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA  23462
Telephone: (757) 687-7759
Facsimile: (757) 687-7510
Email: john.lynch@troutman.com
Email: Kathleen.knudsen@troutman.com

Monica McCarroll (VSB No. 45622)
REDGRAVE LLP
14555 Avion Parkway, Suite 275
Chantilly, VA 20151
Telephone: (703) 592-1155
Facsimile: (703) 230-9859
Email: mmccarroll@redgravellp.com

Tara Lee Reinhart
Thomas Robert Gentry
John R. Thornburgh, II
SKADDEN ARPS
1440 New York Avenue, N.W.
Washington, D.C. 20005
Tara.reinhart@skadden.com
Thomas.gentry@skadden.com
John.thornburgh@skadden.com

*Counsel for Defendant Norfolk Southern Railway Company*

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2020, I electronically filed a copy of the foregoing with the Clerk of Court using the CM/ECF system, which sent a notification of such filing (NEF) to the registered participants as identified on the NEF to receive electronic service, including:

Robert W. McFarland, Esq.
Benjamin L. Hatch, Esq.
E. Rebecca Gantt, Esq.
McGuireWoods LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Telephone: (757) 640-3716
Facsimile: (757) 640-3930
rmcfarland@mcguirewoods.com
bhatch@mcguirewoods.com
rgantt@mcguirewoods.com

*Attorneys for CSX Transportation, Inc.*

James L. Chapman, IV, Esq.
W. Ryan Snow, Esq.
Darius K. Davenport, Esq.
David C. Hartnett, Esq.
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com

*Attorneys for Norfolk and Portsmouth Belt*
*Line Railroad Company*

/s/Michael E. Lacy
Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
Massie P. Cooper (VSB No. 82510)
TROUTMAN SANDERS, LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-6061
Email: alan.wingfield@troutman.com
Email: michael.lacy@troutman.com
Email: massie.cooper@troutman.com

42165611