IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CSX TRANSPORTATION, INC.,
individually and on behalf of NORFOLK
& PORTSMOUTH BELT LINE
RAILROAD COMPANY,

       Plaintiff,

v.                                                                            Civil Action No. 2:18-cv-530-MSD-LRL

NORFOLK SOUTHERN RAILWAY
COMPANY, *et al.*,

       Defendants.

_____/

**CSX TRANSPORTATION INC.'S MEMORANDUM IN OPPOSITION
TO NORFOLK SOUTHERN RAILWAY COMPANY'S MOTION TO COMPEL**

      Plaintiff CSX Transportation, Inc. ("CSXT"), by counsel, pursuant to Local Civil Rule 7(F), states as follows in opposition to the Motion to Compel the Production of Documents ("Motion") filed by Defendant Norfolk Southern Railway Company ("NS"). *See* ECF No. 166:

**INTRODUCTION**

      The attorney-client privilege is sacred, and courts therefore assume that communications between an attorney and his or her client are for the purpose of requesting or providing privileged legal advice. This presumption extends to in-house counsel like Steven Armbrust, an attorney who has worked in CSXT's Law Department for the past fifteen years. In addition to his role as legal advisor to CSX, Mr. Armbrust served for five years as a director on the board of Defendant Norfolk & Portsmouth Beltline Railway Company ("NPBL"), a switching railroad jointly owned by NS and CSX.

1

NS seizes on Mr. Armbrust's role as an NPBL board member to challenge privileged documents CSXT redacted or withheld from production. But NS's Motion misses the mark. First, NS is wrong to suggest that CSXT failed to adequately support its privilege claims. CSXT produced a timely, detailed privilege log in accordance with the parties' agreed ESI Order. That log more than satisfies CSXT's burden to provide a prima facie basis for its privilege claims.

Accordingly, NS bears the burden to offer a factual basis sufficient to support a reasonable, good faith belief that *in camera* review of the challenged documents is warranted. NS has not carried this burden. It offers nothing more than speculation and conjecture to support its argument that the challenged communications involved Mr. Armbrust's role as a "business advisor" to CSXT—a role that Mr. Armbrust has testified that he *never* played. As NS has not proffered specific facts justifying *in camera* review—much less production—of the challenged documents, its Motion should be denied.

## BACKGROUND

Mr. Armbrust has served as in-house counsel for CSX Corporation and its subsidiaries (collectively, "CSX") for fifteen years. *See* Deposition of Steven Armbrust ("Armbrust Dep.") at 15:12-17:21, attached as **Exhibit A**. He has worked exclusively in the Law Department, and he has never held a non-legal position at CSX. *See id.* at 16:5-7. Mr. Armbrust began providing legal advice to CSX employees involved with Virginia ports and the NPBL in late 2008. *See id.* at 18:14-21. From March 11, 2010 until June 10, 2015, Mr. Armbrust separately served as a CSX-appointed director of the NPBL. *See* ECF No. 167 at 3 (citing NPBL's First Supp. Answers to CSXT's Interrogatory No. 6, dated Feb. 11, 2020).

As Mr. Armbrust served on the NPBL Board for a portion of the time period relevant to its claims, CSXT identified him in its initial disclosures and included him on its list of ESI custodians.

2

*See* ECF No. 167 at 4. CSXT produced non-privileged documents for Mr. Armbrust responsive to Defendants' discovery requests, and it properly and timely logged documents withheld for privilege in accordance with the parties' agreed ESI Order. *See* ECF No. 83.

On February 10, NS noticed Mr. Armbrust's deposition for March 11. *See* Deposition Notice, attached as **Exhibit B**. The night before Mr. Armbrust's deposition, counsel for NS sent an email to counsel for CSXT, challenging more than 220 documents that CSXT redacted or withheld for privilege and demanding that they be reproduced before Mr. Armbrust's deposition the following morning. *See* Email from Cooper to McFarland, sent March 10, 2020 at 8:11 p.m., attached as **Exhibit C**; *see also* Letter from Cooper to McFarland, ECF No. 167 at Ex. 2. As NS concedes, CSX had produced the majority of the challenged documents nearly a month earlier, on February 13.[1] *See* ECF No. 167 at 5 n.6.

At his deposition on March 11, Mr. Armbrust testified about certain NPBL-related topics *in his capacity as an NPBL Board member*. *See, e.g.*, Armbrust Dep. 41:9-12 (Mr. Lynch, counsel for NS: "[A]ll my questions right now are directed to you as an NPBL board member, not as CSX in-house counsel."); *id.* at 45:15-17 (Mr. Lynch: "I'm asking you as a board member presently. When you were a board member, did you understand what a uniform rate was? Mr. Armbrust:

---

[1] As NS notes, CSXT made another small document production on February 27. *See* ECF No. 167 at 5. This should have come as no surprise to NS, since CSXT told NS in mid-January that it intended to substantially complete its document production "by the last week in February." *See* Letter from Hatch to Lacy dated Jan. 15, 2020, attached as **Exhibit D**. By contrast, NS produced tens of thousands of documents to CSXT weeks *after* it had represented that its productions would be substantially complete, and after CSXT had scheduled and conducted nearly all of its depositions. *Compare* ECF No. 111 at 2 ("NSR expects to substantially complete its production . . . by February 7.") *with* **Exhibit E** (emails transmitting NS productions on February 28 (95,582 pages of documents) and March 10 (106,284 pages of documents)). Ultimately, none of NS's excuses justifies its unreasonable demand that CSXT review, assess, and reproduce hundreds of privileged documents less than 14 hours before Mr. Armbrust's deposition was scheduled to begin on the date that NS itself selected.

While I was a board member, I understood what a uniform rate was."); *id.* at 48:22-49:1 (Mr. Lynch: "You can answer based on your understanding as a board member at the time."); *id.* 50:1-10 (Mr. Armbrust clarifying that his testimony about the NPBL Operating Agreement was "in [his] capacity as a board member"); *id.* at 58:14-17 (Mr. Lynch: "Wouldn't you agree?" Mr. Armbrust: "As a board member, I would not agree . . .").

None of this testimony implies that Mr. Armbrust served as a "non-legal business advisor" to CSX. *See* ECF No. 167 at 5. To the contrary, Mr. Armbrust confirmed during his deposition that he has *never* held a non-legal position at CSX. *See* Armbrust Dep. 16:5-7 (noting all of his positions have been in CSX's legal department); *id.* at 29:18-21 (Mr Lynch: "You've never had any type of business or operational jobs for CSX or any other railroad, correct?" Mr. Armbrust: "That's correct."). Mr. Armbrust explicitly and repeatedly testified that he does *not* work in a commercial or business role and has no expertise or authority in such matters. *See, e.g.*, *id.* at 137:4-20 ("I'm not on the commercial side. I don't know whether more traffic would have been moved. . . ."); *id.* at 141:16-20 ("I don't know enough, frankly, about how the commercial aspect worked in terms of who's the freight payor . . . ."); *id.* at 165:15-22 ("I'm not a commercial expert or a market expert."); *id.* at 248:1-5 ("I wouldn't know how long it would take to conduct commercial and operational analysis . . . so I don't have a useful answer on that."); *id.* at 310:7-9 ("[A]gain, I'm not the commercial person."). Mr. Armbrust also stated unequivocally that, when communicating internally with CSX employees about the NPBL or other issues related to Virginia ports, he understood those communications to be in his role as in-house counsel. *See id.* at 283:9-13 ("I don't recall having any conversations with individuals [at CSX] as an NPBL board member. . . . [T]he only occasion would really be to communicate with the Belt Line management or fellow board members.").

Following Mr. Armbrust's deposition, CSXT carefully reviewed the privileged documents challenged by NS. By that review, CSXT confirmed the propriety of the majority of its privilege determinations. CSXT did agree to produce some documents that had been inadvertently withheld or redacted as privileged, and it has done so. As CSXT did not downgrade and produce all of the documents NS challenged, NS filed the Motion.

## LEGAL STANDARD

**I.     The Sacred Attorney-Client Privilege Extends to In-House Counsel.**

As this Court has explained, "the attorney-client privilege is 'sacred.'" *A1 Procurement, LLC v. Thermcor, Inc.*, No. 2:15-cv-15, 2015 U.S. Dist. LEXIS 196322, at *13 (E.D. Va. July 27, 2015) (Leonard, J.); *see also United States v. Schell*, 775 F.2d 559, 565 (4th Cir. 1985) ("The relationship between an attorney and his client is a sacred one."). Consistent with this sacred status, "[u]nder federal law, there is a presumption that communications between a client and his or her attorney are for the purposes of requesting legal guidance." *Burnett v. Ford Motor Co.*, No. 3:13-cv-14207, 2015 U.S. Dist. LEXIS 48623, at *33-34 (S.D. W. Va. Apr. 14, 2015) (citing *Yankee Atomic Elec. Co. v. United States*, 54 Fed. Cl. 306, 315 (2002) ("[A] communication by a client with his or her attorney is presumptively a request for legal advice.")).

This protection is not exclusive to outside counsel, and "the attorney-client privilege applies to 'in-house' counsel *just as it would to any other attorney*." *Johnson v. Ford Motor Co.*, No. 3:13-cv-06529, 2016 U.S. Dist. LEXIS 44267, at *81-82 (S.D. W. Va. Mar. 28, 2016) (emphasis added). Indeed, as the cases cited by NS make clear, "[t]he attorney-client privilege applies to communications with attorneys, regardless of whether the attorney is outside counsel or corporate staff counsel." *ABB Kent-Taylor, Inc. v. Stallings & Co.*, 172 F.R.D. 53, 55 (W.D.N.Y. 1996); *see also Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*,

5

230 F.R.D. 398, 411 (D. Md. 2005) ("As a threshold matter, the attorney-client privilege applies to 'in-house' counsel just as it would to any other attorney.").

Communications seeking advice from in-house counsel are presumptively privileged, unless the attorney also holds a non-legal role within the organization. *See Boca Investerings P'ship v. United States*, 31 F.Supp.2d 9, 12 (D.D.C. 1998) ("There is a presumption that a lawyer in the legal department or working for the general counsel is most often giving legal advice, while the opposite presumption applies to a lawyer . . . who works for the Financial Group or some other seemingly management or business side of the house."); *see also Burd v. Ford Motor Co.*, No. 3:13-cv-20976, 2015 U.S. Dist. LEXIS 48627, at *29 (S.D. W. Va. Apr. 14, 2015) ("[T]here is a presumption that communications between a client and his or her attorney are for the purposes of requesting legal guidance, although that presumption may not extend to communications with a corporation's in-house counsel *when counsel also holds an executive position with the company*.") (emphasis added).

## II. A Privilege Log is Prima Facie Evidence of Privilege.

As the party asserting privilege, CSXT has the initial burden of demonstrating its applicability. *NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 501-03 (4th Cir. 2011) (citing *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982)). This burden involves both procedural and substantive elements. *Id.* Procedurally, CSXT must "'expressly make the claim' and 'describe the nature of the documents . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.'" *Id.* (quoting Fed. R. Civ. P. 26(a)(5)(A)). Substantively, CSXT must show:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or is his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by

6

>his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Id.* (citing *Jones*, 696 F.2d at 1072).

Contrary to NS's suggestion, CSXT need not provide an affidavit supporting its privilege claims. To the contrary, CSXT already satisfied its prima facie evidentiary burden by producing a timely privilege log.[2] *Id.*; *see also Acosta v. Med. Staffing of Am., LLC*, No. 2:18cv226, 2019 U.S. Dist. LEXIS 206674, at *6-7 (E.D. Va. Mar. 15, 2019) ("A party can sustain this burden through a properly prepared privilege log that identifies each document withheld, and contains information regarding the nature of the privilege/protection claimed, the name of the person making/receiving the communication, the date and place of the communication, and the document's general subject matter.").

A privilege log need not be perfectly detailed as long as the court can "reasonably conclude that all of the elements described in Rule 26(a)(5) and the test set forth in *Jones* ha[s] been met." *Interbake Foods*, 637 F.3d at 502; *see also Asghari-Kamrani v. United Servs. Auto. Ass'n*, No. 2:15cv478, 2016 U.S. Dist. LEXIS 191666, at *5-6 (E.D. Va. Oct. 21, 2016) (Leonard, J.) ("Although the information in the log is somewhat sparse, *Interbake Food* teaches that the log need not be overly detailed, it merely must provide the requesting party with sufficient information to be able to assess the privilege claim."). In fact, a party need not even describe each document individually, but may provide instead a "categorical privilege log" complying with Rule 26(b)(5).

---

[2] In suggesting that an affidavit is also required, NS cites a single, 35-year-old case from another district court in this circuit. *See* ECF No. 167 at 11, 15 (citing *Byrnes v. Jetnet Corp.*, 111 F.R.D. 68, 71 (M.D.N.C. 1986)). That opinion is not controlling, *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538 n.1 (4th Cir. 2017), and, to the extent that it conflicts with the Fourth Circuit's more recent decision in *Interbake Foods*, the Court should disregard it.

*Asghari-Kamrani* at *6, 9-10 ("District Courts within the Fourth Circuit have found that a party can include a summary of specific facts to claim privilege for categories of documents.").

Once the party asserting privilege has met its prima facie burden, the party challenging that privilege claim must justify *in camera* inspection of the documents by "advancing a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *In re Zetia Ezetimibe Antitrust Litig.*, MDL No. 2:18md2836, 2019 U.S. Dist. LEXIS 206524, at *24-25 (E.D. Va. July 16, 2019); *see also G.D. v. Monarch Plastic Surgery*, 239 F.R.D. 641, 650 (D. Kan. 2007) (requiring a "cogent basis" to justify *in camera* review). Put differently, NS "must make a threshold 'showing of a factual basis adequate to support a good faith belief by a reasonable person' that an exception to the privilege may apply." *In re Zetia Ezetimibe Antitrust Litig.*, 2019 U.S. Dist. LEXIS 206524, at *31 (quoting *In re Grand Jury Subpoena*, 274 F. App'x 306, 310 (4th Cir. 2008)).

Mere speculation is not sufficient. *See, e.g.*, *Revak v. Miller*, No. 7:18-CV-206-FL, 2020 U.S. Dist. LEXIS 40287, at *31-32 (E.D.N.C. Mar. 9, 2020) ("[T]he privilege log sufficiently demonstrates that counsel were included on the email for the purpose of receiving information to provide a legal opinion and mere speculation that the purpose was business and not legal does not justify *in camera* review."); *see also Hepburn v. Workplace Benefits, LLC*, No. 5:13-CV-00441, 2014 U.S. Dist. LEXIS 196983, at *11-12 (E.D.N.C. Apr. 18, 2014) (upholding privilege claims without *in camera* inspection where it was "plain from the descriptions of the documents [in the privilege log] that the communications at issue were created for the purpose of either receiving or acting upon legal advice," and the moving party "offered only speculation" that the challenged documents "were made for a purpose other than obtaining legal advice").

# ARGUMENT

CSXT's timely privilege log provides prima facie support for its privilege claims. *See Interbake Foods*, 637 F.3d at 502; *see also* ECF No. 167 at Exhibit 10. Accordingly, NS bears the burden of "advancing a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *In re Zetia Ezetimibe Antitrust Litig.*, 2019 U.S. Dist. LEXIS 206524, at *24-25. NS has not met its burden, and its Motion should be denied.

### I. The "Downgrade Criteria" identified by NS do not provide a sufficient factual basis to justify *in camera* review or production of the challenged documents.

NS's Motion rests entirely on its theory that four factual criteria (collectively referred to as the "Downgrade Criteria"), "taken together, strongly suggest that the communications are not privileged." ECF No. 167 at 4. Those criteria are:

- Mr. Armbrust is the only apparent attorney on the email;
- The email was sent or received while Mr. Armbrust served as an NPBL board member;
- The email subject "appear[s] to relate to NPBL or [Mr. Armbrust's] role on the NPBL Board"; and
- The email "does not include any mark or language showing an intent that the communication be considered privileged, nor does it appear to reflect a request for, or provision of, legal advice by Armbrust."

ECF No. 167 at 4. According to NS, the Downgrade Criteria indicate that the challenged documents involved non-privileged "business matters relating to CSXT or NPBL." *Id.* at 12.

Initially, many documents challenged by NS do not satisfy its own Downgrade Criteria. First, as NS admits, it seeks to compel production of several communications sent *before* Mr. Armbrust joined the NPBL board, at a time when there is no reasonable, good faith basis to believe he was acting in any capacity other than as legal counsel for CSX. *See* ECF No. 167 at 13-14. NS also seeks to compel production of redacted and withheld emails with subject lines "relating to

9

VIT, NIT, or Hampton Roads Ports." ECF No. 167 at 18; *see also id.* at 20. Those documents do not, on their face, "relate to NPBL or [Mr. Armbrust's] role on the NPBL Board," *id.* at 4, and NS offers no facts supporting its speculation that these internal CSX emails "relate to Armbrust's role as business advisor and/or an NPBL Board member." *Id.* at 18.

In addition, four redacted emails[3] and sixteen withheld emails[4] challenged by NS include "privileged" and/or "confidential" markings, which NS concedes is "strong evidence" that the participants considered those communications to be privileged. *See* ECF No. 167 at 12-13. And, although NS claims to challenge only email communications, ten documents listed on Exhibit 10 are actually standalone electronic documents, including drafts and revisions reflecting Mr. Armbrust's legal opinions.[5] Finally, NS seeks to compel production of a draft document that Mr. Armbrust attached to an email *sent to outside counsel*, though NS tellingly omits the log entry for this privileged communication from its list of challenged documents.[6] There is no "cogent basis" for *in camera* review or production of any of the documents that do not even satisfy the Downgrade Criteria proffered by NS as the basis for its Motion. *Monarch Plastic Surgery*, 239 F.R.D. at 650.

---

[3] CSXT0084558, CSXT0086763, CSXT0087890, and CSXT0087897. These documents were originally produced with redactions covering the confidentiality and privilege notations. As soon as CSXT realized this, it reproduced the documents with those markings exposed. *See* Email from Peterson to Lacy dated May 19, 2020, attached as **Exhibit F.**

[4] CSXT0083351, CSXT0087440, CSXT0085636, CSXT0086675, CSXT0086678, CSXT0088370, CSXT0082908, CSXT0083042, CSXT0083019, CSXT0083044, CSXT0083048, CSXT0083336, CSXT0088373, CSXT0088376, CSXT0088383, and CSXT0088387.

[5] CSXT0079425, CSXT0083022, CSXT0083147, CSXT0083179, CSXT0083189, CSXT0083263, CSXT0083379, CSXT0083580, CSXT0083694, and CSXT0085527.

[6] *Compare* Exhibit 10 (challenging CSXT0096227) *with* Excerpt from CSXT Privilege Log, attached as **Exhibit G** (describing cover email, CSXT0096226, as an "email string among outside counsel and in-house counsel regarding Virginia Port Authority questionnaire provides information requested by in-house counsel for the purpose of rendering a legal opinion").

Moreover, the Downgrade Criteria do not provide a sufficient "factual basis" for challenging CSXT's properly supported privilege claims, because they are contradicted by the record. Indeed, Mr. Armbrust testified at his deposition the he did not recall *any* internal communications with CSX employees in which he acted in his capacity as an NPBL board member rather than as an in-house legal advisor. *See* Armbrust Dep. 283:9-13 ("I don't recall having any conversations with individuals [at CSX] as an NPBL board member. . . . [T]he only occasion would really be to communicate with the Belt Line management or fellow board members."). Mr. Armbrust also testified that he has only worked in CSX's Law Department, and that he has never served in a business, commercial, or operational role. *See supra* at 3 (collecting deposition testimony).

This case is thus a far cry from *Neuberger Berman*, the case on which NS principally relies. *See* ECF No. 167 at 12. In *Neuberger Berman*, the court carefully parsed whether the "advice sought and given [was] in the nature of business, as opposed to legal" advice. 230 F.R.D. at 411. But the court made clear that this was "a particularly relevant inquiry" because the attorney acknowledged that he had a "pervasive role" in the company, including "act[ing] in officer and director capacities . . . while also functioning like an 'in-house counsel.'" *Id.* As the attorney worked in both legal and non-legal roles, the court found that the company's privilege claims required close scrutiny. *See id.*; *see also Burd*, 2015 U.S. Dist. LEXIS 48627 at *29 (noting that communications involving in-house counsel are presumptively privileged unless counsel also holds a non-legal position with the company).

Unlike the attorney in *Neuberger Berman*, Mr. Armbrust has always played only one role at CSX—that of in-house legal counsel. *See supra* at 3 (collecting deposition testimony). The fact that Mr. Armbrust served *another entity* in a non-legal capacity while serving as an NPBL board

11

member is insufficient to overcome the "presumption that a lawyer in the legal department or working for the general counsel is most often giving legal advice" when he communicates internally with company employees. *Boca Investerings*, 31 F. Supp. 2d at 12.

The Downgrade Criteria proffered by NS do not provide "a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *In re Zetia Ezetimibe Antitrust Litig.*, 2019 U.S. Dist. LEXIS 206524, at *24-25. As speculation alone is inadequate to challenge CSXT's properly supported privilege claims, NS's Motion should be denied.

## II. None of NS's Remaining Arguments Supports its Privilege Challenges.

In addition to the Downgrade Criteria, NS contends that certain characteristics of CSXT's privileged documents "strongly indicate" that the communications involve non-privileged business matters rather than privileged legal advice. *See* ECF No. 167 at 16-21. In fact, none of these characteristics provides a "cogent basis" for *in camera* review or production under the circumstances.

### a. Documents can be privileged even if Mr. Armbrust is not the author or direct recipient.

NS argues that CSXT cannot claim privilege over communications for which Mr. Armbrust is not "an author or recipient," ECF No. 167 at 16, or on which Mr. Armbrust was only copied, *id.* at 20. But "a document need not be authored [by] or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds." *Hepburn*, 2014 U.S. Dist. LEXIS 196983, at *5; *see also Stopka v. Am. Family Mut. Ins. Co.*, 816 F. Supp. 2d 516, 526-27 (N.D. Ill. 2011) ("The fact that an email may not involve an attorney as a direct sender or recipient does not necessarily mean that the attorney-client privilege cannot apply."). Moreover, "an attorney does not have to author the communication for privilege to attach, and likewise the fact that a corporate

12

attorney is copied on an email, rather than appearing as a direct recipient, is not fatal to a claim of privilege." *Anderson v. Murphy-Brown, LLC* (*In re NC Swine Farm Nuisance Litig.*), No. 5:15-CV-13, 2017 U.S. Dist. LEXIS 81572, at *28 (E.D.N.C. May 26, 2017). The "ultimate question" is "whether the substance of the communication involves receiving or acting upon legal advice, or otherwise providing information necessary to securing legal advice." *Hepburn*, 2014 U.S. Dist. LEXIS 196983, at *11.

NS offers only vague speculation to suggest that the communications on which Mr. Armbrust is only copied, or that do not directly include Mr. Armbrust, do not involve legal advice. *See, e.g.*, ECF No. 167 at 20 (noting only that the "timing and subject" of the communications suggests that Mr. Armbrust "was included . . . for informational business purposes"); *see also id.* at 16 (noting only that the challenged communications on which Mr. Armbrust is not an author or recipient "relate to NPBL matters"). This is not sufficient to overcome CSXT's properly supported claims of privilege. *See In re N.C. Swine Farm Nuisance Litig.*, 2017 U.S. Dist. LEXIS 81572, at *28 (holding that the defendant's privilege log sufficiently demonstrated that the challenged communications involved legal advice, and that the plaintiffs "failed to provide a factual basis that would justify *in camera* review").

### b. The privilege is not waived where challenged documents were shared only with CSXT employees who had a "need to know."

NS also suggests that certain categories of communications should be produced because they involved multiple recipients. NS speculates that "all of the recipients did not 'need to know'" the privileged information. ECF No. 167 at 12; *see also id.* at 16-17. But there is no limited number of individuals to whom internal privileged communications can be sent, and in the corporate context, multiple employees, particularly those within a single team or in related units, often "need to know" privileged information.

13

"Intra-corporate communications to and from counsel can retain a privilege if disclosure is limited to those who have a 'need to know' the advice of counsel." *In re N.Y. Renu with Moistureloc Prod. Liab. Litig.*, No. 766,000/2007, 2008 U.S. Dist. LEXIS 88515, at *4 (D.S.C. May 6, 2008) (quoting *Fed. Trade Comm'n v. GlaxoSmithKline*, 352 U.S. App. D.C. 343, 294 F.3d 141, 147-48 (D.C. Cir. 2002)). "[T]he company's burden 'is to show that it limited its dissemination of the documents in keeping with their asserted confidentiality, *not to justify each determination that a particular employee should have access to the information therein*.'" *Id.* (emphasis added); *see also In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18md2836, 2020 U.S. Dist. LEXIS 61020, at *16 (E.D. Va. Feb. 6, 2020) ("[W]hen documents specifically convey legal advice to the limited number of people necessary for the company to act on that legal advice, they retain their confidential and thus privileged character.").

In determining whether a privileged communication has been disseminated to only those who "need to know," courts consider the context "to determine whether a request for legal advice is in fact fairly implied, taking into account the facts surrounding the creation of the document and the nature of the document." *In re N.Y. Renu with Moistureloc Prod. Liab. Litig.*, 2008 U.S. Dist. LEXIS 88515, at *6-7. For example, in *In re N.Y. Renu*, the court found the "need to know" standard satisfied with respect to an email "seeking a combination of business and legal advice" from corporate counsel and other high-level personnel, because it was "fair to assume that the predominant reason for sending it to corporate counsel is to seek legal advice." *Id.* at *6.

NS offers nothing but vague speculation that the challenged communications were distributed beyond those with a "need to know." *See* ECF No. 16 (noting only that Mr. Armbrust is "just one of at least eight CSXT recipients"); *id.* (suggesting that emails including between five and eight CSXT employees that involved NPBL property sales and comments for a news article

involve business rather than legal advice). That is not sufficient. *See Hosler v. Smithfield Packing Co.*, No. 7:07-CV-166-H ALL, 2009 U.S. Dist. LEXIS 146236, at *8-9 (E.D.N.C. Oct. 30, 2009) ("[D]espite plaintiffs' speculative conclusions, there is no evidence that the documents in question were widely disseminated or provided to anyone other than those with a need to know."); *see also Santrade, Ltd. v. General Elec. Co.*, 150 F.R.D. 539, 544 (E.D.N.C. 1993) ("A document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds. . . [I]n instances where the client is a corporation, documents subject to the privilege may be transmitted between non-attorneys to relay information requested by attorneys.").

In support of its "need to know" argument, NS relies primarily on *ePlus Inc. v. Lawson Software, Inc.*, a case in which the court found the party claiming privilege "had not satisfied its burden to establish that a privilege applie[d]" to communications "widely disseminated" within the company. 280 F.R.D. 247, 253 (E.D. Va. 2012). In *ePlus*, the communications at issue involved "ten or more non-attorneys," including, in some instances, "unidentified distribution lists." *Id.* at 253. Moreover, the withholding party in that case did not provide a privilege log with "author or recipient" information, or even establish that the individuals receiving the communications were company employees. *Id.* Under those circumstances, the court reasonably concluded that the communications may have been disseminated beyond those with a "need to know."

That is not the case here. CSXT's privilege log identifies each participant in a privileged communication and indicates with an asterisk those who are attorneys. *See generally* Ex. 10. None of the challenged communications were sent to "ten or more non-attorneys" or were circulated to unidentified distribution lists. *See id.* To the contrary, each of these communications involves a

15

small group of CSX employees, most of whom were identified in CSXT's Rule 26(a)(1) initial disclosures as business representatives with responsibilities involving Virginia ports, intermodal sales, and/or joint facilities including NPBL. This fulsome record demonstrates that the challenged communications were sent to only those with a "need to know" the privileged information. NS's speculation to the contrary is insufficient to justify *in camera* review or production of these documents.[7]

## CONCLUSION

CSXT satisfied its prima facie burden to establish that the attorney-client privilege applies to the documents challenged by NS by producing a timely privilege log in accordance with the parties' agreed ESI Order. It was thus incumbent on NS to offer the Court a sufficient factual basis to justify *in camera* inspection of those documents. Providing speculation alone, NS has not met its burden. Accordingly, CSXT respectfully requests that the Court deny NS's Motion in its entirety, and award it its costs and attorneys' fees incurred in defending the Motion.

Dated: May 27, 2020             Respectfully submitted,

**CSX TRANSPORTATION, INC.**
*By Counsel*

*/s/ Robert W. McFarland*
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
Jeanne E. Noonan (VSB No. 87863)

---

[7] Buried at the end of its Motion, NS asks the Court to allow it to depose Mr. Armbrust "on all emails that have been produced and/or unredacted since [his] deposition." ECF No. 167 at 21. NS offers no explanation as to why further deposition of Mr. Armbrust would be appropriate. The Court should therefore reject this request outright. *See, e.g.*, *Stoddard v. PLIVA USA, Inc.*, No. 4:08-CV-173-H(3), 2013 U.S. Dist. LEXIS 188760, at *4 (E.D.N.C. May 3, 2013) (requiring more than "scant argument" in support of a request to re-depose a witness); *see also Adair v. EQT Prod. Co.*, No. 1:10CV00037, 2015 U.S. Dist. LEXIS 14255, at *14 (W.D. Va. Feb. 6, 2015) (rejecting request where "[t]he plaintiffs have not explained how further depositions on these topics would be beneficial, much less justified the burden and expense further depositions would place on the defendants").

V. Kathleen Dougherty (VSB No. 77294)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Telephone: (757) 640-3716
Facsimile: (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: jnoonan@mcguirewoods.com
E-mail: vkdougherty@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219-3916
Telephone: (804) 775-1000
Facsimile: (804) 698-2026
E-mail: bjustus@mcguirewoods.com
E-mail: apeterson@mcguirewoods.com

17

## CERTIFICATE OF SERVICE

I certify that on this 27th day of May, 2020, a true and correct copy of the foregoing was served on all counsel of record via Notice of Electronic Filing by filing with the Court's CM/ECF system.

*/s/ Robert W. McFarland*
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
Jeanne E. Noonan (VSB No. 87863)
V. Kathleen Dougherty (VSB No. 77294)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia  23510-1655
Telephone: (757) 640-3716
Facsimile:  (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: jnoonan@mcguirewoods.com
E-mail: vkdougherty@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219-3916
Telephone:  (804) 775-1000
Facsimile:  (804) 698-2026
E-mail: bjustus@mcguirewoods.com
E-mail: apeterson@mcguirewoods.com