UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| CSX TRANSPORTATION, INC., ) | |
| individually and on behalf of NORFOLK ) | |
| & PORTSMOUTH BELT LINE ) | |
| RAILROAD COMPANY, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | No. 2:18-cv-530-MSD-LRL |
| ) | |
| NORFOLK SOUTHERN RAILWAY ) | |
| COMPANY, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

**DEFENDANT NORFOLK SOUTHERN RAILWAY COMPANY'S
REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL THE PRODUCTION OF
DOCUMENTS FROM PLAINTIFF CSX TRANSPORTATION, INC.**

Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure and Rules 37(B) and 7(F) of the Local Rules of the U.S. District Court for the Eastern District of Virginia, Defendant Norfolk Southern Railway Company ("NSR"), by counsel, respectfully submits this reply brief in further support of its Motion to Compel Plaintiff CSX Transportation, Inc. ("CSXT") to produce documents it has improperly redacted or withheld as privileged.

## I.     INTRODUCTION

CSXT's Opposition argues that NSR's Motion "offers nothing more than speculation and conjecture" that the challenged emails involving Steven Armbrust ("Armbrust") are not privileged. ECF No. 176. To the contrary, the Downgrade Criteria[1] created by NSR provides an ample factual

---

[1] The Downgrade Criteria are emails in which (a) Armbrust is the only attorney on the email, (b) the email was created during the five-year period in which Armbrust served as a member of the co-Defendant Norfolk & Portsmouth Beltline Railway Company's ("NPBL") board of directors, (c) the subject of the email relates to NPBL business; and (d) the email is not marked privileged or confidential.

basis for NSR's "reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011).

The Downgrade Criteria identifies emails involving Armbrust during the five-year period when he served in a distinctly non-legal role as a member of the NPBL board. Because CSXT chose to have Armbrust serve as one of CSXT's appointed members of the NPBL board, communications involving Armbrust while he was a board member should not be presumed to be privileged and should be closely scrutinized by the Court. In fact, the emails that CSXT unredacted and/or produced in response to NSR's privilege challenges show that, contrary to Armbrust's deposition testimony, he routinely communicated with CSXT employees in his role as NPBL board member and business advisor, and hence he did have a distinctly non-legal role. Further, in response to NSR's challenges to CSXT's privilege claims based on the Downgrade Criteria, CSXT has admitted that at least 153 emails were improperly redacted or withheld. Hence, NSR's "speculation and conjecture" already has resulted in CSXT abandoning *en masse* unjustified claims of privilege.

In sum, the Downgrade Criteria have been validated as raising legitimate questions about whether CSXT has erroneously claimed privilege over communications that do not involve legal advice merely because Armbrust was included on the communication.[2] CSXT's Opposition offers no explanation as to why the challenged emails are privileged other than what is stated in its

---

[2] NSR withdraws its challenge to ten documents that CSXT logged as stand-alone documents, *i.e.*, not attached to emails, and, therefore, do not meet the Downgrade Criteria. (CSXT0079425, CSXT0083022, CSXT0083147, CSXT0083179, CSXT0083189, CSXT0083263, CSXT0083379, CSXT0083580, CSXT0083694, CSXT0085527). NSR also withdraws its challenge to CSXT0096227, which was produced as an attachment to an email sent to outside counsel and, therefore, also does not meet the Downgrade Criteria.

privilege log.[3] Based on the facts presented by NSR, an *in camera* review of the remaining emails meeting the Downgrade Criteria, as well as the two emails that predate Armbrust's time as a member of the NPBL board, is warranted.

## II.  ARGUMENT

**A.  The attorney-client privilege is narrowly construed, and CSXT's privilege log is not a bar to the Court conducting an *in camera* review.**

CSXT starts by arguing that the attorney-client privilege is "sacred" and citing a case dealing with the waiver of the privilege, which is not at issue here. *See* Opp. at 5 (citing *A1 Procurement, LLC v. Thermcor, Inc.*, No. 2:15-cv-15, 2015 U.S. Dist. LEXIS 196322, at *13 (E.D. Va. July 27, 2015) (refusing to find that the privilege had been waived based on selective disclosure)). CSXT's position ignores the well-established principle that "the privilege is to be strictly confined within the narrowest possible limits consistent with the logic of its principle." *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984) (quotations omitted). *See also Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 271 (E.D. Va. 2004) ("The application of the attorney-client and work product privileges serves valid and important purposes in our legal system, but those privileges remove otherwise pertinent information from the fact-finder, thereby impeding the full and free discovery of the truth.").

---

[3] In its Opposition, CSXT asserts for the first time that four redacted emails (CSXT0084558, CSXT0086763, CSXT0087890, and CSXT0087897), and sixteen withheld emails (CSXT0083351, CSXT0087440, CSXT0085636, CSXT0086675, CSXT0086678, CSXT0088370, CSXT0082908, CSXT0083042, CSXT0083019, CSXT0083044, CSXT0083048, CSXT0083336, CSXT0088373, CSXT0088376, CSXT0088383, and CSXT0088387) challenged by NSR have "privileged" and/or "confidential" markings. NSR acknowledged in its opening brief that such markings provide strong evidence that the participants to the communication intended to protect it in some manner. Accordingly, based on CSXT's post-Motion production of the four redacted documents with the redactions corrected to show these markings, and its representation that these same markings exist on the sixteen withheld emails, NSR withdraws its challenge to these documents. NSR submits, however, that the Court can safely assume the remaining 59 withheld emails (**Exhibit 1**) and 104 redacted emails (**Exhibit 2**) challenged by NSR contain no such markings. This absence of evidence that the participants to these communications intended to protect them in some manner should be factored into the Court's decision to grant the Motion to Compel, or at least conduct an *in camera* inspection of these documents.

As explained in NSR's opening brief, "[t]he burden to demonstrate the applicability of the privilege rests with its proponent. In practical terms, this burden requires the proponent to explain, through *ex parte* submissions if necessary to maintain confidentiality, the significance or meaning of an otherwise cryptic document." *Under Seal*, 748 F.2d at 875 (citations omitted). CSXT's opposition argues that because the challenged emails are included on its privilege log, it need not provide any additional justification for its claim of privilege over them. Opp. at 7. Yet, the cases on which CSXT primarily relies were decided based on proof, declarations or affidavits provided to justify the assertion of privilege. *See, e.g.*, *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18MD2836, 2019 WL 6122012, at *3 (E.D. Va. July 16, 2019) (repeatedly citing and relying upon declarations to conclude that "*[t]hese declarations are sufficient to establish* a claim of both attorney/client privilege and opinion work product") (emphasis added); *Johnson v. Ford Motor Co.*, No. 3:13-CV-06529, 2016 WL 1241538, at *11 (S.D.W. Va. Mar. 28, 2016) ("Mr. Logel's affidavit, Mr. Love's affidavit, and Mr. Nevi's deposition testimony all support this conclusion [that an attorney-client relationship existed].").

Neither of the two emails that predate Armbrust's time as a member of the NPBL board (but otherwise meet the Downgrade Criteria) are included on CSXT's privilege log, and CSXT has not provided any explanation as to why the redacted portions of these emails are privileged. Therefore, NSR has no way to assess whether CSXT's redactions of those emails is proper. And CSXT's privilege log, even if sufficiently detailed, has included emails meeting the Downgrade Criteria that CSXT has conceded are not privileged. CSXT has provided no explanation for why the challenged emails, which satisfy the same Downgrade Criteria, should not also be produced without redaction, other than citing to its admittedly overbroad privileged log.

Notwithstanding its reliance on its privilege log, CSXT concedes that an *in camera* review of the challenged documents is justified if there is "'a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged.'" Opp. at 8 (quoting *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18MD2836, 2019 WL 6122012, at *4 (E.D. Va. July 16, 2019)). "The *in camera* review process can be an effective means to ensure that the attorney-client privilege and work product doctrine are not abused. At the same time, use of the *in camera* review process must be conducted with respect for the attorney-client privilege." *Paterno v. Wells Fargo Ins. Servs.*, No. 2:12-cv-04692, 2013 U.S. Dist. LEXIS 204587, at *5 (S.D.W.Va. Oct. 4, 2013).[4]

**B.     There is strong factual support justifying an *in camera* review of the challenged emails.**

As set forth in NSR's opening brief and herein, NSR has shown the necessary factual basis to have a good faith belief that an *in camera* inspection will result in CSXT having to produce even more documents over which is has claimed privileged. CSXT attacks NSR's use of the Downgrade Criteria, which NSR developed in response to the obvious overbreadth of CSXT's claims of privilege and to substantially narrow the scope of its privilege challenge. As explained above, applying the Downgrade Criteria to CSXT's privilege claims proved effective, and the Downgrade Criteria have been validated by CSXT's own actions: CSXT already admitted that it improperly withheld or redacted at least 153 communications satisfying the criteria.

---

[4] One of the cases on which CSXT relies, *In re New York Renu with Moistureloc Prod. Liab. Litig.*, No. 766,000/2007, 2008 U.S. Dist. LEXIS 88515 (D.S.C. May 6, 2008), involved an *in camera* review of several emails by a special master.

      **1.**    **The challenged emails are not presumptively privileged because of Armbrust's involvement in NPBL matters as a board member and business advisor.**

CSXT acknowledges that the Court must closely scrutinize communications with an attorney who works in both legal and non-legal roles.[5] *See* Opp. at 11 ("As the attorney worked in both legal and non-legal roles, the court found that the company's privilege claims required close scrutiny."). CSXT argues, however, that Armbrust's communications are presumptively privileged because his five-year stint as a member of the NPBL board was not a non-legal position *within CSXT*. *See* Opp. at 11-12. Armbrust, however, was one of the two CSXT-appointed NPBL board members. Armbrust's service as an NPBL board member was part of his job at CSXT, just as it was part of the jobs of his fellow CSXT-appointed board members with whom Armbrust served, none of whom were in CSXT's legal department.

CSXT's position also is at odds with Armbrust's admission that while a member of the NPBL board, Armbrust owed fiduciary duties to NPBL. *See* Deposition Transcript of Steven Armbrust at 32:15-18 (**Exhibit 3**). As an NPBL board member, Armbrust had to act in the best interests of NPBL. When Armbrust was involved in internal CSXT communications regarding NPBL issues as a NPBL board member, his role as board member and his duties as such were antithetical to the idea that he was serving as counsel to CSXT with the attendant ethical duties he owed to CSXT. Therefore, contrary to Armbrust's deposition testimony, he could not have communicated with CSXT employees about issues involving the NPBL board in his role as in-house counsel because he owed fiduciary duties to NPBL at the same time. *See* Opp. at 4.

---

[5] Courts also closely scrutinize claims of privilege over communications with in-house counsel—regardless of whether the counsel also has a non-legal position—because "their day-to-day involvement in their employer's affairs may blur the line between legal and non-legal." *ABB Kent-Taylor, Inc. v. Stallings & Co.,* 172 F.R.D. 53, 55 (W.D.N.Y. 1996) (quotations omitted). *See also Dewitt v. Walgreen Co.*, 2012 U.S. Dist. LEXIS 125493, *6-7 (D. Idaho Sept. 4, 2012) ("Indeed, communications between in-house counsel and corporate representatives, unlike those between a client and outside counsel, are not presumed to be made for the purpose of obtaining legal advice.").

### 2. CSXT's emails show that Armbrust communicated with CSXT employees in his role as a member of the NPBL board.

CSXT erroneously argues that the Downgrade Criteria does not provide a sufficient factual basis to warrant an *in camera* review because "Mr. Armbrust [] stated unequivocally that, when communicating internally with CSX employees about the NPBL or other issues related to Virginia ports, he understood those communications to be in his role as in-house counsel." Opp. at 4. This is untrue as shown by emails satisfying the Downgrade Criteria, some of which CSXT produced in response to NSR's privilege challenges. Here are a few examples:



There are several other internal CSXT emails involving Armbrust in which it is the clear inference that he was included because he was a member of the NPBL board at the time. Examples of these emails include:



In sum, CSXT chose to appoint one if its lawyers, Armbrust, to serve in a non-legal role as CSXT's representative on the NPBL board, and his service as a board member is critical to this litigation. CSXT's decision to appoint Armbrust to the NPBL board negates any presumption that Armbrust's communications during that period are privileged. Indeed, CSXT's emails show that Armbrust communicated with CSXT employees about business issues in his role as NPBL board member, and that those communications are not privileged. As a board member, Armbrust dealt with some of the most important factual issues in the case, including NPBL's setting of the $210 switching rate and its response to CSXT's 2010 service proposal. CSXT cannot rely on Armbrust's position as an in-house attorney to withhold from discovery factual information relating to these issues, the discovery of which could significantly impact the adjudication of CSXT's claims.

### 3. CSXT already has produced previously redacted and withheld emails satisfying the Downgrade Criteria.

The Downgrade Criteria already has proven that it provides a sufficient factual basis for an *in camera* review of the challenged emails. In response to NSR's privilege challenges, CSXT has admitted that:

- 99 of the 221 (or 45%) of the redacted emails satisfying the Downgrade Criteria were not privileged;

- 54 of the 140[6] (or 39%) of the withheld emails satisfying the Downgrade Criteria were not privileged;

- Five of the seven (or 71%) of the redacted emails created before Armbrust became a member of the NPBL board (but otherwise meet the Downgrade Criteria) were improperly redacted; and

- 11 documents were improperly withheld even though they had not been challenged by NSR.

This evidence belies CSXT's assertion that the Downgrade Criteria raises nothing more than "speculation and conjecture."

### 4. An *in camera* review is factually justified and necessary to ensure that CSXT is not using Armbrust to prevent discovery of information on critical issues in the case.

Not only is there a good faith basis to review the challenged emails *in camera*, the emails deserve close scrutiny "lest the mere participation of [Armbrust] be used to seal off disclosure." *ABB Kent–Taylor*, 172 F.R.D. at 55; *Rush v. Sunrise Sr. Living, Inc.*, No. CL-07-11322, 2008 WL 1926766 (Va. Cir. Ct. Feb. 12, 2008) (noting courts' concern that enterprising companies could

---

[6] In its March 10, 2020 letter, NSR identified five withheld documents that appeared to satisfy the Downgrade Criteria as exemplars for CSXT to investigate. In response, CSXT produced nineteen documents; sixteen in full, including two of the five exemplar emails, and the remaining three exemplar documents with redactions. In its April 29, 2020 follow-up letter, NSR identified another 121 withheld emails that satisfied the Downgrade Criteria. In response, CSXT produced another 35 emails in full.

attempt to use the attorney-client privilege "to create a large 'zone of secrecy' for communications whose probative value could be important to a fair resolution of disputes").

The examples discussed in NSR's opening brief raise real questions as to whether CSXT is claiming privilege over emails—which go to the heart of this litigation—merely because Armbrust is included on them. *See Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 412 (D. Md. 2005) (warning that a company's "sweeping reliance on the attorney status" of the employee "to shield all communications is obviously out of sync with governing law"). This includes the two emails being challenged by NSR that were created before Armbrust joined the NPBL board but otherwise meet the Downgrade Criteria. Exhibit 7 to NSR's opening brief, in which CSXT redacted communications to and from Armbrust relating to CSXT's discussion of using NPBL to move intermodal freight from NIT, which is the essence of this dispute. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

CSXT has not included these redacted communications on its log, so there is no way to assess the validity of the privilege claim. And there is nothing from the unredacted portion of this email chain suggesting that Armbrust was giving, or being asked to give, legal advice. Rather, the unredacted portion suggests that Armbrust was included in his role as either a business advisor or member of the NPBL board. Similarly, Exhibit 8 to the opening brief deals with CSXT's response to the recommendation of NPBL's rate committee to set the switching rate at $210. Again, Armbrust appears to be included in the exchange in his role as NPBL board member and/or as a business advisor.

CSXT has redacted a portion of a 2015 email exchange among CSXT employees bearing directly on the primary issues in this case, namely, CSXT's costs to access NIT using NPBL and how CSXT's service "stack[s] up against the NS." (**CSXT0089992**) (**Exhibit 12**). CSXT's privilege logs states ███████████████████████████████████████████████ ███████████████████████████████████ which are distinctly non-legal matters. Indeed, the unredacted portions of the email suggest that Armbrust is discussing business, not legal, issues. This is another example of an email satisfying the Downgrade Criteria in which there is an ample factual basis to conduct an *in camera* review to determine whether the redacted communications truly involve legal opinions. NSR's concerns over CSXT's privilege claims are also justified based on CSXT's response to NSR's challenges. For instance, before NSR challenged based on the Downgrade Criteria, CSXT withheld as privileged an email exchange discussing, among other things, CSXT's ability to serve its intermodal customers using just VIG. (**CSXT0085628**) (**Exhibit 13**). ████████████████████████████████████████ ████████████████████████████████████████████████████████ to which Eliasson agrees. This discussion directly contradicts some of the fundamental opinions that have been offered by CSXT's expert. There was nothing privileged about this email; it appears that the only reason it was withheld is because Armbrust was part of the business team addressing the issues discussed therein.

### III. CONCLUSION

For the reasons stated in its opening brief and herein, NSR has provided multiple, factual reasons justifying an *in camera* review of the emails for which it is challenging CSXT's claim of privilege. NSR respectfully requests that the Court engage in an *in camera* review of the emails to ensure that non-privileged information central to the disputes in this case is not being withheld

improperly.  An *in camera* review would ensure that NSR gets all of the documents to which it is entitled, while ensuring that CSXT's privileged communications remain confidential.

Date:  June 2, 2020                                    Respectfully submitted,

                                                    **NORFOLK SOUTHERN RAILWAY COMPANY**

/s/ Michael E. Lacy
Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
Massie P. Cooper (VSB No. 82510)
TROUTMAN SANDERS, LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-6061
Email: alan.wingfield@troutman.com
Email: michael.lacy@troutman.com
Email: massie.cooper@troutman.com

John C. Lynch (VSB No. 39267)
Kathleen M. Knudsen (VSB No. 90845)
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA  23462
Telephone: (757) 687-7759
Facsimile: (757) 687-7510
Email: john.lynch@troutman.com
Email: Kathleen.knudsen@troutman.com

Monica McCarroll (VSB No. 45622)
REDGRAVE LLP
14555 Avion Parkway, Suite 275
Chantilly, VA 20151
Telephone: (703) 592-1155
Facsimile: (703) 230-9859
Email: mmccarroll@redgravellp.com

Tara Lee Reinhart
Thomas Robert Gentry
John R. Thornburgh, II
SKADDEN ARPS
1440 New York Avenue, N.W.

Washington, D.c. 20005
Tara.reinhart@skadden.com
Thomas.gentry@skadden.com
John.thornburgh@skadden.com

*Counsel for Defendant Norfolk Southern Railway Company*

**CERTIFICATE OF SERVICE**

   I hereby certify that on June 2, 2020, I electronically filed a copy of the foregoing with the Clerk of Court using the CM/ECF system, which sent a notification of such filing (NEF) to the registered participants as identified on the NEF to receive electronic service, including:

Robert W. McFarland, Esq.
Benjamin L. Hatch, Esq.
E. Rebecca Gantt, Esq.
McGuireWoods LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Telephone: (757) 640-3716
Facsimile: (757) 640-3930
rmcfarland@mcguirewoods.com
bhatch@mcguirewoods.com
rgantt@mcguirewoods.com

*Attorneys for CSX Transportation, Inc.*

James L. Chapman, IV, Esq.
W. Ryan Snow, Esq.
Darius K. Davenport, Esq.
David C. Hartnett, Esq.
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com

*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

/s/Michael E. Lacy
Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
Massie P. Cooper (VSB No. 82510)
TROUTMAN SANDERS, LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-6061
Email: alan.wingfield@troutman.com
Email: michael.lacy@troutman.com
Email: massie.cooper@troutman.com

42391271

15