IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CSX TRANSPORTATION, INC.,
individually and on behalf of
NORFOLK AND PORTSMOUTH BELT LINE
RAILROAD COMPANY,

          **Plaintiff,**

v.                                                              Civil Action No. 2:18-cv-530-MSD-LRL

NORFOLK SOUTHERN RAILWAY
COMPANY, *et al.*,

          **Defendants.**

### MEMORANDUM IN SUPPORT OF NPBL'S MOTION TO COMPEL

Norfolk and Portsmouth Belt Line Railroad Company, by counsel, in support of its motion to compel interrogatory answers from CSX Transportation, Inc., states as follows:

### BACKGROUND

The Belt Line is a short-line railroad owned by two long-haul railroads (also its only long-haul customers), plaintiff CSXT and co-defendant Norfolk Southern Railway Company. CSXT owns 43% of the Belt Line and NS owns 57%. CSXT appoints two of the six voting members of the Belt Line's Board of Directors and NS appoints three. The sixth voting member is the Belt Line's President and General Manager.

*The alleged conspiracy*

CSXT's Complaint contains four counts against the Belt Line. Critically here, all of them hinge on an alleged conspiracy between the Belt Line and NS to harm CSXT's business at Norfolk International Terminals ("NIT"). Counts I and II allege conspiracy violations of the Sherman Act; Counts VIII and IX allege statutory and common-law civil conspiracy. *See* Compl. (ECF No. 1).

The gist of all the allegations is that the Belt Line and NS have conspired to deny CSXT rail access to NIT. The Complaint alleges that the Belt Line and NS "have allegedly done so by causing Belt Line to establish and maintain unreasonably high rates for its switch services for intermodal freight…." ECF No. 66 at 6 and 23 (describing the alleged conspiracy as "setting the Uniform Rate charged to access NIT too high in order to deter competition").

How the Belt Line conspired with NS, including what communications or overt acts evidence such a conspiracy, remains veiled in mystery. This is so despite CSXT taking more than a dozen depositions of NS and Belt Line employees, including corporate depositions under Rule 30(b)(6), and the three companies collectively producing more than 90,000 documents.

*The Belt Line's Interrogatories to CSXT*

At issue in this motion are CSXT's answers to two interrogatories propounded by the Belt Line, numbers 3 and 4, which ask CSXT to identify the communications and overt acts that form the basis for the alleged conspiracy. Specifically, interrogatory number 3 asks:

> 3. Identify the **specific communication(s) between the Belt Line and NS** that you contend form the basis for the conspiracy alleged in Counts I, II, VIII, and IX of your Complaint, including the identities of the specific persons involved in such communication(s), the dates and circumstances of such communication(s), and all documents that support your answer.

**Exhibit A** at p. 6 (emphasis added). Interrogatory number 4 asks:

> 4. Identify the **specific overt act(s) by NPBL** that you contend form the basis for the conspiracy alleged in Counts I, II, VIII, and IX of your Complaint, including the identities of the specific persons who you contend committed such act(s), the dates and circumstances of such act(s), and all documents that support your answer.

*Id.* at p. 8 (emphasis added).

Despite multiple letters, supplements, and telephone conferences, CSXT has failed to answer either interrogatory. It has not identified any communications between defendants or overt

2

acts by the Belt Line that support a conspiracy at all. Instead, it has cited to dozens of random documents that, as the Belt Line has repeatedly informed CSXT, are not in any way responsive. The documents it cites are almost entirely internal NS emails that detail NS's own plans to compete with CSXT in the market, but say nothing about conspiring with NPBL. The rest include internal CSXT emails and correspondence from CSXT to the Belt Line, which obviously cannot form the basis for a conspiracy with NS.

CSXT has acknowledged this nonresponsiveness during the parties' multiple meet and confers, but has not changed its answers to acknowledge the lack of evidence. Instead, CSXT's position is that it does not have to identify the conspiratorial communications or acts *in discovery* because, according to CSXT, it "need not produce direct evidence of the conspiracy to prevail on its claims" *at trial*. *See* letter from CSXT's counsel dated July 13, 2020, p. 2 (**Exhibit B**).

CSXT claims that its answers are sufficient because the cited documents "provide indirect evidence sufficient to permit a trier of fact to infer that NS and NPBL were in contact in pursuit of the same goal." *Id.* Yet even if that were true (it is not, as shown below), the interrogatories do not ask CSXT to identify indirect evidence that may support an inference of a conspiracy. They ask CSXT to identify direct evidence (the "specific communication(s) between the Belt Line and NS" and the "specific overt act(s) by NPBL"), if any exists.

It is because CSXT refuses to answer the interrogatories that the Belt Line brings this motion. Even after multiple meet and confers and attempts by CSXT to supplement, the Belt Line still has no idea how CSXT believes it conspired with NS. It does not know what it said to NS or what it did with NS to either form or further the alleged conspiracy, despite asking point blank for the information. And the answers to these questions could not be more critical, as *every* claim against the Belt Line in this case depends on a conspiracy.

To compound the problem, CSXT has similarly objected to the Belt Line's Rule 30(b)(6) topics asking CSXT to prepare a witness on these two points. Why? Because, according to CSXT, the appropriate vehicle for asking that information *is an interrogatory*. *See* CSXT Obj. to Rule 30(b)(6) Dep. Topics (**Exhibit C**).

If CSXT's admitted nonresponses are allowed to stand, the Belt Line will be forced to continue through months of expensive litigation, stonewalled from obtaining the very information that it needs to prepare its defense. That is completely contrary to the purpose of the discovery rules. *See* 8 Wright & Miller, *Federal Practice & Procedure* § 2001 (2d ed. 1987) (the purpose of the discovery rules is "to avoid surprise and the possible miscarriage of justice, to disclose fully the nature and scope of the controversy, to narrow, simplify and frame the issues involved, and to enable a party to obtain the information needed to prepare for trial").

## STANDARD OF REVIEW

Rule 37 provides that "A party seeking discovery may move for an order compelling an answer … if … a party fails to answer an interrogatory submitted under Rule 33." Fed. R. Civ. P. 37(a)(3)(B)(iii). It further provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

The Belt Line seeks entry of an order under Rule 37 (1) striking CSXT's current answers to interrogatories 3 and 4, and (2) compelling CSXT to provide full and complete answers, either by identifying the specific communications between the Belt Line and NS and the overt acts by the Belt Line that form the basis for the alleged conspiracy, or stating that CSXT cannot identify any, if that is the case.

**ARGUMENT**

I. **CSXT's answers to interrogatory numbers 3 and 4 are evasive and incomplete.**

CSXT answered interrogatory number 3 as follows: [1]



---

[1] CSXT asserted a number of objections to interrogatory numbers 3 and 4, but has never stated that information or documents were being withheld on the basis of an objection.



**Exhibit A** at pp. 6-8.

CSXT answered interrogatory number 4 by referring back to the documents cited in response to number 3. *See id.* at p. 8 ("███████████████████████████████████████████████████████████████████████████████████████████████████████████████████").

These answers are deficient. While CSXT identifies broad topics, it fails to identify *any* communications between the Belt Line and NS or *any* overt acts by the Belt Line that form the basis for an alleged conspiracy, as the interrogatories require.

6

Attached hereto collectively as **Exhibit D** are copies of all the documents CSXT cited so the Court can appreciate how confounding they actually are. Without going through every document in detail, the sampling below includes the first two bates-labeled documents from each category. None of them are communications between the Belt Line and NS that could possibly form the basis for the alleged conspiracy, nor do they reference any overt acts by the Belt Line:



1. ▮▮▮▮▮▮▮▮▮▮ (**Exhibit D** at p. 2)

2. ▮▮▮▮▮▮▮▮▮▮ (**Exhibit D** at p. 11)

1. ▮▮▮▮▮▮▮▮▮▮ (**Exhibit D** at p. 42)

2. ▮▮▮▮▮▮▮▮▮▮ (**Exhibit D** at p. 45)

1. ▮▮▮▮▮▮▮▮▮▮ (**Exhibit D** at p. 61)

2. ▮▮▮▮▮▮▮▮▮▮ (**Exhibit D** at p. 106)

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■

   1.   ■■■■■■■ (**Exhibit D** at p. 122)

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

   2.   ■■■■■■■ (**Exhibit D** at p. 124)

■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

   1.   ■■■■■■■ (**Exhibit D** at p. 167)

■■■■■■■■■■■■■■■■■■■■

   2.   ■■■■■■■ (**Exhibit D** at p. 169)

■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■

   1.   ■■■■■■■ (**Exhibit D** at p. 182)

■■■■■■■■■■■■■■■■■■■■■■

REDACTED

8

2. ▮▮▮▮▮▮▮▮▮▮ (**Exhibit D** at p. 186) [2]



2. ▮▮▮▮▮▮▮▮ (**Exhibit D** at p. 194)

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

\* \* \*

Importantly, these documents are not cherry-picked.  They are the first bates-labeled documents in each group, representative of the dozens of random documents that follow.

When the Belt Line notified CSXT about the deficiencies, *see* **Exhibit E**, CSXT at first failed to even supplement.  Instead, it tried to justify the lack of responsiveness by claiming it "cannot identify every communication between NPBL and NS in a decades-long conspiracy, nor can it identify every communication, particularly as CSXT is not privy to all non-email communications."  **Exhibit F**.[3]  Of course, even one would have been a start.

---

[2]   CSXT notified the Belt Line that the second bates-labeled document in this category was "inadvertently cited" and "should be omitted from that paragraph."  Therefore, the Belt Line has identified the third document in this category.

[3]   During the meet and confer, CSXT also asserted that its citations to these documents is "appropriate under Rule 33(d) of the Federal Rules of Civil Procedure."  **Exhibit F**, p. 1.  But the rule permits a party to produce its *own* business records in response to an interrogatory, not the records of the requesting party or another party.  *See* Fed. R. Civ. P. 33(d).  It therefore does not permit what CSXT has done here.  Except for the emails and correspondence from CSXT, the rest of the documents CSXT cites to are business records of the Belt Line and NS.

Yet CSXT's evasiveness is not justifiable. Most obviously, CSXT has not identified any communication between the defendants that forms the basis for an alleged conspiracy, let alone "every" communication. And CSXT is the one alleging that "NPBL and NS have had numerous communications in furtherance of this continuing conspiracy." What is more, CSXT cannot evade its discovery obligations by claiming it is not privy to non-email (presumably oral) communications. CSXT has been provided tens of thousands of documents, not all emails, from both electronic and hard-copy productions, for which it chose the search terms. CSXT also has taken the Rule 30(b)(6) depositions of both the Belt Line and NS. It also has taken individual depositions of Cannon Moss (the Belt Line's president since 2011), David Stinson (the Belt Line's president from 2008 to 2011), and Donna Coleman (the Belt Line's vice president since 2006), as well as depositions of seven NS employees. Its discovery window is closed, and it has come up with literally nothing.

Nevertheless, on July 1, 2020, instead of answering the interrogatories or even refocusing the document citations, CSXT supplemented its answer with citations to *additional* documents. *See* **Exhibit G**. The supplemental documents (attached collectively as **Exhibit H**) are even less responsive than the first set. As above, the sampling below includes the first supplemental documents in each category:



1. ▇▇▇▇▇▇▇▇▇▇ (**Exhibit H** at p. 2)

2. ▇▇▇▇▇▇▇▇▇▇ (**Exhibit H** at p. 4)



▮

 1. ▮ (**Exhibit H** at p. 7)

▮

▮

 1. ▮ (**Exhibit H** at p. 9)

▮

 2. ▮ (**Exhibit H** at p. 11)

▮

▮

 1. ▮ (**Exhibit H** at p. 45)

▮

▮

 1. ▮ (**Exhibit H** at p. 46)

▮

 2. ▮ (**Exhibit H** at p. 47)

▮

\* \* \*

Accordingly, because CSXT has failed to answer either interrogatory, and because no answer is discernible at all from this hodgepodge of random documents, the Belt Line moves for

11

an order (1) striking CSXT's current answers and (2) compelling CSXT to provide complete and responsive answers to the specific questions asked.

## II. The Court should reject CSXT's attempt to avoid answering the interrogatories.

On July 13, 2020, following another telephonic meet and confer between counsel, CSXT wrote a letter to the Belt Line attempting to justify its interrogatory answers. *See* **Exhibit B**. As discussed above, in this correspondence CSXT offered that it "need not produce direct evidence of the conspiracy to prevail on its claims," and therefore it should be sufficient that the cited documents "provide indirect evidence sufficient to permit a trier of fact to infer that NS and NPBL were in contact in pursuit of the same goal." *Id.*

The Court must reject CSXT's argument. CSXT is confusing what it needs to prove at trial with what it is required to provide in sworn answers to interrogatories. Parties are not free to answer interrogatories they wish had been propounded; they must answer the ones actually propounded. CSXT cannot avoid identifying whatever direct evidence it has of the conspiracy by arguing that it may succeed at trial with indirect evidence. CSXT's argument is all the more egregious in this case because the documents cited are not even indirect evidence of a conspiracy, nor could a conspiracy be inferred from them.

If in fact CSXT cannot identify any such communications or overt acts, it must so state in its answer. That CSXT wants to infer a conspiracy does not make it so, and certainly does not justify its evasiveness. The Belt Line should not be forced to go through the rest of litigation not knowing if CSXT has direct evidence against it.

## CONCLUSION

WHEREFORE, the Belt Line respectfully moves this Court for entry of an order (1) striking CSXT's current answers to interrogatories 3 and 4, (2) compelling CSXT to provide full

and complete answers, either by identifying the specific communications between the Belt Line and NS and the overt acts by the Belt Line that form the basis for the alleged conspiracy, or stating that CSXT cannot identify any, if that is the case, and (3) granting the Belt Line all other just and necessary relief.

Dated: July 24, 2020

**NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY**

By: /s/ W. Ryan Snow

James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Darius K. Davenport, VSB No. 74064
David C. Hartnett, VSB No. 80452
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
ddavenport@cwm-law.com
dhartnett@cwm-law.com
*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

## CERTIFICATE OF GOOD FAITH

In accordance with Federal Rule of Civil Procedure 37 and Local Civil Rule 37(E), I hereby certify that a good faith effort has been made between counsel for the Belt Line and CSX to resolve the discovery matters at issue.

                                            */s/ W. Ryan Snow*
W. Ryan Snow, VSB No. 47423
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
wrsnow@cwm-law.com
*Attorney for Norfolk and Portsmouth*
*Belt Line Railroad Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of July 2020, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Eastern District of Virginia, Norfolk Division, using the electronic case filing system of the court. The electronic case filing system will send a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

                                            */s/ W. Ryan Snow*
W. Ryan Snow, VSB No. 47423
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
wrsnow@cwm-law.com
*Attorney for Norfolk and Portsmouth*
*Belt Line Railroad Company*