IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CSX TRANSPORTATION, INC.,
individually and on behalf of NORFOLK
& PORTSMOUTH BELT LINE
RAILROAD COMPANY,

   Plaintiff,

v.               Civil Action No. 2:18-cv-530-MSD-LRL

NORFOLK SOUTHERN RAILWAY
COMPANY, *et al.*,

   Defendants.

/

**CSX TRANSPORTATION INC.'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO REOPEN AND COMPEL DEPOSITIONS**

  Plaintiff CSX Transportation, Inc. ("CSXT"), by counsel, pursuant to Local Civil Rules 7, 16 and 37, and Fed. R. Civ. P. 16, 26 and 37, hereby submits this Memorandum in Support of its Motion to Reopen and Compel Depositions (the "Motion"), which seeks to re-open the depositions of Jeffrey Heller and Michael McClellan and to compel the depositions of Cary Booth and Rob Martinez. In support, CSXT states as follows:

**INTRODUCTION**

  CSXT filed this action to challenge the decades-long conspiracy between Norfolk Southern Railway Company ("NS") and the Norfolk & Portsmouth Belt Line Railroad Company ("NPBL"), by which NS monopolizes on-dock rail access at Norfolk International Terminal ("NIT"), the largest marine terminal in Hampton Roads, Virginia. Discovery began in November 2019, and CSXT's fact discovery period was originally scheduled to end on March 3, 2020. ECF No. 78 at 2. When NS failed to timely produce critical documents and data that CSXT's expert

1

needed, CSXT sought a brief extension of its discovery period through March 31. ECF Nos. 106-107. In opposing that request, NS took the position that CSXT's proposed extension was unnecessary in part because NS "expect[ed] to substantially complete its production in response to CSXT's First Requests for Production of Documents by February 7." ECF No. 111 at 2. Based on this record, the Court denied CSXT's request for an extension. ECF No. 118.

NS grossly misrepresented the status and scope of its document production in that filing. Indeed, NS produced *over 210,000 pages*—more than two-thirds of its total production in this case—*after* its own proffered "substantial completion" deadline of February 7. By the time NS made these belated productions, CSXT had already noticed, scheduled, prepared for, and taken nearly all of its depositions. As a result, CSXT identified and deposed witnesses based on a mere *fraction* of the information to which it was entitled. For example, CSXT did not notice Messrs. Martinez or Booth for deposition based on NS's written discovery responses, which described them as having limited, tangential knowledge related to the subject matter of this dispute. But NS's belated productions demonstrate that these individuals had significant, substantive involvement in key issues. Moreover, CSXT deposed NS witnesses half-blind. For example, NS produced thousands of pages of documents belonging to Messrs. McClellan and Heller just before, during, and *after* the depositions of those witnesses, including a number of critical documents bearing directly on disputed issues in the case.

Accordingly, CSXT has asked to depose (or re-depose) a small number of NS witnesses. NS has flatly refused this request, instead offering an additional Rule 30(b)(6) deposition of a person "knowledgeable" about the new documents. This position is plainly unreasonable in light of the obvious prejudice to CSXT caused by NS's failure to timely comply with its discovery obligations in this case—not to mention its mischaracterizations of its compliance. NS's refusal

2

to compromise is rendered all the more untenable under current circumstances, given that the COVID-19 pandemic has indefinitely delayed trial and associated pre-trial deadlines in this case, including the close of Defendants' own discovery period.

NS's late-produced documents are not only responsive to CSXT's discovery requests, they are directly relevant to key disputes at issue in this litigation and were produced after CSXT had taken the depositions of nearly all NSR witnesses. Those late productions provide good cause for CSXT to re-open the depositions of Mssrs. McClellan and Heller and to depose Mssrs. Martinez and Booth, and NS will suffer no undue prejudice as a result, particularly in light of the unique posture and schedule of this case. Accordingly, the Court should grant CSXT's Motion.

## **RELEVANT BACKGROUND**

CSXT filed its Complaint on October 4, 2018. ECF No. 1. On November 27, 2018, all Defendants filed motions to dismiss, which the Court resolved on September 9, 2019. ECF Nos. 27, 29, 31, 34, 66. Defendants filed their Answers to CSXT's Complaint on September 23, 2019. ECF Nos. 67-70. Pursuant to the Court's Rule 26(f) Pretrial Order, issued on September 27, 2019, the parties were permitted to "initiate any form of discovery at any time subsequent to the date of [that] order, provided that no party will be required to respond to a deposition notice or other form of discovery sooner than November 19, 2019, unless specifically ordered by the Court." ECF No. 72 at 2. The Court's Rule 16(b) Scheduling Order directed that, except as to expert witnesses, fact discovery was to be completed by CSXT on or before March 3, 2020, and was to be completed by Defendants on or before March 31, 2020. ECF No. 78 at 2.

CSXT served NS with its first Requests for Production of Documents ("RFPs") on October 23, 2019.[1]  *See* CSXT's First Set of Interrogatories and RFPs to Defendant Norfolk Southern Railway Company, attached as **Exhibit A**.  In accordance with the parties' agreed ESI Order (ECF No. 83) and negotiations, NS identified the initial search terms that it intended to apply to identify documents responsive to CSXT's RFPs on November 26, 2019, *see* NSR Search Terms, attached as **Exhibit B**.  Yet NS made only two productions of less than 2,000 pages over the next two months.  Given NS's paltry productions, CSXT had no choice but to identify and notice witnesses for deposition in early 2020 based primarily on the limited information provided in NS's Rule 26(a)(1) initial disclosures and written discovery responses.

CSXT's expert report was originally due on February 10, 2020.  *See* ECF No. 78.  Because NS had produced none of the key documents and data needed for CSXT's expert analysis, CSXT filed on January 23 an emergency motion seeking to extend its expert and discovery deadlines. *See* ECF Nos. 106-107.  Specifically, CSXT sought to extend its expert report deadline to March 9 and its fact discovery deadline to March 31.  *See* ECF No. 107 at 10.  As CSXT explained, NS's limited document productions not only hindered CSXT's expert, but also hampered "CSXT's ability to meaningfully prepare for and take fact witness depositions." *Id.*; *see also id.* at 11 ("NS's failure to produce critical documents also prevents CSXT from proceeding with its party and fact witness depositions.").

In opposing CSXT's emergency motion, NS insisted that CSXT's requested extensions were unnecessary because it "expect[ed] to substantially complete its production in response to CSXT's First Requests for Production of Documents by February 7"—only eleven days after its

---

[1] CSXT served a smaller set of document requests on January 9, 2020.  *See* CSXT's Second Set of RFPs to Defendant Norfolk Southern Railway Company, attached as **Exhibit C**.  NS's responses to CSXT's Second RFPs were due by February 10.

4

opposition was filed. *See* ECF No. 111 at 2. Based on this record, the Court granted a 15-day extension to CSXT's expert report deadline but denied CSXT's request to extend its fact discovery deadline. *See* ECF No. 118.

Between January 24 and February 7, NS made four productions of less than 35,000 pages. Then, on February 7—the date by which NS represented it would substantially complete its production of documents in response to CSXT's First RFPs—NS produced another 68,000 pages of documents. With only a few weeks remaining in its fact discovery period, and based on NS's representation that it had substantially completed its production in response to the vast majority of CSXT's RFPs, CSXT began taking depositions of Defendants' current and former employees one week later, on February 14, 2020.[2]

Then, on February 28, without warning and after CSXT had taken eleven of its fourteen noticed depositions and filed its expert report, NS nearly *doubled* the size of its prior productions, dropping approximately 95,000 pages of documents on CSXT. And then, on March 10, 2020—the date of CSXT's very last scheduled deposition—NS made its largest production to date, transmitting another 106,000 pages of documents to CSXT.

Put differently, contrary to its representations to the Court and counsel, NS produced only approximately *one-third* of its documents by February 7. NS produced another third on February 28—three weeks after its substantial completion date, two weeks after CSXT began depositions, three days after CSXT submitted its expert report, and only four days before CSXT's discovery cutoff. NS then produced the final third of its documents on March 10, more than a month *after* the date by which it said it would substantially complete its productions, and after CSXT had taken *all* of its depositions. In total, NS produced more than 210,000 pages to CSXT after the date by

---

[2] CSXT deposed 14 defense witnesses between February 14 and March 10.

which it represented that it "expect[ed] to substantially complete its production" in this case. ECF No. 111 at 2.

On March 17, 2020—one week after NS made its final production, one week before NS's expert report was due, and with only eleven business days remaining in NS's fact discovery period—the parties jointly moved to stay this action due to the COVID-19 pandemic and the imposition of shelter-in-place guidance in states across the country. ECF No. 157. As the pandemic and these restrictions have continued, the stay has been extended, and currently, the case is stayed until August 19, 2020. *See* ECF No. 196. The parties are permitted to continue "supplementations, conferrals, and motions practice" not requiring "in-person activity" during this time. *Id.* Although the parties have been directed to submit a status report to the Court "with recommendations for future proceedings" on or before August 19, based on the Court's recent standing orders, CSXT anticipates a new trial date in this matter is likely many months away. *See* General Order 2020-16 at 5.

NS's belated productions materially and adversely affected CSXT. Accordingly, on June 5, 2020, CSXT sent correspondence to NS seeking to reopen the depositions of NS employees Chris Luebbers, Jeff Heller, and Mike McClellan, so that CSXT could inquire about material documents produced after their depositions were taken. *See* Letter from R. McFarland dated June 5, 2020, attached as **Exhibit D**. CSXT also sought to take the depositions of Cary Booth, Rob Martinez, and Amanda Nelson, whose late-produced documents demonstrated that they were directly involved in key decisions related to the NPBL, Norfolk-area ports, and NS's international intermodal strategy, among other topics.[3] *Id.*

---

[3] In an attempt to reach a good faith compromise, CSXT has since withdrawn its requests as to Mr. Luebbers and Ms. Nelson. It is CSXT's understanding that Ms. Nelson is no longer employed by NS.

6

NS responded on June 11, 2020, attempting to disclaim its prior representations to CSXT and the Court regarding substantial completion based on the parties' separate dispute over certain geographic search terms. *See* Letter from M. Lacy dated June 11, 2020, attached as **Exhibit E**. As CSXT explained in its June 19 response, however, NS's February 28 and March 10 productions contain numerous documents responsive to CSXT's First RFPs that should have been captured by NS's initial search terms. *See* Letter from R. McFarland dated June 19, 2020, attached as **Exhibit F**. Accordingly, the parties' later debate over the scope of additional geographic search terms does not excuse NS's failure to produce thousands of responsive documents until weeks after it represented that it would substantially complete its production.

In its June 11 letter, NS offered "a second corporate deposition of NSR on the documents produced after February 7," in exchange for NSR's ability to re-depose CSXT witness Steven Armbrust.[4] *See* **Ex. E** at 2. As CSXT has explained, a corporate deposition is not a reasonable substitute for testimony from fact witnesses regarding their first-hand experiences related to documents written or received by them. *See* **Ex. F** at 3.

Remarkably, while refusing CSXT's reasonable request for additional discovery based on its own tardy productions, NS seeks to expand its own discovery window based on the continued stay of this action. For example, when the parties first jointly moved to stay this case on March 17, NS had only 7 days remaining before its expert report deadline and only 11 business days remaining in its fact discovery period. *See* ECF No. 78 at 3. NS now proposes "a minimum of

---

[4] NS's attempt to equate its request to re-depose Mr. Armbrust with CSXT's request to re-open depositions is misguided. NS seeks to re-depose Mr. Armbrust based on a small number of documents that CSXT initially withheld as privileged but has since produced. But CSXT timely produced its documents and privilege log well before the date that NS unilaterally selected for Mr. Armbrust's deposition. *See* ECF No. 176 at 3 & n.1. NS's failure to challenge CSXT's privilege determinations until after 8 o'clock the night before Mr. Armbrust's deposition demonstrates a lack of good cause to re-open Mr. Armbrust's deposition. *See id.* at 3, 16 n.7.

7

four weeks" to complete its fact depositions, including the deposition of at least one witness NS had neither noticed nor scheduled for deposition at the time the original stay was entered in March. *See* **Ex. E** at 2.  And NS then seeks *another* three weeks between the close of its fact discovery period and the production of its expert report (*see id.*)—despite having already had CSXT's expert report in its possession for months longer than anticipated under the Court's original scheduling order.  *See* ECF No. 78.

As CSXT has explained, under these circumstances, "allowing additional time for depositions is reasonable and appropriate, particularly in light of the challenges that the parties may face due to the coronavirus pandemic."  **Ex. F** at 2.  Simply put, there is now sufficient time for *all parties* to complete depositions and supplementation of fact discovery in advance of the yet-to-be rescheduled trial date, and NS should not be permitted to unilaterally benefit from the lengthy stay in this action.

In addition to the parties' written correspondence, CSXT and NS conferred by telephone about these issues on June 8 and 25, but were unable to reach a resolution. Accordingly, despite multiple good-faith attempts to resolve this issue without Court intervention, the parties have reached an impasse.

## LEGAL STANDARD

Once set, a scheduling order may be modified for "good cause."  Fed. R. Civ. P. 16(b)(4). As the Rules advisory committee has noted, "the court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension." *Kinetic Concepts, Inc. v. ConvaTec, Inc.*, No. 1:08CV00918, 2010 U.S. Dist. LEXIS 40240, at *16 (M.D.N.C. Apr. 23, 2010) (quoting Fed. R. Civ. P. 16 advisory committee's note, 1983 Amendment, Discussion, Subdivision (b)).  Local Civil Rule 16 likewise provides that "[t]he

8

parties and their counsel are bound by the dates specified in [the Scheduling Order] and no extensions or continuances thereof shall be granted in the absence of a showing of good cause. Mere failure on the part of counsel to proceed promptly with the normal processes of discovery shall not constitute good cause for an extension or continuance." In order to establish "good cause," however, CSXT need not "go so far as to show 'manifest injustice' or 'substantial hardship.'" *Kinetic Concepts*, 2010 U.S. Dist. LEXIS 40240, at *16 (citing Fed. R. Civ. P. 16 advisory committee's note, 1983 Amendment, Discussion, Subdivision (b)). Instead, "the touchstone of 'good cause' under Rule 16(b) is diligence." *Id.*

## ARGUMENT

In late January, when NS had made only minimal productions in response to CSXT's discovery requests, CSXT alerted the Court that it may need an extension to its discovery deadline in order to allow for meaningful depositions of NS's witnesses. In response, NS insisted that it would substantially complete its productions by February 7, approximately one month before CSXT's discovery period ended. Yet without warning or clarification, NS produced two-thirds of its total documents *after* this date and *after* CSXT completed the majority of its depositions. Thus, despite CSXT's diligence in pursuing discovery in this case, it has been unable to depose NS witnesses with first-hand knowledge of critical, late-produced documents related to key disputed issues. Although NS will suffer no prejudice by allowing CSXT these limited depositions, particularly in light of its own tardy document productions and also the current stay of this action, NS has refused to allow CSXT to conduct this necessary discovery.[5] Accordingly, good cause exists, and the Court should grant CSXT's Motion.

---

[5] CSXT's Motion also does not run afoul of Local Civil Rule 37(F), which disfavors extensions that would "alter the schedule of dates and procedure previously adopted by the Court in the particular case," as there is no current schedule to be altered given the current stay and lack of a

9

### I.   The Production of New Discovery Related to a Deponent After His or Her Deposition Warrants Reopening that Deposition.

Once a witness has been deposed, "and the parties have not stipulated to a second deposition, a party seeking to depose the individual again must obtain leave of court, and the court *must grant leave* to the extent it is consistent with Federal Rule of Civil Procedure 26(b)(2)." *Flame S.A. v. Indus. Carriers,* No. 2:13-cv-658, 2014 U.S. Dist. LEXIS 190378, at *10 (E.D. Va. Apr. 30, 2014) (emphasis added). "Courts have typically reopened a deposition where a witness was inhibited from providing full information at the first deposition or where new information comes to light triggering questions that the discovering party would not have thought to ask at the first deposition." *Id.,* at *12 (quoting *Briggs v. Phebus*, No. 12-cv-2145, 2014 WL 1117888, at *3 (E.D. La. Mar. 19, 2014)).

"In general, leave to reopen a deposition is appropriate if the topics to be discussed fall within the scope of permissible discovery and are neither duplicative nor obtained more easily from another source or using another method." *Gemini Ins. Co. v. Sirnaik, LLC*, No. 2:18-cv-00424, 2019 U.S. Dist. LEXIS 146224, at *7 (S.D. W. Va. Aug. 28, 2019) . Accordingly, a court may grant a request to reopen a deposition where, as here, previously unknown documents relating to a deponent are produced following his or her deposition. *Id.* at *7-8 (granting request to reopen deposition to permit questioning on document that was produced days after initial deposition); *see also Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2018 U.S. Dist. LEXIS 2853, at *14 (E.D.N.C. Jan. 8, 2018) ("Defendant, however, has proffered no reason for why it produced the documents after the close of discovery, especially considering that these are electronically-stored documents . . . Plaintiff has the right to utilize discovered material in depositions, and it

---

new trial date in this action.

would be unfair to allow Defendant to untimely produce materials and then prevent Plaintiff from reopening depositions in order to question based on those materials.").

In determining whether to reopen a deposition, the Court's decision "is guided by the Fourth Circuit's strong policy for resolving cases on their merits with all admissible facts and information." *Calnet, Inc. v. Menon*, No. 1:14cv0401, 2015 U.S. Dist. LEXIS 188777, at *3 (E.D. Va. Jan. 22, 2015) (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)). Moreover, "[w]hen considering whether to grant leave to reopen a deposition 'the burden is on the opposing party to demonstrate that' Rule 26(b)(2) bars the deposition." *Eshelman*, 2018 U.S. Dist. LEXIS 2853, at *12-13 (E.D.N.C. Jan. 8, 2018). Accordingly, the Court should deny CSXT's request only if NS "shows that the information sought is unreasonably cumulative or duplicative, that Plaintiff had ample opportunity to obtain this information, or that the burden of this deposition outweighs its likely benefit." *Id.* (citing Fed. R. Civ. P. 26(b)(2)).

As discussed further below, NS's failure to produce critical documents for which Messrs. Heller and McClellan were custodians or otherwise implicated, and which reflect their involvement in key events and issues at the center of this litigation, constitutes good cause warranting reopening their depositions. It is undisputed that CSXT was deprived of these documents during its original discovery period and, particularly given the current stay and lack of trial date, NS cannot demonstrate that the burden of limited re-opened depositions would outweigh the benefits here.

### A. The Court Should Grant CSXT's Request to Re-Depose Mr. Heller.

Mr. Heller is NS's Vice President for Intermodal and Automotive. *See* NS's Response to CSXT's Interrogatory No. 1, attached as **Exhibit G**. NS identified Mr. Heller as: (i) likely having knowledge regarding NSR's relationship with NPBL; (ii) likely having knowledge relating to NS's

11

sales and marketing efforts relating to moving customers in or out of NIT; and (iii) having knowledge of CSXT rate proposals in 2010 and 2018. *See id.*; *see also* NS's First Supp. Rule 26(a)(1) Disclosures, attached as **Exhibit H** (stating that Mr. Heller "may have discoverable information regarding CSXT's rate proposals to NPBL, competition at NIT, communications with the VPA, and general information regarding the international and intermodal markets").

Based on NS's initial disclosures and responses, which indicated that Mr. Heller was directly involved in the issues giving rise to CSXT's claims, CSXT noticed him for deposition, which was eventually taken on March 10, 2020.[6] On February 28, 2020—Mr. Heller's original deposition date and only twelve days before his actual deposition—NS produced 1,767 documents consisting of 11,962 pages with Mr. Heller as a custodian. And, on the day of Mr. Heller's deposition, NS produced another 1,006 documents consisting of 7,157 pages with Mr. Heller as a custodian. These late-produced documents include significant documents directly related to the conspiracy between NS and NPBL. For example, on February 28, NS produced for the first time an email from Mr. Heller to Mr. McClellan, attaching a draft letter directed to NS-appointed members of the NPBL Board titled " ██████████████████████████ *See* NSR_00177916-918, attached as **Exhibit J**. The letter states: "██████████ ████████████████████████████████████████████████████████████████ ████████████████████." *See id.* at NSR_00177917 at -918. NS's late productions also included internal NS presentations belonging to Mr. Heller that ██████████████ ████████████████ *See, e.g.*, NSR_00156708 at -727, attached as **Exhibit K**.

---

[6] Mr. Heller's deposition was originally noticed for February 28. *See* Notice of Deposition, attached as **Exhibit I**. However, the deposition was rescheduled for March 10.

These documents, as well as dozens of others involving Mr. Heller, were produced weeks after NS represented that its productions would be substantially complete and within days of Mr. Heller's deposition. Accordingly, the Court should grant CSXT's request to re-open Mr. Heller's deposition and permit CSXT to question Mr. Heller regarding these and other late-produced documents for which Mr. Heller is a custodian or is otherwise implicated.

### B. The Court Should Grant CSXT's Request to Re-Depose Mr. McClellan.

Mr. McClellan was NS's Vice President Intermodal and Automotive Marketing from 2000 through July 2013, NS's Vice President Industrial Products from July 2013 through April 2018, and has been NS's Vice President of Strategic Planning since April 2018. *See* **Ex. G**. NS identified Mr. McClellan as likely having knowledge regarding NS's intermodal network in the Eastern United States. *See id.*; *see also* **Ex. H** (NS's initial disclosures stating that Mr. McClellan "may have discoverable information regarding CSXT's rate proposals to NPBL, competition at NIT, communications with the VPA, and general information regarding the international and intermodal markets").

Based on NS's disclosures, which indicated that Mr. McClellan was directly involved in the issues giving rise to CSXT's claims, CSXT noticed and took his deposition on February 20, 2020. After Mr. McClellan's deposition, NS produced more than 8,400 pages of documents for which he is a custodian. Many of these documents are directly relevant to CSXT's claims, including, for example, the draft letter to NS-appointed NPBL board members regarding ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *See* **Ex. J**. Mr. McClellan is also copied on late-produced communications ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮. *See, e.g.*, NSR_00299467, attached as **Exhibit L**. These documents, and dozens of others like them, were produced by NS weeks after Mr. McClellan was deposed. Accordingly, the

13

Court should grant CSXT's request to re-open Mr. McClellan's deposition and permit CSXT to question him regarding NS's substantial production of documents for which he was a custodian or otherwise implicated.

## II. The Late Production of Substantial New Discovery Warrants Granting CSXT's Request to Depose Messrs. Booth and Martinez.

Where a party acts "diligently by participating in the exchange of a large volume of documents and that large scale of the documentary material contribute[s] to their failure to complete fact discovery," a court may permit the party to take additional discovery after the conclusion of its initial discovery period. *See e.g.*, *Kinetic Concepts, Inc.,* 2010 U.S. Dist. LEXIS 40240, at *33 (M.D.N.C. Apr. 23, 2010). Moreover, in a case like this one, where there is voluminous document discovery and a party has back-loaded large document productions, good cause exists for additional discovery, including depositions. *inVentiv Health Consulting, Inc. v. French*, No. 5:18-CV-295-D, 2020 U.S. Dist. LEXIS 24352, at *33-34 (E.D.N.C. Feb. 12, 2020); *see also Polyzen, Inc. v. Radiadyne, LLC,* No. 5:11-CV-662-D, 2014 U.S. Dist. LEXIS 76775, at *10-11 (E.D.N.C. June 2, 2014) (granting request to extend discovery to take new depositions of individuals listed in initial disclosures and to re-depose a third individual, where there were repeated delays in discovery and document were produced on the morning of deposition).

As described above, CSXT diligently attempted to complete discovery in accordance with the Court's schedule, and it promptly sought a short extension of its discovery period based on NS's delayed document productions. NS opposed that request by insisting that it would complete its productions with ample time remaining. But that was simply not true. To the contrary, NS made more than two-thirds of its production *after* the date by which NS promised substantial completion. Because those late-produced documents make clear that Messrs. Booth and Martinez

14

were directly involved in important decisions and key issues pertinent to this action, good cause exists for CSXT to depose them.

### A. The Court Should Grant CSXT's Request to Depose Mr. Booth.

According to NS's Response to CSXT's Interrogatory No. 1, before retiring, Mr. Booth was NS's Assistant Vice President of Intermodal Operations. *See* **Ex. G**. NS identified Mr. Booth as "likely [having] knowledge of NSR's intermodal and terminal operations [and] regarding CSXT access to NIT in or around 2015." *See id.*; *see also* **Ex. H** (NS's initial disclosures stating that Mr. Booth "may have discoverable information regarding CSX's use of NPBL in 2015").

NS's barebones descriptions in its written disclosures and discovery did not give CSXT a full picture of Mr. Booth's significant involvement and responsibilities relating to the claims in this action. By way of example, NS's late-produced documents demonstrate that Mr. Booth was also involved in: (i) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See, e.g.*, NSR_00129565 and NSR_00190414, collectively attached as **Exhibit M**.

Given Mr. Booth's involvement in these and other critical issues, it is not surprising that NS ultimately produced thousands of documents involving him. And the majority of these documents were produced after February 7—the date by which NS represented that its productions would be substantially complete. Indeed, by that date, NS had produced 1,809 documents with Mr. Booth as a custodian. After February 7, that number nearly tripled, with NS producing another approximately 5,300 of Mr. Booth's documents. Those belated productions—made within days of CSXT's discovery deadline—did not afford CSXT a reasonable opportunity to review Mr.

15

Booth's documents, assess his significance to the case, and notice his deposition before time ran out. Accordingly, the Court should grant CSXT's request to depose Mr. Booth to explore his personal knowledge and involvement regarding the issues in this case, including, but not limited to, those illustrated by the documents NS produced after its substantial completion date.

### B. The Court Should Grant CSXT's Request to Depose Mr. Martinez.

Mr. Martinez is NS's Vice President, Business Development and Real Estate, Marketing Division. *See* **Ex. G**. NS identified Mr. Martinez as generally having "knowledge regarding NSR's intermodal network in the Eastern United States." *See id.*; *see also* **Ex. H** (NS's initial disclosures stating that Mr. Martinez "may have discoverable information regarding NSR's relationship with VPA").

As with Mr. Booth, these vague descriptors fall far short of providing a true picture of Mr. Martinez's involvement and responsibilities relating to CSXT's claims in this action. By way of example, NS's late-produced documents indicate that Mr. Martinez was: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See, e.g.*, NSR_00129287, NSR_0010445, NSR_00174541, NSR_00199527, NSR_00199544, and NSR_00165418, collectively attached as **Exhibit N**.

And as with Mr. Booth, NS produced the vast majority of Mr. Martinez's documents after its substantial completion deadline. Specifically, NS produced 1,695 documents with Mr. Martinez as a custodian before February 7. After that date, NS produced another 2,607 documents belonging to Mr. Martinez. Because NS produced these and other significant documents at such

16

a late stage, CSXT was not afforded a reasonable opportunity to review them and set Mr. Martinez's deposition within its original discovery period. Accordingly, the Court should grant CSXT's request to depose Mr. Martinez to explore his personal knowledge and involvement with the issues in this case, including, but not limited to, topics related to documents contained in NS's substantial late production.

### III. The Court Should Award CSXT its Costs and Attorneys' Fees Incurred For Seeking to Reopen and Take Additional Depositions

Under Federal Rule of Civil Procedure 37(a)(5), if a motion seeking to compel discovery, including relating to a deposition, is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion … to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," absent certain exceptions. Similarly, under Federal Rule of Civil Procedure 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), … the court … may order payment of the reasonable expenses, including attorney's fees, caused by the failure." Where a party has, without substantial justification, failed to provide discovery in accordance with the Federal Rules of Civil Procedure, which necessitates the reopening of depositions, "a full award of [the party's] costs and expenses for filing a motion for sanctions, and for reopening such depositions, may be warranted." *See Gentile v. Ingram*, No. 7:13-CV-81- FL, 2016 WL 3383273, at *3 (E.D. N.C. June 17, 2016).

Here, NSR delayed making over two-thirds of its production, consisting of hundreds of thousands of pages of documents, until February 28 and March 10, at the very end of CSXT's discovery period and weeks after the date by which NS represented it would substantially complete its production in response to CSXT's First RFPs. This delay forced CSXT to take the depositions of Messrs. Heller and McClellan (among others) without key documents and in a different manner

17

than it would have otherwise, necessitating the re-opening of their depositions. Likewise, because NS failed to produce the majority of documents belonging to Messrs. Booth and Martinez until weeks after its proffered completion date, CSXT had to decide whether to depose these witnesses based primarily on NS's barebones written disclosures, which showed only the tip of the iceberg of these witnesses' involvement in the issues giving rise to this litigation.

NS's belated productions did not contain merely ancillary or minimally relevant documents for these witnesses. To the contrary, these productions contained key documents related to central issues in this case. NS's actions thus "constitute[ ] a disregard for the scheduling orders and rules of this court, [and] . . . caused a disruption in the orderly progression of the case." *Gentile*, 2016 WL 3383273, at *3. As a result, the Court should award CSXT its costs, including attorneys' fees, for bringing this motion and for re-taking the depositions of Messrs. Heller and McClellan. *See id.*; *see also Crump v. Tcoombs & Associates, LLC*, No. 2:13cv707, 2015 WL 12826463, at *2 (E.D. Va. Aug. 4, 2015) (ordering that a deposition be "re-opened at Crump's expense" to examine the witness on substantive changes made in his errata sheet).

## CERTIFICATION

In accordance with Rule 37(E) of the Local Rules for the United States District Court for the Eastern District of Virginia, CSXT certifies that it has made a good faith effort to resolve the issues raised in this Motion with counsel for NS before seeking Court intervention.

## CONCLUSION

For the foregoing reasons, CSXT respectfully requests that the Court enter an Order granting CSXT's Motion and giving them the right to reopen of the depositions of Jeffrey Heller and Michael McClellan and to take the depositions of Cary Booth and Dr. Rob Martinez, and granting an award of its attorneys' fees for this Motion.

Dated:  July 24, 2020                                          Respectfully submitted,

**CSX TRANSPORTATION, INC.**
*By Counsel*

*/s/ Robert W. McFarland*
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
V. Kathleen Dougherty (VSB No. 77294)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia  23510-1655
Telephone: (757) 640-3716
Facsimile:  (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: vkdougherty@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219-3916
Telephone:  (804) 775-1000
Facsimile:  (804) 698-2026
E-mail: bjustus@mcguirewoods.com
E-mail: apeterson@mcguirewoods.com

## CERTIFICATE OF SERVICE

I certify that on this 24th day of July, 2020, a true and correct copy of the foregoing was served on all counsel of record via Notice of Electronic Filing by filing with the Court's CM/ECF system.

/s/ Robert W. McFarland
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
V. Kathleen Dougherty (VSB No. 77294)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia  23510-1655
Telephone: (757) 640-3716
Facsimile:  (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: vkdougherty@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219-3916
Telephone:  (804) 775-1000
Facsimile:  (804) 698-2026
E-mail: bjustus@mcguirewoods.com
E-mail: apeterson@mcguirewoods.com