# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

CSX TRANSPORTATION, INC.,
individually and on behalf of NORFOLK
& PORTSMOUTH BELT LINE
RAILROAD COMPANY,

        Plaintiff,

v.                                 Civil Action No. 2:18cv530

NORFOLK SOUTHERN RAILWAY
COMPANY, NORFOLK & PORTSMOUTH
BELT LINE RAILROAD COMPANY,
JERRY HALL, THOMAS HURLBUT,
PHILIP MERILLI, and CANNON MOSS,

        Defendants.

---

**PLAINTIFF CSX TRANSPORTATION, INC.'S FIRST SET**
**OF INTERROGATORIES AND REQUESTS FOR PRODUCTION**
**TO DEFENDANT NORFOLK SOUTHERN RAILWAY COMPANY**

Plaintiff CSX Transportation, Inc. ("CSXT"), by and through undersigned counsel and pursuant to Federal Rules of Civil Procedure 26, 33, and 34, propounds the following Interrogatories and Requests for Production of Documents (the "RFPs") to Defendant Norfolk Southern Railway Company ("NS") to be answered fully and separately, in writing, and under oath within thirty (30) days after service, and in accordance with the following definitions and instructions.

**DEFINITIONS**

1.     "Communication" is used in its broadest sense to encompass any transmission or exchange of information, ideas, facts, data, proposals, or any other matter, whether between

1

individuals or between or among the members of a group, whether face-to-face or by telephone, whether oral or in writing, or whether by means of electronic or other medium.

2.      "Concern" or "Concerning" a certain subject means constituting, referring to, discussing, analyzing, comprising, embodying, recording, evidencing, or containing any information that pertains to the subject matter addressed in the request.

3.      "Describe" means to (i) identify the sources from which the information was derived; (ii) identify all parties to the event or transaction; (iii) state the date and place at which the event or transaction took place; (iv) set forth the statements made and actions taken by each party to the event or transaction; and (v) identify each Document containing information concerning each such event or transaction.

4.      "Document" means all writings of any kind whatsoever, whether handwritten, typed, printed, computerized, or otherwise visually reproduced, including but not limited to files, communications, accounting records, memoranda, including interoffice and intraoffice memoranda, reports, notes, telephone and voicemail messages, instructions, correspondence, letters, email messages, text messages, diaries, calendars, day-timers, telegrams, investigations, summaries, any drafts of such documents, marginal comments appearing in any documents, schedules, notebooks, computer printouts or other data stored on a computer or electronic device, invoices, and records of payment, and shall include, but not be limited to, any document of whatever form upon which information was recorded, and shall include separately any document which is a non-identical copy of another.

5.      "Identify," when used in reference to a corporation, partnership, or other legal entity other than an actual person, means to state its full name, form and state of organization, and address or principal place of business.

2

6.     "Identify," when used in reference to a Document, means to state the type of document (*e.g.*, letter, memorandum, contract, etc.) or some other means of identifying it, its date, author or authors, addressee or addresses, its present location, and the name of its custodian.

7.     "Identify," when used in reference to a Communication, means to state the type of communication (*e.g.*, letter, memorandum, e-mail, telephone call, oral conversation) or other description, its date, the parties to the communication, and the location of the respective parties to the communication.

8.     "Identify," when used in reference to an event, transaction, or occurrence, means to describe the act in complete and reasonable detail including the time, date, and location, and identifying all persons participating or present, as well as all Documents relating to it.

9.     "Identify," when used in reference to a natural person, means to state his or her full name, and present residential or business address.  If such information is not known, state the last known residential or business address.  If such person has, or at the time in question, had any relationship to any of the parties to this action, "Identify" also means to state what that relationship is, or was, and the inclusive date of same.

10.     "Meeting" means the contemporaneous presence of two or more persons, whether in person or by any telephonic, electronic, or other form of communication.

11.     "Person" means any natural person, firm, association, partnership, joint venture, corporation, estate, trust, receiver, syndicate, municipal corporation, government department or agency, and any form of legal entity and any other group in combination acting as a unit.

12.     The singular includes the plural, the past tense includes the present tense, and the masculine includes the feminine, and vice versa.  The words "and" and "or" are both conjunctive

3

and disjunctive. The word "all" means "any and all." The word "any" means "any and all." The word "including" means "including without limitation."

13.     "Complaint" as used herein refers to the Complaint filed by CSXT in the U.S. District Court for the Eastern District of Virginia on October 4, 2018.

14.     "Lawsuit" as used herein refers to the claims and defenses asserted in the Complaint and the responses thereto filed in this action.

15.     "You" or "your" as used herein refers to NS and Norfolk Southern Corporation, and all persons acting on behalf of such entities at any point in time, including but not limited to, current or former officers, management, directors, employees, agents, attorneys, and representatives.

16.     "NPBL" means the Norfolk & Portsmouth Belt Line Railroad Company, and all persons acting on its behalf at any point in time, including but not limited to, current or former officers, management, directors, employees, agents, attorneys, and representatives.

17.     "VIT" means Virginia International Terminals, LLC, a Virginia limited liability company wholly owned by the Virginia Port Authority, which operates a group of marine terminal facilities referred to as the "Port of Virginia," and all persons acting on its behalf at any point in time, including but not limited to, current or former officers, management, directors, employees, agents, attorneys, and representatives.

18.     "VPA" means Virginia Port Authority, a political subdivision of the Commonwealth of Virginia that owns the Port of Virginia, and all persons acting on its behalf at any point in time, including but not limited to, current or former officers, management, directors, employees, agents, attorneys, and representatives.

4

19.     "NIT" means Norfolk International Terminals, located in Norfolk, Virginia, and all persons acting on its behalf at any point in time, including but not limited to, current or former officers, management, directors, employees, agents, attorneys, and representatives.

20.     "VIG" means Virginia International Gateway, located in Portsmouth, Virginia, formerly known as APM Terminals Virginia, and all persons acting on its behalf at any point in time, including but not limited to, current or former officers, management, directors, employees, agents, attorneys, and representatives.

21.     "PMT" means Portsmouth Marine Terminal, located in Portsmouth, Virginia, and all persons acting on its behalf at any point in time, including but not limited to, current or former officers, management, directors, employees, agents, attorneys, and representatives.

22.     "East Coast Ports" means all major ocean ports and marine terminals on the Atlantic and Gulf coasts in the United States located east of the Mississippi River, including terminals located in the Port of New Orleans, Port of New York/New Jersey, Port of Baltimore, Port of Charleston, and Port of Savannah.

23.     The "Diamond" or the "Double Diamond" means the track between NS Juncture and Carolina Juncture, which was discontinued in 2008. *See Norfolk Southern Railway Company-Discontinuance of Service Exemption-in Chesapeake, VA,* Docket No. AB-290 (Sub-No. 299X), filed April 25, 2008.

## INSTRUCTIONS FOR INTERROGATORIES

1.     NS shall respond to the following Interrogatories within thirty (30) days after service of this document, and serve its answers upon Robert W. McFarland, McGuireWoods LLP, 9000 World Trade Center, Norfolk, Virginia 23510-1655.

5

2.      Each Interrogatory is to be answered separately and independently without being limited by any other Interrogatory.

3.      If you claim that an Interrogatory is ambiguous, that contention shall not be a basis for refusing to respond, but you should identify the language that you contend is ambiguous and set forth the interpretation that you employed in responding to the request.

4.      If you assert that any of the Interrogatories are objectionable, state your objection clearly and specifically identify which parts of the Interrogatories or the responses they require are objectionable and why.  If you assert that part of any Interrogatory is objectionable, respond to those remaining parts of the Interrogatory to which you do not object.

5.      If you cannot answer any portion of any of the following Interrogatories in full, after exercising due diligence to secure the information to do so, state and answer to the extent possible, specifying your inability to answer the remainder, and stating whatever information or knowledge you have concerning the unanswered portions.

6.      If you claim that any information requested is protected by the attorney-client privilege, the work product doctrine, or any other privilege, respond to that part of each Interrogatory that does not require you to divulge privileged information.  For each part of any Interrogatory for which you claim a privilege, provide a log or list of such privileged information or documents and describe the factual basis for your claim of privilege in sufficient detail to permit the court to determine if your claim is valid.  Include in your "privilege log" the following: (a) a brief description of the document or communication; (b) the date of the document or communication; (c) the name, title, job description, and address of the transmitter of the document or communication; (d) the name, title, job description, and address of any person to whom the communication was made, to whom the document was sent, or to whom copies were sent or

6

circulated at any time; and (e) the nature of the privilege claimed and an explanation of its application.

7.      If any Documents or things responsive to any of the Interrogatories contained herein are claimed to be privileged or otherwise protected from discovery, in whole or in part, state with particularity the nature and basis of the claim of privilege in sufficient detail to permit the Court to adjudicate the validity of such claim.

8.      If you answer any Interrogatory by reference to Documents you produce to CSXT, identify the document(s) by Bates number or with similar specificity.

9.      These Interrogatories shall be deemed to be continuing in accordance with Federal Rule of Civil Procedure 26(e), and you are requested to promptly supplement your answers if you obtain any additional information between the time the responses to these Interrogatories are served and the time of trial.

### INTERROGATORIES

1.      Identify all persons whom you believe may have knowledge or information concerning the subject matter of the Lawsuit and with respect to each person and summarize the information you believe to be known to that person.

**ANSWER:**


2.      Identify and describe all formal or informal agreements or understandings between NS and NPBL that have existed at any point since 2005, whether written or oral.

**ANSWER:**

3.      Identify all current or former NS employees, officers, or agents who have held any management or director or advisory position with NPBL since 2007 and state their positions and the dates they held them.

**ANSWER:**


4.   For each individual identified in your answer to Interrogatory #3, identify his or her position(s) at NS before, during, and after his or her respective NPBL tenure.

**ANSWER:**


5.      For all East Coast Ports, identify each company with which NS competed for the freight transportation by rail in or out of that port for each year since 2007.

**ANSWER:**


6.      For each quarter since January 2007, state the shares for NS and each of its competitors in freight transportation by rail in and out of all East Coast Ports served by NS, and state the basis for those share calculations.

**ANSWER:**


7.      For each East Coast Port served by NS, state any limitations on the type, capacity, or efficiency of rail transportation services that can be offered at that facility, including, but not limited to, whether double-stacking of containers is possible for rail transportation from that

facility, flat car/well car availability via TTX, chassis availability, and whether rail shipments from that facility can utilize the Heartland Corridor.

**ANSWER:**


8.      Identify each destination NS currently serves from each of the East Coast Ports it services, as well as any other port or terminal in the Hampton Roads area (including private terminals), and describe NS's current estimated shipping time and current pricing and costs for rail transportation to each destination.

**ANSWER:**


[END OF INTERROGATORIES]

## INSTRUCTIONS FOR REQUESTS FOR PRODUCTION OF DOCUMENTS

1.       NS shall respond to the following RFPs within thirty (30) days after service of this document, and serve its answers upon Robert W. McFarland, McGuireWoods LLP, 9000 World Trade Center, Norfolk, Virginia 23510-1655.

2.       In response to these RFPs, you must furnish all information or Documents in your possession, custody, or control, or in the possession, custody, or control of your past or present agents, attorneys, accountants, advisors, employees, or any other persons acting on your behalf.

3.       You must also indicate whether you are withholding from production any requested Document or portion of a Document on the basis of any asserted privilege or protection. For each such Document or portion of a Document, state: (a) the type of Document; (b) the general subject matter of the Document; (c) the date of the Document; (d) the author, addressee, and all other recipients of the Document, their titles, positions, and specific job-related duties, and the relationship of the author and all recipients to one another; and (e) the specific objection or privilege asserted and an explanation of its application.

4.       It is not a basis for withholding a Document that it originated with Plaintiff, or that it is a Document that you believe Plaintiff has within their possession, custody, or control.

5.       These RFPs shall be deemed to be continuing, and you are requested to supplement your answers if you obtain any additional information between the time the responses to these RFPs are served and the time of trial.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.       All Documents concerning the subject matter of this Lawsuit including, but not limited to, Documents concerning or referencing the allegations in the Complaint.

**RESPONSE:**

10

.

2.      All Documents from 2007 to the present evidencing, related to, or concerning communications between you and CSXT, their agents, attorneys, employees, former employees, or representatives, concerning the subject matter of the Lawsuit; including, but not limited to, the allegations in the Complaint and including any Documents attached to such communications.

**RESPONSE:**

3.      All Documents from 2007 to the present evidencing, related to, or concerning communications between you and the other Defendants, their agents, attorneys, employees, former employees, or representatives, concerning the subject matter of the Lawsuit; including, but not limited to, the allegations in the Complaint and including any Documents attached to such communications.

**RESPONSE:**

4.      All Documents from 2007 to the present evidencing, related to, or concerning communications between you and any person or entity that is not a party to the Lawsuit concerning the subject matter of this Lawsuit; including, but not limited to, the allegations in the Complaint or other Documents filed or served in this Lawsuit and including any Documents attached to such communications.

**RESPONSE:**

11

5.     All Documents from 2007 to the present evidencing, related to, or concerning any notes made, or statements or affidavits prepared or signed by you concerning the subject matter of this Lawsuit; including, but not limited to, the allegations in the Complaint.

**RESPONSE:**

6.     All Documents used or relied upon by you in preparing your answers to the Interrogatories.

**RESPONSE:**

7.     All Documents supporting the Sixth Defense, Eleventh Defense, Fourteenth Defense, and Fifteenth Defense asserted in your Answer.

**RESPONSE:**

8.     All communications between NS, its employees, officers, agents, and directors, and any officers, directors, or employees of NPBL since January 1, 2007 regarding the "Diamond."

**RESPONSE:**

9.     All communications between NS, its employees, officers, agents, and directors, and any officers, directors, or employees of NPBL since January 1, 2007 regarding the use of NPBL by any entity other than NS.

**RESPONSE:**

10.     All Documents pertaining to the setting of rates to be charged by NPBL, including, but not limited to, rates to be charged for switch services, since January 1, 2007.

**RESPONSE:**

11.     All minutes, agendas, presentations, or other Documents related to meetings of the NPBL Board of Directors, NPBL Rate Committee, and NPBL Annual Shareholders' meetings between 2007 and present, including drafts.

**RESPONSE:**

12.     All audits conducted of NPBL since 2007.

**RESPONSE:**

13.     NPBL's annual financial statements since 2007.

**RESPONSE:**

14.     All Documents that NS has received concerning, reflecting or otherwise relating to communications between NPBL, its employees, agents, officers and directors, and the Virginia Port Authority ("VPA"), Virginia International Terminals, LLC ("VIT"), NIT, PMT, and VIG between 2007 and the present.

**RESPONSE:**

15.     All communications between NS and the Commonwealth Railway regarding the Commonwealth Railway's switch rate formula between 2007 and the present.

**RESPONSE:**

16.    All Documents regarding the use by CSXT of tracks that access NIT, PMT, and VIG.

**RESPONSE:**

17.    All Documents between NS, its employees, agents, officers and directors, and VPA or VIT regarding CSXT's access to NIT, PMT, and VIG.

**RESPONSE:**

18.    All Documents between NS, its employees, agents, officers and directors, and VPA, or VIT regarding the switch rates, including NPBL and intraplant switch rates to be charged to NS at NIT, PMT, and VIG.

19.    Documents sufficient to show switch rates at all East Coast Ports served by NS.

**RESPONSE:**

20. All Documents regarding removal of track between NS Juncture and Carolina Juncture (also known as the "Diamond" or "Double Diamond"), including any Documents referencing the consequences of this removal of track to CSXT or other rail companies.

**RESPONSE:**

14

21. All Documents regarding the use of CSXT locomotives by NPBL or on NPBL track.

**RESPONSE:**


22.     All Documents regarding the use of NS locomotives by NPBL or on NPBL track.

**RESPONSE:**


23.     All Documents since 2007 regarding CSXT's proposals for revised rates, including any analysis or assessment performed regarding such proposals including with respect to NPBL and/or NS and/or Port operations.

**RESPONSE:**


24.     All Documents since 2007 reflecting or pertaining to any discussions or negotiations between NS and any actual or potential customer for whom NS or CSXT moves freight through any East Coast Port, including, but not limited to, any requests for proposals, responses to requests for proposals, term sheets, draft or final contracts or agreements, and any related communications.

**RESPONSE:**


25.     All Documents since 2007 in which NS references CSXT's lack of access or means to restrict access to NIT, PMT (including Pinner's Point), or VIG and NPBL, generally.

**RESPONSE:**

26.     Documents sufficient to show, for the time period since January 1, 2007,:

    a.  Each customer for which NS moved freight through (inbound or outbound) any East Coast Port;

    b.  The specific port through which the freight was transported;

    c.  The specific type of freight transportation services provided to each customer;

    d.  The volume of freight moved for each customer;

    e.  The origin of the freight transported for each customer;

    f.  The destination of the freight transported for each customer;

    g.  NS's total capacity for transporting freight through each port;

    h.  The price at which freight transportation services were sold to each customer; and

    i.  The net profit margin, in percentage, earned from the provision of freight transportation services to each customer.

**RESPONSE:**

27.     All Documents related to NS's pricing strategies for any freight transportation by rail in and out of all East Coast Ports.

**RESPONSE:**

28.     All Documents related to NS's business performance at NIT, VIG, and PMT, including, but not limited to, Documents reflecting sales growth or declines, increases or decreases in the number of customers serviced by NS, and increases or decreases in NS's market share for freight transportation by rail in and out of NIT, VIG, and PMT.

**RESPONSE:**

29.    All market studies, competitive analyses, market share calculations, market intelligence, and revenue/profit forecasts for the Hampton Roads area, or any other East Coast Port as far as these documents also refer to NIT, PMT, or VIG, including, but not limited to, any Documents identifying, comparing, or analyzing the cost of serving NIT, PMT, or VIG by rail versus by truck.

**RESPONSE**:

30.    All Documents related to any investigations by the U.S. Department of Justice, Federal Trade Commission, or any other administrative agency related to allegations of anticompetitive conduct by NS.

**RESPONSE**:

31.    All Documents related to competitive alternatives for customers shipping cargo through NIT, VIG, and PMT.

**RESPONSE**:

32.    Documents sufficient to show capacity and freight volumes shipped by NS through NIT, VIG, and PMT since 2007.

**RESPONSE**:

33.    Documents sufficient to show NS's gross margins for their services to and from NIT, VIG, and PMT since 2007.

**RESPONSE**:

17

34.     All Documents prepared or filed as a part of the proceeding pending before the Surface Transportation Board (STB), including, but not limited to, all evaluations of rates paid by NPBL for access to NS track or of NPBL's switch rates, and documents related to the determination to terminate, amend or otherwise modify any of the trackage rights and operating rights agreements between NS and NPBL.

**RESPONSE:**

35.     All Documents containing any written or recorded statements from individuals identified in response to Interrogatory Number 1 that are related to the subject matter of the Lawsuit.

**RESPONSE:**

36.     All industry reports, trade association publications, or other Documents related to the rail freight industry and intermodal ports since 2007.

**RESPONSE:**

37.     All Documents containing or referencing historical or current data and information related to capacity, freight volumes, ports of origin, destinations, and rates for NS and its competitors at NIT, PMT, VIG, and other East Coast Ports.

**RESPONSE:**

38.     All Documents referencing infrastructure for access via rail or truck at NIT, PMT (including Pinner's Point), and VIG, including Documents related to double-stacking, lease of storage tracks, or other limitations on capacity, efficiency, or type of service.

**RESPONSE:**

39.     Documents sufficient to show all destinations served by NS from NIT, PMT, and VIG since January 2017.

**RESPONSE:**

40.     All Documents produced by you to any other party to this action.

**RESPONSE:**

41.     All Documents produced to you by any other party to this action.

**RESPONSE:**

42.     All Documents obtained by you pursuant to a subpoena from any third-party during the course of this action.

**RESPONSE:**

43.     All Documents not otherwise produced that relate to the proof of a claim or defenses asserted by any party to this action.

**RESPONSE:**

[END OF REQUESTS FOR PRODUCTION]

19

**CSX TRANSPORTATION, INC.**

*By Counsel*

Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
Jeanne E. Noonan (VSB No. 87863)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia  23510-1655
Telephone: (757) 640-3716
Facsimile:  (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: jnoonan@mcguirewoods.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2019, a true and correct copy of the foregoing was transmitted by electronic mail to:

Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
TROUTMAN SANDERS, LLP
1001 Haxall Point
Richmond, Virginia 23219
Tel: 804-697-1200
Fax: 804-698-6061
alan.wingfield@troutman.com
michael.lacy@troutman.com

Michael W. Smith (VSB No. 01125)
Craig T. Merritt (VSB No. 20281)
Belinda D. Jones (VSB No. 72169)
S. Perry Coburn (VSB No. 78372)
CHRISTIAN & BARTON, LLP
909 East Main Street, Suite 1200
Richmond, Virginia 23219
Tel.: (804) 697-4100
Fax: (804) 697-4112
cmerritt@cblaw.com
bhill@cblaw.com
bjones@cblaw.com
pcoburn@cblaw.com
*Counsel for Defendant Norfolk Southern Railway Company*

James L. Chapman, IV (VSB No. 21983)
W. Ryan Snow (VSB No. 47423)
Darius K. Davenport (VSB No. 74064)
David C. Hartnett (VSB No. 80452)
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
ddavenport@cwm-law.com
dhartnett@cwm-law.com
*Counsel for Defendant Norfolk & Portsmouth Belt Line Railroad Co.*

W. Edgar Spivey (VSB No. 29125)
Clark J. Belote (VSB No. 87310)
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Tel. (757) 624-3000
Fax. (757) 360-9092
wespivey@kaufcan.com
cjbelote@kaufcan.com
*Counsel for Defendant Cannon Moss*

Hugh M. Fain, III (VSB No. 26494)
M.F. Connell Mullins Jr. (VSB No. 47213)
John M. Erbach (VSB No. 76695)
SPOTTS FAIN P.C.
411 East Main Street, Suite 600
Richmond, VA 23219
Tel. (804) 697-2000
Fax (804) 697-2100
hfain@spottsfain.com
cmullins@spottsfain.com
jerbach@spottsfain.com
*Counsel for Defendants Jerry Hall, Thomas Hurlbut
And Philip Merilli*

Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
Jeanne E. Noonan (VSB No. 87863)
McGuireWoods LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia  23510-1655
Telephone: (757) 640-3716
Facsimile:  (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: jnoonan@mcguirewoods.com

122801150_3