IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CSX TRANSPORTATION, INC.,
individually and on behalf of NORFOLK
& PORTSMOUTH BELT LINE
RAILROAD COMPANY,

      Plaintiff,

v.                                                                          Civil Action No. 2:18-cv-530-MSD-LRL

NORFOLK SOUTHERN RAILWAY
COMPANY, *et al.*,

      Defendants.

_____/

**CSX TRANSPORTATION INC.'S OPPOSITION TO NPBL's MOTION TO COMPEL**

Plaintiff CSX Transportation, Inc. ("CSXT"), by counsel, states as follows in opposition to the Motion to Compel ("Motion") filed by Defendant Norfolk & Portsmouth Beltline Railroad Company ("NPBL" or the "Belt Line") (ECF No. 200):

**INTRODUCTION**

In October 2018, CSXT filed a 125-paragraph Complaint against Defendants NPBL and Norfolk Southern Railway Company ("NS"), seeking to hold them liable for their ongoing conspiracy to monopolize on-dock rail access at Norfolk International Terminal ("NIT"), the largest marine terminal in Hampton Roads, Virginia. ECF No. 1. As this Court observed in denying Defendants' motions to dismiss, the Complaint describes in detail the manner by which NPBL and NS "collude[ed]. . . to deny competitors access to NIT," including, among other things, "by causing [the] Belt Line to establish and maintain unreasonably high rates for its switch services for intermodal freight." ECF No. 66 at 6.

1

Despite the Complaint's detailed factual allegations, NPBL insists that it "has no idea how CSXT believes it conspired with NS," including "what it said to NS or what it did with NS to either form or further the alleged conspiracy." Motion at 3. Purportedly seeking clarity on this issue, NPBL served CSXT with interrogatories, two of which ask CSXT to identify the "specific communication(s) between the Belt Line and NS" and the "specific overt act(s) by NPBL" that CSXT "contend[s] form the basis for the conspiracy alleged in [the Complaint]." *Id.* at 2. In response, CSXT identified *dozens* of documents evidencing "specific communications" between NPBL and NS, as well as actions by NPBL representatives, in furtherance of the conspiracy.

NPBL contends that CSXT's answers are "evasive" because they are not limited to "direct evidence" of conspiracy. *Id.* at 12. But the interrogatories themselves are not limited to "direct evidence" of conspiracy—they ask CSXT to identify the communications and conduct "form[ing] the basis" of its conspiracy claims. CSXT has done exactly that. It should come as no surprise to NPBL that CSXT intends to rely on indirect evidence to support its claims. Indeed, as the Fourth Circuit has repeatedly explained, direct evidence of conspiracy is "extremely rare" in cases like this one. *Am. Chiropractic Ass'n v Trigon Healthcare, Inc.*, 367 F.3d 212, 225-26 (4th Cir. 2004). Simply put, sophisticated business entities seldom memorialize their illegal agreements in writing.

NPBL also argues that CSXT cannot cite "internal" NS emails in its answers, because its interrogatories ask for communications and acts *involving NPBL*. This argument is confounding, because the "internal" emails cited by CSXT, on their face, either (1) document in-person or telephonic communications between NPBL and NS, or (2) involve communications between NS employees and NS-appointed NPBL Board members *acting in their capacity as NPBL representatives*. These "internal" NS emails thus evidence the conspiracy between NS and NPBL, and they are responsive to NPBL's interrogatories.

2

CSXT's interrogatory answers are not "evasive" because they identify indirect evidence of conspiracy, and they are not "deficient" because NPBL disagrees with CSXT's interpretation of the evidence. NPBL asked CSXT to identify the specific communications and conduct forming the basis of its conspiracy claims, and CSXT has done so. Because CSXT's answers to NPBL's interrogatories are appropriate under the Federal Rules and applicable case law, the Court should deny NPBL's Motion and award CSXT its reasonable expenses, including attorneys' fees, incurred in opposing the Motion.

## RELEVANT BACKGROUND

In its Complaint, CSXT alleges:

> For at least the past ten years, NS has inserted former NS employees in all management positions of the NPBL and current or former NS employees in four of the six NPBL Board of Directors voting positions . . . . NS and these directors and the NPBL management they put in place have conspired to operate the NPBL in order to benefit NS at the expense of the profitability and viability of the NPBL, and to harm NS's competitor CSXT.

ECF No. 1 at ¶ 2. The Complaint goes on to allege, in detail, a number of specific actions taken by NPBL and NS in furtherance of this ongoing conspiracy, including (1) setting an artificially high rate for NPBL's intermodal switching services, *id.* at ¶¶ 34-37; (2) refusing to consider CSXT's service proposals, *id.* at ¶¶ 38-46; (3) selling or otherwise disposing of property and infrastructure needed for equal access to NIT, *id.* at ¶ 47; (4) acting to operationally limit CSXT's access to NIT, *id.* at ¶ 55; and (5) refusing to address the corporate governance concerns raised by CSXT, *id.* at ¶¶ 67-74. CSXT has further articulated its theory of the case in response NS's discovery requests, as well as in its expert report.

On February 24, 2020, NPBL served CSXT interrogatories, including two that "ask CSXT to identify the communications and overt acts that form the basis for the alleged conspiracy." Motion at 2; *see also* Ex. A at 6, 8 ("Interrogatories"). Specifically, the Interrogatories ask CSXT

3

to "identify the specific communication(s) between the Belt Line and NS" and "the specific overt act(s) by NPBL" that "you contend form the basis for the conspiracy alleged in [the Complaint]," including "the identities of the specific persons" involved, the "dates and circumstances," and "all documents that support your answer." *Id.*

CSXT timely objected to and answered both Interrogatories. *See* Motion Ex. A at 6-8. In its answers, CSXT explained that it could not possibly identify all communications between NPBL and NS related to a decade-long conspiracy, particularly where those communications may not have been produced in discovery.[1] *See id.* at 6. CSXT nonetheless identified by Bates number dozens of documents evidencing communications between NPBL and NS in furtherance of the conspiracy, including documents describing overt acts taken by NPBL representatives. *See id.* at 6-8; *see also* Motion Ex. G (CSXT's supplemental responses). In its answers, CSXT categorized these documents to correspond with the specific conspiratorial actions described in its Complaint and expert report. *See id.*

NPBL has challenged the sufficiency of CSXT's answers, claiming that the documents cited by CSXT are not responsive. *Id.* at 3. After several attempts to meet and confer by telephone, CSXT set out its position on this issue in writing. *See id.* at Ex. B. CSXT explained that it had identified by Bates number communications—as well as documents that reference, describe, or imply that communications occurred—between NS and NPBL management and directors related

---

[1] NPBL "presum[es]" that any responsive communications not produced to CSXT in discovery must have been "oral" communications. That is certainly one type of communication that would not have been produced to CSXT in this litigation. There may also be written communications—email or otherwise—that were not maintained in the files of the custodians identified by Defendants, or that were not captured by the search terms Defendants applied to those files, or that Defendants otherwise failed to identify as responsive to CSXT's discovery requests. There is simply no way to account for all possible evidence of communications between two entities that have conspired together for more than a decade.

4

to conduct in furtherance of the conspiracy. *See id.* As CSXT explained, the communications and acts described in these documents "form the basis of the conspiracy alleged" in CSXT's Complaint, and are thus responsive to NPBL's Interrogatories and applicable case law. Undeterred, NPBL filed this Motion.

## ARGUMENT

### I. *Applicable Legal Standards*

Under Rule 26 of the Federal Rules of Civil Procedure, the scope of discovery "is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop its case." *Cohen v. United States*, No. 3:16-CV-01489, 2018 WL 1900043, *1–2 (D.S.C. Apr. 20, 2018). But "discovery is not limitless, and the court has the discretion to protect a party from 'oppression' or 'undue burden or expense.'" *Id.* (citing Fed. R. Civ. P. 26(c)).

A party may use interrogatories to "properly inquire into a party's contentions in the case." *Id.* at *3. But "contention interrogatories" cannot "require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents." *Rainey v. Anderson*, No. 2:17CV444, 2018 WL 3636596, at *2 (E.D. Va. Apr. 11, 2018); *see also Bayview Loan Serv., LLC v. Boland*, 259 F.R.D. 516, 518–19 (D. Colo. 2009) (noting that, "in responding to interrogatories, a party cannot ordinarily be forced to prepare its opponent's case"). "Nor is an interrogatory the appropriate device to 'pin down' a litigant to one or another line of argument, or to restrict the evidence at trial." *Rainey*, 2018 WL 3636596, at *2. This is especially true when the requested information is not within the responding party's control, such that the party must "attest[ ] to the interrogatory answers based on evidence compiled in discovery." *Id.* Accordingly, a party responding to

5

contention interrogatories need only "provide undisclosed 'material' or 'principal' information that supports their claims." *Cohen*, 2018 WL 1900043, at *3.

## II. CSXT's Answers to the Interrogatories are Appropriate.

NPBL argues that CSXT's answers are deficient because, "[w]hile CSXT identifies broad topics, it fails to identify any communications between the Belt Line and NS or any overt acts by the Belt Line that form the basis for an alleged conspiracy, as the interrogatories require." Motion at 6. That is demonstrably false. As NPBL's own Motion makes clear, CSXT has cited dozens of documents evidencing specific communications between NPBL and NS in furtherance of the conspiracy.[2] NPBL's arguments to the contrary necessarily misunderstand the law, the facts, or both.

For example, NPBL complains about CSXT's citations to a collection of NPBL letters and director consent forms containing handwritten notes from a former NS-appointed NPBL director, William Romig. *See* Motion at 7. But these documents plainly evidence both communications *and* conduct by Mr. Romig in furtherance of the conspiracy. First, CSXT cites an NPBL letter enclosing a director consent form related to a proposed change to NPBL's switch rate. *See id.* (citing Motion Ex. D at 11 (NSR_00199524)). The letter contains multiple handwritten notes from Mr. Romig, including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* (emphases added). CSXT also cites the consent form Mr. Romig executed ten days later,

---

[2] NPBL argues that CSXT's citation to documents produced by NS and NPBL is inappropriate, because Fed. R. Civ. P. 33(d) allows a party to respond to an interrogatory by citing only to its own business records. *See* Motion at 9 n.3. But CSXT has not cited indiscriminately to broad swaths of Defendants' business records—it has cited specific documents evidencing the communications and acts by NPBL that CSXT "contend[s] form the basis of the conspiracy alleged," as NPBL explicitly requests in the Interrogatories.

6

███████████████████████████████████. *See* Motion Ex. D at 1 (NSR_00199515). A handwritten note on this document indicates that ███████████████████████████ ██████████████████ *See id.* Taken together, these documents show that Mr. Romig, *in his capacity as a representative of NPBL*, communicated with NS employees regarding the setting of NPBL's rates, and then voted *as an NPBL Board member* based on instructions provided by (and for the benefit of) NS.

Many other documents cited in CSXT's answers similarly indicate that NS-appointed members of the NPBL Board acted—or were directed to act—in furtherance of the conspiracy. *See, e.g., id.* at 127 (NSR_00104458) (███████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████); *id.* at 25 (NSR_00027070) (███████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████"); Motion Ex. H at 4 (NSR_00084753) (███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████).

7

Indeed, CSXT has identified a draft letter from NS employees to NS-appointed members of the NPBL board explicitly stating that

> CSXT has escalated their efforts focused on obtaining direct rail access to NIT and creating the capacity necessary to build trains in the port area. . . . ***It is our recommendation that NS take a stand against CSX in this matter and use our controlling vote on the NPBL Board in our best interest***. *We have the most to lose*.

NSR_00177917-918, attached as **Exhibit 1**.³  It is hard to conceive of a communication that would better illustrate the conspiracy between NS and NPBL.⁴

As this Court has already explained, NPBL cannot disavow the actions of its directors simply because those individuals also worked for NS.  *See* ECF No. 66 at 32 (finding that NS's insertion of current or former NS employees into NPBL board and management positions did not render NS and NPBL incapable of conspiring as a matter of law); *see also Sonitrol of Fresno, Inc. v. AT&T Co.*, No. 83-2324, 1986 WL 953, at *5 (D.D.C. Apr. 30, 1986) (less-than-wholly-owned subsidiary can conspire with its majority shareholder where subsidiary board has legal ability to determine subsidiary's course of business activity).

NPBL also faults CSXT for identifying "internal" NS emails, which it claims cannot possibly evidence a conspiracy between NS and NPBL.  *See* Motion at 3, 7-9.  But the internal

---

³ NPBL claims to have attached to its Motion all documents cited by CSXT; however, NPBL has omitted *attachments* to certain cited emails, including this one. *See* Motion Ex. D at 40 (NSR_00177916, parent email to draft letter attached as **Ex. 1**). It should go without saying that the relevance and significance of a document depends on the context of its full family, including attachments and all relevant metadata.

⁴ NPBL implies in its Motion that CSXT ought to have questioned witnesses about these communications in deposition. *See* Motion at 10.  Of course, CSXT is not obligated to question witnesses about every piece of evidence supporting its claims.  Moreover, as explained in CSXT's pending motion to compel and reopen depositions, CSXT could not have asked about this document even if it had wanted to, because NS failed to produce it—or thousands of others like it—until *after* CSXT had deposed the relevant witnesses.  *See* ECF No. 203, 204.

documents cited in CSXT's answers fall into two categories responsive to NPBL's Interrogatories. First, as described above, CSXT cites internal NS emails and documents that memorialize or reference the conspiratorial communications and conduct of NS employees and NS-appointed NPBL directors. CSXT has also cited documents that reference meetings and communications between NS employees and NPBL management related to the conspiracy. *See, e.g.*, Motion Ex. D at 42 (NSR_00062857) (███); *id.* at 132 (NPBL024288) (███); *id.* at 147 (NSR_00049537) (███); *id.* at 156 (NPBL010915) (███").

These documents, and the many others cited by CSXT, identify specific communications and conduct by NPBL in furtherance of the conspiracy between NS and NPBL. Seeking to avoid this evidence, NPBL attempts to rewrite its Interrogatories to exclude all but "direct evidence" of conspiracy. According to NPBL, "the interrogatories do not ask CSXT to identify indirect

9

evidence that may support an inference of a conspiracy," but instead "ask CSXT to identify direct evidence . . . if any exists." Motion at 3. But that is *not* what NPBL's Interrogatories ask. The Interrogatories state:

> 3. Identify the ***specific communication(s) between the Belt Line and NS that you contend form the basis for the conspiracy*** alleged in Counts I, II, VIII, and IX of your Complaint, including the identities of the specific persons involved in such communication(s), the dates and circumstances of such communication(s), and all documents that support your answer.

> 4. Identify ***the specific overt act(s) by NPBL that you contend form the basis for the conspiracy alleged*** in Counts I, II, VIII, and IX of your Complaint, including the identities of the specific persons who you contend committed such act(s), the dates and circumstances of such act(s), and all documents that support your answer.

In other words, the Interrogatories require CSXT to identify the specific "communications" and "overt acts" by NPBL that CSXT "contend[s] form the basis for the conspiracy alleged in [CSXT's Complaint]." The Interrogatories do *not* require CSXT to supply only "direct evidence" of conspiracy. CSXT need only answer the interrogatories propounded by NPBL, not those that NPBL wishes it had.

Moreover, NPBL's insistence that CSXT limit its answers to "direct evidence" is perplexing at best. It is well-established that direct evidence of conspiracy is "extremely rare," and that CSXT is entitled to rely on indirect evidence to support its claims. *Am. Chiropractic Ass'n*, 367 F.3d at 225-26; *see also In re Moon*, 1997 WL 34625685, at *9 (Bankr. E.D. Va. Dec. 17, 1997) ("The nature of a conspiracy claim often requires a court to infer a conspiracy from indirect evidence in order to determine whether the alleged joint tortfeasors are pursuing the same goal and are in contact with one another") (applying Virginia law). The documents cited by CSXT provide indirect evidence sufficient to permit the trier of fact to infer that NPBL conspired with NS to prevent CSXT from accessing on-dock rail at NIT. Why NPBL does *not* want CSXT to cite

10

this evidence in responding to interrogatories asking CSXT to identify the evidence supporting its claims, remains a mystery.

Regardless, CSXT's answers to the Interrogatories are sufficient under the Federal Rules. The *In re Cathode Ray Tube (Crt) Antitrust Litigation* decision is instructive in this regard. *See* No. 3:07-CV-05944SC, 2014 WL 12647877 (N.D. Cal. Aug. 20, 2014). In that case, the defendants moved to compel more detailed answers to interrogatories asking the plaintiffs to identify specific communications forming the basis of the alleged antitrust conspiracy. *Id.* at *1-2. The *Cathode Ray Tube* court denied the motion, finding that the plaintiffs' answers, which identified numerous "meetings and communications from which plaintiffs plan to mine proof of a conspiracy," were sufficient. *Id.* at *3. The court noted that, because the plaintiffs had identified the defendants' own meetings and communications, "defendants can hardly be said to be in the dark about their contents." *Id.* And, as the court explained, "[c]ontention interrogatories have their place, but at this point in the litigation, defendants surely do not labor under a misapprehension about plaintiffs' theory of the case." *Id.*

The same is true here. Nearly two years ago, CSXT filed a Complaint alleging that NPBL—through its management and NS-appointed directors—conspired with NS to deny competitors access to on-dock rail at NIT. *See generally* ECF No. 1. Nearly one year ago, this Court rejected NPBL's argument that it was not legally capable of conspiring with NS as a matter of law. *See* ECF No. 66 at 28-34. CSXT has now identified dozens of documents and communications that it "contend[s] form the basis of the conspiracy alleged" in its Complaint, as requested by NPBL's Interrogatories. CSXT's answers are sufficient, and NPBL's Motion should be denied.

**CONCLUSION**

For the foregoing reasons, CSXT respectfully requests that the Court enter an Order denying NPBL's Motion and awarding CSXT its costs, including attorneys' fees, incurred in opposing the Motion.[5]


Dated: August 7, 2020                    Respectfully submitted,

                                         **CSX TRANSPORTATION, INC.**
                                         *By Counsel*

                                         /s/ Robert W. McFarland
                                         Robert W. McFarland (VSB No. 24021)
                                         Benjamin L. Hatch (VSB No. 70116)
                                         V. Kathleen Dougherty (VSB No. 77294)
                                         MCGUIREWOODS LLP
                                         World Trade Center
                                         101 West Main Street, Suite 9000
                                         Norfolk, Virginia  23510-1655
                                         Telephone: (757) 640-3716
                                         Facsimile:  (757) 640-3930
                                         E-mail: rmcfarland@mcguirewoods.com
                                         E-mail: bhatch@mcguirewoods.com
                                         E-mail: vkdougherty@mcguirewoods.com

                                         J. Brent Justus (VSB No. 45525)
                                         Ashley P. Peterson (VSB No. 87904)
                                         MCGUIREWOODS LLP
                                         Gateway Plaza
                                         800 East Canal Street
                                         Richmond, Virginia  23219-3916
                                         Telephone:  (804) 775-1000
                                         Facsimile:  (804) 698-2026
                                         E-mail: bjustus@mcguirewoods.com
                                         E-mail: apeterson@mcguirewoods.com

---

[5] Under Fed. R. Civ. P. 37(a)(5)(B), if a motion to compel is denied, the Court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its reasonable expenses including attorneys' fees." An award of fees under Rule 37(a)(5)(B) is appropriate where, as here, the motion is not "substantially justified," and where other circumstances would not make an award of expenses unjust. *Id.*

**CERTIFICATE OF SERVICE**

I certify that on this 7th day of August, 2020, a true and correct copy of the foregoing was served on all counsel of record via Notice of Electronic Filing by filing with the Court's CM/ECF system.

/s/ Robert W. McFarland
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
V. Kathleen Dougherty (VSB No. 77294)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Telephone: (757) 640-3716
Facsimile: (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: vkdougherty@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219-3916
Telephone: (804) 775-1000
Facsimile: (804) 698-2026
E-mail: bjustus@mcguirewoods.com
E-mail: apeterson@mcguirewoods.com