UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| CSX TRANSPORTATION, INC., ) <br> individually and on behalf of NORFOLK ) <br> & PORTSMOUTH BELT LINE ) <br> RAILROAD COMPANY, ) <br>   ) <br> *Plaintiff*, ) <br>   ) <br> v. ) <br>   ) <br> NORFOLK SOUTHERN RAILWAY ) <br> COMPANY, and NORFOLK & ) <br> PORTSMOUTH BELT LINE RAILROAD ) <br> COMPANY, ) <br>   ) <br> *Defendants*. ) | No. 2:18-cv-530-MSD-LRL |

### DEFENDANT NORFOLK SOUTHERN RAILWAY COMPANY'S BRIEF IN OPPOSITION TO CSX TRANSPORTATION, INC.'S MOTION TO REOPEN AND COMPEL DEPOSITIONS

Defendant Norfolk Southern Railway Company ("NSR"), by counsel, submits this Brief in Opposition to CSX Transportation, Inc.'s ("CSXT") Motion to Reopen and Compel Depositions (ECF No. 203) and brief in support (ECF No. 204) (collectively, the "Motion").

### INTRODUCTION

CSXT seeks the extraordinary relief of reopening discovery four months after its discovery cutoff based on the claim that NSR not only "backloaded" its document production but did so deliberately. This argument is far from the truth. CSXT did not even request the vast bulk of documents it complains were "backloaded" until very late in its own discovery period. And CSXT compounded its slowness by delays in agreeing to search terms to be used to respond to its belated request. Once CSXT finally agreed to search terms on February 20, 2020, NSR began producing the information eight days later and substantially completed the production in 19 days. Any

prejudice CSXT claims is not the result of NSR's actions, but rather CSXT's own rather extraordinary dilatory behavior. The Motion should be denied not only because the justification CSXT proffers for reopening discovery is wrong, but also because CSXT faces a situation of its own creation.

Central to CSXT's Motion is its erroneous and misleading claim that NSR failed to deliver on its promise that it would "substantially complete its production in response to **CSXT's First Requests for Production of Documents** by February 7." ECF No. 111, at 2 (emphasis added). In fact, NSR followed through on the promise that is as made, producing over ninety-one percent (91%) of the documents responsive to CSXT's First Requests on or before February 7, 2020. What CSXT fails to tell the Court, however, is that the vast majority of the documents upon which it relies to justify reopening discovery were produced by NSR in response to CSXT's *Second* Requests for Discovery, which were not served until January 9, 2020. CSXT also fails to explain to the Court that its own inaction was responsible for a failure to reach an agreement regarding search terms that would target information responsive to its Second Requests until February 20, 2020. Upon reaching an agreement, NSR began producing documents responsive to CSXT's Second Request just eight days later – February 28, 2020 – and substantially completed its production of those documents in 19 days. NSR delivered exactly as it represented it would and more.

CSXT also claims that it "was not afforded a reasonable opportunity to review" the documents before deposing NSR's fact witnesses, but CSXT does not point to any *specific* new testimony or information it hopes to elicit from the additional depositions. After nearly five months of reviewing documents, CSXT still cannot identify any material, new and specific information that it would need from any of the proposed deponents which would warrant the relief

sought. Even if CSXT was fault free, CSXT simply has not given a good enough reason to reopen discovery.

Regardless, NSR recognizes that this Court expects a spirit of cooperation and compromise in discovery, and NSR acted in this fashion throughout. NSR has offered and is willing to stand behind a compromise proposal. NSR has offered CSXT another Rule 30(b)(6) deposition of NSR relating to the documents produced after February 7, 2020, provided that CSXT would agree to that Steven Armbrust, a central CSXT witness, would be redeposed based on new documents produced by CSXT and any additional documents resulting from the Court's in camera review of selected Armbrust-related documents currently withheld under a privilege claim. Since NSR took Mr. Armbrust's deposition, CSXT has produced 204 Armbrust-related documents that previously had been withheld on claims of privilege that CSXT now admits were asserted in error. In addition, pending before this Court is an in camera review (ECF No. 194) of an additional 146 Armbrust-related documents. A reopening of Mr. Armbrust's deposition is amply warranted on its own merits, but this compromise will allow CSXT seven hours to ask whatever questions it wants to ask about any of the documents produced after that date, regardless of CSXT's own fault in this situation. In return, NSR would be given a chance to ask Mr. Armbrust about new documents that have been indisputably produced late. The compromise is more than CSXT is entitled to – which is nothing – and hence more than a fair and adequate resolution of this dispute.

## **BACKGROUND**

CSXT's Motion so fundamentally mischaracterizes the discovery process that, rather than disputing individual points, NSR starts from scratch:

3

- **October 21, 2019**: NSR serves its First Requests for Production of Documents on CSXT, which seeks documents relating to ports beyond Virginia. *See* Declaration of Monica M. McCarroll ("McCarroll Dec.") at ¶ 7. **Exhibit A.**

- **October 23, 2019**: CSXT serves its First Requests, which ***do not*** seek documents relating to ports beyond Virginia. *Id.* at ¶¶ 8-9.

- **October 30, 2019**. The Court enters its Rule 16(b) Order establishing CSXT's discovery cutoff as March 3, 2020. ECF No. 78 at ¶ 3.

- **November 19, 2019**. The Court enters the Stipulated Order Regarding Discovery of Electronically Stored Information (ECF No. 83) ("ESI Order"). Under paragraph 3(b) of the ESI Order, the parties agreed and were ordered to disclose the search terms they planned to use to identify documents for production and then confer. The effect of the ESI Order was that establishing search terms by agreement or motion would be a precondition to launching the process of production of electronic documents.

- **November 26, 2019**: NSR provides CSXT with the proposed search terms[1] NSR would use to identify documents responsive to CSXT's First Requests. *Id.* at ¶ 10.

- **December 19, 2019:** NSR proposes search terms that it requests CSXT use to identify ESI relating to ports outside of Virginia (the "geographic search terms"), as requested by *NSR's* document requests. *Id.* at ¶ 14.

---

[1] Pursuant to the Stipulated Order Regarding Discovery of Electronically Stored Information ("ESI"), the parties were required to conduct a "reasonable" search for ESI; were to produce "responsive, not-privileged ESI on a rolling basis"; and privilege logs were subject to "reasonable corrections and supplementation." ESI Order at 5, ECF No. 83. Pursuant to paragraphs 3(g) and (h) of the ESI Order, the parties agreed to use search terms to locate potentially responsive ESI and to provide proposed terms to other parties for review and comment.

4

- **January 9, 2020:**  CSXT serves its Second Requests, which include requests targeting "East Coast Ports,"[2] *i.e.*, ports beyond Virginia.[3]  *Id.* at ¶ 17.

- **January 17, 2020:**  NSR proposes revised geographic search terms based on internal testing that NSR had performed to avoid an unduly burdensome production or the retrieval of a large amount of non-responsive ESI by either party.  NSR proposes that it will use the revised terms in response to CSXT's Second Requests (in addition to CSXT using the terms to respond to NSR's document requests).  *Id.* at ¶ 19.

- **January 21, 2020:**  The parties meet and confer to discuss the revised geographic search terms, which would be used to respond to each other's document requests.  Counsel for CSXT agreed to discuss the geographic search terms with its client but suggested the terms were "very" burdensome.  NSR responded that the terms had been extensively tested and refined to ensure neither party was reviewing large volumes of irrelevant information.  *Id.* at ¶ 20.

---

[2]  CSXT defined East Coast Port(s) as "all major ocean ports and marine terminal on the Atlantic and Gulf coasts in the United States located east of the Mississippi River, including terminal located in the Port of New Orleans, Port of New York/New Jersey, Port of Baltimore, Port of Charleston, and Port of Savannah."  *See* McCarroll Dec. at ¶ 12 at n.9.

[3]  Request 19 ("All Documents relating to or communications, evaluations, or analyses of any kind that concern the comparative advantages that NSR or NPBL may possess at any East Coast Port."); Request 20 ("All Documents and Communications concerning the quality of NSR's performance pursuant to any contract whose subject matter involves or relates to the movement of intermodal into or out of any East Coast Port."); Request 25 ("All Documents and Communications concerning NSR's use of drayage or trucking services at any East Coast Port, including without limitation any Documents or Communications pertaining to the comparative advantages or disadvantages of drayage or trucking services versus on-dock rail services").

- **January 23, 2020**: CSXT moved for a 30-day extension of its expert report deadline and its fact discovery cutoff based, in part, on NSR's proposed use of geographic search terms. *See* ECF No. 107.

- **February 5, 2020**. This Court found that CSXT was <u>not</u> entitled to the requested 30-day day extension of its fact discovery period, but it extended CSXT's expert witness deadlines by 15 days. *See* ECF No. 118.

- **February 7, 2020:** NSR produces 12,221 documents in response to CSXT's First Requests. The vast majority of these documents (with families) hit upon the non-geographic search terms to which CSXT did not object. This production, along with those made by NSR in January 2020, constitutes 91% of NSR's production in response to CSXT's First Requests. *Id*. at ¶ 22.[4]

- **February 10, 2020:** NSR sends a letter to CSXT explaining that the parties are at an impasse, and that NSR would be moving to compel CSXT to use the geographic search terms proposed and tested by NSR. *Id*. at ¶ 23.

- **February 20, 2020:** CSXT agrees that both parties should use the geographic search terms proposed and tested by NSR, but limited to East Coast Ports. *Id*. at ¶ 24.

- **February 28, 2020:** Eight days after agreement on the geographic search terms, NSR produces 15,821 documents (or 53%) of the documents hitting on the geographic search terms in response CSXT's Second Requests. *Id*. at ¶ 25.

- **March 10, 2020:** Nineteen days after agreement on search terms, NSR produces 13,588 documents (or 46%) of the documents hitting on the geographic search terms in response

---

[4] The remaining 1,552 documents produced by NSR in response to the First Requests included hardcopy documents, documents identified by additional, non-geographic search terms to which the parties agreed, and documents that had been included in NSR's initial privilege review.

to CSXT's Second Request for Production; NSR substantially completes its production in response to CSXT's Second Request for Production. *Id*. at ¶ 26.

. This chronology wholly refutes CSXT's claim that NSR "backloaded" – intentionally or not – its document production:

**First**, without even acknowledging the existence of its Second Requests, CSXT points to documents produced by NSR in response to CSXT's *Second* Requests as evidence that NSR failed to produce documents by its February 7, 2020 substantial completion date for response to CSXT's *First* Requests. The Second Requests were not even served until January 9, 2020, and agreement on search terms pursuant to the ESI Order was not reached until February 20, 2020.

**Second**, without even acknowledging the role of search terms in the production, CSXT frittered away more than a month by failing to diligently engage in negotiations over search terms as required by the ESI Order. NSR opened negotiations over geographic search terms it would use *even before CSXT requested the documents*. On January 17, 2020, eight days after CSXT finally served its Second Requests, NSR provided CSXT with a definitive set of geographic search terms that had been thoroughly vetted and tested by NSR against its data. It was not until more than a month later, on February 20, 2020, that CSXT finally responded by agreeing to these terms – and only then only after NSR gave written notice that CSXT's lack of response would result in a motion by NSR. Making the delay in responding to the search terms all the more egregious is that CSXT did not attend to this critical step in making discovery progress at the same time it was moving for an extension of time based on a lack of progress that it was creating. The Court gave CSXT a 15-day extension for its expert report, which was generous at the time. CSXT's attempt at a second bite at the apple five months later warrants even less consideration.

**Third**, the chronology proves that NSR acted with full diligence and in the spirit of cooperation and compromise throughout – belying CSXT's claim that NSR intentionally backloaded its production. It was NSR that opened the required discussions of search terms NSR would use to identify documents regarding ports outside of Virginia — *even before CSXT had served requests seeking those documents.* On January 17, 2020, NSR provided CSXT with thoroughly tested and vetted geographic search terms to be used by NSR to respond to CSXT's Second Requests *eight days* after service of CSXT's Second Requests. This speed compares extremely well to the 31 days CSXT took to make its initial proposal search terms to be used to respond to NSR's First Requests, making any claim by CSXT that NSR was slow in proposing search terms hypocritical indeed. Once CSXT finally agreed to search terms (after an unexplained delay of more than a month), NSR immediately executed on the production, starting its production in response to CSXT's Second Requests eight days after search term agreement and substantially completing it in 19 days. Indeed, ramping up and substantially completing production of voluminous documents in 19 days compares extremely favorably to the 31 days that CSXT took *just to respond to NSR's proposed search terms.*

## ARGUMENT

**I.      CSXT has failed to show good cause to reopen its fact discovery.**

CSXT has failed to articulate any legitimate reason to justify the extraordinary remedy of reopening a party's discovery five months after it closed. "The party moving to modify a scheduling order bears the burden of demonstrating the existence of good cause." *H/S Wilson Outparcels, LLC v. Kroger L.P. I*, No. 5:15-CV-591, 2018 U.S. Dist. LEXIS 51654, at *13 (E.D.N.C. Mar. 28, 2018); *see also Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) ("Given their heavy case loads, district courts require the effective case management tools

provided by Rule 16. Therefore, after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings."). "[T]he touchstone of 'good cause' under Rule 16(b) is diligence." *Marcum v. Zimmer*, 163 F.R.D. 250, 255 (S.D.W. Va. 1995); *see also Montgomery v. Anne Arundel Cnty., Md.*, 182 F. App'x 156, 162 (4th Cir. 2006). "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." *Dilmar Oil Company, Inc. v. Federated Mutual Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997), *aff'd*, 129 F.3d 116 (4th Cir. 1997) (quoting authority). Nondiligence is one of the "hallmarks of failure to meet the good cause standard." *W. Va. Hous. Dev. Fund v. Ocwen Tech. Xchange, Inc.*, 200 F.R.D. 564, 567 (S.D.W. Va. 2001). "If the [moving party] was not diligent, the inquiry should end." *Marcum*, 163 F.R.D. at 254.

NSR told CSXT and the Court that it would substantially complete its production of documents responsive to CSXT's *First* Requests by February 7, 2020. NSR did so, producing over ninety-one percent (91%) of responsive documents by this date.

CSXT points to documents NSR produced in response to CSXT's *Second* Requests as being backloaded. However, the Second Requests were not even served until January 9, 2020, and NSR provided tested, vetted search terms on January 17. It took more than a month for CSXT to agree to the geographic search terms that were targeted at those requests. Put simply, CSXT did not act diligently with respect to agreeing on a set of geographic search terms, which was a predicate to NSR producing documents responsive to CSXT's Second Requests.

Once CSXT agreed to a subset of NSR's proposed search terms on February 20, 2020, however, NSR produced substantially all of its documents responsive to CSXT's Second Requests within 19 days.

In contrast, CSXT's Motion ignores its own lack of diligence in furthering discovery in January and February. CSXT does not – and cannot – meet the "good cause" standard. CSXT should not be heard now to claim that it is entitled to additional discovery as a result of its own dilatory tactics. "[A] district court acts wholly within its discretion in denying additional discovery where the delay in discovery is due to the fault of the complaining party." *Strag v. Board of Trustees*, 55 F.3d 943, 953 (4th Cir. 1995).

CSXT was not only slow in seeking documents from NSR, it also failed to act diligently in raising these issues before the Court. CSXT's fact discovery closed on March 3, 2020. It waited over four and a half months to bring this issue before the Court.[5] CSXT's actions show a lack of diligence in pursuing a modification of the scheduling order for additional depositions. *See McCornack v. Actavis Totowa, LLC*, No. 2:09-cv-00671, 2011 U.S. Dist. LEXIS 81050, at *7 (S.D.W. Va. Jul. 25, 2011) ("This case seems riddled with a lack of diligence. First, plaintiffs' counsel did not move to extend the scheduling order until over a month after the case-specific discovery deadline expired. Second, plaintiffs… failed to even submit a request for third-party depositions on the subject until April 11, 2011. That was less than a month before expiration of the applicable deadline."). For this additional reason, CSXT should not be permitted to reopen its fact discovery.

---

[5] On March 19 the Court entered a 30-day stay due to the ongoing COVID-19 pandemic. [CITE]. On April 17, 2020 the Court ordered an additional 30-day stay at the parties' request, but noted that the "[p]arties may continue supplementations, conferrals, and motions practice regarding written fact discovery, document discovery . . . " while the stay was in effect. Order, ECF No. 165, ¶ 1 (April 17, 2020). Since April 17, the Court has entered subsequent stays, all with the same language regarding the continuation of written fact and document discovery. *See* Order, ECF. No. 173 ¶ 1 (May 20, 2020); Order, ECF No. 191 ¶ 1 (June 18, 2020); Order, ECF No. 196 ¶ 1 (July 20, 2020).

**II.   The handful of documents cited by CSXT do not show that NSR's production in response to CSXT's First Request was untimely.**

CSXT's Motion cites to 14 documents produced after February 7, 2020 in an attempt to show that NSR's document production in response to CSXT's First Requests was not substantially complete by that date.  Seven of the documents did not include any of the search terms that NSR used, and which CSXT approved, to respond to CSXT's First Requests.  Rather, they only became subject to review after hitting on one of the agreed-to geographic search terms relating to CSXT's Second Requests.  *See* NSR_00129287, 00156708, 00174541, 00174544, 00174546, 00190414, and 00299467.[6]  Any prejudice CSXT now claims in relation to these documents is in reality a direct result of its own actions.

The remaining seven documents on which CSXT relies were not produced by February 7, 2020 because they were undergoing high level privilege review,[7] were part of an expanded search term,[8] or were hard copy documents that were tagged for additional review.[9]  These are all typical quality control activities that parties engage in when completing a large discovery project, and do not negate the fact that NSR's response to CSXT's First Request was substantially complete as of February 7, 2020.  NSR correctly anticipated that it would substantially complete its production of documents responsive to CSXT's First Requests by February 7, 2020, but also anticipated supplementing its production with documents that required a higher-level privilege review or were

---

[6] CSXT cites to multiple documents in a single exhibit number, so for ease of reference, exhibits are identified here by bates number.
[7] NSR_00165418, NSR_00177916, and NSR_00177917 were produced after a high-level privilege review that was completed after February 7, 2020.
[8] NSR_00129565 was produced after NSR expanded the search terms for "Pinner's Point" in late January.  This was done by NSR to ensure that all responsive documents had been identified for production.
[9] NSR_00199527 and NSR_00199544 were hard copy documents reviewed by the case team and set aside for additional review, which occurred after February 7, 2020.  NSR_00104455 was the result of a hard copy document collection received on February 10, 2020.

captured by additional search terms or other quality control activities. None of the documents cited by CSXT show that NSR failed to substantially complete its production of documents in response to CSXT's First Requests by February 7, 2020.

### III. CSXT extensively deposed NSR's witnesses already; it is unnecessary to give CSXT a second bite at the apple.

CSXT seeks to reopen the depositions of Messers. Heller and McClellan based solely on the premise that NSR produced documents after their depositions. CSXT, however, had the opportunity to take full depositions of both individuals and has not offered sufficient justification for a second bite at the apple. CSXT would have the Court believe that it was without sufficient information to conduct a comprehensive deposition of Messers. Heller and McClellan. To the contrary, CSXT already deposed these witnesses extensively.

Mr. Heller is the Vice President Intermodal and Automotive and was previously the Vice President of International Marketing. Mr. McClellan is the Vice President of Strategic Planning and was previously the Vice President of Intermodal and Automotive before Mr. Heller. These are high profile individuals who CSXT has dealt with in the industry for years. CSXT deposed Mr. Heller for *9 hours* using *34 documents* as exhibits. CSXT deposed Mr. McClellan for *7 hours* using *17 documents* as exhibits.

Moreover, CSXT's attorney previously questioned both Messrs. Heller and McClellan about the very topics they now seek to use as a basis to reopen discovery. For example, CSXT wishes to ask Mr. Heller about a document concerning CSXT's access to the Hampton Roads ports through the Norfolk and Portsmouth Belt Line Railroad ("NPBL"). Motion at 12. But during his more than nine-hour deposition, Mr. Heller was asked repeatedly about his knowledge of NSR's relationship with NPBL, specifically as it relates to CSXT's access to the Hampton Roads ports. *See* Jeffrey Heller Dep. 146-149, 170-173, 204-208, 257-259, March 10, 2020, attached as **Exhibit**

**B**.  CSXT also uses the same document as a basis to reopen the deposition of Mr. McClellan, Motion at 13, but he too was asked repeatedly during his lengthy deposition about the NSR – NPBL relationship as it concerns CSXT access to the Hampton Roads ports.  *See* Michael McClellan Dep. 131-132, 181-182, 202-203, Feb. 20, 2020, attached as **Exhibit C**.  CSXT's Motion fails to identify a single new topic that was not previously covered during the extensive depositions of Messrs. Heller and Mr. McClellan earlier this year, and the Court should deny CSXT's attempt to get another bite of the apple.

It is a hard fact of litigation that it is not possible to conduct all depositions in a case on the last day of discovery, and parties constantly have to pick and choose what exhibits they have time to use in conducting a deposition limited in time by the Federal Rules of Civil Procedure.  *F.C. Cycles Int'l v. Fila Sport, S.p.A.*, 184 F.R.D. 64, 76 (D. Md. Nov. 12, 1998) ("In any litigation, the state of the factual record is constantly evolving, deposition by deposition. Each deposition cannot be held open to allow a party to visit or revisit a subject area after new or more evidence is developed.").

Given their roles in NSR's intermodal operations, it is unsurprising that the agreed-to geographic search terms, which targeted the movement of intermodal freight beyond Virginia, would result in the production of many responsive documents for which the witnesses are the custodian.  But for NSR pressing for these geographic search terms, however, these documents would never have been produced to CSXT *at all*, as they were not captured by NSR's initial search terms and CSXT proposed no terms targeted at such documents.  CSXT issued its Second Requests late and was dilatory in negotiating search terms to target information relevant to those requests.  It cannot now claim that this lack of diligence entitles it to reopen depositions that were already at the bounds of permissible length under the Federal Rules.

## IV. CSXT has not articulated the needed evidence to be sought through additional depositions.

CSXT seeks to depose new deponents, Messrs. Booth and Martinez, but has failed to articulate any needed evidence that justifies reopening discovery to take these additional depositions. Both Messers. Booth and Martinez were first disclosed to CSXT as individuals with knowledge in this matter on November 13, 2019, when they were identified as two of the 12 custodians listed on NSR's ESI custodian list. They were again disclosed in NSR's Supplemental 26(a)(1) disclosures dated November 22, 2019. CSXT also identified all three individuals in its Objections and Responses to NSR's First Interrogatories on December 18, 2019. These individuals are high profile intermodal executives that CSXT has dealt with for years. It cannot have come as a surprise that these individuals were heavily involved in the intermodal operations at NSR such that CSXT had no idea they were individuals worth deposing. "It is well-established that a party's failure to act on previously available information precludes a finding of good cause." *Moore v. Publicis Groupe SA*, No. 11cv1279 (ALC) (AJP), 2013 WL 4483531, at *7 (S.D.N.Y. Aug. 23, 2013), *R&R adopted*, 2013 WL 5951903 (S.D.N.Y. Oct. 30, 2013).

CSXT should not be heard now to claim that it is entitled to additional discovery as a result of its own dilatory tactics. "[A] district court acts wholly within its discretion in denying additional discovery where the delay in discovery is due to the fault of the complaining party." *Strag v. Board of Trustees*, 55 F.3d 943, 953 (4th Cir. 1995).

Compounding the lack of good cause is that CSXT has not identified any specific new information that justifies taking these depositions. It says that it wishes to depose Mr. Booth "to explore his personal knowledge and involvement regarding the issues in this case, including, but not limited to, those illuminated by the documents NS produced after its substantial completion date." *See* Motion at 16. CSXT likewise wishes to depose Mr. Martinez "to explore his personal

knowledge and involvement with the issues in this case, including, but not limited to, topics related to documents contained in NS's substantial late production." *Id.* at 17. Desiring to "explore" general knowledge thoroughly fails to demonstrate "good cause" for depositions after the cutoff.

CSXT has not identified any specific testimony that it anticipates eliciting from these proposed deponents. It has not identified why this testimony could not previously have been obtained from one of the many other individuals CSXT has already deposed in this case. To the contrary, it is obvious that CSXT never thought the documents that would be captured by the geographic search terms (CSXT's Second Requests) were necessary for CSXT's case because CSXT did not propose such terms in the first place. In fact, CSXT initially *objected* to these terms when NSR proposed them. Finally, CSXT has not explained why it waited until four and a half months after the close of discovery to seek to depose two persons who had been identified long ago as ESI custodians.

Quite simply, CSXT has provided no specific, articulable basis for seeking these depositions other than a general desire to "go fishing" in hopes of finding something. *See In re Coloplast Corp. Pelvic Support Sys. Prod. Liab. Litig.*, 220 F. Supp. 3d 731, 735 (S.D.W. Va. 2016) ("Judges are trusted to prevent 'fishing expeditions' or an undirected rummaging through . . . records for evidence of some unknown wrongdoing." (quoting *Cuomo v. Clearing House Ass'n, LLC*, 557 U.S. 519, 531 (2009))).

CSXT has failed to provide a good enough reason to reopen discovery months after the fact. However, any residual concern can be met by ordering the compromise offered by NSR: a second corporate deposition of NSR on documents produced after February 7, 2020 in return for re-opening Mr. Armbrust's deposition.

## **CONCLUSION**

For these reasons, NSR respectfully requests that the Court deny CSXT's Motion to Reopen and Compel Depositions and grant any other relief the Court deems appropriate.

Date: August 7, 2020

Respectfully submitted,

**NORFOLK SOUTHERN RAILWAY COMPANY**

/s/ Michael E. Lacy
Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
Massie P. Cooper (VSB No. 82510)
TROUTMAN PEPPER HAMILTON SANDERS, LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-6061
Email: alan.wingfield@troutman.com
Email: michael.lacy@troutman.com
Email: massie.cooper@troutman.com

John C. Lynch (VSB No. 39267)
Kathleen M. Knudsen (VSB No. 90845)
TROUTMAN PEPPER HAMILTON SANDERS, LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7759
Facsimile: (757) 687-7510
Email: john.lynch@troutman.com
Email: Kathleen.knudsen@troutman.com

Monica McCarroll (VSB No. 45622)
REDGRAVE LLP
14555 Avion Parkway, Suite 275
Chantilly, VA 20151
Telephone: (703) 592-1155
Facsimile: (703) 230-9859
Email: mmccarroll@redgravellp.com

*Counsel for Norfolk Southern Railway Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2020, I electronically filed a copy of the foregoing with the Clerk of Court using the CM/ECF system, which sent a notification of such filing (NEF) to the registered participants as identified on the NEF to receive electronic service, including:

Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
V. Kathleen Dougherty (VSB No. 77294)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Telephone: (757) 640-3716
Facsimile: (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: vkdougherty@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219-3916
Telephone: (804) 775-1000
Facsimile: (804) 698-2026
E-mail: bjustus@mcguirewoods.com
E-mail: apeterson@mcguirewoods.com

*Attorneys for CSX Transportation, Inc.*

James L. Chapman, IV (VSB No. 21983)
W. Ryan Snow (VSB No. 47423)
Darius K. Davenport (VSB No. 74064)
David C. Hartnett (VSB No. 80452)
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
E-mail: jchapman@cwm-law.com
E-mail: wrsnow@cwm-law.com
E-mail: ddavenport@cwm-law.com
E-mail: dhartnett@cwm-law.com

*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

/s/ Michael E. Lacy
Michael E. Lacy (VSB No. 48477)

109315165