# EXHIBIT A

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| **CSX TRANSPORTATION, INC.,**  )<br>**individually and on behalf of NORFOLK**  )<br>**& PORTSMOUTH BELT LINE**  )<br>**RAILROAD COMPANY,**  )<br>                                                                 )<br>                        *Plaintiff*,          )<br>                                                                 )<br>v.                                                            )<br>                                                                 )<br>**NORFOLK SOUTHERN RAILWAY**  )<br>**COMPANY, and NORFOLK &**  )<br>**PORTSMOUTH BELT LINE RAILROAD**  )<br>**COMPANY,**  )<br>                                                                 )<br>                        *Defendants*.     ) | No. 2:18-cv-530-MSD-LRL |

**DEFENDANT NORFOLK SOUTHERN RAILWAY COMPANY'S
DECLARATION OF MONICA MCCARROLL IN SUPPORT OF
BRIEF IN OPPOSITION TO CSX TRANSPORTATION, INC.'S
<u>MOTION TO REOPEN AND COMPEL DEPOSITIONS</u>**

I, Monica McCarroll, depose and state as follows:

1. I am over the age of 18 and if called as a witness could competently testify as to the matters set forth herein.

2. I am an attorney licensed to practice law in the Commonwealth of Virginia, the State of New Jersey and the District of Columbia. I am admitted to practice in the Eastern District of Virginia.

3. I am counsel of record for defendant, Norfolk Southern Railway Company ("NSR"). In this matter, I have been primarily engaged in negotiating and overseeing NSR's compliance with the Stipulated Order Regarding Discovery of Electronically Stored Information (the "ESI Order")

[ECF 83], including without limitation, working closely with NSR's eDiscovery vendor, eMerge, to ensure the production of NSR's responsive, not privileged information and the preparation and production of NSR's privilege logs in accordance with the ESI Order.

4. I make this declaration to refute CSXT's assertion that NSR somehow "back-loaded" its document production or otherwise improperly delayed producing responsive documents. Quite to the contrary, as I discuss below, NSR acted in accordance with the ESI Order that the parties negotiated at length.

5. Per paragraphs 3(g) and (h) of the ESI Order, the parties agreed to disclose proposed search terms that each intended to use to target responsive information, to add or modify terms upon request from another party, and to meet and confer to revise or expand terms as needed to avoid unduly burdensome productions or the retrieval of a large amount of non-responsive ESI. The parties further agreed to narrowly tailor terms to particular issues.

6. NSR and CSXT negotiated these provisions of the ESI Order due, in part, to the understanding that discovery in this matter would be extensive and largely reciprocal, and the parties would need to work closely together to ensure the burdens of discovery would be borne equally. Allowing each party to propose modifications to the other's search terms was a critical component of meeting this goal.

7. On October 21, 2019, NSR served its First Request for Production of Documents ("NSR's First Requests")

8. On October 23, 2019, CSXT served its First Request for Production of Documents ("CSXT's First Requests").

9. In broad brush, one notable difference between the parties' respective requests was that NSR specifically and expressly sought data about the parties' activities at ports outside of Virginia, but CSXT did not.

10. On November 26, 2019, I circulated to CSXT's counsel of record, via email, NSR's proposed search terms targeted at information responsive to CSXT's First Requests. (**Exhibit 1**) Prior to circulating these terms, I worked closely with eMerge to oversee the testing of various terms against NSR's data set in an iterative manner to ensure the terms were not overly broad or under-inclusive in accordance with the ESI Order.

11. On November 27, 2019, CSXT circulated its proposed search terms targeted at information responsive to NSR's First Requests. (**Exhibit 2**)

12. As noted above, NSR's First Requests specifically sought documents that relate to the movement of intermodal freight that originates from or is destined to any location outside the continental United States, in order to define a proper geographic market.[1] In response to NSR's First Requests, CSXT agreed that "[s]ubject to the Protective Order and ESI Order, CSXT will collect documents from the agreed-upon custodians and agreed-upon non-custodial data sources, run agreed-upon search terms across its documents if necessary, and produce any responsive, non-privileged documents limited in geographic scope to . . . East Coast Ports."[2] Contrary to this response, however, CSXT's proposed search terms would limit the scope of its actual searches to the Virginia ports. As written, CSXT's proposed search terms would not return responsive

---

[1] See, e.g., NSR's First Requests 31-40, 44-46, and 54.
[2] CSXT defined East Coast Port(s) as "all major ocean ports and marine terminal on the Atlantic and Gulf coasts in the United States located east of the Mississippi River, including terminal located in the Port of New Orleans, Port of New York/New Jersey, Port of Baltimore, Port of Charleston, and Port of Savannah." See CSXT's Responses and Objections to NSR's First Requests at n.1.

3

information related to ports or terminal facilities outside of Virginia, as requested in NSR's First Requests and agreed to by CSXT in its Responses to the same.

13. On December 13, 2019, I participated in a meet and confer with co-counsel for NSR and counsel for CSXT to discuss the search terms targeted at each party's First Request. During that meet and confer, counsel discussed, among other things, NSR's objection to CSXT's proposed search terms that were limited to the Virginia ports. During this conferral, the parties did not reach resolution on this issue of geographic search terms, but counsel for CSXT agreed to consider it further.

14. On December 19, 2019, on behalf of NSR, I sent, via email to CSXT's counsel who had participated in the December 13, 2019 meet and confer, NSR's comments to CSXT's search terms as discussed during the meet and confer. (**Exhibit 3**) In this communication, I identified a set of geographic search terms to target documents related to ports outside of Virginia. I specifically advised CSXT that NSR was testing and refining these geographic search terms to help them target documents in response to certain of NSR's First Requests, following up on the objection raised during the December 13, 2019 meet and confer.

15. Throughout December and January, I worked closely with eMerge to oversee the testing of various iterations of the geographic search terms against NSR's own data set. In particular, we tested the proposed geographic search terms against NSR's data set to ensure that they were not over inclusive or unnecessarily burdensome in accordance with the ESI Order, and also because we anticipated that in order for CSXT to agree to these geographic search terms, they would insist that NSR use them as well. In other words, NSR was testing and refining geographic search terms that would be used to respond to document requests that CSXT had not yet made, but which NSR

expected they would make. This expectation was borne out by the meet and confer on January 3, 2020, followed by CSXT's Second Requests issued on January 9, 2020, as discussed below.

16. On January 3, 2020, I participated in a meet and confer with counsel for CSXT to continue discussing search terms, among other things. During this conferral, the parties did not reach resolution on the use of geographic search terms by CSXT to target documents beyond the ports of Virginia. Counsel for CSXT agreed to further consider the issue and noted that if CSXT agreed to any new search terms, it would expect NSR to run the same terms against its data set. Co-counsel for NSR and I affirmed that NSR would do so, even though CSXT had not yet issued requests for these documents. Following this meet and confer, CSXT's counsel sent a letter acknowledging, among other things, "that the inclusion of additional search terms . . . may impact the parties' production deadline." (**Exhibit 4**)

17. On January 9, 2020, CSXT issued its Second Request for Production of Documents ("CSXT's Second Requests") seeking information from NSR related to ports or terminal facilities outside of Virginia that NSR was targeting with the geographic search terms.[3]

18. On January 10, 2020, NSR produced 2,292 documents in response to CSXT's First Requests.

19. On January 17, 2020, or eight days after NSR received CSXT's Second Requests, on behalf of NSR, I circulated to all counsel of record, via email, NSR's revised search terms. (**Exhibit 5**) My communication included NSR's proposed search terms targeted at the ports and terminal facilities beyond Virginia that reflected the extensive testing process eMerge had undertaken at my direction throughout December and January. These proposed geographic search terms revised those I had first shared on December 19, 2019, and would be used by CSXT to respond to the

---

[3] See, e.g., CSXT's Second Requests 19, 20 and 25.

5

portion of NSR's First Requests directed to non-Virginia ports served on October 21, 2019, and also by NSR to respond to CSXT's Second Requests served on January 9, 2020.

20. On January 21, 2020, on behalf of NSR, I participated in a meet and confer with co-counsel for NSR, counsel for CSXT, and counsel for NPBL, to discuss, among other things, NSR's proposed geographic search terms to be used by both parties. During this conferral, the parties did not reach resolution on the use of geographic search terms to target documents beyond Virginia. Counsel for CSXT agreed to discuss the geographic search terms with its client, but suggested the terms were "very" burdensome. On behalf of NSR, I responded that the terms had been extensively tested and refined to ensure neither party was reviewing large volumes of irrelevant information.

21. On January 23, 2020, NSR produced 135 documents in response to CSXT's First Requests. On January 27, 2020, NSR produced 2,863 additional documents in response to CSXT's First Requests, and on January 31, 2020, NSR produced another 171 documents.

22. On February 7, 2020, in accordance with the representation made in NSR's Brief in Opposition to CSXT's Emergency Motion to Amend Scheduling Order and Extent Its Expert Witness and Discovery Deadlines [ECF 111], NSR produced 12,221 documents in response to CSXT's First Requests. The vast majority of these documents, along with those produced in January, hit upon the non-geographic search terms run against NSR's data set that I disclosed on behalf of NSR in November 2019, and then updated in January 2020 to reflect agreements the parties made during the conferral process. The documents hitting on these non-geographic search terms were then reviewed for responsiveness and privilege prior to production. With this production, NSR had now produced 91% of its production in response to CSXT's First Requests.

23. On February 10, 2020, after two weeks had passed following the January 21, 2020 conferral without a response from CSXT regarding the geographic search terms, co-counsel for NSR sent a

6

letter to counsel for CSXT suggesting the parties were at an impasse on the geographic search terms unless CSXT advised that further conferral would be productive. (**Exhibit 6**)

24. On February 20, 2020, more than two months after I first raised NSR's objections to CSXT's search terms and circulated the initial geographic search terms, and more than one month after I sent CSXT the revised geographic search terms, counsel for CSXT finally sent a letter agreeing to use the geographic search terms that related to the East Coast Ports, but not other North American ports. (**Exhibit 7**) While this did not meet the full scope of discovery NSR thought was appropriate, in the spirit of compromise, NSR raised no further objections regarding the geographic search terms. NSR ran the same terms agreed to by CSXT against the NSR data set to target documents in response to CSXT's Second Requests.

25. On February 28, 2020, only eight days after CSXT finally agreed to the geographic search terms, NSR produced 15,821 documents in response to CSXT's Second Requests, or 53% of the total documents produced in response to the Second Requests.[4] These documents (with families) hit upon the geographic search terms agreed to by CSXT on February 20, 2020, and then were reviewed for responsiveness and privilege before production.

26. On March 10, 2020, only 18 days after CSXT finally agreed to the geographic search terms, NSR produced 13,588 additional documents in response to CSXT's Second Requests, or 46% of the total documents produced in response to the Second Requests.[5] These documents (with families), like those produced on February 28, 2020, hit upon the geographic search terms agreed to by CSXT on February 20, 2020 and then were reviewed for responsiveness and privilege before production.

---

[4] NSR's February 28, 2020 production also included approximately 1,400 additional documents in response to CSXT's First Requests.
[5] NSR's March 10, 2020 production also included approximately 100 additional documents in response to CSXT's First Requests.

27. In summary, NSR did not "back-load" its document productions or otherwise improperly delay its production of documents. To the contrary, in accordance with the ESI Order, NSR proposed geographic search terms to CSXT a few weeks after receiving CSXT's proposed search terms to address NSR's objection that CSXT's proposed terms would not provide fulsome responses to *NSR's* First Requests as CSXT had agreed to do, which was well before CSXT served its Second Requests on NSR; when CSXT served its Second Requests on NSR, NSR proposed revised geographic search terms eight days later; for unknown reasons, CSXT took more than a month to finally agree to a subset of these terms, and only then after being prodded into action by NSR; once CSXT finally agreed, NSR began producing documents in response to the Second Requests eight days later and substantially completed its production in response to the Second Requests in 19 days.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: August 7, 2020.        By: *Monica McCarroll*