# EXHIBIT 6

Troutman Sanders LLP
Troutman Sanders Building, 1001 Haxall Point
Richmond, VA  23219

troutman.com



**Alan D. Wingfield**
alan.wingfield@troutman.com

BY EMAIL

February 10, 2020

Robert W. McFarland
McGuire Woods LLP
World Trade Center
101 West Main Street
Suite 900
Norfolk, Virginia 23510

Re:   CSXT v. NSR - CSXT Witness Deposition and Discovery Deficiencies

Dear Rob:

We are following up on our repeated requests for deposition availability of CSXT witnesses, our letter of January 24 (attached) regarding CSXT's obligation to provide responsive Data, our exchanges on CSXT's use of geographic search terms, and our meet and confer on January 17 regarding deficiencies in CSXT's answers to NSR's interrogatories.

## Depositions

Attached with this letter are deposition notices to the following CSXT fact witnesses:

- **Tony DiDeo on March 10, 2020**
- **Steven Armbrust on March 11, 2020**
- **John Booth on March 12, 2020**
- **James Allan on March 13, 2020**

On January 27, I requested availability for these witnesses and followed up on this request on January 31 and February 6.  We need to move forward with scheduling these depositions.  We are open to discussing scheduling by mutual agreement rather than notice; however, absent agreement these notices are intended to control.

## Data

Our letter of January 24 (attached) requested production by January 31 of Data in response to NSR document Request No 1 in NSR's Second Requests for Production of Documents.  To date, the Data has not been received.  I see that CSXT has made a voluminous production this afternoon; if the Data is included in this production, please provide the location of the information within this production.

**McGuire Woods LLP**
February 10, 2020
Page 2



By way of background, on January 24, 2020, NSR produced a Confidential – Attorneys' Eyes Only csv file containing waybill information in response to CSXT's RFP No. 26, as NSR represented it would. In the attached cover letter sent with this production, NSR requested that CSXT produce by January 31 the equivalent data in response to NSR's Second RFP No. 1, as CSXT represented it would. See B. Hatch's January 15, 2020 letter ("CSXT agrees that the protocol for response to CSXT's RFP No. 26 will also apply to CSXT's response to RFP No. 1 in NSR's second set of RFPs.") On January 31, 2020, CSXT made a production that did not include waybill data in response to NSR's Second RFP No. 1.

Absent inclusion in the production today, NSR submits that the parties have sufficiently met and conferred regarding the Data and have reached an impasse.

**Geographic Search Terms**

On January 17, 2020, NSR circulated the proposed 'geographic search terms' first discussed in December. These terms are intended to target CSXT's documents that respond to certain of NSR's First Set of Requests for Production that are not adequately addressed by CSXT's current search terms (e.g., RFP 36). The parties met and conferred about the 'geographic search terms' on January 21, and NSR explained why information relating to ports beyond the East Coast is relevant to NSR's defenses against CSXT's antitrust claims. You agreed to discuss with your client, but suggested the terms were "very" burdensome. We advised that the terms had been extensively tested and refined to ensure neither party was reviewing large volumes of irrelevant information. Regardless, CSXT previously agreed to use search terms related to the East Coast Ports—indeed its First Set of Requests for Production specifically requested documents from NSR concerning East Coast Ports—but it has yet to respond to NSR's proposal on this issue or provide its own proposed terms.

If CSXT believes another meet and confer will help the parties reach consensus on these terms, please provide available dates and times this week. Otherwise, we submit the parties are at impasse on this issue as well.

**Interrogatory Responses**

My email of January 15 (attached) listed deficiencies in CSXT's interrogatory answers. We had a meet and confer on January 17. During the meet and confer, you represented that CSXT has done / would do the following:

- In response to Interrogatory No. 1 provide written confirmation that witnesses with "material" knowledge were identified, and that the witnesses included person with knowledge of East Coast ports and not limited to Virginia ports.

- Supplement its answer to Interrogatory No. 5 to provide (a) each charge for comparable services charged by other short line railroads referred to in Paragraph 34 of the Complaint; (b) how the $210 tariff is anti-competitive by design, including the specific fixed costs the tariff is designed to recover; (c) the

**McGuire Woods LLP**
February 10, 2020
Page 3



---

price or amount that the tariff would need to be to not effectively price CSXT out of competition at NIT; and (d) the specific constraints that render drayage an unreasonable alternative for CSXT, including the costs that CSXT incurs to load a container into a car, which are referred to in CSXT's answer to this interrogatory.

- Produce documents in response to Interrogatories No. 4 and No. 7.

To date, you have not supplemented your interrogatory answers to Nos. 1 and 5, nor have you provided ranges for the documents produced in response to Interrogatories No. 4 and No. 7.

In addition, I am writing to confirm that CSXT intends to stand by its responses to interrogatories No. 6 and 8.

***

Please be advised that we intend to include all of these deficiencies in an upcoming motion to compel and if CSXT intends to comply with outstanding discovery requests then it should do so as soon as possible.

Sincerely,

*Alan D. Wingfield*

Alan D. Wingfield

Attachments

cc:   Benjamin Lucas Hatch
      Jeanne E. Noonan
      James L. Chapman, IV
      W. Ryan Snow
      Darius K. Davenport
      David C. Hartnett
      W. Edgar Spivey
      Clark J. Belote
      Hugh M. Fain, III
      M.F. Connell Mullins, Jr.
      Monica McCarroll
      John M. Erbach
      Michael E. Lacy
      Massie P. Cooper
      Kathleen M. Knudsen
      John C. Lynch

41367338v2

Troutman Sanders LLP
Troutman Sanders Building, 1001 Haxall Point
Richmond, VA  23219

troutman.com

**Michael E. Lacy**
D 804.697.1326
F 804.698.6061
michael.lacy@troutman.com

January 24, 2020

**VIA EMAIL**

Benjamin L. Hatch, Esq.
McGuireWoods LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510-1655

Re:   CSX Transportation, Inc. v. Norfolk Southern Railway Company, et al.
      Civil Action No. 2:18-cv-530

Dear Ben:

### *Production in Response to CSXT RFP Nos. 24 and 26*

Included in this email is a password encrypted link to Norfolk Southern Railway Company's ("NSR") production in response to CSX Transportation, Inc.'s ("CSXT") Request for Production of Documents Nos. 24 and 26. The password is being provided by a separate email.

The production is designated "CONFIDENTIAL—ATTORNEYS' EYES ONLY" pursuant to the Stipulated Protective Order (ECF No. 79). Additionally, the production is accordance with the parties' agreement as to the scope of production for these document requests, which is memorialized in my letter to you, dated January 10, 2020, and your letter to me, dated January 15, 2020.

### *CSXT's Agreement to Provide the Same Data and Documents to NSR*

Your January 15 letter confirms that CSXT will provide the same data and documents (the "Data and Documents"), which NSR is producing today, in response to NSR document Request Nos. 39 and 1 in NSR's Second Requests for Production of Documents.[1] Notwithstanding CSXT's agreement to produce the Data and Documents,

---

[1] As we have previously advised during meet and confer, it is our understanding that CSXT and NSR use the same software to track the movement of containers and related information that counsel have been

**Benjamin L. Hatch, Esq.**
January 24, 2020
Page 2



and CSXT's demand that NSR produce the Data and Documents by today, CSXT refused to agree to produce the Data and Documents by today. What is more, per Rob McFarland's January 21, 2020, email to me, CSXT will not even provide a date by which it would produce this Data and Documents. Instead, Mr. McFarland referred to the need for continued discussions with your client, which are unnecessary given your agreement in your January 15 letter to produce this Data and Documents. Mr. McFarland also referred to NSR's document requests, including the "geographic" search terms we have proposed. But CSXT's agreement to produce the Data and Documents, as set forth in your January 15 letter, is not conditioned on NSR's document requests or the proposed geographic search terms. Indeed, NSR had to propose the geographic search terms because CSXT's search terms were inadequate. Your January 15 letter did inquire as to what additional search terms NSR would use in response to CSXT document Request No. 24. As we have explained to your colleagues on multiple meet and confers, we believe the search terms that we are using are broad enough to capture the ESI responsive to this request, and, as the parties have agreed, to the extent that CSXT contends that our production is lacking in this regard, it can raise it at that point. More to the point, this inquiry has nothing to do with the timing of CSXT's production of the Data and Documents, which it has explicitly agreed to produce. Put simply, if NSR can produce the Data and Documents within nine days of the parties reaching their agreement, there is no reason that CSXT cannot do the same, or at least agree to a production date.

### *Request that CSXT Produce the Data and Documents by January 31*

As we have to explained to you and Mr. McFarland, we cannot allow CSXT's delayed production of this Data and Documents, which appears to be intentional at this point, to impact NSR's ability to meet the Court-ordered deadlines, including NSR's deadline to serve its expert reports, or force NSR to seek extensions of any of the deadlines. NSR's Second Requests for Production was served on November 18, 2019, meaning that CSXT has had more than two months to consider its position and provide a production. While the parties are working together to provide information and documents on a rolling basis, CSXT has taken the position that this type of information should be a priority because of a potential impact on expert reports and the progress of the case – hence its demands on NSR and its newly filed Emergency Motion. It is time for CSXT to provide production or a definitive plan for the production of this information."

Accordingly, we request that CSXT produce this Data and Documents —which it has agreed to do—on or before January 31, 2020, or we will move to compel the production of the Data and Documents.

---

describing as the "waybill information", which is the subject of CSXT's document request no. 26. To that end, I am enclosing the list of fields from which NSR has exported the data comprising the Confidential—Attorneys' Eyes Only CSV file being produced today. At a minimum, NSR expects CSXT to export data from the same fields in its production to NSR.

**Benjamin L. Hatch, Esq.**
January 24, 2020
Page 3



Please confirm as soon as possible whether CSXT will produce the Data and Documents by January 31, 2020.  We are happy to discuss if needed.

Sincerely,

Michael E. Lacy

cc:    Monica McCarroll, Esq.
        Alan Wingfield, Esq.
        Massie P. Cooper, Esq.
        Kathleen Knudsen, Esq.
        Rob McFarland, Esq.
        J. Brent Justus, Esq.
        Jason Evans, Esq.
        Ashley Peterson, Esq.
        Jeanne Noonan, Esq.

41217403v1

**FIELD NAME**
MOVE_DT
LE_CD
RHWY_TC_LEN
EQUIPMENT_INIT
EQUIPMENT_NBR
ONNET_DESTINATION_CITY
ONNET_DESTINATION_STATE
ONNET_ORIGIN_CITY
ONNET_ORIGIN_STATE
TRANS_WB_SN
ULTIMATE_DESTINATION_CITY
ULTIMATE_DESTINATION_ROAD_NAME
ULTIMATE_DESTINATION_STATE
ULTIMATE_ORIGIN_CITY
ULTIMATE_ORIGIN_ROAD_NAME
ULTIMATE_ORIGIN_STATE
WB_DATE
COST
REVENUE
BILL_TO
SHIPPER
CONSIGNEE

**Freeman, Barclay P.**

| | |
|---|---|
| **From:** | Wingfield, Alan D. |
| **Sent:** | Wednesday, January 15, 2020 1:52 PM |
| **To:** | Noonan, Jeanne E. |
| **Cc:** | James Chapman; David Hartnett; Kristin Smith; Stephanie Hunter; Hatch, Benjamin L.; McFarland, Robert W.; Evans, Jason D.; Peterson, Ashley P.; Justus, J. Brent; Monica McCarroll; Lacy, Michael E.; Lynch, John C.; Knudsen, Kathleen M.; Cooper, Massie P.; Spivey, W. Edgar; Belote, Clark J.; Hugh Fain; Connell Mullins; John Erbach |
| **Subject:** | CSXT v. NSR - meet and confer request on CSXT's responses to NSR's interrogatories, and on CSXT's Initial Disclosures |

Jeanne,

We would also like to schedule a time for a meet and confer call regarding CSXT's Objections and Responses to NSR's First Interrogatories, CSXT's Objections to NSR's Second Interrogatories, and CSXT's Initial Disclosures. We are available Thursday afternoon.

In particular, and without limitation, we would like to discuss the following:

- CSXT's reservation of rights to object on any grounds to the admission of its Interrogatory responses in trial or other proceeding to the extent such objection limits NSR's use of the Interrogatory responses in accordance with the Federal Rules of Evidence and Federal Rule of Civil Procedure 33(c).

- CSXT's objection to Interrogatory 1 as "overbroad, unduly burdensome, and not proportional to the needs to this case as it requires CSXT to identify every individual with knowledge about almost any issue related to this Lawsuit." NSR has limited this Interrogatory to persons with material knowledge and, as such, NSR is entitled to identification of all individuals responsive to this Interrogatory. Further, CSXT needs to supplement its current responses to include current contact information if it has been obtained. If CSXT does not have current contact information, please provide the last known address.

- CSXT's objection and response to Interrogatory 3 relating to damages. CSXT objects to this interrogatory on the basis of privilege, basically. CSXT takes the same position in CSXT's Objections to NSR's Second Interrogatories. CSXT's Initial Disclosures do not raise a privilege objection, but nevertheless provide no information on the remedies it seeks. Identification of damages suffered by CSXT and the remedies it seeks is not protected by any applicable privilege. Further, NSR is entitled to a detailed identification of damages and remedies immediately notwithstanding CSXT's desire to have expert testimony on the subject.

- CSXT's objection to Interrogatory 4 as "overly broad and unduly burdensome" for CSXT to identify and describe "all communications" it has had with the VPA "regarding rail carrier access to NIT." NSR's request focus rail access, and excludes communications regarding ports other than NIT. This request is narrow, and is not overly broad and unduly burdensome on CSXT.

- CSXT's objection to Interrogatory 5 as protected by privilege. Explanation of CSXT's central claim in the case, that it is precluded from accessing NIT, is not protected by privilege. CSXT's response needs to be supplemented to identify and describe each and every charge for comparable services charged by other short line railroads as referred to in Paragraph 34 of the Complaint. CSXT's response also needs to be supplemented to explain how the $210 tariff is anti-competitive in design, including the fixed costs (including the amount of fixed costs) that the tariff is designed to recover, as well as the amount of profit the tariff is designed to produce. CSXT's response needs to be supplemented to explain in detail how the "additional cost this structure imposes on CSXT effective[ly] prices CSXT out

1

of competition at NIT," and explain at what price or amount would the tariff not effectively price CSXT out of competition at NIT. CSXT further needs to identify and describe the "capacity constraints, logistical constraints, and cost efficiency constraints" that render drayage an unreasonable alternative for CSXT, including the costs to load the container onto the rail car.

- CSXT's objection to Interrogatory 6 that "the NPBL Operating Agreement speaks for itself." NSR is entitled to CSXT's explanation and understanding of the NPBL Operating Agreement.

- CSXT's objection to Interrogatory 7 as "overly broad, unduly burdensome, and expensive, irrelevant, and not proportional to the needs of this case." NSR only requests communications "in which CSXT objected to or otherwise complained about the removal of the 'diamond.'" Such request is not overly broad and unduly burdensome on CSXT.

- CSXT's objections to Interrogatory 8. CSXT lists out a myriad of objections that are not applicable to NSR's request for "contract, shareholders' agreement, Operating Agreement, or governing document of NPBL" including, but not limited to, that such documents are privilege and that such documents speak for themselves.

Through this list, NSR does not waive any of the objections it has made to CSXT's objections to NSR's Requests for Production of Documents or the agreements reached between NSR and CSXT through a separate meet and confer process.

Alan

**Alan D. Wingfield**
Direct: 804.697.1350
alan.wingfield@troutman.com
─────────────────

**troutman sanders**
1001 Haxall Point, Suite 1500
Richmond, VA 23219
troutman.com
─────────────────

**A HIGHER COMMITMENT TO CLIENT CARE**