IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CSX TRANSPORTATION, INC.,
individually and on behalf of NORFOLK
& PORTSMOUTH BELT LINE
RAILROAD COMPANY,

        Plaintiff,

v.                                                    Civil Action No. 2:18-cv-530-MSD-LRL

NORFOLK SOUTHERN RAILWAY
COMPANY, *et al.*,

        Defendants.

**CSX TRANSPORTATION INC.'S REPLY IN SUPPORT OF
ITS MOTION TO REOPEN AND COMPEL DEPOSITIONS**

Plaintiff CSX Transportation, Inc. ("CSXT"), by counsel, respectfully submits this Reply in support of its Motion to Reopen and Compel Depositions (the "Motion") (ECF No. 203):

**INTRODUCTION**

To avoid the consequences of its own belated document productions, Defendant Norfolk Southern Railway Company ("NS") tries to rewrite the history of discovery in this action. NS's retelling is contradicted by the record, including CSXT's discovery requests. It is unfortunate that CSXT must expend the Court's time and resources to correct the record. To be clear, CSXT requested the documents purportedly contained in NS's late productions in its *first* set of document requests. CSXT diligently served those requests in October 2019, more than five months before its discovery cut-off and only days after the Court permitted discovery to begin. NS told CSXT and this Court that it would "substantially complete" its productions in response to those requests by February 7, 2020. It did not do so. Nothing about CSXT's second set of document requests,

1

or the parties' negotiations over geographic search terms, can change this fact.

Moreover, any disagreement or misunderstanding about the nature or scope of the parties' discovery negotiations is beside the point. What matters is that NS produced **hundreds of thousands** of documents *after* CSXT deposed NS's witnesses, within days of (and after) the close of CSXT's discovery period. No amount of diligence short of clairvoyance would have allowed CSXT to ask about these documents during its depositions. NS's late-produced documents thus provide ample good cause for CSXT to depose (or re-depose) Messrs. Booth, Martinez, Heller, and McClellan, regardless of the justifications now proffered.

NS's Opposition also ignores the unique procedural posture of this case, including the fact that the original trial date has been cancelled due to the COVID-19 pandemic—with any rescheduled trial date likely many months away—or that NS has proposed enlarging its own discovery period by *more than six weeks* during the parties' negotiations about possible amendments to the pretrial schedule. As CSXT has explained, allowing more time for *all parties* to complete necessary depositions is reasonable and appropriate here, particularly given the challenges that the parties have faced—and will no doubt continue to face—related to COVID-19. NS should not be permitted to unilaterally benefit from the long stay, particularly when its delayed document productions have significantly prejudiced CSXT.

NS failed to produce dozens of critical documents until *after* CSXT had noticed, scheduled, prepared for, and deposed NS's witnesses. CSXT has a right to depose (or re-depose) key NS witnesses about these documents and the circumstances surrounding them. Accordingly, the Court should grant CSXT's Motion.

## ARGUMENT

The parties agree that CSXT must show "good cause" to support its Motion. *See* ECF No. 204 at 8; ECF No. 215 at 8. But this does not require CSXT to prove "manifest injustice" or "substantial hardship." *Kinetic Concepts, Inc. v. Convatec Inc.,* No. 1:08CV00918, 2010 WL 1667285, at *5 (M.D.N.C. Apr. 23, 2010). Instead, "the touchstone of 'good cause' under Rule 16(b) is diligence." *Id.* Good cause exists to permit additional discovery, including depositions, when extensive document productions are made near the end of a party's discovery period. *See id.* at *9; *see also Polyzen, Inc. v. RadiaDyne, L.L.C.,* No. 5:11-CV-662-D, 2014 WL 2505244, at *3 (E.D.N.C. June 2, 2014) (granting request to extend discovery to take new depositions of individuals listed in initial disclosures and to re-depose a third based on discovery delays, including documents produced on the morning of deposition).

Moreover, "[w]hen considering whether to grant leave to reopen a deposition, the burden is on the *opposing party* to demonstrate that Rule 26(b)(2) bars the deposition." *Eshelman v. Puma Biotechnology, Inc.,* No. 7:16-CV-18-D, 2018 WL 327559, at *4 (E.D.N.C. Jan. 8, 2018) (emphasis added). Because NS has not shown that the testimony sought by CSXT would be unduly burdensome or "unreasonably cumulative or duplicative," or that CSXT had "ample opportunity" to obtain the necessary testimony during its original depositions, it has not carried this burden. *Id.* (citing Fed. R. Civ. P. 26(b)(2)).

### I. CSXT pursued discovery diligently.

In its Opposition, NS attempts to shift the blame for its belated productions to CSXT. NS contends that its late productions were made "in response to CSXT's *Second* Requests [for Production]," and that its proffered February 7 "substantial completion" date applied only to productions in response to CSXT's *first* document requests. *See* ECF No. 215 at 7. The linchpin

3

of NS's argument is that CSXT's *first* requests for production—served in October 2019—purportedly did not seek documents related to "ports outside Virginia." *See id.* at 4. According to NS, this means that it could not have identified the late-produced documents until after the parties agreed on geographic search terms for CSXT's *second* set of requests in late February 2020. *See id.* at 6-8.

    The most obvious flaw in NS's argument is that ***CSXT's first requests for production include multiple requests for documents related to "East Coast Ports" located outside Virginia***.[1] *See* ECF No. 204-1 at 15 (RFP 19, seeking "[d]ocuments sufficient to show switch rates at all East Coast Ports served by NS"); *id.* (RFP 20, seeking "[a]ll documents since 2007 reflecting or pertaining to any discussions or negotiations between NS and any actual or potential customer for whom NS or CSXT moves freight through any East Coast Port . . ."); *id.* at 17 (RFP 27, seeking "[a]ll documents related to NS's pricing strategies for any freight transportation by rail in and out of all East Coast Ports"); *id.* at 18 (RFP 29, seeking "[a]ll market studies . . . [for] any other East Coast Port as far as these documents also refer to NIT, PMT, or VIG"); *id.* at 19 (RFP 37, seeking "[a]ll documents containing or referencing historical or current data and information related to capacity . . . for NS and its competitors at . . . other East Coast Ports"). NS cannot reasonably suggest that CSXT lacked diligence by serving these requests five months before its discovery cut-off, and only a few days after the Court permitted discovery to begin. *See* ECF No. 204 at 3. Nor can NS credibly argue that it did not need to produce documents responsive to these requests until

---

[1] In its first requests, CSXT defined "East Coast Ports" to include "all major ocean ports and marine terminals on the Atlantic and Gulf Coasts in the United States east of the Mississippi River, including terminals located in the Port of New Orleans, Port of New York/New Jersey, Port of Baltimore, Port of Charleston, and Port of Savannah." ECF No. 204-1 at 6.

late February 2020—nearly four months after CSXT issued them.[2]

NS also cannot legitimately blame its delay on the parties' negotiations over geographic search terms. To begin, the parties' ESI Order (ECF No. 83) does *not* provide that "establishing search terms by agreement or motion would be a precondition to launching the process of production of electronic documents," as NS suggests. ECF No. 215 at 4. The ESI Order states that, "if the producing Party elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms to the requesting Party," and that the requesting party may then "request no more than twenty (20) additional terms to be used in connection with the electronic search." ECF No. 83 at 5. Although the ESI Order contemplates that the parties will meet and confer "to avoid an unduly burdensome production," it in no way permits a party to evade or delay its production obligations until after the parties reach a final agreement on search terms.

Moreover, contrary to NS's implausible contention that it "opened negotiations over geographic search terms it would use *even before CSXT requested the documents*," ECF No. 215 at 7, the parties' correspondence confirms that they were negotiating geographic search terms as early as December 13, 2019. *See* Dec. 20, 2019 Letter from Evans to McCarroll and Lacy, attached as **Exhibit 1** (memorializing December 13 meet-and-confer about "port-related terms" proposed by the parties). CSXT initially proposed mutually limiting production of certain documents to Virginia ports. *See* ECF No. 215-3 at 5 (CSXT's initial search terms); *see also* ECF No. 215-5 at 6 (Jan. 6, 2020 Letter from Hatch to McCarroll and Lacy, memorializing January 3 meet-and-confer during which counsel discussed "limiting the geographical scope of the search terms applied

---

[2] NS repeatedly claims that it "produc[ed] over ninety-one percent (91%) of the documents responsive to CSXT's First Requests on or before February 7, 2020" (i.e., its proffered "substantial completion" date). *See, e.g.*, ECF No. 215 at 2. But that cannot be. By its own admission, NS produced nothing in response to CSXT's many requests involving non-Virginia ports until February 28 or later. *See id.*

to custodial ESI to certain Port of Virginia facilities . . .").  NS ultimately rejected this proposal, insisting that the parties instead apply an expansive list of search terms including ports across North America.  *See* ECF No. 215-6 (Jan. 17, 2020 email from McCarroll).  In doing so, NS represented that it had "refined and tested" its proposed terms "to ensure that they are as narrow and targeted as possible, while still capturing relevant information." *Id.* at 1.

Accordingly, as of January 17, 2020, NS (1) knew that CSXT had requested, in October 2019, the production of documents related to ports located outside Virginia; (2) had rejected CSXT's proposal to limit certain types of documents to Virginia ports only; and (3) had identified the search terms it intended to apply to target documents responsive to CSXT's discovery requests, as provided by the parties' ESI Order.  Yet NS admittedly did not produce *any* documents responsive to those requests until February 28—six weeks after it identified search terms, three weeks after it represented that it would complete its productions, and less than a week before the close of CSXT's discovery period.  There is no basis for NS's prolonged and prejudicial delay— much less any basis for its claim that CSXT acted with anything but diligence.

Finally, NS contends that CSXT "failed to act diligently in raising these issues before the Court." ECF No. 215 at 10.  That simply is not the case.  NS made its final document production— its largest, totalling more than 106,000 pages—on March 10.  *See* ECF No. 204 at 5.  A week later, the parties jointly moved to stay this action due to the COVID-19 pandemic.  *See id.*  Despite the challenges caused by related stay-at-home orders, CSXT diligently reviewed NS's productions and evaluated them in the context of other discovery (including deposition testimony) obtained to date. When CSXT confirmed that additional depositions would be necessary, it engaged with counsel for NS.  *See* ECF No. 204-4.  The parties discussed CSXT's proposal for additional depositions several times, and they did not reach an impasse on this issue until June 25.  CSXT filed its Motion

less than a month later. Especially under current circumstances—and with no trial date on the horizon—CSXT's efforts to reach a reasonable compromise without court intervention cannot be interpreted as a lack of diligence.

In sum, CSXT's diligent pursuit of discovery provides ample "good cause" to justify the additional discovery it seeks, and the Court should grant CSXT's Motion. *See Kinetic Concepts*, 2010 WL 1667285, at *5.

## II. NS's late-produced documents constitute good cause to depose NS witnesses.

NS also contends that the documents identified in CSXT's Motion do not provide "sufficient justification" to re-depose Messrs. Heller and McClellan, or to depose Messrs. Booth and Martinez. To be clear, CSXT need not disclose its counsel's strategic assessment of every document that might merit exploration through additional depositions to support the Motion. *See, e.g.*, *Wesley v. Muhammad*, 2009 WL 1490607, at *5 (S.D.N.Y. May 20, 2009) (ruling that, where "defendants' delay in producing documents may have interfered with the completeness of depositions, plaintiff will be free to reopen any depositions for which he deems the newly produced documents to be a relevant source of questions" and also take new depositions "if plaintiff believes that the newly produced documents justify" those depositions"). NS's belated production of many critical documents—in and of itself—provides sufficient justification for the depositions CSXT seeks. *See, e.g.*, *Polyzen*, 2014 WL 2505244, at *3 (granting defendant's motion to extend discovery period to re-open two depositions and to depose a third individual for the first time based on plaintiff's delayed discovery responses, even where "the fact that these individuals cannot be deemed a surprise" under the circumstances); *Washington-St. Tammany Elec. Cooperative, Inc. v. La. Generating, LLC*, 2019 WL 1804849, at *3 (M.D. La. April 24, 2019) (finding good cause to

7

extend discovery period to allow for reopened deposition of witness based on documents produced during the week of the original deposition).

Nor does CSXT seek a "second bite at the apple" through re-opening the depositions of Messrs. Heller and McClellan. When considering whether to grant leave to reopen a deposition, "the burden is on the opposing party" to prove that Rule 26(a)(2) bars the deposition. *SMD Software, Inc. v. Emove*, No. 5:08-cv-403-FL, 2014 WL 794031, at *2 (E.D.N.C. Feb. 27, 2014); *see Benson v. Giordano*, 2007 WL 2355783, at *2-3 (D.S.D. Aug. 17, 2007) (explaining that the purpose of Rule 26(b)(2) is "to guard against redundant or disproportionate discovery").

NS claims that CSXT has already deposed Messrs. Heller and McClellan "about the very topics" at issue. ECF No. 215 at 12. While it is true that these individuals were asked generally about relevant topics, including Hampton Roads ports and the NPBL, CSXT could not ask about *specific documents* authored or received by them produced after their depositions took place. Particularly when, as here, the late-produced documents relate directly to key disputed issues—including, for example, NS's corporate strategy to use NPBL to prevent CSXT from accessing NIT (*see, e.g.*, ECF No. 204-10)—CSXT has a right to question the witnesses about those very documents. *See All Star Seed v. Nationwide Agribusiness Ins. Co.*, 2013 WL 1882260, at *2-3 (S.D. Cal. May 3, 2013) (granting request to re-depose witnesses based on belated productions, rejecting argument that prior testimony on similar topics was sufficient when "the fact of the matter is that [plaintiff] did not have the opportunity to question the witnesses about the documents [at issue] solely due to Defendant's failure to produce them"); *Eshelman*, 2018 WL 3275599 at *4 (granting leave to reopen depositions, rejecting argument that the deponents had already "extensively testified" about the topics raised by late-produced documents, noting that "Plaintiff has the right to utilize discovered material in depositions, and it would be unfair to allow Defendant

8

to untimely produce materials and then prevent Plaintiff from reopening depositions in order to question based on those materials"). CSXT's prior exploration of related topics simply does not negate the fact that NS's late-produced documents "constitute new evidence that [CSXT] could not have obtained from another source," which provides "the requisite good need for re-deposing the witnesses." *All Star Seed*, 2013 WL 1882260, at *2-3; *see also Fresenius Med. Care Holdings, Inc. v. Roxane Laboratories, Inc.*, 2007 WL 764302, at *2 (S.D. Ohio, Mar. 9, 2007) (explaining that if, "after a witness is deposed, new information comes to light relating to the subject of that deposition. . . or new documents are produced, the witness may be re-deposed with respect to these new developments").

CSXT's request to depose Messrs. Booth and Martinez is likewise justified. NS contends that, because Messrs. Booth and Martinez are "high profile intermodal executives that CSXT has dealt with for years," it should have "come as no surprise" to CSXT that "they were individuals worth deposing." ECF No. 215 at 14. As CSXT has acknowledged, it knew generally about these individuals, including through the high-level information provided in NS's initial disclosures and discovery responses. *See* ECF No. 204 at 15-16. But NS has identified *dozens* of people who may potentially have knowledge on issues related to this action. *See generally* ECF No. 204-7, 204-8. Those disclosures in no way foreshadowed the dozens of highly relevant documents for these individuals, which NS ultimately produced weeks *after* its proffered substantial completion deadline. These late documents pointed out the need to depose these witnesses. CSXT is thus entitled to depose Messrs. Booth and Martinez about these documents and related issues.[3] *See*

---

[3] The cases NS cites in support of its argument are all inapposite. *See* ECF No. 215 at 14-15 (citing *Moore v. Publicis Groupe SA*, 2013 WL 4483531, at *7 (S.D.N.Y. Aug. 23, 2013) (holding that plaintiff's failure to act on information in its own possession precluded a finding of good cause *to amend plaintiff's complaint*); *Strag v. Bd. of Trustees*, 55 F.3d 943 (4th Cir. 1995) (holding district court did not abuse its discretion in denying plaintiff's motion seeking additional

9

ECF No. 204 at 15-17; *see also Inventiv Health Consulting, Inc. v. French,* No. 5:18-CV-295-D, 2020 WL 728148, at *10 (E.D.N.C. Feb. 12, 2020) (holding that large back-loaded productions are good cause for additional discovery, including depositions).

Finally, NS contends that CSXT's "concerns" can be addressed through "a second corporate deposition of NSR on documents produced after February 7, 2020 in return for re-opening Mr. Armbrust's deposition." ECF No. 215 at 15. This proposal is untenable for at least two reasons. First, as CSXT has explained, NS's request to re-open Mr. Armbrust's deposition is not comparable to the additional depositions sought by CSXT. *See* ECF No. 204 at 7 n.4. CSXT timely produced its documents and its privilege log well before NS unilaterally scheduled the deposition of Mr. Armbrust. NS failed to timely review those productions and challenge any of CSXT's privilege determinations until after 8:00 p.m. on the night before that deposition. That lack of diligence negates any argument that NS has "good cause" to re-depose Mr. Armbrust. *See id.*

Second, a Rule 30(b)(6) deposition would also be a particularly poor substitute for the depositions CSXT has requested, because the motives of the specific deponents requested is of paramount importance. A corporate designee would necessarily be ill-equipped to testify about the personal motivations and intentions of the author or recipient of the relevant documents. *See* Fed. R. Civ. P. 30(b)(6) (stating that corporate representatives in deposition "must testify about information known or reasonably available *to the organization*") (emphasis added); *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. Feb. 27, 1996) (explaining that "[t]he testimony elicited

---

discovery *in response to defendant's motion for summary judgment*); and *In re Coloplast Corp. Pelvic Support Sys. Prod. Liab. Litig.*, 220 F. Supp. 3d 731, 735 (S.D.W. Va. 2016) (rejecting plaintiff's request for discovery, made in opposition to defendant's Rule 12(c) motion for judgment on the pleadings, after concluding that the relevant claim failed as a matter of law and therefore "no discovery is needed").

at the Rule 30(b)(6) deposition represents the knowledge of the corporation, not of the individual deponents").

## CONCLUSION

For these reasons, as well as those set forth in CSXT's Memorandum in Support of the Motion (ECF No. 208), CSXT respectfully requests that the Court enter an Order reopening the depositions of Messrs. Heller and McClellan, compelling the depositions of Messrs. Booth and Martinez, and, under Fed. R. Civ. P. 37(a)(5), awarding CSXT its fees incurred for this Motion and for re-deposing Messrs. Heller and McClellan.

Dated: August 13, 2020

Respectfully submitted,

**CSX TRANSPORTATION, INC.**
*By Counsel*

*/s/ Robert W. McFarland*
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
V. Kathleen Dougherty (VSB No. 77294)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Telephone: (757) 640-3716
Facsimile: (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: vkdougherty@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219-3916
Telephone: (804) 775-1000
Facsimile: (804) 698-2026

E-mail: bjustus@mcguirewoods.com
E-mail: apeterson@mcguirewoods.com

## CERTIFICATE OF SERVICE

I certify that on this 13th day of August, 2020, a true and correct copy of the foregoing was served on all counsel of record via Notice of Electronic Filing by filing with the Court's CM/ECF system.

/s/ Robert W. McFarland
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
V. Kathleen Dougherty (VSB No. 77294)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Telephone: (757) 640-3716
Facsimile: (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: vkdougherty@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219-3916
Telephone: (804) 775-1000
Facsimile: (804) 698-2026
E-mail: bjustus@mcguirewoods.com
E-mail: apeterson@mcguirewoods.com