IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CSX TRANSPORTATION, INC.,
individually and on behalf of
NORFOLK AND PORTSMOUTH BELT LINE
RAILROAD COMPANY,

          **Plaintiff,**

v.                                                             Civil Action No. 2:18-cv-530-MSD-LRL

NORFOLK SOUTHERN RAILWAY
COMPANY, *et al.*,

          **Defendants.**

## REPLY BRIEF IN SUPPORT OF NPBL'S MOTION TO COMPEL

Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line"), by counsel, replies as follows in support of its Motion to Compel against CSX Transportation, Inc. ("CSXT"):

### Introduction

The Belt Line propounded two straightforward interrogatories to CSXT, asking it to identify the specific communications between the Belt Line and NS, and the specific overt acts by the Belt Line, that CSXT contends form the basis for the alleged conspiracy. CSXT's answers begin by stating, "NPBL and NS have conspired to prevent CSXT from accessing on-dock rail at NIT for more than a decade. During that time, NPBL and NS have had numerous communications in furtherance of this continuing conspiracy." From this, one would reasonably expect CSXT to then identify the conspiratorial communications and acts. Instead, CSXT's answers refer to a collection of 108 documents from which it is impossible for anyone but CSXT to glean any requested information. The Belt Line therefore moved to compel responsive answers.

1

In its Opposition, CSXT offers two shallow arguments to justify its evasiveness. First, it claims that it answered the interrogatories with the 108 documents it identified, even though it defends only 10 as being responsive and does not even attempt to explain how Rule 33 permits such a document dump as an answer. Second, CSXT argues that it should not have to answer the interrogatories as written, so long as it identifies indirect evidence that it may use at trial, despite the specific requests in the interrogatories themselves.

Not surprisingly, courts have rejected all these positions when deciding discovery motions, for the simple reason that they contradict Rule 33. A party cannot avoid contention interrogatories through indiscernible document dumps, nor may it rewrite the interrogatories to escape answering them. In fact, when CSXT itself was accused in another case of being part of an antitrust conspiracy, it successfully compelled the plaintiffs to provide specific information in response to a contention interrogatory about meetings over alleged price fixing, after the court rejected a similar argument about providing only indirect evidence.

This Court should strike CSXT's current answers and order CSXT to provide fully responsive answers. If CSXT contends that there are specific conspiratorial communications and acts, it should identify them with the specificity required in the interrogatories. On the other hand, if CSXT cannot identify specific communications and acts, and it intends to rely on indirect evidence to infer a conspiracy instead, it should say so in its answers.

## Argument

**I.      CSXT has never answered the interrogatories propounded on it.**

In the introduction to its Opposition, CSXT states that, "NPBL asked CSXT to identify the specific communications and conduct forming the basis of its conspiracy claims, and CSXT has done so." Opp. at 3. In reality, CSXT answered no part of interrogatory 3 or 4. This Court has

2

the documents that CSXT produced, and can easily determine for itself that the responses are inadequate, if not confounding.

The interrogatories asked CST to identify the following:

> 3. Identify the specific communication(s) between the Belt Line and NS that you contend form the basis for the conspiracy alleged in Counts I, II, VIII, and IX of your Complaint, including the identities of the specific persons involved in such communication(s), the dates and circumstances of such communication(s), and all documents that support your answer.
>
> 4. Identify the specific overt act(s) by NPBL that you contend form the basis for the conspiracy alleged in Counts I, II, VIII, and IX of your Complaint, including the identities of the specific persons who you contend committed such act(s), the dates and circumstances of such act(s), and all documents that support your answer.

ECF No. 201-1 at 6, 8.

The only part of the interrogatories that CSXT even attempted to address is the last, asking for "all documents that support your answer." CSXT did not actually answer anything. It did not identify any specific communications or acts, much less any persons involved or the dates and circumstances. It simply dumped a list of 108 documents on the Belt Line in response to both interrogatories, with no indication of where in those documents any answers might be found.

Not even Rule 33(d) permits such a deficient response. Rule 33(d) permits a party in limited circumstances to identify its own "business records" in its answer, but only if "the burden of deriving or ascertaining the answer will be substantially the same for either party" and the responding party provides "sufficient detail" to allow the other party to locate the records and discern an answer. *See* Fed. R. Civ. P. 33(d).

CSXT does not identify its own business records, but rather emails and documents produced by other parties. *See Hoffman v. United Telecomms., Inc.*, 117 F.R.D 436, 438 (D. Kan. 1987) ("This rule allows a party to produce its own business records in lieu of interrogatories in

3

certain instances."); *Calhoun v. Liberty Northwest Ins. Corp.*, 789 F. Supp. 1540, 1549 (W.D. Wash. 1992) (the rule "applies only where the answers to interrogatories may be found in the business records of the party upon whom the interrogatories have been served"). CSXT fails to specify where any answers can be ascertained, and the burden of hunting for its contentions in 108 seemingly meaningless documents is certainly not the same for the Belt Line as for CSXT.

These deficiencies are exactly why courts do not allow parties to respond to contention interrogatories solely by producing documents. *See SEC v. Elfindepan, S.A.*, 206 F.R.D. 574, 576-78 (M.D.N.C. 2002) ("These type of interrogatories [contention interrogatories] do not lend themselves to answer by use of Rule 33(d)"); *Fleming v. Escort, Inc.*, 2011 WL 573599, at *2 (D. Idaho Feb. 13, 2011) ("[C]ourts have consistently held that [Rule 33(d)] cannot be used with respect to contention interrogatories."); *United Oil Co. v. Parts Assocs.*, 227 F.R.D. 404, 419 (D. Md. Mar. 4, 2005) (granting motion to compel based on improper use of Rule 33(d) when answers involved contention interrogatories that "require the exercise of particular knowledge and judgment on the part of the responding party"); *In re G-I Holdings, Inc.*, 218 F.R.D. 428, 438 (D. N.J. 2003) ("The option afforded by Rule 33(d) is not a procedural device for avoiding the duty to give information.").

In fact, CSXT's own brief contains multiple examples of the reason for the rule. It is only through the partial explanations in CSXT's brief that one can even begin to understand why CSXT believes any documents are responsive. For example, as part of its answer to interrogatory 3, CSXT references the following group of documents:

> Communications regarding the setting of NPBL's rates, including but not limited to in conjunction with the 2009 NPBL Rate Committee. *See, e.g.*, documents beginning with Bates number NSR_00199515, NSR_00199524, NSR_00199530, NSR_00199532, NSR_00199538, NSR_00199542, NSR_00035548, NSR_00084730, NSR_00027070, NSR_00035903, NSR_00011118, NSR_00027114, NSR_00063116, NSR_00027052,

      NSR_00183825, NSR_00077404, NSR_00067467, NSR_00177916, and NSR_00027096.

ECF No. 201-1 (Exhibit A to the Belt Line's Memo. in Supp.) at 6. [1]

The next-to-last document (NSR_00177916) is an email from one NS employee to another in 2009. Yet according to CSXT's brief, this email is not even a conspiratorial communication. Instead, CSXT contends that three sentences in a *draft* two-page letter attached to the email, *see* ECF No. 210-1, constitute the conspiratorial communication. *See* ECF No. 210 at 8. How could the Belt Line possibly have been expected to discern this without CSXT pointing it out?

Likewise, with respect to the first two documents in this category (from 1999), CSXT's brief explains that, "taken together," they can be viewed as conspiratorial communications between the Belt Line and NS. Opp. at 6-7 (discussing NSR_00199515 and -524). The documents purportedly contain handwritten notes from William Romig about a proposed rate change. Neither Mr. Romig nor any of the recipients are officers or employees of the Belt Line, though Mr. Romig was an NS-appointed Belt Line director. CSXT contends that these documents can be viewed as communications between the Belt Line and NS because "Mr. Romig, *in his capacity as a representative of NPBL*, communicated with NS employees regarding the setting of NPBL's rates, and then voted *as an NPBL Board member* based on instructions provided by (and for the benefit of) NS." Opp. at 6-7 (emphasis in original). Again, how could the Belt Line have known that this was CSXT's contention from the Bates labels of the documents alone?

The one other document from this category that CSXT addresses is NSR_0027070, which, as CSXT notes, is an internal NS email discussing certain recommended action. *See id.* at 6 (citing

---

[1]     Although CSXT avoids providing Bates number ranges for these 19 "documents," it appears from review that they encompass many more than 19 pages. CSXT's answer gives no indication of the exact number or where any citation is supposed to end.

ECF No. 201-4 at 25). CSXT quotes one of multiple paragraphs as supporting its claim that this is a conspiratorial communication. Yet even the quote does not explain how the document answers the interrogatory. Interrogatory 3 asks CSXT to identify communications between NS and the Belt Line. None of the people who received the internal NS email were board members, officers, or employees of the Belt Line. Only through the explanation in CSXT's brief can the Belt Line determine why CSXT contends the NS email is a conspiratorial communication, apparently because of actions that took place after the email was sent.

The same is true for the handful of other documents that CSXT attempts to defend as conspiratorial communications. On page 7 of its brief, for example, CSXT explains that, even if a document does not reference specific action by the Belt Line, the document may "indicate that NS-appointed members of the NPBL Board acted—or were directed to act—in furtherance of the conspiracy." Opp. at 7 (discussing NSR_00104458, 00027070, and 00084753); *see also* Opp. at 9 (discussing four other documents). Again, how is the Belt Line supposed to know?

All of this underscores the deficiency of CSXT's answers. CSXT's brief does not even address the bulk of the documents discussed in the Belt Line's motion, which is an obvious acknowledgment that they are not responsive. In other words, out of the 108 documents that CSXT listed, CSXT is able to explain only why it believes 10 are responsive. Its silence about the rest speaks volumes. As one court held, "a party 'may not merely refer' another party to the documents 'hoping [the other party] will be able to glean the requested information from them.' Indeed, '[t]he court generally finds such practice unacceptable.'" *Johnson v. Kraft Foods North America*, 236 F.R.D. 535, 545 (D. Kan. 2006) (quoting *DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 680-81 (D. Kan. 2004)). The Belt Line respectfully asks that this Court find the same.

6

**II.     CSXT cannot claim to have answered interrogatories asking it to identify specific communications and acts when it admittedly did not identify either.**

After pretending to show how it fully answered interrogatories 3 and 4 in the first half of its brief, CSXT finally acknowledges in the second half that the documents contain, at best, indirect evidence of a conspiracy. CSXT begins by stating that, "It is well-established that direct evidence of conspiracy is 'extremely rare,' and that CSXT is entitled to rely on indirect evidence to support its claims." Opp. at 10. Next, it states that, "The documents cited by CSXT provide indirect evidence sufficient to permit the trier of fact to infer that NPBL conspired with NS to prevent CSXT from accessing on-dock rail at NIT." *Id.* It concludes, "Why NPBL does *not* want CSXT to cite this evidence in responding to interrogatories asking CSXT to identify the evidence supporting its claims, remains a mystery." *Id.* at 10-11 (emphasis in original).

That last statement, of course, exposes the fallacy of CSXT's argument. Interrogatories 3 and 4 do not ask CSXT "to identify the evidence supporting its claims." They ask CSXT to identify the specific communications and specific overt acts that CSXT contends form the basis for the alleged conspiracy. After all, CSXT is the party claiming that "NPBL and NS have had numerous communications in furtherance of this continuing conspiracy" for over a decade. ECF No. 201-1 at 6, 8. As a defendant in this lawsuit, the Belt Line is entitled to that information, if it exists.

It should not surprise CSXT that a plaintiff in an antitrust conspiracy case cannot hide behind indirect evidence when responding to an interrogatory asking for specific conspiratorial conduct. In *In re Rail Freight Surcharge Antitrust Litigation*, 281 F.R.D. 1 (D. D.C. 2011), CSXT itself was accused of conspiring with other railroads to fix the price of rail freight services through coordinated fuel surcharges. During discovery, CSXT propounded an interrogatory that asked plaintiffs to identify "each communication among or between any two or more entities or persons that plaintiffs contend, 'standing alone, itself constitutes an unlawful agreement.'" *Id.* at 3. The

7

plaintiffs opposed CSXT's motion to compel on the same grounds that CSXT does here. They argued that they were being asked to "sort their evidence into direct and circumstantial evidence," which they said they should not have to do because "the distinction between those two types of evidence is considered by courts to be meaningless." *Id.*

The court rejected their opposition and granted CSXT's motion, finding the request to be a legitimate contention interrogatory. As the court explained, "'Contention interrogatories' that ask a party what it contends or to state all the facts upon which it bases a contention are perfectly legitimate." *Id.* It read the interrogatory "to be demanding to know whether these plaintiffs are going to contend that they have evidence that there occurred a moment or moments in time when certain specified persons agreed to fuel surcharges in a manner that in itself was a conspiracy that violated the antitrust law." *Id.* at 4. It then held that, "If plaintiffs so contend, they must say who those persons were and when those agreements occurred." *Id.* "On the other hand," it continued, "*if plaintiffs do not so contend and intend instead to rely on evidence from which such an agreement can be inferred, they must say so in response and that will be the end of the matter.*" *Id.* (emphasis added). [2]

The Belt Line's interrogatories are no different, and CSXT should be ordered to answer them accordingly. If CSXT contends that there are specific communications between the Belt Line and NS, and specific overt acts by the Belt Line, that form the basis for the alleged conspiracy,

---

[2] In fact, in the one case that CSXT relies on to argue that its answers are sufficient, *In re Cathode Ray Tube (Crt) Antitrust Litigation*, 2014 WL 12647877 (N.D. Cal. Aug. 20, 2014), the court noted that the disputed interrogatories and different discovery posture made it distinguishable from *In re Rail Freight Surcharge*, and hence distinguishable from this case as well. *See id.* at *6 ("The first interrogatory in *Rail Freight Surcharges* analogous to those on which defendants move here asked for each communication that plaintiffs contended constitutes an unlawful agreement…. Here by contrast, defendants have not been stiffed but have been furnished lengthy lists of meetings and communications from which plaintiffs plan to mine proof of a conspiracy.") No such meetings or communications have been identified by CSXT in this case.

8

it must identify those communications and acts. On the other hand, if CSXT cannot identify specific communications and acts, and instead intends to rely on indirect evidence to infer a conspiracy, it must say so in its answer. The rules of discovery do not change simply because CSXT is now a plaintiff in a conspiracy case, as opposed to a defendant.

## Conclusion

WHEREFORE, the Belt Line moves this Court to strike CSXT's current answers to interrogatories 3 and 4 and compel CSXT to provide fully responsive answers. If CSXT contends that there are specific conspiratorial communications and acts, it must identify them and answer all parts of the interrogatories. If CSXT cannot identify specific conspiratorial communications and acts, it must say so in its answer. The Belt Line also respectfully requests that the Court award the Belt Line its fees incurred in this matter and deny CSXT's request for fees.

Dated: August 20, 2020

**NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY**

By: _____/s/ W. Ryan Snow_____

James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
David C. Hartnett, VSB No. 80452
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
dhartnett@cwm-law.com
*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

**CERTIFICATE OF SERVICE**

   I hereby certify that on this 20th day of August 2020, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Eastern District of Virginia, Norfolk Division, using the electronic case filing system of the court. The electronic case filing system will send a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

                     */s/ W. Ryan Snow*
                   W. Ryan Snow, VSB No. 47423
                   CRENSHAW, WARE & MARTIN, P.L.C.
                   150 W. Main Street, Suite 1500
                   Norfolk, Virginia 23510
                   Telephone: (757) 623-3000
                   Facsimile: (757) 623-5735
                   wrsnow@cwm-law.com
                   *Attorney for Norfolk and Portsmouth*
                   *Belt Line Railroad Company*