**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| CSX TRANSPORTATION, INC., )<br>individually and on behalf of NORFOLK )<br>& PORTSMOUTH BELT LINE )<br>RAILROAD COMPANY, )<br>                                       *Plaintiff*, )<br>v. )<br>NORFOLK SOUTHERN RAILWAY )<br>COMPANY, *et al.*, )<br>                                       *Defendants*. ) | No. 2:18-cv-530-MSD-LRL |

**DEFENDANT NORFOLK SOUTHERN RAILWAY COMPANY'S
OBJECTION TO MAGISTRATE JUDGE'S NON-DISPOSITIVE ORDER (ECF No. 237)**

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure and Rules 72 and 7(F) of the Local Rules of the U.S. District Court for the Eastern District of Virginia, Defendant Norfolk Southern Railway Company ("NSR"), by counsel, respectfully objects to the non-dispositive Order entered by the Magistrate Judge dated September 4, 2020 (ECF No. 237) (the "Order") (attached as **Exhibit A**) granting Plaintiff CSX Transportation, Inc.'s ("CSXT") Motion to Reopen and Compel Depositions (ECF Nos. 203 & 204) (the "Motion to Reopen").

**INTRODUCTION**

CSXT's Complaint alleges that Defendants NSR and Norfolk and Portsmouth Belt Line Railroad ("NPBL") conspired and acted in violation of federal antitrust and state laws to block CSXT from having rail access to Norfolk International Terminal ("NIT"). This is a significant and complex case. CSXT seeks wide-ranging equitable relief to restructure the corporate governance of NPBL, and a very large sum as damages.

Since the Fall of 2019, the parties have engaged in extensive discovery efforts, including the collective production of many thousands of documents. NSR makes this Objection to an Order of the Magistrate Judge allowing CSXT additional depositions more than five months after its fact discovery has closed. Although the parties' briefing on CSXT's Motion to Reopen focused on the extensive back and forth of the discovery process, this Court does not need to wade into that process to decide the Objection because the Magistrate Judge's decision was premised solely on something else: the Magistrate Judge's misinterpretation of a brief that NSR filed on January 27, 2020 (ECF No. 111) (the "January Brief") (attached as **Exhibit B**) relating to a different discovery motion.

According to the Magistrate Judge, NSR represented in its January Brief that it would make a "fulsome" production by February 10 as to *all* of CSXT's document requests, including CSXT's Second Requests for Production of Documents, which CSXT had served less than three weeks earlier on January 9, 2020. Transcript of September 4, 2020 Proceedings at p. 4 (ECF No. ) (cited as ("Trans. at ___") (attached as **Exhibit C**). However, NSR produced documents later in February and into March in a rolling production, which, in the view of the Magistrate Judge, constituted breaking that promise. In actuality, NSR's January Brief stated:

> NSR expects to substantially complete its *production* in response to CSXT's *First Requests* for Production of Documents by February 7. NSR just served its objections to CSXT's *Second Requests* for Production of Documents on January 24, and its *responses* are not due until February 10.

January Brief at 2 (emphasis added). In other words, NSR did not state (or even infer) that it would complete its *production* in response to CSXT's Second Requests for Production of Documents by February 10. Nor did NSR promise any specific time for completion of production in response to the Second Requests for Production. As disclosed, NSR had just served its objections to the requests, which had not been resolved, and the parties were negotiating search terms that NSR

2

would use for purposes of the January 9 requests, and which CSXT also agreed to use in producing documents in response to similar document requests previously propounded by NSR.

Based on the Magistrate Judge's belief that NSR misrepresented the status of discovery in its January Brief, the Magistrate Judge found the January Brief provided good cause to grant CSXT's Motion to Reopen and allow CSXT to re-depose two NSR witnesses and depose two other NSR witnesses, without any limitations as to the time or scope of the depositions.

The Magistrate Judge's misinterpretation of NSR's January Brief as containing a promise of complete production in response to all of CSXT's requests – both the First Requests for Production *and the Second Requests for Production* – on any particular timetable such as February 10 is belied by the brief itself. The January Brief simply does not say, nor is it a fair reading of the Brief that it implicitly contains, any such promise. There is nothing in the January Brief that justifies granting CSXT's Motion to Reopen or the Magistrate Judge's decision to award CSXT's attorneys' fees associated with the Motion. Accordingly, the Order should be set aside.

## PROCEDURAL BACKGROUND

### I.     CSXT's Motion to Reopen

On July 24, 2020, over four months after the close of its fact discovery period, CSXT filed its Motion to Reopen seeking to reopen the depositions of NSR employees Jeff Heller and Michael McClellan and to depose Robert Martinez and Cary Booth. CSXT argued that there was good cause to allow the depositions because NSR made substantial document productions on February 28 and March 10. *See* Motion to Reopen at 5-6.

CSXT's Motion to Reopen initially acknowledged what NSR had stated in its January Brief; that is, NSR "'expect[ed] to substantially complete its production in response to CSXT's *First* Requests for Production of Documents by February 7.'" *Id*. at 4 (emphasis added) (quoting January Brief at 2). Notwithstanding this statement, CSXT then misrepresented what NSR said

3

on page 2 of its January Brief: "In total, NS produced more than 210,000 pages after the date by which it represented that it 'expect[ed] to substantially complete *its production' in this case*. ECF No. 111 at 2." *Id*. at 5-6 (emphasis added); 9 ("NS insisted that it would substantially complete *its productions* by February 7.") (emphasis added).

NSR's Brief in Opposition to CSXT's Motion to Reopen (ECF No. 215) (the "Opposition"),[1] however, called out this misstatement of the record, providing what it had *actually* stated in its January Brief, rather than how CSXT's had characterized it:

> Central to CSXT's Motion is its erroneous and misleading claim that NSR failed to deliver on its promise that it would "substantially complete its production in response to **CSXT's First Requests for Production of Documents** by February 7." ECF No. 111, at 2 (emphasis added). In fact, NSR followed through on that promise, producing over ninety-one percent (91%) of the documents responsive to CSXT's First Requests on or before February 7, 2020.

ECF No. 215 at 2.[2] NSR pointed out that NSR did exactly what it said it would do. By February 7, NSR's production in response to CSXT's First Requests for Production was substantially complete, with NSR having produced 91 percent of the documents that hit on the search terms proposed by NSR and agreed to by CSXT. NSR also served its responses to the Second Requests for Production on February 10, as promised. NSR also explained that its rolling productions on

---

[1] Although NSR opposed the Motion to Reopen, in the spirit of compromise, NSR's Opposition reiterated its offer in conferral that CSXT take an additional 30(b)(6) deposition related to the documents that CSXT claimed were not timely produced.

[2] CSXT attached as Exhibit 7 to its Emergency Motion a January 10, 2020 letter from NSR's counsel to counsel for CSXT, which addressed the timing of NSR's productions. It stated:

> As your letter states, the parties need to reach agreement, if possible, on additional search terms, which we hope will occur in short order. Further, CSXT served NSR with another set of document requests just yesterday, which we are reviewing. As a result, **we cannot provide an anticipated time frame of substantial completion of our document production at this time**. Once the search term issues are resolved[,] and we have a better idea of our responses to CSXT's latest document requests, we will provide you with an anticipated production schedule, to include a proposed time frame of substantial completion of our document production.

Emergency Motion, Ex. 7 at 1 (emphasis added).

February 28 and March 10 were the result of using additional search terms that NSR proposed in response to CSXT's *Second* Requests for Production, which CSXT served on January 9.[3] NSR proposed those additional search terms on January 17, but CSXT did not agree to any of them – for over a month – until February 20. *Id*. Following that agreement on February 20, NSR was able to start producing documents within eight days and to complete that production within 19 days. *Id*. at 1, 5-6.

Confronted with facts as laid out by NSR in its Opposition, CSXT's Reply in support of its Motion to Reopen (ECF No. 222) tried to walk back its earlier misrepresentation of what was said in NSR's January Brief. It stated: "NS told CSXT and this Court that it would 'substantially complete' its production in response to [CSXT's first set of document requests] by February 7, 2020." *Id*. at 1. In other words, CSXT effectively admitted that its opening claim that NSR had promised full production by February 7 was in fact simply incorrect. Nevertheless, CSXT stuck to its guns, arguing that some of the documents that NSR produced after February 7, which were covered by the additional search terms created in response to CSXT's Second Requests for Production, were also responsive to its First Requests for Production and should have been produced earlier.[4] It also pivoted to the main thrust of its Motion to Reopen: the sheer size of NSR's substantial productions on February 28 and March 10 in response to the Second Requests

---

[3] NSR initially developed the search terms for CSXT to use in response to NSR's document requests and during the January 3, 2020 conferral, NSR agreed to use any of the proposed terms that CSXT agreed to as part of NSR's document production.

[4] *See* ECF No. 222 at 5-6. To be clear, some of the 39 requests in CSXT's second document requests sought documents that were duplicative in part to information responsive to CSXT's first document requests. But NSR's productions in response to the first document requests were based on the agreed-upon search terms that NSR proposed to use for purposes of identifying documents responsive to those first requests, whereas NSR's productions in response to CSXT's second document requests were based on the search terms that NSR proposed to use for purposes of identifying documents responsive to the second requests. CSXT did not agree to these search terms until February 20.

5

for Production. *Id*. at 2 ("What matters is that NS produced **hundreds of thousands** of documents [sic] *after* CSXT deposed NS's witnesses, within days of (and after) the close of CSXT's discovery period.") (emphasis in original).[5]

## II. The Hearing on CSXT's Motion to Reopen and the Magistrate Judge's Ruling.

The Motion to Reopen was referred to the Magistrate Judge for decision. The Magistrate Judge convened a remote Zoom hearing on September 4, 2020 and heard argument from counsel. The Magistrate Judge focused on what was said in NSR's January Brief.

He first cited to NSR's statement on page 5 of the January Brief, which dealt specifically with CSXT's concerns regarding "whether NSR's search terms, which were proposed on November 26, 2019 and updated on January 17, 2020, will sufficiently capture NSR's communications with its customers":

> As to the first issue, NSR has advised CSXT that NSR's search terms as updated are sufficiently broad to capture communications between NSR and its customers. ***CSXT has not proposed additional search terms to NSR to address the concern raised herein, nor has CSXT raised any issue with NSR's productions to date.*** To the contrary, the parties have dealt with concerns about the other's search terms by offering to revisit the issue if the party's production appears lacking, which is exactly what NSR has suggested to CSXT about its concerns regarding NSR's communications with its customers. ***In short, NSR has produced, and will continue to produce, responsive, not privileged ESI that results from running agreed-upon search terms against ESI collected from agreed-upon custodians, which includes communications with its customers.*** Hence, this purported dispute is not a dispute at all, and not a basis to extend CSXT's export report deadline (or any other deadline).

*Id*. at 5. (emphasis added). The Magistrate Judge stated that this passage "tells me that [NSR was] saying we're not letting the search terms stand in the way of our document production and we are going full steam ahead with this production." Trans. at 39.

---

[5] NSR did not produce "hundreds of thousands" of documents but rather approximately 30,000 documents.

6

But that is not what NSR said. NSR's statement went to NSR's production of communications with customers responsive to CSXT's *First* Requests for Production and made the point that NSR used search terms designed to capture those communications in response to the *First* Requests for Production. CSXT did not propose additional terms directed at capturing those communications nor did CSXT raise any issues with the content of NSR's productions of responsive documents to date. Therefore, while CSXT contended that NSR should have produced more documents in response to the First Requests for Production, CSXT was well aware that the productions made by both parties are based on search terms, and there was no actual dispute in terms of objections to the terms used nor were additional terms proposed by CSXT to target NSR's communications as requested by the *First* Requests for Production.

> The Magistrate Judge then focused on the following passage on page 2 of the January Brief:
>
> NSR expects to substantially complete its production in response to CSXT's First Requests for Production of Documents by February 7. NSR just served its objections to CSXT's Second Request for Production of Documents on January 24, and its responses are not due until February 10.

*Id*. at 2. The Magistrate Judge asked NSR's counsel: "was the intent of that statement to give the Court the impression that the documents would be responded to, documents would be provided, and a fulsome response provided on February 10." Trans. at 40. NSR's counsel responded "[n]o" because NSR did not state, or even infer, that in its January Brief. *Id*. Yet, "the impression that was left with [the Magistrate Judge] was that discovery would be provided by February the 10th." Trans. at 41. Basically, the Magistrate Judge accepted as "exactly right" the position taken in CSXT's opening brief that such a promise had been made, *even though CSXT itself walked back that claim in its reply brief.*

7

The Magistrate Judge further stated that from the January Brief he had the "impressions that discovery would be sufficiently completed by Norfolk Southern so that CSX didn't get an extension." *Id*. at 42. Ultimately, the Magistrate Judge ruled:

> I'm going to find that the representations made by Norfolk Southern back in January are such that an agreement on search terms and the ESI order did not impact, according to what they said, did not impact their ability to produce those documents and they should have been produced sooner than they were, and because of that CSX has established good cause to reopen the depositions of Mr. Heller and Mr. McClellan and to take the depositions of Mr. Booth and Mr. Martinez.

*Id*. at 47.  His misinterpretation of the January Brief also led to him inviting CSX to file a motion to recover attorney's fees and reasonable expenses associated with pursuing its Motion to Reopen. *Id*.  Thereafter, the Magistrate entered the Order, memorializing his ruling.  *See* ECF No. 237. NSR objects to this Order.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 72(a), a "district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law."  Under Local Civil Rule 72, an objection to a magistrate judge's order on a non-dispositive matter "shall be considered a motion and is subject to briefing and notice requirements" of Local Rule 7.

## **ARGUMENT**

This Objection does not ask the District Court to wade into the complex chronology of document productions in this case, or even to decide whether CSXT might be entitled to the additional depositions based on the parties' contentions expressed to the Magistrate Judge about whether relief would be appropriate under the totality of the discovery history.  This Objection is narrowly focused on the only reason the Magistrate Judge gave for his Order.  As the hearing transcript reflects, the Magistrate Judge's Order is predicated solely on his misinterpretation of

8

NSR's January Brief as leaving an "impression" that NSR was promising a fulsome production in response to the Second Request for Production by a specific early deadline, apparently in the Magistrate Judge's view by February 10. The reason given renders the Order clearly erroneous.

**I.     The January Brief does not state that NSR's document production in this case would be complete, or substantially complete, by February 10.**

As explained above, the January Brief does not state that NSR's document production in this case would be complete, or substantially complete, by February 10 or any other early specific time. It stated that its *production* in response to CSXT's *First Requests for Production* would be substantially complete by February 7 (and it was). It further stated that its *responses* to CSXT's *Second Requests for Production* were due on February 10.

NSR's use of "responses," rather than "production," when referring to CSXT's second document requests in the January Brief was unambiguous, purposeful, and consistent with Fed. R. Civ. P. 34(B), which expressly describes a "response" to a request for production as being a written statement by the responding party to each specific request stating whether "inspection will be permitted" or whether documents would be withheld under an objection. The Rule expressly recognizes that a production does not have to accompany the written response. *Id*. ("The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response."). The Magistrate Judge clearly erred by interpreting NSR's statement as anything other than stating its intention to comply with Rule 34 by serving a written response on February 10, and there is no basis to claim that the statement was

9

misleading in any way. In sum, the Magistrate Judge's reading confuses the written *response* required to a request for production with the *actual production of documents*.

## II. NSR could not have stated in its January Brief when its document production in this case would be complete.

Nor was it a fair inference from what NSR said that NSR was promising a fulsome production in response to the Second Requests for Production on February 10, or any earier date, or at any particular date all. NSR disclosed that it had "just served its objections to CSXT's Second Request for Production of Documents on January 24, and its responses are not due until February 10" – clearly relaying that efforts to respond to the Second Request for Production were in an early stage. Indeed, NSR specifically explained that it had not provided to CSXT a date by which its entire production would be substantially completed because of the recently served second document requests. See January Brief at 5 n.1. Even CSXT had explicitly acknowledged that the parties were in the middle of negotiating additional search terms, which, as stated, would drive their respective and mutual document productions. *See* ECF No. 113 at 5 ("CSXT has proposed that the parties search custodial ESI using geographic search terms tailored to a narrower universe of ports.").

Meanwhile, as also disclosed, production was not yet complete at the time of the brief for the First Requests for Production served in October, and it was unreasonable to think production in response to the 39 additional requests contained in the Second Requests for Production could possibly be complete within 30 days of the initial service. The Magistrate Judge's interpretation also is belied by the fact that the ESI Order and the parties acknowledged that they were producing documents on a rolling basis. *See, e.g.*, ECF No. 107 (CSXT acknowledging that "the ESI Order contemplates the production of documents on a rolling basis"). This is a recognition of how document production works in a complex case involving the production of significant ESI targeted

10

by search terms. In sum, NSR opposed the Emergency Motion not because NSR's ability to make an early production mooted CSXT's concerns, but rather because any issues were of CSXT's own making -- the late date of their request and slowness in agreeing to search terms.

NSR did not know, and did not anticipate, that CSXT would not agree to any of the search terms NSR proposed until February 20, 24 days after NSR filed its January Brief and 34 days after NSR proposed them on January 17. It was this delay that resulted in NSR making rolling productions on February 28 and March 10. The productions were larger than NSR's prior productions in response to CSXT's First Requests because the additional search terms that CSXT agreed to on February 20 were broader than the agreed-upon search terms targeted at CSXT's First Document Requests. These broader terms yielded a larger volume of documents with "hits," which NSR diligently reviewed and promptly produced.

Now, CSXT argued to the Magistrate Judge that NSR should have made these larger document productions earlier regardless of the lack of agreement on search terms. As with most document-intensive cases, there is an extensive and complex history here of requests for production, formal objections, formal responses to requests, search term testing, disclosures of proposed search terms, negotiations, agreement and non-agreement to search terms, and privilege reviews and efforts to cull millions of pages of documents for production of responsive documents. NSR is not asking this Court to wade into adjudicating fault in that process. CSXT also argued that it should be granted more time regardless of fault in the timing of productions. The role of these witnesses in the case is not trivial, due to the pandemic-driven stays time is not of the essence, and this case is complex and significant. Nor is NSR asking the District Court to weigh in on that argument. Either of these arguments could have carried the day with the Magistrate Judge and NSR, while disagreeing with such a ruling, likely would not have objected. However, the

11

Magistrate Judge's ruling was premised on an attack on the candor of counsel in the January Brief, and opens the door to further litigation over an invited petition for attorneys' fees and costs. NSR submits the reason given for the Magistrate Judge's ruling is wholly unwarranted. This objection is necessary, from NSR's view, to clear the air and forestall side-show litigation over fees.

In sum, the Magistrate Judge's interpretation of the January Brief was inaccurate, unreasonable, and did not justify calling into question the intent of NSR's counsel. Certainly, nothing here warrants the express invitation that the Magistrate Judge extended to CSXT to seek attorneys' fees. Therefore, his Order—which relies exclusively on his misinterpretation—is clearly erroneous and must be set aside.

## CONCLUSION

For the foregoing reasons, NSR objects to the Order dated September 4, 2020, and entered at ECF No. 237, and asks that the Order be set aside in its entirety without prejudice.

Date: September 11, 2020              Respectfully submitted,

**NORFOLK SOUTHERN RAILWAY COMPANY**

/s/ Alan D. Wingfield
Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
Massie P. Cooper (VSB No. 82510)
TROUTMAN PEPPER HAMILTON SANDERS, LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-6061
Email: alan.wingfield@troutman.com
Email: michael.lacy@troutman.com
Email: massie.cooper@troutman.com

John C. Lynch (VSB No. 39267)
Kathleen M. Knudsen (VSB No. 90845)
TROUTMAN PEPPER HAMILTON SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462

Telephone: (757) 687-7759
Facsimile: (757) 687-7510
Email: john.lynch@troutman.com
Email: Kathleen.knudsen@troutman.com

Monica McCarroll (VSB No. 45622)
REDGRAVE LLP
14555 Avion Parkway, Suite 275
Chantilly, VA 20151
Telephone: (703) 592-1155
Facsimile: (703) 230-9859
Email: mmccarroll@redgravellp.com

Tara Lee Reinhart
Thomas Robert Gentry
John R. Thornburgh, II
SKADDEN ARPS
1440 New York Avenue, N.W.
Washington, D.c. 20005
Tara.reinhart@skadden.com
Thomas.gentry@skadden.com
John.thornburgh@skadden.com

*Counsel for Defendant Norfolk Southern Railway Company*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on September 11, 2020, I electronically filed a copy of the foregoing with the Clerk of Court using the CM/ECF system, which sent a notification of such filing (NEF) to the registered participants as identified on the NEF to receive electronic service, including:

Robert W. McFarland, Esq.
Benjamin L. Hatch, Esq.
E. Rebecca Gantt, Esq.
McGuireWoods LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Telephone: (757) 640-3716
Facsimile: (757) 640-3930
rmcfarland@mcguirewoods.com
bhatch@mcguirewoods.com
rgantt@mcguirewoods.com

*Attorneys for CSX Transportation, Inc.*

James L. Chapman, IV, Esq.
W. Ryan Snow, Esq.
Darius K. Davenport, Esq.
David C. Hartnett, Esq.
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com

*Attorneys for Norfolk and Portsmouth Belt*
*Line Railroad Company*

/s/Alan D. Wingfield
Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
Massie P. Cooper (VSB No. 82510)
TROUTMAN PEPPER HAMILTON SANDERS, LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-6061
Email: alan.wingfield@troutman.com
Email: michael.lacy@troutman.com
Email: massie.cooper@troutman.com