**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

CSX TRANSPORTATION, INC.,
individually and on behalf of NORFOLK
& PORTSMOUTH BELT LINE
RAILROAD COMPANY,

    Plaintiff,

v.           Civil Action No. 2:18-cv-530-MSD-LRL

NORFOLK SOUTHERN RAILWAY
COMPANY, *et al.*,

    Defendants.

            /

**CSX TRANSPORTATION INC.'S OPPOSITION TO NSR'S OBJECTION TO JUDGE
LEONARD'S ORDER GRANTING CSXT'S MOTION TO COMPEL DEPOSITIONS**

   Plaintiff CSX Transportation, Inc. ("CSXT"), by counsel, states as follows in opposition
to Defendant Norfolk Southern Railway Company's objection ("Objection") (ECF No. 240) to
Magistrate Judge Leonard's September 4, 2020 Order ("Order") (ECF No. 237) granting CSXT's
Motion to Reopen and Compel Depositions ("Motion") (ECF No. 203):

**INTRODUCTION**

   After Defendant Norfolk Southern Railway Company ("NSR") produced the majority of
its responsive documents at the tail end of CSXT's discovery period, Magistrate Judge Leonard
granted CSXT's request to depose—or re-depose—a limited number of NSR witnesses.  NSR now
challenges that decision.  NSR admits (as it must) that the record contains ample support for a
ruling in CSXT's favor, but complains about some of the reasoning Judge Leonard articulated in
support of his ruling.  It insists this Court need not delve into the details of discovery to rule in its
favor; however, the record makes clear that those details are squarely at issue here, and that Judge

1

Leonard considered them carefully in fashioning his ruling.  Under Rule 72, NSR cannot simply quibble with Judge Leonard's rationale—it must demonstrate that his decision was clearly erroneous in light of the record as a whole.  It has not come close to doing so.  Because Judge Leonard's ruling was correct, appropriate, and fully supported by the record in all respects, this Court should overrule NSR's Objection and affirm the Order in its entirety.

CSXT filed this action in October 2018 to challenge the actions of NSR and the Norfolk & Portsmouth Belt Line Railroad Company ("NPBL") to monopolize and exclude competition for on-dock rail access at Norfolk International Terminal ("NIT").  In January 2020, after NSR failed to timely produce critical documents and data, CSXT sought a brief extension of its discovery period.  In opposing that request, NSR took the position that CSXT's requested extension was unnecessary because it would "substantially complete" productions in response to CSXT's First RFPs by February 7, and it would "respond" to CSXT's Second RFPs by February 10.  *See* ECF No. 111 at 2 (hereinafter, "January Brief").  Based on those representations, Judge Leonard denied CSXT's request for an extension on February 5, 2020.  *See* ECF No. 118.

Though NSR takes great pains to recast its position now, the reality is that NSR flatly misrepresented the status and scope of its productions in the January Brief.  Indeed, NSR produced *over 210,000 pages*—more than two-thirds of its total production in this case—*after* its proffered "substantial completion" deadline.  By the time NSR made those belated productions, CSXT had already noticed, scheduled, prepared for, and taken nearly all of its depositions.  CSXT thus moved to compel or re-open the depositions of four NSR witnesses.

Judge Leonard granted CSXT's Motion, finding that some of NSR's late-produced documents were highly relevant and that, based on its earlier representations, NSR "should have produced [those documents] sooner than they were."  He ordered the parties to complete the

depositions within sixty days, by video if necessary, and directed CSXT to file a motion for attorneys' fees.

NSR argues that Judge Leonard's ruling is clearly erroneous because it is based "solely" on his "misinterpretation" of its January Brief.  ECF No. 240 at 2.  This argument fails for several reasons.  First, Judge Leonard did *not* premise his ruling "solely" on NSR's January filing—he also held that NSR's belated productions contained "particularly germane" documents, and that CSXT was "entitled to depose those folks who are involved in those documents in order to find out the story behind them."  ECF No. 240 at 47:8-11.  NSR cannot simply ignore these aspects of Judge Leonard's ruling because it would prefer to raise a different issue with the Court.  Second, Judge Leonard did not err—much less *clearly* err—in his interpretation of NSR's January Brief, despite NSR's efforts to recast that filing today.  Because Judge Leonard's Order is amply grounded in the record, NSR's Objection should be overruled and Judge Leonard's decision affirmed in its entirety.

## **RELEVANT BACKGROUND**

NSR's Objection omits any discussion of the parties' discovery negotiations.  According to NSR, the Court need not concern itself with this history, because Judge Leonard's decision was based "solely" on his "misinterpretation" of NSR's January Brief.  *See* ECF No. 240 at 2; *see also id.* at 8 ("This Objection does not ask the District Court to wade into the complex chronology of document productions in this case, or even to decide whether CSXT might be entitled to the additional depositions based on the parties' contentions expressed to the Magistrate Judge about whether relief would be appropriate under the totality of the discovery history.").

As explained below, Judge Leonard's ruling was *not* based "solely" on his reading of NSR's January Brief.  Moreover, that filing was made in opposition to CSXT's emergency motion

to extend its discovery period.  Judge Leonard's "impression" was thus necessarily informed by the context surrounding that motion.  In deciding whether Judge Leonard's ruling was clearly erroneous, the Court must consider this full record.  *See Tire Eng'g & Distrib., LLC v. Al Dobowi Ltd.*, No. 1:09CV1217, 2012 WL 12905171, at *2 (E.D. Va. Apr. 12, 2012).

## I.     CSXT's Complaint & the Parties' Discovery Negotiations.

CSXT filed its Complaint in October 2018.  *See* ECF No. 1.  The Court denied Defendants' motions to dismiss in September 2019, *see* ECF No. 66, and discovery began in November 2019, *see* ECF No. 72 at 2.  CSXT's fact discovery period was originally scheduled to close on March 3, 2020.  *See* ECF No. 78 at 2.

CSXT served its first Requests for Production ("RFPs") to NSR on October 23, 2019, seeking, among other things, documents related to "East Coast Ports" located outside Virginia.[1] *See* ECF No. 204-1.  NSR also served discovery requests in late October 2019.  CSXT served a second, smaller set of RFPs on January 9, 2020.  *See* ECF No. 204-3.

The Court entered the parties' agreed ESI Order on November 19, 2019.  *See* ECF No. 83. It provides that a producing party may "elect[ ] to use search terms to locate potentially responsive ESI," and that, if it does, "it shall disclose the search terms to the requesting Party."  *Id.* ¶ 3(g). The requesting party may then "request no more than twenty (20) additional terms to be used in connection with the electronic search."  *Id.*  The ESI Order contemplates that the parties will meet

---

[1] *See, e.g.*, ECF No. 204-1 at 15 (RFP 19, seeking "[d]ocuments sufficient to show switch rates at all East Coast Ports served by NS"); *id.* (RFP 20, seeking "[a]ll documents since 2007 reflecting or pertaining to any discussions or negotiations between NS and any actual or potential customer for whom NS or CSXT moves freight through any East Coast Port . . ."); *id.* at 17 (RFP 27, seeking "[a]ll documents related to NS's pricing strategies for any freight transportation by rail in and out of all East Coast Ports"); *id.* at 18 (RFP 29, seeking "[a]ll market studies . . . [for] any other East Coast Port as far as these documents also refer to NIT, PMT, or VIG"); *id.* at 19 (RFP 37, seeking "[a]ll documents containing or referencing historical or current data and information related to capacity . . . for NS and its competitors at . . . other East Coast Ports").

4

and confer about search terms "[i]f necessary . . . to avoid an unduly burdensome production," but it does not require the parties to reach a final agreement before beginning to review or produce responsive documents. *See id.*

In late November, the parties exchanged search terms as contemplated by the ESI Order. *See* ECF Nos. 215-2, 215-3. NSR acknowledged that its initial search terms targeted "only some of the discovery requests issued by CSXT to date," and represented that it "continue[d] to refine additional terms targeted at other discovery requests issued by CSXT, and [would] share those additional terms when they are ready." ECF No. 215-2 at 1.

The parties discussed search terms—including geographic search terms—many times over the next two months. *See, e.g.*, ECF No. 222-1 (Dec. 20, 2019 letter from Evans to McCarroll and Lacy, memorializing December 13 call about "port-related terms"). In early January, CSXT proposed mutually limiting production of certain ESI to Virginia ports only. *See* ECF No. 215-5 at 6 (Jan. 6, 2020 letter from Hatch to McCarroll and Lacy, memorializing January 3 call during which counsel discussed "limiting the geographical scope of the search terms applied to custodial ESI to certain Port of Virginia facilities . . ."). NSR ultimately rejected this proposal and instead insisted that the parties apply an expansive list of search terms for ports across North America. *See* ECF No. 215-6 (Jan. 17, 2020 email from McCarroll attaching proposed search terms).

By early January 2020, NSR had made only two rolling document productions, totaling approximately 2,000 pages. Given these paltry productions, CSXT had to identify and notice witnesses for deposition based on the information provided in NSR's initial disclosures and written discovery responses, which identified at least thirty current and former NSR personnel as individuals with relevant knowledge. *See* ECF No. 204-7 at 6-16.

5

## II.        CSXT's Emergency Motion & NS's Opposition.

CSXT's expert report was originally due on February 10, 2020.  *See* ECF No. 78.  By mid-January, NSR had produced *none* of the documents and data needed for CSXT's expert analysis.[2]  After NSR refused to agree to a reasonable extension, CSXT filed an emergency motion.  *See* ECF No. 107 at 10.  In it, CSXT described the parties' discovery negotiations—including over the ESI Order and search terms—that had apparently delayed NSR's productions.  *See id.* at 5-8, 11-13. CSXT argued that its requested extensions were necessary because NSR's limited productions hindered CSXT's expert analysis and also hampered its "ability to meaningfully prepare for and take fact witness depositions."  *Id.*; *see also id.* at 11 ("NS's failure to produce critical documents also prevents CSXT from proceeding with its party and fact witness depositions.").

In opposing CSXT's emergency motion, NSR disputed these points.  *See* ECF No. 111. NSR said that "the ESI Order was not delayed, nor has it delayed [NSR's] document production." *Id.* at 2.  It also insisted that "the parties' disputes about search terms" did *not* "necessitate the extension" sought by CSXT, because NSR "has produced and will continue to produce responsive non-privileged ESI that results from running agreed-upon search terms against ESI collected from agreed-upon custodians."  *Id.* at 5.  NSR represented that it "expect[ed] to substantially complete its production in response to CSXT's First Requests for Production of Documents by February 7." It also represented that it had "just served its objections to CSXT's Second Requests for Production on January 24, and its responses [were] not due until February 10."  *Id.* at 2.

Based on the representations in NSR's January Brief, Judge Leonard granted a 15-day

---

[2] To complete his report, CSXT's expert needed to review and analyze, at a minimum, documents and data responsive to CSXT's RFPs No. 24, 26, 27, and 29.  *See* ECF No. 107-11.  Several of these requests, which CSXT served in October 2019, sought documents pertaining to "East Coast Ports" located outside Virginia.  *See supra* at n.1.

extension to CSXT's expert report deadline, but denied CSXT's request to extend its March 3 fact discovery deadline.  *See* ECF No. 118.

### III.    NSR's Belated Productions.

Between January 24 and February 7, NSR made four productions totalling fewer than 35,000 pages.  Then, on February 7—the date by which NSR said it would substantially complete its production in response to CSXT's First RFPs—NSR produced another 68,000 pages.  With only a few weeks remaining in its discovery period, and based on NSR's representation that it had substantially completed its productions in response to the vast majority of CSXT's requests, CSXT began deposing Defendants' current and former employees one week later, on February 14.[3]

Then, on February 28, after CSXT had taken 11 of its 14 noticed depositions and filed its expert report, NSR nearly *doubled* the size of its prior productions, dropping approximately 95,000 pages of documents on CSXT.  And, on March 10, 2020—the day of CSXT's last deposition and *after* CSXT's fact discovery period closed[4]—NSR made its largest production to date, transmitting another 106,000 pages of documents to CSXT.

Put differently, contrary to its representations to the Court and counsel, NSR completed only *one-third* of its production by February 7.  It produced another third on February 28—three weeks after its substantial completion date, two weeks after CSXT began depositions, three days after CSXT submitted its expert report, and four days before CSXT's discovery cutoff.  It produced the final third on March 10—more than a month after the date by which it said it would substantially complete its productions in response to CSXT's First RFPs, after CSXT had taken

---

[3] CSXT deposed 14 defense witnesses between February 14 and March 10.

[4] CSXT originally noticed this deposition for February 28, within its discovery period.  After scheduling conflicts arose, the parties agreed to reschedule the deposition for March 10.

*all* of its depositions, and after CSXT's discovery period had closed.

**IV.    The Joint Stay and the Parties' Meet-and-Confer Efforts.**

On March 17, 2020—one week after NSR made its final production—the parties jointly moved to stay this action due to COVID-19. *See* ECF No. 157. As the pandemic has continued, the stay has been extended, most recently through August 19, 2020.[5] *See* ECF Nos. 196, 233. The parties have continued "supplementations, conferrals, and motions practice" not requiring "in-person activity" during this time. *Id.*

Because NSR's belated productions materially and adversely affected it, CSXT sought to depose or re-depose certain NSR witnesses involved in critical, late-produced documents. *See* ECF No. 204-4. NSR rejected that proposal, offering only "a second corporate deposition of NSR on the documents produced after February 7," in exchange for NSR's ability to re-depose a CSXT witness. *See* ECF No. 204-5.

Remarkably, while refusing CSXT's reasonable request for additional discovery based on its own tardy productions, NSR has sought to expand its own discovery period. When the parties first jointly moved to stay this case, NSR had 7 days remaining before its expert report deadline and 11 business days remaining in its fact discovery period. *See* ECF No. 78 at 3. NSR now proposes "a minimum of four weeks" to complete its fact depositions, including at least one witness neither noticed nor scheduled for deposition at the time of the original stay. *See* ECF No. 204-5 at 2. And NSR then seeks *another* three weeks between the close of its discovery period and production of its expert report (*see id.*)—despite having now possessed CSXT's expert report for *months* longer than anticipated under the Court's original scheduling order. *See* ECF No. 78.

---

[5] On August 24, the parties submitted a joint status report outlining their respective positions on resuming the case and seeking a telephonic status conference with the Court. *See* ECF No. 232

V.      **CSXT's Motion to Compel.**

Having reached an impasse, CSXT filed the Motion, seeking to compel the depositions of four NSR witnesses.  *See* ECF Nos. 203, 204.  In its Opposition, NSR argued that CSXT had not shown "good cause" for its request, insisting it had complied with its proffered "substantial completion" deadline as to CSXT's First RFPs.  *Id.* at 7.  NSR claimed that CSXT did not seek documents related to "ports outside Virginia" until its *Second RFPs*, and that it thus could not have identified documents responsive to those requests until after the parties agreed on geographic search terms in late February 2020.[6]  *See* ECF No. 215 at 4-8.

On September 4, 2020, Judge Leonard held a hearing on CSXT's Motion.  *See* ECF No. 240-3.  At the hearing, Judge Leonard expressed "concerns about what was represented to the Court" in NSR's January Brief versus "what's being represented to the Court now."  *Id.* at 38:4-7; *see also id.* at 38:21-22 ("I want . . . this to be addressed.  Because I told you I have some concerns about representations that were made.").  Judge Leonard cited NSR's January representations that the parties' search term negotiations would *not* prevent it from producing responsive documents in early February.  *See id.* at 38:23-39:9.  As he explained:

> [Those representations told] me that you all were saying we're not letting the search terms stand in the way of our document production and we are going full steam ahead with this production.  But now I get the impression you're telling me that, in fact, the failure to agree on search terms did interfere with your production.  And I'm having a hard time reconciling those two representations several months apart.

*Id.* at 39:10-16.  When counsel for NS explained that "a full response to the second set of discovery . . . could have never been met until there was an agreement on the second set of search

---

[6] This argument is incorrect.  CSXT's First RFPs include multiple requests for documents related to "East Coast Ports," including those explicitly cited in CSXT's emergency motion.  *See* ECF No. 222 at 4; *see also supra* at 3 & n.1.  By NSR's own admission, it did not produce documents responsive to those requests until *after* February 7.  *See* ECF No. 215 at 2.

terms," *see id.* at 41:6-8, Judge Leonard continued:

> Well, how come nobody said that in [NSR's January Brief], when I'm trying to determine whether or not discovery should be extended, the deadline should be extended?  Why wasn't the Court advised of that?  Certainly the impression that was left with me was that discovery would be provided by February the 10th.
>
> ***
>
> [W]as there anything in this pleading that said we're going to produce what we can, but there may be difficulty complying with a second request for production because search terms haven't been agreed to, and therefore take that into consideration when determining whether you should extend the discovery deadline?  Because I think that would have been helpful for the Court when weighing the merits and equities of whether or not a party needs additional time for discovery.
>
> ***
>
> [T]his is one of those things, Mr. Lynch, where pointing the finger at the other side doesn't solve the problem, necessarily. . . . I have to tell you, I'm quite disappointed at the tenor of this brief that was filed in January and the arguments that are being made now as if this brief had never been filed.  Because I can tell you, Mr. McFarland is exactly right:  The Court relied on those representations and those impressions that discovery would be sufficiently completed by Norfolk Southern so that CSX didn't get an extension.  And it appears that wasn't exactly accurate.  And if I misinterpret[ed] it, I find my misunderstanding completely understandable.  Because that's certainly the way I read this pleading.  And I went back and read it and found it to be not entirely consistent with what's being represented now, and I have a problem with that.

*Id.* at 41:23-43:5.  At the end of the hearing, Judge Leonard granted CSXT's Motion, articulating his ruling as follows:

> Well, certainly some of these documents seem to be particularly germane to the issues in this case, and I think CSX is entitled to depose those folks who are involved in those documents in order to find out the story behind them.  So I'm going to grant CSX's motion.  I'm going to find that the representations made by Norfolk Southern back on January are such that agreement on search terms and the ESI order did not impact, according to what they said, . . . their ability to produce those documents and they should have produced them sooner than they were, and because of that, CSX has established good cause to reopen the depositions of Mr. Heller and Mr. McClellan and to take the depositions of Mr. Booth and Mr. Martinez.
>
> I'm also going to direct that CSX may file a motion to recover attorney's fees, reasonable expenses associated with pursuing this motion.  And of course Norfolk Southern will have an opportunity to respond.

*Id.* at 47:7-23.  Later that day, Judge Leonard issued a written order granting CSXT's Motion "[f]or the reasons stated on the record," directing the parties "to conduct the depositions in question within 60 days of the date of this order," and directing CSXT to "file any claim for reasonable expenses incurred in making their motion within 30 days."  ECF No. 237.

On September 11, NSR filed its Objection.  *See* ECF No. 240.

## LEGAL STANDARD

As NSR concedes, this Court's review of Judge Leonard's decision granting CSXT's non-dispositive motion is governed by Rule 72 of the Federal Rules of Civil Procedure.  *See* ECF No. 240 at 8.  Under that Rule, the Court "'must consider timely objections' to a magistrate judge's ruling on non-dispositive matters and must 'modify or set aside any part of the order that is clearly erroneous or is contrary to law.'"  *CertusView Techs., LLC v. S&N Locating Servs., LLC*, No. 2:13CV346, 2015 WL 13037421, at *2 (E.D. Va. Mar. 11, 2015) (Davis, J.) (citing Fed. R. Civ. P. 72).

NSR does not argue that Judge Leonard's ruling is contrary to law.  Instead, NSR pins its entire Objection on its argument that Judge Leonard's "impression" of the January Brief was "clearly erroneous."  *See* ECF No. 240 at 9, 12.  A finding is "clearly erroneous" only if the district court "is left with the definite and firm conviction that a mistake has been committed.'"  *CertusView*, 2015 WL 13037421, at *2.  "If a court is not firmly convicted that such an error has occurred, then the magistrate judge's order must be affirmed."  *Id.*; *see also Davis v. Comcast Corp., Inc.*, No. 1:14CV01513, 2014 WL 12663201, at *1 (E.D. Va. Dec. 19, 2014) ("The Fourth Circuit has held that the 'clearly erroneous' standard is deferential and that findings of fact should be affirmed unless the reviewing court's review of the entire record leaves the Court with the 'definite and firm conviction that a mistake has been made.'").

If a magistrate judge's finding "is plausible in light of the record viewed in its entirety," the Court "should not reverse [that] finding as clearly erroneous." *Tire Eng'g & Distrib.*, 2012 WL 12905171, at *2. "[T]his is so even if the reviewing court has become convinced that it would have decided the fact differently." *Id.* "In other words, where there are two permissible views of the evidence, the magistrate judge's choice between them cannot be clearly erroneous." *Id.*

As this Court has explained, "altering a magistrate judge's non-dispositive orders is *extremely difficult to justify*." *CertusView*, 2015 WL 13037421, at *2 (emphasis added); *see also Digital-Vending Servs., Int'l, LLC v. Univ. of Phoenix Inc.*, No. 2:09CV555, 2010 WL 11450510, at *3 (E.D. Va. Apr. 22, 2010) (explaining that Rule 72 "plainly presents a high legal hurdle" and requires "a strong showing" before a magistrate judge's decision can be set aside). This Court has referred a number of non-dispositive motions to Judge Leonard in this case, including CSXT's earlier emergency motion for an extension of its discovery period. The instant objection is the first time any party has raised any issue regarding Judge Leonard's rulings on any non-dispositive matter.

## ARGUMENT

### I.     Judge Leonard's Rulings are Correct and Amply Supported by the Record.

In its Objection, NSR contends that Judge Leonard's Order is clearly erroneous because it is "predicated *solely* on his misinterpretation of NSR's January Brief as leaving an 'impression' that NSR was promising a fulsome production in response to [CSXT's Second RFPs] by a specific early deadline, apparently in the Magistrate Judge's view by February 10." ECF No. 240 at 8-9 (emphasis added). Of course, it is Judge Leonard (not NSR) who is in the best position to articulate his "impression" of the January Brief—as he did at length on the record. *See* ECF No. 240-3 at 39:10-43:5.

12

Regardless, NSR's argument fails for a more straightforward reason: Judge Leonard's decision was *not* based "solely" on NSR's failure to complete its productions by February 10—or by any other particular date.  CSXT's Motion required Judge Leonard to decide whether there was "good cause" for the requested discovery.  *See* ECF No. 204 at 8-9 (explaining that, under Rule 16(b), a court can modify a scheduling order for "good cause" upon a showing of "diligence"); *see also Kinetic Concepts, Inc. v. ConvaTec, Inc.*, No. 1:08CV00918, 2010 U.S. Dist. LEXIS 40240, at *16 (M.D.N.C. Apr. 23, 2010) ("[T]he touchstone of 'good cause' under Rule 16(b) is diligence.").  At the hearing on CSXT's Motion, Judge Leonard ruled:

> Well, certainly some of these documents seem to be particularly germane to the issues in this case, and I think CSX is entitled to depose those folks who are involved in those documents in order to find out the story behind them.  So I'm going to grant CSX's motion.  I'm going to find that the representations made by Norfolk Southern back on January are such that agreement on search terms and the ESI order did not impact, according to what they said, . . . their ability to produce those documents and they should have produced them sooner than they were, and because of that, CSX has established good cause to reopen the depositions of Mr. Heller and Mr. McClellan and to take the depositions of Mr. Booth and Mr. Martinez.

ECF No. 240-3 at 47:7-19.  In other words, Judge Leonard found CSXT had established good cause to re-open and take the requested depositions because (1) some of NSR's late-produced documents were "particularly germane to the issues in this case," *and also* (2) given its earlier representations, NSR "should have produced [those documents] *sooner than they were*."  *Id.* (emphasis added).

NSR does not argue that Judge Leonard clearly erred in finding that documents in its belated productions were "particularly germane" to the litigation.  Nor could it reasonably do so. *See Tire Eng'g & Distrib.*, 2012 WL 12905171, at *2 (E.D. Va. Apr. 12, 2012) (explaining that "where there are two permissible views of the evidence, the magistrate judge's choice between them cannot be clearly erroneous"); *see also* ECF No. 208 at 12-16 (describing significant

documents).  NSR's late productions included dozens of highly relevant documents related to key

issues, including, for example, communications between NSR sales personnel and NS-appointed

members of the NPBL Board discussing specific actions Board members should take to limit

CSXT's access to NIT.[7]   As Judge Leonard found, "CSX is entitled to depose those folks who are

involved in those documents in order to find out the story behind them."  ECF No. 240-3 at 47:7-

19.

This finding is more than enough—standing alone—to support Judge Leonard's ruling that

good cause existed to grant CSXT's Motion.  Indeed, NSR itself *admits* that Judge Leonard could

properly grant the Motion on this basis.  *See* ECF No. 240 at 11 (acknowledging Judge Leonard

could rule based on CSXT's argument that "[t]he role of these witnesses [i.e., those involved in

the late-produced documents] is not trivial," and representing that, "NSR, while disagreeing with

such a ruling, likely would not have objected").

Under Rule 72, the Court must decide whether Judge Leonard's decision was clear error,

*not* whether it agrees with each and every reason Judge Leonard articulated for that ruling.  *See*

*Tire Eng'g & Distrib.*, 2012 WL 12905171, at *2 (explaining that a magistrate judge's decision is

not "clearly erroneous" as long as it "is plausible in light of the record viewed in its entirety," even

if the district court might have reached a different decision).  By NSR's own admission, Judge

Leonard's decision is rooted in a plausible interpretation of the record, including the fact that

NSR's late productions included a number of "particularly germane" documents.  The Court can,

and should, overrule NSR's Objection on this basis alone.

---

[7] Because NSR designated these documents as confidential under the parties' Protective Order,
CSXT filed its Memorandum and certain exhibits under seal.  *See* ECF No. 224 (order granting
motion to seal).  CSXT provided the Court with a copy of the unredacted Memorandum and
unsealed exhibits on July 29, 2020, as required by Local Rule 5.

## II. NSR's After-the-Fact Explanations Do Not Make Judge Leonard's "Impression" Clearly Erroneous or Eliminate the Prejudice to CSXT from its Late Productions.

Even had Judge Leonard's decision been premised "solely" on his "impression," based on NSR's January Brief, that NSR would complete productions by February 10, neither of the arguments proffered in NSR's Objection suggests that this impression was incorrect—let alone clearly erroneous and requiring reversal.

NSR first contends that Judge Leonard "clearly erred by interpreting NSR's statement as anything other than stating its intention to comply with Rule 34 by serving a written response on February 10." [8]  ECF No. 240 at 9.  According to NSR, it intentionally stated that its "responses" to CSXT's Second RFPs were due on February 10 because it had no plans to actually produce documents by that date.  *See id.*  In support, NSR points to Fed. R. Civ. P. 34(b)(2), which requires a party to "respond" to a request for production "in writing within 30 days after being served," but allows for the actual production of documents to take place "no later than the time for inspection specified in the request or another reasonable time specified in the response."

Notably, NSR's February 10 written responses do not specify any "reasonable time" by which it would complete its productions.  *See* NSR's Responses to CSXT's Second RFPs, attached as **Exhibit 1**.  Accordingly, under Rule 34(b)(2)(B), NSR was obligated to produce documents "no later than" the time "specified in [CSXT's] request"—which was February 10.[9]  Had NSR intended to "unambiguously" and "purposefully" signal in the January Brief that it would only serve written responses on February 10, as allowed by Rule 34, presumably it also would have unambiguously

---

[8] At the hearing on CSXT's Motion, Judge Leonard asked counsel who had authored its January Brief, since he had questions about representations made in that filing.  *See* ECF No. 240-3 at 37:15-19.  Counsel for NSR advised Judge Leonard that he was unaware who authored the filing.

[9] *See* ECF No. 240-3 at 6 (CSXT's Second RFPs, specifying "NSR shall respond to the following RFPs within thirty (30) days after service").

and purposefully specified in those written responses "another reasonable time" for completion of its productions, as required by the Rule.

Moreover, NSR's hyper-technical reading of Rule 34 does not render Judge Leonard's impression of its January Brief clearly erroneous.  In opposing CSXT's emergency motion, NSR argued that CSXT was not entitled to an extension of its discovery period—which all parties knew was March 3 under the then-existing schedule—because its productions were nearly complete. *See* ECF No. 111 at 2.  In this context, it was reasonable for Judge Leonard to assume that, had NSR envisioned any possible delays in its remaining productions, it would have explicitly said so. *See* ECF No. 240-3 at 41:23-42:5 (THE COURT: "[W]as there anything in [the January Brief] that said . . . there may be difficulty in complying with a second request for production because search terms haven't been agreed to . . . ?  Because I think that would have been helpful for the Court when weighing the merits and equities of whether or not a party needs additional time for discovery.").  It blinks reality to suggest that NSR intended to represent to Judge Leonard in its January Brief that no extension was warranted *while also* representing that it planned to produce a substantial number of documents to CSXT *after* February 10, within days of the close of CSXT's discovery period.

NSR also contends that it was "unreasonable" for Judge Leonard to infer from the January Brief that it would make a "fulsome production" to CSXT by any date certain, because the parties were still negotiating search terms at the time that brief was filed.  *See* ECF No. 240 at 10-11.  *But that is precisely the point*.  CSXT requested an extension based in part on the parties' ongoing negotiations over search terms, which it anticipated could significantly expand the scope of discovery.  *See* ECF No. 107 at 12; *see also id*. at 5-8, 11-13; ECF No. 113 at 3-5.  NSR vehemently *rejected* that argument in its January Brief, insisting that the parties' search term negotiations

16

would *not* cause delay.  *See* ECF 111 at 5 ("CSXT's Motion spends significant time arguing that the parties' disputes about search terms necessitate the extensions it seeks.  That is simply not true."); *id.* at 7 ("CSXT's reliance on the geographic search terms as justification for its request to extend the deadline for its expert report is without merit.").  Judge Leonard can hardly be faulted for taking NSR at its word in January—or for faulting NSR's abrupt about-face on this issue a few months later.

In its Objection, NSR tries to shift the blame to CSXT, arguing that it "did not know, and did not anticipate, that CSXT would not agree to any of the search terms that NSR proposed until February 20," and that "[i]t was this delay that resulted in NSR making rolling productions on February 28 and March 10."  ECF No. 240 at 11.  But NS cannot credibly feign ignorance over the burden imposed by its facially overbroad search terms.  *See* ECF No. 113 at 4-5 & Ex. A.  Nor can it reasonably pretend to have been unaware that CSXT needed significant time to review and assess those terms.  Indeed, CSXT flagged these very issues in its emergency motion, explaining that "simply testing [NSR's proposed geographic search terms] to engage in further conferral" would require CSXT "to spend several days running searches and analyzing the data."  ECF No. 107 at 12 n.2; *see also* ECF No. 113 at 4 & Ex. A (noting that NSR's proposed terms equated to *more than five thousand additional terms* when considered separately as required by the ESI Order, and explaining that, "[a]lthough CSXT continues to test these terms, it anticipates that they will yield a significant volume of documents that would increase the scope of its review and production far beyond what is proportional to the needs of the case").

NSR also makes the unsurprising observation that its belated productions were larger than its earlier ones "because the additional search terms that CSXT agreed to on February 20 were broader" than those applied in November 2019.  *Id.*  Of course, NSR itself conceived of and

17

proposed those reciprocal search terms in January, after rejecting CSXT's more limited set of geographic terms.[10]  In fact, NSR represented in its January Brief that it had already "extensive[ly] test[ed]" its proposed terms "to ensure they would return results both reasonable and proportional to the needs of the case."  ECF No. 111 at 6-7.  NSR thus presumably knew when it filed the January Brief that those terms would "yield[ ] a large volume of documents with 'hits,'" yet it raised no concerns about scope or timing in that filing.  ECF No. 240 at 11.  To the contrary, NSR specifically stated that search terms would *not* affect its ability to timely comply with its production obligations.

None of NSR's contrived excuses raises any legitimate question about Judge Leonard's ruling—much less suggests that his decision was clearly erroneous.  Moreover, even setting aside NSR's January Brief, NSR indisputably produced hundreds of thousands of pages of documents *after* CSXT deposed its witnesses, within days of (and after) the close of CSXT's discovery period.  No amount of diligence short of clairvoyance would have allowed CSXT to ask about these

---

[10] NSR continues to insist that its proposed geographic search terms were intended only to target documents responsive to CSXT's Second RFPs.  *See* ECF No. 240 at 2-3, 11.  But the record unequivocally shows that the parties' negotiation of geographic search terms predated those requests, and that NSR intended for its proposed terms to apply to *all* of the parties' requests, including those CSXT served in October 2019.  *See* ECF No. 222-1 (Dec. 20, 2019 letter from Evans to McCarroll and Lacy, memorializing December 13 call about "port-related terms"); ECF No. 215-6 (Jan. 17, 2020 email from McCarroll to counsel, "attaching NSR's proposed search terms to address certain concepts that have not been fully targeted in the search terms the parties have exchanged thus far, ***including the 'geographic limitations' that NSR and CSXT have been discussing during our last few meet and confers and related correspondence***" and rejecting CSXT's proposal that the parties limit their search of custodial ESI "to terms associated solely with the Port of Virginia facilities") (emphasis added); ECF No. 215-5 at 6 (Jan. 6, 2020 letter memorializing January 3 meet-and-confer, *nearly a week before CSXT served its Second RFPs*, during which CSXT proposed the geographic search term limitation rejected in NSR's January 17 email).  It is simply beyond question that, at the time the January Brief was filed, NSR knew and intended for its proposed geographic terms to be used to identify documents responsive to *all* of CSXT's RFPs, including those from CSXT's *First RFPs* specifically at issue in the emergency motion.  *See supra* at 5 & n.2.

documents during its depositions.  As Judge Leonard found, *see* ECF No. 240-3 at 47:7-19, these late-produced documents provide ample good cause for CSXT to depose (or re-depose) the NSR witnesses at issue, regardless of the post-hoc justifications that NSR now proffers.

This is even more true given the unique procedural posture of this case, with the original trial date cancelled due to the COVID-19 pandemic and any rescheduled trial date likely many months away.  As CSXT has explained, allowing more time for *all parties* to complete depositions is reasonable and appropriate, especially given the challenges the parties have faced—and no doubt will continue to face—related to COVID-19.  NSR should not be permitted to unilaterally benefit from the long stay in this action, particularly when its own delayed productions have significantly prejudiced CSXT.

### III.    Judge Leonard's Order on Fees is Appropriate.

Finally, NSR implies in its Objection that Judge Leonard *sua sponte* "invit[ed]" CSXT to file a motion to recover attorneys' fees and expenses incurred in pursuing its Motion.  *See, e.g.*, ECF No. 240 at 8.  But Judge Leonard's ruling on this issue was not out of the blue—CSXT asked the Court in its Motion to award attorneys' fees under Rule 37(a)(5), *see* ECF Nos. 203 at 1-2, 204 at 18, 222 at 11; and CSXT's counsel raised the issue of a fee award at the hearing, *see* ECF No. 240-3 at 46:9-11.

It is unclear whether NSR seeks to challenge Judge Leonard's decision on attorneys' fees.  To the extent that NSR does object on this basis, the issue is not ripe.  Judge Leonard has not yet awarded any fees to CSXT.  He merely directed CSXT to "file a motion to recover attorney's fees [and] reasonable expenses associated with pursuing [its] motion."  ECF No. 240-3 at 47:20-22; *see also* ECF No. 237 ("Furthermore, pursuant to Fed. R. Civ. P. 37(a)(5)(A), CSXT is **DIRECTED** to file any claim for reasonable expenses incurred in making their motion within 30

days of the date of this Order."). As Judge Leonard expressly stated, "Norfolk Southern will have an opportunity to respond" to that motion. ECF No. 240-3 at 47:22-23.

Further, there is nothing inappropriate about Judge Leonard entertaining a fee request under these circumstances. Under Rule 37(a)(5), "[u]pon the granting of a motion to compel, a court is generally *required* to impose costs and attorney's fees," unless, among other things, "the opposing party's nondisclosure, response, or objection was substantially justified" or "other circumstances make an award of expenses unjust." *See CertusView*, 2015 WL 13037421, at *2 (citing Fed. R. Civ. P. 37(a)(5)) (emphasis added). And, as this Court has held, "inconsistencies" in a party's representations in connection with a discovery dispute may justify an award of fees under this Rule. *See id.* at *4 (overruling objection to magistrate judge's award of fees, explaining that, "[i]n light of the inconsistency" between representations in a declaration submitted with a motion to compel and later deposition testimony, "the Court is *by no means* 'left with the definite and firm conviction that a mistake has been committed'") (emphasis in original). NSR's inconsistent representations as to the status of discovery, as well as its belated productions, have all come at expense to CSXT, including through CSXT being forced to file its Motion.

## CONCLUSION

For all these reasons, CSXT respectfully requests that the Court overrule NSR's Objection and affirm Judge Leonard's Order in its entirety.

Dated: September 25, 2020                    Respectfully submitted,


                                             CSX TRANSPORTATION, INC.
                                             *By Counsel*

                                             */s/ Robert W. McFarland*
                                             Robert W. McFarland (VSB No. 24021)
                                             Benjamin L. Hatch (VSB No. 70116)

V. Kathleen Dougherty (VSB No. 77294)
McGuireWoods LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia  23510-1655
Telephone: (757) 640-3716
Facsimile:  (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: vkdougherty@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219-3916
Telephone:  (804) 775-1000
Facsimile:  (804) 698-2026
E-mail: bjustus@mcguirewoods.com
E-mail: apeterson@mcguirewoods.com

## CERTIFICATE OF SERVICE

I certify that on this 25th day of September, 2020, a true and correct copy of the foregoing was served on all counsel of record via Notice of Electronic Filing by filing with the Court's CM/ECF system.

/s/ Robert W. McFarland
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
V. Kathleen Dougherty (VSB No. 77294)
McGuireWoods LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia  23510-1655
Telephone: (757) 640-3716
Facsimile:  (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: vkdougherty@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219-3916
Telephone:  (804) 775-1000
Facsimile:  (804) 698-2026
E-mail: bjustus@mcguirewoods.com
E-mail: apeterson@mcguirewoods.com