UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| CSX TRANSPORTATION, INC., ) | |
| individually and on behalf of NORFOLK ) | |
| & PORTSMOUTH BELT LINE ) | |
| RAILROAD COMPANY, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | No. 2:18-cv-530-MSD-LRL |
| ) | |
| NORFOLK SOUTHERN RAILWAY ) | |
| COMPANY, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

**DEFENDANT NORFOLK SOUTHERN RAILWAY COMPANY'S
REPLY IN SUPPORT OF ITS OBJECTION
TO MAGISTRATE JUDGE'S NON-DISPOSITIVE ORDER (ECF No. 237)**

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure and Rules 72 and 7(F) of the Local Rules of the U.S. District Court for the Eastern District of Virginia, Defendant Norfolk Southern Railway Company ("NSR"), by counsel, respectfully submits this Reply in further support of its Objection to the non-dispositive Order entered by the Magistrate Judge dated September 4, 2020 (the "Order") (ECF No. 237) granting Plaintiff CSX Transportation, Inc.'s ("CSXT") Motion to Reopen and Compel Depositions (ECF Nos. 203 & 204) (the "Motion to Reopen").

**INTRODUCTION**

CSXT's Opposition (ECF No. 241) tries to avoid the thrust of NSR's Objection (ECF No. 241) by claiming that the Magistrate Judge's finding of good cause to reopen CSXT's fact discovery was based on matters other than his misinterpretation of NSR's January 27, 2020 brief (the "January Brief") (ECF No. 111). But that is not what the Magistrate Judge himself said:

> I'm going to find that the representations made by Norfolk Southern back in January are such that agreement on search terms and the ESI order did not impact, according to what they said, did not impact their ability to produce those documents and they should have been produced sooner than they were, and because of that, CSX has established good cause to reopen the depositions of Mr. Heller and Mr. McClellan and to take the depositions of Mr. Booth and Mr. Martinez."

Transcript of Sept. 4, 2020 Hearing (cited as "Trans. at ___") at 47:11-19. Hence, the Magistrate Judge based his good cause finding on his reading of the January Brief, not the relevance of the documents.

Once CSXT's threshold argument is pushed aside, CSXT's Opposition does little to rebut the fact that the Magistrate Judge's misinterpretation of the January Brief, and thus his ruling, is clearly erroneous. Indeed, CSXT's Opposition only affirms NSR's refutation by failing to actually quote anything in the January Brief that makes the bold discovery promises that the Magistrate Judge found there. While CSXT makes claims that the Magistrate Judge's ruling was correct, CSXT's argument is based on the classic fallacious argument: circular reasoning, also known as "begging the question." CSXT assumes NSR made the promise (without actually proving it) and uses that assumption as both a premise and a conclusion.

Anticipating failure of its mischaracterization of the Magistrate Judge's ruling and support for the Magistrate Judge's misinterpretation of the January Brief, CSXT spends much of its brief recounting the history of discovery between the parties to suggest that the Order could have been based on yet other grounds. This tactic is ineffectual, as the history, even as mischaracterized by CSXT, simply was not the basis for the Magistrate Judge's ruling. Additionally, as explained below, CSXT cannot avoid the stark reality that but for its utter silence as to NSR's proposed search terms for more than a month—even after it sought to extend its discovery deadlines—NSR would have been in a position to produce documents in response to CSXT's Second Requests for

Production of Documents ("Second RFPs") sooner than it did. CSXT's own lack of diligence, not any statements in the January Brief, is the true source of any prejudice CSXT is suffering.

## ARGUMENT

**I.  The Magistrate Judge's ruling was based *solely* on his misinterpretation of the January Brief.**

Rather than first addressing the Magistrate Judge's misinterpretation of NSR's January Brief, CSXT starts off by arguing that the Magistrate Judge's ruling was also based on a finding other than his misinterpretation. But the transcript of the September 4, 2020 hearing, which provides the only explanation of the Magistrate Judge's ruling, forecloses CSXT's argument:

> So I'm going to grant CSX's motion. I'm going to find that the representations made by Norfolk Southern back in January are such that agreement on search terms and the ESI order did not impact, according to what they said, did not impact their ability to produce those documents and they should have been produced sooner than they were, and because of that, CSX has established good cause to reopen the depositions of Mr. Heller and Mr. McClellan and to take the depositions of Mr. Booth and Mr. Martinez."

Trans. at 47:11-19. The Magistrate Judge's finding of good cause cannot be divorced from his misinterpretation of NSR's January Brief. He interpreted NSR's January Brief as stating that the ESI Order, "according to what [NSR] said, did not impact [NSR's] ability to produce those documents, and they should have been produced sooner than they were." Even CSXT, at one point in its Opposition, is forced by the facts to concede that the Magistrate Judge ruled that the documents should have been produced earlier "given [NSR's] earlier representations" in the January Brief. Opp. at 13.

CSXT further asserts that the Magistrate Judge's statement that some of the produced documents "seem to be particularly germane to the issues in this case" provides additional grounds for his ruling. But reopening discovery after a cutoff requires a showing of good cause, and diligence by the moving party is the touchstone for a good cause finding. *See Marcum v. Zimmer*,

3

163 F.R.D. 250, 255 (S.D. W.Va. 1995) ("[T]he touchstone of 'good cause' under Rule 16(b) is diligence."). A comment from the Magistrate Judge that some of the documents at issue "seem to be particularly germane" says nothing about a party's diligence.

CSXT tries to make much of the fact that NSR acknowledged that it may not have filed an Objection had CSXT's Motion to Reopen been granted based on the timing of production, the non-trivial role of the witnesses, and the current stay of the deadlines in this case. *See* Opp. at 14. NSR's pragmatic statement reflects NSR's understanding that objections to non-dispositive magistrate judges' orders should be rare. But, as NSR explained, the Magistrate Judge did not grant the Motion to Reopen on any of these bases. Rather, the Magistrate Judge squarely based his finding of good cause on his misinterpretation of the January Brief—and in a way that challenged counsel's candor.[1] Therefore, CSXT's suggestion that the Magistrate Judge's ruling should be affirmed based on anything other than this misinterpretation is a red herring. Moreover, NSR's Objection is warranted because the Order escalated the dispute beyond resolving a discovery logjam.

## II. The Magistrate Judge's misinterpretation of the January Brief, and thus his finding of good cause, is clearly erroneous.

As explained in the Objection, NSR's January Brief did not state that its entire document production would be complete (or substantially complete) by February 10, 2020, or by any other deadline. NSR stated that its production in response to CSXT's *First* RFPs would be substantially complete by February 7, 2020, and it was. NSR did not make any representation in its January Brief as to when it would complete its production in response to CSXT *Second* RFPs, which had

---

[1] NSR's January Brief stated: "NSR expects to substantially complete its production in response to CSXT's First Requests for Production of Documents by February 7." January Brief at 2. NSR did not state that it would substantially complete *all* document production by February 7, but instead its comments were limited to documents in response to CSXT's *First* RFPs.

4

been served on January 9, 2020. CSXT's efforts to justify the Magistrate Judge's misinterpretation of NSR's January Brief fall flat.

### A. CSXT continues to both acknowledge and misrepresent what NSR stated in its January Brief.

CSXT's Opposition repeatedly acknowledges what NSR actually stated in its January Brief, but just as it did in its Motion to Reopen, CSXT then immediately repeats the misrepresentation that NSR stated in the January Brief that its production in response to *all* of CSXT's document requests would be substantially complete on February 7. Indeed, the Opposition contradicts itself two places on the very same page, to wit:

| Page No. | Concession | Contradiction |
|---|---|---|
| 2 | CSXT admits that the January Brief stated that NSR would "'substantially complete' productions in response to CSXT's *First* RFPs by February 7". | In the very next paragraph, CSXT drops the critical reference in NSR's brief to the First RFPs to misrepresent NSR's statement: "NSR flatly misrepresented the status and scope of its productions in the January Brief. Indeed, NSR produced *over 210,000 pages* … after its proffered 'substantial completion' deadline." |
| 7 | CSXT admits that NSR stated in the January Brief that it "would substantially complete its production in response to CSXT's First RFPs" by February 7. | Just nine lines later, CSXT drops the critical reference in NSR's brief to the First RFPs to misrepresent NSR's statement: "[C]ontrary to its representations to the Court and counsel, NSR completed one-third of its production by February 7 … it produced another third … three weeks after its substantial completion date. It produced the final third on March 10— more than a month after the date by which it said it would substantially complete its productions in response to CSXT's First RFPs …" |

In sum, CSXT's Opposition defeats itself, as CSXT's mischaracterizations are refuted within its own brief by acknowledgment of the unequivocal, basic truth as to limited nature of NSR's representations.

> **B. CSXT's thundering about a late production ignores that the actual cause of any delay was CSXT's own lack of diligence.**

It is worth noting that CSXT never claimed, until its Motion to Reopen, that NSR had made a discovery promise that it had broken. Surely, if CSXT thought NSR had broken a timing promise, it would have said so at the time, or at least at some point prior to the Motion to Reopen, which was filed months after its discovery cutoff. Instead, CSXT's gripes at the time were always simply about the timing and volume of NSR's production in response to CSXT's Second RFPs. And indeed, CSXT makes much of the timing and volume of NSR's production after February 7. However, NSR did, as promised, substantially complete its production to CSXT's First RFPs by February 7. In fact, nowhere in its Opposition does CSXT even acknowledge that, but for 1,587 documents, ***all of the documents produced after February 7*** were documents produced in response to ***CSXT's Second RFPs*** using search terms agreed to by the parties.[2] Similarly, while CSXT's Opposition relies heavily on the number of pages produced after February 7, it does little to explain what caused the timing of those productions.

---

[2] CSXT incorrectly argues throughout its Objection that because five of the 42 requests made in its First RFPs mentioned East Coast Ports, any documents NSR produced after February 7, 2020 that related to East Coast Ports should have been produced earlier. However, CSXT fails to acknowledge that during the parties' negotiations over search terms in response to their respective First RFPs, CSXT *never* proposed search terms targeted at East Coast Ports for NSR to apply to its data. This stands in contrast to other search terms CSXT proposed for NSR to apply to its data in response to CSXT's First RFPs, many of which NSR agreed to use. NSR's production of documents in response to CSXT's First RFPs was comprised of documents that resulted from the agreed-upon search terms targeted at the First RFPs, and was substantially completed by February 7, 2020 as NSR represented it would be in the January Brief.

The explanation is straightforward:

| Date | Action |
|---|---|
| **January 9** | CSXT serves its Second RFPs, which included 39 document requests.[3] |
| **January 17** | NSR proposes search terms to identify documents responsive to CSXT's Second RFPs; CSXT had previously demanded that any search terms it would use that NSR would also use, meaning NSR's search terms would be mutual. |
| **January 21** | In a meet and confer, CSXT's counsel promises a response to NSR's search terms, but complains that they would be "very" burdensome for CSXT. |
| **February 7** | NSR substantially completes production of documents in response to CSXT's *First* Requests for Production. |
| **February 10** | NSR's counsel writes CSXT's counsel to ask about CSXT's promised response to NSR's proposed search terms that would be used to identify documents responsive to CSXT's Second RFPs; NSR expresses concern that the parties are at an impasse on the mutual search terms, and suggests another meet and confer or that CSXT propose its own search terms. |
| **February 20** | CSXT agrees that the parties should use NSR-proposed search terms, but limits the geographic scope of them to East Coast Ports. |
| **February 28** | NSR makes its first production in response to CSXT's Second RFPs, using the agreed February 20 mutual search terms |
| **March 10** | NSR makes its second (and final) production in response to CSXT's Second RFPs. |

In other words, CSXT issued its Second RFPs less than two months before its discovery cutoff and took over one month to agree on mutual search terms. Meanwhile, NSR actively pursued resolution of search terms every step of the way: it was NSR, not CSXT, that developed

---

[3] CSXT describes its Second RFPs as a "smaller set" compared to its First RFPs as if to portray the requests as insubstantial. Opp. at 4. To be clear, the Second RFPs included 39 document requests, while CSXT's First RFPs included 43 document requests. Also, the Second RFPs resulted in the production of 191,278 pages, whereas the First RFPs resulted in the production of only 114,867 pages. Indeed, CSXT "anticipated" that its Second RFPs "could significantly expand the scope of discovery." Opp. at 16.

search terms to be used by both parties; it was NSR that attempted to prod resolution by its February 10 letter (attached as **Exhibit A**); it was NSR that expressed willingness to confer or review any search terms proposed by CSXT; when CSXT finally responded by saying that NSR's proposed terms, subject to the East Coast Ports geographic limitation, were acceptable, NSR immediately agreed and completed its production of documents responsive to CSXT's Second RFPs using those search terms *within 19 days*.

NSR finds its current predicament ironic and frustrating. It stands accused of delaying a production. But it is clear that the delay was caused by the accuser. Indeed, CSXT's inaction, which remains unexplained to this very day, is especially perplexing considering (a) CSXT's March 3, 2020 discovery cutoff, and (b) CSXT's desire to take fact depositions well in advance of the cutoff. In any event, the bottom line is that had CSXT reached the same agreement on the search terms within 15, or even 20, days from when NSR proposed them on January 17, 2020, then CSXT would have received NSR's productions in response to the Second RFPs before March.

    **C.**  **NSR's response to CSXT's Second RFPs was consistent with Rule 34, the ESI Order, and CSXT's own responses to document requests.**

NSR stated in its January Brief that its *responses* to CSXT's Second RFPs were not due until February 10. NSR did not make any statement regarding when its *productions* in response to those requests would be completed. There was nothing misleading about NSR's statement, and NSR's written responses served on February 10 complied with Fed. R. Civ. P. 34. CSXT now argues for the first time that NSR was obligated to produce documents in response to these requests by February 10 because CSXT's Second RFPs state that "NSR shall respond to the following RFPs within thirty (30) days after service." Opp. at 15. This argument fails for multiple reasons.

First, CSXT's Second RFPs required a *response* within 30 days; they say nothing about a *production* deadline.

8

Second, even CSXT does not contend that its requests required NSR to provide a ***complete production*** in response to the Second RFPs by February 10. The parties had been operating in good faith under the ESI Order, which expressly provided they would be making rolling productions in response to their document requests. In fact, CSXT has made 15 rolling productions of new documents in response to NSR's RFPs, including its most recent production on July 30, 2020.

Third, CSXT's belated complaint that NSR's written document responses were improper rings hollow. Every single one of CSXT's own responses to NSR's document requests stated: "Subject to the Protective Order and ESI Order, CSX will collect documents from the agreed-upon custodians and agreed-upon non-custodial data sources, run agreed-upon search terms across its documents if necessary, and produce any responsive, non-privileged documents." CSXT did not provide any "reasonable time" by which it would complete its production. NSR's reading of, and compliance with, Rule 34 is no more "hyper-technical" than CSXT's. *See* Opp. at 16 ("NSR's hyper-technical reading of Rule 34 does not render Judge Leonard's impression of its January Brief clearly erroneous.").

Fourth and finally, CSXT did not argue in support of its Motion to Reopen that its Second RFPs required a complete production by February 10, nor did the Magistrate Judge cite this new argument as good cause to grant the motion. Hence, this is just another red herring.

> **D. NSR's January Brief did not state that the parties' negotiation of search terms would not delay its production in response to CSXT's Second RFPs.**

CSXT also tries to justify the Magistrate Judge's misinterpretation of NSR's January Brief by claiming that NSR "insist[ed] that the parties' search term negotiations would *not* cause delay."

9

Opp. at 16-17 (emphasis in original). Again, CSXT misstates what NSR actually said in its January Brief.

CSXT cites two statements from the January Brief in support of its claim. One of the statements deals directly with CSXT's request for an extension of its expert report deadline, not its fact discovery deadline, which is the subject of the Motion to Reopen. *See* Opp. at 17 (quoting ECF No. 111 at 7) ("CSXT's reliance on the geographic search terms as justification for its request to extend the ***deadline for its expert report*** is without merit.") (emphasis added).

CSXT also relies on NSR's statement that "'the parties' dispute about search terms'" does not "'necessitate the extensions [CSXT] seeks.'" Opp. at 17 (quoting ECF No. 111 at 5). But CSXT omits NSR's explanation as to ***why*** the dispute did not justify an extension of CSXT's discovery deadlines.

The January Brief first explained that the dispute as to the ***First RFPs*** was based on CSXT's questioning of whether the search terms that NSR proposed in response to CSXT's ***First RFPs*** "will sufficiently capture NSR's relevant communications with its customers." ECF No. 111 at 5. This explanation said nothing about NSR's productions in response to CSXT's *Second* RFPs served on January 9. NSR then produced customer communications just as it said it would: running agreed-upon search terms against ESI collected from agreed-upon custodians and producing or privilege logging the results. And in the end, CSXT never objected to the substance of the document production.

The January Brief also explained why CSXT's focus on the parties' discussion of search terms relating to ports outside of Virginia did not justify the extensions requested by CSXT. NSR explained that its document requests sought information beyond Virginia ports to rebut CSXT's claim that the relevant market is "'the intermodal port facilities of Hampton Roads, Virginia.'"

ECF No. 111 at 6 (quoting ECF No. 1 at 17). It further explained that CSXT agreed to produce documents relating to "'terminal facilities located at East Coast Ports,'" yet the search terms CSXT proposed to apply to its data were limited to Virginia ports. *Id*. Given CSXT's inaction, on December 17, 2019, NSR proposed a set of search terms relating to ports outside of Virginia for CSXT to use in responding to NSR's document requests. *Id*.

The parties conferred about these terms and shortly thereafter, CSXT served its Second RFPs on January 9, 2020, which, like NSR's document requests, sought information relating to ports outside of Virginia. Accordingly, on January 17, 2020, NSR proposed a revised set of search terms that it had thoroughly tested and would use in response to CSXT's Second RFPs and that CSXT would also use in response to NSR's requests seeking the same information relating to ports outside of Virginia. ECF No. 111 at 6-7.

This chronology laid out in the January Brief showed that CSXT did not act diligently with respect to obtaining documents relating to ports outside of Virginia. While CSXT argues in its Opposition about the handful of CSXT's First RFPs that mention East Coast Ports, CSXT never proposed search terms directed at those documents; moreover, CSXT waited until January 9 to serve its Second RFPs, which focused more broadly on requesting documents beyond Virginia ports. Further, NSR explained in the January Brief that this lack of diligence belied CSXT's request for an extension of its expert deadline: "If the documents that would be captured by these geographic search terms are necessary for its expert's work, as CSXT now contends, CSXT would have proposed such terms in the first instance or simply would have agreed to run NSR's proposed terms." *Id*. at 7.

It is worth noting that the CSXT inaction that was true as of the filing of the January Brief on January 27 was also true as of February 10, when NSR's counsel wrote CSXT's counsel

11

(**Exhibit A**) asking CSXT to fulfill its promise of responding to NSR's search terms proposed on January 17. CSXT's inaction remained true right up to February 20, when CSXT finally agreed to search terms.

> **E. CSXT cannot rely on its failure to agree to proposed search terms for over one month to justify the Magistrate Judge's misinterpretation of the January Brief.**

CSXT finally argues that NSR should have known at the time it filed its January Brief that it would take CSXT over one month to agree to the search terms NSR proposed on January 17 because the terms were "facially overbroad." Opp. at 17. On January 21, CSXT had promised to respond NSR's proposed terms. CSXT, however, did not propose revisions to NSR's proposed terms until February 20, nor did CSXT ever provide a set of search terms that it considered to be appropriate.[4] Moreover, CSXT only expressed an agreement after NSR threatened to file a motion to compel on the issue in its February 10 letter. Finally, CSXT ultimately agreed to run all of the search terms proposed by NSR as they related to East Coast Ports. There is no reason why CSXT could not have made this agreement days, if not weeks, before February 20, especially considering that CSXT *agreed* to produce documents relating to East Coast Ports in its Objections and Responses to NSR's First RFPs, which CSXT served ***on November 20, 2019***. *See* **Exhibit B** (excerpt of CSXT's Objections and Responses).

In sum, this entire saga could have been avoided if CSXT simply had acted consistently with its own representations and promptly responded to NSR's proposed January 17 search terms.

---

[4] CSXT's Opposition erroneously states that NSR "reject[ed] CSXT's more limited set of geographic terms." Opp. at 18. That is simply untrue. CSXT never proposed a set of geographic search terms. Rather than taking affirmative action, CSXT was only "willing to negotiate with NS over an appropriately limited scope of additional geographic terms to be applied to custodial data, particularly with respect to East Coast Ports." ECF 113 at 5, n. 3.

## CONCLUSION

For the foregoing reasons, NSR objects to the Order dated September 4, 2020, and entered at ECF No. 237, and asks that the Order be set aside in its entirety without prejudice.

Date:  October 1, 2020

Respectfully submitted,

**NORFOLK SOUTHERN RAILWAY COMPANY**

/s/ Alan D. Wingfield
Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
Massie P. Cooper (VSB No. 82510)
TROUTMAN PEPPER HAMILTON SANDERS, LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-6061
Email: alan.wingfield@troutman.com
Email: michael.lacy@troutman.com
Email: massie.cooper@troutman.com

John C. Lynch (VSB No. 39267)
Kathleen M. Knudsen (VSB No. 90845)
TROUTMAN PEPPER HAMILTON SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA  23462
Telephone: (757) 687-7759
Facsimile: (757) 687-7510
Email: john.lynch@troutman.com
Email: Kathleen.knudsen@troutman.com

Monica McCarroll (VSB No. 45622)
REDGRAVE LLP
14555 Avion Parkway, Suite 275
Chantilly, VA 20151
Telephone: (703) 592-1155
Facsimile: (703) 230-9859
Email: mmccarroll@redgravellp.com

>Tara L. Reinhart
>John R. Thornburgh II
>Thomas R. Gentry
>SKADDEN, ARPS, SLATE,
>MEAGHER & FLOM LLP
>1440 New York Avenue, N.W.
>Washington, DC 20005
>Telephone: (202) 371-7000
>tara.reinhart@skadden.com
>john.thornburgh@skadden.com
>thomas.gentry@skadden.com
>
>*Counsel for Defendant Norfolk Southern Railway Company*