# Exhibit 1
# to the Declaration of
# Alan D. Albert

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



**COURTHOUSE NEWS SERVICE,**

    Plaintiff,

v.                                         Civil Action No. 2:18-cv-391

**GEORGE E. SCHAEFER, in his Official
Capacity as the Clerk of the Circuit Court
for the City of Norfolk; and**

**JACQUELINE C. SMITH, in her Official
Capacity as the Clerk of the Circuit Court
for Prince William County,**

    Defendants.

## OPINION & ORDER

This matter is before the Court on Courthouse News Service's ("CNS" or "Plaintiff") Motion for Attorneys' Fees and Costs. Doc. 103. CNS seeks $2,258,505.83 in attorneys' fees and costs from April 1, 2018 through February 28, 2020. Doc. 104 at 14. "More specifically, CNS is claiming: (1) $1,890,198.50 in fees incurred prior to the conclusion of trial on February 5, 2020; (2) $135,747.50 in fees incurred after the conclusion of trial on the present fee motion and accompanying declarations; and (3) $232,559.83 in non-taxable costs." Doc. 104 at 14-15.

Defendants have three main objections to the Plaintiff's request for fees. First, Defendants object to the firm of Bryan Cave Leighton & Pasiner, LLP ("BCLP") charging of out of jurisdictional rates that are inconsistent with the local rate charged in the location where the Court sits. Second, Defendants objects to the number of hours billed by BCLP. Finally, Defendants object to $33,269.82 of trial expenses as they are expenses incurred as a result of transportation and lodging for out of state attorneys. On top of these objections, Defendants are

seeking an additionally 40% reduction to total fees for the Plaintiff being unsuccessful in obtaining a preliminary injunction. Therefore, $972,394.50 of the attorneys' fees are contested. $739,834.67 are contested as an out of locality billing hourly rate. $232,559.83 are contested as a result of the number of hours charged.

For the reasons within, the Court **GRANTS, IN PART,** Plaintiff's application for attorneys' fees awarding the full fee amount requested by Plaintiff for fees incurred through trial, reducing the total fee award for unreasonable fees as a result of the fee petition and reducing by 10% for not obtaining injunction relief.

## I. LAW AND ANALYSIS

In an action under § 1983, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee. . . ." 42 U.S.C §1988. In calculating a reasonable attorneys' fee award, the Court must first determine the "lodestar" amount, which is a "reasonable hourly rate multiplied by hours reasonably expended." Grissom v. The Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008). To assess the reasonableness of both the rate and amount of hours expended, a court often considers and weighs the twelve factors identified in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974), as adopted by Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1978). The Johnson factors include:

1. The time and labor required;
2. The novelty and difficulty of the questions raised;
3. The skill required to properly perform the legal services rendered;
4. The preclusion of other employment by the attorney due to acceptance of the case;
5. The customary fee;
6. Whether the fee is fixed or contingent;
7. Time limitations imposed by the client or the circumstances;
8. The amount involved and the results obtained;
9. The experience, reputation, and ability of the attorneys;
10. The undesirability of the case;
11. The nature and length of the professional relationship with the client; and
12. Awards in similar cases.

2

Barber, 577 F.2d at 226 n.28; see Daly v. Hill, 790 F.2d 1071, 1075 n.2 (4th Cir. 1986). After calculating the lodestar and applying the Johnson factors, the Court subtracts fees for unsuccessful claims and awards a percentage based on the result achieved for the plaintiff. Grissom, 549 F.3d at 321. The Court does this, while keeping in mind that "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith . . . the most critical factor is the degree of success obtained." Hensley v. Eckerhart, 461 U.S. 424, 436 (1983).

### A. Objections to the Hourly Rates Charged by BLCP

Defendants objects to the Plaintiff's fee application based on the hourly rate charged by lawyers from the law firm of Bryan Cave Leighton & Pasiner, LLP ("BCLP").[1] The lawyers and staff from BCLP are based in New York and Washington, D.C. The rates requested by the Plaintiff are as follows:

> [t]he partner on the case, Mr. Hibsher, charged an hourly rate of $730. The senior associate on the case, Ms. Goldman, charged an hourly rate of $590. The junior associate on this case, Mr. Harrison, charged an hourly rate of $545. The paralegal on this case, Ms. Weiss, charged an hourly rate of $290.

Doc. 123 at 9. Defendants aver that these hourly fees are unreasonable in light of the fact that they are based on out-of-jurisdictional averages and that this is not a highly complex or specialized case. For example, Defendants filed affidavits from Mr. Richard Ottinger with the law firm of Vandeventer Black stating that he finds that

> (1) a reasonable rate for a senior partner with a complex litigation practice in Norfolk to be between $400-$500; (2) a reasonable rate for a senior associate or junior partner with some complex litigation experience in Norfolk to be between $300-$375; (3) a reasonable rate for a junior associate with some complex litigation experience in Norfolk to be between $225-$275; and (4) a reasonable rate for a paralegal with some complex litigation experience in Norfolk to be between $125-$225.

Doc. 123-1, Declaration of Richard H. Ottinger at 18.

---

[1] Defendants do not contest the hourly rate charged by local counsel at Wilcox & Savage. Doc. 123 at 9.

3

The Fourth Circuit has noted that the reasonableness requirement of attorneys' fees is ordinarily "met by compensating attorneys at the 'prevailing market rate in the relevant community." Yamaha Motor Corp., U.S.A. v. Jim's Motorcycle, Inc., 381 F. Supp. 2d 499, 504 (E.D. Va. 2005) (citing Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994)). The market rate is determined by those rates charged in "the community in which the court where the action prosecuted sits." Id. (citing Rum Creek Coal Sales, Inc., 31 F.3d at 175). The Fourth Circuit, in Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169 (4th Cir. 1994), articulated that the "[r]ates charged by attorneys in other cities, however, may be considered when 'the complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally,' and the party choosing the attorney from elsewhere acted reasonably in making the choice." Rum Creek Coal Sales, Inc., 31 F.3d at 179 (quoting National Wildlife Federation v. Hanson, 859 F.2d 313, 317 (4th Cir. 1988)).

Defendants aver that neither of the Rum Creek criteria are met in this case. They contend that this case is both not highly complex or specialized and that there are plenty of local attorneys with the required skills to try the case. Doc. 123 at 9-12. Defendants aver that this is a straightforward first amendment case that turns on a dispute over the interpretations of Virginia Circuit Court filing data. Id. at 9.

The Court disagrees that the issues in this case are not highly complex. This case involved a sophisticated constitutional issue of first impression in this circuit that involved detailed statistical analysis. In fact, the data was of such a complex nature that the Court found it necessary to conduct its own de novo review of the submitted filing data. Furthermore, the legal complexity is confirmed by the fact that different courts have come out to conflicting conclusions regarding the legal questions resolved in this case. Rum Creek Coal Sales, Inc., 31

4

F.3d at 179 (noting that "[t]he litigated issues included questions of preemption and constitutional law and their complexity is demonstrated by the fact that both appeals to this court resulted in reversals of the district court."); see Courthouse News Serv. v. Yamasaki, 312 F. Supp. 3d 844, 850 (C.D. Cal. 2018), vacated and remanded, 950 F.3d 640 (9th Cir. 2020) (the constitutional issues here have been decided differently within the same circuit as illustrated by Yamaski being vacated and remanded for consideration of the 9th Circuit's ruling in Courthouse News Serv. v. Planet, 947 F.3d 581, 585 (9th Cir. 2020)).

Turning to the second Rum Creek criteria, Defendants contest that there was ample local counsel who possessed the necessary skills to represent Courthouse News. Defendants submit the Affidavit of "Richard H. Ottinger, Esquire, a local attorney . . . [who] notes that Willcox & Savage, P.C., Kaufman & Canoles, P.C., Vandeventer Black LLP, Williams Mullen, and Troutman Sanders, to name a few, are all firms capable of handling cases such as this." Doc. 123 at 10. In Yamaha Motor Corp., U.S.A. v. Jim's Motorcycle, Inc., 381 F. Supp. 2d 499 (E.D. Va. 2005), this Court has stated that a party may not secure payment of higher rates charged by outside counsel when the local counsel firm has "has a number of lawyers, including the ones who represented Yamaha as local counsel" are capable of litigating the complex issues presented. Yamaha Motor Corp., U.S.A. v. Jim's Motorcycle, Inc., 381 F. Supp. 2d 499, 505 (E.D. Va. 2005). Defendants aver that Plaintiffs local counsel Mr. Shumadine could have equally tried this case. They highlight Mr. Shumadine is well-known for his expertise in the First Amendment area of law and has litigated numerous First Amendment cases before this Court. Doc. 123 at 11.

In contrast, Plaintiff argues that the case involved important first amendment rights that required counsel with specialized "expertise in First Amendment law and national-firm resources

5

. . . ." Doc. 104 at 18. Specifically, Plaintiff highlights that "counsel William Hibsher has represented CNS in a variety of First Amendment-related matters since 2015, including acting as lead counsel in several federal lawsuits in which CNS asserted its First Amendment right to contemporaneous access to newly-filed civil complaints in other states' courts." Doc. 104 at 18. Moreover, the team at BCLP has been representing Courthouse News in court-record accesses litigation for "almost a decade before the lawsuit was filed." Id. The Fourth Circuit, in Rum Creek, highlighted a firm's familiarity with the parties and matters involved as evidence of fulfilling the criteria to charge out of jurisdictional rates. See Rum Creek Coal Sales, Inc., 31 F.3d at 179 (highlighting out of jurisdiction "lawyers are concededly well-experienced in the type of matters involved."). The Court agrees with the Plaintiff. The issues presented in this case go beyond basic issues of First Amendment law. It is entirely reasonable that Plaintiff should be entitled to recover fees for the use of lawyers that have familiarity with both the Plaintiff's media practices and the complex intricacies that are involved in these right of access for the press cases.

Furthermore, Courthouse News Service actually paid these rates to the lawyers in this case. The Fourth Circuit has stated that "[t]he market rate should be determined by evidence of what attorneys earn from paying clients for similar services in similar circumstances, which, of course, may include evidence of what the plaintiff's attorney actually charged his client." Robinson v. Equifax Info. Services, LLC, 560 F.3d 235, 244 (4th Cir. 2009). Therefore, the Court accepts this fact as additional evidence that BCLP rates are reasonable under the circumstances presented.

## B. Objection to the Number of Hours Expended by Plaintiff's Counsel

Defendants asserts that BCLP's hour keeping records are "defective and unreliable in several respects." Doc. 123 at 14. They challenge $235,474.50 of the fees or 390.90 hours as contested hours. They contend:

> (1) that the records do not contain regular monthly billing invoices submitted to Courthouse News; and
>
> (2) the number of hours for which compensation is sought is unreasonable and excessive because the time entries reflect instances of block billing, duplication of work, intraoffice conferences, time billed that is attributable to CNS's unsuccessful motion for a preliminary injunction, time billed that is attributable to CNS's unsuccessful motion for a summary judgment, and vague and inadequate task descriptions.

Doc. 123 at 14, 23. Defendants attest that the Plaintiffs engaged in "lumping" – placing multiple activities together with no way in determining the time spent of each activity. This Court has found that "lumping provides a proper basis for reducing the fee award because it prevents an accurate determination of the reasonableness of the time expended, and it may be accomplished by reducing the overall fee award by a fixed percentage or amount based on the trial court's familiarity with the case, its complexity, and the counsel involved." Guidry v. Clare, 442 F. Supp. 2d 282, 295 (E.D. Va. 2006). Yet, this Court has additionally noted that "(i)t is not the function of the courts in reviewing fees to second guess every minute detail of time spent by an attorney in working on a case." Virginia Acad. of Clinical Psychologists v. Blue Shield of Virginia, 543 F. Supp. 126, 135 (E.D. Va. 1982). The Plaintiff highlights "the hours spent by CNS' attorneys on this matter were substantial," but were reasonable for a case that has "lasted approximately 18 months, and included two motions to dismiss, extensive discovery, sizable cross-motions for summary judgment, as well as trial continuances that meant multiple trial preparation periods." Doc. 104 at 18. This Court has supported an award based on substantial hours by Plaintiff's counsel when Defense counsel "forced Plaintiff[] to fight—every issue in

7

this case." McNeil v. Faneuil, Inc., No. 4:15cv81, 2018 WL 1411017, at *5 (E.D. Va. Mar. 21, 2018). As the Court stated in McNeil, "Defendant cannot fight the case to its last breath, and then complain that the attorneys' fees are disproportionate . . . ." Id. Therefore, for these reasons, the Court agrees with Plaintiff and after review finds the billing entries up through trial reasonable under the circumstances.

However, the Court **FINDS** Plaintiff's request for $135,747.50 in attorneys' fees in preparation of this fee petition unreasonable under the circumstances. The "reasonable time and expenses spent preparing a fee petition are compensable" but they "must be reasonable in the circumstances." Am. Canoe Ass'n, Inc. v. U.S. E.P.A., 138 F. Supp. 2d 722, 746 (E.D. Va. 2001). The Court finds that 219.9 hours billed to prepare a motion for attorneys' fees is an unreasonable dedication of time for preparation of a petition requesting attorneys' fees. Based on this finding, the Court reduces the award of attorneys' fees for preparing the fee petition by $85,747.50 to a total of $50,000. Therefore, the Court awards a total of **$1,940,198.50** in fees incurred for both trial and preparation of the fee petition.

**C. Reduction of Fees for Failure to Obtain Injunctive Relief**

As discussed supra, the Court in determining a final fee award subtracts fees for unsuccessful claims and awards a percentage based on the result achieved for the plaintiff. Grissom, 549 F.3d at 321. Here, Defendants are requesting a 40% reduction in fees for Plaintiff's failure to obtain a preliminary injunction. In light of the circumstances of the case, the Court **FINDS** a 40% reduction excessive. At the hearing on attorneys' fees, the Court highlighted that Plaintiff achieved most of what was requested in the lawsuit simply by filing the suit. Throughout the pendency of this litigation, the Clerks both responded to the suit by improving on exactly what the Plaintiff was seeking. Specifically, the Clerk in Norfolk arranged a meeting

8

with Plaintiff and shortly thereafter Plaintiff noticed a substantial increase in access to newly-filed civil complaints. The Court highlighted Defendants' good-faith compliance as the primary reasons that injunctive relief was not warranted in this case. However, some reduction is warranted because Plaintiff sought and did not receive the extraordinary injunctive relief requested. Therefore, for the aforementioned reasons, the Court **FINDS** a 10% reduction is warranted based on Plaintiff's unsuccessful claims. Accordingly, the Court reduces the awarded fees by 10%.

### D. Non-Taxable Expenses

The Fourth Circuit has found that "a prevailing plaintiff is entitled to compensation for reasonable litigation expenses under § 1988." Daly v. Hill, 790 F.2d 1071, 1083 (4th Cir. 1986) Defendants object to Plaintiff's request for $33,269.82 in non-taxable expenses as unreasonable. The objected expenses were incurred for travel and lodging for the out of state attorneys including taxis to and from offices and the airport, hotels for staying in Norfolk for hearings. Defendant objects to these expenses on the grounds that they "should be deduced from CNS's reimbursement request because the requisite legal services were available in Norfolk had CNS chosen to retain a local firm." Doc. 123 at 17. Therefore, Defendants aver "[i]t is not reasonable to require Defendants to bear the burden of CNS's decision to hire a law firm outside the Norfolk area to handle this case." Id. As the Court noted supra, outside Counsel from BCLP served an important role as a law firm with experience in both sophisticated press access cases and had been counsel in previous litigation with this particular Plaintiff. Accordingly, the Court **FINDS** Plaintiff's requested litigation expenses including expert witness fees reasonable under the circumstances.

## III. CONCLUSION

In conclusion. the Court **GRANTS, IN PART,** Plaintiff's application for attorneys' fees granting the full amount for fees incurred up through trial, reducing the total fee award for unreasonable fees as a result of the fee petition and then reducing by 10% for not obtaining injunctive relief. As a result of these calculations, the Court **AWARDS** a total of $1,978,738.48 in attorneys' fees and expenses to Plaintiff. Here is a table outlining the Court's findings:

| | AMOUNT |
|---|---|
| **STARTING FEE REQUESTED BY PLAINTIFF TRIAL + FEE PETITION** | $2,025,946.00 |
| **AMOUNT SUBTRACTED FOR UNREASONABLE FEES IN PREPARING FEE PETITION** | - $(85,747.50) |
| **TOTAL W/ REDUCED FEES FOR UNREASONABLE FEES IN PREPARING FEE PETITION** | = $1,940,198.50 |
| **REDUCTION OF 10% for NOT OBTAINING INJUNCTION** | - $(194,019.85) |

| | |
|---|---|
| **TOTAL FEES** | = $1,746,178.65 |
| **EXPERT WITNESS EXPENSES** | + $194,333.58 |
| **OTHER EXPENSES** | + $38,226.25 |
| **TOTAL FEES AND EXPENSES** | = $1,978,738.48 |

The Clerk is **REQUESTED** to distribute a copy of this Opinion and Order to counsel of record.

It is **SO ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

Norfolk, Virginia
September 4, 2020

HENRY COKE MORGAN, JR.
SENIOR UNTIED STATES DISTRICT JUDGE

11