**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| CSX TRANSPORTATION, INC., individually and on behalf of NORFOLK & PORTSMOUTH BELT LINE RAILROAD COMPANY,<br><br>*Plaintiff*,<br><br>v.<br><br>NORFOLK SOUTHERN RAILWAY COMPANY, *et al.*,<br><br>*Defendants*. | Case No. 2:18-cv-530 |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR JOINT MOTION
TO COMPEL DEPOSITIONS OF CSXT WITNESSES**

Pursuant to Rules 16 and 37(a) of the Federal Rules of Civil Procedure and Local Civil Rules 16 and 37, Defendants Norfolk & Portsmouth Belt Line Railroad Company ("NPBL") and Norfolk Southern Railway Company ("NSR"), by counsel, respectfully submit this memorandum in support of their Joint Motion to Compel the depositions of two employees of Plaintiff CSX Transportation, Inc. ("CSXT"), Michael Burns and Steven Armbrust, to allow Defendants to question the witnesses on documents recently produced by CSXT. Defendants also request that the discovery cutoff of January 20, 2021, set under ECF No. 254, be extended for the limited purpose of allowing the two depositions.

**BACKGROUND**

CSXT failed to produce a key document contradicting its own case themes until after depositions relevant to the document were taken – despite requests for production served long ago

that covered the document. The late-produced document, a Reference Guide for Affiliate Board Service (the "Guide"), on its face states CSXT's position as to ███████████████ ███████████████████████████████████ (**Exhibit A**). Given that CSXT's case appears to turn on arguments about the actions of the NPBL board – which had both CSXT and NSR directors – CSXT's own written position about ███████████ ██████████████████████ is significant to assessing CSXT's contentions. Yet CSXT failed to produce this document until <u>after</u> multiple current and former NPBL board members had been deposed, including Steven Armbrust, in-house counsel for CSXT and director of NPBL from March 2010 to June 2015, and Michael Burns, Vice President and General Counsel for CSXT and director of NPBL from April 2018 to December 2019.

By way of one example, central to CSXT's case are its criticisms of how the NPBL's board of directors handled CSXT's proposal for a lower rate for its intermodal rail movements to the Norfolk International Terminal ("NIT") in 2010 and 2018. CSXT's first proposal for a special lower rate was made in 2010; however, no motion to adopt it was made and no board vote taken. A CSXT member of the NPBL board testified ████████████████████████████ (Fredrik Eliasson Dep. Tr. at 77:15–78:8 (Jan. 8, 2021) (**Exhibit B**).) CSXT's second request for a special rate came in 2018, when CSXT claims that a majority of the NPBL board took actions "denying the requests" and "rejecting the Service Proposal." (Compl. ¶¶ 40, 42.) Again, however, the NPBL board never voted on the proposal because no board member, including the CSXT-appointed directors, ever moved the board to accept it. The fact that CSXT never bothered to seek a vote on its own proposal means that NPBL and NSR never blocked the proposal, raising serious questions on essential elements of CSXT's case. Put differently, if neither the NPBL board nor

NSR directors actually rejected the Service Proposal, what, exactly, did they do wrong in their handling of it?

Faced with evidence showing that the lack of NPBL board action resulted from CSXT's own inaction, CSXT now contends that the 2018 rate proposal in particular did not require board approval; rather, CSXT in its Rule 30(b)(6) deposition claimed ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Presumably this position would help CSXT defuse the consequences of its own inaction, by shifting blame from the board to management.

The Guide, however, says ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. A at CSXT0154800), and the 2018 rate proposal was clearly "major" according to CSXT, which claimed in its Rule 30(b)(6) deposition that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. (Robert Girardot Dep. Tr. at 11:45:05–11:45:35 (Jan. 13, 2021) (**Exhibit C**).) The proposal also would have potentially upended NPBL's tariff structure, which contains a single "uniform rate" for the kinds of movements suggested by CSXT, consistent with the requirements of NPBL's governing documents. (*See* Compl. Ex. 1 at 3–4.) Hence, CSXT's current contention that the 2018 rate proposal did not need board approval, and that NPBL's failure to accept it should not be attributed to CSXT's inaction, seems belied by the Guide.

Defendants sought discovery on these topics from the beginning of discovery in this case. Defendants' requests for production of documents to CSXT, served in October of 2019, included several requests directed at documents relating to NPBL's corporate governance and CSXT employees' service as members of the NPBL board. These requests include:

- NPBL's First RFP 19, which asked for "[a]ll documents in effect after January 1, 2007, relating to instructions by CSXT to any members of the Belt Line's Board of Directors on how to vote at meetings" (**Exhibit D**);

- NSR's First RFP 16, which asked for "[a]ll documents relating to [CSXT's] internal communications concerning the corporate governance of NPBL" (**Exhibit E**); and

3

- NSR's First RFP 25, which asked for "[a]ll documents, created during or referring to the terms served by defendants Moss, Merilli, Hull, and Hurlbut as members of the NPBL board of directors, relating to communications between CSXT and each person designated by CSXT to sit on NPBL's board of directors, concerning NPBL or NSR" (*Id.*).

CSXT produced no specific documents in response to these requests. During the deposition of Michael Burns on December 3, 2020, however, Defendants learned, for the first time, about the existence of the Guide, ███████████████████████████████████ ███████████████████████████████ (*See* Ex. A.) Mr. Burns testified ███████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████. (Michael Burns Dep. Tr. at 127:5–12 (Dec. 3, 2020) (**Exhibit F**).) The Guide ███████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████ (*See* Ex. A at CSXT0154796.)

Upon receipt of the Guide on December 7, 2020, Defendants further discovered that the Guide refers to a "portal" through which CSXT employees can access documents relevant to the ███████████████████████████████████████████████████████████ Defendants demanded that CSXT produce those documents in the portal relating to NPBL, which CSXT produced on January 7, 2021. (*See* CSXT0154817, CSXT0154818 (the "portal documents") (**Exhibits G and H**).) Like the Guide, the portal documents are relevant and responsive to Defendants' discovery requests and bear on the primary issues in this case.

When Defendants took CSXT's Rule 30(b)(6) deposition on January 13, 2021, questions about the Guide and how its strictures comported, if at all, with CSXT's contentions, were met

4

with a muddle of words and no clear answers. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*See* Ex. C at 11:45:50–11:45:59.) ▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*See id.* at 11:37:11–11:46:22.)

This testimony was wholly inadequate to the purpose: ascertaining how, *if at all*, CSXT's current position that the 2018 rate proposal could be approved by the NPBL's management without board approval comported with the strictures of the Guide.

Defendants requested to depose Messrs. Burns and Armbrust on these newly-produced, and highly relevant documents. Both witnesses appeared for deposition *before* CSXT produced the Guide. Both were board members at the time the rate proposals were made. And unlike any other CSXT witnesses in this case, both were in-house counsel for CSXT who were heavily involved in developing CSXT's strategies, including privileged discussions about litigation, at the same time they owed fiduciary duties to NPBL. As such, they are uniquely qualified and positioned to comment on the Guide and how it informed their actions as NPBL board members, as well as CSXT's current position that the NPBL board did not need to vote. Their views are particularly significant because one of the other CSXT-appointed board members in 2018, Jermaine Swafford, testified that, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Jermaine Swafford Dep. Tr. at 57:24–59:7, 102:7–104:14 (Dec. 15, 2020) (**Exhibit I**).) And another CSXT-appointed board member, Quintin Kendall testified ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

5

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Quintin Kendall Dep. Tr. at 171:13–24 (Jan. 14, 2021) (**Exhibit J**).)

CSXT rejected Defendants' request to depose Messrs. Burns and Armbrust **(Exhibits K and L)**, and therefore, Defendants seek this relief from the Court.

## LEGAL STANDARD

"The Court's decision to grant or deny leave to redepose a witness is guided by Federal Rules of Civil Procedure 30(a)(2) and 26(b)(2). Leave to conduct a second deposition should ordinarily be granted." *Judicial Watch v. U.S. D.O.C.*, 34 F. Supp. 2d 47, 54 (D.D.C. 1998). A party objecting to reopening a deposition bears the burden "to demonstrate that Rule 26(b)(2) bars the deposition." *Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-cv-18-D, 2018 WL 327559, at *4 (E.D.N.C. Jan. 8, 2018) (quotation marks omitted). The burden is on the party opposing the deposition to show that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C); *see also Christy v. Pa. Turnpike Comm'n*, 160 F.R.D. 51, 52 (E.D. Pa. 1995).

Under this Court's Local Rules, "[a] schedule may be modified only for good cause shown." Loc. Civ. R. 16(b); *see also* Fed. R. Civ. P. 16(b)(4). Whether good cause exists depends on the danger of prejudice to the non-moving party, the length of the delay, the reason for the delay, and whether the movant acted in good faith. *See Guerrero v. Deane*, No. 1:09CV1313 JCC/TRJ, 2012 WL 3068767, at *2 (E.D. Va. July 27, 201). A district court has wide discretion

to apply the factors in establishing good cause under Rule 16(b). *See Wall v. Fruehauf Trailer Servs., Inc.*, 123 F. App'x 572, 576 (4th Cir. 2005).

## ARGUMENT

The Guide and related portal documents are both responsive to Defendants' discovery requests and highly relevant to primary issues in this case. Because of their late production, however, Defendants were denied the opportunity to question Messrs. Burns and Armbrust about them. These witnesses played critical roles in the creation and presentation of CSXT's rate proposals while they served as NPBL board members, and not only witnessed but participated in the handling of the rate proposals by the NPBL Board. Thus, their testimony regarding the information contained in the Guide and portal documents is also highly relevant. Accordingly, Defendants should be able to depose these witnesses on these newly-produced documents.

**A.    The newly-produced documents are responsive to Defendants' discovery requests.**

Defendants' requests for production of documents to CSXT included several requests directed at documents relating to NPBL's corporate governance and CSXT employees' service as members of the NPBL board. These requests include, as noted above, requests for "[a]ll documents . . . relating to": (a) "instructions by CSXT to any members of the Belt Line's Board of Directors on how to vote at meetings," (Ex. D, NPBL First RFP 19); (b) CSXT's "internal communications concerning the corporate governance of NPBL," (Ex. E, NSR First RFP 16); and (c) "communications between CSXT and each person designated by CSXT to sit on NPBL's board of directors, concerning NPBL or NSR," (*id.*, NSR First RFP 25).

The newly-produced documents are directly responsive to NPBL's and CSXT's document requests. The Guide ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The Guide has a section entitled, ▮▮▮▮▮▮▮

7

███████████████████████████████████████████████████████████████

██████████████████████████████████ (Ex. A at CSXT0154801.) For instance, █████

███████████████████████████████████████████████████████████████

████████████████ (*Id.*) The Guide is an internal communication of CSXT, █████

█████████████████████████████████, and hence is a communication █████████

████████ of NPBL. And the Guide ██████████████████████████████

████████████████████████

CSXT's argument that the Guide does not concern NPBL because NPBL is not named in the document is belied by the testimony of Mr. Burns, who confirmed ████████████

███████████████████████████████████████████████████████ (*See* Ex. F at 127:5–12.)

Likewise, ████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████ (*See* Exs. G, H.)

### B.     The newly-produced documents are relevant to CSXT's claims.

As alleged throughout the Complaint, CSXT contends that Defendants' representatives on the NPBL board of directors breached their fiduciary duty to NPBL and conspired to harm CSXT by, *inter alia*, "rejecting" CSXT's proposals, which called for NPBL to contract with CSXT for the movement of intermodal freight to and from NIT. (*See* Compl. ¶¶ 38–46, 48, 87, 93, 100, 107, 119, 123.)

The Guide and portal documents bear directly on these claims. CSXT never moved for the adoption of the rate proposal, and hence the NPBL board never voted on whether to accept the rate

8

proposal. The failure of the NPBL board to accept the rate proposal, therefore, was not an affirmative rejection, but rather a failure to act, for which CSXT itself owns responsibility given its failure to move for acceptance. This lack of action is a serious problem for CSXT's case, which CSXT seeks to explain away on the basis that it did not need to move for acceptance because the rate proposal could have been accepted by the NPBL management alone. The Guide, ▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

The Guide also ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Ex. A at CSXT0154801.) Yet the CSXT proposals in 2010 and 2018 sought a special rate for CSXT substantially lower than the NPBL published tariff rate that applies to everyone else, plus governance changes that would increase CSXT's shareholder rights. And Messrs. Armbrust and Burns both pushed these proposals, including in letters to NPBL, at the same time they served on the NPBL board. (*See, e.g.*, Compl. Ex. C.)

It is highly relevant to understand how the Guide may have played into the actions of Messrs. Armbrust and Burns as members of the NPBL board, including their respective decisions not to make a motion for NPBL to accept the rate proposals ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

The portal documents are also relevant to these issues, as well as others. For example, they confirm that NPBL is subject to the oversight of the Surface Transportation Board ("STB").[1] This relates to CSXT's strategy—▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[1] The STB's oversight of NPBL bears directly on the issues and arguments presented in NSR's pending Motion to Dismiss, for Judgment on the Pleadings, and for Referral of Issues to the U.S. Surface Transportation Board, which requests inter alia that the Court refer to the STB for determination "[w]hether the $210 line haul switching rate contained in NPBL's Switching Tariff 8100-J is unreasonable." *See* ECF Nos. 115, 116.

███████████████████████████████████████████████████████████████

██████████████████████████ (*See* CSXT0025522 (**Exhibit M**).)

### C. The newly-produced documents are not subject to the ESI Order and should have been produced months ago in response to Defendants' First Requests for Production.

In defense of the late production, CSXT contends that it produced these documents "voluntarily." CSXT claims that the Guide did not need to be produced because it "contains none of the parties' agreed search terms, and, therefore, falls outside the parameters for review and production of ESI." (Letter from Hatch to Wingfield at 2 (Jan. 7, 2021) (**Exhibit N**).)

This argument is contradicted by the testimony of Mr. Burns, ███████████████



███████████████████████████████████████████████

██████████████████████████ (Ex. F at 152:2–15.) He instead █████████████████

████████████████████████████████████████████████████████ (*Id.*)

The ESI Order does not affect the parties' obligations to produce hard copy documents. (*See* ECF No. 83.) A responsive hard copy document maintained or relied upon by one or more of CSXT's twelve custodians should have been produced, regardless of the parties' search terms targeting *electronic* information. The Guide is plainly relevant and important to the issues in dispute, and CSXT properly produced it, albeit late.

### D. CSXT's refusal to produce these witnesses prejudices Defendants.

CSXT's failure to timely produce the Guide and portal documents prevented Defendants from properly developing testimony relevant to the claims and defenses in this matter. These witnesses can provide important testimony about the matters discussed above that Defendants cannot develop in any other manner. Simply put, Messrs. Burns and Armbrust sat on the NPBL

board as CSXT-appointed directors when the rate proposals were made in 2010 and 2018, and only those two witnesses can explain their own lack of action to move for adoption of either proposal. Moreover, both were attorneys, actively engaged in furthering CSXT's strategy at the same time they owed fiduciary duties to NPBL, putting them in a unique position to explain their conduct in light of the Guide.

For these reasons, Defendants will be prejudiced if CSXT is not compelled to produce these two witnesses for targeted depositions. *See Gemini Ins. Co. v. Sirnaik, LLC*, No. 2:18-cv-00424, 2019 WL 4072508, at *2 (S.D. W. Va. Aug. 28, 2019) ("[L]eave to reopen a deposition is appropriate if the topics to be discussed fall within the scope of permissible discovery and are neither duplicative nor obtained more easily from another source or using another method."). By contrast, CSXT will not be prejudiced by producing these witnesses for focused remote depositions.

Good cause exists, therefore, to modify the scheduling order, because CSXT will not be prejudiced by providing these two witnesses for limited depositions. Further, Defendants requested the depositions and participated in the required meet and confer process while still within the allowed discovery window. CSXT, by withholding the Guide, created the need to reopen discovery and conduct additional depositions. Due to Defendants' diligence in bringing this issue to the Court, the delay in completing discovery will be very minimal. *See Guerrero*, 2012 WL 3068767, at *2.

## LOCAL RULE 37(E) CERTIFICATION

Pursuant to Local Rule 37(E), undersigned counsel certify that they have conferred with CSXT's counsel and that they were unable to reach a resolution prior to filing this Motion.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Joint Motion to Compel Depositions and order the relief requested above. A proposed order for the Court's consideration accompanies this Motion.

Dated: January 21, 2021        Respectfully submitted,

**NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY and NORFOLK SOUTHERN RAILWAY COMPANY**

/s/ *W. Ryan Snow*
James L. Chapman, IV, Esq.
W. Ryan Snow, Esq.
Darius K. Davenport, Esq.
David C. Hartnett, Esq.
Alexander R. McDaniel, Esq.
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
Email: jchapman@cwm-law.com
Email: wrsnow@cwm-law.com
Email: ddavenport@cwm-law.com
Email: dhartnett@cwm-law.com
Email: amcdaniel@cwm-law.com

*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

/s/ *Alan D. Wingfield*
Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
Massie P. Cooper (VSB No. 82510)
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200

Facsimile: (804) 698-6061
Email: alan.wingfield@troutman.com
Email: michael.lacy@troutman.com
Email: massie.cooper@troutman.com

John C. Lynch (VSB No. 39267)
Kathleen M. Knudsen (VSB No. 90845)
TROUTMAN PEPPER HAMILTON SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7759
Facsimile: (757) 687-7510
Email: john.lynch@troutman.com
Email: kathleen.knudsen@troutman.com

Monica McCarroll (VSB No. 45622)
REDGRAVE LLP
14555 Avion Parkway, Suite 275
Chantilly, Virginia 20151
Telephone: (703) 592-1154
Facsimile: (703) 230-9859
Email: MMcCarroll@redgravellp.com

Tara L. Reinhart
John R. Thornburgh II
Thomas R. Gentry
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7000
tara.reinhart@skadden.com
john.thornburgh@skadden.com
thomas.gentry@skadden.com

*Attorneys for Norfolk Southern Railway Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 21, 2021, I electronically filed a copy of the foregoing with the Clerk of Court using the CM/ECF system, which sent a notification of such filing (NEF) to the registered participants as identified on the NEF to receive electronic service, including:

> Robert W. McFarland, Esq.
> Benjamin L. Hatch, Esq.
> V. Kathleen Dougherty, Esq.
> McGuireWoods LLP
> World Trade Center
> 101 West Main Street, Suite 9000
> Norfolk, Virginia 23510-1655
> Telephone: (757) 640-3716
> Facsimile: (757) 640-3930
> Email: rmcfarland@mcguirewoods.com
> Email: bhatch@mcguirewoods.com
> Email: vkdougherty@mcguirewoods.com
>
> J. Brent Justus, Esq.
> Ashley P. Peterson, Esq.
> McGuire Woods LLP
> 800 East Canal Street
> Richmond, Virginia 23219-3916
> Email: bjustus@mcguirewoods.com
> apeterson@mcguirewoods.com
>
> *Attorneys for CSX Transportation, Inc.*

>> /s/ Alan D. Wingfield
>> Alan D. Wingfield (VSB No. 27489)
>> Michael E. Lacy (VSB No. 48477)
>> Massie P. Cooper (VSB No. 82510)
>> TROUTMAN PEPPER HAMILTON SANDERS LLP
>> 1001 Haxall Point
>> Richmond, Virginia 23219
>> Telephone: (804) 697-1200
>> Facsimile: (804) 698-6061
>> Email: alan.wingfield@troutman.com
>> Email: michael.lacy@troutman.com
>> Email: massie.cooper@troutman.com
>>
>> *Attorneys for Norfolk Southern Railway Company*