**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

CSX TRANSPORTATION, INC.,
individually and on behalf of NORFOLK
& PORTSMOUTH BELT LINE
RAILROAD COMPANY,

      Plaintiff,

v.                                                            Civil Action No. 2:18-cv-530-MSD-LRL

NORFOLK SOUTHERN RAILWAY
COMPANY, *et al.*,

      Defendants.

_____/

## CSX TRANSPORTATION, INC.'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL DEPOSITIONS OF CSXT WITNESSES

Plaintiff CSX Transportation, Inc. ("CSXT"), by counsel, states as follows in opposition to the Joint Motion to Compel Depositions ("Joint Motion") filed by Defendants Norfolk Southern Railway Company ("NSR") and Norfolk & Portsmouth Beltline Railroad Company ("NPBL") (collectively, "Defendants") (ECF No. 267):

### INTRODUCTION

In the Joint Motion, Defendants ask the Court to modify its scheduling order and order new depositions of CSXT witnesses Steven Armbrust and Michael Burns, so that Defendants can ask them about three generic documents that CSXT voluntarily produced weeks before the close of Defendants' discovery period. Defendants claim they will be prejudiced if they cannot ask Messrs. Armbrust and Burns about these documents, even though (1) neither Mr. Armbrust nor Mr. Burns authored or contributed to the creation of the documents, (2) Defendants previously questioned

1

both witnesses at length about all potentially relevant topics related to these documents, and (3) Defendants have already questioned *five* other CSXT witnesses about these same documents.

Defendants' current argument stands in stark contrast to the one NSR relentlessly advanced less than five months ago. Notwithstanding making substantial document productions *after* CSXT's discovery period closed, NSR insisted that the Court should *not* modify the scheduling order to allow CSXT to depose NSR witnesses who authored or received those late-produced documents. *See* ECF No. 215. According to NSR, it was simply "a hard fact of litigation" that CSXT had taken its depositions without the benefit of two-thirds of NSR's productions, including *thousands* of responsive and highly relevant documents. *See id.* at 13. Now that the shoe is supposedly on the other foot, however, NSR claims that it will suffer prejudice if the Court does not grant it additional time to re-depose two CSXT witnesses about three documents for which it has testimony from five other witnesses.

The boldness of this about-face position is underscored by the fact that NSR's belated productions have continued over the past five months. On November 30, 2020, NSR made its *fourth* untimely production in this case, including many highly relevant documents belonging to key NSR custodians Michael McClellan and Christopher Luebbers. NSR produced these documents only after Mr. McClellan testified during his second deposition—ordered by this Court to rectify NSR's prior discovery deficiencies—that he maintained a hard-copy file of documents pertaining to the NPBL. According to NSR, the documents produced on November 30 had been "preserved," but were "inadvertently omitted" from NSR's collection of documents for review.

During a meet-and-confer a few weeks later, CSXT asked to re-depose Messrs. McClellan and Luebbers about these critical late-produced documents. Later that day, NSR for the first time insisted that it be allowed to re-depose CSXT witnesses Steven Armbrust and Michael Burns about

2

CSXT's Reference Guide for Affiliate Board Service ("the Guide"), a generic reference document that CSXT voluntarily produced weeks earlier in response to a request from NPBL's counsel following Mr. Burns' deposition. NPBL did not join in NSR's request to re-depose Messrs. Armbrust and Burns. After CSXT rejected NSR's request—including its offer to trade the depositions of Messrs. McClellan and Luebbers for the depositions of Messrs. Armbrust and Burns—Defendants filed the Joint Motion.

This is an instance of no-good-deed-goes-unpunished. CSXT voluntarily and cooperatively responded to an informal request from NPBL's counsel by promptly producing a single document referenced in a deposition. NSR seized on the opportunity to seek additional discovery predicated on a document it never asked for, and NPBL has now joined in this Motion, despite having never asked CSXT for the requested relief.

The Guide and related documents do not merit re-opening the depositions of Messrs. Armbrust and Burns. Unlike NSR's late production of highly significant responsive documents for Messrs. McClellan and Luebbers, among others, the Guide is not responsive to Defendants' discovery requests and falls outside the scope of discovery for electronically stored information, as set forth in the parties' ESI Order. Moreover, Defendants have not identified any relevant, non-cumulative testimony about these documents that is needed from Messrs. Armbrust and Burns, particularly when numerous other CSXT witnesses (including former CSXT-appointed NPBL board members) have already testified about them.

The Joint Motion appears designed primarily to deflect attention from NSR's own serious, repeated discovery violations and to detract from CSXT's on-going efforts to remedy the harm caused by those violations. The Court should reject this effort and deny the Joint Motion.

3

## **BACKGROUND**

On December 3, 2020, Defendants deposed Michael Burns, CSXT's Vice President and General Counsel, who served as an NPBL Board member from April 2018 to December 2019. During his deposition, Mr. Burns testified that, in preparation for service on NPBL and other CSXT-affiliated boards, he reviewed the Guide, which he described as "a high-level training manual for board members on [CSXT's] different boards." ECF No. 268-6 at 3. The Guide is an 18-page document containing generic reference material about board service, directed generally to CSXT personnel designated to serve on any CSXT affiliate board. *See* ECF No. 268-1.

After Mr. Burns' deposition, counsel for NPBL sent counsel for CSXT an email asking CSXT to produce the Guide. *See* Email from Snow to Hatch dated Dec. 3, 2020, attached as **Exhibit A**. NSR did not join in this request. Although the Guide was not responsive to any of NPBL's requests for production (RFPs), in the spirit of cooperation, CSXT nonetheless voluntarily produced it on December 7, 2020.[1] *See* Email from Peterson to Snow dated Dec. 7, 2020, attached as **Exhibit A**.

The next day, CSXT sent a letter to NSR regarding its belated production of hard-copy files belonging to two key NSR custodians, Michael McClellan and Chris Luebbers. *See* Letter from Hatch to McCarroll and Lacy dated December 8, 2020, attached as **Exhibit B**. In that letter, CSXT expressed concern over NSR's failure to produce these highly relevant documents until more than eight months after CSXT's original discovery period closed, and until after the deposition of Mr. Luebbers and *two* depositions of Mr. McClellan. *See id.* NSR failed to produce these documents until after Mr. McClellan testified about them during his second deposition—a

---

[1] Defendants began incorporating the Guide into their depositions the following week, and they ultimately questioned five CSXT witnesses about this document during their remaining discovery period.

deposition that this Court ordered to remedy NSR's prior discovery deficiencies. *See id.*; *see also* ECF No. 237 (Order granting CSXT's motion to compel depositions). In the December 8 letter, CSXT's counsel asked NSR to confirm the completeness of its productions so that CSXT could properly evaluate the scope of the problem caused by NSR's belated productions. *See* **Ex. B** at 2.

NSR responded on December 18, 2020. *See* Letter from McCarroll to Hatch dated Dec. 18, 2020, attached as **Exhibit C**. In that letter, NSR claimed that it had "undertaken reasonable efforts" to comply with its discovery obligations. *See id.* at 2. NSR also made *yet another* production of responsive documents, explaining that it had failed to previously produce these documents "due to a technical issue." *See id.* at 2 n.4.

Four days after NSR made its *fifth* untimely production in this case, the parties participated a meet-and-confer call, during which CSXT's counsel sought NSR's consent to re-depose Messrs. McClellan and Luebbers regarding the highly relevant documents contained in NSR's November 30 production. *See* Letter from Hatch to Lacy dated Dec. 23, 2020, memorializing Dec. 22, 2020 meet-and-confer call, attached as **Exhibit D**. Later that day, NSR sent CSXT a letter acknowledging the Guide for the first time. *See* ECF No. 268-11. Despite never having asked CSXT to produce the Guide, NSR demanded that CSXT (1) "search for and produce relevant documents in CSXT's board portal," as referenced in the Guide; and (2) consent to re-depositions of Mr. Burns and Steven Armbrust—another CSXT employee who served as an NPBL board member from 2010 to 2015—"limited to the Reference Guide and any portal documents that are produced."[2] *Id.* NPBL did not join in either of these requests.

---

[2] NSR later offered to allow CSXT to re-depose Messrs. McClellan and Luebbers in exchange for CSXT re-opening the depositions of Messrs. Armbrust and Burns. *See* ECF No. 268-12.

CSXT reviewed the NPBL-related documents maintained on the "portal" referenced in the Guide, and identified two non-duplicative documents: (1) a one-page spreadsheet identifying the directors and officers of NPBL as of December 15, 2015, *see* ECF No. 268-8; and (2) a one-page "entity snapshot" containing basic corporate information about NPBL, including its state of incorporation and tax identification number, *see* ECF No. 268-7.  In a further effort to cooperate, CSXT voluntarily produced these documents on January 7, 2021.  See 268-14 at 2-3.

CSXT rejected NSR's offer to "exchange" the re-opened depositions of Messrs. McClellan and Luebbers for the re-opened depositions of Messrs. Burns and Armbrust.  As CSXT explained, neither the Guide nor the "portal" documents is equivalent to the dozens of documents produced by NSR on November 30, which are directly responsive to multiple of CSXT's requests for production and are highly relevant to core issues in the case.  *See id.* at 3; *see also, e.g.*, NSR_00306367 (June 1999 email string between NSR employees Michael McClellan and Augie Eckhardt, discussing CSXT's efforts to access NIT. ███████████████████████████████████████████████████████████████████████████) (emphasis added); NSR_306368 (chain of faxes from 1999 discussing NPBL rates, ███████████████████████████████████████); NSR_00306424 (printed copy of September 2002 email from NS members of NPBL rate committee to the NS-appointed NPBL directors, noting ███████████████████████████████████████████████████████████████████); NSR_00177916-918 (July 2009 email from Jeff Heller to Mr. McClellan attaching a draft letter to Mark Manion, then an NS-appointed NPBL director, titled ███████████████████████████ which

states: ███████████████████████████████████████████

███████████████████████████████████████████) (emphasis added), collectively attached as **Exhibit E**.³

On January 11, 2021, NSR responded by noting that the parties were "at an impasse" on its request to re-depose Messrs. Burns and Armbrust. *See* Email from Wingfield dated Jan. 11, 2021, attached as **Exhibit F**. Defendants' discovery period concluded on January 20, 2021, and the Defendants filed the Joint Motion the following day.⁴

## ARGUMENT

### I. *Applicable Legal Standards.*

Under Rule 26 of the Federal Rules of Civil Procedure, the scope of discovery "is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop its case." *Cohen v. United States*, No. 3:16-CV-01489, 2018 WL 1900043, *1–2 (D.S.C. Apr. 20, 2018). But "discovery is not limitless, and the court has the discretion to protect a party from 'oppression' or 'undue burden or expense.'" *Id.* (citing Fed. R. Civ. P. 26(c)). Indeed, the Federal Rules provide that the Court "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that ... the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case[.]" Fed.R.Civ.P. 26(b)(2)(C)(iii). And a party seeking to compel discovery must articulate the necessary linkage "between the discovery sought and the claims brought and/or defenses asserted in the case." *Palm*

---

³ NSR ultimately agreed to CSXT's request to re-depose Messrs. McClellan and Luebbers on these and other relevant documents from its belated production, but the parties are at an impasse over payment of CSXT's costs and fees for these further depositions.

⁴ Although NPBL's counsel first requested that CSXT produce the Guide, NPBL did not request to re-depose Messrs. Burns and Armbrust.

7

*Bay Int'l, Inc. v. Marchesi Di Barolo S.p.A.*, No. CV09-601, 2009 WL 3757054, at *2 (E.D.N.Y. Nov. 9, 2009).

Once a witness has been deposed, a party seeking to re-depose that individual must obtain leave of court. *See* Fed. R. Civ. P. 30. Leave to take a second deposition may be granted "if the topics to be discussed fall within the scope of permissible discovery and are neither duplicative nor obtained more easily from another source or using another method." *Gemini Ins. Co. v. Sirnaik, LLC*, No. 2:18-cv-00424, 2019 U.S. Dist. LEXIS 146224, at *7 (S.D. W. Va. Aug. 28, 2019). But when the information sought is "unreasonably cumulative or duplicative" or "the burden of the deposition outweighs its likely benefits," leave to re-depose the witness should be denied. *See Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18, 2018 U.S. Dist. LEXIS 2853, at *12-13 (E.D.N.C. Jan. 8, 2018) (citing Fed. R. Civ. P. 26(b)(2)).

Once set, a scheduling order may be modified only for "good cause." Fed. R. Civ. P. 16(b)(4); *see also* E.D. Va. Local Civil Rule 16 ("The parties and their counsel are bound by the dates specified in [the Scheduling Order] and no extensions or continuances thereof shall be granted in the absence of a showing of good cause. Mere failure on the part of counsel to proceed promptly with the normal processes of discovery shall not constitute good cause for an extension or continuance."). "[A] district court acts wholly within its discretion in denying additional discovery where the delay in discovery is due to the fault of the complaining party." *Strag v. Bd. of Trustees*, 55 F.3d 943, 953 (4th Cir. 1995).

## II. *The Guide and Portal Documents Do Not Warrant Modification of the Scheduling Order or Re-Deposition of Messrs. Armbrust or Burns.*

Because the discovery period has closed, Defendants face two hurdles to obtain the depositions they seek. First, Defendants must demonstrate "good cause" to modify the scheduling order, which requires a showing of diligence. *See* E.D. Va. Local Civil Rule 16. Second, because

8

Messrs. Armbrust and Burns have already been deposed once in this case, Defendants must demonstrate that the testimony sought would not be duplicative or cumulative of other evidence in the record. *See Gemini Ins.*, 2019 U.S. Dist. LEXIS 146224, at *7.

Defendants cannot satisfy either standard here. The Guide and portal documents are not responsive to Defendants' requests for production (RFPs), and the substance of these documents is duplicative of information well-established elsewhere in the record. Moreover, Defendants have identified no new topics or lines of questioning that they have not already covered extensively with Messrs. Armbrust and Burns, as well as with other CSXT witnesses.

### A. The Guide and Portal Documents are Not Responsive to Defendants' Requests for Production.

Defendants argue that they are entitled to re-depose Messrs. Burns and Armbrust on the Guide and portal documents because these document are responsive to Defendants' discovery requests. But none of the requests for production (RFPs) cited by Defendants actually encompasses, let alone requests, production of the Guide or the two portal documents.

Defendants claim the Guide is responsive to NPBL's RFP 19, which seeks "[a]ll documents in effect after January 1, 2007, relating to *instructions by CSXT to any members of the Belt Line's Board of Directors on how to vote at meetings*." ECF No. 268 at 7 (emphasis added). Specifically, Defendants contend that the following page from the Guide "instructs" CSXT-appointed board members how to vote at NPBL meetings:



*See* ECF No. 268-1 at CSXT0154801. But this page says nothing about how *any* director should vote at *any* meeting of *any* CSXT-affiliated board—much less how a CSXT-appointed NPBL director should vote at any particular NPBL meeting on a particular topic. It simply lists generic, high-level questions a director should consider when exercising his or her judgment in assessing matters submitted to a CSXT-affiliated board on which he or she may sit.

Defendants also claim the Guide is responsive to NSR's First RFP No. 16, which seeks "[a]ll documents relating to [CSXT's] internal communications concerning the corporate governance of NPBL," ECF No. 268-5 at 3; and NSR's First RFP No. 25, which seeks "[a]ll documents, created during or referring to the terms served by defendants Moss, Merilli, Hull, and Hurlbut as members of the NPBL board of directors, relating to communications between CSXT and each person designated by CSXT to sit on NPBL's board of directors, concerning NPBL or NSR," *id.* at 4-5. But the Guide is not a "communication," under any reasonable definition of that

10

term.[5] Moreover, it does not "refer to" the terms served by the individual NPBL board members identified in NSR's requests. More to the point, the Guide certainly does not "concern" NSR or NPBL—indeed, neither of those entities is mentioned anywhere in this generic document. *See generally* ECF No. 268-1.

Defendants suggest that Mr. Burns' testimony shows that the Guide "was provided to him by CSXT for the purpose of informing him about his service on the NPBL Board." ECF No. 268 at 8. But that is not what Mr. Burns said. In his deposition, Mr. Burns testified that he was asked to join the boards of multiple CSXT-affiliated entities, including NPBL, in or around 2018. *See* Burns Dep., attached as **Exhibit H**, at 18:4-19:25. He explained that he reviewed the Guide in connection with *all* of those appointments. *See id.* at 127:2-12. Nothing in his testimony suggests that CSXT gave him the Guide to inform him about *NPBL* specifically. Indeed, the Guide's generic provisions would be equally applicable to *any* board on which Mr. Burns sat.

Because the Guide is not responsive to Defendants' RFPs, CSXT did not have to produce it. Moreover, the Guide certainly was not subject to production under the parties' agreed ESI Order. In November 2019, the parties agreed to certain limitations on the production of electronically stored information (ESI), including the application of search terms to identify potentially responsive ESI. *See* ECF No. 83 ¶¶ 3(g)-(h) (outlining how search terms were identified, agreed to, and applied to potentially responsive ESI). The Guide contains none of the parties' agreed search terms, and it therefore falls outside the parties' agreed parameters for review and production of ESI. *See* ECF No. 83 at 1 ("Production of ESI in accordance with this Order

---

[5] In its RFPs, NSR defined the term "communication" so broadly as to render it meaningless, and CSXT objected on that basis. *See* CSXT's Objections and Responses to NSR's RFPs, attached as **Exhibit G**. The term "communication" describes "the expression or exchange of information by speech, writing, gestures, or conduct; the process of bringing an idea to another's perception," Black's Law Dictionary (8th ed.). It does not encompass every document in written form.

shall be considered in accordance with Federal Rule of Civil Procedure 34(b)(2)(E). To the extent this Order imposes limitations on discovery otherwise available under the Federal Rules of Civil Procedure . . . , the parties have agreed to such limitations."); *see also* CSXT's Responses to NSR's First RFPs (stating, for RFP Nos. 16 and 25, that "[s]ubject to the ... ESI Order, CSXT will collect documents from the agreed-upon custodians and agreed-upon non-custodial data sources, run agreed-upon search terms across its documents if necessary, and produce any responsive, non-privileged documents"), **Ex. G**, and CSXT's Responses to NPBL's First RFPs (stating the same for RFP No. 19), attached as **Exhibit I**.

Defendants seek to avoid the limitations of the ESI order by arguing that the Guide is a hard copy document not subject to the Order, based on testimony from Mr. Burns' deposition. *See* ECF No. 268 at 10. But Mr. Burns did not "clearly" testify that the Guide was provided to him in hard copy, as Defendants suggest. To the contrary, Mr. Burns' testified as follows:

> MR. SNOW: What does that training manual look like? Was it – was it a hard copy or is it something on – on a computer?
>
> MR. BURNS: If I recall, it was maybe a – a hard copy, just – I mean, a – a – slides or narrative. ***I can't recall.***
>
> Mr. SNOW: Okay. Is that something you still have today?
>
> Mr. BURNS: I don't know. It's a – I don't know if I specifically have it or if we still have it here. I just – I don't know.

*See* ECF No. 268-6 at 4. In other words, Mr. Burns did not recall whether the Guide had been provided to him in hard copy—much less whether he retained any such copy. In responding to NPBL's request for the Guide, CSXT located it in an electronically stored format, which is subject to the terms of the ESI Order.

Finally, Defendants contend, in a single sentence, that the "portal documents" CSXT voluntarily produced are responsive to Defendants' RFPs because they refer to aspects of NPBL's

12

"corporate governance." *See* ECF No. 268 at 8. The only RFP that Defendants cite pertaining to NPBL's "corporate governance," however, seeks "internal communications" about that topic. Neither the spreadsheet of NPBL directors and officers, nor the "entity snapshot," meet this description. Moreover, the portal documents provide no information or insight on NPBL's corporate governance that is not entirely cumulative of information that was already well-known to Defendants and well-established in the record of this case before the depositions of Messrs. Armbrust and Burns.

In sum, neither the Guide nor the portal documents is responsive to any of Defendants' cited RFPs, or any other RFPs that CSXT is aware of. CSXT's voluntary production of these documents after one of them was referenced in a deposition, as an accommodation provided in the spirit of cooperation, provides no basis to re-depose Messrs. Armbrust and Burns.

### B. Defendants Identify No New, Non-Cumulative Testimony Needed Based on the Guide and Portal Documents.

Defendants argue that the Guide is relevant to CSXT's contention that "Defendants' representatives on the NPBL Board breached their fiduciary duty to NPBL and conspired to harm CSXT by, *inter alia*, 'rejecting' CSXT proposals'" for service to NIT. ECF No. 268 at 8. Defendants point primarily to the Guide's statement that a board should "scrutinize and approve significant contracts of the Company." *Id.* at 9. This passage appears in full below:

A board of directors should:
- Scrutinize and approve major decisions such as:
  - Major contracts/transactions
  - Election of officers annually
  - Executive compensation

*See* ECF No. 268-1 at CSXT0154800. According to Defendants, they need to understand how this passage from the Guide "may have played into the actions of Messrs. Armbrust and Burns as members of the NPBL board, including their respective decisions not to make a motion for NPBL to accept the rate proposals, when CSXT's own documents indicate that whether to accept or reject a major contract was a decision to be made by the board." ECF No. 268 at 9.

Defendants have already questioned Messrs. Armbrust and Burns at length about their conduct at NPBL meetings, including whether they moved for a vote on CSXT's service proposals and other actions they did or could have taken related to the proposals. *See* Armbrust Dep., attached as **Exhibit J**, at 115:7-116:19, 182:9-185:4, 196:7-198:19, 211:8-214:21, 220:7-222:18, 246:3-250:6, 289:15-293:1; Burns Dep, **Ex. H**, at 79:20-92:23. The Guide, on its face, does not dictate how Messrs. Armbrust and Burns should have conducted themselves at these meetings on a particular issues or topics, and Defendants have not identified any testimony from Messrs. Armbrust or Burns that they assert is inconsistent with the Guide's general precepts. Given Messrs. Armbrust's and Burns' extensive prior testimony on these issues—as well as the testimony from other CSXT witnesses about the Guide itself[6]—it is hard to understand what non-cumulative testimony Defendants hope to obtain by asking Messrs. Armbrust and Burns about the Guide's general statement that directors "should scrutinize and approve major decisions."[7]

Defendants also claim they need to question Messrs. Armbrust and Burns about the Guide because it "belies" testimony from CSXT's corporate representative that the service proposals "did not need board approval." ECF No. 268 at 3. But Defendants already questioned CSXT's

---

[6] *See* Swafford Dep., ECF No. 268-9 at 3-5; Eliasson Dep., attached as **Exhibit L**, at 88:6-91:5.

[7] This is all the more true because Messrs. Armbrust and Burns are attorneys who testified that they are familiar with the fiduciary obligations of individuals serving as directors. *See* Armbrust Dep., **Ex. J**, at 32:9-18, 34:9-13; Burns Dep., **Ex. H**, at 20:4-7, 58:12-17, 65:5-13, 78:3-10.

corporate representative, Robert Girardot, at length about the Guide and CSXT's internal strategy. Mr. Girardot testified that, in his professional experience, it is "unusual" for a short line railroad like NPBL to require board approval to enter into business proposals like those put forward by CSXT. *See* Girardot Dep., attached as **Exhibit K**, at 65:19-69:5. He also testified, however, that NPBL would demand that CSXT's 2010 service proposal be reviewed by the Board. *See id.* at 63:2-17 (testifying that CSXT understood NPBL would require the proposal to be taken "all the way up to the board of directors"). Nothing about that testimony is inconsistent with the Guide or with the prior testimony of Messrs. Armbrust and Burns.

Defendants note that the Guide "cautions CSXT-appointed board members to scrutinize matters that 'favor one shareholder group over another,'" and identify certain proposals that they apparently claim would have favored CSXT. *See* ECF No. 268 at 9. But Defendants have already questioned Messrs. Armbrust and Burns about these purported conflicts, *see, e.g.*, **Ex. J** at 203:20-209:3; **Ex. H** at 139:2-141:20, 153:6-156:11, 163:1-164:11, and they make no effort to identify any new, non-duplicative information that could be obtained from treading this same ground again.

Finally, Defendants claim that they need to question Messrs. Armbrust and Burns about the "portal document" that "confirm[s] that NPBL is subject to the oversight of the Surface Transportation Board ('STB')." ECF No. 268 at 9. The generic proposition that NPBL is subject to the oversight of the STB is hardly news to the Defendants, who have brought motions to dismiss in reference to claimed STB oversight. Indeed, this Court has already *rejected* the argument that the STB's jurisdiction preempts or otherwise limits CSXT's claims in this case. *See, e.g.*, ECF No. 66 at 20 (Op. and Order, declaring NPBL's jurisdictional argument to be "meritless"). Defendants cannot rely on the portal document's generic reference to STB oversight as a basis to re-open the depositions of Messrs. Armbrust and Burns, particularly to question them about

"CSXT's strategy" related to the STB, as purportedly reflected in a single document CSXT produced nearly a year ago. *See* ECF No. 268 at 9-10 (citing CSXT0025522, which CSXT produced on February 10, 2020).[8]

Defendants have identified no material, non-cumulative testimony that could be obtained from deposing Messrs. Armbrust and Burns about the Guide or the two portal documents. Particularly in light of the timing of NSR's request for these depositions, it appears clear that the Joint Motion is nothing more than an attempt to deflect attention from NSR's own repeated, serious discovery violations. But the Guide is not equivalent in form, substance, or significance to the many highly relevant documents NSR has produced in the eleven months since CSXT's original discovery period closed. It provides no basis for modifying the scheduling order or re-opening the depositions of Messrs. Armbrust and Burns.

---

[8] Moreover, after CSXT produced the two portal documents, Defendants questioned CSXT's corporate designee, Mr. Girardot about the "entity snapshot" document, specifically inquiring about the notation that the NPBL is "subject to STB oversight." **Ex. K** at 171:13-173:2.

**CONCLUSION**

For all the above reasons, CSXT respectfully requests that the Court deny Defendants' Joint Motion in its entirety, and award CSXT its costs, including attorneys' fees, incurred in opposing the Joint Motion.

Dated:  February 4, 2021                           Respectfully submitted,

                                        **CSX TRANSPORTATION, INC.**
                                        *By Counsel*

                                        */s/ Robert W. McFarland*
                                        Robert W. McFarland (VSB No. 24021)
                                        Benjamin L. Hatch (VSB No. 70116)
                                        V. Kathleen Dougherty (VSB No. 77294)
                                        McGuireWoods LLP
                                        World Trade Center
                                        101 West Main Street, Suite 9000
                                        Norfolk, Virginia  23510-1655
                                        Telephone: (757) 640-3716
                                        Facsimile:  (757) 640-3930
                                        E-mail: rmcfarland@mcguirewoods.com
                                        E-mail: bhatch@mcguirewoods.com
                                        E-mail: vkdougherty@mcguirewoods.com

                                        J. Brent Justus (VSB No. 45525)
                                        Ashley P. Peterson (VSB No. 87904)
                                        McGuireWoods LLP
                                        Gateway Plaza
                                        800 East Canal Street
                                        Richmond, Virginia  23219-3916
                                        Telephone:  (804) 775-1000
                                        Facsimile:  (804) 698-2026
                                        E-mail: bjustus@mcguirewoods.com
                                        E-mail: apeterson@mcguirewoods.com

**CERTIFICATE OF SERVICE**

I certify that on this 4th day of February, 2021, a true and correct copy of the foregoing was served on all counsel of record via Notice of Electronic Filing by filing with the Court's CM/ECF system.

/s/ Robert W. McFarland
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
V. Kathleen Dougherty (VSB No. 77294)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Telephone: (757) 640-3716
Facsimile: (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: vkdougherty@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219-3916
Telephone: (804) 775-1000
Facsimile: (804) 698-2026
E-mail: bjustus@mcguirewoods.com
E-mail: apeterson@mcguirewoods.com