# EXHIBIT B

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Norfolk Division

**CSX TRANSPORTATION, INC.,**

      **Plaintiff,**

v().                                                                                                       Civil Action No. 2:18cv530

**NORFOLK SOUTHERN RAILWAY**
**COMPANY,** *et al.*,

      **Defendants.**

### DEFENDANT NORFOLK SOUTHERN RAILWAY COMPANY'S AMENDED NOTICE OF RULE 30(b)(6) DEPOSITION OF PLAINTIFF CSX TRANSPORTATION, INC.

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendant Norfolk Southern Railway Company ("NSR") will take the deposition upon oral examination of Plaintiff CSX Transportation, Inc. ("CSXT") regarding the topics set forth in the attached Exhibit A. In accordance with Rule 30(b)(6) of the Federal Rules of Civil Procedure, CSXT shall designate one or more individuals to testify on its behalf as to the topics set forth in the attached Exhibit A. NSR reserves the right to amend, revise, or supplement this notice and the topics set forth in Exhibit A.

The deposition will commence at 9:30 a.m. on January 13, 2021, or at such other time and place as may be agreed upon by the Parties or ordered by the Court. The deposition will take place in accordance with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Eastern District of Virginia, and under oath and before a notary public or other officer authorized to administer oaths under law. The deposition will be taken remotely using the court-reporting service Veritext to host, transcribe, and visually record the deposition by a certified legal video specialist. The deposition will be taken by and before a certified court

reporter and will be recorded by stenographic and audiovisual means, and will continue from day to day until completed.

Dated:  December 18, 2020

Respectfully submitted,

**NORFOLK SOUTHERN RAILWAY COMPANY**

/s/Michael E. Lacy
Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
Massie P. Cooper (VSB No. 82510)
TROUTMAN PEPPER HAMILTON SANDERS, LLP
1001 Haxall Point
Richmond, Virginia 23219
Tel. (804) 697-1200
Fax (804) 698-6061
alan.wingfield@troutman.com
michael.lacy@troutman.com
massie.cooper@troutman.com

John C. Lynch (VSB No. 39267)
Kathleen M. Knudsen (VSB No. 90845)
TROUTMAN PEPPER HAMILTON SANDERS, LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA  23462
Telephone: (757) 687-7759
Facsimile: (757) 687-7510
john.lynch@troutman.com
kathleen.knudsen@troutman.com

Monica McCarroll (VSB No. 45622)
REDGRAVE LLP
14555 Avion Parkway, Suite 275
Chantilly, Virginia 20151
Telephone: (703) 592-1154
Facsimile: (703) 230-9859
Email: MMcCarroll@redgravellp.com

Tara L. Reinhart
John R. Thornburgh II
Thomas R. Gentry
SKADDEN, ARPS, SLATE,

                    MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7000
tara.reinhart@skadden.com
john.thornburgh@skadden.com
thomas.gentry@skadden.com
*Counsel for Defendant Norfolk Southern Railway Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2020, I emailed a copy of the foregoing to:

| | |
|---|---|
| Robert W. McFarland<br>Benjamin L. Hatch<br>V. Kathleen Dougherty<br>MCGUIREWOODS LLP<br>World Trade Center<br>101 West Main Street, Suite 9000<br>Norfolk, Virginia 23510-1655<br>Telephone: (757) 640-3716<br>Facsimile: (757) 640-3930<br>rmcfarland@mcguirewoods.com<br>bhatch@mcguirewoods.com<br>vkdougherty@mcguirewoods.com<br><br>Ashley Partin Peterson<br>Johnny Brent Justus<br>McGuire Woods LLP<br>800 East Canal Street<br>Richmond, Virginia 23219<br>Telephone: (804) 775-1190<br>Facsimile: (804) 698-2091<br>apeterson@mcguirewoods.com<br>bjustus@mcguirewoods.com<br>*Attorneys for CSX Transportation, Inc.* | James L. Chapman, IV<br>W. Ryan Snow<br>Darius K. Davenport, Sr.<br>David C. Hartnett<br>CRENSHAW, WARE & MARTIN, P.L.C.<br>150 W. Main Street, Suite 1500<br>Norfolk, Virginia 23510<br>Telephone: (757) 623-3000<br>Facsimile: (757) 623-5735<br>jchapman@cwm-law.com<br>wrsnow@cwm-law.com<br>ddavenport@cwm-law.com<br>dhartnett@cwm-law.com<br><br>*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company* |

/s/Michael E. Lacy
Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
Massie P. Cooper (VSB No. 82510)
TROUTMAN PEPPER HAMILTON SANDERS, LLP
1001 Haxall Point
Richmond, Virginia 23219
Tel. (804) 697-1200
Fax (804) 698-6061
alan.wingfield@troutman.com
michael.lacy@troutman.com
massie.cooper@troutman.com

## **EXHIBIT A**

## **Definitions**

1. "Document" means all writings of any kind whatsoever, whether handwritten, typed, printed, computerized, or otherwise visually reproduced, including but not limited to files, communications, accounting records, memoranda, including interoffice and intraoffice memoranda, reports, notes, telephone and voicemail messages, instructions, correspondence, letters, email messages, text messages, diaries, calendars, day-timers, telegrams, investigations, summaries, any drafts of such documents, marginal comments appearing in any documents, schedules, notebooks, computer printouts or other data stored on a computer or electronic device, invoices, and records of payment, and shall include, but not be limited to, any document of whatever form upon which information was recorded, and shall include separately any document which is a non-identical copy of another.

2. "Communication" includes every manner of transmitting or receiving facts, information, opinions, or thoughts from one person to another person, whether orally, by documents, writing, email, text message, or copy thereof, and to words transmitted by telephone, radio, or any method of voice recording. The words "documents" and "communications" explicitly include text messages, iMessages, messages through social media, messages through apps, and emails (including personal email accounts), regardless of whether you or your representatives characterize those mediums as personal (*i.e.*, non-business).

3. The words "relate," "relates," and "relating to" shall be interpreted broadly to describe information that discusses, analyzes, evaluates, consists of, or otherwise refers to the identified subject matter.

4. The terms "you," "your," and "CSXT" mean or refer to the plaintiff in this action, CSX Transportation, Inc., and its directors, officers, employees, agents, representatives, parents, subsidiaries, affiliates, and predecessor(s) in interest.

5. "NSR" means the defendant in this action, Norfolk Southern Railway Company, its predecessor(s) in interest, and all persons and entities acting or purporting to act on its behalf.

6. "NPBL" means the defendant in this action, Norfolk & Portsmouth Belt Line Railroad Company, and all persons and entities acting or purporting to act on its behalf.

7. "Individual Defendants" means Defendants Jerry Hall, Thomas Hurlbut, Philip Merilli, and Cannon Moss.

8. "Complaint" means the Complaint in this matter filed by CSXT.

9. "VPA" means Virginia Port Authority, a political subdivision of the Commonwealth of Virginia that owns the VIT, and all persons acting on its behalf at any point in time, including but not limited to, current or former officers, management, directors, employees, agents, attorneys, and representatives.

10. "VIT" means Virginia International Terminals, LLC, a Virginia limited liability company owned by the VPA, which operates a group of marine terminal facilities referred to as the "Port of Virginia," all persons and entities acting or purporting to act on its behalf.

11. "NIT" means Norfolk International Terminals located at 77337 Hampton Blvd, Norfolk, VA 23505, and all persons and entities acting or purporting to act on its behalf.

12. "VIG" means Virginia International Gateway, formerly known as APM Terminals Virginia, located at 1000 Virginia International Gateway Blvd, Portsmouth, VA 23703, and all persons and entities acting or purporting to act on its behalf.

13. "PMT" means Portsmouth Marine Terminal, located at 2000 Seaboard Ave, Portsmouth, VA 23707, and all persons and entities acting or purporting to act on its behalf.

14. "East Coast Ports" means all major ocean ports and marine terminals on the Atlantic coasts located east of the Mississippi River, including, but not limited to, the ports and terminals in Boston, New York/New Jersey, Halifax, Philadelphia, Baltimore, Norfolk, Charleston, Savannah, Jacksonville, and Miami.

15. "Gulf of Mexico Ports" means all major ocean ports and marine terminals located on the Gulf of Mexico, including, but not limited to, the ports and terminals located in New Orleans, Gulfport, Mobile, and Panama City.

16. "West Coast Ports" means all major ocean ports and marine terminals on the Pacific coasts located west of the Mississippi River including, but are not limited to, the ports of Seattle, Tacoma, Portland, Oakland, San Francisco, Los Angeles, and Long Beach.

17. The "Diamond track" means the track between NS Juncture and Carolina Juncture, which was discontinued in 2008. *See Norfolk S. Ry. Co.-Discontinuance of Service Exemption-in Chesapeake, Va.*, Docket No. AB-290 (Sub-No. 299X), filed April 25, 2008.

18. The "2009/2010 Rate Proposals" mean all matters connected to CSXT's letters dated October 15, 2009, July 19, 2010, and July 23, 2010 to NPBL located at CSXT0125214-CSXT0125216, CSXT0101891-CSXT0101897, and NPBL007431-NPBL007436 respectively.

19. The "2018 Rate Proposal" means all matters connected to CSXT's letter dated March 23, 2018 located at NSR_00051475-NSR_00051488.

**Additional Definitions per this Amendment to Notice:**

20. "NPBL $210 line haul switching rate" means the line haul switching rate currently in effect applicable to intermodal moves to NIT, as referenced in paragraphs 34 and 37 of your Complaint.

21. "NSR trackage fee" means the trackage fee payable by NPBL to NSR for moves to NIT as referenced in paragraph 100 of your Complaint.

## Deposition Topics

**The NPBL**

1. The formation, purpose, and operations of the NPBL from the date of inception to present, including pursuant to the terms of the NPBL Operating Agreement, attached as Exhibit A to the Complaint.

2. The identification and interpretation of all agreements governing the management and operation of NPBL.

3. The apportionment of NPBL Board Members between NSR and CSXT, including, but not limited to, pursuant to the March 1, 1989 Supplemental Agreement, attached as Exhibit C to the Complaint, and the April 10, 1996 revision to the NPBL by-laws, attached as Exhibit D to the Complaint.

4. The appointment of persons to management and Board of Directors positions of the NPBL, including the identity of those Board members, how they are selected to serve on the NPBL Board; their position(s) at CSXT, if any, before, during, and after their tenure on the NPBL Board; and any agreements or understandings between those Board members and CSXT pertaining to their service on the NPBL Board.

5. NPBL's attempted sale of Virginia Avenue Yard (Pinner's Point) in or around 2008, including communications regarding this attempted sale and the likely consequences of this sale.

6. NPBL's decision in or around 2008 to terminate access rights to the Diamond track, including communications regarding this decision and NPBL's participation in related filings with the Surface Transportation Board.

7. CSXT's 2009/2010 Service Proposals to the NPBL, including without limitation the individuals involved in creating the proposals, the considerations weighed in formulating the proposals, the circumstances that prompted CSXT to make the proposals, internal and external discussion and analysis of the proposals before and after they were made, and NPBL's consideration of the proposals.

8. CSXT's 2018 Service Proposal to the NPBL, including without limitation the individuals involved in creating the proposal, the considerations weighed in formulating the proposal, the circumstances that prompted CSXT to make the proposal, internal and external discussion and analysis of the proposal before and after it was made, and NPBL's consideration of the proposal.

9. CSXT's demands outlined in CSXT's April 6, 2018 and April 16, 2018 letters to the NPBL Board, including knowledge regarding NPBL's consideration of these demands.

10. NSR's provision of facilities, services, or other support to NPBL, including CSXT's knowledge and consent to the arrangements.

11. The negotiation, execution, and implementation of trackage rights agreements between NSR and NPBL.

12. All minutes, agendas, presentations, or other Documents related to the NPBL Board of Directors, NPBL Rate Committee, and NPBL Annual Shareholders' meetings since 2007.

13. NPBL's annual financial statements since 2007.

**Line Haul Switching Rates**

14. CSXT's use of NPBL to access NIT in the decade prior to the NPBL's adoption of the $210 per car line haul switching rate, including without limitation CSXT's annual use of NPBL line haul switching for "Import/Export" commodities at a per car rate of $148.50 and use of NPBL line haul switching for "Domestic" commodities at a per car rate of $243.00.

15. NPBL's decision in 2009 to adopt a unified $210 per car line haul switching rate for both Import/Export commodities and Domestic commodities, including the basis for this change to the line haul switching rates, CSXT's participation in this decision including participation in the NPBL rate committee, CSXT's objections to and/or concerns regarding this decision, any concerns regarding the unified $210 rate being insufficient to fund NPBL expenses, any internal or external communications regarding this decision, and its consequences to CSXT or other rail companies.

16. Industry line haul switching rates and services that you contend are comparable to those of NPBL, including without limitation those of the Commonwealth Railway.

17. Communications, analysis, reports, or other documents relating to switching tariffs charged by Commonwealth Railway, including the impact, if any, the switching tariffs may have on the ability of CSXT or NSR to access VIG.

18. CSXT's use of NPBL to connect to NIT, including without limitation type of business, volume and cost.

19. The alleged reduction of revenue and income to the NPBL, as claimed in ¶ 6 of the Complaint.

20. NPBL's alleged contractual duties to CSXT, including any harm to CSXT or contractual injury as referenced in ¶ 32 of the Complaint.

**Competition**

21. The movement of intermodal containers in and out of NIT, PMT, and VIG by rail, drayage, or barge.

22. CSXT's transportation of intermodal shipping containers to and from the Ports of Virginia, including any capacity, functional, equipment, or service differences between NIT, VIG, or PMT.

23. CSXT's transportation of intermodal shipping containers to and from East Coast Ports or Gulf of Mexico Ports, including any limitations on type, capacity, or efficiency of transportation services offered by CSXT from East Coast Ports or Gulf of Mexico Ports, the destinations served by CSXT from each East Coast Port or Gulf of Mexico Port, estimated shipping times, current pricing and costs for intermodal transportation from East Coast Ports or Gulf of Mexico Ports, and the relative strengths and weakness of CSXT's rail network serving East Coast Port and Gulf of Mexico Ports.

24. Competition between rail, trucks, and barges for the transportation of intermodal shipping containers to and from East Coast Ports, West Coast Ports, or Gulf of Mexico Ports, including, but not limited to, competition for intermodal transportation services at NIT, VIG, and PMT.

25. Infrastructure improvements made in the last five (5) years to the Panama Canal, East Coast Ports, West Coast Ports, and Gulf of Mexico Ports, serviced directly or indirectly by

CSXT, and the effect such infrastructure improvements have had on competition for the transportation of intermodal shipping containers.

26.  Competition between and among East Coast Ports, West Coast Ports, and Gulf of Mexico Ports, for the transportation of intermodal shipping containers, including but not limited to, competition between the Port of Virginia and the Port of New York/New Jersey for the transportation of intermodal shipping containers.

27.  CSXT's transportation of intermodal shipping containers to and from the Port of Charleston, including but not limited to, changes in CSXT's international intermodal container volume growth over the last five (5) years, CSXT's business plans for the next five (5) years at the Port of Charleston, and any planned or completed infrastructure or service improvements.

28.  The use of drayage for the movement of international intermodal containers from ports and terminals to inland destinations, including but not limited to, the cost of drayage, the payor of drayage costs, subsidies for drayage fees provided by the Port of Virginia, perceived capacity constraints on drayage, differences between drayage, on-dock rail, barge, and trucks for moving international intermodal containers in to and out of East Coast Ports, and the perceived impact drayage has on the competition for transporting intermodal shipping containers to and from East Coast Ports, West Coast Ports, and Gulf of Mexico Ports.

29.  CSXT's ability to serve NIT via drayage, including without limitation, the annual volume of containers CSXT has drayed since 2007, annual cost for this drayage, any daily volume limits on the number of containers that can be drayed on a daily basis, and the relative cost of drayage as compared with moving intermodal containers utilizing CSXT's on-dock rail access through the NPBL.

30. The use of barges for the movement of intermodal shipping containers, including the perceived effects of barges on competition for intermodal shipping containers and the use of barges to move containers between terminals at the Ports of Virginia, including NIT, VIT, and PMT.

31. The use of lifts associated with moving intermodal containers via drayage, barge, and on-dock service, including but not limited to, the cost of each lift, the payor of lift-costs, the number of lifts involved in drayage, barge, and on-dock service, and the impact the use of lifts has on competition for the movement of intermodal shipping containers.

32. The selection of terminals, such as NIT, VIG, or PMT, for the loading and unloading of intermodal shipping containers at the Ports of Virginia, including but not limited to, the effect of shipper-preferences, shipper-alliance-preferences, and VPA/VIT-preferences on the selection of such a terminal.

33. The relationship between ocean carriers and specific East Coast Ports, West Coast Ports, and Gulf of Mexico Ports, including how those relationships affect demand by ocean carriers for service to and from specific ports and terminals.

34. CSXT's competitive strategy for intermodal shipping containers coming in to and out of East Coast Ports, West Coast Ports, and Gulf of Mexico Ports, including but not limited to, the role drayage, barge services, and on-dock services has on CSXT's marketing for intermodal transportation services.

35. CSXT negotiations with shippers for the transportation of intermodal containers to and from East Coast Ports, including the effect drayage, barge, and on-dock services have on such negotiations.

36. CSXT's volume of intermodal shipping containers to and from East Coast Ports and Gulf of Mexico Ports, including but not limited to, its volume at each of VIT, NIT, and PMT, and any efforts undertaken to move volume from the Port of Virginia to another East Coast Port, West Coast Port, or Gulf of Mexico Port.

37. CSXT's yards at the Port of Virginia, including perceived capacity constraints, efficiencies, limitations on freight served, limitations on drayage services serving the yard, estimated processing times of intermodal freight, and the perceived effect that has on competition for intermodal shipping containers.

**VPA and VIT Related**

38. Knowledge regarding VPA's structure and operations, including relationships with VIT, NSR, CSXT, and NPBL.

39. Knowledge regarding the Master Rail Plan for the Port of Virginia.

40. Any negotiations or communications between CSXT and VPA, VIT, or any employee of the Commonwealth of Virginia regarding NIT, including drayage and on dock access.

**Remedies**

41. The amount and categories of damages sought by you in this case.

42. The factual bases for all claims for damages sought by you in this case.

43. All non-monetary forms of relief sought by you in this case.

44. The factual bases for all forms of non-monetary relief sought by you in this case.

**Additional Topics per this Amendment to Notice:**

45. Your contention, if any, that NPBL's switching rate is excessive or unreasonably high, the evidence you intend to rely on in support of the contention, and which claims you intend to support with this contention.

46. CSXT's operations at its Portsmouth intermodal yard, including any challenges, problems, or obstacles that limited capacity or impacted intermodal service from 2010 to present.

47. All steps that CSXT did or could have taken to mitigate damages, including, without limitation, CSXT's failure to access NIT using NPBL by payment of the NPBL $210 line haul switching rate.

48. Your contention, if any, that NSR is not entitled to a NSR trackage fee as set by the U.S. Surface Transportation Board, the evidence you intend to rely on in support of the contention, and which claims you intend to support with this contention.

49. Your contention, if any, that the facts, circumstances and statements made by NSR in connection with the Port of Charleston are probative of competition conditions at the Port of Virginia and the facts bearing upon this contention, including, without limitation, the conditions and circumstances at the Port of Charleston that materially differ from those at the Port of Virginia.

50. Your efforts to retain documents in connection with the anticipation of litigation against NSR regarding NIT and your collection of documents in this matter for production to NSR and NPBL.

51. The specific overt act(s) by NSR that you contend form the basis for the conspiracy alleged in Counts I, II, VIII, and IX of your Complaint, including the identities of the specific persons who you contend committed such act(s), the dates and circumstances of such act(s), and all documents that support your answer.