UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| CSX TRANSPORTATION, INC., ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Case No. 2:18-cv-530 |
| ) | |
| NORFOLK SOUTHERN RAILWAY ) | |
| COMPANY, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

### NORFOLK SOUTHERN RAILWAY COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE EVIDENCE AND ARGUMENT THAT NPBL'S SWITCH RATE IS UNREASONABLE

Defendant Norfolk Southern Railway Company ("NS"), by counsel, submits this Memorandum in Support of its Motion in Limine under Federal Rule of Evidence 402 seeking to prohibit Plaintiff CSX Transportation, Inc. ("CSX") from offering at trial any evidence or argument that the $210 line haul switch rate (the "Switch Rate") charged by the Norfolk and Portsmouth Belt Line Railroad Company ("NPBL") is unreasonable, "prohibitively expensive," "excessive," or "exorbitant." This evidence and argument should be excluded because CSX's challenge to the Switch Rate as unreasonable is outside this Court's jurisdiction; rather, rate challenges are within the exclusive jurisdiction of the Surface Transportation Board ("STB"), rendering any such evidence improper, irrelevant, and prejudicial to this case.

### INTRODUCTION

The foundation of CSX's lawsuit is its claim that the Switch Rate is unreasonably high, and, therefore, precludes CSX from using NPBL to access NIT. CSX's requested relief includes asking this Court to force NPBL to give CSX a different, lower Switch Rate. But this Court lacks

jurisdiction to either adjudicate whether the Switch Rate is unreasonably high or impose a lower rate on NPBL.  These issues are firmly and exclusively within the jurisdiction of the STB.  As a result, CSX should be prohibited from arguing at trial that the Switch Rate is unreasonable or offering any evidence in support of this claim.

## ARGUMENT

### 1. CSX's assertion that the Switch Rate is unreasonable is central to its claims.

CSX's Complaint alleges that it cannot competitively serve NIT directly by rail on a regular basis because NS "through its control of [Defendant NPBL]…has caused [NPBL] to establish and maintain unreasonably high rates for its switch services for intermodal freight, which are dramatically higher than rates charged by comparable railroads."  ECF No. 66, at 6.  It further alleges the NPBL's Switch Rate is "prohibitively expensive," "excessive," and "unreasonable."  ECF No. 1, at ¶¶ 4, 37, 44.  CSX's challenge to the reasonableness of the Switch Rate pervades its Complaint.  *See id.*, at ¶¶ 3-4, 34-35, 37, 44, 55, 57, 87, 90, 93, 97, 100, 104, 108.

The centrality of the NPBL Switch Rate to CSX's claims was confirmed in discovery.  CSX's expert, Professor Howard P. Marvel, Ph.D., relies heavily on CSX's contention that the Switch Rate is unreasonable: "NPBL has set an exorbitant Switch Rate that CSX would have to pay to access NIT via rail."  Expert Report of Howard P. Marvel, Ph.D., Feb. 25, 2020, at ¶ 13 (citing the "exorbitant" Switch Rate as evidence that NS and NPBL have taken action to "foreclose" CSX from NIT) (attached to NS's Motion for Summary Judgment as <u>Exhibit 7</u>, ECF No. 308-3) ("Marvel Rep."); *see also* ¶ 15 ("They have [impeded CSX's access to NIT] by setting an exorbitant Switch Rate that CSX would have to pay to NPBL to access NIT via rail."), ¶ 18 ("These actions include setting NPBL's Switch Rate to a level that yields no CSX traffic, pricing that has essentially forced NPBL out of existence as an intermodal carrier."), ¶ 54 ("NPBL's

Switch Rate of $210 per railcar is extraordinarily high"), ¶ 55 ("NPBL's extraordinarily high Switch Rate"), ¶ 56 ("NPBL's extraordinarily high Switch Rate"), ¶ 57 ("This is principally because [of] NPBL's unduly high rate."), ¶ 58 ("NPBL's Switch Rate is prohibitive"). Indeed, the heading of an entire section of CSX's expert report is titled "NPBL's Extraordinarily High Switch Rate and Other Impediments Foreclose CSX from Obtaining On-Dock Rail Access to NIT." *Id.* at 29.

In Prof. Marvel's rebuttal report, an entire five pages are spent on a section titled "NPBL's Switch Rate is Not Reasonable," even though Prof. Marvel has no expertise in the field of railroad rates, nor has he bothered to investigate the costs on which the Switch Rate is based. *See* Reply Report of Howard P. Marvel, Ph.D., March 5, 2021 at 25 (attached to NS's Motion for Summary Judgment as Exhibit 71, ECF No. 308-59) ("Marvel Reply Rep."); ¶ 2 ("[NS and NPBL] have done so by setting an exorbitant Switch Rate"), ¶ 55-59 (explaining why the $210 rate is not reasonable even though NPBL's expert opines that it is needed to cover NPBL's costs), ¶ 60-65 (explaining why NPBL's Switch Rate is not reasonable compared to other switching railroads); ¶ 126 ("NPBL's exorbitant Switch Rate").

### 2. This Court cannot adjudicate whether the Switch Rate is unreasonable because this issue is within the exclusive jurisdiction of the STB.

On January 31, 2020, NS filed a Motion to Dismiss, for Judgment on the Pleadings, and for Referral of Issues to the Surface Transportation Board ("STB Motion"). *See* ECF Nos. 115, 116. As explained in the STB Motion, "primary jurisdiction to determine the reasonableness of rates lies with the [STB]." *Burlington N. v. United States*, 459 U.S. 131, 141 (1982); *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1965) (noting that "tariff construction, as well as that of the reasonableness of the tariff as applied, [is] within the exclusive primary jurisdiction of the [STB]"); *see also* 49 U.S.C. § 10707 (authorizing the STB to handle claims that a rate is "unreasonably

3

high"); *Chi., Rock Island & Pac. R.R. Co. v. Furniture Forwarders of St. Louis, Inc.*, 420 F.2d 385, 388 (8th Cir. 1970) (citation and quotation marks omitted) ("Whenever a rate, rule, or practice is attacked as unreasonable or as unjustly discriminatory, there must be preliminary resort to the [STB]."); *Norfolk S. Ry. Co. v. Judge Warehousing, LLC*, 409 F. Supp. 3d 1350, 1358 (S.D. Ga. 2019) (noting that it is "the STB [that] has expertise in determining the reasonableness of rates and practices created by rail carriers").

Further, "[u]nder the Interstate Commerce Act, primary jurisdiction to determine the reasonableness of rates lies with the [STB]." *Burlington N.*, 459 U.S. at 141; *BNSF Ry. Co. v. California Dep't of Tax & Fee Admin.*, 904 F.3d 755, 772 (9th Cir. 2018) (Ikuta, J. dissenting) (noting that Congress has been regulating the reasonableness of railroad rates since 1887 with the ICC becoming "the first great federal regulatory rate-setting agency"); *Rawls v. Union Pac. R.R.*, No. 1:09-CV-01037, 2012 WL 2803764, at *4 (W.D. Ark. July 10, 2012) (observing that "[t]he ICCTA created the Surface Transportation Board to effectively regulate certain aspects of railroad operations," particularly economic aspects). Accordingly, when a party claims that a tariff rate is unreasonable—as CSX has done in this case by challenging the reasonableness of the Switch Rate—the presiding court must refer that specific issue to the STB for determination in the first instance. *See Great N. Ry. Co. v. Merchants Elevator Co.*, 259 U.S. 285, 291 (1922) ("Whenever a rate, rule or practice is attached as unreasonable or as unjustly discriminatory, there must be a preliminary resort to the [STB]."). This Court, thus, lacks jurisdiction to decide this issue or enter an order that sets a Switch Rate for NPBL. *Burlington N.*, 459 U.S. at 140 ("[A] federal court has no jurisdiction to enter an order that operates to fix rates . . . ."); *Mercury Motor Express, Inc. v. Brinke*, 475 F.2d 1086, 1092 (5th Cir. 1973) (noting federal courts are "unfamiliar" with the

4

considerations of reasonableness and must leave rail rate issues to the STB, which has "expertise in [this] specialized area"); *see also* ECF No. 116.

### 3. CSX's anticipated evidence and argument on the Switch Rate as "prohibitively expensive," "excessive," "exorbitant," or "unreasonable" is irrelevant and inadmissible under Rule 402.

Only relevant evidence is admissible at trial. Fed. R. Evid. 402. "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. To be admissible, evidence must be "worth consideration by the jury, or have a plus value." *United States v. Leftenant*, 341 F.3d 338, 346 (4th Cir. 2003) (quotation marks omitted). All other evidence is irrelevant and must be excluded. Fed. R. Evid. 402.

Throughout its Complaint and expert report, CSX alleges that NPBL's Switch Rate is "prohibitively expensive," "excessive," "exorbitant," and "unreasonable." ECF No. 1, at ¶¶ 3-4, 34-35, 37, 44, 55, 57, 87, 90, 93, 97, 100, 104, 108; Marvel Rep. ¶¶ 13, 15, 18, 54-58; Marvel Reply Rep.¶¶ 2, 55-65, 126. Any evidence and argument at trial in support of these allegations should be excluded as irrelevant. Fed. R. Evid. 402. Neither this Court nor a jury can decide whether the Switch Rate is unreasonable; only the STB can. *Burlington N.*, 459 U.S. at 141. The evidence CSX would have to offer to support these allegations would, thus, be irrelevant because it goes to an issue outside the scope of this case. CSX's evidence makes no consequential fact more or less probable. *See* Fed. R. Evid. 401. It, therefore, lacks any probative value and should be excluded as irrelevant under Rule 402.

## CONCLUSION

For the foregoing reasons, NS respectfully requests an order prohibiting CSX from offering at trial any evidence or argument that the $210 Switch Rate is "prohibitively expensive," "excessive," "exorbitant," or "unreasonable."

Dated: May 4, 2021

Respectfully submitted,

**NORFOLK SOUTHERN RAILWAY COMPANY**

/s/ *Alan D. Wingfield*
Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
Massie P. Cooper (VSB No. 82510)
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-6061
Email: alan.wingfield@troutman.com
Email: michael.lacy@troutman.com
Email: massie.cooper@troutman.com

John C. Lynch (VSB No. 39267)
Kathleen M. Knudsen (VSB No. 90845)
TROUTMAN PEPPER HAMILTON SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7759
Facsimile: (757) 687-7510
Email: john.lynch@troutman.com
Email: kathleen.knudsen@troutman.com

Tara L. Reinhart
John R. Thornburgh II
Thomas R. Gentry
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7000
tara.reinhart@skadden.com

                    john.thornburgh@skadden.com
                    thomas.gentry@skadden.com

*Attorneys for Norfolk Southern Railway Company*