UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| CSX TRANSPORTATION, INC., ) | |
|           *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | |
| NORFOLK SOUTHERN RAILWAY ) | |
| COMPANY, *et al.*, ) | |
| ) | Case No. 2:18-cv-530 |
|           *Defendants*. ) | |

**NORFOLK SOUTHERN RAILWAY COMPANY'S MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EVIDENCE AND ARGUMENT ON CSX'S LOSS OF CUSTOMER CONTRACTS**

Defendant Norfolk Southern Railway Company ("NS"), by counsel, submits this Memorandum in Support of its Motion in Limine under Federal Rules of Evidence 703 and 802 seeking to prohibit Plaintiff CSX Transportation, Inc. ("CSX") from offering at trial any evidence or argument that CSX lost, or was not awarded, contracts with ocean shippers as a result of any conduct of Defendants. CSX and its expert rely solely on inadmissible hearsay to make this claim.

**BACKGROUND**

CSX relies solely on the testimony of its expert, Professor Howard P. Marvel ("Prof. Marvel"), for purposes of proving damages for its claims. *See* CSX's 2d Suppl. Resp. NS's 1st Interrog. 3 (attached as **Exhibit A**); CSX's 4th Suppl. R. 26(a)(1) Disclosures, Mar. 12, 2021 (attached as **Exhibit B**). In support of his damages opinions, Prof. Marvel claims that CSX has lost specific ocean carrier contracts for business across its entire network because of Defendants' conduct at a single terminal at the Port of Virginia. *See* Reply Report of Howard P. Marvel, Ph.D., March 5, 2021, at ¶ 27 (attached to NS's Motion for Summary Judgment as <u>Exhibit 71</u>, ECF No. 308-59, ("Marvel Reply Report")

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████. Prof. Marvel never spoke with any of the ocean shippers to confirm why they chose not to contract with CSX. Instead, CSX and Prof. Marvel rely on internal emails and documents produced by CSX that contain hearsay statements regarding CSX's efforts to obtain these contracts or CSX's own speculation as to why it thinks it lost out on a contract with an ocean shipper. CSX has not obtained in discovery any testimony from an officer or employee of any of these ocean shippers. Nor has CSX identified an officer or employee of any of these ocean shippers as having knowledge of CSX's claims, including its claimed damages. In sum, CSX has no admissible evidence showing that any ocean carrier decided not to contract with CSX because of any alleged conduct by Defendants at issue in this case.

## LEGAL STANDARD

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *Colon v. Porliar*, 2012 U.S. Dist. LEXIS 110624, at *1-2 (N.D.N.Y Aug. 7, 2012) (citing *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984)); *see also Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) ("The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial."). Put another way, a motion *in limine* is a remedy designed to "increase trial efficiency and promote improved accuracy of evidentiary determinations by virtue of the more thorough briefing and argument of the issues that are possible prior to the crush of trial." *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1125, 1140 (E.D. Pa. 1980).

### 1. Hearsay not subject to any exception is inadmissible at trial.

"Hearsay is an oral or written assertion offered into evidence through the testimony of someone other than the declarant to prove the truth of the matter asserted unless the assertion is an admission by a party-opponent or a prior statement by a witness under oath." *Quesenberry v. Volvo Group N. Am., Inc.*, 267 F.R.D. 475, 482 (W.D. Va. 2010) (citing Fed. R. Evid. 801(a), (c), (d)). Hearsay is not admissible, unless the proponent can show that it falls under a hearsay exception. Fed. R. Evid. 802; *see also Rambus, Inc. v. Infineon Techs. AG*, 222 F.R.D. 101, 105 (E.D. Va. 2004).

### 2. Experts are prohibited from communicating inadmissible hearsay unless the probative value substantially outweighs the prejudicial effect.

Federal Rule of Evidence 703 generally bars a testifying expert from testifying as to the hearsay basis for an opinion:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703 (emphasis added). "Rule 703 does not authorize admitting hearsay on the pretense that it is the basis for expert opinion when, in fact, the expert adds nothing to the out-of-court statements other than transmitting them to the jury. In such a case, Rule 703 is simply inapplicable and the usual rules regulating the admissibility of evidence control." Charles Alan Wright & Victor James Gold, 29 Fed. Prac. and Proc. Evid. § 6273 (1997); s*ee also Loeffel Steel Prods., Inc. v. Delta Brands, Inc.,* 387 F. Supp. 2d 794 (N.D. Ill. 2005) (barring economic expert's testimony because he was merely the mouthpiece for the defendant's employees); *Law v. Nat'l Collegiate Athletic Ass'n*, 185 F.R.D. 324, 341 (D. Kan. 1999) ("The NCAA basically presented

3

[the expert] as a channeler, seeking to present non- expert, otherwise inadmissible hearsay through the mouth of an economist."); *In re Lake States Commodities, Inc.*, 271 B.R. 575, 585 (Bankr. N.D. Ill. 2002) (holding that otherwise inadmissible evidence relied upon by an expert "is not somehow transmogrified into admissible evidence simply because expert relies on it"); *Wantanabe Realty Corp. v. City of New York,* 2004 WL 188088 (S.D.N.Y. Feb. 2, 2004) ("But an expert may not act as a 'mere conduit' for the hearsay of another.").

Courts maintain a high level of scrutiny over inadmissible evidence presented by experts given the inherent danger of having an expert present evidence to the jury that would otherwise be inadmissible. *See Therasense, Inc. v. Becton Dickinson Co.*, No. C 04-02123 WHA, 2008 U.S. Dist. LEXIS 124780, at *13 (N.D. Cal. May 22, 2008) (observing that "[o]ne of the worst abuses in civil litigation is the attempted spoon-feeding of client-prepared and lawyer-orchestrated 'facts' to a hired expert who then 'relies' on the information to express an opinion"); *In re Sulfuric Acid Antitrust Litig*., 446 F. Supp. 2d 910, 915 (N.D. Ill. 2006) ("[T]he permissibility of reliance on the data from the third party who will not be testifying is a question answered by the Federal Rules of Evidence, not by Rule 26. . . . [W]hile Rule 703 was intended to liberalize the rules relating to expert testimony, it was not intended either to abolish the hearsay rule or to allow oblique evasions of it.").

## ARGUMENT

CSX has no admissible, direct evidence[1] that it has lost any contracts with ocean carrier shippers because of Defendants' alleged conduct. CSX relies on hearsay and speculation in

---

[1] To the extent that CSX attempts to patch over its lack of direct evidence through a regression analysis, this analysis cannot substitute for direct evidence and is itself deeply flawed, as will be further explained in the forthcoming *Daubert* motion to exclude the expert reports authored by Prof. Marvel.

4

support of its claim.  As a result, CSX's witnesses, including Prof. Marvel, should be prohibited from testifying that CSX lost any contracts due to Defendants' alleged conduct.  Likewise, CSX's counsel should be prohibited from asserting this claim.

> 1. **CSX has no direct evidence of loss of customer contracts because of Defendants' alleged conduct.**

CSX has failed to amass any admissible evidence that it lost existing customer contracts, or failed to obtain new customer contacts, as a result of Defendants' conduct.  During discovery, CSX did not identify a *single* customer or potential customer with discoverable information relating to CSX's claims or defenses.  *See* CSX's 4th Suppl. R. 26(a)(1) Disclosures, Mar. 12, 2021 (attached as **Exhibit B**); CSX's Obj. & Resp. to NS's 1st Interrog. & 2d Req. for Produc. of Doc., Dec. 18, 2019, at 3-10 (attached as **Exhibit C**); and CSX's Obj. and 1st Suppl. Resp. to NS's 1st Interrog., Feb. 14, 2020, at 3-6 (attached as **Exhibit D**).  Therefore, CSX cannot offer any such person as a witness at trial.  *See* Fed. R. Civ. P. 37(c)(1); *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 330 (4th Cir. 2011) (affirming district court's striking of declaration from witness not disclosed under Rule 26(a)(1)); *Coene v. 3M Co.*, 303 F.R.D. 32, 47 (W.D.N.Y. 2014) ("A party's mere knowledge of the existence of a witness is insufficient to alert the party that the opposing party might call the witness in support of their claims or defenses.").  Consequently, CSX will have no direct, admissible evidence from an ocean shipper at trial.

> 2. **CSX has only inadmissible hearsay to support its claim that it lost customer contracts.**

Unable to offer any direct evidence from an ocean carrier shipper, CSX can offer only self-serving emails and conclusory statements from its own witnesses to support its contention that it lost, or did not win, certain contracts.  The entire basis for CSX's allegations that it lost customers stems from *internal* e-mails discussing bidding for contracts with ocean shippers.

5

For example, Robert Girardot, CSX's corporate witness, submitted a declaration stating ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. When pressed, however, CSX's corporate representative conceded that the basis for his assertion came from *internal* emails from CSX's sales and marketing team, ██████████████████████████████████.

CSX employee testimony about statements made by third party ocean carriers that are offered to prove the truth of the third-party statement (*i.e.*, that the ocean carriers chose NS over CSX due to NPBL's $210 tariff rate) is inadmissible hearsay under Rule 801. *See* Fed. R. Evid. 801(c). Only direct testimony from an ocean carrier would be admissible, but, as explained above, CSX cannot offer any such testimony at trial. Instead, CSX has only declarations and testimony from its own employees or former employees. *See* CSX's Opp., Exhibits 53 and 55 (declaration of Robert Girardot and testimony of Robert Girardot, CSX's corporate witness); Exhibit 69 (deposition testimony from MaryClare Kenney reporting a conversation with Tom Capozzi of VIT); Exhibits 94 and 99 (declaration of Carl Warren and deposition testimony from Carl Warren, former employee of CSX); Exhibit 115 (email chain between CSX employees concerning ████████████████████████████████████; Exhibit 116 (internal CSX document addressing ██ ████████████████████████████████████████████████████████████████████; Exhibit 117 (deposition testimony from Frederik Eliasson discussing ████████████████████████

6

███. Therefore, CSX should be precluded from claiming at trial that it lost contracts with ocean shippers because of Defendants' alleged conduct.

### 3. The Federal Rules of Evidence do not allow CSX to use an expert witness as a mouthpiece to present otherwise inadmissible hearsay to the jury.

As stated, Prof. Marvel claims that CSX has lost specific ocean carrier contracts as a result of NS's conduct. Marvel Reply Report ¶ 27. In support of these claims, Prof. Marvel cites to internal CSX e-mails, spreadsheets, and declarations from CSX employees – *i.e.*, inadmissible hearsay – regarding three customers that did not contract with CSX. *Id.* (citing Email chain, Exhibit 115 to CSX Opp.; Robert Girardot Dep., Exhibit 55 to CSX Opp., at 233:24-234:18; 271:13-273:12; Declaration of Robert Girardot, Exhibit 53 to CSX Opp.; Exhibit 116 to CSX Opp.; Declaration of Carl Warren, Exhibit 94 to CSX Opp.; Warren Dep. 162:22-163:12, Exhibit 55 to CSX Opp., Eliasson Dep. 40:12-41:10, Exhibit 117 to CSX Opp.) CSX cannot use Prof. Marvel to regurgitate hearsay statements and speculation as proof to a jury that CSX, in fact, lost contracts with ocean carriers because of Defendants' alleged actions. Yet, this is what CSX improperly attempts to do.

For example, Prof. Marvel cites to ███████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████ Marvel Reply Report ¶ 27. The only statement in the spreadsheet that could support this conclusion is a statement that ████████ ███████████████████████████████████████ *Id.* (citing Account Notes 2019.xlsx, Tab "ONE," Exhibit 116 to CSX Opp. CSX cannot use Prof. Marvel to transform a

---



2 ████████████████████████████████████████████████████████████████████

"rumor," the very *definition* of hearsay, into admissible evidence. *See In re Lake States Commodities, Inc.*, 271 B.R. 575, 585 (Bankr. N.D. Ill. 2002) (holding that otherwise inadmissible evidence relied upon by an expert "is not somehow transmogrified into admissible evidence simply because [an] expert relies on it").

As another example, Prof. Marvel relies on a declaration from a CSX employee stating ███

███

███ Carl Warren Decl., Exhibit 99 to CSX Opp. Allowing CSX's expert to recite to the jury a statement from a CSX witness relaying a statement that a third party told another third party is the exact type of "double hearsay" that is inadmissible under the Federal Rules of Evidence. *Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187, 195 (4th Cir. 2003) (noting a "double hearsay problem" and observing that each level of hearsay must meet a hearsay exception in order for a statement to be admissible). Prof. Marvel should be prohibited from acting as CSX's mouthpiece at trial to restate inadmissible hearsay claims that CSX lost contracts as a result of NS's conduct. *See* Fed. R. Evid. 801; *see also Quesenberry v. Volvo Group N. Am., Inc.*, 267 F.R.D. 475, 482 (W.D. Va. 2010).

Nor can CSX show that the probative value of the hearsay in helping the jury evaluate Prof. Marvel's opinions substantially outweighs the prejudicial effect of admitting the hearsay into evidence. *See* Fed. R. Evid. 703. The hearsay statements are not "facts or data"; they are at best speculation, which has little, if any, probative value. *Va. Vermiculite Ltd. v. W.R. Grace & Co.-Conn.*, 98 F. Supp. 2d 729, 735 (W.D. Va. 2000) ("Expert testimony with a greater potential to mislead than to aid the jury should be excluded."). Prof. Marvel did not conduct any independent investigation to validate CSX's claim that it lost customer contracts because of Defendants' alleged

conduct, which also negates any probative value these statements would have to a jury. *W.C. Eng., Inc. v. Rummel, Klepper & Kahl, LLP*, No. 6:17-CV-00018, 2020 WL 534532, at *3 (W.D. Va. Feb. 3, 2020) ("[Expert's] testimony shall be excluded because it largely consists of his interpretation and recitation of specific parts of the factual record that a jury would be equally qualified to evaluate.").

In summary, allowing CSX's expert to give credence to a statement from an unknown CSX employee addressing a "rumor" or double-hearsay statements from third parties would greatly prejudice Defendants. CSX should be precluded from using Prof. Marvel as a vehicle to get this inadmissible evidence in front of the jury. *See* Charles Alan Wright & Victor James Gold, 29 Fed. Prac. and Proc. Evid. § 6273 (1997) ("Rule 703 does not authorize admitting hearsay on the pretense that it is the basis for expert opinion when, in fact, the expert adds nothing to the out-of-court statements other than transmitting them to the jury.").

## CONCLUSION

For the foregoing reasons, NS respectfully requests an order prohibiting Plaintiff CSX from offering at trial any evidence or argument that NS caused CSX to lose specific business or customer contracts, including the evidence identified by CSX in its Memorandum in Opposition to NS's Motion for Summary Judgment and identified herein.

Dated: May 4, 2021

Respectfully submitted,

**NORFOLK SOUTHERN RAILWAY COMPANY**

/s/ *Alan D. Wingfield*
Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
Massie P. Cooper (VSB No. 82510)
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200

9

Facsimile: (804) 698-6061
Email: alan.wingfield@troutman.com
Email: michael.lacy@troutman.com
Email: massie.cooper@troutman.com

John C. Lynch (VSB No. 39267)
Kathleen M. Knudsen (VSB No. 90845)
TROUTMAN PEPPER HAMILTON SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7759
Facsimile: (757) 687-7510
Email: john.lynch@troutman.com
Email: kathleen.knudsen@troutman.com

Tara L. Reinhart
John R. Thornburgh II
Thomas R. Gentry
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7000
tara.reinhart@skadden.com
john.thornburgh@skadden.com
thomas.gentry@skadden.com

*Attorneys for Norfolk Southern Railway Company*

10