UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| CSX TRANSPORTATION, INC., ) | |
| ) | |
|                  *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | |
| NORFOLK SOUTHERN RAILWAY ) | |
| COMPANY, *et al.*, ) | Case No. 2:18-cv-530 |
| ) | |
|                  *Defendants*. ) | |

**DEFENDANT NORFOLK SOUTHERN RAILWAY COMPANY'S
MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE
<u>REGARDING USE OF INTERNAL EMAILS</u>**

Defendant Norfolk Southern Railway Company ("NS"), by counsel, submits this Memorandum in Support of its Motion in Limine under Federal Rules of Evidence 401, 402, and 403 seeking to prohibit Plaintiff CSX Transportation, Inc. ("CSX") from arguing or eliciting testimony that emails involving only NS employees are conspiratorial communications between NS and co-Defendant Norfolk and Portsmouth Belt Line Railroad Company ("NPBL").

**INTRODUCTION**

CSX has asserted four conspiracy claims against NS and NPBL: Counts I, II, VIII, and IX of the Complaint. When asked in discovery to identify "the specific communications between [NPBL] and NS that you contend form the basis" for its conspiracy claims, CSX identified 96 documents. *See* Chart of Documents Identified by CSX in its 2d Supp. Resp. NPBL's Interrog. No. 3, Mot. Summ. J. Ex. 121, ECF No. 310-25. Nearly all of these documents are *internal* NS communications; that is, they are communications between NS employees *only*.

CSX specifically asserts that:

- "NPBL and NS, and their employees and agents—including both NPBL management and <u>NS-appointed members of the NPBL Board [of Directors]</u>—have had numerous communications in person, telephonically, and by written correspondence, in furtherance of the conspiracy." CSX 2d Supp. Resp. NPBL's Interrog., at No. 3 (emphasis added).

- Communications associated with particular overt acts committed by NPBL representatives—including both NPBL management and <u>NS-appointed members of the NPBL Board</u>—are identified and described below in response to Interrogatory 4." *Id*. (emphasis added).

- "CSXT identifies the following overt acts committed by NPBL representatives— including both NPBL management and <u>NS-appointed members of the NPBL Board</u>— In furtherance of the conspiracy. *Id*. at No. 4 (emphasis added).

The NPBL Board of Directors consists of six members: two appointed by CSX, three appointed by NS, and the NPBL President. Contrary to CSX's assertions, however, NS-appointed members of the NPBL Board are *not* "representatives" or agents of NPBL. It has long been established in Virginia that individual directors of a corporation cannot bind the corporation. Therefore, a communication between two NS employees, even if one also serves as an NPBL Board member, is not a communication between NS and NPBL.

CSX may have glossed over this critical legal distinction in discovery, but it should not be able to do so at trial. CSX should be prohibited from having its counsel or witnesses argue or testify at any stage of the proceedings that a communication between only NS employees, even when one or more of them is also an NS-appointed NPBL Board member, is a conspiratorial communication with NPBL. This would be highly prejudicial to Defendants and contrary to the law.

**ARGUMENT**

1. **CSX's conspiracy claims require an agreement between two parties.**

To prevail on CSX's four conspiracy claims (Counts I, II, VIII, and IX), CSX must prove that NS agreed to conspire with another party. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553

(2007) (requiring an agreement to show a conspiracy under 15 U.S.C. § 1); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 211 (4th Cir. 2002) (requiring an agreement for conspiracy to monopolize under Section 2); Va. Code § 18.2-499 (prohibiting combination, association, or agreement between two parties to injure another's reputation, trade, business or profession); *Hechler Chevrolet, Inc. v. Gen. Motors Corp.*, 230 Va. 396, 402 (1985) (requiring agreement between two parties for common law conspiracy).

"'It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.'" *Buschi v. Kirven*, 775 F.2d 1240, 1251 (4th Cir. 1985) (quoting *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952)). *See also Bowman v. State Bank of Keysville*, 229 Va. 534, 541 (1985) ("Of course, there must be two persons to comprise a conspiracy, and a corporation, like an individual, cannot conspire with itself.") (citing *Nelson Radio*, 200 F.2d at 914).

### 2. Individual directors are not agents, or "representatives," of a corporation merely because they are directors.

Well-established Virginia corporate law holds that individual directors are not agents of the corporation for which they are board members, regardless of the legal cause of action, merely because they are directors. The Virginia Supreme Court held many years ago that:

> [The] directors of a corporation have authority to bind it only when they act collectively as a board. Individual directors are not its agents, and it is well settled, therefore, that ***declarations and admissions of individual directors when not acting as a board are not binding on the corporation nor admissible as evidence against it***, unless they were acting at the time as its authorized agents and within the scope of their authority.

*Monacan Hills, Inc. v. Page*, 203 Va. 110, 116 (1961) (quoting Fletcher, Cyclopedia Corporations, Vol. 2 (1954 Revised), § 741, at 1026-1028) (emphasis added). "It is elementary that the authority

of the directors is conferred upon them as a board, and they can bind the corporation only by acting together as an official body. A majority of them, in their individual names, cannot act for the board itself and bind the corporation." *WBM, LLC v. Wildwoods Holding Corp.*, 270 Va. 156, 162 (2005) (quoting *Mosell Realty Corp. v. Schofield*, 183 Va. 782, 793 (1945)). *See also* Fletcher, Cyclopedia Corporations, Vol. 2 (2006 Revised), § 505, at 581 ("A corporation does not act through its individual directors, but rather through its board of directors as a whole. An individual director has no authority to take action on behalf of the corporation without the consent of the board of directors.").

### 3. CSX should be precluded from arguing that internal NS emails are evidence of communications between NS and NPBL.

As explained in Defendants' respective motions for summary judgment, CSX has no direct evidence of a conspiratorial agreement between NS and NPBL. Of the 96 documents that CSX identified as communications evidencing a conspiracy between NS and NPBL, only 15 of them are solely between Defendants, and none of those documents can reasonably be considered evidence of a conspiracy. Instead, CSX has erroneously claimed that NS-appointed NPBL Board members are "representatives" of NPBL, and, therefore, communications solely among NS employees, at least one of whom is a NPBL board member, constitutes a communication between NS and NPBL for the purpose of demonstrating a conspiracy. This is both legally wrong and practically inconsistent with CSX's own positions in this litigation.

#### a) As a matter of law, CSX cannot use communications between NS employees, one or more of whom is also an NS-appointed NPBL Board member, to show conspiratorial communications between NS and NPBL.

CSX's theory is predicated on an incorrect application of the law. As stated above, NPBL's individual directors are *not* representatives of NPBL by virtue of their position on the board of directors. *Monacan Hills*, 203 Va. at 116. It is well-settled Virginia law that, as a general rule, no

4

NPBL Board member can individually bind NPBL. *See id.* The only exception to this rule is if allegedly conspiratorial communications were made by NS-appointed Board members (1) while they were acting as NPBL's authorized agents with the consent of the NPBL Board, and (2) within the scope of their appointed authority. *Id.* Yet, during the entire course of this litigation, CSX has not identified a *single* piece of evidence showing that any NS employee was ever conducting NPBL business when involved in these internal communications, much less that NS employees were acting under authority granted to them by the NPBL Board.[1] Hence, the only potential exception does not apply, and under the law, these are exclusively internal NS communications.

In summary, internal communications between NS employees, one or more of whom is also an NS-appointed Board member, *cannot* be evidence of an agreement to conspire between NS and NPBL because they are not communications between two different parties.[2] *Fox v. Deese*, 234 Va. 412, 428 (1987) ("By definition, a single entity cannot conspire with itself."); Fed. R. Evid. 402 (precluding evidence that is not relevant). On this basis alone, CSX should be precluded from arguing or soliciting testimony from witness to the contrary at trial.

---

[1] For this reason, CSX's reliance on *Am. Soc'y of Mech. Eng'Rs v. Hydrolevel Corp.*, 456 U.S. 556 (1982) ("ASME"), is misplaced. *See* CSX Opp. Defs' Mot. Summ. J. 55, ECF No. 328. In that case, a chairman of an ASME subcommittee caused the subcommittee to issue a letter, on ASME letterhead, that interpreted an ASME code. As the Supreme Court observed, ASME, the principal, "entrusted the interpretation of one of its codes to" its agent, the subcommittee chairman. *ASME*, 456 U.S. at 572. Therefore, the subcommittee chairman clearly was conducting the business of ASME, with the apparent authority of ASME, when he issued the letter. *See id*. at 567 ("ASME's system of codes and interpretative advice would not be effective if the statements of its agents did not carry with them the assurance that persons in the affected industries could reasonably rely upon their apparent trustworthiness.").

[2] While the Court previously held that it is theoretically *possible* for NS and NPBL to conspire because they are separate corporate entities, Op. & Order 33, ECF No. 66, this Motion argues that there is no *evidence* of such conspiracy in this case because *internal* NS communications do not show a conspiratorial agreement with NPBL.

5

> **b) Practically, CSX has also taken the position that its *own* communications between CSX employees and CSX-appointed NPBL Board members are *not* communications between CSX and NPBL.**

Moreover, as a practical matter, CSX has taken the apparent position that communications with employees who serve as NPBL Board members are *not* communications with NPBL as an entity. This is evident from CSX's privilege log in this case.

It is axiomatic that communication with a third party is not privileged. *Fed. Election Comm'n v. Christian Coal.*, 178 F.R.D. 61, 71 (E.D. Va. 1998) (holding that communication in the presence of a third party means that attorney-client privilege "never existed"). Hence, to claim privilege, a communication cannot include a third party. *Id.*

Here, CSX asserted privilege over hundreds of communications regarding NPBL between CSX in-house counsel and CSX employees *who were also serving as NPBL Board members*. *See* CSX Privilege Log Excerpt: Burns, **Ex. A**; CSX Privilege Log Excerpt: Armbrust, **Ex. B**. This means that, from CSX's view, these communications did *not* involve a third party – *i.e.*, communications between CSX employees and CSX-appointed NPBL Board members were *not* communications with NPBL. *See* Armbrust Dep. 282:19-283:1, 15-19, **Ex. C** ("Q. During your tenure as a board member of the NPBL, did you have communications with people internally at CSXT about the NPBL? A. Yes. . . . Q. Am I to understand that all your communications with CSXT about the NPBL would have been in your capacity as in-house counsel for CSXT? A. That's my recollection."). CSX witnesses testified that this did not create any conflict for CSX-appointed NPBL Board members because they wore different "hats" when they communicated internally with CSX. *See* Burns Dep. 140:1-21, 141:10-20, **Ex. D**; Armbrust Dep. 279:7-280:21, **Ex. C**; Eliasson Dep. Tr. 203:7-16, **Ex. E**.

Allowing CSX to argue both that internal NS communications *are* evidence of a conspiracy with a third party, but internal CSX communications are privileged because they are *not* with a

6

third party, constitutes a glaring double standard that would present a substantial danger of confusing and misleading the jury and would cause unfair prejudice to NS. Fed. R. Evid. 403. Accordingly, CSX should be precluded from arguing or soliciting testimony from witness at trial claiming that internal NS communications evidence agreement to a conspiracy with NPBL.

## CONCLUSION

For the foregoing reasons, NS respectfully requests an order prohibiting Plaintiff CSX from offering at trial any internal NS communication, including but not limited to all emails listed in **Exhibit F**, in support of its conspiracy claims.

Dated: May 5, 2021

Respectfully submitted,

**NORFOLK SOUTHERN RAILWAY COMPANY**

/s/ *Alan D. Wingfield*
Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
Massie P. Cooper (VSB No. 82510)
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-6061
Email: alan.wingfield@troutman.com
Email: michael.lacy@troutman.com
Email: massie.cooper@troutman.com

John C. Lynch (VSB No. 39267)
Kathleen M. Knudsen (VSB No. 90845)
TROUTMAN PEPPER HAMILTON SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7759
Facsimile: (757) 687-7510
Email: john.lynch@troutman.com
Email: kathleen.knudsen@troutman.com

>Monica McCarroll (VSB No. 45622)
>REDGRAVE LLP
>14555 Avion Parkway, Suite 275
>Chantilly, Virginia 20151
>Telephone: (703) 592-1154
>Facsimile: (703) 230-9859
>Email: MMcCarroll@redgravellp.com
>
>Tara L. Reinhart
>John R. Thornburgh II
>Thomas R. Gentry
>SKADDEN, ARPS, SLATE,
>MEAGHER & FLOM LLP
>1440 New York Avenue, N.W.
>Washington, DC 20005
>Telephone: (202) 371-7000
>tara.reinhart@skadden.com
>john.thornburgh@skadden.com
>thomas.gentry@skadden.com
>
>*Attorneys for Norfolk Southern Railway Company*

115517168