UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| CSX TRANSPORTATION, INC., ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | |
| NORFOLK SOUTHERN RAILWAY ) | |
| COMPANY, *et al.*, ) | Case No. 2:18-cv-530 |
| ) | |
| *Defendants*. ) | |

**DEFENDANT NORFOLK SOUTHERN RAILWAY COMPANY'S
MEMORANDUM IN SUPPORT OF MOTION IN LIMINE REGARDING
DISCONTINUANCE OF THE DIAMOND TRACK**

Defendant Norfolk Southern Railway Company ("NS"), by counsel, submits this Memorandum in Support of its Motion in Limine under Federal Rules of Evidence 402 and 403 seeking to prohibit Plaintiff CSX Transportation, Inc. ("CSX") from offering at trial any evidence or argument that the discontinuance of the railroad track between NS Junction and Carolina Junction in South Norfolk (the "Diamond Track") is evidence of wrongful conduct by Defendants.

**SUMMARY**

The Surface Transportation Board ("STB") has exclusive initial jurisdiction over decisions to discontinue railroad track. In 2008, the NS sought STB approval to discontinue the Diamond Track, after the Board of Directors of the Norfolk and Portsmouth Belt Line Railroad Company ("NPBL") voted to approve the discontinuance of NPBL's rights over the track. The STB approved the discontinuance without objection or appeal by CSX, making the STB's determination final. More than a decade later after CSX had its opportunity to object or appeal this decision, CSX cannot argue now that the STB-approved discontinuance was part of an illegal conspiracy.

CSX's complaints are untimely, irrelevant, and would serve only to mislead and confuse the jury. Accordingly, CSX should be precluded from offering at trial any evidence or argument that the discontinuance of the Diamond Track is evidence of wrongful conduct by Defendants.

## BACKGROUND

CSX alleges Defendants conspired to injure CSX by causing NPBL to terminate its access rights to a certain track crossing, or "diamond." *See* Compl. ¶¶ 47, 58. Until 2008, NS owned and operated a 0.9-mile length of railroad track between NS Junction and Carolina Junction in South Norfolk (previously defined as the "Diamond Track"). NPBL had trackage rights to use the Diamond Track. *See* NPBL Board Min., Dec. 19, 2007, CSXT0000005 (**Exhibit A**). After the Diamond Track lay unused for about two years, NS planned to reduce operating costs by discontinuing service over the segment of track and removing it. *See* **Exhibit B** (CSXT0147011); STB Docket No. AB-290 (Sub-No. 299X) (filed Apr. 25, 2008). Under STB regulations, NS could not discontinue service of the track unless NPBL relinquished its trackage rights over the Diamond Track. *See* 49 U.S.C. §10903(d); 49 C.F.R. § 1152.1(a).

**A.    The NPBL Board Approved Discontinuing NPBL's Access Rights over the Diamond Track Without Objection From CSX.**

In late 2007, NS asked NPBL to relinquish its trackage rights over the Diamond Track. *See* Ex. A. The NPBL Board, which included two CSX-appointed members, considered NS's request at its December 19, 2007 meeting. *Id.* The Board's meeting minutes reflect that, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

*Id.* Thus, the NPBL Board approved NS's request. *Id.*; *see also* Steven Armbrust Dep. (Mar. 11,

2020) 119:9–13 (**Exhibit C**) ███████████████████

███████████████████████████. It is indisputable that the Board's meeting minutes do not indicate that CSX objected to the resolution or to NPBL's relinquishment of its trackage rights.  *See* Ex. A.

B. **The STB Approved the Discontinuance of the Diamond Track Without Objection From CSX.**

As is required under the STB's regulations, NS and NPBL sought the STB's approval to discontinue rail service over the Diamond Track.  *See* 49 U.S.C. § 10501(b)(2) (giving the STB exclusive jurisdiction over discontinuance of track service); §10903(d)(2) (requiring an rail carrier seeking to discontinue service over a rail line to obtain STB approval); § 10502(a); 49 C.F.R. § 1152.50 (allowing a rail carrier to utilize an exemption process for the discontinuance of a rail line rather than filing a formal application).  On April 25, 2008, NS and NPBL jointly filed a notice of exemption with the STB, in which NS sought discontinuance of service of the Diamond Track, and NPBL sought discontinuance of its trackage rights over the track.  STB Docket No. AB-290 (Sub-No. 299X) and STB Docket No. AB-1024X (filed Apr. 25, 2008).  On May 15, 2008, the STB approved both NS's service discontinuance and NPBL's trackage rights discontinuance, both of which took effect on June 14, 2008.  STB Docket No. AB-290 (Sub-No. 299X) and STB Docket No. AB-1024X (STB served May 15, 2008), 73 Fed. Reg. 28188.

CSX was aware of the STB proceeding but never intervened in it or objected to Defendants' notice of exemption.  *See* Armbrust Dep. 119:22–120:7 (████████████████

███████████████████████████████) (**Exhibit 3**); *id*. at 120:8–14 █████████

███████████████████████████████████████████████

████.  Nor did CSX seek timely judicial review of the STB's decision.  *See* 28 U.S.C. § 2334 (providing any aggrieved party to file an appeal to a federal court of appeals within 60 days of a

final order); 49 C.F.R. § 1152.25(e)(5)(i) ("Parties may seek judicial review of a Board action in an abandonment or discontinuance proceeding on the day the action of the Board becomes final."); Fed. R. App. P. 15 (allowing timely appeal from STB decision to a federal court of appeals). The STB's decision became final, no stay was requested and no appeal filed, and NS ultimately removed the Diamond Track.

### C. Thirteen Years Later, CSX Complains About the Removal of the Diamond Track.

CSX had multiple opportunities to object to the discontinuance of the Diamond Track: first at the NPBL Board meeting and then during the STB proceeding. It did not do so. Instead, over a decade later, CSX filed this lawsuit claiming that Defendants conspired to remove the Diamond Track for the purpose of injuring CSX. Specifically, CSX's antitrust claims in Counts II, III, and IV rely upon the discontinuance of the Diamond Track as support that NS and NPBL engaged in anticompetitive and conspiratorial conduct. Compl. ¶¶ 87(e), 93(e), 100(e). CSX alleges NS conspired with NPBL and "mandated" that NPBL relinquish its access rights. Compl. ¶ 58. Further, CSX alleges the discontinuance of NPBL's trackage rights over the Diamond Track "has severely impaired, and continues to severely impair, NPBL's ability to efficiently and predictably provide CSXT and other competitors with rail access to [Norfolk International Terminals (NIT)]." *E.g.*, Compl. ¶ 87(e). CSX may also try to offer evidence that it lacked notice of NPBL's discontinuance of its rights over the Diamond Track. All of this anticipated evidence and any related argument should be excluded.

### LEGAL STANDARD

A court has inherent authority to exclude evidence from a trial. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). A motion in limine allows a trial court "to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy

4

argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (quoting *Banque Hypothecaire Du Canton De Geneve v. Union Mines*, 652 F. Supp. 1400, 1401 (D. Md. 1987)). To fulfill its gatekeeping functions, a court should eliminate evidence that should not be presented to the jury by granting a motion in limine when "the evidence is obviously inadmissible on all possible grounds." *United States v. Gibson*, No. 2:17cr126, 2018 WL 4903261, at *2 (E.D. Va. Oct. 9, 2018) (citing *United States v. Verges*, No. 1:13cr222 (JCC), 2014 WL 559573, at *2–3 (E.D. Va. Feb. 12, 2014)).

Evidence is inadmissible when it is irrelevant. Fed. R. Evid. 402. Relevant evidence "has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. Evidence is also inadmissible, even when relevant, if its probative value "is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## ARGUMENT

**A.     CSX cannot relitigate a final judgment issued over a decade ago by a collateral attack.**

The Fourth Circuit has been emphatic regarding the finality of judgments. "Respect for the finality of judgments is deeply engrained in our legal system. As Justice Story observed, '(i)t is for the public interest and policy to make an end to litigation . . .' so that 'suits may not be immortal, while men are mortal.'" *Great Coastal Exp., Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 675 F.2d 1349, 1354–55 (4th Cir. 1982) (quoting *Ocean Ins. Co. v. Fields*, 18 F.Cas. 532, 539 (No. 10,406) (C.C.D. Mass. 1841) (Story, J. sitting as Circuit Judge)). CSX's complaints regarding the Diamond Track attempt to thwart this finality. In a blatant attempt to avoid the exclusive nature of the STB's decision, CSX is attempting to collaterally challenge the STB's decision approving the discontinuance of the track, which became

5

final over thirteen years ago.  CSX's blatant attempt to collaterally relitigate these proceedings by attacking the STB's decision through this antitrust case should be quashed before trial.

The discontinuance of the Diamond Track was approved more than a decade ago by the federal administrative entity exclusively tasked with oversight of railroad track discontinuance. The STB's adjudication of the matter prevents CSX's complaints.  CSX knew about the STB proceeding based on the CSX-appointed NPBL board members' approval of the NPBL Board resolution and the public STB process, including Defendants' joint filing with the STB (April 25, 2008), and the STB's public approval decision published in the *Federal Register* (May 15, 2008). STB Docket No. AB-290 (Sub-No. 299X) and STB Docket No. AB-1024X (filed Apr. 25, 2008); STB Docket No. AB-290 (Sub-No. 299X) and STB Docket No. AB-1024X (STB served May 15, 2008), 73 Fed. Reg. 28188.  Yet, despite its knowledge, CSX admits it did not ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Armbrust Dep. 120:8–14 (**Exhibit 3**).

Similar to how courts consistently apply principles of *res judicata* to prevent the re-litigation of issues in the interest of finality of judgments, courts need not allow parties to waste time introducing evidence relevant to claims that an administrative body has *already* decided. *See United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966) ("When an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.").  *Cf.* Fed. R. Evid. 403.

For this reason, courts routinely exclude evidence before trial when that evidence is probative of an issue that was decided in a prior administrative proceeding. *See e.g.*, *Coyne v. Cnty. of San Diego*, No. 08 CV 639 JLS (CAB), 2010 WL 11509160, at *2 (S.D. Cal. May 4, 2010) (excluding evidence of allegedly discriminatory non-promotions as "unduly prejudicial and

time-consuming" where the merits of those non-promotions had already been decided by an administrative body and the plaintiff's discrimination and retaliation claims did not depend on the merits of those non-promotions); *Burress v. Sears, Roebuck & Co.*, No. C1-95-110, 1996 WL 581629, at *2 (S.D. Ohio July 17, 1996) (excluding evidence of the plaintiff's ability to return to work after an injury on collateral estoppel grounds because a workers' compensation administrative body had determined he could not return to work and the defendant could "not relitigate the factual issues concerning [the plaintiff's] injury" at trial).

In short, the STB has exclusive jurisdiction[1] over the decision to discontinue railroad track. *See* 49 U.S.C. § 10903(a)(1). The STB approved discontinuance of the Diamond Track. *See* STB Docket No. AB-290 (Sub-No. 299X). This is undisputed. It is likewise undisputed that CSX did not object or appeal the STB's decision, making it a final decision. More than a decade later, CSX cannot now argue that the STB's approval of the discontinuance was part of an illegal conspiracy between Defendants. Allowing CSX to do so would thwart the finality of the STB's judgment, which is fundamentally improper.

**B.    CSX lacks standing to challenge the STB's approval of the discontinuance because CSX did not object to the decision or to seek to have it reopened and reconsidered.**

Further, because the STB and the NPBL Board approved the discontinuance of the Diamond Track without objection or offer of financial assistance from CSX, CSX does not have standing to now contest the STB's decision. *See* Ex. A; STB Docket No. AB-290 (Sub-No. 299X) (May 15, 2008).

---

[1] Even if CSX could challenge the STB's final decision discontinuing the Diamond Track thirteen years after the fact, it cannot do so in this Court. As NS has explained before, this Court is not the proper venue to adjudicate issues wholly within the STB's exclusive jurisdiction. *See* ECF No. 115. The STB has exclusive jurisdiction over discontinuances of railroad tracks, and here, it approved Defendants' joint request regarding the discontinuance of the Diamond Track. *See* 49 U.S.C. §§ 10501(b); 10903(a)(1) & (d). If CSX believes the STB decision was wrongly decided, its proper remedy is to petition to reopen that decision. 49 U.S. Code § 1322 (c); 49 CFR § 1115.4. CSX cannot use this forum to relitigate this long-settled matter. As a result, evidence related to the removal of the Diamond Track is not probative to the facts at issue in the present case, and is, therefore, inadmissible.

The STB has exclusive jurisdiction over the decision to discontinue railroad track—*i.e.*, "abandonment" of the track. *See* 49 U.S.C. §§ 10501(b)(2); 11903(a)(1); & §10903(d)(2). Its decision became final and effective on June 14, 2008. STB Docket No. AB-290 (Sub-No. 299X) and STB Docket No. AB-1024X (STB served May 15, 2008), 73 Fed. Reg. 28188. The decision was not appealed. CSX has never sought to have the decision reopened or reconsidered.

Any challenge CSX attempts to now bring was waived by its failure to object to the STB's decision or to seek to have it reopened and reconsidered. *Johnson v. Vilsack*, No. CA 3:10-3254-MBS-SVH, 2013 WL 1316494, at *9 (D.S.C. Mar. 28, 2013) ("[A] basic principal of administrative law . . . is 'that any objections not made before the administrative agency are subsequently waived before the courts.'" ) (citation omitted); *accord Ester v. Principi*, 250 F.3d 1068, 1072 (7th Cir. 2001) ("In *L.A. Tucker*, the Supreme Court affirmed the sound principle that any objections not made before the administrative agency are subsequently waived before the courts."); *Kessler v. Surface Transp. Bd.*, 635 F.3d 1, 8 (D.C. Cir. 2011) (applying the exhaustion doctrine to challenges to STB decisions regarding abandonment of a rail line); *see also* STB Docket No. AB-290 (Sub-No. 299X) (May 6, 2008) (stating that petitions to reopen the proceedings "must be filed by June 4, 2008" with the STB).

It would be improper to allow CSX to claim thirteen years later that the removal of the Diamond Track is evidence of wrongful conduct when it failed to object to the STB.

**C.      CSX cannot challenge discontinuance of the Diamond Track because such a challenge is untimely.**

Additionally, CSX's challenge is untimely. Federal courts are charged with ensuring the "just, speedy, and inexpensive" resolution of every action, Fed. R. Civ. P. 1, and therefore must exclude stale and irrelevant evidence. *See* Fed. R. Evid. 403. CSX's argument regarding NS's discontinuance of the Diamond Track necessarily depends on discussions and actions that occurred

8

in 2007 and 2008 and under the exclusive jurisdiction of the STB. In 2007, the NPBL Board approved the Diamond Track discontinuance without objection from the CSX-appointed Board members. *See* Ex. A; *Altavista Cotton Mills v. Lane*, 133 Va. 1, 15–16 (1922) (holding that a corporation could not "complain as stockholders of their own action as directors"). In 2008, the STB approved NPBL's discontinuance of its Diamond Track rights, again, without objection from CSX. *See* STB Docket No. AB-290 (Sub-No. 299X) and STB Docket No. AB-1024X. The STB decision became final and non-appealable at the end of the 60-day period after it became effective. CSX has not sought to have the decision reopened and reconsidered. As such, even if this court had jurisdiction to hear CSX's claims, which it does not, the NPBL meetings and STB proceedings fall far outside the relevant time-period to submit evidence in this Court proceeding. CSX's evidence, even if admissible, which it is not, is stale, making it both irrelevant and inadmissible. *See* Fed. R. Evid. 402, 403.

**D.     The evidence will confuse and mislead the jury.**

Not only is the Diamond Track evidence and argument legally improper and irrelevant but its introduction at trial will present a substantial danger of confusing and misleading the jury. *See* Fed. R. Evid. 403. Asking the jurors to find that NS's discontinuance and removal of the Diamond Track was wrongful, even though it was properly approved by both the STB and the NPBL Board without objection or intervention by CSX, has a substantial risk of misleading the jury. Without understanding that NS's actions were entirely legal and proper, were done to discontinue track that had been unused for years, *and were done without objection by CSX*, a jury could be improperly confused into thinking that the discontinuance and removal of the track can be considered evidence of wrongful conduct. This jury confusion would be highly prejudicial to the Defendants. Accordingly, the Court should exclude CSX's anticipated Diamond Track evidence under Rule

403. *Campbell v. Bos. Sci. Corp.*, 882 F.3d 70, 77 (4th Cir. 2018) (affirming trial court's exclusion of evidence that would "risk . . . jury confusion"); *United States v. Terry*, 726 F. App'x 939, 941 (4th Cir. 2018) (affirming trial court's exclusion of evidence that "may have inflamed the jury").

## CONCLUSION

For the foregoing reasons, NS respectfully requests an order prohibiting Plaintiff CSX from offering at trial any evidence or argument that the discontinuance of the Diamond Track is evidence of NS's wrongful conduct.

Dated: May 6, 2021  Respectfully submitted,

**NORFOLK SOUTHERN RAILWAY COMPANY**

/s/ *Alan D. Wingfield*
Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
Massie P. Cooper (VSB No. 82510)
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-6061
Email: alan.wingfield@troutman.com
Email: michael.lacy@troutman.com
Email: massie.cooper@troutman.com

John C. Lynch (VSB No. 39267)
Kathleen M. Knudsen (VSB No. 90845)
TROUTMAN PEPPER HAMILTON SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7759
Facsimile: (757) 687-7510
Email: john.lynch@troutman.com
Email: kathleen.knudsen@troutman.com

Tara L. Reinhart
John R. Thornburgh II
Thomas R. Gentry

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7000
tara.reinhart@skadden.com
john.thornburgh@skadden.com
thomas.gentry@skadden.com

*Attorneys for Norfolk Southern Railway Company*

114764161

11