IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CSX TRANSPORTATION, INC.,

        Plaintiff,

v.                                                                        Civil Action No. 2:18-cv-530-MSD-RJK

NORFOLK SOUTHERN RAILWAY
COMPANY, *et al.*,

        Defendants.

**NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY'S MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* #1 TO EXLCUDE EVIDENCE AND ARGUMENT REGARDING USE OF INTERNAL NS EMAILS**

Defendant Norfolk and Portsmouth Belt Line Railroad Company (the "Belt Line"), by counsel, for its memorandum in support of its Motion *in Limine* to exclude evidence and argument related to internal emails of Norfolk Southern Railway Company ("NS"), states as follows:

## Introduction

CSXT's claims against the Belt Line all rely on a conspiracy with NS.  In support of its claims, CSXT identifies internal NS emails between NS-appointed Belt Line Board members and other NS employees, which CSXT contends establish a conspiracy between NS and the Belt Line. CSXT's legal theory is flawed:  under Virginia law, individual NS-appointed Board members are not "representatives" or agents of the Belt Line by virtue of their status as directors.  Therefore, a communication between two NS employees, even if one also serves as a Belt Line Board member, is not a communication between NS and the Belt Line.

The Belt Line joins NS' Motion in Limine on this point under Federal Rules of Evidence 401, 402, and 403 and expressly adopts the arguments made by NS therein.  *See* D.E. 337.  The Belt Line submits this separate motion to include an additional argument under Rule 403, as the

Belt Line will be especially prejudiced by such evidence, since it exposes the Belt Line to liability for communications that the Belt Line did not authorize and cannot control.

### Additional Argument

**I.  Allowing CSXT to present NS communications as though they came from the Belt Line will be especially prejudicial to the Belt Line.**

Under settled Virginia law, individual Board members are not agents of a company and therefore cannot conspire on its behalf. *See Mosell Realty Corp. v. Schofield*, 183 Va. 782, 793 (1945).  As the Virginia Supreme Court explained in reversing a lower court that found such an agency: "It is elementary that the authority of the directors is conferred upon them as a board, *and they can bind the corporation only by acting together as an official body*." *Id*. (emphasis added). The Court held the same regarding declarations and admissions of individual directors:

> This rule has long been the law in Virginia:  [The] directors of a corporation have authority to bind it only when they act collectively as a board.  Individual directors are not its agents, and it is well settled, therefore, that ***declarations and admissions of individual directors when not acting as a board are not binding on the corporation nor admissible as evidence against it***, unless they were acting at the time as its authorized agents and within the scope of their authority.

*Monacan Hills, Inc. v. Page*, 203 Va. 110, 116 (1961) (quoting Fletcher, Cyclopedia Corporations, Vol. 2 (1954 Revised), § 741, at 1026-28) (emphasis added).

The rule also appears in the Restatement (Second) of Agency: "Neither the board of directors nor an individual director of a business is, as such, an agent of the corporation or of its members."  Rest. 2d of Agency 14C.  Directors bind the company only as a board.  *See* 18B Am. Jur. 2d Corporations § 1289 ("A corporate board of directors acts as a unit; an individual director may not act alone on behalf of the corporation without authority from the board.").

Allowing CSXT to introduce misleading evidence of NS communications as though they came from Belt Line "representatives" would directly contradict this law.  Worse still, it would expose the Belt Line to liability for communications the Belt Line cannot control.  The Belt Line

has no power over the Board members appointed by NS (any more than it has power over Board members appointed by CSXT), nor is it privy to their internal communications with other NS employees.

Unlike the case of *Am. Soc'y of Mech. Eng'Rs v. Hydrolevel Corp.*, 456 U.S. 556 (1982), relied upon by CSXT in its brief in opposition to the Belt Line's motion for summary judgment, the Belt Line directors appointed by its shareholders have never been authorized by the Board to act as agents of the company.  In *Hydrolevel*, the American Society of Mechanical Engineers ("ASME"), an industrial standards association, was accused of conspiring with one of its members to issue a false report – on ASME letterhead – that Hydrolevel's boiler safety device was unsafe. ASME's governing board had delegated the interpretation, formulation, and revision of the Boiler and Pressure Vessel Code to a Boiler and Pressure Vessel Committee, which in turn authorized subcommittees to respond to public inquiries about interpretation.  John James, the individual who masterminded the fraudulent report, was employed by Hydrolevel's competitor, McDonnell & Miller ("M&M").  He was also vice-chairman of the very ASME subcommittee responsible for drafting and issuing the false safety report.

James and the subcommittee chairman collaborated on the false safety report after M&M requested interpretation of whether Hydrolevel's device met the safety standards of the Boiler Code.  M&M then used the report to denigrate Hydrolevel's product.  As the Supreme Court observed, ASME, the principal, "entrusted the interpretation of one of its codes to Hardin [the subcommittee chairman].  As a result, M&M was able to use ASME's reputation to hinder Hydrolevel's competitive threat." *Id*. at 572.  The subcommittee chairman was expressly authorized by ASME to conduct the business of interpreting ASME codes, with the apparent authority of ASME, when he issued the false letter. *Id*. at 567 ("ASME's system of codes and

interpretative advice would not be effective if the statements of its agents did not carry with them the assurance that persons in the affected industries could reasonably rely upon their apparent trustworthiness."). The Supreme Court therefore affirmed the imposition of liability on ASME:

> Only ASME can take systematic steps to make improper conduct on the part of all its agents unlikely, and the possibility of civil liability will inevitably be a powerful incentive for ASME to take those steps. Thus, a rule that imposes liability on the standard-setting organization – *which is best situated to prevent antitrust violations through the abuse of its reputation* – is most faithful to the congressional intent that the private right of action deter antitrust violations.

*Id*. at 572-73 (emphasis added).

By contrast, the Belt Line's Board never conferred authority to any individual shareholder-appointed directors to act on behalf of the Belt Line in making any of the communications CSXT cites, and the Belt Line is hardly a standards-setting organization. Nor is there any contention in CSXT's conspiracy claims that an NS-appointed director made fraudulent representations that harmed CSXT. Plainly, CSXT's reliance on *Hydrolevel* is misplaced.

The law in Virginia on this point is settled. *See Mosell Realty*, 183 Va. at 793; *Monacan Hills*, 203 Va. at 116. To allow CSXT to argue that the Belt Line committed wrongful acts based on internal NS communications would expose the Belt Line to liability for conduct that it did not authorize and has no way to prevent. Rule 403 was designed to curtail exactly that kind of improper argument or testimony. *See* Fed. R. Evid. 403 (allowing court to exclude evidence that presents danger of "unfair prejudice, confusing the issues, [or] misleading the jury").

## Conclusion

For the foregoing reasons, the Belt Line joins in NS' motion and requests that this Court enter an order (1) prohibiting CSXT from offering at trial any internal NS communication in support of its conspiracy claims and (2) all other just relief.

Dated: May 7, 2021

NORFOLK AND PORTSMOUTH
BELT LINE RAILROAD COMPANY

By: _____/s/ W. Ryan Snow_____
James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
David C. Hartnett, VSB No. 80452
Alexander R. McDaniel, VSB No. 92398
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
dhartnett@cwm-law.com
amcdaniel@cwm-law.com
*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

**CERTIFICATE OF SERVICE**

I certify that on this 7th day of May 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a "Notice of Electronic Filing" to all counsel of record who have consented to electronic service.

_____/s/ W. Ryan Snow_____
W. Ryan Snow, VSB No. 47423
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
wrsnow@cwm-law.com