IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CSX TRANSPORTATION, INC.,

        Plaintiff,

v.                                            Civil Action No. 2:18-cv-530-MSD-RJK

NORFOLK SOUTHERN RAILWAY
COMPANY, *et al.*,

        Defendants.

**NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY'S
MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* #2 TO EXCLUDE
EVIDENCE OR ARGUMENT ABOUT CSXT'S PRIVATE SWITCHING RATES**

      Defendant Norfolk and Portsmouth Belt Line Railroad Company (the "Belt Line"), by counsel, states as follows for its memorandum in support of its motion *in limine*, pursuant to Federal Rules of Evidence 402 and 403, to exclude evidence and argument of switching rates privately negotiated by plaintiff CSX Transportation, Inc. ("CSXT"):

## Introduction

      CSXT alleges a conspiracy between the Belt Line and NS to fix the Belt Line's switching rate above a competitive level. CSXT claims that, "Defendants have caused the NPBL to establish and maintain unreasonably high rates for its switch services for intermodal freight. The current line haul switch rate is dramatically higher than rates or comparable services charged by other short line railroads." D.E. 1 ¶ 34. According to CSXT, the Belt Line's rate has "effectively foreclosed CSXT from moving containers to or from NIT on the NPBL." *Id.* ¶ 35.[1]

---

[1] CSXT pays the Belt Line's uniform switching rate for non-intermodal cargo year-round. It claims that the Belt Line's public tariff rate is unreasonable only for intermodal traffic to NIT. *See* March 23, 2018 CSXT rate proposal, D.E. 297-5.

To prove these allegations at trial, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. For example, CSXT's proffered expert, Dr. Howard Marvel, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Marvel Report ¶ 58 (**Ex. A**); *see also* NPBL Tariff p. 4 (**Ex. B**).  CWRY's published tariff rate is $210 per railcar well, loaded or empty, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[2] *See* Marvel Report at ¶ 58 (**Ex A**). ▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ For example, Robert Girardot, CSXT's director of strategy and analytics, confirmed during his second deposition that, with respect to the Port of Mobile, "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Girardot Dep. (second) 155:6-12 (**Ex. C**). The published rate in Mobile is $240.10 per container, but Girardot stated in a declaration that CSXT "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Girardot Decl. (second) ¶ 8 (**Ex. D**). Girardot also testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Girardot Dep. (second) 156:2-12 (**Ex. D**). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[2]   Specialized railcars carry intermodal containers. The "well" of the railcar is where containers are set. For efficiency, wells are commonly stacked with at least two containers (often two 40-foot containers), although a single well can hold three (two 20-foot containers topped by a 40-foot container).



██████████████████████████████████████████████████████████████, *see id.* at 138:11-157:19, ████████████████████████

████████████████████████.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████. In fact, CSXT has designated all mention of them "Attorneys Eyes Only" under the Protective Order. This means the Belt Line itself does not know the terms or rates that CSXT intends to use at trial for comparison against the Belt Line's rate.

Crucially, CSXT failed to survey any other contract rates with any other railroads that deviate from the published tariff rates; ████████████████. In other words, ████████

████████████████████████████████████████████████████

████████████. CSXT has failed to produce any evidence of (1) ████████████████████

████████████████████, and (2) ████████████████████████████.

As explained below, such evidence must be excluded as irrelevant and/or unfairly prejudicial. Under antitrust law, a party is prohibited from establishing anticompetitive pricing based on ████████████████████████████████. *See Laurel Sand & Gravel v. CSX Transp. Inc.*, 704 F. Supp. 1309, 1323 (D. Md. 1989), *aff'd*, 924 F.2d 539 (4th Cir. 1991) (holding that antitrust law focuses on a "rate's reasonableness in the context of competition, *rather than from plaintiffs' perspective*." (emphasis added). Put differently, in comparing rates, ████████

████████████████████████████████████████████████████

████████████████████.

### Legal Standard

Motions *in limine* afford district courts the opportunity to rule on evidentiary issues in advance of trial and exclude inadmissible evidence. A motion *in limine* should be granted

3

whenever the evidence is clearly inadmissible on all potential grounds. *Intelligent Verification Sys., LLC v. Microsoft Corp.*, 2015 U.S. Dist. LEXIS 43042, at *9 (E.D. Va. Mar. 31, 2015), *affd sub nom. Intelligent Verification Sys., LLC v. Majesco Entm't Co.*, 628 F. App'x 767 (Fed. Cir. 2016).

Rule 402 states that evidence that is irrelevant is not admissible. *See* Fed. R. Evid. 402. Under Rule 403, a district court may exclude evidence when its probative value is substantially outweighed by a danger to confuse or mislead the jury. *See* Fed. R. Evid. 403.

## Argument

**I. Private contract rates with only the plaintiff cannot establish unreasonableness in the "context of competition."**

███████████████████████████████████████████████████████████████████

██████████████████████████. *See* Fed. R. Evid. 401. ██████████████████████████

██████████ Under antitrust law, "Any inquiry into the reasonableness of the rate … must focus on the rate's reasonableness in the context of competition, rather than from plaintiffs' perspective." *Laurel Sand*, 704 F. Supp. at 1323.[3] It makes no difference that the Belt Line's rate "may not be workable in [CSXT's] plans" ████████████████████████████████████████████. *Laurel Sand*, 704 F. Supp. at 1323.

As one of the Belt Line's two shareholders, CSXT is fully aware that the Belt Line's switching rate is set at cost. *See* D.E. 297 pp. 12-13, 32-36. Nevertheless, CSXT's expert opines that the Belt Line's rate is "exorbitant" ████████████████████████████████████████████

████████████████████████████████████████████. *See* Marvel Expert Report ¶ 58 (**Ex. A**).

Additionally, Girardot stated that the Belt Line's uniform rate ████████████████████████

---

[3] This topic is discussed in the Belt Line's brief in support of motion for summary judgment. *See* D.E. 297, pp. 34-38.

4

███████████████████████████████████████████████████. *See* Girardot Decl. (second) at ¶ 8 (**Ex. D**); Girardot Dep. (second) 138:11-157:19 (**Ex. C**).

It is undisputed that, in the absence of these improper comparisons, the Belt Line's switching rate is nearly identical to CWRY's published tariff rate, and lower than every other comparable switching rate on a per-mile, per-container basis. *See* D.E. 297 pp. 37-38.

Evidence is relevant only when it makes a fact more or less probable. Fed. R. Evid. 401. Evidence of ███████████████████████, even in comparison to public rates, shows nothing about the "context of competition." *Laurel Sand*, 704 F. Supp. at 1323. CSXT's universe of "comparable rates" is cherry-picked to consist of ████████████████████████████████ █████████████████████████████████████. CSXT has not produced evidence that █████████████████████████████████████████████████. And even if █████████████████████████████████, CSXT has failed to produce the terms so the jury might know what was given in exchange.

The public tariff rates set by the Belt Line and other comparable railroads are, by definition, available for all consumers. ████████████████████████████████. This is best evidenced by the fact that CSXT ███████████████████████████████████████████████, even though CSXT accuses the Belt Line of failing to benchmark its rate against them. Thus, ████████ ██████████ do not tend to make any facts more or less probable because they show only a grossly incomplete market of comparable rates. CSXT's ██████████ are therefore irrelevant and inadmissible under Rule 402.

Yet, even if ████████████████ have any marginal relevance, permitting CSXT to introduce this evidence would only confuse and mislead the jury, as the jurors would be left to

5

assess reasonableness from only CSXT's perspective, not in the "context of competition." *See Laurel Sand*, 704 F. Supp. at 1323; *see also* Fed. R. Evid. 403.

## Conclusion

For the foregoing reasons, the Belt Line respectfully requests that this Court enter an order excluding all argument, evidence, and testimony ████████████████████████████ ███████████████, and grant the Belt Line all other just and necessary relief.

<div style="display: flex;">

Dated: May 7, 2021

NORFOLK AND PORTSMOUTH
BELT LINE RAILROAD COMPANY

By: _____/s/ W. Ryan Snow_____
James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
David C. Hartnett, VSB No. 80452
Alexander R. McDaniel, VSB No. 92398
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
dhartnett@cwm-law.com
amcdaniel@cwm-law.com
*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

</div>

## CERTIFICATE OF SERVICE

I certify that on this 7th day of May 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a "Notice of Electronic Filing" to all counsel of record who have consented to electronic service.

By: _____/s/ W. Ryan Snow_____
W. Ryan Snow, VSB No. 47423
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000

                                              Facsimile: (757) 623-5735
wrsnow@cwm-law.com
*Attorney for Norfolk and Portsmouth Belt Line Railroad Company*