**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**CSX TRANSPORTATION, INC.,**

**Plaintiff,**

v.                                                    **Civil Action No. 2:18-cv-530-MSD-RJK**

**NORFOLK SOUTHERN RAILWAY
COMPANY,** *et al.*,

**Defendants.**

**NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY'S
MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* #3 TO
LIMIT EVIDENCE AND ARGUMENT FROM NON-PARTIES VPA AND VIT**

Defendant Norfolk and Portsmouth Belt Line Railroad Company (the "Belt Line"), by

counsel, pursuant to Fed. R. Civ. P. 37(c)(1) and Fed. R. Evid. 403, 602, and 701, states as follows

for its memorandum in support of its Motion *in Limine* to limit testimony of Virginia Port

Authority ("VPA") and Virginia International Terminals, LLC ("VIT"):

<u>**Introduction**</u>

VPA and VIT are the owner and operator, respectively, of Norfolk International Terminals

("NIT").  A central issue in this case is whether CSX Transportation, Inc. ("CSXT") can prove

that it has been wrongly foreclosed from on-dock rail access at NIT because of, among other things,

the Belt Line's $210 switching rate.  To date, CSXT has relied heavily on purported "support" of

VPA and VIT for CSXT's positions, going so far as to quote correspondence from VPA to the Belt

Line in the Complaint—correspondence CSXT asked VPA to send.  *See* Compl. ¶¶ 4, 36, 43, D.E.

1; *see* VPA000074 (**Ex. A**).  In its opposition to the Belt Line's motion for summary judgment, in

fact, CSXT expressly touts VPA's and VIT's "endorsement" of CSXT in this case:  "The parties

agree that NIT, like other POV terminals, is owned by VPA and operated by VIT, *both of which*

1

*have endorsed CSX's efforts to obtain on-dock access at NIT*."   CSXT's Consol. Opp. to Defs. Mot. Summary Judgment, p. 60, D.E. 328 (emphasis added).

Yet VPA itself has drawn its conclusions about the Belt Line's rate and operations from whole cloth, admitting in its corporate deposition that no one at VPA ever studied the Belt Line's tariff, the Belt Line's operational costs, or any comparable switching rates.  VIT likewise never conducted such an exercise, and no one from VPA or VIT has been designated as an expert witness.  Nevertheless, CSXT hopes to cash in on the clout that it believes VPA and VIT can bring to its case if they are improperly permitted to testify about the Belt Line's rate and operations.

What CSXT did not reveal in its Complaint is that  That VIT or VPA might be disinterested in this case is simply a fiction. [1]

Of course, the Belt Line recognizes that witnesses from VPA and VIT are permitted to testify to factual issues within their personal knowledge.  What they cannot do, however, is testify to matters outside their personal knowledge, or cast their "support" for CSXT as quasi-governmental entities like a misplaced popularity contest.  The Belt Line seeks a ruling:

(1)      prohibiting VPA or VIT, or any current or former employee, from testifying that the Belt Line's switching rate is "too high" or "unreasonable" or any similar descriptor, as (i)

---

[1]      As explained in the Belt Line's summary judgment brief, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  See D.E. 297, pp. 4-5.

no one from VPA or VIT is designated an expert witness in this case, and (ii) no one from VPA or VIT has analyzed the Belt Line's switching rate or operating costs;

(2)     prohibiting VPA or VIT, or any current or former employee, from testifying that CSXT does not have "dual access," "proper access," or "equitable access" to NIT, as (i) no party disputes that CSXT has rail access to NIT via the Belt Line, and (ii) neither VPA nor VIT has any basis to claim such access is improper; and

(3)     prohibiting CSXT from arguing or eliciting testimony that VPA or VIT "supports" or "endorses" CSXT's position, as such argument or testimony would be irrelevant and highly prejudicial.

## Legal Standard

A trial court is afforded discretion in deciding a motion *in limine*.  A reviewing court will examine a trial court's decision for an abuse of that discretion.  *See Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996).

Rule 26(a)(2) requires a party "to disclose to the other parties the identity of any [expert] witness it may use at trial."  Fed. R. Civ. P. 26(a)(2)(A).  Per the Scheduling Order in this case, all expert witnesses must have been identified by March 12, 2021 and discovery related to those expert witnesses must have been completed by March 24, 2021.  *See* D.E. 254.

Rule 37(c)(1) provides, in pertinent part, that "a party [that] fails to provide information or identify a witness as required by Rule 26(a) or (e) . . . is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  "A party that fails to provide these disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case."  *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278–279 (4th Cir. 2005).  Importantly, it is not necessary that the nondisclosure be in

"bad faith or callous disregard of the discovery rules" in order for the evidence to be excluded. *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003).

The Federal Rules of Evidence prohibit a lay witness from testifying to a matter without personal knowledge. Fed. R. Evid. 602, 701 (lay witness testimony must be based on the witness's personal knowledge and perception). If the witness does not have personal knowledge, the Court must not allow the witness to testify to that matter as the "testimony would be speculative." *Steves & Sons, Inc. v. Jeld-Wen, Inc.*, 2018 U.S. Dist. LEXIS 5061, at *10 (E.D. Va. Jan. 10, 2018) (citing *MCI Telecommunications Corp. v. Wanzer*, 897 F.2d 703, 706 (4th Cir. 1990)).

Under Rule 403, a district court may exclude evidence when its probative value is substantially outweighed by a danger of, among other things, "unfair prejudice, confusing the issues, [or] misleading the jury.". Fed. R. Evid. 403. Unfair prejudice is that which has an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Queen*, 132 F.3d 991, 994 (4th Cir. 1997).

<u>**Argument**</u>

I.   **The Court should prohibit VPA and VIT from testifying that the Belt Line's tariff rate is "too high," "unreasonable," or any similar descriptor.**

   a.   **No one from VPA or VIT has been designated as an expert to offer such testimony.**

The reasonableness of the Belt Line's switching rate is the province of expert testimony. *See e.g.*, *Interstate Commerce Com. v. Union P. R. Co.*, 222 U.S. 541, 549, 32 S. Ct. 108, 111–112 (1912) ("[t]he reasonableness of rates cannot be proved by categorical answers, like those given, where a witness may, in terms, testify that the goods were worth so much per pound, or the services worth so much a day. Too many elements are involved in fixing a rate on a particular article, over a particular road, to warrant reliance on such method of proof. The matter has to be determined by a consideration of many facts."); *Koppers Co. v. United States*, 166 F. Supp. 96, 103 (W. D. Pa.

1958) (finding that the validity of proportional rates was a "problem [that] calls for an expert, informed judgment on a multitude of facts" and noting that varying proportional rates are "an integral part of the railroad rate structure.").

CSXT has not designated anyone from VPA or VIT to offer an expert opinion on any issue, much less to opine whether the Belt Line's rate is too high or unreasonable. CSXT's only expert in this case is Dr. Howard Marvel, an economist. Because CSXT has not identified any past or present VPA or VIT employee as an expert in this case, CSXT cannot use any past or present VPA or VIT employee to present expert testimony at trial —including as to the reasonableness of railroad rates. *See* Fed. R. Civ. P. 37(c)(1).

> ### b. No one from VPA or VIT has analyzed the Belt Line's switching rate or operating costs.

In addition, neither VPA nor VIT has analyzed the Belt Line's switching rate, operating costs, or other comparable switch rates. *See* VPA 30(b)(6) Dep. 122:24-123:6, 176:2-178:4, 180:1-181:12 (**Ex. B**). As a consequence, witness testimony from VPA or VIT on the topic of the Belt Line's switching rate can only be conclusory and speculative on one of the ultimate issues in the case, not reliable based on personal knowledge. *See* Fed. R. Evid. 602 (requiring personal knowledge); *see also United States v. Seko*, 2016 U.S. Dist. LEXIS 176777, at *8-9 (E.D. Va. Dec. 20, 2016) (granting motion *in limine* where "admitting such evidence would allow a lay witness to improperly opine on an ultimate issue in the case."). It must therefore be excluded.

## II. The Court should prohibit VPA and VIT from testifying that CSXT does not have "dual access," "proper access," or "equitable access" to NIT.

> ### a. It is undisputed that CSXT has rail access to NIT and CSXT should not be permitted to confuse the jury by eliciting contrary testimony.

No party disputes that CSXT has access to NIT by rail via the Belt Line; CSXT simply chooses not to use it, opting instead for ███████████. CSXT confirmed its access to NIT by

rail in its Complaint. *See* Compl. ¶20 D.E. 1 ("For any carrier other than NS, the only way to access NIT by rail is via NPBL."). As well, Tony MacDonald, CSXT's former manager for its intermodal yard in Portsmouth, testified that CSXT has direct rail access to NIT via the Belt Line. *See* MacDonald Dep. 90:17-93:1 (**Ex**. **C**). VPA itself also conceded in deposition that CSXT has access to NIT by rail. *See* VPA 30(b)(6) Dep. 121:12-15. Therefore, any testimony by VPA or VIT that CSXT does *not* have "access" or "dual access" to NIT by rail is simply incorrect, and CSXT should be prohibited from confusing the jury by eliciting such testimony on an undisputed point. *See* Fed. R. Evid. 403.

### b. Neither VPA nor VIT has any basis to claim CSXT's rail access to NIT is "improper" or "inequitable."

For the same reasons that witnesses from VPA and VIT cannot testify to the reasonableness of the Belt Line's rate, they also cannot testify that CSXT's access to NIT over the Belt Line is "improper" or "inequitable" or any similar descriptor. A lay witnesses' legal conclusions on the ultimate issue are not admissible, and neither VPA nor VIT has any basis to judge the propriety of rail access via the Belt Line at NIT. *See Seko*, 2016 U.S. Dist. LEXIS 176777, at *8-9.

The importance of this issue is underscored by the evidence to date. In early 2018, CSXT asked VPA to send a letter to the Belt Line supporting CSXT's desire for a reduced switching rate to NIT. Without any analysis of the Belt Line's rate or costs or any comparable rates, VPA complied. *See* VPA Letter dated April 13, 2018 (CSXT0100713) (**Ex**. **D**); *see also* VPA 30(b)(6) Dep. 122:24-123:6, 176:2-178:4, 180:1-181:12 (acknowledging no analysis). Its letter specifically cites "lack of *proper access* to NIT by CSX" as putting Virginia at a competitive disadvantage, and requests "dual access for handling containers at NIT." *Id*. (emphasis added).

Yet in the absence of any analysis, the letter is pure speculation on an ultimate issue in the case – whether, in fact, CSXT has "proper" access to NIT. And as noted above, no one from VPA

or VIT has been designated an expert in this case.  *See* Fed. R. Evid. 702.  Consequently, no one from VPA or VIT can testify on the topic, nor should the letter be admitted into evidence, as to do so would only let CSXT end-run otherwise prohibited testimony.  *See* Fed. R. Civ. P. 37(c)(1); *see also* Fed. R. Evid. 403.

**III.    The Court should prohibit VPA and VIT from testifying that they "support" or "endorse" CSXT's claims.**

This Court should also prohibit evidence and argument of VPA's or VIT's purported "support" or "endorsement" of CSXT in this lawsuit.  VPA's or VIT's opinions of CSXT's lawsuit are totally irrelevant.  Yet even if they had any probative value, allowing a quasi-governmental entity to throw its weight behind CSXT at trial would be highly prejudicial to the Defendants.

Civil cases are not popularity contests.  VPA's and VIT's support of CSXT does not aid the jury in deciding whether a conspiracy of any kind occurred.  CSXT must prove its claims. VPA and VIT may certainly provide relevant testimony as to the operations at the Port of Virginia, but their testimony cannot include support for CSXT's positions or any of the other inadmissible testimony above.  As the Fourth Circuit explained, "Courts are, however, 'mindful to guard against lay witness testimony when it involves *meaningless assertions which amount to little more than choosing up sides.*'"  *United States v. Offill*, 666 F.3d 168, 177-78 (4th Cir. 2011) (emphasis added) (quoting *Mattison v. Dallas Carrier Corp.*, 947 F.2d 95, 110-11 (4th Cir. 1991)).

CSXT seeks to elicit from VPA and VIT exactly what the Fourth Circuit prohibits.  *See Offill*, 666 F.3d at 177-78; *see also Lacaillade v. Loignon Champ-Carr, Inc.*, 2011 U.S. Dist. LEXIS 131309 (D. N.H. Nov. 14, 2011) ("Therefore, where, as here, 'attempts are made to introduce meaningless assertions which amount to little more than choosing up sides, exclusion for lack of helpfulness is called for by [Rule 701].'") (quoting Fed. R. Evid. 701 advisory committee's note 1972).

Yet even if the testimony were somehow relevant, it still would be inadmissible because of the substantial prejudice to the Defendants. *See* Fed. R. Evid. 403. VPA and VIT will be seen as quasi-governmental entities by the jury, improperly giving the impression of neutral, authoritative support when it is anything but—in fact, ███████████████████████████ █████████████████████████. The Defendants should not have to overcome that impression when the value that VPA and VIT add to the issues above, having undertaken no analysis and bringing no identified expertise on railroad matters, is nonexistent.

## Conclusion

For the foregoing reasons, the Belt Line requests that the Court enter an order:

(1)      prohibiting VPA or VIT, or any current or former employee, from testifying that the Belt Line's switching rate is "too high" or "unreasonable" or any similar descriptor;

(2)      prohibiting VPA or VIT, or any current or former employee, from testifying that CSXT does not have "rail access" or "proper access" or "dual access" to NIT;

(3)      prohibiting CSXT from arguing or eliciting testimony that VPA or VIT "supports" or "endorses" CSXT's position in this case;

(4)      excluding the April 13, 2018 letter from VPA to the Belt Line; and

(5)      granting the Belt Line all other just relief.

Dated:  May 7, 2021                              NORFOLK AND PORTSMOUTH
                                                 BELT LINE RAILROAD COMPANY


                                        By: _____/s/ W. Ryan Snow_____
                                            James L. Chapman, IV, VSB No. 21983
                                            W. Ryan Snow, VSB No. 47423
                                            David C. Hartnett, VSB No. 80452
                                            Alexander R. McDaniel, VSB No. 92398
                                            CRENSHAW, WARE & MARTIN, P.L.C.
                                            150 W. Main Street, Suite 1500
                                            Norfolk, Virginia 23510

Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
dhartnett@cwm-law.com
amcdaniel@cwm-law.com
*Attorneys for Norfolk and Portsmouth Belt*
*Line Railroad Company*

## CERTIFICATE OF SERVICE

I certify that on this 7th day of May 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a "Notice of Electronic Filing" to all counsel of record who have consented to electronic service.

_____/s/ W. Ryan Snow_____
W. Ryan Snow, VSB No. 47423
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
wrsnow@cwm-law.com