## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

CSX TRANSPORTATION, INC.,
individually and on behalf of NORFOLK
& PORTSMOUTH BELT LINE
RAILROAD COMPANY,

       Plaintiff,

       v.                             Civil Action No. 2:18-cv-530-MSD

NORFOLK SOUTHERN RAILWAY
COMPANY, *et al.*,

       Defendants.

_____/


## PLAINTIFF CSX TRANSPORTATION, INC.'S MEMORANDUM
## <ins>IN SUPPORT OF ITS MOTION TO EXCLUDE THOMAS D. CROWLEY</ins>

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ...................................................................................................................1

RELEVANT BACKGROUND ...............................................................................................3

LEGAL STANDARD .............................................................................................................5

ARGUMENT ..........................................................................................................................6

I.     Mr. Crowley's Opinions about NPBL's Rate are Inadmissible. .......................................6

     A.     Mr. Crowley's rate analysis is unreliable because it is not grounded in any coherent methodology and because he applies no expertise in assessing the rate. ...................................................................................................................6

     B.     Mr. Crowley's rate analysis will be unhelpful to the trier of fact. .......................11

     C.     Mr. Crowley cannot opine as to "historical events" or offer legal conclusions in the guise of "expert" testimony. ....................................................13

II.     Mr. Crowley's Drayage Opinion is Unhelpful and Speculative........................................15

CONCLUSION .....................................................................................................................18

CERTIFICATE OF SERVICE .............................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adv. Drainage Sys., Inc v. Quality Culvert, Inc.*,
  2015 WL 1299368 (S.D. Ohio Mar. 23, 2015) ....................................................... 12

*Boss v. Nissan N. Am., Inc.*,
  228 F. App'x 331 (4th Cir. 2007) .......................................................................... 10

*Cap. Concepts, Inc. v. Mountain Corp.*,
  936 F. Supp. 2d 661 (W.D. Va. 2013) ................................................................... 14

*Cooper v. Smith & Nephew, Inc.*,
  259 F.3d 194 (4th Cir. 2001) ................................................................................... 5

*Crawford v. Franklin Credit Mgmt. Corp.*,
  2015 WL 13703301 (S.D.N.Y. Jan. 22, 2015) ................................................. 12, 13

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) .......................................................................................... 2, 3, 5

*Donnert v. Feld Entmt.*,
  2013 WL 12097618 (E.D. Va. Nov. 9, 2013) .......................................................... 14

*Guillory v. Domtar Indus. Inc.*,
  95 F.3d 1320 (5th Cir. 1996) .................................................................................. 14

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999) ................................................................................................. 5

*Lee v. City of Richmond, Va.*,
  2014 WL 5092715 (E.D. Va. Sept. 30, 2014) .................................................. 10, 15

*LSQ Funding Grp., L.C. v. EDS Field Servs.*,
  879 F. Supp. 2d 1320 (M.D. Fla. 2012) ................................................................. 12

*Merrill v. McCarthy*,
  2016 WL 1258472 (E.D. N.C. Mar. 30, 2016) ....................................................... 14

*Merritt v. Old Dominion Freight Line, Inc.*,
  2011 WL 322885 (W.D. Va. Feb. 2, 2011) ............................................................... 5

*Richard Parks Corrosion Tech., Inc. v. Plas-Pak Indus., Inc.*,
  2015 WL 5708541 (D. Conn. Sept. 29, 2015) ....................................................... 12

*Shreve v. Sears, Roebuck & Co.*,
  166 F. Supp. 2d 378 (D. Md. 2001) .......................................................................... 5

*United States v. Crisp*,
    324 F.3d 261 (4th Cir. 2003) ........................................................5

*United States v. Lespier*,
    725 F.3d 437 (4th Cir. 2013) ...................................................5, 11

*United States v. Wilson*,
    484 F.3d 267 (4th Cir. 2007) ........................................................7

*Valador, Inc. v. HTC Corp.*,
    242 F. Supp. 3d 448 (E.D. Va. 2017) .......................................5, 10

*Westberry v. Gislaved Gummi AB*,
    178 F.3d 257 (4th Cir. 1999) .......................................................6, 7

**Other Authorities**

Federal Rules of Evidence Rule 702 .......................................................*passim*

Plaintiff CSX Transportation, Inc. ("CSX"), by counsel, submits this memorandum in support of its Motion to Exclude Thomas D. Crowley, the expert witness proffered by Defendant Norfolk and Portsmouth Beltline Railway ("NPBL" or the "Belt Line") (the "Motion"). In support, CSX states as follows:

## INTRODUCTION

This antitrust and business conspiracy action seeks to hold Defendants NPBL and Norfolk Southern Railway Company ("NS") liable for their decades-long, ongoing efforts to monopolize on-dock rail access at Norfolk International Terminal ("NIT"), the most important marine terminal in the Port of Virginia ("POV"). As this Court observed in denying Defendants' motions to dismiss, CSX's Complaint describes in detail the manner by which NS and NPBL have "collud[ed]. . . to deny competitors access to NIT," including, among other things, "by causing [the] Belt Line to establish and maintain unreasonably high rates for its switch services for intermodal freight." ECF No. 66 at 6. As outlined in CSX's Opposition to Defendants' Motions for Summary Judgment, CSX has amassed through discovery substantial evidence confirming these allegations. *See* ECF No. 324 at 7-40.

NPBL has designated Thomas D. Crowley as an expert on two issues: (1) whether NPBL's switch rate is reasonable, and (2) whether drayage is an "effective substitute" for rail service at NIT. *See* Expert Report of Mr. Thomas D. Crowley, dated February 3, 2021, attached as **Exhibit A**. In his report, Mr. Crowley expresses the following opinions:



*See* **Ex. A** at 3.

The Court should exclude these opinions because they do not meet the standard required under *Daubert*: that "an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). Mr. Crowley's opinions are not premised on scientific or other accepted standards. Mr. Crowley's background is primarily comprised of testimony before the Surface Transportation Board ("STB"). In deposition, Mr. Crowley described the formula that the STB applies to determine whether a rail rate is "reasonable," and emphasized his familiarity and experience with applying that standard. Yet Mr. Crowley testified that he did *not* apply that standard in this case. Indeed, it appears from his report and deposition that he applied no standard at all in assessing NPBL's rate. Rather, he simply



Mr. Crowley's support for his opinions amounts to a combination of simple math and rote recitation of NPBL's factual arguments. For example, Mr. Crowley's assessment that ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—an exercise well within the ability of lay witnesses and jurors. Mr. Crowley's assessment that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮—again, a simple task that requires no expert testimony. Moreover, Mr. Crowley disregards substantial record evidence of many relevant, non-monetary factors that render drayage an unacceptable substitute to on-dock rail.

Remarkably, while Mr. Crowley endeavors to comment that ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Indeed, when asked whether he considered ███████████████████████████████████ ████████████████████████████████, Mr. Crowley said that he had not.  Mr. Crowley thus has little-to-nothing to say that is relevant to the actual issues in this case—and certainly nothing that meets the *Daubert* standard.  Because Mr. Crowley would not supply reliable expert testimony in this case, the Court should exclude his opinions under Rule 702 of the Federal Rules of Evidence.

## RELEVANT BACKGROUND

NPBL designated Mr. Crowley as an expert in this action on February 3, 2021.  *See* Ex. A. Mr. Crowley holds a Bachelor of Science in economics from the University of Maine, and he serves as President of L.E. Peabody & Associates, Inc., an economic consulting firm.  *See id.* Ex. 1 at 1.  His experience involves conducting economic and operational studies in the rail industry. *See id.* Ex. 1 at 1-3.  Mr. Crowley has "███████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████████.  *Id.* Ex. 1 at 3.

Mr. Crowley has been proffered as an expert in only two federal cases in the past four years, *see id.* at Ex. A Attach. A, neither of which involved antitrust claims, *see* March 31, 2021 Dep. of T. Crowley, attached as **Exhibit B**, at 110:6-113:19.  Mr. Crowley's opinions have been excluded in part by at least one federal court.  *See* Docket Report, *Western Resources, Inc. v. Union Pacific RR Co.*, No. 2:00cv2043 (D. Kan. 2000), attached as **Exhibit C**, at Dkt. No. 367 (Motion) and Dkt. No. 545 (Order).  Though NS has cross-designated Mr. Crowley as an expert in this case, NS has previously moved to exclude his testimony in a different federal case, on the ground that Mr. Crowley had performed no true expert analysis, and rather simply did "various arithmetic calculations."  *See* Pl.'s Mot. Limine to Exclude Expert Testimony of Thomas D. Crowley, *Norfolk*

*Southern Railway Co. v. Basell USA, Inc.*, No. 05-CV-3419-BMS (E.D. Pa. 2005), attached as **Exhibit G**.

Mr. Crowley's report responds to the report prepared by CSX's expert, Dr. Howard P. Marvel, an economics professor and expert in industrial organization economics, who has lectured and published extensively on a wide variety of antitrust and competition issues, and who has provided expert opinions and testimony in numerous antitrust matters. *See* Report of Dr. Howard P. Marvel, dated Feb. 25, 2020, attached as **Exhibit D**, ¶¶ 1-4. In his report, Dr. Marvel defines the relevant market for antitrust purposes as the market for on-dock rail access at NIT. *See id.* at ¶¶ 37-40. In doing so, Dr. Marvel opines that drayage is not an adequate substitute for on-dock rail. *See id.* at ¶ 40 ("The market definition analysis . . . centers on whether CSX could reasonably substitute on-dock rail access at NIT with other means of transportation access to NIT [i.e., drayage]"); *see also* Reply Report of Dr. Howard P. Marvel, dated March 5, 2021, attached as **Exhibit E**, ¶¶ 22-36. Dr. Marvel also opines that NPBL's $210 switch rate is "extraordinarily high" compared to rates charged by other short line railroads for similar services, *see* Ex. D ¶¶ 56-58, and that NPBL's refusal to offer a lower rate for intermodal traffic to NIT, despite the fact that it could cover its costs and generate revenue by doing so, is consistent with Defendants' intent to monopolize the relevant market, *see id.* ¶¶ 82-84.

Mr. Crowley challenges two aspects of Dr. Marvel's analysis: the "reasonableness" of NPBL's rate and the substitutability of drayage. *See* Ex. A at 3. With respect to NPBL's rate, Mr. Crowley opines that ███████████████████████████████████████████████████ ███████████████████████████████████████████████." *Id.* at 5. He also suggests that NPBL's rate ███████████████████████████████████████████████████ ███████████████████████████████████████████████████

███████   *See id.* at 10-15.  With respect to drayage, Mr. Crowley opines that "███████

██████████████████████████████████████████████████████, *see id.* at 23-24.

## **LEGAL STANDARD**

An expert witness must be "qualified as an expert by knowledge, skill, experience, training, or education" before he may offer an opinion.  FED. R. EVID. 702.  Rule 702 requires trial judges, as gatekeepers, to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *see also United States v. Crisp*, 324 F.3d 261, 268 (4th Cir. 2003) ("The touchstones for admissibility under *Daubert* are two: reliability and relevancy.").  The same standard applies to the opinions of non-scientific experts.  *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999).  "The proponent of the [expert] testimony must establish its admissibility by a preponderance of proof."  *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).

Expert testimony is admissible only if it would "help the trier of fact to understand the evidence or to determine a fact in issue."  *United States v. Lespier*, 725 F.3d 437, 449 (4th Cir. 2013).  This requirement "prohibits the use of expert testimony related to matters which are obviously within the common knowledge of jurors."  *Id.*; *see also Merritt v. Old Dominion Freight Line, Inc.*, No. 6:07-CV-27, 2011 WL 322885, at *7 (W.D. Va. Feb. 2, 2011) ("Where lay jurors are capable of understanding and drawing inferences from the underlying evidence, the proffered testimony will not assist the jury.").

Finally, "[t]he fact that a proposed witness is an expert in one area, does not *ipso facto* qualify him to testify as an expert in all related areas."  *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391 (D. Md. 2001).  The Court's "gatekeeping requirement" must ultimately ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the

practice of an expert in the relevant field." *Valador, Inc. v. HTC Corp.*, 242 F. Supp. 3d 448, 456

(E.D. Va. 2017) (citations omitted).

## ARGUMENT

### I.   Mr. Crowley's Opinions about NPBL's Rate are Inadmissible.

Mr. Crowley's analysis of NPBL's rate is inadmissible for a number of reasons.   His

opinions are inadmissible because (1) he is not qualified to opine as to the reasonableness of

NPBL's rate in this context, (2) he applies no coherent methodology beyond basic arithmetic

within the knowledge and experience of lay jurors, and (3) he relies on speculation and *ipse dixit*

rather than sufficient facts and data.   Additionally, Mr. Crowley opines at length about conclusions

drawn from certain "historical events," premised on a cherry-picked recitation of evidence

supporting NPBL's theory of the case and Mr. Crowley's interpretation of NPBL's governing

documents.   *See* Ex. A at 7-9.   These "opinions" would not assist the jury, and Mr. Crowley is not

qualified to offer them.   For all these reasons, Mr. Crowley's opinions pertaining to NPBL's rate

should be excluded.

### A.   Mr. Crowley's rate analysis is unreliable because it is not grounded in any coherent methodology and because he applies no expertise in assessing the rate.

Mr. Crowley's proffered opinion as to the $210 rate is inadmissible because it is not based

on any coherent expert methodology.   In determining whether an expert's methodology is reliable,

"the court has broad latitude to consider whatever factors bearing on validity that the court finds

to be useful; the particular factors will depend upon the unique circumstances of the expert

testimony involved." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999).   "Some

factors that may be valuable tools in assessing the reliability of an expert's opinion are whether

the reasoning or methodology underlying the expert's opinion has been or could be tested; whether

the reasoning or methodology has been subject to peer review and publication; the known or

6

potential rate of error; and the level of acceptance of the reasoning or methodology by the relevant professional community." *Id.* At a minimum, "an experiential expert witness [must] 'explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts.'" *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (quoting FED. R. EVID. 702 advisory committee's note).

Mr. Crowley's experience in assessing the reasonableness of rail rates comes almost exclusively from his work before the STB and its predecessor, the ICC. *See* Ex. B at 218:13-219:4, 230:22-231:18; *see also* Ex. A at 1-2 & Ex. 1. The STB uses a defined formula to calculate reasonableness of rates, *see* Ex. B at 54:3-55:18, and Mr. Crowley's expertise involves application of this formula in various scenarios. *See* Ex. A, Ex. 1 at 3 (Mr. Crowley noting ██████████ ████████████████████████████████████████████████ ████████████████████"), *id.* at 5 (describing cases involving the "██████████████████████████ ██████████████"); T. *id.* at Ex. 1, Attach. A (listing testimony in the past four years, primarily before the STB). Yet, as Mr. Crowley concedes, ██████████████████████████ ███████████████████████████████████████████████████ ████████████ *See* **Ex. B** at 56:15-57:4 (confirming that ████████████████████████████ ██████████████████████████); 58:12-16 (same).

Having admitted he did *not* apply the standard with which he is familiar, Mr. Crowley makes no effort in his report to identify or describe the standard he *does* apply in assessing NPBL's rates, much less explain why it is accepted in "the relevant professional community." *Westberry*,

---

[1] At deposition, Mr. Crowley testified that he believed NPBL's rate would be "reasonable" under the STB's formula. *See* Ex. B at 56:20-58:4  This does not change the fact that, as Mr. Crowley concedes, the STB formula is *not* the metric he applied here. *See id.* at 56:15-57:4.  Moreover, Mr. Crowley admittedly did not possess any data related to ████████████████████████ *See id.* at 55:10-18.

178 F.3d at 261; *see* Ex. A at 4-7.  At deposition, Mr. Crowley claimed to have ████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

Ex. B at 61:13-62:9; *see also id.* at 86:24-87:9.

 Even assuming this testimony were sufficient to identify a coherent, accepted methodology

in which Mr. Crowley has sufficient expertise (which it is not), Mr. Crowley's application of this

methodology is unreliable.  As Mr. Crowley testified, ████████████████████████████

████████████████████████████.  *See* Ex. B at 55:10-18 (████████

████████████████████████████████████████████), 56:15-21 (same), 61:13-

62:13 (████████████████████████████████████████████████████████

████████████████).  Yet Mr. Crowley did not evaluate—*or even ask to review*—NPBL's

variable costs.  *See id.* at 57:17-23 (Q: "████████████████████████████████

████████████████████████" A: "No. ████████████████." Q: "████████

████████████████████████" A: ████████████████.");  *see also id.* at 62:14-

23 (did not ask for or receive NPBL's variable costs), 87:11-88:11 (did not examine NPBL's

marginal costs), 148:8-149:9 (did not evaluate ████████████████████████).  He

instead relied on ████████████████████████████████████████████████

████████████████████████.  *See* Ex. A at Ex. 3.  This is a critical distinction,

because, as Mr. Crowley admits, fixed expenses (and therefore overall expenses per car) *decrease*

as the number of cars interchanged *increase*.  *See* Ex. B at 149:11-23; *see also* Deposition of NPBL

President C. Moss, attached as **Exhibit F**, at 238:10-14 (confirming operating expenses decrease

with a volume increase).  CSX's proposals to NBPL would have increased the number of cars

NPBL interchanged.  Mr. Crowley's failure to apply his own standards reliably when considering

the reasonableness of NPBL's rate renders his opinions on this issue unreliable and inadmissible.[2]

Mr. Crowley's comparison of NPBL's rate to those charged by other switching railroads is also deeply flawed.  Mr. Crowley opines that ███████████████████████████████ ████████████████████████████████████████████████████ ███████████  Ex. A at 13.  This conclusion is premised on layers of faulty assumptions rather than any coherent methodology.

First, Mr. Crowley manipulates his comparisons to NPBL's rate by converting the rates of comparable switching railroads to a ███████████████████  See Ex. A at 12-13 & Tbl. 2. This "analysis" involved simply pulling publicly available tariffs and mileages from the Internet and doing basic division.  Mr. Crowley makes no effort to justify this as an appropriate standard of analysis in the industry, see Ex. B at 172:11-173:7 (████████████████████████████ ██████████████████████████████), 177:4-11 (███████████████████████████ ██████████████████), and record evidence reflects that switching railroads typically do *not* tie their rates to route length because, given the short distances involved, major costs are not incurred on a per mile basis.[3]  *See* Ex. E ¶ 65 (citing, among other evidence, NPBL's Donna Coleman testifying that NPBL ████████████████████████████████████████████████████

---

[2] In determining that the $210 line-haul switch rate is necessary to cover NPBL's costs, Mr. Crowley also failed to consider (or even acknowledge) ████████████████████████████ *see id.* at 132:17-133:5 (██████████████████████████████████████ ████████), 134:18-135:7 ██████████████████████████████████████████████████ ██████████████████████████), 139:21-140:8 (same), even though it is undisputed that NPBL earns revenue through other means.  *See, e.g.*, Ex. F (Moss Dep.) at 41:14-42:8 (NPBL gains additional revenue from a "████████████████████████████████████ ██████████████████████).

[3] Mr. Crowley also purports to identify other switching railroads with tariff rates higher than NPBL's.  *See* Ex. A at Tbl. 3.  As Dr. Marvel explains, however, these rates are not appropriate comparators because these railroads either move little to no intermodal traffic, or do not move that traffic at the published tariff rate.  *See* Ex. E ¶ 64.

████████ ).

Additionally, Mr. Crowley's calculation of ████████████████████████████████ incorrect assumption that ████████████████. *See* Ex. A at 11. The record confirms that CSX averages ████████ containers per well under normal operating conditions. *See* Ex. E ¶¶ 61-62 (summarizing evidence on this point). Indeed, ██ containers per well would not have been achievable for much of the relevant period, as CSX did not obtain double-stack capacity at NIT until December 2016. *See id.* At deposition, Mr. Crowley admitted he was unaware of this fact, despite it being both publicly available and well-documented in the record. *See* Ex. B at 157:22-25; *see also* Ex. E ¶ 61-62. Using even a ██ container per well assumption, NPBL's per container rate is $105—significantly higher than comparable switch fees.[4] *See id.* at ¶ 62; *see also* Ex. A at Tbl. 2 (reflecting per container charges ranging from $65 to $88).

Ultimately, in assessing NPBL's rate, Mr. Crowley failed to use the "same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Valador*, 242 F. Supp. 3d at 456. Instead, he "assum[ed] variables and appl[ied] simple mathematical formulas without regard for the actual facts that were available to him and without attempting to conform his simple models to the needs to the relevant fields." *Lee v. City of Richmond, Va.*, 2014 WL 5092715, at *10 (E.D. Va. Sept. 30, 2014). And his only justification for this approach amounts to nothing more than his own *ipse dixit*, which is plainly insufficient under Rule 702. *See Boss v. Nissan N. Am., Inc.*, 228 F. App'x 331, 338 (4th Cir. 2007) ("[T]here must be a logical connection

---

[4] Mr. Crowley further manipulates his comparisons by adding ████████████████████ ████████████████████████████████████████████████. *See* Ex. A at Tbl. 2 n.1. Mr. Crowley makes no attempt to explain how he determined this amount, and the record reflects that it vastly overstates these costs. *See* Ex. E at n.131.

between the expert's theory and the facts of the case."). Because Mr. Crowley failed to apply any reliable, accepted methodology that is connected to the facts of the case or the realities of the industry, his analysis of the "reasonableness" of NPBL's rate should be excluded.

**B.      Mr. Crowley's rate analysis will be unhelpful to the trier of fact.**

Mr. Crowley's rate analysis also will not be helpful to the jury because it amounts to nothing more than basic arithmetic. Under Rule 702, expert testimony is admissible only if it will help the trier of fact "understand the evidence or determine a fact in issue." *Lespier*, 725 F.3d at 449. When a matter is "obviously within the common knowledge of jurors," expert testimony is not necessary and should not be admitted. *Id.*

To assess NPBL's rate, Mr. Crowley used a "simple and straightforward metric." Ex. A at 4. To be specific, he



. *See* Ex. A at 5, Tbl. 1; *see also* Ex. B at 135:5-136:10 (                                                                                                                                                    

                                                     ). As Mr. Crowley explained, this is basic arithmetic:

Q:

A:

Q:

A:

Ex. B at 81:9-22. According to Mr. Crowley, his math reflects that                                                                                                          between 2010 and 2020. *See* Ex. A at 5. Mr. Crowley summarily concludes that NPBL's $210 line-haul switching rate is thus "                                                                        ." *Id.* at 6. This

"analysis" is nothing more than simple math—Mr. Crowley simply ████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████.[5]  This exercise is presumably regularly undertaken by NPBL management in

the ordinary course of business, not an analysis requiring expert testimony.

      Opinions premised on basic mathematical calculations are not helpful to the trier of fact,

because such calculations are readily comprehensible by lay jurors without expert testimony.  *See,*

*e.g.*, *Richard Parks Corrosion Tech., Inc. v. Plas-Pak Indus., Inc.*, 2015 WL 5708541, at *7 (D.

Conn. Sept. 29, 2015) (excluding expert because his "calculations [were no] more than simple

math that a jury could do without the assistance of an expert"); *Adv. Drainage Sys., Inc v. Quality*

*Culvert, Inc.*, 2015 WL 1299368, at *8 (S.D. Ohio Mar. 23, 2015) ("Expert testimony is not

necessary to assist jurors with basic arithmetic."); *Crawford v. Franklin Credit Mgmt. Corp.*, 2015

WL 13703301, at *6 (S.D.N.Y. Jan. 22, 2015) (excluding expert's testimony because the jury was

"fully capable of performing the same simple mathematical calculation"); *LSQ Funding Grp., L.C.*

*v. EDS Field Servs.*, 879 F. Supp. 2d 1320, 1336 (M.D. Fla. 2012) ("Dr. Ugone's simple arithmetic

calculation is not beyond the understanding of the average lay person and therefore would not help

the trier of fact.").  Mr. Crowley's simple arithmetic will not aid the jury and thus does not satisfy

the requirements of Rule 702.[6]

      Moreover, Mr. Crowley's assessment of NPBL's $210 switch rate would also be unhelpful

to the trier of fact because the pertinent inquiry in this case is not whether NPBL's $210 switch

---

[5] Mr. Crowley's calculation of NPBL's "per container" rate is likewise the product of simple
division.  *See* Ex. B at 155:22-156:5 (█████████████████████████████████████████
████████████████████████████████████████████████████").

[6] NS itself has moved to exclude Mr. Crowley in another matter on this very basis.  *See* **Ex. G**.
Based on review of the docket in this matter, the court appears to not have ruled on NS's motion.

rate covers its general costs in a vacuum; it is whether the rate was set and maintained at an anticompetitive level to block CSX's access to on-dock rail at NIT.  *See* Ex. E ¶ 57.  On that question, Mr. Crowley has nothing to say.  For example, CSX repeatedly proposed a lower rate for service to NIT, which CSX alleges NS and NPBL conspired to deny for anticompetitive and other improper reasons.  Mr. Crowley makes no attempt to analyze, and offers no opinions about, what rate NPBL could have supported for service to NIT.  Nor does Mr. Crowley analyze or consider whether NPBL would have covered its costs and gained revenue under CSX's proposals.[7]  *See* Ex. B at 26:21-25 (no opinion on whether CSX's proposals would be reasonable rates for NPBL), 28:18-20 (did not evaluate the reasonableness of CSX's proposals), 46:12-21 (did not analyze whether NPBL would have derived a profit from CSX's proposals).  Mr. Crowley's assessment of the $210 rate, without more, is unhelpful to the trier of fact and thus inadmissible.

## C. Mr. Crowley cannot opine as to "historical events" or offer legal conclusions about NPBL's governing documents under the guise of "expert" testimony.

Although Mr. Crowley purports to opine about the reasonableness of NPBL's switch rate, his report is largely a recitation of NPBL's view of the evidence.  Mr. Crowley describes at length certain "historical events" related to NPBL's adoption of the $210 switch rate and consideration of CSX's proposals.  *See* Ex. A at 7-9.  He then purports to draw certain conclusions from these "facts" based on his interpretation of NPBL's governing documents.  *See, e.g.*, *id.* at 7 (" ██████ ██████████████████████████████████████████████████████ "); *id.* at 8 (opining that CSX's 2010 proposal " ████████████████

---

[7] Although Mr. Crowley does not opine on this issue, he does note briefly that CSX's 2018 proposal would have produced ████████████████████████████ .  *See* Ex. A at 6 n.15.  This comports with the contemporaneous analyses performed by CSX and NPBL, which reflect that NPBL would have covered its costs and generated revenue under CSX's proposals. *See* ECF No. 324 at 30-31.

████████████████████████████████████████████████████████████████████ *id.*

(opining that CSX's 2010 proposal was ████████████████████████████████████

████████████████████████████████████████████").

Mr. Crowley's proffered testimony in this regard is unsupported and inadmissible.  First, Mr. Crowley's recitation of "historical events" is not reliable because he simply tenders facts to which he has no knowledge, Ex. B at 128:15-129:18, and because it disregards substantial record evidence contradicting his narrative, *see, e.g.*, ECF No. 324 at 10-15 (describing record evidence pertaining to the 2009 rate committee process); *id.* at 15-20 (describing record evidence related to CSX's 2010 proposal); *id.* at 26-29 (describing record evidence about CSX's 2018 proposals). Indeed, Mr. Crowley even ignores this Court's prior decisions, which found that CSX's 2018 proposal, on its face, *does not violate* any purported "uniform rate" restriction in the NPBL Operating Agreement.  *See* ECF No. 66 at 26-27; 54-55 (explaining that the 2018 proposal does not violate the NPBL Operating Agreement, because the lower proposed rate could apply to by any customer moving traffic between NPBL's yard and NIT).  An expert cannot express "opinions" based on "altered facts and speculation designed to bolster [a party's] position." *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) (affirming exclusion of expert testimony not based on "the facts as presented in the testimony of other witnesses"); *see also Cap. Concepts, Inc. v. Mountain Corp.*, 936 F. Supp. 2d 661, 672 (W.D. Va. 2013) ("An expert cannot simply parrot his client's findings or calculations and then pass that data off as his own expert opinion."); *Donnert v. Feld Entmt.*, No. 1:13-cv-40, 2013 WL 12097618, at *3 (E.D. Va. Nov. 9, 2013) (excluding expert's opinions interpreting contractual provision and opining about what constituted compliance, explaining that "proper interpretation of a contract" is a "question of law," and "an expert cannot give an opinion as to the legal obligations of parties under a contract").

The "historical events" on which Mr. Crowley opines are irrelevant to the opinions he offers regarding the reasonableness of NPBL's rate and the effectiveness of drayage as an alternative to on-dock rail at NIT.  Mr. Crowley's opinions about whether NPBL could have accepted CSX's proposals under the terms of its governing documents thus "suppl[y] the jury with no information other than [NPBL's] view of how the verdict should read."  *Merrill v. McCarthy*, No. 7:14-CV-4-BR, 2016 WL 1258472, at *2 (E.D. N.C. Mar. 30, 2016).  These opinions should be excluded under Rule 702.

## II.    Mr. Crowley's Drayage Opinion is Unhelpful and Speculative.

Mr. Crowley's opinion that drayage is an effective substitute for on-dock rail is likewise inadmissible.  As confirmed at his deposition, when comparing drayage to on-dock rail, Mr. Crowley considered only the "███████████████."  Ex. B at 190:14-20.  In other words, he looked at ███████████████████████████████████████████████████████ ████████████████████████.  *See* Ex. A at 23-24.  As with Mr. Crowley's rate analysis, this opinion will not be helpful to the trier of fact, because it consists of basic subtraction well within the knowledge and experience of lay jurors.

Mr. Crowley's drayage analysis also fails to account for the many costs incurred by CSX *other than* the per-car drayage charge assessed by VIT, all of which are amply documented in the record.  *See* ECF No. 324 at 33-36.  Because Mr. Crowley failed to consider this evidence, his conclusion that drayage is cheaper than on-dock rail is speculative and inadmissible.  *See Lee*, 2014 WL 5092715, at *10 (expert's opinion is speculative and inadmissible when reached "without regard for the actual facts that were available to him").

Moreover, as Mr. Crowley acknowledges, in order to identify a sufficient market substitute, "*all* [of] the components that impact the traffic"—including service and reliability, in addition to

15

cost—must be considered. *Ex. B* at 200:24-201:11. The record contains substantial evidence of reliability issues and capacity limitations associated with drayage, particularly at NIT. *See, e.g.,* ECF No. 324 at 33-36. For example, among other evidence,

- The drayage route between NIT and CSX's Portsmouth rail yard follows a four-lane local road passing directly in front of a college campus, and local regulations prohibit truck traffic on this route between 4:00 p.m. and 6:00 a.m., *id.*;

- VIT, the entity responsible for coordinating drayage at NIT, acknowledges that the practical limit on drayage is approximately ▆▆▆ containers per year, less than ▆▆▆ of the volume of containers NS has moved by rail from NIT for a *single customer* in 2018, *id.* at 35;

- Ocean carriers express a strong preference for on-dock rail and view drayage as a significantly inferior alternative, *id.*;

- NS touts its on-dock operation at NIT as ▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆," and ▆▆▆▆▆▆, *id.* at 34, 35.

Mr. Crowley ignored all that evidence. *See Ex. B* at 201:13-15 (admitting he did not evaluate ▆ ▆▆▆▆▆▆▆▆); *id.* at 191:4-194:12 (admitting he conducting no ▆▆▆▆ ▆▆ with respect to drayage at NIT); *see also Ex. A* at 21 (criticizing CSX for not "lobby[ing] for extended gate hours at NIT," but ignoring local regulations prohibiting trucks on the drayage route after 4 p.m.); *id.* at 23 (speculating that, ▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆," despite substantial record evidence to the contrary).[8] And Mr. Crowley's lengthy discussion of certain aspects of truck operations at NIT, *see Ex. A* at 18-22, merely confuses the issue, because he fails to distinguish between drayage and

---

[8] Although Mr. Crowley testified at deposition that he considered ▆▆▆▆▆▆▆ ▆▆▆▆▆, *Ex. B* at 190:21-23, that vague suggestion is belied by his admission that he did not consider, for instance, ▆▆▆▆▆▆IT, *id.* at 191:4-11. Mr. Crowley's written report contains no opinions addressing any "▆▆▆▆▆▆▆▆. *See Ex. A* at 18-24.

16

trucks carrying containers to their final destination in local markets. *See* Ex. E ¶¶ 28-31.

Most egregious is Mr. Crowley's speculative and circuitous conclusion that drayage is an effective substitute for on-dock rail for no reason other than CSX uses it. *See* Ex. A at 23-24. This opinion rests on the assumption that drayage is cheaper due to external market forces, *not* Defendants' anticompetitive conduct. *See* Ex. B at 207:18-21 ("█████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████.") (emphasis added). In other words, Mr. Crowley presents as truth his unfounded conclusion that CSX uses drayage because it is cheaper, and then concludes that drayage is an effective substitute because CSX uses it:

> Q:   [Reading from page 3 of Crowley's Report]: ████████████████████
>      ████████████████████████████ Did I read that correctly?
>
> A:   That's correct.
>
> Q:   And what I would ask is: What is your opinion in that regard?
>
> A:   Well, simply stated, ████████████████████████████████
>      ██████████████████████████.

*Id.* at 206:7-19. This ignores the substantial record evidence reflecting that CSX, NS, and ocean carriers *all* view drayage as inferior to on-dock rail. *See, e.g.*, ECF No. 324 at 33-36; *see also* Ex. E ¶¶ 23-27. It also disregards that the appropriate analysis for substitutability in the context of defining a relevant market for antitrust purposes demands careful assessment of alternatives *at the competitive price level.*[9] *See* Ex. D ¶ 49. On that point, Mr. Crowley has nothing to say. All he

---

[9] Though Mr. Crowley does not attempt to grapple with this question, the evidence demonstrates that drayage would *not* be preferred if CSX had reliable and competitive access on-dock rail via NPBL. *See, e.g.*, ECF No. 324 at 33-36; *see also* Ex. E ¶ 31 (quoting testimony from VIT's Thomas Capozzi, who explained that ████████████████████████████████████ ████████████████████.").

can relate is his view that CSX uses drayage because drayage costs less than NPBL's current rate.

That is, at best, a factual observation, not an expert analysis or opinion.

Mr. Crowley's opinions on drayage do not consider the right questions or account for the actual facts and data bearing on these issues.  Accordingly, they should be excluded.

## **CONCLUSION**

For all these reasons, the Court should grant CSX's Motion.


Dated:  May 12, 2021                                   Respectfully submitted,

                                                      **CSX TRANSPORTATION, INC.**
                                                      *By Counsel*

                                                      */s/ Benjamin L. Hatch*
                                                      Robert W. McFarland (VSB No. 24021)
                                                      Benjamin L. Hatch (VSB No. 70116)
                                                      V. Kathleen Dougherty (VSB No. 77294)
                                                      MCGUIREWOODS LLP
                                                      World Trade Center
                                                      101 West Main Street, Suite 9000
                                                      Norfolk, Virginia  23510-1655
                                                      Telephone: (757) 640-3716
                                                      Facsimile:  (757) 640-3930
                                                      E-mail: rmcfarland@mcguirewoods.com
                                                      E-mail: bhatch@mcguirewoods.com
                                                      E-mail: vkdougherty@mcguirewoods.com

                                                      J. Brent Justus (VSB No. 45525)
                                                      Ashley P. Peterson (VSB No. 87904)
                                                      MCGUIREWOODS LLP
                                                      Gateway Plaza
                                                      800 East Canal Street
                                                      Richmond, Virginia  23219-3916
                                                      Telephone:  (804) 775-1000
                                                      Facsimile:  (804) 698-2026
                                                      E-mail: bjustus@mcguirewoods.com
                                                      E-mail: apeterson@mcguirewoods.com

## CERTIFICATE OF SERVICE

I certify that on this 12th day of May, 2021, a true and correct copy of the foregoing was served on all counsel of record via Notice of Electronic Filing by filing with the Court's CM/ECF system.

*/s/ Benjamin L. Hatch*
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
V. Kathleen Dougherty (VSB No. 77294)
McGuireWoods LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia  23510-1655
Telephone: (757) 640-3716
Facsimile:  (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: vkdougherty@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219-3916
Telephone:  (804) 775-1000
Facsimile:  (804) 698-2026
E-mail: bjustus@mcguirewoods.com
E-mail: apeterson@mcguirewoods.com