**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

CSX TRANSPORTATION, INC.,
individually and on behalf of NORFOLK
& PORTSMOUTH BELT LINE
RAILROAD COMPANY,

        Plaintiff,

v.                                                    Civil Action No. 2:18-cv-530-MSD-RJK

NORFOLK SOUTHERN RAILWAY
COMPANY, *et al.*,

        Defendants.

_____/

**CSX TRANSPORTATION INC.'S CONSOLIDATED OPPOSITION
TO DEFENDANT NORFOLK SOUTHERN RAILWAY COMPANY'S
MOTIONS *IN LIMINE* (ECF NO. 329, 331, 337, 343)**

      Plaintiff CSX Transportation, Inc. ("CSX"), by counsel, states as follows in opposition to

the Motions *in Limine* ("Motions") filed by Defendant Norfolk Southern Railway Company

("NS") (ECF Nos. 329, 331, 337, 343):

## <u>INTRODUCTION</u>

      NS has filed four Motions *in Limine*, asking the Court to categorically exclude *for all*

*purposes* evidence and argument that:

- The switch rate charged by Defendant Norfolk and Portsmouth Beltline Railway Company ("NPBL") is unreasonable or excessive (ECF No. 329);

- CSX lost, or was not awarded, contracts with ocean carriers as a result of Defendants' anticompetitive conduct (ECF No. 331);

- Emails involving NS employees are "conspiratorial communications" between NS and NPBL (ECF No. 337); and

1

- Discontinuance of the "Diamond" track is evidence of wrongful conduct by Defendants (ECF No. 343).

NS's Motions reflect a basic misunderstanding or mischaracterization of CSX's claims, the rules regarding relevance, and the applicable law.  The evidence challenged by NS is plainly relevant and probative of CSX's claims, and any purported "prejudice" to Defendants is not "unfair"—it is occasioned by the natural effect of relevant and probative evidence.  Because there is no basis to categorically exclude any of the challenged evidence, the Motions should be denied.

## LEGAL STANDARD

"A court should only grant a motion *in limine* to exclude evidence if the evidence is obviously inadmissible on all possible grounds."  *United States v. Gibson*, No. 2:17-cr-126, 2018 WL 4903261, at *2 (E.D. Va. Oct. 9, 2018) (Davis, C.J.).  "This principle applies because a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Id.*  "Furthermore, motions *in limine* seeking the exclusion of broad categories of evidence are generally disfavored."  *Id.*; *see also United States v. Verges*, No. 1:13-cr-222 (JCC), 2014 WL 559573, at *3 (E.D. Va. Feb. 12, 2014) ("[O]rders *in limine* which exclude broad categories of evidence *should rarely be employed.*") (emphasis added).  "A better practice is to deal with questions of admissibility of evidence when they arise."  *Verges*, 2014 WL 559573, at *3 (quoting *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975)).

Relevant evidence is generally admissible unless a specific exception applies.  *See* FED. R. EVID. 402.  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401.  Relevance presents "a low barrier to admissibility."  *United States v. Leftenant*, 341 F.3d 338, 346 (4th Cir. 2003).  To satisfy this standard, evidence need only be "worth

consideration by the jury," or have some "plus value." *Id.* (quoting *United States v. Queen,* 132 F.3d 991, 998 (4th Cir. 1997)).  When considering whether evidence is relevant, "the district court may not consider the weight or sufficiency of the evidence.  Its consideration should be limited to whether the evidence has *any tendency* to support a consequential fact." *United States v. Fulcher*, 188 F. Supp. 2d 627, 634 (W.D. Va. 2002) (emphasis added) (quoting 2 Jack B. Weinstein & Margaret A. Berger, WEINSTEIN'S FEDERAL EVIDENCE, 2nd ed., § 401.06, pp. 401–403 (Bender 2001)).

Rule 403 allows a district court to exclude otherwise admissible evidence that would result in *unfair* prejudice, i.e., "prejudice that damages an opponent for reasons *other than its probative value*," but only when that unfair prejudice "*substantially* outweigh[s] the probative value of the evidence." *United States. v. Mohr*, 318 F. 3d 613, 619–20 (4th Cir. 2003) (emphasis added) (quoting WEINSTEIN'S FEDERAL EVIDENCE, 2nd ed., § 404.21[3][b]).  "In applying the Rule 403 analysis . . . [courts] consider the evidence in the 'light most favorable to [the] proponent, maximizing its probative value and minimizing its prejudicial effect." *Carnell Const. Corp. v. Danville Redevelopment & Hous. Auth.*, 745 F.3d 703, 720 (4th Cir. 2014) (quoting *Mullen v. Princess Anne Volunteer Fire Co., Inc.*, 853 F.2d 1130, 1135 (4th Cir. 1988)).  A court's discretion to exclude evidence under Rule 403 is "narrowly circumscribed." *Salmons, Inc. v. First Citizens Bank & Trust Co.*, No. 2:10CV72, 2011 WL 4828838, at *3 (E.D. Va. Oct. 11, 2011) (quoting *United States v. Johnson*, 415 F. App'x 495, 504 (4th Cir. 2011)).  "Rule 403 is an extraordinary remedy which should be used only sparingly, because it permits the trial court to exclude concededly probative evidence." *Id.* (quoting *United States v. Norton*, 867 F.2d 1354, 1361 (11th Cir. 1989)).

## ARGUMENT

NS's Motions all suffer the same fatal defect:  NS seeks to exclude as inadmissible "broad categories of evidence" without showing that the evidence "is obviously inadmissible on all possible grounds."  *Gibson*, 2018 WL 4903261, at *2.  As this Court explained in *Gibson*, such motions are "disfavored," because the Court "is almost always better situated during the actual trial to assess the value and utility of evidence."  *Id.*  As explained in detail below, the evidence challenged by NS is relevant to CSX's claims, and may be admissible at trial for many reasons.  NS's request for blanket exclusions of the challenged evidence is thus improper, and NS's Motions should be denied.

## I.    Evidence of NPBL's Excessive Rate is Relevant and Admissible [ECF No. 329].

NS contends that CSX should be prohibited from presenting evidence or argument that NPBL's $210 switch rate is excessive or unreasonable.  *See* ECF Nos. 329, 330.  NS argues that this evidence is "improper, irrelevant, and prejudicial," because "rate challenges are within the exclusive jurisdiction of the [STB]," and this Court lacks jurisdiction to "impose a lower rate on NPBL."  ECF No. 330 at 1.  According to NS, this evidence thus "lacks any probative value" and should be excluded as irrelevant under Rule 402.  *Id.*  Notably, NPBL itself has not filed a motion *in limine* on this basis and has not joined in NS's motion.

As CSX explained in opposing this argument in NS's Motion to Dismiss, for Judgment on the Pleadings, and for Referral of Issues to the STB (ECF No. 115), CSX's claims do not ask the trier of fact to "adjudicate" NPBL's switch rate, as the STB might.  As this Court recognized in denying in part and granting in part NS's motion, CSX's antitrust and conspiracy claims arise from NS's decades-long effort, including in combination with NPBL, to protect its monopoly by blocking—by any means necessary—CSX's access to on-dock rail at Norfolk International

4

Terminals ("NIT").  *See* ECF No. 395 at 27–28; *see also* ECF No. 1 at ¶¶ 77-104, 118-125; ECF No. 324 at 9–39.

It is relevant and highly probative to CSX's claims that (1) NPBL's switch rate is extraordinarily high in comparison to the rates charged by other terminal switching railroads for similar services, *see* ECF No. 1 at ¶¶ 33–35 (alleging that Defendants "have caused the NPBL to establish and maintain unreasonably high rates for its switch services for intermodal freight"); (2) the NS-controlled NPBL Board and NPBL management have rejected multiple proposals to move CSX intermodal traffic to NIT at a lower rate, despite the fact that both CSX and NPBL projected that NPBL could cover its costs and generate positive net revenue at this proposed lower rate, *see id.* ¶¶ 38–46, and (3) NS personnel candidly admit that establishing NPBL's existing switch rate—and rejecting a more reasonable rate—was central to achieving their goal of blocking CSX, *see* ECF No. 324 at 9–15.  This is quintessential evidence of exclusionary, anticompetitive, and conspiratorial conduct that is plainly relevant and admissible under Rule 402.

As this Court has explained, the STB has neither reviewed nor approved NPBL's switch rate.  *See* ECF No. 395 at 28 n.17.  NS's argument appears to be that, *if* NPBL's rate were challenged before the STB, the STB *could* decide whether it is "reasonable," using its own defined guidelines.  But the STB has never undertaken this evaluation, and the jury will not be asked to make the assessment that the STB could make.  In this case, CSX has alleged that, among other things, Defendants have caused NPBL to establish and maintain an unreasonably high rate *as a means to block CSX's access to on-dock rail at NIT for anticompetitive gain*.  *See* ECF No. 66 at 6 (citing ECF No. 1 at ¶ 34).  None of the facts or argument supporting this allegation require any inquiry into what hypothetical rate the STB might set if a rate challenge was adjudicated in that forum.  For example, evidence that NPBL would have benefitted from the rate and business that

CSX proposed (as NPBL and CSX both projected), yet refused CSX's proposals and maintained the higher $210 rate (under which almost no intermodal traffic moved for more than a decade), tends to make it more likely that NPBL was acting in furtherance of a conspiracy rather than in its own independent self-interest.  *See* ECF No. 66 at 27–28 (noting courts have found rejecting proposals in a company's interest and power to accept may be evidence of antitrust conspiracy). And evidence that the $210 rate is unreasonable, such that it effectively precluded CSX's use of rail via NPBL to NIT, supports the conclusion that NS and NPBL have imposed exclusionary and anticompetitive barriers to competition.

CSX's expert witness, Dr. Howard P. Marvel, confirms that evaluating CSX's antitrust claims involves assessment of NPBL's rate in comparison to those charged by other switching railroads for similar services, as well as in comparison to the lower rate NPBL *could* charge for intermodal traffic.  *See* ECF No. 308-7 ¶¶ 55–62; ECF No. 308-71 ¶¶ 55–65.  To assess these issues, the jury need not conclude that NPBL's switch rate is "excessive" or "unreasonable," as those terms may be defined by the STB.  Put simply, NS's and NPBL's actions, including setting the $210 rate and refusing CSX's proposals for a lower rate to NIT, constitute admissible evidence of anticompetitive and conspiratorial conduct, regardless of what the STB might determine in a hypothetical rate proceeding.

As this Court has repeatedly recognized, it has jurisdiction over the claims asserted by CSX, *see* ECF No. 66 at 20; ECF No. 395 at 3–5, and can fashion injunctive relief as requested by CSX without infringing on the STB's jurisdiction, ECF No. 66 at 23–24 (noting injunctive relief preventing Defendants from continuing to engage in a conspiracy or changing NPBL's governance would not infringe STB jurisdiction, as the STB "may still approve or disapprove" rate increases); ECF No. 395 at 29 (finding that fashioning remedies for CSX's claims "falls within this Court's

authority").  The STB itself was tendered a copy of CSX's Complaint in this action and expressed no concerns about preemption, instead finding that this action should proceed.  *See* ECF No. 66 at 25; *see also* ECF No. 61-1 at 3 (STB noting, in choosing to hold NS and NPBL's trackage rights compensation proceeding in abeyance, that resolution of this case "may reduce the number of disputed issues between the parties in [the] proceeding, thereby promoting efficiency").  Even in its Decision on the referred question, the STB stated, "any future decision concerning control would benefit from the findings of the District Court," thus making clear that the STB is intent on this action proceeding and may utilize the outcome of this case in subsequent STB proceedings. *See* ECF No. 401-1 at 18.

Evidence of NPBL's excessive switch rate is relevant to CSX's antitrust and conspiracy claims, and it is therefore admissible under Rule 402.  NS's effort to exclude it should be rejected.

## II.    Evidence of CSX's Lost Business is Relevant and Admissible [ECF No. 331].

NS next contends that CSX should be prohibited "from offering at trial any evidence or argument that CSX lost, or was not awarded, contracts with ocean shippers as a result of any conduct of Defendants."  ECF No. 332 at 1.  According to NS, CSX has offered only "inadmissible hearsay" on this point.  *Id.*  NS additionally argues that CSX cannot "use" its expert, Dr. Howard P. Marvel, to relay "hearsay" to the jury as "proof" that "CSX lost contracts with ocean carriers because of Defendants' alleged actions."  *Id.*

An out-of-court statement is inadmissible as hearsay when it is offered "to prove the truth of the matter asserted in the statement."  FED. R. EVID. 801(c).  An out-of-court statement is *not* inadmissible hearsay, however, "where the proponent offers it not to prove the truth of the matter asserted but for another purpose."  *Arrington v. E.R. Williams, Inc.*, 490 F. App'x 540, 543 (4th Cir. 2012) (affirming admission of testimony relaying client complaints offered not for their truth

but to explain why the defendant believed terminating the plaintiff's employment was "necessary and appropriate").  Hearsay is also admissible if it satisfies an exception outlined in the Federal Rules of Evidence.  *See* FED. R. EVID. 803, 804.

Whether an out-of-court statement is inadmissible as hearsay depends on the context within which the statement is offered at trial, so courts rarely exclude *in limine* categories of evidence on hearsay grounds.  *See, e.g., United States v. Stewart*, No. 5:14-CR-90-FL, 2014 WL 4978502, at *2 (E.D.N.C. Oct. 6, 2014) (denying motion *in limine* to exclude testimony on hearsay grounds, explaining that "without additional information concerning the circumstances under which these statements may be offered . . . , it is premature to issue an order categorically excluding them from trial"); *United States v. Curry*, No. WDQ-12-0163, 2013 WL 1120581, at *7 (D. Md. Mar. 15, 2013) (denying motion to exclude testimony, explaining that without understanding how the defendant intended to introduce the evidence at trial, "a ruling excluding all prior hearsay . . . would be premature"); *Valladares v. Cordero*, No. 1:06cv1378, 2007 WL 2471067, at *7 (E.D. Va. Aug. 27, 2007) (reserving until trial ruling on whether challenged evidence constituted inadmissible hearsay).

NS claims "CSX employee testimony about statements made by third party ocean carriers" are necessarily inadmissible hearsay, and suggests that, as a result, CSX should broadly "be precluded from claiming at trial that it lost contracts with ocean shippers because of Defendants' conduct."  *See* ECF No. 332 at 6-7.  NS's requested relief should be denied because, as this Court noted in *Gibson*, a motion *in limine* should be granted only "if the evidence is obviously inadmissible on all possible grounds."  2018 WL 4903261, at *2.  In this case, the Court will be "better situated during the actual trial to assess the value and utility of [the] evidence" challenged by NS.  *Id.*  Although NS apparently challenges several exhibits and related testimony as

inadmissible hearsay, it does not examine each document (much less each statement within each document) individually.  *See* ECF No. 332 at 6.  The arguments for admissibility will be particular to each exhibit and related testimony offered at trial, and the Court will be better situated to consider these arguments in context as trial unfolds.

This is certainly not a case in which the evidence at issue is obviously inadmissible on "all possible grounds."  For instance, one of the exhibits NS challenges as inadmissible hearsay reflects an ocean carrier's question to VIT regarding its ability to handle CSX intermodal traffic at each of its terminals, and VIT's subsequent query to CSX about how it should respond with respect to NIT.  *See* ECF No. 332 at 6 (citing Ex. 115 to CSX's opposition to NS's motion for summary judgment).  Neither the ocean carrier's question to VIT nor VIT's question to CSX is inadmissible as hearsay, because questions are not statements.  *See United States v. Sinclair*, 301 F. App'x 251, 253 (4th Cir. 2008) (affirming admissibility of questions that were "requests for information," explaining that "[a] question or inquiry is not a statement, and therefore is not hearsay unless it can be construed as an intended assertion").  And a knowledgeable VIT representative can testify as to its receipt of the ocean carrier's questions and their significance to VIT.  Further, the business record exception to hearsay allows various business records, including those contained in emails, to be admitted under certain circumstances.  *See* FED. R. EVID. 803(6).[1]

Moreover, the information contained in the documents and testimony challenged by NS may be admissible for purposes other than proving the truth of the matter asserted.  For example,

---

[1] By way of further example, NS challenges the admissibility of testimony from Fredrik Eliasson discussing his "understanding" of CSX's market share.  *See* ECF No. 332 at 6.  Eliasson's understanding is based upon first-hand knowledge from his role as the head of Investor Relations, Vice President of Commercial Finance, head of Financial Planning and Analysis, Chief Financial Officer, Executive Vice President for Sales and Marketing, and interim President of CSX.  *See* F. Eliasson Dep. (Jan. 8, 2021) at 12:10–22:12, attached as **Exhibit 1**.  It is not inadmissible hearsay.

statements pertaining to conversations between VIT and CSX regarding ocean carriers' inquiries about drayage at NIT may demonstrate, among other things, that both CSX and VIT knew ocean carriers were aware of CSX's lack of on-dock rail at NIT and were skeptical that drayage provided an adequate substitute. *See Bland v. Fairfax Cty., Va.*, No. 1:10cv1030, 2011 WL 2490995, at *4 (E.D. Va. June 20, 2011) ("A statement is not hearsay if it is offered to prove knowledge or show the effect on the listener or listeners' state of mind."); *see also United States v. Martin*, 657 F. App'x 193, 199–200, n.6 (4th Cir. 2016) (explaining that "[s]tatements that are offered to prove the effect of the statement on the listener are not offered for their truth and therefore do not fall within the definition of hearsay," and that in such instances, "both sides" of the conversation are admissible to provide context). This evidence is relevant to, among other things, issues of market definition, as well as to refute Defendants' arguments that drayage is an adequate substitute for on-dock rail and that CSX could have drayed enough containers to compete if it had merely lobbied VIT to improve the drayage program. *See* ECF No. 308-10 ¶¶ 106–113, ECF No. 308-89 at 18–24.

CSX need not detail the foundation and admissibility for each piece of evidence NS challenges at this stage in the proceedings. Whether that evidence is admissible will turn on the specific evidence at issue and the purpose for which it is offered at trial. Indeed, NS does not seriously argue that the challenged evidence is inadmissible on all possible grounds. ECF No. 332 at 5-7. Instead, it claims that "[o]nly direct testimony from an ocean carrier would be admissible" to prove that ocean carriers chose not to contract with CSX due to the lack of on-dock access at NIT resulting from Defendants' anticompetitive conduct. *See* ECF No. 332 at 6. But that is not the law. To the contrary, CSX may rely on either direct or circumstantial evidence (including statistical analysis) to prove its injury and damages. *See Olean Wholesale Grocery Coop., Inc. v.*

*Bumble Bee Foods LLC*, 993 F.3d 774, 788 (9th Cir. 2021) (in an antitrust action, injury "may be inferred from statistical evidence"), vacated on other grounds, 31 F.4th 651 (9th Cir. 2022); *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1478 (10th Cir. 1985) (antitrust plaintiff's burden to prove injury in fact is satisfied through "proof of *some* damage flowing from the unlawful [conduct], which may be established by reasonable inferences drawn from circumstantial evidence") (emphasis in original); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123 (1969) (explaining that "damages issues in [antitrust] cases are rarely susceptible of the kinds of concrete, detailed proof of injury which is available in other contexts," and, as a result, "the jury may make a just and reasonable estimate of the damage based on relevant data," including "probable and inferential as well as direct and positive proof") (internal citations omitted).

NS also contends that CSX "improperly" seeks to have Dr. Marvel "regurgitate hearsay statements and speculation as proof to a jury that CSX, in fact, lost contracts with ocean carriers." ECF No. 332 at 7. These criticisms are unfounded. It is beyond question that an expert witness may rely on hearsay in formulating his opinions, even if that evidence would be inadmissible at trial. *See Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 182 (4th Cir. 2010) (citing FED. R. EVID. 703). Indeed, NS and NPBL's own proffered experts rely extensively on hearsay to support their opinions. *See, e.g.*, ECF No. 308-10 ¶¶ 66–67, 90, 117, 146, 150; ECF No. 308-89 at 7–9. Dr. Marvel may testify at trial about his opinions on, among other topics, the relevant antitrust market, harm to competition, and CSX's damages, as well as his basis for those opinions, without relating hearsay on direct examination. *See Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728–29 (6th Cir. 1994) (Rule 703 permits introduction of evidence "upon which an expert properly relies . . . to explain the basis of the expert's opinion," even if that evidence would be inadmissible "for the truth of the matters they contain") (quoting *Paddack v. Dave Christensen, Inc.*, 745 F.2d

1254, 1261–62 (9th Cir. 1984)).

NS cites cases reciting general standards for the admissibility of expert testimony, but none of them holds that an expert may not testify as to the bases for otherwise proper expert opinions solely on hearsay grounds. *See W.C. Eng., Inc. v. Rummel, Klepper, & Kahl, LLP*, No. 6:17-cv-00018, 2020 WL 534532, at *2–3 (W.D. Va. Feb. 3, 2020) (excluding expert testimony consisting of legal conclusions and recitations of fact that would not be helpful to the jury); *Therasense, Inc. v. Becton, Dickinson, & Co.*, 2008 WL 2323856, at *2 (N.D. Cal. May 22, 2008) (excluding expert opinion premised on experiments done by party's employees without expert's participation, the details of which had been withheld as privileged); *In re Sulfuric Acid Antitrust Litig.*, 446 F. Supp. 2d 910, 926 (N.D. Ill. 2006) (rejecting argument that expert opinions should be excluded as based on hearsay, finding the opinions based on sufficiently reliable data); *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 807 (N.D. Ill. 2005) (excluding expert's loss calculation premised on unquestioning acceptance of economic models created by defendant's employees); *Wantanabe Realty Corp. v. City of New York*, No. 01 Civ. 10137, 2004 WL 188088, at *2 (S.D.N.Y. Feb. 2, 2004) (excluding expert opinion purporting to offer out-of-court cost estimate for the truth of the matter asserted); *In re Lake States Commodities, Inc.*, 271 B.R. 575, 588 (Bankr. N.D. Ill. 2002) (giving expert opinions "no weight" after concluding expert had not conducted meaningful testing or sufficiently validated underlying data); *Va. Vermiculite Ltd. v. W.R. Grace & Co.-Conn.*, 98 F. Supp. 2d 729, 735 (W.D. Va. 2000) (excluding expert opinions after concluding expert was unqualified and used unreliable methodology); *Law v. Nat'l Collegiate Athletic Ass'n*, 185 F.R.D. 324, 341 (D. Kan. 1999) (excluding expert's testimony regarding phone

calls with athletic directors as unhelpful to the trier of fact).[2]   As the court in *Lake States*

*Commodities* explained, if an expert testifies as to hearsay in the context of explaining his opinions,

the hearsay may be "admitted solely to explain the basis of the expert's opinion, not as proof of

the underlying matter."  271 B.R. at 585.

Because NS's motion regarding evidence and argument related to customer contracts is, at

best, premature and overbroad, it should be denied.

### III.   NS's Internal Communications are Relevant and Admissible [ECF No. 337].

NS also argues that CSX should be prohibited "from arguing or eliciting testimony that

emails involving only NS employees are conspiratorial communications between NS and co-

Defendant [NPBL]."  ECF Nos. 338 at 1.

Initially, the evidence NS seeks to exclude is relevant and admissible not only to prove

CSX's conspiracy claims, but also, among other things, its Sherman Act Section 2 monopolization

claims.  *See E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 441 (4th

Cir. 2011) (requiring evidence of willful acquisition or maintenance of monopoly power through

exclusionary or anticompetitive conduct); *see also* ECF No. 324 at 58–60.  For this reason alone,

NS's motion should be denied.  *See Gibson*, 2018 WL 4903261, at *2 ("A court should only grant

a motion *in limine* to exclude evidence if the evidence is obviously inadmissible on *all possible*

*grounds*.") (emphasis added).

Moreover, as CSX explained in opposing Defendants' motions for summary judgment,

CSX is entitled to rely on direct *and* circumstantial evidence to prove the conspiracy between NS

---

[2] The remaining cases cited by NS do not involve expert testimony at all.  *See Rowland v. Am.
Gen. Finance, Inc.*, 340 F.3d 187, 195 (4th Cir. 2003) (holding proffered exhibit did not qualify as
business record); *Quesenberry v. Volvo Group N. Am., Inc.*, 267 F.R.D. 475, 482 (W.D. Va. 2010)
(holding that exhibits prepared by third party were not admissible as party admissions).

and NPBL.  *See* ECF No. 324 at 52.  "Conspiracies are often tacit or unwritten in an effort to escape detection, thus necessitating resort to circumstantial evidence to suggest than an agreement took place."  *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 289–90 (4th Cir. 2012); *see also Fed. Ins. Co. v. Locash*, No. 2:12cv504, 2014 WL 12588635, at *9 (E.D. Va. Feb. 18, 2014) ("[A] finding of conspiracy does not require direct evidence of agreement of concerted action, but may also be inferred from the things actually done.") (quoting *Murdaugh Volkswagen, Inc. v. First Nat'l Bank of S.C.*, 639 F.2d 1073, 1075 (4th Cir. 1981) (internal quotations omitted)).  A document need not be a "communication" between an NS employee and an NPBL employee to constitute admissible evidence that Defendants "positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan."  *Locash*, 2014 WL 12588635, at *9.  NS's request for a blanket ruling excluding all evidence or argument that internal NS emails are evidence of conspiracy is therefore improper.  *See In re Peanut Farmers Antitr. Litig.*, No. 2:19cv463, 2021 WL 1141260, at *2 (E.D. Va. Feb. 22, 2021) (denying motion *in limine* to exclude communications among the parties, explaining that "a blanket bar on such a broad category of information outside the factual context in which it might be offered goes too far" when "the Court cannot say that there are no grounds on which [the] communications . . . might be relevant").

NS's argument that individual NS-appointed NPBL directors cannot be deemed agents of NPBL for purposes of CSX's conspiracy claims simply rehashes its summary judgment arguments. *Compare* ECF No. 338 at 2-7 *with* ECF No. 308 at 33-37.  Courts routinely reject parties' attempts to recast dispositive arguments as evidentiary issues via motions *in limine*.  *See, e.g.*, *Nomo Agroindustrial SA DECV v. Enza Zaden N. A., Inc.*, No. CV-05-351, 2007 WL 1077023, at *1 n. 1 (D. Ariz. Apr. 9, 2007) (cautioning the parties that "motions *in limine* are meant to deal with discrete evidentiary issues related to trial, and are not another excuse to file dispositive motions

14

disguised as motions *in limine*"); *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, No. 01 C 6934, 2004 WL 2260626, at *10 (N.D. Ill. Oct. 1, 2004) (denying motion seeking to exclude "evidence of wilfulness" in patent infringement case, finding defendant's motion *in limine* to be "an inappropriate attempt to limit the scope of trial issues in a manner more appropriately raised in a motion for summary judgment").

Moreover, as CSX also noted in opposing NS's summary judgment motion, whether an agency relationship exists is a question of fact for the jury. *See* ECF No. 324 at 54–55; *see also Reistroffer v. Person*, 439 S.E.2d 376, 378–79 (Va. 1994) ("[T]he issue whether an agency relationship existed is one of fact to be resolved by the fact finder.") (reversing judgment and remanding "for an evidentiary hearing on the issue of agency").   The record contains ample evidence from which the trier of fact could conclude that NS-appointed NPBL directors were agents of NPBL.  *See Acordia of Va. Ins. Agency, Inc. v. Genito Glenn, L.P.*, 560 S.E.2d 246, 250 (Va. 2002) ("Agency may be inferred from the conduct of the parties and from the surrounding facts and circumstances").  As just one example, ██████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████████████   ECF No. 324-3.  A few months later, the NS-appointed NPBL Board majority voted *as agents of NPBL* to approve an increase to NPBL's tariff not including the ███ rate.  *See* ECF No. 324 at ¶ 28.  This evidence, including the NS executives' emails on how to vote, is plainly relevant and admissible to support CSX's conspiracy claims.

NS's argument about CSX's document productions further proves the point.  *See* ECF No. 338 at 6.  Whether an NPBL Board member was acting as an agent of its employer (that is, CSX or NS) or as an agent of NPBL, or both, depends on the facts and circumstances surrounding the particular documents or communications at issue.  As this Court has previously confirmed, CSX properly withheld privileged documents created in the context of CSX employees' scope of employment.  *See* ECF No. 229 (after *in camera* review, finding that more than 100 documents involving CSX-appointed NPBL Board members had been properly withheld for privilege).  But CSX produced communications by and between CSX employees and CSX-appointed NPBL directors where those directors were acting in the scope of their duties as a board member of NPBL.  Indeed, NS has itself asserted privilege over communications "regarding NPBL between [NS] in-house counsel and [NS] employees *who were also serving as NPBL Board members*."  ECF No. 338 at 6 (emphasis in original); *see* NS Privilege Log Excerpt, attached as **Exhibit 2**.  The fact that an individual may serve as an agent of both his employer and a third party does not invalidate the privilege for his communications with in-house counsel on legal matters.

Finally, NS argues in two sentences that this admissible evidence should be excluded as prejudicial under Rule 403.  ECF No. 338 at 6–7.  NS offers no justification warranting this "extraordinary remedy."  *Salmons, Inc.*, 2011 WL 4828838, at *3.  As explained above, there is no "double standard" between CSX and NS that could confuse or mislead the jury.  The prejudice to NS arises directly from the probative value of this evidence, which powerfully demonstrates NS's decades-long effort to block CSX at NIT to protect its illegal monopoly.  That the evidence is damaging to NS does not constitute the type of "unfair prejudice" that Rule 403 is designed to prevent.  *See Mohr*, 318 F. 3d at 619–20 (explaining that Rule 403 only protects against "prejudice that damages an opponent for reasons *other than its probative value*") (emphasis added).  NS's

motion should be denied.

**IV.  Evidence of Discontinuance of the Diamond is Relevant and Admissible [ECF No. 343].**

Finally, NS argues that CSX should be prohibited from "offering at trial any evidence or argument that discontinuance of the railroad track between NS Junction and Carolina Junction in South Norfolk (the "Diamond Track") is evidence of wrongful conduct by Defendants."  *See* ECF No. 344 at 1.  According to NS, offering this evidence would amount to an "untimely" challenge by CSX to the STB's 2008 decision approving the discontinuance.  *Id.*  Once again, NPBL notably has not filed its own motion *in limine* on this issue, nor joined NS's request for relief.

As with its contention about NPBL's switch rate, NS's argument about the Diamond Track misses the point.  CSX does not seek through this lawsuit to collaterally attack the STB's 2008 decision approving discontinuance of the Diamond Track.  Rather, CSX seeks to hold Defendants liable for their ongoing efforts to preserve NS's unlawful monopoly at NIT by blocking CSX from on-dock rail access.  This requires CSX to put forward evidence of Defendants' exclusionary or anticompetitive conduct.

The trier of fact could certainly conclude that discontinuance of the Diamond Track— which would allow CSX efficient access to NIT—was exclusionary conduct undertaken to further Defendants' anticompetitive objectives.  *See, e.g.*, ECF No. 324 at ¶ 43 (citing Ex. 56 (███████

███████████████████████████████████████████████████████

███████████████████████████████████)).  Evidence of the discontinuance is relevant and admissible.  *See* FED. R. EVID. 401.  It is black letter law that an overt act in furtherance of a conspiracy need not itself be unlawful.  *See Braverman v. United States*, 317 U.S. 49, 53 (1942) (overt act need not be itself a crime); *United States v. Fleschner*, 98 F.3d 155, 159 (4th Cir. 1996) (overt act "may be entirely innocent when considered alone" so long

as it "is knowingly committed by a conspirator in an effort to accomplish some object of the conspiracy."). It is, though, appropriate evidence in that it tends to demonstrate the existence and furtherance of the conspiracy itself.

It does not matter for admissibility purposes that the STB approved the discontinuance in 2008, or that CSX did not challenge the discontinuance in that forum. Contrary to NS's suggestion, CSX does not seek to undo the STB's decision or otherwise "relitigate" it. Rather, CSX submits that discontinuation of the Diamond Track was one means by which NS sought to block CSX's access to on-dock rail NIT for anticompetitive gain. *See* ECF 66 at 6, citing ECF 1 at ¶ 34. The STB made no findings whether NS's conduct was undertaken for this purpose, and the trier of fact may consider evidence of the discontinuation without needing to render any decision on the propriety of the STB's approval of it in 2008.[3]

None of the cases cited by NS suggest otherwise. Although NS loosely alludes to concepts of *res judicata* and collateral estoppel, it acknowledges that those principles do not apply in this context. *See* ECF No. 344 at 6–7. And, as NS concedes, CSX was not a party to the relevant STB proceeding. And, in all of the cases cited by NS, a litigant sought to relitigate a disputed issue of fact that previously had been decided *on the merits* by another adjudicative body. *See id*. In approving discontinuance of the Diamond Track, the STB did *not* consider or decide the disputed issue in this case—i.e., whether Defendants engaged in exclusionary conduct intended to block CSX at NIT, in violation of federal antitrust and state conspiracy and other laws. Because evidence

---

[3] NS suggests that CSX should also be prohibited from offering this evidence because it is "stale" and "fall[s] far outside the relevant time-period to submit evidence in the Court proceeding." ECF No. 344 at 9. That contention is NS's statute of limitations argument repackaged as an evidentiary dispute, and it fails for all the reasons stated in CSX's opposition to NS's motion for summary judgment. *See* ECF No. 324 at 41–49.

of the discontinuance of the Diamond Track is relevant to that question, it is admissible under Rule 402.

NS also suggests that evidence pertaining to discontinuation of the Diamond Track should be excluded because it presents a "substantial danger of confusing and misleading the jury," which would be "highly prejudicial to the Defendants."   ECF No. 344 at 9.   The proffered risk of confusion or prejudice plainly does not rise to the "extraordinary" level required for exclusion under Rule 403.  The contention also discredits the jurors' abilities to ascertain evidence.  Indeed, as the STB did not even decide the issue presented here (i.e., whether Defendants' conduct was exclusionary and anticompetitive), there is little to no risk of juror confusion.  Finally, once again, any risk of "prejudice" to NS arises from the probative value of the evidence, which reflects that NS has engaged in a decades-long effort to block CSX from NIT for its own anticompetitive gain. That is not the type of extraordinary and unfair prejudice with which Rule 403 is concerned.  *See Mohr*, 318 F. 3d at 619–20 (Rule 403 allows a district court to exclude otherwise admissible evidence that would result in *unfair* prejudice, i.e., "prejudice that damages an opponent for reasons *other than its probative value*") (emphasis added).

## CONCLUSION

For the reasons set forth above, and any presented at oral argument, CSX respectfully requests that the Court deny all four Motions *in Limine* filed by Defendant Norfolk Southern Railway Company (ECF Nos. 329, 331, 337, 343).

Dated: September 2, 2022                    Respectfully submitted,


                                            **CSX TRANSPORTATION, INC.**
                                            *By Counsel*

                                            */s/ Benjamin L. Hatch*
                                            Robert W. McFarland (VSB No. 24021)
                                            Benjamin L. Hatch (VSB No. 70116)
                                            V. Kathleen Dougherty (VSB No. 77294)
                                            Jeanne E. Noonan (VSB No. 87863)
                                            MCGUIREWOODS LLP
                                            World Trade Center
                                            101 West Main Street, Suite 9000
                                            Norfolk, Virginia 23510-1655
                                            Telephone: (757) 640-3716
                                            Facsimile: (757) 640-3930
                                            E-mail: rmcfarland@mcguirewoods.com
                                            E-mail: bhatch@mcguirewoods.com
                                            E-mail: vkdougherty@mcguirewoods.com
                                            E-mail: jnoonan@mcguirewoods.com


                                            J. Brent Justus (VSB No. 45525)
                                            Ashley P. Peterson (VSB No. 87904)
                                            MCGUIREWOODS LLP
                                            Gateway Plaza
                                            800 East Canal Street
                                            Richmond, Virginia  23219-3916
                                            Telephone:  (804) 775-1000
                                            Facsimile:  (804) 698-2026
                                            E-mail: bjustus@mcguirewoods.com
                                            E-mail: apeterson@mcguirewoods.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 2nd day of September, 2022, a true and correct copy of the foregoing was served on all counsel of record via Notice of Electronic Filing by filing with the Court's CM/ECF system.

/s/ Benjamin L. Hatch
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
V. Kathleen Dougherty (VSB No. 77294)
Jeanne E. Noonan (VSB No. 87863)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Telephone: (757) 640-3716
Facsimile: (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: vkdougherty@mcguirewoods.com
E-mail: jnoonan@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219-3916
Telephone:  (804) 775-1000
Facsimile:  (804) 698-2026
E-mail: bjustus@mcguirewoods.com
E-mail: apeterson@mcguirewoods.com