**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

CSX TRANSPORTATION, INC.,
individually and on behalf of NORFOLK
& PORTSMOUTH BELT LINE
RAILROAD COMPANY,

        Plaintiff,

v.                                                          Civil Action No. 2:18-cv-530-MSD-RJK

NORFOLK SOUTHERN RAILWAY
COMPANY, *et al.*,

        Defendants.

_____/

**CSX TRANSPORTATION INC.'S CONSOLIDATED OPPOSITION
TO DEFENDANT NORFOLK AND PORTSMOUTH BELT LINE RAILROAD
COMPANY'S MOTIONS *IN LIMINE* (ECF NO. 349, 353, 359, 365)**

Plaintiff CSX Transportation, Inc. ("CSX"), by counsel, states as follows in opposition to

the Motions *in Limine* ("Motions") filed by Defendant Norfolk and Portsmouth Belt Line Railroad

Company ("NPBL") (ECF Nos. 349, 353, 359, 365):

## INTRODUCTION

NPBL has filed four Motions *in Limine*, which ask the Court for blanket rulings that:

- Exclude evidence and argument that emails among NS employees, including NS-appointed NPBL directors, are "communications" between NS and NPBL (ECF No. 349) (and expressly joining NS's Motion *in Limine*, ECF No. 337);

- Exclude evidence and argument that CSX pays "privately negotiated" switch rates to certain other terminal switching railroads (ECF No. 353) (similar to the arguments made in NS's Motion *in Limine*, ECF No. 329);

- Limit testimony from representatives of non-parties Virginia Port Authority ("VPA") and Virginia International Terminals ("VIT"), the entities that own and operate Norfolk International Terminal ("NIT") (ECF No. 359) (not raised by NS); and

1

- Exclude testimony from CSX witnesses who purportedly "lack personal knowledge," and prevent CSX's expert from relaying this information (ECF No. 365) (similar to the arguments made in NS's Motion *in Limine*, ECF No. 331).

NPBL's Motions are a thinly veiled attempt to seek blanket bans on evidence and testimony that is plainly relevant and probative of CSX's claims.  NPBL seeks to exclude evidence on the grounds that it is irrelevant, unfairly prejudicial, improper expert testimony, and/or that the witness lacks personal knowledge.  This reflects a basic misunderstanding of CSX's claims, the record evidence, and the applicable law.  CSX's evidence is both relevant and admissible.  NPBL's focus, however, is on Rule 403.  Any purported "prejudice" to NPBL is that occasioned by the natural effect of relevant and probative evidence—not the "unfair" prejudice that may be excluded under Rule 403 of the Federal Rules of Evidence.  As there is no basis to exclude or limit any of the evidence NPBL challenges—and certainly not on a categorical basis in advance of trial—the Motions should be denied.

## <u>LEGAL STANDARD</u>

"A court should only grant a motion *in limine* to exclude evidence if the evidence is obviously inadmissible on all possible grounds."  *United States v. Gibson*, No. 2:17-cr-126, 2018 WL 4903261, at *2 (E.D. Va. Oct. 9, 2018) (Davis, C.J.).  "This principle applies because a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Id.*  "Furthermore, motions *in limine* seeking the exclusion of broad categories of evidence are generally disfavored."  *Id.*; *see also United States. v. Verges*, No. 1:13-cr-222 (JCC), 2014 WL 559573, at *3 (E.D. Va. Feb. 12, 2014) ("[O]rders *in limine* which exclude broad categories of evidence *should rarely be employed.*") (emphasis added).  "A better practice is to deal with questions of admissibility of evidence when they arise."  *Verges*, 2014 WL 559573, at *3 (quoting *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975)).

2

Relevant evidence is generally admissible unless a specific exception applies.  *See* FED. R. EVID. 402.  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  FED. R. EVID. 401.  Relevance presents "a low barrier to admissibility."  *United States v. Leftenant*, 341 F.3d 338, 346 (4th Cir. 2003).  To satisfy this standard, evidence need only be "worth consideration by the jury," or have some "plus value."  *Id.* (quoting *United States v. Queen,* 132 F.3d 991, 998 (4th Cir. 1997)).  When considering whether evidence is relevant, "the district court may not consider the weight or sufficiency of the evidence.  Its consideration should be limited to whether the evidence has *any tendency* to support a consequential fact."  *United States v. Fulcher*, 188 F. Supp. 2d 627, 634 (W.D. Va. 2002) (emphasis added) (quoting 2 Jack B. Weinstein & Margaret A. Berger, WEINSTEIN'S FEDERAL EVIDENCE, § 401.06, pp. 401–403 (2d ed. 2001)).

Rule 403 allows a district court to exclude otherwise admissible evidence that would result in *unfair* prejudice, i.e., "prejudice that damages an opponent for reasons *other than its probative value*," and only when that unfair prejudice "*substantially* outweigh[s] the probative value of the evidence."  *United States. v. Mohr*, 318 F. 3d 613, 619–20 (4th Cir. 2003) (emphasis added) (quoting WEINSTEIN'S FEDERAL EVIDENCE, 2nd ed., § 404.21[3][b]).  "In applying the Rule 403 analysis . . . [courts] consider the evidence in the 'light most favorable to [the] proponent, maximizing its probative value and minimizing its prejudicial effect."  *Carnell Const. Corp. v. Danville Redevelopment & Hous. Auth.*, 745 F.3d 703, 720 (4th Cir. 2014) (quoting *Mullen v. Princess Anne Volunteer Fire Co., Inc.,* 853 F.2d 1130, 1135 (4th Cir. 1988)).  A court's discretion to exclude evidence under Rule 403 is "narrowly circumscribed."  *Salmons, Inc. v. First Citizens Bank & Trust Co.*, No. 2:10CV72, 2011 WL 4828838, at *3 (E.D. Va. Oct. 11, 2011) (quoting *United States v. Johnson*, 415 F. App'x 495, 504 (4th Cir. 2011)).  "Rule 403 is an extraordinary

remedy which should be used only sparingly, because it permits the trial court to exclude concededly probative evidence." *Id.* (quoting *United States v. Norton*, 867 F.2d 1354, 1361 (11th Cir. 1989)).

## ARGUMENT

NPBL's Motions all suffer the same fatal defect: NPBL seeks to exclude as inadmissible "broad categories of evidence" without showing that the evidence "is obviously inadmissible on all possible grounds." *Gibson*, 2018 WL 4903261, at *2. As this Court explained in *Gibson*, such motions are "disfavored," because the Court "is almost always better situated during the actual trial to assess the value and utility of evidence." *Id.* Here, as set forth in detail below, the evidence challenged by NPBL is relevant to CSX's claims, and there are numerous grounds on which this evidence may be admissible at trial. NPBL's request for blanket exclusion of the challenged evidence is thus improper, and NPBL's Motions should be denied.

## I. NS's Internal Communications are Relevant and Admissible [ECF No. 349].

NPBL's first motion asks the Court to exclude "evidence and argument related to internal emails of [Defendant] Norfolk Southern Railway Company ('NS')." ECF No. 350 at 1. NPBL specifically seeks an order "prohibiting CSXT from offering at trial any internal NS communication in support of its conspiracy claims." *Id.* at 4. NPBL expressly "joins" NS's motion *in limine* on this point, *see id.* (citing ECF No. 337), writing separately to argue only that this evidence should be excluded under Rule 403 as "especially" prejudicial to NPBL, "since it exposes [NPBL] to liability for communications that [it] did not authorize and cannot control." *Id.* at 1–2.

Not only does NPBL fail to show these communications are inadmissible on any grounds, but NPBL's chief concern is that CSX will present NS's communications "as if they came from the Belt Line." ECF No. 350, at 2. NPBL's argument demonstrates any issue with this evidence

4

is not ripe at this stage, as there has been no effort yet to use them at trial.  NPBL has no knowledge of the context or purpose for which these communications may be offered, and speculation on how the evidence will be submitted to the Court establishes the impropriety of its motion *in limine*.  Of course, as detailed below, the statements of co-conspirators are admissible, relevant evidence.

As CSX explained in opposing Defendants' motions for summary judgment (*see* ECF No. 324 at 52) and NS's motion *in limine* (*see* ECF No. 419 at 10–11, incorporated herein by reference), CSX can rely on both direct *and* circumstantial evidence to prove the conspiracy between NS and NPBL.  "Conspiracies are often tacit or unwritten in an effort to escape detection, thus necessitating resort to circumstantial evidence to suggest than an agreement took place." *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 289–90 (4th Cir. 2012).  Accordingly, a document need not be a "communication" between an NS employee and an NPBL employee to constitute admissible evidence that Defendants "positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan."  *Fed. Ins. Co. v. Locash*, No. 2:12cv504, 2014 WL 12588635, at *9 (E.D. Va. Feb. 18, 2014) (quoting *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996)).  Defendants' request for a blanket exclusion of all evidence or argument that internal NS emails are evidence of conspiracy impermissibly ignores the context and purpose for which the emails might be offered, and the grounds on which the evidence or argument is admissible.  *See In re Peanut Farmers Antitr. Litig.*, No. 2:19cv463, 2021 WL 1141260, at *2 (E.D. Va. Feb. 22, 2021) (denying motion *in limine* to exclude communications among the parties, explaining that "a blanket bar on such a broad category of information outside the factual context in which it might be offered goes too far" when "the Court cannot say that there are no grounds on which [the] communications . . . might be relevant").

Defendants' contention that individual NS-appointed NPBL directors cannot be deemed agents of NPBL for purposes of CSX's conspiracy claims improperly rehashes their summary judgment arguments. *Compare* ECF No. 338 at 2–7 and ECF No. 350 at 1–4 *with* ECF No. 308 at 33–37 and ECF No. 303 at 23–27. Indeed, NPBL spends the majority of its motion attempting to distinguish a case cited in CSX's opposition brief. *See* ECF No. 350 at 2–4 (discussing *Am. Soc'y of Mech. Eng'rs v. Hydrolevel Corp.*, 456 U.S. 556 (1982)). Courts routinely reject parties' attempts to recast dispositive arguments as evidentiary issues via motions *in limine*. *See, e.g.*, *Nomo Agroindustrial SA DECV v. Enza Zaden N. A., Inc.*, No. CV-05-351, 2007 WL 1077023, at *1 n.1 (D. Ariz. Apr. 9, 2007) (cautioning the parties that "motions *in limine* are meant to deal with discrete evidentiary issues related to trial, and are not another excuse to file dispositive motions disguised as motions *in limine*"); *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, No. 01 C 6934, 2004 WL 2260626, at *10 (N.D. Ill. Oct. 1, 2004) (denying motion seeking to exclude "evidence of wilfulness" in patent infringement case, finding defendant's motion *in limine* to be "an inappropriate attempt to limit the scope of trial issues in a manner more appropriately raised in a motion for summary judgment").

As CSX explained in opposing Defendants' summary judgment motions *and* NS's motion *in limine*, whether an agency relationship exists is a question of fact for the jury. *See* ECF No. 324 at 54–55, ECF No. 419 at 15; *see also Reistroffer v. Person*, 439 S.E.2d 376, 378–79 (Va. 1994) ("[T]he issue whether an agency relationship existed is one of fact to be resolved by the fact finder.") (reversing judgment and remanding "for an evidentiary hearing on the issue of agency"). The record contains ample evidence from which the trier of fact could conclude that NS-appointed NPBL directors were agents of NPBL. *See Acordia of Va. Ins. Agency, Inc. v. Genito Glenn, L.P.*, 560 S.E.2d 246, 250 (Va. 2002) ("Agency may be inferred from the conduct of the parties and

from the surrounding facts and circumstances").  Indeed, the facts and circumstances surrounding actions taken by the NS-appointed NPBL directors—including, but not limited to, their votes as NPBL Board members—in December 2009, April 2011, and April 2018 are just a few examples of NS-appointed directors acting as agents of NPBL and also conspiring with their employer.[1]  *See* ECF No. 324, SOF ¶¶ 19–21, 24, 28–29, 40, and 71. This evidence is plainly relevant and admissible to support CSX's conspiracy claims.

NPBL complains that allowing CSX to introduce internal NS communications in support of its conspiracy claims would prejudice NPBL by "expos[ing]" it "to liability for conduct that it did not authorize and has no way to prevent."  ECF No. 350 at 4.  According to NPBL, it "has no power over the Board members appointed by NS" and is not "privy to their internal communications with other NS employees."  ECF No. 350 at 4, 2.  Following this argument to its logical conclusion, the only evidence admissible under NPBL's theory is direct evidence, in which co-conspirators communicate with one another.  The law, however, provides that direct evidence is not required, and plaintiffs asserting claims of conspiracy can rely on circumstantial evidence. *See Locash*, 2014 WL 12588635, at *9; *see also In re Int. Molded Doors Antitrust Litig.*, 3:18-CV-00718-JAG, 2019 WL 4478734, at *6 (E.D. Va. Sept. 18, 2019) ("Direct evidence of a conspiracy is rarely available to antitrust plaintiffs, so they must rely on circumstantial evidence."). Whether or not NPBL was privy to these communications does not affect their admissibility; CSX is entitled to use documents and evidence from NS to establish the conspiracy circumstantially.

---

[1] For this reason, NPBL's attempts to distinguish *Hydrolevel* are unavailing.  *See Hydrolevel*, 456 U.S. at 566–570 (explaining that holding a company "liable for the antitrust violations of its agents acting with apparent authority" furthers the Sherman Act's purpose by "deter[ring] anticompetitive practices," because "only [the company] can take systematic steps to make improper conduct on the part of all of its agents unlikely").  NPBL authorized its directors to direct the actions of and make business decisions for NPBL, and the NS-appointed directors conspired with their own company, NS, to the detriment of CSX.

NPBL's argument also ignores how this evidence may be admissible pursuant to the Federal Rules of Evidence.  At a minimum, under Rule 801(d)(2)(E), a statement is admissible, non-hearsay if it is offered against an opposing party and was made by the party's co-conspirator during and in furtherance of the conspiracy.  FED. R. EVID. 801(d)(2)(E).  Whether or not the individual was acting as an agent of NS or NPBL is irrelevant; the acts or evidence of one co-conspirator is admissible against the others, provided the court finds that "(1) a conspiracy existed; (2) the declarant and the party against whom the statement is offered were members of the conspiracy; (3) the statement was made in the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy."  *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 375 (3d Cir. 2004); *see also United States v. Blevins*, 960 F.2d 1252, 1255 (4th Cir. 1992).  Procedurally, a court may conditionally admit co-conspirators' statements "subject to the subsequent satisfaction of the requirements for their admission."  *Blevins*, 960 F.2d at 1256 (internal citations omitted). That determination, however, is a matter for trial.

Moreover, NPBL fails to articulate how the supposed prejudicial effect of the internal NS communications outweighs the relevance of this evidence—much less *substantially* outweighs it. *See E.I. DuPont De Nemours & Co. v. Kolon Industries, Inc.*, 564 F. App'x 710, 715 (4th Cir. 2014) ("under Federal Rule of Evidence 403, exclusion on that basis is only proper when the probative value of the evidence is *substantially outweighed* by the danger of confusion of the issues or misleading the jury") (emphasis in original).  "When a district court conducts a Rule 403 balancing exercise, ordinarily it should 'give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value."  *Id.* (quoting *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1274 (10th Cir. 2000)).  Any prejudice to NPBL would arise directly from the probative value of the proffered evidence, which powerfully demonstrates its decades-long

conspiracy with NS to block CSX at NIT.  That is simply not the sort of "unfair prejudice" Rule

403 is designed to prevent.  *See Mohr*, 318 F. 3d at 619–20 (explaining that Rule 403 only protects

against "prejudice that damages an opponent for reasons *other than its probative value*") (emphasis

added).  NPBL's motion should be denied.

## II.    Evidence of CSX's Private Switch Rates is Relevant and Admissible [ECF No. 353].

Next, NPBL contends that evidence and argument of privately negotiated switching rates

should be excluded pursuant to Rules 402 and 403, because these rates are not proper

"comparisons" to NPBL's tariff rate.  *See* ECF No. 355 at 1.  In support, NPBL largely reiterates

the arguments it made in its Motion for Summary Judgment, relying on *Laurel Sand & Gravel,*

*Inc. v. CSX Transp., Inc.*, 704 F. Supp. 1309, 1323 (D. Md. 1989).  *See* ECF No. 303 at 34–37.  As

CSX previously explained, NPBL's reliance on *Laurel Sand* is misplaced.  *See* ECF No. 324 at

60–61, 68–69.  In that case, the district court concluded that the plaintiff was unable to show the

switch rate offered by CSX—$.01 above CSX's *variable* costs—was "so unreasonable as to

amount to a denial of access" under an "essential facilities" theory.  *Laurel Sand*, 704 F. Supp. at

1323–24.

Nothing in *Laurel Sand* suggests that negotiated switching rates CSX pays are irrelevant

to whether NPBL's rate is reasonable "in the context of competition."  *Id.*   To the contrary, as

CSX's expert has confirmed, evaluating CSX's antitrust claims involves assessment of NPBL's

rate in comparison to those charged by other switching railroads for similar services, as well as in

comparison to the lower rate NPBL *could* charge for intermodal traffic while covering its costs.

*See* ECF No. 308-7 ¶¶ 55–62; ECF No. 308-71 ¶¶ 55–65.  NPBL relies on a fixed switch rate, set

at cost and without consideration that NPBL's costs would decrease if the number of cars handled

increased.  *See* ECF No. 324 at 67–68, and SOF ¶ 74.  That rate is significantly higher than the

rates charged by other switching railroads for similar services, and it is also strikingly higher than the rate NPBL *could* charge for intermodal traffic while covering its costs. *See* ECF No. 308-7 ¶¶ 55–62; ECF No. 308-71 ¶¶ 55–65. Even NPBL's own expert, Thomas Crowley, does not opine about what rate NPBL could have supported for service to NIT, nor did he examine or evaluate NPBL's variable costs. *See* ECF No. 376 at 7–9, Ex. A and B.

Evidence of other switching rates is highly-relevant to this analysis, regardless of whether they are contractually negotiated or tariff-based. This evidence is also highly probative of CSX's claims that the NS-controlled NPBL Board and NPBL management have rejected multiple proposals to move intermodal traffic to NIT at a lower rate—despite the fact that NPBL could cover its costs and generate positive net revenue at the proposed rate—to further their illegal goal of blocking CSX and preserving NS's monopoly at NIT. *See* ECF No. 324 at 9–15.

By definition, consideration of a competitive switching rate cannot be analyzed in a vacuum by reference to only one provider. Switching rates paid to other terminal switching railroads for similar services are highly relevant to whether NPBL's rates are anticompetitive. This includes, among others, the rate paid to CWRY, which both NS and CSX use to access on-dock rail at VIG, directly across the Elizabeth River from NIT. *See* ECF No. 324 at SOF ¶ 72. To the extent NPBL believes that contractually set switch rates are not appropriate comparisons, that argument goes to the weight of the evidence, not its admissibility. *See, e.g., TFWS, Inc. v. Schaefer*, 325 F.3d 234, 240 (4th Cir. 2003) (finding challenge to expert's consideration of price comparisons was a challenge to the weight to be given the evidence, not its admissibility); *see also Mt. Valley Pipeline, LLC v. 1.30 Acres of Land*, 7:18-CV-00607, 2013 WL 4306981, at *5 (W.D. Va. Sept. 11, 2019) (finding challenge to comparison evidence of other sales "goes to the weight

of the evidence, not its admissibility") (collecting cases).  NPBL will have the opportunity to address its purported concerns through cross-examination or in its own case.[2]

NPBL's conclusory assertions of confusion and risk of misleading the jury are unfounded. NPBL contends there is a risk that jurors "would be left to assess reasonableness from only CSXT's perspective."  ECF No. 355 at 5–6.  Certainly NPBL will be free to make its own arguments regarding this evidence, and to present appropriate contradictory evidence in its own case.  But its requested relief is unjustified.  This is hardly the type of unfair prejudice that supports the exclusion of this relevant and probative evidence.  *See Mohr*, 318 F.3d at 619–20 ("Rule 403 only requires suppression of evidence that results in unfair prejudice—prejudice that damages an opponent for reasons other than its probative value, for instance, an appeal to emotion, and only when that unfair prejudice '*substantially* outweigh[s] the probative value of the evidence.'") (internal quotations and citations omitted).  Evidence of contractually negotiated rates does not carry a risk that the "emotions of a jury will be excited to irrational behavior," such that that the risk outweighs the probative value of the evidence.  *Smithfield Foods, Inc. v. United Food and Com. Workers Intern. Union*, 586 F. Supp. 2d 632, 638 (E.D. Va. 2008) (quoting *United States v. Ham*, 998 F.2d 1247, 1252 (4th Cir. 1993)).

## III.    Testimony by VPA and VIT Representatives is Relevant and Admissible [ECF No. 359].

NPBL next asks the Court to preclude witnesses from the Virginia Port Authority (VPA) and Virginia International Terminals (VIT)—the owner and operator of NIT, respectively—from

---

[2] NPBL misstates the nature of the switching rates paid to other terminal railroads and the available evidence.  *See* ECF No. 355 at 2–3.  For example, the CWRY switch fee is currently set by contract, but when CSX made its first proposal to NPBL in 2010, CWRY's public tariff rate was $35.61 per container—a considerable difference from NPBL's $210 per car charge.  *See* ECF No. 300-1.

offering certain hypothetical testimony at trial.  Specifically, NPBL argues that the Court should enter an order prohibiting VPA and VIT witnesses from testifying that:

- NPBL's switch rate is "too high" or "unreasonable," *see* ECF No. 361 at 4–5;

- CSX lacks "access" to NIT, or that CSX's access at NIT is "inequitable" or "improper," among other adjectives, *see id.* at 5–6; and

- VPA or VIT witnesses "support" or "endorse" CSX's "claims" in this action, *see id.* at 7–8.

To be clear, these arguments are wholly speculative.  Although representatives from VPA and VIT were deposed, NPBL cites *no* examples of what it considers "improper" or "inadmissible" testimony.  Rather than identify specific testimony, NPBL seeks the exclusion of a broad category of evidence.  This goes too far.  *See In re Peanut Farmers Antitrust Litig.*, 2021 WL 1141260, at *2 ("A reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context.") (quoting *Luce v. United States*, 469 U.S. 38, 42 (1984)).  The Court is entitled to make an informed decision on the admissibility of specific testimony, but it cannot issue a "blanket bar" on a broad category of information.  *Id.*  NPBL's motion should be denied for this reason alone.

NPBL contends that hypothetical testimony from VPA or VIT witnesses about NPBL's switching rate or CSX's access at NIT would amount to "undisclosed expert testimony" or impermissible speculation on "one of the ultimate issues in the case."  *See* ECF No. 361 at 4–5. But neither the law nor the facts supports this position.  The testimony that NPBL asserts is expert opinion testimony is, in most instances, testimony on factual issues.  For example, testimony from a VPA or VIT witness as to how it perceives CSX's access at NIT, or the comparison of NPBL's switching rate with the switching rate offered by the terminal railroad at VIG, would be permissible fact testimony based on that witnesses' personal knowledge and industry experience.  By granting

the prohibitions NPBL seeks here would effectively preclude these witnesses from providing admissible fact testimony and evidence.

Moreover, fact witnesses may offer testimony—including lay opinion testimony—based on their personal knowledge and experience. *See* FED. R. EVID. 701; *see also Lord & Taylor, LLC v. White Flint, L.P.*, 849 F.3d 567, 575–76 (4th Cir. 2017) (affirming admissibility of employee witness testimony based on years of "day-to-day" industry experience, including "relevant historical . . . facts" regarding past projects).[3] Lay opinion testimony is relevant and admissible so long as it is "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." FED. R. EVID. 701; *see Henderson v. Corelogic Nat'l Background Data, LLC*, No. 3:12CV97, 2016 WL 354751, at *2 (E.D. Va. Jan. 27, 2016) (quoting *United States v. Chapman*, 209 F. App'x 253, 265 (4th Cir. 2006)) ("[T]estimony may qualify as lay witness testimony even where the subject matter is 'specialized' or 'technical,' as long as the testimony: (1) is based on the layperson's personal knowledge, typically in the form of industry experience; and (2) 'results from a process of reasoning familiar in everyday life.") (quoting FED. R. EVID. 701 Advisory Committee's Notes (2000)).[4]

Personnel employed by VPA and VIT have direct knowledge of the factual circumstances

---

[3] Indeed, lay opinion testimony may be admissible under Rule 701 even when based on information or documents prepared by others, as long as the testifying witness has the requisite personal knowledge. *See Lightening Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1175–76 (3d Cir. 1993) (affirming admission of lay testimony on lost profits where the witness had knowledge of and participated in the day-to-day affairs of the business, and finding his reliance on financial projections prepared by an accountant did not render his testimony beyond the scope of Rule 701 because he also participated in preparing the report).

[4] The same is true for corporate representative testimony. *See CMA CGM S.A. v. Deckwell Sky (USA) Inc.*, 91 F. Supp. 3d 841, 852 (E.D. Va. 2015) (explaining that a corporate representative may "testify about information known or reasonably available to the organization" under Federal Rule of Civil Procedure 30(b)(6), which is "an exception to the general principle that a witness must have personal knowledge").

underlying CSX's claims in this action, including the reasonableness of NPBL's switch rate, based on their experience working in the industry generally and at the Port of Virginia specifically. *See, e.g.*, **Exhibit 1** (Thomas Capozzi, 1/22/2021 Dep. at 76:16–83:7, 91:14–100:22, 119:10–120:1, 146:21–150:20, and 159:5–161:24).  Accordingly, these witnesses may offer testimony on this topic based on personal experience, regardless of whether VPA or VIT officially "analyzed" NPBL's rates or costs.[5]  VPA and VIT represent the facility that CSX seeks to service—NIT— and thus they are particularly well positioned to testify regarding whether the NPBL switch rate is precluding access to their own facility.  The same is true regarding the quality of CSX's "access" at NIT.  If any witness is qualified to testify about the facts and circumstances surrounding access at a Port of Virginia facility, it is the owner and operator of that facility, along with its knowledgeable employees and former employees.  This factual testimony does not amount to "legal conclusions" or "expert testimony" on the "ultimate issue" in this case.

To support its strained theory, NPBL mischaracterizes the circumstances surrounding a letter that the CEO of the VPA sent to NPBL in April 2018—before CSX filed its Complaint in this action—stating that a "lack of proper access to NIT by CSX" put the Port of Virginia at a

---

[5] NPBL claims the reasonableness of its rate is "the province of expert testimony."  ECF No. 361 at 4.  To support this proposition, it cites two aged decisions involving administrative rate-setting determinations by the ICC, the predecessor to the STB.  *See* ECF No. 361 at 4–5 (citing *Koppers Co. v. U.S.*, 166 F. Supp. 96, 99 (W.D. Pa. 1958), and *I.C.C. v. Union Pac. R. Co.*, 222 U.S. 541, 549 (1912)).  Neither of these decisions considers—much less holds—that lay witness testimony on rates from experienced industry participants should be deemed categorically inadmissible in a federal antitrust trial.  To be clear, as CSX explained previously (*see* ECF No. 115), CSX is not asking the trier of fact to determine NPBL's switch rate, as the STB might.  Rather, CSX is asking the trier of fact to evaluate the rate from an antitrust perspective and to determine whether the rate precludes competition.  Moreover, this Court has recognized it can fashion injunctive relief as requested by CSX without infringing on the STB's jurisdiction to make a rate-setting determination.  *See* ECF No. 66 at 23–24 (noting injunctive relief preventing Defendants from continuing to engage in a conspiracy or changing NPBL's governance would not infringe STB jurisdiction, as the STB "may still approve or disapprove" rate increases).

competitive disadvantage in the market for international intermodal transportation.  *See* ECF No. 361 at 6 & Ex. D.  As an initial matter, there is no need to decide the admissibility of the letter for all purposes on NPBL's motion *in limine*; nor has NPBL shown that it is inadmissible on all possible grounds.  *See Gibson*, 2018 WL 4903261, at *2.  In fact, the letter is admissible on several grounds, including for the notice it placed on NS and NPBL, for explaining and putting in context NPBL's response to the letter, as well as the subsequent actions or inactions by NPBL and NS. *See* FED. R. EVID. 803(1).

Furthermore, this letter reflects VPA's contemporaneous observations and recommendations based on direct personal experience.  *See* **Exhibit 2** (Catherine Vick, 1/29/21 Dep. at 138:12-148:11).  It is thus relevant and probative of CSX's claims.  To be clear, however, admitting the VPA letter in no way amounts to an "end-run" around "otherwise prohibited [expert] testimony," as NPBL suggests in asking the Court to exclude it for all purposes.  ECF No. 361 at 7.  Nor does CSX need it to be—CSX has proffered substantial expert opinions and testimony regarding NPBL's unreasonable rate and CSX's lack of viable on-dock access at NIT, *see* ECF No. 308, Ex. 7 at ¶¶ 37–84, and NPBL has not challenged those opinions under *Daubert*.

Finally, NPBL asks the Court to preclude as irrelevant and prejudicial any testimony or argument that VPA or VIT "supports" or "endorses" CSX's position" in this litigation.  ECF No. 361 at 3.  According to NPBL, "VPA's or VIT's opinions of CSXT's lawsuit are totally irrelevant," and "allowing a quasi-governmental entity to throw its weight behind CSXT at trial would be highly prejudicial."  *Id.* at 7.

Here again, NPBL misunderstands CSX's use of this evidence and NPBL fails to cite any testimony from either organization offering, let alone endorsing, an "opinion" on the outcome of the litigation.  VPA's support giving CSX's improved access and attendant actions taken to further

access by CSX to NIT are facts consistent with VPA's and VIT's mission of expanding and better serving the Port and its customers; those positions are relevant and germane to this litigation, including whether dual on-dock rail access at NIT would benefit competition at the Port of Virginia, whether NPBL can efficiently move containers in or out of NIT, and whether NPBL's switch rate is prohibitively expensive compared to rates charged by other switch lines for similar services.  VPA's support of CSX accessing NIT via NPBL tends to refute NPBL's concerns that "VIT cannot achieve the same efficiency for NPBL as it does for NS and NIT."  ECF No. 303 at 22.

Those lay opinions—and the factual observations supporting them—are unquestionably relevant and admissible under Rule 701.  *See United States v. Offill*, 666 F.3d 168, 177 (4th Cir. 2011) ("Rejecting the impractical notion that lay persons be required to testify only to pure facts when relating their knowledge of an incident, the rule allows testimony based on the person's reasoning and opinions about witnessed events, such as are familiar in every day life.").  This testimony is not rendered "meaningless" or prejudicial simply because it does not align with NPBL's version of events.  *See Mohr*, 318 F.3d at 619 ("*Unfair* prejudice under Rule 403 does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence.") (quoting WEINSTEIN'S FEDERAL EVIDENCE, § 404.21[3][b] (emphasis in original)).

At bottom, NPBL's complaints regarding hypothetical testimony of VPA or VIT witnesses go to the *weight* of this potential evidence, not its admissibility.  NPBL recognizes that witnesses from VPA and VIT are permitted to testify to factual issues.  *See* ECF No. 361 at 2.  Testimony from a VPA or VIT witness that compares NPBL's switching rate to that of another terminal railroad is permissible fact testimony, as is testimony regarding CSX's access at NIT, based on the personal knowledge of the VPA or VIT witness.  To the extent this testimony invokes an opinion,

that too is permissible under Rule 701.  As the Fourth Circuit has explained, "[t]he modern trend favors the admission of opinion testimony, provided that it is well founded on personal knowledge [as distinguished from hypothetical facts] and susceptible to specific cross-examination."  *MCI Telecommunications Corp. v. Wanzer*, 897 F.2d 703, 706 (4th Cir. 1990) (internal citation and quotation marks omitted).

## IV.    Evidence by CSX Witnesses is Relevant and Admissible [ECF No. 365].

NPBL next contends that the anticipated testimony from CSX fact and expert witnesses is inadmissible as not based on personal knowledge.  *See* ECF No. 367 at 3.  NPBL claims that potential CSX fact witnesses Rob Girardot, Chris Wagel, and Carl Warren merely "relay only hearsay statements or opinions from other people" on five, specific topics.  *Id.* at 3–4.  In addition, NPBL contends that CSX's expert, Dr. Howard P. Marvel, may not "regurgitate[]" these statements to the jury.  *Id.* at 13.  NPBL's reliance on a few hand-picked statements from the extensive depositions of these three CSX witnesses is insufficient to support its request that the Court pre-emptively bar testimony from these competent witnesses on key issues in this case.

### A.  The Anticipated Testimony of Rob Girardot, Chris Wagel, and Carl Warren is Based on Personal Knowledge and Admissible.

As an initial matter, NPBL advocates a constrained definition of "personal knowledge" that is unsupported by case law.  NPBL's basic premise is that because these witnesses testified at deposition that they learned certain information from other CSX employees, VIT employees, ocean carrier representatives, or other industry colleagues, they lack personal knowledge and should be precluded from testifying on these topics.

Rule 602 does not dictate how a witness may acquire personal knowledge.  *See City of Huntington v. AmerisourceBergen Drug Corp.*, No. 3:17-01362, 2022 WL 468183, at *4 (S.D. W. Va. Feb. 15, 2022).  It is an "unsound premise" that "the only competent testimony" is that from

"eyewitnesses at every step." *United States v. Christie*, 624 F.3d 558, 568 (3d Cir. 2010). "Although first-hand observation is obviously the most common form of personal knowledge, that is not the only basis for it." *City of Huntington*, at *4; *Christie*, 624 F.3d at 568 (both quoting WEINSTEIN'S FEDERAL EVIDENCE § 602.03[1][a] (2d ed. 2010)).  As explained by the United States Court of Appeals for the Seventh Circuit:

> All perception is inferential and most knowledge social; since Kant we have known that there is no unmediated contact between nature and thought.  Knowledge acquired through others may still be personal knowledge within the meaning of Fed. R. Evid. 602, rather than hearsay, which is the repetition of a statement made by someone else—a statement offered on the authority of the out-of-court declarant and not vouched for as to truth by the actual witness.  Such a statement is different from a statement of personal knowledge merely based, as most knowledge is based, on information obtained from other people.

*Agfa-Gevaert, A.G. v. A.B. Dick Co.*, 879 F.2d 1518, 1523 (7th Cir. 1989); *see also City of Huntington,* at *3–4.  Indeed, taking NPBL's position "to the logical extreme" would result in absurdity, where "technically everything is hearsay— reading the time on a clock, an individual's name, etc." *Hopeman Bros., Inc. v. Under Seal Cont'l Cas. Co.*, No. 4:16-cv-187, 2018 WL 4169282, at *6 (E.D. Va. Jan. 12, 2018).  "An individual can acquire personal knowledge . . . by making himself familiar with accounting and tracking payments and reviewing documents, etc." *Id.*

Put simply, Rule 602 cannot be defined "so as to exclude 'knowledge acquired through others,'" as NPBL suggests.  *City of Huntington*, at *4 (quoting *U.S. Info. Sys. v. IBEW Local Union No. 3*, No. 00 Civ. 4763 RMB JCF, 2006 U.S. Dist. LEXIS 52870, 2006 WL 2136249, at *11 (S.D.N.Y. Aug. 1, 2006)).  Rob Girardot, Chris Wagel, and Carl Warren learned facts and information through their professional experiences at CSX, which necessarily involved incorporating information originally provided to them from others.  Each of the examples provided by NPBL, *see* ECF No. 367 at 2, underscores that the anticipated testimony of these witnesses is

18

based on information gathered from others, as permitted under Rule 602.  The Court should reject NPBL's attempt to exclude this testimony, particularly on a pretrial motion *in limine*.

### B.   CSX's Understanding of the Belt Line's Tariff is Admissible.

NPBL first seeks to exclude the testimony of Rob Girardot about his understanding of how NPBL would charge a switching rate.  *See* ECF No. 367 at 4–5.  Citing to its Tariff, NPBL claims Mr. Girardot is wrong.  *See id.*  This is a factual dispute, to be resolved at trial, and has no bearing on the admissibility of Mr. Girardot's anticipated testimony, which is based on both the tariff itself and his personal recollection of conversations with NPBL representatives, which conversations are admissible as statements of a party opponent.  FED. R. EVID. 801(d)(2).

NPBL contends that Mr. Girardot's inability to remember the specific date or attendees on a particular call renders his testimony inadmissible under Rule 602, or unduly prejudicial under Rule 403.  *See* ECF No. 367 at 4–5.  But if "a lack of memory or the presence of contradictory evidence were a sufficient basis for excluding testimony, few witnesses would survive a motion *in limine*."  *Robertson v. McCloskey*, 680 F. Supp. 412, 413 (D.D.C. 1988).  These arguments go to the weight the jury might accord Mr. Girardot's testimony, not its admissibility.  Furthermore, "it is well-settled that 'Rule 403 should be applied infrequently and cautiously by trial judges' and that unfair prejudice results from 'evidence that appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human action.'"  *Id.* (quoting WEINSTEIN'S EVIDENCE, ¶ 403[02] at 403-27; ¶ 403[03] at 403-33-36 (1st ed. 1986)).  Testimony about switching rates hardly meets these limited bases for prejudicial exclusions.  Any flaws NPBL perceives with this anticipated testimony can be challenged through the normal adversary process of cross-examination at trial, but there is no basis to preclude Mr. Girardot's anticipated testimony at this stage in the proceedings.

C. **Testimony Regarding the Preferences and Practices of Ocean Carriers, Lost Business Opportunities, and Drayage as an Inadequate Alternative to On-Dock Rail Access is Admissible.**

NPBL next challenges any testimony from Rob Girardot, Carl Warren, and Chris Wagel about the preferences and practices of ocean carriers, as well as lost business and the inadequacies of drayage. According to NPBL, this anticipated testimony "presents multiple layers of hearsay." *See* ECF No. 367 at 7–8, 10–13. But NPBL fails to consider each witness may testify about the competitive dynamics of the market, based upon their personal knowledge and experience, which would not be hearsay, as opposed to any specific out of court statement relayed in a manner that could constitute hearsay. Whether an out-of-court statement is inadmissible as hearsay depends on the context within which the statement is offered at trial, so courts rarely exclude *in limine* categories of evidence on hearsay grounds. *See, e.g., United States v. Stewart*, No. 5:14-CR-90-FL, 2014 WL 4978502, at *2 (E.D.N.C. Oct. 6, 2014) (denying motion *in limine* to exclude testimony on hearsay grounds, explaining that "without additional information concerning the circumstances under which these statements may be offered . . . , it is premature to issue an order categorically excluding them from trial"); *United States v. Curry*, No. WDQ-12-0163, 2013 WL 1120581, at *7 (D. Md. Mar. 15, 2013) (denying motion to exclude testimony, explaining that without understanding how the defendant intended to introduce the evidence at trial, "a ruling excluding all prior hearsay . . . would be premature"); *Valladares v. Cordero*, No. 1:06cv1378, 2007 WL 2471067, at *7 (E.D. Va. Aug. 27, 2007) (reserving until trial ruling on whether challenged evidence constituted inadmissible hearsay). Indeed, NPBL's request is entirely speculative, and there is no indication that the challenged testimony "is obviously inadmissible on all possible grounds." *Gibson*, 2018 WL 4903261, at *2. The Court will be "better situated during

20

the actual trial to assess the value and utility of [the] evidence," and it should not exclude testimony at this juncture based on NPBL's tenuous predictions that it may constitute hearsay. *Id.*

An out-of-court statement is inadmissible as hearsay when it is offered "to prove the truth of the matter asserted in the statement." FED R. EVID. 801(c). An out-of-court statement is not inadmissible hearsay, however, "where the proponent offers it not to prove the truth of the matter asserted but for another purpose." *Arrington v. E.R. Williams, Inc.*, 490 F. App'x 540, 543 (4th Cir. 2012) (affirming admission of testimony relaying client complaints offered not for their truth but to explain why the defendant believed terminating the plaintiff's employment was "necessary and appropriate"). Hearsay is also admissible if it satisfies an exception outlined in the Federal Rules of Evidence. See FED. R. EVID. 803, 804.

The anticipated testimony at issue here is not inadmissible on "all possible grounds," and exclusion *in limine* is unwarranted. NPBL simply assumes these witnesses would be asked to provide hearsay testimony. As discussed above, Mr. Girardot, Mr. Wagel, and Mr. Warren are entitled to testify as to their own personal knowledge, including knowledge based on information learned from other people. *See City of Huntington*, 2022 WL 468183, at *3–4. Furthermore, the anticipated testimony may be admissible for purposes other than proving the truth of the matter asserted. For example, statements pertaining to conversations among CSX employees, or between VIT and CSX regarding ocean carriers' inquiries about drayage at NIT may demonstrate, among other things, that both CSX and VIT knew ocean carriers were aware of CSX's lack of on-dock rail at NIT and were skeptical that drayage provided an adequate substitute. *See Bland v. Fairfax Cty., Va.*, No. 1:10cv1030, 2011 WL 2490995, at *4 (E.D. Va. June 20, 2011) ("A statement is not hearsay if it is offered to prove knowledge or show the effect on the listener or listeners' state of mind."); *see also United States v. Martin*, 657 F. App'x 193, 199–200, n.6 (4th Cir. 2016)

(explaining that "[s]tatements that are offered to prove the effect of the statement on the listener are not offered for their truth and therefore do not fall within the definition of hearsay," and that in such instances, "both sides" of the conversation are admissible to provide context).  This evidence is relevant to, among other things, issues of market definition, CSX's damages, and to address Defendants' arguments that drayage is an adequate substitute for on-dock rail.  *See, e.g.,* ECF No. 308-10 ¶¶ 106–113, ECF No. 308-89 at 18–24.  It would be premature for CSX to explain the foundational questions and admissibility of the testimony that may be offered by these three fact witnesses.  Whether their testimony is admissible at trial will depend on the questions asked of each witness, and the purpose for which the testimony is elicited.

NPBL claims that it cannot "cross-examine the ocean carriers to test the veracity of Mr. Girardot's or Mr. Warren's statements about their preferences."  ECF No. 367 at 7–8, 12.  These purported concerns are irrelevant if the witnesses testify based on their own personal knowledge and perception.  *See City of Huntington*, 2022 WL 468183, at *3–4.  These witnesses will not simply relate what another person told them.  And, even if the question calls for an opinion, from a lay witness, as opposed to only factual statements, it is allowed when it is based on "relevant historical or narrative facts that the witness has perceived."  *MCI Telecomms. Corp.*, 897 F.2d at 706 (allowing bookkeeper's testimony about likely profits because it was based on records within her control and her "personal knowledge and perception" as an accountant); *see also Lord & Taylor, LLC*, 849 F.3d at 575–76 (affirming admissibility of employee witness testimony based on years of "day-to-day" industry experience, including "relevant historical . . . facts" regarding past projects).  Mr. Warren's testimony establishes his understanding of the concerns from ocean carriers regarding drayage as an inadequate substitute for on-dock access at NIT and derives from the multiple roles he held at CSX, including interactions with CSX staff, port partners, and other

industry contacts.  *See* ECF No. 367, Exhibit E.  Mr. Girardot is aware that ███████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████  *See id.*, Exhibit A.  Neither

witness will be asked to relay a specific out of court statement, but testimony regarding relevant

facts and knowledge gleaned over the course of their careers is admissible.

Similarly, Mr. Wagel is competent to testify regarding drayage as an inadequate alternative

to on-dock rail access.  His estimate of the drayage capacity into and out of NIT is based on

reviewing the drayage operations at NIT, prior history with drayage at the terminal, and his direct

experience as terminal manager at CSX's Portsmouth terminal.  *See* ECF No. 367, at Ex. J.  There

is nothing inadmissible about Mr. Wagel testifying to his own experience, observations, and

personal knowledge.  And, if NPBL seeks to challenge this testimony, it should do so at trial, when

the Court has the opportunity to review the testimony in light of the context and purposes for which

it is offered.

To the extent NPBL contends that these witnesses' recollections are not reliable, that is a

matter for cross-examination.  *See, e.g., Hershberger v. Ethicon Endo-Surgery, Inc.*, 2:10-CV-

00837, 2012 WL 524442, at *7 (S.D.W. Va. Feb. 15, 2012) (denying motion *in limine* challenging

reliability and lack of personal knowledge of physician's opinions, and explaining these opinions,

"whether lay or expert, are fertile ground for cross-examination and the presentation of contrary

evidence").   Moreover, CSX may rely on circumstantial evidence to prove its injury and

damages—it need not proffer direct evidence to prevail at trial.  *See Olean Wholesale Grocery*

*Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774, 788 (9th Cir. 2021) (in an antitrust action,

injury "may be inferred from statistical evidence"), vacated on other grounds, 31 F.4th 651 (9th

Cir. 2022); *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1478 (10th Cir. 1985)

(antitrust plaintiff's burden to prove injury in fact is satisfied through "proof of some damage flowing from the unlawful [conduct], which may be established by reasonable inferences drawn from circumstantial evidence"); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123 (1969) (explaining that "damages issues in [antitrust] cases are rarely susceptible of the kinds of concrete, detailed proof of injury which is available in other contexts," and, as a result, "the jury may make a just and reasonable estimate of the damage based on relevant data," including "probable and inferential as well as direct and positive proof") (internal citations omitted).

NPBL's contentions regarding the admissibility of the anticipated testimonies of Mr. Girardot, Mr. Wagel, and Mr. Warren are best left to trial. The Court should reject NPBL's attempt to obtain a blanket preclusion of this testimony based on its strained hypotheses about *possible* hearsay and reliability.

### D.  CSX's Calculations of the Average Containers per Well Are Admissible.

Additionally, NPBL seeks to exclude testimony from Mr. Girardot on the average number of containers per well, which NPBL claims is speculative. *See* ECF No. 367 at 9–10. During his deposition, Mr. Girardot testified about certain assumptions related to the average number of containers handled per rail well. *See* ECF No. 367 at 9–10 and Ex. G. Mr. Girardot testified that these calculations were the product of CSX's business experience, as well as his own personal observations and experience as CSX's Director of Strategy and Analytics for Intermodal. That is a sufficient basis for his lay witness testimony. *See Lord & Taylor*, 849 F.3d at 575–76.

In addition, the line of deposition testimony cited by NPBL was based on an exhibit from the CSX 30(b)(6) deposition, in which Mr. Girardot served a corporate representative. *See* **Exhibit 3** (Girardot Dep. 3/17/2021 at 102:21-108:12). In his capacity as a corporate representative, Mr. Girardot is entitled to "testify about information known or reasonably available to the

organization" as a whole.  *CMA CGM S.A.*, 91 F. Supp. 3d at 852.  NPBL's attempt to exclude Mr. Girardot's testimony about CSX's average-container-per-well calculations is premature and overbroad, as the admissibility of that testimony will depend on the specific questions asked at trial, the foundation laid for those questions, and whether Mr. Girardot testifies in a personal or corporate representative capacity.

### E.  Dr. Marvel's Testimony is Relevant and Admissible.

Like NS, NPBL argues that the anticipated testimony or declarations from Mr. Girardot, Mr. Wagel, and Mr. Warren will be "improperly regurgitated" by Dr. Marvel.  ECF No. 367 at 13; *see also* ECF No. 332 at 7.  NPBL's overwrought concerns are unsupported.  Rule 703 provides that an expert may rely on facts or data of which the expert has been made aware, and that the facts or data "need not be admissible" if experts in that particular field would reasonably rely on those kinds of facts or data.  FED. R. EVID. 703.

It is beyond question that an expert witness may rely on hearsay in formulating his opinions, even if that evidence would be inadmissible at trial.  *See Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 182 (4th Cir. 2010) (citing FED. R. EVID. 703).  At trial, Dr. Marvel may proffer his opinions on, among other topics, the relevant antitrust market, harm to competition, and CSX's damages, as well as his basis for those opinions, without relating hearsay on direct examination.  *See Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728–29 (6th Cir. 1994) (Rule 703 permits introduction of evidence "upon which an expert properly relies . . . to explain the basis of the expert's opinion," even if that evidence would be inadmissible "for the truth of the matters they contain") (quoting *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261–62 (9th Cir. 1984)).

The cases cited by NPBL recite the general standards for the admissibility of expert testimony, but none of them holds that an expert may not testify as to the bases for otherwise

proper expert opinions solely on hearsay grounds.  *See Therasense, Inc. v. Becton, Dickinson, & Co.*, 2008 WL 2323856, at \*2 (N.D. Cal. May 22, 2008) (excluding expert opinion premised on experiments done by party's employees without expert's participation, the details of which had been withheld as privileged); *In re Sulfuric Acid Antitrust Litig.*, 446 F. Supp. 2d 910, 926 (N.D. Ill. 2006) (rejecting argument that expert opinions should be excluded as based on hearsay, finding the opinions based on sufficiently reliable data); *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 807 (N.D. Ill. 2005) (excluding expert's loss calculation premised on unquestioning acceptance of economic models created by defendant's employees); *Wantanabe Realty Corp. v. City of New York*, No. 01 Civ. 10137, 2004 WL 188088, at \*2 (S.D.N.Y. Feb. 2, 2004) (excluding expert opinion purporting to offer out-of-court cost estimate for the truth of the matter asserted); *In re Lake States Commodities, Inc.*, 271 B.R. 575, 588 (Bankr. N.D. Ill. 2002) (giving expert opinions "no weight" after concluding expert had not conducted meaningful testing or sufficiently validated underlying data); *Va. Vermiculite Ltd. v. W.R. Grace & Co.-Conn.*, 98 F. Supp. 2d 729, 735 (W.D. Va. 2000) (excluding expert opinions after concluding expert was unqualified and used unreliable methodology); *Law v. Nat'l Collegiate Athletic Ass'n*, 185 F.R.D. 324, 341 (D. Kan. 1999) (excluding expert's testimony regarding phone calls with athletic directors as unhelpful to the trier of fact).  As the court in *In re Lake States Commodities, Inc.* explained, if an expert testifies as to hearsay in the context of explaining his opinions, the hearsay may be "admitted solely to explain the basis of the expert's opinion, not as proof of the underlying matter."  271 B.R. at 585.

NPBL claims it will be unfairly prejudiced by the admission of any of Dr. Marvel's testimony that "repeats" the facts or data in the declarations of Mr. Girardot, Mr. Wagel, and Mr. Warren.  ECF No. 367 at 13–15.  NPBL conveniently ignores that both it and NS's own experts

rely on hearsay to support their opinions.  *See, e.g.*, ECF No. 308-10 ¶¶ 66–67, 90, 117, 146, 150; ECF No. 308-89 at 7–9.  Although NPBL frames its argument as attacking what it claims is underlying speculation and hearsay, closer examination of its motion indicates NPBL simply disagrees with the underlying facts, perceptions, and opinions of the CSX witnesses.

To the extent Dr. Marvel's testimony references or incorporates some of the facts or data identified by NPBL, the probative value of his expert testimony in this case substantially outweighs any prejudice.  *See* FED. R. EVID. 703.  Dr. Marvel will testify as an expert to explain complex issues in a manner that will aid the jury, including on CSX's damages claims.  The probative value of his testimony is not outweighed by the hypothetical risks posited by NPBL.  Defendants will have the opportunity to cross-examine Dr. Marvel at trial, and may have the opportunity to present their own experts.

NPBL's motion regarding the exclusion of evidence from CSX witnesses who lack personal knowledge is off base, premature, and overbroad, and should be denied.

## CONCLUSION

For these reasons, CSX respectfully requests that the Court deny all four Motions *in Limine* filed by Defendant Norfolk and Portsmouth Belt Line Railroad Company (ECF Nos. ECF Nos. 349, 353, 359, 365).

Dated: September 2, 2022                      Respectfully submitted,

CSX TRANSPORTATION, INC.
*By Counsel*

*/s/ Benjamin L. Hatch*
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)

27

V. Kathleen Dougherty (VSB No. 77294)
Jeanne E. Noonan (VSB No. 87863)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Telephone: (757) 640-3716
Facsimile: (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: vkdougherty@mcguirewoods.com
E-mail: jnoonan@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219-3916
Telephone:  (804) 775-1000
Facsimile:  (804) 698-2026
E-mail: bjustus@mcguirewoods.com
E-mail: apeterson@mcguirewoods.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 2nd day of September, 2022, a true and correct copy of the foregoing was served on all counsel of record via Notice of Electronic Filing by filing with the Court's CM/ECF system.

*/s/ Benjamin L. Hatch*
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
V. Kathleen Dougherty (VSB No. 77294)
Jeanne E. Noonan (VSB No. 87863)
McGuireWoods LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Telephone: (757) 640-3716
Facsimile: (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: vkdougherty@mcguirewoods.com
E-mail: jnoonan@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219-3916
Telephone:  (804) 775-1000
Facsimile:  (804) 698-2026
E-mail: bjustus@mcguirewoods.com
E-mail: apeterson@mcguirewoods.com