# EXHIBIT 9

```
                                                    Page 1

 1              UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF VIRGINIA
 2                    NORFOLK DIVISION
 3
 4    CSX TRANSPORTATION, INC.,
      individually and on behalf of
 5    NORFOLK & PORTSMOUTH BELT LINE
      RAILROAD COMPANY,
 6
              Plaintiff,
 7                                       CIVIL ACTION FILE
              vs.
 8                                       NO. 2:18cv530
      NORFOLK SOUTHERN RAILWAY
 9    COMPANY, NORFOLK & PORTSMOUTH
      BELT LINE RAILROAD COMPANY,
10    JERRY HALL, THOMAS HURLBUT,
      PHILIP MERILLI, and CANNON
11    MOSS,
              Defendants.
12
13
14              VIDEO DEPOSITION OF
15                   JOHN BOOTH
16                March 12, 2020
17                   9:57 a.m.
18                McGuireWoods LLP
19              1230 Peachtree Street
20                   Suite 2100
21                Atlanta, Georgia
22       Robyn Bosworth, RPR, CRR, CRC, CCR-B-2138
```

Page 69

1  is in -- is far in excess of the cost to move
2  freight from NIT, right?
3      A    Yes.
4      Q    And I'm asking you, sir, whether you ever
5  determined or tried to determine what the cost to
6  move freight from the -- from NIT was for the Belt
7  Line.
8      A    I did not.
9      Q    Okay.  So you cannot verify that
10 Mr. Ingram's statement is correct?
11     A    Correct.
12     Q    All right.  But he certainly is looking at
13 or comparing the Belt Line's tariff rate that would
14 apply for moving traffic to or from NIT with the
15 cost of doing so, correct?
16     A    Yes.
17     Q    All right.  And then he does in the next
18 sentence refer to that $148.50 tariff rate, correct?
19     A    Yes.
20     Q    And if you look back at Exhibit 3, that's
21 the rate that was recommended by the rate committee
22 in 2006 and adopted by the Belt Line board in 2007,

Page 248

1   A   Correct.
2   Q   And so it was not certain what issues may
3   come up in that move, and it hadn't been done,
4   correct?
5   A   Right.
6       (Defendant's Exhibit 30 was marked for
7   identification.)
8   BY MR. LACY:
9   Q   Pass you Exhibit 30.
10      Mr. Booth, this is another e-mail chain
11  with an attachment, and the last e-mail is from you
12  to Mr. Armbrust and Mr. Eliasson dated November 1,
13  2010.
14      Do you recall this exchange?
15  A   Let's see, November 1. Yes, I recall
16  this.
17  Q   Okay. And the attachment looks to be a
18  draft NIT solid train interchange and rail
19  transportation agreement; is that right?
20  A   Yes.
21  Q   And is this a draft agreement that CSXT
22  prepared for the movement of intermodal freight by

Page 249

1  the Belt Line to and from NIT?
2      A    Yes.
3      Q    So, in other words, if the Belt Line ended
4  up agreeing to your proposal, this draft contract
5  would -- might not be the final version would -- but
6  is a proxy of what a contract between the Belt Line
7  and CSXT would look like, right?
8      A    Yes.
9      Q    Okay.  Now, going back to the cover
10 e-mail, your forward to Mr. Armbrust says:
11 Confidential, attorney-client privilege, FYI.
12          I noticed when you were forwarding
13 documents to Mr. Armbrust before this time period,
14 you hadn't included the "confidential,
15 attorney-client privilege" moniker.
16          Is there a reason why you included it in
17 this one?
18     A    I don't recall what the reason was.  I may
19 have been admonished by Mr. Armbrust for not having
20 included it earlier.
21     Q    Okay.
22     A    I don't know.