# EXHIBIT 14

```
                                              Page 1

 1              UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF VIRGINIA
 2                    NORFOLK DIVISION
 3
 4   CSX TRANSPORTATION, INC.,
     individually and on behalf of
 5   NORFOLK & PORTSMOUTH BELT LINE
     RAILROAD COMPANY,
 6
               Plaintiff,
 7                                        CIVIL ACTION FILE
            vs.
 8                                        NO. 2:18cv530
     NORFOLK SOUTHERN RAILWAY
 9   COMPANY, NORFOLK & PORTSMOUTH
     BELT LINE RAILROAD COMPANY,
10   JERRY HALL, THOMAS HURLBUT,
     PHILIP MERILLI, and CANNON
11   MOSS,
12             Defendants.
13
14               VIDEO DEPOSITION OF
15              STEVEN ARMBRUST, ESQ.
16                 March 11, 2020
17                   9:56 a.m.
18                McGuireWoods LLP
19              1230 Peachtree Street
20                   Suite 2100
21                 Atlanta, Georgia
22      Robyn Bosworth, RPR, CRR, CRC, CCR-B-2138
```

Veritext Legal Solutions
800-567-8658                                    973-410-4098

Page 34

1    Q    It would depend on the correspondence?

2    A    Yes, I believe so.

3    Q    Were there correspondences that you recall
4  during your five years as a board member that you
5  would write as a board member only?

6    A    There certainly were specific
7  correspondences that I would write as a board member
8  only.

9    Q    Did you understand as a board member of
10 NPBL, part of your fiduciary duty was to make
11 decisions in accordance with the governing documents
12 of NPBL?

13   A    I think that is a fair statement.

14   Q    When you first started on the board in
15 2010, had you reviewed the governing documents of
16 NPBL?

17   A    Yes.

18   Q    Okay.  Had you done that in 2008 or 2009
19 in your capacity as an in-house counsel for CSX, or
20 once you started on the board in 2010, is that when
21 you first reviewed the documents?

22        MR. JUSTUS:  Objection to the extent it's

Page 36

1   became a board member, during that time period.
2        A    I reviewed the -- I have both.
3        Q    How about the March 1st, 1989,
4   supplemental agreement, at some point in 2008 or
5   2009 or 2010, did you review that agreement?
6        A    Yes.
7        Q    So it's fair to say when you started on
8   the board, you had reviewed the governing documents
9   of NPBL.
10       A    It's fair to say that I reviewed the
11  documents that I understood were in place, plus
12  certain governing documents that preceded those
13  documents prior to joining the board, yes.
14       Q    So when you first started on the board,
15  you knew that part of your duties as a board member
16  would be to evaluate things that came to the board
17  and make decisions based on the terms of the
18  governing documents; isn't that true?
19       A    That's fair to say.
20       Q    And you were qualified to read and
21  understand those documents because what you brought
22  to the table was your legal background, correct?

1   proposal never even went to a rate committee,
2   correct?
3           MR. JUSTUS:  Objection, foundation.
4   BY MR. LYNCH:
5       Q    And never went to a vote?
6           MR. JUSTUS:  Same objection.
7       A    In 2018, the concerns had risen and were
8   articulated in letters preceding the board meeting
9   that the governance of the Belt Line was in a state
10  that required independent board members.  And as I
11  recall from the -- there was not a desire to proceed
12  with a rate proposal without approval of an
13  independent board as well.
14  BY MR. LYNCH:
15      Q    To your recollection, CSX didn't want to
16  go forward with a rate vote because of the
17  composition of the board.
18          MR. JUSTUS:  Objection to form.
19  BY MR. LYNCH:
20      Q    Is that a fair statement?
21      A    That's my recollection, yes.
22          MR. LYNCH:  Exhibit 17.