# EXHIBIT 15

```
                                                    Page 1
 1                IN THE UNITED STATE DISTRICT COURT
                     EASTERN DISTRICT OF VIRGINIA
 2                         NORFOLK DIVISION
 3                          No. 2:18cv530
 4     CSX TRANSPORTATION, INC.,
       individually and on behalf of NORFOLK
 5     & PORTSMOUTH BELT LINE RAILROAD
       COMPANY,
 6                    Plaintiff,
 7     v.
 8     NORFOLK SOUTHERN RAILWAY COMPANY,
       et al.,
 9                    Defendants.
10     _____/
11                          Remote Proceedings
                            January 8, 2021
12                          9:31 a.m. - 3:50 p.m.
13
14            VIDEO DEPOSITION OF FREDRIK ELIASSON
15                     (via Teleconference)
16         Taken before SUZANNE VITALE, R.P.R., F.P.R.
17     and Notary Public for the State of Florida at Large,
18     pursuant to Notice of Taking Deposition filed in the
19     above cause.
20
21
22
23
24
25     Job No. CS4380445
```

1    A.   I mean, in this instance, I did not think
2    that this was in any way, shape, or form a conflict
3    because what CSX was trying to do was to gain access
4    to the facility.  What NPBL was there to do was to
5    serve the members' interests in terms of access to
6    facilities.
7         We were trying to put a proposal forth
8    that gave economic profit that was sufficient for
9    them to do the service.  So I never saw a conflict
10   between the two hats that I was wearing.
11   Q.   Understood.  All right.  In terms of
12   Exhibit 13 and specifically this memo from
13   Mr. Stinson to the members of the Belt Line Board,
14   dated August 5, 2010, do you remember receiving this
15   memo from Mr. Stinson at the time?
16   A.   Vaguely, yes.
17   Q.   All right.  Is this one of the documents
18   you reviewed in preparation for your deposition
19   today?
20   A.   I'm not sure that I reviewed this one,
21   per se, versus the original proposal that we sent
22   over.  It's possible that was one of the documents.
23   But I don't recall that.
24   Q.   Okay.  The first page of Mr. Stinson's
25   memo to the board, about midway down, it has an

Page 131

1   article that says -- I mean, I'm sorry -- a
2   paragraph that says "First, Article Ninth of the
3   operating agreement of July 7, 1897, between NPBL's
4   owners requires that freight rates be uniform.  As
5   proposed by CSXT, the handling of interchange
6   traffic on the basis of a per-container rate would
7   violate the terms of the operating agreement.
8   Either the shareholders would need to amend the
9   agreement or approve an exception to its terms."
10           As a member of the Belt Line Board, did
11  you agree with the statement in Mr. Stinson's memo?
12       A.   I fully agreed.  We were more than willing
13  to offer the same agreement with Norfolk -- to
14  Norfolk Southern.
15       Q.   What do you mean?
16       A.   Meaning that if they -- we fully respected
17  the uniform rate principle.  When the original
18  charter was set up, intermodal was not in existence.
19  It was another 50, 60 years until intermodal came
20  up.
21           And the idea of uniform for intermodal
22  trains versus containers or versus individual
23  carloads was always something not well contemplated
24  on that point.
25           But we were not trying to have a rate that