**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | | |
|---|---|---|
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-cv-530 |
| | ) | |
| NORFOLK SOUTHERN RAILWAY COMPANY, et. al., | ) | |
| | ) | |
| *Defendants*. | ) | |

**NORFOLK SOUTHERN RAILWAY COMPANY'S REPLY MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* REGARDING USE OF INTERNAL EMAILS**

Defendant Norfolk Southern Railway Company ("NS"), by counsel, submits this Reply Memorandum in Support of its Motion *in Limine* under Federal Rules of Evidence 401, 402, and 403 ("Motion") [ECF No. 337] seeking to prohibit Plaintiff CSX Transportation, Inc. ("CSX") from arguing or eliciting testimony that internal NS documents, including internal emails[1] involving only NS employees, are evidence of an alleged conspiracy between NS and co-Defendant Norfolk and Portsmouth Belt Line Railroad Company ("NPBL").

## INTRODUCTION

CSX brings four conspiracy claims in this case, all of which require CSX to prove that NS agreed to conspire with NPBL. *Buschi v. Kirven*, 775 F.2d 1240, 1251 (4th Cir. 1985) (holding

[1] Attached as Exhibit F to NS's opening brief is a list of the internal NS documents that CSX disclosed in response to an interrogatory as documents CSX contends evidence conspiratorial communications between NS and NPBL. [ECF No. 341]. These documents are the only internal NS documents that CSX could even potentially point to as evidencing conspiratorial communications with NPBL given these are the only ones disclosed in its interrogatory answer. *See* Fed. R. Civ. P. 37(c). Nevertheless, NS seeks a ruling of general applicability that CSX cannot rely on internal NS communications as evidencing conspiratorial communications with NPBL.

that a corporation cannot conspire with itself). When asked to identify the specific communications and overt acts that form the basis of the alleged conspiracy, CSX identified 96 documents. *See* NS's Mot. for Summ. J. Ex. 121, ECF No. 310-25. All but 15 of these documents are internal communications between NS employees *only* – *i.e.*, intracorporate communications. CSX takes the position that these internal NS communications are evidence of a conspiratorial agreement between NS and NPBL because they involve NS employees who also are (or were) members of the NPBL Board of Directors. *See* Opening Br. 2, ECF No. 338 (identifying CSX's responses to interrogatories and citing Chart of Documents Identified by CSX in its 2d Supp. Resp. NPBL's Interrog. No. 3, Mot. Summ. J. Ex. 121, ECF No. 310-25). Under Virginia law, however, individual directors of NPBL are not agents of NPBL and cannot bind the corporation. NPBL can act only through its Board. Therefore, because the communications relied on by CSX are between NS employees only, they cannot be evidence of a conspiracy between NS and NPBL.

CSX admits that communications between NS and NS-appointed NPBL Board members are not admissible *unless* NS-appointed NPBL Board members were acting as authorized agents of NPBL. Indeed, CSX not only relied on this legal principle, but showed that it applied as a matter of law to NPBL's Board, when it withheld numerous internal communications involving CSX's NPBL Board members on the grounds of privilege. *See* Opening Br. Exs. A & B, ECF No. 335 (showing CSX privilege log listing documents involving NPBL Board members withheld as privileged). CSX argues that whether any NS employee was acting as an agent of NPBL at the time of the communication is a factual issue, and is the subject of NS's Motion for Summary judgment, making it improper for determination in the context of a motion in limine. Opp. Br. 15, ECF No. 417.

CSX, however, has not taken the necessary next step: it has not identified a *single* piece of evidence – in its discovery responses or in its briefing – actually showing that any NS employee was conducting NPBL business when engaging in these internal communications, much less that NS employees were acting under authority granted to them by the NPBL Board. It goes without saying that, without the existence of any evidence that NS employees were acting as authorized agents of NPBL, the internal communications identified by CSX are inadmissible for the purpose of proving a conspiracy.

## ARGUMENT

### A. **Internal NS Emails are Not Admissible Without Proof of Agency, Which CSX Has Not Identified**.

It is settled law in Virginia that the individual directors of a corporation are not agents of the corporation for which they are board members merely because they are board members. *Monacan Hills, Inc. v. Page*, 203 Va. 110, 116 (1961). Accordingly, "declarations and admission of *individual directors when not acting as a board* are not binding on the corporation *nor admissible as evidence against it*, unless they were acting at the time as its authorized agents and within the scope of their authority." *Id.* (emphasis added).

CSX does not dispute the validity of this principle of law. Instead, as NS pointed out, CSX has fully adopted this principle – withholding hundreds of emails communications on the grounds that communications between CSX in-house counsel and CSX employees who were also serving as NPBL board members are privileged. *See* Opening Br. 6. CSX confirms as much in its Opposition, arguing that it properly withheld these communications because the CSX employees involved were acting within the scope of their employment, and not as NPBL Board members. Opp. Br. 16 (noting that CSX produced communications when the CSX employees "were acting *in the scope of their duties as board members of NPBL*") (emphasis added). Thus, CSX essentially

concedes that it is precluded from eliciting testimony or arguing to the jury that the internal NS email communications CSX identified are admissible as evidence of a conspiracy between NS and NPBL solely because one of the participants also happened to be a member of the NPBL Board. *Id.* (arguing that the privilege is not abrogated just because an employee may serve as an agent of both his employer and a third party).[2]

The thrust of CSX's argument, instead, is that whether NS-appointed members of the NPBL Board were acting within the scope of their authority is a factual issue, as well as the subject of arguments made by NS in its Motion for Summary Judgment, and therefore not appropriate for determination on a motion in limine. CSX Opp., at 15. Despite having multiple opportunities to do so, however, CSX has not identified *any* evidence showing that the NPBL Board gave individual Board members authority to bind NPBL at all, let alone authority to take specific actions. And, as set forth above, CSX concedes, and in preparing its privilege log relies upon, the principle that there is no *per se* presumption that communications between NS and NS-appointed NPBL Board members are communications between NS and NPBL. Instead, the presumption goes the other way: the fact that an individual is a board member is not evidence that the board member is an agent of the corporation. Because CSX has no evidence that the NPBL Board cloaked any individual board member with authority to act individually for NPBL, CSX cannot lay the necessary foundation at trial to elicit testimony or argue that internal NS emails are evidence of conspiratorial communications or actions between NS and NPBL.

[2] For this reason, the email identified by CSX, which is solely between two employees of NS, neither of whom was on the NPBL Board, is inadmissible, particularly in the absence of any evidence that the letter referenced was ever sent. CSX Opp., at 15.

**B. <u>CSX's Argument that the Internal Communications are Admissible as Circumstantial Evidence Lacks Merit</u>.**

CSX argues that the internal emails between NS employees are admissible because they are "circumstantial evidence" of the alleged conspiracy between NS and NPBL. CSX Opp., at 14. This is untrue according to CSX's discovery responses, which identified these same internal communications as the purported *direct* evidence of the alleged conspiracy. CSX cannot now recharacterize these communications as "circumstantial evidence" to claim they are admissible.

CSX also contends that a document need not be a communication between NS and NPBL to be admissible as evidence that "Defendants 'positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan.'" *Id.* This is a circular argument. In essence, CSX argues that internal NS email communications – even though they are intracorporate communications – are evidence of a conspiracy to the extent they reflect that the parties "positively or tacitly" agreed to conspire. The "parties" tacitly agreeing *still* must be two separate entities – not one. To prove that there were two parties involved *still* requires CSX to show that the NS employees involved were acting as agents of NPBL and within their authority when engaging in the communications or actions alleged to be conspiratorial.

The case law cited by CSX does not hold otherwise. Neither case discusses the controlling legal principle set forth in *Monacan Hills* that individual directors do not act on behalf of a board of directors unless authorized to do so by the company. Rather, CSX cites to *Federal Ins. Co. v. LoCash*, 2:12cv504, 2014 WL 12588635, at *10 (E.D. Va. Feb. 18, 2014), and *Robertson v. Sea Pines Real Est. Cos.*, 679 F.2d 278, 289 (4th Cir. 2012), for the proposition that "[c]onspiracies are often tacit or unwritten in an effort to escape detection, thus necessitating resort to circumstantial evidence to suggest that an agreement took place." *Robertson,* 679 F.3d at 289–90.

This general principle does not change the analysis here: NS's internal communications are not evidence of conspiratorial communications *between NS and NPBL*.

**C. <u>CSX's Monopolization and Attempted Monopolization Claims are Not Relevant to NS's Motion in Limine</u>.**

NS specifically argued that CSX's four conspiracy claims, identified as Counts I, II, VIII and IX, require CSX to prove that NS conspired with another party, Opening Br. 2, and – as set forth above – that CSX should be precluded from arguing that specific identified internal emails between NS employees are evidence of conspiratorial communications. Put another way, NS seeks to prevent CSX from using these internal emails – which are communications between two NS employees – to prove the existence of a conspiratorial agreement between, or actions taken by, NS and NPBL.

NS did not mention Count III, CSX's Section 2 monopolization claim, or Count IV, CSX's attempted monopolization claim, both of which require *unilateral* action, not an agreement. Accordingly, CSX's reliance on these Counts to justify the admissibility of the internal communications misses the point.[3] Even if the internal NS communications could relate to CSX's

---

[3] CSX's ill-defined bases for attempting to admit single-actor evidence in support of an alleged conspiracy reflects the underlying conflict in its legal theories. CSX's Section 2 claims are inherently at odds with CSX's conspiracy claims, which require CSX to prove that NS conspired with NPBL. *See Buschi*, 775 F.2d at 1251 (noting that the law of conspiracy requires two separate entities; a corporation cannot conspire with itself). In contrast, Section 2's prohibitions on monopolization and attempted monopolization address *unilateral* conduct by a *single* firm. *See Oksanen v. Page Mem'l Hosp.*, 945 F.2d 696, 710 (4th Cir. 1991). CSX's monopolization and attempted monopolization claims in this case, however, necessarily rely on actions taken by another party, NPBL, through which CSX can (and has) accessed NIT. While NS contends that the Interstate Commerce Commission authorized its control of NPBL for purposes of 49 U.S.C. § 11321(a), CSX has argued that NS and NPBL are "separate legal entities, with separate economic interests, separate corporate purposes, and separate management". Pl.'s Opp. Def.'s Mot. to Dismiss 17, ECF No. 39. As NS argued on summary judgment, CSX cannot simultaneously press single-firm monopolization claims, which must be premised on NS's purported control of NPBL, along with Section 1 and common law conspiracy claims, which are premised on NS and NPBL being separate and distinct entities. *See, e.g., Midwest Gas Servs., Inc. v. Indiana Gas Co.,* 317

non-conspiracy claims, CSX must be precluded from arguing that the communications are also evidence of a conspiracy between NS and NPBL.

## CONCLUSION

For the reasons set forth above and in NS's opening memorandum, NS respectfully requests that this Court enter an order precluding Plaintiff CSX from eliciting testimony or arguing to a jury that internal NS communications are evidence of conspiratorial communications or actions between NS and NPBL.

Dated: September 23, 2022

Respectfully Submitted,

**NORFOLK SOUTHERN RAILWAY COMPANY**

/s/ *Alan D. Wingfield*
Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
Massie P. Cooper (VSB No. 82510)
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-6061
Email: alan.wingfield@troutman.com
Email: michael.lacy@troutman.com
Email: massie.cooper@troutman.com

John C. Lynch (VSB No. 39267)
Kathleen M. Knudsen (VSB No. 90845)
TROUTMAN PEPPER HAMILTON SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7500
Facsimile: (757) 687-7510
Email: john.lynch@troutman.com
Email: kathleen.knudsen@troutman.com

---

F.3d 703, 713 (7th Cir. 2003) (recognizing that plaintiff's Section 2 claims alleging co-defendant was "functionally under the control of [defendant]" were not proper where the court found entities to be "separate and distinct").

Tara L. Reinhart
Thomas R. Gentry
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7000
tara.reinhart@skadden.com
thomas.gentry@skadden.com

*Attorneys for Norfolk Southern Railway Company*

129920399