## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

| | | |
|---|---|---|
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-cv-530 |
| | ) | |
| NORFOLK SOUTHERN RAILWAY COMPANY, et. al., | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

### NORFOLK SOUTHERN RAILWAY COMPANY'S REPLY MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT ON CSX'S LOSS OF CUSTOMER CONTRACTS

Defendant Norfolk Southern Railway Company ("NS"), by counsel, submits this Reply Memorandum in Support of its Motion *in Limine* under Federal Rules of Evidence 703 and 802 ("Motion") [ECF No. 331] seeking to prohibit Plaintiff CSX Transportation, Inc. ("CSX") from:

(1) introducing at trial certain internal emails, declarations and testimony of CSX employees, and internal CSX documents (the "Hearsay Evidence") to prove the truth of the matter asserted – that ocean carriers have ever stated, directly or by implication, that CSX lost ocean carrier contracts due to Defendants' alleged conduct, and

(2) using its expert, Professor Howard P. Marvel, Ph.D. ("Prof. Marvel"), as a mouthpiece to introduce this Hearsay Evidence to the jury.

Having failed in its Opposition to identify any grounds supporting its admission, *see generally* Opp. Br., ECF No. 417, the Hearsay Evidence should be excluded.

### INTRODUCTION

In the Motion, NS showed that CSX has failed to identify direct evidence that a specific ocean carrier chose not to do business with CSX due to Defendants' alleged conduct, which,

according to CSX, prevents CSX from having on-dock rail access at NIT. *See generally* Opening Br., ECF No. 335. Indeed, CSX has *never* identified any non-hearsay statement from any ocean shipper supporting CSX's assertion that CSX lost business from an ocean shipper due to CSX's purported lack of on-dock rail access at NIT. CSX took no depositions of witnesses from any ocean carrier and failed to disclose any representative of an ocean carrier as a potential witness supporting its case at trial, despite the fact that its damages case depends wholly on the theory that CSX would have obtained contracts from ocean carriers if it had, in its view, better on-dock rail access to NIT.

Instead of competent witness testimony from an ocean carrier, CSX apparently intends to rely on two sources of proof to show causation and damages. First, it plans to rely on a statistical "regression analysis" from its expert, Prof. Marvel. Whether this regression analysis is admissible is for another day, and not addressed here.[1] It is CSX's second source that NS opposes here: CSX's Hearsay Evidence. This hearsay is identified by CSX specifically in its Memorandum in Opposition to NS's Motion for Summary Judgment (ECF No. 324) and in the Reply Report of Prof. Marvel, dated March 5, 2021. *See* Marvel Reply Report ¶¶ 27, 79 (Mot. Summ. J. Ex. 71, ECF No. 308-59). The evidence consists of internal emails, documents, and declarations of CSX's employees containing hearsay statements about what third-party ocean shippers may have said, or implied, including rumors and often double hearsay.

---

[1] NS is not arguing in this Motion that CSX cannot prove causation or damages by other means, including the regression analysis performed by Prof. Marvel. This Motion focuses on the improper disclosure of hearsay evidence to the jury to suggest that an ocean shipper ever expressed that it did not do business with CSX because of NS's alleged conduct, including through Prof. Marvel's testimony. The validity of Prof. Marvel's regression analysis and the admissibility of his opinions will be addressed in NS's forthcoming *Daubert* motion.

Specifically, NS asks this Court to rule that:

- The Hearsay Evidence is not admissible under any circumstances, including to prove the truth of the matter asserted, *i.e.*, that CSX lost specific ocean carrier contracts due to Defendants' conduct, which prevents CSX from having on-dock rail access at NIT;

- CSX's counsel and witnesses cannot state to the jury, in opening statement, closing argument, direct examination or otherwise, that ocean carriers have ever stated that CSX lost business because of Defendants' conduct and/or CSX's perceived lack of on-dock rail access at NIT; and

- Prof. Marvel cannot make any reference, expressly or by implication, that any ocean carrier has actually stated that it denied CSX business because of CSX's alleged lack of on-dock rail access at NIT, so as to prevent CSX from using Prof. Marvel as a backdoor to admit the Hearsay Evidence.

In its Opposition Brief, CSX makes the vague and generalized argument that certain internal emails potentially could be admissible, perhaps for other purposes, and that the Court therefore should make these determinations at trial. *See* Opp. Br. 8-9. But CSX is unable to point to any specific piece of evidence that is not hearsay. Nor can CSX identify any exception to the hearsay rule that would permit the introduction of the Hearsay Evidence, thus making that evidence inadmissible. On the other hand, leaving these matters to be resolved at trial opens the door, for example, for CSX to suggest in its opening statement that evidence exists supporting its assertions, and allows Prof. Marvel to claim the existence of the Hearsay Evidence in the presence of the jury, even if, at the end of the day, no evidence supporting the assertions is actually introduced. CSX should be instructed – before trial – that the Hearsay Evidence is inadmissible to avoid the prejudicial effect of CSX referring to the Hearsay Evidence in any way.

CSX concludes its opposition with yet another vague and boilerplate argument – that Prof. Marvel is permitted to rely on inadmissible hearsay in rendering his opinion. *See* Opp. Br. 11-13. This unremarkable contention obfuscates the point NS made in its opening memorandum: CSX cannot offer Prof. Marvel's testimony simply as a conduit for regurgitating inadmissible hearsay. Rule 703 "was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005). Prof. Marvel's testimony is limited to explaining his opinions, based on his independent judgment and a reliable methodology. The details of the record that he relies upon does not go to the essence of his opinions, and the usual approach to hearsay evidence relied upon by an expert is either to find an independent basis for its admission, or to preclude the expert from disclosing the content of the evidence except, and to the extent, the expert is cross-examined about the evidence. CSX apparently concedes these principles. *See* Opp. Br. 12-13.

Because the Hearsay Evidence is inadmissible, including through Prof. Marvel, CSX should be prohibited from telling the jury that the ocean carriers have ever said that CSX lost ocean carrier contracts due to NS's conduct. Any such statement is inappropriate unless and until CSX can lay a foundation for – and introduce – some *admissible* evidence supporting that contention.

## ARGUMENT

### A. The Hearsay Evidence is Inadmissible.

CSX concedes that it has no direct evidence or witness who will testify that any ocean carrier ever expressed that it did not contract with CSX as a result of NS's actions. Moreover, CSX does not plausibly contend that the documents relied on by CSX and Prof. Marvel are not

4

hearsay. The Hearsay Evidence consists of internal CSX email communications,[2] the Declarations of CSX employees Carl Warren and Robert Girardot,[3] and deposition testimony from CSX employees. *See* Opening Br. 5-6 (identifying exhibits to CSX's Opposition to NS's Motion for Summary Judgment). Hearsay is any oral or written statement offered into evidence through the testimony of someone other than the declarant to prove the truth of the matter asserted in the statement unless the assertion is made by a party opponent or is a prior statement by a witness under oath. Fed. R. Evid. 801(c); *Quesenberry v. Volvo Group N. Am., Inc.*, 267 F.R.D. 475, 482 (W.D. Va. 2010). CSX employee testimony about statements made by third-party ocean carriers that are offered to prove the truth of the statements – *i.e.*, that the ocean carriers chose NS over CSX due to NPBL's $210 tariff rate – is hearsay.

CSX argues that one email chain, attached as Exhibit 115 to CSX's Opposition to NS's Motion for Summary Judgment, is admissible. *See* Opp. Br. 9. CSX asserts that the email from Travis Hill of Virginia International Terminals ("VIT") to Robert Girardot is not hearsay because it contains a question, not a statement. *Id.* But a review of the email shows that Mr. Hill's actual statement *does not* include a question. Instead, the email merely states that Mr. Hill was "contacted by OOCL about our capabilities to handle CSX rail at each of our facilities." This is a statement – "I was contacted by OOCL" – that is offered for the truth of that statement to try to support the assertion that CSX's lack of on-dock access at NIT ultimately led to CSX failing to win OOCL's

---

[2] These documents are identified in Paragraph 27 of the Reply Report, as well as Paragraph 68 of Prof. Marvel's original expert report. Exhibit 7 to NS's Motion for Summary Judgment, ECF No. 308-3. Prof. Marvel also identifies the "account notes" addressing a "rumor that our rates were better but we did not have a good NIT solution." Those notes are attached as Exhibit 116 to CSX's Memorandum in Opposition to NS's Motion for Summary Judgment ("CSX Opp. to SJ")

[3] The Declaration of Robert Girardot is attached as Exhibit 53 to the CSX Opp. to SJ, and the Declaration of Carl Warren as Exhibit 94.

business. Only in an alternative universe could this email be considered a question. *See* 4 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence, § 8.6, at 57 (4th ed. 2013) ("For purposes of the hearsay doctrine [] the term 'assertion' or 'statement' includes questions and imperatives that express or communicate facts or information about acts, events, or conditions in the world."); *United States v. Lewis*, 902 F.2d 1176, 1179 (5th Cir. 1990) (observing that rationale for excluding questions from the hearsay rule is that they do not assert anything).[4] Because Mr. Hill's email unquestionably is an assertion, it is hearsay. Fed. R. Evid. 801(a), (c). Moreover, Mr. Hill is a VIT employee, making this email chain double hearsay. In other words, Mr. Hill – an outsider to CSX – is relaying to CSX a statement made by yet another outsider, an unidentified person at OOCL. Each level of hearsay must meet a hearsay exception to be admissible. *Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187, 195 (4th Cir. 2003). CSX's argument that this email chain is not hearsay is meritless.

In short, CSX fails to make any colorable argument that the Hearsay Evidence that CSX relies on to demonstrate a loss of specific customer contracts is anything other than hearsay.[5]

---

[4] *United States v. Sinclair*, 301 Fed. Appx. 251, 253 (4th Cir. 2008) cited by CSX, is simply inapplicable. There the alleged hearsay involved indisputably was a question – "what happened, Derrell, what happened, tell me what happen." Unlike the statement at issue here, this is a question that does not assert anything.

[5] CSX asserts that Mr. Eliasson's testimony concerning his "understanding" of CSX's market share of the intermodal market is admissible because it is based on his first-hand knowledge. Opp. Br. 9 n.1. But to the extent Mr. Eliasson's "understanding" is based on conversations with ocean carriers or with other employees of CSX who communicated with ocean carriers, it is hearsay and not admissible. CSX cannot use Mr. Eliasson's "understanding" of CSX's market share as a back door to admit inadmissible hearsay.

### B. CSX Fails to Identify any Hearsay Exception Supporting Admission of the Hearsay Evidence for any Purpose Other than the Truth of the Matter Asserted.

Hearsay is not admissible unless the proponent can show that it falls under a hearsay exception. Fed. R. Evid. 802; *see also Rambus, Inc. v. Infineon Techs. AG*, 222 F.R.D. 101, 105 (E.D. Va. 2004). Realizing that the Hearsay Evidence on which it relies is, in fact, hearsay, CSX argues that the documents should be admitted under exceptions to the hearsay rule. Opp. Br. 9-10. But the exceptions CSX identifies simply are not applicable.

CSX first asserts that the evidence may be admissible for other purposes than to show the truth of the matter – *i.e.*, that an ocean carrier ever said that CSX lost specific customer contracts as a result of NS's conduct. Opp. Br. 10. Specifically, CSX contends that statements pertaining to conversations between VIT and CSX regarding ocean carriers' inquiries about drayage may demonstrate knowledge on the part of CSX and VIT that ocean carriers were skeptical about drayage as a substitute to rail access. *Id.* To be admissible, however, the evidence must be relevant for some purpose other than the truth of the matter. Fed. R. Evid 402 (irrelevant evidence is not admissible). Here, CSX claims the evidence is relevant to "market definition" and to whether drayage is an adequate substitute to on-dock rail. *Id.* But these "market" issues are *objective*; they do not depend on CSX's self-serving spin on these third-party emails.

An assessment of the relevant market for CSX's antitrust case – including whether drayage is an adequate substitute for rail – is an objective inquiry, not one that depends on CSX's or VIT's views on or subjective perception of the subject. *In re Ebay Seller Antitrust Litig.*, No. C09-0735AJ, 2009 U.S. Dist. LEXIS 146473, at *8–9 (W.D. Wash. Aug. 17, 2009); *ACT, Inc. v. Sylvan Learning Sys., Inc.*, Misc. No. 99-63, 1999 U.S. Dist. LEXIS 7055, at *9 (E.D. Pa. May 14, 1999) (noting that subpoena issuer offered no "argument for why [a non-party competitor's] 'perspective' on the market in particular [was] relevant or necessary" to its claims); *see Hornsby*

7

*Oil Co. v. Champion Spark Plug Co.*, 714 F.2d 1384, 1393 (5th Cir. 1983) (noting market considerations provide the *objective* benchmarks for ascertaining the existence of a Section 1 violation). Moreover, Rule 803(3) does not permit the introduction of "state of mind" evidence to prove the fact believed, which is what CSX attempts to do here. *See First Data Merch. Servs. Corp. v. SecurityMetrics, Inc.*, 672 Fed. Appx. 229, 237 (4th Cir. 2016).

CSX also makes an off-hand reference to the business records exception to the hearsay rule, apparently contending that the email communications identified by Prof. Marvel are "business records" and therefore automatically admissible at the trial of this case. *See* Opp. Br. 9.[6] The business records exception, however, cannot rescue CSX. Even if the emails themselves are business records, they present the issue of "double hearsay" or "hearsay within hearsay." "Although the 'outer hearsay' of the email at issue may be admissible under the business records exception, the 'inner hearsay' of information provided by an outsider to the business preparing the record must likewise fall under a hearsay exception to be admissible." *In re Oil Rig "Deepwater Horizon"*, MDL No. 2179 SECTION J(1), 2012 U.S. Dist. LEXIS 3406, at *17–18 (E.D. La. Jan. 11, 2012). For the reasons NS has articulated in its opening brief and herein, statements made by third-party ocean carriers to CSX or VIT in emails are hearsay (regardless of the status of the emails themselves), and there is no exception allowing their admission at trial.

Seeking to avoid the inevitable conclusion that the Hearsay Evidence is inadmissible, CSX resorts to arguing in vague terms that it "need not detail the admissibility for each piece of evidence." Opp. Br. 10. But the proponent of evidence bears the burden to establish its admissibility. *United States v. Shah*, 125 F. Supp. 3d 570, 574 (E.D.N.C. 2015). CSX cannot

---

[6] CSX apparently admits that declarations of its employees prepared for use in this case, as well as deposition testimony, are not "business records." *Id.*

simply punt the issue down the road on the basis that some other unspecified rationale may exist for the admission of the Hearsay Evidence. *See, e.g.*, *Ellis v. Navarro*, No. 07-C5126, 2012 U.S. Dist. LEXIS 116491, at *12 (N.D. Cal. Aug. 17, 2012) (granting motion *in limine* when party failed to provide any specific basis for admitting the evidence); *McComas v. Miller*, No. 3:13-14953, 2014 U.S. Dist. LEXIS 157609, at *22 (S.D. W. Va. Nov. 7, 2014) (noting that without a legal basis to admit the evidence, motion in *limine* must be granted). Because CSX can point to no possible basis for the admission of the Hearsay Evidence, it must be excluded. *United States v. Gibson*, No. 2:17cr126, 2018 U.S. Dist. LEXIS 173850, at *5–6 (E.D. Va. Oct. 9, 2018).

**C.**     **CSX Cannot Use Professor Marvel as a Vehicle to Introduce Inadmissible Hearsay.**

CSX makes no effort to contest the points NS made in its Opening Brief, namely that Prof. Marvel cannot simply act as CSX's mouthpiece to regurgitate inadmissible hearsay. Opening Br. 7-9. Instead, CSX makes the rather unremarkable argument that an expert is permitted to rely on hearsay evidence in forming his opinion. Opp. Br. 11-12. That much is evident from Rule 703, but it does not address the substantive argument made by NS. *Loeffler Steel Prods.*, 397 F. Supp. 2d at 808 ("It is no answer to say that since Rule 703 allows an expert to base an opinion on inadmissible evidence, [the expert] must be allowed to testify, even though the information on which he relied came from the defendants."). Rule 703 provides as follows:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.[7]

---

[7] On cross examination, however, the opposing party may question the witness about the otherwise inadmissible evidence he relies on in forming his opinion. *See Howard v. Walker*, 406 F.3d 114,

9

Courts, therefore, must serve a gate-keeping function with respect to Rule 703 opinions to ensure "the expert isn't being used as a vehicle for circumventing the rules of evidence." *In re James Wilson Assocs.*, 965 F.2d 160, 173 (7th Cir. 1992); *see Marvel Characters Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) ("[A] party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." (citation omitted)); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19md 2885, 2021 U.S. Dist. LEXIS 34852, at *13 (N.D. Fla. Feb. 11, 2021) ("[T]hese portions of the parties' experts' opinions 'do not bring their expertise to bear' because they are based on inferences that 'are by and large undergirded by hearsay statements.'") (quoting *Marvel Characters*, 726 F.3d at 136); s*ee also United States v. Pablo*, 696 F.3d 1280, 1288 (10th Cir. 2012) ("If an expert simply parrots another individual's out-of-court statement, rather than conveying an independent judgment that only incidentally discloses the statement to assist the jury in evaluating the expert's opinion, then . . . the expert thereby becomes little more than a backdoor conduit for an otherwise inadmissible statement."). Rule 703 "was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." *Loeffel Steel Prods*, 387 F. Supp. 2d at 808 (holding that the rule "was never intended to allow oblique evasions of the hearsay rule").

As the Court noted in *Loeffel Steel*, "the example posed by Judge Posner in *James Wilson Associates* demonstrates the problem with [Prof. Marvel's expected] testimony:

> 'If, for example, the expert witness (call him A) bases his opinion in part on a fact (call it X) that the parties lawyer told him, the lawyer cannot in closing argument, tell the jury, 'see we proved X through our expert witness A.'

---

126–27 (2d Cir. 2005) (noting that experts generally may testify as to opinions based on hearsay when defendant cross-examines the expert about the reliance).

10

*Id.* at 809 (quoting *In re James Williams Associates*, 965 F.2d at 173). This is precisely the issue addressed by NS's Motion. Prof. Marvel should be prohibited from acting as the mouthpiece for CSX witnesses to restate inadmissible hearsay claims that CSX lost contracts as a result of NS's conduct. And CSX should be prohibited from arguing to the jury that the mere fact that Prof. Marvel relied on the Hearsay Evidence is itself proof that CSX lost specific ocean carrier contracts. CSX must lay the foundation for, and independently gain admission of, some evidence – if it exists – to prove that fact.

Finally, CSX fails entirely to refute NS's argument that the probative value of the Hearsay Evidence substantially outweighs the prejudicial effect of admitting the evidence, a requirement to admit evidence under Rule 703. *See* Fed. R. Evid. 703. The Hearsay Evidence is, at best, speculation with little to no probative value. Moreover, it would be highly prejudicial to NS to permit CSX to argue, based on hearsay and speculation, that NS's actions caused CSX to lose specific ocean carrier business. That is a bell that cannot be un-rung once CSX has presented it to a jury. CSX does not argue otherwise. In short, CSX should not be permitted to use Prof. Marvel to introduce inadmissible hearsay evidence in the guise of expert opinion.

## CONCLUSION

For the reasons set forth above and in NS's opening memorandum, NS respectfully requests that this Court enter an order precluding Plaintiff CSX from offering the Hearsay Evidence at the trial of this case, including by using Prof. Marvel as conduit to put the Hearsay Evidence before the jury. NS further requests that the Court preclude CSX's counsel and witnesses from stating before the jury that any ocean carrier has expressed, directly or by implication, that CSX has been denied any business because CSX lacks on-dock rail access at NIT.

Dated:  September 23, 2022

Respectfully Submitted,

**NORFOLK SOUTHERN RAILWAY COMPANY**

/s/ *Alan D. Wingfield*
Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
Massie P. Cooper (VSB No. 82510)
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-6061
Email: alan.wingfield@troutman.com
Email: michael.lacy@troutman.com
Email: massie.cooper@troutman.com

John C. Lynch (VSB No. 39267)
Kathleen M. Knudsen (VSB No. 90845)
TROUTMAN PEPPER HAMILTON SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA  23462
Telephone: (757) 687-7500
Facsimile: (757) 687-7510
Email: john.lynch@troutman.com
Email: kathleen.knudsen@troutman.com
Tara L. Reinhart
Thomas R. Gentry
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7000
tara.reinhart@skadden.com
thomas.gentry@skadden.com

*Attorneys for Norfolk Southern Railway Company*

129777006