UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-cv-530 |
| | ) | |
| NORFOLK SOUTHERN RAILWAY | ) | |
| COMPANY, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**NORFOLK SOUTHERN RAILWAY COMPANY'S REPLY
IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE EVIDENCE AND
ARGUMENT THAT NPBL'S SWITCH RATE IS UNREASONABLE**

Defendant Norfolk Southern Railway Company ("NS"), by counsel, submits this Reply in

Support of its Motion in Limine under Federal Rule of Evidence 402 seeking to prohibit Plaintiff

CSX Transportation, Inc. ("CSX") ("Motion") [ECF No. 329] from offering at trial any evidence

or argument that the $210 line haul switch rate (the "switch rate") charged by the Norfolk and

Portsmouth Belt Line Railroad Company ("NPBL") is unreasonable, "prohibitively expensive,"

"excessive," or "exorbitant."[1]

**ARGUMENT**

This evidence and argument should be excluded because any claim that the switch rate is

unreasonable is within the primary jurisdiction of the Surface Transportation Board ("STB") to

determine whether a railroad rate is unreasonable, rendering any such evidence and argument in

Court improper, irrelevant, and prejudicial to this case. *See generally* Opening Br., ECF No. 330;

---

[1] Throughout this brief, for the sake of brevity and clarity, NS will use the word "reasonable" to
refer to all pejorative adjectives regarding the amount of NPBL's switch rate, including the terms
"prohibitively expensive," "excessive," "exorbitant," and so forth.

*Burlington N. v. United State*s, 459 U.S. 131, 141 (1982); *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1965) (noting that "tariff construction, as well as that of the reasonableness of the tariff as applied, [is] within the exclusive primary jurisdiction of the [STB]"); 49 U.S.C. § 10707 (authorizing the STB to handle claims that a rate is "unreasonably high").  Indeed, in its opposition brief, CSX did not dispute that the STB has the primary jurisdiction (1) to adjudicate whether the switch rate is unreasonable and (2) to make any changes to the rate, if challenged.  *See* Opp. Br. 4-7, ECF No. 417.

In its opposition brief, CSX also did not dispute that its contention that NPBL's $210 switch rate is unreasonable is foundational to all of its claims in this case.  *See id.*  Put another way, under CSX's theory, if CSX wins a verdict in its favor in this case, to a large degree that verdict will be premised on CSX's repeated contention that NPBL's switch rate is unreasonable.

The law provides a very clear procedure for someone to challenge a railroad's rate as being unreasonable: the person challenging the rate should go *first* to the STB to obtain an adjudication whether the rate is unreasonable, and *then* pursue other claims in court that the plaintiff claims flow from that determination.  *Chi., Rock Island & Pac. R.R. Co. v. Furniture Forwarders of St. Louis, Inc*., 420 F.2d 385, 388 (8th Cir. 1970) (citation and quotation marks omitted) ("Whenever a rate, rule, or practice is attacked as unreasonable or as unjustly discriminatory, there must be preliminary resort to the [STB].").  Indeed, this Court has recognized that CSX had a right, as early as 2010, to dispute the rate with the STB, but has chosen not to do so.  *See* Op. & Order 26 n.16, ECF No. 395.

In an epic example of putting the cart before the horse, CSX here *first* wishes to obtain antitrust judgment based on the ***allegation*** that the NPBL's switch rate is unreasonable*,* and *then* leave it to the STB, perhaps, to make an actual determination what a reasonable rate would be.

*But what if the STB finds that the $210 is reasonable all along?*  The judgment of this Court and

the STB would conflict, which can only yield high-stakes legal chaos.  No conflict would arise, in

contrast, if CSX followed the proper procedure by *first* seeking a determination that the NPBL's

switch rate was unreasonable from the STB, and *then*, if the STB found the rate to be unreasonable,

alleging claims in this Court based on that determination.  If CSX had followed this order of

operations, the STB's determination on the reasonableness of the NPBL switch rate could be taken

as a given by the Court, and CSX's claims adjudicated in light of that determination.

As the Court previously observed, "CSX *could* have pursued a legal challenge to the

reasonableness of the Belt Line switching rate in a proceeding before the STB for almost ten years

before it filed suit, as the currently-in-place switching rate was established in 2009 and disputed

by CSX as early as 2010."  *See* Op. & Order 26 n.16, ECF No. 395 (emphasis added).  But CSX

chose *not* to follow the procedure dictated by statute and legal precedent.

Recognizing the improper order of operations that CSX was pursuing for its claims, NS

flagged the issue for the Court's attention with a request that any issue regarding the

reasonableness of the NPBL switch rate be referred to the STB as it alone has exclusive jurisdiction

to determine whether a railroad rate is reasonable.  *See* Mot. to Refer Opening Br. 15-22, ECF No.

116.  Despite the STB's indisputable expertise and legal jurisdiction over all questions involving

railroad rate reasonableness, CSX opposed the Court seeking a determination from the STB on

whether NPBL's switch rate was unreasonable.  *See* Mot. to Refer Opp. Br. 22-25, ECF No. 131.

Cognizant of CSX's position that it did not *want* a determination from the STB on the

reasonableness of NPBL's switch rate, the Court declined to refer the issue to the STB.  Op. &

Order 29, ECF No. 395.  In doing so, the Court noted that, in declining to refer the reasonableness

of the rate to the STB, it was *not* making any determination regarding the consequences to CSX

for its failure to obtain a determination from the STB that the rate was unreasonable. *See id.* at 28 (recognizing that declining to refer to the STB was "not tantamount to a finding that this Court has the authority to decide such a rate"). In accordance with the Court's statements in its Opinion and Order, the time has come to assess the consequences of CSX's failure to obtain a determination by the STB that NPBL's rate is unreasonable. And that consequence is the necessity of excluding the reasonable rate issue from the trial.

Quite simply, CSX had two options: 1) obtain a determination from the STB that the NPBL's switch rate was unreasonable and pursue claims premised on the STB's determination, or 2) choose not to go before the STB on the reasonableness of NPBL's rate and pursue claims without the ability to claim that NPBL's switch rate is unreasonable. Despite more than 10 years and a motion from NS seeking referral to the STB, CSX unequivocally chose the second option.[2]

Given CSX's failure to move forward with the STB, **the only solution that respects the STB's exclusive jurisdiction but allows this case to go forward without an STB adjudication is to strip out of this case CSX's contention that the $210 switch rate is unreasonable**. CSX decided not to challenge the switch rate in 2010 or ever before the STB. Then CSX decided to file a lawsuit embedding in it, as a fundamental linchpin of its arguments, the contention that the $210 switch rate was unreasonable. It decided at every turn to resist NS's motion to refer the reasonable rate issue to the STB. Presuming that CSX's tattered remainder of a case survives summary

---

[2] There may be some confusion between CSX's failure to challenge the NPBL's $210 switch rate before the STB and NS's adverse STB proceeding against NPBL over trackage rights fees. *Cf.* Mem. Op. 27, ECF No. 395 (stating that "a separate rate-setting proceeding before the STB has already been initiated" but failing to differentiate that the pending STB rate proceeding is not about the reasonableness of *NPBL's switch rate* but about *NS's trackage rights fees* – **two entirely different fees charged by different railroads**). While a determination by the STB that NS can increase its trackage rights fees could impact NPBL's switch rate because NPBL's cost per car would increase, this is entirely different from CSX challenging NPBL's switch rate, which it has never done before the STB.

judgment, CSX can go forward with its antitrust and state law claims on the scheduled trial date but, at trial, it *cannot* assert that NPBL's switch rate is unreasonable. It has opted out of this argument. Actions have consequences, and the logical end to CSX's positioning is that it cannot have a trial in this Court on claims supported by its argument that the $210 rate is unreasonable.

CSX may bemoan the delay that would have resulted from the STB-first procedure in an attempt to excuse it from the effects of its failure to follow the proper procedure. But it was CSX that waited nine years between the setting of the $210 rate in 2009 (ironically with CSX board members concurrence) and taking any legal action to challenge the rate. If CSX had acted promptly to seek STB review in 2010 when it first started complaining, the rate issue may well have been long ago resolved. If the STB had found CSX was entitled to a lower rate, it could be enjoying that rate right now, rather than being stuck in a legal quagmire of its own making.

In its opposition, CSX also tries to make much of the importance of its challenge to the reasonableness of the tariff rate, suggesting that it should be allowed to make the arguments because they are foundational to other elements of its case. *See* Opp. Br. 6. This is exactly the problem. CSX argues that the evidence is relevant and probative to the ultimate claims because (1) an unreasonable switch rate shows that NS had the *intent* to exclude CSX from competition at Norfolk International Terminals ("NIT"), and (2) an unreasonable switch rate *caused* CSX to actually be precluded from competition at NIT. *Id.* Both arguments, however, graphically illustrate how central CSX has made its fundamental argument that NPBL's switch rate is, in fact, unreasonable. CSX's assertion of the *importance* of the evidence and argument is only further admission that its case here *is* based on its contention that NPBL's $210 switch rate is unreasonable, which must be determined by the STB in the first instance – no matter its importance to other elements of CSX's claims like intent and causation.

Finally, CSX commits a strawman fallacy by arguing that NS's Motion should be denied because CSX should be able to introduce evidence of the reasonableness of the *alternative* switch rates that it proposed to the NPBL. This is utterly irrelevant to NS's Motion. Nowhere in NS's Motion did NS argue that CSX could not put forward evidence or argument about *its own rate proposals* to the NPBL. CSX, however, cannot offer evidence or argument at trial that the *$210 switch rate* is unreasonable.

Because it is indisputable that the jury *cannot* decide that NPBL's switch rate is unreasonable, any argument and evidence that CSX would offer to support its allegations that the NPBL's switch rate is unreasonable would be irrelevant because it goes to an issue outside the scope of this case. It, therefore, lacks any probative value and should be excluded as irrelevant under Rule 402. Moreover, allowing CSX to use pejorative adjectives to describe NPBL's switch rate (*i.e.*, "NPBL's switch rate is unreasonable and exorbitant.") when the reasonableness of NPBL's switch rate *has not* been decided by the STB and *cannot* be decided by the jury would be unfairly prejudicial to NS and create a risk of misleading the jury. Hence, this argument and evidence should also be excluded under Rule 403.

## CONCLUSION

For the foregoing reasons and those stated in NS's opening brief, NS respectfully requests an order prohibiting CSX from offering at trial any evidence, argument, or statement that the amount of NPBL's $210 switch rate is "prohibitively expensive," "excessive," "exorbitant," "unreasonable," or any similar adjective.

Dated: September 23, 2022

Respectfully submitted,

**NORFOLK SOUTHERN RAILWAY COMPANY**

/s/ *Alan D. Wingfield*
Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
Massie P. Cooper (VSB No. 82510)
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-6061
Email: alan.wingfield@troutman.com
Email: michael.lacy@troutman.com
Email: massie.cooper@troutman.com

John C. Lynch (VSB No. 39267)
Kathleen M. Knudsen (VSB No. 90845)
TROUTMAN PEPPER HAMILTON SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA  23462
Telephone: (757) 687-7500
Facsimile: (757) 687-7510
Email: john.lynch@troutman.com
Email: kathleen.knudsen@troutman.com

Tara L. Reinhart
Thomas R. Gentry
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7000
tara.reinhart@skadden.com
thomas.gentry@skadden.com

*Attorneys for Norfolk Southern Railway Company*

129739067