IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CSX TRANSPORTATION, INC.,
individually and on behalf of NORFOLK
& PORTSMOUTH BELT LINE
RAILROAD COMPANY,

      Plaintiff,

v.                                                                                  Civil Action No. 2:18-cv-530-MSD-RJK

NORFOLK SOUTHERN RAILWAY
COMPANY, *et al.*,

      Defendants.
_____/

PLAINTIFF CSX TRANSPORTATION, INC.'S REPLY
IN SUPPORT OF ITS MOTION TO EXCLUDE THOMAS D. CROWLEY

Plaintiff CSX Transportation, Inc. ("CSX") replies as follows in support of its Motion to Exclude Thomas D. Crowley, the expert witness proffered by Defendant Norfolk and Portsmouth Beltline Railway's ("NPBL" or the "Belt Line") ("Motion") (ECF No. 376):

INTRODUCTION

CSX has moved to exclude the opinions of NPBL's proffered expert Thomas D. Crowley for three main reasons. First, Mr. Crowley articulates no coherent methodology within the scope of his expertise used to assess the reasonableness of NPBL's rate. Second, Mr. Crowley fails to reliably apply his purported methods to the facts here, instead relying on unjustified assumptions and ignoring key evidence that contradicts his position. Third, Mr. Crowley's "opinions" ultimately amount to nothing but simple arithmetic and recitation of NPBL's slanted view of the record evidence—neither of which will help the jury decide any issue relevant to CSX's antitrust and conspiracy claims.

1

NPBL skirts these issues in its Opposition (ECF No. 428), focusing largely on disputing arguments CSX did not make rather than defending Mr. Crowley's unreliable methods and unhelpful opinions. For example, NPBL defends Mr. Crowley's rate opinions by insisting that CSX has challenged his failure to "apply a variable costing model used in certain STB rate proceedings." Opp. at 6. But CSX *agrees* that the STB's formulas do not apply here. The problem is that, bereft of the STB standard with which he is familiar, Mr. Crowley identifies no coherent, accepted alternative methodology to evaluate the reasonableness of NPBL's rate. NPBL points to nothing suggesting that Mr. Crowley's purported "costing methodology" is appropriate in this context—much less that he reliably applied this "methodology" to the facts of this case. Indeed, NPBL does not grapple with the fact that Mr. Crowley disregarded variable costs in assessing the Belt Line's rate, even though he admits those costs are relevant to his proffered analysis. Nor does NPBL justify Mr. Crowley's flawed assumptions or failure to consider undisputed record evidence bearing on his assessment. Mr. Crowley's inability to articulate any coherent methodology or apply it reliably to the relevant facts renders his opinion inadmissible under Rule 702.

NPBL also does not dispute that Mr. Crowley's opinion about NPBL's rate is based on "simple" arithmetic. As CSX has explained, this basic math is well within the knowledge and experience of the average juror, so Mr. Crowley's opinions will not help the trier of fact. NPBL's only retort on this point is that Mr. Crowley's rudimentary calculations are just one component of his overall opinion about the reasonableness of NPBL's rate, which also includes his "opinions" on certain "historical background." But Mr. Crowley cannot offer as expert opinions his biased view of disputed evidence or his (incorrect) legal conclusions about the parties' rights and obligations under relevant agreements.

NPBL's arguments about Mr. Crowley's unhelpful and speculative drayage opinion fare no better. Although NPBL claims that Mr. Crowley considered "operational" issues when comparing the cost of drayage to the cost of on-dock rail, it does not defend his failure to address the specific operational issues documented in the record, such as capacity limitations and local regulations. Moreover, NPBL cannot bolster Mr. Crowley's simple arithmetic by arguing about the degree to which market substitutes must be interchangeable for purposes of CSX's antitrust claims. Mr. Crowley did not conduct the economic analysis necessary to assess interchangeability or establish the relevant antitrust market—nor would he have been qualified to do so. Without any such analysis, Mr. Crowley's drayage opinion boils down to basic math that will not help the trier of fact.

At bottom, NPBL has failed to establish that Mr. Crowley's testimony "rests on a reliable foundation and is relevant to the task at hand," as required for admission under Rule 702 of the Federal Rules of Evidence. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). As a result, the Court should exclude Mr. Crowley's opinions.

## **ARGUMENT**

The applicable legal standard is not in dispute. NPBL and CSX agree that, under Rule 702 of the Federal Rules of Evidence, an expert witness must be "qualified as an expert by knowledge, skill, experience, training, or education" before he may offer an opinion. *See* Mot. at 5; Opp. at 3. The parties also agree that district courts, as "gatekeepers" for the admission of expert testimony, must ensure that an expert's testimony "both rests on a reliable foundation and is relevant to the task at hand." Mot. at 5 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *see also* Opp. at 3 ("The 'objective of [the gatekeeping] requirement is to ensure the reliability and relevance of expert testimony.'") (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). This requires the district court to ensure that an expert "employs in the courtroom the

3

same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Valador, Inc. v. HTC Corp.*, 242 F. Supp. 3d 448, 456 (E.D. Va. 2017) (citations omitted); *see also Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999) (explaining that, before admitting expert testimony, the district court must determine that "the reasoning or methodology underlying the expert's proffered opinion is reliable—that is, [that] it is supported by adequate validation to render it trustworthy").

### I. Mr. Crowley's unreliable rate analysis lacks an accepted methodology or reliable basis and also improperly repeats contradicted hearsay as expert opinion.

NPBL contends that Mr. Crowley's opinions are based on his "vast and varied experience as an economic consultant in the railroad industry." *See* Opp. at 3-4. Yet it admits that Mr. Crowley's experience assessing the reasonableness of rail *rates*—the issue on which he opines in this case—comes from his work applying defined formulas applicable to proceedings before the Surface Transportation Board ("STB"). *See* Mot. at 7; Opp. at 3-4 (Mr. Crowley's analysis of rates "often ends up before the STB"); *see also* Mot. Ex. B at 218:13-219:4 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓), 230:22-231:8 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓). As Mr. Crowley admits, the STB's defined "reasonableness" formula does not apply here, and he did not apply or consider it when forming his proffered opinions. *See* Mot. Ex. B at 56:15-57:4 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓); 58:12-16 (same). But Mr. Crowley fails to articulate what accepted alternative methodology he *did* apply, much less why this analysis would help the trier of fact. As a result, Mr. Crowley's opinions are unreliable and unhelpful, and they should be excluded under Rule 702 and *Daubert*.

4

### A. Mr. Crowley's rate analysis is not premised on any accepted methodology in which he has sufficient expertise.

CSX contends that Mr. Crowley's analysis of NPBL's rate is not sufficiently reliable to be admissible under Rule 702 because he fails to articulate and apply any coherent, accepted methodology in which he has sufficient expertise. *See* Mot. at 7-8. NPBL largely misconstrues these arguments rather than rebutting them.

NPBL first claims that CSX criticizes Mr. Crowley's rate analysis because he failed to "apply a variable costing model used in certain STB proceedings." *See* Opp. at 6. To be clear, CSX *agrees* that its antitrust and state law claims do not turn on whether NPBL's rate is "reasonable" under the STB's formula for calculating rate reasonableness. *See* Mot. at 12-13; *see also* ECF No. 395 at 27 (this Court noting that CSX's claims do not depend on "determination of whether the 'switching rate' charged by Belt Line is 'reasonable'"). That is the point. Mr. Crowley's proffered expertise is in evaluating rail rates under inapplicable STB standards. He acknowledges that he did *not* apply this methodology to reach his opinions in this case, but he fails to articulate what accepted alternative method he used evaluate NPBL's rate—much less explain how that method is connected to his professional experience assessing rates in proceedings before the STB.[1]

NPBL does not argue that the STB's defined formula and methodology is relevant or admissible in this case; to the contrary, NPBL appears to agree with CSX that the STB's formula is a "red herring." *See* Opp. at 4 ("By CSXT's own admission, [Mr. Crowley's failure to apply] the STB formula is a red herring, not a disqualifier."); *see also id.* at 6 ("Yet CSXT's argument is belied by its concession . . . that an STB formula does not apply to this case."). But NPBL, like

---

[1] Mr. Crowley has no professional experience undertaking the economic analyses required to assess the anticompetitive conduct at issue here. *See* Mot. Ex. B. at Statement of Qualifications; Ex. A at 97:12-98:1.

5

Mr. Crowley, fails to adequately explain what alternative methodology he *does* apply.  As CSX has explained, that Mr. Crowley may be qualified to offer expert testimony as to whether NPBL's rate would be "reasonable" under the STB's defined formula does not qualify him to opine about the reasonableness of NPBL's rate under some other standard.  *See Wood v. Credit One Bank*, 277 F. Supp. 3d 821, 857-58 (E.D. Va. 2017) (finding that an expert's qualification in one area "does not *ipso facto* qualify him to testify as an expert in all related areas.").

NPBL contends that Mr. Crowley has applied a so-called "costing methodology" involving "three parts"—(1) comparing the Belt Line's rate to its "average operating expenses per revenue car (or container) over annual intervals"; (2) comparing the Belt Line's rate "to other terminal switching railroads of various sizes and in various locations . . . using a per-container, per-mile metric"; and (3) "confirm[ing]" his "conclusion of reasonableness . . . by analyzing the Belt Line's purpose and history."  Opp. at 7.  Initially, Mr. Crowley himself does not call his analysis a "costing methodology" or describe it in these terms.  *See* Mot. Ex. A at 4.  NPBL cannot supplement or clarify Mr. Crowley's opinions through its briefing to this Court.

Moreover, although NPBL claims this methodology is based on "an accepted industry standard means for evaluating the reasonableness of switching rates," it cites nothing supporting this assertion beyond Mr. Crowley's testimony that, when assessing NPBL's rate, he ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Opp. at 7 (citing Crowley Dep., Opp. Ex. 3, at 220:8-11).  Neither NPBL nor Mr. Crowley identifies any industry publications, academic articles, or other verifiable sources reflecting that this "costing methodology" is an accepted means to evaluate rates in the rail industry.  Of course, Mr. Crowley's unsupported claim that his methods are "common and recognized" does not make it so.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999) ("[N]othing in either *Daubert* or the Federal

6

Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

NPBL tries to bolster Mr. Crowley's methodology by citing regulatory decisions from the ICC, the STB's predecessor. *See* Opp. at 6-7. These decisions are irrelevant because the parties and Mr. Crowley all agree that the STB/ICC's methods and standards do not apply here. Moreover, none of the ICC decisions cited by NPBL involves analysis of a switch rate or application of Mr. Crowley's purported "costing methodology." Nor do they establish that intermodal rail is "inherently competitive with trucking," as NPBL claims. *See* Opp. at 6. In fact, these decisions acknowledge "*the apparent lack of competition between railroads and motor carriers*" for movements of intermodal traffic, as well as "vigorous competition among railroads for this traffic." *Improvement of Tofc/cofc Regul.*, 364 I.C.C. 731, 735 (I.C.C. 1981) (emphasis added). In citing these decisions, NPBL also improperly conflates truck transportation generally with *drayage*, the alternative to on-dock rail by which containers are moved via truck from a marine terminal to a railyard. *See* ECF No. 324 at 33, SOF ¶ 82. None of the cited ICC decisions involves drayage, much less suggests that "the competitiveness of rail intermodal and drayage is an accepted bedrock principle of economic rail regulation," as NPBL suggests. *See* Opp. at 7.

NPBL agrees Mr. Crowley did not assess the reasonableness of the Belt Line's rate using the STB formula on which his professional experience is based. But NPBL, like Mr. Crowley, articulates no accepted alternative methodology used to conduct his analysis. Because Mr. Crowley's opinion is not based on reliable methods, the Court should exclude it under Rule 702.

**B.  Mr. Crowley does not reliably apply his own stated methods when assessing the reasonableness of NPBL's rate.**

Even if NPBL had shown that Mr. Crowley's purported "costing methodology" were accepted in the rail industry, his opinions about NPBL's rate would still fail to satisfy Rule 702, because Mr. Crowley does not apply his stated methodology reliably to the facts of this case.

For example, NPBL claims that Mr. Crowley properly examined "the total operational costs contained in the Belt Line's annual reports" when assessing the reasonableness of NPBL's rate. *See* Opp. at 8. But Mr. Crowley testified that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *See* Mot. at 8 & Ex. B 55:10-18 (▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆), 56:15-21 (same), 61:13-62:13 (▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆). And Mr. Crowley admitted that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *See* Mot. at 8 & Ex. B at 57:17-23 (▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆); *see also id.* at 62:14-23 (▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆), 87:11-88:11 (▆▆▆▆▆▆▆▆▆▆▆▆▆), 148:8-149:9 (▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆). In other words, Mr. Crowley made no effort to consider the very metric that he testified *should* be considered in performing his own stated analysis. This is no small error. The distinction between fixed and variable costs is significant, because fixed expenses per car *decrease* as the number of cars interchanged *increase*—a fact acknowledged by both Mr. Crowley and NPBL's corporate representative. *See* Mot. at 8. Mr. Crowley's failure to assess variable costs, which he himself defines as relevant and appropriate to a measure of rate reasonableness, renders his opinion about NPBL's rate unreliable and inadmissible under Rule 702. *See Westberry*, 178 F.3d at 261 n.1

(explaining that courts should consider practices accepted by "the relevant professional community" when assessing the admissibility of expert testimony).

NPBL likewise fails to justify Mr. Crowley's decision to compare NPBL's rate to the rates of other switching railroads on a "per container per mile" basis. Uncontradicted record evidence reflects that switching railroads do not calculate rates on a "per mile" basis due to the short distances involved. *See* Mot. at 9-10. But Mr. Crowley ignores this evidence, and NPBL makes no effort to dispute it. *See* Opp. at 6-8. Instead, NPBL cites a single STB decision to argue that mileage is relevant when comparing *variable* costs at the STB. *See* Opp. at 7 (citing Major Issues In Rail Rate Cases, STB E.P. No. 657, 33-34 (Sub No. 1) (STB served October 30, 2006)). Of course, Mr. Crowley admittedly did not assess variable costs or apply the STB's methodology. Moreover, the cited decision involves the STB's allocation of revenue and costs between an incumbent railroad and a hypothetical competitor on a "cross-over" route—a scenario that has nothing to do with any of the facts in this case. *See id.* at 6-8; 24-26.

NPBL also does not dispute that Mr. Crowley's analysis depends on other flawed assumptions contradicted by the record evidence, including, for example, (1) the number of containers CSX moved per railcar well during the relevant period, and (2) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Mot. at 10 & n.4. NPBL's only response on this point attempts to criticize Professor Marvel for overlooking costs or mileage. *See* Opp. at 8. NPBL's concerns about Professor Marvel's analysis are imagined. First, Professor Marvel *did* consider NPBL's costs, concluding that NPBL's decision to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mot. at Ex. E ¶ 57; *see also id.* at ¶ 58 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9

▆). Second, Professor Marvel did not apply the STB's methodology to assess the reasonableness of NPBL's rate. He conducted a thorough economic analysis of NPBL's rate within the relevant market. In doing so, he observed that, ▆

▆

▆ ECF No. 308 at Ex. 7 ¶¶ 54-55; Mot. at Ex. E ¶¶ 55-65.

The relevant question here is whether, to assess the reasonableness of NPBL's rate, Mr. Crowley (1) identified a coherent, accepted methodology within the scope of his professional expertise, and (2) reliably applied that methodology to the facts here. Because Mr. Crowley failed on both accounts, the Court should exclude his opinions about NPBL's rate.

    **C.    Mr. Crowley's basic arithmetic will not help the jury.**

Mr. Crowley's rate analysis also will not help the jury because it is—as NPBL concedes—ultimately just "simple" arithmetic. *See* Opp. at 9 (admitting "the ending arithmetic was simple"). Mr. Crowley's analysis of NPBL's rate involved ▆

▆

▆ *See* Mot. at 12. His analysis of comparable switching fees likewise required converting the rates of comparable switching railroads to a "per mile per container" cost, which involved basic division. *See* Opp. at 9. The average juror can easily understand these simple calculations without expert testimony.

NPBL seeks to apply a veneer of complexity to Mr. Crowley's analysis by describing his efforts to convert switching railroads' tariff rates to per-container fees. *See id.* at 8-9. But this "method" amounts to dividing published tariff rates by ▆ containers per car. *See id.* Indeed, Mr. Crowley did not even consider whether ▆

▆ *See* March 31, 2021 Dep. of T. Crowley,

10

attached as **Exhibit A**, at 188:7-189:20.  NPBL also suggests that Mr. Crowley "developed" mileage estimates for comparable switching railroads ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  *Id.*  As Mr. Crowley admitted in deposition, however, he ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  *See* **Exhibit A** at 185:16-186:8.  These are not complex tasks falling outside the jury's knowledge and experience.  *See Adv. Drainage Sys., Inc v. Quality Culvert, Inc.*, 2015 WL 1299368, at *8 (S.D. Ohio Mar. 23, 2015) (explaining that "[e]xpert testimony is not necessary to assist jurors with basic arithmetic," and rejecting argument that "basic math" was still appropriate expert testimony because it was "merely the last step in [the expert's] opinion").

NPBL contends that Mr. Crowley's basic math is admissible as expert testimony because it is just one component of his broader opinion about the "overall reasonableness of the Belt Line's switching fee."  Opp. at 9.  In support, NPBL cites *Daugherty v. Ocwen Loan Servicing, LLC*, for the proposition that "[a]n opinion on the reasonableness of the Belt Line's switching fee is well within the purview of expert testimony."  *Id.*  But *Daugherty* involved whether an expert could testify that a lender failed to conduct "reasonable" investigations under the Fair Credit Reporting Act.  *See* 701 F. App'x 246, 255 (4th Cir. 2017).  The *Daugherty* court approved an expert's testimony on reasonableness because the statute requires lenders to "conduct a *reasonable* investigation of [its] records to determine whether the disputed information can be verified."  *Id.* at 255 (quoting *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004)).  Nothing in that case suggests that basic arithmetic can transform into an expert opinion just because the expert also purports to opine on the "reasonableness" of a party's conduct more generally.

### D. Neither Mr. Crowley's recitation of disputed hearsay evidence nor his interpretation of the parties' contractual obligations will help the jury.

NPBL contends that Mr. Crowley's opinions go beyond simple arithmetic because he opines on NPBL's "operations" and "historical background," along with performing basic calculations. *See* Opp. at 9. As CSX has explained, however, Mr. Crowley may not offer as "expert" opinions NPBL's preferred factual narrative (while ignoring substantial record evidence to the contrary), nor may he opine on the parties' legal obligations under relevant contractual documents. *See* Mot. at 14-15; *see also Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) (affirming exclusion of expert testimony not based on "facts as presented in the testimony of other witnesses," explaining that an expert cannot express "opinions" based on "altered facts and speculation designed to bolster [a party's] position"); *Donnert v. Feld Entm't.*, No. 1:13-cv-40, 2013 WL 12097618, at *3 (E.D. Va. Nov. 9, 2013) (excluding expert's opinions interpreting contractual provision and opining about what constituted compliance, explaining that "proper interpretation of a contract" is a "question of law," and "an expert cannot give an opinion as to the legal obligations of parties under a contract"). An expert's purpose is to provide an opinion on an issue outside the comprehension of the average juror, not to bootstrap a party's factual and legal positions under the guise of "expertise."

NPBL does not defend Mr. Crowley's attempt to offer impermissible legal conclusions about the Belt Line's governing documents. *See* Opp. at 10-11. As for Mr. Crowley's recitation of "historical background" facts, NPBL argues that Mr. Crowley can rely on facts outside his personal knowledge under Rule 602 of the Federal Rules of Evidence. *See id.* Although an expert may rely on facts outside his personal knowledge *to inform* his opinions, however, he may not simply regurgitate disputed facts *as* his opinions. *See Cap. Concepts, Inc. v. Mountain Corp.*, 936 F. Supp. 2d 661, 672 (W.D. Va. 2013) ("An expert cannot simply parrot his client's findings or

12

calculations and then pass that data off as his own expert opinion."). Mr. Crowley does the latter. *See* Mot. at 13-14.

NPBL also claims that CSX has cited no examples of material evidence contrary to NPBL's narrative disregarded by Mr. Crowley. *See* Opp. at 10-11. But, as NPBL notes, CSX cited its Statement of Facts filed in opposition to Defendants' motions for summary judgment, which in turn collects and describes *dozens* of documents, deposition excerpts, and other record evidence ignored by Mr. Crowley. *See* Mot. at 14 (citing ECF No. 324 at 10-15 (SOF ¶¶ 14-29)). NPBL makes no effort to grapple with any of this evidence or to show that it is not relevant to Mr. Crowley's purported opinions on the relevant "historical background." Because Mr. Crowley's purported opinions about "historical" events "suppl[y] the jury with no information other than [NPBL's] view of how the verdict should read," they should be excluded. *Merrill v. McCarthy*, No. 7:14-CV-4, 2016 WL 1258472, at *2 (E.D.N.C. Mar. 30, 2016).

\*\*\*

NPBL ultimately ignores CSX's central argument—that Mr. Crowley's opinions about the Belt Line's rate will not help the jury because his assessment is irrelevant to the question at hand: whether NPBL's switching rate was set and/or maintained at a level intended to exclude CSX from NIT. *See* Opp. at 8-10. The record evidence reflects that CSX's proposals would have increased the number of cars NPBL interchanged, thereby lowering NPBL's costs per car, and generating profit for the Belt Line. *See* Mot. at 8; Ex. B. 149:11-23. Mr. Crowley did not consider this question, and his conclusion about NPBL's current rate is irrelevant, unreliable, and unhelpful.

## II. Mr. Crowley's Drayage Opinion is Unhelpful and Speculative.

In defending Mr. Crowley's drayage opinion, NPBL fails to justify Mr. Crowley's reliance on simple math or disregard of substantial operational challenges. Instead, NPBL attempts to

13

recast Mr. Crowley's circular logic as economic analysis that he is not qualified to offer. Mr. Crowley's opinion that drayage is an adequate substitute for on-dock rail will not help the jury for four reasons.

First, Mr. Crowley's opinion is based on his comparison of the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Mot., Ex. A at 23-24. This amounts to nothing but basic subtraction within the knowledge and experience of lay jurors, who will not need Mr. Crowley's assistance to evaluate this evidence. *See supra* at 5-6. NPBL tries to defend Mr. Crowley's simple math by arguing that it is merely a portion of his overall drayage opinion, which NPBL claims also involves assessment of vague, undefined "operational issues." Opp. at 12. Again, rudimentary calculations are not converted into "expert" testimony simply because the expert also offers surrounding context. The record evidence also belies any suggestion that Mr. Crowley assessed the relevant "operational" factors bearing on the substitutability of drayage, as explained below.

Second, Mr. Crowley improperly disregarded substantial record evidence of many factors beyond cost that impact the feasibility of drayage at NIT. *See* Mot. at 15-16. In arguing otherwise, NPBL points to nothing but Mr. Crowley's vague, self-serving testimony that he considered "operational" issues in addition to cost. *See* Opp. at 12 (citing Crowley Dep. 190:14-191:3). But NPBL ignores Mr. Crowley's admitted failure to consider specific operational issues documented in the record, including, among other things, (1) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, *see, e.g.*, Mot. Ex. B at 194:8-12 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ); and (2) local regulations limiting trucking hours on the drayage route, *see, e.g.*, Mot. at Ex. A at 21 (criticizing CSX for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ but ignoring

14

local regulations prohibiting trucks on the drayage route after 4 p.m.).² This is fatal to Mr. Crowley's drayage opinion, as Mr. Crowley himself acknowledged in his testimony that, to identify a market substitute, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Mot. at 15-16.

Third, NPBL offers no defense to Mr. Crowley's speculative and circular opinion that drayage must be an effective substitute for on-dock rail merely because CSX uses drayage—without regard for the effect of Defendants' anticompetitive conduct. *See* Mot. at 17-18. Indeed, NPBL doubles-down on this circular reasoning in opposing CSX's Motion, arguing that drayage and on-dock rail must be "reasonably," if not "perfectly," interchangeable because CSX uses drayage. *See* Opp. at 13. This argument seeks to bolster Mr. Crowley's *conclusions* but ignores his flawed *methodology*. Moreover, nothing in Mr. Crowley's report supports NPBL's suggestion that Mr. Crowley performed any economic analysis to conclude that drayage is "interchangeable" with on-dock rail for purposes in the context of CSX's antitrust claims. *See generally* Mot. at Ex. A. Nor would Mr. Crowley be qualified to do so. Mr. Crowley has no experience with the economic analyses required to establish the relevant market for purposes of antitrust litigation, including the evaluation of interchangeability. *See* Mot. Ex. B. at Statement of Qualifications; Ex. A at 97:12-98:1. Mr. Crowley does not work as an antitrust economist and does not purport to testify as one here. *See id.* Mr. Crowley's lack of qualifications, standing alone, is sufficient reason to exclude any opinions he proffers about whether drayage and on-dock rail may be "interchangeable" for antitrust purposes.

---

² NPBL, like Mr. Crowley, continues to improperly conflate drayage with trucking generally. *See* Opp. at 13. The failure to distinguish between drayage and trucks carrying containers to their final destinations in local markets further renders Mr. Crowley's opinion unreliable. *See* Mot. at 16-17.

Moreover, as CSX has explained, to offer any reliable opinion on the substitutability of drayage for on-dock rail, Mr. Crowley would have had to assess the putative alternatives "at the competitive price level." Mot. at 17. Neither Mr. Crowley nor NPBL dispute this accepted economic requirement. *See* Opp. at 13-14. Yet Mr. Crowley did not consider what the competitive price level for on-dock rail would be absent NPBL's and NS's anticompetitive conduct—highlighting his lack of expertise in performing the economic analysis relevant to CSX's antitrust claims. *See In re Aggrenox Antitrust Litig.*, 199 F. Supp. 3d 662, 667 (D. Conn. 2016) (disregarding alternatives at a price-competitive level inappropriately ignores that "cross-elasticity of demand among [potential substitutes] 'may ... be the product of monopoly power rather than a belief on the part of consumers that the products are good substitutes for one another,' because '[a]t a high enough price, even poor substitutes look good to the consumer'") (quoting *United States v. Eastman Kodak Co.*, 63 F.3d 95, 105 (2d Cir.1995)).

The authority NPBL cites also does not support its interchangeability argument. Indeed, the cases cited by NPBL acknowledge that "products in question will be deemed 'functionally interchangeable'" only "[i]f consumers *can substitute the use of one for the other*." *Fed. Trade Comm'n v. Sysco Corp.*, 113 F. Supp. 3d 1, 25 (D.D.C. 2015) (emphasis added). Likewise, "substitution based on a reduction in price will not correlate to a high cross-elasticity of demand unless the switch can be accomplished *without the consumer incurring undue expense or inconvenience*." *Id.* at 26 (emphasis added). As the record evidence shows, CSX has been unable to substitute on-dock rail via NPBL for drayage without encountering significant operational impediments imposed by Defendants, on top of the Belt Line's prohibitively expensive rate. *See* ECF No. 324 at 21-25 (citing SOF ¶¶ 45-55). Mr. Crowley failed to consider this critical evidence when purportedly assessing whether drayage is interchangeable with on-dock rail.

Mr. Crowley did not perform—and is not qualified to perform—the economic analysis necessary to determine whether, for purposes of CSX's antitrust claims, drayage is "interchangeable" with on-dock rail. The drayage opinion he does offer amounts to basic math, along with his speculation that CSX would use on-dock rail "but for VIT's significant drayage subsidy and waived lift fee." This "opinion" is merely NPBL's theory of the case in disguise, which also improperly ignores limitations on the scalability of drayage at NIT, as well as NS's and NPBL's own anticompetitive conduct. Mr. Crowley's drayage opinion will not help the jury and should be excluded.

## CONCLUSION

For all these reasons and those stated in CSX's Motion, the Court should grant CSX's Motion and exclude NPBL's proffered expert, Thomas D. Crowley, from testifying as an expert witness in this case.

Dated: September 23, 2022.                Respectfully submitted,

**CSX TRANSPORTATION, INC.**
*By Counsel*

/s/ Benjamin L. Hatch
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
V. Kathleen Dougherty (VSB No. 77294)
Jeanne E. Noonan (VSB No. 87863)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Telephone: (757) 640-3716
Facsimile: (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: vkdougherty@mcguirewoods.com
E-mail: jnoonan@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219-3916
Telephone: (804) 775-1000
Facsimile: (804) 698-2026
E-mail: bjustus@mcguirewoods.com
E-mail: apeterson@mcguirewoods.com

**CERTIFICATE OF SERVICE**

I certify that on this 23rd day of September, 2022, a true and correct copy of the foregoing was served on all counsel of record via Notice of Electronic Filing by filing with the Court's CM/ECF system.

/s/ *Benjamin L. Hatch*
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
V. Kathleen Dougherty (VSB No. 77294)
Jeanne E. Noonan (VSB No. 87863)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Telephone: (757) 640-3716
Facsimile: (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: vkdougherty@mcguirewoods.com
E-mail: jnoonan@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219-3916
Telephone: (804) 775-1000
Facsimile: (804) 698-2026
E-mail: bjustus@mcguirewoods.com
E-mail: apeterson@mcguirewoods.com