SUBJECT TO PROTECTIVE ORDER – CONFIDENTIAL

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CSX TRANSPORTATION, INC.,
individually and on behalf of NORFOLK
& PORTSMOUTH BELT LINE
RAILROAD COMPANY,

   Plaintiff,

v.            Civil Action No. 2:18-cv-530-MSD-LRL

NORFOLK SOUTHERN RAILWAY
COMPANY, *et al.*,

   Defendants.

_____/

**PLAINTIFF CSX TRANSPORTATION, INC.'S SECOND SUPPLEMENTAL
RESPONSES TO DEFENDANT NORFOLK AND PORTSMOUTH BELT LINE
RAILROAD COMPANY'S INTERROGATORIES NUMBER 3 AND 4**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Local Rule 26, the

ESI Order, the Stipulated Protective Order, and the Court Order (Doc. 236) entered in the above-

captioned action, Plaintiff CSX Transportation, Inc. ("CSXT" or "Plaintiff"), by counsel, hereby

provides its supplemental answers to Defendant Norfolk and Portsmouth Belt Line Railroad

Company's ("NPBL") Interrogatory Number 3 and Number 4 (the "Interrogatories").

NPBL propounded its First Interrogatories and Requests for Admissions to Plaintiff on

February 24, 2020. CSXT submitted its objections on March 3, 2020 and its Responses on March

25, 2020. On April 17, 2020, CSXT supplemented it answers to Interrogatories Number 6, 14,

and 15. CSXT also supplemented its answer to Interrogatory Number 3 on July 1, 2020. NBPL

filed a Motion to Compel July 24, 2020 and the Court held a Motion Hearing on September 4,

2020. The Court granted NPBL's Motion to Compel and endorsed the Order on September 4,

2020. ECF No. 236. In response to the Order, CSXT provides supplemental answers as follows:

SUBJECT TO PROTECTIVE ORDER – CONFIDENTIAL

## RESERVATION OF RIGHTS

Plaintiff's objections and responses are based on the facts presently known to Plaintiff based on a good faith investigation to respond to NPBL's Interrogatories. As discovery progresses, Plaintiff may supplement or change its objections and responses to NPBL's Interrogatories with any non-privileged information as appropriate under the Federal Rules of Civil Procedure and/or the Local Rules of this Court. Plaintiff reserves the right to supplement or change its objections and responses to NPBL's Interrogatories as additional or different facts, documents, or witnesses are discovered.

Plaintiff's objections and responses to NPBL's Interrogatories do not constitute an admission by Plaintiff that either Interrogatories or the responses thereto, or any documents produced in connection therewith, are relevant or admissible as evidence in any trial or other proceeding. Plaintiff reserves the right to object on any grounds, at any time, to the admission of any Interrogatories or the responses thereto, or any documents produced in connection therewith, in any such trial or other proceeding.

The responses contained herein are based only upon the information and documentation presently available and known to CSXT. It is possible that further investigation, discovery, analysis, legal research, and/or preparation may result in the ascertainment of additional information or documentation, or provide additional meaning to known factual conclusions and legal contentions, all of which may result in the modification of these responses. Accordingly, CSXT reserves the right to modify or supplement its responses herein based upon subsequently ascertained or developed information, documentation, facts, and contentions. Subject to the objections asserted herein, CSXT's responses are made in a good faith effort to reasonably respond to NPBL's Interrogatory Number 3 and Interrogatory Number 4 based upon presently available

SUBJECT TO PROTECTIVE ORDER – CONFIDENTIAL

information and documentation. These responses should not be construed to prejudice CSXT's right to conduct further investigation, discovery, legal research and/or preparation, or to limit CSXT's right to utilize any additional evidence that may be developed.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

CSXT objects to NPBL's Definitions and Instructions to the extent they are inconsistent with or exceed the requirements set forth in the Federal Rules of Civil Procedure and the Local Civil Rules, and to the extent they purport to require CSXT to produce documents beyond those agreed to by the Parties in the ESI Order. CSXT specifically objects as follows:

1.      CSXT objects to Definition/Instruction Numbers 1 and 2 ("Document" and "Communication") as overly broad, unduly burdensome, and expensive, irrelevant, and not proportional to the needs of this case to the extent those definitions purport to require CSXT to produce documents or communications beyond those agreed to by the Parties in the ESI Order.

2.      CSXT objects to Definition/Instruction Number 3 ("Identify" and "identity" when used with respect to an individual) as irrelevant to the extent it seeks the last known address of an individual, as that sensitive and personal information has no relevance to any of the issues in this case.

3.      CSXT objects to Definition/Instruction Number 4 ("Concerning" or "relating" or "related to") as overly broad, unduly burdensome, and expensive, irrelevant, and not proportional to the needs of this case to the extent the definition purports to require CSXT to produce documents or communications beyond those agreed to by the Parties in the ESI Order.

SUBJECT TO PROTECTIVE ORDER – CONFIDENTIAL

<u>OBJECTIONS AND SUPPLEMENTAL ANSWERS TO INTERROGATORIES</u>

**3.    Identify the specific communication(s) between the Belt Line and NS that you contend form the basis for the conspiracy alleged in Counts I, II, VIII, and IX of your Complaint, including the identities of the specific persons involved in such communication(s), the dates and circumstances of such communication(s), and all documents that support your answer.**

**OBJECTIONS:**  CSXT objects to this Interrogatory to the extent it seeks information protected by the attorney/client privilege, work product doctrine, or any other privilege that protects against disclosure of such information, and on the grounds that it is overbroad and seeks to require CSXT to provide information wholly within the possession of NPBL and NS.

**ANSWER:** Without waiver of its objections, CSXT states that NPBL and NS have conspired to prevent CSXT from accessing on-dock rail at NIT for more than a decade.  During that time, NPBL and NS have had numerous communications in furtherance of this continuing conspiracy.  Many of these communications are presently unknown to CSXT and may not have been produced in discovery.  However, without limitation, CSXT refers NPBL to the following communications between and among NS employees, NS-appointed NPBL Board members, NPBL management and employees, and/or other third parties in furtherance of the conspiracy:

Communications regarding the setting of NPBL's rates, including but not limited to in conjunction with the 2009 NPBL Rate Committee.  *See, e.g.*, documents beginning with Bates number NSR_00199515, NSR_00199524, NSR_00199530, NSR_00199532, NSR_00199538, NSR_00199542, NSR_00035548, NSR_00084730, NSR_00027070, NSR_00035903, NSR_00011118, NSR_00027114, NSR_00063116, NSR_00027052, NSR_00183825, NSR_00077404, NSR_00067467, NSR_00177916, and NSR_00027096.

SUBJECT TO PROTECTIVE ORDER – CONFIDENTIAL

Communications regarding CSXT's 2010 service proposal, including communications designed to prevent that proposal from receiving fair consideration or implementation by the NPBL Board. *See, e.g.*, documents beginning with Bates number NSR_00062857, NSR_00062844, NSR_00026968, NSR_00035548, NSR_00027017, NSR_00062929, NSR_00026968, NSR_00073997, NSR_00073997, NSR_00062844, NSR_00074005, NSR_00062929, and NSR_00000781.

Communications regarding NPBL's sale or disposition of real property, including but not limited to the Port Norfolk yard, and discontinuation of the "Diamond." *See, e.g.*, documents beginning with Bates number CSXT0025030, NSR_00011118, NSR_00084773, NPBL014366, NSR_00183720, NPBL011659, NPBL014367, and NSR_00073008.

Communications regarding CSXT's requests to move intermodal containers to NIT via NPBL, and other communications related to limiting, denying, or otherwise controlling CSXT's access to NIT via NPBL. *See, e.g.*, documents beginning with Bates number CSXT0024925, NSR_00104455, NPBL012988, NPBL024288, NSR_00071344, NSR_00066329, NSR_00005173, NSR_00081982, NSR_00039781, NSR_00071344, NSR_00034020, NSR_00049537, NSR_00006321, NSR_0000865, NPBL005666, NPBL005672, NPBL010915, NPBL010919, NSR_00001460, and NSR_00001503.

Communications regarding the trackage rights agreement between NPBL and NS, including the appropriate rate NPBL should pay NS to use its tracks and how the trackage right agreement affects CSXT's ability to access NIT via NPBL. *See, e.g.*, documents beginning with Bates number NSR_00047112, NSR_00005173, NSR_00054868, NSR_00007168, NSR_00004472, NSR_00004475, NSR_00051329, NSR_00218072, and NPBL005634.

Communications regarding CSXT's 2018 service proposal, including communications

SUBJECT TO PROTECTIVE ORDER – CONFIDENTIAL

designed to prevent that proposal from receiving fair consideration or implementation by the NPBL Board. *See, e.g.*, documents beginning with Bates number NSR_00076482, NSR_00062844, NSR_00005173, NSR_00047112, NSR_00051329, and NSR_00079915.

Communications regarding NPBL corporate governance, including CSXT's corporate governance concerns and requested corporate governance changes, and including but not limited to CSXT's demand for appointment of independent Board members. *See, e.g.*, documents beginning with Bates number NPBL015164, NPBL015165, NSR_00035194, NSR_00072644, NSR_00027069, and NSR_00071467.

Investigation is ongoing, and CSXT reserves the right to supplement and/or amend this answer as documents and evidence are produced and reviewed in discovery in this Action.

**SUPPLEMENTAL ANSWER:** Without waiving its objections, and in addition to the foregoing answer, CSXT clarifies that the following documents were inadvertently cited as related to CSXT's 2018 service proposal, and should be omitted from that paragraph of the foregoing response: NSR_99995173, NSR_00062844, and NSR_00047112.

CSXT also refers NPBL to the following additional communications between and among NS employees, NS-appointed NPBL Board members, NPBL management and employees, and/or other third parties in furtherance of the conspiracy:

Communications regarding the setting of NPBL's rates, including but not limited to in conjunction with the 2009 NPBL Rate Committee. *See, e.g.*, documents beginning with Bates number NSR_00199536 and NSR_00084753.

Communications regarding NPBL's sale or disposition of real property, including but not limited to the Port Norfolk yard, and discontinuation of the "Diamond." *See, e.g.*, document beginning with Bates number NSR_00030864.

SUBJECT TO PROTECTIVE ORDER – CONFIDENTIAL

Communications regarding CSXT's requests to move intermodal containers to NIT via NPBL, and other communications related to limiting, denying, or otherwise controlling CSXT's access to NIT via NPBL. *See, e.g.*, documents beginning with Bates number NSR_00000868, NSR_00000870,    NSR_00000872,    NSR_00001390,    NSR_00001391,    NSR_00001395, NSR_00001399,    NSR_00001401,    NSR_00001402,    NSR_00001407,    NSR_00001409, NSR_00001412,    NSR_00001414,    NSR_00001417,    NSR_00001419,    NSR_00001447, NSR_00001451, and NSR_00047281.

Communications regarding the trackage rights agreement between NPBL and NS, including the appropriate rate NPBL should pay NS to use its tracks and how the trackage right agreement affects CSXT's ability to access NIT via NPBL. *See, e.g.*, document beginning with Bates number NSR_00024527.

Communications regarding NPBL corporate governance, including CSXT's corporate governance concerns and requested corporate governance changes, and including but not limited to CSXT's demand for appointment of independent Board members. *See, e.g.*, documents beginning with Bates number NPBL010882, NSR_00199666, NSR_00005707, NSR_00105816, and NSR_00026701.

Investigation is ongoing, and CSXT reserves the right to supplement and/or amend this answer as documents and evidence are produced and reviewed in discovery in this Action.

**SECOND SUPPLEMENTAL ANSWER PER ORDER OF SEPTEMBER 4, 2020:**

As alleged in CSXT's Complaint, and as discovery in this matter has confirmed, NPBL and NS have conspired together to prevent CSXT from accessing on-dock rail at NIT for more than a decade. During that time, NPBL and NS, and their employees and agents—including both NPBL management and NS-appointed members of the NPBL Board—have had numerous

SUBJECT TO PROTECTIVE ORDER – CONFIDENTIAL

communications in person, telephonically, and by written correspondence, in furtherance of the conspiracy. Some of these communications are undoubtedly unknown to CSXT, or cannot yet be specified in detail. Current and former NS and NPBL personnel have repeatedly professed a lack of memory concerning relevant communications and interactions.

Communications associated with particular overt acts committed by NPBL representatives—including both NPBL management and NS-appointed members of the NPBL Board—are identified and described below in response to Interrogatory 4. Those communications are incorporated herein by reference. Further, without limitation, CSXT identifies the following additional communications that provide further evidence of the conspiracy alleged in CSXT's Complaint. The dates, persons, and circumstances involved in each communication are apparent from the face of the document unless otherwise noted. Certain documents reflect, memorialize, and or describe communications between persons who might not have authored or received the document, as described in further detail below.

As far back as 1998-1999, NPBL Board members appointed by NS were conspiring with NS management as to how to defeat CSX rate proposals that would facilitate CSX access to NIT via NPBL.



- **NSR_00199530**:

NSR_00199542

- **NSR_00199524**:

SUBJECT TO PROTECTIVE ORDER – CONFIDENTIAL

*See NSR_00199515.*

- **NSR_00001503:**

- **NSR_00027069:**

- **NSR_00027052:**

- **NSR_00062929 [AEO]:**

- **NSR_00071467 [AEO]:**

- **NSR_00071344 [AEO]:**

- **NSR_00049537:**

SUBJECT TO PROTECTIVE ORDER – CONFIDENTIAL

4.     Identify the specific overt act(s) by NPBL that you contend form the basis for the conspiracy alleged in Counts I, II, VIII, and IX of your Complaint, including the identities of the specific persons who you contend committed such act(s), the dates and circumstances of such act(s), and all documents that support your answer.

OBJECTIONS:  CSXT objects to this Interrogatory to the extent it seeks information protected by the attorney/client privilege, work product doctrine, or any other privilege that protects against disclosure of such information.

ANSWER: Without waiver of its objections, and without limitation, CSXT points NPBL to the acts referenced within the communications identified in CSXT's Answer to NPBL's Interrogatory No. 3 above.  Investigation is ongoing, and CSXT reserves the right to supplement and/or amend this answer as documents and evidence are produced and reviewed in discovery in this Action.

SUPPLEMENTAL ANSWER PER ORDER OF SEPTEMBER 4, 2020:

As alleged in CSXT's Complaint, and as discovery in this matter has confirmed, NPBL and NS have conspired together to prevent CSXT from accessing on-dock rail at NIT for more than a decade.  During that time, NPBL has taken numerous overt acts in furtherance of the conspiracy, some of which may be unknown to CSXT.  However, without limitation, CSXT identifies the following overt acts committed by NPBL representatives—including both NPBL management and NS-appointed members of the NPBL Board—in furtherance of the conspiracy.

CSXT notes that NS has also committed numerous overt acts in furtherance of the conspiracy.  Because this Interrogatory does not request a list of NS's overt acts, CSXT does not

SUBJECT TO PROTECTIVE ORDER – CONFIDENTIAL

attempt to list them here.  Certain overt acts described herein may reference action by NS, but these descriptions are in no way intended as an exhaustive list of overt acts committed by NS in furtherance of the conspiracy.

**Overt Acts Related to 2009 Rate Committee:**  In 2009, NS-appointed members of the NPBL Board (including Mr. Manion, Tim Drake, and Jake Allison); NS-appointed members of the 2009 NPBL Rate Committee (including, among others, Mr. Luebbers), *see* NPBL009622; and members of NPBL Management (including David Stinson and Donna Coleman) took actions in connection with the rate committee process designed to intentionally block a reasonable NPBL switch rate that would have allowed CSXT to access on-dock rail at NIT via NPBL.

In response to a request from CSXT, NPBL established a rate committee in 2009, which was purportedly intended to help NPBL analyze its existing rates and make recommendations for changes to those rates that would further NPBL's goal "to attract present and future volume growth opportunities," as set forth in NPBL's 2008 Annual Report's Letter to Shareholders.  *See* NPBL009637.  The 2009 Rate Committee consisted of three NS employees and three CSXT employees.

Rather than analyzing NPBL's rates, the market, and operational issues with the goal of promoting NPBL's growth, however, the NS-appointed members of the 2009 Rate Committee

*See, e.g.*, NSR_00084753 [AEO].  Although NPBL's $148.50 switch rate was already "considered high," *see* Luebbers Dep. 186:9-22, 191:8-11, the NS-appointed members of the 2009 Rate Committee

SUBJECT TO PROTECTIVE ORDER – CONFIDENTIAL

In December 2009, the NS-appointed members of the NPBL Board accordingly voted against adopting the $75 rate, and instead voted to approve the $210 switch rate intended to impede CSXT's ability to access on-dock rail at NIT. *See, e.g.*, NPBL007302, NSR_00027017. NPBL has charged—and continues to charge—this unreasonable and prohibitive rate today, despite NPBL's declining revenues and precarious financial position.

The documents and communications identified and described below, taken together and without limitation, evidence multiple specific overt acts by NPBL in furtherance of the objectives described above:



- **NSR_00027114:**

- **NSR_00011118:**

  *See* NSR_00011119.   In his deposition, Mr. Luebbers confirmed that the rate charged by NPBL in 2009 was "considered high." 186:9-22, 191:8-11.   In the email,

  Dep. 198:22-199:21.

- **NSR_00084753 [AEO]:**

- **NSR_00027096:**

SUBJECT TO PROTECTIVE ORDER – CONFIDENTIAL

[redacted]

constitute discrete overt acts by NPBL in furtherance of the conspiracy. Mr. Luebbers is an NS employee with no connection to NPBL; however, as communications cited herein illustrate, Mr. Luebbers was instrumental in facilitating the conspiracy between NS and NPBL to [redacted] *See, e.g.*, NSR_00084753, NSR_00084730.

- **NSR_00084730:** [redacted]

- **NSR_00183825:** [redacted]

- **NPBL008771:** July 16, 2009 email from Ms. Coleman to members of the 2009 Rate Committee, providing a packet of information including NPBL Management's recommendations for revised rates. One of management's recommended changes includes a separate line haul switching rate of $75 for "multiple cars (as defined in Rule 8) received as a unit of 40 cars or more, moving on a single waybill and delivered to a consignee or interchange point in continuous movement." *See* NPBL008795.

- **NSR_00177916 to -918:** [redacted] *See* NSR_00177917-918 (emphasis added).

- **NSR_00027070:** [redacted]

SUBJECT TO PROTECTIVE ORDER – CONFIDENTIAL

*See* NSR_00027074.  In her deposition, Ms. Coleman confirmed that this proposed rate was based on research done by NPBL management regarding comparable rates charged by other railroads.  *See* Coleman Dep. 141:23-142:9.

The meeting described in this communication, constitutes a discrete overt act by NPBL in furtherance of the conspiracy.

- **NSR_00035903:**

  *See* NSR_00035905.

  *See id.*

- **NSR_00035548:**

  *See* NSR_00035550; *see also* NPBL006573-75.  *But see* CSXT0082145 (October 15, 2009 recommendation letter from CSXT rate committee members, providing detailed economic and operational analysis in support of $75 rate demonstrating significant benefit to NPBL).

- **NPBL007302:** Minutes from the December 15, 2009 NPBL Board meeting, at

SUBJECT TO PROTECTIVE ORDER – CONFIDENTIAL

which proposed changes to NPBL's rates were presented and voted on. "Following discussion, the motion to approve the tariff changes passed," with all NS-appointed NPBL Board members voting to approve the $210 switch rate, and the CSXT-appointed Board members voting against that rate.

The decision of NS-appointed members of the NPBL Board, including Mr. Manion, Mr. Drake, and Mr. Allison, to approve the $210 tariff and disapprove the $75 line haul switch rate ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*see, e.g.*, NSR_00177917-918)—constitutes a discrete overt act by NPBL in furtherance of the conspiracy.

- **NSR_00027017:** 

  constitutes an overt act by NPBL in furtherance of the conspiracy.

**Overt Acts Related to CSXT's 2010 Service Proposal:** In July 2010, CSXT put forward a Rate Proposal for carriage of intermodal traffic to NIT via NPBL. *See* NPBL007431-36. Neither NPBL Management nor the NS-appointed members of the NPBL Board fairly considered or analyzed CSXT's 2010 Service Proposal. To the contrary, within days of receiving the proposal, NPBL Management had provided it to the NS-appointed members of the 2009 Rate Committee, who immediately began discussing options to delay its consideration and, ultimately, to block its implementation. *See, e.g.*, NSR_00062857.

The documents and communications identified and described below, taken together and without limitation, evidence multiple specific overt acts by NPBL in furtherance of this objective:

- **NSR_00073997:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

SUBJECT TO PROTECTIVE ORDER -- CONFIDENTIAL

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

*see* NSR_00035903,

NSR_00027017.

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

- **NPBL007438**: Two days later, on August 5, 2010, Mr. Stinson transmitted a letter to the NPBL Board, indicating that NPBL "management" had reviewed CSXT's proposal and had concerns, including two purported issues pertaining to NPBL's governing documents and two purported "operational issues." At his deposition, Mr. Stinson testified that these concerns were drawn from conversations with NS personnel, including Jeff Yates. *See* Stinson Dep. 150:20-151:13.

- **NSR_00062857**:

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

- **NSR_00000819-821**: September 3, 2010 Memorandum from CSXT-appointed members of the NPBL Board to NPBL management and general counsel, addressing concerns raised by Mr. Stinson regarding the service proposal. The memo clarifies that CSXT has "no objection to the rate being embodied in a tariff," and is "willing to proceed . . . without consideration of free CSXT power." In his deposition, Mr. Stinson testified that this addressed his concerns on these issues. *See* Stinson Dep. 158:12-20, 159:15-24. Mr. Stinson also admitted that NPBL Management did not conclude that CSXT's proposal would not generate positive operating income to NPBL. *See id.* at 164:19-167:11.

- **NSR_00062844-46**:



- **NPBL019920**: Minutes from September 8, 2010 NPBL Board meeting, indicating that NPBL management "presented the Board with a CSXT rate proposal for intermodal rail service to NIT," and that Management "was directed by the Board

SUBJECT TO PROTECTIVE ORDER – CONFIDENTIAL

[including a majority of NS-appointed directors] to work with NS to evaluate the operating plan."

- **NSR_00000781**: ███████████████████████████████████████████████████████████

- **NPBL012305-06**: █████████████████████████████████████████████████████████████

- **NPBL012284**: December 27, 2010 Memorandum from CSXT-appointed members of the NPBL Board, stating that, "during the past four months, the NPBL Management has been unable to obtain a meaningful review of the proposal's operating plan from NS," and that management has been unable to progress on consideration of the proposal due to inaction by the NS-appointed members of the NPBL Board and their insistence on an inaccurate and selective interpretation of NPBL's governing documents. The memorandum requests that the NPBL Board take appropriate action to remove any barriers preventing consideration of the proposal and direct NS to conclude its review of the operating plan no later than March 30, 2011.

The refusal of NS-appointed members of the NPBL Board to give fair consideration to CSXT's proposal, including based on contrived interpretation of NPBL's governing documents—contrary to their own prior interpretation of those same documents, *see, e.g.*, NSR_00035903 ███████████████████████████—constitutes a discrete overt act by NPBL in furtherance of the conspiracy.

- **NPBL019914**: Minutes from December 29, 2010 NPBL Board meeting, indicating that a motion was made and seconded that NPBL be allowed to use CSXT locomotives in service to NIT, subject to an acceptable service agreement, as outlined in CSXT's proposal. Before a vote could be taken on the motion, NS-appointed members of the NPBL Board moved to postpone the vote "pending receipt of the operational review by Norfolk Southern due March 1, 2011."

These actions by NS-appointed NPBL Board members to delay voting on an aspect of CSXT's proposal pending an intentionally delayed "operational review" by NS, and based on pretextual "reasons" designed to prevent CSXT from gaining access to NIT (*see, e.g.*, NSR_00062857, NSR_00177917-18), constitute discrete overt acts by NPBL in furtherance of the conspiracy.

- **NPBL012988 [AEO]**: ███████████████████████████████████████

SUBJECT TO PROTECTIVE ORDER – CONFIDENTIAL



- **NPBL017936:** Minutes from April 3, 2011 NPBL Board meeting, indicating that Mr. Stinson "updated the Board on the status of the CSXT-NIT proposal," and that, "[f]ollowing discussion, a vote was requested on the motion postponed at the December 29, 2010 meeting" regarding NPBL's use of CSXT's locomotives in service to NIT. *See* NPBL017937. The motion did not pass due all NS-appointed NPBL Board members voting against it.

  These actions by NS-appointed NPBL Board members, refusing to approve NPBL's use of CSXT locomotives despite financial analysis demonstrating that doing so would financially benefit NPBL, constitute discrete overt acts by NPBL in furtherance of the conspiracy.

- **CSXT0110423:** April 11, 2011 email from Mr. Allison, an NS-appointed member of the NPBL Board, to Ms. Coleman, with copies to Mr. Stinson and the other NPBL Board members. Mr. Allison notes that he has received the agenda for the upcoming NPBL Board meeting, which included discussion of "CSXT's rate proposal for service to NIT." Mr. Allison states that the position of the NS-appointed members of the NPBL Board is that the NPBL By-laws "do[ ] not allow the Board of Directors to make an exception to the Bylaw's provision that 'no other locomotives than those of the Company shall be allowed to use its tracks.'" Mr. Allison states that, "[a]s a result, we do not believe this is an appropriate action item for the Board of Directors." Mr. Allison similarly notes that he does not believe the Board should discuss amendments to the NPBL Operating Agreement.

  Mr. Allison's email illustrates the pretextual justifications provided by the NS-appointed members of the NPBL Board to block fair consideration of CSXT's proposal—particularly when CSXT had already indicated that it would be willing to discuss a proposal not involving use of CSXT locomotives (*see* NSR_00000819-821). These actions constitute discrete overt act by NPBL in furtherance of the conspiracy.

**Overt Acts Related to CSXT's Attempts to Access to NIT:** On multiple occasions over the last decade, NS-appointed members of the NPBL Board and NPBL Management (including Cannon Moss) have conspired with NS to limit, deny, or otherwise control CSXT's access to NIT via the NPBL, including by: (1) discontinuing NPBL trackage rights over a segment of NS track that facilitated CSX's access into its own intermodal yard; (2) severely circumscribing the operating windows for CSX trains to move to NIT over NPBL; and (3) denying such windows

SUBJECT TO PROTECTIVE ORDER – CONFIDENTIAL

altogether.  The documents and communications identified and described below, taken together,

evidence multiple specific overt acts by NPBL in furtherance of this objective:

- **NPBL006936**: December 19, 2007 NPBL Board meeting minutes state that "the President presented the Board with a request from Norfolk Southern to discontinue NPBL trackage rights over the Norfolk Southern between NS Junction and Carolina Junction in the Berkley area of South Norfolk," and that "after discussion and consideration of an alternate route and associated costs of trackage rights" a resolution discontinuing these trackage rights was adopted.  *See* NPBL006948.  Discontinuation and removal of this track, which had previously allowed NPBL to access NIT through an efficient, progressive move, means that CSXT (via NPBL) would be required to move its trains through NS's own Portlock yard in order to access NIT, increasing the likelihood of long delays and unequal treatment.  In his deposition, Mr. Joyner described the removal of this track as a "cost-saving measure" benefitting NS, but acknowledged that the removal that NPBL could no longer make a direct move to NIT, but instead was forced to route trains through NS's Portlock yard.  *See* Joyner Dep. at 158:11-160:7.

- **NPBL010915 [AEO]**:



- **NSR_00039781 [AEO]**:

- **NPBL005672**: April 9, 2015 email string between Mr. Moss and Tony MacDonald of CSXT.  Mr. MacDonald writes to confirm their prior conversations that "NPBL is unable to provide an operating window for CSX Train X10008 for movement to NIT over NPBL because NSSR claimed "proprietary operational issues."  Mr. MacDonald also notes that CSXT wishes to use NPBL to access NIT in the future, but that NPBL was "concerned that NPBL could not provide future windows."  Mr. Moss responds to confirm that "NS has prevented our movement over to NIT because of operational issues," which he does not specifically identify, and explaining that he could not offer CSXT future windows because NPBL was "reliant on" NS to obtain those windows.

- **NPBL024288**: April 9, 2015 email from Mr. Moss to Mr. Luebbers, forwarding

SUBJECT TO PROTECTIVE ORDER – CONFIDENTIAL

above email from Mr. MacDonald of CSXT. Mr. Moss states: "FYI. I never said I could not provide future windows." At his deposition, Mr. Luebbers testified that Mr. Moss had forwarded him this email as part of his "*marketing role*" at NS, to make sure he "understood the impact that such an operation would have [on NS]," and that Mr. Moss "was keeping an eye on what was happening and when and how it went" to make sure it did not have a negative impact on NS. *See* Luebbers Dep. 282:2-14 (emphasis added).

Mr. Moss's provision of information to Mr. Luebbers with the intent to ensure that NPBL's requests to move a train for CSXT would not harm NS's marketing and/or sales interests constitutes a discrete overt act by NPBL in furtherance of the conspiracy.

- **NSR_00001460**:



Mr. Moss testified that he sought approval from NS because without NS's approval, it "would be dead in the water." *See* Moss Dep. 159:22-160:5.

**Overt Acts Related to Property Sales:** NS-appointed members of the NPBL Board and NPBL Management (including Ms. Coleman) took actions to block CSXT's attempt in April 2009 to purchase NPBL's Port Norfolk Yard (also known as the "Pinner's Point" yard), with an opening offer of approximately $3.53 million. *See* NPBL006972. NPBL management rejected this offer in July 2009, characterizing it as below market value "despite the current economic environment." *See, e.g.*, NPBL007213. Documents produced in this action make clear, however, that NS believed CSXT's purchase of this property would be detrimental to its monopoly position, and that it conspired with NPBL to reject CSXT's offer on that basis.

The documents and communications identified and described below, taken together and without limitation, evidence multiple specific overt acts by NPBL in furtherance of this objective:

- **NSR_00084773 [AEO]**:



SUBJECT TO PROTECTIVE ORDER – CONFIDENTIAL



- **NSR_00011118:**

*also* **NSR_00177917**

- **NPBL014367 [AEO]:**

**Overt Acts Related to CSXT's 2018 Service Proposal and Governance Demands:**  In 2018, CSXT put forward a series of proposals to NPBL.  Neither NPBL Management nor the NS-appointed members of the NPBL Board (including Jerry Hall, Thomas Hurlbut, and Philip Merilli) fairly considered or analyzed CSXT's proposals.  To the contrary, the NPBL Board flatly refused to take any action on any of the proposals.

First, on March 23, 2018, CSXT submitted to NPBL a proposal for long-term rail service

SUBJECT TO PROTECTIVE ORDER – CONFIDENTIAL

to NIT. *See* CSXT0101884. Shortly thereafter, on April 6, 2018, CSXT demanded a series of remedial action designed to restructure the NPBL's governance system and address serious deficiencies in its policies, procedures, and controls. *See* CSXT0006383. Finally, on April 16, 2018, CSXT submitted a list of qualified candidates to serve as independent members of the NPBL Board of Directors, who CSXT proposed be considered for election at the NPBL Shareholders meeting set for April 18, 2018. *See* CSXT0101908. None of these proposals were ever fairly considered or acted upon by NPBL. NPBL Management and NS-appointed members of the NPBL Board instead took steps intended to delay consideration and block implementation of these proposals.

The documents and communications identified and described below, taken together and without limitation, evidence multiple specific overt acts by NPBL in furtherance of this objective:

- **NSR_00076482**:

*See also* Hulburt Dep. 69:15-25.

  Mr. Hulburt testified that he, Mr. Merilli, and Mr. Hall had a meeting with NS counsel (Summy and McAninley) before the April 18 board meeting, at which the topic of CSXT's rate proposal came up. Hulburt did not think it was a conflict of interest to get legal advice on his duties and responsibilities as a NPBL board member from NS's counsel. Hulburt Dep. 71:7-72:13, 78:23-79:16. Merilli testified that even though he was seeking legal advice on matters involving NPBL, he only consulted NS attorneys regarding CSXT's rate proposal, and that he never consulted with NPBL's attorney on the issue. Merilli Dep. 25:11-29:11.

- **CSXT00119620:** March 28, 2018 email from Jermaine Swafford, a CSXT-appointed member of the NPBL Board, to Mr. Moss, replying to Mr. Moss's email circulating the proposal to the full NPBL Board. Mr. Swafford notes that CSXT's

SUBJECT TO PROTECTIVE ORDER – CONFIDENTIAL

proposal is "a commercial proposal that was addressed from Tony DiDeo of CSXT's business team to NPBL management, not to the NPBL Board," and that, as a result, "Management should evaluate the proposal, and communicate and work with CSXT's business team to develop the proposal into a mutually-acceptable rail transportation contract or equivalent." Mr. Swafford further notes that, assuming those discussions are productive, "whatever related matters (if any) warrant Board action could then be presented to the Board in advance of and for consideration at the Board meeting." Mr. Moss responds that NPBL management "is evaluating the proposal from CSXT," but that it "intends to seek guidance from the board regarding the proposal."

Mr. Moss's actions, including insisting on "guidance" from the NS-controlled NPBL Board rather than evaluating and negotiating CSXT's commercial proposal directly, allowed the NS-appointed members of the NPBL Board to effectively veto any fair consideration of the proposal. Mr. Moss's actions thus constitute discrete overt acts by NPBL in furtherance of the conspiracy.

- **NSR_00051329**:



- **NSR_00006321**:

- **NPBL006228**: April 5, 2018 email from Mr. Moss to CSXT's Tony DiDeo in response to CSXT's service proposal, noting that "NPBL management . . . would recommend to the board for a rate committee to do a complete review of the tariff." *See also* Coleman Dep. 189:19-22. Despite this representation, the NPBL Board did not discuss the proposal at the April 18, 2018 Board meeting and did not vote to form a rate committee to further analyze the tariff or CSXT's proposal. *See* Hulburt Dep. 67:23-68:16; Merilli Dep. 75:11-21.

- **NSR_00035194**: April 17, 2018 letter from NS in-house counsel Greg Summy to CSX in-house counsel Steven Armbrust in which Mr. Summy dismisses the proposals in both CSX's April 6 and 16, 2018 letters as "unjustified."

- **NSR_00044572**: The April 18, 2018 minutes of the Annual Meeting of NPBL Stockholders, reflect a vote on CSXT's governance proposal, on CSXT's motion.

SUBJECT TO PROTECTIVE ORDER – CONFIDENTIAL

The proposal failed upon a vote of 216 shares (those held by CSXT) in favor and 288 shares (those held by NS) opposed. *See also* NPBL000757 (same minutes).

The NS-appointed NPBL Board members testified that they did receive and read CSXT's March 23, 2018 service proposal, but took no action – and confirm the proposal was not discussed at the April 18, 2018 Board meeting, nor was a rate committee convened. *See* Hulburt Dep. 60:10-20, 66:2-12; Hall Dep. 54:14-55:7; 63:12-20; 66:12-24; Merilli Dep. 67:15-18; 75:11-21. To the contrary, the NS-appointed members of the NPBL Board refused to allow for any independent review or evaluation of CSXT's proposal based on purported "conflicts" between the proposal and NPBL's governing documents. *See* CSXT0142657 at -659 (May 18, 2018 letter summarizing statements made at the April 18 meeting).

Similarly, even though at least one NS-appointed NPBL Board member agreed with several of the demands in CSXT April 6, 2018 letter regarding corporate governance issues, the Board took no action in response. *See* Merilli Dep. 57:21-58:20; Hall Dep. 49:15-50:22; *see also* CSXT0142657.

These actions by NS-appointed NPBL Board members, designed to impede fair consideration of CSXT's proposals, constitute discrete overt acts by NPBL in furtherance of the conspiracy.

- **CSXT0000775**: CSXT sent a letter to NPBL on June 22, 2018, reiterating its previous demands and requesting that NPBL take certain immediate actions. Once again, the NPBL Board took no action. Mr. Hulburt testified that he did not take any action with respect to this letter, and that he was never in a meeting in which the Board took any action. (Hulburt Dep. 87:14-20).

- **NPBL005862**: July 27, 2018 letter from Mr. Summy to Mr. Armbrust in response to CSXT's June 22, 2018 request letter. Mr. Summy dismisses the concerns raised therein, and faults CSXT for not "taking formal steps to progress the convening of . . . an NPBL rate committee."

- **NPBL005840**: September 11, 2018 letter from Mr. Moss responding to CSXT's June 22 letter, refusing to take any action to implement changes to the NPBL governance structure or consider CSXT's service proposal. Mr. Hulburt testified that that he did not take any action, did not have any e-mail correspondence with Mr. Moss regarding the letter, and that the Board did not take any action at any meeting that he attended. *See* Hulburt Dep. 88:6-19.

Dated:  September 18, 2020

CSX TRANSPORTATION, INC.
*By Counsel*

/s/ Robert W McFarld

Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)

SUBJECT TO PROTECTIVE ORDER – CONFIDENTIAL

V. Kathleen Dougherty (VSB No. 77294)
McGuireWoods LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia  23510-1655
Telephone: (757) 640-3716
Facsimile:  (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: vkdougherty@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219-3916
Telephone:  (804) 775-1000
Facsimile:  (804) 698-2026
E-mail: bjustus@mcguirewoods.com
E-mail: apeterson@mcguirewoods.com

SUBJECT TO PROTECTIVE ORDER – CONFIDENTIAL

## CERTIFICATE OF SERVICE

I certify that on this 18th day of September, 2020, a true and correct copy of the foregoing

was served on all counsel of record via electronic mail.

/s/ R W McFarland
_____
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
V. Kathleen Dougherty (VSB No. 77294)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia  23510-1655
Telephone: (757) 640-3716
Facsimile:  (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: vkdougherty@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219-3916
Telephone:  (804) 775-1000
Facsimile:  (804) 698-2026
E-mail: bjustus@mcguirewoods.com
E-mail: apeterson@mcguirewoods.com

*Counsel for CSX Transportation, Inc.*