IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**CSX TRANSPORTATION, INC.,**

      **Plaintiff,**

v.                                                          Civil Action No. 2:18-cv-530-MSD-RJK

**NORFOLK SOUTHERN RAILWAY
COMPANY,** *et al.***,**

      **Defendants.**

**NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY'S
REPLY BRIEF IN SUPPORT OF ITS MOTION *IN LIMINE* #5
TO EXCLUDE TESTIMONY FROM PLAINTIFF'S EXPERT HOWARD MARVEL**

**Table of Contents**

Introduction .................................................................................................................................... 3

Argument ........................................................................................................................................ 5

    I.    Marvel offers opinions on railroad operations, and those opinions should be excluded under Rule 702 because he is not a railroad expert. ................................................................. 5

    II.    Marvel's liability opinions should be excluded under Rule 702 because they are not based on sufficient facts and are not the product of reliable principles and methods .......................... 6

        a.    Marvel's opinion on the Belt Line's switching rate is inadmissible ............................... 6
        b.    Marvel's opinion on removal of the "diamond" track is inadmissible. .......................... 7
        c.    Marvel's opinion on failure to offer a scheduling window is inadmissible .................... 8
        d.    Marvel's opinion on drayage as an alternative to rail is inadmissible. ........................... 9

    III.    Marvel's damages opinion should be excluded under Rule 702 because he does not attribute damages to acts within the statute of limitations period ............................................ 11

Conclusion .................................................................................................................................... 13

Defendant Norfolk and Portsmouth Belt Line Railroad Company, by counsel, states as follows for its reply in support of its motion in limine to exclude testimony of CSXT's proffered expert, Howard Marvel, Ph.D.:

## **Introduction**

CSXT's Opposition Brief does not overcome the flaws identified in the Belt Line's motion. All counts against the Belt Line are conspiracy counts, and CSXT has yet to show conspiratorial conduct. Instead, it offers Marvel to posit hypotheticals as liability opinions at trial, none of which are supported, in hopes the jury will substitute those opinions for gaps in CSXT's proof. It also expects Marvel to provide the jury a single indivisible damages figure, without any attribution to acts within the statute of limitations, when case law squarely contradicts that approach.

CSXT's threshold flaw is that Marvel's liability opinions do not satisfy Rule 702. He either did not have the facts (in most cases by his own admission) or did not properly analyze them. As the Fourth Circuit has held, such an opinion "is no more than a hypothesis, and it thus is not knowledge, nor is it based upon sufficient facts or data or the product of reliable principles and methods applied reliably to the facts of the case." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 291 (4th Cir. 2021) (quoting *Nease v. Ford Motor Corp.*, 848 F.3d 219, 232 (4th Cir. 2017)).

CSXT sidesteps this flaw in its brief. Its brief is written as though Marvel is solely a damages expert, citing hypothetical instances of antitrust conduct and opining whether, if true, such conduct resulted in harm to competition or damages to CSXT. In a different case, such an expert might rely on a liability expert to opine about the underlying conduct—one familiar with the field whose liability opinions are tested against the reliability requirements of Rule 702. That did not happen here. As Marvel's reports make clear, he is the *every-expert* for CSXT: both the liability expert who opines that the Belt Line's switching rate, removal of a diamond track, and

3

NS's operating windows are varying shades of bad, and the damages expert who relies on those opinions to calculate their supposed impact.

While the Belt Line acknowledges that an economist may express *economic* opinions with proper foundation, Rule 702 does not allow Marvel to express the liability opinions identified, as he has not satisfied the foundational requirements to make those opinions reliable. And contrary to CSXT's arguments, this foundational omission goes to admissibility, not probative value. *See Smith v. Va. Commonwealth Univ.*, 84 F.3d 672, 676-77 (4th Cir. 1996).

Yet the flaws in Marvel's analysis do not end with liability; they extend to his damages analysis as well.[1] Antitrust law does not allow a damages expert to ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇ without giving the jury any inkling as to which portion is allowable (based on acts within the statute of limitations) and which is not.

The law on this is well established. As the Supreme Court explained, "[T]he commission of a separate new overt act generally *does not permit* the plaintiff to recover for the injury caused by old overt acts outside the limitations period." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) (emphasis added). Thus, the *Gumwood* court, addressing this exact issue, excluded the plaintiff's expert because, just like Marvel, his damages calculation was partly attributable to acts outside the limitations period. *See Gumwood HP Shopping Partners v. Simon Prop. Grp.*, 221 F. Supp. 3d 1033, 1043-45 (N.D. Ind. 2016) (citing cases).

And breaking up damages by year does not solve the problem. The reason is obvious if one imagines a case where 95% of the damages flow from a conspiratorial act some 20 years ago,

---

[1] Perhaps the most obvious indicator that Marvel's damages model is defective is the one identified by NS's expert: when you switch out NS for CSXT and switch the terminal to VIG (Virginia International Gateway across the water), Marvel's model ▇▇▇▇▇▇▇▇▇▇▇▇ ▇ despite there being no claim of anticompetitive conduct at VIG. The Belt Line adopted NS's arguments in this regard and does not repeat them here.

4

whereas 5% flow from an act within the limitations period. Marvel's approach would allow the jury to award 100% of the damages, regardless of the statute of limitations. Perhaps stranger, the jury could award 17%, or 64%, or even 1%. Marvel's totality-of-damages approach offers the jury no way to reasonably determine allowable damages, making it *per se* inadmissible.

## Argument

I.  **Marvel offers opinions on railroad operations, and those opinions should be excluded under Rule 702 because he is not a railroad expert.**

Marvel admitted in his deposition his complete lack of railroad industry experience. In response, CSXT argues that "a well-informed" expert economist may offer "economic" opinions about an industry even when they do not have personal experience in that industry. [2]

But Marvel does not offer only *economic* opinions about railroading. He opines on the *quality* of the railroad decisions—that is, the judgment of the railroad actors involved. And he does not couch these opinions as hypotheticals. As set forth in his report, he intends to testify that, in his expert opinion, "█████████████████████████████████████████████

███████████████," D.E. 466-42 at ¶ 59 (emphasis added), and that "████████████████

████████████████████████████████████████████████████████████████████████████

████████████████." *Id*. at ¶ 60 (emphasis added). These are not economic opinions; they are operational opinions.

To that end, *Lantec* is entirely applicable. In *Lantec*, the Tenth Circuit Court of Appeals affirmed a district court's decision to strike an economist's testimony in an antitrust case for lack of knowledge regarding the technical aspects of the computer science at issue, where he relied

---

[2]   CSXT states that Matthew Wright, NS's expert, similarly has no prior experience in the railroad industry, but also testifies to railroad operations. CSXT ignores that Wright relies on the independent analysis of Thomas Crowley, the Belt Line's railroad industry expert.

instead on generalized "anecdotal evidence" that he turned into expert testimony. *Id*. 2001 U.S. Dist. LEXIS, at *10-11. CSXT expects Marvel to offer the same kind of testimony here.

**II.     Marvel's liability opinions should be excluded under Rule 702 because they are not based on sufficient facts and are not the product of reliable principles and methods.**

    **a.  Marvel's opinion on the Belt Line's switching rate is inadmissible.**

Marvel's sole methodology for determining that the Belt Line's tariff rate is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is to compare the Belt Line's public tariff rate, which all customers pay, against ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* D.E. 466-5 at ¶¶ 54-58.

CSXT argues that this basic comparison of nominal dollars is acceptable because antitrust analysis turns on the rate "actually charged," citing *Laurel Sand*, and the rates Marvel used are "actually charged" to CSXT. But *Laurel Sand*'s holding is clear: a rate's reasonableness depends on its "reasonableness in the context of competition," ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See Laurel Sand & Gravel, Inc. v. CSX Transp., Inc.*, 704 F. Supp. 1309, 1323 (D. Md. 1989) *aff'd*, 924 F.2d 539 (4th Cir. 1991). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ say nothing about the actual market for any other customers, much less competition within that market.

CSXT also claims that, contrary to the Belt Line's argument, Marvel did cite publicly available rates. *See* D.E. 487 at 31-32 (citing public tariff information for Wilmington, Savannah, Jacksonville, and Mobile). Yet citing is not analyzing. For the Port of Mobile, for example, the tariff rate is $240.10 per container, higher than the Belt Line's rate of $210 per loaded railcar well (a well can hold multiple containers). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



Nor does Marvel account for other factors that would ensure an apples-to-apples comparison. He compares only the sticker price because that is all the information he was given:



D.E. 475-4 at 89:12-21 (emphasis added). Nor does Marvel factor in scale economies with mileage or route impediments, notwithstanding his own testimony about the utility of those differentiating factors. *Id*. at 183:11-21.

Marvel also does no analysis of the Belt Line's costs, much less how they affect its switch rate, despite conceding that the rate should cover costs. CSXT ignores this concession, arguing that its proposals would have brought additional *incremental* revenue to the Belt Line, regardless of cost, if the Belt Line's other customers just covered all the Belt Line's fixed costs. D.E. 487 at 34 n.9. This is an excuse for Marvel's failure to account for costs, not a justification. This Court cannot order the Belt Line to operate below cost, nor can it force the Belt Line's other customers (who are not parties here) to subsidize a preferential rate for CSXT.

All these failures render Marvel's rate analysis fundamentally defective and inadmissible under Rule 702. *See Sardis*, 10 F.4th at 291; *Smith*, 84 F.3d at 676-77.

### b. Marvel's opinion on removal of the "diamond" track is inadmissible.

When an expert fails to gather necessary information to test his theories, the expert's opinion "may even be right, [but] it is no more than a hypothesis, and it thus is not knowledge, nor

7

is it based upon sufficient facts or data or the product of reliable principles and methods applied reliably to the facts of the case." *Sardis*, 10 F.4th at 291 (quoting *Nease*, 848 F.3d at 232). This issue goes to admissibility of the testimony, not its weight. *See Smith*, 84 F.3d at 676-77.

Here, Marvel failed to gather even basic information required to understand discontinuance of the "diamond" track. He merely looked at a map and drew a conclusion. He knew he did not have complete information from CSXT, but never received additional information despite his request. *See* D.E. 475-4 at 11:20-112:19; 175:14-176:2. As a consequence, his opinion that the diamond track was discontinued to hinder CSXT is not admissible under Rule 702.

In response, CSXT does not dispute Marvel's ignorance of the facts. Rather, it argues that other facts exist in the record that support a conclusion that the conduct was exclusionary. *See* D.E. 487 at 35. But this does not fix the problem: Marvel did not review those facts. His opinion that the discontinuous is an example of anticompetitive conduct is fundamentally unsupported, and therefore inadmissible under Rule 702 and Fourth Circuit precedent. *Sardis*, 10 F.4th at 291.

    **c. Marvel's opinion on failure to offer a scheduling window is inadmissible.**

Marvel also opines in his report that NS "impedes CSX's on-dock access to NIT through its control of critical scheduling and operational plans for trains moving to and from NIT." *Id*. at ¶ 60. While this opinion does not implicate the Belt Line directly, the Belt Line risks implication at trial based on the conspiracy counts.

The reality is that Marvel's opinion is based on a glaring absence of knowledge about the facts—one that the Belt Line should not be forced to expose only on cross-examination. *See Smith*, 84 F.3d at 676-77. Specifically, Marvel bases his opinion on his belief that the Belt Line moved one, possibly three, trains to NIT for CSXT in 2015, which he views as "a pretty restricted performance." D.E. 475-4 at 176:22-180:8.

8

In fact, the Belt Line moved nine trains for CSXT in 2015. This is confirmed by CSXT's own terminal manager at the time, who no longer works for the company. *See* MacDonald Dep. 193:22-194:5, 215:25-216:13 (**Exhibit 1** hereto). After the first move, because the trains had to travel over NS's line to and from NIT, the Belt Line, CSXT, and NS established a scheduling window and operating plan. And opposite of CSXT's argument, CSXT's terminal manager regarded this plan as "workable," not obstructionist:

> Q. Did you think the operating plan, as it was developed in 2015, was a workable plan in terms of moving intermodal freight to and from NIT using the Belt Line?
> A. I did.

MacDonald Dep. 216:9-13.

CSXT's position that Marvel's opinion should be permitted anyway because "NS repeatedly obfuscated and delayed establishing scheduling windows by citing vague, unexplained 'proprietary issues'," D.E. 487 at 37, is contrary to the testimony. It certainly is not a basis to overlook Marvel's information void, as Marvel himself did not even know the number of trains, much less that a scheduling window was set up at all. Irrelevant views of VPA/VIT personnel likewise cannot save Marvel's opinion, as he relied on none of them.

Under the same precedent above, this opinion is inadmissible.

### d. Marvel's opinion on drayage as an alternative to rail is inadmissible.

The only way to conclude that drayage is not an alternative to on-dock rail access at NIT is to purposefully exclude data from the analysis. And that is what Marvel did. Rule 702 prevents an expert from presenting a purposefully incomplete analysis at trial. *See Sardis*, 10 F.4th at 291; *Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 144 (4th Cir. 1994); *Eastern Auto Distrib., Inc. v. Peugeot Motors of Am., Inc.*, 795 F.2d 329, 338 (4th Cir. 1986).

9

The reason CSXT drays containers at NIT is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

His reason for doing so is obvious: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Evidence of these relative costs is "an essential consideration of any rational purchaser … in making the decision to buy one product over another." *H.J., Inc. v. IT&T*, 867 F.2d 1531, 1539 n.3, 1540 (8th Cir. 1989) (holding that courts are incapable of determining the relevant product market without showing all variables of price competition between products).

Under established law, an expert cannot ignore a critical data point that might conflict with his or her theory. *See Smith v. Va. Commonwealth Univ.*, 84 F.3d 672, 676-77 (4th Cir. 1996) (reversing summary judgment where trial court relied on expert's regression analysis that failed to include critical factors); *see also In re Wireless Tel. Servs. Antitrust Litig.*, 385 F. Supp. 2d 403, 427 (S.D.N.Y. 2005) ("Where an expert conducts a regression analysis and fails to incorporate major independent variables, such analysis may be excluded as irrelevant.").

Here, Marvel's analysis of drayage as an alternative to on-dock rail access ignores a central decision-making factor for choosing drayage versus rail at NIT—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Rule 702 prevents him from presenting such an incomplete analysis at trial, and therefore prevents him from opining that drayage is an inadequate substitute for rail at NIT. *See Sardis*, 10 F.4th at 291 (4th Cir. 2021); *Tyger Constr.* 29 F.3d at 144; *Eastern Auto*, 795 F.2d at 338.

### III. Marvel's damages opinion should be excluded under Rule 702 because he does not attribute damages to acts within the statute of limitations period.

Even ignoring the flaws in Marvel's liability opinions, his failure to identify which damages are attributable to acts within the statute of limitations period and which are not is fatal to his damages opinion, rendering it inadmissible under Rule 702. CSXT cannot overcome this error by ignoring the statute of limitations or simply dividing total damages by years.

The statute of limitations prevents a party from bootstrapping unallowable damages into a case based on new overt acts. The Supreme Court has made this clear: "But the commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period." *Klehr v. A. O. Smith Corp.*, 521 U.S. 179, 189 (1997). The Court further held, ". . .[A]s in the antitrust cases, the plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." *Id*. at 190.

For this reason, when an opinion allows no basis on which to account for a statute of limitations in determining damages, it is error to submit it to the jury. *See Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp.*, 221 F. Supp. 3d 1033, 1043-45 (N.D. Ind. 2016) (excluding expert because his damages calculation included acts outside the limitations period). "[T]he jury would be left entirely to speculation to determine [what damages were] triggered by acts that accrued before or after the limitations period began, or to assess what portion of [damages are] attributable to acts that caused harm within the limitations period." *Id. at* 1044-45.

CSXT's effort to avoid this law cannot be reconciled with this Court's prior holding. In CSXT's effort to save its damages, CSXT argues that all its damages arise from the "totality" of the defendants' alleged acts. *See* D.E. 487 at 29 ("Dr. Marvel calculates CSX's damages as its lost profits based on 'the totality of NS's and NPBL's [ongoing] efforts to foreclose CSX' from on-

dock rail at NIT, including conduct within the limitations period."). Yet this Court already held that CSXT's damages attributable to acts outside the limitations period are "distinct" from its damages arising from acts inside that period: "The damages from establishing the 2008 Uniform Rate *do not encompass the damages sought for other alleged wrongful acts in this action*. Thus, this is not a case where a singular wrongful act results in continuing damages." D.E. 66 at 38-9. CSXT cannot, therefore, present a single indivisible damages figure to the jury.

Notwithstanding this holding, CSXT cites *Lower Lake Erie* from the Third Circuit to salvage Marvel's approach. *See In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144 (3rd Cir. 1993). Put simply, CSXT misconstrues the holding of *Lower Lake Erie*. In that case, the court held that acts outside the statute of limitations period could give rise to an antitrust conspiracy within the limitations period, but only if some injurious act took place within the limitations period. *Id*. at 1173. The court did not hold that the plaintiff could recover damages from before the limitations period. *See id*. (upholding jury instructions that made clear that "damages must [be] caused within the limitations period by an active, injurious conspiracy").

Here, as this Court recognized, CSXT alleges anticompetitive conduct outside the statute of limitations window. *See* D.E. 66 at 38-9. Yet Marvel unquestionably offers only a single damages figure for all of it. And while it is true that his reports contain tables showing CSXT's alleged lost profits by year, from the last quarter of 2009 to 2021, those tables cannot fix the flaw in his analysis. Nothing in those tables describes which damages within any particular year are due to which overt acts, meaning 95% of them could be due to acts outside the statute of limitations window. Or 10% of them. Or none of them. The jury has no way to tell, any more than anyone else does. Where a jury is left only to speculation or guesswork, a plaintiff's damages expert must be excluded. *See Gumwood*, 221 F. Supp. 3d at 1043-45.

## CONCLUSION

Because Marvel's opinions do not survive scrutiny under Rule 702 and *Daubert*, the Court should exclude his testimony at trial and grant the Belt Line all other just relief.

Dated: November 14, 2022

                                  **NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY**

By:     */s/ W. Ryan Snow*
James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Alexander R. McDaniel, VSB No. 92398
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
amcdaniel@cwm-law.com
*Counsel for Norfolk and Portsmouth Belt Line Railroad Company*

## CERTIFICATE OF SERVICE

I certify that on November 14, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a "Notice of Electronic Filing" to all counsel of record who have consented to electronic service.

                                  */s/ W. Ryan Snow*
W. Ryan Snow, VSB No. 47423
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
wrsnow@cwm-law.com
*Counsel for Norfolk and Portsmouth Belt Line Railroad Company*