IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CSX TRANSPORTATION, INC.,
individually and on behalf of NORFOLK
& PORTSMOUTH BELT LINE
RAILROAD COMPANY,

      Plaintiff,

v.                                                      Civil Action No. 2:18-cv-530-MSD-RJK

NORFOLK SOUTHERN RAILWAY
COMPANY, *et al.*,

      Defendants.

      /

**CSX TRANSPORTATION INC.'S MEMORANDUM
<u>IN RESPONSE TO COURT ORDER, ECF NO. 535</u>**

      Plaintiff CSX Transportation, Inc. ("CSX"), by counsel, submits the following memorandum as directed by the Court's December 13, 2022 order regarding supplemental briefing. *See* ECF No. 535 (hereinafter the "Order").

## **<u>INTRODUCTION</u>**

      CSX appreciates the opportunity to submit supplemental briefing in response to this Court's Order and associated questions. Through this action, CSX seeks to hold the defendants accountable for their actions in violation of federal and state law, to recoup its recoverable damages that flow from the same, and to enjoin defendants from continuing such conduct in the future. CSX respectfully submits that the record on summary judgment amply supports proceeding to the finder of fact on all of its claims, including its claims of damages. *See* CSX's Opp. to Defs.' Mot. Summ. J., ECF No. 324. But in response to the direct questions raised by the Court in the instant Order, the law is clear that CSX can proceed on its claim for injunctive relief, even without a

1

showing of monetary damages. This conclusion flows directly from the relevant statutory text and the case law interpreting the same. It is also consistent with the distinction between the remedial functions performed by an action at law for damages, on the one hand, and an action in equity for prospective injunctive relief, on the other hand.

Injunctive relief is specifically authorized by the Clayton Act—as well as by state law—to prevent "*threatened* loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26 (emphasis added). The very word "threatened" confirms that the loss or damage underlying an injunctive claim need not yet have actually occurred. *See California v. Am. Stores Co.*, 495 U.S. 271, 282 n.8 (1990) (noting "the evident import of Congress' reference to 'threatened loss or damage' is" to guard "against harms that are as yet unrealized"). The Supreme Court in *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104 (1986), noted the difference between the statutory text governing a claim for monetary damages under Section 4 of the Clayton Act and an equitable claim for injunctive relief under Section 16: "§ 4 requires a plaintiff to show actual injury, but § 16 requires a showing only of 'threatened' loss or damage; similarly, § 4 requires a showing of injury to 'business or property,' while § 16 contains no such limitation." *Id.* at 111 (internal citation omitted). And the *Cargill* Court ultimately concluded that a private plaintiff under Section 16 need only "allege threatened lost or damage 'of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful.'" *Id.* at 113 (citation omitted); *see also Cash & Henderson Drugs, Inc. v. Johnson & Johnson*, 799 F.3d 202, 215 (2d Cir. 2015) ("Typically, the inability to prove past damages does not compel a finding that the plaintiff faces no threat of antitrust injury in the future."). Here, injunctive relief is available and required, because CSX's losses and damages are continuing.

Though Defendants have unsuccessfully asserted at times that CSX's claims for injunctive

relief would be pre-empted, *see* ECF No. 66 (denying motion to dismiss on this basis), they have never claimed that CSX failed to allege the requisite threatened harm under Section 16 of the Clayton Act or any corresponding requirements under state law.  This is unsurprising given the numerous allegations of ongoing and threatened future harm in CSX's complaint.  *See, e.g.*, Compl. ¶ 87(f) (listing in connection with conspiracy claims, NS "threatening to enter into agreements with NPBL to increase dramatically the charges that NPBL would pay to NS for exercise of NPBL's rights to access NS trackage, if NPBL provided the service to NIT proposed by CSXT"), ¶ 90 ("Defendants' overall course of conduct has *and will continue to*, among other things, maintain rates designed to exclude competition in the relevant market, and otherwise deprive customers of their ability to make an unfettered choice of rail carriers on the merits.") (emphasis added), ¶ 93(f) (allegations similar to paragraph 87(f)), ¶¶ 97 & 104 (allegations similar to ¶ 90); Prayer for Relief (seeking injunctive remedies, including to enjoin "Defendants from *continuing to commit* the above referenced violations of federal and state law") (emphasis added).

Nor did Defendants move for summary judgment on the ground that CSX failed to allege or preserve claims for injunctive relief, or that CSX lacked standing to seek injunctive relief.  As a result, Defendants have waived any claim at this stage that they are entitled to summary judgment as to CSX's injunctive relief claims.  In any event, CSX has adduced more than enough evidence to demonstrate that it faces a serious threat of injury from Defendants' ongoing conspiratorial and monopolistic conduct.  *See, e.g.*, Expert Report of Howard P. Marvel, Ph.D. ("Marvel Report"), available at ECF No. 308-3 at ¶ 43 (opining based on record evidence that lack of on-dock rail is a "significant disadvantage in competition"); ¶¶ 66-67 (observing that Defendants' conduct results in higher costs for CSX).  Indeed, CSX's expert calculated that CSX has sustained millions in ongoing damages in the years subsequent to the filing of this suit—and those damages continue to

3

accrue. *See* ECF No. 469-2 at ¶¶ 9-10 (Dr. Marvel's report with damages for years 2019-2021).

NS asserted in passing at the summary judgment hearing that, without admissible evidence of historical damages, CSX would lack "standing" to pursue prospective injunctive relief. *See* ECF No. 520 (Tr. of Dec. 1 Hrg.) at 61:1-4. That is a curious contention, and it is unclear whether NS intended to argue that CSX would lack Article III standing or antitrust standing. Regardless, neither position has merit. While NS has argued that CSX's claims are pre-empted, it has never argued that CSX lacks Article III standing. Article III standing does not require allegations or evidence of definitive historical monetary damages, or else the Declaratory Judgement Act would be a dead letter. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937) (upholding the Declaratory Judgment Act as consistent with Article III). And the Clayton Act, as discussed above, requires only *threatened* harm or loss to support a claim for injunctive relief. That Act certainly provides for injunctive relief to enjoin continuing harm like that inflicted by Defendants.

The law is clear that CSX is entitled to proceed to a bench trial seeking injunctive relief to protect against threatened future harm, regardless of whether it can recover damages for injuries already inflicted.[1] With each day that passes, CSX's losses from Defendants' ongoing anticompetitive conduct mount. The Surface Transportation Board ("STB"), for its part, has stated that it has fully adjudicated the Court's referred question, and also that it would benefit from this Court's findings at trial should any further STB proceedings be required on issues within the STB's jurisdiction, such as the pending and stayed trackage rights "dispute" between NS and NPBL.

---

[1] CSX respectfully submits that the jury trial should proceed as scheduled on all of CSX's claims, including those for damages. To the extent certain of the Court's questions raise a concern with whether CSX's proposed damages model properly distinguishes or accounts for damages resulting from acts outside the applicable limitations period, CSX submits that its model is consistent with the Clayton Act and Supreme Court and other case law and, in any event, is not a basis for a grant of summary judgment. *See* ECF No. 324 at 42-51; ECF No. 487 at 27-29. CSX would be pleased to submit supplemental briefing on that particular issue, if it would further assist the Court.

Further, as this Court already found in its ruling on Defendants' motions to dismiss, the injunctive relief requested in CSX's prayer for relief is squarely within this Court's jurisdiction to grant, without requiring further proceedings before the STB. Given the very significant ongoing harm that CSX has endured from Defendants' continued conduct throughout the pendency of this case, CSX respectfully requests to proceed with determinations of liability, damages, and injunctive relief on the present trial schedule.

## RELEVANT BACKGROUND

On October 4, 2018, CSX filed its Complaint, asserting federal claims under Sections 1 and 2 of the Sherman Act, as well as state law claims for statutory business conspiracy, common law civil conspiracy, and breach of contract (among others). *See* ECF No. 1. In its prayer for relief, CSX explicitly asked the Court to "enter an injunction against Defendants [to prevent them] from continuing to commit the above referenced violations of federal and state law." *Id.* at 40. As this Court recognized in denying Defendants' motions to dismiss, "[i]f CSX were to prevail in this Court on the federal antitrust claims or state law business conspiracy claims in this suit, this Court may award damages for CSX's previous losses or injunctive relief to prevent [NS] and [NPBL] from continuing to carry out such an antitrust or business conspiracy." ECF No. 66 at 23.

In discovery, CSX again confirmed that it seeks through this action an injunction that (1) "prevent[s] NSR and NPBL from continuing to carry out any violations of federal or state law, including antitrust or business conspiracy," (2) "restor[es] CSX's shareholder rights and/or establish[es] an independent board structure of NPBL," and (3) direct[s] NPBL to approve CSX's Service Proposal." *See* **Exhibit A** (CSX's Obj. & Resp. to NS Interrog. No. 9). Neither NS nor NPBL has moved for summary judgment on whether CSX is entitled to injunctive relief, as pleaded in its Complaint and preserved throughout discovery. *See generally* ECF Nos. 303, 308, 383, 388.

On May 18, 2021, the Court issued an order granting in part and denying in part NS's motion for judgment on the pleadings or to refer the case to the STB. *See* ECF No. 395. In that decision, the Court reaffirmed its ability to issue prospective injunctive relief on CSX's claims, *see id.* at 26-28, and referred a question to the STB: whether NS acquired by merger STB "approval" to "control" NPBL, thus rendering it immune from CSX's claims, *id.* at 29. The STB issued a decision on this question on June 17, 2022. *See* ECF No. 401-1. The STB concluded that its predecessor, the Interstate Commerce Commission ("ICC") had *not* authorized NS to "control" NPBL, thus mooting any question of whether such authorization made NS immune from suit under federal antitrust and state conspiracy laws. *See id.* at 1. The STB's decision fully and finally addressed the Court's referred question. *See id.* at 17. The STB expressly stated that any further decision about the future "control" of NPBL "would be beyond the scope of this proceeding and the District Court's referral." *Id.* The STB further stated that it expected the parties to "take appropriate steps to address the unauthorized control issue immediately following resolution of the district court proceeding, including any appeals," and noted that any future STB proceedings on these issues "would benefit from the findings of the District Court." *Id.* at 17 & n.25.

CSX expected that the Court would take up the issue of appropriate injunctive relief upon conclusion of the jury trial, scheduled for January 18, 2023, after the jury determined liability and awarded damages on CSX's claims. Should the Court ultimately determine that a bench trial on injunctive relief is appropriate for January 18, CSX will submit a detailed motion for injunctive relief, including proposed findings of fact and conclusions of law. It remains CSX's position, however, that a jury trial on liability and damages should first occur on January 18.

## ARGUMENT

The Court's Order requested the parties submit supplemental briefing on the issuance of

an injunction, and it directed the parties to address several specific questions. CSX accordingly organizes its discussion to first address the pertinent law regarding injunctions generally (Part I below), and to then answer the specific questions posed by the Court (Part II).

**I.    CSX is Entitled to Injunctive Relief on Each of its Causes of Action.**

Injunctive relief is an available remedy on each of CSX's remaining claims. *See* 15 U.S.C. § 26 ("Any [] corporation [] shall be entitled to sue for and have injunctive relief [] against threatened loss or damage by a violation of the antitrust laws."); Va. Code § 18.2-500 (statutory conspiracy); *CaterCorp, Inc. v. Catering Concepts, Inc.*, 431 S.E.2d 277, 281-82 (Va. 1993) (common law conspiracy); *Levisa Coal Co. v. Consolidation Coal Co.*, 662 S.E.2d 44, 61 (Va. 2008) (breach of contract).[2]

This remains true even assuming *arguendo* that CSX could not prove at trial historical damages stemming from the defendants' anticompetitive conduct. Antitrust damages, under Clayton Act § 4, are available to those who have already been "injured in . . . business or property," 15 U.S.C. § 15(a), while Clayton Act § 16 authorizes injunctive relief to guard against "*threatened* loss or damage," *id.* § 26 (emphasis added). The fact that damages and injunctive relief are separately provided for in separate sections of the Clayton Act only confirms that they are separately available remedies. Of course, antitrust plaintiffs often seek both types of relief at the same time, but nothing prevents a plaintiff who cannot prove backward-looking damages under § 4 from seeking forward-looking injunctive relief under § 16. *See Cargill, Inc.*, 479 U.S. at 113 (explaining that "[s]ections 4 and 16 are thus best understood as providing complementary

---

[2] For ease of reference, CSX focuses its discussion on the Clayton Act, but the same principles apply to its state law claims. An injunction is an action in equity for prospective relief, whereas a claim for damages is an action in law for compensation. The two are separately available under Virginia law. *Worsham v. Worsham*, 867 S.E.2d 63, 74-75 (Va. App. 2022) (noting that "injunctive relief" and "money damages" are distinct and "alternative" remedies)

remedies for" antitrust violations); *Am. Stores Co.*, 495 U.S. at 282 n.8 (explaining that the purpose of § 16 is "to expand [] availability" of remedies to include those "against harms that are as yet unrealized").

Case law confirms that claims for injunctive relief under § 16 may go forward even if a plaintiff cannot prove legally cognizable damages under § 4. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130 (1969) ("*Zenith I*") (explaining that injunctive relief under § 16 "is characteristically available even though the plaintiff has not yet suffered actual injury"). Indeed, the Supreme Court has explained that, "[e]ven where there is an inability to prove that concerted activity has resulted in legally cognizable damages," antitrust claims may proceed "though such a failure may confine the available remedies to injunctive relief." *McLain v. Real Est. Bd. of New Orleans, Inc.*, 444 U.S. 232, 243 (1980). It is indisputable that an inability to prove historical damages does not bar claims for prospective injunctive relief. *See, e.g.*, *In re Nexium (Esomeprazole) Antitrust Litig.*, 845 F.3d 470, 474 (1st Cir. 2017) ("A plaintiff seeking relief under section 16 need not show actual antitrust damages but only a threatened loss or damage."); *Cash & Henderson*, 799 F.3d at 215 ("Typically, the inability to prove past damages does not compel a finding that the plaintiff faces no threat of antitrust injury in the future."); *Van Dyk Research Corp. v. Xerox Corp.*, 631 F.2d 251, 255 n.2 (3d Cir. 1980) ("injunctive relief may be appropriate where damages are not"); *Amtrol, Inc. v. Vent-Rite Valve Corp.*, 646 F. Supp. 1168, 1178 (D. Mass. 1986) ("If the proof as to damages is insufficient, but the injury is clear, Clayton Act § 16 provides an alternative injunctive remedy to right the wrong.").

For example, in *AngioDynamics, Inc. v. C.R. Bard, Inc.*, the plaintiff asserted antitrust claims based on allegations that the defendant was engaged in an ongoing pattern of exclusionary and anticompetitive conduct. *See* 537 F. Supp. 3d 273 (N.D.N.Y. 2021). The defendant later

8

moved to exclude the plaintiff's damages expert based on flaws in his methodology. *See id.* at 341. The district court observed that its exclusion of the expert's damages analysis would not result in dismissal of the plaintiff's antitrust claims. *Id.* at 344. It first explained that the plaintiff's inability to quantify damages was not a valid basis to grant summary judgment.[3] *See id.* Moreover, the plaintiff's failure to proffer a "viable theory by which [to] quantify its past damages" did not preclude it "from continuing to pursue its claim for injunctive relief under Section 16 of the Clayton Act." *Id.* As the court explained, "a plaintiff that failed to prove [or quantify] past damages" for anticompetitive conduct "may still pursue a claim for forward-looking injunctive relief" to prevent future harm from that conduct. *Id.*

NS urged a contrary conclusion during the hearing on its motion for summary judgment. With "no evidence of damages," NS suggested, CSX would lack standing to advance claims for injunctive relief. *See* ECF No. 520 (Tr. of Dec. 1 Hrg.) at 61:1-4. NS is simply wrong. Its argument ignores the Supreme Court's admonition that "standing is not dispensed in gross"—in other words, that plaintiffs' requirements to prove standing vary based on the "claim that they press and [the] form of relief that they seek." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021); *see also id.* at 2210 ("a plaintiff's standing to seek injunctive relief does not necessarily mean that the plaintiff has standing to seek retrospective damages"). The requirements for standing to seek injunctive relief are well-established—and, contrary to NS's suggestion, they do not include "evidence of damages." ECF No. 520 at 60:24. A plaintiff seeking injunctive relief

> must show that he is under threat of suffering "injury in fact" that is concrete and

---

[3] The *AngioDynamics* court excluded the plaintiff's expert's damages analysis after finding that the underlying data—the plaintiff's own "rough estimate" of the percentage of products sold for standalone use, which could not be confirmed by empirical data—was not sufficiently reliable under *Daubert*. *See* 537 F. Supp. 3d at 337-40. This is a far cry from Dr. Marvel's analysis, which is based on comprehensive, reliable empirical data that reflects detailed information about all container movements during the relevant period. *See* ECF No. 487 at 5-11.

>particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

*Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

CSX plainly satisfies these requirements based on the record in this case. CSX has alleged and proffered substantial evidence that it has and will continue to suffer substantial harm as a result of Defendants' ongoing conspiratorial and monopolistic conduct, which hamstrings CSX's ability to compete fairly at NIT and across its network. *See* ECF No. 1 at ¶¶ 87(f), 90, 93(f), 104; ECF No. 324 at 6-40 (detailing evidence of Defendants' anticompetitive conspiracy and the resulting historical and continuing harm to both CSX and ocean carriers). The threat of future harm is certainly "actual and imminent." Indeed, Defendants have put forward no evidence or argument suggesting they have ceased the anticompetitive conduct causing harm to CSX—to the contrary, when CSX filed its complaint in 2018, Defendants had just a few months before taken concrete steps to prevent fair consideration of CSX's 2018 Service Proposal. *See* ECF No. 1 at ¶¶ 38-42; ECF No. 324 at ¶¶ 62-71. And Defendants have proffered no evidence suggesting they have ceased or abandoned the course of conduct at issue. The harm to CSX is also the opposite of "conjectural or hypothetical"—CSX's expert has quantified CSX's lost profits by year—including millions of dollars that have accrued since CSX filed suit. *See* ECF No. 469-2. And finally, as this Court has already recognized, it could certainly fashion injunctive relief that would prevent Defendants from continuing to harm CSX in the future. *See* ECF No. 66 at 23.

To be sure, antitrust claims—though not Article III standing—require proof of "antitrust injury." *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) (antitrust plaintiff must prove an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful"); *Cargill*, 479 U.S. at 113 (plaintiff

10

seeking injunctive relief under § 16 must show antitrust injury). But as the Supreme Court has recognized, this means only that an antitrust plaintiff seeking an injunction "must allege *threatened* loss or damage of the type the antitrust laws were designed to prevent," which "flows from that which makes defendants' acts unlawful." *Cargill*, 479 U.S. at 113 (emphasis added). It does not mean that an antitrust plaintiff seeking injunctive relief must prove *actual* "loss or damage." *Id.*

The *Cargill* Court made clear that the "[s]tanding analysis under § 16 will not always be identical to [the] standing analysis under § 4" due to "the difference in the remedy each section provides." *Id.* at 111 n.6; *see also Lucas Automotive Engr., Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1234 (9th Cir. 1998) (under § 16, "a private plaintiff must generally meet all the requirements that apply to the damages plaintiff, except that the injury itself need only be threatened [and] damage need not be quantified"); *McGahee v. N. Propane Gas Co.*, 858 F.2d 1487, 1501 (11th Cir. 1988) ("a private plaintiff seeking injunctive relief under [] § 16 must show a *threat* of antitrust injury, which means threat of an injury for which a plaintiff could *eventually* claim treble damages") (emphases added). Again, ample record evidence supports CSX's ability to prove such threatened antitrust injury here. There is little question CSX's exclusion from on-dock rail access at NIT is an "injury of the type the antitrust laws were intended to prevent." *Brunswick*, 429 U.S. at 489. And because Defendants persist in this exclusion, the threat of future harm continues. *See supra* at 9-10.

## II.     The Court's Specific Questions.

In its Order, the Court posed four specific questions. *See* ECF No. 535 at 2-3. Two are answered largely by the foregoing, but CSX addresses all four below in the interest of clarity.

### A.     *Question One*

In its first question, the Court asks:

11

> Relevant to the standing issue raised at oral argument, if the Court found that NSR's actions in 2015 (or alternatively, NSR and NPBL's collective actions in 2015) caused CSX new and accumulating harm (including a short-term loss of business), but that CSX did not seek damages for that harm in this case, would a trial on injunctive relief still be necessary?

*Id.* at 2.  The answer to this question is unquestionably yes.

As set forth above, CSX is entitled to injunctive relief even if it cannot proceed on its remedy of damages.  *See supra* Part I.  For each of its remaining claims, CSX has standing to seek injunctive relief under Article III, and CSX has plainly demonstrated the threat of future harm sufficient to meet the antitrust injury requirement for its claims under the Sherman Act, as well as its entitlement to this relief under Virginia law.  Discovery is complete and Defendants have not moved for summary judgment on injunctive relief.  CSX is entitled to a full trial on the merits.

To the extent this question and the others reflect a concern with CSX's damages model, CSX respectfully suggests supplemental briefing on an expedited basis on the statute of limitations, including the exception thereto for instances in which damages would have been too speculative to prove.  CSX's damages claims are consistent with federal and state law, and Supreme Court precedent, and are not subject to summary judgment in any event.  As detailed in CSX's oppositions to Defendants' summary judgment, CSX is entitled to recover historical damages caused by Defendants' anticompetitive conspiracy and *maintenance* of monopolization within the statutory period.  See ECF No. 324 at 49-51, ECF No. 487 at 27-29.  These damages flow from the totality of Defendants' conduct—i.e., the anticompetitive effect of Defendants' exclusionary practices considered together, including the 2015 obstruction and delay of CSX's train movements to NIT, the trackage rights "dispute" that began in 2016 and threatened to raise CSX's costs, and the 2018 effective rejection of CSX's service proposal to access NIT—not the

harm caused by each of Defendants' acts in isolation.[4] *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 333 (1971) ("*Zenith II*") (rejecting argument that the Clayton Act "permits the recovery only of those damages caused by overt acts committed during the four-year [limitations] period."); *see also LePage's v. 3M*, 324 F.3d 141, 162 (3d Cir. 2003) (in § 2 monopolization case, approving generalized damages calculation premised on market share where "it would be extremely difficult, if not impossible, to segregate and attribute a fixed amount of damages to any one act as the theory [in a monopolization case is] not that any one act in itself was unlawful, but that all the acts taken together show[ ] a § 2 violation"); P. Areeda & H. Hovencamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application, § 320c (2022 supp.) (citing *Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997), to explain that, in the case of continuing antitrust conspiracies, "plaintiffs are ordinarily limited to damages for the four years immediately preceding the filing of their lawsuit," but "[b]y the same token, where it is difficult to pinpoint which recent acts implementing an unlawful conspiracy caused which damages, the plaintiff has been allowed to recover all damages occurring during the four years preceding suit").

**B.**     ***Question Two***

In its second question, the Court asks:

> Similarly, if the Court found that NSR's actions in 2018, (or alternatively, NSR and NPBL's collective actions in 2018) caused CSX new and accumulating harm, but that CSX's damages model was foundationally flawed for failing to identify any non-speculative method for segregating damages caused by time barred act and damages caused by recent overt acts, would a trial on injunctive relief still be necessary?

ECF No. 535 at 3.  The answer to this question is also yes.

---

[4] The same is true on CSX's state-law conspiracy claims. *See Blackwelder v. Millman*, 522 F.2d 766, 776 (4th Cir. 1975) (reversing summary judgment where damages resulting from totality of conspiracy continued into limitations period).

Again, CSX is entitled to injunctive relief on its claims even in the absence of any claim for damages. *See supra* Part I. CSX has standing under Article III to seek such relief and has plainly met the "threatened" injury requirement, as well as meeting the requirements under Virginia law. Discovery is complete and defendants have not moved for summary judgment on injunctive relief. CSX is now entitled to a full trial on the merits.[5]

### C. *Question Three*

In its third question, the Court asks:

> If a trial were to proceed only on injunctive relief, should that trial occur before further action by the STB, or would CSX (as the potentially aggrieved party) be more likely to avoid further alleged injury by proceeding first before the STB?

ECF No. 535 at 3. The answer to this question is the former: the trial on injunctive relief should occur before any further action by the STB.

This case has already been stayed for an extended period of time while the STB considered a question referred by this Court. The STB fully resolved that question and returned its answer to this Court. NPBL in fact suggested that the STB could broaden its proceeding to consider other issues, but the STB rejected that suggestion and specifically noted that "any future decision concerning control would benefit from the findings of the District Court" on CSX's causes of action. ECF No. 401-1 at 18. And the STB noted that it "expects the parties" to resolve those issues "following resolution of the district court proceedings, including any appeals." *Id.* In short, the STB has spoken and it concluded its proceedings on the referred question, and it will look to this Court's findings in any future proceedings that may be needed. At this stage, the STB would

---

[5] As with Question One, to the extent this question reflects a concern with CSX's damages model, CSX respectfully suggests supplemental briefing to address why CSX's damages claims are consistent with federal and state law, and Supreme Court precedent, and are not subject to summary judgment in any event. *See also supra* at 11-13.

14

not have the benefit of the factual record built before this Court proving Defendants' violations—which the STB itself has already indicated it would benefit from.

CSX's antitrust and conspiracy claims are not before the STB, and the STB does not sit to enjoin such violations. While the STB may undertake further proceedings relating to this dispute after the Court addresses CSX's antitrust claims (i.e., deciding the trackage rights fee issue currently held in abeyance), it has made clear that it would benefit from this Court's findings on CSX's antitrust claims before those proceedings occur. CSX thus respectfully submits that the Court can and should proceed to consider what injunction is appropriate in the first instance, without further referral to the STB.

### D. *Question Four*

In its fourth question, the Court asks:

> If a trial were to proceed only on injunctive relief, do the parties agree that it would be a bench trial?

ECF No. 535 at 3. The answer to this question is yes.

If a trial goes forward on CSX's injunctive claims only, it should be a bench trial. In the ordinary course, a trial before a jury would proceed to a verdict, after which CSX would file its motion for injunctive relief. However, if this Court limits the issues for trial to injunctive relief only, the Court would be the finder of fact as the Court decides the equitable issue of injunctive relief. *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 719 (1999) ("settled law" that jury trial right does not apply to "suits seeking only injunctive relief").

### CONCLUSION

For these reasons, as well as those set forth in CSX's opposition to Defendants' motions for summary judgment, Defendants' motions for summary judgment should be denied.

Dated:  December 16, 2022				Respectfully submitted,

                                             **CSX TRANSPORTATION, INC.**
                                             *By Counsel*

*/s/ Benjamin L. Hatch*
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
V. Kathleen Dougherty (VSB No. 77294)
Jeanne Noonan (VSB No. 87963)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia  23510-1655
Tel.:  (757) 640-3716
Fax:  (757) 640-3930
rmcfarland@mcguirewoods.com
bhatch@mcguirewoods.com
vkdougherty@mcguirewoods.com
jnoonan@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
W. Cole Geddy (VSB No. 93511)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219-3916
Tel.:  (804) 775-1000
Fax:  (804) 698-2026
bjustus@mcguirewoods.com
apeterson@mcguirewoods.com
cgeddy@mcguirewoods.com

## CERTIFICATE OF SERVICE

I certify that on this 16th day of December, 2022, a true and correct copy of the foregoing was served on all counsel of record via Notice of Electronic Filing by filing with the Court's CM/ECF system.

**CSX TRANSPORTATION, INC.**
*By Counsel*

*/s/ Benjamin L. Hatch*
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
V. Kathleen Dougherty (VSB No. 77294)
Jeanne Noonan (VSB No. 87963)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia  23510-1655
Tel.:  (757) 640-3716
Fax:  (757) 640-3930
rmcfarland@mcguirewoods.com
bhatch@mcguirewoods.com
vkdougherty@mcguirewoods.com
jnoonan@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
W. Cole Geddy (VSB No. 93511)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219-3916
Tel.:  (804) 775-1000
Fax:  (804) 698-2026
bjustus@mcguirewoods.com
apeterson@mcguirewoods.com
cgeddy@mcguirewoods.com