IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**CSX TRANSPORTATION, INC.,**

      Plaintiff,

v.                                              Civil Action No. 2:18-cv-530-MSD-RJK

**NORFOLK SOUTHERN RAILWAY
COMPANY,** *et al.***,**

      Defendants.

## NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY'S RESPONSE TO ORDER DIRECTING BRIEFING ON INJUNCTIVE RELIEF

Defendant Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line"), by counsel, responds as follows to this Court's Order entered December 13, 2022 (ECF 535) directing the parties to address issues related to injunctive relief.

### Questions Presented

In the Order, the Court seeks further briefing on "the degree to which a summary judgment ruling in Defendants' favor on the issue of monetary damages would impact the request for injunctive relief advanced by Plaintiff CSX Transportation, Inc. ("CSX")." ECF 353 at 1-2. The Court also invites comment on four specific issues related to:

(1) whether trial on injunctive relief would still be necessary if the Court found that actions in 2015 caused CSX "new and accumulating harm (including a short-term loss of business)," but that CSX did not seek damages for that harm in this case;

(2) whether trial on injunctive relief would still be necessary if the Court found that actions in 2018 caused CSX "new and accumulating harm," but that CSX's damages model was "foundationally" flawed;

(3) whether, if a trial were to proceed on only injunctive relief, that trial should occur before or after further action by the STB; and

(4) whether, if a trial were to proceed only on injunctive relief, the parties agree that it would be a bench trial.

**Response**

I.     **No injunctive relief is available against the Belt Line.**

    A.     **CSX cannot show concerted action.**

As a threshold matter, the short answer to all the Court's questions with respect to the Belt Line is that no injunctive relief is available because CSX has not shown, and cannot show, concerted action. Judgment should be entered for the Belt Line on all claims on this ground alone, including injunctive relief.

CSX bears a heavy burden on this point—one that it has never overcome despite being ordered to disclose its proof. *See* ECF 236. Under state law, CSX must make such a showing by clear and convincing evidence. *See Dunlap v. Cottman Transm. Sys.*, 287 Va. 207, 215 (2014). Under federal law, it must additionally "bring forward evidence that excludes the possibility that the alleged co-conspirators acted independently or based upon a legitimate business purpose." *Laurel Sand & Gravel, Inc. v. CSX Transp., Inc.*, 924 F.2d 539, 542 (4th Cir. 1991).

CSX has done none of this, much less identified facts so material as to satisfy its burden even viewed in its favor. In fact, even the alleged 2015 and 2018 acts to which the Court referred at the summary judgment hearing (obstructing CSX moves in 2015 and voting against CSX's governance proposal in 2018) are asserted only against NS, not the Belt Line.

    B.     **Injunctive relief is precluded by 15 U.S.C. § 26.**

The federal injunction statute in 15 U.S.C. § 26 also forecloses CSX's relief. Under 15 U.S.C. § 26, an antitrust plaintiff is "entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws," but the statute contains an express exception for claims against common carriers. It states, "Provided, *That nothing herein contained shall be construed to entitle*

*any person, firm, corporation, or association*, except the United States, *to bring suit for injunctive relief against any common carrier* subject to the jurisdiction of the Surface Transportation Board under subtitle IV of title 49." *Id*. (emphasis added).

NS and the Belt Line are both common carriers subject to the jurisdiction of the STB. This is not disputed, nor can it be since all parties are presently before the STB on various issues. STB jurisdiction also already encompasses the specific injunctive relief CSX seeks. Consequently, as a matter of law, CSX cannot obtain injunctive relief in this case.

### C. CSX does not assert a claim for relief that this Court can grant.

Equally fatal for CSX, even ignoring the first two points, is CSX's failure to assert injunctive relief that this Court can grant. The questions posed by the Court spotlight this defect—that is, what exactly is the injunctive relief that CSX seeks? Or stated differently, what exactly does CSX want the Court to do about any alleged actions, whether in 2015 or 2018, such that the parties should have a trial? Examination of this threshold question confirms that (1) CSX's general request is too vague to permit relief; and (2) CSX's only specific request is not available.

Under Rule 37(c), CSX is limited to the forms of relief it disclosed. The Complaint contains just two paragraphs on injunctive relief in the wherefore clause:

> 4) That this Court enter an injunction against Defendants from continuing to commit the above referenced violations of federal and state law [referring to entire Complaint];
>
> 5) That this Court enter an injunction against NS, NPBL, and the Individual Defendants, as appropriate, that restores CSXT's right as a co-equal shareholder and/or establishes an independent board structure as previously proposed by CSXT and that directs that NPBL approve CSXT's Service Proposal; [1]

ECF 1 at 40.

---

[1] CSX did not ask for an order for the Belt Line to approve CSX's 2018 service proposal in the Proposed Final Pretrial Order, seemingly abandoning this request. *See* ECF 517-1 at 12.

The first request is completely undefined.  It asks for no specific relief and CSX offered no clarity in discovery, either.  *See* Answer to NS Interrogatory No. 9 (repeating requests in wherefore clause when asked for specific relief sought) (**Exhibit 1**).  Where a plaintiff fails to specify the injunctive relief it seeks, a court cannot fashion such relief, and a defendant should not be forced to proceed to trial armed only with best guesses about what is actually at stake.  *See, e.g., Williams v. Recovery Sch. Dist.*, 859 F.Supp.2d 824, 833 (E.D. La. 2012) (equitable claims that contain language such as 'stop all violations' or 'take all necessary steps to ensure' result in fatally overbroad injunction requests); Wright & Miller § 2955 at 361 (generic "obey the law" injunction requests "uniformly are found to violate the specificity requirement" of Rule 65).  Injunctive relief for antitrust claims also must be tailored to the specific "threatened conduct that will cause loss or damage," 15 U.S.C. § 26, and nothing in CSX's first request is tailored to any specific harm.

The second request is defined, but unavailable against the Belt Line.  CSX has never offered any legal basis for this Court to "restore[] CSXT's right as a co-equal shareholder" (whatever that means), since CSX is a 43% shareholder, or to "establish[] an independent board structure," since that is a shareholder decision.  The Belt Line has no power to change its ownership or board structure, meaning no injunction against the Belt Line could do so either.

CSX also has never disputed that this Court cannot set the Belt Line's switching rate, *see* 49 U.S.C. § 10501(b), but that would unquestionably be the result if the Court were to force the Belt Line to accept CSX's service proposal.

And even if this Court could force the Belt Line to transport a massive volume of traffic at a specific rate, the Court cannot be expected to create contract terms through injunctive relief.  *See, e.g., Verling v. Quarles*, 217 Va. 188, 191 (1976) (reversing judgment that "made a material departure from the terms of the contract and, in effect, made an agreement for the parties and then

sought to compel them to execute it"). Yet CSX admits in its proposal that the proposed terms are intended only as a starting point to *lead to* a "rail transportation agreement":

> The following is a proposal of terms which can serve *as the foundation for a definitive rail transportation agreement*. We are open to discussion on all points, and welcome your input throughout the process, though we want to move this to conclusion swiftly and see no reason it cannot be.

*See* ECF 297-5 at 2 (emphasis added).[2]

This analysis—focused on the actual injunctive relief CSX seeks—leads to one conclusion: the relief CSX seeks is either (1) too vague to permit an award, or (2) unavailable against the Belt Line. Either way, no trial on injunctive relief is warranted.

## II. Answers to specific questions confirm unavailability of injunctive relief.

### A. No trial on injunctive relief is required based on actions in 2015.

This question is answered by 15 U.S.C. § 26. Even so, the Belt Line offers input below assuming *arguendo* 15 U.S.C. § 26 did not exist. In answering this question, the Belt Line assumes that the Court refers to actions by NS that CSX claims limited its access to NIT in 2015.

These allegations are not against the Belt Line. Documentary evidence shows that the Belt Line did everything it could to make the moves happen, despite being berated by both owners in the process. *See* ECF 297 at 10-11 and cited exhibits. CSX's proffered expert, in a line read by CSX's counsel at the hearing, sums up CSX's position succinctly: "Correspondence between CSX and NPBL reveals that the main impediment was 'that NS prevented [NPBL's] movement over to NIT because of operational issues'." ECF 299-1 at 30. Because these claims are not against the Belt Line, no injunctive relief against the Belt Line is either requested or warranted.

---

[2] This statement belies CSX's argument that it sought a rate for any customer, not just itself.

Yet even ignoring the lack of allegations against the Belt Line, three additional reasons establish that no trial on injunctive relief is necessary: First, the acts in 2015 happened seven years ago. Put simply, there is no continuing violation to enjoin. *See In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, 2021 U.S. Dist. LEXIS 59875 at *25 (N.D. Cal. 2021) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects.")). Second, CSX has (or had) an adequate remedy at law—to sue for damages caused by the 2015 acts. Third, as discussed above, CSX never identified any specific injunctive relief it seeks to redress events in 2015, just like it never identified any damages.[3]

### B. No trial on injunctive relief is required based on actions in 2018.

This question is also answered by 15 U.S.C. § 26. Even so, the Belt Line offers input below assuming *arguendo* 15 U.S.C. § 26 did not exist. In answering this question, the Belt Line assumes that the Court refers to NS's shareholder vote against CSX's governance proposal in 2018. The only other act in 2018 relates to CSX's service proposal, but CSX conceded that not even its own appointed Board members moved to accept the proposal, so there was no rejection by the Belt Line

---

[3]    The Belt Line acknowledges that the Court's question presupposes a hypothetical finding that actions in 2015 caused "new and accumulating harm." Nevertheless, there is good reason not to make such a finding. The Supreme Court in *Klehr* was explicit that even a new act within the statute of limitations cannot allow recovery unless it causes harm "over and above the harm that the earlier acts caused." 521 U.S. 179, 190 (1997). No acts in 2015, even as alleged, caused harm "over and above" any previous harm. CSX's problem, to use the Court's concentric circles analogy, is that CSX created, through its damages model, an all-encompassing damages "circle" all the way back to 2009, identifying the "totality" of all alleged efforts to block rail access at NIT, whether physically, financially, or otherwise. The size of this "circle" generated massive damages year over year, but also came with a significant downside: the very high risk that the circle, as described, would be so large as to inevitably encompass any new conduct as well, making CSX's ability to point to new harm "over and above" any existing harm nearly impossible. That this risk has been realized is not the Belt Line's doing; it is the result of CSX's own strategic decisions and the effect of the controlling law in *Klehr*.

as originally pled. In fact, the only person who undisputedly suggested a rate committee to study the proposal at the 2018 Board meeting was the Belt Line's president, Cannon Moss. [4]

CSX's complaints about the 2018 governance vote are not against the Belt Line, meaning no injunctive relief against the Belt Line is either requested or warranted. As noted above, the Belt Line has no power to change either its ownership or board structure, so no injunction against it could possibly redress any harm to CSX.

Equally important, it is not at all clear that even if the Belt Line had such power, the injunctive relief sought in the Complaint would redress the harms alleged in the Complaint. What, for example, is the continuing antitrust violation that CSX seeks to remedy by changing the Board structure? If it is failure of the Board to give due consideration to CSX's service proposal, CSX alone is to blame; changing the Board composition will not alter the fact that CSX's Board appointees did not move to approve their own proposal, and did not act on Mr. Moss's suggestion for a rate committee. If the violation is something broader, reconstituting the Board will still not ensure a different result for CSX. And no change in Board makeup will somehow give CSX an additional ownership interest in the Belt Line beyond its current 43%.

All these problems weigh strongly against trial on injunctive relief for acts in 2018, in addition to the fact that the STB has already indicated its intention to address "control" issues after this case concludes, as discussed below. *See* ECF 535 n.1.

---

[4] To the extent the Court refers to submission of the trackage rights fee dispute between NS and the Belt Line to the STB in 2018, CSX has never offered factual support for its argument that this was somehow "pretext," and its slides at the hearing inaccurately portrayed the Belt Line's wheelage rate, not the total fee the Belt Line pays. As the Court is aware, the 1917 Trackage Rights Agreement was a 99-year agreement, meaning it expired as of 2017. The parties could not agree to a new rate by 2018, so submitted the dispute to the STB, where CSX, not NS or the Belt Line, persuaded the STB to stay the case, over objection of the other parties.

  **C. There is no need to await a decision of the STB before rejecting CSX's claims.**

  The short answer to the Court's third question is that this case should be dismissed, not delayed, with judgment entered against CSX on all claims.

  To be sure, a different result might have been justified in 2018, before this case was fully litigated. In fact, at the outset of the case, the Belt Line sought to stay this litigation pending a decision by the STB on the trackage rights fee dispute with NS. Its logic was that the trackage rights fee is bound up in the switching rate, and therefore should be decided first.

  CSX opposed that request. It intervened in the STB proceeding and asked the STB to stay the trackage rights proceeding to allow this case to go first. The STB did so, and the parties have since litigated this case to the eve of trial, at considerable effort and expense. From the Belt Line's standpoint, that litigation has shown two things: (1) as a matter of undisputed fact, the conspiracy story that CSX spun in its Complaint has completely unraveled; and (2) as a matter of law, CSX has no provable damages.

  There is no reason to delay judgment on these issues. Just the opposite, there is good reason to resolve the case now to allow the STB to address the other issues. No injunctive relief is available against the Belt Line, so no ruling at the STB will change the outcome of CSX's claims here. By contrast, the STB already has the trackage rights fee dispute on its docket, where CSX has intervened, and the STB already indicated that it intends for the parties to take up issues of "control" immediately after this case. *See* ECF 535 n.1.

  **D. A trial on injunctive relief, if it were warranted, would be a bench trial.**

  In answer to the Court's fourth question, the Belt Line agrees that, if a trial on injunctive relief were warranted, it would be a bench trial. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130 (1969); *Gordon v. Lewistown Hosp.*, 423 F.3d 184, 191 (3rd Cir. 2005).

## Conclusion

For the foregoing reasons, CSX is not entitled to injunctive relief and all its claims against the Belt Line fail as a matter of law. The Belt Line respectfully prays that the Court enter judgment for the Belt Line on all of them.

Dated: December 16, 2022

NORFOLK AND PORTSMOUTH
BELT LINE RAILROAD COMPANY

By:     /s/ W. Ryan Snow
James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Alex R. McDaniel, VSB No. 92398
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
amcdaniel@cwm-law.com
*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

## CERTIFICATE OF SERVICE

I certify that on this 16th day of December 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a "Notice of Electronic Filing" to all counsel of record who have consented to electronic service.

    /s/ W. Ryan Snow
W. Ryan Snow, VSB No. 47423
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
wrsnow@cwm-law.com