**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| CSX TRANSPORTATION, INC.,    )<br>                              )<br>            *Plaintiff*,    )<br>                              )<br>v.                            )<br>                              )<br>NORFOLK SOUTHERN RAILWAY      )<br>COMPANY, *et al.*,            )<br>                              )<br>            *Defendants*.    ) | Case No. 2:18-cv-530 |

**NORFOLK SOUTHERN RAILWAY COMPANY'S BRIEF
<u>ON THE ISSUE OF INJUNCTIVE RELIEF</u>**

Defendant Norfolk Southern Railway Company ("NS"), by counsel and pursuant to the Court's Order dated December 13, 2022 (ECF No. 535) (the "Order"), submits this brief addressing the questions posed by the Court in the Order. For the reasons stated below, the current summary judgment record shows as a matter of law that Plaintiff CSX Transportation, Inc. ("CSX") is not entitled to the injunctive relief it has requested, and, therefore, it is unnecessary to hold a trial on possible injunctive relief in the event the Court dismisses CSX's claims for damages.

**I.    <u>The Injunctive Relief Requested by CSX in this Case.</u>**

In discovery, CSX identified the specific injunctive relief it sought in this case: (a) an order "to prevent NSR and NPBL from continuing to carry out any violations of federal or state law, including antitrust or business conspiracy"; (b) "an order restoring CSX's shareholder rights, and/or establishing an independent board structure of the NPBL"; and (c) "an order directing NPBL to approve CSX's [2018] Service Proposal." *See* CSX's Objections and Responses to NS's Second Interrogatories, pp. 2-3 (**Exhibit A**). Under Fed. R. Civ. P. 37(c)(1), CSX is limited to the forms of relief it has disclosed and is "not allowed" to use undisclosed information at trial. *See*

Advisory Committee Notes to Rule 37 (Rule 37(c)(1) is a "self-executing sanction for failure to make a disclosure required by Rule 26(a)," and is designed to provide a "strong inducement for disclosure."). It appears that CSX no longer intends to pursue "an order directing NPBL to approve CSX's [2018] Service Proposal" because in the Proposed Final Pretrial Order submitted by the parties, CSX did not identify this as a type of injunctive relief to be decided in this case. *See* ECF No. 517-1, p. 12.[1]

## II. **Applicable Legal Standards.**

The following legal standards apply to the questions posed by the Court in its Order, and to NS's answers.

### A. *The necessary elements for injunctive relief.*

Before a plaintiff can be entitled to a permanent injunction, it must first "meet a heavy burden" to establish that it satisfies the prerequisite requirements of injunctive relief, which "is a high bar, as it should be." *SAS Institute, Inc. v. World Programming Ltd.*, 874 F.3d 370, 385 (4th Cir. 2017).

*First*, a plaintiff must demonstrate that it faces a significant threat of irreparable injury. *See id.* (citing *eBay Inc. v. MercExchange LLC*, 547 U.S. 388, 391 (2006)). The injury to be redressed by injunctive relief is a threatened or prospective injury, as opposed to a past injury that can be compensated with damages. *See id.* "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). To establish a claim for injunctive relief under Section 26 of the Clayton Act, CSX must demonstrate "a significant

---

[1] In addition to the fact that CSX did not include this type of injunctive relief in the Proposed Final Pretrial Order, it is not entitled to this relief for the reasons discussed below.

threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur." *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 130 (1969).

The "threatened loss or damage" must be "of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful." *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 113 (1986) (quoting *Brunswick Corp v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Here, CSX alleges that it lost profits because of losing ocean carrier business due to Defendants' purportedly illegal actions. *See* Pl.'s Consolidated Opp. to Defs.' Mots. For Summ. J. 51, ECF No. 328 (May 3, 2021) ("CSX's lost profits…are the profits lost as a result of ocean carriers choosing not to contract with CSX[.]"). CSX has not alleged or sought to prove an alternative theory of antitrust injury.[2]

*Second*, a plaintiff must show that remedies available at law, such as monetary damages, are inadequate to compensate the plaintiff for the injury claimed by the plaintiff. *See SAS Institute*, 874 F.3d at 385.

*Third*, a plaintiff must show that considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted. *Id*.

*Fourth*, a plaintiff must show that the public interest would not be disserved by a permanent injunction. *Id*.

        **B.**     *The necessity of following state law limitations on injunctive relief.*

If state law defines the substantive rights of the parties, then state law also governs the availability of a permanent injunction, *Pearl Investments, LLC v. Standard I/O, Inc.*, 297 F. Supp. 2d 335 (D. Me. 2004), especially when there is a conflict between federal and state law. *Stern v.*

---

[2] As set forth in Defendants' Motions for Summary Judgment, and as discussed at the December 1, 2022 hearing, CSX's foundationally flawed damages model is its only evidence of damages, and under Fed. R. Civ. P. 37(c), it cannot offer a new damages theory or evidence now.

*South Chester Tube Co.,* 390 U.S. 606 (1968).  As with federal law, Virginia requires a showing of irreparable injury, which is a "material" injury "not adequately reparable in damages." *Callaway v. Webster,* 98 Va. 790, 792 (1900); *see also Carbaugh v. Solem*, 225 Va. 310, 314 (1983) ("In traditional chancery practice, lack of proof of irreparable harm is generally fatal.  A court of equity will not issue an injunction, an extraordinary remedy, if the petitioner has an adequate remedy at law for the redress of his injury.").

However, the only equitable remedies available to vindicate the rights of a minority shareholder under Virginia law are dissolution of the corporation or appointment of a custodian. *Jordan v. Bowman Apple Prods. Co.*, 728 F. Supp. 409, 415-16 (W.D. Va. 1990) ("The court therefore concludes that Va. Code § 13.1-747 supersedes the common law right of action for oppression and limits a plaintiff's remedies to those available under the statute, namely dissolution or the appointment of a custodian . . . Courts of equity do not take jurisdiction over claims where the plaintiff has a full, complete and adequate remedy at law.").

Virginia law authorizes courts to enforce contracts, but not to alter or make them.  *See Eascalco, Inc. v. Caulfield*, 220 Va. 475, 477 (1979) ("court cannot alter the terms of a contract and then enforce it").  Therefore, injunctive relief requiring a change of corporate governance is not available under state law, and hence not available in federal court under a state law claim.

### C. *Injunctive relief must be tailored to the proven violation.*

An injunction under Section 26 of the Clayton Act must be limited to preventing "threatened loss or damage by a violation of the antitrust laws."  15 U.S.C. § 26.  Hence, the relief sought needs to be based on preventing the specific violation proven or threatened.  *See CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 262 (4th Cir. 2020), *reh'g en banc granted*, 981 F.3d 311 (4th Cir. 2020) ("As the Supreme Court has repeatedly cautioned, '[a] plaintiff's remedy must be

tailored to redress the plaintiff's particular injury.'") (quoting *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018)). Unspecific "obey the law" injunctions "uniformly are found to violate the specificity requirement" of Fed. R. Civ. P. 65. Wright & Miller § 2955, p. 361; *see also New York, N.H. & H.R. Co. v. Interstate Com. Comm'n*, 200 U.S. 361, 404 (1906) (Congress did not give courts authority to enter injunction against defendant based on antitrust violation that would "command it in general terms not to violate the act in the future in any particular" so that the defendant "must thereafter conduct all its business under the jeopardy of punishment for contempt for violating a general injunction"); *Williams v. Recovery Sch. Dist.*, 859 F. Supp. 2d 824, 833 (E.D. La. 2012) (equitable claims that contain language such as 'stop all violations' or 'take all necessary steps to ensure' result in fatally overbroad injunction requests that cannot be enforced); *MGM Studios, Inc. v. Grokster, Ltd.*, 518 F.Supp. 2d 1197, 1226 (C.D. Cal. 2007) (injunctions should be "coterminous" with injury and "narrowly tailored to fit the specific legal violations") (quoting *Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994)).

### D. Compliance with anti-injunction provision of 15 U.S.C. § 26.

While Section 26 of the Clayton Act allows a private plaintiff in an antitrust action to seek injunctive relief "against threatened loss or damage by a violation of the antitrust laws," "nothing herein contained shall be construed to entitle any person…except the United States, to bring suit for injunctive relief against any common carrier subject to the jurisdiction of the Surface Transportation Board under subtitle IV of title 49." 15 U.S.C. § 26.

Accordingly, a private plaintiff cannot sue for injunctive relief if (i) the defendant is a "common carrier" and is (ii) subject to the jurisdiction of the Surface Transportation Board ("STB"). *See Central Transfer Co. v. Terminal R. Ass'n of St. Louis*, 61 F.2d 546, 548 (8th Cir. 1932) ("[D]efendants are carriers subject to that act. The only question then is whether the suit by

the plaintiff is 'in respect of any matter subject to the regulation, supervision, or other jurisdiction of the Interstate Commerce Commission.'"); *see also Truck-Rail Handling Inc. v. BNSF Railway Company*, Case No. C 02-02825 JSW, 2005 WL 8178364, at *4 n.5 (N.D. Cal. Mar. 8, 2005) (in a suit alleging violations of Sections 1 and 2 of the Sherman Act under a theory of foreclosure, the Court stated that although "[n]either party has raised this issue; yet it appears undisputed that BNSF is a common carrier subject to the jurisdiction of the Surface Transportation Board. Accordingly, as a matter of law, Plaintiffs cannot obtain an injunction against BNSF . . . .").[3] It is undisputed that NS and NPBL are common carriers subject to the jurisdiction of the STB. The Supreme Court, in a decision from 1945, held that the anti-injunction provisions of Section 26 apply if the relief sought by the plaintiff is within the power of the STB. *See State of Ga. v. Pa. R. Co.*, 324 U.S. 439 (1945).

The STB has broad and "exclusive" jurisdiction over many aspects of railroading, and the STB's remedies "are exclusive and preempt the remedies provided under Federal or State law." 49 U.S.C. § 10501(b).[4] The STB has jurisdiction over "rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers" (§ 10501(b)); new rail construction projects (§ 10901); rail line discontinuances (§ 10903); the "reasonableness" of rail carrier rates[5] (§ 10701), "competitive access" to rail carrier facilities (§ 11102); reciprocal switching services (§ 11102), and mergers and acquisitions (§

---

[3] The Interstate Commerce Commission is the predecessor agency to the STB.

[4] The STB's exclusive jurisdiction under § 10501(b) and the application of the anti-injunction provision of Section 26 implicates the jurisdiction of the Court and, therefore, must be considered at all stages of a proceeding. *See Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) ("Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt.").

[5] CSX is no longer requesting that the Court enter an order requiring NPBL to accept its Rate Proposal. But to be clear, to the extent CSX does make that request, it clearly falls within the scope of the STB's exclusive jurisdiction over rate setting, access and operations.

11321). Requests for injunctive relief under "Federal or State law" that infringe upon these issues are within the STB's exclusive jurisdiction and barred by the anti-injunction provision of Section 26 of the Clayton Act. *See Association of American R. v. Public Service Commission,* 745 F. Supp. 1175, 1180 (S.D. W.Va. 1989) (West Virginia law requiring all rail carriers to provide all other rail carriers open access to their tracks and allowing state agency to set rates preempted because Interstate Commerce Commission, predecessor to STB, had exclusive authority to regulate trackage rights); 745 F. Supp. 1188, 1194-95 (S.D. W.Va. 1989) (West Virginia state law indirectly regulating rates charged by one carrier to another for use of tracks preempted by ICC's rate setting authority); *see also Funderburk v. S.C. Elec. & Gas Co.,* 406 F. Supp. 3d 527, 537-38 (D.S.C. 2019) (CSX successfully argued that tort claims for negligence, trespass, strict liability and nuisance based on alleged deficiency by railroad in maintaining drainage system preempted under 49 U.S.C. § 10501(b) as having the effect of regulating a railroad's engineering and operations that are within the exclusive jurisdiction of the STB).

### E. The necessity to exhaust administrative remedies.

A party's failure to exhaust administrative remedies precludes it from seeking injunctive relief from a court. 11A Charles Alan Wright, Arthur R. Miller and Mary Kay Kayne, *Federal Practice and Procedure* § 2944, p. 81 (2013) (hereinafter "Wright & Miller") (absent special circumstances, "plaintiff must show that there is no adequate legal remedy and, when applicable, that any available administrative remedies have been exhausted before the court will issue an injunction"); *see also Renegotiation Bd. v. Bannercraft Clothing Co., Inc.,* 415 U.S. 1, 19 (1974) (plaintiff "is obliged to pursue its administrative remedy and, when it fails to do so, may not attain its ends through the route of judicial interference").

### III. NS's Responses to the Court's Questions Posed in the Order.

NS responds to the Court's questions as follows:

#### A. *Question No. 1.*

**Relevant to the standing issue raised at oral argument, if the Court found that NSR's actions in 2015 (or alternatively, NSR and NPBL's collective actions in 2015) caused CSX new and accumulating harm (including a short-term loss of business), but that CSX did not seek damages for that harm in this case, would a trial on injunctive relief still be necessary?**

**Answer**: No, a trial on injunctive relief would not be necessary for multiple reasons.

*First*, CSX did not ask for specific injunctive relief relating to the actions in 2015, and therefore, it cannot seek such relief now. Injunctive relief relating to NS' handling of train movements in 2015 simply is not on the list of forms of relief that CSX is requesting, and CSX's relief is limited by Fed. R. Civ. P. 37(c)(1).

*Second*, CSX cannot seek injunctive relief based on the alleged "new and accumulating harm" because it has never sought to establish the harm caused by nor sought any relief, monetary or injunctive, to address the alleged 2015 actions. Hence, the alleged 2015 actions cannot provide the required antitrust injury on which injunctive relief must be based. *See e.g., Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) (a "preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action").

*Third*, any possible injunctive relief specific to the actions in 2015 would encompass the operational and access issues that are within the jurisdiction of the STB. Therefore, such injunctive relief would be barred by Section 26 of the Clayton Act. *See* 49 U.S.C. § 10501(b) (granting STB jurisdiction over "rules (including car service, interchange, and other operating rules), practices,

routes, services, and facilities of such carriers"). Additionally, CSX is required to resort to its administrative remedies.

*Fourth*, there is no current or threatened irreparable injury relating to the actions in 2015. A purported threat to support an injunction must be "real and immediate threat of future injury." *Lyons*, 461 U.S. at 107 n.8. "[T]he existence of past harm is far from dispositive on the question of irreparable future harm." *SAS Institute*, 874 F.3d at 386 (citing *Lyons*, 461 U.S. at 111)).

*Fifth*, even if the actions in 2015 caused "new and accumulating harm", which NS disputes, CSX had an adequate remedy at law to compensate it for this alleged harm. CSX could have sought in this case to recover the damages associated with the short-term loss of business identified in the Court's question but chose not to. Further, CSX has never argued that there is no adequate remedy at law for its claims against Defendants. On the contrary, CSX purported to create a model estimating the damages it suffered and strenuously argued that its model accurately calculated damages. The fact that CSX's model was constructed in such a faulty manner to be legally improper does not mean there is an inadequate remedy; it simply means that CSX failed to prosecute its case appropriately.

These issues are bars to injunctive relief as a matter of law, making an injunction trial unnecessary.

    **B.**  *Question No. 2*.

**Similarly, if the Court found that NSR's actions in 2018, (or alternatively, NSR and NPBL's collective actions in 2018) caused CSX new and accumulating harm, but that CSX's damages model was foundationally flawed for failing to identify any non-speculative method for segregating damages caused by time barred acts and damages caused by recent overt acts, would a trial on injunctive relief still be necessary?**

**Answer**: No, a trial on injunctive relief would not be necessary for multiple reasons.

*First*, because of the foundational flaws in CSX's damages model, it has not identified the antitrust injury, including a current or threatened irreparable antitrust injury, caused by the actions in 2018. Absent a showing of irreparable antitrust injury, "the equitable remedy of an injunction is unavailable." *SAS Institute*, 874 F.3d at 386 (quoting *Lyons*, 461 U.S. at 111). Therefore, CSX cannot seek injunctive relief based on the actions in 2018.

*Second*, to the extent that CSX is still seeking "an order directing NPBL to approve CSX's [2018] Service Proposal," that type of injunctive relief is unavailable under Section 26. The STB maintains jurisdiction over railroad rates, rate-related practices, and competitive access. Directing NPBL to approve CSX's proposal would directly conflict with the STB's jurisdiction and authority, and therefore, the Court cannot award this relief under Section 26, and CSX is required to resort it its administrative remedies. Nor do CSX's state law claims allow for injunctive relief that creates contractual terms. *See, e.g., Verling v. Quarles*, 217 Va. 188, 191 (1976) (reversing judgment that "made a material departure from the terms of the contract and, in effect, made an agreement for the parties and then sought to compel them to execute it"). CSX concedes that this type of injunctive relief is not available by, *inter alia*, not including it in the Proposed Final Pretrial Order.

*Third*, the enforcement of contracts is equitable and promotes the public interest. *Update, Inc. v. Samilow,* 311 F. Supp. 3d 784, 787 (E.D. Va. 2018) ("the public has an interest in protecting the legitimate expectations of parties to a contract"). The structure of NPBL's board of directors is the result of an enforceable contract. In any event, injunctive relief to restructure corporate governance is unavailable under CSX's state law claims.

These issues are bars to injunctive relief as a matter of law, making an injunction trial unnecessary.

    **C.**    *Question No. 3.*

**If a trial were to proceed only on injunctive relief, should that trial occur before further action by the STB, or would CSX (as the potentially aggrieved party) be more likely to avoid further alleged injury by proceeding first before the STB?**

**Answer:** For the reasons stated, CSX is not entitled to the injunctive relief that it has requested, and therefore, this case should be dismissed. Additionally, as explained above, CSX can seek relief from the STB relating to specific issues it has raised in this case. If there is a trial on the possibility of injunctive relief only, it should not address any issues within the exclusive jurisdiction of the STB. If the Court perceives injunctive issues exist that are not within the STB's exclusive jurisdiction and that CSX can pursue despite the bars discussed above, then Court should proceed solely on those non-STB issues and the trial should proceed without the need for further action by the STB.[6]

    **D.**    *Question No. 4.*

**If a trial were to proceed only on injunctive relief, do the parties agree that it would be a bench trial?**

**Answer:** Yes, NS agrees that if the trial were to proceed only on injunctive relief, it would be a bench trial.

---

[6] NS's position on this issue is without prejudice to the arguments made in its Motion to Dismiss, For Judgment on the Pleadings, and for Referral of Issues to the STB (ECF No. 115), and its Motion In Limine to Exclude Evidence and Argument that NPBL's Switch Rate is Unreasonable (ECF No. 329).

| | |
|---|---|
| Dated: December 16, 2022 | Respectfully submitted, |

                                                **NORFOLK SOUTHERN RAILWAY COMPANY**

                                                /s/ *Michael E. Lacy*
                                                Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
Massie P. Cooper (VSB No. 82510)
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-6061
Email: alan.wingfield@troutman.com
Email: michael.lacy@troutman.com
Email: massie.cooper@troutman.com

John C. Lynch (VSB No. 39267)
Kathleen M. Knudsen (VSB No. 90845)
TROUTMAN PEPPER HAMILTON SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7500
Facsimile: (757) 687-7510
Email: john.lynch@troutman.com
Email: kathleen.knudsen@troutman.com

Tara L. Reinhart
Thomas R. Gentry
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7000
tara.reinhart@skadden.com
thomas.gentry@skadden.com

*Attorneys for Norfolk Southern Railway Company*