**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | | |
|---|---|---|
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-cv-530 |
| | ) | |
| NORFOLK SOUTHERN RAILWAY | ) | |
| COMPANY, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**NORFOLK SOUTHERN RAILWAY COMPANY'S**
**OBJECTION TO DENIAL OF ITS**
**MOTION IN LIMINE TO EXCLUDE EVIDENCE AND**
**ARGUMENT THAT NPBL'S SWITCH RATE IS UNREASONABLE**

Defendant Norfolk Southern Railway Company ("NS"), by counsel and pursuant to Federal Rule of Civil Procedure 72(a), objects to the Magistrate Judge's oral and written denial of its Motion in Limine under Federal Rule of Evidence 402 ("Motion") [ECF No. 329] to prohibit Plaintiff CSX Transportation, Inc. ("CSX") from offering at trial any evidence or argument that the line haul switch rate (the "switch rate") charged by the Norfolk and Portsmouth Belt Line Railroad Company ("NPBL") is unreasonable, "prohibitively expensive," "excessive," or "exorbitant."[1] NS objects to so much of the Order, ECF No. 521, and oral ruling, Oral Hearing Minutes, ECF No. 518, that denied the Motion.

---

[1] In the interest of brevity, throughout this brief NS will use the word "unreasonable" to refer to all pejorative adjectives regarding the amount of NPBL's switch rate, including the terms "prohibitively expensive," "excessive," "exorbitant," and so forth.

**ARGUMENT**

This Court should reverse the denial of NS's Motion because it is clearly erroneous and is contrary to black letter law.  Any other conclusion would be reversable error.

At issue is whether CSX can refer to the NPBL switch rate as "unreasonable" even though the Surface Transportation Board ("STB"), the federal agency with the exclusive authority to determine the reasonableness of railroad rates, has not determined the NPBL switch rate to be too high.  The correct answer is no – CSX cannot avoid (or usurp) the authority of the STB and argue that the NPBL switch rate is unreasonable when the STB has not made such a finding.  Such argument and evidence are contrary to law and would improperly mislead the jury and, therefore, must be excluded.

    **1.**    **Only the Surface Transportation Board can determine whether the NPBL Switch Rate is unreasonable.**

It is an indisputable matter of well-established law that <u>only</u> the STB may determine that a railroad rate is unreasonable.  *See generally* Opening Br., ECF No. 330; *Burlington N. v. United States*, 459 U.S. 131, 141 (1982) ("[P]rimary jurisdiction to determine the reasonableness of [railroad] rates lies with the [STB]."); *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1965) (noting that "tariff construction, as well as that of the reasonableness of the tariff as applied, [is] within the ***exclusive*** primary jurisdiction of the [STB]") (emphasis added); *Chi., Rock Island & Pac. R.R. Co. v. Furniture Forwarders of St. Louis, Inc.*, 420 F.2d 385, 388 (8th Cir. 1970) ("Whenever a rate, rule, or practice is attacked as unreasonable or as unjustly discriminatory, there must be preliminary resort to the [STB]."); 49 U.S.C. § 10707 (authorizing the STB to handle claims that a rate is "unreasonably high") (citation and quotation marks omitted).

In fact, in the briefing on this Motion, <u>CSX did not dispute</u> that the STB has the exclusive primary jurisdiction to adjudicate whether the switch rate is unreasonable.  *See* CSX's Opp. Br. 4-

7, ECF No. 417; *see also* CSX's Brief in Opposition to Novolog Bucks County's Motion for Partial Reconsideration and in Support of its Cross Motion for Reconsideration, or in the Alternative, its Motion to Refer the Issues to the STB, *CSX Transp. Co. v. Novolog Bucks Cnty.*, Case No. 2:04-cv-04018 (E.D. Pa. June 22, 2006) (ECF No. 37-1) (taking the position that reasonableness of railroad rates is a matter that must be determined by the STB).

Despite the clear law regarding the STB's exclusive jurisdiction as to railroad rates, the Magistrate Judge erred by basing his ruling on this Court's decision that "STB's exclusive authority over rail carrier **mergers** implicates the doctrine of 'primary jurisdiction,' which—despite its name—is not 'jurisdictional.'" *See* Op. & Order 4, ECF No. 395 (emphasis added). First, this Court's ruling was specific to the STB's jurisdiction over "mergers" as it related to NSR's arguments related to immunity to CSX's claims based on the alleged facts. Hence, it has no bearing on the issue at hand. Moreover, NS is *not* arguing in this Motion that this Court lacks jurisdiction over CSX's *claims*. Rather, NS is seeking to prevent CSX from avoiding the STB's role and trying to usurp its authority by claiming that the NPBL's switch rate is "unreasonable" as evidence to *prove* CSX's claims. As explained above, the law is clear that CSX cannot do this. Until the STB makes the determination that a rate is unreasonable, *no one* – not CSX, this Court, or the jury – can rightfully state that a railroad rate is unreasonable.[2]

      **2.**      **CSX cannot represent that the NPBL switch rate is unreasonable because the STB has not made this determination.**

It is undisputed that the STB has never determined that the NPBL switch rate is unreasonable. In fact, this issue has never been raised with the STB, even though this Court has recognized that CSX could have challenged the reasonableness of NPBL's switch rate before the

---

[2] The STB's jurisdiction over railroad rates does not prevent Defendants from showing that the NPBL's switch rate was set at an amount to cover its costs.

STB.  *See* ECF No. 395 n.16 (acknowledging that "CSX could have pursued a legal challenge to the reasonableness of the Belt Line switching rate in a proceeding before the STB for almost ten years").

This appears to have been a matter of confusion for the Magistrate Judge.  In his oral ruling, the Magistrate Judge stated that it was "also noteworthy that the STB has stayed its proceeding pending the resolution of the case before this Court, with the STB being fully aware of this current litigation."  There is no matter pending before the STB to determine whether the NPBL's switch rate is reasonable.  In fact, CSX *opposed* referring this question to the STB for determination.  *See* Mot. to Refer Opp. Br. 22-25, ECF No. 131.   To the extent that the Magistrate Judge was under the impression that there is a pending matter, this was **clear error**.

Confusion on this point may be due to the fact that there is pending an STB proceeding over the amount of trackage rights fees that the NPBL must pay NS for the NPBL's use of NS's track.  *Cf.* Mem. Op. 27, ECF No. 395 (stating that "a separate rate-setting proceeding before the STB has already been initiated" but failing to differentiate that the pending STB rate proceeding is *not* about the reasonableness of *NPBL's switch rate* but about *NS's trackage rights* fees – two *different fees* charged by *different railroads*).   While a determination by the STB as to the trackage rights fees could impact the switch rate that NPBL charges to its customers, this is entirely different from a challenge to NPBL's switch rate, which has *never* come before the STB.

Because the STB has not determined that NPBL's switch rate is unreasonable, *no one* in this case – as a matter of law – may argue or present evidence to prove that the NPBL switch rate is unreasonable.  Practically, this means that it would be legally improper for CSX to employ its strategy to argue or to have witnesses testify to the jury that the NPBL switch rate is unreasonable. *See* ECF No. 1, at ¶¶ 3-4, 34-35, 37, 44, 55, 57, 87, 90, 93, 97, 100, 104, 108; Expert Report of

Howard P. Marvel, Ph.D., Feb. 25, 2020, at ¶¶ 13, 15, 18, 54-58 (attached to NS's Motion for Summary Judgment as <u>Exhibit 7</u>, ECF No. 308-3); Reply Report of Howard P. Marvel, Ph.D., March 5, 2021, ¶¶ 2, 55-65, 126 (attached to NS's Motion for Summary Judgment as <u>Exhibit 71</u>, ECF No. 308-59).

### 3. Excluding CSX from offering evidence and argument that the NPBL switch rate is unreasonable is the necessary result of the positions that CSX has taken.

The law mandates a very clear procedure that CSX had to follow if it wanted to argue that the NPBL's switch rate is "unreasonable" in this case:  CSX had to ask the STB to determine that the rate is unreasonable.  *Chi., Rock Island & Pac. R.R.*, 420 F.2d at 388 ("Whenever a rate, rule, or practice is attacked as unreasonable or as unjustly discriminatory, there must be preliminary resort to the [STB].") (citation and quotation marks omitted).

As this Court previously recognized, CSX has not followed this procedure.  In fact, CSX is intentionally avoiding this procedure here.  *See* Op. & Order 26 n.16, ECF No. 395 (acknowledging CSX could have brought a rate challenge before the STB for more than 10 years). CSX wishes to obtain antitrust judgment based on the *allegation* that the NPBL's switch rate is unreasonable*,* without ever being required to ask the STB to exercise its authority to determine whether the switch rate is in fact unreasonable.

NS flagged this issue for the Court's attention, requesting that *if* CSX wanted to argue to a jury that NPBL's switch rate was unreasonable, then the Court should refer the question to the STB to make that determination in the first instance prior to trial.  *See* Mot. to Refer Opening Br. 15-22, ECF No. 116.  CSX opposed referral to the STB.  *See* Mot. to Refer Opp. Br. 22-25, ECF No. 131. The Court honored CSX's position that it did not *want* the Court to refer the reasonableness of the switch rate to the STB for determination prior to trial.  Op. & Order 29, ECF No. 395.

Now, as a matter of law, CSX must live with its decision.  Despite more than 10 years and a motion from NS seeking referral to the STB, CSX unequivocally chose not to challenge the reasonableness of the switch rate before the STB.  Given CSX's failure to pursue its rights before the STB, and assuming that any of CSX's claims survive summary judgment, the Court must respect the STB's jurisdiction and prevent CSX from claiming that the $210 switch rate is unreasonable at trial.

4.      **The law precludes CSX from presenting to the jury evidence and argument that NPBL's switch rate is unreasonable.**

For the reasons explained above, as a matter of law the jury *cannot* decide that NPBL's switch rate is unreasonable.  Accordingly, any argument and evidence that CSX would offer to support its allegations that the NPBL's switch rate is unreasonable would be necessarily irrelevant because it goes to an issue legally *outside the scope of this case*.  It, thus, lacks any probative value and it was clear error for the Magistrate Judge to allow this evidence and argument to be presented to the jury under Rule 402.

Moreover, allowing CSX to use pejorative adjectives to describe NPBL's switch rate when the reasonableness of NPBL's switch rate *has not* been decided by the STB and *cannot* be decided by the jury, as explained above, would be unfairly prejudicial to NS and create a significant risk of misleading the jury.  Hence, it was clear error for the Magistrate Judge not to exclude this argument and evidence under Rule 403.

## CONCLUSION

For the foregoing reasons, this Court should reverse the Magistrate Judge's denial of NS's Motion because it is clearly erroneous and is contrary to black letter law.

NS respectfully requests that this Court, consistent with its prior ruling declining to refer this issue to the STB, issue an order prohibiting CSX from offering at trial any evidence, argument,

or statement that the amount of NPBL's $210 switch rate is "prohibitively expensive," "excessive,"

"exorbitant," "unreasonable," or any similar adjective.

Dated: December 16, 2022        Respectfully submitted,

**NORFOLK SOUTHERN RAILWAY COMPANY**

/s/ *Alan D. Wingfield*
Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
Massie P. Cooper (VSB No. 82510)
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-6061
Email: alan.wingfield@troutman.com
Email: michael.lacy@troutman.com
Email: massie.cooper@troutman.com

John C. Lynch (VSB No. 39267)
Kathleen M. Knudsen (VSB No. 90845)
TROUTMAN PEPPER HAMILTON SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7500
Facsimile: (757) 687-7510
Email: john.lynch@troutman.com
Email: kathleen.knudsen@troutman.com

Tara L. Reinhart
Thomas R. Gentry
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7000
tara.reinhart@skadden.com
thomas.gentry@skadden.com

*Attorneys for Norfolk Southern Railway Company*

136824688