IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CSX TRANSPORTATION, INC.,
individually and on behalf of NORFOLK
& PORTSMOUTH BELT LINE
RAILROAD COMPANY,

      Plaintiff,

v.                                      Civil Action No. 2:18-cv-530-MSD-RJK

NORFOLK SOUTHERN RAILWAY
COMPANY, *et al.*,

      Defendants.

**CSX TRANSPORTATION, INC.'S MEMORANDUM
IN RESPONSE TO COURT ORDER, ECF NO. 548**

Plaintiff CSX Transportation, Inc. ("CSX"), by counsel, submits the following memorandum as directed by the Court's December 21, 2022 order ("Order"). *See* ECF No. 548.

## INTRODUCTION

Through this action, CSX seeks to hold Defendants Norfolk Southern Railway Company ("NS") and Norfolk and Portsmouth Belt Line Railroad Company ("NPBL") liable for their ongoing anticompetitive conspiracy and monopolization to block CSX's access to on-dock rail at Norfolk International Terminal ("NIT"), the most important marine terminal in the Port of Virginia ("POV"). The record evidence—especially viewed in the light most favorable to nonmovant CSX—demonstrates that Defendants have engaged in this wrongful conduct for years. And, when CSX sought to gain access to NIT in 2018 through an economically beneficial rate and service proposal, NPBL did not accept that proposal and NS prevented its independent consideration. Defendants' ongoing anticompetitive conduct has hindered—and continues to hinder—CSX's

1

ability to compete fairly in the relevant market. *See* ECF No. 324 ¶¶ 12, 76–81, 99–102. These actions also harm other market participants, including (1) ocean carriers, who pay higher prices to NS absent competitive restraints at NIT, and (2) the POV, which has repeatedly recognized that dual on-dock rail access is essential to attracting international intermodal business to Virginia, which in turn benefits all citizens of the Commonwealth. *Id.* ¶¶ 100–01.

The Sherman and Clayton Acts were enacted to remedy this type of harm. Those statutes allow those harmed by anticompetitive conduct to seek not only treble their past damages, but also injunctive relief for threatened, prospective injury. The expansive force of these remedies demonstrates Congress' strong desire to promote competition and deter anticompetitive conduct. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130–31 (1969) ("*Zenith I*") ("[T]he purpose of giving private parties treble-damage and injunctive remedies was not merely to provide private relief, but was to serve as well the high purpose of enforcing the antitrust laws."). Here, CSX sued for past damages *and* prospective injunctive relief, which, if ordered, should prevent Defendants' future anticompetitive acts. Indeed, CSX did not attempt to calculate *prospective* damages caused by Defendants' wrongful conduct, because such damages would be speculative, *see Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 339 (1971) ("*Zenith II*"), and may not occur at all if the Court issues an appropriate injunction—or if NS and NPBL voluntarily cease their ongoing efforts to restrict access through maintenance of exorbitant rates, operational blockades, and other anticompetitive conduct.

CSX has properly pled and preserved claims for injunctive relief, and it may proceed on those claims regardless of whether it has appropriately quantified its historical damages. *See* ECF No. 541 at 8–9. None of Defendants' arguments to the contrary supports granting summary judgment on CSX's injunctive relief claims. First, Defendants argue an injunction is not available

2

to remedy past misconduct—but CSX seeks to enjoin Defendants from continuing their ongoing anticompetitive and conspiratorial conduct *in the future*. Second, Defendants claim CSX's requested injunctive relief is too vague—but as this Court has recognized, it can certainly enter a tailored injunction preventing Defendants from continuing their anticompetitive and conspiratorial conduct. *See* ECF No. 66 at 23–24. Third, contrary to Defendants' arguments, 15 U.S.C. § 26 poses no barrier to injunctive relief. The Court can fashion relief that does not tread on the jurisdiction of the Surface Transportation Board ("STB"), and CSX has no available administrative claims or remedies that had to be exhausted before filing suit. Finally, Virginia state law in no way limits CSX's ability to obtain injunctive relief.

In its Order, the Court directed the parties to address the doctrine of laches. Notably, neither Defendant raised laches as a relevant issue in their summary judgment motions or supplemental briefs. *See, e.g.,* ECF Nos. 303, 308, 542, and 543. Nor did either identify it as a triable issue in the proposed final pretrial order ("FPTO"). *See* ECF No. 517-1. And, as set forth below, that doctrine does not apply in this case.

Laches is a judicially-created equitable defense that applies to bar certain equitable actions. *Lyons P'ship., L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 797–98 (4th Cir. 2001). In the antitrust context, courts sometimes consider laches as a possible bar to a plaintiff's belated request to unwind a consummated merger. *See Steves and Sons, Inc. v. JELD-WEN, Inc.*, 252 F. Supp. 3d 537, 545 n.7 (E.D. Va. 2017) (collecting cases). But laches does not apply when, as here, a plaintiff seeks to enjoin threatened *future* harm. Indeed, the Fourth Circuit has made clear that "laches does not bar a claim for prospective injunctive relief." *Lyons P'ship*, 243 F.3d at 797; *see also Haley Paint Co. v. E.I. Du Pont De Nemours and Co.*, 279 F.R.D. 331, 337 (D. Md. 2012) (striking laches defense in antitrust case seeking prospective injunctive relief).

3

The laches analysis underscores that summary judgment is not appropriate on *any* of CSX's claims. Defendants contend that, because they were not sued within the first four years of their conspiracy, they are entitled to continue that conspiracy—and reap the resulting monopoly rewards—in perpetuity. *At the same time*, Defendants vigorously claim they did not conspire *at all*. But CSX has proffered substantial evidence of Defendants' ongoing conspiracy—including conduct within the limitations period. *See* ECF No. 324 ¶¶ 10–71. That alone defeats summary judgment. At trial, Defendants could (but may elect not to) assert that conspiratorial conduct occurred outside the statutory period. The jury can then decide whether Defendants carried their burden to prove the affirmative defense, and what scope of damages should be awarded for harm suffered by CSX within the limitations period. Finally, separate from any damages award, the Court can enter an injunction to break up the unlawful monopoly.

To be clear, Defendants' complaints about CSX's damages model provide no basis for summary judgment. *See, e.g.*, ECF No. 541 at 8–9; *see also* ECF No. 324 at 49–51; ECF No. 487 at 27–29. CSX seeks to recover damages caused by Defendants' conspiracy to maintain NS's monopoly over on-dock rail at NIT. That ongoing conduct excludes CSX from competing fairly in the relevant market, because ocean carriers demand on-dock rail service at NIT and choose not to contract with CSX because it cannot offer that service. CSX is injured anew by this exclusion each day Defendants' conduct persists, and it can recover for the harm caused by this exclusion within the limitations period. *See Zenith II*, 401 U.S. at 333 (rejecting argument that the Clayton Act "permits the recovery only of those damages caused by overt acts committed during the four-year [limitations] period"). To hold otherwise would "transform the limitations statute from one of repose to one of continued immunity," such that a plaintiff suffering "continuing damage from the continued invasion of a monopoly and exclusion from the market" would be barred not only

4

from "proving violations and damages more than four years old," but also "from complaining of the continuing excuse of the unlawful conduct." *Poster Exch'g, Inc. v. Nat'l Screen Serv. Corp.*, 517 F.2d 117, 127 (5th Cir. 1975). Allowing the statute of limitations to "immunize" continuing antitrust violations would "not only extend[ ] the statute beyond its purpose, but also conflict[ ] with the policies of vigorous enforcement of private rights through private actions." *Id.* at 127–28. Nothing in *Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997)—in which the plaintiff was injured by a single act (the purchase of a silo) outside the limitations period, but sought to recover damages by asserting a RICO claim for fraud—overrules or modifies the statute of limitations analysis as articulated in *Zenith II* and as reflected in cases like *Poster Exchange*.

## RELEVANT BACKGROUND

On October 4, 2018—a few months after Defendants delayed and denied fair consideration of CSX's proposal, *see* ECF No. 324 ¶¶ 62–66, 71—CSX sued to prevent Defendants continued unlawful exclusion and to recoup losses suffered from their ongoing anticompetitive scheme. *See* ECF No. 1. In its prayer for relief, CSX asked the Court to, among other things, "enter an injunction against Defendants [to prevent them] from continuing to commit the above referenced violations of federal and state law." *Id.* at 40. As this Court has observed, if CSX prevails on its antitrust or business conspiracy claims, the Court can enjoin Defendants from engaging in the same or similar unlawful conduct in the future. *See* ECF No. 66 at 23.

In discovery, CSX confirmed that it seeks an injunction that (1) "prevent[s] NSR and NPBL from continuing to carry out any violations of federal or state law, including antitrust or business conspiracy," (2) "restor[es] CSX's shareholder rights and/or establish[es] an independent board structure of NPBL," and (3) direct[s] NPBL to approve CSX's Service Proposal." *See* ECF No.

5

541-1. CSX reiterated its request for injunctive relief in the FPTO.[1] *See* ECF No. 517-1 at 12.

Defendants did not address CSX's injunctive relief claims in their summary judgment motions, *see* ECF Nos. 303, 308, 382, 388, and they have never argued for dismissal or summary judgment based on laches (including in their recent supplementary briefs or in the FPTO).

## ARGUMENT

As directed by the Order, CSX first responds to the arguments presented in Defendants' supplemental briefs (Part I), and then sets forth why laches does not apply to this case (Part II).

**I.    All of CSX's Claims Should Proceed to Trial on the Merits.**

Defendants did not argue for summary judgment on CSX's injunctive relief claims, which CSX pled in its Complaint and preserved in discovery. *See supra* at 2–3. For this reason alone, the Court should decline to grant summary judgment on these claims. *See Innovative Legal Mktg., LLC v. Mkt. Masters-Legal*, 852 F. Supp. 2d 688, 695 (E.D. Va. 2012) (overruling magistrate's sua sponte grant of summary judgment on basis defendant did not raise in motion).[2]

---

[1] Defendants suggest the FPTO "waives" CSX's ability to seek an injunction ordering NPBL to accept its 2018 proposal. *See* ECF No. 543 at 2, 10; ECF No. 542 at 3. But the Court enjoys broad authority to fashion injunctive relief, which may include, at the Court's discretion, an order directing NPBL to accept CSX's proposal or otherwise provide access to on-dock rail at NIT on commercially reasonable terms. *See* ECF No. 66 at 23–24. Moreover, as previously noted, CSX did not detail the full scope of its requested injunctive relief in the FPTO because it expected that it would, after the jury trial, submit a motion for permanent injunction detailing the factual and legal support for its specific requested relief. ECF No. 541 at 6, 15.

[2] The Court may grant summary judgment on a ground not raised by a party only "[a]fter giving notice and a reasonable time to respond." Fed. R. Civ. P. 56(f). That notice "must, in view of the procedural, legal, and factual complexities of the case, allow the party a reasonable opportunity to present all material pertinent to the claims under consideration." *U.S. Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 735 (4th Cir. 1989). The Court's recent briefing orders have provided the parties with only 2.5 business days—including over the Christmas and Hanukkah holidays—to brief complex, potentially case-dispositive issues never raised by any party. *See* ECF No. 535, 548. Respectfully, those orders do not provide adequate notice under Rule 56(f), particularly when Defendants' motions for summary judgment have been fully briefed since May 2021. *See U.S. Dev. Corp.*, 873 F.2d at 736 (vacating sua sponte grant of summary judgment for failure to provide notice and opportunity to respond). Additionally, because the Court has directed

6

And, substantively, the record evidence establishes that CSX is entitled to a trial on the merits of its injunctive relief claims. The Parties do not dispute that to obtain a permanent injunction CSX must show that (1) it faces a "significant threat" of "irreparable" (i.e., "threatened or prospective") harm; (2) legal remedies like "monetary damages" would be "inadequate to compensate [CSX] for the injury claimed"; (3) when considering the balance of hardships as between CSX and Defendants, "a remedy in equity is warranted"; and (4) "the public interest would not be disserved by a permanent injunction." *See e.g.,* ECF No. 543 at 2–3. CSX's abundant evidence establishes these elements and precludes summary judgment:

- ***Threatened or Prospective Harm:*** Defendants have engaged in a conspiracy to exclude CSX from on-dock rail at NIT. As a result, CSX endures an exorbitant $210 switch rate to access NIT by rail with no prospect of a competitive rate, all while knowing—based on experience—it will not receive adequate service even at that rate. CSX's complaint also identifies the *threatened*—still pending—trackage rights fee increase as part of the ongoing conspiracy. *See, e.g.,* ECF No. 1 at 87(f). When CSX sought to obtain a competitive rate and service in 2018, Defendants denied that effort. CSX sued that same year. *See* ECF No. 324 ¶¶ 62–71.

- ***No Adequate Legal Remedy:*** Just months before CSX filed its complaint, Defendants blocked fair consideration of CSX's 2018 service proposal that would have benefitted NPBL, revealing their intent to preserve the monopolistic status quo to CSX's detriment. *Id.* at ¶¶ 62–71. Defendants proffer no evidence suggesting they have abandoned—or intend to halt—this anticompetitive conduct, which means historical damages cannot adequately compensate CSX. *See* ECF Nos. 542, 543. Moreover, while CSX disagrees that it is barred from recovering damages by the statute of limitations, that argument further underscores that an injunction to prevent *ongoing future harm* is appropriate and necessary.

- ***Balance of Hardships:*** This is a fact-specific inquiry not susceptible to summary judgment. But in short, affording CSX's competitive access to NIT would impose no "hardship" on either Defendant. CSX's proposals have been calibrated to ensure NPBL would make money and fulfill its obligation to connect its parent railroads to destinations on its line. NS has no lawful interest in preventing CSX from accessing NIT via on-dock rail, and has not proffered any legitimate procompetitive justification for its conduct. *See* ECF No. 469-42 ¶¶ 10–21. By contrast, Defendants' conduct has caused—and continues to cause—CSX to lose millions of

---

the parties to file simultaneous briefs, CSX has no opportunity to respond to any arguments Defendants may raise on laches—a defense they have never before argued.

      dollars in lost profits each year. *See* ECF No. 469-1 ¶¶ 99–100 & Ex. 11–12.

- ***Public Interest:*** By blocking CSX from on-dock rail at NIT, Defendants' conduct harms not only CSX but also ocean carriers, POV, the Commonwealth and consumers. *Id.* at ¶ 100. Injunctive relief is plainly in the public interest.

Rather than confront these facts, Defendants rehash disputes of fact and relitigate issues already decided by the Court. None of this permits summary judgment on CSX's injunctive claims.[3]

### A. CSX seeks to prospectively enjoin Defendants' anticompetitive conduct.

The record evidence establishes that Defendants' acts to deny fair and full consideration of CSX's 2018 proposal—including NS's refusal to permit an independent committee to review the proposal, *see* ECF No. 324 ¶ 71—were merely the latest actions in the continuing conspiracy to block CSX's access to on-dock rail at NIT. Indeed, between 2015 and 2018, NS and NPBL undertook *multiple* actions—including with respect to both pricing and operations—to maintain NS's monopoly. For example, in early 2015, CSX asked NPBL to move backlogged freight to and from NIT at its tariff rate, only to encounter repeated obstacles and barriers imposed by Defendants. *See* ECF No. 324 ¶¶ 45–54. Soon after, in July 2015, NS notified NPBL that it intended to cancel NPBL's trackage rights into NIT. *See id.* ¶¶ 57–60. Defendants' trackage rights "dispute" culminated in a petition to the STB, which NPBL's Cannon Moss cited as justification

---

[3] CSX is also entitled to recover historical damages caused by Defendants' maintenance of NS's monopoly. *See* ECF No. 324 at 49–51, ECF No. 487 at 27–29. CSX's expert has properly calculated damages arising from the *totality* of Defendants' conduct by estimating CSX's annual lost profits. ECF No. 469-1 ¶¶ 85–87; 99–100; Ex. 11–12. CSX is entitled to recover those damages "for the four years immediately preceding the filing of [its] lawsuit." P. Areeda & H. Hovencamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application, § 320c (2022 supp.). This is true even "where it is difficult to pinpoint which recent acts implementing an unlawful conspiracy caused which damages." *Id.*; *see also LePage's v. 3M*, 324 F.3d 141, 166 (3d Cir. 2003) (in § 2 case, approving damages calculation premised on market share where "it would be extremely difficult, if not impossible, to segregate and attribute a fixed amount of damages to any one act as the theory [in a monopolization case is] not that any one act in itself was unlawful, but that all the acts taken together show[ ] a § 2 violation").

to avoid CSX's 2018 proposal. *See id.* ¶ 66 & Ex. 7 (Moss Dep. 175:12–177:18); *see also* ECF No. 61-1. Substantial record evidence shows that Defendants' ongoing course of anticompetitive conduct harms both CSX and numerous third parties. *See* ECF No. 324 at 6–40. CSX seeks an injunction prohibiting Defendants from continuing to engage in this injurious conduct in the future.

Defendants have never suggested that they have abandoned or intend to abandon the course of conduct at issue. *See* ECF No. 541 at 10. They instead argue that CSX cannot obtain prospective injunctive relief to "remedy" specific instances of past misconduct. *See* ECF No. 543 at 8–9; ECF No. 542 at 5–7. This nonsensical argument misconstrues CSX's claims and its requested relief. CSX does not seek to hold Defendants liable for past harm caused by any single act in isolation. CSX challenges Defendants' *ongoing* anticompetitive and conspiratorial conduct, the *totality* of which allows NS to maintain an illegal monopoly over on-dock rail access at NIT.

Defendants' obstructive actions in 2015 are further examples of this conduct, which CSX seeks to enjoin going forward. To offer competitive on-dock rail service at NIT, CSX must be able to provide its customers with *dependable* service—which, in 2015, Defendants successfully disrupted, and which drayage does not provide. *See* ECF No. 324 ¶¶ 45–54, 82–88. An injunction prohibiting Defendants from such acts in the future would ensure they cannot continue to collude to deny the competitive, equal access for which the NPBL was chartered. *See* ECF No. 1-1 at 1 (NPBL formed for the "mutual benefit" of its owners "in the interchange of business"). This Court can and should decide the specific scope and terms of any injunction following motions and briefing by the parties. *See* ECF No. 541 at 6, 15. Because Defendants are unable to establish that an injunction cannot issue as a matter of law, summary judgment should be denied.

**B. The Court can tailor an injunction to prohibit Defendants' specific conduct.**

Defendants argue that the Court should grant summary judgment on CSX's injunctive

9

claims because its requested relief is "vague" or "undefined." *See* ECF No. 542 at 4–5; ECF No. 543 at 4–5. To be sure, a court must tailor an injunctive remedy to address the specific illegal conduct at issue. *See, e.g.*, *Richmond Tenants Org., Inc. v. Kemp*, 956 F.2d 1300, 1308–09 (4th Cir. 1992). As this Court has recognized, however, it can craft injunctive relief to prevent Defendants from continuing specific unlawful conduct proven at a trial on the merits. *See* ECF No. 66 at 23–24; ECF No. 395 at 27–29 (denying NS's Rule 12(c) motion and reiterating authority to award injunctive relief); *see also* Fed. R. Civ. P. 65(d) (providing that a court's injunction—not a party's *request* for such relief—must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required").

Courts routinely issue injunctions barring defendants from continuing antitrust violations. *See, e.g.*, *California v. Am. Stores Co.*, 495 U.S. 271, 296 (1990) (upholding injunction barring anticompetitive merger); *Zenith I*, 395 U.S. 100 at 130–33 (reinstating injunction requiring defendants to withdraw from conspiratorial patent pools); *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 724 (4th Cir. 2021). None of Defendants' cases suggests otherwise—indeed, only one (more than a century old) involves an antitrust claim. *See New York, N.H. & H.R. Co. v. Interstate Com. Comm'n*, 200 U.S. 361, 404 (1906) (approving injunction prohibiting defendant from committing similar antitrust violations, but rejecting proposed injunction extending to *all* potential future violations).[4]

### C. Injunctive relief is not precluded by 15 U.S.C. § 26.

Defendants also contend that Section 26 of the Clayton Act bars CSX's requested relief.

---

[4] The non-antitrust cases cited also do not support Defendants' argument. *See, e.g., CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 262 (4th Cir. 2020) (rejecting nationwide injunction as not sufficiently tailored "to redress the plaintiff's particular injury"); *Williams v. Recovery Sch. Dist.*, 859 F. Supp. 2d 824, 833 (E.D. La. 2012) (dismissing Title VII case for failure to state a claim but observing that plaintiff's requested injunction would have been overbroad).

*See* ECF No. 543 at 5–7; ECF No. 542 at 2–3. The Supreme Court "laid to rest" this notion nearly eighty years ago. *See Transkentucky Transp. R.R. v. Louisville & Nashville R. Co.*, 581 F. Supp. 759, 768 (E.D. Ky. 1983) (citing *Georgia v. Penn. R.R. Co.*, 324 U.S. 439 (1945)). In *Georgia v. Pennsylvania Railroad*, the Supreme Court held § 26 did not preclude injunctive relief as to specific anticompetitive and conspiratorial conduct. 324 U.S. at 455 (plaintiff's request for injunction prohibiting "alleged rate-fixing combination and conspiracy" among rail carriers involved matters over which the ICC/STB "has no jurisdiction"). That is precisely the type of injunction that CSX seeks. *See* ECF No. 541-1. Moreover, as this Court has previously explained, CSX's request for injunctive relief restoring its shareholder rights or establishing an independent NPBL Board involve voluntary, private agreements that are not "presumptively regulatory" and thus not preempted. *See* ECF No. 66 at 20–24.

Additionally, NS argues briefly that CSX cannot obtain injunctive relief because it has not "exhausted administrative remedies." *See* ECF No. 543 at 7. The doctrine of exhaustion applies only "where a claim is cognizable in the first instance by an administrative agency alone." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956). NS cites no statute, regulation, or other authority identifying *any* administrative claim or remedy available to deter or remedy Defendants' anticompetitive and conspiratorial conduct. Moreover, the STB itself stayed proceedings on Defendants' trackage rights dispute pending resolution of this case, *see* ECF No. 61-1 at 3–4, and has also specifically noted that "any future decision [at the STB] concerning control [of NPBL] would benefit from the findings of the District Court" on CSX's claims. *See* ECF No. 401-1 at 18. There is plainly no exhaustion issue here.

### D. State law does not limit CSX's ability to obtain injunctive relief.

NS contends CSX's request for injunctive relief as to NPBL's corporate governance is

precluded by Virginia Code § 13.1-747, which addresses judicial dissolution of a corporation by a minority shareholder.  *See* ECF No. 543 at 4.  CSX does not seek judicial dissolution of NPBL.  NS interprets § 13.1-747 too narrowly,[5] and it cites no authority suggesting the Court cannot issue injunctive relief related to NPBL's corporate governance to remedy the harms to CSX.

CSX's requested injunctive relief—both as to NPBL's corporate governance and CSX's 2018 proposal—involve enforcement of NPBL's Operating Agreement.  That private contract provides that NPBL is a "separate organization in which all [railroads] are to be equally interested and each to have an equal representation," and that shareholders must "co-operate cordially in encouraging the business of the [NPBL], for which it is constructed."  ECF No. 1-1 at 1, 4.  It also provides that NPBL "shall perform the service for which it was built and said Company be directly responsible for the competent and efficient discharge of its every obligation to the parties hereto."  *Id.* at 6.  It is well-settled under Virginia law that "courts are afforded wide latitude in granting or denying equitable relief," *Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*, 3 F.4th 605, 614 (4th Cir. 2021), and this Court unquestionably has authority to enforce the Operating Agreement and enjoin its continued violation.[6]  *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1055 (4th Cir. 1985) (affirming injunction prohibiting the ongoing violation of a contract pursuant to a Virginia statutory business conspiracy claim).

**II.    The Equitable Defense of Laches Does Not Bar CSX's Claims.**

The Court has asked the parties to "address laches," including "how the relevant legal

---

[5] In fact, *Jordan v. Apple Products* explains only that § 13.1-747 supersedes common law claims for oppression.  *See* 728 F. Supp. 409, 415 (W.D. Va. 1990).  CSX has asserted no such claim.

[6] For this reason, Defendants are incorrect to suggest that CSX seeks an injunction that would create "new" contractual terms.  *See* ECF No. 542 at 4; ECF No. 543 at 4, 10.  CSX seeks not to "rewrite" any agreement between the parties, but to enjoin Defendants' continued violation of federal and state law, as well as ongoing breaches of the Operating Agreement.

12

analysis is similar, or different from, the limitations issues that have long been at issue in this case." ECF No. 548 at 2.

### A. Defendants have waived any laches argument.

Laches is an affirmative defense on which NS and NPBL carry the burden. *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990). Neither NS nor NPBL has argued laches, much less "conclusively establish[ed] all elements of the defense." *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 299 (4th Cir. 2012) (vacating summary judgment on laches due to genuine disputes of material fact). Defendants have never proffered *any* facts or argument supporting laches at *any* stage in the litigation—not at summary judgment, not in their supplemental briefs, and not in the FPTO. The Court should not grant summary judgment on the basis of laches for this reason alone. *See, e.g.*, *Innovative Legal*, 852 F. Supp. 2d at 695.

### B. Summary judgment on laches is not supported by the record.

Simply put, laches does not apply to *any* of CSX's claims, and it is inapplicable as a matter of law. Laches is a "judicially created doctrine," which a court should *not* apply "when considering the timeliness of a cause of action brought pursuant to a statute for which Congress has provided a limitations period." *Lyons P'ship, L.P.*, 243 F.3d at 798 ("[A] court should not apply laches to overrule the legislature's judgment as to the appropriate time limit to apply for actions brought under the statute."). CSX's damages claims are governed by express statutes of limitations, so laches cannot bar those claims. *See* ECF No. 66 at 36; ECF No. 324 at 42. This is true even if Defendants' continuing conspiracy originated outside the limitations period. *See, e.g.*, *Haley Paint*, 279 F.R.D. at 337 (holding that, when a plaintiff seeks to enjoin a continuing conspiracy to violate the antitrust laws, that conduct "does not justify the application of the doctrine of laches"). The summary judgment record contains ample evidence—particularly when viewed in the light

13

most favorable to CSX—that Defendants engaged in numerous overt acts between 2014 and 2018 sufficient to bring their continuing conspiracy within the four-year statute of limitations. *See supra* at 8–9. Laches is thus inapplicable—even if the Court were to find that "the record reveal[s] the absence of evidence that NSR improperly used its majority interest on the NPBL board during the last ten years."[7] ECF No. 548 at 2.

It is also well established that the doctrine of laches does not apply to CSX's claims for prospective injunctive relief. First, CSX's equitable claims are timely for the same reasons its legal claims are: "[w]hen federal courts, in the exercise of their equitable power, consider laches, they are guided by the limitations period that they would borrow for actions at law and presume that if an equitable claim is brought within the limitations period, it will not be barred by laches." *Lyons P'ship, P.C.*, 243 F.3d at 799. But separate from the statute of limitations, CSX's injunctive relief claims are not subject to laches because they seek to enjoin "current, ongoing conduct that threatens future harm." *Id.* "Inherently, such conduct cannot be so remote in time as to justify the application of the doctrine of laches." *Id.*

Finally, the record does not support a grant of summary judgment on laches. Laches is an equitable defense that at times prevents a plaintiff who has "unreasonably 'slept' on his rights"

---

[7] To be clear, although the record evidence shows that NS *has* improperly used its majority interest during the last decade, *see* ECF No. 324 ¶¶ 30–42; 62–71, this is not required for CSX to prove its antitrust claims. CSX's claims require proof that (1) Defendants engaged in conduct "to foreclose competition, to gain a competitive advantage, or to destroy a competitor," *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 441 (4th Cir. 2011); and (2) that conduct "damage[d] [ ] the competitive process," *Thompson Everett, Inc. v. Nat'l Cable Advertising, L.P.*, 57 F.3d 1317, 1325 (4th Cir. 1995). Defendants' actions need not be illegal or "improper" to constitute anticompetitive conduct supporting CSX's claims. *See Kolon Indus.*, 637 F.3d at 441 ("Conduct that might otherwise be lawful may be impermissibly exclusionary under antitrust law when practiced by a monopolist."); *see also Adv. Health-Care Servs., Inc. v. Radford Comm. Hosp.*, 910 F.2d 139, 148 (4th Cir. 1990) ("In analyzing this issue, it is appropriate to examine the economic effects of the challenged conduct on consumers, competitors, and the alleged violator itself").

from bringing a claim when the defendant would be "prejudiced by [the] plaintiff's unreasonable delay." *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 121 (4th Cir. 2011). "Laches imposes on the defendant the ultimate burden of proving '(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" *White*, 909 F.2d at 102 (quoting *Costello v. United States*, 365 U.S. 265, 282 (1961)). Laches is a fact-intensive inquiry, which turns on "the particular circumstances of the case," *White*, 909 F.2d at 102, and demands "weighing the equities," which "depend[s] upon an assay of the circumstances." *Giddens v. Isbrandtsen Co.*, 355 F.2d 125, 127 (4th Cir. 1966). Here, the record evidence establishes that CSX brought suit shortly after Defendants delayed and denied fair consideration of its 2018 proposal. *See* ECF No. 324 ¶¶ 62–66, 71. Defendants have produced no evidence suggesting they have suffered any disadvantage "in asserting or establishing a claimed right or some other harm caused by detrimental reliance" due to any purported delay. *United States v. Smithfield Foods, Inc.*, 969 F. Supp. 975, 986 (E.D. Va. 1997). At a minimum, genuine disputes of material fact preclude judgment as a matter of law on the basis of laches. *See Steves & Sons, Inc. v. JELD-WEN, Inc.,* 292 F. Supp. 3d 656, 674–75 (E.D. Va. 2018) (denying summary judgment on laches grounds due to "unresolved factual disputes"). And, more broadly, sua sponte application of this equitable defense to preclude injunctive relief would enable a monopolist to continue its illegal, anticompetitive behavior unchecked.

## CONCLUSION

For these reasons, as well as those set forth in CSX's opposition to Defendants' motions for summary judgment and prior supplemental briefing (ECF No. 541), Defendants' motions for summary judgment should be denied.

Dated:  December 27, 2022	Respectfully submitted,

 

**CSX TRANSPORTATION, INC.**
*By Counsel*

*/s/ Robert W. McFarland*
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
V. Kathleen Dougherty (VSB No. 77294)
Jeanne Noonan (VSB No. 87863)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia  23510-1655
Tel.:  (757) 640-3716
Fax:  (757) 640-3930
rmcfarland@mcguirewoods.com
bhatch@mcguirewoods.com
vkdougherty@mcguirewoods.com
jnoonan@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
W. Cole Geddy (VSB No. 93511)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219-3916
Tel.:  (804) 775-1000
Fax:  (804) 698-2026
bjustus@mcguirewoods.com
apeterson@mcguirewoods.com
cgeddy@mcguirewoods.com

## CERTIFICATE OF SERVICE

I certify that on this 27th day of December, 2022, a true and correct copy of the foregoing was served on all counsel of record via Notice of Electronic Filing by filing with the Court's CM/ECF system.

CSX TRANSPORTATION, INC.
*By Counsel*

*/s/ Robert W. McFarland*
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
V. Kathleen Dougherty (VSB No. 77294)
Jeanne Noonan (VSB No. 87863)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia  23510-1655
Tel.:  (757) 640-3716
Fax:  (757) 640-3930
rmcfarland@mcguirewoods.com
bhatch@mcguirewoods.com
vkdougherty@mcguirewoods.com
jnoonan@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
W. Cole Geddy (VSB No. 93511)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219-3916
Tel.:  (804) 775-1000
Fax:  (804) 698-2026
bjustus@mcguirewoods.com
apeterson@mcguirewoods.com
cgeddy@mcguirewoods.com
