**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

CSX TRANSPORTATION, INC.,
individually and on behalf of NORFOLK
& PORTSMOUTH BELT LINE
RAILROAD COMPANY,

      Plaintiff,

v.                                                                    Civil Action No. 2:18-cv-530-MSD-RJK

NORFOLK SOUTHERN RAILWAY
COMPANY, *et al.*,

      Defendants.

_____/

**CSX TRANSPORTATION INC.'S OPPOSITION TO DEFENDANT NORFOLK
SOUTHERN RAILWAY COMPANY'S OBJECTION TO DENIAL OF THE MOTION
IN LIMINE REGARDING NPBL'S SWITCH RATE, ECF NO. 329**

Plaintiff CSX Transportation, Inc. ("CSX"), by counsel, pursuant to Federal Rule of Civil

Procedure 72(a) and Local Civil Rules 7 and 72, states as follows in opposition to the Objection

filed by Defendant Norfolk Southern Railway Company ("NS") (ECF No. 545):

**INTRODUCTION**

NS objects to the Magistrate Judge's decision denying NS's Motion *in Limine* to exclude

evidence and argument that the switch rate charged by Defendant Norfolk and Portsmouth Beltline

Railway Company ("NPBL") is unreasonable or excessive (ECF No. 329), based on an incorrect

analysis of the law and confusion about the jurisdiction of the Surface Transportation Board

("STB").   NS's Objection continues to reflect its fundamental misunderstanding or

mischaracterization of CSX's claims, repeating legal arguments that have been rejected by this

1

Court on multiple occasions.  The Magistrate Judge's decision was correct, and NS's Objection

should be overruled.

## LEGAL STANDARD

Under Rule 72(a) of the Federal Rules of Civil Procedure, "[t]he district judge in the case

must consider timely objections" to a magistrate judge's ruling on non-dispositive matters, and

must "modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed.

R. Civ. P. 72(a); *CertusView Techs., LLC v. S & N Locating Services, LLC*, 107 F. Supp. 3d 500,

504 (E.D. Va. 2015).  A magistrate judge's "finding is 'clearly erroneous' when although there is

evidence to support it, the reviewing court on the entire evidence is left with the definite and firm

conviction that a mistake has been committed."  *Id.* at 504 (quoting *United States v. U.S. Gypsum*

*Co.*, 333 U.S. 364, 395 (1948)).  Thus, unless a court is "firmly convinced" that such an error has

occurred, "the magistrate judge's order must be affirmed."  *Id.* (quoting *Giganti v. Gen–X*

*Strategies, Inc.*, 222 F.R.D. 299, 304–05 (E.D. Va. 2004)).  As this Court has explained, the

alteration of a magistrate judge's non-dispositive order is "extremely difficult to justify."  *Id.*

(quoting *Carlucci v. Han*, 292 F.R.D. 309, 312 (E.D. Va. 2013) (quoting 12 Charles Alan Wright

& Arthur R. Miller et al., *Federal Practice & Procedure* § 3069 (2d ed. 1997))).  With respect to

questions of law, however, "there is no practical difference between review under Rule 72(a)'s

contrary to law standard and a de novo standard."  *Id.* (quoting *Bruce v. Hartford*, 21 F. Supp. 3d

590, 594 (E.D. Va. 2014)) (internal citations and quotation marks omitted).

## ARGUMENT

### I.      The Jury Will Not Be Tasked with Adjudicating the Proper Switch Rate

CSX has not asked the finder of fact to adjudicate NPBL's switch rate, as the STB might.

Rather, CSX alleges that NS and NPBL "committed federal and state law violations, and well as

contractual breaches, by <u>conspiring to manipulate a privately determined switching rate</u> for the purpose of harming CSX," and asks for a determination of liability and remedies associated with that liability.  ECF No. 395 at 28–29 (emphasis in original).   This Court has repeatedly found it has jurisdiction over the claims asserted by CSX, and can fashion remedies, including injunctive relief, without infringing on the STB's jurisdiction.  *See* ECF No. 66 at 20, 23–24; ECF No. 395 at 3–5, 29.

As noted by the Magistrate Judge, the "linchpin of Norfolk Southern's argument is that the Surface Transportation Board, or STB, has sole jurisdiction to decide switch rates for Belt Line." Dec. 2, 2022 Hearing Trans. at 15:7–9, attached here as **Exhibit A**.  In denying NS's Motion *in Limine*, the Magistrate Judge cited the Court's discussion and analysis of primary jurisdiction, in which the Court explained that doctrine and found it has jurisdiction over CSX's federal antitrust claims, as well as supplemental jurisdiction over the related state law claims.  *See* ECF No. 395 at 4.

NS argues that the Magistrate Judge's citation to this portion of the Court's Opinion and Order denying NS's Motion to Dismiss and for Judgement on the Pleadings (ECF No. 395 at 4), was erroneous because (1) the Court's Order was specific to mergers, and (2) only the STB can "rightfully state that a railroad rate is unreasonable."  *See* ECF No. 545 at 2–3.  NS's objections misapprehend the law and ignore the record.

The doctrine of primary jurisdiction is "designed to coordinate administrative and judicial decision-making by taking advantage of agency expertise and referring issues of fact not within the conventional experience of judges or cases which require the exercise of administrative discretion."  *Env't Tech. Council v. Sierra Club*, 98 F.3d 774, 789 (4th Cir. 1996).  Primary jurisdiction "does not speak to the jurisdictional power of the federal courts," but "simply

structures the proceedings as a matter of judicial discretion, so as to engender an orderly and sensible coordination of the work of agencies and courts." *Id.* at 789 n. 24; *see also* ECF No. 395, at 4. Although the Court's discussion of the STB's primary jurisdiction focused on the merger and NS's claims that it was authorized to control NPBL, the Court found it has jurisdiction over CSX's claims (*see* ECF No. 395 at 4) and also concluded it was unnecessary to "force the determination of a 'reasonable rate' back to the STB at this time." *Id.* at 27.

Ultimately, the Court has repeatedly addressed and rejected the argument NS yet again raises. *See* ECF No. 66 at 20–24 (finding the jurisdictional argument "meritless," and explaining the question before the Court "is whether Belt Line and Norfolk Southern engaged in illegal conduct up to this point in time that violated, for instance, federal antitrust laws or constituted a state law business conspiracy or breach of contract (in particular, by setting the Uniform Rate charged to access NIT too high in order to deter competition).") (emphasis in original); ECF No. 395 at 27–28 (explaining, "the STB setting a new reasonable switching rate to be in place going forward will not resolve the contract, conspiracy, and antitrust claims pending in this case, . . . which center on whether anticompetitive and collusive conduct in the past led to an artificially inflated switching rate designed to block NSR's competitors from accessing Norfolk International Terminal by rail.") (emphasis in original). Moreover, the Court has pointed out that the current switching rate was established "without input from the STB." *Id.* at 28 n.17 (emphasis in original). The STB has never reviewed or approved NPBL's switch rate, and the jury will not be asked to substitute roles with the STB.

The Magistrate Judge's decision referred to the foregoing analysis, stating the "jury, however, is not going to be tasked with adjudicating the proper switch rate." Ex. A at 17:4–14. The Court has found the claims at issue in this case do not ask the jury to adjudicate NPBL's switch

rate, nor do they ask the Court to fashion relief that affects the STB's jurisdiction.  *See* ECF No. 66 at 21–25, ECF No. 395 at 27–28.  In line with those findings, the Magistrate Judge's decision correctly concludes that, "in the context of addressing CSX's pending claims, the question of whether the switch rate was excessive and used to block CSX from access to NIT is squarely a judicial function."  Ex. A at 16:25–17:3.  Thus, the law does not preclude CSX from presenting evidence on that question.

## II.    The Magistrate Judge's Decision Is Not Clearly Erroneous

NS also objects on the basis that discussion by the Magistrate Judge of the matter pending before the STB "appears to have been a matter of confusion for the Magistrate Judge."  ECF No. 545 at 4.  NS claims that if the Magistrate Judge was under the impression there is a pending matter before the STB, "this was clear error."  *Id.*  Here, NS seeks to create confusion where none exists.

After the Magistrate Judge stated "the existence of STB authority to decide whether the Belt Line switch rate is reasonable does not mean that the Court lacks jurisdiction over CSX's claims," he explained, "[s]uch claims are properly before the Court, and in view of the need to consider, [']the orderly and sensible coordination of work of agencies and courts['] it is also noteworthy that the STB has stayed its proceeding pending the resolution of the case before this Court."  Ex. A at 16:2–10.  The Magistrate Judge expressed no confusion about the matter pending before the STB, as NS suggests.

The extensive record in this case makes clear there is no switch rate setting determination pending before the STB, but only a dispute involving trackage rights held in abeyance.  *See* ECF No. 61-1 at 2 (STB decision holding the proceeding "to set compensation for the trackage rights of [NPBL]" to be held in abeyance pending the outcome of this litigation); ECF No. 66 at 20, 25 ("the various federal and state law claims do not intrude on the issue before the STB, which is the

compensation paid by Belt Line to Norfolk Southern to use Norfolk Southern's tracks."); ECF No. 395 at 6 ("to the extent NSR seeks a referral to the STB for a rate setting determination, such request is denied at this time), and at 27 ("a separate rate-setting proceeding before the STB has already been initiated, and the STB proceeding is currently stayed pending this Court's resolution of the antitrust and conspiracy claims at issue in this case").

The Magistrate Judge also correctly noted that the STB is "fully aware of this current litigation," (Ex. A at 16:9–10), accurately reflecting the record in this case. *See* ECF No. 395 at 27; *see also* ECF No. 61-1 at 3 (STB noting, in choosing to hold NS and NPBL's trackage rights compensation proceeding in abeyance, that resolution of this case "may reduce the number of disputed issues between the parties in [the] proceeding, thereby promoting efficiency"). Even in its Decision on the referred question, the STB stated, "any future decision concerning control would benefit from the findings of the District Court," thus illustrating the STB's intent for this action to proceed, and that it may utilize the findings from this case in any future related STB proceedings. *See* ECF No. 401-1 at 18.

The Magistrate Judge's statement concerning the STB proceedings does not demonstrate confusion, particularly given the existing record. Rather, the Magistrate Judge's words reflect this Court's pronouncement as to why it is unnecessary for the STB to adjudicate NPBL's switching rate—the setting of a rate "going forward" does nothing to resolve the pending claims and past anticompetitive and collusive conduct, and any determination by the STB would not "dictate what remedies are appropriate in this case and/or resolve whether antitrust or conspiratorial actions designed to harm CSX proximately caused the establishment of such switching rate." ECF No. 395 at 27–28. There is no confusion or clear error; the Magistrate Judge correctly followed the

Court's prior rulings and concluded switching rate evidence is relevant to whether the Defendants "conspired and colluded."  Ex. A at 17:10–14.

### III.     Evidence of NPBL's Excessive Rate is Relevant and Admissible

NS repeatedly claims that "as a matter of law," it is improper to "argue or present evidence to prove that the NPBL switch rate is unreasonable."  ECF No. 545 at 4.  Not surprisingly, NS cites no legal authority to support its contention.  Indeed, the Magistrate Judge's decision correctly stated the determination of a "past wrong" of "an unreasonable or discriminatory rate is a judicial function."  Ex. A at 16:21–24 (quoting *Great N. Ry. Co. v. Merchants' Elevator Co.*, 259 U.S. 285, 291 (1922)).

CSX alleges that Defendants caused NPBL to establish and maintain an unreasonably high switching rate as a means to block CSX's access to on-dock rail at NIT for anticompetitive gain. *See* ECF 66 at 6 (citing ECF 1 at ¶ 34).  CSX has also alleged the NS-controlled NPBL Board and NPBL management have rejected multiple proposals to move CSX intermodal traffic to NIT at a lower rate, despite the fact that analysis by both CSX and NPBL concluded that NPBL could cover its costs and generate positive net revenue at this proposed lower rate.  *See* ECF No. 1 at ¶¶ 38–46.  And documentary evidence establishes that NS personnel candidly admitted that establishing NPBL's existing switch rate—and rejecting a more reasonable rate—were central to achieving their goal of blocking CSX at NIT.  *See* ECF No. 324 at 9–15.

Facts supporting these allegations and argument regarding this evidence do not require that the STB make a reasonableness determination as to the switching rate.  As the Court noted, the current switching rate was established in 2009, without any STB determination.  *See* ECF No. 395 at 28, n. 17.  To assess the issues of whether, for example, NPBL was acting in furtherance of a conspiracy rather than in its own independent self-interest, that NS and NPBL have imposed

exclusionary and anticompetitive barriers to competition, or even comparing NPBL's rate with those charged by other switching railroads for similar services, the jury is not required to make a "reasonableness" determination as that term may be defined by the STB.  NS's and NPBL's actions and inactions, including setting the $210 rate and refusing CSX's proposals for a lower rate to NIT, are evidence of anticompetitive and conspiratorial conduct, regardless of what the STB might do in a future rate proceeding.  Such evidence of exclusionary, anticompetitive, and conspiratorial conduct is plainly relevant and admissible under Rule 402.

Accordingly, the Magistrate Judge correctly concluded that evidence of whether "the defendants conspired and colluded to set the switch rate at an inflated level so as to unlawfully and effectively preclude CSX from gaining on-dock rail access to NIT" appears "to be of consequence to the pending claims," and denied NS's Motion *in Limine*.

## CONCLUSION

For these reasons, CSX respectfully requests that the Court overrule Defendant Norfolk Southern Railway Company's Objection to the Magistrate Judge's Order, ECF Nos. 518 and 521, denying Defendant's Motion *in Limine*, ECF No. 329.

Dated: December 30, 2022              Respectfully submitted,


**CSX TRANSPORTATION, INC.**
*By Counsel*

*/s/ Robert W. McFarland*
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
V. Kathleen Dougherty (VSB No. 77294)
Jeanne E. Noonan (VSB No. 87863)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia  23510-1655
Telephone:  (757) 640-3716

Facsimile:  (757) 640-3930
E-mail: rmcfarland@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com
E-mail: vkdougherty@mcguirewoods.com
E-mail: jnoonan@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
W. Cole Geddy (VSB No. 93511)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219-3916
Telephone:  (804) 775-1000
Facsimile:  (804) 698-2026
E-mail: bjustus@mcguirewoods.com
E-mail: apeterson@mcguirewoods.com
E-mail: cgeddy@mcguirewoods.com

9

## CERTIFICATE OF SERVICE

I certify that on this 30th day of December, 2022, a true and correct copy of the foregoing

was served on all counsel of record via Notice of Electronic Filing by filing with the Court's

CM/ECF system.

        */s/ Robert W. McFarland*
        Robert W. McFarland (VSB No. 24021)
        Benjamin L. Hatch (VSB No. 70116)
        V. Kathleen Dougherty (VSB No. 77294)
        Jeanne E. Noonan (VSB No. 87863)
        MCGUIREWOODS LLP
        World Trade Center
        101 West Main Street, Suite 9000
        Norfolk, Virginia  23510-1655
        Telephone:  (757) 640-3716
        Facsimile:  (757) 640-3930
        E-mail: rmcfarland@mcguirewoods.com
        E-mail: bhatch@mcguirewoods.com
        E-mail: vkdougherty@mcguirewoods.com
        E-mail: jnoonan@mcguirewoods.com

        J. Brent Justus (VSB No. 45525)
        Ashley P. Peterson (VSB No. 87904)
        W. Cole Geddy (VSB No. 93511)
        MCGUIREWOODS LLP
        Gateway Plaza
        800 East Canal Street
        Richmond, Virginia  23219-3916
        Telephone:  (804) 775-1000
        Facsimile:  (804) 698-2026
        E-mail: bjustus@mcguirewoods.com
        E-mail: apeterson@mcguirewoods.com
        E-mail: cgeddy@mcguirewoods.com