# Exhibit A

```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF VIRGINIA
                           Norfolk Division


- - - - - - - - - - - - - - - - - - -
                                     )
 CSX TRANSPORTATION, INC.,           )
                                     )
         Plaintiff,                  )    CIVIL ACTION NO.
                                     )         2:18cv530
 v.                                  )
                                     )
 NORFOLK SOUTHERN RAILWAY            )
 COMPANY, et al.,                    )
                                     )
         Defendants.                 )
- - - - - - - - - - - - - - - - - - -



              EXCERPT TRANSCRIPT OF PROCEEDINGS
                  (Daubert Hearing - Rulings)

                      Norfolk, Virginia

                      December 2, 2022



BEFORE:   THE HONORABLE ROBERT J. KRASK
          United States Magistrate Judge
```

Give me just a moment.

(Pause in the proceedings.)

THE COURT: Norfolk Southern's motion in limine to exclude evidence and argument that the Belt Line switch rate is unreasonable is denied subject, of course, to the Court's ruling on the pending motions for summary judgment.

The linchpin of Norfolk Southern's argument is that the Surface Transpiration Board, or STB, has sole jurisdiction to decide switch rates for Belt Line. As a result, Norfolk Southern argues that CSX may not ask the trier of fact to assess the reasonableness of the Belt Line switch rate, the Court may not remedy that rate, and the switch rate is irrelevant and beyond the scope of this case.

As Chief Judge Davis explained in ruling on the motion to dismiss with respect to this question of jurisdiction, I quote the STB's exclusive authority over rail carriers' mergers implicates the doctrine of, quote, primary jurisdiction, which, despite its name, is not jurisdictional.

Importantly, despite what the term "primary jurisdiction" may imply, it does not speak to the jurisdictional power of the federal court; it simply structures the proceedings as a matter of judicial discretion so as to engender an orderly and sensible coordination of the work of agencies and courts. That's ECF 395 at 4, and he quotes a Fourth Circuit case involving *Environmental*

1   *Technology Council*, 98 F.3d at 789, note 24.
2           Accordingly, the existence of STB authority to
3   decide whether the Belt Line switch rate is reasonable does
4   not mean that the Court lacks jurisdiction over CSX's claims.
5   Such claims are properly before the Court, and in view of the
6   need to consider, quote, the orderly and sensible
7   coordination of work of agencies and courts, it is also
8   noteworthy that the STB has stayed its proceeding pending the
9   resolution of the case before this Court, with the STB being
10  fully aware of this current litigation.
11          This leaves the question whether the evidentiary
12  grounds exist to bar CSX from offering evidence as well as
13  argument of an alleged excessive switch rate as proof in
14  support of CSX's pending antitrust conspiracy and contract
15  claims.
16          As noted by Chief Judge Davis, quote, CSX asserts
17  that the establishment of such rate in 2009, and the
18  maintenance of such rate over time, was the product of
19  unlawful collusion.  And that's ECF 395.  I'm missing the
20  page cite, but it's footnote 17.
21          In *Great Northern Railway Company*, the Supreme Court
22  stated that the determination of a past wrong of, quote, an
23  unreasonable or discriminatory rate is a judicial function.
24  And that is at 259 U.S. at 291.
25          Therefore, in the context of addressing CSX's

```
 1   pending claims, the question of whether the switch rate was
 2   excessive and used to block CSX from access to NIT is
 3   squarely a judicial function.
 4           Norfolk Southern seeks to bar such evidence on the
 5   ground that only the STB is vested with authority to
 6   determine the reasonableness of the switch rate and that
 7   evidence directed to assessing whether it was excessive is
 8   irrelevant.
 9           The jury, however, is not going to be tasked with
10   adjudicating the proper switch rate.  The relevant question
11   in the context of the pending claims is whether the
12   defendants conspired and colluded to set the switch rate at
13   an inflated level so as to unlawfully and effectively
14   preclude CSX from gaining on-dock rail access to NIT.
15           Evidence tending to establish such facts appears at
16   this juncture to be of consequence to the pending claims.
17   Accordingly, the Court denies Norfolk Southern's motion for a
18   blanket exclusion order for such evidence.  Of course, the
19   admissibility of testimony and any individual items of
20   evidence remains to be addressed at trial.
21           Finally, if Norfolk Southern seeks a limiting
22   instruction concerning the proper use of any evidence about
23   the establishment of a switch rate, it should include a
24   proposed instruction as part of its proposed jury
25   instructions.
```