**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

CSX TRANSPORTATION, INC.,
individually and on behalf of NORFOLK
& PORTSMOUTH BELT LINE
RAILROAD COMPANY,

      Plaintiff,

v.                                                                    Civil Action No. 2:18-cv-530-MSD-RJK

NORFOLK SOUTHERN RAILWAY
COMPANY, *et al.*,

      Defendants.

_____/

**CSX TRANSPORTATION, INC.'S SUPPLEMENTAL BRIEF**
**IN RESPONSE TO COURT ORDER, ECF NO. 564**

     Plaintiff CSX Transportation, Inc. ("CSX"), by counsel, submits the following

supplemental brief as directed by the Court's January 6, 2023 order ("Order").  *See* ECF No. 564.

**INTRODUCTION**

     On January 6, 2023, the Court requested supplemental briefing on whether its summary

judgment decision of January 3, 2023 (ECF No. 559) has any effect on the four (4) pending

motions in limine, including (1) Defendants' motions to exclude CSX's expert witness, Dr.

Howard P. Marvel, Ph.D. (ECF Nos. 465, 473) and (2) Defendants' motions seeking to limit CSX's

use of internal NS emails (ECF Nos. 337, 349).  As explained below, the Court's ruling supports

CSX's position that these motions should be denied.  The Court expressly cited Dr. Marvel's

analysis *and* internal NS emails as disputed facts precluding summary judgment on CSX's claims

for injunctive relief.  Consistent with the Court's summary judgment rulings, the Court should

deny Defendants' pending motions in limine so this evidence may be presented at trial.

1

## ARGUMENT

**I.    The Court's ruling supports the admissibility of Dr. Marvel's testimony.**

Dr. Marvel provides three general categories of opinions in this case: (1) that the relevant antitrust market in which Defendants' conduct took place is the market for on-dock rail service at NIT; (2) that Defendants' conduct foreclosing CSX from on-dock rail at NIT has harmed competition by allowing NS to charge supracompetitive prices to ocean carriers that move a large percentage of their international intermodal containers through NIT; and (3) that Defendants' conduct has caused CSX to lose substantial international intermodal business across its entire network, resulting in hundreds of millions of dollars of lost profits since 2009.  *See* ECF No. 487 at 1-2, 5 (citing ECF No. 474-1 ¶ 6).  As CSX argued in opposing Defendants' motions to exclude, Dr. Marvel is eminently qualified to offer these opinions, which are based on a thorough investigation and rigorous economic analysis.  *See id.* at 5-7, 12-13.  Dr. Marvel's opinions are thus not subject to exclusion under Rule 702 of the Federal Rules of Evidence.  *See id.* at 41.

The Court's summary judgment ruling underscores that Dr. Marvel's opinions should not be excluded before trial.  In ruling on Defendants' summary judgment motions, the Court did not evaluate or comment on Dr. Marvel's qualifications or experience.  Nor did the Court question the relevance of Dr. Marvel's opinions to CSX's claims or the reliability of his economic analysis or regression modeling.  To the contrary, the Court *confirmed* in its opinion that "[d]isputed facts and *conflicting expert opinions interpreting those facts* reveal genuine disputes regarding the propriety of CSX's market definition," which the Court held cannot be resolved prior to trial.  ECF No. 559 at 92 (emphasis added).  The Court clearly intends for Dr. Marvel to testify on these issues at trial, consistent with Rule 702 and *Daubert*.  *See* ECF No. 487 at 12 (explaining that where, as here, an expert's opinions are premised on disputed facts, "[t]he fact-finder is entitled to hear [the expert's]

2

testimony and decide whether it should accept or reject that testimony after considering all factors that weigh on credibility, including whether the predicate facts on which [the expert] relied are accurate") (citing *Pipitone v. Biomatrix*, 288 F.3d 239, 249-50 (5th Cir. 2002).

In holding that CSX's damages claims are time-barred, the Court described Dr. Marvel's damages model as "flawed," because it does not "separate harm stemming from the limited conduct within the limitations period . . . from the established inertial effects of the acts committed prior to" that period.  ECF No. 559 at 51-52; *see also id.* at 52 (CSX's "unitary theory" of damages prevents it from "present[ing] to the jury a non-speculative damages case arising from" conduct within the limitations period).  But the Court held only that Dr. Marvel's damages model did not apportion CSX's damages in a manner that would allow CSX to recover those damages at trial in light of the applicable statute of limitations.  *See id.* at 51-52.  The Court did not identify any disqualifying "flaws" or errors in Dr. Marvel's economic or causation opinions or in his regression analyses—all of which remain relevant to CSX's injunctive relief claims.

To obtain injunctive relief, CSX must show

(1) that it [faces a significant threat of] irreparable [antitrust] injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Steves & Sons, Inc. v. JELD-WEN, Inc.,* 988 F.3d 690, 719 (4th Cir. 2021).  Dr. Marvel's opinions are relevant and probative with respect to these elements.  For example, under the first element (significant threat of irreparable antitrust injury), the Court may evaluate potential harm to competition in the relevant market—a topic on which Dr. Marvel opines at length.  *See* ECF No. 487 at 6-7.  Under the second element (the availability of legal remedies), the Court may consider whether monetary damages would be sufficient to compensate CSX's prospective injury—an

analysis that is certainly informed by the degree of harm CSX has already suffered, as quantified by Dr. Marvel, and the Court's exclusion of CSX's damages claims.  And the third element (balance of hardships) requires the Court to weigh any alleged hardship to Defendants against the harm to CSX and competition generally—another topic on which Dr. Marvel offers admissible expert testimony.  *See id.* at 7.  Indeed, Dr. Marvel's opinions about CSX's historic lost profits and their cause are particularly relevant to this analysis, because they illustrate the extent of the harm that has been (and continues to be) inflicted by Defendants' ongoing anticompetitive scheme.  *See id.*  The Court's conclusion that Dr. Marvel's damages model does not properly apportion damages to conduct within the limitations period does not foreclose offering that evidence on these separate questions.  Dr. Marvel's estimates of CSX's lost profits remain relevant and admissible for CSX's injunctive relief claims, regardless of the Court's decision about whether that model is sufficient to support a damages award.[1]

For these reasons, as well as those set forth in CSX's opposition to Defendants' *Daubert* motions, Defendants' motions to exclude Dr. Marvel should be denied.

## II.     The Court's ruling supports the admissibility of internal NS emails as evidence of conspiracy and monopolization.

The Court's summary judgment ruling also supports denial of Defendants' pending motions in limine to limit CSX's ability to introduce internal NS emails as evidence of conspiracy (or "communications") between NS and NPBL, which remain admissible to prove a "substantial threat" of ongoing or future antitrust injury arising from Defendants' anticompetitive conduct.

---

[1] CSX respectfully disagrees with the Court's Order to the extent it granted summary judgment on any ground for Defendants, and CSX expressly preserves and does not waive its ability to challenge those adverse rulings at an appropriate time.

As the Court stated in its summary judgment opinion, CSX may rely on both direct and circumstantial evidence to prove its claims. *See* ECF No. 559 at 93 (citing *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 289–90 (4th Cir. 2012) ("Conspiracies are often tacit or unwritten in an effort to escape detection, thus necessitating resort to circumstantial evidence to suggest that an agreement took place.")).   Accordingly, a document need not be a formal "communication" between an NS employee and an NPBL employee to constitute admissible evidence that Defendants "positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Fed. Ins. Co. v. Locash*, No. 2:12CV504, 2014 WL 12588635, at *9 (E.D. Va. Feb. 18, 2014).   Defendants' request for a blanket ruling excluding all evidence or argument that NS emails are evidence of conspiracy is thus improper. *See In re Peanut Farmers Antitr. Litig.*, No. 2:19cv463, 2021 WL 1141260, at *2 (E.D. Va. Feb. 22, 2021) (denying motion in limine to exclude communications among the parties).   In fact, in its summary judgment opinion, the Court explicitly identified Defendants' emails as evidence "present[ing] a triable issue as to whether NSR will use its ability to control the NPBL Board to harm CSX in the future in the same way it allegedly did so in the past."  ECF No. 559 at 85; *see also id.* at 93 (noting CSX identified "sufficient direct and circumstantial evidence" of conspiracy between Defendants to defeat summary judgment on its injunctive relief claims).

In evaluating whether Defendants' failure to act on CSX's 2018 proposal constituted an "overt act" for limitations purposes, the Court observed that a corporation generally "act[s] through formal board resolutions," not the "statements of individual directors."  ECF No. 559 at 75 & n.28.  As a result, the Court explained, statements by individual NPBL directors, standing alone, were not sufficient to constitute an overt act causing "new and accumulating harm" for purposes of CSX's damages claims. *Id.*  This observation does not extend to the separate question of what

5

evidence may be introduced at trial to support CSX's conspiracy and monopolization claims, and it in no way suggests that CSX may not rely on "statements of individual directors" (including in internal NS emails) to support those claims.[2]  *See In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 375 (3d Cir. 2004) (explaining that the acts or evidence of one co-conspirator are admissible against the others, provided the court finds that "(1) a conspiracy existed; (2) the declarant and the party against whom the statement is offered were members of the conspiracy; (3) the statement was made in the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy") (citing FED. R. EVID. 801(d)(2)(E)); *see also United States v. Blevins*, 960 F.2d 1252, 1255 (4th Cir. 1992) (procedurally, the court may conditionally admit co-conspirators' statements "subject to the subsequent satisfaction of the requirements for their admission").

Finally, to the extent the Defendants' motions in limine relate to emails or other documents from prior to 2013, CSX notes that the summary judgment ruling supports the admission of such materials, regardless of when they were created.  Initially, even in the context of damages claims, a plaintiff is "not required to prove an illegal conspiracy with evidence restricted to the limitations period."  *Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 218 (3d Cir. 2008).  More importantly, however, the Clayton Act's statute of limitations provision (15 U.S.C. § 15b) by its terms applies only to damages claims, not claims for injunctive relief under 15 U.S.C. § 26.  *See* ECF No. 559 at 82, 86-88.  For this reason alone, the Court's decision to grant summary

---

[2] A NS-appointed NPBL director may be considered an agent of NPBL when acting in that capacity, which is a question of fact not subject to resolution on summary judgment.  *See Reistroffer v. Person*, 439 S.E.2d 376, 378–79 (Va. 1994) ("[T]he issue whether an agency relationship existed is one of fact to be resolved by the fact finder."); *Acordia of Va. Ins. Agency, Inc. v. Genito Glenn, L.P.*, 560 S.E.2d 246, 250 (Va. 2002) ("Agency may be inferred from the conduct of the parties and from the surrounding facts and circumstances").

judgment on CSX's damages claims based on the statute of limitations has no effect on the scope of evidence available to prove CSX's separate claims for injunctive relief.

Although the Court invited briefing on the issue of whether the equitable defense of laches should apply to bar CSX's injunctive relief claims, it ultimately concluded that summary judgment was not appropriate on this defense—in part because any claims of prejudice or delay would need to be adjudicated at trial. *See id.* at 87-88. And the Court expressly contemplated that CSX would introduce pre-limitations conspiracy evidence at trial. *See, e.g.*, *id.* at 85 ("CSX's strongest evidence of past wrongs is based on acts committed in and around 2009; however, emails and other evidence highlighted by CSX from 2015 and 2018, . . . *when considered in the context of the past conduct*, present a triable issue as to whether NSR will use its ability to control the NPBL Board to harm CSX in the future in the same way it allegedly did in the past."); *id.* at 93 ("The Court . . . finds that the record evidence is sufficient to raise a factual dispute regarding the existence of [a conspiratorial agreement between NS and NPBL]. CSX has identified sufficient direct and circumstantial evidence of an agreement between NSR and NPBL in and around 2009 that was aimed (and may have unlawfully succeeded at erecting barriers to CSX's ability to provide on-dock rail service at NIT.").

The Court's summary judgment opinion is thus not inconsistent with the general rule that, "where, as here, a party alleges that it has been victimized by a continuing violation which occurs in part outside the statute of limitations, it is an abuse of discretion for the trial judge to strictly limit the proof solely to the period of the statute of limitations and prevent the presentation of evidence relating to events which were part of the continuing violation but occurred outside the statute of limitations period." *Univac Dental Co. v. Dentsply Int'l, Inc.*, 268 F.R.D. 190, 199 (M.D. Pa. 2010); *see also Dial Corp. v. News Corp.*, 165 F. Supp. 3d 25, 37- 38 (S.D.N.Y. 2016) ("[A]

monopoly which is 'maintained' during the damages period would need to be created before the damages period, and anticompetitive conduct before the limitations period may be material to a showing that Plaintiffs were injured during the damages period."). Accordingly, CSX may introduce evidence of Defendants' past conduct—including conduct occurring outside the limitations period—as evidence supporting its claim of ongoing and threatened future antitrust injury. *See, e.g.*, ECF No. 559 at 85, 93 (citing pre-limitations evidence as contributing to finding that factual disputes preclude summary judgment on CSX's injunctive relief claims).

## <u>CONCLUSION</u>

For these reasons, as well as those set forth in CSX's oppositions to Defendants' motions in limine (ECF Nos. 417, 422, 487), Defendants' four (4) motions in limine should be denied.


Dated:  January 9, 2023                              Respectfully submitted,



                                                     **CSX TRANSPORTATION, INC.**
                                                     *By Counsel*

                                                     */s/ Robert W. McFarland*
                                                     Robert W. McFarland (VSB No. 24021)
                                                     Benjamin L. Hatch (VSB No. 70116)
                                                     V. Kathleen Dougherty (VSB No. 77294)
                                                     Jeanne Noonan (VSB No. 87863)
                                                     MCGUIREWOODS LLP
                                                     World Trade Center
                                                     101 West Main Street, Suite 9000
                                                     Norfolk, Virginia  23510-1655
                                                     Tel.:  (757) 640-3716
                                                     Fax:  (757) 640-3930
                                                     rmcfarland@mcguirewoods.com
                                                     bhatch@mcguirewoods.com
                                                     vkdougherty@mcguirewoods.com
                                                     jnoonan@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
W. Cole Geddy (VSB No. 93511)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219-3916
Tel.:  (804) 775-1000
Fax:  (804) 698-2026
bjustus@mcguirewoods.com
apeterson@mcguirewoods.com
cgeddy@mcguirewoods.com

## CERTIFICATE OF SERVICE

I certify that on this 9th day of January 2023, a true and correct copy of the foregoing was served on all counsel of record via Notice of Electronic Filing by filing with the Court's CM/ECF system.

CSX TRANSPORTATION, INC.
*By Counsel*

*/s/ Robert W. McFarland*
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
V. Kathleen Dougherty (VSB No. 77294)
Jeanne Noonan (VSB No. 87863)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia  23510-1655
Tel.:  (757) 640-3716
Fax:  (757) 640-3930
rmcfarland@mcguirewoods.com
bhatch@mcguirewoods.com
vkdougherty@mcguirewoods.com
jnoonan@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
W. Cole Geddy (VSB No. 93511)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219-3916
Tel.:  (804) 775-1000
Fax:  (804) 698-2026
bjustus@mcguirewoods.com
apeterson@mcguirewoods.com
cgeddy@mcguirewoods.com