IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**CSX TRANSPORTATION, INC.,**

      **Plaintiff,**

v.                                     Civil Action No. 2:18-cv-530-MSD-RJK

**NORFOLK SOUTHERN RAILWAY
COMPANY,** *et al.*,

      **Defendants.**

### NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS ALL REMAINING CLAIMS FOR RELIEF

Defendant Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line"), by counsel, pursuant to Rules 12(h)(3), 12(c), and 15 U.S.C. § 26, states as follows in support of its Motion to Dismiss All Remaining Claims for Relief:

### Summary

In this Court's opinion and order issued January 3, 2023, the Court granted summary judgment in favor of defendants on all claims for damages and all state law claims. *See* ECF 559. The Court denied summary judgment "as to the court-raised issue of injunctive relief," ECF 559 at 103, leaving only CSX's claims for injunctive relief under federal antitrust law for trial.[1]

As set forth in the Complaint and discovery responses, CSX seeks three categories of injunctive relief: (1) a general request to enjoin violation of law; (2) a request to force the Belt Line to accept CSX's 2018 service proposal; and (3) a request to "restore[] CSXT's right as a co-equal shareholder and/or establish[] an independent board structure." ECF 1 at 40.

---

[1]     There is no viable state law injunctive relief at this point. *See* ECF 559 at n.46.

Under 15 U.S.C. § 26, in an antitrust case, federal district courts have no authority to grant "injunctive relief against any common carrier subject to the jurisdiction of the Surface Transportation Board under subtitle IV of title 49." Before 1995, this statute contained an additional condition, such that injunctive relief was prohibited only if the requested remedy was also "in respect of any matter subject to the regulation, supervision, or other jurisdiction of the Interstate Commerce Commission." 15 U.S.C. § 26 (1994 version with comparison) (**Exhibit 1**); *see also Georgia v. Pennsylvania R.R.*, 324 U.S. 439, 455 (1945).

In 1995, with the termination of the Interstate Commerce Commission, Congress amended 15 U.S.C. § 26 and removed the additional condition, effective January 1, 1996. Consequently, only one inquiry exists today, focused not on the kind of relief sought, but solely on the kind of defendant to be enjoined. If a defendant in an antitrust case is a common carrier subject to STB jurisdiction, no federal court has power to award injunctive relief of any kind. *See, e.g., Truck-Rail Handling Inc. v. BNSF Ry.*, 2005 U.S. Dist. LEXIS 61300 at *12 n.5 (N.D. Cal. 2005).

It is undisputed that NS and the Belt Line are common carriers subject to the jurisdiction of the STB, which means as a matter of law that this Court has no authority to grant the remaining relief in this case. Rule 12(h)(3) requires dismissal for lack of remaining subject matter jurisdiction and, alternatively, Rule 12(c) requires judgment on the pleadings if jurisdiction exists.

## Standard of Review

Under Rule 12(h)(3), in any civil action, "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Unlike a Rule 12(b)(1) motion, a Rule 12(h)(3) motion "may be asserted at any time and need not be responsive to any pleading of the other party." *Brown v. Huntington Ingalls, Inc.*, 2013 U.S. Dist. LEXIS 146933 at *8-9 (E.D. Va. 2013) (quoting *Rubin v. Buckman*, 727 F.2d 71, 72 (3d Cir.

1984)). Questions "concerning subject-matter jurisdiction may be raised at any time by either party or sua sponte by [the] court." *Id*. at *9 (quoting *Plyler v. Moore*, 129 F.3d 728, 731 n.6 (4th Cir. 1997)). Once subject matter jurisdiction is challenged, the plaintiff "bears the burden of persuasion." *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

Under Rule 12(c), "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." *Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). "Therefore, a motion for judgment on the pleadings 'is designed to provide a means of disposing cases when the material facts are not in dispute between the parties'." *Trustees of Columbia Univ. v. Nortonlifelock, Inc.*, 2021 U.S. Dist. LEXIS 259261 at *3 (E.D. Va. 2021). Under Rule 12(h)(2), failure to state a claim can be raised in a Rule 12(c) motion or even at trial. *See* Fed. R. Civ. P. 12(h)(2); ECF 395 at 7-8.

As stated in the accompanying motion, the Belt Line is mindful of the January 18, 2023 trial date and is filing its motion as soon as practical after receiving the Court's opinion on January 3, 2023, evaluating the remaining relief, consulting railroad regulatory counsel, and analyzing applicable law. The focus of this case for years has been the "hundreds of millions of dollars" in damages sought by CSX, ECF 559 at 38, and shifted only recently to injunctive relief, where the Belt Line raised 15 U.S.C. § 26. *See* ECF 542.[2] Additionally, until the summary judgment ruling six days ago, CSX's state law claims were still at issue.

---

[2] In more than four years of litigation, despite a need to show impending violation of the antitrust laws, even CSX itself has not pursued the issue by seeking preliminary remedies.

3

## 15 U.S.C. § 26

15 U.S.C. § 26 states as follows:

**§ 26. Injunctive relief for private parties; exception; costs**

Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, including sections two, three, seven and eight of this Act [15 U.S.C. §§ 13, 14, 18, 19], when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue: *Provided,* That nothing herein contained shall be construed to entitle any person, firm, corporation, or association, except the United States, to bring suit for injunctive relief against any common carrier subject to the jurisdiction of the Surface Transportation Board under subtitle IV of title 49, United States Code [49 U.S.C. §§ 10101 *et seq*.]. In any action under this section in which the plaintiff substantially prevails, the court shall award the cost of suit, including a reasonable attorney's fee, to such plaintiff.

## Relevant Background

The background of this case is summarized in the Court's summary judgment opinion. For purposes of this motion, the following additional information is relevant.

As the Belt Line explained in its brief on the issue of injunctive relief, ECF 542, the Complaint contains just two paragraphs on injunctive relief in the wherefore clause:

> 4) That this Court enter an injunction against Defendants from continuing to commit the above referenced violations of federal and state law [referring to entire Complaint]; [3]
>
> 5) That this Court enter an injunction against NS, NPBL, and the Individual Defendants, as appropriate, that restores CSXT's right as a co-equal shareholder and/or establishes an independent board structure as previously proposed by CSXT and that directs that NPBL approve CSXT's Service Proposal; [4]

---

[3] This kind of generic request is unenforceable under Rule 65, even ignoring 15 U.S.C. § 26, for reasons explained in the defendants' previous filings. *See* ECF 542 at 4 and ECF 543 at 5.

[4] CSX did not ask for approval of its 2018 service proposal in the Proposed Final Pretrial Order. *See* ECF 517-1 at 12. This failure is addressed in the Court's summary judgment opinion at footnote 37. *See* ECF 559, n. 37. For purposes of this motion, whether such failure constitutes a waiver makes no difference, as no form of injunctive relief is available.

ECF 1 at 40. These requests are repeated in CSX's discovery responses. *See* Answer to NS Interrogatory No. 9 (repeating requests when asked for specific relief sought) (**Exhibit 2**).

Importantly, CSX's antitrust claims are the *only* source of CSX's requested injunctive relief under federal law. There are no other federal law claims in the Complaint. *See* ECF 1.

On December 13, 2022, this Court directed the parties to submit supplemental briefing on the issue of injunctive relief, posing a question whether, if trial were to proceed only on injunctive relief, that trial should occur before or after further action by the STB. *See* ECF 535 at 3. Both defendants answered effectively "neither," since the case should be dismissed instead. *See* ECF 542 at 8 ("The short answer to the Court's third question is that this case should be dismissed, not delayed, with judgment entered against CSX on all claims. … No injunctive relief is available against the Belt Line, so no ruling at the STB will change the outcome of CSX's claims here."); ECF 543 at 11 ("For the reasons stated, CSX is not entitled to the injunctive relief that it has requested, and therefore, this case should be dismissed."). Both defendants also pointed to 15 U.S.C. § 26 as foreclosing CSX's injunctive relief claims. *See* 542 at 2-3; 543 at 5-6.[5]

## Argument

**I.     In antitrust cases, no right to injunctive relief exists independently of the statutory authority in 15 U.S.C. § 26.**

**A.     Authority to grant injunctive relief under 15 U.S.C. § 26 is jurisdictional.**

This Court's authority to grant the remaining relief in this case is jurisdictional under Rule 12(h)(3). And to be clear, this motion does not challenge the Court's subject matter jurisdiction

---

[5]     It is noteworthy that CSX's specific claims for injunctive relief are all within the exclusive jurisdiction of the STB. The STB has exclusive jurisdiction over railroad transportation rates (including switching rates charged by one railroad carrier to another), and the STB possesses exclusive authority under federal law to review and, where appropriate, prescribe such transportation rates in the event of a dispute. *See* 49 U.S.C. §§ 10501(a) and (b)(1), 10701, 10705, and 10707. Likewise, pursuant to 49 U.S.C. § 11323(a)(3) and (5), the STB has exclusive jurisdiction over a rail carrier's control of another rail carrier, to whatever extent.

5

over CSX's claims for damages under 15 U.S.C. § 15. *See* ECF 395 at 5 (finding jurisdiction). The question here is whether jurisdiction *continues to exist* for any further action following summary judgment. The answer is no, as jurisdiction under 15 U.S.C. § 15 disappeared with the dismissal of CSX's damages claims, and Congress expressly deprived federal courts of injunctive power over common carriers in antitrust suits in 15 U.S.C. § 26. [6]

Federal district courts are courts of limited subject matter jurisdiction, possessing "only the jurisdiction authorized them by the United States Constitution and by federal statute." *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2008).

In antitrust cases, no right to injunctive relief exists independently of the statutory authority in 15 U.S.C. § 26. *See Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 634 (1977) (analyzing injunctive relief under 15 U.S.C. § 26). As the Supreme Court explained in *Vendo*, "Prior to the enactment of § 16, private injunctive relief was not authorized for antitrust violations. As far as the legislative history indicates, the sole purpose of § 16 (§ 14 in the original drafts) was to extend to private parties the right to sue for injunctive relief." *Id*. at n.5 (internal citation omitted). Thus, the only way a private antitrust plaintiff has any right to access the federal courts for injunctive relief, and the only way federal courts have any power to grant such relief, is 15 U.S.C. § 26.

Because the authority to grant injunctive relief in antitrust cases derives solely from the statute, it follows that, where Congress has *not* granted such authority, or has, as in this instance, expressly prohibited it, no such authority exists. *See* 15 U.S.C. § 26; *see also Vendo*, 433 U.S. at n.5 (absent grant of authority in statute, "private injunctive relief [is] not authorized for antitrust

---

[6] The posture of this case after summary judgment makes it unlike other antitrust cases where independent jurisdictional "hooks" existed. *See, e.g., Gen. Inv. Co. v. N.Y. Cent. R. Co.*, 271 U.S. 228, 230 (1926) (in equity case under diversity jurisdiction, holding that, "Such a suit is essentially one arising under the laws of the United States, and, *as the requisite value is involved*, is one of which the District Courts are given jurisdiction.") (emphasis added; predating current statutes).

violations") and at 651 ("The *scope of the jurisdictional grant* is just as broad as the definition of a violation of the antitrust laws.") (dissenting opinion, emphasis added).

  **B.**  **15 U.S.C. § 26 deprives a district court of power regardless of jurisdiction.**

Regardless of jurisdictional considerations under Rule 12(h)(3), dismissal is also required under Rule 12(c) because no further relief is available in this case as a matter of law. *See* Fed. R. Civ. P. 12(c); *see also Truck-Rail Handling Inc.*, 2005 U.S. Dist. LEXIS 61300 at \*12 n.5 (under 15 U.S.C. § 26 in 2005, holding that injunctive relief was unavailable "as a matter of law" based solely on a finding that defendant BNSF "is a common carrier subject to the jurisdiction of the Surface Transportation Board"). As explained below, under 15 U.S.C. § 26, Congress expressly prohibited federal district courts from prescribing injunctive remedies in antitrust cases against common carriers subject to the jurisdiction of the STB.

**II.**  **A federal district court lacks authority to grant injunctive relief in an antitrust case if the defendant is a common carrier subject to the jurisdiction of the STB.**

The authority analysis begins with the statutory text. As the Supreme Court has explained, "The starting point in discerning congressional intent is the existing statutory text, and not the predecessor statutes. It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) (citations omitted). Nevertheless, prior versions of a statute can, in some instances, inform the current meaning. *Id*. at 539-40 (finding that statutory history created more confusion than clarity).

The statutory text of 15 U.S.C. § 26 related to common carriers changed meaningfully in 1995 with the termination of the Interstate Commerce Commission. Before 1995, the jurisdictional carve-out from the injunction power in 15 U.S.C. § 26 stated as follows:

> *Provided*, That nothing herein contained shall be construed to entitle any person, firm, corporation, or association, except the United States, to bring suit in

7

equity for injunctive relief against **any common carrier subject to the provisions of the Act** to regulate commerce, approved February fourth, eighteen hundred and eighty-seven, **in respect of any matter subject to the regulation, supervision, or other jurisdiction of the Interstate Commerce Commission**.

15 U.S.C. § 26 (1994) (emphasis added) (**Exhibit 1**).

Thus, the pre-1995 statute required two inquiries to determine whether injunctive relief was prohibited: (1) whether the defendant was a common carrier subject to the Interstate Commerce Act (the *kind of defendant* inquiry); and (2) whether the relief sought was "in respect of any matter subject to the regulation, supervision, or other jurisdiction of the Interstate Commerce Commission" (the *kind of relief* inquiry). Injunctive relief was prohibited only if both were answered affirmatively. *See generally Georgia*, 324 U.S. 439 at 455-55.

The statute changed in 1995, effective January 1, 1996. As a result, the jurisdictional carve-out from the injunction power in 15 U.S.C. § 26 now states as follows:

> *Provided,* That nothing herein contained shall be construed to entitle any person, firm, corporation, or association, except the United States, to bring suit for injunctive relief against **any common carrier subject to the jurisdiction of the Surface Transportation Board** under subtitle IV of title 49, United States Code.

Congress deleted the second inquiry. Thus, the current statute focuses solely on the *kind of defendant* to be enjoined, not the *kind of relief* requested. In other words, the statute now requires only one inquiry to determine whether injunctive relief is prohibited: Is the defendant a common carrier subject to the jurisdiction of the STB? If the answer is yes, then under 15 U.S.C. § 26, a federal court has no jurisdiction to grant injunctive relief. *See, e.g., Truck-Rail Handling Inc.*, 2005 U.S. Dist. LEXIS 61300 at *12 n.5. [7]

---

[7] Under the plain language of the statute, the defendant need not be "subject to the jurisdiction" of the STB for any particular purpose, either. The statute requires only that the defendant be a common carrier "subject to the jurisdiction" of the STB.

In fact, any previous precondition to compare potential injunctive relief to the powers of the regulatory agency is not only unnecessary now—it is impermissible. Under principles of statutory construction, courts cannot imply in a new statute the very thing that Congress eliminated from the old one. *See Murdock v. Memphis*, 87 U.S. 590, 617 (1875) (holding that provisions of Judiciary Act of 1789 omitted by amendment were no longer valid law). As the Supreme Court has cautioned, "There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted." *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978); *see also Lamie*, 540 U.S. at 538 (2004).[8]

Courts also cannot alter a statute to grant themselves power that Congress omitted. *See, e.g., Lamie*, 540 U.S. at 542 (courts will not redraft statutes "to provide for what we might think … is the preferred result.") (ellipses in original; quoting *United States* v. *Granderson,* 511 U.S. 39, 68 (1994)).

And while not dispositive, the legislative history of 15 U.S.C. § 26 indicates that Congress is fully aware of the implication of its 1995 amendment. For example, a failed "Railroad Antitrust Enforcement Act of 2008" had the stated purpose to "eliminate certain carve-outs from the Federal antitrust laws enjoyed by railroad common carriers," and described the existing law as follows: "Private parties are similarly precluded from relying on the antitrust laws to protect themselves against or seek remedies for anticompetitive harm caused by the railroads. Under Section 16 of

---

[8] Nor can such an implication be read into the fact that the current version identifies common carriers "subject to the jurisdiction of the [STB]" as opposed to "subject to the [ICA]." The ICA was repealed and the ICC terminated in 1995. The STB "was created by Congress in 1995 to replace the [ICC] as the economic regulator of providers of interstate land and water transportation." Cong. Research Serv. Rept., 'The Surface Transportation Board: Background and Current Issues,' January 19, 2022 (https://crsreports.congress.gov/product/pdf/R/R47013). Thus, as of 1996, in the absence of the ICA and ICC, common carriers in 15 U.S.C. § 26 were identified by reference to the federal agency as opposed to the nonexistent ICA.

the Clayton Act, *injunctive relief against a common carrier subject to the STB's jurisdiction is available only in a suit filed by the Federal Government*." H. Rept. 110-860 for H.R. 1650, September 18, 2008, at 3, 5 (**Exhibit 3**) (emphasis added).

A similar bill titled "Railroad Antitrust Enforcement Act of 2011" sought to remove railroads altogether from the common carrier carve-out in 15 U.S.C. § 26, with the purpose to "remove current exemptions and subject the American freight railroad industry to all the provisions of the Nation's antitrust laws." H. Rept. 112-38 for S. 49, July 18, 2011, at 1 (**Exhibit 4**). The proposed change was designed to enable not just the government, but also private parties, to seek injunctive relief against railroads, "thereby mak[ing] injunctive relief available to parties threatened with economic injury by antitrust violations of railroad common carriers," *id*. at 11, an implicit recognition that current law does not permit such relief.

And a third bill titled "Railroad Antitrust Enforcement Act of 2013" sought the same removal of railroads from the common carrier carve-out in 15 U.S.C. § 26, with the same stated purpose and recognition of existing law as the previous two bills. *See* Prop. Bill S.638, March 21, 2013 (**Exhibit 5**). All of them failed.

As a consequence, under 15 U.S.C. § 26 today, based on the plain language of the statute, a federal court cannot grant injunctive relief in any antitrust case where the defendant is a common carrier subject to the jurisdiction of the STB.

**III.     NS and the Belt Line are common carriers subject to the jurisdiction of the STB and therefore this Court lacks authority to grant injunctive relief against them.**

It cannot be disputed that NS and the Belt Line are common carriers subject to the jurisdiction of the STB. Both are railroads engaged in interstate commerce, and both are presently before the STB, along with CSX, in proceedings related to their operations. It also cannot be disputed that this is an antitrust case and that CSX's antitrust counts provide the sole remaining

basis for the injunctive relief that CSX seeks. As a result, under 15 U.S.C. § 26, this Court has no jurisdiction or authority to grant CSX further relief and the case should be dismissed.

### IV.     The injunctive relief that CSX seeks invades the jurisdictional province of the STB.

While beyond the scope of a 15 U.S.C. § 26 analysis post-1995, it is nonetheless significant that the relief CSX seeks inevitably (and impermissibly) invades the exclusive jurisdiction of the STB, which would have foreclosed district court injunctive authority even before 1995.

The injunctive relief CSX seeks, as understood and articulated by the Court, fundamentally revolves around the level of NS's *control* of the Belt Line, whether exercised or not. Such relief relates to CSX's suggestion that "NSR may not have abandoned its willingness to use its 'control' over NPBL for the purpose of benefiting NSR above all else," and questions of "whether NSR will use its ability to *control* the NPBL Board to harm CSX in the future in the same way it allegedly did so in the past." ECF 559 at 83, 85 (emphasis added). This Court would be asked to, "in essence, equitably modify the balance of power at NPBL, by ordering NSR and CSX to have equal votes on corporate governance issues or by issuing an injunction that requires Defendants to establish a sufficiently 'independent' NPBL Board of management structure." *Id*. at 83-84. Such relief would be tailored "to eliminate the power imbalance when it comes to corporate governance issues, board makeup, or the affiliations of corporate officers" and to eliminate NS's ability to "place its thumb on the scale of NPBL matters." ECF 559 at 84 n.34, 83. In each instance, what CSX asks the Court to remediate is, ultimately, NS's ability to *control* the Belt Line.

Such matters of control, however, are expressly "subject to the regulation, supervision, or other jurisdiction of the [STB]," to use the now-repealed language of prior 15 U.S.C. § 26. The STB has *exclusive* jurisdiction over the control of one rail carrier by another rail carrier, and over the control of more than one rail carrier by a non-carrier. 49 U.S.C. §§ 11323(a)(3), (4) and (5);

11

11323(b).  Those provisions are "part of a comprehensive legislative scheme designed to place ownership, management, and operational control over common carriers within the regulatory jurisdiction of the [Interstate Commerce] Commission [now STB]." *Gilbertville Trucking Co. v. U.S.*, 371 U.S. 115, 122 (1962).

"Control" in this context is broadly defined to include "actual control, legal control, and the power to exercise control, through or by (A) common directors, officers, stockholders, a voting trust, or a holding or investment company, or (B) any other means." 49 U.S.C. § 10102(3).  The STB has explained that the "[c]ontrol of a carrier for which [49 U.S.C. §] 11323 authorization is required embraces the power or authority to manage, direct, superintend, restrict, regulate, govern, administer or oversee the day-to-day affairs of that carrier." *Soo Line Railroad Company – Petition for Declaratory Order*, Docket No. FD 33350 (STB served Feb. 4, 1998), 1998 WL 43797, at *8 (citing *Coletti – Control – Comet Freight Lines*, 38 M.C.C. 95, 97 (1942), *aff'd sub nom. City of Ottumwa v. STB*, 153 F.3d 879 (8th Cir. 1998).  The Supreme Court has similarly "construed this language to encompass every type of control in fact and [has] left to the agency charged with enforcement the determination from the facts whether 'control' exists, subject to normal standards of review." *Gilbertville Trucking*, 371 U.S. at 125 (citations omitted).

As this Court observed, STB authorization of a control relationship pursuant to 49 U.S.C. § 11323 exempts that relationship from the antitrust laws under 49 U.S.C. § 11321(a).  Here, of course, the STB concluded that NS did not obtain authorization to control the Belt Line, and has clarified its expectation that the "control issue" will be addressed upon conclusion of this case. *Norfolk Southern Railway Company – Petition for Declaratory Order*, Docket No. FD 36522 (STB served June 17, 2022), slip op. at 17, n.25.  Any remediation of NS's unauthorized control of the Belt Line, however, is plainly within the scope of the STB's authority.

The STB has broad "equitable powers to expunge" unlawful control violations that, indeed, largely mirror those possessed by courts when ordering relief in antitrust cases. *See Gilbertville Trucking*, 371 U.S.C. at 130. Thus, "[t]he power of the Commission to respond to conditions of illegal control is practically plenary under the Interstate Commerce Act." *Illinois Cent. R. Co. v. U.S.*, 263 F. Supp. 421, 428 (N.D. Ill. 1966), *aff'd*, 385 U.S. 457 (1967) (per curiam). Entities found to unlawfully control a rail carrier can, for example, remedy their non-compliance through divestiture or by seeking STB approval of the control relationship. *See Ass'n of P&C Dock Longshoremen v. Pittsburgh & C. Dock Co.*, 8 I.C.C.2d 280. 295 (1992). If the STB denies a control request, the STB can impose and oversee remedial measures to assure that control can no longer be effectuated. In one such case, for example, the ICC explained that its order "will require that the Frisco terminate the violation and divest itself of power to vote the stock in the selection of Central's board of directors . . ." *Central of Georgia Ry. Co. Control*, 307 I.C.C. 39, 44 (1958). This closely parallels the suggested injunctive relief here under which CSX would have the Court establish a "sufficiently 'independent' NPBL Board." ECF 559 at 84.

Along the same lines, the STB has longstanding regulations governing the establishment and use of independent voting trusts intended to "avoid an unlawful control violation." 49 C.F.R. § 1013.1(a). This type of voting trust was the ultimate remedial mechanism in *Central of Georgia* above, subject to continued oversight by the ICC. *See Central of Georgia Control*, 312 I.C.C. 125 (1960), 312 I.C.C. 539 (1961). In sum, the injunctive relief that CSX asks this Court to consider overlaps directly with remedial measures already imposed and utilized by the STB.

Consequently, the Court's use of injunctive powers to alter the nature of control at the Belt Line (whether or not exercised) would directly implicate the jurisdiction and authority of the STB, and is therefore within the proscription of 15 U.S.C. § 26, whether under pre- or post-1995 law.

**Conclusion**

For the foregoing reasons, under Rules 12(h)(3), 12(c), and 15 U.S.C. § 26, the Belt Line respectfully requests that this Court dismiss this case in its entirety.

Dated:  January 9, 2023

NORFOLK AND PORTSMOUTH
BELT LINE RAILROAD COMPANY

By: _____/s/ W. Ryan Snow_____
James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Alexander R. McDaniel, VSB No. 92398
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
amcdaniel@cwm-law.com
*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

**CERTIFICATE OF SERVICE**

I certify that on this 9th day of January 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a "Notice of Electronic Filing" to all counsel of record who have consented to electronic service.

_____/s/ W. Ryan Snow_____
W. Ryan Snow, VSB No. 47423
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
wrsnow@cwm-law.com