**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

CSX TRANSPORTATION, INC.,
individually and on behalf of NORFOLK
& PORTSMOUTH BELT LINE
RAILROAD COMPANY,

       Plaintiff,

v.                                     Civil Action No. 2:18-cv-530-MSD-RJK

NORFOLK SOUTHERN RAILWAY
COMPANY, *et al.*,

       Defendants.

_____/

**CSX TRANSPORTATION INC.'S OPPOSITION TO**
**NPBL'S MOTION TO DISMISS ALL REMAINING CLAIMS**

       Plaintiff CSX Transportation, Inc. ("CSX") submits the following opposition to the motion to dismiss the remaining claims in this case ("Motion") filed by Defendant Norfolk and Portsmouth Belt Line Railway ("NPBL").  *See* ECF Nos. 572 (Motion), 573 (Brief in Support).

## INTRODUCTION

       Now more than four years into this litigation, one common thread that has emerged is the Defendants' penchant for untimely and unfounded antitrust immunity claims.  NS belatedly claimed that it was immune to all federal and state law in connection with its dealings with NPBL, only to have the Surface Transportation Board ("STB") soundly reject that argument.  Now it is NPBL's turn—meekly joined by NS—to claim that this Court has no power to enjoin it from violating the antitrust laws by virtue of its "common carrier" status, in a last-minute attempt to avoid this Court's scrutiny of Defendants' conduct at trial.

Under NPBL's expansive interpretation of Section 16 of the Clayton Act, as amended by the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), a federal court could *never* enter an injunction on behalf of a private litigant to prevent anticompetitive conduct by a railroad subject to STB's jurisdiction—even if the conduct at issue was well beyond the STB's jurisdictional reach.  As explained below, nothing in the text or legislative history of the ICCTA suggests that Congress intended to create the enforcement vacuum promoted by NPBL.

If NPBL's argument sounds familiar, it is because it is.  NPBL advanced *this very argument* in its supplemental summary judgment briefs filed only a few short weeks ago.  So did NS, albeit ultimately advancing a more reasonable interpretation of the relevant statutory authority.  This Court subsequently denied summary judgment as to CSX's injunctive relief claims under the federal antitrust laws.  NPBL now repackages the same argument the Court has already rejected and presents it again, just one week before trial, under the guise of a motion to dismiss.

NPBL's Motion fails for two independent reasons: (1) it is procedurally improper and (2) it lacks merit.  Beginning with procedure, despite NPBL's efforts to shoehorn its Motion under Federal Rule 12(h)(3) and 12(c), the Motion in sum and substance is a motion to reconsider this Court's ruling on summary judgment.  NPBL makes no effort to justify its motion under the standards for reconsideration, nor could it.  That fact alone is sufficient to dispense with this Motion procedurally.  Any effort to characterize this Motion as some form of a Rule 12 motion is moot, as this Court has already ruled against NPBL *at summary judgment* on this issue.  In any event, the Motion does not go to this Court's subject matter jurisdiction and is not appropriate under Rule 12(c), because, among other reasons, it is untimely.

If this Motion were to find a home under any Rule 12 category, it would be under Rule 12(b)(6), as this Court's order directing expedited briefing discussed.  Preserved Rule 12(b)(6)

claims can be asserted at trial.  Fed. R. Civ. P. 12(h)(2)(C).  While CSX has been given scant time to respond to this Motion—while at the same time preparing for trial, conducting a deposition, participating in final pretrial conference hearings, and briefing its motion for injunctive relief and proposed findings of fact and conclusions of law—CSX submits that the Court should resolve this Motion prior to trial.  It would be a waste of judicial resources, and those of the parties, for the Court to conduct a bench trial on injunctive relief only to later conclude at the end of trial that no such relief is available under the Clayton Act.  To be clear, however, injunctive relief *is* available under the Clayton Act—as this Court has already held.

Even if the Court were amenable to reconsidering its summary judgment ruling, there is no reason for it to reach a different conclusion.  NPBL presents the same argument as before on the language of the Clayton Act, adding only that the operative language—the exact language they cited to this Court two weeks ago—changed in 1995 from a prior version of the statute.  NPBL hangs its argument on the same textual construction it previously advanced to this Court: namely, that the operative, post-1995 language of the Clayton Act bars *any* injunction sought by a private party against a common carrier.  That is not how the Supreme Court has construed the pre-1995 version of the Clayton Act, as explained by both NS and CSX in supplemental briefing to this Court.  *See Georgia v. Penn. R.R. Co.*, 324 U.S. 439 (1945); *see also* ECF No. 543 at 5-7 (NS's Supp. Br.) and ECF No. 549 at 11 (CSX's 2d Supp. Br.).  And NPBL fails to adduce any evidence that Congress intended a sweeping change in that law when it made modest revisions to the Clayton Act as part of the much larger ICCTA, which deregulated the railroad industry.  NPBL cites no contemporaneous legislative history indicating that Congress intended to *broaden* the scope of antitrust immunity for injunctions via this change, and CSX has identified none.

Indeed, it would be surprising if the ICCTA—which was intended to continue the path toward deregulation of the railroad industry, in order to reduce the degree of regulatory oversight and allow for market forces to work— nonetheless *expanded* the scope of immunity to railroads for antitrust injunctions. But that is the import of NPBL's argument: that in 1995—without so much as a word of explanation in the copious legislative history—Congress elected to expand common carrier immunity such that *even matters that are not subject to STB jurisdiction* cannot be enjoined under the federal antitrust laws.

Under NPBL's interpretation, a common carrier that engaged in violations of the antitrust laws could never be enjoined by a federal court—unless via rare suit by the United States—even for conduct that the STB itself would be powerless to enjoin. To take one example, CSX and other common carriers have historically owned hotels. Under NPBL's interpretation, CSX could engage in antitrust violations with regard to its hotel ownership—a subject over which the STB has no jurisdiction—without fear of a federal injunction by private parties merely because it is a common carrier subject to STB jurisdiction. Meanwhile, such injunctive relief would remain available under state law.[1] NPBL adduces no evidence that Congress intended such a substantive change in the law in 1995 or indeed such a bizarre divergence between the scope of relief available under federal law as opposed to state law. And, indeed, the contemporaneous legislative history, though sparse as to this specific change, does confirm that Congress did not intend a substantive change in the law. As the Supreme Court has explained, "Congress [does not] hide elephants in mouse-holes." *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468 (2001).

---

[1] To this point, CSX has advanced and retains for the bench trial state law claims for injunctive relief, as discussed in further detail below. *See* Background, Part III, infra at 7-8.

4

## PERTINENT PROCEDURAL BACKGROUND

### I.     Procedural History Related to Motion to Dismiss and Answer Phase

CSX filed its Complaint on October 4, 2018.  The Complaint included several claims under the federal antitrust laws, some against NS individually and some against NS and NPBL jointly. Among other things, the Complaint clearly sought injunctive relief.  ECF No. 1 at 40 ("CSXT respectfully prays for the following . . . [t]hat this Court enter an injunction against Defendants from continuing to commit the above referenced violations of federal and state law.").

At the deadline for filing motions to dismiss CSX's complaint, NPBL filed no motion to dismiss on the ground that injunctive relief was unavailable under the Clayton Act.  *See* ECF No. 28.  NPBL—but not NS—did argue that "the Court does not have subject matter jurisdiction over any of the counts against it because they are expressly preempted by the ICCTA.  ECF No. 66 at 19.  This Court thoroughly analyzed and rejected that argument, concluding that:

> If CSX were to prevail in this Court on the *federal antitrust claims* or state law business conspiracy claims in this suit, this Court may award damages for CSX's previous losses or *injunctive relief* to prevent Norfolk Southern and Belt Line from continuing to carry out such an *antitrust* or business conspiracy.  In particular, the injunctive relief would prevent 'Defendants from continuing to commit the above referenced violations of federal and state law,' restore CSX's shareholder rights, establish an independent board structure, and/or require approval of CSX's service proposal.  Compl., Prayer for Relief.  That is, any injunctive relief may prevent Defendants from continuing to engage in the conspiracy or make changes to Belt Line's governance.  *However, the STB's jurisdiction would not be affected*; that is, the STB may still approve or disapprove the pending rate increase that Norfolk Southern would charge Belt Line in the future.

*Id.* at 23-24 (emphases added).

In its Answer, NPBL stated that it did not need to respond to CSX's jurisdictional allegations.  It did not assert that injunctive relief was unavailable on CSX's federal antitrust claims, or that this Court lacked subject matter jurisdiction over those (or any other) claims.  Nor did NPBL plead any general affirmative defense that CSX failed to state a claim.  NPBL's Fourth

Affirmative Defense states that "[a]ctions approved or required to be approved by the Surface Transportation Board, including those alleged in the Complaint, cannot be the basis for a cause of action against the Belt Line." ECF No. 70 at 14. It is not entirely clear what is intended by that affirmative defense, but presumably it is a restatement of NPBL's ICCTA preemption argument from the motion to dismiss phase. NPBL makes no argument now that the STB has already "approved" CSX's injunctive relief claims. And, as this Court held in its opinion on the motions to dismiss, CSX's injunctive relief claims do not affect the STB's jurisdiction. ECF No. 66 at 23-24.

## II.     Norfolk Southern's Rule 12(b)(1) and (c) Motion

On January 31, 2020, NS filed an additional motion to dismiss pursuant to Rules 12(b)(1) and (c). ECF No. 115. In that Motion, NS argued, among other things, that only the STB can set a railroad switch rate or grant terminal access. ECF No. 116 at 13-15. This Court denied NS's request for dismissal or referral of remedies to the STB. ECF No. 395 at 26-29. The Court did refer the issue regarding control authority to the STB, and the STB later answered that question in favor of CSX's position.

## III.    Procedural History Related to Defendants' Motions for Summary Judgment

NPBL and NS filed motions for summary judgment on April 12, 2021. Neither of those motions sought summary judgment with regard to CSX's injunctive relief claims. Neither of those motions sought to dismiss the case for lack of subject matter jurisdiction.

On December 1, 2022, this Court heard argument on the motions for summary judgment. At argument, the Court raised various questions about CSX's damages claims. Then, on December 13, the Court instructed the parties to submit supplemental briefs regarding injunctive relief. In that order, the Court included several specific questions that clearly put the defendants on notice

that the case could proceed solely on injunctive relief and that the Court was evaluating the interplay between this proceeding and the STB.  *See, e.g.,* ECF No. 535 at 3 ("If a trial were to proceed only on injunctive relief, should that trial occur before further action by the STB, or would CSX (as the potentially aggrieved party) be more likely to avoid further alleged injury by proceeding first before the STB?"); *id.* ("If a trial were to proceed only on injunctive relief, do the parties agree that it would be a bench trial?").

In response, NPBL made the same argument it repeats in its Motion.  *See* ECF No. 542 at 2-3.  In two paragraphs, NPBL asserted that "[t]he federal injunction statute in 15 U.S.C. § 26 also forecloses CSX's relief" because "NS and the Belt Line are both common carriers subject to the jurisdiction of the STB."  *Id.*  NS, for its part, also relied on 15 U.S.C. § 26, though, as described below, its argument was not as broad as NPBL's current position.

On January 3, the Court issued its ruling denying summary judgment on CSX's injunctive relief claims.  ECF No. 559 at 83 ("CSX has demonstrated, at least for summary judgment purposes, that it has standing to seek injunctive relief and that the existing record does not support entry of summary judgment in favor of Defendants.").  The Court specifically noted that "[t]hough the Court does not squarely analyze Defendants' reasserted arguments that this Court lacks authority to grant certain injunctive relief in this case due to the STB's regulatory authority, consistent with the prior rulings of both this Court and the STB, Defendants' supplemental briefs do not convince the Court that it lacks authority to enjoin unlawful collusion or similar activities that violate federal antitrust laws."  *Id.* at n.33.

With respect to CSX's injunctive relief claims under state law, this Court retained them in the case given Defendants' lack of challenge to them, ruling:

> *Though the Court does not directly reach the issue at this time due to Defendants not having raised injunctive relief on summary judgment*, it does not appear that a

state law injunctive remedy claim could remain viable in this case, in contrast to CSX's federal antitrust claims. In the federal antitrust context, the injunctive remedy provided by the Clayton Act is clearly not subject to the same statute of limitations as the damages remedy. No party has even suggested, let alone argued, that there is any state law parallel that would allow a time-barred conspiracy or contract claim to proceed in equity. Similarly, the record appears to support Defendants' contention that even if a contractual breach occurred in 2015 due to one or more delayed trains, damages at law would be the only available remedy. *Carbaugh v. Solem*, 302 S.E.2d 33, 35 (Va. 1983). Regardless, as CSX notes, the availability or unavailability of any state law injunctive relief has no impact (*i.e.*, does not limit) the breadth of the injunctive remedy available under federal law.

ECF No. 559 at 103 n.46.

## IV.   Proceedings Related to this Motion

NPBL filed this motion just nine days before trial is set to begin, one day before amended exhibit lists and depositions were due and two days before the continuation of the final pretrial conference.  On January 10, the Court ordered expedited briefing, giving CSX three days to respond.  ECF Nos. 560, 577.

## <u>ARGUMENT</u>

## I.   NPBL's Motion Should Be Denied on Procedural Grounds.

A.   <u>NPBL's Motion is a baseless motion to reconsider this Court's recent summary judgment ruling dressed up as a motion-to-dismiss.</u>

In its Motion, NPBL argues that Section 16 of the Clayton Act (15. U.S.C. § 26) precludes any injunctive relief on CSX's federal claims against either Defendant.  *See* NPBL Mot. at 2.  If that sounds familiar, it is because both NPBL and NS have made that argument before, albeit NS did not previously endorse the expansive position that NPBL now takes.

On December 13, this Court ordered supplemental briefing to address "the degree to which a summary judgment ruling in Defendants' favor on the issue of monetary damages would impact the request for injunctive relief advanced by [CSX]."  ECF No. 353 at 1-2.  In response—filed less than a month ago—NPBL argued that "15 U.S.C. § 26 . . . forecloses CSX's relief" because "the

statute contains an express exception for claims against common carriers." ECF No. 542 (NPBL First Supp. Br.) at 2. After citing the very same language it focuses on here, NPBL argued that "NS and the Belt Line are both common carriers subject to the jurisdiction of the STB" and so, "as a matter of law, CSX cannot obtain injunctive relief in this case." *Id.* at 3.

NS—ostensibly a beneficiary of the immunity NPBL now urges—did not make the broad argument NPBL now asserts. NS cited the same statutory language, but also acknowledged the *Georgia* decision's holding that "the anti-injunction provisions of Section 26 apply *if the relief sought by the plaintiff is within the power of the STB*." ECF No. 543 at 6 (emphasis added). NS went on to examine the scope of STB jurisdiction, *id.*, and to argue that "[r]equests for injunctive relief under 'Federal or State law' that infringe upon *these issues are within the STB's exclusive jurisdiction* and barred by the anti-injunction provision of Section 26 of the Clayton Act." *Id.* at 7 (emphasis added). This argument is notably distinct from NPBL's present argument which disregards the scope of the STB's jurisdiction—contrary to this Court's repeated prior considerations of the issue—in favor of a broad rule that any injunction on a "common carrier" is barred *per se*.

In their joint second supplemental brief, both Defendants doubled down, arguing that "Section 26" not only "defeats CSX's claims for injunctive relief," but "torpedoes" them. ECF 553 at 11-12.

After considering these arguments, this Court denied the Defendants' motion for summary judgment on CSX's federal antitrust claims for injunctive relief. ECF No. 559 at 82. "CSX has demonstrated," the Court held, "at least for summary judgment purposes, that it has standing to seek injunctive relief and that the existing record does not support entry of summary judgment." *Id.* at 83. Indeed, the Court expressly called out the "Defendants' reasserted arguments that this

Court lacks authority to grant certain injunctive relief in this case due to the STB's regulatory authority," while making clear that they "d[id] not convince the Court that it lacks authority to enjoin unlawful collusion or similar activities that violate federal antitrust laws." *Id.* at 83 n.33.

NPBL's Motion is therefore a request to reconsider this Court's ruling on summary judgment. This Court need not afford NPBL another chance to argue points already submitted. First, the Motion does not invoke Rule 54(b), which would be the procedural basis for the Court to reconsider its recent summary judgment ruling. Second, even if this Court were to construe NPBL's Motion as one pursuant to Rule 54(b), in considering motions for reconsideration, this Court "typically considers the following factors: (1) an intervening change in controlling law, (2) the emergence of evidence not previously available, and (3) the correction of a clear error of law or the preservation of manifest injustice." *Ugbo v. The All. Leg. Group*, No. 15-0151, 2016 WL 7411134, at *2 (E.D. Va. Dec. 22, 2016) (Davis, J.). NPBL does not even attempt to articulate how it satisfies this standard. Nor could it. Plainly, there has been neither an intervening change in the controlling law nor any new evidence since the Court ruled on summary judgment less than two weeks ago. Nor, for the reasons set forth below, did the Court commit "clear error" or risk "manifest injustice" by ruling against NPBL's previously articulated position.

Simply put, NPBL has argued (three times now) that injunctive relief is categorically unavailable on CSX's antitrust claims. *See supra* at 4-8. For support, NPBL points to statutory language last amended in 1995 and a single case that is eighteen years old—both of which it has previously cited to this Court. This Court rejected the argument, and nothing in NPBL's latest Motion suggests that conclusion should be disturbed.

B.      NPBL's invocation of Rule 12(h)(3) fails because its Motion does not attack the
        Court's subject matter jurisdiction.

Perhaps recognizing the obstacles it faces under Rule 54(b), NPBL invokes Rule 12(h)(3),

which allows parties to seek dismissal for lack of subject matter jurisdiction "at any time." Fed.

R. Civ. P. 12(h)(3). NPBL's contention is that 15 U.S.C. § 26 not only precludes injunctive relief

against common carriers, but strips federal courts of jurisdiction to hear any such claim. NPBL's

sole cited support for this argument is the Supreme Court's decision in *Vendo Co. v. Lektro-Vend

Corp.*, 433 U.S. 623 (1977). *See* Motion at 6-7. But all that case establishes is that the statute

generally "authorizes private injunctive relief for antitrust violations." *Vendo*, 433 U.S. at 631.

*Vendo* does not hold that this authorization is jurisdictional in nature. Certainly the Clayton Act

authorizes injunctive relief for federal antitrust claims, but it does so as a remedy for an antitrust

violation that is already within the federal question jurisdiction of the Court.

A limitation on available relief is not jurisdictional unless Congress so directs. As the

Supreme Court has explained, when "the Legislature clearly states that a threshold limitation on a

statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and

will not be left to wrestle with the issue." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514–16 (2006).

"But when"—as here—"Congress does not rank a statutory limitation on coverage

as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.*; *see also

Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) ("We inquire whether Congress has

'clearly state[d]' that the rule is jurisdictional; absent such a clear statement, we have cautioned,

'courts should treat the restriction as nonjurisdictional in character.'") (citation omitted); *Reddy v.

Buttar*, 38 F.4th 393, 400 (4th Cir. 2022) ("[W]e adhere to *Arbaugh*'s 'bright line' rule that 'when

Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the

restriction as nonjurisdictional in character.'") (citation omitted).

11

Further, Congress was not legislating on a clean slate in 1995. Rather, as even NPBL's argument accepts, prior to 1995, courts possessed both jurisdiction and the ability to award injunctive relief against common carriers, subject to the statutory limits. So, for NPBL's argument to be correct, Congress would have not only narrowed a form of relief in the Clayton Act, it would have stripped the pre-existing jurisdiction. A court should "not lightly assume that Congress has stripped it of its equitable jurisdiction." *United States v. Miami Univ.*, 294 F.3d 797, 808 (6th Cir. 2002). Rather, "such departure from equity requires a clear and valid legislative command." *Id.* (citing *Hecht Co. v. Bowles,* 321 U.S. 321, 329 (1944)). Put another way: "An express divesting of federal-question jurisdiction over an action filed under a federal law may not be done *sotto voce.*" *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 464 (6th Cir. 2010).

Nothing in the statutory language conveys such an intent on the part of Congress. Indeed, the statute begins with the statement: "Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, *in any court of the United States having jurisdiction over the parties*, against threatened loss or damage by a violation of the antitrust laws . . . ." 15 U.S.C. § 26 (emphasis added). The language clearly demonstrates that this provision is not an independent font of jurisdiction, but rather a statute governing remedies where the court independently has jurisdiction over the parties. This Court possesses subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because CSX's claims arise under federal law. *See* 15 U.S.C. §§ 15(a), 26. CSX's well-pleaded claims under the Sherman and Clayton Acts plainly bring this case within the subject matter jurisdiction of this Court. To the extent NPBL now contends that CSX is not entitled to a form of "relief" ordinarily available to private litigants, that is an argument that CSX has failed to state a claim *upon which relief can be granted*, not that this Court lacks jurisdiction to adjudicate CSX's claims.

C.    NPBL's resort to Rule 12(c) is unavailing because its arguments are inconsistent with its Answer, and the request for relief is untimely in any event.

NPBL also labors to frame its motion as one brought under Rule 12(c).  *See* Motion at 1, 3.  But on a motion for judgment on the pleadings, "the court considers the pleadings, which consist of the complaint [and] the answer."  *Penn-Am. Ins. Co. v. White Pines, Inc.*, 476 F. Supp. 3d 354, 360 (E.D. Va. 2020).  Nowhere in NPBL's Answer does it establish—or even argue—that 15 U.S.C. § 26 precludes injunctive relief.  NPBL does not deny (or admit) CSX's jurisdictional allegations and raises no affirmative defense to CSX's pursuit of injunctive relief specifically.  *See* ECF No. 70 at ¶¶ 11-14 & pp.13-14.  Indeed, even the Defendants' status as "common carriers" is not pleaded by NPBL in its Answer.  NPBL cannot seek judgment on the pleadings on defenses about which its own pleadings are silent.

In all events, even if a Rule 12(c) motion were technically viable, it is untimely at this juncture.  The plain language of that Rule directs that parties must file such motions "early enough not to delay trial."  Fed. R. Civ. P. 12(c).  With trial set to commence on January 18, NPBL filed this motion on January 9.  Under the Local Rules of this District, the motion would not have been fully briefed before the trial was set to commence—indeed, CSX's opposition would not have even been due until after the start of trial.  While this Court has ordered an expedited briefing schedule, NPBL's injection of this new request for relief at the eleventh hour plainly risks delay.  At the very least, it has prejudiced CSX to have to respond at this point during trial preparation.  *See* Charles Alan Wright & Arthur R. Miller, 5C *Federal Practice & Procedure* (3d ed. 2022 Supp.) ("[A] motion for judgment on the pleadings should be made promptly after the close of the pleadings" and may be considered untimely when it will "delay trial or cause prejudice to the non-movant.");  *id.* § 1368 (warning that "hasty or imprudent use of this summary procedure by the courts violates

13

the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense").

It is no answer to claim (as NPBL does) that the parties' focus "shifted only recently to injunctive relief." Motion at 3. Perhaps NPBL was focused elsewhere, but CSX has made clear from the outset that it seeks injunctive relief for Defendants' violations of federal antitrust law. This Court has previously addressed that topic on multiple occasions. And this Court ordered two rounds of supplemental briefing on summary judgment issues specific to injunctive relief, in which NPBL made this very argument. Rule 12(c) is not a license to seek reconsideration or raise new issues not addressed in the pleadings on the eve of trial.

D.      If anything, NPBL's requested relief falls under Rule 12(b)(6).

Ultimately then, NPBL's pursuit of relief is best construed as an argument that CSX has failed to state a claim for relief under Rule 12(b)(6). According to NPBL, while private litigants may generally seek injunctive relief against threatened harm stemming from antitrust violations, the right to seek such "*relief*" is not available to CSX because Defendants are "common carriers." ECF No. 573 at 7-8. The parallel to Rule 12(b)(6) is clear, as this Court has already suggested in its order setting expedited briefing. Regardless of how its Motion is styled, NPBL contends that CSX has failed to "state a claim upon which *relief* may be granted." Fed. R. Civ. P. 12(b)(6).

Here, any Rule 12(b)(6) motion has long been overtaken by events including this Court's ruling against NPBL on this issue at summary judgment. Summary judgment presented, if anything, *a more favorable* procedural posture to NPBL than Rule 12(b)(6). Accordingly, this Court's rejection of NPBL's arguments at summary judgment is a sufficient basis on which to deny this Motion, even if construed as a motion under Rule 12(b)(6). NPBL's Motion requires no further factual development, and it can and should be denied before trial.

14

## II.    NPBL's Motion Fails on the Merits.

Even assuming that NPBL could meet the standard for reconsideration of this Court's recent summary judgment ruling, NPBL's recycled arguments do not require a different result. According to NPBL, a private litigant may *never* obtain injunctive relief in a federal antitrust case against a common carrier subject to the jurisdiction of the STB, regardless of whether that injunctive relief has *anything* to do with the STB's sphere of regulation.  Under NPBL's argument, a common carrier could commit a federal antitrust violation that neither the STB nor a court would have the power to enjoin.  NPBL offers no contemporaneous statements from Congress as to why it would have intended such a gap between antitrust enforcement, on the one hand, and regulatory authority, on the other.  Nor does NPBL posit any policy rationale that would explain such a change.  As both CSX and NS have identified in prior briefing, courts considered injunctive relief against common carriers to be barred only when such relief would encroach on "a matter subject to the jurisdiction of the" regulating agency.  *Georgia v. Pennsylvania R. Co.*, 324 U.S. 439, 455 (1945); *see* ECF No. 543 at 6; ECF No. 549 at 11.

To be sure, the statute was amended in 1995—principally to replace "Interstate Commerce Commission" with the newly created "Surface Transportation Board"—and the new relevant language is condensed from the prior version of the statute.  *See* 15 U.S.C. § 26.  But the present language is susceptible to the same interpretive scope as the prior version of the statute, especially considering that Congress legislated against the backdrop of the *Georgia* decision.  As discussed above, courts do not lightly conclude that Congress stripped jurisdiction that previously existed. While Congress may have condensed the relevant statutory language, there is no statutory language or other indication to suggest that Congress intended this to be a substantive change— much less an expansion—in the antitrust immunity available to common carriers.

15

Indeed, the post-amendment language of the statutory text should be read with the same interpretative scope that the *Georgia* decision gave the prior version.  The amended text provides that suits for injunctive relief may not be brought "against any common carrier subject to the jurisdiction of the Surface Transportation Board *under subtitle IV of Title 49*."  15 U.S.C. § 26 (emphasis added).  The word "jurisdiction" is thus modified by two clauses—"of the Surface Transportation Board" *and* "under subtitle IV of Title 49."  In claiming that this provision bars *all* antitrust claims for injunctive relief against common carriers, NPBL focuses solely on the first of these clauses.  *See, e.g.*, ECF No. 573 at 8 ("Is the defendant a common carrier subject to the jurisdiction of the STB?").  But the second clause limits the first by providing that injunctive relief is not available against a common carrier subject to the jurisdiction of the STB *under subtitle IV of Title 49*—i.e., *within its areas of regulatory authority*.  This interpretation is equally grounded in the statutory text and leaves the statute with much the same scope as before, consistent with the Congress's treatment of the amendment.[2]

NPBL cites no legislative history suggesting that Congress intended a substantive change to the statute in 1995.  CSX's review of that legislative history reveals no explanation for the pertinent statutory changes other than to conform various statutory provisions (including the Clayton Act) to the changes brought about by ICCTA.  The structure of ICCTA itself indicates that the changes to the Clayton Act and other statutes were not intended to make substantive changes to existing law, but rather to "conform" a number of existing statutes to the changes made

---

[2] NPBL suggests the 1995 amendment did away with a two-part "kind of defendant" and "kind of relief" inquiry found in the earlier statutory text.  *See* ECF No. 573 at 8.  But both versions of the statute include both of these "inquiries."  The "kind of defendant" question is a threshold one covered by the "any common carrier" language in both versions of the statute.  And the "kind of relief" question is contained in both statutes—albeit with different phrasing—through the language prohibiting injunctive relief claims against common carriers subject to ICC/STB jurisdiction as to matters falling within the scope of that agency's regulatory authority.

16

in Title 49, the statute governing rail (and motor carrier and pipeline) transportation.  First, ICCTA has four "Titles."   *See* ICC Termination Act of 1995, PL 104–88, December 29, 1995, 109 Stat 803.  Title I contains the substantive changes to the statutes regulating rail, motor carrier and pipeline transportation.  Title II contains provisions establishing the Surface Transportation Board and its various functions.  These two Titles contain the substantive changes in law made by ICCTA, as discussed extensively in the ICCTA Conference Report.

Title III is expressly titled "Conforming Amendments."  It sets out changes in a large number of statutes, including the Clayton Act, that reflect the termination of the Interstate Commerce Commission ("ICC") and the transfer of its power to the STB.  As reflected in the title of Title III—"Conforming Amendments"—those changes were not intended to make substantive changes, but rather only to conform existing statutes that referred to the ICC and prior ICC regulation to the new statutes governing the STB's regulation of railroads.  Indeed, the only discussion of the "Conforming Amendments" in the ICCTA Conference Report states that the amendments are "conforming amendments to provisions of the United States Code containing references to the Interstate Commerce Commission."  *See* H.R. Conf. Rep. 104-422, 237, 1995 U.S.C.C.A.N. 850, 922.  This cursory description of Title III stands in dramatic contrast with the lengthy discussion of the substantive changes in law set forth in Titles I and II of the ICCTA.

Likewise, the only explanation in the House Report of the amendments that would become Title III of the ICCTA (in contrast to the detailed explanation of the substantive changes to rail regulation in other sections) says: "Title III contains numerous conforming amendments to other laws containing references to the Interstate Commerce Commission."  H.R. Rep. 104-311, 126, 1995 U.S.C.C.A.N. 793, 838.  There is no further description of those amendments because they were not intended to make substantive changes to existing law.  *See also* S. Rep. 104-176, 19

17

(1995) ("Title V [the Senate Bill corollary to Title III of the House bill] would make conforming amendments to other laws to reflect the termination of the ICC and the transfer of functions to the Board and the Secretary.").[3]   In sum, Congress provided not even a hint that it intended, through the ICCTA, a sea change in the reach of the antitrust laws when railroads are concerned.

While NPBL makes much of the textual change wrought by the 1995 amendment to the statute, it nowhere addresses the implications of its argument.  On NPBL's logic, Congress buried in the ICC Termination Act a dramatic expansion of antitrust immunity for common carriers, prohibiting not just private injunctive relief that would interfere with federal regulation (as had always been the case), but private injunctive relief *of any kind*.  As NPBL would have it, a railroad that violates the antitrust laws with respect to activities entirely outside the STB's purview could never be enjoined under the Clayton Act from doing so in a private suit.  This is no abstract concern as railroads routinely have diverse business operations.  CSX, for instance, once owned the Greenbrier Hotel—an accommodation wholly outside the jurisdiction of the STB—and the predecessor to telecommunications giant Sprint was a railroad that (rather successfully) diversified.  Could such companies escape *all* private equitable remedies—for tying violations, say, or labor-side antitrust conspiracies—based *only* on their status as "common carriers"?  NPBL insists the answer is yes, and that Congress made this shift more than twenty years ago without public acknowledgement and with no fanfare as part of a larger piece of legislation that was designed to move toward *deregulation* of the railroad industry.

---

[3] The Senate Report also contains a very brief explanation of the Clayton Act changes (again, in contrast with the lengthy description of changes to the regulation of railroads in other proposed sections of the bill), explaining only that "This section would amend 3 provisions of the Clayton Act to substitute the Board for the ICC."  S. Rep. 104-176, 19 (1995).

When interpreting statutes, courts must presume that "Congress [does not] hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468 (2001). As noted above, the only relevant contemporaneous legislative history favors CSX's interpretation of the post-amendment statutory language, particularly when read against the *Georgia* decision—i.e., the backdrop against which Congress legislated. And although NPBL misleadingly claims to discuss "legislative history," what it advances is nothing of the sort. NPBL Memo at 9-10. Legislative "history" is, by definition, history. NPBL advances *subsequent* statements in Congress in relation to *future* bills that did not pass. This sort of "subsequent legislative history" says nothing about the intent of the Congress that *actually considered and passed* the 1995 Amendment. In fact, it reveals little about the subsequent Congresses either, apart from what they resolved *not to do*. Unsurprisingly, courts routinely disregard subsequent legislative events as probative of virtually nothing. *See Hately v. Watts*, 917 F.3d 770, 797 (4th Cir. 2019) (declining to consider "the legislative history of two bills considered by Congress more than a decade after it enacted the" one at issue because "'the interpretation given by one Congress (or a committee or Member thereof) to an earlier statute is of little assistance in discerning the meaning of that statute.'" (quoting *Pub. Employees Ret. Sys. of Ohio v. Betts*, 492 U.S. 158, 168 (1989)); *Brown v. Thompson*, 374 F.3d 253, 260 n.3 (4th Cir. 2004) (noting that "'subsequent legislative history' [] constitute[s] a 'hazardous basis for inferring the meaning of a [prior] congressional enactment." (quoting *Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 118 n. 13 (1980)).

NPBL's argument also runs afoul of the rule that antitrust exemptions or immunities should be narrowly construed. *See, e.g.*, *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 231 (1979) ("It is well settled that exemptions from the antitrust laws"—including both "implicit exemptions" and "express statutory exemptions"—are "to be narrowly construed."); *Federal*

*Maritime Commission v. Seatrain Lines, Inc.*, 411 U.S. 726, 732-33 (1973) (describing the "frequently expressed view" that "exemptions from antitrust laws are strictly construed").  Judge Easterbrook colorfully described this principle in the Chicago Bulls case:

> When special interests claim that they have obtained favors from Congress, a court should ask to see the bill of sale.  Special interest laws do not have "spirits," and it is inappropriate to extend them to achieve more of the objective the lobbyists wanted. . . . Recognition that special interest legislation enshrines results rather than principles is why courts read exceptions to the antitrust laws narrowly, with beady eyes and green eyeshades.

*Chicago Prof'l Sports Ltd. P'ship v. NBA*, 961 F.2d 667, 671-72 (7th Cir. 1992).  Because NPBL's argument would broaden an antitrust immunity, and because, as discussed above, the 1995 statutory language is susceptible to reading that it is merely a condensed, and conforming, version of the pre-1995 language, this Court should reject NPBL's expansive construction.

   *Truck-Rail Handling*—the *only* case support that NPBL has marshalled—does not salvage its argument.  In that unpublished opinion, the district court considered 15 U.S.C. § 26 in a single footnote, acknowledging that "[n]either party has raised the issue."  *Truck-Rail Handling Inc. v. BNSF Ry. Co.*, No. 02-02825, 2005 WL 8178364, at *4 n.5 (N.D. Cal. Mar. 8, 2005), *aff'd on other grounds*, 244 F. App'x 130 (9th Cir. 2007).  It considered neither the nature of the injunctive relief sought, nor the impact of prior precedent on the question.  And it has been cited only once in more than twenty years for an entirely unrelated proposition.  *See Teradata Corp. v. SAP SE*, 570 F. Supp. 3d 810, 851 (N.D. Cal. 2021).  Stated plainly, *Truck-Rail Handling* cannot support the weight NPBL asks it to bear.[4]

---

[4] NPBL's Motion contains a fairly lengthy section that NPBL itself seems to recognize is irrelevant to its argument.  *See* NPBL Memo at 11-13 (Part IV) ("While beyond the scope of a [Section 26] analysis post-1995, it is nonetheless significant that the relief CSX seeks inevitably (and impermissibly) invades the exclusive jurisdiction of the STB, which would have foreclosed district court injunctive authority even before 1995.").  This Court has repeatedly rejected the arguments advanced in this part of NPBL's brief.  Given their irrelevance to NPBL's present Motion—as

NPBL's rule would also lead to the counter-intuitive result that the scope of the Clayton Act's injunctive relief would be narrower than what could be awarded under state law.  And here, as discussed above, CSX retains its state law injunctive claims for trial.[5]  *See, e.g., Downey v. Verizon Virginia, L.L.C.*, 86 Va. Cir. 526, 2013 WL 8029458, at *1-2 (Va. Cir. Ct. July 23, 2013) (holding that statute of limitations had expired but concluding that "the factual assertions set forth in the pleadings are sufficient to allow the court to consider *whether an injunction of some type should be granted*," and stated that the statute of limitations "*would not* be a bar to determining whether any injunctive relief would be appropriate.") (emphasis added)).[6]  While Congress may certainly elect to proscribe narrower remedies under federal law than may be available under state law, NPBL offers no reason why Congress would have intended to narrow federal law while state law would remain available to enjoin the same conduct in this particular context.

In perhaps the most significant antitrust litigation post-1995 against the railroad industry— the *In re Rail Freight Fuel Surcharge Antitrust Litigation*—none of the common carrier railroad defendants, including NS, advanced the claim that the injunctive relief sought by private plaintiffs is barred by Section 16 of the Clayton Act.  In that case, while citing 15 U.S.C. § 26 and after a thorough analysis on standing, the district court refused to dismiss the indirect purchaser plaintiffs'

---

NPBL itself seems to recognize—and their repeated rejection by this Court, CSX does not respond to them in detail herein, especially considering the time set by this Court for response.  CSX refers the Court to the Court's prior orders and CSX's prior briefing on this subject.

[5] *See* Background, Part III, *supra* at 7-8.

[6] *See also Downey*, 2013 WL 8029458, at *2 ("[T]he plea in bar to the claim for damages based on the facts alleged in this particular complaint will be sustained. The case itself will remain on the court's docket because of the pending claim for injunctive relief."); *Downey v. Verizon Virginia, LLC*, 2013 WL 9636578, at *2 (Va. Cir. Ct. Dec. 20, 2013) (subsequent demurrer opinion reiterating that "[t]he claim for damages based on the alleged trespass of 1995 will be dismissed with prejudice" but "[t]he case will continue to remain on the court's docket based on the pending claim for injunctive relief").

"federal antitrust claim for injunctive relief." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 593 F. Supp. 2d 29, 36, 41-43 (D.D.C. 2008), *aff'd*, 602 F.3d 444 (D.C. Cir. 2010).  And, following that decision, NS *admitted* in its Answer that the district court had jurisdiction over the plaintiffs' injunctive relief claims under 15 U.S.C. § 26, *see* Def. NS's Answer to Indirect Purchaser Pls. Consolidated Am. Compl., ECF No. 493, No. 1:07-mc-00489 (D.D.C. Feb. 9, 2011)—directly contrary to the eleventh-hour argument NS and NPBL now advance.

## CONCLUSION

For the foregoing reasons, CSX respectfully requests that the Court enter an Order, prior to trial, denying NPBL's Motion.


Dated:  January 12, 2023                     Respectfully submitted,


                                            **CSX TRANSPORTATION, INC.**
                                            *By Counsel*

                                            */s/ Benjamin L. Hatch*
                                            Robert W. McFarland (VSB No. 24021)
                                            Benjamin L. Hatch (VSB No. 70116)
                                            V. Kathleen Dougherty (VSB No. 77294)
                                            Jeanne Noonan (VSB No. 87863)
                                            MCGUIREWOODS LLP
                                            World Trade Center
                                            101 West Main Street, Suite 9000
                                            Norfolk, Virginia  23510-1655
                                            Tel.:  (757) 640-3716
                                            Fax:  (757) 640-3930
                                            rmcfarland@mcguirewoods.com
                                            bhatch@mcguirewoods.com
                                            vkdougherty@mcguirewoods.com
                                            jnoonan@mcguirewoods.com

                                            J. Brent Justus (VSB No. 45525)
                                            Ashley P. Peterson (VSB No. 87904)
                                            W. Cole Geddy (VSB No. 93511)
                                            MCGUIREWOODS LLP

Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219-3916
Tel.:  (804) 775-1000
Fax:  (804) 698-2026
bjustus@mcguirewoods.com
apeterson@mcguirewoods.com
cgeddy@mcguirewoods.com

## CERTIFICATE OF SERVICE

I certify that on this 12th day of January, 2023, a true and correct copy of the foregoing was served on all counsel of record via Notice of Electronic Filing by filing with the Court's CM/ECF system.

CSX TRANSPORTATION, INC.
*By Counsel*

/s/ Benjamin L. Hatch
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
V. Kathleen Dougherty (VSB No. 77294)
Jeanne Noonan (VSB No. 87863)
McGuireWoods LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia  23510-1655
Tel.:  (757) 640-3716
Fax:  (757) 640-3930
rmcfarland@mcguirewoods.com
bhatch@mcguirewoods.com
vkdougherty@mcguirewoods.com
jnoonan@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
W. Cole Geddy (VSB No. 93511)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219-3916
Tel.:  (804) 775-1000
Fax:  (804) 698-2026
bjustus@mcguirewoods.com
apeterson@mcguirewoods.com
cgeddy@mcguirewoods.com