IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**CSX TRANSPORTATION, INC.,**

      Plaintiff,

v.                                                     Civil Action No. 2:18-cv-530-MSD-RJK

**NORFOLK SOUTHERN RAILWAY COMPANY,** *et al.***,**

      Defendants.

### NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS ALL REMAINING CLAIMS FOR RELIEF

Defendant Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line"), by counsel, for its Reply in support of its Motion to Dismiss All Remaining Claims pursuant to Rules 12(h)(3), 12(c), and 15 U.S.C. § 26, states as follows:

**Summary**

The plain language of 15 U.S.C. § 26 forecloses any further action here. CSX spends the majority of its brief on procedural arguments, overlooking that a central purpose of the Motion is to save all the parties and the Court from a needless trial where no relief is available.

CSX's limited arguments on the merits invite this Court to engage in unnecessary analysis. CSX posits hypotheticals about the parameters of the current statute, arguing that its plain meaning would immunize common carriers from "even matters that are not subject to STB jurisdiction." Opp. At 4. Yet CSX cannot avoid the inescapable, and uncontested, fact that the injunctive relief it seeks overlaps directly with STB jurisdiction. It is therefore forbidden here under 15 U.S.C. § 26, whether evaluated under pre- or post-1995 law.

CSX's procedural arguments fare no better, as a Rule 12(h)(3) motion may be filed at any time, and CSX concedes that the Belt Line's Rule 12(c) motion would be viable under Rule 12(b)(6), which is the standard by which Rule 12(c) motions are judged. CSX's complaint about a jurisdictional vacuum is simply wrong, as all remaining injunctive relief overlaps with the exclusive jurisdiction of the STB. And CSX's only other argument, that its state law claims are somehow still alive, ignores this Court's summary judgment ruling dismissing them.

<u>Argument</u>

I. **CSX fails to overcome the explicit bar of 15 U.S.C. § 26.**

    A. **The statute deprives district courts of authority to grant injunctive relief in antitrust cases against common carriers subject to STB jurisdiction.**

The Supreme Court has squarely held that a statutory analysis starts, and generally ends, with the statutory text. *See Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.").

CSX ignores the plain language of the statute. This is unsurprising, since the language leaves no room for the judicial interpretation that CSX seeks:

> *Provided,* That nothing herein contained shall be construed to entitle any person, firm, corporation, or association, except the United States, to bring suit for injunctive relief against **any common carrier subject to the jurisdiction of the Surface Transportation Board** under subtitle IV of title 49, United States Code.

11 U.S.C. § 26 (emphasis added).

There is no qualification in this statute, other than the description of the kind of defendant. Nor does the language "under subtitle IV of title 49" provide such a qualification, as CSX argues, since the statement itself refers only to the prior phrase describing the kind of defendant. Opp. at 16. And as explained in the Belt Line's opening brief, this language is markedly different from the pre-1995 statutory text, which contained a *now-deleted* additional condition regarding the kind

2

of relief: "in respect of any matter subject to the regulation, supervision, or other jurisdiction of the Interstate Commerce Commission." 15 U.S.C. § 26 (1994 version).

CSX undertakes the statutory analysis backwards. CSX first assumes no change in the law, citing *Georgia v. Penn. R.R. Co.*, 324 U.S. 439 (1945) (interpreting the old statute), and then asks this Court to adopt that assumption despite an undeniable deletion in the post-1995 text. *See* ECF 593 at 12. The Supreme Court requires the opposite approach. Under Supreme Court precedent, "The starting point in discerning congressional intent is the *existing statutory text, and not the predecessor statutes*." *Lamie*, 540 U.S. at 534 (emphasis added). A court is not permitted to imply in a new statute the very thing that Congress eliminated from the old one. *See Murdock v. Memphis*, 87 U.S. 590, 617 (1875). CSX urges this Court to do just that.

CSX's complaint that the statute cannot mean what it says is for Congress to remedy, not the courts. As the Supreme Court has made clear, "If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent. 'It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think ... is the preferred result'." *Lamie*, 540 U.S. at 542 (ellipses in original; quoting *United States v. Granderson,* 511 U.S. 39, 68 (1994)).

Yet whether CSX's interpretation is correct anyway is highly dubious. It is undisputed that in 2008, 2011, and 2013, Congress attempted to do exactly what CSX asks this Court to do now—change the statute—in each instance citing the current law as foreclosing injunctive relief against railroads in antitrust cases. *See* ECF 573 at 9-10. All attempts failed. As a result, under the plain language of 15 U.S.C. § 26, a federal court has no authority to grant injunctive relief in an antitrust case against any defendant that is a common carrier subject to the jurisdiction of the STB.

3

### B. The only remaining injunctive relief in this case overlaps directly with STB jurisdiction.

Importantly, CSX's theories about legislative intent are meaningless to the application of 15 U.S.C. § 26 here. This Court need not indulge CSX's hypotheticals about hotels and other matters outside STB jurisdiction, because in this case, *every* remaining request for injunctive relief is within STB jurisdiction. *See* ECF 573 at 11-13. CSX fails to cite a single item of injunctive relief that does not overlap directly with STB authority, meaning this case must be dismissed whether analyzed under pre- or post-1995 law.

The Belt Line made this point explicitly in its Motion, yet CSX failed to address it, arguing in a single footnote that the Court has rejected the argument. *See* ECF 593 at 20 n.4. Not so. The excerpt CSX cites is from this Court's rulings at the pleadings stage, where the Court said, after discussing CSX's antitrust claims, "However, the STB's jurisdiction would not be affected; that is, the STB may still approve or disapprove the *pending rate increase that Norfolk Southern would charge Belt Line in the future*." ECF 66 at 25 (emphasis added); *see also* ECF 593 at 5. This statement unquestionably refers to the pending *trackage rights fee* dispute at the STB. It does not implicate, or even address, STB jurisdiction over the control issues that remain now.

As explained in the Belt Line's opening brief, all the injunctive relief CSX seeks revolves around the level of NS's *control* of the Belt Line, whether exercised or not. *See* ECF 573 at 11 (quoting summary judgment opinion). [1]

---

[1] To the extent CSX still seeks to force the Belt Line to accept CSX's 2018 service proposal, which does not appear to be the case, that injunctive relief would also fall within STB jurisdiction (putting aside problems with a court having to create a contract for the parties). The STB has exclusive jurisdiction over railroad transportation rates (including switching rates charged by one railroad carrier to another), and the STB possesses exclusive authority under federal law to review and, where appropriate, prescribe such transportation rates in the event of a dispute. *See* 49 U.S.C. §§ 10501(a) and (b)(1), 10701, 10705, and 10707.

CSX does not contest, because it cannot, that the STB has exclusive jurisdiction over the control of one rail carrier by another rail carrier. *See* 49 U.S.C. §§ 11323(a)(3), (4) and (5); 11323(b). Nor does CSX contest that this authority is "part of a comprehensive legislative scheme designed to place ownership, management, and operational control over common carriers within the regulatory jurisdiction of the [Interstate Commerce] Commission [now STB]." *Gilbertville Trucking Co. v. U.S.*, 371 U.S. 115, 122 (1962); *see also Illinois Cent. R. Co. v. U.S.*, 263 F. Supp. 421, 428 (N.D. Ill. 1966) ("The power of the Commission to respond to conditions of illegal control is practically plenary under the Interstate Commerce Act.").

CSX also does not contest the myriad powers the STB has, and in fact has exercised in the past, that closely parallel the requested relief here, including remedies such as divestiture, voting trusts, and agency oversight. *See* ECF 573 at 13 (describing measures and examples). These measures, and the STB's power to undertake them, completely undercut CSX's argument about a supposed "enforcement vacuum." [2]

Because CSX concedes (as it must) that the STB has such powers, and therefore also (as it must) that the STB has jurisdiction over the remaining claims for injunctive relief in this case, the same conclusion is unavoidable regardless of CSX's interpretation of 15 U.S.C. § 26: this Court cannot grant further relief.

## II. CSX's procedural arguments are misplaced.

### A. The Belt Line's Rule 12(h)(3) motion is proper.

CSX's effort to avoid 15 U.S.C. § 26 on procedural grounds is similarly misplaced. Most obviously, a motion under Rule 12(h)(3) can be brought any time. *See Brown v. Huntington*

---

[2] Injunctive relief is also available in actions brought by the United States.

*Ingalls, Inc.*, 2013 U.S. Dist. LEXIS 146933 at *8-9 (E.D. Va. 2013) (a Rule 12(h)(3) motion "may be asserted at any time and need not be responsive to any pleading of the other party.").

CSX's argument that jurisdiction exists under 28 U.S.C. § 1331, despite 15 U.S.C. § 26, ignores the import of the statute. Section 1331 identifies a basis for jurisdiction; it does not supply jurisdiction. *See* 28 U.S.C. § 1331. CSX's only basis for jurisdiction under § 1331 is a federal question, but in antitrust cases, no right to injunctive relief exists outside of 15 U.S.C. § 26, *see Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 634 (1977), so the federal question must rise or fall with 15 U.S.C. § 26. And if 15 U.S.C. § 26 cannot supply the jurisdictional "hook," which it cannot, no other basis for jurisdiction exists.[3]

CSX's fallback argument that this is not a jurisdictional issue ignores the difference between injunctive relief under antitrust law and a "limitation on coverage" under Title VII. *See* ECF 593 at 11. In *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006), for example, the principal case cited by CSX, the Supreme Court declined to hold that an "employee-numerosity" requirement in Title VII was jurisdictional because nothing in the statute or its history indicated as much. As the Court explained, "But neither § 1331, nor Title VII's jurisdictional provision, 42 U.S.C. § 2000e-5(f)(3) . . . specifies any threshold ingredient akin to 28 U.S.C. § 1332's monetary floor." *Id*. at 515. The Court therefore concluded, "Given the 'unfairness' and 'waste of judicial resources' . . . entailed in tying the employee-numerosity requirement to subject-matter jurisdiction, we think it the sounder course to refrain from constricting § 1331 or Title VII's jurisdictional provision, 42 U.S.C. § 2000e-5(f)(3), and to leave the ball in Congress' court." *Id*.

The Supreme Court said exactly the opposite about 15 U.S.C. § 26. *See Vendo*, 433 U.S. at 634. As the Supreme Court explained in *Vendo*, because no independent right to injunctive

---

[3] The parties are not diverse under 28 U.S.C. § 1332.

relief exists in antitrust cases, "Prior to the enactment of § 16, private injunctive relief was not authorized for antitrust violations. As far as the legislative history indicates, *the sole purpose of § 16 (§ 14 in the original drafts) was to extend to private parties the right to sue for injunctive relief*." *Id*. at n.5 (internal citation omitted; emphasis added).

Thus, the only way a private antitrust plaintiff has any right to access the federal courts for injunctive relief, and the only way federal courts have any power to grant such relief, is 15 U.S.C. § 26. Here, Congress has *not* granted such authority, and has expressly prohibited it, because both Defendants are common carriers subject to the jurisdiction of the STB.

**B.     The Belt Line's Rule 12(c) motion is proper.**

CSX's arguments against the Belt Line's alternative Rule 12(c) motion are also misplaced. Most obviously, CSX concedes that the Belt Line's Motion would "find a home" under Rule 12(b)(6), *see* ECF 593 at 2, and in the Fourth Circuit, "A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." *Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).

CSX is wrong that the Belt Line delayed presenting its argument. The unique circumstance that gave rise to the Motion—that is, dismissal of all state law claims and all federal law damages claims—did not occur until this Court entered summary judgment on January 3, 2023. *See* ECF 559. The Belt Line filed its Motion just six days later, after first evaluating the remaining relief, consulting railroad regulatory counsel, analyzing applicable law, and drafting the papers. CSX ignores the benefit of this swiftness, as the Court observed in its Order directing briefing. *See* ECF 577 (noting importance of "proceed[ing] to trial only if jurisdiction is present" and the possibly of obviating need for trial without a "valid claim on which relief can be granted").

CSX is also wrong that this Court already denied the Belt Line's arguments on summary judgment.  *See* ECF 593 at 9-10.  The Court did not analyze its subject matter jurisdiction on summary judgment, nor did it directly evaluate the statutory thrust of 15 U.S.C. § 26.  The Court limited its holding in this regard, stating only that, "CSX has demonstrated, at least for summary judgment purposes, that it has standing to seek injunctive relief and that *the existing record* does not support entry of summary judgment."  ECF 559 at 83.

There is no purpose to be served in conducting a multi-week trial when no relief is available at the end of it.  A Rule 12(c) "motion for judgment on the pleadings 'is designed to provide a means of disposing cases when the material facts are not in dispute between the parties'."  *Trustees of Columbia Univ. v. Nortonlifelock, Inc.*, 2021 U.S. Dist. LEXIS 259261 at *3 (E.D. Va. 2021).  And under Rule 12(h)(2), failure to state a claim can be raised in a Rule 12(c) motion or even at trial.  *See* Fed. R. Civ. P. 12(h)(2); ECF 395 at 7-8.  That is the situation here.

Because no injunctive relief is available as a matter of law, even if this Court had subject matter jurisdiction to grant it (it does not), the Belt Line's alternative Rule 12(c) motion is proper and the case should be dismissed.

**III.    There are no state law claims left to support injunctive relief.**

CSX is incorrect that this Court retains jurisdiction over its state law claims.  There are no state law claims.  The only state law claims against the Belt Line were conspiracy claims in Counts 8 and 9.  This Court granted summary judgment in favor of the Defendants on both counts because, in addition to lack of damages, CSX's overall dearth of proof failed to meet *any* evidentiary standard, much less Virginia's heightened clear and convincing standard.  *See* ECF 559 at 94-98.  As the Court held, "For the reasons set forth below, the Court finds that there is no genuine dispute

as to any material fact regarding CSX's state law claims and that Defendants are entitled to judgment as a matter of law with respect to those claims." *Id*. at 94. The Court explained:

> As NPBL argues without opposition, Virginia civil conspiracy claims are subject to a heightened evidentiary standard, requiring 'clear and convincing evidence' of concerted action for an unlawful purpose. . . . First, CSX marshals <u>no</u> record evidence capable of satisfying its burden . . . Second, the Court's own review of the summary judgment record, as necessitated to evaluate the federal claims, plainly reveals that no reasonable juror could conclude that there is clear and convincing evidence that Defendants entered into a <u>new agreement</u> to harm CSX between 2015 and 2018. In sum, to the extent that CSX's statutory and common law conspiracy claims are based on allegations of new conspiracies between 2015 and 2018 that are <u>separate</u> from the alleged conspiracy beginning in 2009, both causes of action fail based on the record, even when viewed in the light most favorable to CSX (and regardless of the heightened evidentiary standard).

ECF 559 at 97-98. [4] This holding precludes CSX's state law arguments now.

### Conclusion

For the foregoing reasons, under Rules 12(h)(3), 12(c), and 15 U.S.C. § 26, the Belt Line respectfully requests that this Court dismiss this case entirely.

Dated: January 13, 2023

NORFOLK AND PORTSMOUTH
BELT LINE RAILROAD COMPANY

By: __/s/ W. Ryan Snow__
James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Alexander R. McDaniel, VSB No. 92398
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
amcdaniel@cwm-law.com

---

[4]   CSX seems to deny this ruling. At least three times in its Opposition, CSX claims that it "retains its state law injunctive claims for trial." ECF 593 at 21; *see also id*. at 4, n.1 and 7-8. And in its Proposed Findings of Fact and Conclusions of Law, filed yesterday, CSX asks the Court to "enter injunctive relief" on Counts 8 and 9, the now-dismissed state law claims. *See* ECF 592 at 1.

9

## CERTIFICATE OF SERVICE

I certify that on this 13th day of January 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a "Notice of Electronic Filing" to all counsel of record who have consented to electronic service.

          /s/ W. Ryan Snow
W. Ryan Snow, VSB No. 47423
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
wrsnow@cwm-law.com