UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| CSX TRANSPORTATION, INC., | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) Case No. 2:18-cv-530 |
| | ) |
| NORFOLK SOUTHERN RAILWAY COMPANY, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |

**NORFOLK SOUTHERN RAILWAY COMPANY'S OBJECTION
TO THE DENIAL OF ITS RULE 702 MOTION TO EXCLUDE
THE OPINIONS OF PROFESSOR HOWARD P. MARVEL**

Defendants Norfolk Southern Railway Company ("NS" or "NSR"), by counsel and pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 72, objects to the Magistrate Judge's oral and written denial of its Motion to Exclude Opinions of Professor Howard P. Marvel under Federal Rule of Civil Procedure 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ("Motion") [ECF No. 465] to prohibit Professor Marvel's opinions concerning harm to ocean carriers and damages to CSX Transportation, Inc. ("CSX"). NS objects to the Order [ECF No. 580], and oral ruling [ECF No. 579] that denied the Motion.

**ARGUMENT**

The Court should reverse the denial of NS's Motion because it is clearly erroneous and contrary to law.

NS's Motion focuses on the opinions and economic models created by Professor Marvel purporting to establish that CSX has suffered hundreds of millions of dollars in damages as well as purporting to establish that certain ocean carriers have been harmed in the form of higher prices (and that NS earns higher margins on those ocean carriers). As to the former, the Court has already

1

established the law of this case: "[CSX's] damages model is *fundamentally flawed* in that it does not even attempt to separate harm stemming from the limited conduct within the limitations period (physical delays of economically unviable trains) from the established inertial effects of the acts committed prior to, or during the 2009-2011 period." ECF No. 559, at 51 (emphasis added). For this reason alone, Professor Marvel should not be able to testify about his damages model. As to the latter, Professor Marvel plainly stated that the results of his models purporting to show harm to ocean carriers cannot be distinguished from anticompetitive conduct or legitimate competitive differences. ECF No. 469, at 22. Stated differently, Professor Marvel does not know whether the results of his own model—that certain ocean carriers purportedly pay higher prices to NS—are caused by the anticompetitive conduct alleged by CSX or because of NS's competitive advantages or superior service. His model does not—indeed, cannot—make this distinction. Professor Marvel's models and opinions that ocean carriers have been harmed are therefore uninformative and should similarly be excluded. Under well-established law, this failure renders Professor Marvel's models inadmissible.

**1. That Some Ocean Carriers Are NIT Intensive Users Is Not a Proper Basis For Professor Marvel's Opinions.**

Both economic models created by Professor Marvel purporting to show damages to CSX and harm to ocean carriers are built upon a premise that certain ocean carriers are NIT intensive users—or "beholden" to NIT, to use Professor Marvel's own words. *Id.*, Ex. 1 (Marvel Rep. ¶¶ 13, 78). This theory is fundamental to the construction of Professor Marvel's opinions and models, and the Magistrate Judge's denial of NS's Motion on this basis was clear error and contrary to the record.

The Magistrate Judge observed there exists "a variety of other factors" aside from railroad alignment and Port of Virginia decision-making that will lead some ocean carriers to be NIT

2

intensive users. Jan. 10, 2023, Hearing Trs., at 11 [hereinafter "Hearing Trs."]. The Magistrate Judge noted that those "other factors" include NIT's capacity, the number of berths at NIT compared to VIG, weather, ocean carrier alliance, port structure, the number of containers to be discharged, the size of the ocean carrier's ship, and the day of the week the ocean carrier arrives. *Id.* The Magistrate Judge thus found there are "admissible facts" showing that "some carriers make intensive use of NIT for reasons independent of simply railroad alignment and Port of Virginia decision-making" and therefore NS's Motion to exclude Professor Marvel's NIT intensity foundation was denied. *Id.*

The Magistrate Judge's conclusion is clear error. Professor Marvel's theory relies on a fundamental, but erroneous assumption—that some ocean carriers are beholden to NIT and could not move away from NIT in the face of anticompetitive conduct. The above facts, even if true, do not show that an ocean carrier could not shift away from NIT if it wanted to, or that it has to use NIT for a specific purpose that could not be fulfilled by another port or terminal. Indeed, CSX and port officials could not identify any freight or destination that must only be served by NIT (as opposed to a VIG or another port). ECF No. 469, at 15. Accordingly, Professor Marvel's theory is inadmissible because it lacks any factual foundation and is, in fact, belied by undisputed facts.

Separately, the Magistrate Judge's decision is contrary to law, specifically, *It's My Party, Inc. v. Live Nation, Inc.*, 88 F. Supp. 3d 475, 483 (D. Md. 2015). In *It's My Party*, the court considered a theory of whether certain artists have an inherent preference for certain types of theaters to perform music shows. *See It's My Party*, 88 F. Supp. 3d at 486-87. The court determined that the expert's assertion that "certain artists prefer amphitheaters" was not based on "sufficient facts or data" despite having actual testimony (unlike here) from artists that such a preference existed. *Id.* In affirming the district court's decision, the Fourth Circuit said "reliance

3

on this evidence is akin to claiming that Pepsi and Coke are in different markets because consumers generally prefer one or the other. Mere consumer preference does not indicate what Pepsi enthusiasts would do in response to an increase in price." *It's My Party*, 811 F.3d 676, 683 (4th Cir. 2016). The Magistrate Judge's failure to consider *It's My Party*, as well as for the reasons stated above, is reversible error.

### 2. Professor Marvel's Opinions and Models About Harm to Ocean Carriers Is Uninformative.

Professor Marvel purports to analyze various anticompetitive conduct, including "setting and maintaining the Belt Line's [switch rate]," "removing critical rail infrastructure," and "refusing to accommodate reasonable scheduling windows," and then uses a regression model to conclude that this conduct has harmed ocean carriers. ECF No. 487, at 6-7. Indeed, CSX acknowledges that it intends to offer these models and opinions to establish the harm to competition element of CSX's antitrust claims. *See* ECF No. 487, at 1. There is a critical problem with this approach: Professor Marvel's regression models cannot connect the purported anticompetitive conduct he analyzed with the results of his regression models purporting to show ocean carriers were harmed. When asked directly, Professor Marvel admitted that his models do no such thing.

> Q: … Just to confirm, your damages model, like your [harm to ocean carrier model], does not distinguish between anticompetitive effects and legitimate competitive differences, right?
>
> A: It does not, no.

ECF No. 469, at 22. The Magistrate Judge correctly observed that Professor Marvel's opinions and economic models purporting to show harm to ocean carriers were suspect in their construction. "There appears to be little dispute that Dr. Marvel's pricing and margin model does not distinguish between anticompetitive and legitimate competitive factors. Thus, his conclusion about harm to

4

competition (specifically ocean carriers) is not supported by testing as he, himself, acknowledged." Hearing Trs., at 17. Nonetheless, citing the fact that this matter is now set for a bench trial, the Magistrate Judge denied NS's Motion to exclude these models and opinions "in spite of some reservations." Hearing Trs., at 17.

That this matter is now a bench trial does not change—or relax—the standard for admissible expert testimony under Fed. R. Civ. P. 702. *See UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 833 (3d Cir. 2020) (vacating judgment and remanding where, "in sidestepping Rule 702 altogether and declining to perform any assessment of [an expert's] testimony before trial, the District Court ignored the rule's clear mandate"). The import of the error in Professor Marvel's model carries serious consequences, and the Magistrate Judge's ruling in light of these shortcomings rises to level of reversible error.

Unless Professor Marvel can tie the results of his model to anticompetitive conduct, the models are completely uninformative to the critical question they attempt to answer: Did Defendants' anticompetitive conduct *cause* ocean carriers to pay higher prices? Professor Marvel's model cannot answer this question—as Professor Marvel admits. While Professor Marvel's model purports to show that certain ocean carriers pay higher prices, the *reason* for doing so is pure speculation, as he himself admits, as to whether that is true because CSX has been foreclosed, or whether that is true because NS has a legitimate competitive advantage over CSX. That NS did not offer a "competing regression model" makes no difference. Hearing Trs., at 17.

Professor Marvel's model purporting to show harm to ocean carriers is indisputably flawed and uninformative, as recognized by the Magistrate Judge, and the proper outcome is to exclude those models and opinions.

3.  **This Court Has Already Determined that the Damages Model Is "Fundamentally Flawed" and Should, Therefore, Be Excluded.**

On January 6, 2023, the Magistrate Judge entered an order directing the parties to submit supplemental briefing addressing the impact of this Court's summary judgment opinion on the pending motions *in limine*, including NS's motion to exclude the opinions of Professor Marvel. ECF No. 564. On January 9, 2023, the parties submitted supplemental briefing addressing the Magistrate Judge's questions. *See* ECF Nos. 565 & 566. In its submission, NS acknowledged that this Court issued a lengthy and well-reasoned summary judgment opinion after the parties had completed briefing on the questions of Professor Marvel's opinions but explained that the summary judgment opinion bolstered NS's arguments. *See* ECF No. 566.

In its summary judgment opinion, this Court established the law of the case. As part of those findings, this Court engaged in a detailed analysis demonstrating that Professor Marvel's damages model was "fatally flawed" and, therefore, excluded all of CSX's claims for damages. ECF No. 559, at 51. NS addressed this Court's finding in its submission to the Magistrate Judge on January 9, 2023. *See* ECF No. 566. The Magistrate Judge did not address the issue. Rather, the Magistrate Judge stated "[t]o the extent that certain aspects of the defendant's challenges to Dr. Marvel's analysis have been effectively resolved by the Court's summary judgment ruling, I do not intend to address them as part of this ruling." Hearing Trs., at 9.

This is reversible error. In a trial for injunctive relief where CSX bears the burden to show that monetary damages are insufficient to compensate the future irreparable injury, a damages model purporting to do just that—to show that adequate damages exist, albeit unsuccessfully for the reasons stated in the Court's summary judgment opinion—is completely uninformative to the elements of CSX's injunctive relief claims. *See SAS Institute, Inc. v. World Programming Ltd.*, 874 F.3d 370, 385 (4th Cir. 2017) (reciting the elements of injunctive relief). Putting aside the

6

fact that Professor Marvel's damages model purports to show *past* damages, and the current bench trial is with regards to *future irreparable injury*, this Court has already determined that Professor Marvel's damages model is fatally flawed. A fatally flawed damages model is not admissible to bootstrap past damages with future irreparable injury. ECF No. 559, at 16-17, 51. A fatally flawed damages model should be excluded from trial.

The Magistrate Judge's decision to deny NS's Motion with respect to the damages model without addressing this Court's summary judgment findings is reversible error.

## **CONCLUSION**

For the foregoing reasons, this Court should reverse the Magistrate Judge's denial of NS's Motion because it was clearly erroneous and contrary to law. NS respectfully requests this Court to exclude Professor Marvel's opinions and economic models consistent with NS's Motion.

Dated: January 24, 2023                                       Respectfully submitted,

                                                        **NORFOLK SOUTHERN RAILWAY COMPANY**

*/s/ Michael E. Lacy*
Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
Massie P. Cooper (VSB No. 82510)
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-6061
Email: alan.wingfield@troutman.com
Email: michael.lacy@troutman.com
Email: massie.cooper@troutman.com

John C. Lynch (VSB No. 39267)
Kathleen M. Knudsen (VSB No. 90845)
TROUTMAN PEPPER HAMILTON SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7500
Facsimile: (757) 687-7510
Email: john.lynch@troutman.com
Email: kathleen.knudsen@troutman.com

Tara L. Reinhart
Thomas R. Gentry
Meghan F. McConnell
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7000
tara.reinhart@skadden.com
thomas.gentry@skadden.com
meghan.mcconnell@skadden.com

142255832