IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**CSX TRANSPORTATION, INC.,**

      **Plaintiff,**

v.                                                 Civil Action No. 2:18-cv-530-MSD-RJK

**NORFOLK SOUTHERN RAILWAY
COMPANY,** *et al.*,

      **Defendants.**

**NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY'S
OBJECTION TO DENIAL IN PART OF ITS MOTION IN LIMINE #5 TO EXCLUDE
TESTIMONY FROM PLAINTIFF'S EXPERT HOWARD MARVEL**

Defendant Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line"), by counsel, pursuant to Fed. R. C. P. 72(a), objects as follows to the Magistrate Judge's Order (ECF 580) denying in part the Belt Line's Motion in Limine #5 to Exclude Testimony from Plaintiff's Expert Howard Marvel, Ph. D. (ECF 473):

**Introduction**

Dr. Marvel is an economist and CSX's only expert. The Belt Line sought to exclude Dr. Marvel's testimony on three grounds pertinent to this objection: [1]

    (1)    His damages model is fatally flawed because he fails to apportion damages to acts within the statute of limitations period;

    (2)    His relevant market opinion is fatally flawed because he ignores ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; and

    (3)    His rate opinion is fatally flawed because he ignores ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

---

[1]    The Belt Line incorporates its arguments in its Motion in Limine (ECF 473 and 475).

This Court already evaluated the thrust of Dr. Marvel's damages opinions in the summary judgment opinion (ECF 559), describing his damages model as "fundamentally flawed." *Id*. at 51. The Magistrate Judge appears to have excluded Dr. Marvel's damages model as "effectively resolved" by that ruling. *See* ECF No. 581 at 9:7-10. Nevertheless, to the extent there is any doubt about the effect of the Magistrate Judge's ruling, the Belt Line objects here for all the reasons in its Motion in Limine. The Belt Line also joins NS's arguments in its objection to the Magistrate Judge's rulings on this issue. Dr. Marvel should not be permitted to present his flawed damages model at trial. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997); *Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.*, 221 F. Supp. 3d 1033, 1043-45 (N.D. Ind. 2016).

The arguments below focus on the Magistrate Judge's rejection of the Belt Line's two other grounds for exclusion. In 2021, in *Sardis v. Overhead Door Corp.*, the Fourth Circuit confirmed that an expert's intentional omission of materially harmful data is grounds for exclusion, not cross-examination. 10 F.4th 268, 291 (4th Cir. 2021). Here, the Magistrate Judge held that Dr. Marvel's relevant market and rate opinions were both based on sufficient facts and methodology, despite his intentional omission of essential variables from each analysis. *Id*. at 32:1-12 ("Dr. Marvel's failure to assess Belt Line's costs, however, goes to the weight, not the admissibility of his opinions and testimony on this point."); 37:18-39:5 (holding that Dr. Marvel's failure to examine the price of drayage goes to weight, not admissibility). Because that holding conflicts with Fed. R. Evid. 702, antitrust precedent, and Fourth Circuit precedent in *Sardis*, to the extent Dr. Marvel's opinions remain relevant in this case, this Court should exclude them all, not just his damages model.

## **Standard of Review**

Rule 72(a) requires that a district judge consider objections made to a magistrate judge's ruling and "modify or set aside any part of the order that is clearly erroneous or is contrary to

law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636 (b)(1)(A); *Fed. Election Comm'n v. Christian Coal.*, 178 F.R.D. 456, 459-60 (E.D. Va. 1998) (citing *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990)).  A magistrate judge's "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "For questions of law there is no practical difference between review under Rule 72(a)'s contrary to law standard and a *de novo* standard." *CertusView Techs., LLC v. S&N Locating Servs., LLC*, 107 F. Supp. 3d 500, 504 (E.D. Va. 2015) (quoting *Bruce v. Hartford*, 21 F. Supp. 3d 590, 594 (E.D. Va. 2014) (citations and internal quotation marks omitted)).

The reliability analysis required by Rule 702 is essential whether the trier of fact is a judge or a jury. *See UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832-33 (3d Cir. 2020). As the Third Circuit explained:

> We start with a clarification about the role Rule 702 plays in bench trials. As we have explained, "a trial judge acts as a gatekeeper to ensure that any and all expert testimony or evidence is not only relevant, but also reliable." As gatekeeper, a trial judge has three duties: (1) confirm the witness is a qualified expert; (2) check the proposed testimony is reliable and relates to matters requiring scientific, technical, or specialized knowledge; and (3) ensure the expert's testimony is "sufficiently tied to the facts of the case," so that it "fits" the dispute and will assist the trier of fact. The text of Rule 702 contains no exception to these requirements, so if they are not satisfied, an expert cannot testify before the "trier of fact."

*Id*. at 832 (citations omitted). The Court of Appeals continued:

> Rule 702 applies whether the trier of fact is a judge or a jury. By using the term "trier of fact," rather than specifying judge or jury, Rule 702 does not distinguish between proceedings. Contrast that language with Federal Rule of Evidence 403, permitting a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . misleading the jury." Given that Rule 702 was "amended in response to *Daubert*. . . and to the many cases applying *Daubert*, including *Kumho Tire*," and its text continues to employ the broad "trier of fact" instead of the more specific "jury," district courts must apply Rule 702 to assess an expert's qualifications, reliability, and fit before weighing the expert's opinions to decide a triable issue. Fed. R. Evid. 702 advisory committee's note to

> 2000 amendments ("The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted."); *see also* Fed. R. Evid. 1101(a) (applying the Federal Rules of Evidence to proceedings before district courts).

*Id*. at 832-33 (citations omitted).

## Argument

**I.     Dr. Marvel's relevant market opinion is fatally flawed.**

The Magistrate Judge erred in failing to exclude Dr. Marvel's relevant market opinion because Dr. Marvel intentionally ignored the essential component of price in evaluating drayage as a product alternative. *See H.J., Inc. v. IT&T*, 867 F.2d 1531, 1539-40 (8th Cir. 1989) (holding that product comparisons are "meaningless" without "a comparison of relative costs"). Had he done so and still rejected drayage as an alternative, the matter would be one for cross-examination; because he failed to do so at all, the matter is one of admissibility. *See Sardis*, 10 F.4th at 291.

To determine the relevant market in an antitrust case, both the relevant product (or service) market and the relevant geographic market must be evaluated. *E.I du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 441 (4th Cir. 2011). Significantly, a product does not have to be an exact or perfect substitute, only a reasonable one. *FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 25 (D.D.C. 2015) ("[A] product market includes *all* goods that are *reasonable* substitutes, *even though the products themselves are not entirely the same*.") (emphasis added).

Here, in defining the relevant product market, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. And to be clear, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ECF 475-1, ¶¶ 41-50; ECF 475-2, ¶¶ 37-44. In eighteen paragraphs devoted to drayage, not once does he analyze its cost, whether subsidized or not. *Id*. As a result, his "relevant market" definition that

4

fuels all his other opinions is missing a major transportation alternative—one CSX undeniably uses—without any economic analysis of whether changes in the price affect CSX's demand.

Instead of evaluating price, Dr. Marvel ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This methodological shortcut is fatal for at least two reasons: (1) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; and (2) market reality verifies that drayage *is* a functional alternative, ▮▮▮▮▮▮▮▮▮▮, because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[2]

An antitrust expert cannot use cost to evaluate one alternative but ignore cost when evaluating another. *See H.J., Inc.*, 867 F.2d at 1539-40 (discussed *infra*). Nor can an expert excuse such a failure on grounds that the alternative is functionally unviable when his own client uses it. *Id.*; *Sardis*, 10 F.4th at 291 (expert cannot ignore harmful data). The purpose of Rule 702 is to ensure reliability. Intentionally ignoring material variables undermines that purpose.

In the Fourth Circuit, an intentionally incomplete analysis requires exclusion, not cross-examination. This was the explicit holding in *Sardis*, a product liability case, where similar to Dr. Marvel, an expert purposefully declined to test or consider modeling data that might have undercut his opinion, resulting in an unreliably incomplete analysis. *See Sardis*, 10 F.4th at 291, 299-300 (reversing judgment and finding that district court abused its discretion in admitting testimony). Such a failure goes to admissibility, not weight of the testimony. *Id.* at 291.

---

[2]    Dr. Marvel attempts to explain his incomplete analysis by identifying a purported "Cellophane Fallacy," ECF 475-1, ¶ 49, but the existence of a Cellophane Fallacy is a *conclusion* that an expert might reach after rigorous analysis of cost and other factors; it is not something that can be assumed, then used as a *justification* for avoiding the analysis in the first place.

For the same reasons, the Eighth Circuit, in rejecting a plaintiff's effort to show that "submersible liquid manure pumps constitute a distinct relevant market," held that, "[w]ithout a comparison of relative costs, bare conclusions of one product's superior quality are meaningless." *H.J., Inc.*, 867 F.2d at 1538 and 1539.  Like Dr. Marvel's analysis here, "[t]here was no deliberate effort to prove the prices of any products other than the mix hoist system" and "there was no systematic comparison of prices of the allegedly competing pumps." *Id*. at 1539 n.3.  As the Court explained, "The question of relative cost is not merely academic; it is an essential consideration of any rational purchaser . . . in making the decision to buy one product over another." *Id*.  And directly pertinent to Dr. Marvel's failure to consider ▮▮▮▮▮▮▮▮▮▮, the court stated, "Federal and state (at least in Minnesota) subsidies were available to defray the cost of conversion, but *there was no evidence of these subsidies' effects, if any, on the relative costs of manure pumps*." *Id*. (emphasis added).

Dr. Marvel's opinions are equally devoid of any price analysis for drayage.  Because he ignores price altogether, notwithstanding CSX's undisputed use of the service, the issue is one of admissibility, not weight, and his relevant market opinion must be excluded.

## II. Professor Marvel's rate opinion is fatally flawed.

For the same reasons, Dr. Marvel's opinion that the Belt Line's rate is unreasonable or "▮▮▮▮▮" requires exclusion, not cross-examination, because Dr. Marvel reaches his conclusion by purposefully ignoring the essential component of cost.  Here, the Belt Line's $210 rate is justified by its undisputed ▮▮▮▮▮ average operating costs.  *See* ECF 375-1 at 5.  And as with drayage, Dr. Marvel did not evaluate this reality and then decide to discard it for some economic reason; he simply ignored the harmful data altogether.

An expert witness is "obligated to request all of the information necessary to form a well-reasoned opinion and to admit when he lacked sufficient information adequately to render such an opinion." *In re Brand Name Prescription Drugs Antitrust Litig.*, 1996 U.S. Dist. LEXIS 8752, at *5 (N.D. Ill. 1996).  When an expert fails to gather all necessary information to test his theories, the expert's opinion "may even be right, [but] it is no more than a hypothesis, and it thus is not knowledge, nor is it based upon sufficient facts or data or the product of reliable principles and methods applied reliably to the facts of the case." *Sardis*, 10 F.4th at 291 (4th Cir. 2021) (quoting *Nease v. Ford Motor Corp.*, 848 F.3d 219, 232 (4th Cir. 2017)).

The Magistrate Judge held that Dr. Marvel can testify to the reasonableness of the Belt Line's rate because his "reply report suggests reframing the analysis and poses as the relevant question whether Belt Line '███████████████████████████████████████████████████████████████.'" ECF 581, at 31:8-12.  The Magistrate Judge then pointed to ███████████████████████████████████████████████████████████████████████████████████████████████████. *Id*. at 31:14-25.

Dr. Marvel's "reframing" of the question is a dodge of his methodological failure, not a justification for it.  His opinion is not that CSX's proposed ███████ will generate sufficient revenue for the Belt Line; he does not analyze that question.  His opinion is ████████████████████████████████.  *Compare* ECF 475-1 at ¶¶ 56-58, with ECF 475-2 at ¶¶ 57-59.  As to that opinion, his report says nothing at all about the effect of the Belt Line's operating costs on its rate.  Nor could it, since he did not evaluate the data.

Indeed, Dr. Marvel's own testimony confirms that he did not evaluate *any* of the Belt Line's costs, incremental or otherwise.

7



ECF 475-4 at 90:11-91:16, 92:4-10, 168:9-25 (emphasis added).

Like in the relevant market analysis above, the impact of a company's operating costs on the price of its products is an essential element of a complete economic analysis. As the Magistrate Judge noted, *even Dr. Marvel agrees that the Belt Line's rate should cover its cost*. ECF 581 at 31:14-25. Without any examination of those costs, incremental or otherwise, Dr. Marvel's analysis of the Belt Line's switching rate is incomplete and inadmissible under Fed. R. Evid. 702.

## Conclusion

For the foregoing reasons, the Magistrate Judge's denial of the Belt Line's Motion in Limine is clearly erroneous and contrary to law and the Belt Line respectfully requests that this Court exclude all of Dr. Marvel's opinions.

Dated:  January 24, 2023

NORFOLK AND PORTSMOUTH
BELT LINE RAILROAD COMPANY

By: _____/s/ W. Ryan Snow_____
James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Alexander R. McDaniel, VSB No. 92398
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
amcdaniel@cwm-law.com
*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

## CERTIFICATE OF SERVICE

I certify that on this 24th day of January 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a "Notice of Electronic Filing" to all counsel of record who have consented to electronic service.

_____/s/ W. Ryan Snow_____
W. Ryan Snow, VSB No. 47423
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
wrsnow@cwm-law.com