UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CSX TRANSPORTATION, INC.,
*individually and on behalf
of Norfolk & Portsmouth Belt
Line Railroad Company,*

                    **Plaintiff,**

v.                                     **Civil No. 2:18cv530**

NORFOLK SOUTHERN RAILWAY COMPANY,
NORFOLK & PORTSMOUTH BELT LINE RAILWAY
COMPANY,

                    **Defendants.**

## OPINION AND ORDER

This matter is before the Court on a "Motion to Dismiss All Remaining Claims for Relief," filed by Defendant Norfolk & Portsmouth Belt Line Railway Company ("NPBL") on January 9, 2023. ECF No. 572. Defendant Norfolk Southern Railway Company ("NSR," and together with NPBL, "Defendants"), joined in the motion. ECF No. 574. In response to an expedited briefing order issued by the Court due to the impending trial date, Plaintiff CSX Transportation, Inc. ("CSX") filed its opposition brief on Thursday, January 12, 2023, and Defendants filed their replies on Friday, January 13, 2023.[1] On Monday January 16, 2023, a day that

---

[1] Though the briefing period was expedited, CSX's opposition brief offers the well-reasoned observation, fully joined in by the Court, that it would be a waste of resources to proceed to a lengthy antitrust trial on injunctive relief only for the Court to hold at the conclusion of trial that CSX lacks a federal cause of action. ECF No. 593, at 3.

the Court was closed in observance of a federal holiday, the Court issued a short order scheduling oral argument on the pending motion. ECF No. 602. After holding oral argument on January 18, 2023, and ruling from the bench, the Court now issues the instant Opinion and Order memorializing its rulings **GRANTING** Defendants' motion to the extent it seeks dismissal of CSX's federal injunctive relief claims.

## I. PROCEDURAL HISTORY

On January 3, 2023, the Court issued a lengthy Opinion and Order granting summary judgment in favor of Defendants on CSX's federal antitrust and state-law damages claims, but denying summary judgment on injunctive relief.[2] ECF No. 559. Familiarity with the case background and the key factual and legal allegations is therefore assumed.

In the January 3, 2023 Opinion and Order, the Court's threshold summary judgment ruling on injunctive relief did not turn on the merits, but rather, the Court concluded:

> The timing of the additional briefing periods was both short and overlapping with December holidays, and neither injunctive relief generally, nor laches, were previously raised by either Defendant in support of summary judgment. Consistent with CSX's position on

---

[2] Defendants' summary judgment motions and briefs did <u>not</u> address CSX's claims for injunctive relief, which prompted the Court to ask questions about injunctive relief at oral argument in early December. Injunctive relief was raised by the Court based on the Court's lack of clarity regarding the degree to which the stale timing of the antitrust activity alleged by CSX impacted the injunctive relief claims. In response, Defendants orally argued that CSX's injunctive relief claims failed for lack of standing. CSX opposed this contention. Thereafter, the Court provided the parties with two opportunities to file simultaneous briefs on injunctive relief.

this issue, the Court finds that court-initiated summary judgment should <u>not</u> be granted in favor of either Defendant on the issue of injunctive relief, which has different elements and is governed by a different federal statute than CSX's antitrust damages claim. <u>See</u> 15 U.S.C. § 26.

ECF No. 559, at 81-82. As explained earlier in the Court's January 3, 2023 summary judgment Opinion and Order, Section 16 of the Clayton Act, which is codified at 15 U.S.C. § 26, is what authorizes a private cause of action seeking injunctive relief for violations of §§ 1 and 2 of the Sherman Act. <u>Id.</u> at 10 n.5.

As an alternative ruling, the Court noted that the summary judgment record suggested that CSX had standing to pursue injunctive relief, discussed the Court's broad power under federal law to provide injunctive relief within the context of CSX's requested injunctive remedies, and found that there was not an adequate basis to grant summary judgment on this <u>Court-raised issue</u>. The Court similarly concluded that, based on the state of the record at that time, the doctrine of laches (also an issue that had not been previously briefed) did not bar injunctive relief as a matter of law.

Approximately one week after the Court ruled on summary judgment, Defendants filed the now-pending motion arguing that, pursuant to a clause in 15 U.S.C. § 26, the Court lacks jurisdiction to grant injunctive relief against "common carriers" subject to the jurisdiction of the U.S. Surface Transportation

Board (the "STB").[3]  ECF Nos. 572, 574.  Defendants alternatively argue that, even if the limiting clause in § 26 is not jurisdictional, judgment on the pleadings is appropriate because CSX has no viable cause of action under § 26.  Id.; see Fed. R. Civ. P. 12(c) & 12(h)(2).  The Court will first address the legal standard applicable to each alternative argument, as well as the legal standard for reconsidering prior rulings, and then analyze whether Defendants' motion is proper under the various procedural avenues briefed by the parties.

## II. THRESHOLD PROCEDURAL ISSUES

### A. Subject Matter Jurisdiction

It is well-established that litigants generally retain the ability to "raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance."  Kontrick v. Ryan, 540 U.S. 443, 455 (2004).  As courts of limited jurisdiction, federal district courts have

---

[3] Defendants, who have advanced various jurisdictional challenges throughout this case, raised a less developed version of this argument in their briefs responding to the Court-raised issue of injunctive relief.  However, Defendants' briefs did not previously distinguish the seminal Supreme Court case on this issue.  See Georgia v. Penn. R.R. Co., 324 U.S. 439, 454 (1945); cf. ECF No. 549, at 11 (reflecting CSX's reliance on Georgia in response to the jurisdictional argument at summary judgment).  In a footnote in the Court's summary judgment opinion, the Court indicated that it was "not squarely analyz[ing] Defendants' reasserted arguments that this Court lacks authority" to grant injunctive relief due to the STB's regulatory authority. ECF No. 559, at 83 n.33; see also ECF No. 395 (reflecting this Court's prior statement that it has "every intention of ensuring that the monetary or injunctive remedies secured in this case (if any) are within this Court's authority to award").  Defendants' current motion, having advanced a more developed argument on this issue, argues that the time to squarely address the claim is now.  CSX offers procedural objections to Defendants' motions, but acknowledges that pre-trial resolution of this issue is sensible.

the ability, and even the obligation, to raise subject matter jurisdiction sua sponte. See Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 390 (4th Cir. 2004). However, "[b]ecause the consequences that attach to the jurisdictional label may be so drastic," the United States Supreme Court has endeavored in recent years "to bring some discipline to the use of this term." Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 435 (2011). Federal courts are directed to "look to see if there is any 'clear' indication that Congress wanted the rule" at issue to be "jurisdictional." Id. at 436.

Whether a private cause of action exists under a federal statute is typically not a jurisdictional question, except in those cases where the plaintiff's position is "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme Court], or otherwise completely devoid of merit as not to involve a federal controversy." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998). It is therefore "firmly established [in Supreme Court precedent] that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case." Id. Accordingly, a district court has jurisdiction over a case if "the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will

be defeated if they are given another." Id. (quoting Bell v. Hood, 327 U.S. 678, 685 (1946)); see Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 128 n.4 (2014) (noting that while imperfect, the term "statutory standing" has been used to denote whether a plaintiff has a cause of action under a federal statute, but clarifying that applying statutory interpretation principles to determine "the meaning of the congressionally enacted provision creating a cause of action" is typically not a jurisdictional inquiry).

### B. Rule 12(b)(6), Rule 12(h)(2), & Rule 12(c)

In situations where an issue is not jurisdictional, but a plaintiff cannot state a valid legal claim on which relief can be granted, a motion to dismiss may be filed under Rule 12(b)(6). Although a Rule 12(b)(6) motion is typically filed early in a case in response to the complaint, Rule 12(h)(2) provides that "[f]ailure to state a claim on which relief can be granted," is not waived even if it is not raised until trial. Fed. R. Civ. P. 12(h)(2); see 5C Fed. Prac. & Proc. Civ. § 1392 (3d ed., Apr. 2022) (explaining that the defense of failure to state a claim is preserved "against waiver during the pleading, motion, discovery, and trial stages of the action"). Similar to a motion filed under Rule 12(b)(6), Rule 12(c) provides: "After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).

6

## C. Reconsideration of Prior Orders

As noted above, this Court's prior summary judgment ruling declined to squarely address Defendants' challenge to this Court's authority to enjoin Defendants' activities that allegedly violate federal antitrust laws. "Where a district court issues an interlocutory order such as one for partial summary judgment 'that adjudicates fewer than all of the claims,'" the court retains discretion to revise such order 'at any time before the entry of a judgment adjudicating all the claims.'" Carlson v. Bos. Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017) (quoting Fed. R. Civ. P. 54(b)). Compared to revising a final judgment under Federal Rule of Civil Procedure 59(e), revising an interlocutory order under Rule 54(b) "involves broader flexibility . . . as the litigation develops and new facts or arguments come to light." Carlson, 856 F.3d at 325. Although district courts applying Rule 54(b) draw guidance from Rule 59(e)'s standard to ensure that the "law of the case" retains a sufficient degree of finality,[4] the "law of the case is just that," and it "cannot limit the power of a court to reconsider an earlier ruling." Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003). This is true because the

---

[4] A district court generally will not depart from a prior ruling constituting the law of the case unless there is (1) new evidence that was previously unavailable, (2) new controlling authority, or (3) a clear error in the prior ruling that would result in "manifest injustice." Hicks v. Brennan, No. 2:16CV89, 2017 WL 4476835, at *3 (E.D. Va. Apr. 27, 2017). However, while a district court's discretion to revisit a prior ruling "is guided by the law of the case doctrine," the absence of the above three factors does not prohibit the court from revisiting a ruling. Id. at *9.

"ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law," and while such obligation "may be tempered at times by concerns of finality and judicial economy," the law of the case remains "a malleable doctrine meant to balance the interests of correctness and finality."  Id.

Reaching the correct judgment is of particular importance when a district court addresses significant threshold matters, such as questions of "Article III standing" and "jurisdictional issues generally."  Id.  Furthermore, the weight given to the law of the case may be tempered "by the nature of the first ruling"; if "the ruling is avowedly tentative . . . it may be said that law-of-the-case principles do not apply."  Id. at 516 (quoting 18B Fed. Prac. & Proc. Juris. § 4478.5).

### D. Procedural Analysis

Consistent with evolving Supreme Court precedent cabining the breadth of issues deemed "jurisdictional," the Court finds that it has jurisdiction over this question.  Within the scope of that jurisdiction, the parties' dispute requires the Court to apply traditional principles of statutory interpretation to determine the scope of a statutory exception to the private cause of action created by 15 U.S.C. § 26.  Though, historically, the instant dispute may have been labeled "jurisdictional," CSX's position regarding the existence of a federal cause of action is not so implausible that it divests this Court of federal question

jurisdiction. Furthermore, the language of the statute does not reveal a clear intent by Congress to render the matter jurisdictional, as the relevant provision uses negative phrasing to explain to whom the statute does not provide an injunctive remedy. See 15 U.S.C. § 26 ("[N]othing herein contained shall be construed to entitle" the listed class of parties the right to pursue relief).[5]

Adopting CSX's contention that the issue before this Court is not jurisdictional, the Court finds that determining whether CSX has a valid cause of action to seek relief under 15 U.S.C. § 26 is cognizable under Rule 12. See Fed. R. Civ. P. 12(c), 12(h), 12(b)(6). First, as argued by NSR, this Court has discretion to consider a Rule 12(c) motion even if it is filed shortly before trial. See Reynolds Assocs. v. Kemp, 974 F.2d 1331, 1992 WL 207747, at *2 n.4 (4th Cir. 1992) (unpublished table opinion) ("The determination whether the 12(c) motion constitutes a delay of trial is within the sound discretion of the judge. However, if it seems clear that the motion may effectively dispose of the case, the court should permit it regardless of any possible delay its consideration may cause." (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1367 at 514 (1990))). Second, as conceded by CSX, Rule 12(h)(2) permits this Court to

---

[5] Alternatively, to the extent this issue should be deemed "jurisdictional" based on historical cases indicating that 15 U.S.C. § 26 provides the sole authority for a private party to seek an injunction, Defendants' motions are plainly timely and dismissal for lack of jurisdiction would be warranted.

consider a Rule 12(b)(6) defense "at trial," and it would be irrational to proceed to a multi-week federal antitrust trial only to determine at the conclusion that CSX does not have a cause of action under 15 U.S.C. § 26.   Third, notwithstanding CSX's arguments to the contrary, the Court finds that the motions advanced by Defendants are subject to Rule 12(b)(6) treatment because they turn on a legal interpretation of the statute at issue, not on the facts developed during discovery.[6]

Even if resolving the instant dispute under Rule 12 is improper at this time, the Court finds that Defendants' motion is alternatively cognizable as an appropriate request for the Court to revisit its ruling on summary judgment.  While the existence of a private cause of action under § 26 is not "jurisdictional," it is a critical threshold matter with similar import.  The Supreme Court's opinion in <u>Nat'l R. R. Passenger Corp. v. Nat'l Ass'n of R. R. Passengers</u>, 414 U.S. 453 (1974) illustrates this point.

---

[6] The only issue that could be considered "factual" is whether Defendants are "common carriers subject to the jurisdiction of the Surface Transportation Board." 15 U.S.C. § 26. While CSX's complaint does not expressly identify Defendants in this way, they are identified as Class I and Class III railroads that move intermodal freight, and there has not, at any stage in this case, been any suggestion from CSX that Defendants are not common carriers under the STB's jurisdiction. In fact, it is undisputed that both Defendants are currently parties to a rate proceeding before the STB (a proceeding that began before the instant lawsuit was filed). ECF No. 312-17. Furthermore, this case was stayed in 2021 to permit a potentially dispositive issue to be resolved <u>by the STB</u>. ECF No. 395. To the extent the current motion relies on a fact outside of the pleadings (Defendants' status as common carriers), CSX's failure to contest such fact, including at oral argument, is sufficient to support the pre-trial resolution of the threshold <u>legal dispute</u>, particularly when CSX concurs that pre-trial resolution is preferable.

There, the dispute centered on whether a private party can file suit under "the Amtrak Act" to challenge the discontinuance of specific passenger trains.  Id. at 454-55.  In framing the issue, the Supreme Court noted that "the parties have approached the question from several perspectives," with the issue "variously stated to be whether the Amtrak Act can be read to create a private right of action . . .; whether a federal district court has jurisdiction under the terms of the Act to entertain such a suit; and whether the respondent has standing to bring such a suit." Id. at 455-56.  The Court further noted that those questions "overlap in the context of this case even more than they ordinarily would" and that "however phrased, the threshold question clearly is whether the Amtrak Act or any other provision of law creates a cause of action whereby a private party such as the respondent can enforce duties and obligations imposed by the Act; for it is only if such a right of action exists that we need consider whether the respondent had standing to bring the action and whether the District Court had jurisdiction to entertain it."  Id. at 456. Ultimately, the Court concluded that there was not a private right of action, noting in a footnote that "[s]ince we hold that no right of action exists, questions of standing and jurisdiction became immaterial."  Id. at 465 n.13.

Consistent with the discussion in American Canoe, the law of the case doctrine is less potent when a dispute goes to the very

11

heart of whether a cause of action is valid. Furthermore, as noted above, this Court did not squarely take up this matter when resolving the original summary judgment motion, as the parties did not seek a ruling on injunctive relief at that time. As a result, notwithstanding CSX's suggestion that law of the case principles preclude reconsideration, there is either no "law of the case" on this issue for the Court to reconsider, or the Court's prior ruling is properly deemed "tentative," rendering law of the case principles largely inapplicable.

In summary, regardless of whether the Court interprets Defendants' pending motion as a Rule 12(c) pre-trial motion, a Rule 12(b)(6) motion filed at the outset of trial, or a motion to reconsider the Court's recent summary judgment ruling, the Court has authority to reach the merits.

### III. DISCUSSION – 15 U.S.C. § 26

#### A. Statutory Interpretation Principles

Having determined that Defendants' motion is procedurally proper, the Court turns to its merits. Defendants argue that dismissal of CSX's <u>federal</u> antitrust injunctive relief claims is required because Section 16 of the Clayton Act — the very provision that creates a private cause of action for federal antitrust injunctive relief — deprives a district court of its authority to grant such relief if the defendant is a "common carrier subject to the jurisdiction of the Surface Transportation Board under

subtitle IV of title 49, United States Code." 15 U.S.C. § 26. Defendants highlight the notable difference between the language of the current version of § 26 and the version in force before Congress passed the Interstate Commerce Commission Termination Act (the "ICCTA"). Prior to the passage of the ICCTA in 1995, the Interstate Commerce Commission (the "ICC") served as the regulator for rail carriers, among other industries, as part of one of the "most pervasive and comprehensive of federal regulatory schemes." Chi. & N.W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 318 (1981). The ICCTA abolished the ICC, established the STB to take its place, and made numerous updates to the regulatory scheme governing rail carriers. See ICC Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803, §§ 101-205 (Title I, abolishing the ICC and amending subtitle IV of Title 49 of the U.S. Code; and Title II, creating the STB). Title III of the ICCTA, titled "Conforming Amendments," sets forth a litany of changes to be made to other federal statutes to conform those statutes to the ICCTA. Many of these changes simply swapped out the term "Interstate Commerce Commission" in favor of the term "Surface Transportation Board." See generally id. §§ 301-408. Other changes, such as the change made to 15 U.S.C. § 26 (also known as Section 16 of the Clayton Act), included additional modifications. Id. § 318(3).

Defendants argue that under the pre-ICCTA version of 15 U.S.C. § 26, a district court was required to conduct "two inquiries to

determine whether injunctive relief is prohibited": (1) a "kind of defendant" inquiry; and (2) a "kind of relief" inquiry. ECF No. 573, at 8. Following the amendment of § 26 in 1995, Defendants contend that the only remaining inquiry is the "kind of defendant" inquiry. Id. This singular inquiry, Defendants suggest, requires the Court to ask: "Is the defendant a common carrier subject to the jurisdiction of the STB?" Id. In opposition, CSX argues that the current statutory language should be read no differently than the pre-ICCTA version of the statute because there is no indication in the legislative history that Congress intended to substantively change the statute in order to expand the "antitrust immunity available to common carriers." ECF No. 593, at 15. Instead, CSX asserts that the amended version of § 26 is "merely a condensed, and conforming, version of the pre-1995 language." Id. at 20.

To determine whether CSX "has a cause of action under" 15 U.S.C. § 26, this Court must examine the statute by "apply[ing] traditional principles of statutory interpretation." Lexmark Int'l, 572 U.S. at 128. "The starting point in discerning congressional intent is the existing statutory text . . . ." Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004) (Kennedy, J.) (internal citation omitted); see Niz-Chavez v. Garland, 141 S. Ct. 1474, 1480 (2021) (Gorsuch, J.) ("When called on to resolve a dispute over a statute's meaning, this Court normally seeks to afford the law's terms their ordinary meaning at the time Congress adopted

them."); Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S, 566 U.S. 399, 412 (2012) (Kagan, J., unanimous) ("We begin where all such inquiries must begin: with the language of the statute itself." (internal citations omitted)); Desert Palace, Inc. v. Costa, 539 U.S. 90, 98 (2003) (Thomas, J., unanimous) ("Our precedents make clear that the starting point for our analysis is the statutory text."); Am. Tobacco Co. v. Patterson, 456 U.S. 63, 68 (1982) (White, J.) ("As in all cases involving statutory construction, our starting point must be the language employed by Congress" (internal citations omitted). As this Court has previously stated, "when determining Congress's purpose in enacting — or amending — a particular statute, the statutory text is the best evidence of what Congress set out to change, but also what it resolved to leave alone." World Fuel Servs. Trading, DMCC v. M/V HEBEI SHIJIAZHUANG, 12 F. Supp. 3d 792, 806 (E.D. Va. 2014) (citing W. Va. Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 98 (1991)) (cleaned up). It is therefore ordinarily appropriate to assume, "absent a clearly expressed legislative intention to the contrary, that the legislative purpose is expressed by the ordinary meaning of the words used." Jam v. Int'l Fin. Corp., 139 S. Ct. 759, 769 (2019) (Roberts, C.J.) (quoting Am. Tobacco Co. v. Patterson, 456 U.S. 63, 68 (1982)) (cleaned up).

Reliance on legislative history as an interpretive tool is only appropriate where the statutory language, along with "all the

textual and structural clues," Niz-Chavez, 141 S. Ct. at 1480,
render the statute ambiguous as written, Toibb v. Radloff, 501
U.S. 157, 162 (1991) (Blackmun, J.) ("Where, as here, the
resolution of a question of federal law turns on a statute and the
intention of Congress, we look first to the statutory language and
then to the legislative history if the statutory language is
unclear." (quoting Blum v. Stenson, 465 U.S. 886, 896 (1984))).
The rule that "reference to legislative history is inappropriate
when the text of the statute is unambiguous," Dep't of Housing &
Urban Dev. v. Rucker, 535 U.S. 125, 132 (2002) (Rehnquist, C.J.,
unanimous), persists even in the face of legislative history that
is contrary to the statute's clear meaning, see Ratzlaf v. United
States, 510 U.S. 135, 147-48 (1994) (Ginsburg, J.) (noting that
even when the Court acknowledges some "contrary indications in [a]
statute's legislative history," the Court "do[es] not resort to
legislative history to cloud a statutory text that is clear").

### B. Textual Analysis

Here, the Court's statutory analysis begins with the current
text of 15 U.S.C. § 26, Lamie, 540 U.S. at 534, which states in
relevant part:

> Any person, firm, corporation, or association shall be
> entitled to sue for and have injunctive relief, in any
> court of the United States having jurisdiction over the
> parties . . . [p]rovided[] [t]hat nothing herein
> contained shall be construed to entitle any person,
> firm, corporation, or association, except the United
> States, to bring suit for injunctive relief against any
> common carrier subject to the jurisdiction of the

<u>Surface Transportation Board under subtitle IV of Title
49</u>.

15 U.S.C. § 26 (emphasis added). A plain reading of this text
leaves scant room for interpretation. The statute provides a
<u>private cause of action</u> to seek injunctive relief for a federal
antitrust violation <u>except</u> when the defendant is a <u>common carrier
subject to the STB's jurisdiction</u>. Here, there is no question
that CSX is a private party that does not represent the United
States. Neither can there be any question that NSR and NPBL are
common carriers subject to the STB's jurisdiction. Accordingly,
under the plain language of the statute, this Court cannot award
CSX the federal antitrust injunctive remedy that it seeks.

Hoping to preserve the effect of the now-superseded version
of the statute, CSX urges the Court to focus on the statutory
language at the end of the common carrier exception. CSX contends
that the word "under" in the phrase "subject to the jurisdiction
of the Surface Transportation Board under subtitle IV of Title 49"
should be read to provide that private party injunctive relief is
unavailable <u>only</u> with respect to matters "within [the STB's] areas
of regulatory authority." ECF No. 593, at 16. However, that is
not the plainest reading of that statutory phrase. Instead, the
language at the end of the exception reads more naturally as
instructing where to look to determine if the putative defendant
is the type of "common carrier" that is exempt from private party
suits. In other words, the phrase says, if subtitle IV of Title

17

49 reveals that the defendant is a common carrier subject to STB authority, then only the United States can bring a claim for injunctive relief against that entity.  The phrase does not, as CSX suggests, delimit the type of matters that can be the subject of a cause of action filed by a private party; rather, it delimits the type of parties that face exposure to a private action seeking injunctive relief.

It is for this reason that CSX's continued reliance on Georgia v. Penn. R.R. Co., 324 U.S. 439 (1945), is misplaced.  In Georgia, the Supreme Court interpreted the pre-ICCTA version of 15 U.S.C. § 26, which stated, in relevant part:

> [N]othing herein contained shall be construed to entitle any person, firm, or association, except the United States, to bring suit in equity for injunctive relief against any common carrier subject to the provisions of the Act to regulate commerce, approved February fourth, eighteen hundred and eighty-seven, in respect of any matter subject to the regulation, supervision, or other jurisdiction of the Interstate Commerce Commission.

15 U.S.C. § 26 (amended 1995) (emphasis added).  Relying on the pre-1995 statutory language that no longer exists, the Supreme Court held that injunctive relief against the rail carrier defendants was not barred because the relief sought by the plaintiff was "not a matter subject to the jurisdiction of the [ICC]."  Id. at 455 (emphasis added).  This analysis, however, does not speak to the current statutory text, which no longer limits the bar on private actions to matters that are subject to the jurisdiction of the STB.  Although CSX argues that the current

18

language is subject to the same interpretive scope as the version of the statute analyzed in Georgia, the plain language of the statute cannot support that conclusion. To conclude that the Georgia Court's analysis applies with equal force today requires concluding that, despite altering 15 U.S.C. § 26 to remove that language, Congress intended to preserve the functionality of the omitted clause. While it remains possible that Congress had such subjective intent, it is for Congress, not this Court, to rewrite § 26 to ensure that the objective statutory language achieves that end.

CSX's interpretation of the current statutory language effectively would require this Court to read additional language into § 26, such that it would say: "for injunctive relief against any common carrier with respect to matters subject to the jurisdiction of the Surface Transportation Board"; or alternatively, "for injunctive relief against any common carrier to the extent it is subject to the jurisdiction of the STB." But as the Supreme Court has explained, federal courts do not "usually read into statutes words that aren't there." Romag Fasteners, Inc. v. Fossil, Inc., 140 S. Ct. 1492, 1495 (2020). The federal judiciary, as a separate branch of government, must be "doubly careful" to avoid the temptation of reading words into a statute that change its meaning "when Congress has [] included the term in question elsewhere in the very same statutory provision." Id.

The <u>Romag Fasteners</u> logic supporting the need for elevated caution also applies in this case.  Here, not only does CSX's position require reading additional words into 15 U.S.C. § 26, but it also requires the Court to ignore the manner in which Congress modified the law when it abolished the ICC and established the STB.  Notably, elsewhere in the ICCTA's conforming amendments, Congress simply swapped in the phrase "Surface Transportation Board" where the statutes previously read "Interstate Commerce Commission."  <u>See</u> ICC Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803, §§ 301-340 (Title III — Conforming Amendments). In fact, Congress did just that in amending a <u>different section of the Clayton Act</u>.  <u>Id.</u> § 318(1)(A) (replacing ICC with STB in § 7 of the Clayton Act).  In obvious contrast to such straight swaps, Congress modified 15 U.S.C. § 26 by rephrasing and restructuring its articulation of the class of cases for which no private cause of action exists.  Though, as CSX asserts, it remains possible that Congress merely intended to streamline the statutory phrasing without changing the provision's meaning, this Court is loath to make that speculative assumption in light of the clarity of Congress's chosen words, particularly when the change is viewed against the backdrop of the other 1-for-1 substitutions in Title III of the ICCTA.  <u>See</u> <u>Lamie</u>, 540 U.S. at 534 ("The starting point in discerning congressional intent is the existing statutory text <u>and not the predecessor statutes</u>.  It is well established that

'when the statute's language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms.'" (emphasis added) (quoting <u>Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.</u>, 530 U.S. 1, 6 (2000)) (other internal citation omitted)).

### C. Legislative History

CSX seeks to further support its interpretation of § 26 by emphasizing the legislative history behind the 1995 ICCTA. However, as described in detail above, legislative history is only useful when it helps to clarify <u>ambiguous statutory text</u>. <u>Toibb</u>, 501 U.S. at 162. Congress, the branch of our government responsible for codifying federal causes of action, elected to strike some of the preexisting language in § 26 and the updated provision uses clear and plain words to codify a broad ban on private injunctive actions. As explained below, the limited legislative history behind the ICCTA creates, rather than resolves, ambiguity. <u>See</u> <u>Azar v. Allina Health Servs.</u>, 139 S. Ct. 1804, 1814 (2019) ("Unable to muster support for its position in the statutory text or structure, the government encourages us to . . . follow it into the legislative history lurking behind the Medicare Act. But legislative history is not the law. And even those of us who believe that clear legislative history can

illuminate ambiguous text won't allow ambiguous legislative history to muddy clear statutory language.") (cleaned up).

As CSX underscores, there is a dearth of record evidence regarding Congress's intent in altering the words of 15 U.S.C. § 26, leading CSX to argue that Congress must not have intended to substantively alter the statute's scope. While this is a plausible theory, it could just as easily suggest that Congress thought that an explanation was unnecessary in light of both the language's clarity and the overall purpose of the ICCTA (railroad deregulation). The Court will not infer Congressional intent from the absence of Congressional comment in the face of clear statutory text.[7] Moreover, the Court's review of the limited legislative history that does exist shows that the legislative history might hurt, rather than help, CSX.[8]

Similarly, considering the policy behind the 1995 amendments also offers no obvious support for CSX's position. As CSX underscores, a professed purpose of the ICCTA was to facilitate

---

[7] Similarly, the Court must "not ask whether in [its] judgment Congress should have authorized [a particular cause of action], but whether Congress in fact did so." Lexmark Int'l, 572 U.S. at 128. This inquiry leaves no room for the Court to "apply its independent policy judgment to recognize a cause of action that Congress has denied." Id.

[8] See S. Rept. 104-176 - INTERSTATE COMMERCE COMMISSION SUNSET ACT OF 1995, S. Rept. 104-176, 104th Cong., at 51 (1995), https://www.congress.gov/congressional-report/104th-congress/senate-report/176/1. ("Sec. 506. Clayton Act — This section would amend 3 provisions of the Clayton Act to substitute the Board for the ICC. The affected sections are 15 U.S.C. 18 (which exempts ICC-approved mergers and acquisitions from the antitrust laws), 21 (which authorizes the ICC to enforce provisions of the Clayton Act), and 26 (which precludes private enforcement of the antitrust laws against regulated carriers).") (emphasis added).

railroad deregulation.  See ECF No. 593, at 3-4, 18.  To further
that goal, the ICCTA sought generally to consolidate railroad
regulatory power into the hands of the STB, limiting the reach of
local, state, and even other federal laws.  See Iowa, Chicago & E.
R.R. Corp. v. Washington Cnty., Iowa, 384 F.3d 557, 559 (8th Cir.
2004) (The "ICCTA repealed much of the economic regulation
previously conducted by the ICC and by state railroad regulators
working in conjunction with the ICC. In so doing, Congress
recognized that continuing state regulation — of intrastate rail
rates, for example — would 'risk the balkanization and subversion
of the Federal scheme of minimal regulation for this intrinsically
interstate form of transportation.'" (quoting H.R. REP. NO. 104-
311, at 96, reprinted in 1995 U.S.C.C.A.N. 793, 808)); Island Park,
LLC v. CSX Transp., 559 F.3d 96, 102 (2d Cir. 2009) (same).

The goal of consolidating regulatory authority in the STB
arguably undercuts CSX's assertion that eliminating private
injunctive actions against carriers subject to the STB's
jurisdiction would represent a counter-intuitive "dramatic
expansion of antitrust immunity" that was "buried" in the ICCTA.
ECF No. 593, at 18. As an initial matter, 15 U.S.C. § 26 does not
confer antitrust "immunity" from injunctions because the antitrust
laws continue to apply to rail carriers, with the United States
serving as the ultimate backstop.  If an STB-regulated common
carrier commits ongoing antitrust violations of sufficient public

concern, the Department of Justice retains its ability under § 26 to secure an injunction ending the antitrust violation. Second, narrowing the field of people who can bring injunctive relief claims against the railroad industry — claims that, by their nature require courts to order rail carriers to take certain actions — seems consistent with the ICCTA's deregulatory purpose because it limits rail carriers' exposure to regulation by court-ordered injunction.[9] Third, it is important to remember that § 26 only governs injunctive relief. Private enforcement actions seeking damages for antitrust violations remain available under a different section of the Clayton Act that contains no common carrier exception. See 15 U.S.C. § 15. Accordingly, at best, the record demonstrates that there are two reasonable sides to the policy dispute. See Niz-Chavez, 141 S. Ct. at 1486 ("As usual, there are (at least) two sides to the policy questions before [the Court]; a rational Congress could reach the policy judgment the statutory text suggests it did; and no amount of policy-talk can overcome a plain statutory command.").

---

[9] CSX argues that it cannot be the case that "a private litigant may never obtain injunctive relief in a federal antitrust case against a common carrier subject to the jurisdiction of the STB, regardless of whether that injunctive relief has anything to do with the STB's sphere of regulation." ECF No. 593, at 15 (emphasis in original). That, however, is just what the statute says; the text is not facially ambiguous. Moreover, that concern does not apply here as the subject matter of this case is clearly related to the STB's sphere of regulations.

Finally, more recent legislative activity provides further support for the Court's reading of the statute's plain language. As Defendants highlight, congressional bills in 2008, 2011, and 2013 sought to eliminate what the bills' proponents saw as a rail carrier "carve-out" under federal antitrust law. See ECF No. 573, at 9-10;[10] ECF No. 601, at 4 (quoting the 2008 draft amendment package, as included in a report from the House Judiciary Committee, as stating that "[u]nder current law, section 16 [of the Clayton Act] exempts common carriers subject to the jurisdiction of the STB from suit for injunctive relief by anyone except the United States").[11]   Though this Court does not infer anything about Congress's intent in 1995 from legislative proposals or legislative comments made in subsequent years, see Oscar Mayer & Co. v. Evans, 441 U.S. 750, 758 (1979) (cautioning against undue reliance on statements made by Congress years after

---

[10] While these three bills all failed, legislating is a complicated process, and there is therefore no valid inference to be drawn from the fact that the bills were not passed.

[11] Cf. Markup of H.R. 4279, the Prioritizing Resources and Organization for Intellectual Property Act of 2008 . . . H.R. 1650, the Railroad Antitrust Enforcement Act of 2007 . . . . 110th Cong., at 48 (2008) (statement of Rep. Henry "Hank" Johnson, Member, H. Comm. On the Judiciary) ("After listening to Ranking Member Smith's remarks, I am concerned about section 2 of this act which would change section 16 of the Clayton Act, which provides that only the Federal Government may file suit for injunctive relief against any common carrier subject to the STB's jurisdiction, and it would give private individuals or private plaintiffs filing civil antitrust suits the right to obtain injunctive relief."); Id. (statement of Rep. Tammy Baldwin, Member, H. Comm. On the Judiciary) ("Currently, freight rail has enjoyed an exemption from a wide array of antitrust laws.  Antitrust laws generally have public enforcement and private enforcement.  This would give actors aggrieved by anticompetitive practices a private right to assert that grievance and have enforcement with injunctions.").

a law was passed), the fact that Members of Congress have repeatedly expressed an understanding of the current version of 15 U.S.C. § 26 that comports with this Court's view provides further support for the Court's finding that § 26 means what it says.[12]

Of course, none of this legislative analysis or policy analysis is necessary here. The Court highlights it only to explain why CSX's legislative history arguments, which seek to derive the statute's meaning from what the enacting Congress did not say, are unavailing even if considered substantively. This issue can be, should be, and indeed *is* settled based on the statutory text alone. That text hardly could be clearer: private parties (like CSX) cannot obtain injunctive relief for federal antitrust claims (like those alleged here) against STB-regulated common carriers (like NSR and NPBL). Therefore, the Court finds that CSX cannot maintain its remaining federal antitrust claims for injunctive relief against NSR and NPBL. This ruling does not render Defendants "immune" from federal antitrust law, or even federal antitrust injunctive remedies. Rather, Defendants remain

---

[12] In addition to Congress's post-ICCTA comments, another federal district judge has held that the current version of 15 U.S.C. § 26 precludes a private cause of action seeking injunctive relief against a common carrier subject to the STB's jurisdiction. Truck-Rail Handling Inc. v. BNSF Ry. Co., No. C 02-02825 JSW, 2005 WL 8178364, at *4 n.5 (N.D. Cal. Mar. 8, 2005). There, neither party had raised the issue, and the court succinctly addressed § 26 in a single footnote; but the fact that the district judge apparently viewed the statutory language as sufficiently clear on its face to support a sua sponte ruling further supports this Court's interpretation of the statutory language. Stated differently, if the statutory history and familiarity with the Georgia case are what arguably create an interpretive dilemma, but the face of the current statute is clear and reveals no dilemma, the proper course is to apply the statute as written.

subject to the threat of private actions seeking treble damages for federal antitrust violations and to the threat of an injunction in a case filed by the United States.[13]

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion seeking dismissal of CSX's federal antitrust injunctive relief claims are **GRANTED**.   ECF Nos. 572, 574.   As the legal viability of any remaining state law claim seeking injunctive relief is an open question, the Court anticipates setting a briefing schedule for this issue at the February status conference or earlier upon joint request from the parties.   The bench trial on any remaining state law claims seeking injunctive relief has been continued at the joint request of the parties.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ Mark S. Davis

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
January 27, 2023

---

[13] To the extent that the thrust of the instant lawsuit is NSR's purported improper "control" over NPBL, Defendants may also be subject to federal oversight and certain injunctive remedies as imposed by the STB.