**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | | |
|---|---|---|
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-cv-530 |
| | ) | |
| NORFOLK SOUTHERN RAILWAY | ) | |
| COMPANY, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**NORFOLK SOUTHERN RAILWAY COMPANY'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**
**ANY REMAINING CLAIM AND REQUESTED RELIEF**

Defendant Norfolk Southern Railway Company ("NS"), by counsel and pursuant to Fed. R. Civ. P. 12(c), submits this memorandum in support of its Motion to Dismiss any remaining claim and requested relief of Plaintiff CSX Transportation, Inc. ("CSX") in this case, including any request for injunctive relief under state law.

## INTRODUCTION

This case is ripe for entry of a final order dismissing this case with prejudice.

As a result of prior rulings, CSX's federal antitrust claims, as well as CSX's request for injunctive relief under antitrust law, have been dismissed with prejudice. And CSX's state law claims have been dismissed on multiple overlapping grounds including: the lack of evidence of damages (all conduct); the statute of limitations (conduct occurring before 2013); lack of evidence of conspiracy (as to 2015, 2016 and 2018 conduct); and lack of evidence of breach of contract (as to 2016 and 2018 conduct).

1

At the January 18, 2023 hearing, the Court questioned whether anything is left in this case, including whether any "state law injunctive relief claims" remain and, if they do, whether they are "viable." Tr. 32:4-11.  After hearing argument, the Court advised the parties that its summary judgment ruling had not explicitly addressed CSX's requests for injunctive relief because the issue had not been squarely presented to the Court.  Tr. 77:11-12, 18-21.  The Court again raised the question whether any "state law injunctive claim" is "viable."  Tr. 77:12-14.  *See also* ECF No. 613, at 27 (anticipating a briefing schedule "[a]s [to] the legal viability of any remaining state law claim seeking injunctive relief").

The answer to the Court's questions is "no."  Because CSX's state law claims have been dismissed, CSX cannot obtain any relief under the claims, injunctive or otherwise.  And even if the state law claims remained, the Court cannot grant the injunctive relief sought by CSX as a matter of law for a plethora of reasons discussed herein, including because the relief is clearly preempted under federal law.

NS respectfully requests that the Court grant this Motion and dismiss this case with prejudice.

## <u>PROCEDURAL HISTORY</u>

In its September 9, 2019 Opinion and Order (ECF No. 66), the Court dismissed CSX's claim for tortious interference (Count VII), and CSX did not seek to refile that claim.  In 2020, CSX voluntarily dismissed its derivative claims (Count VI).  *See* ECF Nos. 143, 159.  In its January 3, 2023 Order and Opinion (ECF No. 559) (the "Summ. J. Op."), the Court dismissed CSX's claim for damages under its federal antitrust claims (Counts I, II, III and IV).  The Court also dismissed as time-barred CSX's state-law conspiracy claims (Counts VIII and IX) that were based on pre-

2013 conduct, *id.* at 98, and it dismissed CSX's state-law conspiracy claims that were based on post-2013 conduct because they "fail[ed] based on the record evidence." *Id.* at 97-98.

As to CSX's last count, its state-law breach of contract claim (Count V), the Court found that NS was entitled to summary judgment "as a matter of law with respect to the breach of contract claims because the underlying allegations are time-barred and/or are unsupported by record evidence as a matter of law." *Id.* at 103. More specifically, all claims based on the alleged pre-2013 conduct were time-barred. *Id.* at 99. As to the claims based on alleged conduct in 2018, the Court ruled that CSX could not show a breach of contract as a matter of law because a factfinder "could not conclude that NSR violated any legally enforceable obligation owed to CSX." *Id.* at 100. As to claims based on alleged conduct in 2016, the Court held that the alleged conduct "cannot support CSX's contract claim because CSX fails to allege a breach or resulting damages." *Id.* at 101. Finally, as to the claims based on the alleged 2015 conduct, the Court held that even assuming that CSX could show that "NSR breached an enforceable obligation to 'co-operate cordially' by obstructing CSX's rail access to NIT in 2015, this breach of contract claim nonetheless fails as a matter of law because CSX's discovery responses did not advance a damages theory based on this harm, which is ancillary to CSX's sole damages theory." *Id.* at 102.

In sum, with respect to CSX's contract claims based on NS's alleged actions in 2015, 2016, or 2018, the Court found that "CSX cannot sustain its breach of contract claim based on these recent acts because *none of the alleged breaches can satisfy all required elements of a Virginia breach of contract claim*…." *Id.* at 99 (emphasis added).

Finally, in its January 27, 2023 Opinion and Order (ECF No. 613), the Court dismissed CSX's claim under 15 U.S.C. § 26 for injunctive relief for antitrust violations. The Court explained

that it was an "open question" "[a]s [to] the legal viability of any remaining state law claim seeking injunctive relief." *Id*. at 27.

## THE INJUNCTIVE RELIEF REQUESTED BY CSX

In its Motion for Injunctive Relief and Proposed Findings of Fact and Conclusions of Law (ECF No. 592), CSX set forth the two basic forms of injunctive relief it is seeking in this case: (a) enjoining NS from "conspiring" with Defendant Norfolk & Portsmouth Belt Line Railway Company ("NPBL") in various ways, including by preventing NS involvement in NPBL's rate setting; and (b) ordering that "NPBL shall have two (2) independent Board members and independent senior management, not formerly employed or affiliated with NS or CSX, and any future rate or service proposal for rail access to NIT will be submitted to, evaluated, and decided by individuals without interests in either NS or CSX." ECF No. 592, at 46-47.

During the January 18, 2023 hearing, CSX's counsel further clarified the injunctive relief it is seeking:

> [W]e have presented in our filing last week to the Court, I think, an injunction that bars prospective conduct, so that the Court -- and also at the same time, our other guide post, Your Honor, was not to trench on the STB's jurisdiction.
>
> So we didn't ask the Court to separate -- we didn't ask the Court to adjudicate traffic rights, we didn't ask the Court to say when trains can move or not move. We're not asking for that.
>
> What we're asking for is barring them from engaging in anticompetitive conspiratorial conduct going forward, because that's what led to this, and then putting an independent board -- which the Court has, I think, entertained in its prior rulings -- putting an independent board in and let our proposal rise and fall on its merits with that independent board.
>
> Then the Court doesn't have to worry about it. If our proposal is bad, then it won't be accepted. If our proposal is good for the Belt Line, then it will be accepted. And a[n] independent Belt Line can make decisions that are best for the independent Belt Line. We're not asking the Court to decide what the right rate is. And so that's how we've presented that injunction.

Tr. 44-45.[1]

In sum, CSX is seeking, under state law, an injunction limiting NS's involvement with NPBL, which is to "in essence, equitably modify the balance of power at NPBL …." Summ. J. Op. 83-84.

## LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides: "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." *Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). "Therefore, a motion for judgment on the pleadings 'is designed to provide a means of disposing cases when the material facts are not in dispute between the parties.'" *Trustees of Columbia Univ. v. Nortonlifelock, Inc.*, 3:13cv808, 2021 U.S. Dist. LEXIS 259261 at *3 (E.D. Va. 2021).

"[P]ractical concerns … require that plaintiffs meet a heavy burden before being granted injunctive relief. In many cases, . . . an injunction risks awarding more relief than is merited." *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 385 (4th Cir. 2017).

## ARGUMENT

I.    **Because CSX's state law causes of action failed as a matter of law, an injunction cannot be granted as a remedy.**

It is well-settled that "[i]njunctive relief is a remedy, not a cause of action." *Blankenship v. Consolidated Coal Co.*, 850 F.3d 630, 640 (4th Cir. 2017). *See also Brainchild Surgical Devices, LLC v. CPA Global, Ltd.*, Civil Action No. 1:21-cv-554, 2022 U.S. Dist. LEXIS 61759,

---

[1]  Based on its Motion for Injunctive Relief and Proposed Findings of Fact and Conclusions of Law, as well as these statements to the Court, CSX is no longer seeking an injunction directing "that NPBL approve CSXT's Service Proposal." *See* ECF No. 1 at 40.

at *13-14 (E.D. Va. March 31, 2022) (holding that injunctive relief is a remedy, not a claim or a cause of action under Virginia law); *Oros, Inc. v. Dajani*, Civil Action No. 1:19-cv-351, 2019 U.S. Dist. LEXIS 93562, *14 (E.D. Va. June 4, 2019) ("An injunction is a remedy, not an independently cognizable cause of action.").

Accordingly, when the state law claims underlying a request for injunctive relief are dismissed, injunctive relief is unavailable.[2]  The Fourth Circuit addressed a similar situation in *Blankenship*, in which the plaintiffs asserted claims for trespass, nuisance, negligence, and related torts under Virginia law.  The defendants moved for summary judgment on the grounds that the statute of limitations barred the claims.  *See Blankenship*, 850 F.3d at 634.  The lower court agreed and granted summary judgment to the defendants.  *Id.*  In affirming the trial court, the Fourth Circuit addressed the plaintiffs' additional challenge to the trial court's denial of their request for injunctive relief.  The Court held: "Because, however, the causes of action *that provide the basis for any claimed relief* are barred, the plaintiffs' request for injunctive relief is also barred. Injunctive relief is a remedy, not a cause of action."  *Id.* at 640 (emphasis added).

Similarly, here CSX's state law claims for breach of contract and conspiracy were dismissed as time-barred and/or unsupported by record evidence as a matter of law.  *See* Summ. J. Op. at 97-103.[3]  Accordingly, *remedies* are not available under CSX's already dismissed state law claims, including the remedy of injunctive relief.

---

[2]  As the Court has recognized, unlike under antitrust law, there is no separate statute or law supporting an independent state law "injunctive remedy claim."  Summ. J. Op. 103 n.46 (observing that "it does not appear that a state law injunctive remedy claim could remain viable in this case, in contrast to CSX's federal antitrust claims").

[3]  The Fourth Circuit has held that the dismissal of a claim on statute of limitations grounds is a dismissal on the merits.  *See Shoup v. Bell & Howell Co.*, 872 F.2d 1178, 1180-1181 (4th Cir. 1989) ("We cannot accept appellees' contention that a dismissal on statute of limitations grounds is, like a dismissal for failure to file an affidavit of good cause, a dismissal for lack of jurisdiction,

## II.     CSX's request for an injunction under state law is preempted.

Both aspects of CSX's requested injunctive relief are explicitly designed to limit the ability of NS, as a majority shareholder of NPBL, to be involved in the management of NPBL.  CSX seeks an injunction prohibiting NS employees – including those lawfully appointed to the NPBL board of directors – from being involved in NPBL's consideration of a rate proposal from CSX. CSX also seeks an injunction to require an independent board and management of NPBL.  This injunctive relief clearly trenches on the exclusive jurisdiction of the STB over matters related to control of one railroad over another.   Therefore, the requested injunctive relief is plainly preempted.

At the beginning of Subchapter II of the statutes governing the STB, Congress stated: "The authority of the Board under this subchapter is exclusive."  49 U.S. § 11321(a).  In that Subchapter II, the STB is then given jurisdiction over "[a]cquisition of control of a rail carrier by any number of rail carriers."  49 U.S.C. § 11323(a)(3).  The Supreme Court has "construed this language to encompass every type of control in fact." *Gilbertville Trucking Co. v. United States*, 371 U.S. 115, 122 (1962).  Accordingly, under the plain language of § 11321(a), NS's rights as a majority shareholder to be involved in NPBL's management in any manner is squarely within the "exclusive" authority of the STB.   *See id.* ("[Section 11321(a) is] part of a comprehensive legislative scheme designed to place ownership, management, and operational control over common carriers within the regulatory jurisdiction of the [Interstate Commerce] Commission [now STB].").  Based on a straightforward application § 11321(a), it has been held that preemption

---

and thus not a final adjudication on the merits."); *Katz v. Holland & Knight LLP*, 1:09cv1106, 2010 U.S. Dist. LEXIS 1691, *3 (E.D. Va. Jan. 8, 2010) ("Importantly, the Fourth Circuit has expressly held that a dismissal on statute of limitations grounds is an adjudication on the merits.") (citing *Shoup*).

precludes a court from enjoining one railroad from voting its stock in another railroad, based on allegations of past misuse of control powers and fears of future misconduct.  *See Weston v. Reading Co.*, 445 Pa. 182, 203 (1971) ("Appellants also later seek a decree enjoining the C & O and B & O from voting their respective Reading shares. In effect, such a decree would divest the C & O—B & O system of its Reading control and transfer the control to appellants or other shareholders. This judicial tampering with interlocking railroad systems would be wholly inappropriate at this juncture.").  Instead, such issues are vested in the exclusive jurisdiction of the STB.

Indeed, the STB expressed its exclusive jurisdiction over the control of NPBL in its June 17, 2022 Order.  Notwithstanding CSX's consent to NS's ability to appoint three directors to the NPBL board as memorialized in the 1989 contract, which amended NPBL's Operating Agreement, the STB made it clear that the ultimate issue of NS's right to control is subject to STB's oversight:

> The Board is concerned, however, about the possibility that the parties may have been aware of a potential defect regarding NSR's control of NPBL for some time and did not seek to remedy it or otherwise bring it to the Board's attention. The Board expects stakeholders to bring such matters before the Board expeditiously and reminds the parties that a knowing violation of the Board's requirements can result in the imposition of civil penalties, and that, for certain violations, such penalties may be imposed for each day that the violation continues.  See 49 U.S.C. § 11901(a).

*Norfolk Southern Railway Company – Petition for Declaratory Order*, Dkt. No. FD 36522 (STB served June 17, 2022), Slip Op. 17, n.25.  Just as NS's control of NPBL is within the exclusive jurisdiction of the STB, so also would be a change in that control.

The Fourth Circuit's analysis in *Edwards v. CSX Transportation, Inc.*, 983 F.3d 112 (4th Cir. 2020), also makes clear that CSX's requested injunctive relief is preempted.  In *Edwards*, the plaintiffs alleged that CSX had breached a contract to allow a city to take emergency flood-control measures that would result in temporary closure of CSX's track.  The plaintiffs asserted that CSX breached the contract and committed actionable torts by refusing to permit the track closure, which

resulted in "catastrophic" flooding affecting thousands of homes and residents. *CSX* argued that the state law tort claims were preempted based on the STB's exclusive jurisdiction to manage rail operations. The Fourth Circuit agreed and held that the plaintiffs' tort claims were preempted because "it is hard to view their claims as anything other than direct attempts to 'regulate' railroading." *Id*. at 122. Although the Fourth Circuit did not reach whether the plaintiff's contract claims were preempted, it observed that breach of contract claims can be preempted when the claim would have the "effect" of "unreasonable interference" with rail transportation. In making its observation, it cited *CSX Transp., Inc. v. City of Sebree*, 924 F.3d 276 (6th Cir. 2019), in which *CSX* successfully argued that a voluntary agreement specifying a maintenance method that had become outdated was deemed to unreasonably interfere with railroad operations and was, thus, preempted. *Id*. at 121 n.11.

While *Edwards* addressed preemption under a different provision of federal law granting STB exclusive jurisdiction, 49 U.S.C. § 10501(b), the analysis applies to preemption under § 11321(a) as well. Both statutes say that the STB has "exclusive" jurisdiction. Hence, both statutes raise issues of express and implied preemption under Congress's clear intent to grant the STB exclusive jurisdiction over the control of railroads subject to its jurisdiction, including NPBL. Under *Edwards*, CSX's request to change the control of NPBL is preempted because it would invade the STB's exclusive jurisdiction over the control of NPBL. *See Illinois Cent. R. Co. v. United States*, 263 F. Supp. 421, 428 (N.D. Ill. 1966), *aff'd*, 385 U.S. 457 (1967) (per curiam) ("The power of the [STB] to respond to conditions of illegal control is practically plenary under the Interstate Commerce Act.").

## III.    CSX's request for injunctive relief fails because "equity follows the law."

As set forth above, the Court's dismissal of CSX's state law claims as time-barred precludes granting injunctive relief under those claims. Injunctive relief is equally unavailable

under those claims because, as observed by the Court, "equity follows the law." *See* Tr. 32:22-24 (noting that, "if [equity follows the law], is there really anything left to proceed on as to the time-barred state law injunctive relief claims?"). *See, e.g.*, *E. Tenn. Natural Gas Co. v. Sage*, 361 F.3d 808, 823 (4th Cir. 2004) ("A federal court has the power to grant equitable relief, but this power is circumscribed by the venerable principle that 'equity follows the law.'") (citations omitted); *Kappa Sigma Fraternity, Inc. v. Kappa Sigma Fraternity*, 266 Va. 455, 467 (2003) ("It is a well-established principle uniformly acted upon by courts of equity, that in respect to the statute of limitations equity follows the law; and if a legal demand be asserted in equity which at law is barred by statute, it is equally barred in equity.").

The Fourth Circuit's decision in *Manotas v. Ocwen Loan Servicing, LLC*, 794 Fed. Appx. 259 (4th Cir. 2019), is instructive here. In *Manotas*, the plaintiff brought a claim for a breach of contract that occurred more than five years prior to suit seeking prospective relief – stopping the defendant from foreclosing on his property. The defendant argued that the statute of limitations barred the claim, but the plaintiff argued that the statute of limitations did not apply to their claim for prospective injunctive relief against the threatened foreclosure.

In siding with the defendant, the Fourth Circuit observed that "[u]nder Virginia law, it is well established that the form of litigation does not affect the analysis of the statute of limitations." *Id*. at 263. "Instead, '[t]he applicability of the statute of limitations is governed by the object of the litigation and the substance of the complaint, not the form in which the litigation is filed.'" *Id*. (quoting *Kappa Sigma Fraternity*, 266 Va. at 465). The Fourth Circuit observed that the plaintiff was relying on a time-barred breach of contract claim to seek injunctive relief, while he could have brought a timely action for nominal damages and declaratory relief to prevent the harm the Plaintiff now faced – a foreclosure. The Fourth Circuit held that the plaintiff's claim for injunctive relief

was "rooted in contract and [was] subject to Virginia's statute of limitations for breach of contract." *Id*. at 264.  Because the plaintiff filed his lawsuit after the five-year limitations period for breach of contract actions had expired, the Fourth Circuit held that his claim for "injunctive relief [was] barred by the statute of limitations."  *Id*. at 265.

Plainly, CSX's request for injunctive relief is rooted in its state-law claims alleging a *past* conspiracy and *past* breaches of contract for which CSX sought hundreds of millions of dollars in damages.  Those claims were primarily predicated on alleged conduct that occurred between 2009 and 2011 – well outside of the applicable limitations periods for those claims.  CSX could have brought timely claims based on the alleged conduct – or even sought relief from the STB[4] – but it instead waited at least seven years to do so.  As the Court already has ruled that the claims based on that conduct are time-barred, so too is any injunctive relief based on the conduct.  "'If the law were otherwise, the statute of limitations could be rendered meaningless merely by [seeking injunctive relief].'"  *Id*. at 263 (quoting *Board of Supervisors v. Thompson Assoc.*, 240 Va. 133, 139 (1990)).  *See also Belcher v. Kirkwood*, 238 Va. 430, 433 (1989) (holding that plaintiff could not escape the statute of limitations for her legal claim, breach of oral contract, by asserting the same claim as an equitable one, unjust enrichment); *Orantes v. Pollo Ranchero, Inc.*, 70 Va. Cir. 277, 280 (Fairfax 2006) (rejecting plaintiff's claim that because he sought injunctive relief laches, instead of the statute of limitations, should apply to his statutory conspiracy claim).[5]

---

[4]  *See* ECF No. 395, at 26 n.16 ("[I]t appears that CSX could have pursued a legal challenge to the reasonableness of the Belt Line switching rate in a proceeding before the STB for almost ten years before it filed suit.").

[5] The principle that "equity follows the law" is not addressed in any of the cases that CSX cites in support of its claim for injunctive relief under its state law claims.  *See* ECF No. 592 ¶ 40.

**IV.    CSX's requested injunctive relief is improper as a matter of law for a multitude of other reasons.**

    **A.    The requested relief will not redress the particular injury alleged.**

"As the Supreme Court has repeatedly cautioned, '[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury.'" *CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 262 (4th Cir. 2020), *reh'g en banc granted*, 981 F.3d 311 (4th Cir. 2020) (quoting *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018)).[6]  To the extent that CSX is relying on alleged harm caused by the alleged delay in NPBL's movement of its freight in 2015, CSX's requested injunctive relief will not redress that harm.  Causing NPBL to have an independent board of directors will have no effect on NPBL's operation of its trains over NS-owned track, which is governed by a trackage rights agreement between NPBL and NS and to which CSX is not a party.  *See In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 35 (D.D.C. 2008) (holding injunction prohibiting future "collusion" would not provide relief because it would have no effect on future damages plaintiffs expect to experience due to past injury).

---

[6] The importance of the connection between the alleged injury and the requested injunctive relief is evidenced by the constitutional redressability requirement, which dictates that the risked injury "is likely to be redressed by a favorable decision." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982); *Allen v. Wright*, 468 U.S. 737, 751 (1984), *abrogated on other grounds* (requiring that the injury is "likely to be redressed by the requested relief"); *accord City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (holding that a plaintiff lacked standing for injunctive relief); *Anderson v. Obama*, No. CIV. PJM 10-17, 2010 WL 3000765, at *2-3 (D. Md. July 28, 2010) (denying motion for preliminary injunction "because the Court lacks power to grant the requested relief" based on the reasoning that the "relief Plaintiffs seek is also nonredressable" since "[t]he Court has no jurisdiction to issue an injunction against the President in his official capacity and in the performance of non-ministerial actions"). Hence, the nature of a redressability inquiry "focuses . . . on whether the injury that a plaintiff alleges is likely to be redressed through the litigation." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 286-87, (2008) (citation omitted). To satisfy the redressability requirement, a plaintiff must establish that "it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit[]." *Id.* at 273-74 (cleaned up).

Likewise, CSX's requested injunctive relief is improper because it is predicated on what NPBL's board – as constituted in accordance with the 1989 contract – may do in the future if CSX were to make another rate proposal to NPBL.  As the Court recognized in its ruling on Summary Judgment, it is *entirely speculative* to assume that the NPBL board – or any new NPBL board – would act in any particular way in the future.  *See* Summ. J. Op. 72 n.27 ("CSX, for its part, speculates that the NPBL Board members appointed in 2018, would breach their fiduciary duties and restrain trade at the first opportunity.").  CSX is not entitled to injunctive relief based on its fear of what *might* happen someday.  *Bhd. of Ry. & Airline Clerks, Consol. Sys. Bd. of Adjustment 46 v. Burlington N. Inc.*, 513 F. Supp. 1023, 1027 (D. Minn. 1981) ("If the Court issued an injunction based on this fear it would act as a seer or soothsayer.").

## B.    CSX has an adequate remedy at law.

To obtain equitable relief, CSX must show that it has no adequate remedy at law, *i.e.*, its harm cannot be compensated by money damages.  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  Where a plaintiff has expressed its harm in the form of monetary damages, it weighs against a finding that the harm is not compensable by money damages.  *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 386 (4th Cir. 2017); *Taleff v. Sw. Airlines Co.*, 828 F. Supp. 2d 1118, 1123 (N.D. Cal. 2011), *aff'd,* 554 F. App'x 598 (9th Cir. 2014) (holding that when the harm plaintiff alleged would result from a merger was expressed in terms of monetary damages, the court found that the plaintiff failed to demonstrate that it lacked an adequate remedy at law).

CSX cannot prove that money damages are inadequate to compensate it for any alleged future injury.  The record shows that the alleged harm CSX claims to have suffered due to its allegedly uneconomical access to NIT is adequately compensable via purported lost profit damages, which CSX's expert calculated, albeit in a legally improper method.  Further, CSX has an adequate remedy at law to compensate it for any alleged harm caused by any future operational

interference with the movement of CSX freight to NIT.  As shown by the Court's discussion of the 2015 train moves, CSX could have sought to recover the purported damages associated with the alleged short-term loss of business but chose not to.  *See* Summ. J. Op. 47-48 (holding CSX "waived the ability to recover" damages paid based on the elevated switch rate in 2015 or for damages due to "temporarily losing the business of a single customer for a few weeks in 2015").[7]

      **C.**    **An "obey the law" injunction is impermissible.**

As set forth above, CSX is seeking injunctive relief prohibiting Defendants from engaging in "anticompetitive conspiratorial conduct going forward."  This request is nothing more than a form of an "obey the law" injunction.

Unspecific "obey the law" injunctions "uniformly are found to violate the specificity requirement" of Fed. R. Civ. P. 65.  Wright & Miller § 2955, p. 361; *see also New York, N.H. & H.R. Co. v. Interstate Com. Comm'n*, 200 U.S. 361, 404 (1906) (observing that Congress did not give courts authority to enter injunction against defendant based on antitrust violation that would "command it in general terms not to violate the act in the future in any particular" so that the defendant "must thereafter conduct all its business under the jeopardy of punishment for contempt for violating a general injunction"); *Williams v. Recovery Sch. Dist.*, 859 F. Supp. 2d 824, 833 (E.D. La. 2012) (equitable claims that contain language such as "take all necessary steps" result in fatally overbroad injunction requests that cannot be enforced);[8] *MGM Studios, Inc. v. Grokster,*

---

[7]  As the Court also recognized, "even viewing the disputed facts and inferences in CSX's favor, there is simply no record evidence, direct or circumstantial, suggesting that any delay of a commercially unviable train in 2015 impacted CSX's ability to compete for international intermodal customer contracts at NIT."  Summ. J. Op. 47.

[8]  The *Williams* court also rejected the request for injunctive relief because the plaintiff had failed to state a claim upon which relief could be granted.  *See id.* ("Williams has not pleaded any viable claims of statutory violations.  Without a 'specific action,' Williams's request for injunctive relief must be dismissed.").

*Ltd.*, 518 F. Supp. 2d 1197, 1226 (C.D. Cal. 2007) (holding injunctions should be "coterminous" with injury and "narrowly tailored to fit the specific legal violations") (quoting *Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994)).

> **D.    The requested injunctive relief would violate Virginia's prohibition against courts rewriting contracts.**

As recognized by the Court, "NSR and CSX's 1989 contract revising the Operating Agreement gave NSR the explicit contractual right to appoint three of NPBL's directors."  Summ. J. Op. 100.  "NSR's decision to exercise this specific contractual right cannot form the basis of a breach of contract claim."  *Id.*

Notwithstanding the 1989 contract, CSX now seeks to have the Court require that the NPBL board be comprised of independent directors.  As an initial matter, it is axiomatic that if NS did not breach the Operating Agreement when it relied on the 1989 contract to reject CSX's corporate governance proposal – which essentially sought the same independent NPBL board – then there is simply no way that CSX could possibly be entitled to the requested injunctive relief. What is more, the requested injunctive relief effectively requires the Court to rewrite the 1989 contract – and thus the Operating Agreement – to require independent board members.

"Courts will not rewrite contracts; parties to a contract will be held to the terms upon which they agreed." *Am. Standard Homes Corp. v. Reinecke*, 245 Va. 113, 122 (1993) (citation omitted). Application of this prohibition is especially appropriate here, as the Court already ruled that NS did not breach the Operating Agreement when it relied on the 1989 contract.

Not only is CSX asking the Court to rewrite the 1989 contract, it is also asking the Court to specially enforce that new, judicially-created agreement going forward.  "A court cannot alter the terms of a contract and then enforce it; when specific performance is granted, the contract must conform substantially to the contract made by the parties." *Eascalco, Inc. v. Caulfield,* 220 Va.

475, 477 (1979).  Because the injunctive relief CSX seeks conflicts with the terms of the 1989

contract, CSX is not entitled to the relief as a matter of law.  *See Duke v. Tobin*, 198 Va. 758, 759

(1981) (denying specific performance because the court cannot make a contract for the parties);

*Weckesser v. Knight Enters. S.E., LLC*, 735 Fed. Appx. 816, 819 (4th Cir. 2018) ("A court 'has no

authority to rewrite a contract and impose unwanted obligations and terms under the guise of

specific performance or judicial construction.'") (quoting *Lowcountry Open Land Tr. v.

Charleston Southern Univ.*, 656 S.E.2d 775, 781 (S.C. 2008)); *Micro Data Base Sys. v. Nellcor

Puritan Bennett, Inc.*, 165 F.3d 1154, 1157 (9th Cir. 1999) ("An injunction affording Nellcor a

longer period would not serve as a remedy pending trial; it would instead rewrite the contract to

give Nellcor (much) greater rights than those for which it bargained.").

>    **E.    The "cordial cooperation" clause is too indefinite to order specific
>            performance.**

CSX characterizes its requested injunctive relief as seeking an injunction ordering NS to

comply with the cordial cooperation clause, but that provision of the Operating Agreement is too

vague and uncertain to be specifically enforced through specific performance.[9]  *See* ECF No. 592

¶ 65 (CSX contends that NS breached its obligation to "co-operate cordially in encouraging the

business of the [NPBL]"); Tr. 70:8-9.  At the January 18, 2023 hearing, the Court expressed

skepticism as to whether it could order specific performance of this "cordial cooperation" clause,

---

[9] NS does not concede that CSX brought an equitable claim for specific performance.  *See Denton
v. Browntown Valley Assocs., Inc.*, 294 Va. 76, 82 (2017) ("A suit in equity for specific
performance is distinct from an action at law for breach of contract.").  The term "specific
performance" is not mentioned in the Complaint.  Moreover, CSX's breach of contract count
identified only monetary harm resulting from the purported breach – namely a reduction in
revenues to the NPBL, thereby harming CSX as a shareholder, and a loss of potential business for
CSX. Compl. ¶ 108. As set forth here, there is an adequate remedy at law for the alleged breach,
making specific performance unavailable.  *Lanston Monotype Mach. Co. v. Times-Dispatch Co.*,
115 Va. 797, 805 (1914) (holding that unless the facts alleged in the complaint show that the
remedy at law is inadequate, a demurrer is properly sustained).

and rightly so.  *See* Tr. 34:1-4 ("And if the claim still exists and we're really just looking at specific performance, the question arises how would the Court order specific performance of that provision?").

Before using its discretion to award specific performance, the Court must be convinced that "the nature of the contract is such that specific enforcement of it will not involve too great practical difficulties."  *Thompson v. Commonwealth*, 197 Va. 208, 212-13 (1951).  A trial court should not grant specific performance "if it is impossible for the court to precisely define the specific actions to be performed or if the decree would necessarily be of the type whose enforcement would 'unreasonably tax the time, attention and resources of the court.'"  *Perel v. Brannan*, 267 Va. 691, 701 (2004) (quoting John Norton Pomeroy, *Pomeroy on Specific Performance of Contracts* § 307, at 393 (2d ed. 1897)).  *See also Columbia Gas Transmission LLC v. Ott*, 984 F. Supp. 2d 508, 516 (E.D. Va. 2013) ("[B]ecause an injunction is an extraordinary remedy, an injunction 'must be specific in its terms, and it must define the exact extent of its operation so that there may be compliance.'") (citation omitted).

"The same degree of certainty is not required in an action to recover damages for breach of contract as in a suit in equity for specific performance."  *McDaniel v. Daves*, 139 Va. 178, 190 (1924).  The contract to be specifically performed "ought not only to be proved, but the terms of it should be so precise, as that neither party could reasonably misunderstand them."  *Id.*  As explained by the Supreme Court of Virginia:

> A greater amount or degree of certainty is required in the terms of an agreement, which is to be specifically executed in equity, than is necessary in a contract which is to be the basis of an action at law for damages. An action at law is founded upon the mere nonperformance by the defendant, and this negative conclusion can often be established without determining all the terms of the agreement with exactness. The suit in equity is wholly an affirmative proceeding. The mere fact of nonperformance is not enough; its object is to procure a performance by the

defendant, and this demands a clear, definite and precise understanding of all the terms; they must be exactly ascertained before their performance can be enforced.

*Holtzman Oil Corp. v. Green Project, LLC*, No. 141863, 2016 WL 3208943, at *2–3 (Va. Apr. 21, 2016).

Put simply, the "cordial cooperation" clause is so indefinite as to make it impossible to particularize. *See Columbia Gas Transmission*, 984 F. Supp. 2d at 516 (holding that the term "encroachment" was so indefinite that the court could not fashion a sufficiently particularized injunction that adequately put defendant on notice of what objects were prohibited on the right of way). Nor can CSX rely on this "cordial cooperation" clause as a basis to obtain an injunction changing the composition of the NPBL board. The clause refers to "the business of the [NPBL]," not its corporate governance. Put another way, there is a yawning analytical gap between the clause and the requested injunctive relief. Furthermore, the Operating Agreement – as amended by the 1989 contract – speaks specifically to the composition of the NPBL board, and, as the Court has held, NS has the right to rely on the terms of the 1989 contract. Hence, the vague and indefinite "cordial cooperation" clause cannot be used to overcome the specific, enforceable terms of the 1989 contract. *See Appalachian Reg'l Healthcare v. Cunningham*, 294 Va. 363, 373 n.9 (2017) ("When two provisions of a contract conflict with one another, and one provision specifically addresses the dispute at hand while the other remains general, we have consistently held that the specific provision will govern over the general.").

**F.    The requested injunctive relief will result in the Court adjudicating the qualifications of NPBL board members.**

As stated, a court should not grant specific performance unless it is convinced that it is certain enough and enforceable by the Court "without too great practical difficulties." *Thompson*, 197 Va. at 212-13. Moreover, the Supreme Court of Virginia has "made it clear that the perceived impracticality of specific performance weighs against granting specific performance." *See*

*Holtzman Oil Corp. v. Green Project, LLC*, No. 141863, 2016 WL 3208943, at *4 (Va. Apr. 21, 2016); *see also* Restatement (Second) of Contracts § 366.

  The "great practical difficulties" created by CSX's requested injunctive relief are apparent. As the majority shareholder of NPBL, NS has the right to vote for nominees to serve as directors on the NPBL board, even if the nominees had to be independent.  If CSX disliked the nominees that NS is prepared to vote for, CSX could come back to court seeking an adjudication of whether, in the Court's view, a nominee is sufficiently independent or otherwise suitable to serve on the NPBL board.  In other words, the Court's involvement in the qualification and appointment of directors is a very real possibility if the requested injunctive relief is granted.

  "[F]ederal courts are 'ill suited' to dictate the terms of '[e]nforced sharing,' [of railroad tracks,] as it requires them 'to act as central planners, identifying the proper price, quantity, and other terms of dealing.'"  Summ. J. Op. 58-59 (quoting *Verizon Commc'ns Inc. v. L. Offs. Of Curtis V. Trinko*, 540 U.S. 398, 08 (2004)).  Likewise, a court is ill suited to dictate the terms of a nominee's qualifications to serve on the NPBL board, including resolving any dispute as to whether a nominee is sufficiently independent.  Accordingly, the injunctive relief requested by CSX is inappropriate.

## <u>CONCLUSION</u>

For the above reasons, NS requests that this Court grant this Motion and enter an Order dismissing this case with prejudice, entering final judgment in favor of NS on all claims, and granting all other appropriate relief.

Dated: February 7, 2023                      Respectfully submitted,

**NORFOLK SOUTHERN RAILWAY COMPANY**

<u>/s/ *Michael E. Lacy*</u>
Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
Massie P. Cooper (VSB No. 82510)
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-6061
Email: alan.wingfield@troutman.com
Email: michael.lacy@troutman.com
Email: massie.cooper@troutman.com

John C. Lynch (VSB No. 39267)
Kathleen M. Knudsen (VSB No. 90845)
TROUTMAN PEPPER HAMILTON SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA  23462
Telephone: (757) 687-7500
Facsimile: (757) 687-7510
Email: john.lynch@troutman.com
Email: kathleen.knudsen@troutman.com

Tara L. Reinhart
Thomas R. Gentry
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7000
tara.reinhart@skadden.com
thomas.gentry@skadden.com

*Attorneys for Norfolk Southern Railway Company*