IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**CSX TRANSPORTATION, INC.,**

   **Plaintiff,**

v.                Civil Action No. 2:18-cv-530-MSD-RJK

**NORFOLK SOUTHERN RAILWAY COMPANY,** *et al.***,**

   **Defendants.**

### NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY'S BRIEF IN SUPPORT OF ITS SUPPLEMENTAL MOTION TO DISMISS ALL CLAIMS FOR STATE LAW INJUNCTIVE RELIEF

Defendant Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line"), by counsel, pursuant to Rules 12(h)(2), 12(c), and alternatively 54(b), states as follows in support of its Supplemental Motion to Dismiss All Claims for State Law Injunctive Relief:

### Introduction

More than four years ago, CSX filed its Complaint against the Belt Line and NS asserting federal antitrust violations and state law conspiracies that allegedly prevented CSX from accessing NIT by rail. Since then, the Court dismissed CSX's damages claims under both state and federal law. The Court also dismissed CSX's injunctive relief claims under federal law based on 15 U.S.C. § 26. The only claims that possibly remain are CSX's injunctive relief claims under state law.

Based on prior briefing, CSX expects its state law conspiracy claims to support the same injunctive relief it sought under federal antitrust law. They cannot. To whatever extent CSX's state law claims remain, they are time-barred, preempted, or both. Rule 12(h)(2) requires dismissal for failure to state a claim and Rule 12(c) requires judgment on the pleadings. Alternatively, Rule

54(b) permits this Court to revisit its Order denying the Belt Line's original Motion to Dismiss and dismiss all state law claims now as preempted. *See* ECF 27, 66.

## Procedural History

CSX's Complaint contains two requests for injunctive relief in the wherefore clause:

> 4) That this Court enter an injunction against Defendants from continuing to commit the above referenced violations of federal and state law [referring to entire Complaint];
>
> 5) That this Court enter an injunction against NS, NPBL, and the Individual Defendants, as appropriate, that restores CSXT's right as a co-equal shareholder and/or establishes an independent board structure as previously proposed by CSXT and that directs that NPBL approve CSXT's Service Proposal.

ECF 1 at 40. CSX repeated these requests when asked for specificity in discovery. ECF 573-2. [1]

On November 27, 2018, the Belt Line filed its Motion to Dismiss, ECF 27, arguing, in part, that CSX's state law claims were preempted. ECF 28 at 9 ("Counts VII, VIII and IX of CSXT's Complaint allege state law claims of conspiracy and tortious interference that are categorically preempted by ICCTA."). The Court rejected that argument in 2019. ECF 66 at 20-21.

The Belt Line moved for summary judgment on April 12, 2021. ECF 296. With respect to CSX's state law claims, the Belt Line asserted two primary arguments: (1) all alleged conspiracy claims failed on the merits under Virginia's clear and convincing standard, and (2) all alleged conspiracy claims were also time-barred. [2] ECF 297 at 17-18, 27-30. The Belt Line sought complete dismissal of all state law claims. ECF 297 at 38; ECF 382 at 25.

---

[1] CSX attempted to expand its requests for injunctive relief in its Proposed Findings of Fact and Conclusions of Law, ECF 592, but that is prohibited under Fed. R. Civ. P. 37(c). Regardless, the expanded requests are immaterial here, as they do not change the fact that all of CSX's injunctive relief claims are both time-barred and preempted.

[2] A conspiracy claim in Virginia accrues "at the time the [plaintiff] *first suffered any damages* resulting from the acts committed in furtherance of the conspiracy." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 543 (4th Cir. 1997) (emphasis added).

The Court granted the Belt Line's motion with respect to the state law claims. *See* ECF 559 at 98 ("Therefore, Defendants' summary judgment motions are **GRANTED** with respect to the Virginia statutory and common law conspiracy claims.") (emphasis in original). [3] The Court summarized its rationale as follows:

> "In sum, to the extent that CSX's statutory and common law conspiracy claims are based on allegations of new conspiracies between 2015 and 2018 that are separate from the alleged conspiracy beginning in 2009, both causes of action fail based on the record evidence, even viewed in the light most favorable to CSX (and regardless of the heightened evidentiary standard). To the extent that CSX's statutory and common law conspiracy claims are based on allegations of a conspiracy that began in 2009 and continued through 2018, both causes of action are time-barred."

ECF 559 at 97-98 (emphasis in original).

On January 9, 2023, the Belt Line filed a Motion to Dismiss All Remaining Claims, ECF 572, arguing that 15 U.S.C. § 26 barred CSX's claims for injunctive relief under federal antitrust law because NS and the Belt Line are common carriers subject to the jurisdiction of the Surface Transportation Board ("STB"). [4] The Court granted this motion with respect to CSX's federal law claims and dismissed them. ECF 613 at 2. The Court determined that additional briefing was required on the existence or viability of any state law injunction claims and removed the pending trial date by agreement of the parties.

## **Legal Standard**

Under Rule 12(h)(2), a motion objecting on the ground that a plaintiff has failed to state a claim may be raised by a motion under Rule 12(c) or at trial. Under Rule 12(c), "After the

---

[3] The Court also found there was "no genuine dispute as to any material fact regarding CSX's state law claims." ECF 559 at 94. Thus, no trial on state law injunctive relief is necessary.

[4] The Motion did not directly discuss state law injunctive relief because the Belt Line perceived all state law claims to have been dismissed. *See* ECF 600 at 8 (stating, "CSX is incorrect that this Court retains jurisdiction over its state law claims. There are no state law claims.").

pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." *Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). "Therefore, a motion for judgment on the pleadings 'is designed to provide a means of disposing cases when the material facts are not in dispute between the parties'." *Trustees of Columbia Univ. v. Nortonlifelock, Inc.*, 2021 U.S. Dist. LEXIS 259261 at *3 (E.D. Va. 2021).

Under Rule 54(b), a court may revisit its own rulings any time before final judgment. *Amer. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003) ("Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment. This is because a district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted.") (citations omitted). Earlier decisions of a trial court become law of the case and must be followed unless "(1) a subsequent trial produces substantially different evidence, (2) *controlling authority has since made a contrary decision of law applicable to the issue*, or (3) the prior decision was clearly erroneous and would work manifest injustice." *Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988) (internal quotation marks omitted) (emphasis added).

<u>**Argument**</u>

**I.    All of CSX's state law claims have been dismissed.**

As a threshold matter, it appears to be law of the case that CSX has no state law claims left to address, since they were dismissed when the Court granted the Belt Line's Motion for Summary Judgment. *See* ECF 559 at 98. In the Fourth Circuit, dismissal of a state law cause of action includes all remedies that flow from that cause of action, regardless whether the dismissal was on

limitations grounds. The Court's holding in *Blankenship v. Consolidation Coal Co.* illustrates the point: "Apart from their challenge to the district court's limitations rulings, the plaintiffs challenge the court's denial of their request for injunctive relief. Because, however, the causes of action that provide the basis for any claimed relief are barred, the plaintiffs' request for injunctive relief is also barred. Injunctive relief is a remedy, not a cause of action." 850 F.3d 630, 640 (4th Cir. 2017); *see also Shoup v. Bell & Howell Co.*, 872 F.2d 1178, 1180-81 (4th Cir. 1989) (holding that a dismissal of state law claims on statute of limitations grounds is a dismissal on the merits).

Nevertheless, as explained below, all of CSX's state law injunction claims fail even if not already dismissed because they are both time-barred and preempted.

## II.     CSX's state law claims for injunctive relief are time-barred.

Even if not dismissed categorically on summary judgment, CSX's state law claims for injunctive relief are time-barred, just like the underlying claims. In Virginia, equity follows the law. As the Virginia Supreme Court has held, "It is a well-established principle uniformly acted upon by courts of equity, that in respect to the statute of limitations equity follows the law; and if a legal demand be asserted in equity which at law is barred by statute, *it is equally barred in equity*." *Sanford v. Sims*, 192 Va. 644, 649 (1951) (emphasis added); *see also Manotas v. Ocwen Loan Servicing, LLC*, 794 Fed. Appx. 259, 263-64 (4th Cir. 2019) (applying rule).

The Virginia Supreme Court has specifically applied this rule to the equitable defense of laches. In *Belcher v. Kirkwood*, for example, a plaintiff sued at law and in equity to recover transfers of money to a defendant both inside and outside the statute of limitations period. 238 Va. 430 (1989). The trial court held that laches barred any equitable claim for payments made before 1981 based on the analogous statute of limitations for breach of an oral contract at law. *Id.* at 431-32. On appeal, the Supreme Court affirmed, holding that "the statute of limitations applicable to oral contracts bound the trial court in its ruling on the defense of laches." *Id.* at 433.

The Fourth Circuit held similarly in *Manotas*. In *Manotas*, like CSX here, plaintiffs argued that the Virginia statute of limitations did not bar an equitable claim for declaratory and injunctive relief "because their claim for declaratory and injunctive relief is a claim for *prospective* relief ..." 794 Fed. Appx. at 263 (emphasis added). The Fourth Circuit rejected the argument. It held that the equitable claim was based on the same allegations as the plaintiffs' breach of contract claim and subject to the same statute of limitations. *Id*. at 264. As the Court explained, "Here, the Manotases' claim for declaratory and injunctive relief based on the first material breach doctrine recites the same allegations as the breach of contract claim and is therefore subject to the same statute of limitations for breach of contract." *Id*. Thus, the Court held, "the Manotases' claim for declaratory and injunctive relief is barred by the statute of limitations." *Id*. at 264-65.

CSX's remaining injunctive relief claims against the Belt Line, if any, depend entirely on its state law conspiracy claims. Consequently, as in *Belcher* and *Manotas*, the equitable analysis must track the Court's legal analysis. *See Menotas*, 794 Fed. Appx. at 264-65; *Belcher*, 238 Va. at 433. Under that analysis, to the extent CSX's state law injunction claims are based on acts that occurred within the statute of limitations window, they are barred on the merits. ECF 559 at 97-98. To the extent such claims are based on acts that occurred outside the statute of limitations window, they are time-barred. *Id*. Either way, because equity follows the law in Virginia, CSX's claims for state law injunctive relief must be dismissed.

### III.  CSX's state law claims for injunctive relief are preempted.

Any remaining state law injunctive relief is also preempted by the ICC Termination Act, 49 U.S.C. §§ 10101, *et seq*. The Belt Line argued preemption in its original Motion to Dismiss. *See* ECF 28 at 9-10 ("Counts VII, VIII, and IX of CSXT's Complaint allege state law claims of conspiracy and tortious interference that are categorically preempted by ICCTA.") (citing *Fayus Enterprises v. BNSF Ry.*, 602 F.3d 444, 454 (D.C. Cir. 2010)); ECF 45 at 5 ("CSXT incorrectly

argues that its federal and state law claims and remedies—seeking a preferential, reduced per car rate for its traffic handled by the Belt Line to NIT—are not precluded or preempted by the exclusive jurisdiction of the STB."). This Court rejected the Belt Line's arguments, holding that ICCTA preempted state and local regulation of the railroad industry, not common law claims. *See* ECF 66 at 20-21 (citing *PCS Phosphate Co. v. Norfolk S. Corp.*, 559 F.3d 212 (4th Cir. 2009)).

Controlling law has since changed, warranting revisitation of the Court's prior holding and a reversal of course. In 2020, after the Court's original ruling, the Fourth Circuit decided *Edwards v. CSX Transp., Inc.*, holding that ICCTA's "express preemption clause—which 'preempt[s] the remedies provided under . . . State law'—in no way distinguishes between statutory prohibitions and common-law duties" and applies to both. 983 F.3d 112, 122 (4th Cir. 2020).

At issue in *Edwards* was whether residents of Lumberton, North Carolina could maintain state tort actions against CSX when it refused access to its right-of-way to abate flooding during Hurricanes Matthew and Florence. *Id*. at 116. CSX's refusal prevented the residents from closing the sole gap in the Lumber River levee system where CSX's tracks were located. *Id*. at 116. The result was catastrophic: rampant flooding after Hurricane Matthew alone displaced over 1,500 residents and caused over $250 million in property damage. *Id*. at 116 n.5.

Nevertheless, the Fourth Circuit affirmed dismissal of the tort claims as preempted by ICCTA. As the Court stated, "Until now, we have reserved the question of '[w]hether "regulation" must always be by way of public rule.' However, a growing number of our sister circuits acknowledge that the Act's preemptive reach can encompass common-law tort actions, in addition to statutes and ordinances. The Surface Transportation Board agrees. And with the issue now squarely before us, we join in that sensible view." *Id*. at 121-22 (citations omitted).

7

The Fourth Circuit acknowledged that ICCTA does not automatically preempt all state law claims. Instead, a court's task is to determine whether the requested relief will have the effect of managing or governing rail transportation. *Id*. As the Fourth Circuit stated, "Our task, then, is to discern whether, in bringing the instant claims, [a Plaintiff is] actually 'attempting to manage or govern rail transportation in a direct way.'" *Id*. at 122 (quoting *Franks Inv. Co. LLC v. Union Pac. R.R. Co.*, 593 F.3d 404, 413-14 (5th Cir. 2010)).

Here, CSX's requested injunctive relief seeks to affect not only the Belt Line's operations, but also management and governance of the Belt Line itself. CSX seeks two things: (1) to force the Belt Line to accept CSX's 2018 rate proposal, [5] and (2) to force a change in the Belt Line's Board, management, and/or ownership. [6] *See* ECF 1 at 40. Both requests run headlong into the exclusive jurisdiction of the STB.

Two parts of ICCTA preempt CSX's requested relief: 49 U.S.C. § 10501 (providing the STB exclusive jurisdiction over railroad transportation and rates) and 49 U.S.C. §§ 11321 and 11323 (providing the STB exclusive jurisdiction over control of railroad entities).

CSX's request to force the Belt Line to accept its 2018 rate proposal, to the extent CSX still pursues it, is preempted by 49 U.S.C. § 10501. That statute states in relevant part:

> The jurisdiction of the Board over—
>
> (1) *transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules* (including car service, interchange, and other operating rules), *practices, routes, services, and facilities of such carriers*; and

---

[5] CSX appears to have abandoned this request, as it did not ask for an order to approve its 2018 rate proposal in the Proposed Final Pretrial Order. *See* ECF 517-1 at 12.

[6] This Court previously observed that Belt Line President Cannon Moss thoughtfully considered CSX's 2018 rate proposal and even suggested convening a rate committee that the CSX-appointed Board members ultimately ignored. *See* ECF 599 at 48 n.15, 62-64, 77. Based on this finding, it is unclear how ousting Mr. Moss (or any Belt Line officer) will ensure whatever result CSX seeks with respect to its rate proposal.

8

> (2) the construction, acquisition, *operation*, abandonment, or discontinuance *of spur, industrial, team, switching, or side tracks, or facilities*, even if the tracks are located, or intended to be located, entirely in one State,
>
> *is exclusive*. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are *exclusive and preempt the remedies provided under Federal or State law*.

49 U.S.C. § 10501(b) (emphasis added). All of CSX's requested operational relief is preempted under this statute and the controlling law in *Edwards*.

CSX's request to force a change in the Belt Line's Board, management, and/or ownership, or otherwise affect control over the Belt Line, is likewise preempted by 49 U.S.C. §§ 11321 and 11323, in addition to § 10501. Section 11321 states, "The authority of the Board under this subchapter is exclusive." *Id*. That subchapter includes 49 U.S.C. § 11323(a), which provides exclusive jurisdiction over one rail carrier's control of another, to whatever extent.

As explained in the Belt Line's Motion to Dismiss All Remaining Claims, ECF 573, the injunctive relief CSX seeks fundamentally revolves around the level of NS's *control* of the Belt Line, whether exercised or not. This Court is being asked to, "in essence, equitably modify the balance of power at NPBL, by ordering NSR and CSX to have equal votes on corporate governance issues or by issuing an injunction that requires Defendants to establish a sufficiently 'independent' NPBL Board of management structure." ECF 559 at 83-84.

As also explained, the STB has *exclusive* jurisdiction over control of one rail carrier by another. *See* 49 U.S.C. §§ 11323(a)(3), (4), and (5). That authority is "part of a comprehensive legislative scheme designed to place ownership, management, and operational control over common carriers within the regulatory jurisdiction of the [Interstate Commerce] Commission [now STB]." *Gilbertville Trucking Co. v. U.S.*, 371 U.S. 115, 122 (1962).

9

"Control" in this context is broadly defined to include "actual control, legal control, and the power to exercise control, through or by (A) common directors, officers, stockholders, a voting trust, or a holding or investment company, or (B) any other means." 49 U.S.C. § 10102(3). The STB has explained that the "[c]ontrol of a carrier for which [49 U.S.C. §] 11323 authorization is required embraces the power or authority to manage, direct, superintend, restrict, regulate, govern, administer or oversee the day-to-day affairs of that carrier." *Soo Line Railroad Company – Petition for Declaratory Order*, Docket No. FD 33350 (STB served Feb. 4, 1998), 1998 WL 43797, at *8 (citing *Coletti – Control – Comet Freight Lines*, 38 M.C.C. 95, 97 (1942)), *aff'd sub nom. City of Ottumwa v. STB*, 153 F.3d 879 (8th Cir. 1998). The Supreme Court has similarly "construed this language to encompass every type of control in fact and [has] left to the agency charged with enforcement the determination from the facts whether 'control' exists, subject to normal standards of review." *Gilbertville Trucking*, 371 U.S. at 125 (citations omitted).

The STB likewise has broad "equitable powers to expunge" unlawful control violations. *See Gilbertville Trucking*, 371 U.S.C. at 130. Thus, "[t]he power of the Commission to respond to conditions of illegal control is practically plenary under the Interstate Commerce Act." *Illinois Cent. R. Co. v. U.S.*, 263 F. Supp. 421, 428 (N.D. Ill. 1966), *aff'd*, 385 U.S. 457 (1967) (per curiam). In one case, for example, the ICC explained that its order "will require that the Frisco terminate the violation and divest itself of power to vote the stock in the selection of Central's board of directors," *Central of Georgia Ry. Co. Control*, 307 I.C.C. 39, 44 (1958), which closely mirrors CSX's request to have this Court (rather than the STB) establish a "sufficiently 'independent' NPBL Board." ECF 559 at 84.

The STB also has longstanding regulations governing the establishment and use of independent voting trusts intended to "avoid an unlawful control violation." 49 C.F.R. § 1013.1(a).

This type of voting trust was the ultimate remedial mechanism in *Central of Georgia* above, subject to continued oversight by the ICC. *See Central of Georgia Control*, 312 I.C.C. 125 (1960), 312 I.C.C. 539 (1961).

In sum, the state law injunctive relief that CSX seeks, if not already dismissed, overlaps entirely with remedial measures available to and utilized by the STB. Consequently, the Court's use of injunctive remedies to alter the nature of control at the Belt Line (whether or not exercised) would directly implicate the jurisdiction of the STB and is therefore preempted.

**IV.     CSX's state law claims for injunctive relief fail even if not time-barred or preempted.**

For reasons explained by the Belt Line in prior briefing, CSX's state law claims also fail, even if not time-barred or preempted, because (1) CSX's generic "obey the law" request is not enforceable under Rule 65, (2) CSX has (or had) an adequate remedy at law in the form of monetary damages, (3) altering the Belt Line's Board or management will not redress the particular injuries CSX alleges, and (4) CSX's request to force the Belt Line to adopt the 2018 rate proposal would impermissibly require the Court to create a contract for the parties. The Belt Line incorporates its previous arguments on these points and the corresponding arguments made by NS. *See* ECF 542 at 4-7; ECF 543 at 9; ECF 615 at 12-19.

## Conclusion

For the foregoing reasons, under Rules 12(h)(2), 12(c), and alternatively 54(b), the Belt Line respectfully requests that this Court dismiss all remaining state law claims, enter final judgment in favor of the Belt Line, and grant the Belt Line all other just relief.

Dated: February 7, 2023

NORFOLK AND PORTSMOUTH
BELT LINE RAILROAD COMPANY

By:     */s/ W. Ryan Snow*
James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Alexander R. McDaniel, VSB No. 92398
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
amcdaniel@cwm-law.com
*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

## CERTIFICATE OF SERVICE

    I certify that on this 7th day of February 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a "Notice of Electronic Filing" to all counsel of record who have consented to electronic service.

    */s/ W. Ryan Snow*
W. Ryan Snow, VSB No. 47423
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
wrsnow@cwm-law.com