**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

CSX TRANSPORTATION, INC.,
individually and on behalf of NORFOLK
& PORTSMOUTH BELT LINE
RAILROAD COMPANY,

        Plaintiff,

v.                                  Civil Action No. 2:18-cv-530-MSD-RJK

NORFOLK SOUTHERN RAILWAY
COMPANY, *et al.*,

        Defendants.

_____/

**CSX TRANSPORTATION, INC.'S CONSOLIDATED OPPOSITION TO**
**DEFENDANTS' OBJECTIONS TO DENIAL OF MOTIONS IN LIMINE TO**
**EXCLUDE CSX'S EXPERT HOWARD P. MARVEL (ECF NOS. 465, 473)**

Plaintiff CSX Transportation, Inc. ("CSX"), by counsel, under Federal Rule of Civil

Procedure 72(a) and Local Civil Rules 7 and 72, submits this brief in opposition to the Objections

filed by Defendants Norfolk Southern Railway Company ("NS") (ECF No. 606) and Norfolk and

Portsmouth Belt Line Railway Company ("NPBL") (ECF 610).

**INTRODUCTION**

CSX's expert witness, Dr. Howard P. Marvel, is an accomplished economist with nearly

50 years of experience analyzing antitrust issues like the ones here.  Dr. Marvel provides three

general categories of opinions in this case: (1) that the relevant antitrust market in which

Defendants' conduct took place is the market for on-dock rail service at Norfolk International

Terminals ("NIT"); (2) that Defendants' conduct foreclosing CSX from on-dock rail at NIT has

harmed competition by allowing NS to charge supracompetitive prices to ocean carriers that move

a large percentage of their international intermodal containers through NIT; and (3) that

1

Defendants' conduct has caused CSX to lose substantial international intermodal business across its entire network, including at NIT, resulting in hundreds of millions of dollars of lost profits since 2009.  *See* ECF No. 487 at 1-2, 5 (citing ECF No. 474-1 ¶ 6).  As the Magistrate Judge found in rejecting Defendants' motions to exclude, Dr. Marvel is qualified to offer these opinions, which are based on a thorough investigation, his extensive experience, and rigorous economic analysis.  *See* Jan. 10, 2023, Hearing Transcript, ECF No. 581, at 17-18.  Dr. Marvel's opinions are thus not subject to exclusion under Rule 702 of the Federal Rules of Evidence.  *See id.* at 23, 27.  Defendants have nonetheless filed objections to the Magistrate Judge's rulings.

At the outset, CSX respectfully submits that given the present procedural posture of this case, the Court should defer ruling on the objections at this juncture.  To the extent the Court wishes to proceed now, though, the objections are without merit and should be overruled.  Defendants' objections repeat their incorrect assertions that the Court's summary judgment decision compels the complete exclusion of Dr. Marvel's testimony, and recycle many of the same arguments they unsuccessfully asserted in their original motions to exclude.  But contrary to Defendants' assertions, the Court's summary judgment ruling did not establish the "law of the case" as to the admissibility of Dr. Marvel's testimony under Rule 702 and *Daubert*—indeed, the Court did not even consider that question.  And the Magistrate Judge properly addressed—and rejected—Defendants' other arguments, finding that Dr. Marvel followed an accepted and reliable methodology that would be relevant and helpful to the factfinder.  Defendants cannot establish that this decision was clearly erroneous or contrary to law, and their Objections should be overruled.

## RELEVANT BACKGROUND

Defendants each moved to exclude Dr. Marvel.  *See* ECF Nos. 465, 473.  The Court referred Defendants' motions to the Magistrate Judge on November 7, 2022.  The Magistrate Judge

heard argument on the motions on December 2, 2022, *see* ECF Nos. 518, 521, 567, and later requested supplemental briefing as to the effect of the Court's summary judgment ruling on Defendants' motions.  *See* ECF Nos. 564, 565 (CSX Br.), 566 (Defendants' Br.).  On January 10, 2023, the Magistrate Judge issued detailed oral rulings denying NS's motion in its entirety and NPBL's motion on all but two narrow grounds.  *See* ECF Nos. 580, 581.

In his oral ruling, the Magistrate Judge carefully analyzed and addressed all the issues Defendants raise in their objections.  First, the Magistrate Judge rejected NS's challenge to Dr. Marvel's opinion that some ocean carriers rely on Norfolk International Terminals ("NIT") intensively.  ECF No. 581 at 10.  As the Magistrate Judge explained, substantial admissible evidence supports Dr. Marvel's opinion, including evidence of NIT's capacity advantages over VIG, testimony from a port witness that railroad alignment is not a primary consideration for assigning vessels to terminals, and Dr. Marvel's empirical analysis that terminal use remains stable over time even when rail alignment changes from NS to CSX or vice versa.  *Id.* at 10-13.

The Magistrate Judge also rejected NS's argument that Dr. Marvel's regression models should be excluded.  *Id.* at 22.  The Magistrate Judge found that these models were amply supported by record evidence and performed robustly in the face NS's expert's criticisms.  *Id.* at 18-21, 23-26.  In rejecting NS's argument that Dr. Marvel's models did not distinguish between anticompetitive conduct and legitimate competitive factors, the Magistrate Judge emphasized that although NS identified certain factors Dr. Marvel purportedly "ignored" in constructing his models, it did not demonstrate that any of those factors would have actually changed the models' results.  *Id.* at 17.  As the Magistrate Judge explained, those challenges are thus, at best, fodder for cross-examination at trial.  *Id.* 22-23, 27.

As for NPBL's motion, the Magistrate Judge declined to bar Dr. Marvel from testifying

3

about the factual underpinnings for his economic opinions—including his opinions about NPBL's rate and the substitutability of drayage—simply because he is not a "railroad expert." *Id.* at 27-28.  As the Magistrate Judge explained, Dr. Marvel's opinions on these issues are reliably grounded in the record evidence, and NPBL's critiques of his approach are appropriate topics for cross-examination. *See id.* at 28-31, 37-39.[1]

## LEGAL STANDARD

Under Rule 72(a) of the Federal Rules of Civil Procedure, "[t]he district judge in the case must consider timely objections" to a magistrate judge's ruling on non-dispositive matters, and must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a); *CertusView Techs., LLC v. S & N Locating Services, LLC*, 107 F. Supp. 3d 500, 504 (E.D. Va. 2015).  A magistrate judge's "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* at 504 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  Thus, unless a court is "firmly convinced" that such an error has occurred, "the magistrate judge's order must be affirmed."  *Id.* (quoting *Giganti v. Gen–X Strategies, Inc.*, 222 F.R.D. 299, 304–05 (E.D. Va. 2004)).  As this Court has explained, the alteration of a magistrate judge's non-dispositive order is "extremely difficult to justify."  *Id.* (quoting *Carlucci v. Han*, 292 F.R.D. 309, 312 (E.D. Va. 2013)).

---

[1] The Magistrate Judge granted NPBL's motion on two narrow grounds, holding that Dr. Marvel may not state that the removal of the so-called Diamond interchange was an anticompetitive act, and that he may not describe NPBL's rate as "exorbitant" or "unduly high" without comparing that rate to the other much lower rates he analyzed. *See id.* at 32-33.

## ARGUMENT

**I.    This case's procedural posture militates deferring a ruling on Defendants' objections at this time.**

The Magistrate Judge issued his ruling on Defendants' Daubert motions on January 10, 2023, one week after this Court struck CSX's damages claims and one week before the bench trial on CSX's claims for injunctive relief was scheduled to begin.  *See* ECF No. 559.  There was no bench trial, however, as the Court found at the January 18, 2023 hearing on Defendants' motion to dismiss CSX's injunctive relief claims that CSX could not maintain its claims for federal injunctive relief.  These developments have significantly changed the substance of this case.  As the Court acknowledged during the January 18, hearing, CSX will be appealing the Court's rulings striking its antitrust claims for damages and injunctive relief and its state law damages claims.  Should CSX prevail on appeal with respect to its damages claims, this action will be remanded for a jury trial, and any further Daubert rulings should be made at that time in the context of any claims that then exist in the case.  In light of the change in circumstances, present uncertainty and a future appeal, CSX submits that the Court should defer ruling on Defendants' objections at this time.

**II.    The Court's summary judgment ruling does not preclude Dr. Marvel's testimony.**

NS and NPBL both contend that Dr. Marvel should be excluded from testifying at trial based on language in the Court's summary judgment opinion describing CSX's damages model as "fatally flawed," which they suggest compels exclusion of Dr. Marvel's opinions under Rule 702. *See* ECF No. 606 at 6; ECF No. 610 at 2 (both citing ECF No. 559 at 51).  Contrary to Defendants' arguments, however, the Court's summary judgment opinion does not establish the "law of the case" as to whether Dr. Marvel's testimony is admissible, because the Court never considered or decided the question of admissibility.  *See* 18B Fed. Prac. & Proc. Juris. § 4478 (3d ed.  Apr.

5

2022) ("Law of the case does not reach a matter that was not decided."); *see also Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979) ("The doctrine of law of the case comes into play only with respect to issues previously determined.").

In fact, the Court's summary judgment ruling underscores that Dr. Marvel's opinions should *not* be excluded before trial. To begin, the Court referred Defendants' *Daubert* motions to the Magistrate Judge for decision. In ruling on Defendants' summary judgment motions, the Court did not purport to rule on those referred motions. It did not evaluate or comment on Dr. Marvel's qualifications or experience; nor did it question the relevance of Dr. Marvel's opinions to CSX's claims or the reliability of his economic analysis or regression modeling. To the contrary, the Court confirmed in its opinion that "[d]isputed facts and *conflicting expert opinions interpreting those facts* reveal genuine disputes regarding the propriety of CSX's market definition," which could not be resolved before trial. ECF No. 559 at 92 (emphasis added). That wording confirms that the Court contemplated that Dr. Marvel would testify on these issues at trial, along with NS's and NPBL's experts, consistent with Rule 702 and *Daubert*. *See* ECF No. 581 at 22-23 (Magistrate Judge explaining that where, as here, an expert's opinions depend on disputed facts, "[t]he fact-finder is entitled to hear [the expert's] testimony and decide whether it should accept or reject that testimony after considering all factors that weigh on credibility, including whether the predicate facts on which [the expert] relied are accurate") (citing *Pipitone v. Biomatrix*, 288 F.3d 239, 249-50 (5th Cir. 2002)).

In holding that CSX's damages methodology did not comport with the statute of limitations for its antitrust claims, the Court described Dr. Marvel's damages model as "flawed," because it does not "separate harm stemming from the limited conduct within the limitations period . . . from the established inertial effects of the acts committed prior to" that period. ECF No. 559 at 51-52;

*see also id.* at 52 (CSX's "unitary theory" of damages prevents it from "present[ing] to the jury a non-speculative damages case arising from" conduct within the limitations period).  But the Court held only that Dr. Marvel's damages model did not apportion CSX's damages to allow CSX to recover those damages at trial given the applicable statute of limitations.[2]  *See id.* at 51-52.  The Court did not, however, identify any disqualifying "flaws" or errors in Dr. Marvel's economic or causation opinions, or in his regression analyses, such as to render his testimony and opinions inadmissible under Rule 702.

NS also contends that Dr. Marvel's damages model is "uninformative" as to CSX's injunctive relief claims.  *See* ECF No. 606 at 6.  As the Magistrate Judge recognized, however, "CSX may seek to rely upon Dr. Marvel's analysis to satisfy [its] burden" for injunctive relief. ECF No. 581 at 23.  To obtain injunctive relief, CSX must prove the traditional prerequisites, including: (1) a significant threat of irreparable injury; (2) that its remedies at law are inadequate; and (3) that, considering the balance of hardships and public interest, an equitable remedy is warranted.  *See, e.g.*, *Mobley v. Saponi Corp.*, 212 S.E.2d 287, 289 (Va. 1975).  The Court's conclusion at summary judgment that Dr. Marvel's damages model does not properly apportion damages to conduct within the limitations period does not foreclose it from offering that evidence on these separate questions.  As one example, the third element requires the Court to weigh any alleged hardship to Defendants against the harm to CSX—a topic on which Dr. Marvel offers admissible expert testimony.  *See* ECF No. 487 at 7.  Indeed, Dr. Marvel's opinions about CSX's historical lost profits and their cause are particularly relevant to this analysis, because they illustrate the extent of the harm that has been (and continues to be) inflicted by Defendants'

---

[2]CSX respectfully disagrees with the Court's ruling, which it intends to challenge on appeal.

ongoing anticompetitive scheme. *See id.* As the Magistrate Judge properly found, Dr. Marvel's estimates of CSX's lost profits remain relevant and admissible on these issues, regardless of the Court's decision about whether that model can support an award of damages within the limitations period.

### III. The Magistrate Judge correctly found that Dr. Marvel's opinions are reliable and admissible under Rule 702.

#### A. Dr. Marvel's opinion about ocean carriers' reliance on NIT is reliable and grounded in the record evidence.

NS next challenges the Magistrate Judge's ruling that the "premise" of Dr. Marvel's economic analysis—namely, his opinion that certain ocean carriers are "NIT intensive users"—is admissible and grounded in the record evidence. *See* ECF No. at 2-3. Dr. Marvel concluded that NS can (and does) charge higher prices to "NIT users" because its anticompetitive conduct hinders CSX's ability to compete for this business. *See* Marvel Report, ECF No. 469-1, ¶¶ 69-81, Marvel Reply, ECF No. 469-36, ¶¶ 91-106. Dr. Marvel also determined that many "NIT users" would choose to align with CSX but-for CSX's competitive disadvantage at NIT—which harms CSX in the form of lost profits. *See* Marvel Report ¶¶ 88-98; Marvel Supp. Report, ECF No. 469-2, ¶ 9.

NS objects that Dr. Marvel's opinion that certain carriers use NIT intensively is "contrary to the record." ECF No. 606 at 2-3. According to NS, Dr. Marvel's opinion is "belied" by purportedly "undisputed" evidence that proves that NIT usage depends on factors other than rail alignment. *Id.* But NS presented these same facts to the Magistrate Judge, who evaluated them and correctly concluded that they were *disputed*—i.e., that the record contained *other* admissible evidence that supported Dr. Marvel's opinion.[3] *See* ECF No. 581 at 11. As the Magistrate Judge

---

[3] For example, multiple fact witnesses have testified that certain ocean carriers expect service from particular terminals within POV. *See* ECF No. 487-3 (Kenney Dep. 27:9:20) (CSX Vice President

explained, Dr. Marvel's opinions cannot be excluded before trial under Rule 702 simply because they are based on disputed facts.  *See* ECF No. 581 at 11-14 (citing *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017)).   The Magistrate Judge noted, "[t]he Court reaches no conclusion about whether Dr. Marvel's analysis is correct.  Rather, it finds that the issue raised by Norfolk Southern about the facts underpinning his assessments regarding the intensity and stability of carrier use of NIT go to the weight and not the admissibility of Dr. Marvel's testimony."  *Id.* at 14.  That decision is not contrary to law, and it should be affirmed.

    NS suggests that the Magistrate Judge's failure to cite an opinion from the District of Maryland renders his opinion "contrary to law."  *See* ECF No. 606 at 3 (citing *It's My Party v. Live Nat., Inc.*, 88 F. Supp. 3d 475 (D. Md. 2015)).  But *It's My Party* is not controlling, and it also does not support NS's position.  *See* 88 F. Supp. 3d 475 (D. Md. 2015).  In *It's My Party*, the district court excluded an expert's analysis of the market for amphitheater performances, concluding that "[e]ach piece of evidence" the expert cited to support his theory of demand "ha[d] been rebuked," and that the analysis  was "not based on sound logic or reasoning."  88 F. Supp. 3d at 488.  For example, in analyzing whether touring artists "strongly prefer" playing at amphitheater or non-amphitheater venues, the expert relied on an overbroad data set that improperly skewed the results of his analysis.  *Id.* at 487 & n.9.  And, when implementing his analysis, the expert "change[d] how he defines that category of artists who 'prefer amphitheaters' . . . without providing significant explanation."  *Id.* at 487; *see id.* at 488 (observing that the expert "alter[ed]

---

of Intermodal and Automotive, testifying that "a steamship line determines what terminal they go to"); ECF No. 487-4 (Houfek Dep. at 57:21-58:12) (former CSX Assistant Vice President of Marketing, who also previously worked for an ocean carrier, testifying that "these ocean carriers [], they sort of are aligned with certain terminals").  Empirical data also confirms that carriers' terminal use has remained remarkably stable throughout the relevant period—even when their business shifts from NS to CSX or vice versa.  *See* Marvel Reply ¶¶ 70-72, 76-79.

the rule for what constitutes 'preference' depending on which calculation best serves him"). Because the expert relied on flawed data and inconsistent, self-serving logic, the court found his opinions unreliable.  *Id.*

As the Magistrate Judge found, unlike the expert in *It's My Party*, Dr. Marvel's opinion that certain ocean carriers demand service at NIT independent of railroad alignment is based on his assessment of substantial record evidence—including witness testimony and empirical data. While some of those facts may be *disputed*, none has been "rebuked."  And unlike the expert in *It's My Party*, Dr. Marvel applied a consistent and reliable regression methodology to assess this evidence.  *See* Marvel Report ¶¶ 78-81, 88-100, Marvel Reply ¶¶ 91-106, 120-126; *see also infra* at 20-27.  Thus, unlike the expert in *It's My Party*, Dr. Marvel's opinions satisfy Rule 702.  The Magistrate Judge's conclusion is not contrary to law, and it should be affirmed.

**B.     Dr. Marvel's regression models and related opinions are admissible.**

NS next objects that Dr. Marvel's liability opinions are "uninformative" because his regression models purportedly "cannot connect the purported anticompetitive conduct he analyzed with the results of his regression models purporting to show ocean carriers were harmed."  ECF No. 606 at 4.  NS also cites one cherry-picked excerpt from Dr. Marvel's deposition to argue his model fails to distinguish anticompetitive effects from legitimate competitive differences.  *Id.*  NS raised these arguments to the Magistrate Judge, who rejected them.  ECF No. 581 at 22-23.

As the Magistrate Judge recognized, an expert's statistical analysis should be excluded under Rule 702 only if it fails to consider "critical explanatory variables."  ECF No. 581 at 15-16 (citing *In re Linerboard Antitrust Litig.*, 497 F. Supp. 2d 666, 678 (E.D. Pa. 2007)).  Indeed, it is a "rare case where the regressions are so incomplete as to be irrelevant."  *In re Linerboard Antitrust Litig.*, 497 F. Supp. 2d at 678; *see also id.* at 679 (rejecting motion to exclude expert for omitting

purportedly critical variables because "the excluded variables were accounted for in his model indirectly" through the model's construction). The Magistrate Judge examined Dr. Marvel's regression analysis carefully, ultimately concluding that it "reliably accounts for major explanatory variables" and is therefore admissible. ECF No. 581 at 25. That decision was not clearly erroneous, and it should be affirmed.

As the Magistrate Judge observed, Dr. Marvel's model is designed to measure the effect of NS's competitive advantage at NIT specifically—i.e., the advantage gained from Defendants' anticompetitive conduct. *See* ECF No. 581 at 22. The model isolates NIT-specific effects (rather than those attributable to any broader competitive differences between NS and CSX) in several ways. First, the model measures and incorporates the proportion of traffic each railroad handles through each major East Coast port, which accounts for any differences in overall rail network quality. Marvel Report ¶¶ 88, 91. Second, the model accounts for differences in each railroad's pricing for the same routes. *Id.* ¶ 92. Third, "the model holds constant the ocean carriers' reliance on" POV as a whole, ensuring the model "truly captures a terminal-specific effect" for anticompetitive conduct *at NIT. Id.* ¶ 94.

As the Magistrate Judge explained, although NS *argues* that Dr. Marvel's models disregard legitimate competitive factors, NS offers no *evidence* or *analysis* to show that any of those factors would have actually changed Dr. Marvel's results. *See* ECF No. 581 at 17 (Magistrate Judge noting that "there is no competing regression model [from NS] before the Court examining the significance of legitimate competitive differences in the pricing and margins about which Dr. Marvel opines"); *see also id.* at 20 (Magistrate Judge finding that "there is no evidence that [the purported] advantages [identified by NS, such as double-stack capability or route structure to the Midwest] translated into reduced costs and pricing").

11

Moreover, as the Magistrate Judge aptly noted, NS's expert did not identify actual flaws in Dr. Marvel's model, but instead produced a *different* model using altogether different variables. *See* Marvel Reply ¶¶ 94-96 (describing that Dr. Wright used a different measure of ocean's carrier's reliance on NIT, and also changed multiple other "cherry-picked" variables from Dr. Marvel's original model). As the Magistrate Judge observed, by correcting any one of these cherry-picked changes, "Dr. Marvel continued to find statistically significant and positive relationships between NIT traffic volume and Norfolk Southern's pricing." ECF No. 581 at 21 (citing Marvel Reply ¶¶ 94-96). "The fact that [NS's expert's] test might yield different results does not provide a basis for exclusion of [Dr. Marvel's] testimony supported by a test that is admittedly well-accepted in this field." *In re Urethane Antitrust Litig.*, 2012 WL 6681783, at *6; *see also In re Mushroom*, 2015 WL 5767415, at *11 (explaining that a defendant challenging the reliability of a regression analysis based on allegedly omitted variables "must introduce evidence to support its contention that the failure to include those variables would actually *change the outcome of the analysis*") (emphasis added).

NS's citation to the Magistrate Judge's statement that "[t]here appears to be little dispute that Dr. Marvel's pricing and margin model does not distinguish between anticompetitive and legitimate competitive factors" ignores the Magistrate Judge's detailed analysis on this issue. ECF No. 606 at 4-5 (citing ECF No. 581 at 17). As the Magistrate Judge explained, Dr. Marvel addressed the purportedly legitimate competitive factors NS identified, and NS offered no evidence that any of those factors actually gave NS a competitive advantage over CSX at NIT in any event. *See* ECF No. 581 at 18-22. On this record, the Magistrate Judge correctly concluded that "the parties' dispute about which explanation controls falls to the Court in its consideration of the competing facts to be marshaled at trial." ECF No. 581 at 22-23 (citing *Pipitone v. Biomatrix,*

12

*Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002)).  Put another way, the Magistrate Judge correctly noted that, "[t]o the extent that Norfolk Southern contends that other explanatory variables . . . play a role in the results obtained, such criticisms go to the weight and not the admissibility of Dr. Marvel's opinions and are for trial."  ECF No. 581 at 26.

Finally, NS suggests that the Magistrate Judge improperly "sidestepped" Rule 702 merely because he observed that the *Daubert* analysis is "flexible," particularly in the context of a bench trial.  *See* ECF No. 606 at 4-5.  To be clear, the Magistrate Judge articulated and applied the correct standard in evaluating Dr. Marvel's opinions.  As he explained:

> On December 2nd, the Court ruled from the bench upon CSX's motion in limine to exclude the Belt Line's expert, Thomas Crowley.  In so ruling, I discussed the pertinent legal inquiry required by Rule 702 and caselaw addressing challenges to proposed expert testimony.  I have applied the same precepts and burden of proof in analyzing the defense challenges -- and that, of course, includes the Belt Line's motion, as well, which I will get to in a moment -- to the proposed testimony of CSX's expert, Dr. Howard Marvel.  Because I am reciting my rulings regarding Dr. Marvel in this conference now, I incorporate by reference my introductory discussion in the ruling upon the motion directed to Mr. Crowley's testimony, without need to recite it again today.

ECF No. 581 at 8-9; *see also* ECF No. 524 at 3-5 (Magistrate Judge's introductory comments in ruling on CSX's motion to exclude outlining applicable standards under Rule 702 and *Daubert*). The Magistrate Judge applied those precepts faithfully in determining that Dr. Marvel's opinions were admissible.  But even if the Magistrate Judge *had* applied an inappropriately "flexible" version of the applicable standard, his admission of Dr. Marvel's testimony was not clearly erroneous, because that testimony passes muster under *any* conception of Rule 702 and *Daubert*. *See* ECF No. 487 at 20-25.

### C.      Dr. Marvel's opinions about drayage are admissible.

NPBL argues that the Magistrate Judge should have excluded Dr. Marvel's market definition opinions because he purportedly did not consider ███████████████████

███████████████. ECF No. 610 at 4-6.  The Magistrate Judge correctly rejected this argument, finding that Dr. Marvel's opinion "is sufficiently based on facts and data that he reliably applies to opine about drayage."  ECF No. 581 at 38-39.  As the Magistrate Judge explained, NPBL's contention that Dr. Marvel failed to properly evaluate the price of drayage is fodder for cross-examination at trial.  *Id.* at 37.

In determining the relevant market for CSX's claims, Dr. Marvel concluded that drayage of containers by truck "is not an adequate substitute for on-dock access at NIT," because it is a "significantly inferior option" to on-dock rail.  Marvel Report ¶¶ 41-49.  NPBL does not challenge the myriad evidence cited by Dr. Marvel reflecting that drayage capacity is severely limited, or that ports, ocean carriers, and railroads all see drayage as a "considerable disadvantage" in comparison to on-dock rail.  *See id.*; *see also* Marvel Reply ¶¶ 22-31.  Instead, NPBL argues only that Dr. Marvel's opinion is unreliable because he "ignored" the price of drayage, which NPBL contends is less expensive than on-dock rail.  ECF No. 610 at 4-5.

Dr. Marvel did *not* "ignore[] price altogether" in his assessment of drayage, nor is his market definition analysis "missing a major transportation alternative" as a result.  *See* ECF No. 610 at 4-5.  Most simply, there is no evidence or testimony in the record supporting NPBL's assertion that the ████████████████████████████████████████████████████████████ ████.  To the contrary, the record is filled with evidence—including testimony from both CSX and VIT witnesses—that CSX is forced to use drayage because Defendants' conduct has foreclosed its ability to reasonably access on-dock rail at NIT via NPBL.  *See, e.g.*, ECF No. 324 at 10-29 (citing evidence of economic and operational obstacles that block CSX from NIT).  And further, Dr. Marvel *did* evaluate ██████████████████████████████████████████ ████████████████████—and determined that drayage is not a reasonable substitute, as an

14

economic matter, for on-dock rail at NIT.  This conclusion is amply supported by the record evidence.  *See, e.g.*, Marvel Reply ¶ 31 (citing testimony from VIT's Tom Capozzi, who explained that ████████████████████████████████████████████████████████████ ██████████████████████████████████").

Moreover, as the Magistrate Judge explained, NPBL's argument about the price of drayage ignores that the appropriate question is whether drayage is a reasonable substitute for on-dock rail *at the competitive price level*.  *See* ECF No. 581 at 37-38; *see also* Marvel Report ¶ 49 (citing economic literature on the so-called "cellophane fallacy").  The record evidence reflects that NPBL's switch rate has been artificially inflated by Defendants' anticompetitive conduct; drayage marginally competes on price only at this supracompetitive level.  *See* Marvel Report ¶ 49.  The cases cited by NPBL—first in its motion to exclude and now in its objections—confirm that, in the market analysis context, "substitution based on a reduction in price will not correlate to a high cross-elasticity of demand *unless the switch can be accomplished without the consumer incurring undue expense or inconvenience*."  *FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 25 (D. D.C. 2015) (emphasis added); *see also* ECF No. 581 at 38 (Magistrate Judge citing *Sysco Corp.* to reject NPBL's argument).  As the Magistrate Judge held, the record evidence supports Dr. Marvel's conclusion that drayage is both expensive *and* inconvenient, making it an unreasonable substitute for on-dock rail.  ECF No. 581 at 37-39.

### D.    Dr. Marvel's opinions about NPBL's rate are admissible.

NPBL also challenges the Magistrate Judge's denial of its motion to exclude Dr. Marvel's opinions on NPBL's switch rate.  ECF No. 610 at 6-8.  NPBL contends that Dr. Marvel's assessment of the Belt Line's rate is inadmissible under Rule 702 because he purportedly "did not

evaluate any of the Belt Line's costs."[4]  *Id.* at 7.  According to NPBL, an analysis of the Belt Line's costs would have revealed that "the Belt Line's $210 rate is justified by its undisputed $220 per car average operating costs."  *Id.* at 6.

The Magistrate Judge considered and rejected this argument.  *See* ECF No. 581 at 30-32. He concluded that "the metric [Dr. Marvel] used to assess Belt Line's switch rate is based on sufficient facts and data and will assist the trier of fact in assessing that rate," and NPBL's argument that he "faile[ed] to assess Belt Line's costs goes to the weight, not the admissibility of his opinions and testimony on this point."  *Id.* at 32.  This decision is amply supported by the record and is not clearly erroneous.

As the Magistrate Judge observed, Dr. Marvel contends that "[t]he relevant question is whether NPBL could cut its rate to its owners, CSX and NS, to a level that would generate CSX container traffic [to NIT], and not make less money by doing so."  ECF No. 581 at 31 (quoting Marvel Reply ¶ 57).  And, as Dr. Marvel explains, the answer is "yes."  The evidence shows that NPBL's fixed costs "█████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████."

Marvel Reply ¶ 57.  As a result, "████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████

---

[4] NPBL cites Dr. Marvel's deposition testimony to suggest that he "failed to consider the critical factor of cost."  NPBL Br. at 8.  Not so.  In the cited testimony, Dr. Marvel acknowledges that because NPBL's current costs are covered by existing traffic, the relevant analysis turns on whether the "costs of handling . . . additional traffic" would be covered by revenues derived from "the amount [of additional traffic] that was being offered."  *Id.*  Plainly, Dr. Marvel *did* consider the record evidence on this point.  *See* Marvel Report ¶¶ 83-84; Marvel Reply ¶ 58 (noting that the record evidence reflects that CSX's proposals would have covered the costs of additional traffic to NIT and generated incremental revenue to NPBL).

██████████.”  *Id.*  This is particularly true when comparable terminal switching railroads charge significantly less for similar services.[5]  Marvel Report ¶ 54.

Moreover, Dr. Marvel evaluated NPBL's switch rate in the context of record evidence reflecting NPBL's repeated refusal to consider CSX's proposals "seeking mutually beneficial agreements for NPBL to provide CSX rail access to NIT at lower cost."  Marvel Report ¶ 57. Those proposals were reviewed by NPBL's management, who opined they would cover costs and generate additional revenue and operating income for NPBL.  *Id.*  As Dr. Marvel observed, NPBL's decision to reject those proposals "is consistent with NPBL maximizing NS's profits rather than its own."  *Id.* ¶¶ 82-84.

Ultimately, none of the issues raised by NPBL render Dr. Marvel's analysis of NPBL's switch rate unreliable under Rule 702.  As the Magistrate Judge correctly held, NPBL can address its purported concerns through cross-examination or in its own case at trial. ECF No. 581 at 30; *see also 14.38 Acres of Land*, 80 F.3d at 1079 (explaining that "perceived flaws" in expert's testimony "are matters properly tested in the crucible of adversarial proceedings; they are not the basis for truncating that process").

## CONCLUSION

CSX respectfully submits that given the present posture of this case, the Court should defer ruling on Defendants' objections to the Magistrate Judge's rulings on Defendants' motion to exclude.  If, however, the Court desires to proceed now on Defendants' objections, for the reasons stated above and those set forth in CSX's opposition to Defendants' *Daubert* motions (ECF No. 487), Defendants' objections should be overruled, and the Magistrate Judge's decision affirmed.

---

[5] NPBL does not object to the Magistrate Judge's decision that Dr. Marvel's rate comparisons are admissible.  *See generally* ECF No. 610; *see also* ECF No. 581 at 30-32.

Dated:  February 7, 2023                    Respectfully submitted,


                                            **CSX TRANSPORTATION, INC.**
                                            *By Counsel*

                                            */s/ Robert W. McFarland*
                                            Robert W. McFarland (VSB No. 24021)
                                            Benjamin L. Hatch (VSB No. 70116)
                                            V. Kathleen Dougherty (VSB No. 77294)
                                            Jeanne Noonan (VSB No. 87863)
                                            MᴄGᴜɪʀᴇWᴏᴏᴅs LLP
                                            World Trade Center
                                            101 West Main Street, Suite 9000
                                            Norfolk, Virginia  23510-1655
                                            Tel.:  (757) 640-3716
                                            Fax:  (757) 640-3930
                                            rmcfarland@mcguirewoods.com
                                            bhatch@mcguirewoods.com
                                            vkdougherty@mcguirewoods.com
                                            jnoonan@mcguirewoods.com


                                            J. Brent Justus (VSB No. 45525)
                                            Ashley P. Peterson (VSB No. 87904)
                                            W. Cole Geddy (VSB No. 93511)
                                            MᴄGᴜɪʀᴇWᴏᴏᴅs LLP
                                            Gateway Plaza
                                            800 East Canal Street
                                            Richmond, Virginia  23219-3916
                                            Tel.:  (804) 775-1000
                                            Fax:  (804) 698-2026
                                            bjustus@mcguirewoods.com
                                            apeterson@mcguirewoods.com
                                            cgeddy@mcguirewoods.com

## CERTIFICATE OF SERVICE

I certify that on this 7th day of February 2023, a true and correct copy of the foregoing was served on all counsel of record via Notice of Electronic Filing by filing with the Court's CM/ECF system.

CSX TRANSPORTATION, INC.
*By Counsel*

/s/ Robert W. McFarland
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
V. Kathleen Dougherty (VSB No. 77294)
Jeanne Noonan (VSB No. 87863)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia  23510-1655
Tel.:  (757) 640-3716
Fax:  (757) 640-3930
rmcfarland@mcguirewoods.com
bhatch@mcguirewoods.com
vkdougherty@mcguirewoods.com
jnoonan@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
W. Cole Geddy (VSB No. 93511)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219-3916
Tel.:  (804) 775-1000
Fax:  (804) 698-2026
bjustus@mcguirewoods.com
apeterson@mcguirewoods.com
cgeddy@mcguirewoods.com