UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| CSX TRANSPORTATION, INC., ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Case No. 2:18-cv-530 |
| ) | |
| NORFOLK SOUTHERN RAILWAY ) | |
| COMPANY, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

**DEFENDANTS' CONSOLIDATED REPLY IN SUPPORT OF THEIR OBJECTIONS TO THE DENIAL OF THEIR RULE 702 MOTION AND MIL #5 TO EXCLUDE THE <u>OPINIONS OF PROF. HOWARD P. MARVEL</u>**

Defendants Norfolk Southern Railway Company ("NS") and Norfolk and Portsmouth Belt Line Railroad Company ("NPBL" or "Belt Line"), by counsel and pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 72, submit this consolidated reply in support of their objections to the Magistrate Judge's denial of NS's Motion to Exclude Opinions of Prof. Howard P. Marvel [ECF No. 465] and Belt Line's Motion in Limine #5 [ECF No. 473]. Defendants object to the Order [ECF No. 580] and oral ruling [ECF No. 579] that denied these motions.[1]

<u>ARGUMENT</u>

**1.    The Court Already Determined That CSX's Damages Model is Defective.**

CSX admits, as it must, that the Court's Summary Judgment Opinion [ECF No. 559] engaged in a detailed analysis finding that CSX's damages model is "fatally flawed in that it does

---

[1]    CSX argues that the Court should defer ruling on Defendants' objections until CSX completes its appeals of the Court's prior rulings on summary judgment [ECF No. 559] and motions to dismiss [ECF No. 613]. Opp. at 5. While Defendants disagree with CSX's characterization that the future is "uncertain," they acknowledge that a ruling on their objections is not necessary until a trial is scheduled.

not even attempt to separate harm stemming from the limited conduct within the limitations period (physical delays of economically unviable trains) from the established inertial effects of the acts committed prior to, or during the 2009-2011 period." ECF No. 559 at 51. CSX resorts to arguing that the Court's Summary Judgment Opinion somehow "underscores that Prof. Marvel's opinions should not be excluded before trial." Opp. at 6. Attempting to support this bald assertion, CSX first argues that the Court's Summary Judgment Opinion did not evaluate Prof. Marvel's "qualifications or experience" or the "relevance" of Prof. Marvel's opinions. CSX also argues that the Court's Summary Judgment Opinion contemplated that Prof. Marvel would be permitted to testify about "disputed facts and conflicting expert opinions" to the extent they "reveal genuine disputes regarding the propriety of CSX's market definition." *Id.*

Each of CSX's arguments is nothing more than a red herring designed to avoid the ultimate issue – that the Court's Summary Judgment Opinion found that Prof. Marvel's damages model is flawed in its construction, in that it made no effort to identify, disentangle and segregate multiple causal factors, which is precisely the type of situation that Rule 702 and *Daubert* are intended to address. *See* Fed. R. Evid. 702(b)-(c) (requiring expert opinions be "based on sufficient facts or data" and "the product of reliable principles and methods"). Defendants' criticism of Prof. Marvel's damages model—like the Court's findings in its Summary Judgment Opinion—has nothing to do with Prof. Marvel's "qualifications or experience" or the "relevance" of Prof. Marvel's opinions. It certainly has nothing to do with Prof. Marvel's opinions about "relevant market," which is a wholly distinct issue and element from damages. What it does have everything to do with is that it is flawed in its total insensitivity to multiple causal factors, and that is precisely what the Court's Summary Judgment Opinion found. The Magistrate Judge did not consider the

Court's summary judgment findings. That failure is reversable error that this Court should correct by excluding Prof. Marvel's models.

2. **Contrary to CSX's Opposition, *It's My Party* is On Point and Supports Excluding Prof. Marvel's Opinions About NIT Intensive Ocean Carriers.**

NS's motion objects, in part, to Prof. Marvel's faulty premise that certain ocean carriers have an inherent preference for NIT and cannot avoid calling at NIT. This faulty premise is a foundational building block of Prof. Marvel's regression models, and it poisons the results. His regression models take this faulty premise and find (1) ocean carriers with an inherent preference for NIT are preordained to suffer anticompetitive harm because they cannot move out of NIT even if they are being charged higher prices, and (2) CSX will not be able to compete (and thus, lose profits) for ocean carriers that cannot move out of NIT. This faulty premise drives the results of Prof. Marvel's models, and it is unsupportable in law or fact.

CSX has cited no case law supporting this theory of inherent preference. But NS has cited a Fourth Circuit decision which addressed a strikingly similar theory and rejected it outright under Federal Rule of Evidence 702. *It's My Party Inc. v. Live Nation, Inc.*, 88 F. Supp. 3d 475, 483 (D. Md. 2015), *aff'd*, *It's My Party*, 811 F.3d 676, 683 (4th Cir. 2016). In *It's My Party*, the District Court of Maryland considered a theory of whether certain artists have an inherent preference for certain types of theaters to perform music shows. *See It's My Party*, 88 F. Supp. 3d at 486-87. The court determined that the expert's assertion that "certain artists prefer amphitheaters" was not based on "sufficient facts or data" despite having actual testimony from artists that such a preference existed (unlike here, where CSX has no testimony from ocean carriers that they have an inherent preference for NIT). *Id.* CSX argues the Court need not follow *It's My Party* because it is not controlling. Opp. at 9.

Not so. *It's My Party* was appealed to the Fourth Circuit and affirmed. The Fourth Circuit agreed with the district court's rejection of the theory that certain artists prefer one type of music venue over other types of music venues, stating that it is "akin to claiming that Pepsi and Coke are in different markets because consumers generally prefer one or the other. Mere consumer preference does not indicate what Pepsi enthusiasts would do in response to an increase in price." *It's My Party*, 811 F.3d 676, 683 (4th Cir. 2016). The Fourth Circuit's decision is on point here.

3.  **CSX's Ocean Carrier Harm Models are Incapable of Proving What They Purport to Prove.**

Prof. Marvel's models purporting to show ocean carriers were harmed are uninformative because the models cannot prove that ocean carriers paid higher prices due to purported anticompetitive conduct at NIT. Prof. Marvel admitted this himself.

> Q: … Just to confirm, your damages model, like your [harm to ocean carrier model], does not distinguish between anticompetitive effects and legitimate competitive differences, right?
>
> A: It does not, no.

ECF No. 469, at 22. CSX argues that NS "cherry-picked" this excerpt, but noticeably, CSX does not dispute the accuracy of the testimony itself or that the flaw, in fact, exists. Indeed, the Magistrate Judge also acknowledged that this testimony is not in dispute: "There appears to be little dispute that Prof. Marvel's pricing and margin model does not distinguish between anticompetitive and legitimate competitive factors. Thus, his conclusion about harm to competition (specifically ocean carriers) is not supported by testing as he, himself, acknowledged." Jan. 10, 2023, Hearing Trs., at 17 (ECF No. 581). That NS did not provide a competing model has no bearing on the flaws inherent in Prof. Marvel's models acknowledged by Prof. Marvel himself and the Magistrate Judge. The proper outcome is to exclude Prof. Marvel's models.

4. **Prof. Marvel Failed to Evaluate Price in Eliminating Drayage from the Relevant Market.**

With respect to the relevant market, instead of responding to the Belt Line's arguments about the need to evaluate price, CSX avoids them altogether by doubling down on Prof. Marvel's inadequate operational critique of drayage. ECF No. 620 at 14. Nowhere does CSX explain why Prof. Marvel used price as the *only* variable in comparing the Belt Line's rate to other terminal railroads but *did not use price at all* in comparing rail to drayage at NIT. His failure is particularly confounding because ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Omission of price in a product comparison is fatal where the product is indisputably used in the relevant market. This was the holding of the Eight Circuit in *H.J., Inc.* when it stated, "[w]ithout a comparison of relative costs, bare conclusions of one product's superior quality are meaningless." *H.J., Inc. v. IT&T*, 867 F.2d 1531, 1538 (8th Cir. 1989). As the Court explained, "The question of relative cost is not merely academic; it is an essential consideration of any rational purchaser . . . in making the decision to buy one product over another." *Id*. at 1539 n.3.

CSX's argument that this omission is merely fodder for cross-examination contradicts the Fourth Circuit's holding in *Sardis* just two years ago. *See Sardis v. Overhead Door Corp.*, 10 F.4th 268, 291 (4th Cir. 2021) (reversing district court's admission of expert testimony in products liability case because omission of material data is grounds for exclusion, not cross-examination).

CSX's discussion of the purported "Cellophane Fallacy" similarly dodges Prof. Marvel's methodological flaws. ECF No. 620 at 15; ECF No. 475-1, ¶ 49. CSX states only that "[t]he record evidence reflects that NPBL's switch rate has been artificially inflated" and that "drayage marginally competes on price only at this supracompetitive level." ECF No. 620 at 15. Yet Prof. Marvel did not analyze the price of drayage or the competitive price level for rail traffic, much less whether ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Because Prof. Marvel relies on assumption rather than analysis, and ignores price altogether in his product comparison, his relevant market opinion must be excluded.

5.     **Prof. Marvel Ignores the Belt Line's Costs in Evaluating its Switching Rate.**

Prof. Marvel conceded that the Belt Line's rate should cover its costs. *See* ECF No. 581 at 31:14-25. Like with drayage, however, he did not evaluate cost at all, whether fixed or variable. ECF 475-4 at 90:11-91:16, 92:4-10, 168:9-25. He also does not dispute, because he cannot, that the Belt Line rate is consistent with its average operating costs based on more than a decade of data.

CSX attempts to avoid this flaw by reframing the issue—arguing that the real question is whether the Belt Line could support a special rate for CSX while still covering its costs with existing industry customers. Yet this new question does not change Prof. Marvel's actual opinion, which is that the Belt Line's existing rate is too high. As to that opinion, it is indisputable that Prof. Marvel failed to evaluate the essential element of cost. In fact, even for CSX's reframed question, Prof. Marvel did not actually analyze whether additional traffic would lower the Belt Line's costs, because he did not analyze cost at all. Recitation of general economic principles is no substitute for the analysis that Rule 702 requires.

Because Prof. Marvel failed to evaluate cost in critiquing the Belt Line's switching rate, notwithstanding his own testimony that the rate should cover cost, his opinion is no different from the opinion rejected in *Sardis*. As the Fourth Circuit stated, such an opinion "may even be right, [but] it is no more than a hypothesis, and it thus is not knowledge, nor is it based upon sufficient facts or data or the product of reliable principles and methods applied reliably to the facts of the case." *Sardis*, 10 F.4th at 291 (quoting *Nease v. Ford Motor Corp.*, 848 F.3d 219, 232 (4th Cir. 2017)). Prof. Marvel's analysis is equally flawed and inadmissible.

## **CONCLUSION**

For the foregoing reasons, this Court should reverse the Magistrate Judge's denial of NS's Motion and Belt Line's MIL #5 as clearly erroneous and contrary to law. Defendants respectfully request the Court to exclude Prof. Marvel's opinions and economic models consistent with their motions.

Dated: February 13, 2023

**NORFOLK AND PORTSMOUTH BELT LINE COMPANY**

Respectfully submitted,

**NORFOLK SOUTHERN RAILWAY COMPANY**

*/s/ W. Ryan Snow*
James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Alexander R. McDaniel, VSB No. 92398
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
amcdaniel@cwm-law.com

*/s/ Michael E. Lacy*
Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
Massie P. Cooper (VSB No. 82510)
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-6061
Email: alan.wingfield@troutman.com
Email: michael.lacy@troutman.com
Email: massie.cooper@troutman.com

John C. Lynch (VSB No. 39267)
Kathleen M. Knudsen (VSB No. 90845)
TROUTMAN PEPPER HAMILTON SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7500
Facsimile: (757) 687-7510
Email: john.lynch@troutman.com
Email: kathleen.knudsen@troutman.com

Tara L. Reinhart
Thomas R. Gentry
Meghan F. McConnell
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7000
tara.reinhart@skadden.com
thomas.gentry@skadden.com
meghan.mcconnell@skadden.com