**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

CSX TRANSPORTATION, INC.,
individually and on behalf of NORFOLK
& PORTSMOUTH BELT LINE
RAILROAD COMPANY,

        Plaintiff,

v.                                                            Civil Action No. 2:18-cv-530-MSD-RJK

NORFOLK SOUTHERN RAILWAY
COMPANY, *et al.*,

        Defendants.

—————————————————/

**CSX TRANSPORTATION INC.'S CONSOLIDATED OPPOSITION**
**TO NS'S AND NPBL'S MOTIONS TO DISMISS**

      Plaintiff CSX Transportation, Inc. ("CSX") submits the following consolidated opposition to the Motion to Dismiss filed by Defendant Norfolk Southern Railway Company ("NS") (*see* ECF Nos. 614 (Motion), 615 (Brief in Support)), and the Supplemental Motion to Dismiss filed by Defendant Norfolk and Portsmouth Belt Line Railway ("NPBL") (*see* ECF Nos. 616 (Motion), 617 (Brief in Support)) (together, the "Motions").

**<u>INTRODUCTION</u>**

      Defendants moved to dismiss CSX's state law claims based on the statute of limitations at the outset of this case. This Court denied those motions. Now, more than four years into this litigation, Defendants once again move to dismiss CSX's remaining state law claims. Although Defendants purport to seek dismissal of those claims under Rule 12(c) of the Federal Rules of Civil Procedure—a rule designed to test the sufficiency of the parties' pleadings—Defendants' arguments are not limited to the allegations in CSX's Complaint. To the contrary, Defendants cite

1

extensively to the summary judgment record and the Court's prior evaluation of that evidence in its opinion on summary judgment.  As this Court has observed, however, Defendants did not move for summary judgment on CSX's injunctive relief claims, so CSX did not *oppose* any such arguments.  As a result, "while there is an extensive evidentiary record before the Court, CSX's detailed <u>responsive</u> evidence in opposition to summary judgment was—appropriately—<u>not</u> tailored to be 'responsive' to assertions about the availability of injunctive relief, <u>because Defendants had advanced no such claim</u>."  ECF No. 559 at 82 (emphasis in original).  Defendants cannot avoid their prior strategic decisions by shoehorning untimely summary judgment arguments under Rule 12(c).  *See Russo v. City of Hartford*, 419 F. Supp. 2d 134, 143–44 & n.7 (D. Conn. 2006) (rejecting defendant's attempt to dispose of a claim via Rule 12(c) after initially "making the choice not to move for summary judgment on that claim," explaining that Rule 12(c) "is not a substitute for summary judgment" and should not be used to "allow the [defendant] to second-guess its own strategic decision to bring only a partial summary judgment motion").

In addition to the procedural deficiencies, the Motions fail substantively.  The Motions raise complex questions of Virginia law.  Although Defendants insist that it is "well-settled" in Virginia that an injunctive relief claim must be dismissed if a related damages claim is time-barred, multiple Virginia state courts—including the Supreme Court of Virginia—have held otherwise.  *See, e.g.*, *Armstrong v. Bryant*, 189 Va. 760, 769 (1949) (when a "considerable portion" of the plaintiff's claimed damages "might be barred by the statute of limitations," the plaintiff may nonetheless be entitled to pursue and obtain prospective injunctive relief).  And while equity "follows the law" to prevent a plaintiff from recovering in equity relief that would be unavailable on a time-barred legal claim, that maxim does not extend to cases like this one, in which the plaintiff seeks *prospective* injunctive relief to prevent *future* harm caused by *ongoing* wrongful

conduct.  Here, CSX's claim for injunctive relief overlaps not at all, as a remedial matter, with its claim for damages; the requested injunctive relief will not compensate CSX for past damages or change past conduct, and a damages award will not compel Defendants to alter their conduct in the future.  Multiple Virginia cases recognize and support this distinction.  For this reason, Defendants' Motions should be denied.

Ultimately, however, this Court need not grapple with these difficult questions of Virginia law or revisit its prior rulings denying Defendants motions to dismiss and for summary judgment. As CSX has explained, the more efficient path forward is to enter final judgment on CSX's federal claims under Rule 54(b) so that CSX can appeal those rulings, and stay further proceedings— including on the Motions—while the appeal is pending.  *See* ECF Nos. 623, 624.  Should CSX prevail on appeal, the case will be remanded for jury trial on CSX's damages claims, federal injunctive relief claims, or both.  This means that the present dispute as to the availability of prospective injunctive relief under state law may well become moot as a practical matter, or at least deferred until after the trial.

## PROCEDURAL BACKGROUND

CSX filed its Complaint on October 4, 2018, asserting, among other things, claims for conspiracy and monopolization under federal antitrust law (Counts I–IV) and breach of contract (Count V) and common law and statutory conspiracy (Counts VIII and IX) under Virginia law. For all claims, CSX sought two distinct forms of relief: (1) damages to compensate for the substantial harm it has suffered as a result of Defendants' past wrongful conduct, and (2) prospective injunctive relief ordering Defendants to cease their conspiratorial and anticompetitive conduct and installing an independent NPBL Board to ensure that CSX receives fair and impartial

treatment in the future.  *See* ECF No. 1; *see also* ECF No. 592 (outlining CSX's requested prospective injunctive relief).

In November 2018, NS and NPBL moved to dismiss CSX's Complaint.  Both argued at length that CSX's state law claims were barred by the statutes of limitations.  *See* ECF No. 28 at 16–19; ECF No. 35 at 7–19.  The Court rejected that argument, finding that CSX had alleged "multiple wrongful acts" supporting those claims, including within the applicable limitations periods.  *See* ECF No. 66 at 35–40.

In April 2021, NS and NPBL moved for summary judgment.  Defendants again asserted that CSX's state law damages claims were time-barred.  *See* ECF No. 308 at 16–19; ECF No. 303 at 15–22.  The Court agreed in part.[1]  *See* ECF No. 559.  It observed that the record contained "facially strong evidence" of anticompetitive activity in 2009 and 2010, as well as evidence that Defendants were positioned to engage in similar conduct in the future.  *Id.* at 83, 85.  The Court nonetheless held that CSX could not recover damages on its state law conspiracy claims, because those claims were based in part on conduct that occurred prior to the limitations period, or, to the extent based on new overt acts, there was insufficient record evidence to support proceeding to trial.  *See id.* at 98.  The Court likewise held that CSX could not recover damages on its breach of contract claim against NS "based on pre-October 2013 conduct."  *Id.* at 99.  Neither NS nor NPBL moved for summary judgment on CSX's state law claims for prospective injunctive relief, so the Court did not address those claims.  *See id.* at 103 n.46; *see also* ECF No. 613 at 27 (observing that, as neither NS nor NPBL has ever sought dismissal of CSX's state law injunctive relief claims, "the legal viability of any remaining state law claim seeking injunctive relief is an open question").

---

[1] CSX respectfully disagrees with the Court's summary judgment rulings, and it expressly preserves and does not waive its ability to challenge those adverse rulings at an appropriate time.

4

On February 7, 2023—more than four years after CSX's Complaint was filed—Defendants moved to dismiss CSX's state law claims for injunctive relief under Rules 12(c) and 12(h)(2) of the Federal Rules of Civil Procedure.  *See* ECF Nos. 615 at 5, 617 at 3–4.

## LEGAL STANDARD

Rule 12(h)(2) provides that a defendant may raise the defense that a plaintiff has "fail[ed] to state a claim upon which relief can be granted" by motion under Rule 12(c) or at trial.  FED. R. CIV. P. 12(h)(2)(B)–(C).  Rule 12(c) allows a party to "move for judgment on the pleadings."  FED. R. CIV. P. 12(c).  "A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)."  *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013); *see also Shahabuddin v. JTH Tax, Inc.*, Civil No. 2:18-cv-16, 2018 WL 11229924, at *2 (E.D. Va. July 31, 2018) ("Consistent with the Rule 12(b)(6) standard, 'a rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact.'") (Davis, C.J.) (quoting *Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014)).  Rule 12(c) "is not a substitute for summary judgment."  *Russo*, 419 F. Supp. 2d at 143–44 & n.7.

## ARGUMENT

Under Virginia law, injunctive relief is an available remedy when a statute provides for such relief or, in the absence of statutory authority, when a party can demonstrate the "traditional prerequisites" of "irreparable harm and lack of an adequate remedy at law."[2]  *Levisa Coal Co. v. Consolidation Coal Co.*, 276 Va. 44, 61 (2008); *see also Worsham v. Worsham*, 867 S.E.2d 63,

---

[2] There is no dispute that injunctive relief is available for each of CSX's state law claims.  *See* Va. Code § 18.2-500 (statutory business conspiracy); *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 26–27 (1993) (common law and statutory conspiracy claims); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1055 (4th Cir. 1985) (affirming enjoining defendant from breaching a contract).

74–75 (Va. Ct. App. 2022) (noting that "injunctive relief" and "monetary damages" are distinct and alternative remedies).  CSX properly pleaded these elements in its Complaint, which ought to end the inquiry under Rule 12(c).  *See, e.g.*, ECF No. 1 ¶ 87(f).

Though ultimately unnecessary given that the Motions before the Court are limited to the pleadings, CSX also proffered evidence at summary judgment that satisfies these requirements:

- ***Irreparable Harm:***  Defendants have engaged in a conspiracy to exclude CSX from on-dock rail at NIT.  As a result, CSX endures an exorbitant $210 switch rate to access NIT by rail with no prospect of a competitive rate, all while knowing—based on experience—that it will not receive adequate service even at that rate.  CSX's Complaint also identifies the *threatened*—still pending—trackage rights fee increase as part of the ongoing conspiracy.  When CSX sought to obtain a competitive rate and service in 2018, Defendants thwarted that effort.  CSX sued that same year.  *See* ECF No. 324 ¶¶ 62–71.  As the Court found on summary judgment, the record contains sufficient evidence to permit the conclusion that "there is a substantial risk that NSR will, in the future, engage in anticompetitive efforts to manipulate NPBL or otherwise <u>unlawfully</u> prevent CSX from utilizing the NPBL's tracks to NIT."  ECF No. 559 at 85 (emphasis in original).

- ***No Adequate Legal Remedy:***  Just months before CSX filed its Complaint, Defendants blocked fair consideration of CSX's 2018 service proposal that would have benefitted NPBL, revealing their intent to preserve the monopolistic status quo to CSX's detriment.  *See* ECF No. 324 at ¶¶ 62–71.  Defendants proffer no evidence suggesting they have abandoned—or intend to halt—this anticompetitive conduct, which means that historical damages cannot adequately compensate CSX.  *See* ECF Nos. 542, 543.  Moreover, while CSX respectfully disagrees that it is barred from recovering damages by the statute of limitations, that argument further underscores that an injunction to prevent *ongoing and future harm* is appropriate and necessary.

Neither Defendants' own statements nor anything in the record suggests that Defendants will deviate from their illegal course of conduct in the future.  *See, e.g.,* ECF No. 541 at 10.  This is precisely the type of situation for which prospective injunctive relief is available under Virginia law.  *See, e.g.*, *Black & White Cars, Inc. v. Groome Transp., Inc.*, 247 Va. 426, 431–32 (1994) (holding injunctive relief is available "to protect against both actual and threatened violations [of law]").

Defendants fail to grapple with the procedural limitations of their Motion and the law of the case. Both Defendants previously challenged under Rule 12(b)(6) the sufficiency of CSX's state law claims in light of the statute of limitations. This Court squarely rejected those challenges and found that CSX adequately pleaded its claims, including for injunctive relief. *See* ECF No. 66 at 23–24. Defendants make no effort to distinguish the record for purposes of their present Motions from that which existed at the time of their Rule 12(b)(6) motions, and they cite nothing in their Answers that would bear on the statute of limitations analysis. If the Court does not defer ruling on the Motions, as CSX has urged (ECF No. 623), they can be denied under the law of the case doctrine, or, barring that, for the same reasons that Defendants' Rule 12(b)(6) Motions were denied.

## I.     CSX's state law claims for injunctive relief can proceed apart from its state law damages claims.

Defendants first contend that the Court dismissed CSX's state law injunctive relief claims by granting Defendants' motions for summary judgment on CSX's state law damages claims. *See* NS Br. at 5–6; NPBL Br. at 4–5. The Court has already addressed and denied this very argument— twice. At the last argument hearing, this Court explained that it did not rule on CSX's state law injunctive relief claims because Defendants did not move for summary judgment as to those claims. *See* Jan. 18, 2023 Hr'g Tr. at 77 (explaining that "when the Court issued its opinion, Document 559, that Footnote 46 was intended to signal to all of the parties that the injunction claim was outstanding"); *see also* Order, Jan. 16, 2023, ECF No. 602 at 2 (noting that, at summary judgment, "there was no applicable motion on state injunction claims before the Court"). At summary judgment, the Court addressed CSX's state law claims for *damages*, but it left the state law claims for injunctive relief for trial. *See* ECF No. 559 at 98, 103 & n.46.

Apart from the fact that Defendants did not raise the argument, the Court's decision not to award summary judgment on the state law claims for injunctive relief was correct, because the running of the statute of limitations as to a damages claim is not a defense to claims for *prospective* equitable relief under Virginia law.  *See Armstrong*, 189 Va. at 769 (explaining that, when a "considerable portion" of the plaintiff's claimed damages "might be barred by the statute of limitations," the plaintiff lacks an adequate remedy at law and may pursue and obtain prospective injunctive relief); *Willems v. Batcheller*, 109 Va. Cir. 319, 2022 WL 18392967, at *8 (Fairfax Cir. Ct. Mar. 6, 2022) (holding that nuisance and trespass claims were not barred by the statute of limitations or laches "inasmuch as only an injunction is sought and the condition is continuing"); *Downey v. Verizon Virginia, LLC*, 86 Va. Cir. 526, 2013 WL 8029458, at *1–2 (Greene Cnty. Cir. Ct. July 23, 2013).

The *Downey* case is instructive on this point.  In *Downey*, the defendant allegedly placed a telephone pole on the plaintiff's property without permission.  *See* 2013 WL 8029458, at *1–2. The plaintiff sued for trespass, seeking damages and injunctive relief.  *Id.*  The court dismissed the damages claim as time-barred, because the alleged trespass occurred more than five years before the complaint was filed.  *Id.*  But the court did *not* dismiss the plaintiff's claim for prospective injunctive relief, explaining that "the factual assertions set forth in the pleadings are sufficient to allow the court to consider *whether an injunction of some type* should be granted," and the statute of limitations "*would not be a bar* to determining whether any injunctive relief would be appropriate."  *Id.* (emphasis added); *see also Downey*, 2013 WL 9636578, at *2 (dismissing with prejudice plaintiff's damages claims as barred by the statute of limitations but noting "[t]he case will continue to remain on the court's docket based on the pending claim for injunctive relief").

The same holds here.  CSX alleged in its Complaint that Defendants' ongoing tortious and conspiratorial actions and NS's continued breaches of contract will cause CSX substantial harm in the future.  This Court upheld the Complaint against a statute of limitations challenge at the motion to dismiss phase.  The Court further declined to grant summary judgment as to CSX's injunctive relief claims, noting among other things that CSX had adequately shown threatened harm.  *See* ECF No. 559 at 85 (CSX's record evidence "present[s] a triable issue as to whether [NS] will use its ability to control the NPBL Board to harm CSX in the future in the same way it allegedly did so in the past"); *see also id.* at 86 (finding that "nothing" in the record "indicate[s] that the threat to CSX inherent in [Defendants'] past conduct would cease in the foreseeable future").  Accordingly, as in *Downey*, CSX's claim for prospective injunctive relief may proceed despite the Court's dismissal of its corresponding damages claims on limitations grounds.

The cases cited by Defendants do not suggest otherwise.  Defendants rely primarily on *Blankenship v. Consolidation Coal Co.*, in which two groups of plaintiffs brought Virginia state law claims for damages and injunctive relief based on damage to their property allegedly caused by defendant's "dewatering" activities in an underground mine some fifteen years earlier.  *See* 850 F.3d 630, 633 (4th Cir. 2017).  The district court granted summary judgment to the defendant on the plaintiffs' damages claims on limitations grounds, because the plaintiffs' only possible injury occurred, if at all, more than five years before the complaint was filed.  *Id.* at 634; *see also Blankenship v. Consolidation Coal Co.*, Case No. 1:14-cv-00048, 2015 WL 6449700, *8 (W.D. Va. Oct. 26, 2015) (district court opinion granting summary judgment after finding that "the plaintiffs' *legal* claims are time barred") (emphasis added); *Graham v. Consolidation Coal Co.*, No. 1:13-cv-00011, 2015 WL 6449691, at *9 (W.D. Va. Oct. 26, 2015) (same in companion case).  In the consolidated appeal, the plaintiffs "[did] not take issue with [the district court's application

of] these principles of Virginia law," instead arguing that the applicable statutes of limitations were tolled by the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). *Blankenship*, 850 F.3d at 635. The Fourth Circuit disagreed and affirmed the district court. *Id.*

In affirming dismissal of plaintiffs' claims for injunctive relief, the Fourth Circuit stated that, "[i]njunctive relief is a remedy, not a cause of action." 850 F.3d at 640. The court then observed that, "[b]ecause the causes of action that provide the basis for any claimed relief are barred, the plaintiffs' request for injunctive relief is also barred." *Id.* According to Defendants, the Court must dismiss CSX's state law claims for injunctive relief based on these statements. *See* NS Br. at 5–6, NPBL Br. at 4–5.

But *Blankenship*'s cursory observations do not support dismissal here. The Fourth Circuit's comments must be understood in light of the record in that case, which makes clear that the plaintiffs alleged no continuing violation or prospective future harm that could support an award of injunctive relief. *See Blankenship*, 850 F.3d at 633 (noting that "Consolidation Coal completed its dewatering operation in 2003," but plaintiffs did not sue until 2011 and 2013). Indeed, the district court's summary judgment opinions did *not* hold that the plaintiffs' injunctive relief claims were barred by the statutes of limitations, despite granting summary judgment on that basis as to the damages claims. *See Blankenship*, 2015 WL 6449700, at *9. The district court instead concluded that injunctive relief was not available because, among other reasons, the plaintiffs "admit[ted] that they have never attempted to use the mine voids at issue and have no plans to use them in the future," and expert testimony demonstrated that any prospective property injuries would be "naturally occurring . . . without any action by the defendants." *Blankenship*, 2015 WL 6449700, at *9; *see also Graham*, 2015 WL 6449691, at *2 (noting that expert testimony

10

reflected that the requested remediation efforts "would not benefit the plaintiffs" because "the damage cannot be undone").  The Fourth Circuit's observation in *Blankenship* is thus consistent with Virginia case law—including *Armstrong* and *Downey*—allowing claims for *prospective* injunctive relief to proceed when the plaintiff alleges irreparable *future* harm.[3]

## II.    CSX's state law injunctive relief claims are not time-barred.

NS and NPBL also argue that CSX's injunctive relief claims are time-barred because, in Virginia, "equity follows the law."  *See* NS Br. at 10–11; NPBL Br. at 5–6.  But Defendants overread this principle.

The adage that "equity follows the law" emerged in the context of Virginia's historically separate legal and equitable judicial systems.  Historically, once a court of equity took jurisdiction over a particular matter, it could also adjudicate related legal claims.  *See Sanford v. Sims*, 192 Va. 644, 649 (1951) (observing that "[w]hile appellants' remedy for enforcing the forfeiture is purely legal, equity has in this case, without objection, taken cognizance of their cross-bills to enforce the right, under its power to retain a jurisdiction once acquired and enforce legal rights to administer

---

[3] Moreover, the plaintiffs in *Blankenship* and *Graham* attempted to assert standalone causes of action for injunctive relief.  *See Blankenship*, 2015 WL 6449700, at *1 (noting plaintiffs' complaint included "a count requesting injunctive relief"); *Graham,* 2015 WL 6449691, at *2 (W.D. Va. Oct. 26, 2015) (same).  As the cases cited by NS and NPBL confirm, standalone claims for injunctive relief are not actionable under Virginia law.  *See Brainchild Surgical Devices, LLC v. CPA Global, Ltd.*, No. 1:21-cv-554, 2022 WL 992734, at *5 (E.D. Va. Mar. 31, 2022) (dismissing standalone injunctive relief claim because, in "Virginia, injunctive relief is a remedy and not a cause of action and it is improper to frame a request for an injunction as a separate cause of action," but emphasizing that "[t]his ruling in no way precludes the Court from later imposing any equitable remedy" on plaintiff's substantive claims) (internal citation omitted); and *OROS, Inc. v. Dajani*, No. 1:19-cv-351, 2019 WL 2361047, at *5 & n.9 (E.D. Va. June 4, 2019) (dismissing standalone claim for injunctive relief because "[a]n injunction is a form of remedy, not an independently cognizable cause of action," but noting that plaintiff may be entitled to injunctive relief as a remedy for its substantive state and federal claims).  Here, CSX has not asserted a standalone claim for injunctive relief; it has asserted state law claims for conspiracy and breach of contract, and it seeks both compensatory damages and an injunction with respect to those claims.

complete relief"). When adjudicating what would ordinarily be legal claims, an equity court would take great care to "respect the applicable statute of limitations" for those legal claims. *Id.* Thus, under the "equity follows the law" principle, "if a legal demand be asserted in equity which at law is barred by statute," the legal demand would be "equally barred in equity" as well. *Id.* But that does not mean that *equitable* claims would be subject to the same statute of limitations.

After Virginia's legal and equitable courts were combined, this principle continued to prevent parties from "disguis[ing] a legal claim as an equitable one in order to avoid the statute of limitations." *In re Poe*, No. 1:21-cv-867, 2022 WL 2820095, at *6 (E.D. Va. July 18, 2022) (citing *Belcher v. Kirkwood*, 238 Va. 430 (1989)). Again, however, this did not mean that courts were required to apply legal limitations principles to equitable claims. Defendants' citation to *Belcher* illustrates this point.

*Belcher* involved a dispute between former lovers who loaned each other money. *See* 238 Va. at 431. After the relationship soured, the plaintiff sued the defendant to recover funds. *See id.* When the defendant asserted that the claim was barred by the three-year statute of limitations for oral contracts, the plaintiff responded that her equitable claim for unjust enrichment was not subject to the three-year limitations period. *See id.* at 432. The Supreme Court of Virginia rejected this argument, holding that the plaintiff could not escape the statute of limitations for her damages claim at law by merely recasting it as an equitable claim seeking to recover *the same monetary relief* for the same alleged contractual breach. *See id.* at 433.

The other cases Defendants cite likewise involve attempts to recover for *past* harms under the guise of equitable relief. For example, in *Kappa Sigma Fraternity*, the plaintiff brought a declaratory judgment action in 2001 seeking equitable relief for harm allegedly caused by an improperly enacted corporate resolution in 1974. *See Kappa Sigma Fraternity, Inc. v. Kappa*

*Sigma Fraternity*, 266 Va. 455, 459–65.  The Supreme Court of Virginia held that the plaintiff's cause of action was time-barred—despite having been pleaded in equity—because the singular act complained of took place more than 25 years before the plaintiff filed suit.  *Id.* at 467.  As the Court explained, "we will not permit a complainant to use the declaratory judgment statute as a vehicle to circumvent the statute of limitations applicable to the substance of a complaint."  *Id.* at 465.

*Manotas v. Ocwen Loan Servicing, LLC* is equally unavailing.  In that case, the plaintiffs sued their mortgage lender eight years after they defaulted on their mortgage, asserting claims for breach of contract and declaratory and injunctive relief.  *See* 794 F. App'x 259, 261 (4th Cir. 2019).  The district court dismissed the plaintiffs' claims as time-barred.  *See id.* at 263.  The Fourth Circuit affirmed, concluding that all of the claims sought to redress alleged breaches of contract that occurred more than eight years before the suit was filed.  *See id.* at 266.  The Fourth Circuit explained that even the declaratory and injunctive relief claims—which purportedly sought the "prospective" relief of preventing a foreclosure sale—were asserted to remedy breaches that took place well outside the limitations period.  *See id.* at 263–65.  As *Manotas* explained, "equity follows the law" when, "[i]f the law were otherwise, the statute of limitations could be rendered meaningless merely by the filing of a declaratory judgment action."  *Id.* at 263 (citing *Board of Supervisors v. Thompson Assocs.*, 240 Va. 133 (1990)).

Unlike the plaintiffs in *Belcher*, *Kappa Sigma*, and *Manotas*, CSX has not asserted equitable claims in an attempt to recoup money damages or other relief for time-barred conduct.  To the contrary, CSX's state law claims seek two independent forms of relief, premised on two different types of conduct.  First, CSX seeks monetary damages to compensate for injuries caused by Defendants' past conduct—relief that this Court has found to be barred, at least in part, by the

applicable statutes of limitations.  *See* ECF No. 559 at 80, 103.  Second, and separately, CSX seeks prospective injunctive relief to prevent the ongoing and foreseeable future harm that will be caused by Defendants' *future* conduct.

As discussed above, state law claims for *prospective* injunctive relief—i.e., to prevent future threatened harm—may proceed even if corresponding damages claims have been dismissed on limitations grounds.  In *Downey*, for example, the plaintiff's trespass claim for damages was time-barred because the defendant's telephone pole had been on her property for nearly 20 years.  *See* 2013 WL 8029458, at *1–2.  Because the trespass continued, however, the plaintiff was entitled to proceed on claims for prospective injunctive relief.  *See id.*; *see also Armstrong*, 189 Va. at 769 (allowing claim for equitable relief to proceed even though it was likely that a related legal claim for "a considerable portion" of money damages might be barred by the statute of limitations); *Boerner v. McCallister*, 197 Va. 169, 171–72 (1955) (allowing claim for prospective injunctive relief because "an injury committed . . . is being constantly repeated, so that complainant's remedy at law requires the bringing of successive actions, the legal remedy is inadequate and the trespass will be prevented in equity by an injunction").  For these reasons, Virginia law does not support dismissal of CSX's claims for injunctive relief.

### III.   CSX's state law injunctive relief claims are not preempted.

NPBL alternatively argues that CSX's requested injunctive relief is preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 10101 *et seq.*  *See* NPBL Br. at 6–11; NS Br. at 7–9.  As NPBL acknowledges, this Court has already rejected this argument at the motion to dismiss stage.  *See* NPBL Br. at 6–7.  According to NPBL, however, the Court should revisit its decision because "[c]ontrolling law has changed."  *Id.* at 7 (citing *Edwards v. CSX Transp., Inc.*, 983 F.3d 112, 116 (4th Cir. 2020)).

NPBL is mistaken. *Edwards* is fully consistent with the Court's prior decision on ICCTA preemption, and it offers no basis for the Court to reconsider its ruling. *Edwards* involved claims seeking recovery for property damage allegedly caused by CSX's failure to allow a municipality to construct a sandbag dike across a "gap" in the levee through which its trains pass, allegedly resulting in "catastrophic" flooding. 983 F.3d at 115–16. The plaintiffs asserted negligence claims alleging, in essence, that "CSX should have operated, maintained, and constructed its rail line through the gap differently." *Id.* at 120. The district court dismissed the claims relating to CSX's operations, because "the [ICCTA] assigns exclusive regulatory authority over such matters to the [STB]." *Id.*

The Fourth Circuit affirmed, joining other federal courts of appeals in holding that ICCTA's *express* "preemptive reach can encompass common-law tort actions, in addition to statutes and ordinances." *Id.* The court explained, however, that

> not all common-law claims against railroads are preempted. The Act's preemptive scope is limited with respect to statutes and tort actions to the same degree. Our task, then, is to discern whether, in bringing the instant claims, Plaintiffs are actually "attempting to manage or govern rail transportation in a direct way."

*Id.* at 122 (citing *Franks Inv. Co. LLC v. Union Pac. R.R. Co.*, 593 F.3d 404, 411 (5th Cir. 2010) (en banc)).

The Fourth Circuit described two cases as providing "helpful guidance" on this issue. First, in *Elam v. Kansas City Southern Railway Co.*, the plaintiff brought negligence claims after crashing her car into the side of a train stopped at a road crossing. *See* 635 F.3d 796, 801 (5th Cir. 2011). *Elam* held that the plaintiff's negligence claim based on a state "antiblocking" statute was preempted, because it "directly attempts to manage" railroad operations, but that her simple negligence claim was not, because it had only "incidental" effects on rail operations. *Id.* at 807, 813. Second, in *Rushing v. Kansas City Southern Railway Co.*, the plaintiff brought negligence

15

and nuisance claims based on a railroad's construction of an "earthen berm" intended to dampen noise caused by a switching station. *See* 194 F. Supp. 2d 493, 496–97 (S.D. Miss. 2001). *Rushing* held that state nuisance and negligence claims that sought to enjoin the railroad's operations were preempted, but state nuisance and negligence claims seeking to restore the flow of rainwater disrupted by the berm were not. *Id.* at 499–500.

*Edwards* held that the plaintiffs' claims were preempted because they went "to the heart of the [STB's] jurisdiction: whether CSX should have allowed its tracks to be barricaded; whether CSX should have built a permanent floodgate over its tracks at the gap; and whether CSX should have used different materials in constructing its track bed." *Id.* at 122–23. *Edwards* acknowledged, however, that "voluntary agreements are not the sort of rail 'regulation' contemplated by the Act," and thus Plaintiffs' contract claims were "not expressly preempted." *Id.* at 121 & n.11. It also emphasized that whether a claim is *impliedly* preempted (i.e., whether it causes "unreasonable interference" with rail transportation), is "a fact-intensive inquiry that requires an 'assessment of the effect of providing the claimed remedy." *Id.* at 121 & nn.11, 12 (citing *PCS Phosphate Co. v. Norfolk S. Corp.*, 559 F.3d 212 (4th Cir. 2009)).

This Court's prior ruling rejecting NPBL's ICCTA preemption arguments is fully consistent with *Edwards*. *See* ECF No. 66 at 19–25. The Court found NPBL's preemption argument "meritless" because the Fourth Circuit and STB interpret the ICCTA as *expressly* preempting only those laws or actions that "may reasonably be said to have the effect of 'managing' or 'governing' rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation." *Id.* at 21–22 (citing *Fla. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1331 (11th Cir. 2001)). The same is true after *Edwards*, which merely confirmed that express preemption "*can* encompass common-law tort

actions, in addition to statutes and ordinances," when those claims "attempt[ ] to manage or govern rail transportation in a direct way.'"  983 F.3d at 122 (emphasis added).

In its prior order, the Court also analyzed *implied* preemption, explaining that courts must look to whether the 'allegations, if pursued, would directly interfere with the STB's exclusive jurisdiction' over the regulation of railroads.  ECF No. 66 at 22 (citing *PCS Phosphate Co. v. Norfolk S. Corp.*, 559 F.3d 212 (4th Cir. 2009)).  The Court determined that CSX's claims were not impliedly preempted because it could award "injunctive relief to prevent Norfolk Southern and Belt Line from continuing to carry out such an antitrust or business conspiracy," including by, among other things, "establish[ing] an independent board structure" without treading on STB jurisdiction.  *Id.* at 24.

In its holding, this Court analogized to *PCS Phosphate*, which held that the plaintiff's claim for unfair trade practices, which sought to recover treble damages "for defendants' threats to abandon a railroad line," were impliedly preempted by the ICCTA, because "[i]f the court addressed the question of whether defendants had to continue operation of a railroad track, the court would have to adjudicate an issue that was within the exclusive jurisdiction of the STB."  ECF No. 66 at 24 (citing *PCS Phosphate*, 559 F.3d at 717).  On the other hand, the plaintiff's claims for breach of contract and unjust enrichment "did not intrude on the STB's jurisdiction because they related to prior conduct and agreements formed by the parties," which did not "have the effect of preventing or unreasonably interfering with railroad operations."  ECF No. 66 at 25.  *Edwards* explicitly did not reach the issue of implied preemption; however, it expressly cited *PCS*

*Phosphate* to articulate the same principles that this Court applied in rejecting NPBL's preemption argument.  Stated differently, *Edwards* has not altered the implied preemption analysis.[4]

## IV.   Defendants' remaining arguments for dismissal fail.

### A.  CSX's prospective injuries are redressable.

CSX seeks prospective injunctive relief to enjoin ongoing and future violations of state conspiracy and breach of contract law, to prohibit Defendants from conspiring to preclude CSX's ability to access NIT, and to install an independent NPBL Board and senior management.  *See supra* at 3–4.  Defendants contend that this requested relief will not redress CSX's injuries, essentially arguing that CSX cannot satisfy the redressability requirement of Article III standing.[5] *See* NS Br. at 12, NPBL Br. at 11.  But to satisfy redressability, CSX need show only that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (quoting *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  This requirement is "not onerous."  *Deal v. Mercer Cty. Bd. of Educ.*, 911 F.3d 183, 189 (4th Cir. 2018); *Equity In Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 100–01 (4th Cir. 2011) (explaining that redressability is met when a court's decision "would reduce 'to some extent' plaintiffs' risk or additional injury" or

---

[4] CSX is, of course, mindful of ICCTA preemption and the STB's authority—as *Edwards* illustrates, CSX itself asserts ICCTA preemption in litigation where appropriate.  In this case, CSX has taken care to identify and articulate requested injunctive relief that will not intrude on the STB's authority.  CSX has not sought an injunction fixing NPBL's rate or NS's trackage rights fee, nor has it sought an injunction purporting to direct Defendants to operate their rail lines in any particular manner or on any particular schedule.

[5] A standing analysis, including whether an injury is redressable, does not depend on the merits of a claim, but on whether the plaintiff is a proper party.  *See White Tail Park, Inc. v. Stroube,* 413 F.3d 451, 460–61 (4th Cir. 2005) ("whether a plaintiff's complaint could survive on its merits is irrelevant to the standing inquiry") (quoting *Libertad v. Welch,* 53 F.3d 428, 437 n.5 (1st Cir. 1995)).

when there is a "a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered") (citations omitted).

To establish redressability, a plaintiff "need not show that a favorable decision will relieve [their] every injury." *Sierra Club v. United States Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018) (citations omitted). Rather, plaintiffs need show only "that they 'personally would benefit in a tangible way from the court's intervention.'" *Id.* CSX has adequately alleged redressability in its Complaint, and indeed has now proffered evidence that it has suffered—and will continue to suffer—substantial harm from Defendants' conspiratorial conduct preventing CSX's access to NIT. CSX's evidence also reflects that NS has used—and will continue to use— its ability to control the NPBL Board to further Defendants' illegal aims, including by, among other things, defeating favorable rate proposals and installing former NS employees in senior NPBL management positions to ensure that NS's interests are protected above all. *See, e.g.*, ECF No. 559 at 85. To remedy these harms, CSX seeks an injunction that, among other things, establishes an independent NPBL Board and management that conducts NPBL business in accordance with its governing documents (including, for example, the requirement that NPBL facilitate switching for *all* of its owners, including CSX). Those proposed remedies would plainly redress CSX's injuries.

Moreover, contrary to Defendants' suggestion, CSX's injuries are not rendered speculative and non-redressable simply because the independent NPBL Board may or may not take any particular actions in the future. A remedy need not *guarantee* the plaintiff's desired outcome. *See Roe v. Shanahan*, 359 F. Supp. 3d 382, 407–08 (E.D. Va. 2019) (possibility that injury could still result did not make plaintiffs' injuries nonredressable), *aff'd sub nom.*, *Roe v. Dep't of Def.*, 947 F.3d 207 (4th Cir. 2020); *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at*

*Lansdowne, LLC*, 713 F.3d 187, 197–98 (4th Cir. 2013) (order nullifying exclusivity clauses would redress plaintiff's injuries, even though it would not guarantee outcome sought).

**B.   CSX has no adequate remedy at law.**

Defendants next argue that CSX has an adequate remedy at law, and is therefore not entitled to injunctive relief.  *See* NS Br. at 13–14; NPBL Br. at 11.  This argument—which Defendants have advanced multiple times—ignores that CSX seeks an injunction that will prevent Defendants from continuing their ongoing conspiratorial and anticompetitive conduct and breaches of contract *in the future*.  This prospective relief is entirely separate and distinct from CSX's request for damages, by which it seeks to recover for the harm Defendants have already inflicted.  Simply put, there is no overlap whatsoever between these requested remedies, and damages compensating CSX for past injuries could never direct change of Defendants' future conduct.[6]

As discussed above, state law claims for injunctive relief may proceed even when—indeed, especially when—corresponding damages claims have been dismissed on limitations grounds.  *See Downey*, 2013 WL 8029458, at *1–2.  As the Supreme Court of Virginia explained, "[a]s a general rule, where an injury committed by one against another is being constantly repeated, so that complainant's remedy at law requires the bringing of successive actions, the legal remedy is inadequate and the trespass will be prevented in equity by an injunction, the prevention of a multiplicity of actions at law being one of the special grounds of equity jurisdiction."  *Boerner*, 197 Va. at 171–72 (finding injunctive relief appropriate in the context of a continuing trespass).

---

[6] Further, under the current procedural posture of the case, monetary damages are unavailable for both CSX's past *and* ongoing harm.  Virginia courts have found that monetary damages are not an adequate remedy for ongoing injuries where some or all of the related damages claim would be barred by the statute of limitations.  *See, e.g.*, *Armstrong*, 189 Va. at 769.

Virginia courts have applied this same principle outside the context of trespass on real property.  For example, in *CG Riverview, LLC v. 139 Riverview, LLC*, a case involving a manager's refusal to resign from his position pursuant to the terms of an operating agreement, the Virginia circuit court focused on the ongoing nature of the injury—i.e., that the manager in question "[was] making, and will continue to make, decisions that would otherwise be made by another Manager, which could affect the future course of the companies."  98 Va. Cir. 59, 2018 WL 8798547, at *4 (Norfolk Cir. Ct. 2018).  The court concluded that the future harm alleged "is of such a nature that the company, its reputation, and its functions may be significantly altered by the decisions—a harm that would not be compensated or rectified by monetary damages."  *Id.*  So too here.  In this case, the NS-dominated NPBL Board will continue to make decisions that will affect the future of NPBL and CSX's ability to access on-dock rail at NIT going forward.  As the Court has already observed, the record evidence suggests that, absent judicial intervention, the Board will continue to take these actions, harming CSX and the broader international intermodal market.  *See* ECF No. 559 at 85–86.  That ongoing and future harm cannot be compensated by an award of monetary damages, but it can be rectified by injunctive relief.

To the extent that Defendants contend that CSX cannot obtain prospective injunctive relief simply because its future harm may *eventually* be calculable as monetary damages, that argument is nonsensical.  Under that theory, a plaintiff would be forced to file successive lawsuits year after year to recover monetary damages for ongoing injuries, and the court would have no means to stop the Defendants' ongoing injurious behavior before future harm occurs.  That would be inefficient and contrary to basic equitable principles, which provide courts with "wide latitude" to grant or deny injunctive relief.  *Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*, 3 F.4th 605, 614 (4th Cir. 2021) (citations omitted); *see also Buchanan v. Buchanan*, 174 Va. 255, 274 (1940)

21

(explaining that "if at law it falls short of what a party is entitled to, that founds a jurisdiction in equity"; an adequate remedy at law "must reach the whole mischief and secure the whole right of the party in a perfect manner, at the present time and in the future, otherwise equity will interfere and give such relief and aid as the particular case may require"). CSX has no "adequate remedy" if it must sue each and every time the Operating Agreement is breached or conspiratorial conduct occurs, leaving the parties stuck in an interminable cycle of never-ending litigation.  As the legal remedy available to CSX does not reach "the whole mischief" wrought by Defendants' conduct, CSX is entitled to prospective injunctive relief.  *Buchanan*, 174 Va. at 274.

The two cases cited by NS on this point are readily distinguishable.  In *SAS Institute, Inc. v. World Programming Ltd.*, the Fourth Circuit affirmed the district court's denial of a permanent injunction, in part because the plaintiff received a $79 million judgment that expressly included amounts for expected future losses.  874 F.3d 370, 386 (4th Cir. 2017).  That is plainly not the case here, as under the Court's rulings, CSX cannot recover monetary damages, whether for past or future harm.  In *Taleff v. Southwest Airlines Co.*, the district court held that the plaintiffs were not entitled to prospective injunctive relief because they had identified damages only in the form of higher ticket prices.  828 F. Supp. 2d 1118, 1123 (N.D. Cal. 2011).

Here, by contrast, CSX alleged in its Complaint that Defendants' ongoing conduct would cause foreseeable future harm, and it sought prospective injunctive relief to address that harm.  At the summary judgment phase, CSX alleged and proffered evidence showing it will continue to suffer substantial harm as a result of Defendants' conduct.  *See* ECF No. 324 at 6–40 (detailing evidence of Defendants' conspiracy and breaches of contract, and the resulting ongoing harm to both CSX and ocean carriers); *see also* ECF No. 592 at 19–20 (describing Defendants' STB filings, which confirm that NPBL intends to remain "controlled" by NS and under its direction in the

22

future).  Defendants have presented no evidence indicating that they have ceased or abandoned their course of illegal conduct, and this Court found no indication in the record that the threat to CSX would cease in the foreseeable future.  *See* ECF No. 559 at 86.  CSX has no adequate legal remedy to address Defendants' ongoing and future injurious conduct.  As a result, CSX's request for injunctive relief remains viable even after the Court granted summary judgment on the state law damages claims.

### C.   CSX does not seek a generic "obey the law" injunction.

Defendants also continue to argue that CSX wrongfully seeks a generic "obey the law" injunction.  *See* NS Br. at 14–15; NPBL Br. at 11.  At best, this goes to the proper scope of an injunction the Court would ultimately fashion as a remedy after trial.  *See* FED. R. CIV. P. 65(d) (providing that a court's injunction—not a party's *request* for such relief—must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required").  Regardless, CSX's requested relief is appropriately tailored in light of the Court's rulings and Rule 65 of the Federal Rules of Civil Procedure.  *See* ECF No. 66 at 23–24 (identifying authority to award injunctive relief); ECF No. 395 at 27–29 (reiterating authority to award injunctive relief).

The cases Defendants cite do not suggest otherwise.  For example, in *New York, N.H. & H.R. Co. v. Interstate Commerce Commission*, the Supreme Court approved an injunction prohibiting the defendant from committing antitrust violations similar to those proved at trial, but rejected the idea that the district court could "command it in general terms not to violate the [Sherman Act] in the future" regardless of the means or methods of such violation.  *See* 200 U.S. 361, 404 (1906); *see also Williams v. Recovery Sch. Dist.*, 859 F. Supp. 2d 824, 833 (E.D. La. 2012) (dismissing plaintiff's Title VII claim for failure to state a claim but observing that plaintiff's requested injunctive relief would have also been overbroad and too vague to permit relief); *MGM*

23

*Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1226 (C.D. Cal. 2007) (noting, in copyright action, that a permanent injunction must be tailored to fit legal violations at issue).

Here, CSX does not seek a general command that Defendants "obey the law" but rather that Defendants be enjoined from specific actions and inactions, following presentation and evaluation of the evidence at trial. *See* ECF No. 592 at 1–3. CSX's request is consistent with injunctions in many other cases that prohibit continuing antitrust violations, conspiratorial conduct, and breaches of contract. *See, e.g.*, *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 724 (4th Cir. 2021); *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 108 F.3d 522, 528 (4th Cir. 1997) (affirming award of injunctive relief in addition to compensatory and treble damages under Virginia Code § 18.2-499); *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 756 F.2d at 1055.

### D. Defendants' arguments about the parties' contracts miss the mark.

Finally, Defendants argue that CSX's requested injunctive relief would require the Court to re-write the parties' contracts or create new ones. *See* NS Br. at 15–16, NPBL Br. at 11. NS also maintains that the "cordial cooperation" clause in the NPBL Operating Agreement is too indefinite to be enforced through specific performance, and that the requested injunctive relief would require the Court to "adjudicate" the qualification of NPBL Board members. *See* NS Br. at 15–19. Again, these arguments are merely directed to the appropriate scope of an injunction the Court would fashion after trial. Even assuming that they could be reached on a motion to dismiss, however, none of them has merit.

First, CSX's requested relief does not require the Court to draft or amend any contract. CSX seeks an injunction enforcing the terms of the NPBL Operating Agreement as written, including (1) that NPBL "shall perform the service for which it was built and said Company be

24

directly responsible for the competent and efficient discharge of its every obligation to the parties hereto;" (2) that all owners of NPBL "are to be equally interested and each to have an equal representation" in NPBL's business; and (3) that NPBL's shareholders must "co-operate cordially in encouraging the business of the [NPBL], for which it is constructed." *See* ECF No. 1-1. Although the 1989 Supplemental Agreement allows NS to appoint three NPBL directors while CSX appoints two, it does not amend, alter, or affect any of these governing provisions. *See* ECF No. 1-3.

As the Court has found, the record evidence "present[s] a triable issue as to whether NSR will use its ability to control the NPBL Board to harm CSX in the future in the same way it allegedly did so in the past." ECF No. 559 at 85; *see also id.* at 86 (finding that "nothing" in the record "indicate[s] that the threat to CSX inherent in [Defendants'] past conduct would cease in the foreseeable future"). The Court has wide latitude to fashion injunctive relief to prevent this future harm, including by ordering that NPBL install and maintain an independent board and senior management. That relief does not require the Court to amend (let alone override) the Operating Agreement or draft any new contractual terms. Indeed, CSX expressly acknowledged in its requested relief that "[t]he independent Board need not exclude all Board-appointed positions by the owners," as provided for in the Supplemental Agreement. *See* ECF No. 592 at 2. Instead, CSX proposes that the Court order that "there should be sufficient independent Directors such that neither NS-appointed nor CSX-appointed Board members constitute a voting majority and such that NS-appointed Board members cannot unilaterally block NPBL Board action." *Id.* That requested relief is premised upon existing agreement provisions, and would remedy the continued harm caused by Defendants' ongoing anticompetitive and conspiratorial conduct without running afoul of the parties' existing contracts.

NS also argues that the Operating Agreement's "cordial cooperation" clause argument is so indefinite that it cannot be enforced through an injunction ordering specific performance.  *See* NS Br. at 16–17.  NS already raised this argument in its initial motion to dismiss, and the Court rejected it.  *See* ECF No. 66 at 42 ("Contrary to Norfolk Southern's assertions, this clause is not indefinite.  Under Virginia law, cooperation clauses are generally enforceable.  [] Here, Norfolk Southern has stated no reason why this clause would be any different.") (internal citation omitted). Moreover, CSX does not seek specific performance of the "cordial cooperation" clause.  To remedy NS's repeated breaches of that provision—as well as Defendants' ongoing conspiratorial conduct—CSX asks the Court to order that NPBL install an independent Board and independent senior management, which will operate NPBL's business without the handicap of NS's undue influence and control.  The requested relief would thus remedy NS's ongoing breaches of the "cordial cooperation" clause not by directing specific performance of that provision but by eliminating NS's ability to engage in conduct that breaches it.

Even if the Court were to interpret CSX's requested injunctive relief as demanding specific performance, however, CSX could still obtain an injunction.  Under Virginia law, a court should not order specific performance when it would be "impossible for the court to precisely define the specific actions to be performed."  *Perel v. Brannan*, 267 Va. 691, 701 (2004).  As the cases cited by NS illustrate, this rule is aimed at ensuring that enforcing the injunction does not "unreasonably tax the time, attention, and resources of the court."  *Id.* (citation omitted).  Those concerns are not implicated here.

For example, in *Columbia Gas Transmission LLC v. Ott*, the court declined to issue an injunction ordering the defendant to "refrain from placing encroachments" on the right of ways at issue because there was no evidence that the defendant intended to do so, and also because the

term "encroachment" was too indefinite for the court "to fashion a sufficiently particularized permanent prohibitory injunction that adequately puts [the defendant] on notice." 984 F. Supp. 2d 508, 516 (E.D. Va. 2013). Here, by contrast, CSX requests specific injunctive relief to address the documented threat that NS will continue to unlawfully exercise control over NPBL.

Likewise, in *Holtzman Oil Corp. v. Green Project*, the Supreme Court of Virginia affirmed that specific performance was impractical because the plaintiff sought the court's oversight on "every step of performance of the contract, including the development of a master plan, selection of the lot, and the administrative process of approvals for the various permits." No. 141863, 2016 WL 3208943, at *3–4 (Va. Apr. 21, 2016). But unlike the plaintiff in *Holtzman Oil*, CSX's requested relief would not require the Court's continued oversight. CSX has intentionally fashioned its requested relief to avoid any such burden.[7]

## CONCLUSION

If the Court elects not to enter final judgment on CSX's federal claims under Rule 54(b) and enter a stay pending appeal, *see* ECF No. 623, 624, it should deny Defendants' Motions.

Dated: February 21, 2023               Respectfully submitted,


                                       CSX TRANSPORTATION, INC.
                                       *By Counsel*

                                       */s/ Benjamin L. Hatch*
                                       Robert W. McFarland (VSB No. 24021)
                                       Benjamin L. Hatch (VSB No. 70116)

---

[7] NS insists that CSX's requested relief would impose "great practical difficulties" on the Court and the parties. *See* NS Br. at 18–19. But NS's only support for this argument is its own multi-layered speculation, with NS suggesting that CSX might dislike the nominees that NS "is prepared to vote for" to sit on the NPBL Board, and that, if so, CSX might "come back to court seeking an adjudication of whether, in the Court's view, a nominee is sufficiently independent or otherwise suitable to serve on the NPBL board." NS Br. at 19.

V. Kathleen Dougherty (VSB No. 77294)
Jeanne E. Noonan (VSB No. 87863)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia  23510-1655
Tel.:  (757) 640-3716
Fax:  (757) 640-3930
rmcfarland@mcguirewoods.com
bhatch@mcguirewoods.com
vkdougherty@mcguirewoods.com
jnoonan@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
W. Cole Geddy (VSB No. 93511)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219-3916
Tel.:  (804) 775-1000
Fax:  (804) 698-2026
bjustus@mcguirewoods.com
apeterson@mcguirewoods.com
cgeddy@mcguirewoods.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 21st day of February, 2023, a true and correct copy of the foregoing was served on all counsel of record via Notice of Electronic Filing by filing with the Court's CM/ECF system.

**CSX TRANSPORTATION, INC.**
*By Counsel*

*/s/ Benjamin L. Hatch*
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
V. Kathleen Dougherty (VSB No. 77294)
Jeanne Noonan (VSB No. 87863)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia  23510-1655
Tel.:  (757) 640-3716
Fax:  (757) 640-3930
rmcfarland@mcguirewoods.com
bhatch@mcguirewoods.com
vkdougherty@mcguirewoods.com
jnoonan@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
W. Cole Geddy (VSB No. 93511)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219-3916
Tel.:  (804) 775-1000
Fax:  (804) 698-2026
bjustus@mcguirewoods.com
apeterson@mcguirewoods.com
cgeddy@mcguirewoods.com