**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

CSX TRANSPORTATION, INC.,      )
                                    )
                 *Plaintiff*,    )
                                    )
v.                               )        Case No. 2:18-cv-530
                                    )
NORFOLK SOUTHERN RAILWAY    )
COMPANY, *et al.*,               )
                                    )
                 *Defendants*.   )

**DEFENDANTS' CONSOLIDATED REPLY
IN SUPPORT OF THEIR MOTIONS TO DISMISS
<u>ANY REMAINING CLAIMS AND REQUESTED RELIEF</u>**

Defendant Norfolk Southern Railway Company ("NS") and Norfolk and Portsmouth Belt Line Company ("Belt Line" or "NPBL"), by counsel, submit this consolidated reply in support of their Motions to Dismiss (ECF Nos. 614, 616) any remaining claims and requested relief of Plaintiff CSX Transportation, Inc. ("CSX"), including injunctive relief under state law.

<u>**ARGUMENT**</u>

**I.    CSX's procedural arguments have no merit.**

CSX argues that Defendants' Motions are procedurally improper because they "shoehorn[] untimely summary judgment arguments under Rule 12(c)." CSX Opp. Br. 2, ECF No. 632. To the contrary, both Motions present arguments that the Court already expected the parties to brief, ECF No. 613, at 27, and are permitted under Rules 12(c), 12(h)(2), and 54(b). In fact, the Belt Line's Motion, ECF No. 616, expressly supplements its previous Motion to Dismiss All Remaining Claims, ECF No. 572, joined by NS at ECF No. 574, which this Court held to be procedurally proper under Rules 12(c) and 12(h)(2). *See* ECF No. 613, at 9 (citing *Reynolds Assocs. v. Kemp*, 974 F.2d 1331, 1992 WL 207747, at *2 n.4 (4th Cir. 1992) (unpublished table

opinion)).  Under Rule 12(c), the Court may consider matters of public record, including its own prior rulings.  *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014) (approving district court's reliance on transcript in related trial in deciding Rule 12(c) motion because it was proper to "take judicial notice of matters of public record") (citation omitted).  Hence, all of the Court's prior rulings are properly part of the record for the current Motions to Dismiss.[1]

      CSX previously agreed that the kinds of dispositive issues raised by Defendants should be resolved before trial.  *See, e.g.*, ECF No. 596, at 1 ("In light of the potentially dispositive nature of the issues raised in Defendants' motions, as well as CSX's astute comments regarding the risk of wasting the Court's and the parties' resources if the Court were to resolve the pending motions in Defendants' favor after trial …"); ECF No. 605, at 30:10-12 ("CSX has wisely acknowledged the likely waste of resources that would result if the Court were to resolve this potentially dispositive matter at the conclusion of trial…."); ECF No. 613, at 1 n.1 ("CSX's opposition brief offers the well-reasoned observation, fully joined in by the Court, that it would be a waste of resources to proceed to a lengthy antitrust trial on injunctive relief only for the Court to hold at the conclusion of trial that CSX lacks a federal cause of action.").  Its concession is consistent with this Court's own finding on summary judgment that there is "no genuine dispute as to any material fact

---

[1] The Court has rejected many of CSX's theories, holding that the 2015 events did not impact CSX's ability to compete for intermodal contracts at NIT, ECF No. 559, at 47, there was no conspiracy regarding 2016 trackage rights negotiation and NSR was within its rights to seek "as high as reasonable" trackage rate, ECF No. 559, at 56, and there was no conspiracy or breach of contract related to 2018 events.  ECF No. 559, at 76; *see also* ECF No. 559, at 61 (finding CSX's 2018 service proposal was never denied); ECF No. 559, at 79 (holding that even if the proposal would have been denied, CSX failed to show that any denial would be due to nefarious conduct as opposed to lack of merit); ECF No. 559, at 64 (holding that NS acted within its contractual rights to deny the 2018 governance proposal).  Due to the Court's rulings, CSX cannot rely on any of these alleged actions to support any remaining claim for injunctive relief.

regarding CSX's state law claims," ECF No. 559, at 94, meaning there is no reason not to address the Defendants' arguments now, whether under Rule 12(c), Rule 12(h)(2), or Rule 54(b).[2]

The Belt Line also asserts its motion under Rule 54(b) based on the change in controlling law in *Edwards v. CSX Transp., Inc.*, 983 F.3d 112 (4th Cir. 2020). CSX does not challenge, because it cannot, that the Belt Line's motion is procedurally proper under Rule 54(b). *See* Fed. R. Civ. P. 54(b).

## II.   Because CSX's state law causes of action have been dismissed, an injunction cannot be granted as a remedy.

### A.   All forms of relief are unavailable given the dismissal of the underlying cause of action.

CSX admits that injunctive relief is a remedy, not a cause of action. CSX Opp. Br. 5-6, 11. Accordingly, when the Court dismissed CSX's state law causes of action, nothing remained for adjudication. Put another way, injunctive relief under CSX's state law claims is no longer "viable." *See Blankenship v. Consolidated Coal Co*., 850 F.3d 630, 640 (4th Cir. 2017) (holding following dismissal of plaintiffs' causes of action, no claim for injunctive relief survived).

CSX fails to address this threshold issue, instead claiming that the Court has already held that its state law "claims for injunctive relief" remain in this case. CSX Opp. Br. 7. But that is contrary to law and an incorrect reading of the Court's Summary Judgment Opinion, which pointed out that, unlike CSX's antitrust claim, CSX has not "suggested or argued" that any statute or law supports an independent state law "injunctive remedy claim." Summ. J. Op. 103 n.46, ECF No. 559 (observing that "it does not appear that a state law injunctive remedy claim could remain viable in this case, in contrast to CSX's federal antitrust claims"). And the Court's comments at the

---

[2] CSX's alternative procedural argument, that the Court should enter final judgment or certify an interlocutory appeal, need not be addressed here, but is nevertheless unavailing for the reasons stated in Defendants' opposition, ECF No. 633, to CSX's motion, ECF No. 623.

January 18, 2023 hearing reflect that the Court is concerned about the "viability" of any "state law injunctive relief claims" "*to the extent they remain*."  Hearing Tr. 32:4-11, ECF No. 605 (emphasis added).

CSX's "state law injunctive remedy claims" are not "viable" because there is no substantive cause of action remaining to support them.  The Court dismissed CSX's state-law conspiracy and breach of contract causes of action based on pre-2013 conduct as time barred. Summ. J. Op. 98-99.  The Court dismissed CSX's state-law conspiracy claims based on post-2013 conduct because they "fail[ed] based on the record evidence," *id.* at 97-98, and dismissed CSX's breach of contract cause of action "because none of the alleged breaches can satisfy all required elements of a Virginia breach of contract claim."  *Id*. at 99.[3]

**B.     CSX's assertion that it is seeking "prospective relief" cannot avoid the fact that the underlying causes of action have been dismissed.**

CSX focuses on time-barred conduct to support of its request for an injunction, arguing that the statute of limitations does not preclude the "prospective relief" it seeks based on those ancient alleged wrongs.  CSX Opp. Br. 8.

The cases CSX relies on, however, do not support this contention.  The mere fact that an injunction would provide "prospective relief," as all injunctions do, does not avoid the statute of limitations.  The Fourth Circuit rejected this very argument in *Manotas v. Ocwen Loan Servicing,*

---

[3] CSX argues that it should be exempt from this basic proposition because it did not bring a standalone injunctive relief claim as a count in its Complaint. CSX Opp. Br. 11 n.3.  That is irrelevant because all that could be left after the Court dismissed CSX's state law causes of action on the merits is a standalone "injunctive remedy claim." This is the basis of the Fourth Circuit's ruling in *Blankenship*, 850 F.3d at 640. Contrary to CSX's argument, CSX Opp. Br. 10, the Fourth Circuit did not find that the injunctive relief claim was barred because the plaintiffs brought it as a standalone claim, but rather because "the causes of action that provide the basis for any claimed relief [were] barred, the plaintiffs' request for injunctive relief [was] also barred." *Id.*

*LLC*, 794 Fed. Appx. 259, 263 (4th Cir. 2019), holding that plaintiffs' claim for *prospective* injunctive relief was barred by the statute of limitations.

CSX relies almost exclusively on cases that involve a permanent trespass or nuisance – both being torts involving a permanent invasion onto another's property. As such, these cases are legally and factually distinguishable. As a basic proposition, the law recognizes that real property is unique, and for that reason, equitable relief is particularly appropriate. *See Norfolk S. Ry. Co. v. E.A. Breeden, Inc*., 287 Va. 456, 464 (2014) (finding violation of a real property right is "deemed 'irreparable and the owner protected in the enjoyment of his property whether such be sentimental or pecuniary'") (quoting *Levisa Coal v. Consolidation Coal Co*., 276 Va. 44, 62 (2006) (quotation marks removed)). For example, in *Willems v. Batcheller*, 109 Va. Cir. 319 (Fairfax Mar. 6, 2022), the plaintiffs sued their neighbors for trespass and nuisance based in part on the defendants' refusal to check the growth of invasive bamboo that damaged the plaintiffs' shed and was intruding onto their property. *Id.* at 322. Addressing the statute of limitations defense, the court held that when "only an injunction is sought and the condition is continuing, the statute of limitations is inapplicable." *Id.* at 330. In so holding, the court relied on Va. Code § 8.01-230, which provides that a cause of action for damage to property accrues when the injury is suffered, "except where the relief sought is *solely equitable*." (Emphasis added). Because the plaintiffs sought only an injunction and not damages, their claim was solely equitable, and the statute of limitations did not apply. *Id.* The same principle applies to the ruling in *Armstrong v. Bryant*, where the plaintiff sued only in equity for specific performance of an oral sales contract. 189 Va. 760, 765 (1949).

CSX, however, chose a different tactic. CSX did not bring a state law cause of action seeking *solely equitable relief*, making both *Willems* and *Armstrong* distinguishable. Nor can CSX assert "ongoing conduct" like that involved in *Willems* or in *Downey v. Verizon Va., LLC*, 86 Va.

Cir. 526 (Greene Cty. July 23, 2013).  Little can be gleaned from *Downey*, but it involved an ongoing trespass because Verizon erected telephone poles and overhead lines affixed to the plaintiff's real property.  Presumably, the plaintiffs sought damages and an injunction to remove the telephone poles based on the trespass onto their property.  The court ruled that the statute of limitations barred the plaintiffs from recovering damages but left on the docket a claim for injunctive relief to cure the ongoing trespass.  From this bare-bones ruling by a state trial court with no context – for example, it is not known whether the defendant even challenged the injunction claim – CSX extrapolates that the mere invocation of the words "ongoing actions" will save its claims.  CSX Opp. Br. 9.  But this case does not involve an ongoing trespass or nuisance on real property, making whatever might be gleaned from *Downey* distinguishable.

To support its vague claims that Defendants are engaged in "ongoing tortious and conspiratorial actions" and that NS is engaged in "continued breaches of contract," CSX cites to this Court's ruling on possible injunctive relief under *federal antitrust law*, which does not address "ongoing tortious and conspiratorial actions" under Virginia law or "continued breaches of contract."[4]  The Court, however, did *not* hold that conspiratorial conduct was "ongoing" or that NS was continuing to breach the contract.  To the contrary, the Court specifically dismissed – as factually and legally unsupported – every one of CSX's post-2013 conspiracy and breach of

_____

[4] As the Court observed, to establish Article III standing a plaintiff seeking injunctive relief must establish an "ongoing or future injury in fact." Summ. J. Op. 84 (quoting *Davison v. Randall*, 912 F.3d 666, 677 (4th Cir. 2019)). "Allegations of future injuries 'may suffice if the threatened injury is certainly impending or there is a substantial risk that the harm will occur.'" *Id.*; *see* also *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130 (1969) (injunction appropriate if the antitrust violation is "impending" or likely to recur).  The Court found, under this specific standard for antitrust claims under 15 U.S.C. § 26, that the triable issue was whether "there is a substantial risk that NSR will, *in the future*, engage in anti-competitive efforts to manipulate NPBL …." Summ. J. Op. 84-85.  The Court did not find any "ongoing" conduct. Instead, the Court pointed specifically to conduct that occurred in the past, mostly outside the statute of limitations. *Id.* (referring to "years leading up to 2009 and extending into 2010 or 2011").

contract claims.[5]  The Court also found that the acts cited by CSX to support its claims of "ongoing anticompetitive conduct" do no such thing.  For example, with respect to the trackage rights agreement, the Court held that "none of CSX's evidence suggests that the 2016 conduct can reasonably be interpreted as NSR acting in furtherance of a conspiracy or illegal monopoly." Summ. J. Op. 60; *see id.* 62-69, 99-100 (finding no evidence that NPBL or NS acted improperly or breached any contract with respect to the 2018 rate proposal, which was never voted on). *See also Large v. Clinchfield Coal Co.*, 239 Va. 144, 148 (1990) ("In equity, no prohibitory injunction against an anticipated wrong will issue unless 'there is reasonable cause to believe that the wrong is one that would cause irreparable injury and the wrong is actually threatened or apprehended with reasonable probability. . . .'") (quoting *WTAR Radio-TV v. Virginia Beach*, 216 Va. 892, 895 (1976)); *Doyle-Penne v. Muhammad*, 2000 U.S. App. LEXIS 18902, at *7 (4th Cir. Aug. 4, 2000) (same).

Because there is no "ongoing conduct" – such as a continuing trespass or encroachment on real property – none of the cases CSX cites support its claim for injunctive relief.  Instead, CSX seeks an injunction based on alleged conduct that took place decades ago.  This requested relief – even if it could stand alone – is barred by the statute of limitations.  *See* Section IV, *infra*.

## III.   CSX's arguments against preemption have no merit.

CSX seeks to avoid preemption of its state law claims, if any still exist, by arguing that the Court of Appeals' decision in *Edwards* changed nothing about ICCTA preemption in the Fourth Circuit.  If CSX is correct, the Court of Appeals itself would likely be most surprised.

---

[5] CSX's current claim that the allegedly conspiratorial conduct and breaches of contract are "ongoing" is directly contradicted by the position CSX took in summary judgment briefing where, as the Court observed, CSX "presents its claims as a series of distinct claims, presumably to cut its post-2013 allegations loose from the plainly time-barred pre-2013 acts," not as an ongoing course of conduct.  Summ. J. Op. 96.

The *Edwards* decision unmistakably expands ICCTA preemption in the Fourth Circuit. Before *Edwards*, precedent in the Fourth Circuit addressed only preemption of state and local regulation of the railroad industry by rule or code, not common law claims. *See* ECF No. 66 at 20-21 (citing *PCS Phosphate Co. v. Norfolk S. Corp.*, 559 F.3d 212 (4th Cir. 2009)). In *Edwards*, based on arguments by CSX, the Court of Appeals explicitly expanded that precedent: "Until now, we have reserved the question of '[w]hether "regulation" must always be by way of public rule.' However, a growing number of our sister circuits acknowledge that the Act's preemptive reach can encompass common-law tort actions, in addition to statutes and ordinances. The Surface Transportation Board agrees. And with the issue now squarely before us, we join in that sensible view." *Edwards*, 983 F.3d at 122 (citations omitted).

CSX's arguments in its Opposition Brief cannot square with the Court of Appeal's statement that *Edwards* made new law in the Fourth Circuit. In fact, CSX tacitly confirms *Edwards'* impact by conceding in its Opposition Brief that it no longer seeks to change the Belt Line's switching rate under the 2018 rate proposal. *See* CSX Opp. Br. 18 n.4 ("CSX has not sought an injunction fixing NPBL's rate or NS's trackage rights fee, nor has it sought an injunction purporting to direct Defendants to operate their rail lines in any particular manner or on any particular schedule."). Forcing the Belt Line to accept that proposal by way of common law claims, which CSX sought in its Complaint, is unquestionably preempted after *Edwards* by 49 U.S.C. § 10501 (providing exclusive STB jurisdiction over railroad transportation and rates).

CSX's other requests are equally barred. All of them seek the same goal of a lower rate to Norfolk International Terminal ("NIT"), just by different means—specifically, by manipulating control of the Belt Line's Board and/or management. They are, therefore, likewise preempted by 49 U.S.C. § 10501. They are also preempted by 49 U.S.C. §§ 11321 and 11323 (providing

exclusive STB jurisdiction over "control" of railroad entities).

Amazingly, even though both Defendants point to these control provisions in §§ 11321 and 11323 in their motions, ECF No. 615 at 7-9 and ECF No. 617 at 8-11, and even though the Belt Line addressed the same provisions in its previous briefing on its Motion to Dismiss All Remaining Claims for Relief, ECF No. 573, at 11-13, CSX says nothing about them in its Opposition Brief. CSX's silence on the STB's exclusive jurisdiction over control issues among common carrier railroads is all the more remarkable given that CSX had much to say about that topic in NS's ongoing appeal in the U.S. Circuit Court for the District of Columbia. CSX has appeared as an intervenor to oppose NS's appeal of the STB's decision that it did not approve NS's control over NPBL. In its primary brief filed on February 13, 2023, CSX argued for broad judicial deference to the views of the STB, noting that the law

> is clear: certain transactions involving control of rail carriers may only be carried
> out with the approval and authorization of the Board. 49 U.S.C. § 11323. The ICA
> requires the STB to approve and authorize a control transaction "when it finds the
> transaction is consistent with the public interest." *Id*. § 11324(c). It also requires
> that the Board consider the anticompetitive effects of the a control transaction. *See
> id*. § 11324 (b), (d).

Br. of Intervenor CSX Transportation, Inc. in Support of Respondents, *Norfolk Southern Railway Co. v. Surface Transportation Board, et al.*, ECF No. 1985761, No. 22-1209 (D.C. Cir. Feb. 13, 2023).

In this case, instead of addressing the arguments, CSX repeats the same requests for injunctive relief that triggered the preemption provisions in the first place. In its Opposition Brief, CSX states, "CSX's evidence also reflects that NS has used—and will continue to use—its ability to *control the NPBL Board* to further Defendants' illegal aims, including by, among other things, *defeating favorable rate proposals* and installing former NS employees in *senior NPBL management positions* to ensure that NS's interests are protected above all." CSX Opp. Br. 19

9

(emphasis added). And CSX continues, "[t]o remedy these harms, CSX seeks an injunction that, among other things, *establishes an independent NPBL Board and management* that conducts NPBL business in accordance with its governing documents (including, for example, the requirement that NPBL facilitate switching for *all* of its owners, including CSX)." *Id.* (first emphasis added).

This kind of relief under state law is preempted by §§ 11321 and 11323, in addition to § 10501. Not only does CSX fail to cite these provisions, but it also fails to dispute the case law cited by Defendants or the myriad examples of STB powers that mirror the powers CSX expects the Court to exercise here. *See, e.g.*, *Gilbertville Trucking Co. v. United States*, 371 U.S. 115, 122 (1962); *Illinois Cent. R. Co. v. United States*, 263 F. Supp. 421, 428 (N.D. Ill. 1966), *aff'd*, 385 U.S. 457 (1967) (per curiam); *Soo Line R.R. Co.-Petition for Declaratory Ord.*, No. 33350, 1998 WL 43797, at *8 (Feb. 3, 1998), *aff'd sub nom. City of Ottumwa v. STB*, 153 F.3d 879 (8th Cir. 1998); *Central of Georgia Ry. Co. Control*, 307 I.C.C. 39, 44 (1958).

Given this authority, and the controlling law in *Edwards*, the state law injunctive relief that CSX seeks overlaps entirely with remedial measures available to and utilized by the STB and is therefore preempted even if not already dismissed.

## IV.   CSX's request for injunctive relief fails because "equity follows the law."

"It is a well-established principle uniformly acted upon by courts of equity, that in respect to the statute of limitations equity follows the law; and if a legal demand be asserted in equity which at law is barred by statute, it is equally barred in equity." *See Belcher v. Kirkwood*, 238 Va. 430, 433 (1989). Faced with this black letter law, CSX argues that it has asserted *equitable* claims – not based on time-barred conduct but to prevent the "foreseeable future harm that will be caused by Defendants' future conduct." CSX Opp. Br. 13-14. CSX's attempt to distinguish *Belcher*,

*Kappa Sigma*, and *Manotas* is premised on this repeated, but legally and factually flawed, contention.

As a baseline, the Court's rulings on summary judgment demonstrate that there is no "ongoing conduct" that can rescue CSX's state law claims from dismissal. *See* Section II.B, *supra*. And CSX cannot rely on mere allegations of speculative "future" conduct that will cause "future harm" to save its injunctive relief claims from the statute of limitations. Instead, CSX is doing exactly what it disclaims – seeking to get around the statute of limitations by invoking equity (an injunction) to obtain relief from conduct that occurred more than a decade ago.

The ability to rely on years-old conduct to demonstrate the threat of a future antitrust violation (assuming laches does not apply) may be a feature of the federal antitrust injunctive remedy that Congress provided, but it is not a feature of Virginia state law.  CSX presents its claim under state law as being based on "ongoing and future violations of state conspiracy and breach of contract law" (CSX Opp. Br. 18), implicitly conceding that Virginia law requires actual *ongoing* conduct – or at least conduct that is "actually threatened" – to support injunctive relief.  The mere possibility that Defendants may conspire sometime in the future is insufficient to support an injunction. *Evans v. Offutt*, 6 Va. Cir. 528, 530 (Arlington Cty. Jan. 10, 1978) (holding that a mere allegation that something may happen in the future is not sufficient to support a request for injunctive relief).  Likewise, without any facts to support a claim of anticipatory breach – which CSX neither pled nor proved in this case – there is no cause of action for a future breach of contract.

CSX cannot escape the statute of limitations by its recent recasting of what are legal claims as "equitable" – not based on any "ongoing" conduct but rather on past conduct for which CSX sought damages.  *Kappa Sigma*, 266 Va. at 465 (plaintiff cannot circumvent the statute of limitations applicable to the substance of a complaint).  The conspiracy causes of action clearly

are legal claims seeking damages, and merely tacking on a request for injunctive relief does not change the analysis or the object of the claims. *Orantes v. Pollo Ranchero, Inc.*, 70 Va. Cir. 277, 280 (Fairfax Mar. 9, 2006) (rejecting plaintiff's claim that – because he sought injunctive relief – laches, instead of the statute of limitations, should apply to statutory conspiracy claim seeking treble damages). Because the statute of limitations bars CSX's conspiracy claims based on the alleged conduct at issue, CSX has no claim on which to base a request for injunctive relief.

The same holds true for CSX's breach of contract claim. Indeed, the Fourth Circuit in *Manotas* rejected the very arguments CSX now advances. In *Manotas*, the plaintiffs sought declaratory and injunctive relief because Ocwen failed to send a pre-acceleration notice, as required by the terms of a Deed of Trust. *Manotas*, 794 Fed. Appx. at 262. The district court dismissed the complaint as time barred. *Id.* On appeal, the plaintiffs asserted that the statute of limitations did not apply because their claim for declaratory and injunctive relief "*is a claim for prospective relief* that seeks to prevent the foreclosure sale." *Id.* at 263 (emphasis added). The Court examined the substance of this claim and determined that it was a breach of contract claim, meaning, "whether brought before or after a foreclosure sale, both claims are rooted in contract and are subject to Virginia's statute of limitations for breach of contract." *Id.* at 264.

CSX's attempt to distinguish *Manotas* is entirely unconvincing. Surely CSX cannot be claiming that the Manotases' request to enjoin a future foreclosure sale is not "prospective relief." And CSX has not identified – either in its Complaint or in any pleading – any "ongoing" breach of contract. Instead, as in *Manotas*, CSX's request for an injunction to prevent some possible future harm is based on time-barred conduct. Equity follows the law and bars this claim, including all relief that could be requested.

12

In sum, CSX simply cannot seek injunctive relief based on conduct that occurred more than seven years before they filed this lawsuit. "'If the law were otherwise, the statute of limitations could be rendered meaningless merely by [seeking injunctive relief].'" *Manotas*, 794 Fed. Appx. at 263 (quoting *Board of Supervisors v. Thompson Assoc.*, 240 Va. 133, 139 (1990)).

## V.      CSX's requested injunction is improper for a multitude of other reasons.

### A.      The requested injunction will not redress the injury alleged.

It is well established that the "irreducible constitutional minimum" for standing requires the plaintiff to identify an injury "that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). This means that it cannot be "merely speculative" that a favorable decision would redress the alleged injury. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). "The redressability component has … been described as the causal connection between the alleged injury and the relief sought." 15 Moore's Federal Practice - Civil § 101.42 (2022). And equity has long held that an injunction will not be granted when it is speculative that the injunction will, in fact, remedy the plaintiff's claimed harm. *Bhd. of Ry. & Airline Clerks, Consol. Sys. Bd. of Adjustment 46 v. Burlington N. Inc.,* 513 F. Supp. 1023, 1027 (D. Minn. 1981) ("If the Court issued an injunction based on this fear it would act as a seer or soothsayer.").

Based on the remaining allegations in this case, CSX's alleged injury is its inability to economically move intermodal traffic through NIT at the Port of Virginia due to the $210 switch rate charged by NPBL. CSX claims that its requested injunctive relief – enjoining ongoing legal violations and installation of an independent NPBL Board and senior management – would redress the injuries it complains of in this case (the switch rate price). CSX Opp. Br. 18-19. This is both logically and legally wrong.

It is pure speculation that adding additional "independent" members of the NPBL Board would reduce the NPBL switch rate charged to CSX.  In fact, at the hearing on January 18, 2023, CSX effectively *admitted* this:

> What we're asking for is … putting an independent board in and let our proposal rise and fall on its merits with that independent board. Then the Court doesn't have to worry about it.  ***If our proposal is bad, then it won't be accepted.***  If our proposal is good for the Belt Line, then it will be accepted.  And a[n] independent Belt Line can make decisions that are best for the independent Belt Line.  ***We're not asking the Court to decide what the right rate is.***

Hearing Tr. 44:19-45:5 (emphasis added).  CSX's concession is consistent with the Court's finding that "any 'new rate' established by the [NPBL] Board after referral to a rate committee *could be higher or lower than the current rate based on legitimate factors* wholly unrelated to unlawful motivations." ECF No. 559, at 69 (emphasis added).  No one knows what would happen if the NPBL Board – either as it stands now or reconstituted with new members – considered a new rate proposal from CSX.

CSX cites to several cases for the proposition that an injunction can "redress plaintiff's injuries, even though it would not guarantee outcome sought."  CSX Opp. Br. 19 (citing *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 197–98 (4th Cir. 2013)).  CSX strains these cases beyond their holdings.

For example, in *Lansdowne*, the court held that plaintiff had standing after analyzing the facts and finding that "[a] favorable court ruling here is therefore not only 'likely' to redress LHOA's injuries, ***but will necessarily do so***." 713 F.3d at 198 (emphasis added).  This is consistent with another Fourth Circuit case issued the same year holding that when the plaintiff would be required to pay for the defendant's "services regardless of the outcome of this action," the requested relief (nullifying contractual exclusivity provision) would <u>not</u> redress the injury

(payment for services), despite that the asserted injury was concrete. *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 183 (4th Cir. 2013).

CSX's remaining cases fare no better. Courts determine whether it is "likely," as opposed to speculative, that the requested relief would mitigate or eliminate the alleged injury and find standing only when the requested relief would *likely* redress the alleged injury. *See Sierra Club v. United States DOI*, 899 F.3d 260, 284-85 (4th Cir. 2018) (finding that alleged injuries were "redressable because granting the requested relief would at *least mitigate, if not eliminate, the alleged harm*") (emphasis added); *Deal v. Mercer Cty. Bd. of Educ.*, 911 F.3d 183, 189 (4th Cir. 2018) (finding standing for enforcement of the establishment clause when plaintiffs could "show that they personally would benefit in a tangible way from the court's intervention").

CSX's requested injunctions would not redress its alleged injury – lack of economic access to NIT. Accordingly, the requests for injunctive relief should be dismissed.

**B.    CSX has an adequate remedy at law.**

CSX alleges that it has no adequate remedy at law by trying to distinguish its requested injunctive relief from its request for damages. This distinction, however, misses the point.

This is not a case where damages are incapable of being calculated, or the nature of the harm is such that it cannot be adequately remedied by money damages. Rather, CSX has an adequate remedy at law: damages. The fact that its expert used a "fatally flawed" damages model does not open the door to equitable relief. *See Guzman v. Polaris Indus.*, 49 F.4th 1308, 1312 (9th Cir. 2022) ("A failure to comply with a remedy at law does not make it inadequate so as to require the district court to exercise its equitable jurisdiction.").

*Graham v. Consolidation Coal Co.* is instructive here. 2015 U.S. Dist. LEXIS 144645 (W.D. Va. Oct. 26, 2015). There, the plaintiffs sought damages resulting from disposal of excess wastewater from an underground mine. Their damages expert quantified plaintiffs' alleged

damages under three separate theories. The court found that plaintiffs' legal claims were time barred and granted summary judgment based on the applicable statute of limitations. *Id.* at *9. When plaintiffs sought to fall back on their claims for injunctive relief, the court held:

> By requesting an injunction solely as an alternative to their legal claims, to be invoked only if they believe their ultimate monetary recovery is inadequate, the plaintiffs essentially admit that they are able to be adequately compensated through monetary damages. The fact that the statutes of limitation have run on their legal claims, thus making any remedy at law unavailable to the plaintiffs at this late date, does not render the legal remedy inadequate. To find otherwise would permit a plaintiff to obtain an injunction any time a statute of limitations had run, which would undermine the purpose and effectiveness of statutes of limitations.

*Id.* This analysis applies equally here, and CSX must not be allowed to sidestep the consequences of its "fatally flawed" damages model.

CSX's attempt to analogize its claim to an ongoing trespass does not escape this precedent. In the case of an ongoing or continuing trespass, it is the ongoing, or repeated nature of the injury, which would require multiple, successive lawsuits, that makes a legal remedy inadequate. *See, e.g.*, *Boerner v. McCallister*, 197 Va. 169, 171-72 (1955) ("As a general rule, where an injury committed by one against another is being constantly repeated, so that complainant's remedy at law requires the bringing of successive actions, the legal remedy is inadequate and the trespass will be prevented in equity by an injunction, the prevention of a multiplicity of actions at law being one of the special grounds of equity jurisdiction."). This is hardly the situation here. CSX's Complaint is predicated on specific episodes of past conduct, and CSX could have filed suit (or sought relief from the STB) after each of the alleged wrongful acts, *e.g.*, in 2010 or 2015. There is no recent conduct that is actionable. As this Court held, "CSX has [] failed to point to evidence, or reasonable inferences therefrom, that could support a finding that NPBL (or NSR) committed an injury-causing overt act in 2018." Summ. J. Op. 79.

16

### C.     An "obey the law" injunction is impermissible.

In concept, CSX does not disagree that a generic "obey the law" injunction is impermissible under Rule 65.  *See* CSX Opp. Br. 23-24.  Instead, CSX claims that it is *not* seeking a generic injunction.  *Id.* at 24 ("CSX does not seek a general command that Defendants 'obey the law'…").  The problem is that CSX undercuts its argument earlier in its Opposition Brief, saying: "CSX seeks prospective injunctive relief to enjoin ongoing and future violations of state conspiracy and breach of contract law, to prohibit Defendants from conspiring to preclude CSX's ability to access NIT …."  *Id.* at 18.  This request to generally enjoin future "violations of state conspiracy and breach of contract law" is *precisely* a request for an "obey the law" injunction—something that the Court cannot grant under Rule 65.

The Fourth Circuit cases that CSX cites in its Opposition Brief are not inconsistent with this position.  In both cases, the Fourth Circuit approved specifically tailored (the opposite of generic "obey the law") injunctions to remedy the injury at issue.  *See Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 720 (4th Cir. 2021) (finding that divestiture was appropriate injunctive relief); *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 108 F.3d 522, 526 (4th Cir. 1997) (affirming narrowly tailored injunctive relief voiding a kickback and exclusivity contract and prohibiting the negotiation of a similar kickback/exclusivity contract in the future).

### D.     The requested injunction would violate Virginia's prohibition against courts rewriting contracts.

CSX seeks an injunction that would require sufficient "independent" directors on NPBL's Board to prevent NS-appointed directors from unilaterally blocking NPBL Board action.  CSX Opp. Br. 25.  CSX does not contest that under Virginia law, courts are not to override or rewrite

17

contracts, but rather to enforce them.  *Id.* at 24.  Instead, CSX asserts that its injunction "does not require the Court to draft or amend any contract."  *Id.*  CSX is wrong.

The 1989 Agreement controls the composition of the NPBL Board:

> 1.      Notwithstanding the first sentence of Article Fourth of the NPBL Agreement, CSX shall have the right to appoint two representatives to the NPBL Board, and NW/SR shall have the right to appoint three representatives to the NPBL Board.

Compl. <u>Ex. C</u>, ECF No. 1-3.  There is no room in the contract to add "independent" directors to the fixed number of Board members without rewriting the agreement. The parties agreed in the 1989 Agreement that NS, which had a majority ownership, would appoint three of the six voting members on the Board – not a majority equal to its majority ownership, but half.  CSX asks the Court to rewrite this contract to increase the number of Board members, which the Court cannot do under Virginia law.  *See American Standard Homes Corp. v. Reinecke*, 245 Va. 113, 122 (1993) ("Courts will not rewrite contracts; parties to a contract will be held to the terms upon which they agreed.").

### E.      The "cordial cooperation" clause is too indefinite to order specific performance.

CSX asserts that the Court has already ruled that the cordial cooperation clause of the Operating Agreement is sufficiently definite to be enforced.  CSX Opp. Br. 26.  However, CSX ignores the point argued by NS – that to enforce a clause by way of injunction takes a higher degree of specificity than enforcement by way of a claim for damages.  *See* NS Mot. Dismiss Opening Br. 17, ECF No. 615.  And the cordial cooperation clause fails this enhanced test for enforcement by injunction.

In any event, CSX disclaims any request to specifically enforce that clause.  In theory, this makes the specificity of the clause irrelevant, as CSX claims it is seeking an injunction that will prevent NS from breaching the clause rather than specific performance.  CSX's verbal gymnastics

portray a distinction without a difference.  CSX seeks an injunction restructuring the NPBL Board to give effect to the cordial cooperation clause.  But nothing in the cordial cooperation clause requires NS to give up its contractual rights to appoint Board members in the name of cordial cooperation.

CSX's argument illustrates the problem addressed by the requirement of specificity. Injunctive relief must be tied to a contract provision that lays out, with sufficient specificity, an agreement that can be enforced.  The cordial cooperation clause does not address the composition of the NPBL board – other provisions specifically address that issue.  And the law does not allow the CSX to use the cordial cooperation claims to require NS to give us its contractual right to appoint three members of the NPBL board.

> **F.    The requested injunction will require the Court to adjudicate the qualifications of NPBL board members.**

CSX denigrates in a footnote the practical difficulties of involving the Court in the ongoing management of NPBL.  CSX Opp. Br. 27 n.7.  NS pointed out the practical difficulties in fashioning an injunction to give control of NPBL to "independent" directors.  Just by way of example, NS pointed out that CSX is not proposing that NS be divested of its power as majority shareholder to elect directors, but that it would be speculative to forecast that CSX accepted anyone elected by NS as "independent" directors.  *See* NS Mot. Dismiss Opening Br. 19.  CSX wants to obscure the fact that it is asking the Court to assume the role of nominating committee, with the obligation of being the ultimate arbiter of those who can serve on the NPBL Board.

## CONCLUSION

For the above reasons, Defendants request that this Court grant their Motions to Dismiss and enter an Order dismissing this case with prejudice, entering final judgment in favor of Defendants on all claims, and granting all other appropriate relief.

Dated: February 27, 2023

Respectfully submitted,

**NORFOLK SOUTHERN RAILWAY COMPANY**

/s/ *Michael E. Lacy*
Alan D. Wingfield (VSB No. 27489)
Michael E. Lacy (VSB No. 48477)
Massie P. Cooper (VSB No. 82510)
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-6061
Email: alan.wingfield@troutman.com
Email: michael.lacy@troutman.com
Email: massie.cooper@troutman.com

John C. Lynch (VSB No. 39267)
Kathleen M. Knudsen (VSB No. 90845)
TROUTMAN PEPPER HAMILTON SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA  23462
Telephone: (757) 687-7500
Facsimile: (757) 687-7510
Email: john.lynch@troutman.com
Email: kathleen.knudsen@troutman.com

Tara L. Reinhart
Thomas R. Gentry
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7000
tara.reinhart@skadden.com
thomas.gentry@skadden.com

*Attorneys for Norfolk Southern Railway Company*

**NORFOLK AND PORTSMOUTH
BELT LINE RAILROAD COMPANY**

By: */s/ W. Ryan Snow*
James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Alexander R. McDaniel, VSB No. 92398
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
amcdaniel@cwm-law.com

*Attorneys for Norfolk and Portsmouth Belt
Line Railroad Company*

146144633