IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CSX TRANSPORTATION, INC.,
individually and on behalf of NORFOLK
& PORTSMOUTH BELT LINE
RAILROAD COMPANY,

      Plaintiff,

v.

NORFOLK SOUTHERN RAILWAY
COMPANY, *et al.*,

      Defendants.

Civil Action No. 2:18-cv-530-MSD-RJK

**CSX TRANSPORTATION, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF JUDGMENT UNDER RULE 54(b) OR CERTIFICATION UNDER 28 U.S.C. § 1292(b) AND FOR ENTRY OF A STAY PENDING APPEAL**

Plaintiff CSX Transportation, Inc. ("CSX") submits this reply memorandum in support of its motion for entry of judgment under Rule 54(b) or, in the alternative, certification under 28 U.S.C. § 1292(b) and for entry of a stay pending appeal (the "Motion"). *See* ECF No. 623.

**INTRODUCTION**

NS and NPBL do not contest that the Court's January 2023 orders dramatically altered the scope of this litigation. Nor do they dispute that it would be inefficient to proceed with a bench trial on CSX's pending state law injunctive relief claims before CSX has the opportunity to appeal those rulings to the Fourth Circuit. Indeed, Defendants agree that "the parties and the Court [should] not risk the potential of two trials." ECF No. 633 at 12.

Defendants' opposition thus boils down to one argument: that, rather than allow CSX to appeal the January 2023 orders now, the Court should grant Defendants' motions to dismiss CSX's

1

remaining state law claims. That argument fails for two reasons. First, the pending motions to dismiss ask this Court to decide what are, at best, unclear questions of state law—and appeal now may moot some or all of those issues. Second, as CSX has explained, the motions to dismiss should be denied. *See* ECF No. 632. In short, the question is whether to certify an appeal before or after addressing the pending motions to dismiss. CSX submits that authorizing an immediate appeal, and holding the motions to dismiss in abeyance or denying them without prejudice, will best conserve Court and party resources and facilitate the conclusion of the litigation.

## ARGUMENT

### I. There is no just reason to delay entry of judgment on CSX's federal claims.

Under Rule 54(b), "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties" if "the court expressly determines that there is no just reason for delay." FED. R. CIV. P. 54(b). As CSX has explained, this Court's rulings constitute a final judgment on CSX's federal antitrust claims, and there is no just reason to delay Fourth Circuit review of those rulings. *See* ECF No. 624 at 4–7.

Defendants contend that CSX has not offered any "compelling reason" supporting entry of final judgment on its antitrust claims under Rule 54(b). *See* ECF No. 633 at 6–7. This argument hinges entirely on their position that the Court should grant their pending motions to dismiss, which would dispose of CSX's remaining claims and result in entry of a final judgment from which CSX could appeal. *See id*. As explained in CSX's opposition, however, Defendants' motions turn on complex and uncertain questions of state law. *See* ECF No. 632. If CSX's position as to them is correct, conducting a bench trial on those claims alone, before the Fourth Circuit reviews the dismissal of CSX's federal antitrust and damages claims, is not the best use of the Court's or the parties' resources. Should CSX prevail on appeal, the case may be remanded for a jury trial on

2

CSX's damages claims, which would obviate the need for a bench trial on injunctive relief. *See, e.g.*, *In re Sanctuary Belize Litig.*, 482 F. Supp. 3d 373, 386 n.3 (D. Md. 2020) (noting that the court considered the plaintiff's request for injunctive relief in conjunction with jury trial on the merits); *HumanScale Corp. v. CompX Int'l, Inc.*, Case No. 3:09-cv-86, 2010 WL 1779963, *1 (E.D. Va. Apr. 29, 2010) (noting that court would consider request for permanent injunction "[b]ased on the verdict" returned by the jury). Entering judgment on CSX's antitrust claims under Rule 54(b) at this time would thus "conserv[e] [] judicial resources" by "avoid[ing] the possibility that [the court] must conduct two separate trials concerning the same underlying facts and circumstances."[1] *Schneider v. Hardesty*, Case No. 1:06-cv-836, 2010 WL 150139, *3 (W.D. Ohio Jan. 14, 2010).

In *Braswell Shipyards, Inc. v. Beazer E., Inc.*, the Fourth Circuit outlined non-exhaustive factors that a district court may consider when deciding whether to enter judgment under Rule 54(b). *See* 2 F.3d 1331, 1335–36 (4th Cir. 1993) (identifying, among others, "the relationship between the adjudicated and unadjudicated claims"; "the possibility that the reviewing court might be obliged to consider the same issue a second time"; and "miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like"). The *Braswell* Court emphasized that this determination is highly factual and case-specific. *See id.* at 1338–39. Indeed, as the Supreme Court has also explained, the question of whether to grant judgment under Rule 54(b) is "likely to be close" in many cases, and it requires the trial judge to "weigh and balance the contending factors" and, ultimately, "assess

---

[1] At a minimum, whether CSX is entitled to prospective injunctive relief on its remaining claims presents complex and unsettled questions of state law, which may be mooted, either legally or practically, by the Fourth Circuit's ruling on CSX's appeal as to its federal antitrust claims.

3

the equities between the parties." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 12–13 (1980) (alterations omitted).

Defendants invoke *Braswell* in support of their argument that "the fact the parties on appeal remain contestants below militates against the use of Rule 54(b)." ECF No. 633 at 6 (quoting *Braswell*, 2 F.3d at 1336–37). But the *Braswell* court found this factor to be relevant in that case because a "piecemeal" appeal might have resulted in an improper double recovery. *See* 2 F.3d at 1337–39. As the court explained, the damages available on the plaintiff's state law negligence claim were "inextricably intertwined" with the remedy for its federal CERCLA claim, "because a CERCLA cleanup will most assuredly increase the value of the damaged property at issue." *Id.* at 1337. Consequently, entering Rule 54(b) final judgment on the negligence claim before the CERCLA claim had been adjudicated increased the likelihood that the plaintiff not only would receive "the 'benefit of the bargain' under South Carolina law, but will also receive a piece of property that has appreciated as well, and hence a windfall." *Id.*; *see also Minyard, Inc. v. Se. Chem. & Solvent Co.*, 184 F.3d 373, 384 (4th Cir. 1999) (stating that, in *Braswell*, "[c]ritical to our holding that Rule 54(b) certification was inappropriate was our belief that the plaintiff would likely receive an impermissible double recovery"). That concern is not applicable here. CSX seeks the same prospective injunctive relief under both federal and state law, and that relief in no way overlaps with CSX's historical damages, which the Court has ruled are unavailable as a matter of law.

Defendants also argue that the factual relationship between CSX's claims weighs against Rule 54(b) certification. *See* ECF No. 633 at 6. But the Supreme Court has "long recognized that claims arising out of the same transaction or sharing certain factual elements may be appealed separately under Rule 54(b)." *H & W Indus., Inc. v. Formosa Plastics Corp., USA*, 860 F.2d 172,

175 (5th Cir. 1988) (collecting cases). This is especially true in cases involving treble-damages antitrust claims. *See, e.g., Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436–37 & n.9 (1956) (affirming entry of judgment under Rule 54(b) on plaintiff's antitrust claims notwithstanding that state law breach of contract and tortious interference claims remained pending, and explaining that the antitrust claims were not so "inherently inseparable from, or closely related to" the common law claims that Rule 54(b) judgment was improper); *Geneva Pharm. Tech. Corp. v. Barr Labs., Inc.*, Case No. 98 CIV. 861(RWS), 99 CIV. 3687(RWS), 2002 WL 31159048, at *3 (S.D.N.Y. Sept. 27, 2002) (entering Rule 54(b) judgment on plaintiff's antitrust claims despite pendency of factually related state law claims and explaining that "even where dismissed claims have arisen from the same transaction or occurrence as pending claims, a final judgment under Rule 54(b) is nonetheless appropriate 'if different sorts of relief are sought, and consequently, the claim for greater relief would be pressed by the plaintiff even if the other claim were granted.'") (citing *Cullen v. Margiotta*, 811 F.2d 698, 711 (2d Cir. 1987)).[2]

As the cases cited by Defendants make clear, district courts evaluating whether to enter judgment under Rule 54(b) must "take into account two broad sets of considerations—the parties' interest in swift resolution of their disputes, and the 'juridical concerns' of preserving judicial resources and guarding against the unnecessary resolution of issues." *Fox v. Baltimore City Police Dept.*, 201 F.3d 526, 531 (4th Cir. 2000) (citing *Curtiss-Wright*, 446 U.S. at 10)). For example, certification may be inappropriate if "new facts might come to light in . . . further proceedings [at the district court] that would 'provide a basis for questioning the soundness' of the appellate court's

---

[2] In its opening memorandum, CSX inadvertently omitted a citation to *Geneva Pharmaceuticals*, 2002 WL 31159048, at *3, which CSX quoted for the proposition that "[t]he plaintiffs would be entitled to treble damages under the antitrust laws, and thus the dismissed claims involve a greater claim for relief." *See* ECF No. 624 at 6.

prior conclusions" or if "further proceedings [at the district court] might moot the issues involved." *Id.* (citations omitted). None of these concerns is present here, as the Court disposed of CSX's federal claims on antitrust-specific legal grounds. Indeed, the "juridical concern" for guarding against the unnecessary resolution of issues militates in favor of an immediate appeal, because denying CSX's Motion would require the Court to adjudicate complex issues of state law on the remaining claims.

Moreover, a bench trial on state law injunctive claims will not moot CSX's appeal of this Court's prior ruling at summary judgment. Reversal of this Court's summary judgment ruling by the Fourth Circuit entitles CSX to have a jury hear its antitrust damages claims, regardless of any resolution by this Court of similar facts in a bench trial. *See Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 547 (1990) (reversing dismissal of race discrimination claim under 43 U.S.C. § 1981 and remanding for jury trial, notwithstanding district court's prior bench trial, explaining that "the right to a jury trial of legal issues [cannot] be lost through prior determination of equitable claims") (citations omitted). As a result, entry of judgment under Rule 54(b) is appropriate.

**II.     There are substantial grounds for differing opinions as to the Court's January Orders, as required for the Court to certify an interlocutory appeal under § 1292(b).**

As an alternative to Rule 54(b) certification, the Court can certify its January summary judgment and dismissal orders for interlocutory appellate review, because those orders (1) involve controlling questions of law (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal from those orders may materially advance the ultimate termination of the litigation. *See* ECF No. 624 at 7 (citing 28 U.S.C. § 1292(b)). Defendants do not dispute that the Court's January orders involve controlling questions of law, arguing only that the last two

factors have not been satisfied. None of their arguments demonstrate that § 1292(b) certification is inappropriate here.

### A. There is substantial ground for difference of opinion.

As CSX has explained, the Court's summary judgment opinion addresses "novel and difficult issue[s] of first impression" involving a circuit split on which the Fourth Circuit has not yet commented. *See* ECF No. 624 at 9 (citing *United States ex rel. A1 Procurement, LLC v. Thermcor, Inc.*, 173 F. Supp. 3d 320, 323 (E.D. Va. 2016)). Defendants contend that there is no substantial ground for difference of opinion underlying either of the Court's January orders. *See* ECF No. 633 at 8–11.

***Summary Judgment Opinion.*** As to the Court's summary judgment ruling on the statute of limitations, the scope of *Klehr*'s impact on *Zenith* and the continuing conspiracy doctrine is far from certain—particularly in the context of Section 2 monopolization claims, in which damages flow from the plaintiff's overall exclusion from the market, not from any single wrongful act in furtherance of the illegal monopoly. *See LePage's v. 3M*, 324 F.3d 141, 166 (3d Cir. 2003) (in § 2 case, approving damages calculation premised on market share because "it would be extremely difficult, if not impossible, to segregate and attribute a fixed amount of damages to any one act as the theory [in a monopolization case is] not that any one act in itself was unlawful, but that all the acts taken together show[ ] a § 2 violation.").

In holding that CSX could not maintain its damages claims absent evidence that it had suffered "new and accumulating injury" from an "overt act" by Defendants within the limitations period, the Court relied largely on out-of-circuit decisions. *See* ECF No. 559 at 23–43. The Fourth Circuit has not embraced this "new-and-accumulating" injury requirement in market-foreclosure cases, and there is substantial ground for difference of opinion as to whether it would do so in light

7

of Supreme Court precedent to the contrary. *See, e.g.*, *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 502 n.15 (1968) (holding that plaintiff could bring claim seeking to recover damages for defendant's "continuing violation of the Sherman Act," even though anticompetitive conduct began outside the limitations period); *Zenith Radio Corp. v. Hazleton Rch., Inc.*, 401 U.S. 321, 338 (1971) ("[E]ach time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act."); *see also Lancianese v. Bank of Mount Hope*, 783 F.2d 467, 470 (4th Cir. 1986) (restating *Zenith*'s rule). In particular, in *Lower Lake Erie*, the Third Circuit extended the principles of *Hanover Shoe* and *Zenith* to the market-exclusion context, holding that "continuing and accumulating damage may result from intentional, concerted inaction." 998 F.2d 1144, 1172 (3d Cir. 1993).

Defendants contend that *Lower Lake Erie* is "obsolete" because it pre-dates *Klehr*. ECF No. 633 at 9. But since *Klehr*, courts still continue to rely on *Lower Lake Erie*'s analysis. *See, e.g.*, *West Penn Allegheny Health System, Inc. v. UPMC*, 627 F.3d 85, 106–07 (3d Cir. 2010); *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 747 (E.D. Pa. 2014); *Santana Prod., Inc. v. Bobrick Washroom Equip., Inc.*, 249 F. Supp. 2d 463, 495 (M.D. Pa. 2003), *vacated in part on other grounds,* 401 F.3d 123 (3d Cir. 2005). Nor is Defendants' citation to a single out-of-circuit district court opinion enough to show that there is no ground for difference of opinion on this issue. *See* ECF No. 633 at 9 (citing *Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp.*, 221 F. Supp. 3d 1033 (N.D. Ind. 2016)). The *Gumwood* court excluded the plaintiff's damages expert because he failed to identify "*any* particular violation" underlying his lump-sum damages analysis, which did not allow the jury to properly assess "the effect of the statute of limitations on Gumwood's damages." *Id.* at 1038, 1043. CSX's expert, by contrast, apportioned CSX's lost profits by year,

thus providing the jury a sufficient basis to evaluate the impact of the statute of limitations on any potential damages award. *See* ECF No. 489 at 35; *see also Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264 (1946) (affirming jury verdict awarding damages for antitrust conspiracy and emphasizing that a jury "may make a just and reasonable estimate of the damage based on relevant data," including "probable and inferential as well as . . . direct and positive proof").

At bottom, as the Court acknowledged in its summary judgment opinion, applying the statute of limitations framework in continuing antitrust conspiracy cases like this one is an "exceedingly complex" endeavor—one that the Fourth Circuit has not yet undertaken. *See* ECF No. 559 at 16. There are reasonable arguments on both sides, such that § 1292(b) certification is appropriate.

***Dismissal Opinion.*** With respect to the Court's order dismissing CSX's federal claims for injunctive relief, Defendants contend that there is no "substantial ground" for disagreement with the Court's expansive interpretation of 15 U.S.C. § 26, because the Court found the statutory text to be "clear." ECF No. 633 at 10 (citing ECF No. 613 at 17). But in the nearly thirty years since the Interstate Commerce Commission Termination Act of 1995 ("ICCTA") made certain "conforming" amendments to § 26, this Court is the *only* federal court to have been faced with the question at hand—i.e., whether, in enacting the ICCTA, Congress intended, without explanation, to dramatically expand the scope of antitrust immunity available to common carriers—as a disputed issue. *See* ECF No. 624 at 10 (noting that the only other federal court to address this issue raised it *sua sponte* and addressed it in a footnote without offering any analysis) (citing *Truck-Rail Handling, Inc. v. BNSF Ry. Co.*, Case No. C 02-02825 JSW, 2005 WL 8178364, at *4 n.5 (N.D. Cal. Mar. 8, 2005), *aff'd on other grounds*, 244 F. App'x 130 (9th Cir. 2007)). Courts have found "substantial ground for difference of opinion" under similar circumstances. *See, e.g.*, *In re*

9

*Hawker Beechcraft, Inc.*, Nos. 13 Misc. 373(PKC), 12–11873(SMB), Adversary Proceeding No. 12–01890 (SMB), 2013 WL 6673607, at *5 (S.D.N.Y. Dec. 18, 2013) (certifying under § 1292(b) an order involving "complex statutory interpretation" questions that were "of first impression in any federal court").

### B.  Certification would materially advance the termination of the litigation.

Defendants do not dispute that the material-advancement factor under 28 U.S.C. § 1292(b) is "closely tied" to the first factor—i.e., whether the issue involves a "controlling question of law." *See* ECF No. 633 at 11–12; ECF No. 624 at 11 (citing 16 CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 3930). Instead, they argue that certification would not advance the termination of the litigation because the Court should instead terminate the litigation by granting their pending motions to dismiss CSX's remaining state law claims. *See* ECF No. 633 at 11–12. As CSX has explained, its state law injunctive relief claims are not subject to dismissal and should proceed to a bench trial. *See* ECF No. 632. But Defendants' themselves have characterized CSX's antitrust damages claims as the "focus" of this case. *See, e.g.*, ECF No. 573 at 3. Certification at this stage should avoid serial trials in which this Court conducts a bench trial on state law injunctive relief, only to be followed by a much broader jury trial on antitrust claims on remand. And, no matter the outcome, a decision by the Fourth Circuit will clarify the issues and "dramatically alter the stakes of the litigation" in a manner likely to advance its ultimate termination. *Fed. Energy Reg. Comm'n v. Vitol, Inc.*, Case No. 2:20-CV-00040-KJM-AC, 2022 WL 583998, at *4 (E.D. Cal. Feb. 25, 2022) (citations omitted).

### CONCLUSION

For these reasons, as well as those in CSX's memorandum in support of its Motion (ECF No. 624), the Court should enter final judgment on the federal antitrust claims under Rule 54(b),

or, alternatively, certify its January 3 and January 27 orders for interlocutory appeal under 28 U.S.C. § 1292(b), and stay the case pending appeal.

Dated:  February 28, 2023				Respectfully submitted,

**CSX TRANSPORTATION, INC.**
*By Counsel*

*/s/ Robert W. McFarland*
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
V. Kathleen Dougherty (VSB No. 77294)
Jeanne E. Noonan (VSB No. 87863)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia  23510-1655
Tel.:  (757) 640-3716
Fax:  (757) 640-3930
rmcfarland@mcguirewoods.com
bhatch@mcguirewoods.com
vkdougherty@mcguirewoods.com
jnoonan@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
W. Cole Geddy (VSB No. 93511)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219-3916
Tel.:  (804) 775-1000
Fax:  (804) 698-2026
bjustus@mcguirewoods.com
apeterson@mcguirewoods.com
cgeddy@mcguirewoods.com

## CERTIFICATE OF SERVICE

I certify that on this 28th day of February, 2023, a true and correct copy of the foregoing was served on all counsel of record via Notice of Electronic Filing by filing with the Court's CM/ECF system.

CSX TRANSPORTATION, INC.
*By Counsel*

*/s/ Robert W. McFarland*
Robert W. McFarland (VSB No. 24021)
Benjamin L. Hatch (VSB No. 70116)
V. Kathleen Dougherty (VSB No. 77294)
Jeanne E. Noonan (VSB No. 87863)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia  23510-1655
Tel.:  (757) 640-3716
Fax:  (757) 640-3930
rmcfarland@mcguirewoods.com
bhatch@mcguirewoods.com
vkdougherty@mcguirewoods.com
jnoonan@mcguirewoods.com

J. Brent Justus (VSB No. 45525)
Ashley P. Peterson (VSB No. 87904)
W. Cole Geddy (VSB No. 93511)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219-3916
Tel.:  (804) 775-1000
Fax:  (804) 698-2026
bjustus@mcguirewoods.com
apeterson@mcguirewoods.com
cgeddy@mcguirewoods.com