UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CSX TRANSPORTATION, INC.,
*individually and on behalf
of Norfolk & Portsmouth Belt
Line Railroad Company,*

                Plaintiff,

v.                                 Civil No. 2:18cv530

NORFOLK SOUTHERN RAILWAY COMPANY,
NORFOLK & PORTSMOUTH BELT LINE RAILWAY
COMPANY,

                Defendants.

## OPINION AND ORDER

This matter is before the Court on supplemental motions filed by Norfolk & Portsmouth Belt Line Railway Company ("NPBL") and Norfolk Southern Railway Company ("NSR," and together with NPBL, "Defendants"), addressing whether any of CSX Transportation, Inc.'s ("CSX") state law claims seeking injunctive relief remain in this case and/or whether any such claims that may remain are viable. ECF Nos. 614, 616. Also before the Court is CSX's motion asking the Court to withhold ruling on the Defendants' motions and allow CSX to immediately appeal this Court's prior rulings on CSX's federal antitrust claims and a portion of CSX's state law claims. ECF No. 623. For the reasons explained below, the Court: (1) **GRANTS** Defendants' motions to the extent they argue that CSX's state law conspiracy claims, and the vast majority of CSX's state law contract claim, require no further ruling by the Court because

injunctive relief under Virginia law is foreclosed by this Court's findings in its January 3, 2023 summary judgment Opinion and Order; and (2) **GRANTS** NSR's motion to the extent it argues that injunctive relief is unavailable under state law for any potential contractual breach involving NSR's obstruction of CSX trains in 2015.  These rulings dispose of <u>all remaining state law claims</u>, and CSX's motion seeking a ruling authorizing an immediate appeal is therefore **DISMISSED as moot.**

## I. PROCEDURAL BACKGROUND

Based on the focus of the parties' summary judgment briefing, this Court's January 3, 2023 Opinion and Order was almost exclusively dedicated to ruling on CSX's federal antitrust damages claims.  ECF No. 559.  Although the Court also found that nearly all of CSX's state law damages claims were time-barred, the Court did not squarely address the impact of its limitations ruling on CSX's ability to pursue injunctive relief under Virginia law, noting that the summary judgment briefs were underdeveloped on the ancillary state law claims and did not flesh out how the nature of the relief sought impacted the limitations bar.  <u>See</u> ECF No. 559, at 94 ("In keeping with their federal law arguments, Defendants assert that CSX's Virginia state law claims are time-barred or otherwise fail as a matter of law.  These arguments, and CSX's responses, are substantially underdeveloped compared to the parties' extensive federal antitrust arguments."); <u>id.</u> at 98

2

("Presumably due to the complexity of the antitrust issues, NSR's and CSX's summary judgment briefs devote limited attention to CSX's breach of contract claim."); id. at 103 n.46 (noting that although the Court "does not directly reach" the unbriefed issue of state law injunctive relief, "it does not appear" that any state claims for injunctive relief remain viable for various reasons, to include the Court's finding that the underlying conspiracy and contract claims were time-barred under Virginia law).

A week after the Court issued its summary judgment opinion, Defendants filed a motion to dismiss that was purportedly directed at all remaining claims, but the briefing focused on the availability of federal injunctive relief, and CSX argued at a later hearing that "there is no pending motion to which [CSX] had the opportunity to respond that challenged the state law claims," and that "there's more to be said" on these issues.  ECF No. 605, at 38.  At that hearing, the Court granted the Defendants' motion to dismiss CSX's federal antitrust injunctive relief claim based on a legal finding applicable solely to the federal claim.  The Court also asked the parties again for their views on the status of the case — that is, whether Defendants had effectively already moved to have the remaining state law injunctive relief claims dismissed, or whether a bench trial should begin on those claims. The Court expressly referenced the Virginia legal principle that "equity follows the law," asking whether there was "really anything

left to proceed on as to the time-barred state law injunctive relief claims" following the Court's ruling on summary judgment. ECF No. 605, at 32.  The Court separately asked whether CSX's timely allegation of a contractual breach by NSR in 2015 required a different analysis, to include whether the Court could order specific performance of any relevant contract provision.  Id. at 33-34.

After a recess to allow counsel an opportunity to speak with each other and with their clients, CSX informed the Court that it "does not . . . make sense" to proceed to a bench trial "if the Court would conclude that [CSX's] claims are completely barred on purely legal ground[s]." Id. at 37-38.  CSX, however, indicated that Defendants' recent motions did not formally move to dismiss the state law injunctive relief claims, meaning that CSX had not provided responsive argument on the relevant issues.  Id. at 38. Although all counsel were given an opportunity to advocate for their view of how the case should proceed and whether the state law claims were barred on purely legal grounds, the Court noted that CSX had argued "several times" that it had never had the opportunity to brief the viability of the state law injunctive relief claims.  Id. at 72-73.  After another recess requested by CSX, counsel for all parties reported that the bench trial should be continued, with the Court acknowledging that it could just proceed to trial and "sort it all out on the back end," but that

4

doing so would "be very hard" for counsel and their clients.  Id.
at 73, 79.  The Court therefore accepted the parties' joint
proposal to continue the bench trial scheduled for the next day in
favor of further briefing.  Id. at 79, 82.

The motions currently before the Court were then filed, and
CSX has now been afforded the opportunity to fully address the
legal viability of any outstanding state law claims.  CSX, of
course, continues to oppose dismissal of the state law claims on
the merits, but also argues that Defendants' pending motions,
styled as Rule 12(c) motions, are not procedurally proper.  CSX
takes the position that the Court should neither have a trial nor
rule on Defendants' motions, but should instead permit an immediate
appeal to the Fourth Circuit, leaving the viability of the state
law injunctive relief claims unresolved.

## II. DISCUSSION – CLAIMS DEEMED TIME-BARRED

For the reasons explained below, and for those articulated in
Defendants' briefs, the Court finds that its prior limitations
ruling effectively resolved the entirety of CSX's untimely state
law causes of action regardless of the remedy requested.  Although
Defendants did not expressly argue on summary judgment that a
favorable limitations ruling would extinguish the portion of CSX's
state law claims seeking injunctive relief, they also did not argue
that a favorable limitations ruling would only apply to the portion
of the state law claim seeking money damages.  See ECF No. 605, at

53 (reflecting NPBL's concession that the summary judgment briefs did not mention injunctive relief, but arguing that both Defendants' summary judgment motions were directed at the time-barred claims in their entirety).   Though this Court found it advisable to seek further briefing to ensure that its summary judgment ruling did not improperly foreclose an available state law equitable remedy that operated outside the statute of limitations, having now provided CSX a full opportunity to argue its position, the Court agrees with Defendants that the Court's prior limitations ruling granting summary judgment in Defendants' favor effectively disposed of the entirety of the time-barred causes of action.   Because the Court's prior ruling fully resolved CSX's untimely claims, the Court rejects CSX's procedural challenge to Defendants' pending motions.

### A. Equity Follows the Law

In Virginia, it is well established that "equity follows the law" and that with "respect to the statute of limitations[,] . . . a demand that would be barred if asserted in a legal forum will be equally barred in equity."  Redford v. Clarke, 100 Va. 115, 121 (1902); Kappa Sigma Fraternity, Inc. v. Kappa Sigma Fraternity, 266 Va. 455, 467 (2003) (same).   Injunctive relief under Virginia law is a remedy and not a standalone cause of action.[1]   Although injunctive relief is equitable in nature, when such remedy is

---

[1] This legal proposition is not disputed.  See ECF No. 632, at 11 n.3.

sought in conjunction with money damages as a remedy for a legal cause of action, the fact that the requested relief is grounded in equity does not allow a plaintiff to circumvent the otherwise applicable limitations period and proceed with timeliness governed only by the equitable doctrine of laches.  See City of Portsmouth v. City of Chesapeake, 232 Va. 158, 164 (1986) ("Laches, a species of estoppel, is an equitable defense," and a "proceeding to enforce a legal right is not subject to the equitable defense of laches."); Pendleton v. Nat'l Wildlife Fed'n, No. 5:10cv9, 2010 WL 1212566, at *6 (W.D. Va. Mar. 26, 2010) ("[B]oth the United States Court of Appeals for the Fourth Circuit and the Virginia Supreme Court have held that laches is a doctrine that applies only in equity to bar equitable actions, not at law to bar legal actions.") (quotation marks and citations omitted).  As recently explained by the Fourth Circuit:

> Under Virginia law, it is well established that the form of litigation does not affect the analysis of the statute of limitations.  Kappa Sigma Fraternity, Inc., 266 Va. at 465.  Instead, "[t]he applicability of the statute of limitations is governed by the object of the litigation and the substance of the complaint, not the form in which the litigation is filed."  Id.  "If the law were otherwise, the statute of limitations could be rendered meaningless merely by the filing of a declaratory judgment action."  Board of Supervisors v. Thompson Assocs., 240 Va. 133, 139 (1990).  Consequently, in order to determine whether the statute of limitations applies to [a] claim for declaratory and injunctive relief, it is necessary to look to "the object of the litigation and the substance of the complaint. . . ."  Kappa Sigma Fraternity, Inc., 266 Va. at 465.

Manotas v. Ocwen Loan Servicing, LLC, 794 F. App'x 259, 263–64 (4th Cir. 2019) (second alteration added); see also Birchwood-Manassas Assocs., L.L.C. v. Birchwood at Oak Knoll Farm, L.L.C., 290 Va. 5, 7 (2015) ("[S]tatutes of limitations are strictly enforced and must be applied unless the General Assembly has clearly created an exception to their application," and "any doubt[s] must be resolved in favor of the enforcement of the statute.") (citation omitted); Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 798 (4th Cir. 2001) (conducting a separation of powers analysis and finding that, with respect to federal causes of action, "when Congress creates a cause of action and provides both legal and equitable remedies, its statute of limitations for that cause of action should govern, regardless of the remedy sought").

Applying the above, a Virginia breach of contract claim (or conspiracy claim grounded in a breach of a fiduciary duty) seeking both money damages and prospective injunctive relief does not have one standard governing the timeliness of the damages remedy and a second standard governing the timeliness of the requested injunctive relief. See Blankenship v. Consolidation Coal Co., 850 F.3d 630, 640 (4th Cir. 2017) ("Apart from their challenge to the district court's limitations rulings, the plaintiffs challenge the court's denial of their request for injunctive relief. Because, however, the causes of action that provide the basis for any

8

claimed relief are [time-]barred, the plaintiffs' request for injunctive relief is also [time-]barred.").[2]

### B. Prospective Injunctions and Nature of Relief

CSX nevertheless argues that because the injunctive relief it seeks is "prospective," the Virginia statutory limitations periods governing contractual breaches and conspiracy claims do not control. ECF No. 632, at 8-14. CSX relies almost exclusively on citations to trespass and nuisance case law where the plaintiffs sought injunctions due to still-present conditions on real property that purportedly deprived the owners of certain rights. See Downey v. Verizon Virginia, L.L.C., 86 Va. Cir. 526, 527 (Greene Cnty., 2013) (sustaining a plea in bar as to an untimely damages claim due to the fact that the telephone cable at issue was installed on the plaintiffs' land many years ago, but allowing the case to proceed as to whether the defendant must remove the cable); Willems v. Batcheller, 109 Va. Cir. 319, 320 (Fairfax Cnty., 2022) (finding that the statutory limitation periods did not apply to the plaintiffs' nuisance and trespass claims seeking equitable relief and that "the defense of laches instead delimits the period within which the actions had to be brought").[3]

---

[2] Blankenship involved "state law claims of trespass, unjust enrichment, negligence, nuisance, and waste," and like the instant case, the plaintiffs "demanded hundreds of millions of dollars in damages, punitive damages, and injunctive relief." Blankenship, 850 F.3d at 633-34.

[3] CSX also cites to the Virginia Supreme Court's opinion in Armstrong v. Bryant, 189 Va. 760, 769 (1949) for the proposition that equitable remedies are not subject to statutes of limitations even if a claim is grounded in

While *Downey* appears favorable to CSX, it is readily distinguishable because, unlike the instant case, *Downey* involved a still-present physical trespass on land for which a purely equitable claim otherwise appeared to exist. *See Boerner v. McCallister*, 197 Va. 169, 170-71 (1955) (finding that the "bill in chancery" was not a legal dispute over title to land, but "appeared to be a pure bill for an injunction to prevent a trespass" on land, which was properly asserted in equity). Second, even if *Downey* were not distinguishable, it is unpersuasive when read in the context of the weight of Virginia authority, including other trespass cases, holding that laches "operates as the time limitation on certain equitable claims where no statute of limitations is denoted." *Rustgi v. Webb*, 105 Va. Cir. 199, 208 (Fairfax Cnty., 2020) (emphasis added) (internal quotation marks omitted). In contrast, if a statute of limitations is denoted for a claim, as it is for trespass and nuisance claims, then the statute applies and laches cannot "operate to defeat the intent of the General Assembly." *Id.*; *cf. City of Portsmouth*, 232 Va. at 164 (indicating that laches did not apply to a boundary line dispute because the procedure invoked by the plaintiff "is purely statutory, conferring only legal, not equitable rights"); Sinclair

---

contract. This argument is unavailing because the cited discussion involved the court's explanation of why the plaintiff did not have an adequate remedy in law, and the facts as presented did not suggest that the plaintiff's claim seeking specific performance of the sale of a residence was untimely under the applicable limitations period).

on Virginia Remedies § 43-2[E] (Oct. 2022) ("Claims cognizable at law presented in equitable actions remain subject to applicable statutory periods of limitations; this is true even where the claim is based on equitable considerations, such as unjust enrichment.").

The rule articulated in Rustgi was thereafter clarified by the same judge in Willems, with the later opinion noting that Rustgi "left unanswered" whether the determination of the timeliness of a trespass or nuisance claim "depends upon the nature of the remedy sought by the complainant." Willems, 109 Va. Cir. at 329-30. The court answered that question in the affirmative to the extent the relief sought by a plaintiff is solely equitable, relying on Virginia Code § 8.01-230, which includes an exception for solely equitable claims.[4] Id. at 333. Applying § 8.01-230, the court explained: "[W]hile the statute of limitations of actions under Virginia Code § 8.01-243 generally applies to claims of

---

[4] Virginia Code § 8.01-230 provides:

> In every action for which a limitation period is prescribed, the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person or damage to property, when the breach of contract occurs in actions ex contractu and not when the resulting damage is discovered, except where the relief sought is solely equitable . . . .

Va. Code § 8.01-230 (emphasis added). Though the Willems opinion appears to read this statute as removing "solely equitable" claims from the reach of an otherwise applicable statutory limitations period, section 8.01-230 can also be read as governing when the applicable limitations period begins to run, with claims grounded "solely" in equity potentially benefitting from the "discovery rule." See Wallace v. Jarvis, No. 7:09cv426, 2010 WL 8750309, at *3 (W.D. Va. July 30, 2010) (interpreting Va. Code § 8.01-230 as providing that "when the relief sought is solely equitable, Virginia applies a discovery rule").

<u>trespass and nuisance</u>, . . . because <u>the relief sought by</u> <u>Plaintiffs is solely equitable</u> . . . the statutory limitation periods do not apply to Plaintiffs' claims," which are instead governed by "the defense of laches." <u>Id.</u> at 333 (emphasis added).

### C. Nature of the Cause of Action

Contrary to the Virginia case law cited by CSX, Virginia cases that do not involve a continuing trespass have held that the determination of whether a statutory limitations period bars equitable relief turns on the nature of the cause of action, not of the remedy sought. <u>See</u> <u>Orantes v. Ranchero</u>, 70 Va. Cir. 277 (Fairfax Cnty., 2006). The <u>Orantes</u> court explained:

> Orantes' argument that the limitations period of Va. Code § 8.01-243 does not apply to his claim in Count I because it seeks equitable remedies is unavailing. The fact that the Bill of Complaint seeks largely equitable remedies does not change the fact that the claim in Count I is for fraud. . . . Fraud is a tort, actionable at law, and would be barred if brought for money damages at law. Accordingly, even though Orantes' claim was brought on the chancery side of the Court, it still is barred by Va. Code § 8.01-243. . . . Here, while the remedy sought is equitable, the <u>cause of action</u> is fraud, and the fact that money damages are not sought in Count I does not save it from being time-barred.

<u>Id.</u> at 279-80 (emphasis in original). The court went on to reach the same conclusion as to the plaintiff's second count, a Virginia civil conspiracy claim, rejecting the plaintiff's argument that laches applied and noting that the plaintiff "cannot even claim that he seeks purely equitable remedies in Count II." <u>Id.</u> at 280; <u>see</u> <u>Kappa Sigma Fraternity, Inc.</u>, 266 Va. at 467 (finding that to

the extent the plaintiff's claims are viewed as alleging a breach of fiduciary duty, they "are time-barred" by that statutory "catch-all" limitations provision); see Marriott v. Harris, 235 Va. 199, 214 (1988) (finding that an "ordinary bill of complaint instituting a suit in equity upon written contracts" that sought "alternative relief in the form of rescission" was governed by Virginia's statute of limitations governing actions founded upon a contract).

In the context of the case before this Court, which involves remedies for stale contractual breaches and conspiracies to harm CSX's business, the Court finds unpersuasive both CSX's reliance on continuing trespass cases and CSX's framing of its causes of action as timely seeking prospective relief.  See Manotas, 794 F. App'x at 263-64 (finding that even when a plaintiff seeks to enjoin a future foreclosure sale based on the failure of a condition precedent to such sale, the cause of action is "rooted in contract and [is] subject to Virginia's statute of limitations for breach of contract").  The better interpretation of Virginia law is that laches applies instead of a statutory limitations period only when the cause of action is exclusively cognizable in equity.  Parker v. Griffin, 55 Va. Cir. 191 (Shenandoah Cnty., 2001); Culwell v. Huff, 50 Va. Cir. 180, 181 (Bedford Cnty., 1999).

In Parker, the court explained that even though the suit to "rescind a transaction or contract" was properly filed in equity, the court still needed to determine whether there was a "statute

13

of limitations applicable to the circumstances presented." Id. at
192-93. The Parker opinion further explained that: (1) while
"[g]eneral statutes of limitations do not apply to chancery courts
when dealing with matters exclusively cognizable in equity,"
claims of "undue influence are cognizable at law as well as in
equity"; (2) "[r]estitution may be recovered at law or in equity";
(3) undue influence "is a species of fraud" that is "actionable at
law"; and (4) "[w]here the chancery court enforces a right
cognizable at law, equity follows the law and will apply such
statute of limitations as may exist." Id. at 193 (emphasis added).
Based on these findings, as well as the finding that the claim at
issue sought recission of a contract, the court applied the five-
year limitations period governing contracts. Id.; see Good v.
Weaver, 98 Va. Cir. 493, 493-94 (Rockingham Cnty., 2016) ("Despite
a finding that an action is equitable, that does not typically end
the analysis of the potential influence of a statute of
limitations[,]" and "if the equitable action at issue has a
corresponding action in law, then any equitable analysis governing
delay of filing will follow the statute of limitations that governs
the law action."); 12A Michie's Jurisprudence - Limitation of
Actions § 7 (2022) ("If a particular cause of action sounds in
both equity and law, then a trial court should apply a statute of
limitation to that particular cause of action."); Chen v. VPT,
Inc., No. 7:08cv419, 2008 WL 4693556, at *3 (W.D. Va. Oct. 24,

2008) (rejecting the plaintiff's efforts to use the equitable nature of the relief sought to avoid the statute of limitations for contract, fraud, and duress claims, agreeing with the defendant that "even if the complaint purports to only seek declaratory and equitable relief, 'equity follows the law; and if a legal demand be asserted in equity which at law is barred by statute, it is equally barred in equity'" (quoting Kappa Sigma Fraternity, Inc., 266 Va. at 467)); Westwood Ltd. P'ship v. Grayson, 96 Va. Cir. 312 (Fairfax Cnty., 2017) (applying laches to a fraudulent conveyance claim because it did not have a statutory limitations period, but applying the statute of limitations to a "voluntary conveyance" claim and claims for common law and statutory conspiracy), rev'd and vacated on other grounds sub nom. Grayson v. Westwood Buildings L.P., 300 Va. 25 (2021).

This Court has already ruled on summary judgment that both of CSX's conspiracy claims, and a portion of its contract claim, are time-barred under the applicable Virginia statutes of limitations, and even accepting that such claims sound in both law and equity, CSX remains bound by the statutory limitations period. Stated another way, because equity follows the law, Defendants have demonstrated that the legal effect of this Court's already issued summary judgment ruling extinguished these state law causes of

action in their entirety.[5]   Defendants' pending motions are therefore **GRANTED** to the extent that they contend that the Court's prior limitations ruling operates as a complete denial of the above-analyzed state law claims.

Alternatively, to the extent that there is a procedural infirmity with the Court simply revisiting the legal "impact" of its prior ruling, the Court finds it appropriate to: (1) reopen its earlier interlocutory ruling under Rule 54(b) of the Federal Rules of Civil Procedure to clarify its scope; or (2) to consider the state law injunctive relief issue anew through a Court-raised Rule 56(f) summary judgment procedure.[6]   Under either of these

---

[5] Even if the Court accepts, for the sake of argument, that the applicable Virginia statute of limitations does not apply to certain contract claims or conspiracy claims when the relief requested is "solely equitable," the Court is not faced with such scenario here as CSX's breach of contract claim and conspiracy claims sought hundreds of millions of dollars in monetary damages along with related injunctive relief.

[6] Rule 54(b), as argued by Defendants, provides that this Court's summary judgement ruling, which did not resolve all the claims in the case, "may be revised at any time" before the entry of final judgment. Fed. R. Civ. P. 54(b).  Rule 56(f), as previously referenced by this Court in its summary judgment ruling, allows the Court to grant summary judgment on a court-raised issue as long as the parties are provided notice and "a reasonable time to respond." Fed. R. Civ. P. 56(f).  As to Rule 54(b), when a prior ruling of the Court is avowedly tentative (as this Court's ruling was when indicating that it was not squarely addressing the full impact of its limitations finding while noting its reservations regarding whether any state law injunctive relief claims remained viable), law of the case considerations do not apply or at a minimum are far less potent.  See ECF No. 613, at 7-8.  As to Rule 56(f), the issue of whether CSX's injunctive relief claims could survive a limitations ruling adverse to CSX was first raised by this Court at oral argument on December 3, 2022, was argued extensively at the January hearing, and was thereafter fully briefed by the parties.  No factual disputes are relevant to this legal issue, and CSX has expressly indicated that it did not want to proceed to trial if there is a dispositive legal issue that would undercut CSX's ability to prevail.  Accordingly, a reasonable time to respond to this issue unquestionably has been provided.

alternative approaches, summary judgment is **GRANTED** in favor of Defendants on the above analyzed claims because the issues are purely legal, both parties have had ample opportunity to brief and argue these purely legal issues, and neither party seeks to proceed to a trial that would merely waste resources.

### III. DISCUSSION – TIMELY CONTRACT CLAIM AGAINST NSR

#### A. Remaining Contract Claim and Procedure

To the extent CSX's breach of contract claim against NSR relies on alleged conduct occurring more than five years before the instant lawsuit was filed, such claim is resolved immediately above as time-barred conduct.   To the extent CSX relies on purported breaches occurring in 2016 and 2018, this Court previously held that there was insufficient evidence in the summary judgment record to support a jury verdict finding that NSR breached an enforceable contract provision.   ECF No. 559, at 99-101. Accordingly, CSX's contract claim has already been rejected as to the 2016 and 2018 conduct regardless of the remedy requested.

With respect to NSR's purported contractual breaches in 2015, which occurred during the limitations period and were not previously rejected on any ground asserting that there was insufficient evidence to demonstrate a breach, this issue requires a ruling beyond this Court's prior summary judgment Opinion and Order.   Considering the proper procedure, if any, to take up this claim, the Court agrees with CSX that Rule 12(c), governing

17

judgement on the pleadings, does not appear to be the proper procedural vehicle.  However, CSX plainly has been given ample opportunity to be heard on the validity of its state law injunctive relief claim grounded in contract, and CSX does not seek a trial on this claim at this time.  Accordingly, in light of the procedural history set forth in Part I above, and for the reasons discussed in conjunction with the limitations ruling in  Part III above, the Court finds that it is appropriate to reopen summary judgment under Rule 54(b), or to take up summary judgment anew under Rule 56(f) as to this lone outstanding matter.[7]

### B. Availability of Injunctive Relief under State Contract Law for alleged 2015 Breaches

First, CSX fails to demonstrate irreparable harm resulting from the potentially actionable contractual breaches occurring in 2015.  As described in greater detail in this Court's summary judgment opinion, NSR purportedly obstructed the movement of a small number of CSX trains seeking to access a Norfolk, Virginia, containership terminal in 2015.  It is undisputed that special market conditions in 2015 had created massive port congestion and unique challenges to managing intermodal rail traffic.  For that

---

[7] In addition to the prior discussion on Rule 54(b), the Court notes its agreement with Defendants that controlling law addressing the scope of federal preemption has been clarified since this Court denied Defendants' original motion to dismiss.  See ECF No. 617, at 7-8; ECF No. 637 at 8 (citing Edwards v. CSX Transportation, Inc., 983 F.3d 112, 122 (4th Cir. 2020)).  Furthermore, the Court notes that it has fully considered CSX's motion seeking a path to file an interlocutory appeal, ECF No. 623, but finds that it promotes efficiency to resolve the merits of this very small slice of the contract claim — the sole issue remaining in this case.

18

reason, CSX sought to move a small number of trains across NSR's tracks using CSX's rights as a NPBL customer and shareholder even though those train movements would not be profitable for CSX. Although CSX purportedly lost business from one intermodal customer for a period of weeks as a result of NSR's obstructive conduct, CSX failed to advance a damages theory seeking to recover the limited monetary damages it suffered due to this temporary loss of business. ECF No. 559, at 102. Moreover, similar to the Court's prior conclusion that "the summary judgment record is devoid of even a scintilla of evidence" suggesting that CSX lost any long term contracts due to the 2015 conduct, id., nothing in the record would allow a reasonable juror to conclude that CSX is suffering any form of ongoing harm, let alone "irreparable harm" from these alleged contractual breaches, see Carbaugh v. Solem, 225 Va. 310, 314 (1983) (explaining that "lack of proof of irreparable harm is generally fatal," to a request for an injunction, which is an "extraordinary remedy" that will not issue "if the petitioner has an adequate remedy at law for the redress of his injury"). Therefore, CSX fails to demonstrate any ongoing harm or a risk of irreparable harm if an injunction grounded in contract is not issued.

Second, NSR effectively argues that although the contract provision at issue — that NSR "co-operate cordially" to encourage

the business of NPBL[8] — may be sufficiently definite to support a damages award, it is too broad to support <u>injunctive relief</u>. Notably, because "cordial" cooperation cannot be ordered to be specifically performed, any injunctive relief tethered to the 2015 breaches would require the Court to rewrite the contract to order that NSR engage in specific acts that are not otherwise required by the broad terms of the contract.  ECF No. 615, at 15-16 (citing cases).  This, of course, is improper under Virginia contract law. <u>See</u> <u>Eascalco, Inc. v. Caulfield</u>, 220 Va. 475, 477 (1979) ("A court cannot alter the terms of a contract and then enforce it; when specific performance is granted, the contract must conform substantially to the contract made by the parties.").

Third, considering CSX's contention that it does "not seek specific performance of the 'cordial cooperation' clause," but instead seeks to remedy prior breaches through an injunction modifying NPBL's Board structure or management so that NSR could no longer "control" NPBL, ECF No. 632, at 18, 26, such relief is not an available remedy for the 2015 breaches.  An injunction ordering NSR to behave differently with respect to how it nominates NPBL Board members not only would improperly require this Court to write new terms into the parties' contract, but in doing so would conflict with NSR's existing express contractual right to appoint

---

[8] To the extent that CSX's trains were prevented from using NSR's tracks to access the containership terminal, NPBL lost business as NPBL would have generated income from these train movements.

the majority of NPBL's Board, a right that has been in place since 1989. See Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc., 281 Va. 561, 573 (2011) (indicating that contract language should be harmonized to effectuate the intention of the parties and that "a specific provision of a contract governs over one that is more general in nature"). The Court agrees with NSR that Virginia contract law does not provide an injunctive remedy that would allow this Court to overrule or otherwise subvert NSR's express contractual right to appoint the majority of the NPBL Board, or otherwise apply the very broad cordial cooperation clause to enjoin NSR from engaging in specified future activity not otherwise dictated by the terms of the contract.

Similarly, to the extent CSX seeks an injunction that would prevent NSR from engaging in an unlawful conspiracy to injure CSX, or to modify how NSR nominates NPBL Board members, both forms of relief are not tethered to the 2015 breaches. NSR's alleged 2015 contractual breaches were a series of acts allegedly committed by NSR that did not involve the NPBL Board as NSR did not need to manipulate or conspire with the Board to obstruct access to NSR's own tracks. CSX's requested injunctive relief is in actuality tethered to its two state law conspiracy claims — which have both been rejected as time-barred — and not to the remaining contractual breach claim. Such relief is therefore an improper remedy for the alleged contractual breaches.

Fourth and finally, injunctive relief that is designed to redress (i.e., relief that is tethered to) the 2015 obstruction would require the Court to direct NSR to modify its rail schedules or train movements. The Court agrees with NSR's contention, which is essentially conceded by CSX, that any injunctive relief directed at train movements would invade the exclusive jurisdiction of the Surface Transportation Board ("STB"). ECF No. 632, at 18 n.4. Notwithstanding CSX's efforts to avoid this issue by seeking an injunction that does not directly impact train movements but instead modifies the control structure of the NPBL Board, because CSX relies on a state law contract claim to seek an injunction ordering an STB-regulated railroad to modify its control structure, the Court finds that such remedy, even if otherwise available, is preempted by federal law.[9]

---

[9] Sections 11321 and 11323 of the Interstate Commerce Commission Termination Act (the "ICCTA") provide the STB with exclusive authority over "control" of rail carriers. 49 U.S.C. §§ 11321, 11323. Where the STB has approved and authorized such control, a rail carrier's actions in maintaining or exercising that control are "exempt from the antitrust laws and from all other law, including State and municipal law." Id. § 11321. Notably, the STB did not authorize NSR's control of NPBL. Norfolk Southern Railway Co., Docket No. FD 36522, 2022 WL 2191932, at *15 (STB June 17, 2022). Without the protection of STB authorization, NSR's control is not automatically exempt from otherwise applicable laws, most notably federal antitrust laws. Although this Court previously determined that CSX's federal antitrust claims for damages and injunctive relief failed as a matter of law, the Court's ruling was not due to ICCTA preemption. Indeed, the ICCTA should be harmonized with other federal statutes, including the Sherman and Clayton Acts, wherever possible. See, e.g., Swinomish Indian Tribal Cmty. v. BNSF Ry. Co., 951 F.3d 1142, 1156 (9th Cir. 2020). Applying federal antitrust laws in the absence of STB "control" authorization is just that sort of necessary harmonization. CSX's remaining state law claims for injunctive relief, however, cannot be harmonized in the same way. CSX asks this Court, standing in the stead of a Virginia trial court, to eliminate NSR's (unapproved) control over NPBL by restructuring the NPBL board and/or rewriting the parties' 1989 contract. As previously explained by this

For all of these reasons, pursuant to Rule 54(b) and 56(f), the Court **GRANTS** NSR's motion to the extent it argues that CSX's claim for injunctive relief, grounded in contractual breaches occurring in 2015, fails as a matter of law.  The Court notes that CSX has had a full and fair opportunity to address this issue, no further discovery has been requested, neither party seeks to proceed to trial, and this subpart of the ancillary pendent state law contract claim represents an exceedingly small piece of the instant litigation that is best resolved at this time.  Given the procedural posture and the lack of any request for a trial,[10] the

---

Court, "the ICCTA sought generally to consolidate railroad regulatory power into the hands of the STB, limiting the reach of local, state, and even other federal laws." ECF No. 613, at 23 (citations omitted).  This purpose is evident in both § 11321's grant of "exclusive" jurisdiction to the STB and in § 10501's preemption of any laws or actions impacting rail transportation and rates.  Edwards, 983 F.3d at 121.  And while space remains to harmonize the federal antitrust laws with the STB's exclusive authority to regulate control of rail carriers, granting CSX's requested injunctive relief based on a state law breach of contract would encroach too far into the railroad regulatory regime that Congress sought to streamline and federalize through the ICCTA.  Cf. Norfolk Southern Railway Co., 2022 WL 2191932, at *14 n.24-25 (suggesting that that STB expects the control issue to be brought before the STB after the instant case is completed).  Therefore, unlike a situation where a railroad has expressly agreed by contract to engage in specific conduct otherwise within the STB's jurisdiction, PCS Phosphate Co. v. Norfolk S. Corp., 559 F.3d 212, 221 (4th Cir. 2009), using state contract law to meddle in issues of railroad control is inconsistent with and therefore preempted by the ICCTA.

[10] CSX has acknowledged that proceeding to trial would be a waste of resources if there was a legal bar to its injunctive relief claims, see ECF No. 605, at 37-38; ECF No. 593, at 3, with CSX further clarifying that it would be "inefficient" and "contrary to sound judicial administration" to proceed to trial on the remaining state law claims, ECF No. 624, at 2.  This is not to say that CSX conceded that a ruling on the contract claim is procedurally appropriate; to the contrary, CSX highlights why Rule 12(c), as invoked by Defendants, is an improper procedural vehicle for a merits-based ruling.  However, because all of the federal claims and the state law conspiracy claims have now been fully resolved, as has CSX's contract claim to the extent it relies on conduct occurring before or after 2015, and because the viability of the state law injunctive relief contract claim is intertwined

interests of justice and efficiency will both be best served by avoiding piecemeal appeals.

### IV. CONCLUSION

For the reasons set forth above, Defendants' motions seeking the resolution of the remaining state law injunctive relief claims are **GRANTED**. ECF Nos. 614, 616. In light of such ruling disposing of all remaining state law claims, CSX's motion seeking a ruling authorizing an immediate interlocutory appeal is **DISMISSED as moot**. ECF No. 623.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ _____

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April 19 , 2023

---

with this Court's summary judgment ruling, the Court finds it appropriate to resolve this fully briefed issue in advance of the impending appeal rather than take steps to authorize an interlocutory appeal and leave one exceedingly small fraction of the case undecided.