UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CSX TRANSPORTATION, INC.,
*individually and on behalf
of Norfolk & Portsmouth Belt
Line Railroad Company,*

    **Plaintiff,**

v.           Civil No. 2:18cv530

NORFOLK SOUTHERN RAILWAY COMPANY
and NORFOLK & PORTSMOUTH BELT
LINE RAILWAY COMPANY,

    **Defendants.**

## OPINION AND ORDER

  This matter is before the Court on motions filed by Norfolk & Portsmouth Belt Line Railway Company ("NPBL") and Norfolk Southern Railway Company ("NSR," and together with NPBL, "Defendants"), seeking attorneys' fees and non-taxable costs from Plaintiff CSX Transportation, Inc. ("CSX").  ECF Nos. 646, 648. CSX filed a consolidated brief in opposition, arguing that attorneys' fees should not be awarded in this case.  ECF No. 654. Defendants filed a consolidated reply, ECF No. 655, and the matter is ripe for review.  For the reasons set forth below, Defendants' motions seeking attorneys' fees and non-taxable costs are **DENIED**.[1]

_____

[1] The taxable costs that are generally available to a prevailing party were addressed in this case through the parties' parallel submissions to the Clerk.  To the extent that Defendants' pending motions seek additional "non-taxable costs," Defendants do not advance any arguments independent from

## I. PROCEDURAL HISTORY

CSX filed the instant federal antitrust action against Defendants and others, alleging interference with CSX's rail access to a large containership terminal in Norfolk, Virginia. As previously summarized by this Court, the "crux of the instant lawsuit is whether NSR and NPBL committed monopolistic antitrust violations, or unlawfully colluded with each other in restraint of trade, in a manner that prevented CSX from fairly competing to transport international shipping containers" arriving in Hampton Roads, Virginia. ECF No. 559, at 4. For context, as to NSR, the Complaint advanced four federal antitrust claims under the Sherman Act, as well as state-law claims for breach of contract, tortious interference, common law conspiracy, and statutory business conspiracy. ECF No. 1, at 24-39. NPBL was named in two of the Sherman Act claims and all of the state-law claims advanced against NSR except for the breach of contract claim. Id. CSX sought hundreds of millions of dollars in damages and further requested injunctive relief under both federal antitrust law and Virginia state law.

The litigation took several years to resolve, delayed in part by the COVID-19 pandemic, as well as by a stay that was issued to allow the U.S. Surface Transportation Board, the federal agency

---

their attorneys' fees arguments, and the requests for non-taxable costs are therefore denied for the same reasons as the requests for attorneys' fees.

charged with the economic regulation of freight rail, to resolve a potentially dispositive issue. During the pendency of the case, CSX did not seek any temporary injunctive relief, and the issue of injunctive relief remained in the background as the case progressed.

On January 3, 2023, this Court issued an Opinion and Order granting summary judgment to Defendants on CSX's various damages claims but denying summary judgment on injunctive relief. ECF No. 559. Notably, Defendants' summary judgment motions and briefs did not squarely address CSX's claims for injunctive relief (under federal or state law). After the Court raised questions about the effect of the damages arguments on CSX's claims for injunctive relief, it determined that CSX sufficiently demonstrated that the injunctive claims did not simply "rise and fall" with the damages claims. Id. at 80-82, 103 n.46.[2]

The Court ordered subsequent briefing, but because Defendants interpreted the Court's prior summary judgment ruling as conclusively resolving the state-law claims for injunctive relief, their supplemental filings focused on the availability of

---

[2] The Court raised the issue of injunctive relief at oral argument prior to ruling on Defendants' summary judgment motions. See ECF No. 520, at 13 ("[T]he summary judgment briefs do not discuss injunctive relief, though it is sought in the complaint."). Defendants orally responded that if the Court were to rule in Defendants' favor on their damages claims then injunctive relief would be unavailable because an injunction could not issue without proof of damages. Id. at 61, 92, 110, 113.

injunctive relief under <u>federal</u> antitrust law.  <u>See</u> ECF No. 573, at 1.  The Court issued a second Opinion ruling in Defendants' favor as to injunctive relief under <u>federal</u> antitrust law, and at the parties' joint request, continued the bench trial on any state-law injunctive remedies in favor of further briefing.  ECF No. 613, at 27.

After the parties submitted additional briefs, the Court issued a third Opinion finding that the Court's limitations ruling in its summary judgment Opinion was fatal to CSX's Virginia common law and statutory conspiracy claims seeking injunctive relief.  ECF No. 643, at 15-17.  This third Opinion separately ruled in NSR's favor regarding the viability of the requested injunctive relief under CSX's state-law breach of contract claim, thus resolving the final outstanding issue.  <u>Id.</u> at 18-23.  CSX then noted its appeal.  ECF No. 651.

Defendants' current motions seek attorneys' fees and non-taxable costs pursuant to a Virginia statute governing statutory conspiracy claims that request injunctive relief.  Va. Code § 18.2-500(B).  Defendants assert that they may recover <u>all</u> of their attorneys' fees and costs incurred in defending against <u>all</u> of the federal and state claims in this action, collectively requesting fees and non-taxable costs of approximately 14 million dollars.[3]

---

[3] Defendants do not assert that any applicable provision of federal antitrust law supports fee-shifting.  Similarly, Defendants do not assert that there

ECF No. 647, at 3; ECF No. 649, at 4.   CSX acknowledges that §
18.2-500(B) confers <u>discretionary</u> authority to award attorneys'
fees to a prevailing defendant but contends that: (1) a
discretionary attorneys' fee award is not appropriate in this case;
and (2) even if discretionary attorneys' fees are appropriate, the
fee award must be tailored to compensate Defendants only for their
counsel's efforts associated with the injunctive relief portion of
the Virginia statutory conspiracy claim.   ECF No. 654, at 7, 11.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure permit the filing of a
motion seeking "attorney's fees and related nontaxable expenses
. . . no later than 14 days after the entry of judgment."   Fed. R.
Civ. P. 54(d)(2).   As Defendants argue, a timely motion need not
include evidentiary submissions addressing the value of services
but must instead explain the basis for the fee request and provide
a fair estimate of the amount sought.   <u>Id.</u>   Rule 54 further provides
that the court "may decide issues of liability for fees before
receiving submissions on the value of services."   <u>Id.</u>   Here,
Defendants' motions assert that CSX is liable for attorneys' fees

---

is any basis under Virginia common law, statute, or contract to recover
their attorneys' fees for the state-law claims for breach of contract,
common law conspiracy, or the damages portion of CSX's Virginia statutory
business conspiracy claim.   Rather, Defendants rely exclusively on Virginia
Code § 18.2-500(B), which is applicable only to state-law statutory
conspiracy claims seeking injunctive relief.

and non-taxable costs under Virginia Code § 18.2-500(B) and provide estimates of the requested award.

Before turning to the text of § 18.2-500 to determine "issues of liability," it is instructive to briefly review the foundational legal principles governing the recovery of attorneys' fees. Under both federal and Virginia law, the default "American rule" is that each party shall bear their own attorneys' fees. Wilkins v. Gaddy, 734 F.3d 344, 349 (4th Cir. 2013); Mullins v. Richlands Nat. Bank, 241 Va. 447, 449, 403 S.E.2d 334, 335 (1991). Fee shifting is, however, permissible under both federal and Virginia law when a statute or contract provides an exception to the default rule. See id. at 449, 403 S.E.2d at 335 (explaining that Virginia has "consistently" adhered to the American rule, meaning that "absent a specific contractual or statutory provision to the contrary, attorney's fees are not recoverable by a prevailing litigant from the losing litigant"); Wilkins, 734 F.3d at 349.

Beginning with the plain language of what appears to be a rarely applied state-law fee-shifting statute,[4] it is beneficial

---

[4] CSX highlights Defendants' failure to cite a single case awarding fees to a prevailing defendant under § 18.2-500(B), and notes that CSX's counsel has not located any reported or unreported cases. ECF No. 654, at 7; see Bhagat v. Diamond Info. Sys., L.L.C., 84 Va. Cir. 233, 238 (Loudoun, 2012) (noting the apparent absence of any "reported decisions awarding a prevailing defendant fees pursuant to Va. Code § 18.2-500"). This Court has independently located a single case where attorneys' fees were awarded to a prevailing defendant under § 18.2-500(B). Dove v. Dayton Town Council, 39 Va. Cir. 159, 169 (Rockingham, 1996). However, Dove offers little guidance regarding  the showing necessary for a defendant to recover fees under § 18.2-500(B) because the plaintiff's counsel's conduct in Dove was

to review the text of the entire statute.  Virginia Code § 18.2-500 provides as follows:

> A. Any person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499, may sue therefor and recover three-fold the damages by him sustained, and the costs of suit, including a reasonable fee to plaintiff's counsel, and without limiting the generality of the term, "damages" shall include loss of profits.
>
> B. Whenever a person shall duly file a civil action in the circuit court of any county or city against any person alleging violations of the provisions of § 18.2-499 and praying that such party defendant be restrained and enjoined from continuing the acts complained of, such court shall have jurisdiction to hear and determine the issues involved, to issue injunctions pendente lite and permanent injunctions and to decree damages and costs of suit, including reasonable counsel fees to complainants' and defendants' counsel.

Va. Code § 18.2-500 (emphasis added).  Subsection (A) of the statute, as emphasized above, indicates that a prevailing plaintiff in a § 18.2-499 damages action at law "may" recover the "costs of suit, including a reasonable fee to plaintiff's counsel." Id.  Subsection (B), in contrast, applies in cases where the § 18.2-499 statutory conspiracy claim seeks equitable relief in the form of an injunction.  Id.  Notably, this latter subsection is not limited to addressing relief available to a prevailing plaintiff, but instead acknowledges the potential for a fee award to a prevailing defendant, though it is phrased in the context of

---

so egregious that it was deemed sanctionable, and attorneys' fees were also awarded as a sanction under another Virginia statute that requires counsel to have a good faith basis to pursue the requested relief.

a court's equitable <u>jurisdiction</u> to hear claims and decree costs of suit.

### III. DISCUSSION

As explained below, accepting CSX's concession that this Court has the authority to award attorneys' fees to Defendants in this case, the Court finds that Defendants fail to demonstrate: (1) that attorneys' fees for the defense of the entire lawsuit are recoverable under § 18.2-500(B); (2) that an award of attorneys' fees is mandatory or presumptive under § 18.2-500(B); or (3) that the case-specific factors support a discretionary fee award for the subset of attorneys' fees and costs that defense counsel could, through subsequent submissions, properly apportion to their efforts defending against an injunction under Virginia law.

### A. Scope of Potentially Recoverable Fees

Defendants posit that the statutory language in § 18.2-500(B) referencing a defendant's ability to recover the "costs <u>of suit</u>" should be interpreted to reach the entirety of Defendants' attorneys' fees, even if a much smaller subset of attorneys' fees is directly attributable to defending against the state-law injunction request. Defendants further argue that the bulk of the defense efforts in this case were targeted at a wholesale challenge to the timeliness of <u>all</u> of CSX's claims, whether state or federal. Defendants contend that, because such efforts ultimately led to Defendants prevailing on the Virginia statutory conspiracy claim,

8

fees for all of counsel's time handling this intertwined issue should be recoverable.[5]

In contrast, CSX asserts that reading § 18.2-500 in its entirety, as illuminated by relevant Virginia case law, reveals that the only potentially recoverable attorneys' fees are those directly linked to defending against a state-law injunction. After reviewing the statute and controlling Virginia law on the issue, the Court agrees with CSX for several reasons.

First, while Defendants seize on the statutory text "costs of suit" to argue that the costs of defending the entire suit (not merely the claim) are recoverable, that statutory text cannot be analyzed in a vacuum but instead must be evaluated in the context of Virginia precedent on attorneys' fees and costs. In Virginia, the "authority for awarding costs and attorney's fees is in derogation of common law, and therefore, subject to strict interpretation." Chacey v. Garvey, 291 Va. 1, 10, 781 S.E.2d 357, 361 (2015). Defendants' contention that the phrase "costs of suit" conveys an entitlement to all attorneys' fees, including those associated with state and federal claims for which fees are

---

[5] Defendants separately contend that it is premature for this Court to address the scope of attorneys' fees recoverable under § 18.2-500(B) as Defendants have not had the opportunity to submit their billing records in support of their fee requests. ECF No. 649, at 7-8. The Court rejects this contention because the Court's findings herein address the legal availability of the requested attorneys' fees without resolving any dispute over the "quantum" of fees billed in this case.

otherwise unavailable, both violates Virginia's "strict interpretation" command and conflicts with well-established Virginia precedent. See Manchester Oaks Homeowners Ass'n, Inc. v. Batt, 284 Va. 409, 428-29, 732 S.E.2d 690, 702 (2012) ("[I]n an action encompassing several claims, the prevailing party is entitled to an award of costs and attorneys' fees only for those claims for which (a) there is a contractual or statutory basis for such an award and (b) the party has prevailed.");[6] Sidya v. World Telecom Exch. Commc'ns, LLC, 301 Va. 31, 45, 870 S.E.2d 199, 207 (2022) (indicating that although § 18.2-500(A) authorizes an award of attorneys' fees to prevailing plaintiffs, it "only authorize[s] fees incurred in the prosecution of the[] specific statutory claim[] — not causes of action created by other statutes or by common law").

Second, Defendants' interpretation appears to conflict with the structural interplay between subsections (A) and (B) of § 18.2-500. Based on the plain language of subsection (A), a defendant may not recover attorneys' fees under that subsection in a case where the Virginia statutory conspiracy claim only seeks damages. See Chertoff Cap., LLC v. Syversen, 468 F. Supp. 3d 713, 717 n.1 (E.D. Va. 2020) (noting that subsection (A) "clearly does not

---

[6] If all costs of suit were recoverable as Defendants posit, a party could recover attorneys' fees incurred on unrelated claims on which the opposing party prevailed.

provide for the award of attorney's fees to a prevailing defendant"). It therefore appears improper to allow a prevailing defendant to invoke subsection (B) to bootstrap a global recovery for attorneys' fees dedicated to defending against a <u>damages claim</u> merely because the plaintiff also sought an injunction, however narrow.

Third, and arguably most compelling, Virginia precedent expressly provides that even though the text of § 18.2-500 authorizes the recovery of "costs of suit" without providing any statutory limits on the scope of recoverable "costs," such language does <u>not</u> allow the prevailing party to recover "all reasonable litigation expenses." <u>Advanced Marine Enterprises, Inc. v. PRC Inc.</u>, 256 Va. 106, 125, 501 S.E.2d 148, 159 (1998). In <u>Advanced Marine</u>, the Virginia Supreme Court addressed <u>and rejected</u> the plaintiff's contention that all costs of suit, including expert witness fees and the cost for temporary employees, were recoverable under § 18.2-500(A), explaining:

> The taxing of costs in litigation was unknown at common law and is purely a creature of statute. <u>Ryan v. Davis</u>, 201 Va. 79, 85, 109 S.E.2d 409, 414 (1959). Code § 18.2-500 provides that "costs of suit, including a reasonable fee to plaintiff's counsel" may be recovered on proof of a violation of Code § 18.2-499. Thus, with the exception of reasonable attorney's fees, Code § 18.2-500 makes no provision for an award of costs <u>other than those ordinarily awarded</u> under the general statutes of Title 14.1 of the Code addressing the taxing of costs.

11

Id. at 125–26, 501 S.E.2d at 159 (emphasis added)).  Similarly, here, defense counsel's fees incurred defending against damages claims that are not otherwise recoverable under statutory or common law do not become recoverable merely because they are part of the same "suit" as a claim for injunctive relief under § 18.2-500(B).

Fourth and finally, this Court considers Virginia cases that bear on a prevailing party's ability to recover attorneys' fees when fee-eligible claims are "intertwined" with other claims for which fees are not available.  Though Defendants cite multiple cases where federal courts applying federal fee-shifting statutes permitted recovery of attorneys' fees attributable to intertwined advocacy, Virginia law provides a starkly different rule.  See Sines v. Kessler, No. 3:17cv72, 2023 WL 2388050, at *3 (W.D. Va. Mar. 7, 2023) ("Determining whether Plaintiffs may recover attorney's fees for prevailing on their state-law causes of action requires this federal court to apply Virginia's substantive law governing that issue.").  In Virginia, "it simply does not matter if the party's other claims, successful or unsuccessful, 'were intimately intertwined [with] and depended on a common factual basis'" as fee-eligible claims; time spent on a fee-eligible claim must be unwoven from fee-ineligible claims to be recoverable.  Id. at *7 (alteration in original) (quoting Ulloa v. QSP, Inc., 271 Va. 72, 81, 624 S.E.2d 43, 49 (2006)); see Zoroastrian Ctr. & Darb-E-Mehr of Metro. Washington, D.C. v. Rustam Guiv Found. of New

York, 822 F.3d 739, 754 n.8 (4th Cir. 2016) (explaining that the Virginia Supreme Court has "steadfastly rejected" the federal approach of allowing the recovery of intertwined fees in cases involving "a common core of facts" or "related legal theories." (citation omitted)).  Thus, contrary to Defendants' suggestion, Virginia's "claim-by-claim approach" does not allow Defendants to recover fees incurred defending the uniquely federal parts of the antitrust claims (such as the definition of the relevant "market") merely because CSX joined a pendent state-law injunction claim to the federal lawsuit.  Sines, 2023 WL 2388050, at *7; see Sidya, 301 Va. at 45, 870 S.E.2d at 207 (explaining that both § 18.2-500(A) and a fee-shifting statute in Virginia's Trade Secrets Act only authorize the recovery of fees for the specific cause of action outlined in the relevant statute).[7]

In sum, the Court easily rejects Defendants' contention that CSX, by electing to include a state-law statutory injunctive relief claim in its lawsuit, exposed itself to a fee award for the defense of the entire suit.  The fact that all claims arise from intertwined facts is likewise an insufficient basis for a global

---

[7] The Court further observes that Defendants' position, taken to its logical end, would apply a Virginia statute to authorize the recovery of attorneys' fees accrued in federal court in defense of federal claims, thereby trumping the federal rule disallowing such fees.  Even accepting for the sake of argument that Virginia law could permissibly supersede a contrary federal rule on attorneys' fees, doing so would presumably require a clear indication of such intent in the Virginia statute.  Suffice it to say, § 18.2-500(B) does not contain any such clear directive.

fee recovery under Virginia law.   Though the Court acknowledges the potential for Defendants to demonstrate, through future submissions directed at unraveling intertwined defenses, that certain defense efforts were critical to prevailing on both fee-eligible and fee-ineligible claims, the Court declines to take up this matter because it exercises its discretion not to award any attorneys' fees or non-taxable costs.

### B. Potentially Recoverable Fees

### 1. Discretionary Standard Applies

The parties have not cited, and the Court has not located, any relevant case law defining the standard for awarding attorneys' fees to a prevailing defendant under § 18.2-500(B).[8]  This Court must therefore determine whether attorneys' fees under § 18.2-500(B) are automatic or presumptive (as Defendants argue) or whether they are discretionary and should be awarded when the case-specific circumstances support fee shifting (as argued by CSX).

In the absence of guidance from the Virginia Supreme Court or any other Virginia court, this Court must apply available state law to "predict" how the Virginia Supreme Court would interpret

---

[8] As noted above in footnote 4, the defendant in <u>Dove</u>, 39 Va. Cir. 159, was awarded attorneys' fees pursuant to § 18.2-500(B) but the controlling standard was not articulated.  Additionally, in <u>Robinson v. Ritchie</u>, 516 F. Supp. 437, 438 (E.D. Va. 1981), attorneys' fees were initially awarded to the defendant based on a meritless Virginia statutory conspiracy claim; however, the defendant in that case sought attorney's fees under the <u>federal</u> procedural standard governing sanctions rather than under Virginia law.

§ 18.2-500(B).   Fairfax v. CBS Corp., 2 F.4th 286, 296 (4th Cir. 2021).   In doing so, the Court draws guidance from "'recent pronouncements of general rules or policies by [Virginia's] highest court,' among other sources."   Sines, 2023 WL 2388050, at *3 (quoting Wells v. Liddy, 186 F.3d 505, 527-28 (4th Cir. 1999)). Though this Court must forecast how the Virginia Supreme Court would rule, it "'should not create or expand' Virginia law in the process."   Id. (quoting St. Paul Fire & Marine Ins. Co. v. Jacobson, 48 F.3d 778, 783 (4th Cir. 1995)).   For the reasons explained below, the Court agrees with CSX that § 18.2-500(B) should be interpreted to authorize a discretionary award of attorneys' fees.

First, as discussed above, Virginia law is clear that because fee awards are "in derogation of common law," fee-shifting statutes are "subject to strict interpretation."   Chacey, 291 Va. at 10, 781 S.E.2d at 361.   This rule alone counsels against the automatic or presumptive fee award sought by Defendants and is not, as Defendants suggest, overcome by the fact that Virginia courts routinely award certain litigation "costs."   See id. at 10-11, 781 S.E.2d at 361 ("The General Assembly clearly views costs associated with litigation as a category of recoverable expenses separate and distinct from attorney's fees," and counsel's fees are not recoverable under the "strict interpretation" rule even when a controlling statute expressly permits recovery of "associated

<u>legal</u> costs." (emphasis added)). As addressed herein, the propriety of awarding attorneys' fees under Virginia law begins with a presumption against fee shifting. See <u>Ulloa</u>, 271 Va. at 81, 624 S.E.2d at 49 ("Under the so-called 'American rule,' a prevailing party generally cannot recover attorneys' fees from the losing party.").

Second, a review of the plain language of both subparts of § 18.2-500 supports the finding that the award of attorneys' fees under either provision of the statute is discretionary. In a damages action, a court's ability to award fees to a plaintiff is described in a classically discretionary manner, with subsection (A) indicating that a prevailing plaintiff "may" recover reasonable attorneys' fees. See <u>Fairfax</u>, 2 F.4th at 297 (contrasting the Virginia General Assembly's use of the permissive word "may" in the fee-shifting statute at issue in that case with other statutes where "the Virginia legislature had made an attorney's fee award mandatory through the use of the word 'shall'").[9] As for subsection (B), it speaks only to the

---

[9] This Court is aware of one Virginia case where the trial court held that both treble damages and attorneys' fees under § 18.2-500<u>(A)</u> are mandatory when a plaintiff prevails on a statutory conspiracy claim. <u>Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co.</u>, 47 Va. Cir. 193, 203 (1998). However: (1) the trial court's ruling was reversed on other grounds and the Virginia Supreme Court never took up the issue, <u>Lockheed Info. Mgmt. Sys. Co. v. Maximus, Inc.</u>, 259 Va. 92, 108 n.7, 524 S.E.2d 420, 429 n.7 (2000); (2) the Virginia General Assembly subsequently amended § 18.2-500(A) and deleted a key statutory provision on which the trial court's attorneys' fees analysis relied; and (3) a prevailing plaintiff having proven the malice necessary to support a statutory conspiracy claim is in a starkly different position

jurisdiction of a court sitting in equity to award attorneys' fees
to a prevailing party, indicating that the court "shall have
jurisdiction . . . to decree" costs, including reasonable
attorneys' fees.  Any effort to argue that a jurisdictional grant
of authority to consider a fee award should be read to mandate
such an award falls flat.

This Court, of course, does not question the fact that the
jurisdictional language in § 18.2-500(B) necessarily implies that
a court "may" award fees to a prevailing defendant, but in the
absence of Virginia precedent to the contrary, the standard must
be interpreted as discretionary.  Such interpretation is strongly
supported, if not dictated, by the Fourth Circuit's recent analysis
of Virginia law in Fairfax.  There, like here, the district court
was called on to apply a Virginia fee-shifting statute in the
absence of guidance from Virginia courts, and the defendant-
friendly statute in that case was aimed at "weed[ing] out and
deter[ring] lawsuits brought for the improper purpose of harassing
individuals who are exercising their protected right to freedom of
speech."  Fairfax, 2 F.4th at 296.  Even though the statute at
issue in Fairfax sought to protect defendants, the district court
declined to award attorneys' fees to the prevailing defendant,

---

than a defendant that successfully defends against such a claim.  Cf. Sidya,
301 Va. at 45, 870 S.E.2d at 207 (affirming the "discretionary award of
treble damages" under § 18.2-500(A) and "declin[ing] to address the question
whether the statute mandates such an award" to a prevailing plaintiff).

concluding that the statutory language indicating that a defendant "may" recover attorneys' fees "is permissive, not mandatory or presumptive, and thereby authorizes the Court to award fees in its discretion." <u>Fairfax v. CBS Broad. Inc.</u>, 534 F. Supp. 3d 581, 600 (E.D. Va. 2020). On appeal, the Fourth Circuit expressly agreed. <u>Fairfax</u>, 2 F.4th at 297. In its published opinion, the Fourth Circuit found "no reason to embellish the plain language of Virginia's statute," and concluded that the statutory language stating that a prevailing defendant "may" recover attorneys' fees "permits, but does not require, a court to award attorney's fees to a prevailing defendant and does not create a presumption in favor of a fee award." <u>Id.</u> Like the statute evaluated in <u>Fairfax</u>, nothing in § 18.2-500(B), nor in any other source cited by Defendants, suggests that a fee award to a prevailing defendant is mandatory or presumptive.

Third and finally, it is significant that § 18.2-500 predates the merger of Virginia's courts of law and equity, and subsection (B) is plainly a statutory provision directed to the equity side of the court. As recently explained by the Virginia Supreme Court, "[h]istorically, recovery of attorney's fees in chancery court differed from recovery of attorney's fees in common law court." <u>St. John v. Thompson</u>, 299 Va. 431, 434-35, 854 S.E.2d 648, 650-51 (2021). "Early English courts of equity" had authority to award fees to the prevailing party, but in practice, these courts "rarely

granted fee awards unless the losing party acted in an abusive manner." Id. (citation omitted). As highlighted by the Virginia Supreme Court, the United States Supreme Court has likewise observed that the "historic practice of granting reimbursement for the costs of litigation other than the conventional taxable costs" is grounded in "the original authority of the chancellor to do equity in a particular situation," and is thus appropriate "only in exceptional cases and for dominating reasons of justice." Id. (emphasis in original) (quoting Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 166 (1939)). Here, though this Court does not purport to adopt or apply an "exceptional" circumstances standard, the Virginia Supreme Court's recent comments in St. John counsel strongly against an "automatic" or "presumptive" fee award in favor of Defendants merely because they successfully defended against relief grounded in equity. Cf. John F. Vargo, The American Rule on Attorney Fee Allocation: The Injured Person's Access to Justice, 42 Am. U. L. Rev. 1567, 1590 (1993) ("Recent studies and articles show that the vast majority of legislation in the United States has adopted a one-way shift [of attorneys' fees] in favor of the plaintiff.").

Accordingly, to the extent that Defendants ask this Court to create or expand Virginia law by adopting a new statutory interpretation, in derogation of Virginia common law, mandating or presuming that attorneys' fees be paid to a prevailing defendant

under § 18.2-500(B), this Court rejects such request. The plain language of § 18.2-500(B) speaks only to a court's equitable jurisdiction to award attorneys' fees and does not suggest that the Court must, or even should, award such fees.[10] Moreover, Virginia's strict interpretation of fee-shifting statutes plainly supports a finding that, absent a clear directive, inferred authority to award fees is not a mandate to do so. This Court therefore concludes that § 18.2-500(B) merely "authoriz[es] the court to award fees in its discretion." Fairfax, 2 F.4th at 297.

## 2. Application of Discretion

Applying the discretion provided under § 18.2-500(B), the Court finds that the case-specific factors do not support awarding Defendants discretionary attorneys' fees or non-taxable costs. The Court reaches this conclusion without the need to resolve any disputes over the "quantum" of fees or costs that could be proven

---

[10] An equitable attorneys' fee award under a discretionary standard may be appropriate in various circumstances, such as in a case where the defendant's ability to adequately defend was significantly affected by having to divert its defense funds to defeat an ill-conceived preliminary injunction. It may also be appropriate in cases where the request for an injunction is determined to be a calculated effort to negatively impact the competitor defendant's business. Still, the balance of equities must be carefully examined when it is a prevailing defendant that seeks fee shifting as such a party is situated differently from a prevailing plaintiff. Notably, when a plaintiff prevails on a Virginia statutory conspiracy claim it has necessarily proven that the defendant combined and conspired, with legal malice, "for the purpose of willfully and maliciously injuring" the plaintiff's trade or business. Com. Bus. Sys., Inc. v. Bellsouth Servs., Inc., 249 Va. 39, 47, 453 S.E.2d 261, 266 (1995) (quoting Va. Code § 18.2-499). Though this type of willful injury may result in trial courts routinely awarding discretionary attorneys' fees to prevailing plaintiffs, prevailing defendants present differently.

to be attributable to the Virginia statutory conspiracy injunctive relief claim.  As aptly characterized by CSX, the "spot-on-the-tail-of-the-dog" pendant state-law claim seeking injunctive relief was an exceedingly minor part of this federal antitrust case, and Defendants do not offer a convincing argument that an award of attorneys' fees and costs to Defendants is equitable or just, or that it is appropriate to deter future claims brought by a plaintiff for an improper purpose.  To the contrary, awarding fees in this case could act to stifle legitimate future claims.  See Bolton v. McKinney, 299 Va. 550, 554, 855 S.E.2d 853, 855 (2021) (explaining that the "purpose of the [American] rule is to avoid stifling legitimate litigation by the threat of the specter of burdensome expenses being imposed on an unsuccessful party" (quotation marks omitted)).

To the extent Federal Rule of Civil Procedure 54(c) requires this Court to make express findings of fact and conclusions of law, the Court makes the following factual findings: (1) Defendants fail to demonstrate that CSX's state-law statutory conspiracy injunctive relief claim was brought in bad faith or was otherwise motivated by questionable intentions;[11]  (2) CSX had a

---

[11] The Court does not suggest that bad faith, vexatious conduct, or extraordinary circumstances are necessary to recover fees under the statute at issue, but instead applies equitable discretion after considering the totality of the circumstances.  Here, the circumstances of this case support application of the default American rule, with the only cause of action even potentially allowing for fee-shifting being a pendent state-law injunctive

reasonable basis to believe that Defendants engaged in a statutory conspiracy for which injunctive relief might have been available under Virginia law and uncovered evidentiary support for such theory during discovery;[12] and (3) as illustrated by the issues briefed on summary judgment, this case focused on CSX's damages claims, brought pursuant to state and federal statutes that do not include fee-shifting provisions, and the pendent state-law injunctive relief claim appeared to add little, if any, additional complexity to the defense of this case.

In response to Defendants' suggestion that it is premature for this Court to address the "focus" of the lawsuit prior to the submission of their billing records, the Court points to the fact that in January of this year, after many years of litigation, NPBL filed a brief indicating that "[t]he focus of this case for years has been the 'hundreds of millions of dollars' in damages sought by CSX . . . and shifted only recently to injunctive relief." ECF No. 573, at 3. NPBL further stated in a footnote that "[i]n more than four years of litigation, despite a need to show impending

---

relief claim that was decidedly not the focus of this case until CSX received an unfavorable disposition of nearly all of its other claims for relief.

[12] As this Court previously ruled, however, the evidentiary record developed during discovery revealed that CSX's conspiracy claims were time-barred, thus defeating CSX's Virginia statutory conspiracy claim as to both damages and injunctive relief. Though the Court's ruling herein is not dependent in any way on such observation, some of the historical emails and related materials obtained by CSX during discovery at a minimum provide fodder for CSX to argue that "equity" is not on Defendants' side in this case.

violation of the antitrust laws, . . . CSX itself has not pursued [injunctive relief] by seeking preliminary remedies." Id. at 3 n.2. NSR thereafter filed a brief expressly adopting NPBL's arguments. ECF No. 574, at 1. Based on Defendants' own representations indicating that the focus of this lawsuit has never been on injunctive relief, the Court need not consider billing records before resolving the disputes before it.

As for conclusions of law, as outlined above, Virginia Code § 18.2-500(B) provides this Court with discretion to award Defendants their attorneys' fees and costs for time spent defending against the Virginia statutory conspiracy injunctive relief claim. However, such an award is not mandated or even presumed under Virginia law.

## IV. CONCLUSION

Applying a discretionary fee-shifting standard under § 18.2-500(B) in light of the relevant facts, procedural circumstances, and the case-specific equities, the Court declines to award Defendants any quantum of attorneys' fees or non-taxable costs. Even without billing documents, the record plainly reveals that only a small percentage of the resources expended by defense counsel arose as a result of CSX's decision to include a pendant state-law statutory conspiracy claim seeking injunctive relief. Notably, CSX did not seek a temporary injunction in this case, and the already complex federal antitrust action does not appear to

23

have been rendered significantly more complex as a result of CSX asserting a pendant claim that remained largely in the background. Accordingly, this Court **DENIES** Defendants' motions seeking attorneys' fees and non-taxable costs.  ECF No. 646, 648.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

                                    _____ /s/ _____
                                              Mark S. Davis
                                    CHIEF UNITED STATES DISTRICT JUDGE
Norfolk, Virginia
September 21 , 2023